1   XAVIER BECERRA
    Attorney General of California
2   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
3   JILL M. THAYER
    Deputy Attorney General
4   State Bar No. 166428
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 703-5954
6     Fax:  (415) 703-1234
      E-mail:  Jill.Thayer@doj.ca.gov
7   *Attorneys for Respondent*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                           SAN FRANCISCO DIVISION

12

13  **CRAIG RICHARD CHANDLER,**                    17-cv-00325-EMC

14                              Petitioner,        **EXHIBITS**

15          v.

16  **SCOTT FRAUENHEIM, Warden,**

17                              Respondent.

18

19

20      Exhibit 1          State Court Clerk's Transcript[1] (Vols. 3-4)

21

22

23      _____

24      [1] The prosecution and defense witness lists are omitted because they were filed under seal in state court.  The confidential probation report and supplements to the confidential probation
25  report are omitted, except as indicated below, pursuant to California Penal Code § 1203.05.  The sealed orders prohibiting contact between petitioner and the minor victims are omitted because
    they were sealed in state court and disclose the minor victims' names.  Respondent has filed a
26  motion to file under seal transcripts of the video CDs of the interviews of the minor victims and a
    letter to the trial court from petitioner's mother which was attached to the confidential probation
27  report because they were filed under seal in state court but referred to in the state court opinion
    and/or the memorandum of points and authorities filed in support of the answer.

28

# EXHIBIT 1
# (Vol. 3)

COURT OF APPEAL, STATE OF CALIFORNIA,
IN AND FOR THE SIXTH APPELLATE DISTRICT

| | |
|---|---|
| **THE PEOPLE,** | |
| *PLAINTIFF AND RESPONDENT,* | |
| **V.** | COURT OF APPEAL NO.: **H040429** |
| **CRAIG RICHARD CHANDLER** | **VOL.** <u>3</u> of <u>7</u> |
| | **PAGES** <u>353</u> thru <u>648</u> |
| *DEFENDANT AND APPELLANT.* | |

# <u>CLERK'S TRANSCRIPT</u>

CLERK'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SANTA CLARA.

SUPERIOR COURT NUMBER:  **C1223754**

HONORABLE _____ **ARTHUR BOCANEGRA** _____, JUDGE

APPEARANCES:

**ATTORNEY GENERAL**                              COUNSEL FOR PLAINTIFF
**455 GOLDEN GATE AVENUE**                    AND RESPONDENT
**ROOM 11000**
**SAN FRANCISCO, CA 94102**


SIXTH DISTRICT APPELLATE PROGRAM          COUNSEL FOR DEFENDANT
100 NORTH WINCHESTER BLVD, SUITE 310       AND APPELLANT
SANTA CLARA, CA 95050


NOTICE OF APPEAL FILED _____ November 22, 2013 _____

NOTICE OF COMPLETION _____ JAN 2 9 2014 _____

1        In the Superior Court of the State of California

2            In and for the County of Santa Clara

3

4                                          ORIGINAL

5

6

7  The People of the State of          )
   California,                          )
8              Plaintiff,               )
                                        )
9       vs.                             )   Case No. C1223754
                                        )
10  Craig Richard Chandler,             )
                                        )
11             Defendant(s).            )

12

13              Reporter's Transcript of Proceedings

14                     May 23, 2012

15          Before the Honorable Michele McKay McCoy

16              Preliminary Examination

17                  Volume III of III

18              Pages 353 through 516

19

20  Appearances:

21  FOR THE PEOPLE:

    Office of the District Attorney
22  BY:  ALISON FILO
    Deputy District Attorney
23  70 West Hedding Street
    San Jose, California
24
    FOR THE DEFENDANT:
25
    Law Office
26  BY:  CHRISTOPHER SCHUMB
    BY:  STEVEN CLARK
27  Attorneys at Law
    10 Almaden Blvd., Ste. 1250
28  San Jose, California

         DENISE NEBOLON, CSR #9344, OFFICIAL COURT REPORTER        353

                            EXAMINATION INDEX

A.
        Continued Cross by Mr. Schumb                 360
        Redirect by Ms. Filo                          374
        Recross by Mr. Schumb                         382
        Examination by the Court                      384
        Redirect by Ms. Filo                          386
        Cross by Mr. Schumb                           387

RUSSELL CHUBON
        Direct by Ms. Filo                            389
        Cross and Direct by Mr. Clark                 391
        Cross and Redirect by Ms. Filo                411
        Redirect and Recross by Mr. Clark             412

KRISTIN CARDOSA
        Direct by Ms. Filo                            414
        Voir Dire by Mr. Clark                        415
        Continued Direct by Ms. Filo                  421
        Cross by Mr. Clark                            431

SEAN PIERCE
        Direct by Ms. Filo                            464
        Cross by Mr. Clark                            484



                              EXHIBIT INDEX

Defendant's Exhibit C is marked                       394

Defendant's Exhibit C is admitted                     413

Defendant's Exhibit D is remarked and admitted        418

Court's Exhibit 4 is marked                           424

```
 1   May 23, 2012
 2                  P R O C E E D I N G S
 3        THE COURT:  Returning to the Chandler case.
 4   Where are we this morning, counsel?
 5        MS. FILO:  Your Honor, I think we have, we
 6   have counsel here from the Public Defender's Office.
 7   Sylvia Perez McDonald is currently meeting with Lyn
 8   Vijayendran with respect to her Fifth Amendment
 9   privileges.  She has advised me that she will advise
10   the witness, um, to assert her Fifth Amendment
11   privileges and not testify, um, so she just asked for a
12   few minutes to be able to confer with her in order to
13   do that.
14        THE COURT:  Tell me, who is the Deputy Public
15   Defender?
16        MS. FILO:  Sylvia Perez McDonald.  So I can
17   see if she's ready.  In the meantime, we have Ms. A.,
18   who has rejoined us to continue her examination, but I
19   would like to be heard about her continued examination.
20        THE COURT:  All right.  I see Ms. Sylvia Perez
21   McDonald.  Thank you very much.
22        MS. McDONALD:  Good morning, Your Honor.
23        THE COURT:  Good morning and thank you for
24   your help.
25        MS. McDONALD:  You're welcome.
26        THE COURT:  The court asked for an attorney,
27   um, from the Public Defender's Office to advise
28   Ms. Lyn Vijayendran as to whether or not it would be
```

1    advisable for her to claim her Fifth Amendment rights.

2    Yesterday I found a colorable claim to that based on

3    the failure to report to the police or social services

4    as required by Penal Code Section 11166.  Um, do you

5    have any input for me, Ms. McDonald?

6         MS. McDONALD:  Yes.  based on my review of the

7    facts and my conversations with, um, the witness this

8    morning and my review of the notes as well as police

9    report summary, I do believe that she is exposed to

10   potential criminal prosecution.  I'm not aware she's

11   been offered immunity and that's been confirmed for me

12   today.  The potential for prosecution is very, very

13   high as well as the potential civil consequences that

14   this testimony could expose her to.  So based on the

15   above, I'm going to advise her not to proceed and not

16   to testify for fear that she will cross examine

17   herself.

18        THE COURT:  All right.  Um, I'll accept that

19   representation.  I find that, um, Ms. Vijayendran is

20   unavailable as a witness under Evidence Code 240(a)(1)

21   in it that she is precluded on the ground of privilege

22   from testifying concerning the matter to which her

23   statement is relevant.

24        MS. FILO:  Your Honor, I believe that the

25   appropriate process is, um, that representation is to

26   be made and I think the witness then has to, um, at

27   least state on the record, that she is prepared to

28   follow that advice.

```
 1           THE COURT:  Well, I accept Ms. Perez
 2   McDonald's representation as an officer of the court,
 3   but if you want me to personally ask her, I will be
 4   happy to do that.
 5           MR. CLARK:  I think it has to be a personal
 6   assertion.
 7           THE COURT:  Thank you.  Ms. Vijayendran, would
 8   you step up to the microphone next to Ms. McDonald
 9   please.  Thank you.
10           Ms. Vijayendran, Ms. Perez McDonald tells me
11   that you intend to claim your right of the Fifth
12   Amendment against self-incrimination because, um, the
13   subject of your testimony might expose you to criminal
14   prosecution.  Is that correct?
15           THE WITNESS:  Yes.
16           THE COURT:  And do you claim the privilege?
17           THE WITNESS:  Yes.
18           THE COURT:  Thank you.  Is there anything
19   either counsel would like me to do?
20           MS. FILO:  No.  Thank you, Your Honor.
21           MR. CLARK:  No, Your Honor.
22           THE COURT:  All right, thank you very much.
23   And now do the People wish to be heard concerning
24   Ms. A.?
25           MS. FILO:  Thank you very much.
26           MS. McDONALD:  I'm sorry, Your Honor, is she
27   now relieved from the subpoena?
28           MS. FILO:  She is now relieved from the
```

```
1    subpoena.
2            MR. SCHUMB:  And ours as well.
3            MR. CLARK:  Yes.
4            THE COURT:  Thank you.
5            MS. FILO:  I do, Your Honor.  I spent some
6    time last night thinking about the cross examination of
7    Ms. A.  And I have some concerns about the way that,
8    um, that that examination occurred.  And I know that
9    the court is well familiar with, um, Evidence Code
10   Section 765 which really restricts counsel to
11   age-appropriate questioning.  And I think, um, I
12   understand that counsel has a right to lead on cross
13   examination, but I think the questioning yesterday
14   really rose to the level of not just leading, but of
15   misleading and trickery.
16           And I think it is, um, extremely difficult and
17   would have been extremely difficult, even for an adult
18   witness, to, um, appropriately and honestly answer the
19   questions that were posed to her yesterday.  And I'm
20   concerned that if we continue down that same line of
21   questioning, I think that Mr. Schumb's questions to her
22   were unfair and were, um, inappropriate for her
23   developmental and intellectual ability.
24           THE COURT:  What remedy are you asking from
25   me?
26           MS. FILO:  I'm asking for an instruction from
27   the court that, um, counsel limit his questions to
28   those that are reasonably found within the record,
```

```
 1   reasonably found within the police report.  Um, we had
 2   questions yesterday about other witnesses' testimony,
 3   about, um, statements that could or could not be
 4   confirmed within the police report.  If she's going to
 5   be asked about prior consistent or inconsistent
 6   statement that that be provided to her so she can
 7   review it.
 8        I just think that it got, um, the questioning,
 9   like I say, got to the point yesterday, or, that I be
10   allowed to interpose objections when I feel that that
11   is happening.  Um, it is not a specific evidentiary
12   objection, other than Evidence Code Section 765.  So if
13   the court would permit me to assert that objection, um,
14   at the time I feel like those questions are occurring,
15   um, I think that would be appropriate.
16        But there is not a traditional legal objection
17   to the question and I couldn't, I think that's the best
18   summary of what I felt was inappropriate yesterday.
19        THE COURT:  Well, I have very little control,
20   except for the most general sense over what questions a
21   party chooses to ask.  I pretty much have to wait the
22   attorney asks it and wait for an objection from
23   opposing counsel.
24        If it wasn't clear before, I do make the order
25   under 756(b) of the Evidence Code that I forbid the
26   asking of a question which is in a form not reasonably
27   likely to be understood by a person of the age or
28   cognitive level of the witness.
```

1          Um, apart from that, I only have the general

2     duty under 765(a) reasonable control over the motive

3     interrogation of a witness so as to make interrogation

4     as rapid and as distinct and as effective for the

5     ascertainment of the truth as may be and to protect the

6     witness from undue harassment or embarrassment. We'll

7     just have to proceed with the questions.  If you have

8     an objection, I'll be happy to entertain it.

9          MS. FILO:  Thank you, Your Honor.

10         THE COURT:  Thank you.  Would you ask Ms. A.

11    to come over?

12         MS. FILO:  Yes.

13         THE COURT:  Good morning, Ms. A.  All right.

14    You're in your chair.  I'm in mine.  We're ready to

15    start.  I remind you that you still have promised to

16    tell the truth.  Thank you.

17         Please proceed.

18         A., having been previously been sworn to tell

19    the truth, testified as follows:

20         MR. SCHUMB:  Thank you, Your Honor.

21              CONTINUED CROSS EXAMINATION

22    BY MR. SCHUMB:

23     Q.   All right.  Good morning, Ms. A., how are you?

24     A.   Good.

25     Q.   All right.  Are you nervous today?

26     A.   Yes.

27     Q.   A little less?  Yesterday you kind of got

28    through it.  You got a little bit of practice, right?

1    A.   Yes.

2    Q.   Hey, um, after thinking last night, was there

3  anything about your testimony that you want to clarify

4  or you want to tell me about after thinking about

5  anything that you said yesterday?

6    A.   No.

7    Q.   Okay.  And at any time, if I say anything that

8  you don't understand or you don't quite get, as the

9  judge told you, please tell me, Mr. Chris, I don't

10  understand what you're saying.  Okay?

11    A.   Okay.

12    Q.   All right.  Um, did, um, I think yesterday we

13  talked about that you might have talked to your friend

14  Ashlyn about, um, playing the game with Mr. Chandler?

15    A.   No.

16    Q.   No?  Okay.  Um, you don't talk -- you don't

17  remember talking to Ashlyn about the blindfold or

18  anything like that?

19         MS. FILO:  Objection, Your Honor, asked and

20  answered.

21         THE COURT:  Sustained.

22         MR. SCHUMB:  I'm just trying to refresh the

23  witness' recollection.

24         THE COURT:  She said "no."

25  BY MR. SCHUMB:

26    Q.   Um, when you were interviewed, I think you

27  said now you only were interviewed by a police officer

28  one time, right?

1    A.   Yes.

2    Q.   Did he have like a piece of paper in front of

3    him that he was checking boxes off or filling out when

4    he interviewed you?

5    A.   Yes.

6    Q.   Okay.  Was it like a preprinted form or was it

7    just a notepad?

8    A.   Like a notepad.

9    Q.   A notepad, okay.  Um, now, when you first sat

10   down with the police officer, um, I think he asked if

11   you were going to tell the truth.  Remember that?

12   A.   Yes.

13   Q.   I think you said you were, right?

14   A.   Yes.

15   Q.   Okay.  And he asked you -- do you recall if he

16   asked you whether you had talked to your cousin Noemi

17   about Mr. Chandler?

18   A.   Yes.

19   Q.   What did you tell him?

20   A.   The police?

21   Q.   Yeah, the first time.

22   A.   That I told her.

23        MR. SCHUMB:  Okay.  Your Honor, if I can

24   provide the court with the certified original

25   transcript of the video CD of Ms. A.?

26   BY MR. SCHUMB:

27   Q.   I'm reading from page 5 of the transcript of

28   the videotaped interview of Ms. A. from line 2 to line

```
 1      5.  Interviewer:  Okay, okay, did you talk to a cousin
 2   recently about something that might have happened to
 3   you?  Minor child:  Ms. A.:  No.  Do you remember
 4   telling the police officer, no, that you did not talk
 5   to your cousin?
 6      A.   No.
 7      Q.   Um, when you talked to the police officer at
 8   the station, you were comfortable and you weren't
 9   worried or afraid, were you?
10      A.   Yes.
11      Q.   Oh, you were worried and afraid?  You're
12   shaking your head yes.  Remember a nod is as a good as
13   a wink to a court reporter so you got to give me a
14   "yes" or a "no."
15      A.   Yes.
16      Q.   Why were you afraid about talking to the
17   police officer?
18      A.   Because I thought I was going to more places.
19      Q.   Okay.  Um, now, do you recall that, when you
20   were playing the game with Mr. Chandler, that, um, I
21   think you already testified that he said suck it and
22   lick it, right?
23      A.   Yes.
24      Q.   And did he say anything else?
25      A.   No.
26      Q.   Didn't -- do you remember telling, um, the
27   police officer that Mr. Chandler told you to bite it?
28      A.   Yes.
```

1      Q.    Okay.  Did Mr. Chandler tell you to bite it?

2      A.    Yes.

3      Q.    Did he tell you to bite it every time he put

4  the thing in your mouth?

5      A.    No.

6      Q.    Okay.  How many times did he tell you to bite

7  it when he had the thing in his mouth, the thing in

8  your mouth?

9      A.    One time.

10     Q.    One time?  Was it the second time?  Third

11  time?  Or was it the fourth time?  Or do you remember

12  which?

13     A.    The second time.

14     Q.    Second?  Okay.  If you're not sure, you can

15  say, I don't remember which time it was.

16     A.    I don't remember.

17     Q.    It's okay.  You don't have to give me an

18  answer if you don't know.

19     A.    Okay.

20     Q.    I know it's a long time ago, okay?  And this

21  isn't like a test where you flunk it if you don't have

22  every answer right, okay?

23     A.    Okay.

24     Q.    Seriously.  Okay.  So, um, you said that you

25  thought you saw Mr. C. pull his zipper one time?

26     A.    Yes.

27     Q.    Where was he standing when you saw this?

28     A.    In the closet.

1       Q.   Okay.  Do you want me to put a picture up?

2   Would that help you describe it?  Okay.  And that's

3   okay too if you want me to show you a picture to help

4   you remember.  I'll put it right up here.  So let me

5   take -- does that show, showing you Exhibit B., does

6   that show the closet?

7       A.   Yes.

8       Q.   Okay.  And is the closet the big long

9   rectangular object in the sort of upper middle center

10  left hand side of the picture?

11      A.   Yes.

12      Q.   Okay.  And so he was standing in front of it?

13      A.   Yes.

14      Q.   Okay.  And which direction was he facing?

15      A.   On the closet.

16      Q.   He facing towards the closet?

17      A.   Yes.

18      Q.   Was he putting stuff away inside the closet or

19  was he just standing there?  Or do you remember?

20      A.   I don't remember.

21      Q.   Okay.  It's a great answer, okay?  A lot of

22  people don't remember things.  And where were you

23  standing or sitting?  Or what were you doing?  Were you

24  standing or sitting at the time you saw in this?

25      A.   Sitting.

26      Q.   Okay.  And where were you sitting, where you

27  put the sticky where it says, "Ms. A."?

28      A.   Yeah.

1      Q.   Great.  How far do you think that is?  Do you
2   know feet?  You probably can't tell.  Let me see if I
3   can make it easier for you, okay?  Every lawyer always
4   has a tape measurer in their bag, okay?  So it's
5   probably hard for you to guess like how many feet,
6   right, because that's not easy to do.  But if you hold
7   the tape measurer, can you tell me how far you think
8   Mr. Chandler was away from you when you saw him or
9   thought you saw him putting his zipper up?  Think you
10  can do that for me?
11     A.   Yes.
12     Q.   Okay.  So you take that, hold that right close
13  to you, all right?  And you tell me where to stop.  You
14  can tell me closer or farther.
15     A.   Farther.
16     Q.   Farther?
17     A.   Right there.
18     Q.   Okay.  So I'm looking at the tape and right to
19  my chest is eight feet, 96 inches.  Is that about
20  right?
21     A.   Yes.
22     Q.   Great, thanks.  Now, you were sitting in your
23  chair.  And which direction were you facing?
24     A.   To the door.
25     Q.   Towards the door right here?
26     A.   Yeah.
27     Q.   Okay.  And then Mr. Chandler was out of the
28  side, facing the closet?

1      A.   Yeah.

2      Q.   So you saw him from the side when you thought

3 you saw him zipping up the zipper.

4      A.   Yeah.

5      Q.   And did you see him do anything or just saw

6 him move his hands?

7      A.   Just saw him move his hands.

8      Q.   And did you have your glasses on?

9      A.   No.

10      Q.   And I think when you testified earlier is you

11 thought you saw him do his zipper, but you're not

12 positive about that.  Is that true?

13      A.   Yes.

14      Q.   Okay.  Um, now, yesterday when we ended, I was

15 trying to figure out, um, how the pushing started.

16 Remember you testified about the pushing and

17 Mr. Chandler pushed you?  okay.  So what I want to find

18 out is, I think you said that he was, you were standing

19 there and he asked you to get down on the ground and

20 then did the pushing, right?

21      A.   He got a ball.

22      Q.   A ball, okay.  I'm sorry, I misstated it.

23 Yeah, you're right.  You said he got a ball out of the

24 blue -- excuse me, red --

25      A.   Red.

26      Q.   Thank you.  Correct me.  The red tub there.

27 Good.  Do you remember what color the ball was?

28      A.   No.

1        Q.   And, um, where had you been just before he
2   took the ball out of the red tub?  Had you come from
3   outside?  Had you already been in the classroom?  Or do
4   you remember?  If you don't remember, that's okay too.
5        A.   I don't remember.
6        Q.   Okay, all right.  Um, you said that you didn't
7   have the blindfold on when you were, he was doing the
8   pushing, right?
9        A.   Yes.
10       Q.   Did you ever have the blindfold on that day or
11   no?
12       A.   No.
13       Q.   Okay, all right.  So I guess that means that,
14   to the best that you recall, you just came into the
15   room that day and he asked you to get down on the floor
16   and he had the ball and did the pushing more or less.
17   Is that fair to say?
18       A.   Yes.
19       Q.   Okay.  Um, now, you said that, um, this yellow
20   water, you saw this yellow water falling?
21       A.   Yes.
22       Q.   And, um, let me show you Exhibit -- well, I'll
23   leave Exhibit B up here.  Is the area where the yellow
24   water fell, can you see that in Exhibit B?
25       A.   Yes.
26       Q.   Okay.  Let me get you a sticky.
27            Now I'm going to write, "Ms. A. 1," okay?
28   Because we already have a "Ms. A." on there.  I think

1    I'll put "Ms. A. 2."  That's probably easier.  And I'm
2    going to hand that sticky to you.  If I bring the
3    picture over to you, can you put the sticky on there
4    where you think the water fell?
5        A.   Yeah.
6        Q.   Thanks.  Good job.  Great.  So now the Post-it
7    that says, "Ms. A. 2" is where you saw the yellow water
8    fall.
9        A.   Yes.
10           THE COURT:  The witness has placed it in the
11   middle of the photograph towards the bottom edge.
12           Go ahead please.
13           MR. SCHUMB:  Thank you, Your Honor.
14   BY MR. SCHUMB:
15       Q.   Um, now the, um, when yellow water fell on the
16   ground, um, did Mr. Chandler clean it up?
17       A.   No.
18       Q.   No.  Um, you didn't clean it up.
19       A.   No.
20       Q.   So to your knowledge it just stayed there; is
21   that correct?
22       A.   Yes.
23       Q.   Okay.  And I think you said that, while
24   Mr. Chandler was pushing you, he had his hands on your
25   ankles?
26       A.   Yes.
27       Q.   And that was the whole time he was pushing you
28   to the very end?

```
 1        A.   No.
 2        Q.   Well, he put his hands on your ankles when he
 3   started to push, right?
 4        A.   No.
 5        Q.   Do you understand my question?  Am I being
 6   clear?
 7        A.   No.
 8        Q.   Okay.  That's okay.
 9        A.   No.
10        Q.   If you don't understand my question, say,
11   Mr. Chris, I don't understand what you're asking, okay?
12        A.   Okay.
13        Q.   Do you remember, I think you testified that he
14   had you get down on your hands and knees, right?
15        A.   Yes.
16        Q.   And then he put his hands on your ankles?
17        A.   Yes.
18        Q.   And then when he was done pushing you, then he
19   took his hands off your ankles and you got up, right?
20        A.   Yes.
21        Q.   So the whole time he was pushing you, did he
22   have his hands on your ankles?
23        A.   No.
24        Q.   At what point did he take his hands off your
25   ankles?
26        A.   He was -- he got a ball and he did move the
27   ball.
28        Q.   Moved the ball, okay.  Was that at the very
```

```
 1   beginning or was that in the middle while he was
 2   pushing you or what?
 3        A.   The beginning.
 4        Q.   Okay.  So in the beginning he got the ball and
 5   he put it between you and him, right?
 6        A.   Yes.
 7        Q.   Okay.  And then he grabbed your ankles, right?
 8        A.   Yes.
 9        Q.   And then he was pushing you.  And the whole
10   time he was pushing you, after he had the ball there,
11   were his hands on your ankles?
12        A.   No.
13        Q.   At what point did the hands come off your
14   ankles?
15        A.   He just got, um, my ankles and he said to
16   stay.
17        Q.   Okay.  And then did he have his hands on your
18   ankles the whole time?
19        A.   No.
20        Q.   So when did he take his hands off your ankles?
21        A.   Um, he just said to stay.
22        Q.   To stay, okay.  And then did he take his hands
23   off your ankles?
24        A.   Yes.
25        Q.   Okay.  And then what did you do?
26        A.   I don't remember.
27        Q.   Okay, good.  That's a good answer.  That's a
28   fine answer.  If you don't remember, you tell me.  You
```

1   can also tell me, Mr. Chris, I'm confused.  Do you know

2   what that word means where you're confused, you're just

3   not quite sure?

4        A.   Yes.

5        Q.   Okay.  Um, now, I think, um, when we were

6   talking about yesterday when he gave you the liquid,

7   did he give you the liquid all four times that you

8   played the game alone or was it less than four?

9             MS. FILO:  Objection, Your Honor.  Asked and

10  answered.

11            THE COURT:  Just a moment.

12            THE WITNESS:  Two.

13            MR. SCHUMB:  I'm kind of laying a foundation,

14  Your Honor.

15            THE COURT:  Just a moment.

16            Can I have the question read back.

17               (The requested record is read.)

18            THE COURT:  The objection is sustained.

19  BY MR. SCHUMB:

20       Q.   I think you said that there were four times

21  that you played the game with him?

22       A.   Yes.

23       Q.   What times, on which occasions did he give you

24  the liquid?

25            MS. FILO:  Objection, Your Honor, asked and

26  answered.

27            THE COURT:  Sustained.

28       \\\

```
1    BY MR. SCHUMB:
2         Q.   Do you recall that on the second time when he
3    gave you the liquid that, um, you spit it out because
4    you didn't like it?
5              MS. FILO:  Objection, Your Honor, asked and
6    answered.
7              THE COURT:  Sustained.
8              MR. SCHUMB:  All right.
9    BY MR. SCHUMB:
10        Q.   Um, do you recall that the liquid had a taste
11   to it, the liquid that you spit out?
12             MS. FILO:  Objection, Your Honor, asked and
13   answered.
14             THE COURT:  Sustained.
15   BY MR. SCHUMB:
16        Q.   Do you recall that the liquid tasted like
17   juice?
18             MS. FILO:  Objection, Your Honor, asked and
19   answered.
20             THE COURT:  Sustained.
21   BY MR. SCHUMB:
22        Q.   Um, do you recall telling, um, the police
23   officer that the liquid tasted like juice?
24             MS. FILO:  Objection, Your Honor, hearsay.
25             Do you have a page and line reference?
26             MR. SCHUMB:  Well, I think we went through
27   when I objected.
28             THE COURT:  We have to see what the witness'
```

1    answer is.  Could I have the question asked again
2    please.
3            MR. SCHUMB:  Sure.
4    BY MR. SCHUMB:
5        Q.  Do you recall telling the police officer that
6    interviewed you that the liquid tasted like juice?
7        A.  No.
8        Q.  Um, now, at any time did Mr. Chandler ever
9    tell you not to tell anybody about the game you were
10   playing with him?
11       A.  No.
12           MR. SCHUMB:  Um, just confer for a second,
13   Your Honor?
14           THE COURT:  Sure.
15           MR. SCHUMB:  Nothing further, Your Honor.
16   Thank you very much, Ms. A.
17           THE COURT:  Do you have any redirect?
18           MS. FILO:  Yes, Your Honor, thank you.
19                    REDIRECT EXAMINATION
20   BY MS. FILO:
21       Q.  Ms. A., I got a little bit confused yesterday
22   and I'm hoping you can, um, just make it, uh, clear for
23   me, okay?
24           MR. SCHUMB:  Objection, Your Honor, counseling
25   the witness.
26           THE COURT:  Overruled.  What's your next
27   question please?
28           MS. FILO:  Thank you.

```
1    BY MS. FILO:
2         Q.   Ms. A., you said that you think you said that
3    you played the game with the whole class present one
4    time; is that correct?
5         A.   Yes.
6         Q.   When you played the game in front of the
7    class, did Mr. Chandler put food in your mouth?
8         A.   Yes.
9         Q.   When you played the game in front of the whole
10   class, do you remember what kind of food Mr. Chandler
11   used?
12        A.   No.
13        Q.   When you played the game alone with
14   Mr. Chandler, did Mr. Chandler put food in your mouth?
15             MR. SCHUMB:   Objection, asked and answered.
16             THE COURT:   Overruled.
17             THE WITNESS:   Um, no.
18   BY MS. FILO:
19        Q.   How sure are you?
20             MR. SCHUMB:   Objection, calls for speculation,
21   ambiguous.
22             THE COURT:   Overruled.   Did you understand the
23   question?
24             THE WITNESS:   No.
25             THE COURT:   It's okay when you don't
26   understand.   It's okay to say you don't understand.
27   BY MS. FILO:
28        Q.   Sometimes -- when I say my name is
```

```
 1    Ms. Allison, I am one hundred percent sure that that's
 2    my name, right?  But I might -- if you ask me what I
 3    had for lunch yesterday, I might say I think I had a
 4    salad, but I'm not really sure.  I'm only like 50
 5    percent sure.  Does that make sense?
 6         A.   Yes.
 7         Q.   Okay.  So I just want to know when you are
 8    telling us about whether or not Mr. Chandler used food
 9    on the times that you were alone with him and you say
10    no, he didn't use food, how sure are you?
11              MR. SCHUMB:  Objection.
12    BY MS. FILO:
13         Q.   Really sure?  Or little bit sure?
14              MR. SCHUMB:  Objection, argumentative.
15              THE WITNESS:  I'm not really sure.
16    BY MS. FILO:
17         Q.   Okay.  So is it fair to say that he might have
18    used food and he might not, you're not a hundred
19    percent sure?
20         A.   Yes.
21         Q.   Okay, fair enough.  You said that we've
22    been -- remember you drew the picture yesterday and we
23    were calling that "the thing"?
24         A.   Yes.
25         Q.   Okay.  I think when I asked you questions
26    yesterday, I think you told me that, every time you
27    played the game alone with Mr. Chandler, he put the
28    thing in your mouth; is that correct?
```

```
1         A.   Yes.
2         Q.   And you also were asked a little bit about,
3    um, by Mr. Chris about the blindfold.  Do you remember
4    those questions?
5         A.   Yes.
6         Q.   Okay.  Um, who would put the blindfold on, you
7    or Mr. Chandler?
8              MR. SCHUMB:  Objection, asked and answered.
9              THE COURT:  Overruled.  I had a question about
10   that myself.
11             THE WITNESS:  Me.
12   BY MS. FILO:
13        Q.   Did you put it on every time?
14        A.   Yes.
15        Q.   Okay.  Um, when you were sitting in the chair
16   and Mr. Chandler put the thing in your mouth, did you
17   have to tilt your head at all in order to get the thing
18   in your mouth?
19        A.   No.
20        Q.   Okay.  So you could keep your head totally
21   looking straight ahead; is that correct?
22        A.   Yes.
23        Q.   I also was a little bit confused about when
24   you got glasses.  Do you remember when you got
25   glasses?  And if you don't remember, that's okay.
26        A.   I don't remember.
27        Q.   Was it sometime during third grade?
28        A.   No.
```

1          Q.   Was it sometime while you were in
2     Mr. Chandler's class from the beginning of the school
3     year to the end of the school year?
4          A.   End.
5          Q.   Okay.  Was it while you were in Mr. Chandler's
6     class or do you not know?
7          A.   I don't know.
8          Q.   Okay, fair enough.  Mr. Chris also asked you,
9     um, if you told anybody before that you had, that you
10    touched the blindfold.  Do you remember that question?
11         A.   No.
12         Q.   Okay.  Um, other than Mr. Chris, do you
13    remember whether or not anyone ever asked you that
14    question?
15         A.   No.
16         Q.   Okay.  So you don't remember anyone ever
17    asking you that.
18              MR. SCHUMB:  Objection, asked and answered.
19              THE COURT:  Sustained.
20              THE WITNESS:  No.
21              THE COURT:  The answer's stricken.
22              MS. FILO:  Thank you.
23    BY MS. FILO:
24         Q.   Ms. A., Mr. Chris just asked you, um, about
25    the time that you talked to the police.  Do you
26    remember that question?
27         A.   Yes.
28         Q.   And he asked you, um, whether or not you told

```
 1   the police that you had talked to your cousin.  Do you
 2   remember that question?
 3        A.   Yes.
 4        Q.   And you have been real clear here I think that
 5   you did talk to your cousin, right?
 6        A.   Yes.
 7        Q.   And you talked to your cousin before you
 8   talked to the police, correct?
 9        A.   Yes.
10        Q.   If you told the policeman that you did not
11   talk to your cousin, would that have been incorrect?
12        A.   Yes.
13        Q.   Okay.  Um, so that's something you would
14   change if that's what it said?
15        A.   Yes.
16        Q.   Because that's not right.
17        A.   Yes.
18        Q.   Were you trying to be dishonest?
19        A.   No.
20        Q.   Were you trying to tell a lie?
21        A.   No.
22        Q.   So you just said something wrong.
23        A.   Yeah.
24        Q.   Okay.  I also had just a few questions about
25   that time that you were on your hands and knees, okay?
26        A.   Okay.
27        Q.   Ms. A., did you get on your hands and knees
28   before or after Mr. Chandler got the ball?  And if you
```

```
 1   don't remember, that's okay.  I just need to know which
 2   one it is.
 3       A.   I don't remember.
 4       Q.   Okay.  Did you see him pick up a ball?
 5       A.   No.
 6       Q.   How do you know that Mr. Chandler had the
 7   ball?
 8       A.   I felt the ball.
 9       Q.   You felt the ball, okay.  So you said that it
10   was a ball and it came from the red bucket, right?
11       A.   Yes.
12       Q.   How do you know it came from the red bucket?
13       A.   Because I felt the ball.
14       Q.   Was -- you felt the ball?  So you said that's
15   where the ball came from, but you didn't see
16   Mr. Chandler get it from there.
17       A.   Yes.
18       Q.   Is that correct?
19       A.   Yes.
20       Q.   Okay.  So are you just guessing that that's
21   where the ball came from?
22       A.   Um, I think.
23       Q.   You think?
24       A.   (Witness nods head.)
25       Q.   Tell me why you think that.
26       A.   Because all of the balls are there.
27       Q.   Okay, I understand.  So that's where the balls
28   are stored?
```

```
 1        A.   Yes.
 2        Q.   So you didn't see him actually take the ball
 3   out of the bucket.
 4        A.   Yes.
 5        Q.   Is that correct?
 6        A.   Yes.
 7        Q.   But you felt a ball behind you.
 8        A.   (Nods head.)
 9        Q.   You said that Mr. Chandler had his hands on
10   your ankles?
11        A.   Yes.
12        Q.   How long were his hands on your ankles?  Could
13   you tell?
14        A.   No.
15        Q.   Was it a short time or a long time?  Or
16   something in between?
17        A.   A long time.
18        Q.   Okay.
19        A.   A short time.
20        Q.   Okay.  So, um, and were his hands on your
21   ankles as soon as you got down on your hands and knees
22   kind of at the beginning?
23        A.   Yes.
24        Q.   Okay.  And he said stay there?
25        A.   Yes.
26        Q.   Okay.  Ms. A., did you ever see anything
27   around you or Mr. Chandler where this yellow water
28   stuff could have come from?
```

1          MR. SCHUMB:  Beyond the scope of -- objection,

2     beyond the scope of cross.

3          THE WITNESS:  No.

4          THE COURT:  Overruled.  I'll allow the answer

5     to stand.

6          MS. FILO:  All right, thank you very much,

7     Ms. A., I think that's all the questions that I have.

8          THE COURT:  Recross?

9                    RECROSS EXAMINATION

10    BY MR. SCHUMB:

11        Q.   Um, Ms. A., have you talked to anybody about

12    Mr. Chandler since we testified yesterday?

13        A.   Yes.

14        Q.   Who did you talk to?

15        A.   My other big cousin.

16        Q.   Your other big cousin?

17        MS. FILO:  Objection, Your Honor.

18    BY MR. SCHUMB:

19        Q.   What's her name?

20        THE COURT:  Sustained.

21        MR. SCHUMB:  Well, Your Honor, I believe --

22    BY MR. SCHUMB:

23        Q.   Didn't the judge tell you not to talk to

24    anybody?

25        MS. FILO:  Objection, Your Honor.  That was

26    not the court's instruction.

27        MR. SCHUMB:  If I may finish my question?

28        THE COURT:  It's beyond the scope of redirect

1    and, um --

2            MR. SCHUMB:  I'm trying to inquire whether

3    there may have been a violation.

4            THE COURT:  It's also discovery.

5            MR. SCHUMB:  I think --

6            THE COURT:  If the court has a concern, I'll

7    pursue that line of inquiry.  Thank you.

8            MR. SCHUMB:  Thank you.

9    BY MR. SCHUMB:

10       Q.  Um, the, um, did you ever see the ball on

11   Mr. Chandler's hands?

12       A.  No.

13           MR. SCHUMB:  Um, now, the picture -- can I see

14   Exhibit, I think it's 2, Your Honor.

15   BY MR. SCHUMB:

16       Q.  Now, this drawing that you made yesterday, do

17   you remember that?

18       A.  Yes.

19       Q.  Exhibit 3 I'm showing the witness.  Um, and

20   you said you saw that there underneath your blindfold.

21       A.  Yes.

22       Q.  Okay.  And, um, did you see it when

23   Mr. Chandler was, had the thing in your mouth or was

24   the thing not in your mouth?

25           MS. FILO:  Objection, asked and answered and

26   beyond the scope of redirect.

27           THE COURT:  Sustained.

28   \\\

1   BY MR. SCHUMB:

2        Q.   Um, did -- on what ground, Judge?  Both?

3             THE COURT:  Yes.

4             MR. SCHUMB:  Um, well, Your Honor, there were

5   questions about the blindfold.

6             THE COURT:  Well, counsel, the part calling a

7   witness performs direct examination.  And cross

8   examination is restricted to those subjects.  Redirect

9   clears up any holes, and recross addresses itself to

10  that.  We can't allow redirect or recross to go over

11  the same ground.  It's extraordinarily time consuming.

12  That's why the rules are against it.

13            MR. SCHUMB:  I just have two questions.

14            THE COURT:  If you want to call her as your

15  own witness and I can get an offer of proof, yes.  Why

16  don't you finish your recross and we'll take up the

17  issue of anything that wasn't covered in redirect.

18            MR. SCHUMB:  All right.

19  BY MR. SCHUMB:

20       Q.   Ms. A., did you talk to your cousin last night

21  about your testimony?

22            MS. FILO:  Objection, beyond the scope of

23  redirect and discovery.

24            THE COURT:  Sustained.

25            MR. SCHUMB:  Thank you.  Thank you, Ms. A.

26                        EXAMINATION

27  BY THE COURT:

28       Q.   Um, Ms. A., I have a question.  I heard you

```
1    say, and I think because I wrote it down, I think I
2    heard you say that a boy named Kevin played the game
3    and that you looked in the room and you looked in the
4    room and saw Kevin and Mr. Chandler and Kevin was
5    trying to guess what that was.  Did I hear you right?
6         A.   Yes.
7         Q.   Was that in front of the whole class or not in
8    front of the whole class?
9         A.   Not in front of the whole class.
10        Q.   I know you saw Mr. Chandler and Kevin.  Did
11   you see anybody else in the classroom?
12        A.   No.
13        Q.   Um, was Kevin standing up?  Sitting down?  Or
14   lying down?  Or what?
15        A.   Sitting down.
16        Q.   And was Mr. Chandler sitting up?  Standing?
17   Or lying?  Or what?
18        A.   Standing.
19        Q.   Okay.  How do you know they were playing the
20   game?
21        A.   Because I was there.
22        Q.   Because?
23        A.   I was inside the room.
24        Q.   What did you see?
25        A.   Um, just gave him, um, candy and guess what it
26   was.
27        Q.   Okay.  Did you see anything else?
28        A.   No.
```

```
 1              THE COURT:  All right, thank you.
 2         Um, Ms. Filo, do you have any questions of
 3    Ms. A., just based on the questions that I just asked?
 4              MS. FILO:  Just one.
 5                    REDIRECT EXAMINATION
 6    BY MS. FILO:
 7       Q.   Ms. A., was Kevin the boy that played the game
 8    with you when you did play it in front of the whole
 9    class?
10       A.   No.
11              MS. FILO:  Okay, thank you.
12              THE COURT:  Um, Mr. Schumb, do you have any
13    questions of Ms. A., based on the questions that I just
14    asked?
15              MR. SCHUMB:  No, Your Honor.
16              THE COURT:  All right.  Now, Mr. Schumb, do
17    you wish to call Ms. A. out of order as your own
18    witness?
19              MR. SCHUMB:  Yes, Your Honor.
20              THE COURT:  May I have an offer of proof?  Go
21    ahead.
22              MR. SCHUMB:  I just want to ask questions
23    about Exhibit 3 and her perception of what's depicted
24    in it.  We're talking two or three, maybe four
25    questions.
26              THE COURT:  Just a moment.
27              I don't show that it was covered in cross, so
28    I'll allow it.
```

1          MR. SCHUMB:  Thank you, Your Honor.  Just a
2  few questions.
3          THE COURT:  Go ahead, sir.
4                    CROSS EXAMINATION
5  BY MR. SCHUMB:
6      Q.  Ms. A., in looking at Exhibit 3, um, I had a
7  question for you.  When you say you saw what's depicted
8  in Exhibit 2, um, was the thing being put in your
9  mouth?
10     A.  Yes.
11     Q.  Okay.  So that when it was in your mouth, you
12 were able to look underneath your blindfold and see
13 what's depicted in Exhibit 3?
14     A.  Yes.
15     Q.  Okay.  Um, and about how long were you able to
16 look out of the bottom of the blindfold?  If you can
17 recall.
18     A.  I don't know.
19         MR. SCHUMB:  Okay.  You don't remember?  Thank
20 you.
21         Thank you, Your Honor.
22         THE COURT:  All right.  Ms. Filo, do you have
23 any questions of Ms. A.?
24         MS. FILO:  No.  Thank you.
25         THE COURT:  Is Ms. A. excused or would either
26 side like her to remain on phone standby?
27         MR. SCHUMB:  Excused, Your Honor.
28         MS. FILO:  Excused.

1           THE COURT:  Ms. A., thank you very much for
2   coming in.  I appreciate your help.  You're free to
3   go.  Thank you very much.  Bye bye.
4           MS. FILO:  Thank you, Your Honor.  The People
5   call officer Russ Chubon.
6           THE COURT:  All right.
7           MR. SCHUMB:  May we take a quick stretch break
8   before we start?
9           THE COURT:  Yes.
10                  (A recess is taken.)
11          THE COURT:  Thank you.  Please call your next
12  witness.
13          MS. FILO:  Thank you, Your Honor.  The People
14  call officer Russ Chubon.
15  RUSSELL CHUBON:
16          COURT CLERK:  Do you solemnly state under
17  penalty of perjury that the evidence you shall give in
18  this matter shall be the truth, the whole truth, and
19  nothing but the truth?
20          THE WITNESS:  I do.  Thank you.  Please have a
21  seat.
22          Would you please state and spell your full
23  name for the record.
24          THE WITNESS:  Russell Chubon, R-U-S-S-E-L-L,
25  C-H-U-B-O-N.
26          THE COURT:  Thank you.  Go ahead please.
27          MS. FILO:  Thank you, Your Honor.
28  \\\

1                    DIRECT EXAMINATION

2    BY MS. FILO:

3        Q.   Um, Mr. Chubon, are you a police officer with

4    the City of San Jose?

5        A.   Yes, I am.

6        Q.   How long have you been employed in that

7    capacity?

8        A.   Um, for the City of San Jose, 11 years.

9        Q.   What's your current assignment within the

10   police department?

11       A.   I'm assigned as a detective in the sexual

12   assault unit.

13       Q.   Were you working in that capacity on or about

14   January 9th, 2012, this year?

15       A.   Yes.

16       Q.   Were you attached to an investigation

17   occurring at O.B. Whaeley Elementary School in the City

18   of San Jose?

19       A.   Yes.

20       Q.   Um, were you given the specific assignment to

21   photograph the classroom, Classroom Number 1?

22       A.   Yes.

23       Q.   And do you see a large photograph which I

24   think is Exhibit, Defense Exhibit B and another on the

25   ground, Defense Exhibit A?  Did you take both of those

26   pictures?

27       A.   I did.

28       Q.   Did you also, um, endeavor to collect some

1   chairs from the classroom?

2       A.   I did.

3       Q.   What did you collect?

4       A.   I collected two chairs that were, have

5   plastic, um, seats with a cloth cover on rollers.

6       Q.   Is one of those chairs depicted in defense

7   Exhibit B?

8       A.   It is.

9       Q.   And is that the one that is -- it's the only

10  blue chair depicted in Exhibit B.  Is that accurate?

11      A.   Correct.  It's located at the desk.

12      Q.   Where -- and I'm going to put up, if I may,

13  um, Defense Exhibit A.  Where was the other blue chair

14  that you collected?

15      A.   It was to the left of the photograph.  There

16  was a U-shaped table.  In the center of the table on

17  the back side near the wall there was a second chair

18  that had wheels.

19      Q.   So on the far left hand side of Defense

20  Exhibit A, there's what appears to be almost a corner

21  of a table.

22      A.   Correct.

23      Q.   Is that this U-shaped table that you're

24  talking about?

25      A.   Yes.

26      Q.   And the chair with the wheels was on the, kind

27  of inside?

28      A.   Correct.

```
 1        Q.   Was it kind of half a donut, that interior
 2   that was not covered by a table?
 3        A.   Yes.
 4        Q.   You collected that chair as well?
 5        A.   I did.
 6        Q.   Um, how did you collect them?  I mean, they're
 7   awkward items.  What did you do with them?
 8        A.   We transported them to the police department.
 9   Um, they were too large to place as a whole entity
10   inside a paper bag, so I removed the wheels on the
11   bottom and I placed each seat in a separate paper bag
12   and sealed them.
13        Q.   What did you do with them once you have sealed
14   them?
15        A.   I secured them in our office and notified the
16   case officer.
17        Q.   And is the case officer sitting to my right,
18   Officer Sean Pierce?
19        A.   Yes.
20        Q.   Are they marked in some way as being
21   associated with the case?
22        A.   Yes.  I put, I believe that there was an
23   evidence sticker attached to each one with a case, the
24   number, and the location where they were located.
25        Q.   Thank you.  Can you tell me approximately when
26   you collect those chairs?
27        A.   It was in the afternoon of January 10th.
28             MS. FILO:  That's all the questions I have,
```

```
 1   Your Honor.
 2           THE COURT:  Cross exam please?
 3           MR. CLARK:  I would just preface I did
 4   subpoena this officer as well, so I want the court to
 5   know I subpoenaed him.
 6           THE COURT:  Thank you.
 7           MR. CLARK:  I do have more questions if we
 8   could do it at all once.
 9              CROSS AND DIRECT EXAMINATION
10   BY MR. CLARK:
11      Q.  Officer, I'm going -- my name is Steve Clark.
12   I'm one of Mr. Chandler's attorneys.  If you don't
13   understand a question that I ask, please let me know.
14      A.  Okay.
15      Q.  If you do answer a question, I will assume you
16   understood my question.  Is that fair?
17      A.  Yes.
18      Q.  In terms of what the district attorney asked
19   you, you were tasked with a couple things relative to
20   Mr. Chandler's investigation, correct?
21      A.  Correct.
22      Q.  One of those was to take photographs.  Did you
23   have a title relative to this investigation, like
24   finder or something like that?
25      A.  I was the designated finder, correct.
26      Q.  With does that mean?
27      A.  I'm the person who's tasked with the job of
28   collecting the evidence.
```

1     Q.   Okay.  You've acted in that capacity on other
2  investigations, I take it?
3     A.   Yes.
4     Q.   Um, and in terms of when you locate items, are
5  you supposed to take photographs of the item where it's
6  located?
7     A.   You can.
8     Q.   I understand you can, but my question is, are
9  you supposed to do it relative to your understanding of
10 what a finder does?
11         MS. FILO:  Objection, Your Honor, relevance.
12         THE COURT:  Offer of proof?
13         MR. CLARK:  Well, I have not seen a photograph
14 of the second chair, and I'm just wondering why there
15 wasn't a photograph.
16         THE COURT:  Well --
17         MR. CLARK:  I can ask it this way, if the
18 court doesn't want that question.
19 BY MR. CLARK:
20    Q.   Did you take a photograph in your
21 investigation that shows the chair, the second chair
22 which is not the chair behind Mr. Chandler's desk?
23    A.   If I could review my photos.  There may be an
24 image of it.
25    Q.   Thank you.
26    A.   Yes, I see a picture.
27    Q.   Thank you.  May I approach, Your Honor?
28         THE COURT:  Sure.

1    BY MR. CLARK:

2        Q.    You were shuffling through photographs.   Do

3    you know how many photographs you took?

4        A.    No.   In the upper right corner there's the

5    U-shaped table with the chair I described.

6        Q.    Um, let's -- I'm going to represent to you

7    that I printed every photograph you took.   Would you be

8    able to find it in my bigger photographs, the one that

9    depicts the chair?

10       A.    I could look.

11              It's in this picture right here.

12              MR. CLARK:   Thank you.   Um, I have the

13   photograph that the officer just indicated and I'd like

14   to have that marked as the defendant's next in order.

15              THE COURT:   It would be Defendant's C.

16              (Defendant's Exhibit C is marked.)

17   BY MR. CLARK:

18       Q.    Officer, um, I've marked Exhibit C, which is a

19   photograph, that you tell me shows Chair Number 2.   Um,

20   did you take that photograph?

21       A.    I did.

22       Q.    Can you, um, with a yellow sticky, indicate

23   where Chair Number 2 is in that photograph.

24              THE COURT:   Officer Chubon, would you write

25   something on that sticky.   I don't know, a name or

26   something.   Thank you.

27   BY MR. CLARK:

28       Q.    How far were you away from that chair when you

1   took that photograph?

2      A.   I believe I was standing in the center of the

3   room and taking pictures of each angle of the room.

4      Q.   Can you tell me how far you were away from the

5   chair, um, that you just said is depicted on Defense 3,

6   when you took the photograph?

7      A.   I could only guess.  Thirty feet?

8      Q.   Okay.  Was someone directing -- okay.  You're

9   guessing 30 feet.  And that's based on what?

10      A.   Just an approximation of the size of the room.

11      Q.   Okay.  Um, you were indicating, I think, um,

12   that you were taking photographs, you know, sort of in

13   a circular fashion around the room.  Is that fair to

14   say?

15      A.   Correct.

16      Q.   Was it just fortuitous that the chair is

17   depicted in that exhibit or did you deliberately seek

18   to take a picture of the chair?

19      A.   I don't remember.

20      Q.   Okay.  Was anyone directing you on what to

21   take pictures of?

22      A.   No.

23      Q.   Did anyone brief you on the case before you

24   started taking pictures?

25      A.   Yes.

26      Q.   Who?

27      A.   Detective Pierce.

28      Q.   And why did you take the chair?

1      A.   I took which chair?

2      Q.   Well, that's a good question.  Why did you

3 take the picture in Defense 3?

4      A.   I wanted to show a representation of that side

5 of the room.

6      Q.   So it wasn't taken for the purpose of focusing

7 in on the second chair, correct?

8      A.   Correct.

9      Q.   Because the picture doesn't do that, does it?

10      A.   Correct.

11      Q.   Um, in retrospect, do you feel you should have

12 taken a closer picture of the chair?

13          MS. FILO:   Objection, relevance, calls for

14 speculation.

15          THE COURT:   Sustained.

16 BY MR. CLARK:

17      Q.   Did the chair that you say is shown in Defense

18 3, did it have any kind of a tag or a label on it

19 before you put an evidence tag on it?

20      A.   No.

21      Q.   Are there are any other photographs, other

22 than the ones you've scanned, that you just scanned and

23 told us about where that chair is?

24      A.   No.

25      Q.   Um, was Officer Pierce present when you were

26 taking these photographs?

27      A.   No.

28      Q.   When were you briefed by Officer Pierce in

```
 1   relation to when you took the photographs?
 2        A.   Sometime before.
 3        Q.   Can you be a little more specific?
 4        A.   Within an hour of taking the photographs.
 5        Q.   Did he tell you to collect the chairs?
 6        A.   Yes.
 7        Q.   Did he tell you why?
 8             MS. FILO:  Objection, calls for hearsay.
 9             THE COURT:  Sustained.
10             MR. CLARK:  I think that that question
11   actually goes to the methodology used in the collection
12   of the chair.
13             THE COURT:  It's hearsay.
14             MR. CLARK:  I'm not offering it for the truth
15   as to why Officer Pierce may have done it, but if he
16   said I think there may be D.N.A. on that chair, collect
17   it and then this protocol is used, I think that's a
18   legitimate question so I'm not offering it for what
19   Officer Pierce's intention might have been.
20             THE COURT:  You're offering it for the
21   nonhearsay purpose of explaining this witness'
22   questions?
23             MR. CLARK:  Yes.
24             THE COURT:  I'll allow it for that limited
25   purpose.
26             THE WITNESS:  If you could restate your
27   question.
28             MR. CLARK:  Um, I'm going to have it read
```

```
 1   back.
 2                 (The requested record is read.)
 3   BY MR. CLARK:
 4       Q.   Did he tell you why he wanted those chairs
 5   collected?
 6       A.   Yes.
 7       Q.   What was the reason?
 8       A.   The multiple victims mentioned, um, being
 9   assaulted on some chairs.  They were described, and I
10   collected them.
11       Q.   And you collected only those chairs that
12   you've described.
13       A.   Correct.
14       Q.   Now, did you disassemble the chair?  What I
15   mean by that is, you took the legs off.  Where did you
16   do that?
17       A.   I did that in it our office.
18       Q.   So you took the whole chair back with you to
19   San Jose Police Department?
20       A.   Correct.
21       Q.   Then disassembled it?
22       A.   Correct.
23            MR. CLARK:  Um, I'm going to show you what's,
24   um, for purposes of counsel, Bates stamped, "D.N.A.
25   Exhibit 7,"
26            Ms. Filo, are you with me?
27            MS. FILO:  Yep.
28   \\\
```

BY MR. CLARK:

    Q.   I'm going to show you a picture which I believe perhaps is the chair you collected, see if you recognize this, which appears from the picture, to be a blue chair without legs.

    A.   Correct.

    Q.   Does that look familiar?

    A.   It does.

    Q.   There's a protruding label on it, for lack of a better word; is that correct?

    A.   Yes.

    Q.   Was it on there when you collected it?

    A.   It was.

    Q.   I thought you just told me it didn't have a label.

    A.   It didn't have an independent label, a unique label that you had mentioned.

    Q.   So you're saying that you recall seeing this protruding piece of paper from the chair.

    A.   Yes.

    Q.   When you, um, collected the chairs, did you bag them?

    A.   I did.

    Q.   And tell me about that.  How did you do that?

    A.   I used a clean, large paper bag.  I wore plastic latex gloves, um, put the bag, or, excuse me, put the chair into the bag and sealed it.

    Q.   Um, and then you booked it into evidence?

1      A.   I did.

2      Q.   And when did you do that?

3      A.   I'd have to refer to my report to get you a

4   date and time.

5      Q.   Okay.

6      A.   Um, I'm sorry, I don't have those property

7   sheets.

8      Q.   Okay.  Did you prepare a police report in this

9   case?

10     A.   I did.

11     Q.   And is there anything relative to what you

12  did, um, in terms of the chair collection in your

13  police report?

14     A.   I think it's the summary that says it was

15  collected and booked as evidence.

16     Q.   Do you have your police report?

17     A.   I do.

18     Q.   Where is it in your police report?

19     A.   Um, January 10th, second page, lines 20 and

20  21.

21     Q.   There's nothing of a narrative nature

22  discussing the collection of the chairs, correct?  It's

23  just you collected two chairs.

24     A.   There is a narrative that says I collected and

25  booked into evidence the following items and they're

26  listed.

27     Q.   That's the extent of your police report on

28  that topic.

1          A.    It is.

2          Q.    And does that report tell you when you booked

3     the chair into evidence?

4          A.    No.  It gives me the date, January 10th, 2012.

5          Q.    Um, I'm going to show you a property receipt

6     from San Jose P.D.  If you want to take a look at that,

7     if this helps when you booked the chair into evidence.

8          A.    It would, but it's not, I can't read the, um,

9     oftentimes there will be a date on the bottom, but I

10    can't read it.

11         Q.    Okay.  Did you put a date on it?

12         A.    The property clerk did.

13         Q.    Have you ever removed the chairs from evidence

14    from the evidence room?

15         A.    I did.

16         Q.    What did you do relative to moving the chairs?

17         A.    They were several items of evidence.  Um, the

18    chairs, specifically, were, for a chain of custody,

19    they were booked into evidence with the property

20    clerk.  Um, I believe at the bottom of that report

21    there should be a date and time.  Then I removed them

22    and then I secured them in our locked office.

23         Q.    Okay.  From point A, which is when the

24    property clerk booked it, to the point that you moved

25    it to the San Jose P.D. evidence locker, did you make a

26    note of that anywhere?

27         A.    I believe on the back of the property report

28    there will be a note that says that it was turned into

DENISE NEBOLON, CSR #9344, OFFICIAL COURT REPORTER          401

1   my custody.

2          Q.   And that you then took a further step and

3   booked it into the police department?

4          A.   It's the same.

5          Q.   After that.  That should be part of the

6   booking form, correct?

7          A.   It should be.

8          Q.   Okay.  And if it's not there, would that

9   concern you?

10          A.   It wouldn't concern me because that would be

11   something that the property clerk would fill out.

12          Q.   Not a concern to you, though.

13          A.   Well, I don't know what's there or isn't so I

14   don't know.

15          Q.   All right.  Um, did you ever, after that

16   point, do anything, remove the chair from evidence?

17          A.   Yes.  I secured it into our locked office.

18          Q.   I'm sorry.  Now the chairs are in your locked,

19   into the San Jose P.D. locked office.  Did you ever

20   take the chairs out of the locked office?

21          A.   No.

22          Q.   Have you ever handled the chairs since that

23   time?

24          A.   No.

25          Q.   Now, you also took a jacket into evidence,

26   correct?

27          A.   Yes.

28          Q.   And that would be page 2 of 2 of your report?

```
 1        A.   Correct.

 2        Q.   Okay.  And why did you take the jacket into

 3   evidence?

 4        A.   Um, one of the victims had reported that there

 5   was, it was a jacket she was wearing during an assault.

 6        Q.   Um, and you brought it in to see if there was

 7   any forensic evidence on the jacket, correct?

 8        A.   I collected it simply to seize that piece of

 9   evidence.

10        Q.   Why?

11        A.   The victim had said that during her assault or

12   during her --

13        Q.   Let me ask.  I don't mean to interrupt you,

14   but did the victim talk to you, this so-called victim

15   that you just said?  Or you're hearing this from

16   another person?

17        A.   The victim's mother told me.

18        Q.   Okay.  I didn't mean to interrupt you.  Go

19   ahead.

20        A.   It was -- this jacket, uh, was in the October

21   original incident.  It was now January, so the jacket

22   was collected to demonstrate that that was the jacket

23   that the child was wearing.

24        Q.   Was it collected to see if there was any

25   forensic value to the jacket, other than it was the

26   jacket that the child was wearing?

27        A.   The mother indicated the jacket had been

28   washed several times.
```

1       Q.   That's not my question.  Why did you collect
2   the jacket?

3       A.   Several reasons.  The victim said to her
4   mother and the mother told me that she was wearing that
5   jacket, and so it was collected.  I don't know what the
6   ultimate intent of the jacket was to be, but it was
7   collected.

8       Q.   And did you collect it for any forensic
9   purpose?

10      A.   I don't know.

11      Q.   Okay.  Did anybody tell you to collect the
12  jacket?

13      A.   Yes.

14      Q.   Who?

15      A.   Detective Pierce.

16      Q.   And he didn't mention any potential forensic
17  purpose to you for collecting the jacket.

18      A.   No.

19      Q.   Did you make any observations about the jacket
20  when you collected it that you think are relevant from
21  a forensic point of view based on your being a police
22  officer?

23      A.   With my naked eye, I didn't see anything, uh,
24  obvious that was out of place with the jacket.

25      Q.   In terms of the jacket, how did you preserve
26  the jacket, if you did?

27      A.   Um, same thing, wearing latex gloves.  I
28  placed it in a clean paper bag.

1    Q.   Is a paper bag, the use of a paper bag, is

2  that an appropriate protocol for San Jose P.D. D.N.A.

3  collection?

4    A.   It is.

5    Q.   I believe Ms. Filo asked you that one of the

6  chairs you collected is behind the desk, um, is that

7  correct, the teacher's desk, that you looked at the

8  larger photo of your photos?

9    A.   Yes, the teacher's desk.

10   Q.   Did that chair have any kind of a protruding

11 label on it?

12   A.   It did.

13   Q.   So what I showed you in the D.N.A. report with

14 this label, is that the chair that you collected from

15 behind the teacher's desk?

16   A.   I don't know if this chair is the one behind

17 the teacher's desk or the teacher's U-shaped desk.  I

18 don't know.

19   Q.   This one appears to have a label on it.  So

20 that doesn't refresh your recollection as to which

21 chair this may have been?

22   A.   I know both of them had a label or labels that

23 said that, basically, cleaning instructions, something

24 possibly about not removing.  And that was it.  There

25 was no serial number.  It was just a generic label.

26   Q.   Do you have a photograph with you that shows

27 one of these chairs with a label on it?

28   A.   No.

1      Q.   Um, is there any reason why not?

2      A.   I didn't take a picture.

3      Q.   And this was to be collected based on your

4  discussion with Officer Pierce for forensic purposes to

5  be used later?

6           MS. FILO:   Objection, asked and answered.

7           THE COURT:   Sustained.

8  BY MR. CLARK:

9      Q.   Um, I want to ask you some questions about the

10 photograph that you took, that you took that's, um,

11 Defense Exhibit B.  Do you recognize that photograph?

12     A.   I do.

13     Q.   Did you take it?

14     A.   I did.

15     Q.   Does it accurately depict what you observed

16 that day in the classroom?

17     A.   It does.

18     Q.   Um, what type of floor is that that's shown in

19 Exhibit A?

20     A.   In that photograph, it's a very, um, low cut

21 carpet.

22     Q.   And there's a door behind, for lack of a

23 better word, the teacher's desk.  Do you see that door?

24     A.   I do.

25     Q.   And in a couple photographs you appeared to

26 take pictures of that door; is that correct?

27     A.   Yes.

28     Q.   Why?

```
 1              MS. FILO:  Objection, Your Honor, relevance.
 2          THE COURT:   Offer of proof?
 3   BY MR. CLARK:
 4      Q.   Let me ask this way:  Did you ever test that
 5   door to see if it locked?
 6      A.   I did.
 7      Q.   Does it lock?
 8      A.   I don't remember if it locks, but it was
 9   unlocked.
10      Q.   Um, do you know if there's a lock on the door?
11      A.   I don't remember.
12      Q.   And you tested it to see if it was unlocked.
13   Why?
14      A.   Just to see what was on the other side of the
15   door.
16      Q.   What was on the other side?
17      A.   Another classroom.
18      Q.   And, um, did you observe anything about the
19   other classroom when you looked in there?
20      A.   It was a similar design to that classroom.
21      Q.   Did it appear to be used as a classroom by
22   another teacher?
23      A.   It was.
24      Q.   And you don't know whether that door locks or
25   not?
26      A.   I don't remember.
27      Q.   Did you take a closeup of the lock?
28      A.   If I could look at my photographs.
```

```
 1        Q.   Sure.
 2             MS. FILO:  Your Honor, the People are willing
 3   to stipulate that the door does not have a lock.
 4             THE COURT:  Is the stipulation accepted?
 5             MR. CLARK:  Yes.
 6             THE COURT:  All right, I'll note that.  Please
 7   ask your next question.
 8   BY MR. CLARK:
 9        Q.   Officer, um, you briefed, or, you were part of
10   a team that did something called an A.L.S. test,
11   correct?
12        A.   Yes.
13        Q.   What is that?
14        A.   It uses an alternate light source camera to
15   look for items which illuminate in darkness.
16        Q.   What type of items?
17        A.   It could be several things.
18        Q.   Can you give us a few examples.
19        A.   It could be, um, blood.  It could be, um,
20   light-colored clothing, um, chalk, paint.  Lots of
21   items will appear brighter with the florescence of the
22   lights.
23        Q.   What about secreted semen?
24        A.   It could observe that as well.
25        Q.   Okay.  Um, did you, um, request to have the
26   A.L.S. lights used to detect whether there was any
27   secreted semen in the classroom?
28        A.   I did.
```

1      Q.    Why?

2            MS. FILO:  Objection, relevance.

3            THE COURT:  Offer of proof please?

4            MR. CLARK:  Many witnesses -- I believe the

5     People proffered evidence that Mr. Chandler potentially

6     could have secreted semen in the classroom and, in the

7     absence of that, I think it's highly relevant.

8            MS. FILO:  The absence of it is a fact.  Why

9     the officer used the device or not is not relevant.  I

10    mean, if it's not there, it's not there.

11           MR. CLARK:  Do you want to stipulate that the

12    A.L.S. detection in this case was negative?

13           MS. FILO:  I think that would be the witness'

14    testimony.

15           MR. CLARK:  Do you want to stipulate to it?

16    That's my question.  Otherwise, I'm going to ask more

17    questions.

18           MS. FILO:  Sure.

19           THE COURT:  All right, I'll note the

20    stipulation.

21    BY MR. CLARK:

22      Q.    And, um, you instructed the team as to where

23    to look, correct?

24      A.    Yes.

25      Q.    And that was based on your briefing with

26    Officer Pierce.

27      A.    Correct.

28           MR. CLARK:  If I may have a moment, Your

1    Honor?

2              THE COURT:  Of course.

3    BY MR. CLARK:

4        Q.   Um, did you make any notes of your collection

5    of these evidence items, other than what's in the

6    police report?

7              MS. FILO:  Objection, discovery.

8              THE COURT:  Sustained.

9    BY MR. CLARK:

10       Q.   Do you have any other police reports about

11   your collection of the evidence, other than your

12   two-page report?

13             MS. FILO:  Objection, discovery.

14             THE COURT:  Sustained.

15   BY MR. CLARK:

16       Q.   Are you satisfied with your police report

17   relative to your, um, collection of the evidence in

18   this case?

19             MS. FILO:  Objection, relevance.

20             THE COURT:  Overruled.

21             THE WITNESS:  Yes.

22   BY MR. CLARK:

23       Q.   Officer, would you, um, go through your

24   photographs that you had previously looked at and show

25   me, if you have any photographs, of a blue chair that

26   you seized that has the tag on it, the fabric tag as

27   you've described it.

28       A.   There are none.

1     Q.   Are there pictures of the chair that do not

2   have a tag on it?

3     A.   Yes.

4     Q.   Did you remove the tag?

5     A.   No.

6     Q.   How do we know that you're talking about the

7   same chair?

8     A.   It's the same chair I collected and booked

9   into the bag.

10     Q.   The picture I showed you from the D.N.A. lab

11   has a tag on it, but you don't see one on your

12   photographs.  You're pretty confident that you got the

13   same chair?

14     A.   Yes.

15         MR. CLARK:  Nothing further.

16         THE COURT:  Redirect?

17         MS. FILO:  Thank you.

18             REDIRECT AND CROSS EXAMINATION

19   BY MS. FILO:

20     Q.   Just one question, Officer Chubon.  Did you

21   have any idea of the evidentiary value that would

22   ultimately come of the chairs that you collected on

23   those days?

24     A.   No.

25     Q.   Were they of any, um, greater interest to you

26   than anything else in the classroom that day?

27     A.   No.

28         MS. FILO:  Thank you.  Nothing further.

```
 1                    RECROSS EXAMINATION
 2  BY MR. CLARK:
 3       Q.   What is your job as a police officer?
 4            MS. FILO:  Objection, vague.
 5            THE COURT:  Sustained.
 6  BY MR. CLARK:
 7       Q.   You said you had no idea what potential
 8  evidentiary value these chairs had?
 9            MS. FILO:  That wasn't the question.
10            MR. CLARK:  What was the question?
11            THE COURT:  Just a moment.
12            Did you understand the question?
13            THE WITNESS:  I did not.
14            THE COURT:  Could you ask it again pleases.
15            MR. CLARK:  Um, could I have Ms. Filo's
16  question and answer read back.
17                 (The requested record is read.)
18  BY MR. CLARK:
19       Q.   Do you stand by that answer?
20       A.   That I ultimately knew about, correct.
21       Q.   My first question is, do you stand by the
22  answer, the question and answer you just heard?  Do you
23  stand by it?
24       A.   Yes.
25            MR. CLARK:  I have nothing further.
26            THE COURT:  All right.  I have no questions of
27  Officer Chubon.  Is this witness excused or would
28  either side like him to remain on phone standby?
```

```
 1          MS. FILO:  Excused, Your Honor.

 2          THE COURT:  Excused?

 3          MR. CLARK:  Yes.

 4          MS. FILO:  The People call Kristin Cardosa.

 5          THE COURT:  Yes.  Thank you.

 6          MR. CLARK:  Your Honor, I would ask that my

 7  exhibit be admitted.

 8          THE COURT:  There's a motion, um, to introduce

 9  Defendant's C; is that correct?

10          MR. CLARK:  Yes.

11          THE COURT:  Is there an objection.

12          MS. FILO:  No, Your Honor.

13          THE COURT:  C is admitted.  Thank you.

14             (Defendant's Exhibit C is admitted.)

15          THE COURT:  Please step forward please.

16          COURT CLERK:  Raise your right hand please.

17  KRISTIN CARDOSA:

18          COURT CLERK:  Do you solemnly state under

19  penalty of perjury that the evidence you shall give in

20  this matter shall be the truth, the whole truth, and

21  nothing but the truth?

22          THE WITNESS:  I do.

23          COURT CLERK:  Thank you.  Please have a seat.

24          Would you please state and spell your full

25  name for the record.

26          THE WITNESS:  Kristin Cardosa, K-R-I-S-T-I-N,

27  C-A-R-D-O-S-A.

28          THE COURT:  Thank you.  Go ahead please.
```

1          MS. FILO:  Thank you, Your Honor.
2              DIRECT EXAMINATION
3    BY MS. FILO:
4          Q.   Ms. Cardosa, how are you presently employed?
5          A.   I'm currently employed as a criminalist at the
6    Santa Clara County District Attorney's Crime
7    Laboratory.
8          Q.   How long have you been employed by the crime
9    lab?
10         A.   I've been a criminalist there about four and a
11   half years.
12         Q.   What's your present assignment within the
13   crime lab?
14         A.   I work in the forensic biology unit, and I'm a
15   D.N.A. analyst.
16         Q.   How long have you been a D.N.A. analyst within
17   the Santa Clara County Crime Lab?
18         A.   For the four and a half years.
19         Q.   That's been your only assignment within the
20   lab?
21         A.   Before that I worked as a property technician
22   before I was a criminalist.
23         Q.   What training and experience do you have to
24   hold that position?
25         A.   I have a Bachelor of Science in biology from
26   Santa Clara University.  And we went through an
27   extensive in-house training program within the unit
28   once we were hired.

1          MS. FILO:  Um, Your Honor, at this time, the
2    People would offer Ms. Cardosa as an expert in the
3    detection and processing of D.N.A. material collected
4    from items of evidence submitted to the Santa Clara
5    County Crime Lab.
6          THE COURT:  Is there any voir dire on the
7    witness' qualifications.
8          MR. CLARK:  I'll ask a few questions, Your
9    Honor.
10         THE COURT:  Go ahead.
11                   VOIR DIRE EXAMINATION
12   BY MR. CLARK:
13       Q.   Ms. Cardosa, do you have any -- can you
14   elaborate a little bit more on your background in terms
15   of your training in terms of D.N.A. analysis?
16       A.   Sure.  Um, we do a training program first to
17   do for screening for biological material, biological
18   fluids so we screen, we learn how to screen for all the
19   different types of material that we'll be looking for.
20       Q.   We'll take it one at a time.  When did you
21   receive that training?
22       A.   When I was first hired as a criminalist in, I
23   believe it was December of 2007.
24       Q.   How long was the training?
25       A.   I believe I completed the screening and D.N.A.
26   training in approximately nine months.
27       Q.   Who taught it?
28       A.   Our supervisor is primarily responsible for

```
 1   our training program and then we can go to different
 2   experienced analysts for different sections throughout
 3   the process.
 4        Q.   So it was an in-house training.
 5        A.   Yes.
 6        Q.   All right.  We talked about that in 2007.  Can
 7   you -- I didn't mean to interrupt you, but I'll break
 8   it down.
 9        A.   I started in 2007 when I was first hired.  And
10   then I completed it within about nine months.  And I
11   became qualified as an analyst to do case work after
12   that.
13        Q.   When you say you "became qualified," what does
14   that mean?
15        A.   We take an in-house competency test that
16   proves we have successfully completed our training and
17   are qualified to do the job.
18        Q.   Are you certified by, beyond your in-house
19   training certification?  Do you have any other
20   certifications?
21        A.   I do have a certification, but we do take
22   exterior proficient tests every six months.
23        Q.   I guess my question was, are you certified by
24   any other entity besides the in-house certification you
25   described?
26        A.   No.
27        Q.   Have you sought certification from any other
28   outside entity, other than the in-house?
```

```
 1          MS. FILO:  Objection, Your Honor.
 2          THE WITNESS:  No.
 3          THE COURT:  Overruled.  I'll let the answer
 4    stand.
 5    BY MR. CLARK:
 6          Q.   Um, you also talked about you received have
 7    you received training, other than in-house at the Santa
 8    Clara Crime Lab relative to D.N.A. analysis.
 9          A.   Yes.
10          Q.   Can you tell us about that, tell me about
11    that.
12          A.   Yes.  We go --
13          Q.   You keep saying "we."  If you don't mind, just
14    tell me just specifically as to you.
15          A.   Yes.  I refer to our unit because we have the
16    same standards.  I have gone to multiple different
17    classes held by different agencies.  The California
18    Criminalistics Institute hold different classes that I
19    have been a part of.  And then I go to other
20    professional conferences that also hold D.N.A. training
21    sessions.
22          Q.   Okay.  Could you briefly summarize the outside
23    training you received, specifically where you took it
24    and how long and when.
25          A.   Most of that will have to be in my C.V.  I
26    don't know off the top of my head what dates.
27          Q.   Did you bring your C.V. with you?
28          A.   I have a copy, correct.
```

1   Q. Can I just take a quick look at it?

2   A. That is an older copy I believe.  But it has

3 the prior --

4   Q. There's no question pending, but did you want

5 to explain your C.V.?

6   A. No.  If you want to look at it, you can.

7   Q. You said it's old?

8   A. That is an older version.  I'm sorry, I did

9 not print the newer version, but it has the prior

10 trainings on it.

11   MR. CLARK:  Could I have this C.V. marked as

12 defense next in order please.

13   THE COURT:  Defendant's D.

14    (Defendant's Exhibit D is marked.)

15   THE WITNESS:  If you would like me to print

16 the newer version, I can print that.

17 BY MR. CLARK:

18   Q. We'll probably do that, but just for purposes

19 of today.

20   A. Okay.

21   Q. This is your C.V.  It's an older version, but

22 that is your C.V. relative to your D.N.A. experience?

23   A. Yes.

24   MR. CLARK:  I'm going to ask that that be

25 moved into evidence and then returned to her if she's

26 willing to give you a duplicate copy.

27   THE COURT:  So you're asking it be moved into

28 evidence and a newer version be substituted?

1          MR. CLARK:   No.  She said she could print out
2     another one.
3     BY MR. CLARK:
4          Q.   Let me ask it this way:  Would you make your
5     C.V. available to our office, the one that you --
6          A.   Yes.  The current updated version can be made
7     available to you.
8          Q.   With respect to your in-house training that
9     you received, um, you say, do you know how many hours
10    you spent in in-house training?
11         A.   Um, off the top of my head -- hold on one
12    second.
13              In-house training, we didn't record the exact
14    amount of hours within the nine months of training, but
15    the full nine months are full-time training.
16         Q.   Have you ever rendered an opinion in court as
17    an expert?
18         A.   Yes.
19         Q.   How many times?
20         A.   I testified approximately eight times.
21         Q.   "Eight"?
22         A.   Eight.
23         Q.   And were they on the topic of D.N.A. analysis?
24         A.   Yes.
25         Q.   Were they criminal trials?
26         A.   Some were preliminary hearings and some were
27    criminal trials.
28         Q.   Have you ever testified on the topic of D.N.A.

1   analysis, relative to semen?

2       A.   I'm not sure.  I don't remember exactly which

3   cases they were.

4       Q.   I'm not, case specific I'm not worried about.

5   But just in the area of semen analysis and attributing

6   that semen analysis to a particular individual.

7       A.   I've done cases including semen analysis, but

8   I don't recall if I've testified to them.

9       Q.   You don't know if you've been qualified as an

10  expert on that particular topic?

11      A.   I don't recall at this point.

12      Q.   Do you keep track of when you are qualified as

13  an expert as part of your resume?

14      A.   Yes.  The laboratory keeps track of all of our

15  court appearances so I would be able to go back and

16  look at the cases to see which ones they were.

17      Q.   But nothing off the top of your head right now

18  would suggest that you qualified in the area of semen

19  analysis.

20      A.   Not that I can recall at this point.

21          MR. CLARK:  Submitted.

22          THE COURT:  All right, thank you.  I will

23  allow Ms. Cardosa to testify as an expert in the, um,

24  offered field of detection of processing and materials

25  that might contain D.N.A.  Ask your next question

26  please.

27          MS. FILO:  Thank you, Your Honor.

28  \ \ \

CONTINUED DIRECT EXAMINATION

BY MS. FILO:

Q.   Um, Ms. Cardosa, in connection with your responsibilities at the lab, were you asked to analyze two blue chairs that were, um, given laboratory case number M, as in Mary, 120168?

A.   Yes.

Q.   And were those also associated with police report, San Jose Police Department Case Number 120090244?

A.   Yes.

Q.   When an item of evidence -- and I'm talking generally now, not just specific.  When an item of evidence comes in, um, do they generally have an evidence tag attached to the item?

A.   They have, they at least have our evidence label that the agency fills out attached to them. Sometimes they have additional agency tags that the agent puts on them themselves.

Q.   In this particular case, um, two items of evidence were submitted for analysis that were blue plastic chairs; is that correct?

A.   That is correct.

Q.   Was the entire chair submitted to you or just the seats of the chairs?

A.   Just the seat of the chair.  There were no legs.

Q.   What were you asked to do with respect to

1    those two chairs?

2         A.   I was asked to examine the items for the

3    presence of semen.

4         Q.   Did you do that?

5         A.   Yes, I did.

6         Q.   What did you find?

7         A.   Would you like me to go chair by chair?

8         Q.   Please.

9         A.   Okay.  May I refer to my report?

10        Q.   If that will refresh your recollection, that

11   would be great.

12             MR. CLARK:  If I may just interject?  I just

13   want to make sure she's brought her entire report with

14   her.

15             THE WITNESS:  I did bring my entire report,

16   including the note packet.

17             Um, so the first chair which was item SY-01

18   was, um, I did, I looked at it visually.  It was in

19   dirty condition.  Um, I then used an alternate light

20   source which, um, stains will fluoresce.  Multiple

21   biological stains will fluoresce.  It just gives us a

22   way to start looking and where to start.  Um, so I did

23   find multiple stains that did fluoresce.  I then tested

24   all of those stains with our presumptive test for

25   semen.  And I found, um, one positive yellowish white

26   crusty fluorescent stain on the underside of the seat

27   that tested positive with this presumptive test.

28   \\\

1    BY MS. FILO:

2        Q.   Tell me what that presumptive test is.  What

3    does that mean?

4        A.   It's a chemical test that we first, um, do a

5    swabbing or a wet dab of the stain.  And then we test

6    that second substrate with, um, a chemical.  And if it

7    turns purple within a certainly time limit, it is

8    positive.

9        Q.   Is there a further way that you can confirm

10   the presumptive test to ensure that the sample you have

11   collected is, in fact, semen?

12       A.   Yes.  I then took a sample of the stain and I

13   looked at it under a microscope.  And I confirmed the

14   presence of spermatozoa.

15       Q.   And that is something you can visualize; is

16   that correct?

17       A.   That is correct.

18       Q.   You confirmed spermatozoa on the underside of

19   the blue plastic chair identified as Evidence Item

20   Number SY-01 for the purposes of the lab.

21       A.   Yes.

22           MR. CLARK:  Your Honor, may I just ask one

23   more question?  Does the court want a copy of this

24   report?

25           THE COURT:  No.  I can't look at it because

26   it's not in evidence.

27           MR. CLARK:  If you wanted to have it as a

28   court copy so you know what we are all talking about.

1          THE COURT:  I don't think I can.

2          MS. FILO:  Judge, I agree with counsel.  I

3     think that may be the easiest way to do it.  I did

4     bring an extra copy, Bates stamped, Lab D.N.A. 1

5     through 64.  And I thought it might be easier to go

6     ahead and mark this packet for the court so that you

7     can look at the photographs that are included in it as

8     opposed to having them marked individually.

9          THE COURT:  I'm not allowed to read the file,

10    absent permission from counsel.

11          Mr. Clark, do I have your permission?

12          MR. CLARK:  Yes.

13          THE COURT:  Thank you.  Ms. Filo?

14          MS. FILO:  Yes, Your Honor.  And I will submit

15    that to the court.  I don't know if you want to mark it

16    as -- my thought was to mark it as a single exhibit and

17    just use the Bates stamped references within the pages.

18          THE COURT:  Anything can be marked for

19    identification.

20          MR. CLARK:  Just call it a court exhibit?

21          THE COURT:  Yeah, we can call it Court Exhibit

22    1.

23               (Court's Exhibit 4 is marked.)

24          THE COURT:  All right.

25    BY MS. FILO:

26      Q.  Ms. Cardosa, I brought an extra copy for you,

27    too, just so the Bates stamping will be the same, if

28    that's okay for you?

1       A.   That's fine.

2       Q.   The copy that I have should be the exact same

3  as yours.

4            MR. CLARK:   Is it okay if I approach while

5  you're doing that, just to make sure we're all talking

6  about the same thing.

7            THE COURT:   Sure.

8            MS. FILO:   I'm just giving the witness a

9  second copy of my packet that has the Bates stamped

10  pages that we will then collectively refer to.   Is that

11  acceptable?

12            THE COURT:   That's fine.

13  BY MS. FILO:

14       Q.   Okay.   Ms. Cardosa, you said that the sample

15  you collected from SY-01 was confirmed to you to be

16  spermatozoa.

17       A.   Yes.

18       Q.   How do you go about determining, um, whose

19  spermatozoa it is?

20       A.   Once I do the presumptive testing and

21  confirmatory testing, I then take the sample to do a

22  D.N.A. analysis.

23       Q.   Okay.   Were you provided with a reference

24  sample from what was purported to be Mr. Chandler?

25       A.   Yes.   I received, um, items that were paper

26  cups and, per the submission form from the agency, they

27  were labeled as two paper cups the suspect drank from.

28  And the suspect was listed as Craig Richard Chandler.

1      Q.   Were you able to develop a reference sample
2   from those paper cups?
3      A.   Yes.
4      Q.   When you develop a reference sample, do you,
5   um, identify specific alleles in order to perform your
6   comparison.
7      A.   Yes.  We develop a D.N.A. profile consisting
8   of alleles.
9      Q.   What is that?  What does that mean?
10      A.   There are certain areas that we look for, um,
11   in someone's D.N.A.  And they are small sections of
12   D.N.A. that don't code for genes, but they are repeated
13   sections and the allele, the number that the allele is
14   how many times it repeats.  And you inherit the
15   different sections from your mother and your father.
16   And so different people have different amounts of
17   repeats which is why the numbers are different and the
18   numbers are the way they are.
19      Q.   So you get one number from your mother and one
20   number from your father for each identified allele
21   and/or location on the D.N.A. strand; is that correct?
22      A.   Yes.  So the 15 different locations are loci
23   and at those different loci there are two different
24   alleles.
25      Q.   And when you said the 15 different loci, is
26   that sort of the, for lack of a better word, the
27   standard package that you look at 15 different
28   locations to find the two alleles at each location for

1   any individual in order to develop a D.N.A. profile?

2        A.   Yes.   There are 15 locations, plus the 16th is

3   the gender location.

4        Q.   Okay.   Were you able to develop that profile

5   from the cups that were submitted to you as purported

6   to be belonging to Mr. Chandler?

7        A.   Yes.   I swabbed the rim of the cup and got the

8   profile.

9        Q.   Did you compare the D.N.A. profile from the,

10  from what was purported to be Mr. Chandler and compare

11  that to the profile that you developed from the swab

12  taken from SY-01?

13       A.   Yes, I did.

14       Q.   What did you learn?

15       A.   Um, my conclusion was that Craig Richard

16  Chandler is the source of the semen from that item.

17       Q.   Did you do the same analysis with respect to

18  the second chair that you collected?

19       A.   I did.

20       Q.   I'm sorry, that you analyzed.

21       A.   I first virtually examined.   It was also in

22  dirty condition.   Again, used an alternate source to

23  look for staining.   There were multiple areas that

24  fluoresced.   Um, I started to then look at the rest of

25  the stains.   And I started to test some with the

26  presumptive test for semen.   And I found that, I found

27  two yellowish white fluorescent stains on the left side

28  of the seat of the chair.   And then I found three

1    whitish yellow crusty fluorescent stains on the other
2    side of the back of the chair.
3        Q.   How many of those stains did you, um, swab and
4    actually develop a D.N.A. profile?
5        A.   I only swabbed one of those five stains for
6    D.N.A. analysis.
7        Q.   What did you learn after analyzing that sample
8    for the presence of D.N.A.?
9        A.   That Craig Richard Chandler is the source of
10   the semen from that stain.
11       Q.   As well?
12       A.   As well.
13       Q.   So I want to back up real quick and make sure
14   that I'm clear.  When you looked at SY-01, was there
15   only, um, one stain that was presumptively positive
16   for spermatozoa?
17       A.   Yes.
18       Q.   And when you looked at SY-02, there were five
19   that were presumptively positive?
20       A.   That is correct.
21       Q.   But you only tested one of the five.
22       A.   For D.N.A. analysis, yes.
23       Q.   Okay.  Did you do the confirmatory test for
24   the other four or just for the one on SY-02?
25       A.   Just for the one.
26       Q.   Why is that?
27       A.   Because when I took the sample for D.N.A., we
28   do the confirmatory test alongside it, so during the

```
1    D.N.A. extraction process we make our slides, so I
2    didn't want to consume samples from the other stains
3    that I didn't need to, I confirmed it on the one I did
4    the D.N.A. analysis on.
5         Q.   So the other four are presumptively positive
6    for spermatozoa, but you did not develop the D.N.A.
7    profile for those.
8         A.   Yes.  They're presumptively positive for
9    semen, but I did not test them for spermatozoa.
10        Q.   Okay.  Um, Ms. Cardosa, I'm going to ask you
11   to look at, in your packet it's D.N.A. 7007.  And I'll
12   reference court and counsel to the same.  That page has
13   what appears to be three photographs, um, of SY-01.
14        A.   That's correct.
15        Q.   On that photograph, does that photograph
16   depict the location of the swab that you tested?
17        A.   No.
18        Q.   Okay.  It is, in fact, on page 8; is that
19   right?
20        A.   That is correct.
21        Q.   Okay.  And, again, there are three
22   photographs.  Um, on the bottom right hand corner of
23   D.N.A. page 002, there appear to be almost two pinkish
24   or pink whitish circles on the chair; is that right?
25        A.   I believe they're white, but yes.  I think
26   it's the coloring on the page.
27        Q.   Sorry.  Is that the location from which you,
28   um, obtained the sample?
```

1    A.   Yes.  So because it's a hard surface and we
2  normally do a, um, dabbing, just a blotting of, if it's
3  a softer surface, with this I had to swab, first to do
4  the presumptive test, so these smaller, um, the smaller
5  stain below is where I swabbed for the presumptive
6  test.  And then the larger circle above it is where I
7  swabbed for the D.N.A. analysis.
8    Q.   Then I'm going to ask you to look at D.N.A.
9  page 009.  Is that a picture of Evidence Item SY-02?
10    A.   Yes.
11    Q.   And can you describe for me where it was that
12  you obtained this sample from which you developed the
13  D.N.A. profile that you determined to be Craig Richard
14  Chandler.
15    A.   Yes.  If you look at the larger picture, there
16  is a small rectangle with the Number 1 label next to
17  it.  That is then depicted in the larger picture to the
18  right.  It's a zoomed image of it, so that's where, on
19  the chair, it was.  And then, if you look at the stain
20  on the left with the box, the box is the area that I
21  swabbed for D.N.A. analysis.
22    Q.   Is there -- um, is there a place where the
23  other four stains are referenced?
24    A.   Yes.  On the next page on page 10.
25    Q.   And the pictures on page 10, do those depict
26  the four additional locations where there was a
27  presumptive positive reading for spermatozoa for which
28  you did not develop the D.N.A. profile?

1       A.   Three of them are on this page.  The fourth

2  one is on the side next to the stain that I swabbed for

3  D.N.A. analysis.  So there are two on page 9 that

4  tested presumptively positive.

5       Q.   I see.

6       A.   And there are three on page 10.

7            MS. FILO:  Thank you, Your Honor.  That's all

8  the questions I have.

9            THE COURT:  Cross exam please?

10           MR. CLARK:  Yes, Your Honor.

11                     CROSS EXAMINATION

12 BY MR. CLARK:

13      Q.   I have some questions, Ms. Cardosa.  If you

14 need me to clarify something or if I'm not being clear

15 to you, please let me know, okay?

16      A.   Okay.

17      Q.   You said that there was some type of a form or

18 a report that suggested like an intake form; is that

19 correct?

20      A.   That is correct.

21      Q.   Okay.  Do you have that with you?

22      A.   It is the original.  I believe it's page 1 of

23 the packet that was submitted.

24      Q.   And this would be the typical way that you

25 would receive something from San Jose Police

26 Department.

27      A.   Yes.  These are our case-request forms.

28      Q.   Were you apprised in any way of what type of

1    case this case is, in other words, a sexual assault or,
2    you know, that type of thing?
3         A.   Yes.  Based on the offense, the 288, I know
4    what that is.
5         Q.   Okay.  So you have done other analyses on
6    sexual assault cases, correct?
7         A.   Correct.
8         Q.   And so was there anything more specific you
9    were asked to do relative to this case, other than
10   analyze the D.N.A.?
11        A.   No.
12        Q.   Um, do you know whether the, um, have you,
13   have you analyzed D.N.A. in rape cases?
14        A.   Yes.
15        Q.   Have you analyzed D.N.A. in oral copulation
16   cases?
17        A.   Yes.
18        Q.   How many times?
19        A.   I do not know that off the top of my head.
20        Q.   More than ten?  Less?
21        A.   Probably more than a hundred.
22        Q.   More than a hundred oral copulation cases?
23        A.   Sexual assaults, in general.
24        Q.   How about specifically as to oral copulation?
25        A.   That's hard to say because we, a lot of times
26   for sexual assaults, we test for everything because a
27   lot of times the stories are not, the victims may not
28   be sure of what happened so we don't know specifically

1    an oral copulation case.

2        Q.   So part of what you do is, or maybe I'll ask

3    it this way:  Is part of what you do isolating the

4    D.N.A. of the person that you think is the perpetrator

5    from other people's D.N.A.  Is that a fair statement?

6        A.   Um, we just test for D.N.A.  We're not

7    necessarily trying to isolate.

8        Q.   Go ahead.  Explain your answer.

9        A.   Well, we just test for the biological

10   materials that we are looking for.  And we test for the

11   D.N.A.  And we don't necessarily try to isolate certain

12   things.

13       Q.   Is part of what you have to do in order to

14   establish that the defendant is the source of the

15   D.N.A., remove, potentially, other people's D.N.A. so

16   you know what you're looking at?

17       A.   We don't remove their D.N.A.

18       Q.   What is the extraction process?

19       A.   Extraction is when we add chemicals to the

20   cells or the biological material.  And it breaks open

21   the cells, so, in theory, it extracts the D.N.A. from

22   the cells.  We don't take out other people's D.N.A. at

23   that time.

24       Q.   Maybe that was not a good question.  In this

25   case, did you find anyone else's D.N.A. besides

26   Mr. Chandler's?

27       A.   No.

28       Q.   Um, in other sexual assault cases you've done,

```
 1   have you located other people's D.N.A. besides, let's
 2   just say, for sake of argument, the victim's D.N.A.
 3   along with the defendant's D.N.A.?
 4           MS. FILO:  Objection, relevance.
 5           THE COURT:  Offer of proof please?
 6           MR. CLARK:  Well, I believe the People's
 7   theory that this is an oral copulation case.  I think
 8   that's what their theory is.  And so I'm trying to find
 9   out is if there's not D.N.A. associated with any other
10   individual, that is relevant because I would suggest
11   that that means this isn't an oral copulation case.
12           MS. FILO:  The People have not charged any
13   count of oral copulation.
14           MR. CLARK:  I didn't mean to interrupt.
15   That's where I'm going with it.
16           THE COURT:  Well, it's not an element of the
17   crime.  288 is a lewd and lascivious on the person of a
18   child for the specific intent of sexual arousal.  It's
19   not an element of the crime.  It's not a defense to the
20   crime.  It's not relevant to anybody's credibility.
21   It's irrelevant.  Thank you.  Please ask your next
22   question.
23   BY MR. CLARK:
24       Q.  Um, did you find anyone else's D.N.A.
25   associated with the case?
26       A.  No.
27       Q.  Um, did you look for anyone else's D.N.A.
28   associated with the case?
```

1    A.   I was just looking for biological material and
2  for semen specifically, so, once I obtained those
3  swabs, that's what I processed for D.N.A.
4    Q.   Um, in this case, were there epithelial cells
5  along with the semen cells?
6    A.   When we do an extraction for, um, semen
7  samples, it's called a differential extraction.  So we,
8  because semen cells are different than any other type
9  of cell, they're a little bit stronger, we do a first
10 what I call a digest of the cells and that will break
11 open any kind of epithelial or blood or other kinds of
12 cells that contain D.N.A.  And then we do separate
13 those from the next section which becomes the sperm
14 cell fraction.  And we have to add a harsher chemical
15 to break open sperm cells.  So, in that sense, we
16 separate that out.  But in this case, the epithelial
17 fraction contained the same profile as the sperm cell
18 fraction.
19   Q.   So within the semen D.N.A., you also found
20 epithelial cells, correct?
21   A.   I cannot say that they were actually
22 epithelial cells, but it was in the fraction that was
23 not, that was not digested with the semen cells, with
24 the sperm cells.
25   Q.   Was that material associated to Mr. Chandler?
26   A.   In the epithelial fraction, yes.
27   Q.   What is an epithelial cell?
28   A.   An epithelial cell is technically skin cells.

```
 1    We call it that fraction because it can be any cell
 2    other than the sperm cells.
 3         Q.   Was there anyone else's epithelial cells in
 4    the sample?
 5         A.   There was no other D.N.A. detected.
 6         Q.   And do we have epithelial cells in our mouths?
 7         A.   Yes.
 8         Q.   We have them on our skin?
 9         A.   Yes.
10         Q.   I take it children have epithelial cells as
11    well, correct?
12         A.   Yes.
13         Q.   And you don't need the actual profile of
14    anyone to see that there were epithelial cells
15    associated, associated with someone, other than
16    Mr. Chandler, correct?
17         A.   Correct.  You would see if there was D.N.A.
18         Q.   You could see that there's D.N.A., you don't
19    know whose it is, but you know it's not Mr. Chandler's,
20    correct?
21         A.   You would be able to see, yes.
22         Q.   And you found no other D.N.A. associated with
23    the samples, correct?
24              MS. FILO:  Objection, asked and answered.
25              THE COURT:  Sustained.
26    BY MR. CLARK:
27         Q.   Um, so you did a presumptive test for the
28    presence of semen, correct?
```

1    A.    Correct.

2    Q.    And is there something called a Christmas tree

3    test?

4    A.    It's a Christmas tree stain.  It's what we put

5    on the slides.

6    Q.    Did you do that in this case?

7    A.    Yes.

8    Q.    Is that indicated in your report?

9    A.    Um, it might.  One moment.

10         It is not indicated in the actual note packet,

11   but it is our standard protocol for how we develop

12   slides.  It is in our manuals for procedures.

13   Q.    Now, the, um, let's take SY-1 for a minute.

14   Can you look in your report for that?

15   A.    Sure.  The report or the actual note packet?

16   Q.    Well, I'm calling it the same.

17   A.    Okay.  Go ahead.

18   Q.    Where did you find the semen stain on that

19   object?

20   A.    So on page 2 of this packet, it shows a

21   picture of the underside of the chair.  And it is on

22   the seat, the underside of the seat portion of the

23   chair.

24   Q.    Okay.  So is it possible if someone has semen

25   on their hand, if they sit in their chair and move

26   their chair, you could transfer the semen in that way?

27   A.    Yes, it's a possibility.

28   Q.    Do you think that happened or do you know?

1        A.    It is hard to determine based on the pattern

2    of the stain.

3        Q.    Um, within that stain, you found no other

4    associated D.N.A., correct?

5        A.    Correct.

6        Q.    Um, when I say, "associated," I mean no other

7    individual's D.N.A.

8        A.    Correct.

9        Q.    I want to ask you about your report on page

10   11.   Could you go to that?

11       A.    Yes.

12       Q.    I'm going to focus you specifically on sample

13   identifier D-6.  Are you with me?

14       A.    Yes.

15       Q.    Um, you made certain notes in your report.  Is

16   that your handwriting?

17       A.    Yes.

18       Q.    And you were the only person that worked on

19   this report, correct?

20       A.    Correct.

21       Q.    Um, and then in the comment sheet on -- could

22   you explain this table briefly?  What this table means?

23       A.    In the comment section?

24       Q.    Well, just in general the differential

25   extraction data sheet.

26       A.    Yes.  This is our extraction data worksheet.

27   The Sample identifier is the number we give it

28   throughout the entire D.N.A. process.  In the second

1    column, it's a sample description.  It has our case
2    number and it has the item number.  Then next to that,
3    in the next two columns, it's the recovered volume, so
4    once we finish the D.N.A. extraction process, we have a
5    certain volume of the sample.  And that is what is
6    written in those two columns.
7           The E.C. First is the epithelial cell fraction
8    and SP-1. refers to the sperm cell fraction.  And then
9    the comment section, I wrote the results from my
10   screening of the microscope slides.
11       Q.   Now, within the comment section of this D-6,
12   could you read what you wrote there?  It's a little
13   difficult for me to read.
14       A.   Yes.  "Pre" is the predigest.
15       Q.   What does that mean?  If you can take it kind
16   of slow.
17       A.   It means that we make a slide before we break
18   open the cells to see what we can find and what we see
19   on there.
20       Q.   If you could walk me through that process.
21   You actually remove the material and put it on a slide
22   and then look at it under a microscope?
23       A.   Yes.  So we have a portion of our sample.  And
24   we take a very, very small amount of the liquid and we
25   put it onto a slide.  And that becomes the slide.  And
26   then the "post" means, after the first initial digest,
27   that we kind of get rid of the E. cell fraction and get
28   rid of it.  And once we clean it and wash it, we are

1    trying to isolate sperm cells.  And then we make a
2    slide again with a small volume of the sample with
3    that.
4         Q.   Okay.  You said, "with the liquid."  In this
5    case was there liquid or was there ...
6         A.   We add a liquid in the very beginning to the
7    swab that I took, and that becomes what we're
8    manipulating.
9         Q.   Um, so in your comment sheet, um, with respect
10   to D-6, could you read me what the "pre" means.
11   Explain again what the "pre" means.  And explain again
12   the "pre" means before you do something so you can
13   better look at the material under a microscope; is that
14   fair?
15        A.   The "pre" means that we try to see what the
16   sample looks like before we do any kind of, before we
17   add any chemical to break open or destroy any cells.
18        Q.   Okay.
19        A.   Do you want me to read it?
20        Q.   Yes.  Why don't you read your comments and
21   then we'll talk about them.
22        A.   We have a designation as to how much of a
23   certain thing we may see which is the "plus one."  So
24   "plus one" means few, like a few on the slide.
25        Q.   If you wouldn't mind, just read the comment
26   and then I'll probably have some questions.
27        A.   "Plus one SP-1. and possible sperm, zero E.C.
28   and cellular debris.

1    Q.   Let's break it in small pieces.  The "plus one
2    SP-1.," what does that mean.
3    A.   So we have a designation for how much of
4    something we see.  And when we are looking for sperm
5    cells versus epithelial cells, we categorize it.
6    Q.   Is it fair to say that plus one is the lowest
7    on a scale of one to something.
8    A.   It's a scale one to four.  And, yes, it's the
9    lowest.
10   Q.   And so your observation of the sample was that
11   it was a plus one spermatozoa, correct?
12   A.   Yes.  It means I saw a few spermatozoa heads
13   on the slide.
14   Q.   Okay.  The word "few" is a relative term.  Do
15   you know how many sperm are in the average ejaculate?
16   A.   Not off the top of my head.
17   Q.   Do you know a ballpark number?
18   A.   Very large.  It's a very large number.
19   Q.   We are using "large" and "few."  Could you do
20   it more scientifically?
21   A.   Don't quote me on it, but it's probably in the
22   hundreds of thousands.
23   Q.   All right.  Now, you've used the word that
24   SP-1 means there's a few sperms observed.
25   A.   It's a range between two sperm heads and ten
26   sperm heads.
27   Q.   Okay.  Out of what, hundreds of thousands that
28   would be an ejaculate?

```
1        A.   Yes.  But we are sampling a very, very small
2   portion of a small portion of a stain that I swabbed.
3        Q.   Um, then it goes on a scale of plus one to
4   plus four.
5        A.   Yes.
6        Q.   How many would be involved in a plus four
7   stain?
8        A.   Plus four.
9        Q.   Sample, I'm sorry.
10        A.   Is too many to count almost.
11        Q.   So is this designation, plus one to plus four,
12   some kind of a standard quantification or is it
13   something that is a subjective observation of the
14   analyst?
15        A.   It's a subjective observation of the analyst.
16   We do have a definition in our procedures as a general
17   definition of what they mean.  But it is subjective
18   when the analyst looks at the slide.
19             THE COURT:  Ladies and gentlemen, this would
20   be a good time for us take our noontime recess.
21             Ms. Cardosa, we'll see you again at 1:30,
22   ma'am.  We have a class coming in for a mock trial so
23   why don't you take your stuff with you.  If counsel
24   wants to secure anything because the children will be
25   using these desks, I suggest that you use the lockers.
26   Thank you.
27                  (A recess is taken.)
28             THE COURT:  All right.  Ms. Cardosa, thank
```

```
 1   you.  I remind you that you're still under oath.
 2              THE WITNESS:  Yes.
 3              THE COURT:  Go ahead please.
 4              MR. CLARK:  Would the court mind if I took my
 5   jacket off?
 6              THE COURT:  No.  Go ahead.
 7   BY MR. CLARK:
 8        Q.  Ms. Cardosa, between the time we broke for
 9   lunch and right now, did you bring additional materials
10   with you to court?
11        A.  I did.
12        Q.  What did you bring?
13        A.  I brought an updated version of my
14   qualifications.  And I also brought the section of our
15   procedure manual that has the gradient for which we
16   give for the spermatozoa identification.
17              MR. CLARK:  Could we have her updated resume
18   marked as defense marked next in order.  And would you
19   like to withdraw the previous one?
20              THE WITNESS:  Sure, we can do that.
21        (Defendant's Exhibit D is marked and admitted.)
22              MR. CLARK:  I'd stipulate to withdraw her old
23   one and put the knew one in.
24              THE COURT:  Exhibit D is withdrawn and the new
25   version is substituted for it.  It's still
26   Ms. Cardosa's curriculum vitae.  We'll just switch it.
27   BY MR. CLARK:
28        Q.  With respect to your, um, updated resume that
```

1    you brought, you got a lot of course work here and some

2    other things on that.  Is there anything you can point

3    to relative to your updated resume that talks about

4    sperm identification and analysis?  Where would that be

5    on your updated resume?

6            THE COURT:  Counsel, I don't know this is

7    proof for what is required.  I've already found she's

8    qualified.  An expert witness is virtually anyone who

9    knows more than the trier of fact.  That's me.  I don't

10   know the field.

11           MR. CLARK:  I wasn't provided this when I was

12   asking her those qualifications.

13           THE COURT:  Yes, but I don't think it would

14   materially add to my determination as to whether or not

15   she's an expert.  Particularly, when she's been found

16   as an expert previously.  I don't see a serious

17   challenge to her qualifications.  I'm sure that if you

18   want to discuss this with Ms. Cardosa outside this

19   prelim, Ms. Filo could arrange that.

20           MR. CLARK:  Submitted.  So you're not allowing

21   me to ask that question.

22           THE COURT:  That's correct.  I don't think

23   it's relevant since I already made the determination of

24   her expert qualification and I don't think it would

25   materially add to the information that I have.

26           MR. CLARK:  Okay.

27   BY MR. CLARK:

28       Q.   And you brought a table with you which talks

1    about the quantification, if you will, or the number

2    rating when you're looking at a sperm slide.  And a

3    plus one through plus four.  Is that correct?

4        A.   That's correct.

5        Q.   And is this a table that's created by the

6    crime lab or is this -- well, is it created by the

7    crime lab?

8        A.   Yes, this is in our policy and procedure

9    manual.

10       Q.   Would this quantification that's listed here

11   be consistent, if you know, with industry standards,

12   for lack of a better word?

13       A.   I'm not sure how other labs give their ratings

14   for their slides.

15       Q.   All right.  The city of San Francisco may have

16   a completely different rating system.

17       A.   It's possible.

18       Q.   You don't know?

19       A.   I don't know.

20       Q.   So when you have a plus one, the rating that

21   you brought with us in the table says, indicates only a

22   minimal or minimum number of spermatozoa two to ten.

23   Is that how you evaluated the slide in this case.

24       A.   Yes.

25       Q.   So you found somewhere between two and ten

26   sperm in that?

27       A.   That is correct.

28       Q.   Did you make any observations about the sperm

```
 1   themselves?  In other words, were they degraded?  Were
 2   they broke up in pieces?
 3       A.   Um, for us to be able to say that they are
 4   clearly spermatozoa, they have to be in good quality
 5   because if they look partially degraded it's harder to
 6   tell that that's what they truly are.  So if we are
 7   able to call it sperm, then that means that they're
 8   decent quality.
 9       Q.   And how do you make the evaluation that it is
10   sperm just by visual identification?
11       A.   Yes.  We've been trained and looked at many
12   different times of spermatozoa, human species, animal
13   species, and other different types of material we might
14   see on these slides and they have very distinct,
15   methodological characteristics.
16       Q.   Okay.  Um, in that -- follow with me now, if
17   you don't mind, your page 11 D-6.  You indicate a plus
18   one sperm plus?
19       A.   I believe that's an "and" sign.
20       Q.   "Possible sperm."  What do you mean by that?
21       A.   We give that to ones that might be possibly
22   degraded.  We can't for sure say that they are
23   spermatozoa, but it looks like they might be.  But we
24   can't call them that for sure based on their shape.
25       Q.   Okay.  Then you have the designation "OEC."
26   Is that epithelial cells?
27       A.   That is correct so it's zero intact epithelial
28   cells.
```

1    Q.   Say that again.

2    A.   Zero intact epithelial cells.

3    Q.   And so cellular debris?

4    A.   Yeah.   There could be other things when you're

5    viewing slides, little pieces of cells or things that

6    are degraded that are still on the slide.

7    Q.   Now, following that designation, you then go

8    to the word "post."  What do you mean?  "Post" what?

9    A.   So during the differential extraction, you add

10   the first chemical and you let it sit in a hot water

11   lab.  And that breaks open regular cells like skin

12   cells and blood cells and anything, any other type of

13   cell.  And so then we try to remove that portion and

14   then we wash it and spin it down and we try to create

15   what we call a sperm pellet because the sperm are not

16   broken up by the first chemical that we add.  So, after

17   that, once we've washed it, we're hoping to get a clean

18   sperm pellet to separate the sperm from the original

19   section.  And so then we make a slide of the sperm

20   pellet.

21   Q.   And the purpose of that process is to enhance

22   your ability to identify sperm; is that correct?

23   A.   Yes.

24   Q.   And so the normal -- well, "normal" is not a

25   good word.  But you would expect that the pre to post

26   you would increase from plus, in other words, the sperm

27   visible would increase.  That's the purpose of the

28   test.

1        A.   It's possible, yes.

2        Q.   Isn't that the purpose of the test?

3        A.   It's not necessarily a test.  Because we are

4    sampling a certain small portion of it, it's hard, I

5    mean, you're only sampling a small portion of the whole

6    entire sample.  It may vary depending on what you

7    actually sample.  It's not an equally distributed

8    sample, if you know what I mean.

9        Q.   Okay.  Let's go to D-7 on that same page.

10       A.   Okay.

11       Q.   In that one, you indicate a plus two.  This is

12   pre pre, correct?

13       A.   Yes.

14       Q.   You indicate "plus two."  And what does that

15   quantification mean?

16       A.   So, according to our chart, it indicates

17   spermatozoa in some fields.  So fields means fields of

18   view when you're scanning a slide.  So you see a few

19   here, a few there, a few other.  It's not a lot

20   compared to plus fours, but it's a decent amount.

21       Q.   Um, and you have cellular debris.

22       A.   Yes.

23       Q.   And zero epithelial cells.

24       A.   Yes.

25       Q.   Then after you do the process to, I think --

26   what is the process called where you go from pre to

27   post?  Is there a name for that?

28       A.   No.  It's just the different steps of the

1  extraction process.

2    Q. The extraction process.

3    A. Yeah.

4    Q. You went actually from plus two to plus one.

5    A. Yes.

6    Q. Have you ever seen that before?

7    A. Yes.

8    Q. What is the reason that that would go down?

9    A. Like I said, it's a very small representative

10 of our entire sample, so it's not going to always be

11 the same, no matter what.  We're not looking at

12 everything that's in there.  We're only looking at a

13 small portion so it just depends on what we get.

14   Q. Is it possible that it went down because you

15 misidentified sperm pre?

16   A. No.

17   Q. It's not possible.

18   A. No.

19   Q. Um, you have a note in your, on page 11.

20 Inadvertently added substrates back to tubes.  Um, can

21 you read that?

22   A. Sure.  It says, "Inadvertently added

23 substrates back to tubes with d.b.," which is an

24 abbreviation for a digest buffer, "before making

25 predigest slide.  To avoid further manipulation of the

26 substrates, prejudge slides were not made."

27   Q. When you say, "inadvertently," who did that?

28   A. I did.

1      Q.   Did you make any observations of the slides?
2    Did you make notes of those observations.
3      A.   These are the notes.
4      Q.   Okay.  And do you have an opinion about the
5    when the sperm indicated an SY-1 was placed there.
6      A.   No, I cannot make an indication of when the
7    D.N.A. and sperm were deposited.
8      Q.   Okay.  Do you have an opinion about whether,
9    in general terms, could it have been years ago when it
10   was placed there?
11     A.   I guess it's possible, but D.N.A. will degrade
12   over time, especially in a environment that's an open
13   air environment, not refrigerated and not kept under a
14   certain temperature or condition.  It would be a very
15   degraded profile if it was years.
16     Q.   Is it possible that it was deposited there
17   more than a year and a half ago?
18     A.   That could be possible.
19     Q.   Um, and you analyzed the chair.  And there
20   were no other evidences of sperm, correct, on that
21   chair?
22     A.   There were no other stains that I found, no.
23     Q.   Is the stain, or, the item you found on SY-1
24   consistent with what's commonly known as a transfer
25   stain?
26     A.   Based on the shape of the stain, I cannot tell
27   whether it's a transfer.  You mean a secondary transfer
28   from something else?

1    Q.   Yes.

2    A.   Based on the stain, I can't determiner that.

3    Q.   So it's possible then that the individual who

4  put the stain on that chair, um, based on the SP-1

5  evaluation, if that person had sperm in their underwear

6  and then went to the bathroom, touched their underwear

7  and later touched the chair, would that be consistent

8  with that?

9    A.   I don't believe so.  It looks like it's a

10  straight semen stain.  If it was transferred from

11  underwear, I don't think it would actually like look a

12  stain.

13    Q.   What would it like?

14    A.   It might not look like anything.  You might

15  just swab it and find sperm.

16    Q.   So you're conclusion is that it was not a

17  transfer.

18    A.   It looks to be a straight stain from a

19  straight liquid, but whether it was just deposited on

20  there or wiped from something else, if it was a liquid

21  transferred, it could be transfer.

22    Q.   Would it be consistent with that type of

23  transfer based on the positivity of the sperm, in other

24  words, a small amount.  Is that more consistent?

25    A.   The amount of sperm varies, um, between

26  individuals, between stains, between the small

27  representation that we're actually looking at, so I

28  don't think that that would really matter if it was

1    transferred or not.

2        Q.   So the amount of sperm located in the sample

3    is not relevant to whether it was a transfer or not?

4        A.   It could -- I don't think it necessarily is

5    indicative of a transfer because it could be that way

6    just based on the straight stain.

7        Q.   Would a person's sperm count have something to

8    do with that?

9        A.   It's possible.

10       Q.   We're talking about the normal, the average is

11   250 million and you found two in ten.  Is that --

12       A.   Yes.  Like I said, we are looking at a very

13   small sample size compared to an entire ejaculate.

14       Q.   Okay.  If you could turn to page 42 of your

15   notes.  I'm sorry, 42 of the D.N.A. report.  Are you

16   with me?

17       A.   Yes.

18       Q.   This is a phone log?

19       A.   Correct.

20       Q.   Um, did you make that note about the

21   paragraph, "I spoke with Sean"?

22       A.   Yes.

23       Q.   And can you explain that note?

24            MS. FILO:  Objection, Your Honor, relevance

25   and calls for hearsay.

26            THE COURT:  Offer of proof please?

27            MR. CLARK:  She's an expert.  I think she can

28   rely on hearsay and comment on hearsay in forming her

```
 1   opinions.
 2           THE COURT:  We haven't established yet that
 3   she relied on that as a basis to form her opinion.
 4   Could you ask that question?
 5   BY MR. CLARK:
 6      Q.   Why did you make this note?
 7      A.   When --
 8           MS. FILO:  Objection, Your Honor, relevance.
 9           THE COURT:  Sustained.
10           MR. CLARK:  So am I not being allowed to ask a
11   question of an expert relative to their report.
12           THE COURT:  No.  Counsel, you're asking for
13   hearsay.  It's an out-of-court statement offered for
14   the truth of the matter asserted, what Officer Pierce
15   told this witness.
16           MR. CLARK:  I didn't get to that, but I think
17   that an expert can rely on hearsay.
18           THE COURT:  Yes, but I don't know yet that she
19   relied on the statement from the officer to form her
20   opinion.  I'll ask the question.
21           Madam, did you rely on what Officer Pierce
22   told you in forming your opinion of this case?
23           THE WITNESS:  No.
24           THE COURT:  Then the objection is sustained.
25   BY MR. CLARK:
26      Q.   You did not rely on what the investigating
27   officer told you in formulating an opinion.
28      A.   No.
```

1      Q.   Did you ever receive a supplement regarding

2   the collection of the chairs?

3           MS. FILO:   Objection, Your Honor, discovery.

4           THE COURT:   Offer of proof please?

5   BY MR. CLARK:

6      Q.   Well, you requested a supplement from Officer

7   Pierce; is that correct?

8      A.   That is correct.

9      Q.   Why?

10          MS. FILO:   Objection, calls for hearsay.

11          THE COURT:   Just a moment.   I'll take it

12  subject to a motion to strike.   Go ahead please.

13  BY MR. CLARK:

14     Q.   Why did you ask for the supplement?

15     A.   Because any time we develop a D.N.A. profile,

16  we have to figure out how it was collected, where it

17  was located, and how it was involved in the crime to be

18  able to upload the profiles to the database.   And so we

19  have to know how these samples are collected whether we

20  can put them in the database or not.

21          THE COURT:   I'll allow it.

22          MR. CLARK:   May I make further inquiry on

23  this?

24          THE COURT:   Sure.

25  BY MR. CLARK:

26     Q.   Did you ever receive such a supplement?

27     A.   I'm not sure because sometimes they don't go

28  directly to me; they just go into our administration.

```
1         Q.   Well, you don't know whether you saw the
2    supplement on how this was checked?
3         A.   He told me how it was and I told CODIS
4    administer and then we were waiting for the police
5    report.
6         Q.   Have you got it?
7              MS. FILO:   Objection, Your Honor, hearsay and
8    discovery.  The witness has testified that the purpose
9    of the supplemental report would have been to upload to
10   CODIS.  It had nothing to do with her ability to
11   formulate her opinion in this case.
12             MR. CLARK:   I appreciate the testimony from
13   the D.A., but that wasn't --
14             THE COURT:   The witness does not appear to
15   have personal knowledge of what was in the supplement.
16             Did you ever personally see the supplement?
17             THE WITNESS:   No.
18             THE COURT:   She can't testify about it.
19   Please ask your next question.
20   BY MR. CLARK:
21        Q.   Um, I want to ask you just some questions
22   about epithelial cells.  Are there epithelial cells in
23   your mouth?
24             MS. FILO:   Objection, asked and answered.
25             THE COURT:   Overruled.
26   BY MR. CLARK:
27        Q.   And, actually, are there -- is that why we
28   take D.N.A. swabs from people's mouths because of the
```

```
 1   abundance of epithelial cells?
 2        A.   Correct.
 3        Q.   Um, and is the mouth an environment that's
 4   easily, the epithelial cells in the mouth are easily
 5   transferred to another object?
 6        A.   Yes.  There are multiple ways to transfer from
 7   the mouth.
 8        Q.   Um, if someone had been orally copulated,
 9   would you expect an epithelial cell transfer onto the
10   individual's penis?
11        A.   Yes.
12        Q.   And if that person ejaculated and the sperm
13   were spit out, would you expect to find the epithelial
14   cells of the individual in that sample?
15        A.   Are you saying that the person -- can you
16   clarify?
17        Q.   Yes.  If someone, if the man is orally
18   copulated by a female, would you expect the epithelial
19   cells of the female to be, then, on the man's penis?
20        A.   Yes.
21        Q.   And then if that man touched his penis after
22   the oral copulation, okay, and there was ejaculate on
23   his penis, in his hand from touching his penis, would
24   you expect to find the epithelial cells of the victim
25   within that sample?
26        A.   If he touched his penis afterwards?
27        Q.   Yes.
28        A.   Yes.
```

1    Q.   Um, and if the individual, the female had, if

2    the male had ejaculated into the female's mouth and the

3    female then spit out that semen, would you expect in

4    that case to find both the male sperm cells and the

5    female's epithelial cells?

6    A.   It's likely that you would have a mixture of

7    saliva in that sample.

8    Q.   Um, if I were to shake your hand, you would

9    transfer epithelial cells onto my hand, correct?

10   A.   Possibly.

11   Q.   Okay.  If I was to touch your foot, would I

12   also expect to find your epithelial cells on my hands?

13   A.   Possibly.  Epithelial cell transfer

14   skin-to-skin contact.  Some people shed more than

15   others.  And for us to try to find it off someone else,

16   swabbing somebody else's skin looking, if you were

17   swabbing someone's skin that had just been touched by

18   another individual, it's possible for us to find the

19   individual that touched them on them, but it's

20   sometimes unlikely because their skin cells would

21   overwhelm what might little have been touched by the

22   other individual.

23   Q.   Are you speaking now about the touching of,

24   one person touching another person's feet?

25   A..  Yes, straight epithelial, just hand-to-hand

26   contact.

27   Q.   So that's much more less likely than if you

28   actually had skin-to-mouth contact; is that right?

```
 1        A.   Yes.  Bodily fluids such as saliva would have
 2   more.
 3        Q.   Okay.  Then if a person had their penis
 4   touching another person's foot, could that transfer
 5   epithelial cells?
 6        A.   Just without --
 7        Q.   Rubbing your penis on someone else's foot,
 8   would that create a transfer of epithelial cells from
 9   the foot to the penis?
10        A.   Yes, it could.
11        Q.   And then if that person ejaculated and was
12   holding their penis, would you expect to find that
13   epithelial transfer in the ejaculate?
14        A.   Possibly not.
15        Q.   Possibly not?  Does that mean that it probably
16   would be?
17        A.   You're saying that -- let me see.  Can I see
18   if I have what you're saying correct?
19        Q.   Yes.
20        A.   So someone's penis touched someone's foot.
21        Q.   Right.  They're rubbing their penis on
22   someone's foot.
23        A.   And then the ejaculate?
24        Q.   They ejaculate into their hand?
25        A.   Their own hand.
26        Q.   Correct.
27        A.   And then --
28        Q.   Then they rub their penis after that and they
```

1    have their own ejaculate in their hand, okay?

2        A.   Okay.

3        Q.   Would you expect to find epithelial, transfer

4    of epithelial cells from the foot to the ejaculate?

5        A.   It's possible, but very unlikely since that

6    would be tertiary transfer of low level sample into a

7    highly robust D.N.A. sample such as semen.

8        Q.   Were the samples that you've noted in SY-1 and

9    SY-2 robust samples?  I don't know what you mean by

10   "robust."

11       A.   So robust, I mean, when we talk about things

12   like epithelial cells, usually if it's just someone

13   touched something once or a couple of times, we're

14   going to get lower levels than if it's a stain of a

15   biological fluid.  If it's semen, saliva or blood,

16   usually their full of a lot more D.N.A., which is what

17   I mean by "robust."

18       Q.   Okay.  Do you have an opinion about, when you

19   use the word "robust" to describe the instant samples

20   that you looked at?

21       A.   So --

22       Q.   That's SY-1 and SY-2.

23       A.   Yes.  My quant sheet which is pages 13 and 14,

24   this is the sheet that we use to determine how much

25   D.N.A. is in the small sample that we took.  The sperm

26   cell fraction of SY-01 --

27       Q.   Could you refer, when you're noting that,

28   where you are in your report.

```
 1          A.   Yes.  It's on page 14, 14 of the lab packet
 2     that she gave me.  It's page 10 of my note packet.
 3     It's this blue and green sheet.
 4          Q.   Do you have a Bates stamp at the bottom?
 5          A.   The one that you gave me?  Yeah, it's 014.
 6          Q.   Okay.
 7          A.   Um, so if you look at the sperm cell fraction
 8     which is D-6 SP SY-01, the value is nanograms per
 9     microliter.  And it's 5.1059.  That's a fairly, very
10     good sample for us.  Um, that means that there's a lot
11     of D.N.A. there.
12          Q.   Do you have an opinion with whether SY-1
13     -- let's assume for the sake of argument the sperm you
14     found on SY-1 and SY-2, were those deposited at the
15     same times?  Or different times?  Or you don't know?
16          A.   I did not make that determination.
17               MR. CLARK:  If I could check my notes, Your
18     Honor?
19               THE COURT:  Sure.
20     BY MR. CLARK:
21          Q.   In your observation of the chairs, did you
22     find any of the D.N.A. that you've described or the
23     semen embedded into the fabric of the chair?
24          A.   For SY-01 I did what we call a mapping which
25     is what I was saying before where we take a piece of
26     filter paper and wet it.  We touch the whole thing and
27     try to absorb whatever the stain is.  That's how we
28     test it.  So I tested the entire fabric portion of that
```

1   chair.  And none of it tested positive with our

2   presumptive test.

3        Q.   How about SY-2.

4        A.   I did not test the fabric portion in SY-2.

5        Q.   Is fabric a good vehicle to receive D.N.A.

6   exemplar or a D.N.A. sample?

7        A.   It will soak in.  If it's a fluid it will soak

8   into the fabric.

9        Q.   Better than like a plastic.

10        A.   Yes.

11        Q.   Now, did any of the testing that you did

12   involve destructive testing?

13             MS. FILO:  Objection, Your Honor, discovery.

14             THE COURT:  Offer of proof please?

15   BY MR. CLARK:

16        Q.   Well, is there a way for an independent lab to

17   review your work?

18             MS. FILO:  Objection, Your Honor, discovery.

19             THE COURT:  Sustained.

20   BY MR. CLARK:

21        Q.   Did you ever notify the D.A. that you were

22   doing destructive testing?

23             MS. FILO:  Objection, Your Honor, discovery.

24             THE COURT:  Sustained.

25   BY MR. CLARK:

26        Q.   Well, if you look at the photograph of SY-1

27   that you have in your packet -- are you with me?

28        A.   Yes.

1    Q.   There appears to be kind of a, for lack of a
2    better word, fabric tag.  Did you put that on there?
3    A.   No.
4    Q.   You know what I meant when I said, "the fabric
5    tag"?
6    A.   The white tag that's in the crease?
7    Q.   Yes.  The other chair didn't have such a tag
8    when it came to you, correct?  SY-2?
9    A.   No.
10   Q.   Um, in your table on page 3, if you go across
11   from -- are you with me on that table?
12   A.   Yes.
13   Q.   Could you briefly explain that table.
14   A.   That is our table of the D.N.A. profiles.  So
15   under the first column, it says, "locus."  Those are
16   the different areas that we look at to type the D.N.A.
17   And, um, when you go across each one, the numbers that
18   are in the columns underneath the different samples,
19   those are the different alleles.
20   Q.   Could you go down the column to D-2 S-1 338 in
21   the middle of that table?
22   A.   Yes.
23   Q.   Um, in the third box, yellowish white stain
24   from blue chair you have the number 23 and then I.N.C.
25   What does that mean?
26   A.   That means that this profile was a little bit
27   low, lower than, um, some, we have threshold.  And it
28   was, that allele was not above our threshold enough for

1   me to call it homozygote.  That means there are two
2   copies of the same allele.  So, because we have in
3   profiles that are lower or degraded, sometimes one
4   allele may show up and the other one may drop out which
5   means we aren't seeing it because there wasn't enough
6   of it to make copies of it.  So with the homozygote,
7   sometimes it's harder to tell if there's two copies of
8   it if it's a lower level sample.
9        Q.  Does I.N.C. mean inconclusive?
10       A.  Yes.
11       Q.  And then further down that table, you have the
12   word, A-M-E-L-O-G-E-N-I-N.  What does that mean?
13       A.  Amelogenin is the gender locus.  And that
14   tests your chromosomes.  So you have XX or XY.
15       Q.  With respect to that reference in the furthest
16   column to your right, you have the "X-Plus" and then a
17   "Y."  What does that mean?
18       A.  So underneath the table, there is, um, a
19   legend for what the plus means.  The plus means the
20   taller peak in pair with peak-height ratio less than 70
21   percent.  It indicates a possible mixture and/or
22   stochastic effect.
23            THE COURT:  Could you spell that.
24            THE WITNESS:  S-T-O-C-H-A-S-T-I-C.
25   BY MR. CLARK:
26       Q.  Is that effect indicative that there's a very
27   small amount of D.N.A.
28       A.  Yes.  The stochastic effect can happen when

```
 1    you have a small amount of D.N.A.  And the different
 2    alleles don't get amplified to the same degree.
 3             MR. CLARK:  Thank you.  Nothing further.
 4             THE COURT:  Recross?
 5             MS. FILO:  No.  Thank you, Your Honor.
 6             THE COURT:  All right.  Is this witness
 7    excused or would either side like her to remain on
 8    phone standby?
 9             MR. CLARK:  She's excused.
10             MS. FILO:  Excused.
11             THE COURT:  All right.  Thank you very much,
12    ma'am, for coming in.
13             MS. FILO:  Your Honor, the People call Officer
14    Sean Pierce.
15    SEAN PIERCE:
16             COURT CLERK:  Do you solemnly state under
17    penalty of perjury that the evidence you shall give in
18    this matter shall be the truth, the whole truth, and
19    nothing but the truth?
20             THE WITNESS:  I do.
21             COURT CLERK:  Thank you.  Please have a seat.
22             Would you please state and spell your full
23    name for the record.
24             THE WITNESS:  Sean, S-E-A-N, Pierce,
25    P-I-E-R-C-E.
26             THE COURT:  Thank you.  Please proceed.
27             MS. FILO:  Thank you, Your Honor.
28    \\\
```

```
                        DIRECT EXAMINATION
 1
 2   BY MS. FILO:
 3        Q.   Um, Detective Pierce, you are a police officer
 4   with the City of San Jose?
 5        A.   That is correct.
 6        Q.   How long have you been so employed?
 7        A.   This is my 16th year.
 8        Q.   What's your current assignment within the
 9   department?
10        A.   I'm assigned to the child exploitation detail
11   which is part of our sexual assault unit.
12        Q.   In connection with that assignment, were you
13   detailed to an investigation at O.B. Whaeley Elementary
14   School in the City of San Jose?
15        A.   I was.
16        Q.   In connection with that assignment, did you,
17   um, interview a woman named Hilda Keller?
18        A.   Yes, I did.
19        Q.   When did that interview take place?
20        A.   I believe it was the week of the 16th.  It was
21   about a week after.
22        Q.   About a week after the incident was first
23   recorded?
24        A.   Yes.
25             MR. CLARK:  Can I have an offer of proof for
26   the line of inquiry and how it's relevant.
27             THE COURT:  Sure.
28             MS. FILO:  Your Honor, I believe Detective
```

1    Pierce interviewed Ms. Keller, that she told him that

2    she was a former teacher O.B. Whaeley, that the

3    defendant came to her classroom when she was alone,

4    asked if he could take pictures of her toes, um, and

5    asked if he could massage her feet.  I think there has

6    been specific -- he also talked about the inadequacy of

7    his sex life with his wife and I think there's been

8    testimony in this case about the defendant's behavior

9    with children's feet.

10            THE COURT:  Is this offered under 1108?

11            MS. FILO:  It is.  It's also offered as

12    circumstantial evidence of the sexual intent of the

13    defendant when he was, um, performing these acts with

14    the children's feet.

15            THE COURT:  Mr. Clark?

16            MR. CLARK:  Okay.  I've not been put on notice

17    that there was going to be evidence of 1108-type

18    evidence.  I don't think this comes remotely close to

19    1108 evidence.  Um, but, secondarily, the issue

20    Mr. Chandler is asking an adult female or we'll call

21    this sexual harassment of an adult female, how that

22    evidence is specific intent to molest an 8 year old

23    child, I think, intenerated.  And I don't believe it's

24    relevant.

25            And without expert opinion, I don't know see

26    how can you draw any conclusion that, asking to take

27    the picture of an adult female's foot and giving a foot

28    massage, somehow transcends into a specific intent to

```
1    commit a child molest on an 8 year old.
2              THE COURT:  Well, let me give you an indicated
3    ruling and I'll invite further comment.  1108 allows
4    evidence of other sexual offenses.  And (d)(1)(a)
5    defines a sexual offense as a crime under the law of
6    the state of the United States that would involve any
7    of the following:  Any conduct prescribed by 243.4,
8    261, 261.5, 262, 264.1, 266(c), 269, 286, 288, 288(a),
9    288.2, 288.5, and 289 or subdivision (b), (c), or (d)
10   and Section 311.2 and the following sections, so it's
11   basically any of the sex offenses based on age or force
12   and child pornography.
13             And, um, what's the legal -- it's not
14   flashing.  It's not indecent exposure.  But it clearly
15   contemplates an offense not a sexual preference, no
16   matter how tacky.  I don't see that it fits the offense
17   language of 1108.
18             Do the people wish to be heard further?
19             MS. FILO:  Yes, Your Honor.  It really isn't
20   offered as 1108 evidence.  It's really offered as
21   circumstantial evidence of intent, sexual intent.  So
22   it's not really, um, being offered as propensity of
23   evidence.  It's really being offered as circumstantial
24   evidence of a proclivity that the defendant seems to
25   have.
26             THE COURT:  Let me give you an indicated
27   ruling on that and, um, I will invite further comment.
28   If it's a specific act, then it's generally prohibited
```

```
 1   by 1101 of the Evidence Code which says that evidence
 2   of a person's character or trait of his character,
 3   whether in the form of an opinion, evidence of
 4   reputation, or evidence of specific instances of his or
 5   her conduct, which this is, is inadmissible when
 6   offered to prove his or her conduct on a specified
 7   occasion, but it can be used to prove the lateral fact
 8   such as motive, opportunity, intent, preparation, plan,
 9   knowledge, identity, absence of mistake or accident, or
10   Mayberry consent.
11           So which of those do you think fits?
12           MS. FILO:  I think it's really 1101(b)
13   evidence of intent.
14           THE COURT:  All right.  Do you wish to be
15   heard, Mr. Clark.
16           MR. CLARK:  Yes.  Um, first of all, I think if
17   you were to draw, assuming -- we'll just assume for the
18   sake of argument that what Ms. Keller said to the
19   officer was true, that he offered to take pictures of
20   my feet and give me a foot massage, something to that
21   effect.  You would then -- assuming that's proven, you
22   would then need to draw the nexus between that
23   statement and a person's proclivity to commit a child
24   molest, you know, on an 8 year old child.  And I don't
25   think you can do that, especially if you're not
26   offering as expert opinion that people who like to give
27   massages are child molesters.
28           THE COURT:  Well, the specific -- hold on.
```

1           The specific intent language of 288(a) says
2    with the intent of arousing or appealing to or
3    gratifying the lust, passions, or sexual desires of
4    that person or the child.  Um, without similarity in at
5    least the age of the people involved, I don't see that
6    it's, there's a connection.
7           Go ahead.
8           MS. FILO:  I'm sorry.  The similarity is in
9    the perpetrator, not in the age of the victim.  So if
10   the defendant's interest or what we characterize as an
11   unnatural sexual interest in feet, I don't think that
12   the size of the foot is necessarily the issue.
13          THE COURT:  Well, only one of the five
14   complaining witnesses, um, that was Ms. A., um,
15   testified that the defendant grabbed her ankles.  And
16   that was only on one occasion, according to Ms. A. and
17   it was not the primary purpose of the interaction which
18   I take to be the ball which she found, um, against her
19   buttocks.  One incident does not a preference make.
20          MS. FILO:  Your Honor, I'm sorry.  Ms. L.
21   testified exclusively that her conduct, that the
22   defendant's conduct with her was related only to feet.
23   And Ms. W. also testified that, um, there was some
24   incident involving her feet.
25          THE COURT:  All right, I'll look.  You say it
26   was Ms. L. and Ms. W.?
27          MS. FILO:  Yes.  Ms. L. testified that that
28   was the only conduct that was involved with her.

```
 1              THE COURT:  Okay, I see it.
 2              Ms. L. testified that she had something on her
 3    eyes, this blue blindfold.  She took off her shoes.
 4    She heard the defendant opening the cabinet.  She
 5    doesn't remember if he said anything.  He started
 6    rubbing things on her feet, but he didn't say why.  She
 7    said it was more than one thing.  One felt smooth,
 8    another was bumpy.  She never peaked from her
 9    blindfold.  She thought it might be a glue stick.
10              And Ms. W. said that he put something between
11    her feet and rubbed them together.  It kind of felt
12    like skin.  "I didn't know what was going on."  We were
13    supposed to guess what it was.  The game was always
14    alone.  Just a moment.
15              When is the alleged time of the statement?
16              MR. CLARK:  The time of the statement or the
17    conduct?
18              THE COURT:  The time of the statement.
19              MS. FILO:  I think Officer Pierce said the
20    statement was around January 16th, 2012.
21              THE COURT:  And what is the time frame of the
22    conversation that she's relating?
23              MS. FILO:  She said she was a teacher at O.B.
24    Whaeley from the year 2000 to 2005.
25              THE COURT:  When did this conversation occur
26    with the defendant allegedly?
27              MS. FILO:  Your Honor, we'd have to ask the
28    witness if he had more specific information.
```

```
 1          THE COURT:  Detective Pierce, did this witness
 2   tell you when this conversation with the defendant took
 3   place?
 4          THE WITNESS:  She didn't have the exact date,
 5   but it was right prior to her leaving the school for
 6   another school.  She left the school in 2005.
 7          THE COURT:  All right.  And the offer of proof
 8   is, say again please?
 9          MS. FILO:  Sure.  We believe that -- the
10   People contend that the defendant has an unnatural
11   sexual interest in feet, for lack of a better way to
12   put it.  We believe that that sexual interest was
13   demonstrated with conduct by involving Ms. Keller.  Um,
14   and that her statement to the officer is relevant for
15   that purpose.  Um, some of the conduct that's been
16   described by the children, again, involves the
17   defendant's conduct with their feet.  The People have
18   the burden of proof with respect to establishing sexual
19   intent in those touchings.  And I believe it's
20   circumstantial evidence of his intent when doing that.
21          THE COURT:  Do you wish to be heard further?
22          MR. CLARK:  No.
23          THE COURT:  All right.  Um, I'll allow it for
24   the limited purpose of showing intent.  I'm only
25   interested in activities involving feet.  I'm not
26   interested in anything about his marital history, his
27   romantic relationships, what he had for dinner, or
28   anything else.  I'm just interested in comments about
```

1   feet.

2           MS. FILO:  okay.

3   BY MS. FILO:

4       Q.  Officer Pierce, did Ms. Keller tell you that

5   she believed the defendant had a sexual interest in

6   her?

7       A.  Yes.

8           MR. CLARK:  Objection.  We just went afield of

9   what the court ruled.

10          THE COURT:  Sustained.  Rephrase.

11          MS. FILO:  Your Honor, the only reason I asked

12  that specific question is because it's in the context

13  of that disclosure that she mentions this incident with

14  the feet.

15          THE COURT:  Well, I'm not interested in his

16  romantic relationships with any adult women.  I'm just

17  interested in, as I indicated, with activity involving

18  feet.

19          MS. FILO:  That's fine.

20  BY MS. FILO:

21      Q.  Officer Pierce, did Ms. Keller -- what did

22  Ms. Keller tell you with respect to Mr. Chandler's

23  comment or comments to her about feet?

24      A.  She said that she was in her classroom and he

25  came in the classroom, shut the door behind him, asked

26  her if he could take pictures of her toes for a massage

27  therapy class and then asked her if he could massage

28  her feet.

```
 1          Q.   Did this make her feel uncomfortable?
 2               MR. CLARK:  Objection, relevance.
 3               THE COURT:  Sustained.
 4    BY MS. FILO:
 5          Q.   Officer Pierce, did you also interview the
 6    Acting Assistant Principal, Mr. Lara, L-A-R-A?
 7          A.   Yes, I did.
 8          Q.   When did that interview take place?
 9               MR. CLARK:  Would you mind referring me to the
10    Bates stamp page?
11               MS. FILO:  Sure.  403 just for counsel.
12               THE WITNESS:  May I refer to my report?
13    BY MS. FILO:
14          Q.   If that would refresh your recollection.
15          A.   It was on the 10th.
16          Q.   January 10th?
17          A.   January 10th, 2012, yes.
18          Q.   Um, what did -- did Mr. Lara relate to you
19    that he had seen Mr. Chandler in the early morning
20    hours of January the 10th?
21          A.   Yes, he did.
22          Q.   What did he tell you?
23          A.   He said that he saw Mr. Chandler arrive at
24    school about 6:45 and he walked across the campus.  He
25    said he was carrying a bag that appeared to have
26    something heavy in it and then he lost sight of him.
27          Q.   Did Mr. Lara tell you what he did upon seeing
28    Mr. Chandler with this bag on campus early in the
```

```
1   morning hours?
2       A.   Yes, he did.
3            MR. CLARK:  Objection.  Request an offer of
4   proof.
5            THE COURT:  All right.  Go ahead please.
6            MS. FILO:  I believe that Mr. Lara told
7   Officer Pierce that, in the early morning hours of
8   January the 10th, he observed Mr. Chandler with this
9   bag, um, he determined that Mr. Chandler was not
10  supposed to be on campus.  He went to Mr. Chandler's
11  classroom, found him in the classroom, um, with
12  cleaning supplies, specifically Clorox, Handiwipes, and
13  Lysol in the classroom with the door locked.
14           THE COURT:  Response?
15           MR. CLARK:  Well, my reading of this report
16  doesn't necessarily say that Mr. Lara reiterated that,
17  but Mr. Lara may have told Mr. DeGaria that, something
18  to that effect.  And then the idea that the D.A. has
19  offered that Mr. Chandler was not supposed to be on
20  campus, I don't think there's any evidence of that in
21  his statement.  Um, so I don't know, it doesn't look
22  like this -- so I'm objecting on hearsay grounds
23  because I don't believe this witness observed it.  I
24  believe that he heard it from someone else and then he
25  reiterated it.
26           THE COURT:  I'll take it subject to a motion
27  to strike.  You're correct that only one level of
28  hearsay is allowed at preliminary examination and the
```

1    hearsay declarant has to have personal knowledge.  I

2    don't know that yet.  Maybe that will develop.

3         Go ahead please.

4    BY MS. FILO:

5         Q.   Did Mr. Lara tell you that he went, he

6    personally went to Mr. Chandler's classroom?

7         A.   Yes.

8         Q.   Did he tell you that, when he got there, he

9    found the door locked?

10        A.   Yes.

11        Q.   Did he tell you that a key was used and that

12   he personally observed the key being used in order to

13   open the door?

14        A.   Yes.

15        Q.   Did he tell you that, when he opened that

16   door, he found Mr. Chandler in the classroom with

17   cleaning supplies?

18        A.   Yes.

19        Q.   Thank you.  Detective Pierce, did you

20   interview B., the first young woman that testified for

21   us in this proceeding, on or about January 10th, 2012?

22        A.   I did.

23        Q.   Have you reviewed that, um, interview?

24        A.   Yes, I have.

25        Q.   Was that interview audio recorded?

26        A.   Yes, it was.

27        MS. FILO:  Your Honor, at this time the People

28   would seek to introduce the recording of B.  It is --

1   the People do not believe that it is necessary for the

2   court to review that recording unless the court wants

3   to do that.  It is our intention that the recording and

4   an accompanying transcript be introduced into evidence

5   such that if B. were to become unavailable at a later

6   date, the defense would have been given a full and

7   complete opportunity to confront and cross examine both

8   Detective Pierce and B. on the contents of her

9   statement and satisfy any *Crawford* concerns.

10          MR. CLARK:  I'm not willing to stipulate to

11  that.

12          THE COURT:  A copy of this video and, um,

13  audio transcript has already been given to defense

14  counsel; is that correct?

15          MS. FILO:  Correct.

16          THE COURT:  And you're moving it into

17  evidence?

18          MS. FILO:  I am under Evidence Code Section

19  1360.

20          THE COURT:  Okay.  And is there an objection?

21          MR. CLARK:  Yes.

22          THE COURT:  All right.  And the basis of the

23  objection is?

24          MR. CLARK:  I need to research this.  I don't

25  know this on the top of my head under *Crawford*.  It was

26  not sworn.  Um, and I don't believe you can just move a

27  transcript in like this and try to satisfy *Crawford*, so

28  just because she gave me a copy of it.  I have a copy

1    of the transcript.  The witness testified here today.

2         THE COURT:  Yes.

3         MR. CLARK:  Not today, during this prelim.  To

4    suggest that then makes her prior statement to a police

5    officer admissible where we weren't given the

6    opportunity to cross examine that, I just think, I'm

7    being sandbagged on this.  I'd at least like the

8    opportunity to look at it.

9         MS. FILO:  Sorry, Your Honor, but I am quite

10   confident that we discussed this when we were assigned

11   to this department.  So the defense has been on notice

12   of the People's intention to introduce the C.I.C.

13   interview and that's the Child Interview Center

14   interview.  There is no hearsay objection.  It

15   satisfies all the requirements of Evidence Code Section

16   1360.  It is independently admissible.  There is no

17   hearsay objection.  The only objection to its

18   presentation at the time of trial would be *Crawford*,

19   um, some sort of *Crawford* objection.  And the People

20   are introducing the evidence at this time, um, and we

21   did put the defense on notice at the beginning of this

22   preliminary hearing that we were going to do that such

23   that the defense had the opportunity to confront and

24   cross examine the witness and the officer such that if

25   she becomes unavailable later that there would be no

26   *Crawford* objection.

27         I'm not asking the defense to stipulate to

28   that.  And I'm not asking this court to make a finding

1  with respect to a *Crawford* objection that may be lodged
2  at a later time.
3        I'm simply asking that the evidence be
4  admitted such that a reviewing court or at the time of
5  trial, the trial court can make a determination whether
6  or not *Crawford* has been satisfied.
7        THE COURT:  I don't think we can do two parts
8  like that.  If you introduce it into evidence, of
9  course I'm going to look at it.  I have to which is
10 going to take far more than the three-day estimate
11 which you both assured me was realistic.  If I look at
12 it and the defense wants to raise a *Crawford* issue, I
13 have to hear that.  I understand that the hearsay
14 exception is not the problem.  If I make a
15 determination that the circumstances are reasonable,
16 then the foundation of 1360 is met.
17        If there's a *Crawford* argument that it's
18 testimonial in nature and that she's not available for
19 some reason, I'd be happy look into that.  I don't see
20 she's unable because she was in fact here.
21        MS. FILO:  The *Crawford* objection cannot be
22 lodged now.  She's been here.  She's been cross
23 examined and confronted.  It is not a *Crawford* lodged
24 now.  It is the People's way to protect against a
25 *Crawford* objection that may be lodged later.  I don't
26 think this court can in any way make a determination as
27 to whether or not that *Crawford* objection will prevail.
28        THE COURT:  He can make a *Crawford* objection

1   as soon as you offer it.  What's to stop him?

2            MR. CLARK:  I do believe --

3            MS. FILO:  He's had an opportunity to, uh,

4   confront and cross examine the witness.  She was here.

5            MR. CLARK:  You're doing this -- I mean, I've

6   never seen -- you're trying to put something in, just

7   in case somebody doesn't testify at trial.

8            MS. FILO:  Yes.

9            MR. CLARK:  I don't think that this is the

10  place to make, admit evidence for something that may

11  happen in the future?

12           THE COURT:  Let's go back to square one.  Is

13  it hearsay?  Yes.  Is it an out-of-court statement

14  offered for the truth of the matter asserted?  Is there

15  an exception?  Yes, 1360.  In that respect, it's self

16  authenticating.  I can make a determination whether

17  it's made under circumstances that are trustworthy.

18  But as soon as it's introduced into evidence at any

19  time for any reason in any proceeding, counsel has a

20  right to object.

21           MS. FILO:  What would be the basis?

22           THE COURT:  If he does object, then I have to

23  rule on the objection.

24           MS. FILO:  What's the objection?

25           THE COURT:  *Crawford,* apparently.

26           MR. CLARK:  *Crawford.*

27           MS. FILO:  You had an opportunity to confront

28  and cross examine the witness.

1          MR. CLARK:  I don't mean to argue.  I've made

2     a *Crawford* objection.  It is highly irregular to try to

3     put a transcript in like this, um, you know, without at

4     least going into this is what the witness said and

5     didn't say.  Again, it is testimonial.  I mean, it's

6     why she wants to put it in.  Otherwise, she wouldn't be

7     putting it if it wasn't testimonial.  What she's asking

8     to do is to have this court accept something in

9     evidence in the future if a witness failed to testify.

10    If she called the witness at prelim, the witness

11    testified, I don't, I don't see that this is an

12    appropriate vehicle to be admitting the transcript in

13    case the witness decided later.  So I'm making a

14    *Crawford* objection.  And I'm making a hearsay

15    objection.  I do believe it's testimonial.  And then I

16    think the court would have to review the entire

17    transcript to see if, in fact, it meets an exception to

18    the *Crawford* rule.

19          THE COURT:  Well --

20          MR. CLARK:  That's my objection.

21          THE COURT:  Okay.  There's no exception to the

22    Crawford rule.  Crawford comes in two parts:  Is it

23    testimonial?  I would say 99 percent yes because it's

24    by a plain clothes detective.  It's not an ongoing

25    emergency.  It's I will interview now and I'll get this

26    in court.  The question is the second part of *Crawford*,

27    which is, is the witness unavailable.  And I don't know

28    the answer to that one because she wasn't asked about

DENISE NEBOLON, CSR #9344, OFFICIAL COURT REPORTER          480

```
 1   this at the time.
 2           Go ahead.
 3           MS. FILO:  I think in fairness, she's been
 4   exhaustively asked about this.
 5           THE COURT:  But not about this.
 6           MS. FILO:  She was asked all about her
 7   statement.  That has been fodder for the defense.
 8   They've always been able -- they cross examined her on
 9   her or statement.  They Cross examined her about her
10   out-of-court statements, about her statements to the
11   police.  She's been cross examined.
12           The reality is I think that I could introduce
13   this evidence without notifying the defense that I
14   believe it satisfies Crawford.  I could just offer it
15   under Evidence Code 1360.  And if the court is more
16   comfortable with me doing that without any
17   representations about Crawford, I'm happy to do that.
18   Because there cannot be a Crawford objection at this
19   point.  There is no Crawford because there's no
20   Crawford issue.  She has been here.  She has been
21   confronted and cross examined.  This now is a Evidence
22   Code 1360 statement.  That's all it is at this point.
23           THE COURT:  I think counsel would like to look
24   at some case law to see if there's anything that
25   contemplates this particular fact pattern.
26           MR. CLARK:  The witness already testified.
27   This would be duplicative anyway to what the witness
28   testified to.  She said it's not being used as a prior
```

```
1    inconsistent, prior consistent.  There's no exception.
2    It's not being used for any purpose, other than to put
3    in a statement which is clearly testimonial.  I mean,
4    if the court wants to review the statement and say is
5    this testimonial, we're done at the break, if she has,
6    if Ms. Filo has a transcript, maybe that is the
7    quickest way to resolve the issue because, if it's
8    testimonial, it's not coming in.
9            THE COURT:  Well, is your objection in part
10   that it is cumulative?
11           MR. CLARK:  Yes.
12           THE COURT:  All right.  Can you give me an
13   offer of proof, Ms. Filo, of any part of the statement
14   that is different and will help the People from her
15   testimony?
16           MS. FILO:  Your Honor, I think -- I mean,
17   there are some areas where she supplemented, um, some
18   information.  For instance, I know in her in-court
19   testimony in this proceeding, she did not talk about or
20   mention the fact that Mr. Chandler had her get,
21   actually lay down on the ground or get down on the
22   ground and that he put a blanket over her and did some
23   things with her feet at the time of the very first
24   incident.  In fact, she couldn't remember that that
25   happened at all.  That, um, incident is thoroughly
26   described in her interview with the police department.
27   So it's things like that, um, that I think are
28   supplemental.
```

1          MR. CLARK:  I would think the time for

2     admission of that would have been right after the

3     witnesses testified or during the testimony.

4          THE COURT:  I can't control what, when, and

5     how, but I can tell you, as the trier of fact, that I

6     don't think that the addition of a blanket would

7     contribute to my determination.  There's one count of

8     nonforceble 288 charge.  That's the only thing that's

9     in front of me.  And, um, her testimony was that she

10    was blindfolded.  She had candy in her mouth.  She

11    thinks it was either caramel or chocolate.

12          Um, there was -- a long time ago there was

13    round thing something salty and gooey came out.  She

14    thinks it came out of the round thing.  It went on my

15    clothes and on my chest.  She says she thinks she heard

16    keys.  She thinks that she played that game about three

17    times, and she didn't like the game.  He said it was a

18    science experiment.  Um, she told her mom and Officer

19    Sean and other police officers that she hasn't told her

20    friends.  It made her feel bad to play the game.  She

21    thinks the candy came before the gooey, salty stuff and

22    it was a round thing.  The water came out of the round

23    thing while the thing was in her mouth.  She could

24    taste it a little, but it was salty and a lot came

25    out.  The thing was big.  "It took up my whole mouth,"

26    had a little trouble breathing.

27          Those are pretty dramatic facts.  I don't know

28    that the addition of a blanket will add much to my

```
1    determination.  Under 352, I think that it's probative
2    value is slight compared to what I already have and
3    the, um, consumption of time is great.
4            Is there anything else from this witness?
5            MS. FILO:  No, Your Honor, thank you.
6            THE COURT:  All right.  Um, cross exam
7    please?
8            MR. CLARK:  As I mentioned, he's under
9    subpoena to my office.  Would it be possible to take a
10   short afternoon break and then I'll finish up?
11           THE COURT:  Sure.  Are the People requesting
12   an offer of proof under 866?
13           MS. FILO:  Yes.
14           THE COURT:  Do you have any cross examination
15   of this officer based on what he's already said?
16           MR. CLARK:  Brief.
17           THE COURT:  Go ahead.  Let's do that first.
18           MR. CLARK:  Okay.
19                    CROSS EXAMINATION
20   BY MR. CLARK:
21       Q.  Um, with respect to the statement that you
22   attributed to Ms. Keller, um, when did the conversation
23   between Mr. Chandler and Ms. Keller take place
24   regarding giving her a foot massage?
25       A.  She didn't know the exact date.  She said it
26   was prior to her leaving.
27       Q.  When did she leave?
28       A.  I believe she left in 2005.
```

```
 1          Q.   And when did she start?
 2          A.   When did she start?
 3          Q.   When did she start working there prior to her
 4     leaving, I mean, it's 2005, so we know it's at least
 5     back to 2005, and it could be back to however far.  I
 6     have no idea.
 7          A.   I think she said 2000 to 2005 she was a
 8     teacher there.
 9          Q.   So sometime in a five-year period between 2000
10     and 2005, Ms. Keller and Mr. Chandler had one
11     conversation, at least as reported by Ms. Keller, about
12     him offering to give her a foot massage.
13          A.   That's correct.
14          Q.   And did she comply with the request?  Did he
15     give her a foot massage?
16          A.   No.
17          Q.   Are you sure?
18          A.   She didn't tell me he did.
19          Q.   Did you ask her?
20          A.   I'm not sure if I did.
21          Q.   Is it in your report that you asked her?
22          A.   I can look.
23          Q.   Go ahead.
24          A.   No, it's not in here.
25          Q.   So you don't know, or, you don't know
26     whether -- you believe that Ms. Keller -- that
27     Mr. Chandler asked Ms. Keller can I give you a foot
28     massage, but you don't know whether she complied and he
```

```
 1   actually gave her one.
 2        A.   I do not know.
 3        Q.   Do you know the relationship between
 4   Ms. Keller and Mr. Chandler prior to that time?  Were
 5   they friends?  Acquaintances?  Do you know?
 6        A.   I do.
 7             MS. FILO:  Objection, Your Honor.  I thought
 8   this line of questioning was prohibited by the court.
 9             THE COURT:  May I have the question and answer
10   read back.
11                  (The requested record is read.)
12             MR. CLARK:  I'll withdraw it.
13             THE COURT:  Okay.
14             MR. CLARK:  If I could ask Ms. Filo, could you
15   direct me to Mr. Lara's statement again.
16             MS. FILO:  It's on page 403.
17   BY MR. CLARK:
18        Q.   Now, you said in your statement that Mr. Lara
19   told you that Mr. Chandler was not supposed to be on
20   campus.  Did you say something to that effect?
21        A.   The way I remember it is Mr. Lara called up
22   Ms. Peery.  She told him he was not to be allowed on
23   campus.  When he saw Mr. Chandler on campus, he called
24   Ms. Peery.
25        Q.   And then Ms. Peery told Mr. Lara that
26   Mr. Chandler was not supposed to be on campus?
27        A.   That is correct.
28             MR. CLARK:  Then I'm moving to strike because
```

```
1    I don't believe there's any evidence that Mr. Chandler
2    was told that by Ms. Peery and that would make this
3    completely irrelevant.
4             THE COURT:  Overruled.
5    BY MR. CLARK:
6        Q.   Did Ms. Peery tell that to Mr. Chandler?
7        A.   I have no idea.
8        Q.   And then did Mr. Lara tell you that
9    Mr. Chandler asked if he could pick up some of his
10   personal items.
11       A.   Yes.
12       Q.   And did Mr. Lara allow Mr. Chandler to do
13   that.
14       A.   Yes, he did.
15       Q.   And that Mr. Chandler, um, picked up a bottle
16   of Lysol and a container of Clorox and Handiwipes and
17   put them in his bag; is that correct?
18       A.   That's correct.
19       Q.   Was there those type of materials in
20   Mr. Chandler's classroom?
21       A.   I have no idea.
22       Q.   And then Mr. Lara looked in the cabinet, um,
23   in his class; is that correct?
24       A.   Correct.
25       Q.   After being told that he could take his
26   personal items with him.
27       A.   That's correct.
28       Q.   Did Mr. Lara tell you that he saw Mr. Chandler
```

```
 1   cleaning anything?
 2        A.   No.
 3             MR. CLARK:   Okay, thank you.  Nothing on at
 4   that topic.
 5             THE COURT:   All right.
 6             MR. CLARK:   Are we still on the 1360 issue?
 7             THE COURT:   No, I think we've passed that
 8   because I ruled on it.  Is that the end of your cross
 9   examination of this witness?
10             MR. CLARK:   Yes, I think that's all.
11             THE COURT:   Let's go to the 866 issue.  The
12   People have requested an offer of proof.  I need an
13   offer of proof as to what this witness will say that
14   will establish an affirmative defense, negating an
15   element of the crime, impeach the statement of a
16   witness or impeach the statement of the hearsay
17   declarant.  Those are the four subjects specified.
18   Which one do you pick?
19             MR. CLARK:   I'm actually doing all of those, I
20   think in my presentation.
21             THE COURT:   Go ahead.  I'll hear your offer of
22   proof.
23             MR. CLARK:   Okay.  Officer Pierce prepared a
24   search warrant affidavit in which he swore under
25   penalty of perjury that he was requesting a judge to
26   allow him to look for certain things because those
27   items would show evidence of a sexual intent in
28   children, okay?  And, in my opinion, none of those
```

1    items, such as child pornography, those kinds of
2    things, chat rooms, journals about children, sex toys,
3    none of that was located, even this affiant, under
4    penalty of perjury, said that we are likely to find
5    these things which show evidence of intent.  The fact
6    that it wasn't found indicates the affirmative defense
7    the absence of sexual intent.
8              THE COURT:  Do the People wish to be heard?
9              MS. FILO:  Sure, Your Honor.  Unless this
10   affiant put in that declaration that the absence of
11   those items would vitiate sexual intent or the
12   existence of a sexual crime, um, that, I think, would
13   be appropriate impeachment.  But the fact that he put
14   in an affidavit that these items would be additional
15   evidence of sexual crimes, um, and that they were not
16   located, I think is relevant.
17             THE COURT:  Um, it doesn't appear to me to be
18   an affirmative defense because an affirmative defense,
19   affirms, admits all the elements and adds an X factor,
20   sure I admit it, but it was in self-defense; sure I hit
21   him, but it was in defense of others; sure, I broke
22   into the house, but there was a storm raging and I
23   would have died.  It's a necessity; sure, I gave him
24   the money, but he had a gun to my head at the time.
25   It's duress.  This appears to negate an element of the
26   crime, and I don't know that the absence of something
27   also indicates the absence of a specific intent.
28             I'm thinking *People versus Stoll*, S-T-O-L-L,

1    in which the person accused of child molesting was

2    allowed to bring in adult women, girlfriends to say

3    he's perfectly normal.  He likes adult woman.  That was

4    allude to counter the specific intent.

5          I don't know of any case that allows a black

6    hole, so to speak, in absence of things that you might

7    or might not find, um, to prove the absence of specific

8    intent.  I'll be happy look at any case you give me.

9          MR. CLARK:  If I can just maybe quote from the

10   affidavit of Sean Pierce under penalty of perjury.

11         THE COURT:  Sure.

12         MR. CLARK:  I will represent to the court I'm

13   sure he's written a number of these search warrants and

14   asked for the same thing, child pornography, chat

15   rooms, sex toys, those kinds of things.  These

16   materials will demonstrate sexual proclivity,

17   inclination, preference, and activities of the person

18   under investigation providing evidence that will tend

19   to show that the person has committed a felony.

20         So we don't dispute that Mr. Chandler touched

21   a child.  What we dispute is that Mr. Chandler touched

22   a child for the purposes of sexual interest under 288.

23   So the absence of evidence of intent, as described by

24   the failure to find anything like what I've just

25   described, shows the defense that an affirmative

26   defense, yes, I touched a child, but I didn't do it for

27   a sexual purpose.

28         And I'm not sure if the court is suggesting

1    that this would not be admissible at trial.  I think

2    the absence of the criminal intent -- and I don't mean

3    it would always be relevant in an inquiry like this.

4                THE COURT:  Okay.  Um, let me ask some

5    questions of, um, the officer.

6                Officer, did you incorporate in this search

7    warrant language what I would call a profile search

8    warrant for pedophiles?

9                THE WITNESS:  Yes.  I'm not sure what you're

10   ...

11               THE COURT:  I have seen search warrants in

12   which officers describe the offense and then say it's

13   common to find these items with this offense and that's

14   what I'm looking for.  It's not tied to this

15   individual; it's just a profile.  This is what I'm

16   likely to find in this case.  That's a profile as

17   opposed to somebody saw him with X and I'm going to go

18   look for X.  Was it a profile search warrant or was it

19   a specific search warrant?

20               THE WITNESS:  Profile.

21               THE COURT:  Okay.  Um, I'll give you an

22   indicated ruling and I'll invite further comment.  A

23   profile search warrant, which was briefly disfavored

24   under regime of Rose Bird for those of us old enough to

25   remember that time, um, states that, based on this

26   offense, here's what I expect to find.  So if it were

27   drug dealers, you would expect to find large amounts of

28   cash because they don't take credit cards.  You would

```
 1   expect to find weapons to, um, guard the inventory.
 2   You would expect to find pay/owe sheets to keep track
 3   of who knows what.  They would expect to find scales to
 4   measure the stuff and large amounts of cash and all
 5   kinds of things that you wouldn't necessarily actually
 6   find.
 7          If the charge were 288, you might also expect
 8   to find child pornography, um, um, in various kinds.
 9   You might expect to find pornography which imitates the
10   action that was described.  You might expect to find
11   large amounts of this.  That doesn't necessarily mean
12   you would find it.
13          I don't see that the failure of one or more
14   parts of the profile to be actually confirmed is even
15   relevant, much less that it negates a specific intent.
16          Do you wish to be heard further on this?
17          MR. CLARK:  Yes.  In the hypothetical you just
18   gave me about, does the person possess drugs with the
19   intent to sell.  That person is saying I possess drugs,
20   but I didn't intend to sell them.  Is the court
21   suggesting that you wouldn't then be able to ask the
22   investigating officer did you find pay/owe sheets, did
23   you find this or other indicia of sales to negate the
24   specific intent.  The same argument would be made here
25   which is that there was a touching of a child.  And the
26   defense theory is that that was not done for a sexual
27   purpose.
28          The absence of a prurient interest in children
```

1    is relevant to the sexual, to the element of the crime
2    because touching a child's not illegal.  Touching a
3    child with the purpose of a sexual intent, the absence
4    of a specific intent is, specific intent is a specific
5    element of this crime.  The absence thereof is a
6    defense to the crime.  And I believe that the reason
7    that the officer asked for these things is to suggest
8    that the person who molests the child as opposed to
9    touches them would have indicia of their prurient
10   interest in children.  That's consistent and that's why
11   they asked for it.
12         Therefore, the flip side of that is the
13   defense is saying, you didn't find it.  Mr. Chandler
14   turned everything over to you and the absence thereof
15   indicates that the touching here was not done for a
16   sexual purpose, but was done in an innocent manner.
17   And that's a defense to the case.
18         THE COURT:  Do you wish to be heard further?
19         MS. FILO:  Your Honor, I think your example
20   was probably a good one.  And that was, if there were
21   drugs and other indicia of drug sales, that that could
22   help you determine whether or not someone is a drug
23   dealer.  I think that if the defense were able to
24   argue, but there were no drugs, then I think it would
25   be an affirmative defense to the charge.  If somehow
26   the defense in this case were able to argue, um, that
27   the defendant wasn't there or that he's not capable of
28   forming sexual intent, then I think this line of

```
 1   inquiry would be relevant.
 2          But, um, what Officer Pierce puts in a search
 3   warrant is I believe that this may help to show that,
 4   um, that this person is a, um, has an unnatural sexual
 5   interest in children.  He has never stated anywhere
 6   that the absence of those things makes it less likely
 7   that he is a pedophile.  And, um, he's not someone
 8   qualified even to give that kind of an opinion.
 9          THE COURT:  Well, while I think the profile
10   search warrant is common, it isn't necessarily set in
11   stone.  If a person has child pornography in his or her
12   possession, then possibly, unless it was, you know, I
13   just moved in, it's because they like child
14   pornography.  But the absence of child pornography
15   doesn't necessarily mean the absence of intent.  It's
16   not true that all pedophiles have child pornography and
17   all people who are not pedophiles do not.
18          Um, your objection's noted.  I thank you for
19   the legal reasoning.  Um, the objection is sustained.
20          MR. CLARK:  okay.  The next line of inquiry
21   that I would ask --
22          THE COURT:  Go ahead.
23          MR. CLARK:  Do you want to take a break?
24          THE COURT:  No.  Go ahead.
25          MR. CLARK:  Um, that Mr. -- I was going to ask
26   the officer did Mr. Chandler voluntarily surrender or
27   give consent for his computer and cell phone to be
28   searched.  The reason being that that's absence of
```

1    consciousness of guilt.  That's why I would ask that
2    question.
3              THE COURT:  Okay.  I agree it's relevant.
4    It's sort of the consciousness of guilt flipped
5    around.  Is there a stipulation?
6              MS. FILO:  Yes, I believe that's what the
7    officer would say.
8              THE COURT:  Okay, I'll accept the stipulation.
9              MS. FILO:  Is that right, Officer Pierce?
10             THE WITNESS:  Correct.
11             MR. CLARK:  The next area of inquiry would be
12   that, when Officer Pierce learned that Mr. Chandler had
13   minor children, he went to the daycare where these
14   children, um, attended, that he inquired of the
15   supervisors and others whether Mr. Chandler did
16   anything inappropriate with those children.  And the
17   answer to that is that no one made a complaint or
18   suggested that Mr. Chandler was inappropriate with
19   children in that setting.  Therefore, that would negate
20   the specific intent that Mr. Chandler had a prurient
21   interest in children or a sexual interest in children.
22             THE COURT:  Do you wish to be heard?
23             MS. FILO:  Your Honor, there's no allegation
24   that Mr. Chandler has molested every child he's ever
25   run across.  We've identified specific victims.  And
26   those are the victims that are charged, so I would
27   argue that it's irrelevant.
28             THE COURT:  Well, this seems to me to fit the

1    facts of People versus Stoll, S-T-O-L-L, when the
2    people said I never had a problem with him.  That
3    apparently comes in.
4            MS. FILO:  The People will stipulate that
5    Officer Pierce went to, um, went to the school of
6    Mr. Chandler's children and inquired there whether any
7    believed act of molestation occurred.
8            THE WITNESS:  I did not.  Someone in the
9    office did.  I never went to a preschool.  It was other
10   people in the office.
11   BY MR. CLARK:
12       Q.  Under your direction?
13       A.  No.
14           THE COURT:  You have no personal knowledge of
15   what the people at the daycare said?
16           THE WITNESS:  No, I didn't go to the daycare.
17   Can I explain?
18           THE COURT:  Sure.
19           THE WITNESS:  So my Sergeant Lombardo, he was
20   facilitating this whole investigation so someone that
21   he assigned went out to the daycare.  I didn't assign
22   anybody.  I didn't go to daycare.  It was someone else
23   from the office.
24           THE COURT:  I can't allow it because this
25   witness has no personal knowledge.
26   BY MR. CLARK:
27       Q.  As part of your investigation, did you find in
28   any other setting anyone saying that Mr. Chandler was

1    inappropriate or had a sexual interest in children?  In

2    other words, at the daycare.  You're the case officer,

3    the investigating officer, correct?

4        A.   To my knowledge, I don't think they found

5    anybody at the daycare.

6        Q.   Who had any concern with Mr. Chandler around

7    those children?

8        A.   That's correct.

9        Q.   And that the next area of -- so I think we've

10   stipulated that the door in Mr. Chandler's classroom

11   depicted in Defense A and B, that door adjoins to a

12   different classroom, correct?

13       A.   Correct.

14       Q.   We've stipulated there's no lock on the door

15   between the two classrooms, correct?

16       A.   Correct.

17            MS. FILO:  The People have stipulated to that.

18            THE COURT:  Right.

19            MR. CLARK:  Okay.

20   BY MR. CLARK:

21       Q.   And that, therefore, you believe that the

22   molest occurred in that setting.  Do you believe that?

23            THE COURT:  What's the line of inquiry?

24   What's the offer of proof?

25            MR. CLARK:  I suppose that's more

26   argumentative.  That part of this investigation of

27   which Officer Pierce was the investigating officer,

28   that he interviewed over 65 former and current students

1    of Mr. Chandler, that of those 65 children, many
2    described participating in the games or demonstrations
3    that have been articulated by the five people
4    testifying, both boys and girls participated and that
5    that's a fact.  Therefore, a significant number of
6    children participated in this game and demonstration,
7    and that it would be relevant that, of the 65, the five
8    people here today that were subjected to cross
9    examination are the people that were picked to be
10   victims.
11           THE COURT:  What do you mean, "picked to be
12   victims"?
13           MR. CLARK:  Well, in other words, 65 children
14   were interviewed in this investigation.  Many of the
15   children described participating.  And I'd ask -- this
16   is offer of proof -- that we participated in this game
17   and he did these very similar things to us, okay?
18           THE COURT:  Are you offering it to negate an
19   element of the crime?
20           MR. CLARK:  Yes.  It negates the specific
21   intent that the touching was done for sexual interest.
22           THE COURT:  Okay.  Any other purpose?
23           MR. CLARK:  No.
24           THE COURT:  Response?
25           MS. FILO:  I'll submit it, Your Honor.  Again,
26   there's just no allegation that he molested every child
27   he came across.  I'm happy to stipulate that a number
28   of children --

1    MR. CLARK:  I think my argument's a little
2  more nuanced than that.  It's not that he molested
3  every child that he had come across.  He just said that
4  he does the demonstration with 65 children, numerous
5  amounts of children, but these are considered
6  molestation and those are not.  So it's not that he
7  molested everybody; it's that this demonstration, in
8  and of itself, is not child molestation.
9    THE COURT:  Um, I appreciate the argument, but
10  when adults at the preschool say, I have experienced
11  this defendant and he's never done anything, that's one
12  thing.  When children say, I played the game and he
13  never did it to me, that doesn't necessarily prove that
14  he, the defendant, didn't have a specific intent
15  towards other children.
16    The absence of inappropriate activity by the
17  defendant with other people in the age group doesn't
18  necessarily mean that he didn't have a preference; it
19  just means that he didn't act on it.  That's a
20  perfectly reasonable conclusion from the evidence.
21    MR. CLARK:  My argument isn't necessarily
22  that.  My argument is that, if you take the same
23  demonstration for child A and that child said he did X,
24  Y, Z, and that's not child molest, then you take child
25  B and said he did X, Y, and Z, and say that's child
26  molest, to me that's a little different than suggesting
27  that he molested every child he comes in contact with.
28  That's what it would be offered for.  And I'll submit

1   it on that.

2        MS. FILO:  My very brief response to that

3  would be I do not believe there were, I believe the

4  other children that Mr. Clark is referring to performed

5  the demonstration or were involved in the demonstration

6  in class.  There, you know, were, theoretically, 28

7  other witnesses.  It's not analogous.  It's not the

8  same game is the idea.

9        THE COURT:  My conclusion from listening to

10  the five complaining witnesses is that there were two

11  types of games, one that occurred in front of the whole

12  class which appears to be legitimate and one that

13  occurred one on one with very different activities.  So

14  I already know that from the witnesses that the game

15  took place in front of the class which appears to be

16  legitimate.  I have that.

17        And if this officer interviewed lots of other

18  people who's confirmed that, it's cumulative and, um,

19  not particularly probative and there's an undue

20  consumption of time so I'll exclude it under 352.

21        MR. CLARK:  Could I make a further statement

22  for the record?

23        THE COURT:  Please.

24        MR. CLARK:  It's not that these 60-plus

25  children described only doing it in the front of the

26  class, they also did it individually.  So there would

27  be that argument as well and I'll submit it on that.

28        THE COURT:  What do you mean "individually"?

```
 1          MR. CLARK:  Just that they participated
 2  individually in a similar fashion.
 3          THE COURT:  In front of the class?
 4          MR. CLARK:  No, by themselves.
 5          THE COURT:  With the defendant?
 6          MR. CLARK:  Yes.
 7          THE COURT:  Alone.
 8          MR. CLARK:  Yes.
 9          THE COURT:  Any response?
10          MS. FILO:  Your Honor, I am aware of one
11  other, maybe two other children that were interviewed,
12  um, who gave statements that they were with
13  Mr. Chandler in a classroom.  I think I could submit
14  that name to the court under seal or I could identify
15  them for counsel.  I'm only aware of, I think, two
16  others.
17          MR. CLARK:  Your Honor, I'm going to submit
18  it.
19          THE COURT:  Thank you.
20          MS. FILO:  And both of those children, just
21  for the record as far as I know, were in the classroom
22  with other students who have now been identified as
23  victims.
24          THE COURT:  Okay.
25          MR. CLARK:  Um, that -- can I keep going?
26          THE COURT:  Sure.
27          MR. CLARK:  Um, that Officer Pierce did
28  indicate he interviewed a witness named Pedro who was a
```

1   parent assisting in the class who observed Mr. Chandler
2   doing the game involving the blindfold, giving the
3   child food, and Mr. Chandler putting food on their
4   tongue in front of a parent and I believe that was in a
5   one-on-one-type setting.
6           THE COURT:  Thank you.  Um, I think the
7   probative value of this evidence is slight in
8   comparison to all the evidence before me and would
9   require an undue consumption of time.  Is there another
10  area?
11          MR. CLARK:  Yes.  Part of this investigation
12  involved the interview of a female who I believe was
13  discussed here, um, in court.  Can I say her name?
14          THE COURT:  Why don't you use initials.
15          MR. CLARK:  A.  We've had a few A.'s and that
16  that individual peaked through the mask and did not see
17  any sexual activity such as Mr. Chandler's penis, that
18  she was actually getting, this was a one-on-one-type of
19  setting, that she peaked through the mask and saw the
20  items that were food items that were placed in an
21  individual setting, um, and was not his penis.
22          MS. FILO:  Can you just give me a page
23  reference?
24          THE COURT:  We'll take a brief recess while
25  you compare notes on this.  Thank you.
26              (A recess is taken.)
27          MR. CLARK:  May I get Mr. Schumb?
28          THE COURT:  Sure.

```
1            All right.  Um, Mr. Schumb is present.  So the
2    offer of proof was that part of the investigation is
3    this officer interviewed a child we'll call A-2 and
4    that A-2 peaked through the mask, did not see anything
5    consistent with the defendant's penis, but did see
6    food.  What else about that offer of proof?
7            MR. CLARK:  That was it.
8            MS. FILO:  Your Honor?
9            THE COURT:  Was this in front of the entire
10   class or one on one?
11           MR. CLARK:  I think Ms. Filo is raising her
12   hand.
13           MS. FILO:  The only reason is to say this
14   officer didn't take that statement.  He would be the
15   inappropriate witness anyway.
16           MR. CLARK:  Your Honor, I will -- we did
17   subpoena the officer that took that statement, um, so I
18   think that there would be two levels of inquiry.  One
19   is as the investigating officer on the case, he's
20   familiar, you know, he's overseeing the entire case.
21   If he's aware of a situation where a child was
22   blindfolded by themselves, they peaked through the
23   mask, that, um, there's nothing, there's not a penis.
24   It's food that is consistent with the defense theory
25   that would be relevant, even if he didn't do the
26   interview of the witness because of his opinions and
27   conclusions as the investigating officer.
28           THE COURT:  My problem is the hearsay rule
```

```
 1   which allows only one level of hearsay and he can't
 2   give it -- no offense -- because he's not the officer
 3   who did the interview.  However, is there a stipulation
 4   that some officer did the interview and that was the
 5   content of the interview?
 6            MS. FILO:  I think so, Your Honor.  I didn't
 7   really -- let me look at it really quickly.
 8            I will stipulate that she did give a statement
 9   to the San Jose Police Department, that she was able to
10   peak underneath the mask and did not describe anything
11   consistent with a penis.
12            THE COURT:  Did she describe food?
13            MS. FILO:  She did, but she also described
14   other items.
15            THE COURT:  What other items?
16            MS. FILO:  A key, a balloon, and then she
17   described an item, um, which she said was an eraser,
18   but when questioned about that, she was, um, less
19   definitive.
20            THE COURT:  All right.  Is there a stipulation
21   from the defense that that can come in?
22            MR. CLARK:  Yes.
23            THE COURT:  I'll accept the stipulation.
24   Thank you.
25            MR. CLARK:  Nothing further by the defense in
26   terms of offer of proof.
27            THE COURT:  All right, thank you.  May this
28   witness resume his seat?
```

```
 1            MS. FILO:  Yes.
 2            THE COURT:  Thank you, sir.
 3            THE WITNESS:  Thank you, Your Honor.
 4            THE COURT:  Um, I forgot to ask the People if
 5   the people rest?
 6            MS. FILO:  We rest.
 7            THE COURT:  Does the defense have any
 8   additional evidence to present?
 9            MR. CLARK:  No, Your Honor.
10            THE COURT:  All right, thank you.  I'll hear
11   any, um, closing argument from the People.
12            MS. FILO:  Your Honor, I would submit it
13   unless the court has any specific questions about any
14   specific count.
15            THE COURT:  Thank you.  I'll hear closing
16   argument from the defense.
17            MR. CLARK:  Yes, Your Honor, we would ask for
18   a no holding order as to count four as a matter of
19   law.  I'm sorry -- well, as to the person listed as
20   Victim L. which was the one that we had the discussion
21   about relative to the feet, that there's insufficient
22   evidence in two areas.  One is that the touching
23   described by Victim L. was not done by Mr. Chandler,
24   his hands, but it was rather done by other objects over
25   her socks.  And that, I don't believe, as a matter of
26   law, that if you touch a child with another object,
27   unless you otherwise qualify for a different sexual
28   offense, that that, besides your hands through the
```

1  clothing, that can qualify as a 288.  It would be more

2  of a 647.6, assuming you felt that was for sexual

3  purposes.

4          I believe that, under those circumstances, she

5  described that she was touched by an object and what it

6  was.  And Mr. Schumb developed that, but that's not

7  sufficient for a 288 holding.  And I'd ask that be set

8  aside on those grounds.

9          THE COURT:  Hold that thought.

10          Okay.  Do the people wish to be heard?

11          MS. FILO:  Um, Your Honor, I believe that

12  Ms. L. testified that the defendant rubbed something on

13  her feet, um, she said she didn't know what it was, but

14  she described it as round, um, she said she thought

15  maybe it was a glue stick because she saw a glue stick

16  on the table after the incident was over, but she

17  described it, I think, as smooth, hard and kind of

18  bumpy on the bottom.  I think that, in combination with

19  the other evidence we heard that we've heard in the

20  case, is certainly probable cause to believe, um, that

21  the defendant was using his penis or some other part of

22  his own body in connection with the incident.  I think

23  that's what 288 requires, and I think we've satisfied

24  the elements.

25          THE COURT:  Well, I'm looking at the CalCrim,

26  um, 1110.  It says the People must prove that the

27  defendant willfully touched any part of child's either

28  on their bare skin or through their clothing.  Um, and

```
 1    then there's an alternative that the defendant caused a
 2    child to touch his own body, the defendant's body or
 3    the body of someone else either on bare skin or through
 4    clothing.  I don't see any distinction between direct
 5    touching and using an object.
 6              If I would make such a distinction, it would
 7    be odd because penetration with a foreign object would
 8    not be a crime on the theory that the object, whatever
 9    it was, was being inserted into some opening of the
10    child was not offensive because it was an object
11    instead of a hand, so lacking any case law to guide me
12    on that --
13              MR. CLARK:  I don't mean to interrupt the
14    court.
15              THE COURT:  Go ahead.
16              MR. CLARK:  That's a separate crime and that
17    was the point of my argument was that, if you used an
18    object in such a fashion, you would be potentially
19    committing another crime.  If you inserted an object
20    into a child's vagina or something like that, it would
21    stick.  But the point I'm making is that the People
22    selected the crime as a 288.  I don't believe that if
23    you touch a child with an eraser that that could be a
24    288.  And I believe the evidence was pretty clear that
25    Victim L. said she knew what it was, it was a glue
26    stick, etcetera, so we'd have to assume for sake of
27    argument that if you touch a child's foot with a glue
28    stick that that's sufficient for a 288.
```

1          I don't dispute that if you touched a glue

2     stick in a child's vagina that that would be a separate

3     crime as the court just described.

4          MS. FILO:  I actually agree with the court.  I

5     think that the case law I'm familiar with is more in

6     the nature of a battery or assault or something like

7     that which says that, if you use an object that's so

8     closely connected to the body, that would be like the

9     body if you, um, it is, I mean, it's his, it's his arm,

10    his hand using the object.  But, again, it would be my

11    argument to the court that I think she described an

12    object with, um, that the court could reasonably

13    interpret to be part of the defendant's own body.

14          That may be the witness' assumption of what it

15    was, but in connection with all the other evidence that

16    we've heard, I think, um, certainly the court could

17    conclude it was something other than a glue stick.

18          THE COURT:  The language of the statute itself

19    said any person who willfully committed a lewd and

20    lascivious act, including any of the facts constituting

21    other crimes upon or with the body or any part of a

22    child under the age of 14.

23          That statute doesn't talk to about touching.

24    That's the committee who writes these jury

25    instructions, certainly their own two cents' worth.  I

26    appreciate the argument.  Um, it might be an

27    interesting 995 issue.

28          Um, is there anything else from either

1    counsel?

2          MR. CLARK:  Yes, Your Honor.  I ask for no

3    holding order as to the entire case based on the issue

4    of specific intent to commit a sexual act on a child.

5    I believe after all of the cross examination in this

6    case that there is insufficient evidence.  Obviously, I

7    was limited in what I could ask Officer Pierce, but

8    insufficient evidence of a sexual intent.  Um, when you

9    do look into this, and I understand we're getting into

10   argument now, um, that it's an awfully strange place to

11   molest a child when you have access to children

12   everywhere right in front of a door that opens into an

13   adjoining classroom during class time when school is in

14   session.  And I think that's inconsistent with someone

15   who's committing a child molest, but, rather, is more

16   consistent with someone who's involved in doing this

17   demonstration as a lesson.

18         And so when you couple the illogical nature of

19   that with the fact that, based on offers of proof that

20   Mr. Chandler never acted inappropriately in any

21   children in any other setting.  I mean, that's just

22   illogical and I think that the more logical inference

23   from the evidence is that there was not a sexual intent

24   with respect to the touching that's alleged here.

25         THE COURT:  Go ahead.

26         MS. FILO:  Your Honor, um, I think, when you

27   compare that evidence to the weight of the evidence

28   that has been presented by the People, it is, um,

```
 1    willfully and adequate to overcome a probable cause
 2    finding on the elements of the offenses that have been
 3    charged.
 4              THE COURT:  Thank you.
 5              I have listened to the children.  And I
 6    watched them.  And I have considered their testimony
 7    very carefully.  It concerns me that there was an
 8    activity in front of the entire class that probably was
 9    legitimate, asking children to explore their senses,
10    other than sight or sound.  But it also is very much
11    like grooming behavior to get the children used to the
12    idea of being blindfolded, used to the idea of the
13    teacher putting things in their mouth, used to the
14    whole idea that this is okay.  Um, the sexual intent, I
15    think, is clear.
16              Certainly for the burden of proof that I have
17    in that I have in this preliminary examination, it
18    appears to me that the following offenses have been
19    committed and there's sufficient cause to believe the
20    defendant, Craig Richard Chandler, guilty thereof:
21              A felony violation of Penal Code Section
22    288(a) against Jane Doe 1 as charged in count one;
23              A violation of 288(a) against Jane Doe 2 as
24    charged in count two;
25              A violation of 288(a) against Jane Doe 3 as
26    charged in count three;
27              A violation of 288(a), a felony, as charged in
28    count four;
```

1          And a violation of 288(a) against Jane Doe 5

2    as charged in count five.

3          Um, I find that there's probable cause to

4    believe the allegations of multiple victims within the

5    meaning of Section 667.6(1)(b) and 667.1(e) as charged

6    in all fives counts are true.

7          I therefore order that Mr. Chandler be held to

8    answer for the same.  Bail and custody will remain as

9    set.

10          MR. CLARK:  Your Honor, I'd like -- before the

11    court certifies to the next level, I'd like to address

12    the issue of bail and make a bail request in this case.

13          THE COURT:  Go ahead.

14          MR. CLARK:  I am aware of what the bail

15    schedule is.  However, Mr. Chandler is an individual

16    with virtually no criminal history.  I believe he had

17    misdemeanor when he was 18 years old, that, um, he came

18    to the police department, gave a statement.  He was

19    released from custody by Officer Pierce.  He did not

20    flee, um, so he was aware of the allegations.  He did

21    not flee, so I don't believe he's a flight risk.  He's

22    married with three children.  He's no longer a

23    teacher.  He's been removed from that capacity.  Um,

24    the comments that I made relative to the specific

25    intent issue are that the, the court made its holding

26    order and I respect that, but that the only place where

27    this occurred, if the court believes that that

28    occurred, was in the classroom of which he's no longer

1    there.

2           The interaction that he's had with children

3    that was investigated by Officer Pierce, um, there is

4    no evidence that he's committed any act on any other

5    children, um, that he's, I'm asking to have a bail set

6    in the amount of $300,000, plus Mr. Chandler would

7    abide by any additional conditions of SORP such as

8    wearing an ankle bracelet, a G.P.S. device, um,

9    reporting, um, doing any other things that the court

10   would request.

11          Um, this is obviously a very unusual case that

12   is very defensible, that him being in custody while

13   this case is pending is putting him at a significant

14   disadvantage if he's not a danger to the community

15   and/or a flight risk.  And I think the evidence is

16   that, if you believe something happened in the

17   classroom, that it's still never been clear to me what

18   the People are contending exactly happened, but that

19   he's no longer there.  He, um, is not accused of

20   molesting children in other capacities, that he's not a

21   flight risk.  He's got ties to the community.  And we

22   would ask for a bail in the amount $300,000 combined

23   with any additional terms of supervised O.R., including

24   G.P.S., not to reiterate myself.

25          MS. FILO:  Your Honor, scheduled bail in this

26   case is no bail, um, and there would have to be some

27   showing of a change of circumstance on behalf of the

28   defense in order to move from the scheduled bail, I'm

1    sorry, from previously set bail.  There has been a

2    change in circumstance and it is one that aggravates

3    the defendant's situation, not mitigates it, in my

4    opinion.  So the defendant has now been held to

5    answer.  The court has found there's probable cause to

6    believe that these crimes were committed and no change

7    in bail should be warranted at this time.

8         MR. CLARK:  Your Honor, if I may just follow

9    up?  In terms of this change-in-circumstance issue, we

10   have never requested a bail.  We specifically didn't

11   request a bail, so there's never been a finding, other

12   than the initial magistrate setting bail at bail

13   schedule, so to say that somehow another judge took a

14   look at this and said it should be a no bail case.  Um,

15   and I do believe no bail in this type of situation

16   raises Eighth Amendment concerns, um, and I believe,

17   even in homicide cases, you're entitled to a bail, so

18   just to say that, well, that's the bail schedule isn't

19   the end of the inquiry.

20        I think that what's been developed here is

21   significantly different than the 228's that you commonly

22   see.  So to somehow say that you would have to undue

23   what another magistrate's already done, we've never

24   asked for this before.  We specifically didn't ask for

25   it until all of these issues were developed.  And the

26   issue about flight was never addressed.  Mr. Chandler,

27   as I mentioned was interviewed by the police and was

28   put on notice of this investigation and he didn't

```
 1    leave.  Um, and so they've never considered the other
 2    issues of ties to the community, um, those kinds of
 3    things.  And I think people are entitled to bail under
 4    the Eighth Amendment.  Um, and we're asking for a
 5    reasonable bail, significantly in an amount to show
 6    that he'll come back to court and any other terms and
 7    conditions that would assure his appearance in court
 8    and the safety of the community.  And I think we can
 9    fashion such an order.
10              THE COURT:  Do you wish to be heard further?
11              MS. FILO:  Submitted.
12              THE COURT:  All right.  One of the purposes of
13    bail is public safety.  And I'm concerned that this was
14    a so-called isolated incident.  It was repeated
15    behavior over two school years with multiple
16    complaining witnesses.  Um, that is a great concern to
17    me.  Also the schedule is no bail.  Um, and I don't see
18    any reason to depart from the scheduled, absent some
19    sort of very unusual circumstance.
20              Um, and, also, although the defendant is
21    facing five counts now, I heard more than that.  And if
22    the People choose to charge more than that under the
23    theory that they are, um, transactionally related and
24    the People can support that with case law, if anything,
25    Mr. Chandler's situation is just worsened considerably.
26    That's not up to me.  I just raise that as an issue.
27              The motion to reduce bail is denied without
28    prejudice.  Some other judge may feel differently or
```

1    analyze this case differently from the way I do.

2            May we have an arraignment date please.

3            COURT CLERK:  June 4th at 1:30, Department 24.

4            THE COURT:  Thank you.

5            COURT CLERK:  Judge, are the People's Exhibit

6    4 and Defense Exhibit D admitted?

7            THE COURT:  D was admitted.  And People's 4?

8            MR. CLARK:  What is that?

9            THE COURT:  Was there a 4?

10            MS. FILO:  I think People's 4 was the D.N.A.,

11    the crime lab material.

12            MR. CLARK:  That was a court exhibit.

13            THE COURT:  I'll return it to the People.

14    That was a court exhibit.

15            MR. CLARK:  We would ask to have the resume,

16    if there's no objection, made part of the record.

17            THE COURT:  All right.  Is there any

18    objection?

19            MS. FILO:  No, Your Honor.

20            THE COURT:  Okay, fine.  Then, um, People's 4

21    is entered.  And the exhibits are returned to the

22    moving parties.  Thank you very much.

23            MS. FILO:  Thank you, Your Honor.

24                        -oOo-

25

26

27

28

```
 1    State of California      )
                               )    SS.
 2    County of Santa Clara    )

 3

 4              I, Denise M. Nebolon, do hereby certify that:

 5              I am an Official Court Reporter of the

 6    superior court of the State of California in and for

 7    the County of Santa Clara; and that, as such, I

 8    reported in stenotype and thereafter transcribed

 9    through computer-aided transcription as herein appears

10    the above proceedings and that the same is a full,

11    true, and correct transcription of said stenotype as

12    reported by me to the best of my ability.

13              I further certify that I have complied with

14    Code of Civil Procedure Section 237(a)(2) in that all

15    personal juror identifying information has been

16    redacted, if applicable.

17

18    Dated:    June 3, 2012

19                              _____

20                              Denise M. Nebolon, CSR 9344

21

22

23

24

25

26

27

28
```

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

SAN JOSE FACILITY

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

CRAIG RICHARD CHANDLER (10/25/1976), 1K
1361 N. SAN PEDRO STREET, SAN JOSE, CA 95110

Defendant(s).

*C1223754*

FELONY COMPLAINT
CASE SUMMARY

DA NO:  120100927
        CEN
12001535  CRC  HELD  01/13/2012

**PROTECTIVE ORDER**

CASE SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|-------|--------|--------------|-----------|------------|---------------|
| 1 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| 2 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |

**P.C. 1048
PRIORITY**

517

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
SAN JOSE FACILITY

# FILED

JAN 1 3 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____ DEPUTY

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff,

C1223754

**FELONY COMPLAINT**

DA NO:  120100927
CEN
12001535   CRC   HELD   01/13/2012

vs.

CRAIG RICHARD CHANDLER (10/25/1976), 1K
1361 N. SAN PEDRO STREET, SAN JOSE, CA 95110

Defendant(s).

# PROTECTIVE ORDER

The undersigned is informed and believes that:

## COUNT 1

On or about and between December 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 1, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

# P.C. 1048 PRIORITY

## COUNT 2

On or about and between October 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD

518

CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 2, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).


### REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.


Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.


Further, attached and incorporated by reference are official reports and documents of a law enforcement agency which the complainant believes establish probable cause for the pretrial restraint of defendant CRAIG RICHARD CHANDLER, for the above-listed crimes.

519

Complainant therefore requests that the defendant(s) be dealt with according to law.

I certify under penalty of perjury that the above is true and correct.

Executed on January 12, 2012, in SANTA CLARA County, California.

Pierce 3415
(Pierce 3415)
SJPD (408) 277-4102  120090244 S
FEIN/ D367/ FELONY/ EG

520

```
  SAN JOSE FAC                                              CASE NO.    C1223754
  190 W. HEDDING STREE                                      CEN         12001535
  SAN JOSE, CA 95110                       DATE  01/13/2012 1:45 PM DEPT23
PEOPLE VS. CRAIG RICHARD CHANDLER          10/25/1976 CAB3721090    CDY BK:Y
L.K.A.    1361 N SAN PEDRO ST              CLERK   PADILLA/NEWMAN       EBK966 M
          SAN JOSE, CA 95110               HEARING  ARRAIGNMENT
JUDGE HON. ALDEN E. DANNER       DV:    AGENCY  SJ-04313-3415 -PIERCE
REPORTER YETT                    CHILD:    STATUS  I- -               TW
DEF. ATTY.                       DA: ROBINSON   Ted   APO
CHARGES  F(001)PC288(A)          F(002)PC288(A)              VIOLATION DATE
                                                            01/10/2012
```

NEXT APPEARANCE

☐ Defendant Present ☐ Not Present   ☐ Atty Present   ☐ IDO / IDO / Special App
☑ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info  ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent  ☐ Interpreter _____  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprt. Adv / Wav  ☐ Bail/OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited ☐ Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal  ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Ref'd_____  ☐ Costs Within 30 Days to Court_____
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl  ☐ P36 Re-Asm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved _____ ☐ Appt'd  ☐ Crim Proc Susp ☐ Rein  ☐ BW Ordered ☐ _____  ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☑ Granted ☐ Denied ☐ Submitted ☐ Cal  ☐ Subm on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____  ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____  ☐ Sub time of Sent ☐ Harvey Stip _____
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.6/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $ _____  ☐ Guilty Plea Rendered
☐ Waives Referral ___  ☐ Ref'd to APO Full Rpt  ☐ FINES/FEES: PAY TO ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY  Audit # _____
☐ Sent Suspended _____  ☐ PROBATION DENIED  COUNT ___ $ _____ + PA $____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ___ $ _____ + PA $____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs  AIDS / CPP $ _____ + PA $____ ☐ SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF $ _____ + PA $____ ☐ EMAT $ _____
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB $ _____ + PA $____
☐ Not drive w/o valid DL & Ins ☐ VC23600 ☐ HTO ☐ Re-refer  DRF/RF $ _____ ☐ Add'l RF $_____ ☐ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ____ days  AEF $ _____ ☐ Original Fine $ _____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs  SECA $ _____ ☐ CTS PC2900.5 _____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $ _____ ☐ TOTAL DUE $ _____
☑ DVPO issued/mod /term'd Exp _____  ICIN $ _____ ☐ Payments Granted / Modified ___
☑ No Contact ☐ Peaceful Contact ☐ DSA thru APO / CRT ☐ Filed  AR $ _____ ☐ /Mo beginning _____
☑ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $ _____ ☐ FINE STAYED _____
☐ Stay away from _____  DV $ _____ ☐ Committed @ $_____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $ _____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $ _____ ☐ P/SUP $ _____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ Restitution ☐ General $_____ to _____
☐ Original Terms & Conditions Except as Amended herein
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                                County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|-------|-----|-----------|-------------------|----------------------|---------------------|-------------------|
|       |     |           |                   |                      |                     |                   |
|       |     |           |                   |                      |                     |                   |
|       |     |           |                   |                      |                     |                   |
|       |     |           |                   |                      |                     |                   |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|
|             |       |             |       |             |       |             |       |             |       |       |

CTS = _____ ☐ ACT + _____ ☐ PC4019 ☐ ½ ☐ PC2933.1 = _____ — TOTAL DAYS  TOTAL TERM _____
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ All / Except ___ ☐ EMP/PSP/ERP/DRP/Co Parole/NP ___
☐ Sent Deemed Served ☐ Rpt to Parole w/in ___ ☐ Adv ___ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to _____    521
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ___
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☐ REMANDED–BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

1   STEVEN CLARK, Bar No. 110351
    THE LAW OFFICES OF STEVEN CLARK
2   10 Almaden, Suite 1250
    San Jose, California  95113
3   (408) 271-3245

4   CHRISTOPHER E. SCHUMB, Bar No. 116828
    THE LAW OFFICES OF CHRISTOPHER E. SCHUMB
5   10 Almaden, Suite 1250
    San Jose, California  95113
6   (408) 271-3245

7   Attorneys for Defendant
    CRAIG RICHARD CHANDLER
8

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

12              FOR THE COUNTY OF SANTA CLARA

13

14  PEOPLE OF THE STATE OF            Case No. C1223754
    CALIFORNIA
15                                    NOTICE OF MOTION, APPLICATION
         Plaintiff,                   TO EXPUNGE UNFILED DOCUMENT
16                                    FROM THE COURT FILE, OR IN
         v.                           THE ALTERNATIVE, SEAL FILE;
17                                    MEMORANDUM OF POINTS AND
    CRAIG RICHARD CHANDLER,           AUTHORITIES
18                                    Date: January 20, 2012
         Defendant.                   Time: 10:30 a.m.
19                                    Department 30
                                      The Honorable Phillip
20                                    Pennypacker

21

22      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, you are hereby

23  notified that Defendant will seek an order excluding the document

24  identified below or in the alternative, an order sealing the

25  record as to the document identified below, on or before January

26  20, 2012, at 10:30 a.m. in Department 30, of the Santa Clara

27  Superior Court, located at 190 W. Hedding Street, San Jose,

28  California, 95110.  The motions are based upon this Notice,



F I L E D

JAN 19 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
Kelly Biggi

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-3245

App. to Seal File          -1-

522

1   Application and Memorandum of Points and Authorities, and on the

2   documents contained in the Court File and the oral arguments of

3   counsel.

4   Dated: January 18, 2012

5                                              CHRISTOPHER SCHUMB
                                               Attorney for Defendant

6   I.    STATEMENT OF FACTS

7        This case alleges two violations of Penal Code section

8   288(a) and alleges the 15 year to life enhancement under Penal

9   Code section 667.61(b).  Insuring that Defendant receives a fair

10  trial is of paramount importance to all parties.

11       Typically, all police reports, statements and other evidence

12  are not placed in a Court File.  In the case a bar, a three page

13  "Filing Report" was apparently placed in the Court File by the

14  District Attorney's office or the San Jose Police Department.

15  The "Filing Report" does not bear a file stamp, and has a 1054.2

16  prohibition stamp on it face.

17       From the defense point of view, it contains an incomplete

18  and biased synopsis of some of the allegations against the

19  Defendant.  In particular, it fails to set forth the defendant's

20  statement to the Police Officers denying the allegations.

21       When defense counsel noticed the "Filing Report" in the

22  Court File at the arraignment on January 13, 2011, they moved to

23  seal the Court File as to that document, which the Court granted

24  without prejudice.

25       It is believed that the "Filing Report" was placed in the

26  Court File so the Court could consider it in the event that

27  Defendant made a motion for bail, which has not happened.

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA  95113
Telephone (408) 271-3245      App. to Seal File        -2-

523

## II.  LEGAL DISCUSSION

1
2        Only documents that are appropriate to be filed and then
3    actually filed by the court clerk, should be maintained in the
4    Court's File.  In order to be part of the Court File, a document
5    must be presented to a court clerk, file endorsed and then placed
6    in the file. Rules of Court 1.20(a)  In order to be filed, the
7    document must be in a proper format, Rules of Court 2.100 et seq.
8    It must be on lined pleading paper (Rules of Court 2.108) it must
9    have a properly formatted first page setting forth the caption of
10   the action and the nature of the pleading (Rules of Court 2.111),
11   it must have a proper footer (Rules of Court 2.110) and so forth.
12   Any papers that are presented for filing that are not in the
13   proper format, must be rejected by the clerk. Rules of Court
14   2.118(a)
15        In the case at bar, the document entitled "Filing Report"
16   appears to be a declaration, and is clearly not the proper format
17   for the reasons stated above.  If it was presented to the court
18   clerk for filing, it should have been rejected at the outset.  If
19   it was not presented to the court clerk, it never should have
20   been placed in the Court File, for only the court clerk can do
21   this.  In addition, since there is no bail motion pending, the
22   document is superfluous and unnecessary, and should be excluded
23   on that ground as well.
24        If the Court finds that despite the foregoing defects, the
25   document should be kept in the Court File, the defense requests
26   that the Court File be sealed as to the three page document
27   entitled "Filing Report", pursuant to Rules of Court 2.550 et
28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-0245          App. to Seal File          -3-

524

1    seq.  The factual bases for this application are that the police

2    department has issued a press release in this case in an effort

3    to publicize it.  The media has responded with numerous

4    television and print stories about the defendant and the

5    allegations.  The arraignment hearing was televised, which is

6    likely to continue with subsequent hearings.  The pre-trial

7    publicity will necessarily contaminate the jury pool and deprive

8    defendant of a fair trial.  There is no reason to file the

9    "Filing Report" because no motion for bail has been made.  The

10   "Filing Report" is akin to a search warrant affidavit which is a

11   document that is routinely sealed People v. Hobbs (1994) 7

12   Cal.4th 948.

13   III. CONCLUSION

14        The "Filing Report" was never actually filed since it bears

15   no file stamp, and thus should not be kept in the Court File.  If

16   it was actually presented to the court clerk for filing, it

17   should have been rejected at the outset, and should therefore be

18   expunged from the file because it does not comply with the

19   requirements of a declaration under the Rules of Court.  If the

20   document is properly in the Court File, then the over-riding

21   interest that defendant receive a fair trial and the lack of

22   prejudice to any party supports an order sealing the file; there

23   being no less restrictive means to achieve that interest.  If the

24   Court finds need to seal the file as to the "File Report" then

25   Defendant requests that the Court make the express findings

26   required under NBC Subsidiary Inc. v. Superior Court (1999) 20

27

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-0245

App. to Seal File          -4-

525

1  Cal.4th 1178, 1208-09, and issue an order sealing the three pages

2  comprising the "Filing Report".

3                                    Respectfully submitted,

4  Dated: January 18, 2012

5                                    CHRISTOPHER E. SCHUMB
                                     Attorney for Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-3245    App. to Seal File          -5-

526

<u>PROOF OF SERVICE</u>



FILED

JAN 19 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

I, STEVEN CLARK, hereby declare and state:

I am over the age of eighteen years, employed in the County of Santa Clara, California, and not a party to the within action. My business address is 10 Almaden Boulevard, Suite 1250, San Jose, CA 95113.

On January 18, 2012, I served Defendant's Notice of Motion, Application and Points and Authorities, on:

Alison Filo Esq.
Santa Clara County District Attorney
70 W. Hedding Street, West Wing
San Jose, California  95110
(408) 294-6746

[ ]  (BY MAIL)  I placed each such sealed envelope, with postage thereon fully prepaid for first-class, return receipt requested certified mail, for collection and mailing at San Jose, California, following ordinary business practices.  I am readily familiar with the practice of CHRISTOPHER E. SCHUMB for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the United States Postal Service the same day as it is placed for processing.

[ ]  (BY PERSONAL SERVICE)  I caused each documents to be delivered by hand to the addressee(s) noted above.

[X]  (BY FACSIMILE)  I caused the said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Jose, California.

Date:  January 18, 2012

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-3245

App. to Seal File

-6-

527

1     <u>PROOF OF SERVICE</u>

2

3        I, STEVEN CLARK, hereby declare and state:

4        I am over the age of eighteen years, employed in the County
    of Santa Clara, California, and not a party to the within action.
    My business address is 10 Almaden Boulevard, Suite 1250, San
5   Jose, CA 95113.

6        On January 19, 2012, I served Defendant's Notice of Motion,
    Application and Points and Authorities, on:

7

8

    Alison Filo Esq.
9   Santa Clara County District Attorney
    70 W. Hedding Street, West Wing
10  San Jose, California  95110
    (408) 294-6746

11  

12  

13

14

15  [  ] (BY MAIL)  I placed each such sealed envelope, with postage
         thereon fully prepaid for first-class, return receipt
16       requested certified mail, for collection and mailing at San
         Jose, California, following ordinary business practices.  I
17       am readily familiar with the practice of CHRISTOPHER E.
         SCHUMB for processing of correspondence, said practice being
18       that in the ordinary course of business, correspondence is
         deposited with the United States Postal Service the same day
19       as it is placed for processing.

20  [X] (BY PERSONAL SERVICE)  I caused each documents to be
         delivered by hand to the addressee(s) noted above.

21  [  ] (BY FACSIMILE)  I caused the said document to be transmitted
         by Facsimile machine to the number indicated after the
22       address(es) noted above.

23       I declare under penalty of perjury under the laws of the
    State of California that the foregoing is true and correct.
24  Executed at San Jose, California.

25  Date:  January 19, 2012

26

27

28
                                                     528

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA  95113
Telephone (408) 271-3245    App. to Seal File        -7-

```
☐1  SAN JOSE FAC                              (          CASE NO.      C1223754
     170 W. HEDDING STA.                       FC:       CEN           12001535
     SAN JOSE, CA 95110              DATE      01/20/2012 10:30 ABEPT. 30
PEOPLE VS.  CRAIG RICHARD CHANDLER            10/25/1976 CAB3721090    CDY BK:Y
L.K.A.     1361 N SAN PEDRO ST      CLERK     L. BALLESTEROS          EBK966 M
           SAN JOSE, CA 95110       HEARING   FURTHER HEARING
JUDGE   HON. PHILIP H. PENNYPACKER   DV:  AGENCY  SJ-04313-3415 -PIERCE
REPORTER L. SHINN                   CHILD:  STATUS  I-SET -NBA                TW
DEF. ATTY. SCHIMT, CHRISTOPH(G)   D.A. FILO   APO
CHARGES  F(001) PC288(A)            F(002) PC288(A)         VIOLATION DATE
                                                           01/10/2012
```

1-31-12  4:30  D 23- Remain as set                 1-31-12  8:30    D 30
NEXT APPEARANCE _____ _____ AR 15. CLARK _____

Hrg on Motion  GEN. OF POLICE  filing w/Court
Ref'd  DECISION IN SEALING
APO / DADS / Prop 36  P36 Re-Assm't
DF RECORD

Reef of  A Waiver for Mercury
News

PLEA Conditions: __ None __ No State Prison __ PC17 after 1 Yr Prob __ Includes VOP _____
Dismissal / Striking  - NOT TO BE AVAIL TO PUBLIC @ THIS TIME
FILING

Other:  BRIEFS BY ATTORNEYS MAY BE SUBMITTED TO THE COURT
BY FRIDAY, 1-27-12.

JAIL/PRISON
FILE TO REMAIN WITH JUDGE PENNYPACKER'S XXXXXXXX UNTIL 1-31-12

TOTAL DAYS  129

REMANDED-BAIL

Dept 30 Box

1  T. ANDREW HUNTINGTON, Cal. Bar No. 187687
   General Counsel, Bay Area News Group
2  750 Ridder Park Drive
   San Jose, California 95190
3  Tel (408) 920-5790
   Fax (408) 920-1848
4  ahuntington@bayareanewsgroup.com

5  Attorney for SAN JOSE MERCURY NEWS, LLC

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SANTA CLARA

10

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | Case No. C1223754 |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO UNSEAL FILING REPORT** |
| CRAIG RICHARD CHANDLER, | |
| Defendant. | Date:    January 31, 2012<br>Time:    8:45 AM<br>Court:   Department 30<br>Judge:   Hon. Philip Pennypacker |

**F I L E D**

JAN 2 4 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
Jaymi L. Salisbury

530

TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL SUMMARY ............................................................ 1

III.  THE MERCURY NEWS HAS STANDING TO SEEK ACCESS TO THE FILING
      REPORT FILED TO SUPPORT THE PROSECUTION ................................................... 2

IV.   THE SEALING OF THE FILING REPORT DOES NOT MEET THE
      REQUIREMENTS OF THE FIRST AMENDMENT OR CALIFORNIA LAW ................ 4

      A.    The Public's Constitutional Right of Access Requires Proof that Sealing is
            Strictly and Inescapably Necessary and Detailed Findings Justifying Sealing ........ 4

      B.    The Procedural Requirements for Sealing the Filing Report Have Not Been
            Met and No Findings Sufficient to Justify Sealing Were Made .............................. 5

      C.    The Requirements for Sealing the Filing Report Cannot Be Met Because No
            Party Can Establish a Substantial Probability that an Overriding Interest
            Will Be Prejudiced, that Alternatives to Sealing Are Inadequate, and that
            Sealing the Filing Report Will Effectively Prevent Prejudice ................................ 6

            1.    No Showing Has Been Can Be Made that Sealing Is Necessary to
                  Protect the Defendants' Ability to Obtain a Fair Trial................................ 6

                  a.    Santa Clara County has a large, diverse pool of potential
                        jurors sufficient to provide Defendants an unbiased jury................. 8

                  b.    The nature and extent of the publicity does not justify sealing ...... 10

                  c.    Alternatives to sealing exist, and are sufficient to ensure that
                        there is no prejudice to the Defendants' ability to obtain a
                        fair trial .................................................................................... 10

            2.    No Showing Has Been or Can Be Made that Sealing Is Necessary to
                  Protect the People's Right to a Fair Trial ................................................. 11

            3.    Alternatives to Sealing the Filing Report Are More Than Adequate
                  to Prevent Any Meaningful Prejudice........................................................ 12

            4.    Sealing the Statement Cannot Be Effective in Preventing Any
                  Perceived Harm Because No Threat of Irreparable Damage Exists........... 12

V.    THE FILING REPORT MUST BE UNSEALED EVEN IF THE EVIDENCE
      CONTAINED IN THE REPORT IS NOT INTRODUCED INTO EVIDENCE .............. 13

VI.   CONCLUSION.................................................................................................... 15

531

-i-

1

# TABLE OF AUTHORITIES

2
Page(s)

Federal Cases

3

4
*Associated Press v. United States Dist. Court* (9th Cir. 1983)
705 F.2d 1143 ...................................................................... 2, 3, 4, 5, 6, 7, 8, 12

5

6
*CBS, Inc. v. United States Dist. Court* (9th Cir. 1984)
729 F.2d 1174 ................................................................................................. 8, 9

7
*CBS, Inc. v. United States Dist. Court* (9th Cir. 1985)
765 F.2d 823 ................................................................................................... 4, 5

8

9
*Cox Broadcasting Corp. v. Cohn* (1975)
420 U.S. 469 ...................................................................................................... 15

10
*Elrod v. Burns* (1976)
427 U.S. 347 ........................................................................................................ 5

11

12
*Gannett Co., Inc. v. DePasquale* (1979)
443 U.S. 368 [Rehnquist, J., concurring] ........................................................... 7

13

14
*In re Globe Newspaper Co.* (1st Cir. 1984)
729 F.2d 47 ........................................................................................................ 14

15
*Globe Newspaper Co. v. Superior Court* (1982)
457 U.S. 596 ................................................................................................. 2, 3, 7

16

17
*Irvin v. Dowd* (1961)
366 U.S. 717 ........................................................................................................ 7

18

19
*Murphy v. Florida* (1975)
421 U.S. 794 ........................................................................................................ 6

20
*Nebraska Press Ass'n v. Stuart* (1976)
427 U.S. 539 ....................................................................................... 6, 8, 10, 12

21

22
*Nixon v. Warner Communications* (1978)
435 U.S. 589 ........................................................................................................ 3

23

24
*Oregonian Publishing Co. v. U.S. Dist. Court* (9th Cir. 1990)
920 F.2d 1462, *cert. denied* ............................................................................... 4

25
*Phoenix Newspapers, Inc. v. United States Dist. Court* (9th Cir. 1998)
156 F.3d 940 ........................................................................................................ 2

26

27
*Press-Enterprise Co. v. Superior Court* (1984)
464 U.S. 501 ................................................................................................. 2, 10

28

532

*Press-Enterprise Co. v. Superior Court* (1986)
    478 U.S. 1 ................................................................................................ 2, 4, 7, 10

*Richmond Newspapers, Inc. v. Virginia* (1980)
    448 U.S. 555 ............................................................................................. 2, 3

*In re Search of 8420 Ocean Gateway Easton, Maryland* (D. Md. 2004)
    353 F.Supp.2d 577 .......................................................................................... 12

*Seattle Times v. United States Dist. Court* (9th Cir. 1988)
    845 F.2d 1513 ................................................................. 1, 7, 10, 12, 13, 14

*U.S. v. Chagra* (5th Cir. 1983)
    701 F.2d 354 ................................................................................................. 14

*U.S. v. Graham* (2d Cir. 2001)
    257 F.3d 143 .................................................................................................. 14

*U.S. v. Smith* (3d Cir. 1985)
    776 F.2d 1104 ............................................................................................ 4, 13

*United States v. Antar* (3d Cir. 1994)
    38 F.3d 1348 .................................................................................................... 5

*United States v. Brooklier* (9th Cir. 1982)
    685 F.2d 1162 ............................................................................................. 4, 6

*United States v. Giordano* (D. Conn. 2001)
    158 F.Supp.2d 242 ............................................................................................ 4

*United States v. Gonzales* (D. Del. 1996)
    927 F.Supp. 768 (*"Gonzales"*) ..................................................................... 11

*United States v. Kott* (C.D. Cal. 2004)
    380 F.Supp.2d 1122 ......................................................................................... 11

*United States v. Myers* (2d Cir. 1980)
    635 F.2d 945 ..................................................................................................... 6

*United States v. W.R. Grace* (D. Mont. 2006)
    408 F.Supp.2d 998 ........................................................................................... 10

*Up North Plastics* (D. Minn. 1996) 940 F.Supp. 229, 233 ..................................... 12

*Waller v. Georgia* (1984)
    467 U.S. 39 ........................................................................................... 3, 6, 7, 13

*Wolsky v. Oregonian Publishing Co.* (1991)
    501 U.S. 1210 .................................................................................................... 4

533

State Cases

*Accord Paradise Hills Associates v. Procel*
   (1991) 235 Cal.App.3d 1528 .................................................................. 5

*Brian W. v. Super. Ct.* (1978)
   20 Cal.3d 618 ..................................................................... 6, 10, 12

*Copley Press, Inc. v. Superior Court* (1991)
   228 Cal.App.3d 77 ................................................................................ 4

*Copley Press, Inc. v. Superior Court* (1992)
   6 Cal.App.4th 106 .......................................................................... 3, 15

*Copley Press, Inc. v. Superior Court* (1998)
   63 Cal.App.4th 367 ................................................................... 3, 4, 14

*Estate of Hearst* (1977)
   67 Cal.App.3d 777 ..................................................................... 3, 13, 15

*Mary R. v. B. & R. Corp.* (1983)
   149 Cal.App.3d 308 ........................................................................ 4, 11

*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999)
   20 Cal.4th 1178 .................................................... 1, 3, 5, 6, 7, 10, 12, 14

*Odle v. Superior Court* (1982)
   32 Cal.3d 932 .................................................................................. 10

*Pantos v. San Francisco* (1984)
   151 Cal. App. 3d 258 ......................................................................... 15

*People v. Coffman* (2004)
   34 Cal.4th 1 ..................................................................................... 10

*People v. Cooper* (1991)
   53 Cal.3d 771 ...................................................................................... 7

*People v. Harris* (1981)
   28 Cal.3d 935 ...................................................................................... 6

*People v. Jenkins* (2000)
   22 Cal.4th 900 ..................................................................................... 8

*People v. Jennings* (1991)
   53 Cal.3d 334 ...................................................................................... 7

*People v. Manson* (1976)
   61 Cal.App.3d 102 ............................................................................... 9

534

*People v. Massie* (1998)
    19 Cal.4th 550...................................................................................9

*People v. Mendosa* (1982)
    137 Cal. App. 3d 888........................................................................7

*People v. Prince* (2007)
    40 Cal. 4th 1179.........................................................................8, 10

*People v. Proctor* (1992)
    4 Cal.4th 499...................................................................................8

*People v. Sully* (1991)
    53 Cal.3d 1195................................................................................9

*People v. Vieira* (2005)
    35 Cal.4th 264................................................................................9

*People v. Welch* (1999)
    20 Cal.4th 701............................................................................8, 9

*Press-Enterprise Co. v. Superior Court* (1994)
    22 Cal. App. 4th 498..................................................................8, 10

*Savaglio v. Wal-Mart Stores, Inc.* (2007)
    149 Cal.App.4th 588.................................................................3, 14

*United States v. Edwards* (D.C.App.1981)
    430 A.2d 1321................................................................................14

Federal: Statutes, Rules, Regulations, Constitutional Provisions

U.S. Const., 1st Amendment...........................1, 2, 3, 4, 5, 6, 7, 11, 13, 14, 15

State: Statutes, Rules, Regulations, Constitutional Provisions

California Constitution ........................................................................3, 14, 15

Cal. Const., Article I, § 2, subd. (a).........................................................3, 14

Cal. Const., Article I, § 3, subd. (b).........................................................3, 14

Cal. Rules of Ct., rule 2.550................................................................3, 6, 15

Cal. Rules of Ct., rule 2.551...................................................................3, 15

Penal Code § 1033.....................................................................................8

535

-4-

I.   INTRODUCTION

The San Jose Mercury News, LLC (Mercury News) requests that the Filing Report filed by the Santa Clara County District Attorney in support of the complaint and prosecution in this matter be unsealed in its entirety.

The public and the press have a right of access to pretrial hearings and documents under the First Amendment and California law. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1216-1218, and fn. 36 (*NBC Subsidiary*); *Seattle Times v. United States Dist. Court* (9th Cir. 1988) 845 F.2d 1513, 1515.) Here, the Filing Report provided the factual foundation for the charges against Defendant, who has been charged with two counts of sexual assault. It was sealed at the request of Defendant's counsel, who claimed that it will "contaminate the jury pool and deprive defendant of a fair trial." (Defendant's Memorandum of Points and Authorities in Support of Application to Seal File ("Defendant's MPA"), 4:6-8).

There is no sound basis for concluding that disclosure of the Filing Report would prejudice Defendant's ability to obtain a fair trial. The sealing of the Filing Report, even for a limited period, is therefore contrary to the First Amendment and California law, and the Filing Report should be unsealed immediately.

II.   FACTUAL AND PROCEDURAL SUMMARY

The information available to the Mercury News regarding this matter is limited by the sealing of the Filing Report. As far as the Mercury News has been able to establish, Defendant has been accused of assaulting two seven year old girls at O.B. Whaley Elementary School, where Defendant was a teacher. (Declaration of T. Andrew Huntington ("Huntington Decl.,") ¶ 4.). Defendant was arrested on January 10, 2012, and on January 13, 2012, the Government filed a Complaint in this matter. (Huntington Decl., at ¶¶4-5, and Exhibit 1 attached thereto). Simultaneously, on January 13, 2012, and in support of the Complaint, the District Attorney's office submitted a report prepared by the San Jose Police Department ("the Filing Report") that contained summaries of the alleged victims' accounts of the alleged assaults. (*Id. at* ¶ 6).

At his January 13, 2012 arraignment hearing, Defendant asked the court to seal the Filing Report. (*Id. at* ¶ 7). The court granted Defendant's request and ordered the Filing Report sealed.

-1-

536

1   (*Id.*). In granting Defendant's request to seal, the court did not provide any written order

2   providing a factual basis or reasoning in support of its decision. (*Id.*).

3         On or about On January 17, 2012, the court, on its own motion, scheduled a hearing for

4   January 20, 2012, in order to reconsider Defendant's sealing request. (*Id. at* ¶ 8). At the

5   January 20, 2012 hearing, the court disagreed with Defendant, and held that the Filing Report was

6   part of the court's file, and had been considered by the court in denying bail to the Defendant.

7   (*Id.*). The court then ordered an additional hearing on the issue of Defendant's request to seal the

8   Filing Report, to take place on January 31, 2012. (*Id.*).

9         In seeking to seal the Filing Report, Defendant argues that any dissemination of the Filing

10   Report would contaminate the jury pool and deprive defendant of a fair trial as it "contains an

11   incomplete and biased synopsis of some of the allegations against the Defendant. In particular it

12   fails to set forth the defendant's statement to the Police Officers denying the allegations."

13   (Defendant's MPA, 2:17-20, 4:6-8). The only additional facts Defendant cited in his request to

14   seal were that "the police department has issued a press release in this case in an effort to publicize

15   it. The media has responded with numerous television and print stories about the defendant and

16   the allegations. The arraignment hearing was televised, which is likely to continue with

17   subsequent hearings." (Defendant's MPA, 4:1-6). Defendant, however, has not provided any

18   evidentiary support for the alleged facts supporting his request to seal.

19   **III.    THE MERCURY NEWS HAS STANDING TO SEEK ACCESS TO THE FILING**

20            **REPORT FILED TO SUPPORT THE PROSECUTION**

21         The Supreme Court first established the media's standing under the First Amendment with

22   respect to access to court proceedings decades ago. (See *Globe Newspaper Co. v. Superior Court*

23   (1982) 457 U.S. 596, 609, fn. 25 (*Globe Newspaper*) ["Of course, for a case-by-case approach to

24   be meaningful, representatives of the press and general public 'must be given an opportunity to be

25   heard on the question of their exclusion.'"]; *Richmond Newspapers, Inc. v. Virginia* (1980) 448

26   U.S. 555, 580 (*Richmond*); *Press-Enterprise Co. v. Superior Court* (1984) 464 U.S. 501, 508-510

27   (*Press-Enterprise I*); *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 7 (*Press-*

28   *Enterprise II*).) The First Amendment also give the press and the public standing to seek access to

537

1    court records.  (See, e.g., *Phoenix Newspapers, Inc. v. United States Dist. Court* (9th Cir. 1998)

2    156 F.3d 940, 949 ["if a court contemplates sealing a document or transcript, it must provide

3    sufficient notice to the public and press to afford them the opportunity to object or offer

4    alternatives"]; *Associated Press v. United States Dist. Court* (9th Cir. 1983) 705 F.2d 1143, 1147

5    (*Associated Press*).)

6          Like the First Amendment, the California Constitution provides a right of access to court

7    records, which the press and the public have standing to assert.  (See Cal. Const., art. I, § 2, subd.

8    (a); *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1216-1218, and

9    fn. 36 (*NBC Subsidiary*); *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 113

10   (*Copley II*); *Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367, 373 (*Copley III*)

11   ["both the federal (U.S. Const., 1st Amend.) and the state (Cal. Const., art. I, § 2, subd. (a))

12   Constitutions provide broad access rights to judicial records in criminal and civil cases."].)

13   Indeed, as the result of the passage of Proposition 59, there is now an express constitutional right

14   of public access to all "information concerning the conduct of the people's business."  (See Cal.

15   Const. art. I, § 3, subd. (b).)  Thus, "the writings of public officials and agencies shall be open to

16   public scrutiny."  (Cal. Const. art. I, § 3, subd. (b).)  The right of access created by Proposition 59

17   applies to court records.  (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 597

18   [recognizing constitutional right of access to civil court records under Proposition 59].)[1]

19         Finally, California Rules of Court 2.550 and 2.551 apply to all court records, and

20   specifically give the public standing to seek the unsealing of court records:  "A party or member of

21   the public may move, apply, or petition, or the court on its own motion may move, to unseal a

22   record."  (Cal. Rules of Ct., rule 2.551, subd. (h)(2).)

23

24

25

26

---

27         [1]  The Mercury News also has standing under common law to seek access to court records.
     (*Nixon v. Warner Communications* (1978) 435 U.S. 589, 597; *Estate of Hearst* (1977) 67
28   Cal.App.3d 777, 782.).

                                                                            538

1   IV.    THE SEALING OF THE FILING REPORT DOES NOT MEET THE

2          REQUIREMENTS OF THE FIRST AMENDMENT OR CALIFORNIA LAW

3   A.     The Public's Constitutional Right of Access Requires Proof that Sealing is Strictly

4          and Inescapably Necessary and Detailed Findings Justifying Sealing

5          The First Amendment gives the press and the public the right to attend criminal trials and

6   proceedings.  (*Richmond*, 448 U.S. at 580; *Globe Newspaper*, 457 U.S. at 603.)  The First

7   Amendment right of access applies to pretrial proceedings and records of these proceedings.  (See,

8   e.g., *Waller v. Georgia* (1984) 467 U.S. 39 (*Waller*) [motions to suppress evidence]; *Associated

9   Press*, 705 F.2d at 1146 [pretrial motions]; *United States v. Brooklier* (9th Cir. 1982) 685 F.2d

10  1162, 1172 (*Brooklier*) [motions to exclude evidence].)

11         While the constitutional right of access is not absolute, both California and federal

12  authorities place a heavy burden on the party seeking secrecy to justify denial of the public's First

13  Amendment rights.  Secrecy must be "'*strictly and inescapably necessary*'" to protect a

14  compelling government interest.  (*Associated Press*, 705 F.2d at 1146 [italics added]; *Brooklier*,

15  685 F.2d at 1167.  See also *Copley III*, 63 Cal.App.4th at 374 [compelling reasons must establish

16  why and to what extent records should be made private]; *Mary R. v. B. & R. Corp.* (1983) 149

17  Cal.App.3d 308, 317 [burden rests on party seeking to deny public access to establish compelling

18  reasons why and to what extent those records should be made private].)

19         In addition, before sealing may occur, the trial court must provide notice to the public and

20  media and afford them an opportunity to object, hold a prompt hearing on any objections to

21  closure, and make specific findings of fact in support of its determination that the proceedings

22  should be closed.  (See, e.g., *CBS, Inc. v. United States Dist. Court* (9th Cir. 1985) 765 F.2d 823,

23  825; *Oregonian Publishing Co. v. U.S. Dist. Court* (9th Cir. 1990) 920 F.2d 1462, 1466, *cert

24  denied; Wolsky v. Oregonian Publishing Co.* (1991) 501 U.S. 1210.)  Public access to court

25  proceedings and records cannot be denied "unless specific, on the record findings are made

26  demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve

27  that interest.'"  (*Press-Enterprise II*, 478 U.S. at 13-14; *Copley Press, Inc. v. Superior Court*

28  (1991) 228 Cal.App.3d 77, 84-85 (*Copley I*).)

539

-4-

1    The common law and First Amendment rights of access apply to "affidavits supporting

2  criminal complaints." (*United States v. Giordano* (D. Conn. 2001) 158 F.Supp.2d 242, 244.)

3  Public access to court documents that establish the parameters of the government's case in a

4  criminal proceeding, such as charging documents or a bill of particulars, serve the societal interest

5  of maintaining public confidence in the administration of justice. (See *U.S. v. Smith* (3d Cir.

6  1985) 776 F.2d 1104, 1111 [First Amendment right of access applies to criminal indictment,

7  information, and bill of particulars].)  A criminal complaint and supporting statement of facts, like

8  an indictment or a bill of particulars, define and limit the government's case.  They are therefore

9  critical to the prosecution, and to the public's understanding of the criminal process.

10    Furthermore, a "total restraint on the public's first amendment right of access [is

11  prohibited] even though the restraint is limited in time." (*Associated Press*, 705 F.2d at 1147.)

12  "Loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes

13  irreparable injury." (*Elrod v. Burns* (1976) 427 U.S. 347, 373. *Accord Paradise Hills Associates*

14  *v. Procel* (1991) 235 Cal.App.3d 1528, 1539.)

15    In this case, the requirements for sealing the Filing Report have not and cannot be met.

16  **B.    The Procedural Requirements for Sealing the Filing Report Have Not Been Met and**

17      **No Findings Sufficient to Justify Sealing Were Made**

18    Public notice of a request to seal court records must be given in advance. (*NBC*

19  *Subsidiary*, 20 Cal. 4th at 1217 ["a trial court must provide notice to the public of the

20  contemplated closure"]; *CBS, Inc. v. United States Dist. Court*, 765 F.2d at 825.)  A hearing must

21  be held and the required findings made before court records are sealed. (*NBC Subsidiary*, 20 Cal.

22  4th at 1218.)  "[T]he requirement that particularized findings of a compelling interest must be

23  placed on the record before a hearing is closed or a record sealed is not only for the benefit of the

24  reviewing court on appeal.  It exists, most fundamentally, to assure careful analysis by the district

25  court before any limitation is imposed, because reversal on review cannot fully vindicate First

26  Amendment rights." (*United States v. Antar* (3d Cir. 1994)  38 F.3d 1348, 1362.)

27    Here there is no evidence that Defendant's request for sealing was publicly announced in

28  advance or docketed in any way, and there is no evidence that there was a public hearing for the

-5-

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO UNSEAL FILING REPORT

1  purpose of providing the press or public with an opportunity to object to Defendant's sealing

2  request.  In ordering that the Filing Report be sealed, the court did not issue any type of order

3  containing its findings, much less any findings that meet the requirements of the First Amendment

4  and California law. (Huntington Decl., at ¶ 7).  In short, none of the procedural requirements for

5  the sealing of court records in a criminal proceeding have been met.  For this reason alone, the

6  sealing of the Filing Report was and is improper, and it must be unsealed.

7  **C.     The Requirements for Sealing the Filing Report Cannot Be Met Because Defendant**

8  **          Cannot Establish a Substantial Probability that an Overriding Interest Will Be**

9  **          Prejudiced, that Alternatives to Sealing Are Inadequate, and that Sealing the Filing**

10 **          Report Will Effectively Prevent Prejudice**

11          The First Amendment requires that "the party seeking to close the hearing must advance an

12 overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to

13 protect that interest, the trial court must consider reasonable alternatives to closing the proceeding,

14 and it must make findings adequate to support the closure." (*Waller*, 467 U.S. at 48.  See also

15 *NBC Subsidiary*, 20 Cal.4th at 1217-1218.)  Thus, to justify the sealing of the Filing Report a

16 substantial probability must exist that:  (1) irreparable damage to an overriding interest will result;

17 (2) alternatives to sealing will not adequately protect that interest; and (3) sealing will be effective

18 in protecting against the perceived harm.  (*Associated Press*, 705 F.2d at 1146; *Brooklier*, 685

19 F.2d at 1168-69.)[2]  This showing was not and cannot be made by Defendant in this case.

20          **1.     No Showing Has Been Can Be Made that Sealing Is Necessary to Protect the**

21          **          Defendants' Ability to Obtain a Fair Trial**

22          It cannot be presumed that pretrial publicity deprives a defendant of a fair trial.  Pretrial

23 publicity, even if pervasive and concentrated, does not inevitably lead to an unfair trial in criminal

24 cases. (*Nebraska Press Ass'n v. Stuart* (1976) 427 U.S. 539, 554.  See also *Murphy v. Florida*

25 (1975) 421 U.S. 794, 799 [The decided cases "cannot be made to stand for the proposition that

26 juror exposure to . . . news accounts of the crime with which [a defendant] is charged alone

27 _____

28 [2]  Essentially the same requirements for sealing are imposed by California law.  (Cal. Rules of Ct., rule 2.550, subd. (d).  See also *NBC Subsidiary*, 20 Cal. 4th at 1218.)

-6-

541

1  presumptively deprives the defendant of due process."]; *United States v. Myers* (2d Cir. 1980) 635

2  F.2d 945, 953 [intensive publicity surrounding the events of Watergate, "very likely the most

3  widely reported crime of the past decade," did not prevent the selection of impartial jurors]).[3]

4        Furthermore, conclusory or speculative assertions that pretrial publicity will have a

5  detrimental effect on a defendant's right to a fair trial are insufficient to justify sealing. "The First

6  Amendment right of access cannot be overcome by the conclusory assertion that publicity might

7  deprive the defendant of [the right to a fair trial]." (*Press-Enterprise II*, 478 U.S. at 15; *NBC*

8  *Subsidiary*, 20 Cal.4th at 1225 [same]. See also *Waller*, 467 U.S. at 46-48 [speculation that some

9  harm or prejudice might occur cannot meet the compelling interest test]; *Globe Newspaper*, 457

10  U.S. at 609-10 [speculative claims do not justify closure].) Thus, neither the speculative and

11  conclusory assertions in Defendant's MPA submitted in support of the sealing of the Filing

12  Report, nor any similar, unsupported conjecture, can justify sealing court records.

13        Documents in cases generating significant public interest are "routinely opened to the

14  public without jeopardizing the fair trial guarantee." (*Associated Press*, 705 F.2d at 1146.) In

15  fact, the "instances in which pretrial publicity alone, even pervasive and adverse publicity, actually

16  deprives a defendant of the ability to obtain a fair trial will be quite rare." (*Gannett Co., Inc. v.*

17  *DePasquale* (1979) 443 U.S. 368, 404 fn.1 [Rehnquist, J., concurring].) Even where jurors have

18  been exposed to information about the case and have formed some impression or opinion as to the

19  merits, prejudice may not be presumed. (*Irvin v. Dowd* (1961) 366 U.S. 717, 722-23 [jurors are

20  generally able to lay aside their impressions or opinions and render a verdict based solely upon the

21  evidence at trial]; *People v. Cooper* (1991) 53 Cal.3d 771, 807 ["It is sufficient if the juror can lay

22  aside his impression or opinion and render a verdict based on the evidence presented in court."].)

23      [3] See also *People v. Harris* (1981) 28 Cal.3d 935, 949 (the "controlling cases 'cannot be

24  made to stand for the proposition that juror exposure to information about a state defendant's prior
   convictions or to news accounts of the crime with which he is charged alone presumptively

25  deprives the defendant of due process'"); *Brian W. v. Super. Ct.* (1978) 20 Cal.3d 618, 625
   (petitioner overestimated the impact that even substantial publicity might have on the very large

26  pool of potential jurors in Los Angeles County); *People v. Jennings* (1991) 53 Cal.3d 334, 362
   ("The fact that a case receives enormous publicity does not by itself establish error nor does

27  conceded 'massive' publicity automatically translate into prejudice"); *People v. Mendosa* (1982)
   137 Cal. App. 3d 888, 895 ("there is no presumption that an accused suffers prejudice from

28  unfriendly news stories").

542

1       Rather, in order to justify sealing, the "publicity must create a 'pattern of deep and bitter

2  prejudice'. . . throughout the community" such that the defendant cannot possibly receive a fair

3  trial. (*Seattle Times v. United States Dist. Court*, 845 F.2d at 1517.)  In other words, it must be

4  established that publicity resulting from disclosure of the Filing Report "would be so extensive

5  and widespread that it threatens to prejudice the entire jury pool so that twelve unbiased jurors

6  could not be found." (*Press-Enterprise Co. v. Superior Court* (1994) 22 Cal. App. 4th 498, 504;

7  see also *Nebraska Press Assn*, 427 U.S. at 568-69; *CBS, Inc. v. United States Dist. Court* (9th Cir.

8  1984) 729 F.2d 1174, 1180.)  Among the factors to be considered are: (1) the size of the potential

9  jury pool; (2) the nature and extent of the publicity; and (3) the existence of reasonable alternatives

10  to sealing. (*Press-Enterprise III*, 22 Cal. App. 4th at 503-504.)

11          **a.**    **Santa Clara County has a large, diverse pool of potential jurors**

12                   **sufficient to provide Defendants an unbiased jury**

13       The potential jury pool in Santa Clara County is extremely large and very diverse.  The

14  population of Santa Clara County is more than 1.7 million, making it the sixth largest county in

15  the State.[4]  That population is economically, racially, and culturally diverse.  The Court can adjust

16  the size of the venire it calls as necessary to ensure that a venire sufficient to ensure that a panel of

17  twelve impartial jurors is seated.  Moreover, practical experience shows that in a county as

18  populous as Santa Clara, the Court will have little difficulty finding an impartial jury.  Cases that

19  have received much greater media coverage than this one—including the high-profile prosecutions

20  of Richard Allen Davis and Cary Stayner—have been transferred *to* Santa Clara County,

21  specifically because the courts found that a fair trial could be obtained here despite extensive

22  statewide or even national publicity.

23       The California Supreme Court has frequently examined claims of prejudice based on

24  pretrial publicity in the context of motions for change of venue.  Although the standard for

25

26

27      [4]  State of California, Department of Finance, Report E-1: *County/State Population Estimates with Annual Percent Change, January 1, 2010 and 2011.* (Huntington Decl., at ¶ 11,

28  and Exhibit 3.)

543

1    obtaining a change of venue is lower than the standard for sealing court records,[5] the Supreme

2    Court has consistently rejected such claims.  (See, e.g., *People v. Prince* (2007) 40 Cal. 4th 1179,

3    1210-1218; *People v. Jenkins*  (2000) 22 Cal.4th 900, 942-46; *People v. Welch* (1999) 20 Cal.4th

4    701, 743-45; *People v. Massie* (1998) 19 Cal.4th 550, 577-79.)

5         The California Supreme Court has consistently held that defendants can obtain an unbiased

6    jury in counties with populations significantly smaller than Santa Clara County's.  (See, e.g.,

7    *Welch*, 20 Cal. 4th at 743-45 [Alameda County, sixth largest in the state]; *People v. Sully* (1991)

8    53 Cal.3d 1195, 1236-37 [San Mateo County, eleventh most populous]; *People v. Vieira* (2005) 35

9    Cal.4th 264, 279-283 [Stanislaus County, population 370,000].)  As recognized by the Ninth

10   Circuit Court of Appeals in a case involving the pretrial disclosure of videotapes of automobile

11   executive John DeLorean engaging in drug transactions:

12             [T]he courts have long held that in a large metropolitan area,
              prejudicial publicity is far less likely to endanger the defendant's
13            right to a fair trial. . . .  Moreover, in a populous metropolitan area,
              the pool of potential jurors is so large that even in cases attracting
14            extensive and inflammatory publicity, it is usually possible to find
              an adequate number of untainted jurors.
15
     (*CBS, Inc. v. United States Dist. Court*, 729 F.2d at 1181.  *See also People v. Manson* (1976) 61
16
     Cal.App.3d 102, 190 [even in the prosecution of Charles Manson "[a] metropolitan setting with its
17
     diverse population tends to blunt the penetrating effect of publicity"].)
18
          The qualifications for jury service in California are readily met.[6]  There are hundreds of
19
     thousands of potential jurors in Santa Clara County.  Any argument that twelve impartial jurors
20
     could not be found is insupportable in light of the size and diversity of Santa Clara County.
21

22

23   _____
          [5]  California law requires a trial court to grant a motion for change of venue if "there is a
24   *reasonable likelihood* that a fair and impartial trial cannot be had in the county."  Penal Code
     § 1033 (italics added).  "In ruling on such a motion, as to which defendant bears the burden of
25   proof, the trial court considers as factors the gravity and nature of the crime, the extent and nature
     of the publicity, the size and nature of the community, the status of the victim, and the status of the
26   accused."  (*People v. Proctor* (1992) 4 Cal.4th 499, 523.)  On the other hand, the proponent of
     sealing a court document must establish there is a *substantial probability* that making the
27   document public would damage defendants rights.  (*Associated Press*, 705 F.2d at 1147.)
          [6]  See http://www.courts.ca.gov/2179.htm#tab7750 (California Courts web site information
28   on qualifications for jury service).  (Huntington Decl., ¶ 12, and Exh. 4.)

                                                           -9-

                                         MEMORANDUM OF POINTS AND AUTHORITIES
                                         ISO MOTION TO UNSEAL FILING REPORT

 

       **b.**     **The nature and extent of the publicity does not justify sealing**

In obtaining the sealing order, Defendant has presented no evidence as to the nature or extent of the media coverage regarding this case beyond several vague and unsubstantiated statements claiming that "the police department has issued a press release in this case in an effort to publicize it. The media has responded with numerous television and print stories about the defendant and the allegations. The arraignment hearing was televised, which is likely to continue with subsequent hearings." (Defendant's MPA, 4:1-6).

Indeed, an examination of the actual coverage suggests that the coverage has been limited. Only three articles regarding this case have been published by the Mercury News, either in print or online. (Huntington Decl., ¶ 4, and Exh. 1)  Coverage by other media appears to have been limited as well, and that coverage not been inflammatory or sensationalistic. (*Id.*)

Again, cases addressing motions for change of venue, and applying a lower standard, have consistently rejected the proposition that even substantially greater coverage creates a likelihood of prejudice to a defendant's ability to obtain a fair trial. (*See, e.g., Prince,* 40 Cal. 4th at 1210–1211 [evidence of more than 270 newspaper articles as well as extensive television coverage]; *People v. Sully* (1991) 53 Cal.3d 1195 ["the media attention was substantial (193 articles from 4 newspapers, 300 pages of television scripts, and 8 videotapes)"]; *People v. Coffman* (2004) 34 Cal.4th 1, 45 [more than 150 articles and various videos of television coverage]; *Odle v. Superior Court* (1982) 32 Cal.3d 932, 938-939 [more than 150 newspaper articles, 70 of which mentioned the defendant in the headlines].)  The limited coverage of this case to date indicates that future coverage is unlikely to be extensive or inflammatory, and that even if it was far more extensive than it has been to date, it would not begin to justify sealing the Filing Report.

       **c.**     **Alternatives to sealing exist, and are sufficient to ensure that there is no**
               **prejudice to the Defendants' ability to obtain a fair trial**

Court records may not be sealed unless less restrictive alternatives will not protect the ability to obtain a fair trial. (*Press Enterprise II,* 478 U.S. at 14; *NBC Subsidiary,* 20 Cal.4th at 1217-1218; *Press-Enterprise III,* 22 Cal.App.4th at 504.)  There are numerous alternatives to sealing, including careful voir dire (with individual and sequestered voir dire, if necessary),

-10-

545

1   peremptory challenges (increasing the number of peremptory challenges if appropriate),

2   assembling a larger than normal jury pool, instructions and admonitions to the jury, postponement

3   of trial, and change of venue.  (*Nebraska Press Assn. v. Stuart,* 427 U.S. at 563-564; *NBC*

4   *Subsidiary,* 20 Cal.4th at 1223-1225; *Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 625;

5   *Seattle Times Co. v. United States District Court,* 845 F.2d at 1518; *United States v. W.R. Grace*

6   (D. Mont. 2006) 408 F.Supp.2d 998, 1020.)  Alternatives to sealing are presumptively adequate to

7   protect Defendant's right to a fair trial, and that presumption can be overcome only in exceptional

8   circumstances.  (*NBC Subsidiary,* 20 Cal.4th at 1224.)[7]

9          This case is not so exceptional that the presumptively sufficient alternatives to sealing are

10  insufficient to ensure a fair trial.  Any possible prejudice can be adequately addressed by

11  alternatives to sealing, including careful voir dire questioning, peremptory challenges (increasing

12  the number of peremptory challenges if appropriate), assembling a larger than normal jury pool,

13  instructions and admonitions to the jury, postponement of trial, and change of venue.  Therefore,

14  the sealing of the Filing Report cannot be justified.

15          **2.      No Showing Has Been or Can Be Made that Sealing Is Necessary to Protect**

16                  **Defendant's Right to a Fair Trial**

17          In his request to seal the Filing Report, Defendant claims that any dissemination of the

18  Filing Report would contaminate the jury pool and deprive defendant of a fair trial as it "contains

19  an incomplete and biased synopsis of some of the allegations against the Defendant.  In particular

20  it fails to set forth the defendant's statement to the Police Officers denying the allegations."

21  (Defendant's MPA, 2:17-20, 4:6-8).  It is not clear how Defendant's right to a fair trial would be

22  prejudiced by public access to the Filing Report, and Defendant provides no real evidence or

23  substantiated facts in support of his assertion.  Defendant's vague and conclusory statements

24  utterly fail to satisfy his burden to establish compelling reasons for sealing the Filing Report, and

25  ────────────────

26          [7]  An order sealing the Filing Report is invalid if it fails to consider and address the
    alternatives to sealing.  (*Press-Enterprise I,* 464 U.S. at 511 [absent consideration of alternatives
    to closure, the trial court could not constitutionally close criminal court proceedings]; *NBC*

27  *Subsidiary,* 20 Cal.4th at 1225 [sealing order failed to meet the requirements of California law
    because trial court did not make a record that alternatives to closure were not adequate to ensure a

28  fair trial].)

                                                                                        546
                                              -11-

1    cannot justify sealing. (*Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 317 [burden rests

2    on party seeking to deny public access to establish compelling reasons why and to what extent

3    those records should be made private].)

4         **3.**     **Alternatives to Sealing the Filing Report Are More Than Adequate to Prevent**

5                **Any Meaningful Prejudice**

6         Defendant has failed to demonstrate any overriding interest needing protection.  Even if he

7    had, the chance that alternatives to sealing cannot adequately ensure a fair trial in this case is

8    virtually nonexistent.  As discussed above, there are numerous alternatives to sealing that can

9    protect the parties' rights.  (*Nebraska Press Assn. v. Stuart*, 427 U.S. at 563-564; *NBC Subsidiary*,

10    20 Cal.4th at 1223-1225; *Brian W. v. Superior Court*, 20 Cal.3d at 625; *Seattle Times Co. v.*

11    *United States District Court*, 845 F.2d at 1518; *In re of Search of 8420 Ocean Gateway Easton,*

12    *Maryland*, 353 F.Supp.2d at 584.)  These alternatives are presumptively adequate to prevent

13    prejudice to the interests that may justify sealing.  (See *NBC Subsidiary*, 20 Cal.4th at 1224.)

14    Therefore, the sealing of the Filing Report was not and cannot be justified.

15         **4.**     **Sealing the Filing Report Cannot Be Effective in Preventing Any Perceived**

16                **Harm Because No Threat of Irreparable Damage Exists**

17         In cases such as this, where the proponents of sealing cannot establish the first two prongs

18    of the *Associated Press* test, namely that irreparable damage to an overriding interest will result

19    from making the documents public and that alternatives to sealing will not adequately protect that

20    interest, then the third prong of the test becomes irrelevant.  As the court explained in *Seattle*

21    *Times*, 845 F.2d at 1518, "[t]he perceived harm here is prejudicial pretrial publicity. We have

22    already determined that the sealed documents do not substantially impair defendant's fair trial

23    right. Therefore, it is irrelevant whether sealing would be effective." Here too, the proponents of

24    sealing cannot demonstrate a cognizable threat to a fundamental interest that is not susceptible to

25    amelioration by other means.  Therefore, sealing the Filing Report could not effectively achieve

26    any goal legally sufficient to justify sealing, and the statement must be unsealed.

27

28

547

1   V.     **THE FILING REPORT MUST BE UNSEALED EVEN IF THE EVIDENCE**

2          **CONTAINED IN THE REPORT IS NOT INTRODUCED INTO EVIDENCE**

3          The Filing Report is subject to the First Amendment right of access applicable to all

4   accusatory pleadings, and the First Amendment analysis does not change even if the nature of the

5   case changes or the information contained in the report is not introduced into evidence. (*U.S. v.*

6   *Smith* (3d Cir. 1985) 776 F.2d 1104, 1111 [First Amendment right of access applies to criminal

7   indictment, information, and bill of particulars].)  The Complaint and the evidence submitted in

8   support of it remain subject to the right of access even if the information contained in the Filing

9   Report is not admitted into evidence.[8]

10         The District Attorney submitted the Filing Report to the Court for consideration in

11  connection with pretrial arraignment and detention proceedings, and it was necessarily considered

12  by the Court. (Huntington Decl., at ¶ 8).The public's First Amendment right of access applies to

13  materials submitted for consideration in connection with pretrial detention hearings regardless of

14  whether the materials are admitted into evidence. (*See, e.g., Seattle Times Co. v. United States*

15  *Dist. Court* (9th Cir. 1988) 845 F.2d 1513, 1517 (*Seattle Times*) [First Amendment right of access

16  to "pretrial release proceedings and documents filed therein"]; *In re Globe Newspaper Co.* (1st

17  _____

18      [8]  The considerations that necessitate a First Amendment right to access complaints, in
    particular, the significant positive role public access plays in the functioning of pretrial
19  proceedings, apply even when some charges have been dropped or complaints have been
    subsequently revised.  The Filing Report provided the basis for the District Attorney's charges and
    the court's decision in denying bail. (Huntington Decl., at ¶ 8), and casts light on the propriety of
20  those charges, whether or not the charges are ever introduced into evidence.  The public has a
    fundamental interest in evaluating the conduct of the prosecution and the police in investigating
21  and prosecuting criminal cases. (See e.g. *Waller v. Georgia* (1984) 467 U.S. 39, 47 [recognizing
    public interest in suppression hearings, which "frequently attack[] the conduct of police and
22  prosecutor," and the "strong interesting in exposing substantial allegations of police misconduct to
    the salutary effects of public scrutiny"].)  Similarly, the tradition of public access to a charging
23  document "reflects the importance of its role in the criminal trial process and the public's interest
    in knowing its contents. . . .  Knowledge of the charge or charges is essential to an understanding
24  of the trial, essential to an evaluation of the performance of counsel and the court, and, most
    importantly, essential to an appraisal of the fairness of the criminal process to the accused."
25  (*United States v. Smith*, 776 F.2d at 1111.)  "[P]retrial release proceedings implicate the related
    policy concerns of a public educated in the workings of the justice system and a system subjected
26  to health public scrutiny." (*Seattle Times*, 845 F.2d at 1516.)  Moreover, "[i]f public court
    business is conducted in private, it becomes impossible to expose corruption, incompetence,
27  inefficiency, prejudice and favoritism." (*Estate of Hearst*, 67 Cal.App.3d at 784.)  Without access
    to the Filing Report, the public cannot determine whether there was a sound foundation for the
28  charges against Defendant, and cannot appraise the conduct of the police and the prosecution.

548

-13-

1   Cir. 1984) 729 F.2d 47, 52 [public has a First Amendment right of access to pretrial proceeding

2   setting and modifying bail, and to documents on which bail decisions are based]; *U.S. v. Chagra*

3   (5th Cir. 1983) 701 F.2d 354, 363-364 (*Chagra*) [First Amendment right of access to bail

4   reduction hearings]; *United States v. Edwards* (D.C.App.1981) 430 A.2d 1321, 1343-46 [First

5   Amendment right of access to pretrial detention hearings]; *U.S. v. Graham* (2d Cir. 2001) 257

6   F.3d 143 [common law right of access to audio and video tapes played at pretrial detention hearing

7   but not admitted into evidence].)  The Filing Report was filed in connection with and formed part

8   of the basis for the Court's decision regarding Defendants' pretrial detention, and therefore the

9   First Amendment right of access applies to it.  (Huntington Decl., at ¶ 8).

10       Finally, the California Constitution and California law provide independent rights of

11   access to the Filing Report that exist regardless of whether Government pursues the original

12   charges.  As the result of passage of Proposition 59, there is an express constitutional right of

13   public access to all "information concerning the conduct of the people's business."  (*See* Cal.

14   Const. art. I, § 3, subd. (b).)  This constitutional right of access applies to court records.  (*Savaglio*

15   *v. Wal-Mart Stores, Inc.* (2007) 149 Cal. App. 4th 588, 597 [recognizing constitutional right of

16   access to civil court records under Proposition 59].)  The California courts have also long

17   recognized a public right of access to court records under both the free speech clause of the

18   California Constitution and under California common law.  (Cal. Const., art. I, § 2, subd. (a); *NBC*

19   *Subsidiary*, 20 Cal.4th at 1216-1218, and fn. 36; *Copley Press, Inc. v. Superior Court* (1998) 63

20   Cal.App.4th 367, 373 ["both the federal (U.S. Const., 1st Amend.) and the state (Cal. Const., art. I,

21   § 2, subd. (a)) Constitutions provide broad access rights to judicial records in criminal and civil

22   cases."]; *Estate of Hearst* 67 Cal. App. 3d at 782-784; *Pantos v. San Francisco* (1984) 151 Cal.

23   App. 3d 258, 262-63.)  Similarly, the California Rules of Court apply to all court records, and

24   prohibit sealing of records unless a substantial probability exists that the overriding interest will be

25   prejudiced if the record is not sealed, the sealing is narrowly tailored, and no less restrictive means

26   exist to achieve the overriding interest.  (Cal. Rules of Ct., rules 2.550, subd. (d), 2.551.)

27       Court documents subject to public access under the California Constitution and California

28   law include "the various documents filed in or received by the court, such as the pleadings and

-14-

549

1  motions filed by the parties and the evidence admitted in court proceedings." (*Copley Press, Inc.*

2  *v. Superior Court* (1992) 6 Cal.App.4th 106, 113.)  The right of access applies because "these

3  documents represent and reflect the official work of the court, in which the public and press have a

4  justifiable interest." (*Id.*)  The California Rules of Court reiterate this expansive standard, defining

5  a "court record" as "all or a portion of any document, paper, exhibit, transcript, or other thing filed

6  or lodged with the court." (Cal. Rules of Ct., rule 2.550, subd. (b)(1).)  The Complaint and Filing

7  Report are court records subject to public access regardless of which charges the Government

8  pursues, and as a court record, the Filing Report must be unsealed.

9  **VI.      CONCLUSION.**

10      The sealing of the Filing Report violates the First Amendment and California law.  Public

11  access to the basis for the charges against the Defendants is a fundamental and vital right.  "Public

12  records by their very nature are of interest to those concerned with the administration of

13  government, and a public benefit is performed by the reporting of the true contents of the records

14  by the media.  The freedom of the press to publish that information appears to us to be of critical

15  importance to our type of government in which the citizenry is the final judge of the conduct of

16  public business."  *Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469, 495.  The Filing Report

17  should be unsealed in its entirety immediately.

18

19  Dated:  January 26, 2012

20

21

22      By:  _____

23              T. ANDREW HUNTINGTON
              Attorneys for SAN JOSE MERCURY NEWS, LLC

24

25

26

27

28                                                                        **550**

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO UNSEAL FILING REPORT

1   T. ANDREW HUNTINGTON, Cal. Bar No. 187687
    General Counsel, Bay Area News Group
2   750 Ridder Park Drive
    San Jose, California 95190
3   Tel (408) 920-5790
    Fax (408) 920-1848
4   ahuntington@bayareanewsgroup.com

5   Attorneys for SAN JOSE MERCURY NEWS, LLC

**F I L E D**

JAN 2 4 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
*Jaymi L. Salisbury*

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF              Case No. C1223754
    CALIFORNIA,
12                                      **DECLARATION OF T. ANDREW**
                   Plaintiff,           **HUNTINGTON IN SUPPORT OF**
13                                      **MOTION TO UNSEAL FILING**
           v.                           **REPORT**
14
    CRAIG RICHARD CHANDLER,
15
                   Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

                                        551
                        -1-
                        DECLARATION OF T. ANDREW HUNTINGTON
                        IN SUPPORT OF MOTION TO UNSEAL

**DECLARATION OF T. ANDREW HUNTINGTON**

I, T. Andrew Huntington, declare as follows:

1.     Except as to matters alleged on information and belief, the following facts are known to me of my own personal knowledge and, if called to testify in a court of law, I could and would testify to them.  As to matters stated herein on information and belief, I believe those matters to be true.

2.     I am General Counsel of the Bay Area News Group, which operates local newspapers throughout the San Francisco Bay Area, including the San Jose Mercury News ("Mercury News").

3.     The Mercury News is distributed throughout California, and particularly in the San Francisco Bay Area.  The Mercury News is distributed in a variety of public places, including through home delivery, mail distribution, newsracks, newsstands, and bookstores.  Mercury News content is also published on the internet through the Mercury News website, http://www.mercurynews.com/.

4.     The Mercury News has covered Defendant Craig Richard Chandler's ("Defendant" or "Mr. Chandler") January 10, 2012 arrest and subsequent January 13, 2012 arraignment on charges of sexually assaulting two seven year old girls at O.B. Whaley Elementary School, where Defendant was a teacher.  It has published three articles covering Mr. Chandler's case.  Those articles are not inflammatory or sensationalistic. The January 11 article on his arrest and the January 13 article covering on his arraignment are factual in nature, and between the two articles, contain only one reference to the specific factual allegations.  The third article, published on January 12 and titled "Parents Shocked at Arrest of San Jose Teacher on Sexual Assault Charges," focused on Chandler's popularity amongst students and their parents at the O.B. Whaley Elementary School where he taught, and how the school community was surprised by his arrest.   True and correct copies of those articles are attached hereto as Exhibit 1.

5.     The Mercury News is informed and believes that the Santa Clara County District Attorney's Office filed the original complaint ("the Complaint") in this matter on

-1-

552

1   January 13, 2012.  Attached hereto as Exhibit 2 is a printout of the Superior Court of

2   California, County of Santa Clara criminal Case Index Search results for defendant Craig

3   Richard Chandler showing that a complaint was filed against Mr. Chandler on January 13,

4   2012.

5         6.       The Mercury News is informed and believes that when filing the Complaint,

6   the Santa Clara County District Attorney's Office simultaneously submitted a report

7   prepared by the San Jose Police Department ("the Filing Report") that contained

8   summaries of the alleged victims' accounts of the alleged assaults.

9         7.       The Mercury News is informed and believes that at Defendant's January 13,

10  2012 arraignment hearing, Defendant asked the court to seal the Filing Report.  The court

11  granted Defendant's request and ordered the Filing Report sealed.  In granting Defendant's

12  request to seal, the court did not provide any written order providing a factual basis or

13  reasoning in support of its decision.

14        8.       The Mercury News is informed and believes that on or about On January 17,

15  2012, the court, on its own motion, scheduled a hearing for January 20, 2012, in order to

16  reconsider Defendant's sealing request.  At the January 20, 2012 hearing, the court

17  disagreed with Defendant, and held that the Filing Report was part of the court's file, and

18  had been considered by the court in denying bail to the Defendant.  The court then ordered

19  an additional hearing on the issue of Defendant's request to seal the Filing Report, to take

20  place on January 31, 2012.

21        9.       The Mercury News is informed and believes the Santa Clara County District

22  Attorney's Office will not take a position on the unsealing the Statement of Facts.

23        10.      The Mercury News is informed and believes that Defendant will oppose

24  unsealing the Filing Report.

25        11.      Attached hereto as Exhibit 3 is a true and correct copy of California

26  Department of Finance Report E-1: County/State  Population Estimates with Annual

27  Percent Change, January 1, 2010 and 2011.

28

553

-2-

DECLARATION OF T. ANDREW HUNTINGTON
IN SUPPORT OF MOTION TO UNSEAL

1        12.    Attached hereto as Exhibit 4 is a printout of

2    http://www.courts.ca.gov/2179.htm#tab7750, the California Courts website containing

3    information on qualifications for jury service.

4        I declare under penalty of perjury under the laws of the State of California that the

5    foregoing is true and correct.  Executed on January 12, 2012, at San Jose, California.

6

7                                     _____

8                                          T. Andrew Huntington

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             554

-3-

DECLARATION OF T. ANDREW HUNTINGTON
IN SUPPORT OF MOTION TO UNSEAL

1

555

San Jose Mercury News • Wednesday, January 11, 2012                                                                                            Valley

# LOCAL NEWS



INTRODUCING
BAY AREA
NEWS APPS
Download Bay Area News
for your iPad and iPhone

MORE LOCAL NEWS • WWW.MERCURYNEWS.COM • WWW.SANMATEOCOUNTYTIMES.COM                                                SECTION B

---

FAITH IN THE SOUTH BAY



Members of Campbell United Methodist Church participate in an African Epiphany service held in Campbell. The church has about 350 members, and African immigrants have become one of the largest groups there.

## Integration epiphany

**West African immigrants have become an integral part of church in Campbell after escaping war**

By Joe Rodriguez
jrodriguez@mercurynews.com

Twenty-five years ago, Joe Koppla fled from a Nossfir civil war in Liberia to a barely white, middle-class, Methodist church in Campbell.

"I was the first West African most of them had ever met," said Koppla, who had never set foot in the valley before, "I went to that church become someone I knew in Liberia told me I would find a spiritual home there."

He did and then some.

On Sunday, Campbell United Methodist Church celebrated an African Epiphany service. Some three dozen West Africans in colorful dashiki shirts and spectacular African gowns peppered the story of the Three Magi's visit to the Christ child with prayers and song in the Krio dialect.

At the altar, Harriet Matturie, of Sierra Leone, began the Lord's Prayer.

"Papa God, we de na we de, Na Yu nam gran so God," (Our Father who art in heaven, hallowed be thy name).

By now accustomed to the annual African service, the congregation read along with her, a bit hushed but without missing too many words.

The group Koppla started over numbers 40 men, women and children, and has become an official min-

See CHURCH, Page 7



The Rev. James Wichler delivers a sermon during the annual African Epiphany service at the Campbell church.

"We believe in integration. We are one. We don't want to separate ourselves and leave this church."
— The Rev. Daniel Sokr Glondeana

ONLINE
Read more about Campbell at www.mercurynews.com/campbell.

---

HIGHER EDUCATION

## Overhaul at colleges on the table

**Legislature will review plan for big changes at community campuses**

By Teresa Watanabe
Associated Press

SAN FRANCISCO — California community college leaders have aligned off on major policy changes aimed at boosting graduation and transfer rates in the 112-campus system, despite concerns the movement could hurt disadvantaged students.

The 22 recommendations will go to the state Legislature for review after the California Community Colleges' governing board on Monday endorsed the measures recommended by the state-appointed Student Success Task Force.

Students before the proposals, if implemented, will help more students complete degree and certificate programs and transfer to University of California and California State University campuses. That would help reduce the number of dropouts and create a more educated workforce.

"We're really doing all that we can to ensure student success," Chancellor Jack Scott said Tuesday. "We want to have as few casualties as possible."

Measures endorsed by the board include:

■ Give priority registration to first-time students and students making progress toward their academic goals.

■ Take priority registration or fee waivers from students who fail to make

See COLLEGE, Page 7

---

FOOTBALL IN SANTA CLARA

# Stadium parking lot issue resolved

**City Council approves deal with Cedar Fair to build new 49ers home and let fans park cars on Great America space**

By Ian McAllister
imcallister@mercurynews.com

In the latest milepost on the rocky journey toward a new 49ers stadium, the Santa Clara City Council on Tuesday night approved a deal that allows the football team to build the stadium at a Great America parking lot and lease more park.

Tuesday's 4-2 vote ends four years of controversy over parking straddling the stadium and Great America, which is owned by Cedar Fair.

The issue has been a central concern for both stadium project brokers and opponents, many of whom fear there will be major traffic headaches in the area on game days.

"All these agreements are breaking us in the right direction and adding value to our city," said Councilwoman Lisa Gillmor. "The parking agreement will create value for our city and create future revenues for our city."

Under the newly approved deal, three fans will be able to park in most of Great America's main lot, which is immediately north of the stadium. Additional parking will be in two nearby city garages.

Carl Ginoka, wearing a black 49ers jacket, spoke in support of the stadium agreements between the city and Cedar Fair but urged council members to "aggressively demonstrate" with the public about the progress and benefits of the stadium.

"A really dramatic communication plan (is) re-

See STADIUM, Page 7

ONLINE
Read special coverage of the proposal to move the 49ers to Santa Clara at www.mercurynews.com/AmericaJfootball.

---

GOLDEN'S ANNIVERSARY



## Bridge's legend spans 75 years

The Golden Gate Bridge opened 75 years ago, and San Francisco is planning a yearlong celebration to mark the anniversary. But it won't include a one-month across the span. Read more on Page 2.

---

O.B. WHALEY ELEMENTARY

## S.J. teacher facing sexual abuse charge

**Educator suspected of assaulting child is held without bail**

By Gary Seipel
gseipel@mercurynews.com

San Jose police on Tuesday arrested a 50-year-old male elementary schoolteacher on suspicion of sexually assaulting a child late last year.

Craig Harboard Chandler, of San Jose, has been a teacher at O.B. Whaley Elementary School for the past nine years,


Chandler

according to police. He had been recently taught a new fourth and third grade combination class at the school.

San Jose police spokesman Jose Garcia said investigators did not release any details about the victim's name, age or gender — or whether

See ARREST, Page 9

---

NETWORKING ONLINE

## IBM taps students' social savvy

**Big Blue turns to SJSU for ideas on connecting Facebook, business tools**

By Matt Krupnick
mkrupnick@mercurynews.com

College students need not feel guilty about spending hours each day on Facebook or other social networks. Turns out it might help them get a job.

IBM recently started working with San Jose State students to come up with ways the technology giant could use its internal systems to better interact with employees and the public. About 350 graduate stu-

dents and undergraduates in the fall analyzed IBM's social-business tools, learned how to use them and thought of ways they could be improved.

Among their ideas: Use "social business" software to tie together customer-service sites with internal bulletin boards where employees talk to one another.

The company hopes to involve students at more than 20 other universities this year.

The corporate world has come to realize young people are leading a "transformation moment" driven by social networking, said Douglas Heintzman, IBM's director of social-business strategy.

"There's something big going on," he said. Twitter and Facebook have played major parts in the Occupy Wall Street and Arab Spring movements. "This phenomenon is taking down governments."

As IBM seeks, Grand Business Services, is considering how to implement some of the San Jose students' ideas.

"How great is that?" said Larry Gee, a San Jose State instructor who worked with IBM on the university program. "It's not theoretical exercise, like an essay that will go into the circular file."

See IBM, Page 9

---

556

WEDNESDAY, JANUARY 11, 2012 · BAY AREA NEWS GROUP · 8B

## SUNNYVALE

# Tennis center cafe forced to close after lease expires

City can't let eatery stay open while it seeks new contractor

*By Tiffany Carney*
*Correspondent*

For the moment, the combination of kabobs and tennis no longer exists at the Sunnyvale Municipal Tennis Center.

The tennis center had been home to City Kabab, a cafe specializing in Middle Eastern cuisine and operated by Copertino restaurant Hawaiian Shaban. But due to an expired lease agreement between the city and the owner's operators, the restaurant is no longer operating at the center.

The land, buildings and facilities located at 755 E. Mathilda Ave. are owned by the city, but the cafe was previously leased to BU Tennis, a contractor hired to oversee management and operations, BU Tennis then subcontracted the cafe to Ghassan.

The lease agreement between the city and Sunnyvale and BU Tennis ended in December and Ghassan's lease as a subcontractor also ended at that time.

City officials are seeking a new contractor for the tennis center, but the process could continue through March. In the interim, Ghassan was asked to close his doors and vacate the premises until a

new contractor is found. The new contractor will then decide whether to work with City Kabab as a subcontractor.

According to Sunnyvale, the restaurant had a high turnover of operators every couple of months until the facility was leased to him in 2003. He said he knew the food business was tough, but with some hard work he built a successful business with a steady stream of customers.

Meanwhile, discussions with the city have yet to land on a solution, Ghassan said.

"I have no contract with the city, but I'm just hoping the city allows me not to close the restaurant until the new contractor comes in," he said.

Sunnyvale resident Durf Alonzo, president of the Sunnyvale Tennis Club, a volunteer organization that assists with operation of the center, said no one is happy with the current situation.

"We thought it was totally unreasonable to have the cafe close down for three months and lose all of their business," he said. "It's not benefiting the players, it's not benefiting the city, and it is putting the cafe owner's underwater hardship."

According to the city's website, "The city intends to oversee the facility until March 31, when a new vendor is selected and approved." It also states, "Restaurant facil-

ity will not be open; however, drinks/snacks will be available for purchase from vending machines at the center."

"If we put out a request for proposals that netted 10 different organizations and individuals expressing interest in running the center, according to John Pilger, Sunnyvale's communications officer. Applications were received Nov. 30, and city officials have narrowed it down to one firm to present to the City Council in February.

"Whoever gets the go ahead, it will be their option to have a restaurant or not," Pilger said. "We don't want to be in charge of running a food service, and it's not what the city does. If the city were to let the cafe stay in business, it could keep the restaurant in operation to vacate the space.

"I now spent so much time with my family and so much money to make that business run for the city, for all these years, and I think I have nothing against the city. I just want that space to keep operating," Ghassan said.

Ghassan plans to continue working with the city, to see if there is a new contract, we cannot let down the point he has been instructed to vacate the space.

## CUPERTINO

# Vallco Sears safe for now

Fitness center set to occupy part of the store's space

*By Matt Wilson*
*mwilson@mercurynews.com*

Sears at Cupertino's Vallco Shopping Mall is currently safe from the shopping block, according to a recent list of store closures announced by Sears Holdings. The longtime American company had announced it was closing between 100 and 120 Sears and Kmart stores across the country.

Sears Holdings had released a list of 79 planned closures earlier this month, and the Cupertino store's closure dates will vary by location and store format.

California has only three stores slated to close, two in the San Diego area and another in El Monte, Florida has the most closures with 11 Sears and Kmart stores on the list. Michigan, Georgia and Ohio each have nine stores set to shut down. The company cited underperforming stores as the right vector leading up to Christmas.

"Given our performance and the difficult economic environment, especially for big-ticket items, we intend to implement a series of actions to reduce ongoing expenses, adjust our asset base and accelerate the transformation of our business model," company CEO Lou D'Ambrosio said in a news statement. "These actions will better

position us for future retail business project for this master's thesis.

The "Abstractionford Secondary" project fostered an how companies accidentally can find innovation using social networks.

"Facebook is my company," Google covered employers for sparkling innovation, and IDLK, with 400,000 employees, wants to do the same thing, Helms.com said.

"The employer base provides a pool of information," he said.

The San Jose program



The Sears store at Vallco Shopping mall in Cupertino has for now enable us to focus our investments on our best members serving our customers and markethrough our online and store sites to our customers and deliver a great customer experience."

The facility, dubbed Bay Club, will be operated by Western Athletic Clubs, a company that bills itself as a luxury health club. The company currently operates nine clubs in the Bay Area, including locations in Marin, San Francisco, San Jose and Santa Clara counties.

The proposed Bay Club will occupy approximately 35 percent of the floor area of the Sears building. In addition to offering gym and sports activities, the proposed facility will feature group exercise, spin classes, a cafe, day spa and kid salon. Amenities just be members

will include an old child care and a teen center.

The Bay Club project will also bring parking lot improvements, which will include reconfiguring and restriping of parking spaces, enhancing the parking lot pedestrian walkways and landscaping, according to a Cupertino report. There will also be sidewalk and pedestrian lighting enhancements and new landscaping along the Stevens Creek Boulevard street frontage.

It is not yet known when the Bay Club will open. This is not the first time the Sears at Vallco has seen a Steven-Friendly addition. In January 2010, the location became the first store in the nation to have an area completely devoted to green-collar financial, the auto parts equipment along with a dedicated fitness staff.

The store doubled those an fitness equipment with a 12,000-square-foot space. The store's grand opening just to fitness, up from 2,500 square feet.

**IBM**
*Continued from Page 1*

Social networking, and its social-business offering, has become a fundamental field of study at universities. Student projects often focus on using social networks to solve everyday and business problems.

Three students at UC Berkeley's School of Information, for example, collaborated last year on a social-

**Arrest**
*Continued from Page 1*

the victim is a student at the school. Nor would they comment on how the alleged assault came to light.

Chandler was booked into Santa Clara County Jail for aggravated sexual assault on a child and is being held without bail. Police say he is suspected of committing the abuse from August to October.

O.B. Whaley Elementary

paid off for 24-year-old Archie Flowers, a master's student in biotechnology. She has taken on social-business duties at her biotech company, and her business skills, she said.

"Facebook is my company," Flowers said. "I just never thought of it from a business perspective."

*Matt Krupnick covers higher education for the Bay Area News Group. Contact him at 510-208-6488, Follow him at Twitter.com/MattKrupnick.*

School is part of the Evergreen School District, A call to one of the school's two principals sought on its website was not returned; the other principal could not be reached.

Calls to the president of the school board and to the president of the Evergreen Teachers Association also were not returned Tuesday night.

Police ask that anyone else who may have been a victim, or anyone who has information about Chandler, or who this case, contact San Jose Police Detective Sean Pierce at 408-537-1955.

Those wishing to remain anonymous can call the Silicon Valley Crime Stoppers at 408-947-STOP (7867), or may go to http://svcrimestoppers.org.

Anyone providing information leading to the arrest and conviction of the suspect may be eligible for a cash reward from the Silicon Valley Crime Stoppers.

*Contact Tracy Seipel at 408 275-0140.*

---

# Obituary Notices

 

PLEASE VIEW AND SIGN
THE ONLINE GUEST BOOK
AT MERCURYNEWS.COM

Obit deadline
Please submit obituary notices by 12noon Monday-Friday for the next day's edition.

Friends & Family can express their condolences and sign the guest book at www.legacy.com

**ALEXANDER, Donald**
AMES, Henry
CAMPBELL, David
CHERELLA, Kenneth
CONSTANTE, Manuel
CORTINAS, Rita
CULBERTSON, James
ESCOBAR, Edward
FRENAY, Anne Marie
FRISCH, Gertrude
GUZMAN, Antoinette
HARNESS, James
KENNEDY, Helen
RODGERS, Marion
RICE, Harry
RIZZO, Joe
JOHNSTON, Jean
KVINO, Ted
MANGICA, Margaret
PENALUNA, Antonio
SILVAS, Robert
FREZANOS, Rita
TURNER, Patricia
WHITE, James
WHITE, Ruby

This index may not reflect all obituaries published.

### Henry R. Ames
Resident of Hemet
July 30, 1924 - Jan. 6, 2012
Henry R. age 87 passed away on Jan. 6, loving husband and died in the last the hours of Jan 6. He is survived by his daughter Rowena Montana, great-grandchildren, beloved daughter, Janice Sieber, loving daughter John Stevenson Jr. passed away Dec. 26, and city officials have narrowed it down to 7 brothers and 4 sisters. Henry was a lifetime member of George E. Tant Masonic Center. Scottish Rite and Shriners. Private memorial service will be held.

### Rita Yvonne Cortinas
Resident of San Jose
Born March 22, 1974, passed January 1, 2012, age 37. Rosary 1PM. Tues Chapel of the Oaks. Mass 10AM at Home. "Love is a beautiful thing, you should try it sometime." Arrangements by Oak Hill Funeral Home, 300 Curtner Ave., San Jose, CA 95125.

### David (Cash) Campbell
Jan. 3, 1934-Jan. 6, 2012
Resident of Santa Clara

Dave was born in Perth, Scotland and passed away after a long battle with cancer. Dave is survived by his wife Kathleen, sons Scott and Stuart, grandchildren Cheryl, Michael and Jennifer and 6 great-grandchildren. His daughters-in-law Debra and Clare, all family and friends that knew Dave. A viewing will be held at Lima & Campagna Santa Clara on Friday, January 13, 2012 between 3-4 P.M.

### James C. Culbertson, Sr.
1929 - 2012
Jim was born and married in Oil City, Pa. He moved his family to California in 1963 to pursue work in the aircraft trade. His main joy in being a local 405 Master Carpenter, He loved with his family, whom he took above all else, and was respected and loved by all who knew him. Jim enjoyed reading his garden, family activities, and helping his beloved in easy.

He is survived by his loving wife Ruth, 2 brothers and his wife her son Bill, five children and their spouses up 5, their grandchildren, Jim and Dan, his son and Ken and Part II grandchildren, 10 great grandchildren, and many sisters and nephews. He will forever be in our hearts, mind, and soul.

**Lima & Campagna**
Sunnyvale Mortuary
(408) 736-1315

---

### ALEXANDER, DONALD
Palos Valley, CA

passed away on January 4, 2012, aged 73, from Pneumonia, due to long-term illness.

Born San Francisco, April 14, 1938, to Sydney & Alviera Alexander. Raised in Redwood City & Cupertino, he then lived in Fremont, where he attended Fremont High, attended 2002. Don spent his career as Wholesaler and part owner of a wine distributor business. His winning several awards before retiring to Palm Valley where he enjoyed golf, passing, woodworking & exploring the county-wide. A world traveler, he married Maria and their home at Mediterranean in 2011. He was a faithful Catholic.

Survived by wife Eliza, son Michael, stepson James Caballero & grandchildren David & Susan. Preceded in death by his daughter, Melodie.

Services to be held at Oak Hill Funeral Home, 300 Curtner Ave, San Jose, on Sat. Jan. 14, 1994, followed by private internment. A celebration of his life will be held in Glenview, along side date died.

In lieu of flowers, donations may be sent to National Organization of Rare Disorders, PO Box 1968 55 Kenosha avenue Danbury, CT 06813 www.rarediseases.org



### Kenneth R. Churilla
Apr 23, 1941 – Jan 2, 2012
Resident of San Jose

Kenneth R. Churilla, 70, of San Jose, CA, died on Monday, January 2, 2012. Born on April 23, 1941, son of the late Albert and Helen Desmond Churilla. Ken grew up in Manchester, CT. He graduated from UCLA with honors, retired from the Army in 1979. He is survived by his son Ken, of San Jose, CA, a sister, Betty Rawlins, Albert, Michael, David, a nephew and their families. Family will miss their Ken Joyce. A mass given him Januss hour-faith because he was the father Stella never had, "He was a funny and always cheerful person and always smiling. He taught me many things about life and will forever fill those holes in our hearts." Services they will offer church and morning I'll cherish each day. He was the first Mass to those who don his image for you - on his Mayfieldwww.aboutfuneral.com mid15.htm

**Beddingfield**
Chapel of the Valley
(408) 777-0100

---



# Life Stories Live On

Find current & past obituaries online at MercuryNews.com

Sign a guest book
View photos
Read stories and
special remembrances

Visit MercuryNews.com
and click on obituaries

### Anne Marie Frenay
(nee Rivière)
Feb. 15, 1932 - Dec. 25, 2011
Resident of Sunnyvale

Anne Marie passed away peacefully on December 25, 2011 after a year-long illness. She touched everyone's life with her warmth, love and passion. She is survived by her husband, Emmanuel of 59 years; her sons and daughters and their spouses; and 11 grandchildren.

Anne Marie was born in Béziers, France. Her love of family was so strong. She started dancing from an early age, becoming a professional at the Moulin Rouge in Paris. At age 23, she met her future husband Emmanuel Frenay in 1957 and they married in 1961. After they immigrated to the United States, Anne Marie and Mano purchased their first Frenchville Avenue in San Jose, California and moved their family to Sunnyvale. For 30 years they provided for their community and love for their charity and made their lives joyful. They managed their businesses.

Anne Marie always carried a special devotion to the Virgin Mary. God blessed her with a loving family and a devoted husband and three children, so many friends who loved her and enriched her life with a reverenced, committed wife, a wonderful mother, a loving grandmother, and a true friend.

She is survived by her husband, Emmanuel Frenay of Sunnyvale; her son and daughter Mano, Sophie, Brigitte (Doug) of Campbell; her children and grandchildren Henri, Campbell, her children, Yvonne, Sylvain; Pierre (Véronique), Carolyn & great-grandchildren, Brittany Frenay and Odile Campbell; and many nieces and nephews all living in France.

A Memorial Mass will be held to celebrate Anne Marie's life on Saturday, January 14, 2012 at 11AM at the Church of the Resurrection located at 725 Cascade Drive in Sunnyvale with a reception following at the Sunnyvale Community Center.

**Lima & Campagna**
Sunnyvale Mortuary
(408) 736-1315

---

# Obituary Notices

PLEASE VIEW
AND SIGN
THE ONLINE GUEST
BOOK AT
MERCURYNEWS.COM



Continued on page 108

Case 3:17-cv-00325-EMC   Document 9-2   Filed 10/17/17   Page 209 of 520

# LOCAL NEWS

INTRODUCING
BAY AREA
NEWS APPS
Download Bay Area News
for your iPad and iPhone

MORE LOCAL NEWS: WWW.MERCURYNEWS.COM • WWW.SANMATEOCOUNTYTIMES.COM

## Just say no to another stadium vote

Just say no. It's the forlorn advice we give to kids to avoid drugs, to the monkey who craves a bet, even to a parent who yearns for a second of chocolate after dinner. Much of the time, sadly, the command can cue drooms in the ear.

SCOTT HERHOLD

Just say no. It's the city of Santa Clara, you have an opportunity only for the next few days to repeat those three words for a noble reason — and with no bygone rule, just say no to the referendum that works another vote on the 49ers stadium.

You might know about this if you've frequented a grocery store or the main Santa Clara post office over the past weekend. You certainly do if you're on the receiving end of the opponents' emails. The petition-gatherers are in a frenzy to collect 4,500 signatures, which means they probably have to collect 6,000.

The group that opposes the stadium, Santa Clara Plays Fair, has objected to the way the stadium is financed. A stadium authority is taking out an $850 million loan, which the opponents say was not adequately disclosed early on to creditors.

Here's why your petition-gatherer deserves a polite no. On the big question — whether to have a stadium or not — the voters have spoken. In June 2010, they approved Measure J, a venturesome proposal that made the stadium possible.

You may remember that there was a big fight then. The opponents threw everything including the Kitchen sink at the idea. They said it would be too costly. They said it would create too much traffic.

The voters didn't buy it. They approved the stadium deal by 58 percent to 42 percent, which in most cases qualifies as decisive. Measure J diverted the city manager to implement the rest — a parking district, financing, dealing with nearby Great America and much more.

### Second bite

Now the opponents are seeking a second bite at the apple. The situation reminds me of a couple that decides to buy a new van, only to find the deal held no because their daughter doesn't like the van.

Naturally, you can question any loan. And in this case, Santa Clara Mayor Jamie Matthews said, "Ultimately, the 49ers are on the hook for this. There is no risk to the taxpayers."

You can disagree. But the big point is that we have unprecedented government for a reason: We don't expect voters to know the ins and outs of a complex loan. We don't expect them to know the best deal with Cedar Fair, which owns Great America. Voters are busy people, with their own household problems.

### Trusting the staff

Having given the council approval, folks trust these things to a city staff, overseen by the council. If you don't like their work, throw the rascals out. Even talking to people in Santa Clara, I would not be surprised if City Attorney Ren Nadey delivers an opinion soon, maybe before the election, that the referendum is not valid. But everything can be put legally to the voters. That might throw the issue into the court.

But you don't have to depend on the words of legality to spot a stadium obsession at your front door. A friend in Santa Clara put it in simple terms in a recent email.

"This issue was decided, and it's time to cheer (rinse) and move on," he wrote. "Dragging out elections may continuously re-deciding them seems like a recipe for delaying all purposes to a standstill."

Amen. Just say no.

Contact Scott Herhold at sherhold@mercurynews.com or 408-275-6067.

LEGISLATIVE ANALYST'S BUDGET REPORT

# Brown a 'bit optimistic'

### Agency warns governor's tax revenues may fall short, risking programs

By Steve Harmon
sharmon@mercurynews.com

SACRAMENTO — The nonpartisan Legislative Analyst's Office on Wednesday questioned whether Gov. Jerry Brown has met more state programs at risk of further cuts by projecting overly optimistic tax revenues.

Mac Taylor, the legislative analyst, also suggested that the Legislature should consider providing more certainty to schools and taxpayers with intermediate schools the year waiting to see whether they can avoid the nearly $5 billion in cuts that would be "triggered" if voters reject Brown's November tax-hike initiative.

Taylor and the governor, who released his 2012-2013 billion budget



last week, is counting on taxes from investments by the wealthy that might not materialize.

"What we're concerned about is that the LAO said they need a little bit optimistic," Taylor said in a news conference unveiling the LAO report. "We're looking historically..."

See REPORT, Page 4

Legislative
Analyst
Mac Taylor
projects
$3.2 billion
less tax
revenue
than
governor's
budget for
2012-13.



INTEL SEMIFINALISTS: Bay Area high schools set record with 29 students winning national achievement, including 11 from The Harker School in San Jose



# Trove of science talent

By Helen Shen
hshen@mercurynews.com

Bay Area high school seniors snagged an astonishing 29 spots among the 2012 Intel Science Talent Search semifinalists, it was announced Wednesday.

The students — who set a record for the Bay Area — revealed their research topics ranging from deepening the way airplanes might fly to exploring galaxy formation.

Receiving a semifinalist was a proud surprise for The Harker School's Kathryn Siegel, whose

project at UC Santa Cruz concerned despite taking several speed bumps over the summer. To gether with her mentor, she developed a computer program to identify genes that could be associated with newly developed but poorly characterized synthetic drugs.

"The more smart I learned," said 17-year-old Siegel, of San Jose, "is that even when you think there's no way the project can go anywhere, you just have to keep on working and hoping."

See INTEL, Page 4



Govinda Dasu, center, celebrates with fellow students of The Harker School as they are announced as Intel Science Talent Search semifinalists at an assembly. Below, Nicole Dalal is congratulated by her brother Nathan and friend Priyanka Sharma.



PEW FORUM ON RELIGION AND PUBLIC LIFE

## Mormons feel misunderstood but say acceptance is on the rise

By Matt O'Brien
mobrien@bayareanewsgroup.com

With a Mormon leading the Republican presidential primary campaign and another in the running, many Mormons in the Bay Area and across the country are warily optimistic about the newfound attention.

A first-of-its-kind survey by the Pew Forum on Religion and Public Life has found Mormons feel misunderstood, but they also believe that acceptance of their faith is on the rise.

"Outsiders have a tendency to think Mormons are weird," said Morgan Hill resident John Hawkes. "I think we all have a tendency to stupidly consider group of people. If they put in more on, I don't think they

### SURVEY OF U.S. MORMONS

#### Is Mormonism a Christian religion?

■ 97 percent of Mormons say yes

■ 51 percent of general public says yes

#### Mormon beliefs

■ 94 percent of Mormons believe that God sent Jesus Christ are separate, physical beings

■ 54 percent believe that the president of the church is a prophet of God

■ 86 percent believe families can be found together eternally in temple ceremonies

Survey continues on Page 4

See MORMON, Page 4

FALLOUT AT O.B. WHALEY

## Sexual assault arrest shocks school's families, educators

### Popular teacher held on suspicion of hurting a child on campus

By Sharon Noguchi
snoguchi@mercurynews.com

One day after a popular teacher was arrested on suspicion of sexually assaulting a child, parents, educators and students at O.B. Whaley School in San Jose reacted with shock and disbelief.

Craig Richard Chandler, of San Jose, is scheduled to be arraigned Friday on charges of performing a lewd act with a child on the Whaley campus late last year. Police took the alleged abuse occurred from August to

Chandler
Teacher accused
of aggravated
sexual assault
against a child is
scheduled to be
arraigned Friday.



October. They would not give any identifying information about the victim.

Although authorities remained tight-lipped about the arrest, school officials disclosed Wednesday that some of the assaults occurred on school grounds. However, they would not say whether the alleged assaults took place during school

See TEACHER, Page 4

558

# Mormon

*Continued from Page 1*

## What Mormons think

Some of the results from a Pew Research Center survey of Mormon voters:

### Are Americans ready to elect a Mormon president?

### Which political figure do Mormons regard most favorably?

Mitt Romney
Barack Obama

### Which political figure do Mormons regard most lowly?

### Mormon hub

## BEING A GOOD MORMON

# Report

*Continued from Page 1*

## One in 10 U.S. Mormons lives in California, giving the state the largest Mormon population outside Utah.

# Teacher

*Continued from Page 1*

## Many parents didn't hear of the arrest until they read the district's letter.

## THE DAILY COMMUTER



Wednesday's Puzzle Solved

### ACROSS

### DOWN



**DONATE YOUR CAR**

Your donation will help the poor and homeless here in Santa Clara County.

cityteam

www.cityteam.org • 408-232-5454

**DISABLED FROM STROKE?**

New clinical trial now recruiting stroke patients in Palo Alto

650-625-8965
www.strokeclinicaltrials.org

 SanBio

559

San Jose Mercury News • January 14, 2012                                    Valley

# LOCAL NEWS



BAY AREA
NEWS APPS
Download Bay Area News
for your iPad and iPhone

MORE LOCAL NEWS • WWW.MERCURYNEWS.COM • WWW.SANJOSECOUNTYTIMES.COM

**POLITICAL SCANDAL**

## DA charges new S.F. sheriff



Recently sworn-in San Francisco Sheriff Ross Mirkarimi and his wife, Eliana Lopez, leave City Hall after speaking with reporters Friday.

### Former supervisor accused of domestic violence against wife

By Josh Richman

Less than a week after being sworn into office, San Francisco Sheriff Ross Mirkarimi was charged Friday with domestic violence and two misdemeanor counts in connection with a New Year's Eve dust-up with his wife, a Venezuelan former telenovela star.

District Attorney George Gascón said prosecutors have also requested an emergency protective order prohibiting Mirkarimi from having contact with his wife and son while police investigate other possible incidents of domestic abuse.

If convicted, Mirkarimi — running to restrain tremendous reserves in resign from office and end his political career — would be California's only sheriff barred from carrying a gun.

Mirkarimi said late Friday that he intends to remain in office. "The charges are very misguided," he told reporters at City Hall. "We will fight the charges."

His wife, Eliana Lopez, stood with him and told reporters, "This is unbelievable. I don't have any complaint against my husband."

Lopez had gone to a neighbor's house after the New Year's Eve incident with a bruised arm. Police said the neighbor reported the bruise was the result of Mirkarimi

grabbing his wife during a heated argument.

Mirkarimi later called the episode "a private matter, a family matter" that had been blown out of proportion. But his statement angered some advocates for women and abuse victims, who say that domestic violence should not be dismissed as a "private matter."

The neighbor's videotape of the bruise as well as text messages between the neighbor and Lopez led Gascón to charge the 50-year-old Mirkarimi with domestic violence battery, child endangerment and dissuading a witness.

It was not immediately clear whether the witness was his wife or

See MIRKARIMI, Page 5

**ROCK MIGHT BE OUT OF THIS WORLD**

## A METEOR, RIGHT?



Mitch Mielewicz, of Castro Valley, holds a 3-pound rock that he believes is a meteor he says found the object at their backyard.

Castro Valley man believes object found in backyard came from space and could be worth a fortune

By Eric De Benedetti
edebenedetti@bayareanewsgroup.com

Is it a meteor glimmering in earth? In Castro Valley?

It wasn't exactly pennies from heaven, but if the smoldering, dark-colored rock discovered in Mitch Mielewicz' property did indeed fall from the sky, it may fetch the his-year-old a fortune. If that is, it's a veritable meteorite.

Whatever it is has turned his upside down the retired truck driver.

Mielewicz told his plane his continued to ring since he told friends his dog — an energetic 3-

year-old black Labrador retriever named Bella — led him Wednesday to a small dirt pile that was spewing steam in the backyard of his Castro Valley hills home.

"She was the one who found it, I never would have known," he said.

While Bella barked in excitement, Mielewicz shoveled the rock out of a fresh, foot-deep hole. It was glowing "like a barbecue coal," he said.

He ran water to cool the jagged charcoal-colored rock, which is about 5 inches wide and 4 inches

**THE STARS DON'T ALWAYS ALIGN ...**

Experts say finding the real deal is a rare occurrence.

"We get these kinds of calls maybe a couple of times a month and, more often than not, it turns out not to be a meteor."

— Lynda Sauser, Lawrence Livermore Lab spokeswoman

**... BUT ONE MAN HAS FAITH IN THE HEAVENS**

The owner says the rock can't be cut and magnets don't stick

"It's passed at least three of the tests. It's a meteor."

— Mitch Mielewicz, owner of possible meteorite

See METEOR, Page 6

**WHALEY SCHOOL**

### Sex crime hearing for teacher

Educator is arraigned on charges of assaulting two 7-year-old girls

By Lisa Fernandez and Mark Gomez

A San Jose teacher was arraigned Friday on charges he sexually assaulted two 7-year-old girls at O.B. Whaley Elementary School, accusations that his attorney plans to "vigorously defend."

Craig Richard Chandler, 25, who has taught at the school for nine years, was charged by the Santa Clara County District Attorney's Office with two counts of lewd and lascivious acts on a child under the age of 14. The district attorney included a multiple-victim allegation, which means Chandler could be facing 30 years to life in prison if convicted.

The girls were blindfolded during the assaults, according to a source. Chandler is in jail without bail. As per Evergreen School District policy, he is on paid administrative leave.

Steve Clark, Chandler's attorney, said his client is "presumed to be innocent, and we believe in his innocence."

"Mr. Chandler is very dismayed by these allegations," Clark said. "We are going to be vigorously defending them."

Chandler, dressed in a brown prison jumpsuit, did not speak during the arraignment. He did not enter a plea, and a plea hearing was scheduled for Jan. 31.

"I don't think the girls even understand exactly what he was doing," said Santa Clara County deputy district attorney Steve Fein. "I think he picked them because they were younger."

During the hearing, Clark asked Judge Alden Danner to seal a police

See TEACHER, Page 8

Chandler
Chandler could get 30 years to life in prison if convicted.

**49ERS IN SANTA CLARA**

## City attorney: Loan OK not subject to new vote

Anti-stadium group vows to still work on approval's referendum

By Lisa Fernandez
lfernandez@mercurynews.com

The Santa Clara Authority's vote on an $850 million construction loan to build the 49ers stadium is not an action that can be brought before voters, according to the city attorney.

Santa Clara Plays Fair, an anti-stadium group, has been collecting signatures in the hope of having a referendum on the Authority's Dec. 15 approval of the loan.

But City Attorney Ren Nosky said Friday that the vote is not

subject to a referendum.

Nosky said the stadium authority's action was merely an "administrative" act to carry out what the voters approved in June 2010, when the majority of 58 percent gave their thumbs-up to building a new 49ers stadium near the Great America theme park. The stadium authority is composed of seven council members.

He said matters that can be put on a referendum are "legislative acts, when a governmental agency makes a new rule, like approving a new development." But carrying something out that was already approved is simply deemed administrative, according to Nosky.

See STADIUM, Page 8

**$200 MILLION PAYDAY**

## N.Y. visit leads to big jackpot

Man seeing relatives purchases winning Mega Millions ticket

By Jeremy C. Owens
jowens@mercurynews.com



San Jose resident Daniel Brueckner visited relatives in New York for the holidays but month and came home with quite a souvenir: a $200 million winning lottery ticket.

Brueckner, 25, and his wife, Christina, accepted an oversized check for his Mega Millions win at the Long Island supermarket where he bought the ticket that won the Dec. 27 drawing, according to media and lottery reports.

See LOTTO, Page 6

560

B8  BAY AREA NEWS GROUP

SATURDAY, JANUARY 14, 2012

RICHARD THRELKELD • 1937-2012

# Longtime TV journalist dies

**CBS, ABC News veteran covered Vietnam, Gulf War**

By Frazier Moore
Associated Press

NEW YORK — Richard Threlkeld, a far-ranging and award-winning correspondent who worked for CBS and ABC News during a long career, has been killed in a car crash on New York's Long Island.

The 74-year-old Threlkeld died Friday morning in Amagansett, N.Y., when his car collided with a tractor-trailer. He was pronounced dead at Southampton Hospital, according to the East Hampton Police, Sgt. Daniel De Carolo said.

## Obituary Notices

**PLEASE VIEW AND SIGN THE ONLINE GUEST BOOK AT MERCURYNEWS.COM**

Friends & Family can express their condolences and sign the guest book at www.legacy.com

ANDERSON, William
ANTONOPOULOS, Patricia
BALDWIN, Alice
BORDELLO, Emily
BISNETT, Charles
CASTRO, Adam
COLLINS, Roger
DAVIS, George
DOUTL, Dennis
ESCARCEGA, Marie
FOWLER, Albert
GOLDPLAN, Barbara
HOWARD, Patricia
JESSUP, Eliz
JOHNSON, David
KOSE, Mark
KOSS, Mark
LIDO, Josephine
LIH, Mildred
MCLEOD, Sally
NARCISO, Clarence
PAYNE, Joseph
RAY, Jacqueline
RENTERIA, Barbara
ROSE, Elaine
SERA, John
SMITH, Violet
TAKAHASHI, Helen
WAGNER, Gerald
WHITE, Mildred
WRIGHT, Charles

## Meteor
Continued from Page 1

## Mirkarimi
Continued from Page 1

## Teacher
Continued from Page 1

## Stadium
Continued from Page 1

## Lotto
Continued from Page 1





561

2

Criminal Case Index - Superior Court of California, County of Santa Clara          Page 1 of 1

### THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA

### CASE INDEX SEARCH

Enter search criteria below. **You must enter *at least* either last name OR case number.** Entering data in the other fields will limit the number of records returned. For help see criminal index information sheet    . For information on viewing criminal records, please see our Criminal Self Help section of this website.

For further assistance regarding your case, call the courthouse where the case was filed (see list of courthouses), or email the Court at sscriminfo@scscourt.org. For technical problems with this website, please email ssweb@scscourt.org. **NOTE:** Party ID is not guaranteed to be a unique identifier. Please refer to official Court documents for complete information.

**Search Options:**

Last Name: Chandler                    First
Name  Craig

Filing Date:   [ Month ▦ ]  [ Year ▦ ]   Case Number:
C1223754

Date of Birth: _____   (mm/dd/yyyy)   [ Search the Index ]

1 record(s) found.

| Last name | First name | Middle name | Gen | Case number | File date | Party ID |
|-----------|-----------|-------------|-----|-------------|-----------|----------|
| CHANDLER | CRAIG | RICHARD | | C1223754 | 1/13/2012 | 1138257610 |

© 2012 Superior Court of Santa Clara County

563

3

564

E-1: State/County Population Estimates with Annual Percent Change
January 1, 2010 and 2011

| State/County | Total Population | | Percent |
| | 1/1/2010 | 1/1/2011 | Change |
| --- | --- | --- | --- |
| California | 37223900 | 37510766 | 0.8 |
| Alameda | 1,509,240 | 1,521,157 | 0.8 |
| Alpine | 1,178 | 1,176 | -0.2 |
| Amador | 38,011 | 37,911 | -0.3 |
| Butte | 219,967 | 221,388 | 0.6 |
| Calaveras | 45,602 | 45,693 | 0.2 |
| Colusa | 21,380 | 21,593 | 1.0 |
| Contra Costa | 1,047,948 | 1,056,064 | 0.8 |
| Del Norte | 28,581 | 28,594 | 0.0 |
| El Dorado | 180,682 | 182,498 | 1.0 |
| Fresno | 929,758 | 940,220 | 1.1 |
| Glenn | 28,120 | 28,273 | 0.5 |
| Humboldt | 134,353 | 135,263 | 0.7 |
| Imperial | 174,244 | 176,258 | 1.2 |
| Inyo | 18,525 | 18,634 | 0.6 |
| Kern | 837,074 | 846,883 | 1.2 |
| Kings | 152,717 | 153,365 | 0.4 |
| Lake | 64,580 | 64,784 | 0.3 |
| Lassen | 34,794 | 34,577 | -0.6 |
| Los Angeles | 9,822,121 | 9,858,989 | 0.4 |
| Madera | 150,749 | 151,949 | 0.8 |
| Marin | 252,279 | 254,692 | 1.0 |
| Mariposa | 18,277 | 18,261 | -0.1 |
| Mendocino | 87,807 | 88,197 | 0.4 |
| Merced | 255,399 | 257,984 | 1.0 |
| Modoc | 9,666 | 9,705 | 0.4 |
| Mono | 14,160 | 14,308 | 1.0 |
| Monterey | 415,108 | 419,038 | 0.9 |
| Napa | 136,316 | 137,639 | 1.0 |
| Nevada | 98,682 | 99,111 | 0.4 |
| Orange | 3,008,855 | 3,029,859 | 0.7 |
| Placer | 347,133 | 352,380 | 1.5 |
| Plumas | 20,045 | 20,025 | -0.1 |
| Riverside | 2,179,692 | 2,217,778 | 1.7 |
| Sacramento | 1,417,259 | 1,428,355 | 0.8 |
| San Benito | 55,272 | 55,619 | 0.6 |
| San Bernardino | 2,033,141 | 2,052,397 | 0.9 |
| San Diego | 3,091,579 | 3,118,876 | 0.9 |
| San Francisco | 804,989 | 812,820 | 1.0 |
| San Joaquin | 684,057 | 690,899 | 1.0 |
| San Luis Obispo | 269,333 | 270,966 | 0.6 |
| San Mateo | 718,614 | 724,702 | 0.8 |

565

California Department of Finance
Demographic Research Unit
Phone: 916-323-4086

| | | | |
|---|---|---|---|
| Santa Barbara | 423,740 | 426,189 | 0.6 |
| Santa Clara | 1,781,427 | 1,797,375 | 0.9 |
| Santa Cruz | 262,552 | 264,430 | 0.7 |
| Shasta | 177,248 | 177,924 | 0.4 |
| Sierra | 3,247 | 3,248 | 0.0 |
| Siskiyou | 44,962 | 45,084 | 0.3 |
| Solano | 413,268 | 414,509 | 0.3 |
| Sonoma | 482,961 | 487,125 | 0.9 |
| Stanislaus | 514,003 | 517,685 | 0.7 |
| Sutter | 94,765 | 95,800 | 1.1 |
| Tehama | 63,418 | 63,950 | 0.8 |
| Trinity | 13,811 | 13,853 | 0.3 |
| Tulare | 441,245 | 446,837 | 1.3 |
| Tuolumne | 55,291 | 55,256 | -0.1 |
| Ventura | 822,108 | 828,383 | 0.8 |
| Yolo | 200,484 | 201,759 | 0.6 |
| Yuba | 72,083 | 72,479 | 0.5 |

566

California Department of Finance
Demographic Research Unit
Phone: 916-323-4086

4

567

California Courts - Jury Service Basics#tab7750                                    Page 1 of 1



**CALIFORNIA COURTS**
THE JUDICIAL BRANCH OF CALIFORNIA

Judicial Branch Home

Courts | Self-Help | Forms & Rules | Opinions | Programs | Policy & Administration | News & Reference

Courts > Jury Service > Jury Service Basics

**JURY SCAM ALERT**
POSTED WEDNESDAY, JANUARY 05, 2011

Please Be Aware: As a result of a resurgence in jury identity theft, this is a reminder that the Administrative Office of the Courts and staff of the superior courts will never ask past or prospective jurors for financial information, credit card numbers, bank account information, personal information like Social Security numbers. Please do not provide this type of information to anyone claiming to be associated with the courts.  MORE >>

**STOP**

Courts
  Supreme Court
  Courts of Appeal
  Superior Courts
  Jury Service
    Jury Service Basics
      Learn About the Trial Process
    Employer Information
    California Jury Instructions
    References and Resources
    Jury Innovations
  About California Courts
  Find My Court
  FAQs

## Jury Service Basics

Print

**WHAT TO EXPECT FROM JURY SERVICE**

Often, we don't trust any one person to determine another person's fate. Instead, we trust the community to make the right decision. This is our democratic ideal—to impart justice that is truly of the people, by the people, and for the people. Democracy is made real every day by thousands of jurors across the nation. Most jurors consider it interesting, educational, and an honor to play a part in the fair administration of justice. The juror orientation video, "Ideals Made Real," is typically shown at the courthouse to help you learn more about jury service and your important role in the legal system.

VIDEO



"Ideals Made Real"
California's Juror Orientation Video

14min

**JUROR BASICS**

You do not need any special skills or legal knowledge to be a juror. All you need is an open mind and a readiness to work with the other jurors to make decisions. You also need to be impartial-in other words, your decisions must not be influenced by personal feelings and biases.

JURY SERVICE QUALIFICATIONS    BASIC INFORMATION    EXCUSE FROM JURY SERVICE

California law says you are qualified to be a juror if you:

  Are a U.S. citizen
  Are at least 18 years old
  Can understand English enough to understand and discuss the case
  Are a resident of the county that sent you the jury summons
  Have not served on a jury in the last 12 months
  Are not currently on a grand jury or on another trial jury
  Are not under a conservatorship
  Have had your civil rights restored if you were convicted of a felony or malfeasance while holding public office

No one is exempt because of his or her job, race, color, religion, sex, national origin, sexual orientation, or economic status.

If you are qualified, please follow the directions on your summons and call in or report as instructed. You will receive additional information when you report for service.

Even if you are qualified to be a juror, you might still have what is called an "undue hardship." An undue hardship is a difficult situation that prevents you from being able to serve.

If you face an undue hardship, you may be able to be excused from jury service or postpone service.

568

1    T. ANDREW HUNTINGTON, Cal. Bar No. 187687
     General Counsel, Bay Area News Group
2    750 Ridder Park Drive
     San Jose, California 95190
3    Tel (408) 920-5790
     Fax (408) 920-1848
4    ahuntington@bayareanewsgroup.com

5    Attorneys for SAN JOSE MERCURY NEWS, LLC

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF SANTA CLARA

10

11    PEOPLE OF THE STATE OF           Case No. C1223754
     CALIFORNIA,
12                        **PROOF OF SERVICE**
                 Plaintiff,
13

14       v.

15    CRAIG RICHARD CHANDLER,

16                  Defendant.

17

18       I am a resident of the State of California, over the age of eighteen years, and not a

19   party to the within action. My business address is San Jose Mercury News, 750 Ridder

20   Park Drive, San Jose, California 95190. On January 26, 2012, I served the within

21   document(s):

22       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

23   MOTION TO UNSEAL FILING REPORT;

24       DECLARATION OF T. ANDREW HUNTINGTON IN SUPPORT OF

25   MOTION TO UNSEAL FILING REPORT;

26

27    ☐      by facsimile transmission at or about on that date. This document

28

                                                       569

                                                  **PROOF OF SERVICE**

FILED

JAN 2 6 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
Jaymi L. Salisbury

1     was transmitted by using a facsimile machine that complies with California

2     Rules of Court Rule 2003(3), telephone number 510.873.8656. The

3     transmission was reported as complete and without error. A copy of the

4     transmission report, properly issued by the transmitting machine, is

5     attached. The names and facsimile numbers of the person(s) served are as

6     set forth below.

7   ☒     by placing a true copy of the document(s) listed above for collection

8     and mailing following the company's ordinary business practice in a sealed

9     envelope with postage thereon fully prepaid for deposit in the United States

10     mail at San Jose, California addressed as set forth below.

11   ☐     by depositing a true copy of the same enclosed in a sealed envelope,

12     with delivery fees provided for, in a Federal Express pick up box or office

13     designated for overnight delivery, and addressed as set forth below.

14   ☐     by personally delivering a copy of the document(s) listed above to

15     the person(s) at the address(es) set forth below.

16

17 Santa Clara County, Office of the District    Steven Clark
Attorney    The Law Offices of Steven Clark

18 190 West Hedding St.    10 Almaden, Suite 1250
San Jose, CA 95110    San Jose, CA 95113

19 Attn: Alison Filo

20                               Christopher E. Schumb
The Law Offices of Christopher E.

21                               Schumb

22                               10 Almaden, Suite 1250
San Jose, CA 95113

23

24

25

26

27

28                                       570

-2-

PROOF OF SERVICE

1         I served such envelope or package by placing a true copy of the document(s) listed

2    above for collection and mailing following the company's ordinary business practice in a

3    sealed envelope with postage thereon fully prepaid for deposit in the United States mail at

4    San Jose, California addressed as set forth below.

5         I declare under penalty of perjury under the laws of the State of California that the

6    above is true and correct.  Executed on January 26, 2012, at San Jose, California.

7

8                                  _Dawn Kennedy_____

9                                Dawn Kennedy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

571

-3-

PROOF OF SERVICE

L_1   SAN JOSE FAC
      190 W. HEDDING ST.
      SAN JOSE, CA 95110                                           CASE NO.      C1223754
                                              TC:      CEN         12001535
PEOPLE VS.   CRAIG RICHARD CHANDLER          DATE    01/31/2012  8:30 ADEPT.  30
L.K.A.       1361 N SAN PEDRO ST                     10/25/1976 CAB3721090   CDY BK:Y
             SAN JOSE, CA 95110             CLERK    L.BALLESTEROS           EBK966 M
JUDGE  HON. PHILIP H. PENNYPACKER   DV/ AGENCY   SJ-04313-3415 -PIERCE
REPORTER L. SHINN                   CHILD:  STATUS                          TW
DEF. ATTY.  SCHITT, CHRISTOPH(G)    D.A.  A- FILO     I-SET -NBA
CHARGES   F(001)PC288(A)  GCHUMG    F(002)PC288(A)                VIOLATION DATE
PLEA                                                             01/10/2012
1-31-12  9:00  D 25 - VACATE    2-15-12   9   D 30
NEXT APPEARANCE

Defendant Present  Atty Present  AN / STEVEN  CLARK

[form checkbox section - handwritten and printed court minute order]

Hrg on Motion  HEARING OF  POLICE REPORTS
Granted  Doubt Decl Pursuant PC 1368

PLEA Conditions:  Jail / Prison Term of  A: HUNTINGTON  FOR  SAN JOSE MERCURY NEWS

PROBATION

JAIL/PRISON

REMANDED-BAIL $                    REMAIN AS SET

| | | CASE NO. | C1223754 |
|---|---|---|---|
| L4 SAN JOSE FAC | | CEN | 12001535 |
| 190 W. HEDDING STR | PC: | DEPT. 23 | |
| SAN JOSE, CA 95110 | DATE 01/31/2012 9:30 AM | | |
| PEOPLE VS. CRAIG RICHARD CHANDLER | 10/25/1976 CAB3721090 | CDY BK:Y | |
| L.K.A. 1361 N SAN PEDRO ST | CLERK L PADILLA/S NEWMAN | EBK966 M | |
| SAN JOSE, CA 95110 | HEARING PLEA | | |
| | DV: AGENCY SJ-04313-3415 -PIERCE | | |
| JUDGE HON. JEROME S. NADLER | CHILD: STATUS I-SET -NBA | | |
| REPORTER G YETT | D.A M DUFFY | TW | |
| DEF. ATTY SCHIMT,CHRISTOPH(G) | APO | | |
| CHARGES F(001)PC288(A) | F(002)PC288(A) | VIOLATION DATE 01/10/2012 | |

HHI B30 D30-RAS
NEXT APPEARANCE     O/C

☐ Defendant Present ☐ Not Present ☐ Atty Present ___ MR NOT PRS ___ ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter ___ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Bail Exonerated ☐ Forfeited Bond #___
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Ref'd___ ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ___ Relieved ___ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ BW Ordered $___ ☐ Stayed ☐ To Issue
☐ Hrg on Motion ___ ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found ___ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed ___ ☐ Max Term ___ ☐ Committed ___ ☐ Proof of ___
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed ___
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP ___
☐ Jail / Prison Term of ___ ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ___ ☐ Subm time of Sent ☐ Harvey Stip
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.8/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term Fee $___ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt FINES/FEES: PAY TO ☐ DOR ☐ TRAFFIC ☐ COURT ☐ TODAY Audit #___
☐ Sent Suspended ___ ☐ PROBATION DENIED COUNT___ $___ + PA $___ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period COUNT___ $___ + PA $___ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs AIDS / CPP $___ + PA $___ SORP ___
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release DPF $___ + PA $___ EMAT $___
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail LAB $___ + PA $___
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer DRF /RF $___ ☐ Add'l RF $___ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos Enroll within ___ days AEF $___ ☐ Original Fine $___
☐ DL Susp/ Restr'd/ Rvk'd for ___ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs SECA $___ CTS PC2900.5 $___
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05 ICMF $___ TOTAL DUE $___
☐ DVPO issued / mod /term'd Exp ___ ☐ Victim Present ICIN $___ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed AR $___ $___ / Mo beginning ___
☐ Not own/possess deadly weapons ☐ Destroy/return weapon ___ SHELTER $___ FINE STAYED
☐ Stay away from ___ DV $___ ☐ Committed @ $___/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs where sold ATTY $___ Consec/Conc to ___
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ASF$25/CPF$10$___ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education P/INVEST $___ ☐ P/SUP $___ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ___ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP CJAF $129.75/$259.50 $___ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Amens Revoked / Ext to ___ ☐ Restitution ☐ General $___ to ___
☐ Original Terms & Conditions Except as Amended herein
☐ Co-terminous with ___ ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: ___
JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = ___ ACT + ___ ☐ PC4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 = ___ TOTAL DAYS TOTAL TERM ___
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec___ All / Except ___ ☐ EMP/PSP/ERP/DRP/Co Parole/NP ___
☐ Sent Deemed Served ☐ Rpt to Parole w/in ___ ☐ Adv ___ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to ___
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU     573
☐ Re-process ___ ☐ AM/PM ☐ Stay / Surrender / Transport to ___ @ ___ ☐ AM/PM or Sooner
☐ REMANDED-BAIL $___ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED
DISTRIBUTION: ORIGINAL FILE GREEN DOR BLUE CII/DOJ PURPLE PROBATION BROWN DEFENDANT

D30 - Set
PIF
mailbox

1   T. ANDREW HUNTINGTON Cal. Bar No. 187687
    General Counsel, Bay Area News Group
2   750 Ridder Park Drive
    San Jose, California 95190
3   Tel (408) 920-5790
    Fax (408) 920-1848
4   ahuntington@bayareanewsgroup.com

5   Attorney for SAN JOSE MERCURY NEWS, LLC

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF SANTA CLARA

10

11   PEOPLE OF THE STATE OF CALIFORNIA,    Case No. C1223754

12                  Plaintiff,
                                            SUPPLEMENTAL MEMORANDUM OF
13          v.                              POINTS AND AUTHORITIES IN
                                            SUPPORT OF MOTION TO UNSEAL
     CRAIG RICHARD CHANDLER,                FILING REPORT
14
                    Defendant.
15                                          Date:   February 15, 2012
                                            Time:   9:30 AM   9 00
16                                          Court:  Department 30
                                            Judge:  Hon. Philip Pennypacker
17

18

19

20

21

22

23

24

25

26

27

28
                                                                    574

                                        SUPPL. MPA ISO MOTION TO
                                        UNSEAL FILING REPORT

FILED

FEB 09 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____ DEPUTY
        Jaymi L. Salisbury

I.    INTRODUCTION

The San Jose Mercury News, LLC (Mercury News) has previously requested that the Filing Report submitted by the Santa Clara County District Attorney in support of the complaint and prosecution in this matter be unsealed in its entirety. In support of that request and in preparation for the January 31, 2012 hearing on this matter, the Mercury News filed its Memorandum of Points and Authorities in Support of Motion to Unseal Filing Report ("the Mercury News' January 31, 2012 MPA").

The Mercury News is now filing this Supplemental Memorandum of Points and Authorities in Support of Motion to Unseal Filing Report for the sole purpose of addressing Defendant's argument that the Filing Report should not be maintained in the Court File. The Mercury News did not address that argument in its January 31, 2012 MPA because it thought that the Court had already considered and rejected that argument at the prior January 20, 2012 hearing on this matter.

II.   FACTUAL AND PROCEDURAL SUMMARY

The Mercury News has requested that the Filing Report submitted by the Santa Clara County District Attorney in support of the complaint and prosecution in this matter be unsealed in its entirety. In support of that request, the Mercury News filed its January 31, 2012 MPA. In its motion, the Mercury News did not address Defendant Craig Richard Chandler's (Defendant) argument that the Filing Report should not be maintained in the Court File because, according to Defendant, the Filing Report (i) had not been filed properly, and (ii) was "superfluous and unnecessary" because it was submitted to the Court by the District Attorney for the purpose of determining bail, and there was no bail motion pending. (Defendant's Memorandum of Points and Authorities in Support of Application to Seal File ("Defendant's MPA"), 3:2-23). The Mercury News did not address that specific argument in its January 31, 2012 MPA because it believed that the Court had already addressed and rejected that argument at the prior January 20, 2012 hearing. (Declaration of T. Andrew Huntington ("Huntington Decl.,") ¶ 8.).

However, at the January 31, 2012 hearing on the Mercury News' motion to unseal,

-1-

575

SUPPL. MPA ISO MOTION TO
UNSEAL FILING REPORT

1 | Defendant restated his argument that the Filing Report should not be maintained in the Court File,
2 | and the Court indicated that it was still considering Defendant's argument.  Defendant also
3 | requested additional time to respond to the Mercury News' motion, and the Court continued the
4 | hearing on the Mercury News' motion until February 15, 2012.  The Mercury News is now filing
5 | this Supplemental Memorandum of Points and Authorities in Support of Motion to Unseal Filing
6 | Report for the sole purpose of addressing Defendant's argument that the Filing Report should not
7 | be maintained in the Court File.

8 | **III.    LEGAL ARGUMENT**

9 |
10 |    **A. The Filing Report Is Part Of The Court File Regardless Of Whether It Was Filed Properly.**

11 |       Defendant contends that the District Attorney failed to follow proper filing protocols when
12 | submitting the Filing Report in this matter.  Defendant's argument is without merit.  Regardless of
13 | whether the District Attorney complied with the court's technical filing requirements, the Filing
14 | Report was deliberately submitted to the Court by the District Attorney, is currently part of the
15 | Court File and was part of the Court File at the time of Defendant's arraignment, when the Court
16 | considered the issues of bail and whether there was probable cause to detain Defendant.  The
17 | submission of the Filing Report was hardly remarkable, as evidentiary documents such as the
18 | Filing Report are routinely submitted to courts without first being filed with the Court Clerk.  To
19 | the extent the District Attorney failed to comply with the court's filing requirements, that issue (if
20 | any) is between the Court and the District Attorney, and does not serve as a basis for denying the
21 | public its right of access to the Filing Report.  Defendant provides no authority for the proposition
22 | that the means by which a record finds its way into the Court's file determines the application of
23 | the First Amendment right of access, and there does not appear to be any such authority.
24 | Therefore, this contention does not provide a basis for rejecting public access to the Filing Report.

25 |    **B. There Is No Evidence That The Filing Report Was "Superfluous And Unnecessary" And Should Never Have Been Part Of The Court File.**
26 |
27 |       Defendant claims that the District Attorney submitted the Filing Report to the Court for the
28 | sole purpose of determining whether he was eligible for bail.  Defendant further contends that

-2-

576

because he was charged with crimes and an enhancement that could result in a life sentence, he was not eligible for bail and there was no bail motion pending at his January 13, 2012 arraignment. From there, Defendant apparently concludes that the Filing Report should not have been submitted to the Court and the Court never reviewed the document. According to Defendant, the public should be denied access to the Filing Report as it was "superfluous and unnecessary," and should never have been part of the Court File.

**1. The Assertion That Defendant Is Not Entitled To Bail Appears To Be Inaccurate.**

There does not appear to be any authority supporting the claim that a defendant charged with a crime that may result in a sentence of life imprisonment must be denied bail. The right to bail in California is governed primarily by the California Constitution, and secondarily by statute. As a general rule, criminal defendants are entitled to be released on bail, except in specified circumstances. (Cal. Const., Art. I, sec. 12; Pen. Code sec. 1270.5, 1271.) Article I, section 12 of the California Constitution provides:

A person shall be released on bail by sufficient sureties, except for:

(a) Capital crimes when the facts are evident or the presumption great;

(b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others.

(c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released.

In other words, the California Constitution expressly requires that criminal defendants be granted bail in all cases except those falling within the specified exceptions.

Here, the charges against Defendant are not capital crimes, so the claim that he is not entitled to bail is apparently based either on section 12(b) of the Constitution, *i.e.*, on the proposition that the crimes charged—two violations of Penal Code section 288(a), alone or including an enhancement pursuant to Penal Code section 667.61(b)—constitute "acts of violence

-3-

577

1  on another person" or "felony sexual assault offenses," or on section 12(c) of the Constitution, *i.e.*,

2  that he is charged with an offense involving a threat of great bodily harm.  Those subsections,

3  however, do not appear to be applicable here.

4         Specifically, Penal Code section 292 specifies that certain offenses are "deemed to be a

5  felony offense involving an act of violence and a felony offense involving great bodily harm."

6  Those offenses include a violation of Penal Code section 288(b) ("an act described in

7  subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful

8  bodily injury"), but *not* a violation of Penal Code section 288(a), the applicable charge here.  A

9  violation of Penal Code section 288(a) alone does not include any act or threat of violence.  While

10 some of the circumstances supporting an enhancement under Penal Code section 667.61(b) do

11 involve violence or threats of violence (see Penal Code section 667.61(e)), had Defendant's crimes

12 involved such acts, he presumably would have been charged under Penal Code section 288(b).

13 Defendant, however, was not charged under section 288(b), and thus it appears that the only basis

14 for asserting that Defendant may be denied bail is that he is charged with a "felony sexual assault

15 offense" under section 12(c) of the Constitution.

16        Section 12(c) of the Constitution, however, does not mandate the denial of bail here,

17 because in any non-capital case a defendant may be denied bail only "upon clear and convincing

18 evidence" of a "substantial likelihood" that "great bodily harm" will be inflicted on others by the

19 defendant if released on bail.  (Cal. Const., Art. I, section 12(b), (c).)  Neither section 288 itself

20 nor section 667.61 make bail unavailable.  Thus, the proposition that a defendant charged with a

21 sexual assault crime, with or without a possible life sentence, is not eligible for bail is simply

22 incorrect.

23        Defendant may contend that the Santa Clara Superior Court Felony Bail Schedule provides

24 that in cases involving potential sentences of life imprisonment, defendants may not be released on

25 bail.  However, as the Felony Bail Schedule itself makes clear, it specifies only the default bail

26 that must be posted by a defendant in order to obtain release prior to a hearing on the appropriate

27 amount of bail.  (See attached, Santa Clara Superior Court Felony Bail Schedule, p. 601.)  The

28 Felony Bail Schedule cannot and does not deprive a criminal defendant of the constitutional right

-4-

578

1  to release on bail.  Thus, the assertion that Defendant is not eligible for bail does not appear to be

2  accurate, and should not act as a basis for denying the public's presumptive right of access to the

3  Filing Report.

4         **2.   That The Filing Report May Have Been Submitted In Error Or May Not Have**

5         **Been Considered By The Court Is Irrelevant.**

6         Defendant has asserted that the filing report was not considered by the Court.  Setting aside

7  the fact that neither Defendant nor his counsel are in a position to make any assertions regarding

8  what the Court did or did not consider, their argument is legally irrelevant.  Defendant also

9  apparently contends that the District Attorney was mistaken in believing that the Court could

10  release Defendant on bail, and that because the District Attorney's reason for submitting the filing

11  report to the Court was mistaken, the report is not subject to the public's presumptive right of

12  access.  Once again, there does not appear to be any authority supporting that proposition.  In any

13  event, there is no reason to believe either that the District Attorney made a mistake or that the

14  public's right of access to records of judicial proceedings under the First Amendment and

15  California law is dependent upon the understanding or intent of the party who submits a

16  document.

17         First, the courts have rejected the contention that the right of access attaches only if the

18  court actually considers or relies upon the record at issue.  The presumptive right of access applies

19  to records of judicial proceedings submitted by parties, regardless of whether they were actually

20  considered or relied upon by the court.  (See, e.g., *In re Coordinated Pretrial Proceedings in*

21  *Petroleum Products Antitrust Litigation* (C.D. Cal. 1984) 101 F.R.D. 34, 43 ["documents that the

22  judge should have considered or relied upon, but did not, are just as deserving of disclosure as

23  those that actually entered into the judge's decision"]; *Republic of the Philippines v. Westinghouse*

24  *Elec. Corp.* (3d Cir. 1991) 949 F.2d 653, 660 [rejecting argument that documents submitted by

25  plaintiff in support of motion for summary judgment that is denied are not subject to right of

26  access].)  In short, "the filing of a document gives rise to a presumptive right of access."

27  (*Leucadia, Inc. v. Applied Extrusion Tech., Inc.* (3rd Cir. 1993) 998 F.2d 157, 161-62; *Mokhiber v.*

28

-5-

579

1  *Davis* (D.C. App. Ct. 1988) 537 A.2d 1100, 1112 ["the presumptive right of access to pleadings

2  attaches at the time documents are filed with the court"].)

3       Second, there is no basis for the Defendant's argument that the submission of the filing

4  report was based on a mistake by the District Attorney.  That argument is based on the premise

5  that the Court had and has no power to release Defendant on bail.  As shown above, that premise

6  is incorrect.  Furthermore, the filing report may and should be considered by the Court not only in

7  determining whether to grant bail, but also in determining whether there is a basis for binding

8  defendant over for trial.  "In California, the state may prosecute a felony 'either by indictment or,

9  after examination and commitment by a magistrate, by information.'" (Cal. Const., Art. I, § 14;

10  see also Pen. Code, §§ 682, 737, 949.)." (*People v. Martinez* (2000) 22 Cal.4th 750, 758.)  In

11  either case, there must be a showing of probable cause to justify binding the defendant over for

12  trial. (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026-1027.)

13       Finally, the public's right of access cannot, as a matter of policy and practicality, depend on

14  the intent or purpose of the party who submits a document to the court for consideration.  Such an

15  approach would require an examination of the subjective state of mind of the filing party in every

16  case in which access to records of judicial proceedings is sought.  There is no justification for

17  compelling the courts to engage in that kind of mind-reading, and no authority for the proposition

18  that they should.

19  **IV.    CONCLUSION.**

20       The Mercury News maintains that the sealing of the Filing Report violates the First

21  Amendment and California law.  The Filing Report should be unsealed in its entirety immediately.

22  Dated: February 9, 2012

23

24      By: _____

25          T. ANDREW HUNTINGTON

26          Attorneys for SAN JOSE MERCURY NEWS, LLC

27

28

-6-

**580**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CLARA



## 2011 Felony Bail Schedule

600

581

## GENERAL INSTRUCTIONS

It is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses (Penal Code section 1269b(c)).  In adopting a uniform countywide bail schedule of bail for all bailable felony offenses the judges shall consider the seriousness of the offense charged (Penal Code section 1269b(e)).

The countywide bail schedule shall contain a list of the offenses and the amounts of bail applicable for each as the judges determine to be appropriate (Penal Code section 1269b(f)).  The bail schedule shall contain a general clause for those offenses not specifically listed in the bail schedule.  For all felony offenses not listed, the bail amount is $10,000.

Prior to an appearance before a judge or magistrate, the bail shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail.

At the defendant's first appearance before a judge or magistrate on the charge contained in the complaint, indictment, or information, the bail shall be set by the judge at the time of the appearance (Penal Code section 1269b(b)).

Penal Code section 1275 provides that:

> In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case.  The public safety shall be the primary consideration.

When a person is detained in custody on a criminal charge prior to conviction for want of bail, that person is entitled to an automatic review of the order fixing the amount of the bail by the judge or magistrate having jurisdiction of the offense. That review shall be held not later than five days from the time of the original order fixing the amount of bail on the original accusatory pleading.  The defendant may waive this review (Penal Code section 1270.2).

Before any person who is arrested to for any of the following crimes may be released on bail in an amount that is either more or less than the amount contained in the schedule of bail for the offense, or may be released on his or her own recognizance, a hearing shall be held in open court before the magistrate, or judge. Felony offenses in which the defendant is not to be released on bail or own recognizance release

601

582

without judicial review at a hearing with notice to the District Attorney, if bail is to be more or less than the amount in the Bail Schedule are:

Any serious felony listed in Penal Code section 1192.7;
Any violent felony as defined in subdivision (c) of Penal Code section 667.5,
    (but not including Penal Code section 460(a));
A violation of Penal Code section 136.1 pursuant to subdivision (c);
Any felony violation of Penal Code section 262 (Spousal Rape), Penal Code
    section 273.5 (Domestic Violence), Penal Code section 422 (Threats);
Any violation of Penal Code Section 646.9 (Stalking);
Any violation of paragraph (a) of subdivision (e) of Penal Code section 243;
A violation of Penal Code section 273.6, if the detained person made threats
    or harm, has engaged in violence against, or has gone to the residence
    workplace of, the protected party:

Felony offenses in which the defendant is not to be released without judicial review are:

Any felony where the defendant has (2) two or more serious or violent felony
    prior convictions (Sections 667(e)(2)(A) & 1170.12(c)(2)(A);
Any felony sex offense where the defendant has similar prior convictions
    (Penal Code section 667.71).
Narcotic felony offense (Sections 11353, 11353.5, 11361, 11380, 11380.5;
    Health and Safety Code), where defendant has two prison prior
    convictions of same nature (Penal Code section 667.55)

Felony offenses involving acts of violence on another person, felony sexual assault offenses on another person, and any felony offense where the defendant has threatened another with great bodily harm must be reviewed by the Duty Judge prior to the setting of bail.

The Bail Schedule contemplates the following practice where more than one offense is charged.

(1) When a defendant is booked on two or more charges arising from the
    same course of conduct, bail shall be the amount set for the charge having
    the highest bail.
(2) When a defendant is booked on two more charges arising from separate
    courses of conduct, bail shall be the sum of the amount set for the charge
    in each course of conduct having the highest bail.
(3) For sex offenses arising from threat or menace, bail shall be the sum of
    the full amounts set for each charge irrespective of whether the charges
    arise from a single course of conduct or single transaction.

602

583

Where an enhancement or enhancements have been alleged, the listed bail amounts for each enhancement or enhancements should be added to the bail for the underlying offense or offenses.

584

The examples outlined below demonstrate how to calculate a bail amount when a person is arrested and booked on more than one charge.

EXAMPLE #1

This example demonstrates how to calculate the bail amount when a defendant is booked on more than one charge arising out of a single act that precludes multiple punishments.

| Charge 1 | 459PC | $50,000 |
| Charge 2 | 496PC | 10,000 |
| Charge 3 | 487PC | 10,000 |

The bail in this example is $50,000 because the PC 459 charge has the highest bail and all the charges arise from a single act that precludes multiple punishments.

EXAMPLE #2

This example demonstrates how to calculate the bail amount when a defendant is booked on more than one charge arising from different acts that permit multiple punishments.

| Charge 1 | VC 10851 | $10,000 |
| Charge 2 | VC 20001 | 25,000 |
| Charge 3 | VC 23153 | 25,000 |

The bail amount in this example is $60,000 because VC 10851, VC 20001, and VC 23153 are separate acts that can be punished separately.

604

585

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 32 | Accessory to felony | 16 24 36 CJ | ½ of underlying felony |
| 67 | Bribes, giving or offering to executive officer | 24 36 48 | 25,000 |
| 67.5(b) | Bribing ministerial officer | 16 24 36 | 25,000 |
| 68 | Bribes, executive or ministerial officers | 24 36 48 | 25,000 |
| 69 | Resisting executive officer | 16 24 36 CJ | 10,000 |
| 71 | Threat to injure school official | 16 24 36 CJ | 10,000 |
| 76(a)(1) | Threatening life of government official | 16 24 36 | 25,000 |
| 76(a)(2) | Threat to public official with prior | 16 24 36 | 50,000 |
| 85 | Bribes; giving or offering | 24 36 48 | 25,000 |
| 86 | Bribes; asking or receiving | 24 36 48 | 25,000 |
| 92 | Bribes; judicial officers, jurors | 24 36 48 | 25,000 |
| 93 | Judicial officer or juror accepting bribe | 24 36 48 | 25,000 |
| 95.1 | Threatening juror after verdict | 16 24 36 CJ | 25,000 |
| 118 | Perjury | 24 36 48 | 25,000 |
| 136.1(a) | Dissuading a witness or victim from testifying | 16 24 36 CJ | 25,000 |
| 136.1(b) | Dissuading a witness or victim from reporting a crime | 16 24 36 CJ | 25,000 |
| 136.1(c) | Dissuading a witness or victim by threat | 24 36 48 | 50,000 |

586

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 137(a) | Inducing false testimony | 16 24 36 | 25,000 |
| 139 | Threats to use violence or force against witness or victim | 16 24 36 CJ | 50,000 |
| 140 | Threatening witnesses, victims | 16 24 36 CJ | 50,000 |
| 141(b) | Peace officer planting evidence | 24 36 48 | 50,000 |
| 148(b),(c),(d) | Removing or taking police officer's weapon | 16 24 36 CJ | 50,000 |
| 148.10 | Resisting officer resulting in injury or death | 24 36 48 CJ | 100,000 |
| 149 | Officer unnecessarily beats or assaults person | 16 24 36 CJ | 25,000 |
| 165 | Bribery; council members, board of supervisors | 24 36 48 | 25,000 |
| 182 | Conspiracy to commit crime | Same as crime | Same as crime |
| 186.22 | Street gang activity | 12 24 36 | 10,000 |
| 186.26(a) | Soliciting or threatening another to participate in criminal street gang | 16 24 36 CJ | 10,000 |
| 187,189,190,190.5 | Murder First Degree | 25 YEARS TO LIFE; DEATH OR LIFE W/O PAROLE | No Bail* |
| 187,189,190,190.5 | Murder Second Degree | 15, 20 OR 25 YEARS TO LIFE OR LIFE W/O PAROLE | No Bail* |
| 191.5 | Gross Vehicular Manslaughter +DUI | 48 72 120 | 100,000 |

606

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 192(a) | Manslaughter – voluntary | 36 72 132 | 25,000 |
| 192(c)(1) | Manslaughter – driving vehicle with gross negligence | 24 48 72 CJ | 25,000 |
| 192(c)(3) | Manslaughter – driving without gross negligence +DUI | 16 24 36 CJ | 25,000 |
| 192(c)(4) | Manslaughter while driving for financial gain | 48 72 120 | 50,000 |
| 203 | Mayhem | 24 48 96 | 50,000 |
| 205 | Aggravated mayhem | LIFE | No Bail* |
| 206 | Torture | LIFE | No Bail* |
| 207(a) | Kidnapping | 36 60 96 | 50,000 |
| 207(b) | Kidnapping for purposes of 288 under 14 | 60 96 132 | 100,000 |
| 209(a) | Kidnapping for ransom or extortion | LIFE | No Bail* |
| 209(b) | Kidnapping for robbery or felony sex offense | LIFE | No Bail* |
| 212.5(a) | Robbery First Degree | 36 48 72 | 50,000 |
| 212.5(b) | Robbery First Degree of Person using Teller Machine | 36 48 72 | 50,000 |
| 212.5(c) | Robbery Second Degree | 24 36 60 | 50,000 |
| 215 | Carjacking | 36 60 108 | 50,000 |
| 218 | Train Wrecking attempt | LIFE | No Bail* |
| 219 | Train Wrecking | LIFE | No Bail* |

607

588

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 219.1 | Hurling missile at common carrier vehicle | 24 36 72 | 10,000 |
| 219.2 | Hurling missile at train | 16 24 36 | 10,000 |
| 220 | Assault with intent to commit sodomy, mayhem, oral copulation, or rape | 24 48 72 | 50,000 |
| 220(a) | Assault with intent to commit sodomy, mayhem, oral copulation, or rape | 24 48 72 | 50,000 |
| 220(b) | Assault with the intent to commit certain sex crimes | LIFE | No Bail* |
| 236-237 | False imprisonment by violence | 16 24 36 | 10,000 |
| 241.1 | Assault against custodial officer | 16 24 36 CJ | 10,000 |
| 241.4 | Assault against peace officer of school district | 16 24 36 CJ | 10,000 |
| 243(c) | Battery upon peace officer and causes injury | 16 24 36 CJ | 10,000 |
| 243(d) | Battery with serious bodily injury | 24 36 48 CJ | 25,000 |
| 243.1 | Battery upon custodial officer | 16 24 36 | 25,000 |
| 243.3 | Battery on public transit employee with injury | 16 24 36 CJ | 25,000 |
| 243.4 | Sexual Battery | 24 36 48 CJ | 25,000 |
| 243.6 | Battery on school employee with injury | 16 24 36 CJ | 25,000 |
| 243.9 | Battery by gassing | 24 36 48 CJ | 25,000 |

609

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 244.5(b) | Assault with stun gun | 16 24 36 CJ | 25,000 |
| 245(a)(1) | Assault with deadly weapon or by means of force to produce GBI | 24 36 48 CJ | 25,000 |
| 245(a)(2) | Assault with firearm | 24 36 48 CJ | 50,000 |
| 245(a)(3) | Assault with machine gun or assault weapon | 48 96 144 | 100,000 |
| 245(b) | Assault with semi-automatic weapon | 36 72 108 | 50,000 |
| 245(c) | Assault on peace officer by force or weapon not a firearm | 36 72 108 | 25,000 |
| 245(d)(1) | Assault on peace officer or firefighter with firearm | 48 72 96 | 50,000 |
| 245(d)(2) | Assault on peace officer or firefighter with semi-automatic weapon | 60 84 108 | 100,000 |
| 245(d)(3) | Assault on peace officer or firefighter with machine gun or assault weapon | 72 108 144 | 100,000 |
| 245.2 | Assault with a deadly weapon while on public transit | 36 48 60 | 25,000 |
| 245.3 | Assault with deadly weapon on custodial officer | 36 48 60 | 50,000 |
| 245.5(a) | Assault with a deadly weapon by means of force likely to result in GBI on school employee | 36 48 60 CJ | 25,000 |

610                                        590

| | | | |
|---|---|---|---|
| 245.5(b) | Assault with firearm on school employee | 48 72 96 CJ | 50,000 |
| 245.5(c) | Assault with stun gun or taser on school employee | 24 36 48 CJ | 50,000 |
| 245.6 | Hazing that causes serious bodily injury | 16 24 36 CJ | 25,000 |
| 246 | Shooting at inhabited dwelling, building or aircraft | 30 60 84 CJ | 100,000 |
| 246.3 | Discharge of weapon in grossly negligent manner | 16 24 36 CJ | 25,000 |
| 246.3(b) | Willfully discharging a BB device in a grossly negligent manner which could result in injury or death | | 5,000 |
| 247.5 | Discharge of laser at aircraft | 16 24 36 CJ | 25,000 |
| 261 | Rape | 36 72 96 CJ | 100,000 |
| 261.5(c) | Unlawful sexual intercourse | 16 24 36 CJ | 10,000 |
| 261.5(d) | Unlawful sexual intercourse where defendant is over 21 and victim under 16 | 24 36 48 CJ | 25,000 |
| 262 | Spousal Rape | 36 72 96 CJ | 100,000 |
| 264.1 | Rape in concert with force and violence | 60 84 108 | 250,000 |
| 266h(b)(1) | Pimping with victim 16 or older | | 50,000 |
| 266h(b)(2) | Pimping with victim under 16 | | 100,000 |
| 266i | Pandering | 36 48 72 | 50,000 |
| 266i | Pandering with child under 16 | 36 72 96 | 100,000 |
| 267 | Abduction for purposes of prostitution | 16 24 36 CJ | 50,000 |

611

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 269 | Aggravated sexual assault on child under 14 by person 10 years or more older than victim | LIFE | No Bail* |
| 270 | Child Neglect | 1 YEAR ONE DAY | 10,000 |
| 273a(1) | Mistreating child likely to produce GBI or death | 24 48 72 CJ | 50,000 |
| 273ab | Assault on child under 8 with GBI or death | LIFE | No Bail* |
| 273d | Corporal Punishment with cruelty or injury | 24 48 72 CJ | 25,000 |
| 273.5 | Inflicting corporal injury on spouse, cohabitant | 24 36 60 CJ | 25,000 |
| 273.5(e)(1) | Inflicting corporal injury on spouse, cohabitant with prior conviction | 24 36 60 CJ | 100,000 |
| 273.6 | Violating domestic restraining order with prior conviction | 16 24 36 CJ | 10,000 |
| 278 | Child stealing | 24 36 48 CJ | 25,000 |
| 286(b)(1) | Sodomy, victim under 18 | 16 24 36 CJ | 50,000 |
| 286(b)(2) | Sodomy, without force, victim under 16 | 16 24 36 | 50,000 |
| 286(c)(1)(2)(3) | Sodomy; with victim 14 or under; by force; or by threat | 36 72 96 | 100,000 |
| 286(d) | Sodomy in concert with force and violence | 60 84 108 | 250,000 |

612

592

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 286(e) | Sodomy in state prison or county jail | 16 24 36 CJ | 25,000 |
| 286(f),(g),(i),(j)& (k) | Sodomy if victim unconscious, or incapable of consent | 36 72 96 | 100,000 |
| 288(a) | Lewd act with child under 14 | 36 72 96 | 50,000 |
| 288(b)(1)(2) | Lewd act with child under 14 by force or fear | 36 72 96 | 100,000 |
| 288(c)(1)(2) | Lewd act with child 14 or 15, where defendant is 10 years older than victim | 12 24 36 CJ | 50,000 |
| 288a(b)(1) | Oral copulation with minor | 16 24 36 CJ | 50,000 |
| 288a(b)(2) | Oral copulation where defendant is over 21 and victim is under 16 | 16 24 36 | 50,000 |
| 288a(c) | Oral copulation where victim in under 14 and defendant is 10 years older than victim; or by force or fear | 36 72 96 | 100,000 |
| 288a(d) | Oral copulation in concert with force and fear | 60 84 108 | 250,000 |
| 288a(e) | Oral copulation committed in prison or jail | 16 24 36 CJ | 25,000 |
| 288a(f) | Oral copulation where victim is unconscious | 36 72 96 | 100,000 |
| 288a(g) | Oral copulation where no legal consent | 36 72 96 | 100,000 |

593

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 288a(i),(j), & (k) | Oral copulation where consent is flawed | 36 72 96 | 100,000 |
| 288.2 | Distribution or exhibition of lewd material to minor | 16 24 36 CJ | 25,000 |
| 288.3 | Meeting with a minor or person believed to be a minor for the purpose of exposing genitals, pubic or rectal areas | | 10,000 |
| 288.3 (second version) | Contacting a minor with the intent to commit certain offenses | Term for the intended offense | 50,000 |
| 288.3(a)(2) | 290 registrant who arranges to meet with a minor or person believed to be a minor for the purpose of exposing genitals, pubic, or rectal areas | 16 24 36 | 25,000 |
| 288.3(b) | Anyone who violates 288.3(a)(1) and goes to an arranged meeting place | 24 36 48 | 50,000 |
| 288.5 | Three or more lewd acts with child under 14 | 72 144 192 | 500,000 |
| 288.7(a) | Engaging in sexual intercourse or sodomy with a child 10 or younger | 25 years to LIFE | NO BAIL* |
| 288.7(b) | Engaging in oral copulation or sexual penetration with a child 10 or younger | 15 years to LIFE | NO BAIL* |

614

594

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 289(a) | Penetration by foreign object with force and fear | 36 72 96 | 100,000 |
| 289(b) | Penetration by foreign object where victim incapable of legal consent | 36 72 96 | 100,000 |
| 289(d), (e),(f) & (g) | Penetration by foreign object where consent is flawed | 36 72 96 | 100,000 |
| 289(j) | Penetration by foreign object where victim in under 14 and defendant is 10 years older | 36 72 96 | 100,000 |
| 289.6 | Officer or employee of detention facility engaging in sex with inmate | 16 24 36 CJ | 50,000 |
| 290.013 | Sex registrant failure to report address | 16 24 36 CJ | 25,000 |
| 290.014 | Sex registrant failure to report name change | 16 24 36 CJ | 25,000 |
| 290.018(b) | Failure to register as sex offender | 16 24 36 | 25,000 |
| 290.018(c) | Failure to register as sex offender | 16 24 36 | 25,000 |
| 298.2(A)(1) | Knowingly submitting false DNA | 24 36 48 | 25,000 |
| 298.2(A)(2) | Knowingly tampering with DNA | 24 36 48 | 25,000 |
| 299.5(i)(1)(A) | Knowingly disclosing DNA information | 16 24 36 CJ | 10,000 |

615

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 311.1, 311.2, 311.4, 311.10 | Sending, distributing, bringing, exploitation re: child pornography | 16 24 36 CJ | 25,000 |
| 311.11 | Possession of child pornography | 16 24 36 CJ | 25,000 |
| 314(1) | Indecent exposure with prior | 16 24 36 | 10,000 |
| 337a | Bookmaking | 16 24 36 CJ | 5,000 |
| 368(b) | Physical abuse of an elder or dependent adult | 24 36 48 CJ | 25,000 |
| 368(d) | Theft from elder or dependent adult | 24 36 48 CJ | 10,000 |
| 368(e) | Theft by caretaker from elder or dependent adult | 24 36 48 CJ | 10,000 |
| 399(a) | Willfully permitting vicious animal to go at large causing death | 16 24 36 CJ | 50,000 |
| 399(b) | Willfully permitting animal to go at large and causing serious bodily injury | 16 24 36 CJ | 25,000 |
| 399.5 | Owning or keeping attack dog that has bitten twice before | 24 36 48 CJ | 25,000 |
| 417(c) | Exhibiting firearm in presence of police | 16 24 36 CJ | 25,000 |
| 417.3 | Exhibiting firearm in presence of person in motor vehicle | 16 24 36 | 25,000 |
| 417.8 | Exhibiting firearm or deadly weapon with intent to resist officer | 24 36 48 CJ | 25,000 |

616

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 422 | Terrorist threats | 16 24 36 CJ | 25,000 |
| 424 | Embezzlement or falsification of accounts by public officer | 24 36 48 | 25,000 |
| 451(a) | Arson with GBI | 60 84 108 | 100,000 |
| 451(b) | Arson of inhabited dwelling | 36 60 96 | 100,000 |
| 451(c) | Arson of forest land | 24 48 72 | 100,000 |
| 451(d) | Arson of property | 16 24 36 | 25,000 |
| 451.5 | Aggravated Arson | LIFE | No Bail* |
| 452(a) | Reckless arson with GBI | 24 48 72 CJ | 25,000 |
| 452(b) | Reckless arson of inhabited structure | 24 36 48 CJ | 10,000 |
| 452(c) | Reckless arson where prior or GBI | 16 24 36 CJ | 10,000 |
| 453(a) | Possession of explosives or flammable materials | 16 24 36 CJ | 25,000 |
| 455 | Attempted arson with GBI | 16 24 36 | 25,000 |
| 459-460(a), 461(1) | Burglary First Degree | 24 36 72 | 50,000 |
| 459-460(b), 461(2) | Burglary Second Degree | 16 24 36 CJ | 10,000 |
| 464 | Burglary with explosives | 36 60 84 | 100,000 |
| 470a | Forgery of driver's license | 16 24 36 CJ | 10,000 |
| 470b | Display or possession of forged driver's license or ID | 16 24 36 CJ | 10,000 |
| 471 | Forgery in records or returns | 16 24 36 CJ | 10,000 |

597

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 472 | Forgery, telephone messages | 16 24 36 CJ | 10,000 |
| 502.7 | Obtaining telephone services by fraud | 16 24 36 CJ | 10,000 |
| 502.8 | Uses or possesses telecommunications device to avoid payment with prior | 16 24 36 | 10,000 |
| 504 | Embezzlement by public officer | 16 24 36 CJ | 10,000 |
| 520 | Extortion | 24 36 48 | 25,000 |
| 529 | False personation | 16 24 36 CJ | 10,000 |
| 529a | Manufacture, sale of false birth certificate | 16 24 36 CJ | |
| 530.5 | Identity theft | 16 24 36 CJ | 25,000 |
| 530.5(c)(2) | Acquiring or possessing personal identifying information with the intent to defraud with a prior | 16 24 36 CJ | 25,000 |
| 530.5(c)(3) | Acquiring or possessing personal identifying information of 10 or more people | 16 24 36 CJ | 50,000 |
| 530.5(d)(2) | Selling, transferring, or conveying personal identifying information with actual knowledge that information will be used to commit theft | 16 24 36 CJ | 25,000 |
| 532 | False pretenses | 16 24 36 CJ | 10,000 |
| 548(a) | Defrauding an insurer | 24 36 60 | 10,000 |
| 550(a) | Insurance fraud | 24 36 60 | 10,000 |

618

598

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 591, 593 | Injuring telephone line | 16 24 36 CJ | 10,000 |
| 594(b)(1);594.3; 594.35; 594.4 & 594.7 | Vandalism | 16 24 36 CJ | 10,000 |
| 597(a) | Animal fighting with a prior | 16 24 36 CJ | 10,000 |
| 597(b) | Cockfighting with a prior | 16 24 36 CJ | 10,000 |
| 601 | Trespass with threat of serious bodily injury | 16 24 36 CJ | 10,000 |
| 626.9 | Firearms on school grounds | 24 36 60 CJ | 25,000 |
| 626.10 | Weapons on school grounds | 16 24 36 CJ | 10,000 |
| 626.81(b)(1) | 290 registrant coming into a school building or ground without lawful business and written permission | | 5,000 |
| 626.81(b)(2) | 290 registrant coming into a school building or ground without lawful business and written permission with one prior conviction | | 10,000 |
| 626.81(b)(3) | 290 registrant coming into a school building or ground without lawful business and written permission with 2 or more prior convictions | | 25,000 |

619

599

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 638 | Purchasing, selling or offering to purchase or sell or obtaining through fraud or deceit a telephone record or list | | 5,000 |
| 646.9(a) | Stalking | 16 24 36 CJ | 50,000 |
| 646.9(b) | Stalking in violation of restraining order | 16 24 36 CJ | 100,000 |
| 646.9(c)(1) | Stalking after felony conviction of 273.5, 273.6, or 422 | 24 36 60 | 100,000 |
| 646.9(c)(2) | Stalking with prior conviction for stalking | 24 36 60 | 250,000 |
| 647.6 | Child molest with prior conviction | 24 48 72 | 50,000 |
| 648 | Making, issuing or circulating unauthorized money with prior | 16 24 36 | 10,000 |
| 653b(b)(1) | 290 registrant loitering near a school or public place where children congregate | | 5,000 |
| 653b(b)(2) | 290 registrant loitering near a school or public place where children congregate with 1 prior | | 10,000 |
| 653b(b)(3) | 290 registrant loitering near a school or public place where children congregate with 2 or more priors | | 25,000 |

620

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 653c(d)(1) | 290 registrant for sex crimes against elders or dependent adults who enter a day care or residential facility where elders or dependent adults are present | | 5,000 |
| 653c(d)(2) | 290 registrant for sex crimes against elders or dependent adults who enter a day care or residential facility where elders or dependent adults are present with 1 prior | | 10,000 |
| 653c(d)(3) | 290 registrant for sex crimes against elders or dependent adults who enter a day care or residential facility where elders or dependent adults are present | | 25,000 |
| 653f(a) | Solicitation to commit robbery, burglary, grand theft, etc | 16 24 36 CJ | Same as target offense |
| 653f(b) | Solicitation to commit murder | 36 72 108 | 500,000 |
| 653f(c) | Solicitation to commit rape, sodomy, etc. | 24 36 48 | Same as target offense |
| 653f(d) | Solicitation to commit drug sales | 16 24 36 CJ | Same as target offense |
| 653f(e) | Solicitation to commit welfare fraud | 16 24 36 CJ | Same as target offense |

621

601

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 653j | Solicitation of minor to commit certain crimes | 36 60 84 | 50,000 |
| 664/187 | Attempted Murder | LIFE | No Bail* |
| 664 | Attempt – Other crimes | Same as underlying crime | ½ of completed crime |
| 666 | Petty Theft with prior | 16 24 36 CJ | 5,000 |
| 666.5 | Prior Theft of auto | 36 48 60 | 25,000 |
| 1320(b) | Failure to appear after O.R. release | 16 24 36 CJ | 10,000 |
| 1320.5 | Failure to appear after release on bail | 16 24 36 CJ | 10,000 |
| 4530(a) | Escape, attempted escape from prison with force or violence | 24 48 72 | No Bail* |
| 4530(b) | Escape, attempted escape from prison without force or violence | 16 24 36 CJ | No Bail* |
| 4532(a)(1) | Escape, attempted escape by misdemeanant from jail | 1 year and 1 day | 25,000 |
| 4532(a)(2) | Escape from jail with force or violence | 24 48 72 | No Bail* |
| 4532(b)(1) | Escape, attempt escape by felon from jail | 16 24 36 CJ | 50,000 |
| 4532(b)(2) | Escape from jail by felon with force or violence | 24 36 72 | No Bail* |
| 4573, 4573.5, 4573.6, 4573.8, & 4574 | Introducing contraband substances, devices or weapons into jail | 16 24 36 | 25,000 |

622

602

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 4573.9 | Selling or giving drugs to inmate | 24 36 72 | 25,000 |
| 11413 | Use of explosives to terrorize in certain places | 36 60 84 | 1,000,000 |
| 11418;11418.5; &11419 | Possessing, use and carrying weapons of mass destruction and biological agents | 60 120 180 | 1,000,000 |
| 12020 | Dangerous weapons, manufacture, sale, possession; concealed dirk or dagger on person | 16 24 36 CJ | 5,000 |
| 12020 | Possession of sawed off shotgun | 16 24 36 CJ | 25,000 |
| 12021(a)(1) | Ownership or possession of firearm by felon | 16 24 36 | 10,000 |
| 12021(a)(2) | Ownership or possession of firearm by person with 2 or more 417 priors | 16 24 36 | 10,000 |
| 12021(c)(1) | Ownership or possession of firearm by certain misdemeanants | 16 24 36 CJ | 10,000 |
| 12021(g)(1) | Ownership or possession of firearm by person previously convicted of violent felony | 16 24 36 | 50,000 |
| 12023 | Carrying loaded firearm with intent to commit felony | 16 24 36 CJ | 50,000 |

623

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 12025 & 12031 | Possession of a concealed or loaded firearm by felon; street gang member; if weapon known to be stolen; or by person not authorized to possess | 16 24 36 | 25,000 |
| 12034(b) or (c) | Willful and malicious discharge of firearm from vehicle | 16 24 36 CJ | 100,000 |
| 12040 | Carrying a firearm in public while masked | 16 24 36 CJ | 50,000 |
| 12072 | Unlawful delivery of firearm to purchaser | 16 24 36 CJ | 10,000 |
| 12076 | Knowingly furnishing a fictitious name or address when attempting to purchase a firearm from a dealer | 8 12 18 CJ | 10,000 |
| 12303 | Possession of destructive device | 16 24 36 CJ | 50,000 |
| 12303.1 | Carrying or placing a destructive device on transportation vehicle | 24 48 72 | 250,000 |
| 12303.2 | Possession of destructive device in public place | 24 48 72 | 250,000 |
| 12303.3 | Exploding bomb or destructive device for purpose of terrorism | 36 60 84 | 500,000 |

624

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 12308 | Exploding bomb or destructive device with intent to murder | 60 84 108 | No Bail* |
| 12309 | Exploding bomb or destructive device which causes GBI | 60 84 108 | 1,000,000 |
| 12310(a) | Exploding bomb or destructive device which results in death | LIFE | No Bail* |
| 12310(b) | Exploding bomb or destructive device resulting in mayhem or GBI | LIFE | No Bail* |
| 12312 | Possession of material to make bomb or destructive device | 24 36 48 | 50,000 |
| 12316 | Felon in possession of ammunition | 16 24 36 CJ | 10,000 |
| 12403.7 | Illegal use of tear gas/tear gas weapon on peace officer | 16 24 36 CJ | 25,000 |
| 12355(a) | Making or placing a booby trap | 24 36 60 | 100,000 |
| 12355(b) | Possession with intent to use booby trap | 16 24 36 CJ | 50,000 |
| 11350 | Possession controlled substance | 16 24 36 | 10,000 |
| 11351 | Possession of controlled substance for sale | 24 36 48 | 25,000 |
| 11351.5 | Possession for sale cocaine base | 36 48 60 | 25,000 |
| 11352(a) | Transportation, sale, furnishing controlled substance | 36 48 60 | 25,000 |

625

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 11352(b) | Transportation for sale to noncontiguous counties | 36 72 108 | 25,000 |
| 11353 | Adult inducing minor to violate provisions of drug laws; use or employment of minors to sell drugs | 36 72 108 | 50,000 |
| 11353.5 | Providing a minor controlled substances not under 11353 or 11380 | 60 84 108 | 50,000 |
| 11353.7 | Preparation for sale or sale to minor under 14 in public park | 36 72 108 | 50,000 |
| 11354 | Use of person 18 or older of minor in sale, transportation, giving, any narcotic to a minor | 16 24 36 | 50,000 |
| 11355 | Sale or furnishing substance falsely represented | 16 24 36 CJ | 5,000 |
| 11357(a) | Possession of concentrated cannabis | 16 24 36 CJ | 5,000 |
| 11358 | Marijuana cultivation or processing | 16 24 36 | 10,000 |
| 11359 | Marijuana: possession for sale | 16 24 36 | 10,000 |
| 11360(a) | Marijuana: transportation, sale, furnishing | 24 36 48 | 10,000 |

606

| Health and Safety | Offense | Term | Bail |
|---|---|---|---|
| 11361(a) | Marijuana: Use by person 18 or older of minor in sale, transportation, etc., of marijuana; or sale or·furnishing to minor under 14 | 36 60 84 | 50,000 |
| 11361(b) | Marijuana: Sale or furnishing of marijuana by person 18 or older to minor 14 years or older | 36 48 60 | 25,000 |
| 11363 | Planting, harvesting, cultivating peyote | 16 24 36 CJ | 10,000 |
| 11366 & 11366.5 | Maintaining a place for sale or use of illegal drugs | 16 24 36 CJ | 5,000 |
| 11366.6 | Use of location to suppress law enforcement entry | 36 48 60 | 25,000 |
| 11366.8 | False compartment to conceal controlled substance | 16 24 36 CJ | 5,000 |
| 11368 | Narcotic drug: forging, altering prescription | 16 24 36 CJ | 10,000 |
| 11370.1 | Possession of controlled substance and loaded firearm | 24 36 48 | 25,000 |
| 11370.6 | Possession of more than $100,000 for of from the purchase of controlled substance | 24 36 48 CJ | 250,000 |
| 11377 | Possession of controlled substance | 16 24 36 CJ | 10,000 |
| 11378 | Possession of controlled substance for sale | 16 24 36 | 10,000 |
| 11378.5 | Possession of PCP for sale | 36 48 60 | 25,000 |

| Health and Safety | Offense | Term | Bail |
|---|---|---|---|
| 11379(a) | Transportation, sale, or manufacturing of controlled substance | 24 36 48 | 25,000 |
| 11379(b) | Transport for sale of controlled substance to non-contiguous county | 36 72 108 | 25,000 |
| 11379.5(a) | Transportation, sale or manufacturing of PCP | 36 48 60 | 25,000 |
| 11379.5(b) | Transport for sale of PCP to non-contiguous county | 36 72 108 | 25,000 |
| 11379.6 | Manufacture of other controlled substance | 36 60 84 | 100,000 |
| 11380 | Adult using minor as agent for sale of drugs; inducing minor to violate drug laws; furnishing to minor | 36 72 108 | 50,000 |
| 11382 | Sale or furnishing of substances falsely represented to be controlled substances | 16 24 36 CJ | 10,000 |
| 11383 | Possession of certain chemicals with intent to manufacture methamphetamine | 24 48 72 | 100,000 |
| 11383(a)(b)(c)(d) | Possessing certain chemicals with intent to manufacture phencyclidine | 24 48 72 | 100,000 |
| 11383.5(a)(b)(c)(d)(e)(f) | Possessing certain chemicals with intent to manufacture methamphetamine | 24 48 72 | 100,000 |

628

608

| Health and Safety | Offense | Term | Bail |
|---|---|---|---|
| 11383.6(a)(b)(c)(d) | Possession of certain chemicals with intent to sell, transfer, or furnish with knowledge it will be used to manufacture PCP | 16 24 36 | 100,000 |
| 11383.7(a)(b)(c)(d)(e)(f) | Possession of certain chemicals with intent to sell, transfer, or furnish with knowledge it will be used to manufacture methamphetamine | 24 36 48 | 100,000 |
| 11390 | Cultivation of mushrooms for controlled substances | 16 24 36 CJ | 10,000 |
| 11391 | Transportation of mushrooms | 16 24 36 CJ | 10,000 |

629

609

| Welfare and Inst. | Offense | Term | Bail |
|---|---|---|---|
| 10980 | Fraud in obtaining welfare assistance; AFDC; food stamps | 16 24 36 CJ | 5,000 |
| 120291 | Knowingly exposing another to HIV by engaging in unprotected sex | | 50,000 |

630

610

| Vehicle | Offense | Term | Bail |
|---|---|---|---|
| 2800.2 | Reckless driving in flight to avoid a pursuing peace officer | 16 24 36 CJ | 25,000 |
| 2800.3 | Reckless driving in flight to avoid a pursuing peace officer resulting in death or GBI | 36 48 60 CJ | 100,000 |
| 2800.4 | Willfully fleeing or attempting to elude a pursuing peace officer in violation of VC 2800.1 while driving on the wrong side of the road | 16 24 36 | 25,000 |
| 4463 | False evidence of registration | 16 24 36 CJ | 10,000 |
| 10801 | Owing or operating a chop shop | 24 36 48 CJ | 25,000 |
| 10803(a) | Buying, selling or possessing vehicle with altered ID number | 24 48 72 CJ | 10,000 |
| 10851(a) | Driving or taking car without consent | 16 24 36 CJ | 10,000 |
| 10851(b) | Driving or taking emergency vehicle | 24 36 48 | 25,000 |
| 10851(e)/666.5 | Driving or taking car without consent with prior conviction | 24 36 48 | 25,000 |
| 20001(b) (1) | Hit and run with injury | 16 24 36 CJ | 25,000 |
| 20001(b) (2) | Hit and run with death or permanent serious injury | 24 36 48 CJ | 50,000 |
| 23104(b) | Reckless driving with GBI and prior | 16 24 36 CJ | 100,000 |

631

| Vehicle | Offense | Term | Bail |
|---|---|---|---|
| 23105 | Recklessly driving in violation of 23103 that proximately causes specified injuries to another | 16 24 36 CJ | 100,000 |
| 23109.1 | Engaging in speed contest in violation of 23109 that proximately causes specified injuries to another | 16 24 36 CJ | 100,000 |
| 23152/23550 | DUI with Three of more prior DUI's within 10 years | 16 24 36 CJ | 100,000 |
| 23152/23550.5 | DUI with prior felony 23152, prior felony 23153, or prior felony 191.5 or 192, within 10 years | 16 24 36 CJ | 100,000 |
| 23153 | DUI causing injury (no priors) | 16 24 36 CJ | 25,000 |
| 23153 with one prior 23103.5,23152, or 23153 | DUI causing injury with one prior | 16 24 36 CJ | 50,000 |
| 23153 with two prior 23103.5, 23152, or 23153 | DUI causing injury with two priors | 24 36 48 | 100,000 |

632

612

| Business and Profs. | Offense | Term | Bail |
|---|---|---|---|
| 4060 | Possession of controlled substances without a prescription | 16 24 36 CJ | 5,000 |
| 4390 | Altering or forging prescription or possessing drug obtained by such prescription | 16 24 36 CJ | 5,000 |
| 17550.14(a) | Travel Service failing to reimburse | 16 24 36 CJ | 5,000 |

| Labor | Offense | Term | Bail |
|---|---|---|---|
| 6425 | Violating OHSA order | 16 24 36 CJ | 5,000 person |
| | | | 10,000 corporation |

| Insurance | Offense | Term | Bail |
|---|---|---|---|
| 1871.4 | Worker's compensation fraud | 16 24 36 CJ | 10,000 |

| Elections | Offense | Term | Bail |
|---|---|---|---|
| 18101 | Registration of fictitious person | 16 24 36 CJ | 5,000 |

| Government | Offense | Term | Bail |
|---|---|---|---|
| 67600 | Non-duly authorized notary public | 16 24 36 CJ | 5,000 |

633

Enhancements

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 186.22 (b)(1)(A) | Committing felony as part of street gang activity | 2 3 4 YRS | 10,000 |
| 186.22(b)(1)(B) | Committing serious felony as part of street gang activity | 5 YRS | 25,000 |
| 186.22(b)(1)(C) | Committing violent felony as part of street gang activity | 10 YRS | 100,000 |
| 422.75(a) | Hate crime | 1 2 3 YRS | 10,000 |
| 422.75.(b) | Hate crime in concert | 2 3 4 YRS | 25,000 |
| 451.1 | Felony arson | 3 4 5 YRS | 100,000 |
| 452.1 | Arson with prior conviction of 451 or 452 | 1 2 3 YRS | 50,000 |
| 667(a) | Prior serious felony (Prop. 8 prior) | 5 YRS | 50,000 |
| 667(e)(1) | One serious or violent prior (Strike prior) | | 50,000 |
| 667(e)(2)(A) | Two or more serious or violent priors (Strike priors) | | No Bail* |
| 667.5(a) | Violent prison prior | 3 YRS | 25,000 |
| 667.5(b) | Prison prior | 1 YR | 10,000 |
| 667.51(a) | PC 288 with one prior sex offense | 5 YRS | 50,000 |
| 667.6(a) | Prior forcible sex offense | 5 YRS | 50,000 |
| 667.6(b) | Prior forcible sex offense with prison commitment | 10 YRS | 100,000 |
| 667.61 | Felony sex offenses with certain priors or circumstances | LIFE | No Bail* |

614

Enhancements

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 667.7 | Habitual offenders | LIFE | No Bail* |
| 667.71 | Habitual sex offenders | LIFE | No Bail* |
| 667.75 | Habitual drug offenders | LIFE | No Bail* |
| 667.8(a) | Kidnapping for sex offense | 9 YRS | 100,000 |
| 667.8(b) | Kidnapping of minor under 14 for sex offense | 15 YRS | 250,000 |
| 667.85 | Kidnapping of child under 14 to permanently deprive parents | 5 YRS | 50,000 |
| 667.9(a) | Serious felony committed on victim, disabled, under 14, or over 65 | 1 YR | 25,000 |
| 667.9(b) | Serious felony committed on victim, disable, under 14, or over 65 with prior conviction of serious felony | 2 YRS | 50,000 |
| 667.10 | PC 289 on disable victim or on victim over 65 or under 14 | 2 YRS | 50,000 |
| 667.15(a) | Exhibiting sex acts of a minor to a minor to commit 288 | 1 YR | 10,000 |
| 667.15(b) | Exhibiting sex acts of a minor to a minor to commit 288.5 | 2 YRS | 10,000 |
| 674(a) | Felony sex offense on minor by day care provider | 2 YRS | 50,000 |

635

Enhancements

| Penal | Offense | Term | Bail |
|---|---|---|---|
| 674(b) | Felony sex offense on minor by day care provider in concert | 3 YRS | 100,000 |
| 12021.5(a) | Carrying firearm in street gang crime | 1 2 3 YRS | 25,000 |
| 12021.5(b) | Carrying assault weapon in street gang crime | 2 3 4 YRS | 50,000 |
| 12022(a)(1) | Committing Felony when armed with firearm | 1 YR | 25,000 |
| 12022(a)(2) | Committing felony when armed with assault weapon or machine gun | 3 YRS | 50,000 |
| 12022(b)(1) | Committing felony and personally uses a deadly or dangerous weapon | 1 YR | 10,000 |
| 12022(b)(2) | Personally uses a deadly or dangerous weapon and convicted of carjacking | 1 2 3 YRS | 25,000 |
| 12022(c) | Personally armed with a firearm while engaged in sale or possession of sale of controlled substances | 3 4 5 YRS | 25,000 |
| 12022(d) | Principal in narcotic sales case knowing another principal is armed with firearm | 1 2 3 YRS | 10,000 |
| 12022.1 | Offense committed while on bail or O.R. | 2 YRS | 25,000 |
| 12022.2(a) | Armed with firearm having armor | 3 4 10 YRS | 100,000 |

636

Enhancements

| Penal | Offense | Term | Bail |
|---|---|---|---|
| | piercing ammunition | | |
| 12022.2(b) | Wearing body vest during commission of violent offense | 1 2 5 YRS | 50,000 |
| 12022.3(a) | Use of deadly weapon or firearm during commission of sex crime | 3 4 10 YRS | 100,000 |
| 12022.3((b) | Armed with deadly weapon or firearm during commission of sex crime | 1 2 5 YRS | 50,000 |
| 12022.4 | Supplying firearm for use in felony | 1 2 3 YRS | 25,000 |
| 12022.5(a) | Personal use of firearm during commission of felony | 3 4 10 YRS | 25,000 |
| 12022.5(b) | Personal use of assault weapon or machine gun during commission of felony | 5 6 10 YRS | 100,000 |
| 12022.53(b) | Personally uses firearm for certain offenses | 10 YRS | 100,000 |
| 12022.53(c) | Personally and intentionally discharges a firearm for certain offenses | 20 YRS | 250,000 |
| 12022.53(d) | Personally and intentionally discharges a firearm for certain offenses and causes GBI or death | LIFE | No Bail* |

637

617

Enhancements

| Penal | Offense | Term | Bail |
|-------|---------|------|------|
| 12022.55 | Causing death or GBI by discharging firearm from motor vehicle | 5 6 10 YRS | 250,000 |
| 12022.6(a)((1), (2), (3), (4) | Excessive taking | 1 YR<br>2 YRS<br>3 YRS<br>4 YRS | Same as allegation |
| 12022.7(a) | Causing GBI during commission of felony | 3 YRS | 50,000 |
| 12022.7(b) | GBI resulting in coma or paralysis | 5 YRS | 250,000 |
| 12022.7(c) | GBI to person 70 years or older | 5 YRS | 100,000 |
| 12022.7(d) | GBI to person under 5 years of age | 4 5 6 YRS | 100,000 |
| 12022.7(e) | GBI during commission of felony relating to domestic violence | 3 4 5 YRS | 100,000 |
| 12022.75 | Administering controlled substance to commit felony | 3 YRS | 50,000 |
| 12022.8 | GBI during commission of felony sex offense | 5 YRS | 100,000 |
| 12022.85 | Committing sex offense by defendant with AIDS virus | 3 YRS | 50,000 |
| 12022.9(a) | Inflicting injury causing termination of pregnancy | 5 YRS | 100,000 |
| 12022.95 | Abuse of child under 273 resulting in death | 4 YRS | 100,000 |

618

| Health and Safety | Offense | Term | Bail |
|---|---|---|---|
| 11353.1 (a)(1),(2), or (3) | Sale of narcotics at certain locations; sale to minor | 1 YR<br>2 YRS<br>1 2 3 YRS | 25,000 |
| 11353.4 | H&S 11353 with prior | 1 2 3 YRS | 50,000 |
| 11353.6 | Sale of drugs at certain locations | 3 4 5 YRS | 25,000 |
| 11356.5(a)(1) | Sale of PCP with a value exceeding $500,000 | 1 YR | 500,000 |
| 11356.5(a)(2) | Sale of PCP with a value exceeding $2,000,000 | 2 YRS | 2,000,000 |
| 11356.5(a)(3) | Sale of PCP with a value exceeding $5,000,000 | 3 YRS | 5,000,000 |
| 11370.2(a) & (b) | Prior conviction in sales transaction | 3 YRS | 25,000 |
| 11370.4 (a) (1)-(6) | Violations with heroin, cocaine, cocaine base, PCP, methamphetamine with weights or volumes | | |
| (a) (1) | 1 kilogram   30 liters | 3 YRS | 25,000 |
| (a)(2) | 4 kilograms  100 liters | 5 YRS | 100,000 |
| (a)(3) | 10 kilograms 200 liters | 10 YRS | 250,000 |
| (a) (4) | 20 kilograms 400 liters | 15 YRS | 500,000 |
| (a) (5) | 40 kilograms | 20 YRS | 1,000,000 |
| (a) (6) | 80 kilograms | 25 YRS | 2,000,000 |

639

619

| Health and Safety | Offense | Term | Bail |
|---|---|---|---|
| 11379.7(a) | Manufacture of methamphetamine or PCP when children present | 2 YRS | 25,000 |
| 11379.7(b) | Manufacture of methamphetamine or PCP when children present and suffer GBI | 5 YRS | 100,000 |
| 11379.8 | Manufacture of controlled substances by weights and volumes | | |
| (a)(1) | 1 pound      3 gallons | 3 YRS | 25,000 |
| (a)(2) | 3 pounds     10 gallons | 5 YRS | 100,000 |
| (a)(3) | 10 pounds   25 gallons | 10 YRS | 250,000 |
| (a) (4) | 44 pounds  105 gallons | 15 YRS | 1,000,000 |
| 11380.1 (a)(1), (2), or (3) | Using minor for sale of PCP or LSD at certain locations; sale to minor | 1 YR 2 YRS 1 2 3 YRS | 25,000 |

620

621

1  T. ANDREW HUNTINGTON, Cal. Bar No. 187687
    General Counsel, Bay Area News Group
2  750 Ridder Park Drive
    San Jose, California 95190
3  Tel (408) 920-5790
    Fax (408) 920-1848
4  ahuntington@bayareanewsgroup.com

5  Attorneys for SAN JOSE MERCURY NEWS, LLC

**FILED**

FEB 0 9 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____ DEPUTY
Jaymi L. Salisbury

6

7      SUPERIOR COURT OF THE STATE OF CALIFORNIA

8        FOR THE COUNTY OF SANTA CLARA

9

10  PEOPLE OF THE STATE OF      Case No. C1223754
    CALIFORNIA,
11                 **PROOF OF SERVICE**

12          Plaintiff,

        v.
13

14  CRAIG RICHARD CHANDLER,

15          Defendant.

16

17      I am a resident of the State of California, over the age of eighteen years, and not a

18  party to the within action.  My business address is San Jose Mercury News, 750 Ridder

19  Park Drive, San Jose, California 95190.  On February 9, 2012, I served the within

    document(s):
20

21      **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

22      **IN SUPPORT OF MOTION TO UNSEAL FILING REPORT;**

23

24    ☐      by facsimile transmission at or about on that date.  This document

25    was transmitted by using a facsimile machine that complies with California

26    Rules of Court Rule 2003(3), telephone number 510.873.8656.  The

27    transmission was reported as complete and without error.  A copy of the

28    transmission report, properly issued by the transmitting machine, is

                                   622

1    attached.  The names and facsimile numbers of the person(s) served are as
2    set forth below.

3    ☒       by placing a true copy of the document(s) listed above for collection
4    and mailing following the company's ordinary business practice in a sealed
5    envelope with postage thereon fully prepaid for deposit in the United States
6    mail at San Jose, California addressed as set forth below.

7    ☐       by depositing a true copy of the same enclosed in a sealed envelope,
8    with delivery fees provided for, in a Federal Express pick up box or office
9    designated for overnight delivery, and addressed as set forth below.

10   ☐       by personally delivering a copy of the document(s) listed above to
11   the person(s) at the address(es) set forth below.

12

13   Santa Clara County, Office of the District     Steven Clark
     Attorney                                        The Law Offices of Steven Clark
14   190 West Hedding St.                            10 Almaden, Suite 1250
     San Jose, CA 95110                              San Jose, CA 95113
15   Attn:  Alison Filo
16                                                   Christopher E. Schumb
17                                                   The Law Offices of Christopher E.
                                                     Schumb
18                                                   10 Almaden, Suite 1250
                                                     San Jose, CA 95113
19

20       I served such envelope or package by placing a true copy of the document(s) listed
21   above for collection and mailing following the company's ordinary business practice in a
22   sealed envelope with postage thereon fully prepaid for deposit in the United States mail at
23   San Jose, California addressed as set forth below.

24       I declare under penalty of perjury under the laws of the State of California that the
25   above is true and correct.  Executed on February 9, 2012, at San Jose, California.

26

27                                               Dawn Kennedy
                                                 Dawn Kennedy
28
                                                                              623
                                   -2-
                                                              PROOF OF SERVICE

STEVEN CLARK, Bar No. 110351
THE LAW OFFICES OF STEVEN CLARK
10 Almaden, Suite 1250
San Jose, California  95113
(408) 271-3245

CHRISTOPHER E. SCHUMB, Bar No. 116828
THE LAW OFFICES OF CHRISTOPHER E. SCHUMB
10 Almaden, Suite 1250
San Jose, California  95113
(408) 271-3245

Attorneys for Defendant
CRAIG RICHARD CHANDLER



FILED

2012 FEB 10  P 12: 46

David H. Yamasaki, Clerk of the Superior Court
By_____

P. ABOGADO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| PEOPLE OF THE STATE OF CALIFORNIA | Case No. C1223754 |
|---|---|
| Plaintiff, | DEFENDANTS' REPLY BRIEF TO MOTION TO UNSEAL FILING REPORT |
| v. | Date: February 15, 2012 Time: 1:00 a.m. Department 30 The Honorable Phillip Pennypacker |
| CRAIG RICHARD CHANDLER, | |
| Defendant. | |

I.    STATEMENT OF FACTS

     Although defendant has argued and represented to the Court

that Judge Danner did not review the Filing Report at the

Arraignment Hearing on January 13, 2012, defense wants this point

to be undisputed, and thus files the Declaration of Christopher

Schumb with this Reply Brief.  This fact is undisputed in that at

the hearing on January 31, 2012, Deputy District Attorney Alison

Filo stated on the record that she agreed with defense counsels'

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA  95113
Telephone (408) 271-3245

Reply Brief                    -1-

624

1   representation that Judge Danner did not review the Filing Report

2   on January 13, 2012.

3   II.   LEGAL DISCUSSION

4   A.   THE FILING REPORT IS NOT A COURT RECORD

5       Defendant's main contention is that the Filing Report is not

6   a part of the Court File, because it is not file endorsed, and

7   thus no clerk ever placed it in the file.  And even if the it was

8   properly placed in the Court File, it should not have been

9   because the District Attorney's stated intent for submitting the

10  document is to counter a motion for bail, which has never been

11  sought by Defendant and the document itself fails to comply with

12  the requirements of a properly filed declaration.

13      In its brief, the San Jose Mercury News (SJMN) spends much

14  time in a rather facile fashion reviewing some of the case law

15  that has addresses the conflict between a defendant's Sixth

16  Amendment Right to a fair trial and the guarantees afforded by

17  the First Amendment for the public's right to know.  But this is

18  quite frankly a waste of time, because in California, the

19  precedent that controls is expressly made in the statute (Rules

20  of Court 2.550) to be <u>NBC Subsidiary Inc. v. Superior Court</u>

21  (1999) 20 Cal.4th 1178.  Rarely do statutes actually refer to the

22  case that inspired it, but in the case at bar we have it.

23      Defendant contends that the Filing Report is not a sealed

24  record, and thus is not subject to the strict scrutiny test

25  delineated in <u>NBC</u>.  The Filing Report is an irrelevant police

26  report that is properly classified as a putative part of

27  "discovery proceedings, motions, and materials that are not used

28

625

1    at trial or submitted to the court as a basis for adjudication"

2    which are not within Rules of Court 2.550, Advisory Committee

3    Comment.  In NBC, the court expressly excepts such documents from

4    the class of "records" that accessible to the public. Id. at

5    1208-1209, fn. 25. (citations omitted).

6        Alternatively, as Defendant argued earlier, the Filing

7    Report does give identifying information that some could easily

8    use to figure out the identity of the alleged victims, and this

9    is clear an over-riding interest identified by the Courts. Press

10   Enterprise v. Superior Court (1986) 478 U.S. 1, 9, fn. 2.  In

11   addition, since disclosure of the Filing Report is pre-trial

12   publicity that could taint a jury pool, the court should lean

13   more favorably towards the defendant then if in the case of post-

14   empanelment publicity Waller v. Georgia (1984) 467 U.S. 39, 47,

15   fn.6.

16   III. CONCLUSION

17       The "Filing Report" was never used to abjudicate the case,

18   is of dubious origin and since it bears no file stamp and does

19   not comply with the requirements of a properly filed pleading;

20   thus Defendant asserts is not subject the requirements of NBC.

21   The District Attorney can give it to the press it they think it

22   fit, but the Court should not be placed in the position of having

23   to taint an already muddied jury pool.

24                              Respectfully submitted,

25   Dated: February 10, 2012

26                              CHRISTOPHER E. SCHUMB
                                Attorney for Defendant

27

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-3245    Reply Brief        -3-

626

PROOF OF SERVICE

1

2

3      I, CHRISTOPHER SCHUMB, hereby declare and state:

4      I am over the age of eighteen years, employed in the county
   of Santa Clara, California, and not a party to the within action.
5  My business address is 10 Almaden Boulevard, Suite 1250, San
   Jose, CA 95113.

6
       On February 10, 2012, I served Defendant's Reply Brief and
7  the Declaration of Christopher Schumb, on:

9  Alison Filo Esq.
   Santa Clara County District Attorney
10 70 W. Hedding Street, West Wing
   San Jose, California  95110
11 (408) 294-6746

12
   T. Andrew Huntington Esq.
13 General Counsel, Bay Area News Group
   750 Ridder Park Drive
14 San Jose, California  95190
   (408) 920-1848

15

16
   [X ] (BY MAIL)  I placed each such sealed envelope, with postage
17       thereon fully prepaid for first-class, return receipt
         requested certified mail, for collection and mailing at San
18       Jose, California, following ordinary business practices.  I
         am readily familiar with the practice of CHRISTOPHER E.
19       SCHUMB for processing of correspondence, said practice being
         that in the ordinary course of business, correspondence is
20       deposited with the United States Postal Service the same day
         as it is placed for processing.

21
   [  ] (BY PERSONAL SERVICE)  I caused each documents to be
22       delivered by hand to the addressee(s) noted above.

23 [X ] (BY FACSIMILE)  I caused the said document to be transmitted
         by Facsimile machine to the number indicated after the
24       address(es) noted above.

25      I declare under penalty of perjury under the laws of the
   State of California that the foregoing is true and correct.
26 Executed at San Jose, California.

27 Date:  February 10, 2012

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA  95113
Telephone (408) 271-3245

Reply Brief            - 4 -

627

1  STEVEN CLARK, Bar No. 110351
   THE LAW OFFICES OF STEVEN CLARK
2  10 Almaden, Suite 1250
   San Jose, California  95113
3  (408) 271-3245

4  CHRISTOPHER E. SCHUMB, Bar No. 116828
   THE LAW OFFICES OF CHRISTOPHER E. SCHUMB
5  10 Almaden, Suite 1250
   San Jose, California  95113
6  (408) 271-3245

7  Attorneys for Defendant
   CRAIG RICHARD CHANDLER

8

9

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

12                     FOR THE COUNTY OF SANTA CLARA

13

14  PEOPLE OF THE STATE OF            Case No. C1223754
    CALIFORNIA
15                                    DECLARATION OF CHRISTOPHER
          Plaintiff,                  SCHUMB SUPPORTING REPLY BRIEF
16
          v.                          Date: February 15, 2012
17                                    Time: 9:00 a.m.
    CRAIG RICHARD CHANDLER,           Department 30
18                                    The Honorable Phillip
          Defendant.                  Pennypacker
19

20

I, CHRISTOPHER SCHUMB, declare:
21
          1.    I am an attorney licensed to practice law in the Courts
22
in California and attorney of record for Defendant in the above-
23
entitled action.
24
          2.    At the Arraignment in the above-entitled case held on
25
January 13, 2012, counsel approached the bench to discuss the
26
"Filing Report" with Judge Danner.  Judge Danner did not appear
27

28
                                                          628
CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA  95113
Telephone (408) 271-3245   Declaration of Schumb        -1-

FILED

2012 FEB 10 P 12: 47

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By_____
     P. ABOGADO

1  to be aware of the Filing Report until it was pointed-out to him

2  and he did not review it to my knowledge during that hearing.

3     3.   No bail motion was made by Defendant, and the bail

4  status remained as it was previously set.

5     4.   I am competent and willing to testify to the foregoing.

6     I declare under penalty of perjury under the laws of the

7  State of California that the foregoing is true and correct.

8  Executed at San Jose, California.

9  Dated:  February 10, 2012

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTOPHER SCHUMB
ATTORNEY AT LAW
10 Almaden Blvd., Ste. 1250
San Jose, CA 95113
Telephone (408) 271-3245

Declaration of Schumb          -2-

629

```
⌐1  SAN JOSE FAC                              CASE NO.    C1223754
    190 W. HEDDING ST.              TC: CEN            12001535
    SAN JOSE, CA 95110          DATE  02/15/2012 11:00 AM DEPT.  30
PEOPLE VS.  CRAIG RICHARD CHANDLER        10/25/1976 CAB3721090    CDY BK:Y
L.K.A.      1361 N SAN PEDRO ST       CLERK  L.BALLESTEROS          EBK966 M
            SAN JOSE, CA 95110        HEARING  DECISION
JUDGE   HON. PHILIP H. PENNYPACKER   DV:    AGENCY  SJ-04313-3415 -PIERCE
REPORTER L.SHINN                     CHILD:  STATUS  I-SET -NBA              TW
DEF. ATTY. SCHIMT,CHRISTOPH(G)   D.A. A-PND  APO
CHARGES  F(001)PC288(A)        F(002)PC288(A)           VIOLATION DATE
                                                        01/10/2012
```

NEXT APPEARANCE _____ 3-2-12 @ 9:30 D 23

☑Defendant Present ☐ Not Present      ☑Atty Present  AR 1 STEVEN    CLARK        ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☑ Plea ☐ IDC ☐ PTC ☐ Prob / Sent  ☐ Interpreter _____  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv      ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited  Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐☑ TW ☐ TW / WD ☐ TW Sentence      ☐ Refd____    ☐ $_____ Costs Within 30 Days to Court
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl    ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't  ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐_____ Relieved_____ Appt'd  ☐ Cite-Proc.Even Forfein ____  ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
☑Hrg on Motion  SEALING OF MINUTES  ☐ Pursuant PC 1368  ☐ No Cite Release/SCT ☐ No Request ☐ Cash Only
☑ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found ____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed ____  ☐ Max Term ____ ☐ Committed ____  ☑ Proof of  argument by
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to  counsel, as reflected
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed  into the record.
PLEA CONDITIONS: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
☐ Jail / Prison Term of  DOCUMENT NOT TO BE  ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ____  RET'D TO DDA  ☐ Subm time of Sent ☐ Harvey Stip
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14807.8/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $____ ☐ Guilty Plea/ Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt  FINES/FEES: PAY TO ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY  Audit #____
☐ Sent Suspended____      ☐ PROBATION DENIED      COUNT____ $____ + PA $____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT____ $____ + PA $____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for____ Days / Mos / Yrs  AIDS / CPP $____ + PA $____ ☐ SORP____
☐ Report to APO within____:____Days ☐ Terminated ☐ Upon Release  DPF $____ + PA $____ ☐ EMAT $____
☐ Perform____Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB $____ + PA $____
☐ Not drive w/o valid DL & Ins ☐ PC VC23600 ☐ HTO ☐ Re-refer  DRF / RF $____ ☐ Add'l WFT PC1202.44/☐ 'Susp'd PC1202.44/☐
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within____days  AEF $____ ☐ Original Fine $____
☐ DL Susp/ Restr'd/ Rvk'd for____ Yrs ☐ IID Not Ordered/ Rmv'd Term____ Yrs  SECA $____ ☐ CTS-PC2900.5 $____
☐ No contact with victim / co-defts unless appr by APO ☐ PC1202.05  ICMF $____ ☐ TOTAL DUE $____
☐ DVPO issued / mod /term'd Exp____  ☐ Victim Present  ICIN $____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR____ $____ ☐/ Mo beginning____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon____  SHELTER $____ ☐ FINE STAYED
☐ Stay away from____  DV $____ ☐ Committed @ $____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $____ ☐ Consec/Conc to____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $____ ☐ P/SUP $____ ☐ Waived
VOP: ☐ Wav ☐ Arr'd ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to____
☐ Original Terms & Conditions Except as Amended herein  ☐ Restitution ☐ General $____ to____
☐ Co-terminous with____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
SEALED  DOCUMENT ORDERED  TIL FURTHER NOTICE

JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                County Jail
Count  F/M      Violation      Prison Term / Yrs   Enhancement / Priors    Yrs / Styd / Strkn  HRS / DAYS / MOS
GJ  MERCURY NEWS  BY A. HUNTINGTON

Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Total

CTS =____ACT +____ ☐ PC4019 ☐ ⅓ ☐ ⅓ ☐ PC2933.1 =____ — TOTAL DAYS  TOTAL TERM____
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec____All / Except ☐ EMP/PSP/ERP/DRP/CQ Parole/NR____
☐ Sent Deemed Served ☐ Rpt to Parole w/in____ ☐ Adv____ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to____  630
☐ Bal CJ Susp ☐ All but____Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU____
☐ Pre-process____  ☐ AM/PM ☐ Stay / Surrender / Transport to____@____AM/PM or Sooner
☐ REMANDED-BAIL $____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REQ BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED
DISTRIBUTION: ORIGINAL - FILE  GREEN - DOC  BLUE - CJIC / DOC  PURPLE - PROBATION  BROWN - DEFENDANT

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

HALL OF JUSTICE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | 3/1/12 |
| Plaintiff, | **FIRST AMENDED** FELONY COMPLAINT CASE SUMMARY |
| vs. | DOCKET NO. C1223754 |
| CRAIG RICHARD CHANDLER (10/25/1976), 1K 1361 N. SAN PEDRO STREET, SAN JOSE, CA 95110 | DA NO:  120100927 |
| | CEN |
| Defendant(s). | 12001535  CRC  HELD  3/2/2012 |

**PROTECTIVE ORDER**

C A S E   S U M M A R Y

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| 2 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| 3 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| 4 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| 5 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |

P.C. 1048
PRIORITY

631

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
HALL OF JUSTICE

**FILED**

MAR 0 2 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                        Plaintiff,

3/1/12

**FIRST AMENDED**
FELONY COMPLAINT

vs.

CRAIG RICHARD CHANDLER (10/25/1976), 1K
1361 N. SAN PEDRO STREET, SAN JOSE, CA 95110

                                        Defendant(s).

DOCKET NO. C1223754

DA NO:  120100927
    CEN
12001535  CRC  HELD 3/2/2012

**PROTECTIVE ORDER**

The undersigned is informed and believes that:

### COUNT 1

On or about and between December 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 1, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

**P.C. 1048
PRIORITY**

### COUNT 2

On or about and between October 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in 632

violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 2, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 3, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 4

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD      633

CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 4, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 5

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 5, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

634

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

Further, attached and incorporated by reference are official reports and documents of a law enforcement agency which the complainant believes establish probable cause for the pretrial restraint of defendant CRAIG RICHARD CHANDLER, for the above-listed crimes.

Complainant therefore requests that the defendant(s) be dealt with according to law.

I certify under penalty of perjury that the above is true and correct.

Executed on March 1, 2012, in SANTA CLARA County, California.

Pierce 3415
(Pierce 3415)
SJPD (408) 277-4102  120090244 S
FILO/ D467/ FELONY/ EG

635

```
L10   SAN JOSE FAC                              CASE NO.      C1223754
      190 W. HEDDING STR.              ..C..    CEN           12001535
      SAN JOSE, CA 95110         DATE   03/02/2012  9:30 A DEPT. 23
PEOPLE VS.  CRAIG RICHARD CHANDLER         10/25/1976 CAB3721090   CDY BK:Y
L.K.A.      1361 N SAN PEDRO ST     CLERK  L. PADILLA/S.NEWMAN    EBK966 M
            SAN JOSE, CA 95110      HEARING  PLEA
JUDGE  HON. JEROME S. NADLER        DV:  AGENCY  SJ-04313-3415 -PIERCE
REPORTER G. YETT                    CHILD:  STATUS   I-SET -NBA         TW  Y
DEF. ATTY. SCHMITZ CHRISTOPH(G)     D.A.  N. DUFFY  Filo    APO
CHARGES  F(001)PC288(A)       16    F(002)PC288(A)            VIOLATION DATE
                             3-28-12    930 D23              01/10/2012
```

NEXT APPEARANCE _____

☑ Defendant Present ☐ Not Present        ☑ Atty Present  Ale + Steven Clark  ☐ PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☑ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Ball / OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Ball Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Ball Exonerated ☐ Forfeited    Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refused ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Ball Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Refd_____                        ☐ _____ Costs Within 30 Days to Court
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ LO ☐ Relieved _____ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ BW Ordered ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____ ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed _____ ☐ Max Term _____ ☐ Committed _____ ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / GGM Amended to _____ Complaint Filed. See
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____  Complaint
PLEA CONDITIONS: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____                                   ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____                                    ☐ Subm time of Sent ☐ Harvey Stip
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.8/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Witnesses ☐ Subpena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt    FINES/FEES: PAY TO ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY Audit #_____
☐ Sent Suspended _____              ☐ PROBATION DENIED     COUNT___$_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT___$_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  AIDS / CPP $_____ + PA $_____ ☐ SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF       $_____ + PA $_____ ☐ EMAT $_____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB   $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF /RF   $_____ Add'l RF $_____ Susp'd PC1202.44/c
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF       $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA  $_____ CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF  $_____ TOTAL DUE  $_____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present  ICIN  $_____ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR  $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____ SHELTER $_____ FINE STAYED _____
☐ Stay away from _____                             DV $_____ ☐ Committed @ $____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $_____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$&CPF$10$_____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $_____ ☐ P/SUP $_____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Addt'l Fees Waived.
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____
☐ Original Terms & Conditions Except as Amended herein  ☐ Restitution ☐ General $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                           County Jail
Count  F/M      Violation        Prison Term / Yrs      Enhancement / Priors      Yrs / Styd / Strkn   HRS / DAYS / MOS

| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Total

CTS _____ ACT + _____ ☐ PC4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 = _____ — TOTAL DAYS  TOTAL TERM _____
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP   636
☐ Sent Deemed Served ☐ Rpt to Parole w/in _____ ☐ Adv _____ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☐ REMANDED-BAIL $_____ ☐ COMMITTED ☐ RELEASED ☐ OR ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ REMAIN AS SET ☐ NO BAIL ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION - ORIGINAL - FILE   GREEN - DOC   BLUE - C JIC / DOR   PURPLE - PROBATION   BROWN - DEFENDANT

```
└6  SAN JOSE FAC                              C.        CASE NO.    C1223754
    190 W. HEDDING ST.                        C:_  CEN              12001535
    SAN JOSE, CA 95110           DATE    03/16/2012  9:30 A.DEPT. 23,
PEOPLE VS.  CRAIG RICHARD CHANDLER            10/25/1976 CAB3721090    CDY BK:Y
L.K.A.      1361 N SAN PEDRO ST      CLERK   S. NEWMAN/L. PADILLA EBK966 M
            SAN JOSE, CA 95110       HEARING PLEA
JUDGE   HON. JEROME S. NADLER        DV: AGENCY  SJ-04313-      -UNKNOWN
REPORTER  T. DICKINSON A. Gooding    CHILD:  STATUS  I-SET -NBA        TW  Y
DEF. ATTY. SCHUMB,CHRISTOPH(G)       A.M. BUFFY F,lo  APO
CHARGES  F(001)PC288(A)              F(002)PC288(A)         VIOLATION DATE
         F(003)PC288(A)              F(004)PC288(A)         09/01/2010
         F(005)PC288(A)
```

PLEA Conditions, PROBATION, FINES/FEES, JAIL/PRISON and other sections contain numerous printed checkbox fields with handwritten annotations including "5-21-12  845  D24", "1 Spar Int", "CTS = ... 637".

```
      2   SAN JOSE FAC                              CASE NO.        C1223754
          190 W. HEDDING ST.                   TC : CEN            12001535
          SAN JOSE, CA 95110          DATE    05/21/2012  8:45  DEPT.   24
PEOPLE VS.  CRAIG RICHARD CHANDLER       10/25/1976  CAB3721090    CDY BK:Y
L.K.A.      1361 N SAN PEDRO ST          CLERK    A. MAVRAKAKIS      EBK966 M
            SAN JOSE, CA 95110           HEARING  PRELIMINARY EXAMINATION
JUDGE     HON. RISE J. PICHON       DV: AGENCY   SJ-04313-    -UNKNOWN
REPORTER  L. GARISH                 CHILD: STATUS  I-SET -NBA          TW   Y
DEF. ATTY. SCHUMB,CHRISTOPH(G)      D.A. R. MENDOZA       APO
CHARGES   F(001)PC288(A)                 F(002)PC288(A)        VIOLATION DATE
          F(003)PC288(A)                 F(004)PC288(A)
          F(005)PC288(A)
```

NEXT APPEARANCE

PLEA CONDITIONS:

PROBATION

JAIL/PRISON

Witnesses not present

©2007, Moore Wallace. All rights reserved. - 0667

_____ RT OF CALIFORNIA, COUNTY OF SANTA CLARA
_____ *Hall of Justice* _____ Courthouse

_____ ARY EXAMINATION MINUTES, COMMITMENT, CERTIFICATION, ARRAIGNMENT

People of the State of California                          Case No. *C1223754*
Vs.                                                        CEN: *12001535*
                                                           Custody Status: *I-Set-NBA*
*Craig Richard Chandler*                                   Date: *21 May 2012*
Defendant                                                  Judge: *M. McKay McLoy*
Interpreter _____                                        Reporter: *S.D. Neboton*
Deputy District Attorney *Alison Filo*                     Clerk: *M. Avalos*
Defense Attorney *C. Schumb & S. Clark* _____            AD/PD/Legal Aid

☑ Motion to exclude/admonish witness(es) granted.   Interpreter for Witness *T. Zambetti - Vietnamese*
MDA/COM Amended to _____

Preliminary Examination Held - Witnesses Sworn and Testified:

*Jane Doe 2*          *Lusiana Villarreal* _____
*Kim Bich Thu (To)* _____
*Jane Doe 1* _____

People's Exhibits: marked/admitted                   Defense Exhibits: marked/admitted
1. *Photo: Classroom Interior*    ☑☐        A. *Poster of People's Exh. #1*    ☑☐
2. _____                        ☐☐        B. _____                         ☐☐
3. _____                        ☐☐        C. _____                         ☐☐
4. _____                        ☐☐        D. _____                         ☐☐
5. _____                        ☐☐        E. *5/22/12 @ 900    D53*          ☐☐

☑ Waives right to continuous Preliminary Examination. Continued to _*5/22/12 @ 900    D53*_

☐ HELD TO ANSWER: It appearing to me from the testimony this day given before me on the preliminary examination of the above-named defendant, that the offense of a violation of section(s): _____
_____
_____

has been committed and that there is sufficient cause to believe the above-named defendant guilty thereof. I order that he/she be held to answer to same. ☐ Arming allegation(s) found true / not true. ☐ Enhancements found true / not true.
☐ Misdemeanor violation(s) certified to general jurisdiction _____

☐ HOLDING DENIED as to _____

☐ DEFENDANT ORDERED TO APPEAR FOR ARRAIGNMENT _____ AM/PM  Dept _____

☐ Counsel stipulate Complaint be deemed Information  ☐ Counsel enters special appearance  ☐ Counsel Do Not stip to Complaint as Information
☐ Arr/Adv  ☐ Arr Wvd  ☐ Defendant pleads not guilty.  ☐ TW 60  ☐ TNW  . ☐ Exhibits released
Last day to file motions _____ Last day to hear motions _____

☐ DEFENDANT ORDERED TO APPEAR FOR MTC _____ AM/PM  Dept _____
☐ IDC  ☐ Referred for SORP  Hearing set for Wednesday _____ AM/PM  Dept _____

☑ REMANDED to custody of DOC until next appearance.  Ball $. *RAS*
                                                     ☐ BAIL INCREASED/REDUCED
☐ RELEASED  ☐ O/R  ☐ SORP

I certify that the foregoing is a true and correct record of the proceedings had before me this date in said case.

DATE *21 May 2012* _____                    _____ *(signature)*
                                              JUDGE OF THE SUPERIOR COURT
I certify the foregoing is a true copy of the Judgment/Order
rendered on the above date by the above-named Judge.      _____ *(signature)*
                                              Clerk of the above-named Court
                                                                        639
TO THE DOC: The foregoing certified copy of Judgment/Order in the above-entitled action is your authority for the execution thereof.

7685 REV. 7/07    Distribution: BLACK-FILE, GREEN-JAIL, BLUE-CJIC, PURPLE-DA, BROWN-DEFENDANT
                                                                        FILE

8710015693 ©2007, Moore Wallace. All rights reserved. - 0667

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
*Hall of Justice* Courthouse

### PRELIMINARY EXAMINATION MINUTES, COMMITMENT, CERTIFICATION, ARRAIGNMENT

The People of the State of California

Vs.

*Craig Richard Chandler*
Defendant

Interpreter _____

Deputy District Attorney *Alison Filo*

Defense Attorney *C. Schumb & Steve Clark* AD/PD/Legal Aid

Case No. *C1223754*
CEN: *12001535*
Custody Status: *I-Set-NBA*
Date: *22 May 2012*
Judge: *M. McKay McCoy*
Reporter: *D. Nebolon*
Clerk: *M. Avalos*

☐ Motion to exclude/admonish witness(es) granted.   Interpreter for Witness _____

MDA/COM Amended to _____

**Preliminary Examination Held - Witnesses Sworn and Testified:**

*Lusiana Villarreal (cont'd)*   *Lyn Bijayendran (was*
*Jane Doe 3*   *Jane Doe 5*   *called but did not*
*Jane Doe 4*   *Lea Peery*   *testify)*

| People's Exhibits: marked/admitted | | | Defense Exhibits: marked/admitted | | |
|---|---|---|---|---|---|
| 1. | ☐ | ☑ | A. | ☐ | ☑ |
| 2. *Withdrawn by H* | ☐ | ☐ | B. *Poster of Classroom Interior* | ☑ | ☑ |
| 3. *Drawing of "the Thing" by J.Doe 5* | ☑ | ☑ | C. | ☐ | ☐ |
| 4. | ☐ | ☐ | D. | ☐ | ☐ |
| 5. | ☐ | ☐ | E. *5/23/12 @ 900 D53* | ☐ | ☐ |

☑ Waives right to continuous Preliminary Examination. Continued to *5/23/12 @ 900 D53*

☐ HELD TO ANSWER: It appearing to me from the testimony this day given before me on the preliminary examination of the above-named defendant, that the offense of a violation of section(s): _____

has been committed and that there is sufficient cause to believe the above-named defendant guilty thereof. I order that he/she be held to answer to same. ☐ Arming allegation(s) found true / not true. ☐ Enhancements found true / not true.
☐ Misdemeanor violation(s) certified to general jurisdiction _____

☐ HOLDING DENIED as to _____

☐ DEFENDANT ORDERED TO APPEAR FOR ARRAIGNMENT _____ AM/PM Dept _____

☐ Counsel stipulate Complaint be deemed Information ☐ Counsel enters special appearance ☐ Counsel Do Not stip to Complaint as Information
☐ Arr/Adv ☐ Arr Wvd ☐ Defendant pleads not guilty. ☐ TW 60 ☐ TNW ☐ Exhibits released

Last day to file motions _____ Last day to hear motions _____

☐ DEFENDANT ORDERED TO APPEAR FOR MTC _____ AM/PM Dept _____
☐ IDC ☐ Referred for SORP Hearing set for Wednesday _____ AM/PM Dept _____

☑ REMANDED to custody of DOC until next appearance. Bail $ *PAS*
☐ BAIL INCREASED/REDUCED
☐ RELEASED ☐ O/R ☐ SORP

I certify that the foregoing is a true and correct record of the proceedings had before me this date in said case.

DATE *22 May 2012*    _____ JUDGE OF THE SUPERIOR COURT

I certify the foregoing is a true copy of the Judgment/Order
rendered on the above date by the above-named Judge.    _____ Clerk of the above-named Court    640

TO THE DOC: The foregoing certified copy of Judgment/Order in the above-entitled action is your authority for the execution thereof.

7685 REV. 7/07    Distribution: BLACK-FILE, GREEN-JAIL, BLUE-CJIC, PURPLE-DA, BROWN-DEFENDANT    FILE

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

## _Hall of Justice_ Courthouse

### PRELIMINARY EXAMINATION MINUTES, COMMITMENT, CERTIFICATION, ARRAIGNMENT

The People of the State of California

Vs.

_Craig Richard Chandler_
Defendant

Interpreter _____

Deputy District Attorney _Alison Filo_

Defense Attorney _C. Schumb & S. Clark_ AD/PD/Legal Aid

Case No. _C1223754_
CEN: _12001635_
Custody Status: _T-Set-NBA_
Date: _23 May 2012_
Judge: _M. McKay McCoy_
Reporter: _D. Nebelon_
Clerk: _M. Avalos_

☐ Motion to exclude/admonish witness(es) granted.     Interpreter for Witness _____

MDA/COM Amended to _____

Preliminary Examination Held - Witnesses Sworn and Testified:

_Jane Doe 5 (Cont'd)_          _STRD Ofcr. Sean Pierce_
_STRD Ofcr. Russell Sauhon_    _____
_Kristen Cardoza_              _____

| | People's Exhibits: marked/admitted | | | | Defense Exhibits: marked/admitted | | |
|---|---|---|---|---|---|---|---|
| 1. | _____ | ☐ | ☐ | A. | _____ | ☐ | ☐ |
| 2. | _____ | ☐ | ☐ | B. | _____ | ☐ | ☐ |
| 3. | _____ | ☒ | ☐ | C. | _Photo: Classroom Interior_ | ☒ | ☒ |
| 4. | _DNA Report_ | ☑ | ☑ | D. | _CV of Criminalist Cardoza_ | ☑ | ☑ |
| 5. | _____ | ☐ | ☐ | E. | _____ | ☐ | ☐ |

☐ Waives right to continuous Preliminary Examination.  Continued to _____

☑ HELD TO ANSWER: It appearing to me from the testimony this day given before me on the preliminary examination of the above-named defendant, that the offense of a violation of section(s): _F(001) PC288(A) : F(002) PC288(A) F(003) PC288(A) ; F(004) PC288(A) ; F(005) PC288(A)_

has been committed and that there is sufficient cause to believe the above-named defendant guilty thereof. I order that he/she be held to answer to same. ☑ Arming allegation(s) found true / not true. ☐ Enhancements found true / not true.

☐ Misdemeanor violation(s) certified to general jurisdiction.

☐ HOLDING DENIED as to _____

☑ DEFENDANT ORDERED TO APPEAR FOR ARRAIGNMENT ___6/4/12_____ _130_ AM/PM Dept _24_

☐ Counsel stipulate Complaint be deemed Information ☐ Counsel enters special appearance ☐ Counsel Do Not stip to Complaint as Information

☐ Arr/Adv ☐ Arr Wvd ☐ Defendant pleads not guilty. ☐ TW 60 ☐ TNW ☑ Exhibits released

Last day to file motions _____     Last day to hear motions _____

☐ DEFENDANT ORDERED TO APPEAR FOR MTC _____ ____ AM/PM Dept ____

☐ IDC ☐ Referred for SORP  Hearing set for Wednesday _____ ____ AM/PM Dept ____

☑ REMANDED to custody of DOC until next appearance.  Bail $ _PAS_
☐ RELEASED ☐ O/R ☐ SORP          ☐ BAIL INCREASED/REDUCED

I certify that the foregoing is a true and correct record of the proceedings had before me this date in said case.

DATE _23 May 2012_

I certify the foregoing is a true copy of the Judgment/Order
rendered on the above date by the above-named Judge.

JUDGE OF THE SUPERIOR COURT

Clerk of the above-named Court.                   641

TO THE DOC: The foregoing certified copy of Judgment/Order in the above-entitled action is your authority for the execution thereof.

7885 REV. 7/07     Distribution: BLACK-FILE, GREEN-JAIL, BLUE-CJIC, PURPLE-DA, BROWN-DEFENDANT               FILE

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

CRAIG RICHARD CHANDLER (10/25/1976), 1K
1361 NORTH SAN PEDRO STREET, SAN JOSE, CA 95110

Defendant.

May 30, 2012

DA NO 120100927
CEN
12001535 CRC HELD 06/04/2012

INFORMATION NO.  C1223754

**F I L E D**

MAY 3 1 2012

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY _____ DEPUTY

### INFORMATION SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 2 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 3 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 4 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 5 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |

642

The District Attorney of the County of Santa Clara, by this Information alleges that:

### COUNT 1

On or about and between December 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 1, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

### COUNT 2

On or about and between October 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 2, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

643

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

### COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 3, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

644

**COUNT 4**

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 4, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

**COUNT 5**

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe 5, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

645

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

### REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048
The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

Pursuant to Penal Code Section 1054 through 1054.7, inclusive, the People request that, within 15 days, the defendant and/or his/her attorney disclose:  (A) The names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of any physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer as evidence at the trial.  (B) Any real evidence which the defendant intends to offer in evidence at the trial.  This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

Jeffrey F. Rosen
District Attorney

By _____
Alison M. Filo
Deputy District Attorney

647

L11 SUPERIOR COURT
190 W. HEDDING ST
SAN JOSE, CA 95110

CASE NO. C1223754
TC: CEN 12001535

PEOPLE VS. CRAIG RICHARD CHANDLER
DATE 06/04/2012 1:30 DEPT. 24
L.K.A. 1361 N SAN PEDRO ST — TN
10/25/1976 CAB3721090 CDY BK:Y
SAN JOSE, CA 95110
CLERK A. MAVRAKAKIS EBK966 M
HEARING INFORMATION
JUDGE HON. RISE J. PICHON
DV: AGENCY SJ-04313- -UNKNOWN
REPORTER S. UPTON
CHILD: STATUS I-SET -NBA TW
DEF. ATTY. SCHUMB, CHRISTOPH(G)
D.A. R. MENDOZA
APO
CHARGES F(001)PC288(A) F(002)PC288(A)
F(003)PC288(A) F(004)PC288(A)
F(005)PC288(A)
VIOLATION DATE 09/01/2010

6/13/12 130 D24 8/6/12 830 D24

NEXT APPEARANCE

☑ Defendant Present ☐ Not Present S/C ☑ Atty Present AR - Madden, Brian AD/PD/IDO/ Special App
☐ Arr'd ☐ Adv ☑ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter ☑ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated Gen'l
☑ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☑ S/B MTC ☐ Bail Exonerated ☐ Forfeited Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☑ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Hear App
☑ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☑ Ref'd Pre-trial ☐ $ Costs Within 30 Days to Court
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ______ Relieved ______ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ BW Ordered $______ ☐ Stayed ☐ To Issue
☐ Hrg on Motion ______ ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found ______ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed ______ ☐ Max Term ______ ☐ Committed ______ ☐ Proof of ______
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to ______
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed PC 1048
**PLEA Conditions:** ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP ______
☐ Jail / Prison Term of ______ ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ______ ☐ Subm time of Sent ☐ Harvey Stip ______
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.8/PC666
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ **GUILTY** ☐ **NOLO CONTENDERE** to charges & admits enhancements / allegations / priors ☐ **PC17** ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term Fee $______ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt **FINES/FEES: PAY TO** ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY Audit # ______
☐ Sent Suspended ______ ☐ **PROBATION DENIED** COUNT ____ $______ + PA $______ ☐ Purs HS11350d
**PROBATION** ☐ Execution ☐ Imposition of sentence suspended for probation period COUNT ____ $______ + PA $______ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ______ Days / Mos / Yrs AIDS / CPP $______ + PA $______ SORP ______
☐ Report to APO within ______ Days ☐ Terminated ☐ Upon Release DPF $______ + PA $______ EMAT $______
☐ Perform ______ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail LAB $______ + PA $______
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer DRF /RF $______ Add'l RF $______ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos Enroll within ______ days AEF $______ Original Fine $______
☐ DL Susp/ Restr'd/ Rvk'd for ______ ☐ IID Not/Ordered/ Rmv'd Term ______ Yrs SECA/COPA $______ **CTS PC2900.5** $______
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05 ICMF $______ **TOTAL DUE** $______
☐ DVPO issued / mod /term'd Exp ______ ☐ Victim Present ICIN $______ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed AR $______ $______ / Mo beginning ______
☐ Not own/possess deadly weapons ☐ Destroy/return weapon ______ SHELTER $______ FINE STAYED ______
☐ Stay away from ______ DV $______ Committed @ $______ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold ATTY $______ Consec/Conc to ______
☐ Substance Abuse; Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ASF$25/CPF$10 $______ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education P/INVEST $______ ☐ P/SUP $______ /Mo ☐ Waived
**VOP:** ☐ Wav ☐ Arr'd ______ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP CJAF $129.75/$259.50 $______ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ______ ☐ Restitution ☐ General $______ to ______
☐ Original Terms & Conditions Except as Amended herein ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
☐ Co-terminous with ______ ☐ No Further Penalties / Reviews
Other: ______

**JAIL/PRISON** ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | County Jail HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = ______ ACT + ______ ☐ PC4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 = ______ TOTAL DAYS TOTAL TERM ______
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ______ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ______
☐ Sent Deemed Served ☐ Rpt to Parole w/in ______ ☐ Adv ______ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to ______ 648
☐ Bal CJ Susp ☐ All but ______ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ______
☐ Pre-process ______ AM/PM ☐ **Stay / Surrender / Transport to** ______ @ ______ AM/PM or Sooner
☑ REMANDED-BAIL $______ ☐ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# EXHIBIT 1
# (Vol. 4)

COURT OF APPEAL, STATE OF CALIFORNIA,
IN AND FOR THE SIXTH APPELLATE DISTRICT

THE PEOPLE,

PLAINTIFF AND
RESPONDENT,

V.

COURT OF APPEAL NO.: **H040429**

CRAIG RICHARD CHANDLER

VOL. <u>4</u> of <u>7</u>

PAGES <u>649</u> thru <u>866</u>

DEFENDANT AND
APPELLANT.

# **CLERK'S TRANSCRIPT**

CLERK'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT OF THE
STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SANTA CLARA.

SUPERIOR COURT NUMBER: <u>**C1223754**</u>

HONORABLE _____ **ARTHUR BOCANEGRA** _____, JUDGE

APPEARANCES:

**ATTORNEY GENERAL**
**455 GOLDEN GATE AVENUE**
**ROOM 11000**
**SAN FRANCISCO, CA 94102**

COUNSEL FOR PLAINTIFF
AND RESPONDENT

SIXTH DISTRICT APPELLATE PROGRAM
100 NORTH WINCHESTER BLVD, SUITE 310
SANTA CLARA, CA 95050

COUNSEL FOR DEFENDANT
AND APPELLANT

NOTICE OF APPEAL FILED _____ November 22, 2013 _____

NOTICE OF COMPLETION _____ JAN 2 9 2014 _____

5

BRIAN MADDEN, SB# 55869
MADDEN & REDDING
1625 The Alameda, Suite 801
San Jose, California  95126
Telephone: (408) 275-8100
Facsimile: (408) 275-8199

Attorney for CRAIG RICHARD CHANDLER



FILED



2012 JUN 11 P 3:49

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____ Aleman, Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff<br><br>v.<br><br>CRAIG RICHARD CHANDLER,<br><br>Defendant. | Case No. C1223754<br><br>NOTICE OF MOTION AND MOTION TO SET BAIL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN MADDEN<br><br>Date:  6/13/12<br>Time:  1:30 p.m.<br>Dept:  24 |

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 801
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

    To the District Attorney, County of Santa Clara, and Allison

Filo, Deputy District Attorney:

    NOTICE IS GIVEN that, on June 13, 2012 at 1:30 p.m., or as

soon thereafter as the matter may be heard in Department 24 of

the above-entitled court, defendant CRAIG RICHARD CHANDLER will

move for an order admitting defendant to bail.  The motion will

be made on the grounds that the defendant is entitled to bail as

a matter of right, there is no substantial likelihood that the

Defendant's release would result in great bodily harm to another

person, and there is no substantial likelihood that Defendant is

a flight risk or would not appear for all court appearances.

    The motion will be based on this notice of motion, on the

649

1 memorandum of points and authorities served and filed herewith,

2 on the attached declaration of Brian Madden, on the records and

3 file in this action, and on such evidence as may be presented at

4 the hearing on the motion.

5 Dated: June 11, 2012

6 

7 BRIAN MADDEN,
Attorney for Defendant

8

9 MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING THE SETTING OF BAIL

10 FACTS

11    Defendant is charged with five (5) counts of non-forcible

12 lewd conduct with a child under 14 in violation of Penal Code

13 §288(a).   There are five complaining witnesses.   Each count

14 contains a multiple victim allegation under Penal Code §667.61(b)

15 and (e).   The five complaining witnesses were students of the

16 defendant at a San Jose Elementary School, and all of the acts of

17 sexual misconduct are alleged to have occurred in Defendant's

18 classroom during normal school hours.   Defendant is on mandatory

19 leave of absence without pay from his school district, and his

20 teaching credential has been suspended.   The bail schedule for

21 his offenses is "no bail".   No bail has been set.

22 BAIL IS A MATTER OF RIGHT IN ALL
CASES OTHER THAN CAPITAL CASES

23    A defendant charged with a capital offense cannot be

24 admitted to bail.   Penal Code §1270.5.   A defendant charged with

25 any other offense "may be admitted to bail before conviction as a

26 matter of right."   Penal Code §1271.

27

28

650

NOTICE OF MOTION AND MOTION TO SET BAIL                    Page 2

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 601
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

**DEFENDANT IS ENTITLED TO A BAIL HEARING**

A defendant charged with a violent felony is entitled to a bail hearing. Penal Code §1270.1(a)(1). At the hearing the court shall consider evidence of past court appearances, the maximum potential sentence, the danger the defendant may pose to other persons if he is released, his ties to the community, and his ability to post bail. Penal Code §1270.1(c).

**BAIL HEARING ISSUES**

A. <u>Statutory Issues</u>

1. <u>Past court appearances</u>. In 1996 in Monterey County Defendant was convicted of a felony violation of Attempted Burglary. He received a three year probationary sentence and a 30 day suspended jail sentence. He made all required court appearances and successfully completed his probation. In 2002 the court reduced the conviction to a misdemeanor and cleared his record pursuant to Penal Code §1203.4. He has no other criminal record.

2. <u>Maximum potential sentence</u>. The maximum aggregate sentence on all five counts is 75 years to life. The minimum sentence is 15 years to life.

3. <u>The danger the defendant may pose to other persons if released</u>. All the alleged sexual misconduct is alleged to have occurred during school hours in Defendant's classroom. As a result of his arrest, Defendant has been placed on mandatory leave of absence without pay, and his teaching credential has been suspended. Clearly, as Defendant is no longer employed as a teacher, none of the complaining witnesses is in any danger.

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 801
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

651

1   Following the Defendant's arrest his computers, phones and
2   electronic devices were seized pursuant to a search warrant and
3   the seized evidence was subjected to a forensic search.
4   Moreover, his home and vehicle were searched.   The searches have
5   not resulted in the discovery of any child pornography, or any
6   other material demonstrating a sexual interest in children.   The
7   total absence of the aforementioned material is consistent with
8   the Defendant not posing a danger to other children.

9       4.   Defendant's ties to the community.   The Defendant has
10  extensive ties to the community.   He is married to Marina
11  Chandler who is employed as an elementary school teacher in San
12  Jose.   The Chandlers have three very young children, a son, age
13  4, and two daughters, ages 2 and 3 months.   The Chandlers own a
14  home which is located less than one mile from this Courthouse and
15  more than five miles from the school where the alleged incidents
16  occurred.

17      The Defendant was born and raised in Monterey.   Defendant
18  and his wife met in college at California State University
19  Monterey Bay.   After graduating from CSUMB, Defendant and his
20  wife attended UC Davis where they earned teaching credentials in
21  2002.   The Chandlers have been employed as elementary school
22  teachers in San Jose since 2003; however, they have always worked
23  at different schools.

24      5.   Ability to post bail.   Defendant has the ability to
25  post substantial bail.

26  B.   Additional Factors

27      1.   Since his arrest, Defendant has been a model inmate.

28

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 801
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

652

For the last two and one-half months Defendant has helped an outside teacher teach math, language arts, writing, science and social studies to inmates at Elmwood.   He teaches five days a week from 1:00 p.m. to 3:30 p.m.

2.   Defendant's passport is in the possession of his attorney who has been authorized to surrender it to the Court should bail be set.

3.   Finally, Defendant is willing to pay for electronic monitoring with a radio frequency tether or GPS for home detention should the Court order EMP as a condition of his release.

Dated: June 11, 2012

BRIAN MADDEN,
Attorney for Defendant

### DECLARATION OF BRIAN MADDEN

1.   I am Defendant's attorney in this matter.

2.   I have reviewed the Defendant's rap sheet which reveals his only prior criminal conviction was for attempted burglary in Monterey, California in 1996.   Defendant has no other criminal record.   Moreover, in 2002 the felony conviction was reduced to a misdemeanor pursuant to Penal Code §17 and his record was cleared pursuant to Penal Code §1203.4.

3.   I am in possession of a January 13, 2012 letter from Defendant's school district advising Defendant he is on mandatory leave of absence from the school district and his teaching credential is suspended.

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 801
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

653

4.   I have reviewed the police report and confirmed all of the alleged sexual misconduct occurred in Defendant's classroom during normal school hours.

5.   I have reviewed the police report and confirmed that the searches of Defendant's seized computers, phones and electronic devices did not reveal any material indicative of sexual interest in children.

6.   I have communicated with Lee Smith of LCA, a private electronic monitoring program.  Mr. Smith has advised me LCA is willing to electronically monitor Defendant should the Court order EMP as a condition of Defendant's release bail.  I will provide the Court with a letter from Mr. Smith at the time of the hearing.  Mr. Smith will be present at the hearing.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 11th day of June, 2012 at San Jose, California.

_____
BRIAN MADDEN,
Attorney for Defendant

CONCLUSION

For the foregoing reasons, Defendant requests the Court to set substantial bail and to order any additional condition(s) the Court deems appropriate.

Dated: June 11, 2012

_____
BRIAN MADDEN,
Attorney for Defendant

654

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 601
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-9100

BRIAN MADDEN, SB# 55869
MADDEN & REDDING
1625 The Alameda, Suite 801
San Jose, California  95126
Telephone: (408) 275-8100
Facsimile: (408) 275-8199

Attorney for Defendant
CRAIG RICHARD CHANDLER

FILED

2012 JUN 11 'P 3: 49

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By_____
Deputy Clerk
S. Aleman

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

PEOPLE OF THE STATE OF
CALIFORNIA,

                    Plaintiff

v.

CRAIG RICHARD CHANDLER,

                    Defendant.

Case No.  C1223754

PROOF OF SERVICE

I, the undersigned, declare:

I am over the age of 18 years and not a party to the within action.  My business address is 1625 The Alameda, Suite 801, San Jose, California, 95126.

On June 11, 2012, I served:

NOTICE OF MOTION AND MOTION TO SET BAIL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN MADDEN

on the interested party/parties by sending a true copy thereof to the following addressee(s):

Allison Filo
Deputy District Attorney
Santa Clara County District
Attorney's Office
70 W. Hedding Street
San Jose, CA  95110
Fax No. (408)299-8440

Service was made by the following method(s):

_X_ BY MAIL by placing a true copy thereof in a sealed envelope addressed to the addressee(s) shown above, with postage

655

C1223754                          PROOF OF SERVICE                          Page 1

1    thereon fully prepaid, in the United States mail at San
     Jose, California.

2

3    ___ **BY HAND** by causing a true copy thereof enclosed in a sealed
     envelope to be hand delivered to the addressee(s) shown
4    above.

5    _X_ **BY FACSIMILE** by causing a true copy thereof to be sent by
     facsimile to the interested party/parties to the facsimile
6    number(s) shown above.

7    I declare under penalty of perjury under the laws of the State of
     California that the foregoing is true and correct.  Executed this
8    11th day of June, 2012, at San Jose, California.

9

10                                  SUMMER DOWLING

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                            656

MADDEN AND REDDING
ATTORNEYS AT LAW
SUITE 801
1625 THE ALAMEDA
SAN JOSE, CALIFORNIA 95126
(408) 275-8100

```
└─ 5    SUPERIOR COURT                              CASE NO.    C122375
        190 W. HEDDING ST                                       12001535
        SAN JOSE, CA 95110              DATE    06/13/20 2  1:30 DEPT.  52
PEOPLE VS.  CRAIG RICHARD CHANDLER      10/25/1976  CAB3721090   CDY BK:\
L.K.A.      1361 N SAN PEDRO ST         CLERK   S. GUZMAN        EBK966 M
            SAN JOSE CA 95110           HEARING  MOTION TO SET BAIL
JUDGE    HON ROBERT McENERY             DV: Agency  SJ-04313-  -UNKNOWN
REPORTER A. PARRISH                     CHILD STATUS:  I-SET -NBA      TW  Y
DEF. ATTY. MADDEN, BRIAN    (G)         D.A.  MAGGIO FILO        APO
CHARGES    F(001)PC288(A)               F(002)PC288(A)           VIOLATION DATE
MTC        F(003)PC288(A)               F(004)PC288(A)           09/01/2010
NEXT APPEARANCE
```

- ☑ Defendant Present ☐ Not Present  Atty Present  AIR _____ AD / PD / IDO / Special App
- ☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDO ☐ PTC ☐ Prob / Sent ☐ Interpreter _____ ☐ Sworn
- ☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
- ☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Bail Exonerated ☐ Forfeited ☐ Bond #_____
- ☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
- ☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Ref'd _____ ☐ $_____ Costs Within 30 Days to Court
- ☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
- ☐ Released ☐ Remand ☐ Crim Proc Susp ☐ Reid ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
- ☐ Hrg on Motion ☐ SUSP /BAIL/ RKD. ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No' Request ☐ Cash Only
- ☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
- ☐ Stip to Comm ☐ Drs. Appointed _____ ☐ Max Term _____ ☐ Committed _____ ☐ Proof of _____
- ☐ Prelim.Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____       Mr. Smith from JCA
- ☐ Amended to ☐ (M) VC12500(a) ☐ VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed       is present, as well as
- PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP     family.
      ☐ Add to Cal ☐ Vacate pending date
- ☐ Jail / Prison Term of _____ ☐ Subm time of Sent ☐ Harvey Stip
- ☐ Dismissal / Striking _____
- ☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.8/PC666
- ☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
- ☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
- ☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term ☐ Fees _____ ☐ Guilty Plea Rendered
- ☐ Waives Referral ☐ Ref'd to APO Full Rpt       FINES/FEES: PAY TO ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY Audit #_____
- ☐ Sent Suspended _____ ☐ PROBATION DENIED       COUNT _____ $_____ + PA $_____ ☐ Purs HS11350d
- PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period     COUNT _____ $_____ + PA $_____ ☐ PC290.3
- ☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs       AIDS / CPP $_____ + PA $_____ SORP_____
- ☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release       DPF _____ $_____ + PA $_____ EMAT $_____
- ☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB _____ $_____ + PA $_____
- ☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer       DRF /RF _____ $_____ Add'l RF $_____ Susp'd PC1202.44/4
- ☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ Days    AEF _____ $_____ Original Fine $_____
- ☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs   SECA/COPA _____ $_____ CTS PC2900.5 $_____
- ☐ No contact, with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF _____ $_____ TOTAL DUE _____ $_____
- ☐ DVPO issued/ mod /term'd Exp _____ ☐ Victim Present       ICIN _____ $_____ Payments Granted / Modified
- ☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed    AR _____ $_____ _____ / Mo beginning _____
- ☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____    SHELTER _____ $_____ FINE STAYED _____
- ☐ Stay away from _____       DV _____ $_____ ☐ Committed @ $_____/day ☐ May Pay Out
- ☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY _____ $_____ Consec/Conc to _____
- ☐ Substance Abuse; Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm    ASF$25/CPF$10 $_____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
- ☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education       P/INVEST $_____ ☐ P/SUP $_____ /Mo ☐ Waived
- VOP: ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $_____ ☐ Add'l Fees Waived
- Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____     ☐ Restitution ☐ General $_____ to _____
- ☐ Original Terms & Conditions Except as Amended herein       ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
- ☐ Co-terminous with _____ ☐ No Further Penalties / Reviews
- Other: _____

JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                County Jail
| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

```
CTS = ____ ACT + ____  ☐ PC4019  ☐ ½  ☐ ⅓  ☐ PC2933.1 = ____ ____ TOTAL DAYS   TOTAL TERM ____
```
- ☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec____ All / Except ☐ FMP/ PSP/ ERP/ DRP/ Co Parole/ NP ____
- ☐ Sent Deemed Served ☐ Rpt to Parole w/in ____ ☐ Adv ____ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to ____
- ☐ Bal CJ Susp ☐ All but ____ Hrs/Days/Mos ☐ On Prob Consec ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ____    657
- ☐ Pre-process ____ AM/PM ☐ Stay / Surrender / Transport to ____ @ ____ AM/PM or Sooner
- ☑ REMANDED-BAIL $____ ☐ REMAIN AS SET ☐ NO BAIL ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
  ☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:  ORIGINAL - FILE,  GREEN - DOC,  BLUE - CJIC / DOR  PURPLE - PROBATION,  BROWN - DEFENDANT

```
L17    SUPERIOR COURT                                        CASE NO.    C1223754
       190 W. HEDDING STR                                    CEN         12001535
       SAN JOSE, CA 95110            DATE      08/06/2012  8:30 AM DEPT. 24
PEOPLE VS.  CRAIG RICHARD CHANDLER             10/25/1976 CAB3721090  CDY BK:Y
   .KA.     1361 N SAN PEDRO ST      CLERK     C. GUERRA                EBK966 M
            SAN JOSE, CA 95110       HEARING   MASTER TRIAL CALENDAR
JUDGE   HON. RISE' J. PICHON         DV:  AGENCY  SJ-04313-     -UNKNOWN
REPORTER M. DAVIS                    CHILD:    STATUS   I-SET -NBA          TW  Y
DEF. ATTY MADDEN, BRIAN    (G)       D.A.A. BERNHARD         APO
CHARGES   F(001) PC288(A)            F(002) PC288(A)              VIOLATION DATE
          F(003) PC288(A)            F(004) PC288(A)
          F(005) PC288(A)                                        09/01/2010
```

10-29-12  830  D24

NEXT APPEARANCE
- ☐ Defendant Present ☑ Not Present                ☑ Atty Present   BTR   AD / PD / IDO / Special App
- ☐ Arr'd  ☐ Adv  ☐ TW  ☐ Wav'r  ☐ Amend Comp/Info  ☐ Arr  ☐ Plea  ☐ HTO  ☐ PTC  ☐ Prob / Sent     ☐ Interpreter                      ☐ Sworn
- ☐ PC977  ☐ Filed  ☐ On File   ☐ Rectr. Adv / Wav  ☐ Bail/OR/ SORP  ☐ Rect Df Rpt  ☐ FAR/ERC       ☐ Ball Apply  ☐ Balance Exonerated
- ☐ NG  ☐ Entered by CRT  ☐ NGBRI / Adv   ☐ Set  ☐ Prelim  ☐ Readiness  ☑ SJ-B MTC                  ☐ Bail Exonerated  ☐ Forfeited  ☐ Bond #_____
- ☐ Denies Priors/ Allegations/ Enhancements/ Refusal  ☐ Further  ☐ Jury  ☐ CRT  ☐ Peo / Def Wav Jury  ☐ Reassumption Filed  ☐ Forfeiture Set Aside  ☐ Bail Rein
- ☐ TW  ☐ TNW  ☐ TW / WD  ☐ TW Sentence           ☐ Ref'd _____                ☐ Costs Within 30 Days to Court
- ☐ Ref / Appt PD / AD / IDO  ☐ Conflict Decl       ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't   ☐ SORP 7 OR  ☐ Revoked  ☐ Reinstated  ☐ May Post & Forfeit
- ☐ Relieved  ☐ Appt'd                 ☐ Crim Proc Susp  ☐ Rein           ☐ BW Ordered $_____  ☐ Stayed  ☐ To Issue
- ☐ Hrg on Motion                      ☐ Doubt Decl Pursuant PC1368        ☐ NS Cite Release/ SCIT  ☐ No Request  ☐ Cash Only
- ☐ Granted  ☐ Denied  ☐ Submitted  ☐ Off Cal    ☐ Subm on Report  ☐ Found _____   ☐ BW Set Aside  ☐ Recalled  ☐ Filed  ☐ Remain Out
- ☐ Stip to Comm  ☐ Drs. Appointed      ☐ Max Term _____  ☐ Committed _____   ☐ Proof of _____
- ☐ Prelim Waived  ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
- ☐ Amended to (M)(VC12500(a) / VC23103(a)  ☐ Pur VC23103.5  ☐ DA Stmt filed

PLEA Conditions:  ☐ None  ☐ No State Prison   ☐ PC17 after 1-Yr Prob:  ☐ Includes VOP
- ☐ Jail / Prison Term etc _____                                          ☐ Add to Cal  ☐ Vacate pending date
- ☐ Dismissal / Striking _____                                            ☐ Submit time of Sent  ☐ Harvey Stip _____
- ☐ Adv  ☐ Max Pen  ☐ Parole/Prob  ☐ Appeal  ☐ Immig  ☐ Reg PC290/HS11590/PC457.1/PC186.30  ☐ Future Serious Felony  ☐ PC12021/PC12316(b)(1)/VC14607.8/PC666
- ☐ Wav Right to Jury  ☐ Court Trial  ☐ Jury Trial  ☐ Subpoena  ☐ Confront / Examine Witnesses  ☐ Self-Incrimination  ☐ Written Waiver filed  ☐ Plea / Absentia filed
- ☐ COR  ☐ GUILTY  ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors  ☐ PC17  ☐ Arbuckle  ☐ Factual Basis found  ☐ Findings stated
- ☐ Prop 36 Granted / Unamenable / Refused / Term   ☐ DEJ Eligibility Filed  ☐ DEJ Granted / Rein / Term  ☐ Fees & _____   ☐ Guilty Plea Rendered
- ☐ Waives Referral  ☐ Ref'd to APO Full Rpt       FINES/FEES: PAY TO  ☐ Ref to DOR  ☐ TRAFFIC  ☐ COURT  ☐ TODAY  Audit #_____
- ☐ Sent Suspended                        ☑ PROBATION DENIED       COUNT _____ $_____ + PA $_____  ☐ Purs. HS11350d
PROBATION  ☐ Execution  ☐ imposition of sentence suspended for probation period   COUNT _____ $_____ + PA $_____  ☐ PC290.3
- ☐ COURT  ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs        AIDS / CPP  $_____ + PA $_____  ☐ SORP _____
- ☐ Report to APO within _____ Days  ☐ Terminated  ☐ Upon Release       DPF  $_____ + PA $_____  ☐ EMAT $_____
- ☐ Perform _____ Hrs Volunteer Work as directed PO / SAP  ☐ In lieu of fine/Jail  LAB  $_____ + PA $_____
- ☐ Not drive w/o valid DL's & Ins  ☐ Adv VC23600  ☐ HTO  ☐ Re-refer        DRF / RF  $_____  ☐ Add'l RF $_____  ☐ Susp'd PC1202.44/45
- ☐ MOP  ☐ FOP  ☐ 12 hrs  ☐ 3 mos  ☐ 9 mos  ☐ Enroll within _____ days     AEF  $_____  ☐ Original Fine $_____
- ☐ DL Susp/ Restr'd Yrs d for _____  ☐ IID Not Ordered  ☐ Rvng'd Term _____ Yrs   SECA/COPA  $_____  CTS PC2900.5  $_____
- ☐ No contact with victim or family / co-defts unless appr by APO  ☐ PC1202.05  ICMF  $_____   TOTAL DUE  $_____
- ☐ DVPO Issued / mod / term'd Exp _____                                    ICIN  $_____  ☐ Payments Granted / Modified
- ☐ No Contact  ☐ Peaceful Contact  ☐ DSA thru APO / DOR / CRT  ☐ Filed     AR  $_____  ☐ _____ / Mo beginning _____
- ☐ Not own/possess deadly weapons  ☐ Destroy/return weapon _____            SHELTER  $_____   FINE STAYED
- ☐ Stay away from _____                                                     DV: $_____  ☐ Committed @ $_____ / day  ☐ May Pay Out
- ☐ Submit Search/Testing  ☐ Educ/Voc Trng/Empl  ☐ No alcohol / drugs or where sold  ATTY  $_____  ☐ Consec/ Conc to _____
- ☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm     ASF$25/CPF$10$_____  ☐ Fine / Fees  ☐ Deemed Satisfied  ☐ Commuted
- ☐ PC296 (DNA)  ☐ PC1202.1 HIV Test / Education                            JV/INVEST  $_____  ☐ P/SUP $_____ / Mo  ☐ Waived
- VOP: ☐ Wav  ☐ Arr'd _____  ☐ Admits/Denies Viol  ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50  $_____  ☐ Add'l Fees Waived?
  ☐ Prob Rein / Mod / Term'd  ☐ Revoked  ☐ Remains Revok6d / Ext to _____   ☐ Restitution  ☐ General $_____  to _____
- ☐ Original Terms & Conditions Except as Amended herein
- ☐ Co-terminous with _____           ☐ No Further Penalties / Reviews     ☐ As determined by APO/Court  ☐ Referred to VWAC  ☐ Collect Civilly
- Other: _____

JAIL/PRISON  ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                         County Jail
Count  F/M         Violation         Prison Term / Yrs        Enhancement / Priors        Yrs / Stydt / Strkn    HRS / DAYS / MOS

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Enhancement  Yrs/S   Enhancement  Yrs/S   Enhancement  Yrs/S   Enhancement  Yrs/S   Enhancement  Yrs/S   Total

CTS = _____  ☐ ACT + _____  ☐ PC4019  ☐ ½  ☐ ½  ☐ PC2933.1 = _____  _____ TOTAL DAYS  TOTAL TERM
- ☐ Straight time  ☐ In Camp  ☐ WWP  ☐ PC1209 Fees  ☐ Waived  ☐ Court Rec _____  All / Except  ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
- ☐ Sent Deemed Served  ☐ Rpt to Parole w/in _____  ☐ Adv _____ Yrs Parole/Appeal Rights  ☐ Consec _____ / Conc to _____      658
- ☐ Bal CJ Susp  ☐ All but _____ Hrs/Days/Mos  ☐ On Cond Complete Residential Treatment Prgm  ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
- ☐ Pre-process _____  AM/PM  ☐ Stay / Surrender / Transport to _____  @ _____ AM/PM or Sooner
- ☑ REMANDED-BAIL $_____  ☐ REMAIN AS SET  ☐ NO BAIL  ☐ COMMITTED  ☐ RELEASED  ☐ OR  ☐ SORP  ☐ JAC PHONE ASSM'T  ☐ P36
- ☐ AS COND OF SORP  ☐ BAIL INCREASED / REDUCED  ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:   ORIGINAL - FILE   GREEN - DOC   BLUE - CJIC / DOR   PURPLE - PROBATION   BROWN - DEFENDANT

```
⌐ 1  HALL OF JUSTICE                                    CASE NO.    C1223754
      190 W. HEDDING ST                                 CEN         12001535
      SAN JOSE, CA 95110         DATE   09/28/2012  1:30 P.DEPT. #48
PEOPLE VS.   CRAIG RICHARD CHANDLER            10/25/1976 CAB3721090   CDY BK:Y
L.K.A.       1361 N SAN PEDRO ST          CLERK   WINTERS / SALISBURY T.Le EBK966 M
             SAN JOSE, CA 95110           HEARING ORDER OF COURT
JUDGE   HON. DEBORAH RYAN Kenneth     DV: AGENCY   SJ-04313-   -UNKNOWN
                          Shapiro  CHILD: STATUS   I-SET -NBA            TW  Y
REPORTER  B. Machado
DEF. ATTY. MADDEN, BRIAN    (G)       D.A. not uninterested party  APO
CHARGES  F(001) PC288(A)              F(002) PC288(A)             VIOLATION DATE
         F(003) PC288(A)              F(004) PC288(A)             09/01/2010
         F(005) PC288(A)
```

NEXT APPEARANCE  10-29-12 8:30 D24 MTC > RAS

- ☐ Defendant Present ☑ Not Present    ☑ Atty Present  A/R                         ☐ AD / PD / IDO / Special App
- ☐ Arr'd ☐ Adv ☐ F Arr Wav ☐ Amend Compl/Info ☐ Arr ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter ___ ☐ Sworn
- ☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
- ☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ Set ☐ Prelim. ☐ Readiness ☐ S / BMTC ☐ Bail Exonerated ☐ Forfeited  Bond #___
- ☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
- ☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Fixed ☑ Refused to have holding ☐ Costs Within 30 Days to Court
- ☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't  Cell ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
- ☐ Relieved:_____Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg  per ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
- ☐ Hrg on Motion _____ ☐ Doubt Decl Pursuant PC 1368   deputy ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
- ☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
- ☐ Stip to Comm ☐ Drs. Appointed ☐ Max Term _____ ☐ Committed _____ ☐ Proof of _____
- ☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____        Christopher Schumb, 1st
- ☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Fur VC23103.5 ☐ DA Stmt Filed _____    for  A in CIVIL matter
- PLEA Conditions: ☐ None ☐ No State. Prison ☐ PC17 after 1 Yr Prob.☐ Includes VOP        (12CV231067  also refs
- ☐ Jail- Prison Term of -  MTN to unseal docs filed by SJ mercury news ☐ Add to Cal ☐ Vacate pending date
- ☐ Dismissal / Striking  granted in case # C1236212 ☐ Submit time of Sent ☐ Harvey Stip _____
- ☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
- ☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
- ☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
- ☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____ ☐ Guilty Plea Rendered
- ☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
- ☐ Sent Suspended _____ ☐ PROBATION DENIED. COUNT_____ $_____ + PA $_____ ☐ Purs HS11350d
- PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period COUNT_____ $_____ + PA $_____ ☐ PC290.3
- ☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs AIDS / CPP $_____ + PA $_____ ☐ SORP
- ☐ Report to APO within ____ Days ☐ Terminated ☐ Upon Release DPF $_____ + PA $_____ ☐ EMAT $_____
- ☐ Perform____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail LAB $_____ + PA $_____
- ☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer DRF /RF $_____ Add'l RF $_____ Susp'd PC1202.44/4
- ☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ____ days AEF $_____ Original Fine $_____
- ☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ____ Yrs SECA/COPA $_____ CTS PC2900.5 $_____
- ☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05 ICMF $_____ TOTAL DUE $_____
- ☐ DVPO Issued / mod /term'd Exp _____ ☐ Victim Present ICIN $_____ Payments Granted / Modified
- ☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed AR $_____ $_____/ Mo beginning_____
- ☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____ SHELTER $_____ FINE STAYED
- ☐ Stay away from _____ DV $_____ Committed @ $_____/day ☐ May Pay Out
- ☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold ATTY $_____ Conseo/Cono to _____
- ☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ASF$25/CPF$10$_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
- ☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education P/NVEST $_____ ☐ P/SUP $_____ /Mo ☐ Waived
- VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP CJAF $129.75/$259.50 $_____ ☐ Addt'l Fees Waived
- Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to_____ ☐ SECA, ICMF, ICIN, CJAF, P/NVEST, PSUP FEES NOT COND. OF PROB
- ☐ Original Terms & Conditions Except as Amended herein ☐ Restit ☐ Gen $_____ to _____
- ☐ Co-terminous with _____ ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to WVAC ☐ Collect Civilly
- Other: Mr Schumb presents arguments re: SJ merc news MTN to unseal docs in C1236621

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence _____ County Jail
Count  F/M _____ /Violation, _____ Prison Term / Yrs _____ Enhancement / Priors _____ Yrs / Styd / Strkn  HRS / DAYS / MOS.

Per crt  Wes  order  probability for a fair trial will not be impaired as a result of
courts ruling re: SJ merc news mtn to unseal docs in C1236212.

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|

WRIT FBY MR Schumb filed in case # 1-12-CV-23106 is denied  Per 3 PGS of

- CTS = _____ ☐ ACT + _____ ☐ 4019 ☐ ½ ☐ 1½ ☐ PC2933.1 _____ Total  Total rem  Atty Fee prob cost  LAU2
- ☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec. _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP   639
- ☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Conse ☐ Cono to _____
- ☐ Bal CJ Susp ☐ All but ____ Hrs/Days/Mos ☐ On Comp Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU  659
- ☐ Pre-process _____ ☐ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
- ☑ REMANDED-BAIL $ _____ ☐ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
  ☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED _____ ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

SUPERIOR COURT
190 W. HEDDING STR
SAN JOSE, CA 95110

CASE NO.     C1223754
CEN          12001535

PEOPLE VS.   CRAIG RICHARD CHANDLER
L.K.A.       1361 N SAN PEDRO ST
             SAN JOSE, CA 95110
JUDGE   HON. DIANE NORTHWAY
REPORTER K. MCCARTHY
DEF.ATTY MADDEN, BRIAN   (G)
CHARGES  F(001)PC288(A)        F(002)PC288(A)
         F(003)PC288(A)        F(004)PC288(A)
         F(005)PC288(A)

DATE    10/29/2012  8:30 AM DEPT. 24
        10/25/1976 CAB3721090   CDY BK:Y
CLERK   C. GUERRA               EBK966 M
HEARING  MASTER TRIAL CALENDAR
DV:  AGENCY  SJ-04313-   -UNKNOWN
CHILD:  STATUS  I-SET  -NBA         TW  Y
D.AR. MENDOZA   APO

VIOLATION DATE
09/01/2010

NEXT APPEARANCE  12-3-12  830 D24

☐ Defendant Present ☑ Not Present   ☑ Atty Present  AIR by Gleason   ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☑ Wav ☐ Amend Comp/Info  ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Cob / Sent  ☐ Interpreter _____  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprtr. Adv / Wav ☐ Ball/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☑ Readiness ☐ S+B MTC  ☐ Bail Exonerated ☐ Forfeited  Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Ref'd _____  ☐ _____ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Ded ☐ Adm A / F  ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd  ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg  ☐ BW Ordered _____  ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Submt on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____  ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____  ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____  ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____  ☐ PROBATION DENIED  COUNT _____ $_____  + PA $_____  ☐ Purs HS11350d
PROBATION : ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT _____ $_____  + PA $_____  ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  COUNT _____ $_____  + PA $_____  SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  AIDS / CPP $_____  + PA $_____  EMAT $_____
☐ Perform _____ Hrs Volunteer Work / SAP ☐ In lieu of fine/Jail  DPF $_____  + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  LAB $_____  + PA $_____
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  DRF /RF $_____  Add'l RF $_____  Susp'd PC1202.44/4
☐ DL Susp/ Restr'd/ Rvk'd for _____  ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  AEF $_____  Original Fine $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  SECA/COPA $_____  CTS PC2900.5 $_____
☐ DVPO Issued / mod /term'd Exp _____  ☐ Victim Present  ICMF $_____  TOTAL DUE $_____
☐ No Contact _____ ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  ICIN $_____  Payments Granted / Modified
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  AR $_____  /Mo beginning _____
☐ Stay away from _____  SHELTER $_____  FINE STAYED _____
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  DV $_____  ☐ Committed @ $_____/day ☐ May Pay Out
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ATTY $_____  Consec/Conc to _____
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  ASF$25/CPF$10$_____  Fine / Fees ☐ Deemed Satisfied ☐ Commuted
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VSP ☐ No VOP  ☐ P/INVEST $_____  ☐ P/SUP $_____  /Mo ☐ Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext'd _____  CJAF $129.75/$259.50 $_____  ☐ Addt'l Fees Waived
☐ Original Terms & Conditions Except as Amended herein _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Co-terminous with _____  ☐ No Further Penalties / Reviews  ☐ Restit ☐ Gen $_____  to _____
Other: _____  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
JAIL/PRISON. ☐ See Attachm't ☐ Parole collect restn / earnings ☐ Blended Sentence  County Jail

| Count | F/M | Violation | Prison / Priors | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| DA Witness Rogelio + Maria Doe | | | | | | |
| Ordered to be present at 12-3-12 MTC | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ PC2933.1 _____ Total  Total term _____  CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☑ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner   660
☐ REMANDED-BAIL $_____  ☐ REMAIN AS SET ☐ NO BAIL ☐ CONTINUED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED _____ ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

```
L17  SUPERIOR COURT                                    CASE NO.      C1223754
     190 W. HEDDING ST.                         CEN          12001535
     SAN JOSE, CA 95110        DATE    12/03/2012  8:30 DEPT. 24
PEOPLE VS.  CRAIG RICHARD CHANDLER           10/25/1976 CAB3721090   CDY BK:Y
L.K.A.      1361 N SAN PEDRO ST     CLERK   C.GUERRA              EBK966 M
            SAN JOSE, CA 95110      HEARING  MASTER TRIAL CALENDAR
JUDGE   HON. RISE J. PICHON         DV: AGENCY  SJ-04313-   -UNKNOWN
REPORTER M.DAVIS                    CHILD: STATUS  I-SET -NBA            TW   Y
DEF. ATTY. MADDEN, BRIAN · (G)      D.A. R.MENDOZA    APO
CHARGES   F(001)PC288(A)            F(002)PC288(A)          VIOLATION DATE
          F(003)PC288(A)            F(004)PC288(A)          09/01/2010
          F(005)PC288(A)
```

NEXT APPEARANCE

☐ Defendant Present ☑ Not Present ☐ Atty Present ___ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ At Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprtr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☑ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☑ STB MTC ☐ Bail Exonerated ☐ Forfeited ☐ Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Refd_____ ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved_____ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg · ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____ ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Submn on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWI
☐ Stip to Comm ☐ Drs. Appointed _____ ☐ Max Term _____ ☐ Committed _____ ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison-Term of _____ ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____ ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees ☐ By ___ ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____ ☐ PROBATION DENIED ☐ COUNT ___ $ ____ + PA $ ____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ___ $ ____ + PA $ ____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs  AIDS / CPP $ ____ + PA $ ____ SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF $ ____ + PA $ ____ EMAT $ ____
☐ Perform ____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB $ ____ + PA $ ____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF /RF $ ____ Add'l RF $ ____ Susp'd PC1202.44/
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ___ days  AEF $ ____ Original Fine $ ____
☐ DL Susp / Restr'd / Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs  SECA/COPA $ ____ CTS PC2900.5 $ ____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $ ____ TOTAL DUE $ ____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present  ICIN $ ____ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____ AR $ ____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____ SHELTER $ ____ FINE STAYED _____
☐ Stay away from _____ DV $ ____ Committed @ $ ____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $ ____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$ ____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $ ____ ☐ P/SUP $ ____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $ ____ ☐ Addt'l Fees Waived ____
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____ ☐ SECA, ICMF, ICIN, CJAF, P/INVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein ☐ Restit ☐ Gen $ ____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence                County Jail
Count   F/M        Violation          Prison Term / Yrs      Enhancement / Priors        Yrs / Styd / Strkn    HRS / DAYS / MOS

| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|

CTS = ____ ACT + ____ ☐ 4019 ☐ ½ ☐ ⅓  PC2933.1 _____ Total  Total term ____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD ____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Residential Treatment Prgm. ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ____   661
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @_____ AM/PM or Sooner
☑ REMANDED-BAIL $ _____ ☑ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

Handwritten: 122-13 830 D24  AJR

```
L25  SUPERIOR COURT                                    CASE NO.      C1223754
     190 W. HEDDING ST                          C:  CEN            12001535
     SAN JOSE, CA 95110              DATE    01/22/2013  8:30 DEPT.  24
PEOPLE VS.  CRAIG RICHARD CHANDLER           10/25/1976 CAB3721090  CDY BK:Y
LKA.   1361 N SAN PEDRO ST              CLERK    C. GUERRA          EBK966 M
       SAN JOSE, CA 95110              HEARING  MASTER TRIAL CALENDAR
JUDGE  HON. RISE J. PICHON             DV: AGENCY  SJ-04313-  -UNKNOWN
REPORTER M. DAVIS                      CHILD/ STATUS   I-SET -NBA       TW   Y
DEF. ATTY. MADDEN, BRIAN    (G)        D.A. R. MENDOZA      APO
CHARGES   F(001)PC288(A)              F(002)PC288(A)        VIOLATION DATE
          F(003)PC288(A)              F(004)PC288(A)        09/01/2010
          F(005)PC288(A)
```

NEXT APPEARANCE

☐ Defendant Present ☐ Not Present  WWA   ☐ Atty Present  ☐ AD / PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr / Plea ☐ IDC ☐ PTC ☐ Prob Sent. ☐ Interpreter ☐ Sworn

☐ PC977 ☐ Filed ☐ On File ☐ Reprtr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Df Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated

☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ MTC ☐ Bail Exonerated ☐ Forfeited ☐ Bond

☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein

☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Re'fd_____ ☐ $_____ ☐ Costs Within 30 Days to Court

☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit

☐ Relieved ☐ Appt'd ☐ Crim Proc Susp ☐ Status Hrg ☐ BW Ordered ☐ Stayed ☐ To Issue

☐ Hrg on Motion ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only

☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF

☐ Stip to Comm't ☐ Dept Appointed / _____ ☐ Max Term _____ ☐ Committed _____ ☐ Proof of _____

☐ Prelim.Wav ☐ Certified in General Jurisdiction ☐ MDA / COM Amended to _____ ☐ $_____ PA $_____

☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP

☐ Jail / Prison Term of _____ ☐ Add to Cal ☐ Vacate pending date

☐ Dismissal / Striking _____ ☐ Subm time of Sent ☐ Harvey Stip

☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8 _____

☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses. ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed

☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated

☐ Prop 36 Granted ☐ Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term ☐ Fee $_____ ☐ Guilty Plea Rendered

☐ Waives Referral ☐ APO Full Rpt ☐ CR110 Issued ☐ Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #

☐ Sent Suspended ☐ PROBATION DENIED COUNT: ☐ S-AB ☐ +PA $___ ☐ Plurs HS11350d

PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period COUNT: ☐ +PA $___ ☐ PC290.3

☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs. AIDS / CPP ☐ +PA $___ ☐ SORP

☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release DPF ☐ +PA $___ ☐ EMAT $___

☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail LAB ☐ +PA $___

☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer DRF/RF ☐ Add'l RF $___ ☐ Susp'd PC1202.44/

☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos Enroll within ___ days ___ AEF ☐ Original Fine $___

☐ DL Susp/ Restr'd/ Rvk'd for ___ ☐ IID Not/Ordered / Rmv'd Term ___ Yrs. SECA/COPA ☐ CTS PC2900.5 $___

☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05 ICMF ☐ TOTAL DUE $___

☐ DVPO issued / mod / term'd Exp ☐ Victim Present ICIN ☐ Payments Granted / Modified

☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed AR ☐ $___ / Mo beginning ___

☐ Not own/possess deadly weapons ☐ Destroy/return weapon SHELTER ☐ FINE STAYED

☐ Stay away from _____ DV ☐ Committed $___ /day ☐ May Pay Out

☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold ATTY ☐ Consec/Conc to ___

☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ASFS25/CPF$105 ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted

☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education PIN/VEST ☐ P/SUP $___ ☐ Waived

VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP CJAF $129.75/$259.50. ☐ Addt'l Fees Waived

Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____ ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP, FEES NOT COLL OF PROB

☐ Original Terms & Conditions, Except as Amended herein Restit ☐ Gen $___ to _____

☐ Co-terminous with _____ ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly

Other: _____

JAIL/PRISON ☐ See Attach't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence ____ County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|-------|-----|-----------|-------------------|----------------------|---------------------|-------------------|
|       |     |           |                   |                      |                     |                   |
|       |     |           |                   |                      |                     |                   |
|       |     |           |                   |                      |                     |                   |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|
|             |       |             |       |             |       |             |       |             |       |       |

CTS = ___ ACT + ___ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 ___ Total  Total term ___ CDCR / PC 1170h

☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ___

☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ___ ☐ Adv/ORD ___ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to ___ 662

☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ___

☐ Pre-process ___ AM/PM ☐ Stay / Surrender / Transport to ___ @ ___ AM/PM or Sooner

☐ REMANDED-BAIL $___ ☐ REMAIN AS SET ☐ NO BAIL ☐ CONVICTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36

☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

L14  SUPERIOR COURT
190 W. HEDDING ST.
SAN JOSE, CA 95110

CASE NO.        C1223754
CEN           12001535

PEOPLE VS.   CRAIG RICHARD CHANDLER
L.K.A.       1361 N SAN PEDRO ST
             SAN JOSE, CA 95110

DATE   03/25/2013  8:30 A DEPT.  24
       10/25/1976 CAB3721090        CDY BK:
CLERK  C. GUERRA                  EBK966 M
HEARING  MASTER TRIAL CALENDAR

JUDGE  HON. RISE J. PICHON
REPORTER M. DAVIS
DEF. ATTY. MADDEN, BRIAN  (G)

DV: AGENCY   SJ-04313-   -UNKNOWN
CHILD: STATUS   I-SET -NBA          TW  Y
D.A. R. MENDOZA   APO

CHARGES  F(001)PC288(A)      F(002)PC288(A)
         F(003)PC288(A)      F(004)PC288(A)      VIOLATION DATE
         F(005)PC288(A)                          09/01/2010

NEXT APPEARANCE  4-22-13  8:30  D24  ATR

☐ Defendant Present ☑ Not Present     ☑ Atty Present                            AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Ts ☑ Wav ☐ Amend Comp/Info ☐ Arr ☐ Fled ☐ IDC ☐ PTC ☐ Prelim   ☐ Interpreter                          ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Df Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☐ Readiness ☐ STB MTC     ☐ Bail Exonerated ☐ Forfeited  Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo/ Def Way Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Re'fd _____                           $_____ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO. ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
       Relieved: ____ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg ___   BW Ordered $_____        ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____              ☐ Doubt Decl Pursuant PC 1368            ☑ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report ☐ Found _____   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NW
☐ Stip to Comm ☐ Dfs' Appointed _____  ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav. ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a)./ VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions:  ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob. ☐ Includes VOP _____       ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____                                               ☐ Submit time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____
☐ Adv Max Pen / Parole / Prob./ Immig / Appeal ☐ Reg.HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC28600/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop.36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____     ☐ Guilty Plea Rendere
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today  Audit #
☐ Sent Suspended _____        ☐ PROBATION DENIED  COUNT: _____          $_____ + PA $_____  ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT: _____   $_____ + PA $_____  ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  AIDS / CPP   $_____ + PA $_____   SORP _____
☐ Report to APO within _____ Days  ☐ Terminated ☐ Upon Release   DPF *   $_____ + PA $_____  EMAT $_____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB   $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF   $_____        Add'l RF $_____  Susp'd PC1202.44/
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF   $_____       Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not Ordered/ Rmv'd Term _____ Yrs.  SECA/COPA  $_____    CTS PC2900.5  $_____
☐ No contact with victim or family / co-defts unless appr.by APO ☐ PC1202.05  ICMF   $_____         Payments Granted / Modified
☐ DV/PO Issued / mod /term'd Exp _____          ☐ Victim Present  ICIN   $_____        $_____ / Mo beginning _____
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR   $_____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER*  $_____     FINE STAYED _____
☐ Stay away from _____               DV   $_____        ☐ Committed @ $_____ /'day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY.  $_____   Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cls / prgm   ASF$25/CPF$10$ _____  Fine / Fees ☐ Deemed Satisfied / Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education *   P/INVEST   $_____    ☐ P/SUP $_____ ☐ Mo ☐ Waived
VOP: ☐ Wav ☐ ARR _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $_____   ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   ☐ SECA, ICMF, ICIN, CJAF, P/INVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $_____    to _____
☐ Co-terminous with _____        ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____
JAIL / PRISON  ☐ See Attach'm Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence        County Jail
Count  F/M  Violation  Prison Term / Yrs  Enhancement / Priors  Yrs / Styd / Stkn  HR 7 DAYS / MOS

Def. witnesses ordered to return 4-22-13 MTC -Kim to
Khanh To                 witnesses not present
Thanh To

Enhancement  Yrs/S.  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Total
Ann Dinh, Bui Anne Pham, Mrs Pham-mother of Jayden Pham, Nau Nguyen
CTS = _____ ACT + ☐ 4019 ☐ ½ ☐ ⅓  PC2933.1 _____  Total  Total Term _____  CDCR/ PC 1170h   663
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec. _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Completion Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED–BAIL $ _____  ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

11   SUPERIOR COURT                                    CASE NO.      C1223754
     190 W. HEDDING ST.                             CEN        12001535
     SAN JOSE, CA 95110              DATE        04/22/2013   8:30 A DEPT. 24
PEOPLE VS.   CRAIG RICHARD CHANDLER               10/25/1976 CAB3721090   CDY BK:Y
L.K.A.   1361 N SAN PEDRO ST                      CLERK   C. GUERRA          EBK966 M
         SAN JOSE, CA 95110                        HEARING   MASTER TRIAL CALENDAR
JUDGE    HON. THANG NGUYEN BARRETT                 DV: AGENCY   SJ-04313-   -UNKNOWN
REPORTER M. DAVIS                                  CHILD:   STATUS   I-SET -NBA          TW   Y
DEF. ATTY. MADDEN, BRIAN   (G)      D.A.            APO
CHARGES    F(001) PC288(A)               F(002) PC288(A)              VIOLATION DATE
           F(003) PC288(A)               F(004) PC288(A)              09/01/2010
           F(005) PC288(A)

NEXT APPEARANCE
☐ Defendant Present ☑ Not Present   ☑ Atty Present   ☐ AD / PD / IDO / Special App.
☐ Arr'd ☐ Adv ☐ ☐ Wav ☐ Amend Compl/Info ☐ Arr ☐ Plea ☐ IDO ☐ PTC ☐ Prob / Sent ☐ Interpreter   ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect of Rpt ☑ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☑ S / B MTC ☐ Bail Exonerated ☐ Forfeited ☐ Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Jury Wav ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / TW / TW Sentence ☐ Ref'd   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Deal ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved / Appt'd ☐ Crim Proc Susp ☐ Reinst Status Hrg ☐ BW Ordered $ ☐ Stayed ☐ To Issue
☐ Hrg on Motion   ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWI
☐ Stip to Comm'r ☐ Dft. Appointed   ☐ Max Term   ☐ Committed ☐ Proof of   ☐ Proof of
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to   ☐ Amended to   ☐ (M) VC12500(a)/ VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP   ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of   ☐ Submit time of Sent ☐ Harvey Stip
☐ Dismissal / Striking   ☐ Adv Max Pen / Parole / Prob / Immig./ Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term ☐ P36 ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued ☐ Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #
☐ Sent Suspended   ☐ PROBATION DENIED ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period ☐ COUNT   $   + PA $   ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs.   AIDS / CPP $   + PA $   SORP
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release ☐ DPF   $   + PA $   EMAT $
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail ☐ LAB   $   + PA $
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer ☐ DRF /RF   $   Add'l RF $   Susp'd PC1202.44/
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos   Enroll within ___ days ☐ AEF.   $   Original Fine $
☐ DL Susp/ Restr'd/ Rvk'd for ___   ☐ IID Not Ordered/ Rmv'd Term ___ Yrs. ☐ SECA/COPA   $   CTS PC2900.5 $
☐ No contact with victim or family / co-defts unless appr. by APO ☐ PC1202.05 ☐ ICMF   $   TOTAL DUE   $
☐ DVPO issued / mod /term'd Exp ___   ☐ Victim Present ☐ ICIN   $   Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ prgm ☐ AR   $   / Mo beginning
☐ Not own/possess deadly weapons ☐ Destroy/return weapon ☐ SHELTER $   ☐ FINE STAYED
☐ Stay away from ___   ☐ DV   $   Committed @ $ ___ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold ☐ ATTY   $   Consec/Conc to ___
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ☐ ASF$25/CPF$10$ ___ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education ☐ P/INVEST ___ ☐ P/SUP $ ___ /Mo. ☐ Waived
VOP: ☐ Wav ☐ Arr'd ___ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP ☐ CJAF $129.75/$259.50 $ ___ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ___   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein ☐ Restit ☐ Gen $ ___
☐ Co-terminous with ___   ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: ___

JAIL/PRISON ☐ See Attach'm Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence ___ County Jail
Count   F/M      Violation:        Prison Term / Yrs   Enhancement / Priors      Yrs / Styd / Strkn   HRS / DAYS / MOS

| Count | F/M | Violation: | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

CTS = ___ ACT + ___ ☐ 4019 ☐ ½ ☐ ¼ ☐ PC2933.1 ___ Total  Total term ___ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ ☐ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ___
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ___ ☐ Adv/ORD ___ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to ___
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ Comp Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process ___ AM/PM ☐ Stay / Surrender / Transport to ___ @ ___ AM/PM or Sooner
☑ REMANDED-BAIL $ ___ ☑ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ___ ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

664

```
L19   SUPERIOR COURT                              CASE NO.     C1223754
      190 W. HEDDING ST                                 CEN     12001535
      SAN JOSE, CA 95110        DATE    04/29/2013  8:30 DEPT. 24
PEOPLE VS.   CRAIG RICHARD CHANDLER          10/25/1976 CA83721080   CDY BK:Y
L.K.A.       1361 N SAN PEDRO ST             CLERK  C GUERRA MUCAFNEZ BK966 M
             SAN JOSE, CA 95110              HEARING   MASTER TRIAL CALENDAR
JUDGE  HON. THANG NGUYEN BARRETT   DV: AGENCY  SJ-04313-   -UNKNOWN
REPORTER M. DAVIS                  CHILD: STATUS  I-SET -NBA           TW   Y
DEF. ATTY. MADDEN, BRIAN   (G)   D.A. R. MENDOZA    APO
CHARGES    F(001)PC288(A)            F(002)PC288(A)        VIOLATION DATE
           F(003)PC288(A)            F(004)PC288(A)        09/01/2010
           F(005)PC288(A)
```

NEXT APPEARANCE _____ N/A

☐ Defendant Present ☐ Not Present          ☐ Atty Present                    AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ A Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDO ☐ PTC ☐ Prob / Sent   ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprtr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv    ☐ Speel ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Ref'd _____   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F  ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg  ☐ BW Ordered $ _____  ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____      ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____                          ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____                 ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal  Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $ _____  ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____      ☐ PROBATION DENIED   COUNT ___ $ _____ + PA $ _____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ___ $ _____ + PA $ _____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs   AIDS / CPP $ _____ + PA $ _____ ☐ SORP _____
☐ Report to APO within _____ Days  ☐ Terminated ☐ Upon Release   DPF $ _____ + PA $ _____ ☐ EMAT $ _____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB $ _____ + PA $ _____
☐ Not drive w/o valid DL & Ins  ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF $ _____ Add'l RF $ _____ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days   AEF $ _____ Original Fine $ _____
☐ DL Susp/ Restr'd/ Rvk'd for _____  ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA $ _____ CTS PC2900.5 $ _____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $ _____ TOTAL DUE $ _____
☐ DVPO issued / mod /term'd Exp _____    ☐ Victim Present  ICIN $ _____ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____  AR $ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $ _____ FINE STAYED _____
☐ Stay away from _____    DV $ _____ Committed @ $ _____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $ _____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$ _____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P/INVEST $ _____ ☐ P/SUP $ _____ ☐ No ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $ _____ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $ _____ to _____
☐ Co-terminous with _____  ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____
JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence   County Jail
Count   F/M       Violation      Prison Term / Yrs    Enhancement / Priors    Yrs / Styd / Strkn   HRS / DAYS / MOS

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ' Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____ 666
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☐ REMANDED-BAIL $ _____  ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

L14   SUPERIOR COURT
190 W. HEDDING ST
SAN JOSE, CA 95110

PEOPLE VS.   CRAIG RICHARD CHANDLER
L.K.A.   1361 N SAN PEDRO ST
SAN JOSE, CA 95110
JUDGE   HON. THANG NGUYEN BARRETT
REPORTER M. DAVIS
DEF. ATTY. MADDEN, BRIAN   (G)   D.A. R MENDOZA
CHARGES   F(001) PC288(A)          F(002) PC288(A)
F(003) PC288(A)          F(004) PC288(A)
F(005) PC288(A)

CASE NO.   C1223754
CEN        12001535
DATE   05/06/2013  8:30 ADEPT. 24
10/25/1976 CAB3721090   CDY BK:Y
CLERK                    EBK966 M
HEARING   MASTER TRIAL CALENDAR
DV: AGENCY  SJ-04313-   -UNKNOWN
CHILD: STATUS   I-SET -NBA        TW  Y

VIOLATION DATE
09/01/2010

NEXT APPEARANCE

☐ Defendant Present ☑ Not Present   ☑ Atty Present
☐ Arr'd ☐ Adv ☑ ... ☐ Amend Comp/Info  ☐ Arr ☐ Plea ☐ IDO ☐ PTC ☐ Prob / Sent   ☐ Interpreter                    ☐ AD / PD / IDO / Special App   ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav  ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Ball Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B RES   ☐ Bail Exonerated ☐ Forfeited  Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal  ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Ded ☐ Adm A / F  ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved_____Appt'd  ☐ Crim Proc Susp ☐ Reln ☐ Status Hrg   ☐ BW Ordered $_____     ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Submn on Report ☐ Found _____   ☐ BW Set Aside ☐ Recalled ☐ ... ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____   ☐ Proof of _____        READY/ NOT
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____                              ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____                                   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal  ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial  ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term  ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term. Fee $_____ ☐ Guilty Plea Rendered
☐ Waivers Referral  ☐ APO Full Rpt ☐ CR110 Issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____         PROBATION DENIED  COUNT___ $_____ + PA $_____      ☐ Purs H&S11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT___ $_____ + PA $_____    ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs  AIDS / CPP $_____ + PA $_____  SORP_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF   $_____ + PA $_____  EMAT $_____
☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB   $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF / RF $_____ ☐ Add'l RF $_____ ☐ Susp'd PC1202.44/A
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF   $_____  Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA $_____ CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF  $_____  TOTAL DUE $_____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present  ICIN  $_____  Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR    $_____ ☐ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $_____ FINE STAYED _____
☐ Stay away from _____  DV    $_____ Committed @ $_____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY  $_____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10 $_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST   $_____ ☐ P/SUP $_____  ☐ _____ ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, P/INVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence        County Jail
Count   F/M   Violation   Prison Term / Yrs   Enhancement / Priors   Yrs / Styd / Strkn   HRS / DAYS / MOS

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☑ Pre-process _____ ☐ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☑ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

665

1  BRIAN MADDEN, SB# 55869
2  MADDEN & REDDING
   1625 The Alameda, Suite 801
3  San Jose, California 95126
   Telephone: (408) 275-8100
4  Facsimile: (408) 275-8199

5  Attorney for Defendant
6  CRAIG RICHARD CHANDLER

F I L E D

MAY 1 2 2019

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY  C. STAFFORD          DEPUTY

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF SANTA CLARA

10

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff,<br><br>vs.<br><br>CRAIG RICHARD CHANDLER,<br>Defendant. | Case No. C1223754<br><br>**DEFENDANT'S PROPOSED JURY QUESTIONNAIRE AND MEDIA ARTICLES IN SUPPORT OF DEFENDANT'S REQUEST FOR JURY QUESTIONNAIRE** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Madden & Redding*
*Attorneys at Law*
*1625 The Alameda, Suite 801*
*San Jose, CA 95126*
*(408) 275-8100*

667

Page 1
DEFENDANT'S PROPOSED JURY QUESTIONNAIRE AND MEDIA ARTICLES IN SUPPORT OF
DEFENDANT'S REQUEST FOR JURY QUESTIONNAIRE

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,
    Plaintiff

Case No. C1223754

      vs.

CRAIG RICHARD CHANDLER,
    Defendant

As a part of your jury duty, I am asking you to complete this questionnaire.  Please answer the questions completely and honestly.  The information that is contained in this questionnaire becomes part of the Court's permanent record in this case.

Because this questionnaire is part of the jury selection process, you must answer the questions under the penalty of perjury.  You must fill out the questionnaire by yourself and not discuss it with anyone else.  If you want to make further comments concerning your answers, please use the Additional Space for Continued Answers Sheet at the back of your questionnaire.

As you answer the questions please keep in mind that there are no "right" or "wrong" answers.  You are only expected to answer the questions to the best of your ability, but please be thorough.  If truthful, an "I don't know" or "I can't remember" answer is acceptable.  Where dates are requested, approximate dates (month and year) are satisfactory if exact dates are unknown.  Complete answers are far more helpful because they shorten the time it takes to select a jury.  Some of the questions may call for information of a personal nature that you may or may not want to discuss in public, i.e., in an open courtroom with the press and/or public present.  In any instance where you feel your answer might be embarrassing, you may indicate this by circling the question number and writing "personal" next to the item.  Please answer the question on the questionnaire.  The Court will give you an opportunity to explain your request for confidentiality.

Please answer all the questions to the best of your ability so that I will not have to return the questionnaire to you to be completed.  Please use a black or blue pen when writing your responses and write legibly.  Do not write anything on the backside of a page.  If you need to make further comments concerning your answers, please use the sheet entitled "Additional Space for Continued Answers" found at the end of the questionnaire and refer to the question number to which your continued answer applies.

From time to time there may be news coverage of cases being tried in the courthouse.  The Court does not know if there will be any additional coverage of this case.  In order to insure a fair trial for both sides in this case it is necessary that you avoid any contact with the news media and avoid receiving any information about this case or subjects possibly related to it that does not come directly from testimony, evidence, or instructions given in the courtroom.

668

From this moment forward each of you is ordered not to read, view, listen to, or discuss any news media coverage that might have anything to do with this case: **The People of the State of California v. Craig Richard Chandler** or any subjects possibly related to it. This also means that you are not to allow anyone else to tell you about these things. Should you be exposed to any news media coverage, even by accident, you must immediately inform me of that fact.

You must not research or investigate this case or any of the parties involved. This includes internet research.

You are ordered not to discuss this case, the juror selection process, this questionnaire, or anything about what goes on inside this courtroom with anyone until I tell you differently. This includes other jurors, friends, spouses, family, roommates, co-workers, or anyone. I am aware that it can be extremely difficult not to talk about something you are involved with and which you probably consider very important; however, you must follow this admonition. The only exception allowed is that you may inform your employer and members of your family that you are a potential juror in a case, what the anticipated length of the trial is, and your scheduled appearances in court. Other than that you may not discuss anything about this case with anyone.

Again, the Court asks that each of you be as open and candid as possible. The Court appreciates your complete honesty in all these matters. Sometimes there are people who, in their effort to serve as jurors, believe that the Court or the attorneys are looking for certain answers to specific questions and respond accordingly. As a result, although they mean well, they are not totally honest and candid. The only things we are looking for are complete and honest answers.

If you believe that for some reason you may have difficulty in filling out the questionnaire, please explain that difficulty when you are given the questionnaire by court staff.

_____
JUDGE OF THE SUPERIOR COURT

669

<u>JUROR QUESTIONNAIRE</u>              Juror # _____

1.   Full Name: _____ Age: _____

2.   Where in Santa Clara County do you live? _____

3.   Where do you work (IF UNEMPLOYED OR RETIRED, WHERE DID YOU WORK)?

     _____

4.   How long have you worked there? _____

5.   What is your current position or title? _____

6.   What are your duties or responsibilities? _____

7.   What jobs have you held in the past? _____

8.   Have you ever been responsible for supervising, hiring or firing employees? ☐ YES ☐ NO

9.   What is your current marital status? _____
     If married, for how long? _____ How many times have you been married? _____
     If divorced, was it  ☐ amicable or ☐ not amicable?

10.  How far did you go in school [if college, name school(s) and any degree(s) you received]?
     _____

11.  Where does your spouse, ex-spouse or the person with whom you are living work (IF
     UNEMPLOYED OR RETIRED, WHERE DID THIS PERSON WORK)? _____
     _____

12.  Please list the sex, age and occupation for each of your:

| CHILDREN (including step-, adopted and foster children) | | | Grandchildren: | | |
|---|---|---|---|---|---|
| Sex | Age | Occupation | Sex | Age | Occupation |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

13.  Have you attended any lectures, seminars, or courses in any of the following areas:
     abnormal    ☐psychology, ☐criminal justice, ☐human sexuality, ☐psychology or
     ☐sociology, ☐law enforcement, ☐law?

670

14. Do you have any relatives or friends who work with adults or young people who have been physically or sexually abused?  ☐ YES ☐ NO.  If YES, please tell us who and what work this person did: _____

15. WITHOUT MENTIONING NAMES (other than yourself), whether or not you considered it a crime or reported it to the police, have you or anyone close to you ever been sexually assaulted or had any unwanted physical or sexual contact, including any sexual behavior that you or they believed was inappropriate?  ☐ YES ☐ NO. If YES, what happened, and did you/they tell anyone about it? _____
_____
_____

16. Has anyone ever touched or spoken to you or someone close to you, including a child, in a way that you thought was sexually inappropriate?  ☐ YES ☐ NO
If YES, please explain: _____
_____
_____

17. Have you or anyone you know well ever felt in danger of or been threatened with being sexually assaulted, molested or raped by another person, including a stranger, acquaintance, family member or anyone else?  ☐ YES ☐ NO.  If YES, please explain: _____
_____
_____

18. Have you or anyone close to you ever been accused of molestation or sexual assault against a child or an adult?  ☐ YES ☐ NO.  If YES, please explain: _____
_____
_____

19. Have you or anyone close to you ever been involved in a lawsuit in which there were claims for money damages due to child molestation, sexual assault or sexual harassment?
☐ YES ☐ NO.  If YES, please explain: _____
_____
_____

20. Have you or anyone close to you ever been involved in a criminal matter involving issues of child molestation, sexual abuse or assault as a defendant, victim, witness, expert, or in any other capacity?  ☐ YES ☐ NO.  If YES, please explain: _____
_____
_____

21. Do you know any district attorneys, deputy district attorneys, criminal defense attorneys, or judges on a personal, professional or casual basis?  ☐ YES ☐ NO.  If YES, whom do you know and what is the nature of your relationship? _____

671

22. Other than what you have previously described, have you or anyone close to you ever been the victim of a crime, whether or not it was reported to law enforcement?  ☐ YES ☐ NO  If YES, what was the crime? _____. Was anyone arrested? ☐ YES ☐ NO  If YES, were you satisfied with the outcome? ☐ YES ☐ NO.  PLEASE EXPLAIN YOUR ANSWER: _____

23. Have you ever suspected that someone you know was being or had been sexually abused?  ☐ YES ☐ NO.  If YES, what did you do? _____

24. Do you think that individuals who claim they have been victims of child molestation are more believable than those who report being the victim of another type of crime?  ☐ YES ☐ NO.  If YES, please explain: _____

25. Do you believe that if more than one child claims they were molested by the same person, that person is most likely guilty?  ☐ YES ☐ NO.  If YES, please explain: _____

26. Have you, your children or other family members seen or discussed any media coverage of this case or any other case involving child molestation or sexual assault?  ☐ YES ☐ NO  If YES, please explain: _____

27. In criminal cases, the prosecutor must do more than prove that a defendant is probably guilty.  Instead, the prosecution must prove his/her case beyond a reasonable doubt.  Do you feel that the burden of proof should be lower when the charges involve child molestation?  ☐ YES ☐ NO.  If YES, please explain: _____

28. Is there anything about your experiences, feelings, or beliefs about child sexual abuse that would make it difficult for you to listen to the testimony and impartially weigh the evidence in a case involving these types of allegations?  ☐ YES ☐ NO.  If YES, please explain: _____

29. Please list any civic, political, social, professional, or religious organizations to which you belong: _____

30. What is your religious affiliation, if any? _____

31. The defendant in this case, Craig Chandler, is charged with 5 counts of child sexual abuse for sexually abusing five children who were his students at O.B. Whaley Elementary School.  Is there anything about a case involving sexual abuse of a child that would affect your ability to serve as a juror?  ☐ Yes ☐ No.  If YES, please explain: _____

672

Page 5 of 7

32.   Under the law a person who is charged with a crime is presumed to be innocent.  How difficult would it be for you to presume innocent a person who is charged with sexual assault on a minor?
□ Very difficult   □ Somewhat difficult   □ Not too difficult   □ Not difficult at all
Please explain: _____
_____

33.   Do you or anyone close to you work in a job where you are mandated to report sexual abuse if you suspect it has occurred?  □ YES □ NO.  If YES, have you ever reported anyone?  □ YES □ NO

34.   Have you or anyone close to you been charged with a crime?  □ YES □ NO.  If YES, please explain, including the person's relationship to you, the charges, and the outcome of the case: _____
_____
_____

35.   How many times have you served on a □ Civil Jury ___ time(s) □ Criminal Jury ___ time(s) □ Grand Jury ___ time(s)
1.   What types of case(s)? _____
2.   What was the verdict(s)? _____
3.   Were you ever the foreperson?  □ YES □ NO

36.   Have you or anyone close to you worked for an attorney or law firm?  □ YES □ NO.  If YES, who was that and what was the name of the attorney or firm? _____

37.   Do you know any prosecutors, assistant prosecutors, criminal defense attorneys, or judges on a personal, professional or casual basis?  □ YES □ NO.  If YES, whom do you know and what is the nature of your relationship? _____

38.   Please list any newspapers, professional journals, magazines, or other periodicals to which you subscribe or regularly read? _____
_____

39.   What is your primary source of news, including internet sites? _____
_____

40.   Do you regularly visit internet chatrooms, blogs, twitter, or social network sites?
□ YES □ NO.  If YES, please list: _____

41.   Have you followed this case on the radio, television, newspaper, or internet media?
□ YES □ NO

42.   Is there anything else that you feel is important for the parties in this case to know about you? _____
_____

43.   Is there any matter you would prefer to discuss privately with the court?  ☐ YES  ☐ NO.

ADDITIONAL SPACE FOR CONTINUED ANSWERS

The answers that I have given are true and correct to the best of my knowledge.

_____
Juror Signature

674

675

# People
## v.
# Craig R. Chandler

# MEDIA ARTICLES
# IN SUPPORT OF
# DEFENDANT'S REQUEST
# FOR JURY
# QUESTIONNAIRE

676



San Jose Mercury News
A8 · BAY AREA NEWS GROUP · 111
FRIDAY, APRIL 12, 2013

**Editorial**

# How to stop child abuse by teachers

In Antioch, a principal, special education director, assistant superintendent of human resources and special education coordinator, all knew parents were complaining that a teacher was mistreating her autistic students.

Yet it was parents, not school personnel, who finally notified police. *The Bay Area News Group* reported last week that several families also filed a lawsuit alleging Muir Grant Elementary School teacher Theresa Allen-Caulboy slapped, pinched and verbally abused autistic students.

Failure to immediately report suspected abuse to authorities is a crime. In a widely publicized Santa Clara County prosecution last year, an

California needs a uniform program of precise training on the mandatory reporting law required annually for school workers.



677





678



Search

HOME    NEWS    VIDEO    WEATHER    **INVESTIGATIONS**    SPORTS    ENTERTAINMENT    U LOCAL    TRAFFIC    CONTESTS

# THE INVESTIGATIVE UNIT

HOLDING THE POWERFUL ACCOUNTABLE

SEND TIPS | 888-996-TIPS

HOME > INVESTIGATIONS

# Exclusive: Accused Teacher's School Ignores Title IX

As a South Bay teacher charged with sexually abusing five of his students awaits trial, the Investigative Unit exposes the school district at which he worked ignoring a federal law designed to protect students in cases like this.

By Jenna Susko, Julie Putnam and Felipe Escamilla | Monday, Jan 7, 2013 | Updated 8:47 AM PST

View Comments (0)  |  Email  |  Print          0          Tweet  0          Recommend   4          Send



As a South Bay teacher charged with sexually abusing five of his students awaits trial, the Investigative Unit exposes the school district at which he worked ignoring a federal law designed to protect students in cases like this. Jenna Susko reports. This story was first aired at 11 p.m. on Jan. 8.

FOLLOW US          Follow          Like   4

MEET THE TEAM



TOP STORIES



The Great Train Robbery



One Gas Pump Key Lets Thieves Steal Your ID

advertisement

OB Whaley Elementary in Southeast San Jose sits at the center of a sexual abuse case involving one of its teachers and the Investigative Unit has uncovered the school district not complying with a federal law meant to protect students in situations just like this.

The law, Title IX, requires schools have a system in place to file sexual harassment and

679





**Berkeley Woman Breaks Chains of Human Trafficking**

FOLLOW NBCBAYAREA

abuse complaints, a trained coordinator to process them and that this information be made public for staff, students and parents.

At the time of the alleged abuse, Evergreen did not have a trained Title IX coordinator or contact information published online.

"It is very difficult to describe how much damage this has done," the father of one of the alleged victims told NBC Bay Area, in an exclusive, anonymous interview.

"It's bad," the mother said through tears, her husband placing his arm around her shoulder.

The parents, who spoke anonymously with NBC Bay Area in Spanish, describe their young daughter as a beautiful, responsible girl who loves to read and play with Disney princesses. She is also one of five OB Whaley students the Santa Clara County District Attorney's Office identified as being sexually abused by Craig Chandler.

The alleged abuse came to light when a parent contacted police.

According to these hand written notes by then-principal, Lyn Vijayendran, a 2nd grader gave an account of being blindfolded by Chandler and him putting something in her mouth while alone in a classroom as part of a "Helen Keller lesson".

Vijayendran testified in her own trial in November that she gave this information to district Human Resources Director, Carole Schmitt and was told to handle it on her own. Vijayendran did not report the allegations to police or Child Protective Services.

Schmitt then testified she had not received any sexual harassment or abuse training.

To view Schmitt's full testimony, click here.

Yet according to the district, Schmitt is the Title IX Coordinator, the individual responsible for handling all sexual harassment and abuse complaints.

The Investigative Unit also found that her contact information was not published online, as required by Title IX, so staff and parents know who to contact in these situations.

Title IX is supposed to be enforced by the Department of Education. DOE informed NBC Bay Area it does not have the resources to monitor every school district but does perform investigations when requested by the public.

Even though a jury convicted Vijayendran of failing to report, an alleged victim's attorney, Paul Matiasic, believes Evergreen should be held civilly accountable for failing to comply with Title IX.

"Title IX is in place to prevent these types of occurrences," Matiasic told NBC Bay Area.

"I do firmly believe more kids were abused [at OB Whaley] by virtue of the fact that they failed to comply with Title IX."

Matiasic is representing the family in a civil suit against Chandler, Evergreen and the school's then-principal Vijayendran.

"Had they paid attention to that which they are obligated to do, we wouldn't be sitting here talking today," Matiasic said.

"If they had followed the law appropriately, none of this would have happened," South Bay attorney

630

Bob Allard told NBC Bay Area.

Allard is separately representing a 10-year-old alleged victim not identified by the District Attorney. This abuse allegedly occurred from 2010-2011.

"The information was conveyed to a Title IX coordinator and the appropriate action was not taken," Allard said.

Evergreen is not the first to ignore Title IX. The Investigative Unit exposed several Bay Area schools overlooking Title IX in November.

The Investigative Unit emailed more than 200 principals across the Bay Area, asking how to contact the Title IX coordinator. Less than half responded within two weeks and of those who did, most could not name the coordinator.

To view the original report, click here.

NBC Bay Area has reached out to Evergreen School District for two months to ask if the district plans to make changes to become Title IX compliant and if the coordinator will receive the necessary training. Superintendent Kathy Gomez declined NBC's interview request. Human Resources Director Carole Schmitt did not respond. The school district's attorney, Mark Davis did not answer NBC Bay Area's questions.

So the Investigative Unit met up with the Superintendent outside her office.

"I think I directed you to our attorney," Superintendent Gomez told NBC Bay Area.

"He has not answered any of our questions," Investigative Reporter Jenna Susko responded. "Why can't you answer simple questions about what your policy is and whether or not anyone has been trained on Title IX?"

Gomez directed NBC Bay Area to the attorney again and drove off.

Afterward, the attorney sent NBC Bay Area an email offering generic information about Title IX and stated that the coordinator has received training, but did not send any documentation to support that.

He also wrote:

"I do not believe the issues involving the OB Whaley situation necessarily involve Title IX issues. Rather, they involve allegations of harassment and child abuse."

"Without NBC's investigation into many Title IX issues and concerns how would we know about half of what's going on in bay area schools?" Noreen Farrell, with Equal Rights Advocates told the Investigative Unit.

ERA has also filed a request for information from Evergreen, asking for proof it's following Title IX. She is still waiting for answers.

"What I would advise a school district that has faced these horrible allegations is that they should be upfront doing everything to make sure students feel safe, parents feel confident and that members of the public feel confident," Farrell said.

"For educators to stick their heads in the sand about sexual abuse of minors and the application of Title IX is a real problem."

NBC has uncovered that since contacting the district, Evergreen's web site is now updated to include contact information for the Title IX Coordinator and a section explaining Title IX.

To view the updated web site, click here.

681

Exclusive: Accused Teacher's School Ignores Title IX | NBC Bay Area                                    1/7/13 1:34 PM

"I would like to say the first thing lost is trust. You lose trust in teachers, and you just don't know who to trust," the alleged victim's father told the Investigative Unit, as his wife agreed.

The parents hope their voices and their pain will inspire change.

"I would ask that they would pay attention and follow these laws because it can have a terrible effect on the life of a family, when a tragedy happens," the father said.

"I hope that this helps other school districts so they can take more responsibility and prevent such things from happening to other families."

Teacher Craig Chandler is scheduled to appear in court January 22.

If you have a tip for the Investigative Unit, email theunit@nbcbayarea.com

*Follow NBC BAY AREA for the latest news, weather, and events: iPad App | iPhone App | Android App | Facebook | Twitter | Google+ | RSS | Text Alerts | Email Alerts*

| | EMAIL | |
|---|---|---|

Posted 6 hours ago

        0        Tweet   0        Recommend    4        Send

## Leave Comments

| |
|---|
| Comment using... |

Facebook social plugin

5 Foods you must not eat :
Cut down a bit of stomach fat every
day by never eating these 5 foods.                    Never eat

### NEWS



**INVESTIGATIONS**
Exclusive: Accused Teacher's
School Ignores Title IX



**LOCAL**
SFPD Search For Boyfriend
After Woman Set on Fire



**NATIONAL INTERNATIONAL**
Obama Nominates Hagel for
Defense, Brennan for CIA

News

### INVESTIGATIONS



**INVESTIGATIONS**
Exclusive: Accused Teacher's
School Ignores Title IX



**INVESTIGATIONS**
The Great Train Robbery



**INVESTIGATIONS**
One Gas Pump Key Lets
Thieves Steal Your ID

Investigations

### PHOTOS AND VIDEOS



**POLITICS**
White House
Photographer's Fave Photos
of 2012



**ENTERTAINMENT NEWS**
Globes: 20 Years of
Winning Movie Actresses



**STORIES**
Sunday Showers, Turning
Breezy

Multimedia

682

After alleged molestations, Evergreen School District riles parents with letter – San Jose Mercury News                    12/11/12 10:02 AM

SIGN IN | REGISTER | NEWSLETTERS                                                    Part of the Bay Area News Group

MercuryNews.com

Like  34k        eEdition / Subscriber Services
                 Mobile | Mobile Alerts | RSS

NEWS  PHOTOS  BUSINESS  TECH  SPORTS  ENTERTAINMENT  LIVING  OPINION  PUBLICATIONS  MY TOWN  HELP        JOBS  CARS  REAL ESTATE  CLASSIFIED  SHOPPING

Site  Web Search by YAHOO!                          San Jose, CA  Now:54°F  High:68°F  Low:48°F  city or zip

today'sDEALS  HOLIDAY GIFT GUIDE   NOB HILL

In The News:    More concerns for HP  ·  Zombie argument triggers shooting  ·  Warriors on a roll  ·  UC gets new logo  ·  Rihanna-Brown spat  ·  SolarCity IPO

Advertisement

Recommend    Send    5 people recommend this.              0    Share    Tweet  0

## After alleged molestations, Evergreen School District riles parents with letter

By Sharon Noguchi
snoguchi@mercurynews.com
Posted:  12/11/2012 06:06:13 AM PST
Updated:  12/11/2012 08:44:45 AM PST

Aesthetic & Refractive
Surgery Medical Center
The first center in the
Western Region of the US to offer
Precision Laser Cataract Surgery
with Catalys

(408) 903-7181

San Jose 455 O' Connor Dr • Suite #180 A-B
randalpham@alumni.ucsf.edu

The Evergreen School District has sent parents a defensive letter appearing to partly excuse its response after a parent reported a teacher possibly molesting a child in his classroom.

Instead of filing a report with Child Protective Services, the district itself looked into and dismissed the allegation.

The letter also announced the district plans to enroll a sampling of students in an assault prevention program early next year.

The move comes as Evergreen teacher Craig Chandler faces trial next month on five counts of lewd and lascivious acts on a child under age 14. Lyn Vijayendran, who was principal of O.B. Whaley elementary school, was convicted last month of failing to report suspicions of child abuse.

In addition, the district faces civil suits filed on behalf of two of the victims. In its letter to parents, the district announced plans to enroll children in three grade levels in child-abuse-prevention workshops offered by the YWCA of Silicon Valley. Although the letter was dated Nov. 16, parents reported receiving letters as late as Saturday.

Rather than assuage worry, the letter appears to have churned parental anger.

"The district continues to excuse what has happened," said one parent, who didn't want to be identified because she said she works closely with district leaders. "That leaves the question of who's looking out for our kids."

Evergreen board President Jeff Fischer last week said he was unaware                    of the letter sent by Superintendent Katherine Gomez.

Advertisement

Because the district is being sued, Fischer and other trustees have refused to speak about the alleged molestation, the district's response to it and even plans for the assault-prevention training. Board members refer inquires to Gomez, who in turn refers them to the district's attorney, Mark Davis.

Davis said the main purpose of the letter was to advise parents about the workshops, known as the Child Assault Prevention Program, and to update parents about Chandler's arrest and Vijayendran's trial.

The district hired a private investigator to look into its handling of the complaint against Chandler — the parent of one of the alleged victims approached the school in October 2011, and Vijayendran's response was to transfer the student to another class. Chandler was arrested only after the parent of a second child came forth in January with a similar complaint and contacted police.

Davis said because the district is being sued, it's "not in its best interest" to release the investigator's report, to name the investigator nor to say how much the district has spent on its investigation.

Gomez's letter to parents indicates the investigator found that when the district looked into the parent's allegations, it was hampered by Chandler who "provided a seemingly credible and convincing denial of any inappropriate activity."

But the difficulty and delicacy in sorting out allegations of child abuse is the reason that California law requires suspicions be reported to law enforcement, and not investigated by untrained school employees.

Gomez acknowledged in her letter that the district should have reported the behavior, as required by law. "The district has taken action in an effort to make sure this conduct does not occur again."

Breaking news

Latest from MercuryNews.com

Sunnyvale: Police investigate robbery near Caltrain station
Marissa Mayer announces Yahoo Mail redesign focused on speed, mobile
Michigan House approves anti-union right-to-work law amid protests
Daly City: All lanes open on Skyline Boulevard after cliff rescue
Livermore shoppers stunned by anonymous good Samaritans

You must be logged in to Facebook to use social plugins.

Mercury News Breaking News

Most Viewed  Most E-Mailed

(From the last 12 hours)

1. University of California introduces a modern logo
2. Kawakami: Brandon Jacobs finds out what happens when you challenge...
3. Editors' Picks: Top stories on MercuryNews.com
4. NFL: New England Patriots crush Houston Texans for seventh...
5. Hicks: Rihanna and Chris Brown have weekend spat
6. Roadshow: New paving techniques help drain water off freeways

worthington belted military coat $70

Homecomings

After alleged molestations, evergreen School District riles parents with letter – San Jose Mercury News                    12/11/12 10:02 AM

And while Gomez's letter explains -- without mentioning her by name -- that Vijayendran was found guilty of misdemeanor failure to report, Gomez points out that "The decision was a difficult one and it took the jurors two days to reach their verdict." She also noted that jurors said later that the principal didn't cover up or "intentionally ignore a known incident of child abuse."

The police investigation reveals that Vijayendran contacted Evergreen Human Relations Director Carole Schmitt, who guided her through interviewing the parent, child and Chandler.

Another Evergreen parent, who also declined to be identified, said she's appalled that both Schmitt and Vijayendran, who was reassigned to the district office as coordinator of teacher-support programs, remain employed by Evergreen. And she believes the abuse-prevention training misses the target.

"The child did the right thing. She told her mom, and mom went to the school. It's the principal and the school that let those families down."

Contact Sharon Noguchi at 408-271-3775. Follow her at Twitter.com/NoguchiOnK12.

*For Evergreen Parents*

Are you an Evergreen parent wishing to comment on Superintendent Katherine Gomez's letter about the district's response to alleged child molestation at O.B. Whaley school? E-mail reporter Sharon Noguchi at snoguchi@mercurynews.com

ssd_lster

Soldier Tim Kenne falls deeper into post-war depression and anger

...read more

News Videos »

Recommendations

You need to be logged into Facebook to see your friends&#039; recommendations.

Elizabeth Drescher: Pope Benedict's tweets—will they be ministry, marketing or something more?
5 people recommended this.

University of California introduces a modern logo
6,494 people recommended this.

Facebook social plugin

Top Classifieds

Rentals   Jobs   Real Estate   Autos

PROP MGMT.
CHOWCHILLA AREA:
3/2.5 Beautiful Home $459,900
NEW Shaver Lake View Cabing in development
ALL LISTINGS

Reprint  BOOKMARK     Print   Email   Font Resize  Return to Top

Recommended for You

684

Recommended for You

► Hicks: Rihanna and Chris Brown have weekend spat
► Hewlett-Packard stirs more concerns with...
► Marin: Lucasfilm wins appeal of pregnancy...

• FAQ: Article commending how-tos and tips

Powered by
newstogram

**Marsha Seeth · James Lick High School**
Carole Schmitz should have been charged as was VijayachmmOur children depend on us to
protect them!
Reply · 1 · Like · about an hour ago

Second winner of record Powerball jackpot
identified as Matthew...
(From Dailyide.com)

**Mary L Holman ·  Top Commenter · San Rafael, California**
Who in the world would ignore such an issue. Children deserve better.
Reply · 1 · Like · 16 hours ago

**Pannon Insurgent ·  Top Commenter**
This is a hoolabaloo in most cases. The greedy lawyers and their dictatorship ruling
America for money. People who work with students (teachers, aids, bus drivers, janitors)
likely to be "accused", without doing anything inapproplaze. The stupid greedy lawyers and
their money-hunger stand behind this crap. It's a feminist (communist) attack on men.
America needs an armed revolution again!
Reply · Like · 15 hours ago

   **Jesse Shatner ·  Top Commenter**
   Um, yeah. Go away
   Reply · 2 · Like · 12 hours ago

   **Gargi Mitra Keeling ·  Top Commenter · Vmware at VMware Inc**
   agreed....."Pannon Insurgent" has issues....
   Reply · Like · about an hour ago

**Eric Low · Campolindo High School Alumni**
You'd think they would have learned something from the Moraga School District's
problems.
Reply · Like · 2 hours ago

**Shannon Conway · Rocklin, California**
Add a comment...
Reply · Like · 14 hours ago

Facebook social plugin

## Breaking News

Sunnyvale: Police investigate robbery near Caltrain station
Michigan House approves anti-union right-to-work law amid protests
Masked gunmen attack Egyptian protesters; tens of thousands hold rival rallies
Mali coup leaders force prime minister to resign
Famous Yellowstone wolf among seven shot
NTSB meeting on what caused Emeryville-bound Amtrak crash
Orinda: Car fire briefly stops eastbound traffic in Caldecott Tunnel
Susan Powell's family pointed to father-in-law, but police delayed

Related Results

Walden University Online Doctoral, Master's and Bachelor's. A Higher Degree, A Higher Purpose.                                    Ads by Yahoo
                                                                                                                www.waldenu.edu
The New "Skinny Pill" Stores Sold Out of New WeightLess Wonder Pill "Miracle in a Bottle".
                                                                                                                www.HealthDiscoveriesJournal.com
Mortgage Rates Hit 2.50% Owe Under $729K? You May Qualify for 2.90% APR Govt Refi Plans, Apply!
                                                                                                                www.SeeRefinanceRates.com

Copyright © 2012 – San Jose Mercury News

Place an Ad | About Our Ads | Help/Contact | Site Map | Advertise | Home Delivery | Copyright | Privacy Policy and Terms of Use | About MediaNews Group | RSS | Find San Jose Jobs | Ethics Policy |
About Bay Area News Group |  GET MY YAHOO!
A ▦▦▦MediaNews Group WEBSITE
·MediaNews Group - Bay Area News Group

685

San Jose Mercury News

TUESDAY, NOVEMBER 6, 2012

**CHILD ADVOCATES HAIL VERDICT**

# Principal guilty of failure to report abuse

**Judge: Bad judgment not to go to authorities with girl's allegations**

By Tracey Kaplan
tkaplan@mercurynews.com

SAN JOSE — In a verdict hailed by child-abuse experts, a South Bay Monday, was convicted of failing to report suspected sexual abuse described to her by an 8-year-old girl in vivid and explicit detail about a possible sexual act performed on her by a teacher.

The conviction of former O.B. Whaley Elementary School principal Lyn Vijayendran was only the second time in two decades that Santa Clara County prosecutors said brought such a misdemeanor — and the first time they'd won.

Vijayendran, 36, dabbed at her eyes with a tissue while the clerk read the guilty verdict.

She later wept when Santa Clara

See **PRINCIPAL**, Page 8



Former O.B. Whaley Elementary principal Lyn Vijayendran, right, hears jurors find her guilty.

686

# Principal

Continued from Page 1

County Superior Court Judge Deborah Ryan took the unusual step of immediately sentencing her.

"I agree with the jury's verdict," Ryan told Vijayendran. "You did what you thought was right, but I do think you made a very bad judgment that day."

Vijayendran faced up to six months in jail and a $1,000 fine. But noting the principal's spotless record, the judge sentenced her instead to two years of court probation. She also ordered her to perform 100 hours of community service, preferably by training educators to comply with California's mandated reporter law.

The verdict came as a relief to child abuse experts, who were worried when the jury announced Friday that it was stuck after deliberating for less than six hours. The vote was stalled 8-4 in what jurors later said was in favor of conviction.

A mistrial "would have sent the wrong message," said Margaret Petros, a commissioner on the Child Abuse Council of Santa Clara County. "This verdict is important for all mandated reporters to heed. There are so many who don't take it seriously."

## No training

It was unclear Monday whether Vijayendran's school district, Evergreen Elementary, had gotten the message. The district, which has been sued by alleged victims of the teacher, Craig Chandler, hadn't trained Vijayendran or the human resources director she consulted in how to carry out their legal obligation to report suspected abuse, or neglect, of both women testified.

In a statement late Monday, the district said it understands that the jury in the trial of Ms. Vijayendran had a very difficult decision to make and while we are disappointed with the outcome, we respect the process and remain committed to our mission of working to ensure that each of our students receives a high quality education in a safe and nurturing environment. "We will continue to work with our community to accomplish this."

School districts in California are technically required to provide training for educators but can avoid doing so by simply submitting a letter explaining why they didn't.

Prosecutor Alison Filo said the District Attorney's Office made the rare decision to try Vijayendran because her "lack of judgment" in October 2011 had devastating consequences. Another child reported being molested in a similar fashion by the same teacher about three months later.

Chandler was subsequently arrested in January and ultimately charged with committing lewd and lascivious acts on five children. Tests by the Santa Clara County crime lab found his semen on a classroom chair. The 35-year-old teacher, in jail pending his trial, faces a maximum sentence of 75 years to life if he is convicted.

"The bigger picture is we want mandated reporters to understand to always err on the side of caution and report, never investigate," Filo said.

The only other case in the past two decades involved allegations in 1999 that the head of Hillbrook School in Los Gatos failed to report a bruise on the face of a student. A judge ultimately dismissed the case.

Some argue violators are rarely prosecuted because the law works as intended. Those who are supposed to report suspicions do. Others are monitoring many child-abuse experts disagree.

## Good person

Several jurors said the panel reached consensus after listening to the court reporter read back some of the testimony.

Juror Kathy Eriksen called the case "tragic" but said the verdict was "absolutely necessary" to ensure indicators, teachers and other mandated reporters don't shirk their obligation.

The jurors all felt for Vijayendran, a relatively young principal who had consulted with the head of human resources and was told to question the teacher but the administration thought the ultimate decision about what to do up to Vijayendran.

Juror Christina Rodriguez, who initially voted to acquit the principal, said "There's a lot more people to be blamed for this. She's a good person. We all saw that."

In the end, the strongest evidence against the principal were her own notes from interviewing the child. The girl told the principal that Chandler blindfolded her in a room with no one else there, made her lie down on the classroom floor, told her to open her legs, touched her feet with something that felt like a tongue, inserted it something gooey in her mouth and then wiggled her head around until she tasted a salty liquid. Chandler told Vijayendran that he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years.

Juror Susan LaGaffa said the incident was obviously sexual and the teacher's explanation ludicrous.

"I think she didn't want this ugly thing to be true," LaGaffa said. "But when you have responsibility for hundreds of children you can't afford to drop the ball."

Staff writer Sharon Noguchi contributed to this report. Contact Tracy Kaplan at 408-278-3482. Follow her at Twitter.com/thaplanreport.



Eriksen

Rodriguez



LaGaffa

687

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

⊙ Site   ○ Web Search by YAHOO!                        Walnut Creek, C

In The News:   Zuckerberg privacy problem | Russia to bar U.S. adoptions | Marvell patent ruling | Gun owners' addresses pub

0
Recommend    Send    Sign Up to see what your friends recommend.

Share    Tweet   0

# Mercury News editorial: Sexual abuse in schools cries ou for remedies

**Mercury News Editorial**
Posted: 11/06/2012 03:18:07 PM PST
Updated:  11/06/2012 06:29:16 PM PST

Former O.B. Whaley Elementary School Principal Lyn Vijayendran was distraught on the witness stand last week. She clearly wished she had acted on the first report that teacher Craig Chandler had behav improperly with an 8-year-old girl. Chandler was arrested months later when another child came forward, and he is charged with committing lewd and lascivious acts on five children.

"Now, looking back, I have a different lens," Vijayendran testified.

Given the number of cases of past abuse coming to light recently in South and East Bay schools, Vijayendran can't be th only one who needs a clearer focus on the legal mandate to immediately report possible abuse to the police. Districts ne to examine their policies and make sure there's sufficient training on mandated reporting for all employees -- teachers, human resources staff, everyone.

Professionals may prefer to err on the side of caution in casting suspicion on a colleague, but the law says to err on the side of children and speak up. Some districts make this crystal clear, but obviously not enough of them.

The outrageous nature of the Vijayendran case in San Jose's Evergreen School District prompted the Santa Clara Coun district attorney's office to prosecute her, and on Monday a jury convicted her of failing to report Chandler. This will ripple through school systems. At least we hope it does.

For sheer cluelessness and medieval attitudes, howeve

**NEXT ARTICLE IN** NEWS                                         ✕

Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation

» Continue to article...

Advertisement

SUNNYVALE VW   Signthendrive.com

GotDailyDeals

688

12/27/2012 4:32 PM

Mercury News editorial: Sexual abuse in schools cries out for reform...    http://www.contracostatimes.com/opinion/ci_21941314/mercury-new...

over a period of four years.

The board says holding the victim responsible is just on of nine possible arguments to fend off damage claims, it's no big deal. Come on. Nobody who cares about kid would even want to win that argument. Rape victims, especially children, already feel unwarranted guilt and stigma. If the law found them culpable, why would anyone report abuse?

Board members who would even consider making this case in court ought to be recalled en masse.

Moraga is working on new policies to better comply wit mandated reporting laws, but it's also a matter of cultur change. When Correa was accused of 23 counts of sexual abuse, more than 20 current and former school employees showed up to testify on her behalf at a bail hearing. What does that say to kids in Moraga schools Correa now is serving an eight-year jail sentence.

0

Like

0

The Whaley case was extraordinary in its own way. The principal said she saw nothing sexual in a child's report that Chandler blindfolded her, told her to lie on the floor with her legs spread, then put something gooey in her mouth and wiggled her head until she tasted something salty. Chandler said it was a lesson on Helen Keller. Incredible.

Vijayendran had talked to Chandler instead of calling police partly on the advice of a human resources employee — who said she was never trained in the law on mandated reporters. That's hard to believe, but if it's true in Evergreen, it's probably true elsewhere.

Parents need to start asking questions.

⟳ Reprint   ⌂ BOOKMARK  ⊞ ⚙ 🖶 ...   🖶 Print   ✉ Email   A A A  Font Resize  ⊕ Return to Top


Homeowners in California may be eligible for 2.00% (2.21% APR) refinance rate for most credit types »
{Smarter Rates}


New Rule for California Drivers » San Jose - If you drive in California you better read this..
{Comparisons.org}


Discover the 37 things you should "hoard" before the coming disaster. ...
Ads by Baror

Recommended for You

‣ Roadshow: Barricades for I-680 toll lanes not...
‣ Oakland brings in William J. Bratton to help...
‣ 'Dome' movie theater in Pleasant Hill may be...
‣ Hicks: 'Twilight' actor charged with being...
‣ Contra Costa Fire District sets fire station...
‣ Golden State Warriors bounce back to beat Utah...

— SPONSORED LINK —
BBC News - India tea workers burn boss to death in Assam state
(From DailyMe.com)

Powered by
newstogram

NEXT ARTICLE IN NEWS                           ✕
Biz Break: Wall Street whipsaws with
'fiscal cliff' discussions, Apple reveals
executives' compensation
                          » Continue to article...

• FAQ: Article commenting how-tos and tips

Recommend    Sign Up to see what your friends rec

SUNNYVALE VW   Sign then drive Event    GotDailyDeals

Calif. principal guilty of failing to report abuse - ContraCostaTimes.com   http://www.contracostatimes.com/ci_21957398/calif-principal-guilty-...

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[ SEARCH ]   ⊙ Site  ○ Web Search by YAHOO!                                    Walnut Creek, C

0
Recommend    Send        Sign Up to see what your friends                    Share    [ Tweet ] 0
                           recommend.

# Calif. principal guilty of failing to report abuse

The Associated Press
Posted: 11/06/2012 12:21:58 AM PST
Updated:  11/06/2012 08:04:36 AM PST

SAN JOSE, Calif.—The conviction of a former California principal for failing to report suspected sexual abuse of a child by a teacher marked just the second time in two decades that Santa Clara County prosecutors had pursued the misdemeanor charge—and it was the first time they won, officials said.

After deliberating for two days, a jury on Monday found Lyn Vijayendran, 36, guilty of the crime.

A judge sentenced the former principal of O.B. Whaley Elementary School in San Jose to two years of probation, $602 in fines and 100 hours of community service, which likely will involve training other educators in the proper reporting of suspected child abuse, the San Jose Mercury News reported ( http://bit.ly/WJK9G).

"I agree with the jury's verdict," Santa Clara County Judge Deborah Ryan told a tearful Vijayendran. "You did what you thought was right, but I don't think it was objectively reasonable at the time.

"I know it will have far-reaching consequences for your career. I do think you made a very bad judgment that day," the judge said.

State law requires principals, teachers and others who come into contact with children to report suspected child abuse.

Child-abuse experts hailed the verdict after some thought the case would end in a mistrial.

A mistrial "would have sent the wrong message," said Margaret Petros, a commissioner on the Child Abuse Council of Santa

Advertisement

NEXT ARTICLE IN NEWS                                                          ✕

Biz Break: Wall Street whipsaws with
'fiscal cliff' discussions, Apple reveals
executives' compensation

» Continue to article...

SUNNYVALE   Signthendrive.com                          GotDailyDeals
W

690

. of 3                                                                      12/27/2012 4:32 PM

own inadequate investigation just isn't a defense," Filo said.

Vijayendran testified that teacher Craig Chandler appeared forthright when he told her an incident during which he allegedly blindfolded a second-grade girl and put something in her mouth was part of a lesson plan about Helen Keller.

0

Like

0

Vijayendran's handwritten and typed notes say the second-grader told the principal that Chandler made her lie down on the classroom floor, touched her feet with something that felt like a tongue and put something in the 8-year-old's mouth that tasted like a salty liquid while she was blindfolded and alone with him in a classroom.

The notes also said Chandler wiggled her body and head back and forth and asked her earlier to open her legs.

Prosecutors said they decided to try Vijayendran because her failure to report the incident had bad consequences. Another child reported experiencing similar behavior by Chandler about three months later.

Chandler is now facing charges of committing lewd and lascivious acts on five children. A crime lab allegedly found his semen on a classroom chair.

He has pleaded not guilty and is scheduled to go to trial Dec. 5.

Vijayendran has been reassigned to the district office as a coordinator of teacher support programs. In a statement, the Evergreen School District said jurors had a difficult decision to make, but it was disappointed with the outcome. The statement did not elaborate.

After Vijayendran was sentenced, juror Susan LaGaffa said the ex-principal "stuck her head in the sand rather than pull the alarm. I think she didn't want this ugly thing to be true."

Another juror, Christina Rodriguez said: "There's a lot more people to be blamed for this. She's a good person—we all saw that."

🖶 Reprint   BOOKMARK 🔖 🔗    🖨 Print   ✉ Email   A|A|A  Font Resize ⬆ Return to Top

## Not Found

The requested URL /serve was not found on this server.

_Apache/2.2.14 (Ubuntu) Server at ad.bnmla.com Port 80_

### Recommended for You

- ▸ Contra Costa Fire District sets fire station...
- ▸ Marquee NBA matchup: Warriors' Curry vs. 76ers...
- ▸ Police report: Alamo/Danville/San Ramon
- ▸ Marvell slammed with $1.2 billion patent...
- ▸ UC Berkeley law students charged in beheading...
- ▸ Roadshow: Barricades for I-680 toll lanes not

NEXT ARTICLE IN NEWS                                    ✕

**Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation**

» Continue to article...

SUNNYVALE VW   Signthendrive.com      GetDailyDeals

691



December 27, 2012

HUFF POST SAN FRANCISCO

## Lyn Vijayendran Convicted: Former Principal Guilty Of Failing To Report Abuse

11/06/12 11:04 AM ET EST AP

SAN JOSE, Calif. — The conviction of a former California principal for failing to report suspected sexual abuse of a child by a teacher marked just the second time in two decades that Santa Clara County prosecutors had pursued the misdemeanor charge – and it was the first time they won, officials said.

After deliberating for two days, a jury on Monday found Lyn Vijayendran, 36, guilty of the crime.

"I agree with the jury's verdict," Santa Clara County Judge Deborah Ryan told a tearful Vijayendran. "You did what you thought was right, but I don't think it was objectively reasonable at the time."

"I know it will have far-reaching consequences for your career. I do think you made a very bad judgment that day," the judge said.

State law requires principals, teachers and others who come into contact with children to report suspected child abuse.

Child-abuse experts hailed the verdict after some thought the case would end in a mistrial.

A mistrial "would have sent the wrong message," said Margaret Petros, a commissioner on the Child Abuse Council of Santa Clara County. "This verdict is important for all mandated reporters to heed. There are so many who don't take it seriously."

After sentencing, Assistant District Attorney Alison Filo said Vijayendran simply did not meet her obligation as an educator and said as much during the weeklong trial.

"Getting talked out of that reasonable suspicion by her own inadequate investigation just isn't a defense," Filo said.

Vijayendran testified that teacher Craig Chandler appeared forthright when he told her an incident during which he allegedly blindfolded a second-grade girl and put something in her mouth was part of a lesson plan about Helen Keller.

Vijayendran's handwritten and typed notes say the second-grader told the principal that Chandler made her lie down on the classroom floor, touched her feet with something that felt like a tongue and put something in the 8-year-old's mouth that tasted like a salty liquid while she was blindfolded and alone with him in a classroom.

The notes also said Chandler wiggled her body and head back and forth and asked her earlier to open her legs.

Prosecutors said they decided to try Vijayendran because her failure to report the incident had bad consequences. Another child reported experiencing similar behavior by Chandler about three months later.

Chandler is now facing charges of committing lewd and lascivious acts on five children. A crime lab allegedly found his semen on a classroom chair.

He has pleaded not guilty and is scheduled to go to trial Dec. 5.

Vijayendran has been reassigned to the district office as a coordinator of teacher support programs. In a statement, the Evergreen School District said jurors had a difficult decision to make, but it was disappointed with the outcome. The statement did not elaborate.

After Vijayendran was sentenced, juror Susan LaGaffa said the ex-principal "stuck her head in the sand rather than pull the alarm. I think she didn't want this ugly thing to be true."

Another juror, Christina Rodriguez said: "There's a lot more people to be blamed for this. She's a good person — we all saw that."

Filed by Robin Wilkey |

HUFF POST HIGHLIGHTS

people have highlighted this!

692

Peggy Hakanson
0 Fans
10:16 AM on 11/07/2012
This incident reminds me of a time I reported suspected child abuse to the principal at the school where I worked. She read my statement of a kindergarten student who had welts on his head. The boy told me that his mom's boyfriend had done this and that mom had told him not to tell.

The principal called CPS, who took this very seriously. However, in our city, the police have the last say. So when CPS wanted to take this child, the police decided to give him back to his mom since she said her boyfriend would be removed from the household.

The police did not want to listen to me when I told them she was the one who told her child not to tell. They told me it was none of my concern.

BTW, the mom was in charge of a battered women's shelter. We never saw her son again. They left town.

HUFFPOST SUPER USER
minimemo
Can I be your friend...if they let me out...
313 Fans
03:50 PM on 11/06/2012
Although right that she has been convicted I kind of can't shake the feeling that she has been held out to dry while I suspect Chandler may manage to squirm out of any kind of conviction..

1jadednewyorker
170 Fans
03:50 PM on 11/06/2012
wth!

HUFFPOST SUPER USER
Eyecre8
Open minds question even themselves
96 Fans
03:22 PM on 11/06/2012
A sad situation all the way around, but the jury did the right thing and sent a message that such (in)actions will have harsh consequences. Protect the children.

693

# Ex-principal guilty of not reporting possible sex abuse

Michael Winter, USA TODAY   9:49p.m. EST November 5, 2012                                    6 Comments       Share



A former San Jose principal has been convicted of failing to report the suspected sexual abuse of an 8-year-old girl by a teacher now facing trial for allegedly molesting five children.

Lyn Vijayendran (http://cbssanfran.files.wordpress.com/2012/07/lyn_vijayendran_071012.jpg?w=300), 36, cried as she was immediately sentenced to six months of court-supervised probation and 100 hours of community service, the *San Jose Mercury News* reports (http://www.mercurynews.com/education/ci_21934461/san-jose-principal-convicted-failing-report-child-abuse). She could have been sent to jail for six months.

(Photo: San Jose Police
Department via AP)

California law mandates (http://www.mercurynews.com/education/ci_21891676/who-is-required-report-suspected-child-abuse?source=pkg) that administrators and teachers report suspected sexual abuse of students.

The incident occurred last year at O.B. Whaley Elementary School involving 35-year-old Craig Chandler, who taught second grade. Later, a vice principal contacted police after a parent of a second student reported another incident involving Chandler, who was arrested in January and remains in jail.

Here's how the *Mercury News* summed up the case (http://www.mercurynews.com/crime-courts/ci_21917379/jury-former-san-jose-principals-case-stuck-after?source=pkg):

> The strongest evidence the prosecution presented against Vijayendran was the set of notes she wrote recounting what the child told her when she and her mom came to the principal's office in October 2011 to report a disturbing incident. The mother learned of the incident when she came across a crusty white stain on the sleeve of the girl's navy blue jacket and asked her about it.
>
> The child told Vijayendran that Chandler had summoned her to the classroom and blindfolded her with no one else there, made her lie down on the floor, touched her feet with something that felt like a tongue, inserted something gooey in her mouth and then wiggled her head around till she tasted a salty liquid.
>
> "Anyone with common sense could see the child reported a sex act," [prosecutor Alison] Filo told the jury.
>
> Instead of reporting her suspicions to police, Vijayendran called the head of human resources, who directed her to interview the teacher. But Vijayendran was the one who made the judgment call about not notifying the authorities, Filo contended.
>
> Chandler told Vijayendran that he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years. He said the "instructional goal" was to deprive participating students of sight. He said he used a bath sponge on her foot and legs, and put a bottle containing salty water into her mouth. All the while, his classroom door was open, he told Vijayendran, though the child said the door was closed.
>
> Vijayendran testified that she believed him because he appeared very forthright and at ease, even offering to meet with the girl's parents. She wound up concluding he had merely displayed poor judgment — in keeping with a few other careless things he'd done — and ordered him not to use the lesson plan again.

"She stuck her head in the sand rather than pull the alarm," said juror Susan LaGaffa. "I think she didn't want this ugly thing to be true."

Said juror Christina Rodriguez: "There's a lot more people to be blamed for this. She's a good person; we all saw that."

Vijayendran was reassigned and has been coordinating teacher support programs for the district.

694

San Jose: Principal convicted of failing to report suspected child abus... http://www.contracostatimes.com/education/ci_2199.../san-jose-p...

Sign In | Register | Newsletters                                                                                    Part of the Bay Area News Group

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help          Jobs   Cars   Homes   Classifieds   Shop

[ SEARCH ] ● Site ○ Web Search by YAHOO!          Walnut Creek, CA   Now:54°F   High:64°F   Low:37°F   city or zip

Advertisement

Recommend   Send   Sign Up to see what your friends recommend.          Share   Tweet

# San Jose: Principal convicted of failing to report suspected child abuse by teacher

By Tracey Kaplan
tkaplan@mercurynews.com
Posted: 11/05/2012 04:53:55 PM PST
Updated: 11/06/2012 05:18:48 AM PST

SAN JOSE – In a verdict hailed by child-abuse experts, a jury Monday found a principal guilty of the extremely rare charge of failing to report suspected sexual abuse to authorities, despite being told by an 8-year-old girl in vivid and explicit detail about a possible sexual act a teacher performed on her.

The conviction of former O.B. Whaley Elementary School principal Lyn Vijayendran was only the second time in two decades that Santa Clara County prosecutors had brought such a misdemeanor charge – and the first time they'd won.

Vijayendran, 36, dabbed at her eyes with a tissue while the clerk read the guilty verdict.

She later wept when Santa Clara County Superior Court Judge Deborah Ryan took the unusual step of immediately sentencing her.

"I agree with the jury's verdict," Ryan told Vijayendran, "You did what you thought was right ... but I do think you made a very bad judgment that day."

Vijayendran faced up to six months in jails and a $1,000 fine. But noting the principal's spotless record, the judge sentenced her instead to two years on court probation. She also ordered her to perform 100 hours of community service, preferably by training educators to comply with California's mandated-reporter law.

The verdict came as relief to child-abuse experts, who were worried when the jury announced Friday that it was stuck in what jurors later said was in favor of conviction.

Click photo to enlarge



Former O.B. Whaley Elementary School principal Lyn Vijayendran, 36, listens as ... (Gary Reyes)

1   2   3

A mistrial "would have sent the wrong message," said Margaret Petros, a commissioner on the Child Abuse Council of Santa Clara County. "This verdict is important for all mandated reporters to heed. There are so many who don't take it seriously."

It was unclear Monday whether Vijayendran's school district, Evergreen Elementary, had gotten the message. The district, which has been sued by alleged victims of the teacher, Craig Chandler, hadn't trained Vijayendran or the human resources director she consulted in how to carry out their legal obligation to report suspected abuse or neglect, both women testified.

In a statement late Monday, the district said it "understands that the jury in the trial of Ms. Vijayendran had a very difficult decision to make and while we are disappointed with the outcome we respect the process and remain committed to our mission of working to ensure that each of our students receives a high-quality education in a safe and nurturing environment. We will continue to work with our community to accomplish this."

School districts in California are technically required to provide training for educators, but can avoid doing so by simply submitting a letter explaining why they didn't.

Prosecutor Alison Filo said the District Attorney's Office made the rare decision to try Vijayendran because her lack of judgment in October 2011 had devastating consequences. Another child reported being molested in a similar fashion by the same teacher about three months later.

Chandler was subsequently arrested in January and ultimately charged with committing lewd and lascivious acts on five children. Tests by the Santa Clara County crime lab found his semen on a classroom chair. The 33-year-old teacher, in jail pending his trial, faces a maximum sentence of 75 years to life if he is convicted.

Have great items you never use?
855-377-6820
ebay
selling assistant

fyibayarea
Find:
in   East Bay   Go
Buy One and 1/2 off from Strictly To Go Pizza of Concord
Great Specials from Doors on Demand of Fremont
Dining | Add/coupons | Claim Your Listing

Most Viewed   Most E-Mailed
(From the last 12 hours)

1. Marvell slammed with $1.2 billion patent-infringement judgment,...
2. Walnut Creek police investigate fatal officer-involved shooting
3. Richmond woman killed in crash on San Pablo Dam Road
4. Three Brentwood homes evacuated due to natural gas leak
5. Bay Area's tech-led boom is broadening
6. Oakland Raiders shut out in Pro Bowl selections

NEXT ARTICLE IN NEWS   ✕
Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation
» Continue to article...

SUNNYVALE          Signtfriendrivers          GotDailyDeals          Alameda County realignment budget provokes out

695

San Jose: Principal convicted of failing to report suspected child abus...        https://www.contracostatimes.com/publication/ci_2195440l/san-jose-p...

investigate," File said.

The only other case in the past two decade failed to report a bruise on the face of a stu

Some argue violators are rarely prosecuted suspicions do. Others, including many child

Several jurors said they reached consensus

Juror Kathy Eriksen called the case "tragic, and other mandated reporters don't shirk th

ations in 1999 that the head of Hillbrook School in Los Gatos ltimately dismissed the case.

w works as intended: Those who are supposed to report , disagree.

to the court reporter read back some of the testimony.

erdict was "absolutely necessary" to ensure educators, coaches

The jurors all felt for Vijayendran, a relatively young principal who had consulted with the head of human resources and was told to question the teacher. But the administrator left the ultimate decision about what to do up to Vijayendran.

Juror Christina Rodriguez, who initially voted to acquit the principal, said, "There's a lot more people to be blamed for this. She's a good person. We all saw that."

In the end, the strongest evidence against the principal were her own notes from interviewing the child. The girl told the principal that Chandler blindfolded her in a room with no one else there, made her lie down on the classroom floor, told her to open her legs, touched her feet with something

that felt like a tongue, inserted something gooey in her mouth and then wiggled her head around until she tasted a salty liquid. Chandler told Vijayendran that he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years.

Juror Susan LaGatta said the incident was obviously sexual and the teacher's explanation ludicrous.

"I think she didn't want this ugly thing to be true," LaGatta said. "But when you have responsibility for hundreds of children, you can't afford to drop the ball."

Staff writer Sharon Noguchi contributed to this report. Contact Tracey Kaplan at 408-278-3482. Follow her at Twitter.com/tkaplanreport.



🖶 Reprint   📑 BOOKMARK 🔖 ⚙️ 📧   🖨 Print   ✉ Email   A̲ A̲ A̲ Font Resize   ▲ Return to Top

### The Electronic Cigarette
If you are a smoker and live in California you need to read this...

### San Jose Arrest Records
Who do you know in San Jose that's been arrested? You? Your...

### 30-second trick for a flat belly
This daily 30-second trick Boosts your body's #1 fat-burning...

### Recommended for You
▸ Oakland Raiders giving Matt Leinart, Terrelle...
▸ Calif. man convicted of groping drivers...
▸ Fatal crash closes San Pablo Dam Road along...
▸ UC Berkeley law students charged in beheading...
▸ Marquee NBA matchup: Warriors' Curry vs. 76ers...
▸ Housing project on Buena Vista Avenue before...
— SPONSORED LINK —
Iranian addicts shift to synthetic drugs    3ml Powered by newsstagram
(From DailyLa.com)

Recommendations

[Sign Up]   Create an account or log in to see what your friends are recommending.

Police: 1 dead, 3 wounded in Sac home invasion
45 people recommended this.

Walnut Creek police investigate fatal officer-involved shooting
9 people recommended this.

Antioch Two teens arrested on suspicion of burning down park playground
251 people recommended this.

Facebook social plugin

Top Classifieds
RENTALS | JOBS | REAL ESTATE | AUTOS

BUILD YOUR MANSION!
PROP MGMT.
NEW Shaver Lake View Cabins in development
3/2.5 Beautiful Home $485,900
CHOWCHILLA AREA!
All Listings

† FAQ: Article commenting how-tos and tips

Recommend   Sign Up to see what your friends recommend.

Add a comment...

[Comment using...]

Facebook social plugin

### Related Results
Online Education Earn Your College Degree Online at University of Phoenix®. Learn More.

WiFi Energy Management Properties use Wi-Fi to save up to 25% on utility services Learn more:

School Vouchers Spacing school vouchers has been a problematic issue for many parents.

Ads by Yahoo

Phoenix.edu

NEXT ARTICLE IN NEWS                                    ✕
Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation
» Continue to article...

SUNNYVALE VW   Signthendrive event    GetDailyDeals   Alameda County realignment budget provokes outr

696

Sign In | Register | Newsletters                                                    Part of the Bay Area News Group

Mobile | Mobile Alerts | RSS

News  Publications  My Town  Sports  Business  Entertainment  Living  Columns  Opinion  Help          Jobs  Cars  Homes  Classifieds  Shop

[  ] © Site  ○ Web Search by YAHOO!                    Walnut Creek, CA  Now:54°F   High:54°F   Low:37°F   city or zip  ○

In The News:  Zuckerberg privacy problem |  Russia to bar U.S. adoptions |  Marvell patent ruling |  Gun owners' addresses published |  Pro Bowl rosters |  Candy cigarette warning

Recommend   Send     Sign Up to see what your friends recommend          Share   Tweet   0          Advertisement

## Deliberations for former principal resume Monday

The Associated Press
Posted: 11/03/2012 03:20:58 PM PDT
Updated: 11/03/2012 03:20:58 PM PDT

SAN JOSE, Calif.—Jurors in the trial of a former San Jose principal accused of failing to report suspected sexual abuse of a child by a teacher are set to resume deliberations Monday after getting the case Friday.

The San Jose Mercury News reports ( http://bit.ly/TBUocy) that jurors deliberated for about six hours Friday, before being ordered to return after the weekend.

Lyn Vijayendran, the former principal of San Jose's O.B. Whaley Elementary School, is charged with failure to report child abuse, a misdemeanor.

If convicted, she could be sentenced to up to six months in jail.

Vijayendran testified Thursday that teacher Craig Chandler appeared forthright when he told her an incident during which he allegedly blindfolded a second-grade girl and put something in her mouth was part of a lesson plan.

Chandler is facing charges of committing lewd and lascivious acts on five children.

Information from: San Jose (Calif.) Mercury News, http://www.mercurynews.com

Advertisement

fyibayarea

Find: [        ]
In: [East Bay]  [ Go ]
Buy One 2nd 1/2 off from Strictly To Go Pizza of Concord
Great Specials! from Doors on Demand of Fremont
Dining | Ads/coupons | Claim Your Listing

Most Viewed   Most E-Mailed

(From the last 12 hours)
1. Marvell slammed with $1.2 billion patent-infringement judgment,...
2. Walnut Creek police investigate fatal officer-involved shooting
3. Richmond woman killed in crash on San Pablo Dam Road
4. Three Brentwood homes evacuated due to natural gas leak
5. Bay Area's tech-led boom is broadening
6. Oakland Raiders shut out in Pro Bowl selections

Reprint    Email  A A A  Font Resize  Return to Top

NEXT ARTICLE IN NEWS                       ✕
Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation
» Continue to article...

697

San Jose Mercury News » Friday, November 2, 2012

TEACHER SEX ABUSE CASE

# Ex-principal tells her side

**Defendant in failure-to-report trial chokes up, says suspect was forthright in his explanation**

By Tracey Kaplan
tkaplan@mercurynews.com

At times tearing up, the former San Jose elementary school principal on trial for failing to report suspected child sexual abuse tried to explain Thursday what in hind-

sight seems unimaginable — why she didn't call police. She reported that a teacher had blindfolded an 8-year-old student with no one else there, made her lie down on the classroom floor, touched her feet with something that felt like a

tongue, inserted something gooey in her mouth and then wiggled her head around until she tasted a salty liquid.

"It was my job to keep those kids safe," Lyn Vijayendran said in a choked voice. "But on that day, I did what I thought was right."

"Now, looking back, I have a different lens."

For more than two hours Thursday, the former 36-year-old principal of O.B. Whaley Elementary struggled to convey why she accepted teacher Craig Chandler's explanation for his disturbing behavior — that it was part of a lesson plan about Helen Keller.

"He was very forthright," she said, once again tearing up. "He looked me right in the eye."

For only the second time in two decades, Santa Clara County prosecutors have charged a local educator with shirking their legal obligation to call the authorities when they have a reasonable suspicion that a child has been abused.

Prosecutors have taken the

*See PRINCIPAL, Page 7*

698



# Principal

Continued from Page 1

Sign In | Register | Newsletters

Part of the Bay Area News Group

Mobile | Mobile Alerts | RSS

News    Publications    My Town    Sports    Business    Entertainment    Living    Columns    Opinion    Help    Jobs    Cars    Homes    Classifieds    Shop

@ Site    ○ Web Search by YAHOO!    Walnut Creek, CA    Now:54°F    High:54°F    Low:37°F    city or zip

Advertisement

Share    Tweet

Recommend    Send    Sign Up to see what your friends recommend.

## Jury in former San Jose principal's case stalls after less than six hours, ordered to return Monday

By Tracey Kaplan
tkaplan@mercurynews.com
Posted: 11/02/2012 05:54:27 PM PDT
Updated:   11/02/2012 06:54:36 PM PDT

Jurors announced they were having difficulty Friday in reaching a verdict in the trial of a former San Jose principal charged with failing to report suspected child sex abuse, prompting the judge to instruct them to keep trying on Monday.

The jury foreman told Judge Deborah Ryan they were split 8-4 after deliberating for about 5 1/2 hours.

It is against the law for the panel to divulge the nature of the split -- whether the majority supports a misdemeanor conviction or an acquittal of former O.B. Whaley Elementary school principal Lyn Vijayendran, 35.

But the foreman said all the jurors agreed that the principal had the best intentions. And another juror asked a question that included her feeling that the principal had gotten bad advice from the director of human resources and was misled by the teacher.

The impasse -- which is temporary at this point -- is not entirely unexpected. The case is only the second time in two decades that Santa Clara County prosecutors have charged a local educator with shirking their legal obligation to call authorities when they have a "reasonable suspicion" that a child has been abused.

The trial pitted two well-respected attorneys against each other -- prosecutor Alison Filo and defense attorney Eric Geffon. They dueled politely but intensely throughout the three-day proceeding, including during closing arguments Friday morning.

If Vijayendran is convicted, she could serve up to six months

Advertisement

in jail, though it is more likely she'd be put on probation. She has been reassigned to the district office as coordinator of teacher support programs.

In a powerful closing argument that foreshadowed the split, Geffon urged jurors to "deliberate as a group, but decide as individuals."

From the first, Filo appeared aware of the potential for jurors to sympathize with Vijayendran.

She took pains not to demonize the former principal, whom she characterized as a "nice person who made a terrible, terrible judgment call." On Friday, she told jurors that a guilty verdict wouldn't mean they were saying the educator was a "terrible person who has done nothing good in her life," just that she "failed on this one occasion."

"As Americans, we don't like to make allegations we are not sure about," Filo said. "But that's what you have to do (when you're legally required to report suspected child abuse). You could be wrong, but you have to err on the side of caution -- to protect children."

But Geffon intimated that a guilty verdict would ruin Vijayendran's career. He also urged the jury not to make the grave mistake of punishing the former principal for what is now known about teacher Craig Chandler's conduct.

"The DA wants you to be angry at Chandler and take it out on Lyn," Geffon contended.

The strongest evidence the prosecution presented against Vijayendran was the set of notes she wrote recounting what the child told her when she and her mom came to the principal's office in October 2011 to report a disturbing incident. The mother learned of the incident when she came across a crusty white stain on the sleeve of the girl's navy blue jacket and asked her about it.

The child told Vijayendran that Chandler had summoned her to the classroom and blindfolded her with no one else there, made her lie down on the floor, touched her feet with something that felt like a tongue, inserted something gooey in her mouth and then wiggled her head around till she tasted a salty liquid.

fyi bayarea

Find:
In:    East Bay    Go

Buy One Get 1/2 off from Strictly To Go
Pizza of Concord

Great Specials! from Doors on Demand of
Fremont

Dining | Add/coupons | Claim Your Listing

Recommendations

Sign Up    Create an account or log in to see what your friends are recommending.

Police: 1 dead, 3 wounded in Sac home invasion
45 people recommended this.

Walnut Creek police investigate fatal officer-involved shooting
9 people recommended this.

Antioch: Two teens arrested on suspicion of burning down park playground
251 people recommended this.

Facebook social plugin

Most Viewed    Most E-Mailed

(From the last 12 hours)

1. Marvell slammed with $1.2 billion patent-infringement judgment,...
2. Walnut Creek police investigate fatal officer-...

### NEXT ARTICLE IN NEWS

Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation

» Continue to article...

SUNNYVALE    Signihendrive    GotDailyDeals    UConn's Geno Auriemma, Stanford's Tara VanDer...

700

Jury in former San Jose principal's case stalls after less than six hours...    http://www.contracostatimes.com/crime-courts/ci_21917379/jury-fo...

Instead of reporting her suspicions to police ... called the head of human resources, who directed her to interview the teacher. But Vijayendran was ... ade the judgment call about not notifying the authorities, Filo contended.

Chandler told Vijayendran that he called the ... assroom to prepare a lesson on Helen Keller, which he had been using for years. He said the "instructional g ... rive participating students of sight. He said he used a bath sponge on her foot and legs, and put a bot ... ally water into her mouth. All the while, his classroom door was open, he told Vijayendran, though the child ... was closed.

Vijayendran testified that she believed him ... eared very forthright and at ease, even offering to meet with the girl's parents. She wound up concluding he ... played poor judgment — in keeping with a few other careless things he'd done — and ordered him not to ... sian again.

"She gave him a chance to talk her out of 't ... ad to do," Filo said. "If the child had identified anyone other than Lyn Vijayendran's colleague, she would hav ... uthorities)."

Gaffen offered the jury a completely differe ...

He argued that just because the principal w ... didn't mean she should have stopped everything and called police.

"In the world the DA is describing, when a kid shows up with a bruise, you just call police," Gaffen said.

In her rebuttal, Filo countered by saying what the little girl told Vijayendran was "no bruise."

Follow Tracey Kaplan at 408-278-3482. Follow her at Twitter.com/tkaplanreport.

Reprint    BOOKMARK    Print    Email    A A A Font Resize    Return to Top

## Recommended for You

- 'Dome' movie theater in Pleasant Hill may be...
- Contra Costa Fire District sets fire station...
- Police report: Alamo/Danville/San Ramon
- Golden State Warriors bounce back to beat Utah...
- Walnut Creek police investigate fatal officer...
- Report: Justin Smith has partially torn triceps

**Bleeding gums?**
NYU-tested mouth rinse for bleeding gums.
Ads by Barons

— SPONSORED LINK —
Iranian addicts shift to synthetic drugs
(From Dailyak.com)
Powered by Newsinogram

- FAQ: Article commending how-tos and tips

Recommend    Sign Up to see what your friends recommend.

Add a comment...

Comment using...

facebook social plugin

## Crime & Courts

San Francisco: Man detained after he barricades himself in gas station office while frightened employee hides in bathroom

Community comes together to raise funds to rebuild charred Antioch playground

Lamorinda police reports for Dec. 28, 2012

Richmond man, 34, identified as Emeryville homicide victim

Vallejo paramedics deliver Christmas baby on side of the road

Walnut Creek police investigate fatal officer-involved shooting

Three Brentwood homes evacuated due to natural gas leak

San Mateo County: Postal worker arrested on suspicion of stealing thousands of pieces of mail

Related Results                                                              Ads by Yahoo
Crime Court View Anyone's Criminal History Crime Court Reports in Seconds    www.InstantCheckMate.com
Criminal Arrest Records 1) Search by Persons Name and State 2) Find Criminal Records.
Court Criminal Records Criminal Record Background Checks, Past Employment & Tenant Screening

NEXT ARTICLE IN NEWS                               ✕
Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation
» Continue to article...

SUNNYVALE                          GetDailyDeals    UConn's Geno Auriemma, Stanford's Tara VanDer

Sign here drive

701

December 27, 2012

HUFF
POST SAN FRANCISCO

## Lyn Vijayendran, Former Principal Accused Of Failing To Report Sexual Abuse, Testifies

11/02/12 04:19 PM ET EDT AP

SAN JOSE, Calif. -- A former California principal accused of failing to report the suspected sexual abuse of a young student at her school tearfully told jurors that she believed a teacher when he told her the reason he had blindfolded the girl and put something in her mouth was to teach her about Helen Keller.

Lyn Vijayendran, onetime principal of San Jose's O.B. Whaley Elementary School, testified Thursday that the second-grade teacher appeared forthright and "looked me right in the eye" when he explained that what had happened was part of a classroom lesson.

Santa Clara County prosecutors have charged Vijayendran, 36, with failure to report child abuse, a misdemeanor. The law requires principals, teachers and others who come into contact with children to report suspected child abuse.

The charge came after Vijayendran was told last fall of a possible molestation and she determined through her own investigation that no crime had been committed, authorities said. Police later found four more girls at the school that were believed to have been molested.

The teacher, 35-year-old Craig Chandler, was arrested in January and has been charged with five counts of lewd and lascivious acts on a child under the age of 14, involving five children. Authorities say a crime lab found his semen on a classroom chair.

Chandler has pleaded not guilty to the charges. He is in jail pending his own trial and faces a maximum sentence of 75 years to life if convicted.

Vijayendran told jurors that Chandler's interview with her was very persuasive, and that he told her his "instructional goal" was to deprive participating students of sight. Chandler said he used a bath sponge on the student's foot and legs and put a bottle containing salty water in her mouth.

Chandler also said his classroom door was open, though the student said it was closed, Vijayendran said.

"He said students learned better by doing," she said. "He was very convincing."

Sponsored Links
Veterans Administration
Veteran Homeowners Refinance into a 2.25% No
Obligation Fast Quote!
VeteranLoanAdministration.com

Medicare Health Plans
Learn about Kaiser Permanente's® 2013 5-Star rating.
Sign up today!
medicare.kaiserpermanente.org


LifeLock® Official Site
Protect What's Important To You.
LifeLock.com

Buy a link here

Vijayendran also testified she was convinced the student's demeanor was completely out of character for someone who had been molested.

"She had a big smile on her face," Vijayendran said. "She was, her normal self, very talkative, the same as if she was talking about what she'd perform at the talent show."

Vijayendran also said that during an interview, the girl and her mother didn't contend that the incident was sexual in nature – only that it was strange. The mother is a legal immigrant.

Vijayendran added she did what she thought was right at the time. "Now, looking back, I have a different lens," she said.

During her cross-examination, Vijayendran admitted she was worried before speaking to Chandler about the sexually suggestive aspects of his behavior toward the girl.

Among other concerns, the child reported the teacher told her to "open her two legs."

702

"If someone said that to you in a grocery store line, you'd slap him, wouldn't you?" prosecutor Alison Filo asked.

Vijayendran agreed, saying: "You'd have to be crazy not to think that (his behavior could be sexual)."

The jury could get the case as early as Friday.

*Filed by Robin Wilkey |*

HUFF
POST HIGHLIGHTS ⨯

## people have highlighted this!
## Huzzah! This text has been highlighted.
Highlights is a new way to discover the most interesting text on Huffington Post!

See All Highlights

+Highlight this!

charon
Psychopomp for hire
683 Fans
02:33 PM on 11/06/2012
His "lesson" was off any lesson plan and done without anyone else present? What is wrong with this woman that that didn't immediately raise red flags? She failed her duty to report him immediately to the police, and deserves what she gets.

HUFFPOST SUPER USER
David Golani
43 Fans
01:05 AM on 11/06/2012
I will never understand the psychology of an adult that refuses to take a child seriously, If the principal can't put one and one together, then she doesn't belong in a school.

Wgrimm
0 Fans
06:51 PM on 11/05/2012
From Bill Grimm, National Center for Youth Law: The principal's testimony in this case illustrates her fundamentally mistaken belief that it was her job to determine whether or not abuse occurred. She is a mandated REPORTER under the law, not an investigator. The law does not give her responsibility for evaluating the persuasiveness of the suspected abuser nor whether the demeanor that a child is consistent with someone who has been victimized. There is a good reason for that. The investigation of child sexual abuse complaints is a specialized area requiring considerably more expertise, experience and training than required to complete an investigation of neglect. If this principal's perception of her role is shared by others employed by the school district, then someone needs to train them in their proper role.

HUFFPOST SUPER USER
Claudette McCubbin
Seizing the moment as we speak...
139 Fans
11:50 AM on 11/04/2012
Exactly what was the abuse? That he blindfolded a girl and put a bottle in her mouth?

anilimili1
78 Fans
01:07 PM on 11/04/2012
It was not the bottle he put in her mouth... He told the principal that he put a bottle of salt water in the girl's mouth. What was found on the chair was his semen. You do the math.

HUFFPOST SUPER USER
emmeaki
434 Fans
01:30 AM on 11/05/2012
Disgusting!

HUFFPOST SUPER USER
Claudette McCubbin

704

Seizing the moment as we speak...
139 Fans
01:15 PM on 11/06/2012
OMG : ( the parents should be so sad, angry and frustrated

lessthanorly
117 Fans
04:57 PM on 11/05/2012
did you even READ the article, you stupid girl?

HUFFPOST SUPER USER
Claudette McCubbin
Seizing the moment as we speak...
139 Fans
01:15 PM on 11/06/2012
lessthanorly your comment is devoid of any respect... my heart goes out to you.

lessthanorly
117 Fans
02:22 PM on 11/06/2012
I don't respect people who make minimizing comments about children being abused.

HUFFPOST SUPER USER
Claudette McCubbin
Seizing the moment as we speak...
139 Fans
10:15 AM on 11/07/2012
such as you. I don't either.

lessthanorly
117 Fans
11:29 AM on 11/07/2012
"I am rubber you are glue" doesn't work in the real world, child.

jessimae
1 Fans
10:35 AM on 11/04/2012
I wish someone would have thought twice before using "sex scandal" in the headline on the main page. I know this is something media outlets do all the time but it drives me up the wall! Child abuse, molestation, and rape are not "sex scandals". Your poor word choice of "sex scandal" frames rape, child abuse, and molestation as similar to "scandals" involving sex between consenting adults. This perpetuates rape culture. Stop.

kennyfloyd
My Micro-bio is empty
268 Fans
11:23 AM on 11/04/2012
"perpetuates rape"? A little over the top don't ya think? So now that I've read the title and article, I'm going to rape now? What exactly is a rape culture? Why is it a scandal if it involves adults

but it's not if it involves children, I don't get it. Your point would be easier to understand if you said that rape is not sex, so sex should not be in the title. It is a scandal and the incident was sex as a weapon or a means so yes its a sex scandal, it may have been more right to say molestation scandal but to then call it perpetuating rape culture is hyperbole.

lessthanorly
117 Fans
04:59 PM on 11/05/2012
I am not going to waste my time trying to educate such an ignorant person. there is LIMITLESS information about rape culture out there. go educate yourself before YOU start to perpetuate rape culture even more than you probably already do.

kennyfloyd
My Micro-bio is empty
268 Fans
08:51 PM on 11/05/2012
IN other words, you don't know what it means.  I asked you, why can't you give me an answer.?  The chances that I'll have anything to do with rape or a rape is zero.  It would be impossible for me to do such a thing and you have a lot of nerve suggesting anything but.  It is impossible for most men to be angry, violent and turned on at the same time, that is why only a small number of the 3.5 billion men actually commit such a crime.  I don't know if your damaged or just angry at men but don't take it out on me, I'd be able to rape about as much as I'm able to murder, I couldn't do neither nor can I condone such a thing, and most men are the same.  Maybe you should ask for some help, there is no shame in it.

Lily Stormcrow
82 Fans
07:17 AM on 11/07/2012
Dude, you really do not know the discourse. Google rape culture and educate yourself.

kennyfloyd
My Micro-bio is empty
268 Fans
09:03 AM on 11/07/2012
Hey, I don't know what you issue with men is, but this is the second time I've asked you to explain and you can't.  Blowing off some steam at a man gets you through the day, fine, just use words and phrases you understand so when you get called on it you'll sound like you know what you're talking about.  Especially when you accuse someone of the very topic youre talking about, at least then you won't sound like a know nothing blow hard.  Good luck, sounds like you'll need it.

Lily Stormcrow
82 Fans
12:50 PM on 11/07/2012
I'm a different person than the above poster, dude. And it's not our job to educate you when all you have to do is google the term.

backbonegirl
97 Fans

706

03:32 PM on 11/13/2012
Ooops, I gave you a "favorite" out of mistake.
Kennyfloyd is just asking a normal question and you get angry.
That doesn't take us women anywhere. Explain what you mean instead of getting all angry...

I had to look up the phrase rape culture myself, even if I'm an advocate against Sexual Child
Abuse. This is the definition given in Wikipedia (which I normally don't go to, but I liked the
way it was described for this):

"Rape culture is a concept used to describe a culture in which rape and sexual violence are
common and in which prevalent attitudes, norms, practices, and media normalize, excuse,
tolerate, or even condone rape.
Examples of behaviors commonly associated with rape culture include victim blaming, sexual
objectification, and trivializing rape. Rape culture has been used to model behaviour within
social groups, including prison systems where prison rape is common and conflict areas where
war rape is used as psychological warfare. Entire countries have also been alleged to be rape
cultures."

I agree that the term "Sex Scandal" shouldn't have been used. It's Child Sexual Abuse and Child
Abuse by the teacher, that's for sure. When it comes to the principal, she made a HUGE mistake
in not reporting it. She should be punished.

Just for clarification: A rape is to insert the penis, an object or a finger (or another body part) into
somebody else's body against that person's consent. When the other person is a child, it's
ALWAYS rape.

HUFFPOST SUPER USER
JimmyforLiberty
20 Fans
04:01 PM on 11/04/2012
I came here to see what Helen Keller was up to. Now I wonder the child didn't have TEETH?
Now that would have been justice!

LadyChef
I can cook it...and dish it out
250 Fans
10:22 AM on 11/04/2012
Salty water? Really?

HUFFPOST SUPER USER
Ron Hinchley
The wise man considers what he wants
96 Fans
11:00 AM on 11/04/2012
Ya, little more information, ...or a little less.

LadyChef
I can cook it...and dish it out
250 Fans

707

11:41 AM on 11/04/2012
If it wasn't so horribly sad how this Principal let her student's down, it would be funny.

backbonegirl
97 Fans
03:33 PM on 11/13/2012
Funny? Did you not understand that the kid was sexually abused?

LadyChef
I can cook it...and dish it out
250 Fans
04:55 PM on 11/13/2012
I guess the part where I said it was so horribly sad wasn't clear?

LuneKeltkar
129 Fans
11:54 AM on 11/04/2012
Well for the love of all the Saints who once rose up to fall down and dance stupidly in the street,
WomanCook,

There you have it! Helen Keller Teaches The Pacific Ocean! Salty Water? Yes. Yes! YES! I'm
an educator, and All Of This Made Perfect Sense To Me!

(There is that one lone scruple in my left shoe, which is a pebble, but not that many people know
so, and at any rate) HE WAS SO SINCERE! On the grave of my last neuron I swear HE WAS
SO SINCERE!.

(Yes yes yes, I *know* I'm irremediably stupid, but I HAVE TENURE! I'm not entirely sure
what that means, but I'm supposed to shout it loud and long. But about the salty water. I can't for
the life of me imagine why you brought that up. I'm quite sure that most people here even forgot
that we were talking about that. Saints alive, I'll bet that you forgot too.)

Lune

LadyChef
I can cook it...and dish it out
250 Fans
01:49 PM on 11/04/2012
You put my frustration in words better than I ever could.

HUFFPOST SUPER USER
nmeemn
Sum, ergo cogito.
251 Fans
11:50 AM on 11/08/2012
I just wanted to clarify that school administrators don't have tenure... Different union altogether
from teachers.

HUFFPOST SUPER USER

708

Barbara Lilly
Think in color-not black and white
398 Fans
09:57 AM on 11/04/2012
This is a prime example of why there needs to be more education (in general) but especially for those working in schools about the warning signs of abusers/abuse. THe fact that she said the girls actions "were not consistent with someone who had been abused"???!!! There is a myth that children who have been abused somehow "shut down". If that were true it would be easy to spot who might be being abused at any time. Children react to trauma in wildly different and sometimes seemingly contradictory ways. Yes some kids "shut down", but many compartmentalize, dissasociate, or overcompensate in "super happy mode" to make things feel normal again/gain some control back. That principal and school system were grossly negligent and I hope those children's parents get some good lawyers and bring some hefty civil lawsuits.

Scootman78
11 Fans
09:21 AM on 11/04/2012
From the article about 7 paragraphs up from end: "The mother is a legal immigrant."

What does the victim or victim's family being documented or undocumented have to do with this case?

I'm asking honestly because I can't see a reason as to why it has any bearing.

piggywillow
18 Fans
09:43 AM on 11/04/2012
It may have been mentioned because there could have been a language barrier in expressing her (the mother's) concern about the incident. That's how I took it, anyway.



Scootman78
11 Fans
10:18 AM on 11/04/2012
Well that's true and I thought that too, but it wasn't mentioned in the article, so I wasn't entirely sure.

And I still don't get why they had to mention legal or immigrant. I have some very southern relatives in my family, born here in Florida, who nobody can really understand.

The article should have just said the principal felt there was a break down in communication and understanding with herself, the parent, and the student of what had taken place.

kennyfloyd
My Micro-bio is empty
268 Fans
11:26 AM on 11/04/2012
They could have been legal immigrants from Toronto Canada, no language problem there and we have sex criminals up here too, so I don't know why they said that either. Maybe they think that sex crimes don't happen in other cultures and the Mother just couldn't understand.

think-it-over
219 Fans
11:28 AM on 11/04/2012
And, of course, the only way to convey that information is to mention that she's an immigrant, without saying where she's from or if there's actually a language barrier.

piggywillow
18 Fans
04:23 PM on 11/04/2012
I agree, it should've been stated more clearly.

anilimili1
78 Fans
01:12 PM on 11/04/2012
It may also have been noted because even legal immigrants are hesitant to press charges--since 9/11 the laws have become very non-immigrant-friendly (and I'm not talking of illegal immigrants, but legal ones, too), and people prefer to not rock the boat. It might bw why the mom was deferrential, or appeared to not press the issue too much. she might've been worried that to push too hard, or to be seen as falsely accusing, would result in her deportation. It has happened in other places, to LEGAL immigrants. It is a post 9/11 (Bush politics, too) ,reality.

HUFFPOST SUPER USER
Sonupv
207 Fans
10:15 AM on 11/04/2012
I am an LEGAL immigrant and I can tell you that being an immigrant matters for sure and being an undocumented immigrant probably matters even more. I didn't got to school here and now my kid does and I am constantly struggling to understand the rules and the ways things are done in schools here, which are a lot different than from where I grew up. I struggle to figure out what to watch out for and what not. I want to ensure the well being of my kid while not embarrassing him by acting like an out of place immigrant. I'm think undocumented immigrants are probably even more reluctant to make a big deal of things, for the fear of being deported.

Scootman78
11 Fans
10:25 AM on 11/04/2012
I know all of this Sonupv as I have seen this with the friends I had in school who were immigrants. If they saw something wrong going on in the school - which I can tell you was wrong - they wouldn't report it because they were afraid of getting in trouble. I was able to talk one of my friends into saying something because it wasn't something I could mention (as it was something written in the girl's bathroom and I was a dude) and she definitely did not get into any trouble. In another instance though, I said something on behalf of my friend and did not betray their identity to the guidance counselor that I had talked to.

I wrote my post only in wondering why the sentence was mentioned all by itself in the article without anything else to support it. I was just hoping it wasn't written as a justification of why the principal didn't report the incident. If the principal sensed confusion or hesitation (she's supposed to be able to tell the difference at her pay rate), she should have still said something.

710

Even if the parent or student didn't want trouble, the teacher needed to be stopped and I think it was the principal's duty to investigate it further.

Then again, I'm only going by what the article is saying, so I may not know all the facts as to what the principal did or didn't do.

rafaelrobyns
micro-biotic
225 Fans
10:52 AM on 11/04/2012
I read it as an attempt to characterize the nature of the interaction. Children of immigrants are often more vulnerable because they may not fully understand the cultural norms, having grown up in a house that imported different cultural norms. Tagging it as legal wards off possible discriminatory feelings that might arise against illegal immigrants. Don't fear information.

HUFFPOST SUPER USER
forestlady
393 Fans
10:53 AM on 11/04/2012
It may have been because perhaps the mother was afraid to speak out; if you're an immigrant, even legal, you can be afraid of not being allowed citizenship or of someone fixing it so that you don't have the right papers etc or afraid of being deported. With the way things are these days in the U.S.,

HUFFPOST SUPER USER
baseballmom
My microbio: as empty as Michelle Bachman's noggin
596 Fans
09:21 AM on 11/04/2012
Weren't there any other children in the classroom?

MyIrishEyes
Are Smilin!
246 Fans
09:40 AM on 11/04/2012
I was wondering the same thing.

Jon Adcock
24 Fans
10:09 AM on 11/04/2012
That's my question also. If he had the girl alone in the classroom and blindfolded, then why didn't the principal see that as a red flag that something inappropriate was going on.

independentcynic1228
36 Fans
11:33 AM on 11/04/2012
That's what I have wondered as well. I mean, if the principal went out and asked the other students what happened and they said it was during a Helen Keller lesson, then it would pretty much throw the charge out. Now, if it happened with the student alone, then I would be pretty

711

convinced something was up. Given all the issues these days, I highly doubt a teacher would be conducting any sort of lesson like that with a student alone.
It would be nice if they actually reported when it took place

HUFFPOST SUPER USER
Greenman7
163 Fans
12:03 PM on 11/04/2012
There is no instructional objective with one student alone in a classroom. Objectives are for a classroom full of students. Even if it's a make-up lesson from a student being absent from class, a teacher should know better than to do something like this to a teenager.

At worst, it's molestation: at the least, it's very poor professional judgment.

Something ain't right.

independentcynic1228
36 Fans
02:01 PM on 11/04/2012
That is what I am saying. You would not see a teacher conducting one on one instruction of this type. The article is sorta vague as to whether this occured one on one or if it occured with other students present. Which is where I am weighing the principals thought process. If it happened with other students, it would sound weird but you would sort of doubt whether anything offensive was happening (we have to remember this is before the police found the semen on his seat). But if it was with the student alone, then she deserves to be punished because that would just be way too creepy to not report. The article doesn't really tell us when this happened even though reading it again it certainly does allude to the fact that he was alone with her..the whole door closed or open debate.....

HUFFPOST SUPER USER
Greenman7
163 Fans
02:18 PM on 11/04/2012
Yes the article does have those gray areas. Perhaps better to not report unless there is a full slate of facts.

think-it-over
219 Fans
11:45 AM on 11/04/2012
Apparently there weren't, and it seems that the teacher admits that and the principal knew it. Here's a quote from an article from a real news source (http://www.mercurynews.com/crime-courts/ci_21917379/jury-former-san-jose-principals-case-stuck-after):

"The strongest evidence the prosecution presented against Vijayendran was the set of notes she wrote recounting what the child told her when she and her mom came to the principal's office in October 2011 to report a disturbing incident. The mother learned of the incident when she came across a crusty white stain on the sleeve of the girl's navy blue jacket and asked her about it.

712

page header navigation

"The child told Vijayendran that Chandler had summoned her to the classroom and blindfolded her with no one else there, made her lie down on the floor, touched her feet with something that felt like a tongue, inserted something gooey in her mouth and then wiggled her head around till she tasted a salty liquid"

HUFFPOST SUPER USER
baseballmom
My microbio: as empty as Michelle Bachman's noggin
596 Fans
02:24 PM on 11/05/2012
Ugh. How could anyone not see the red flags in this?

This user has chosen to opt out of the Badges program
think-it-over
219 Fans
08:01 PM on 11/05/2012
Sometime we have a hard time seeing things we don't want to see, so maybe she just didn't want to believe he could have done it. From the distance of my keyboard it certainly looks like a report and an investigation were mandatory, but when we encounter things like that IRL we don't always react the way we think we would.

76jackboy
2 Fans
09:15 AM on 11/04/2012
She should get same punishment as him

HUFFPOST SUPER USER
CASSIE60
Think before you speak. Read before you think
4143 Fans
08:53 AM on 11/04/2012
Lyn Vijayendran is one of the dumbest teachers I have ever heard of......There was no way that a teacher should have thought that "blindfolding" a child would teach them anything about Helen Keller.....especially inserting something into her mouth.....

I hope they get rid of Lyn too. Lyn has very poor judgement, and is predispose to believe a teacher over the student.

moboyle110
The perfect speed is being there
1818 Fans
08:10 AM on 11/04/2012
"Vijayendran told jurors that Chandler's interview with her was very persuasive,..."

That's what these molesters are, very persuasive. Just look at how persuasive Jerry Sandusky was at Penn State.

Charles-12881
If the doors of perception were cleansed

713

166 Fans
08:19 AM on 11/04/2012
I would like to see how persuasive they are after castration! There is no cure for these people,
start with that.

moboyle110
The perfect speed is being there
1818 Fans
03:36 PM on 11/04/2012
Yes, I agree that there's no cure for these people.

jadedwilliam
1660 Fans
08:51 AM on 11/04/2012
He was also a brilliant offense coach Penn State would do anything to keep.

moboyle110
The perfect speed is being there
1818 Fans
09:06 AM on 11/04/2012
Yes, unfortunately for the victims, that is true.

HUFFPOST SUPER USER
FiredUpRTG
Don't start no stuff; won't be no stuff...
523 Fans
07:38 AM on 11/04/2012
Either a sick teacher or dumb. If sick, go to jail. If dumb, it's evidence as to why students
graduate not knowing how to read, write, do math, know scientific facts and have no idea where
Iraq is.

newworldman777
What would our future 7th generation think of us?
1318 Fans
08:34 AM on 11/04/2012
According to Sarah Palin, Iraq is right next door to Afghanistan...oops, forgot about that little
country called Iran.

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
07:26 AM on 11/04/2012
The principal thought it was ok for a teacher to be alone with 2nd graders and bathing parts of
their bodies as part of a sensory "lesson?"

HUFFPOST SUPER USER
Joshd25
378 Fans

714

07:08 AM on 11/04/2012
She should still be convicted. Being stupid shouldn't excuse you from a crime.

KenInd
1080 Fans
06:23 AM on 11/04/2012
If any parent reading this is concerned by it, I would suggest they ask to read their school
district's written policies on child welfare and child protection before sending their child to
school. Such policy documents are required to be placed on every school's website in the UK, as
well as available to all interested parties through the school office.

The US is a decade or more behind in terms of child protection.

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
07:30 AM on 11/04/2012
I have a hard time believing that any society is "ahead" of the US in terms of liability and
litigious frameworks for child protection.

Can you specify something in such a school policy that isn't federal or state law in the US?

KenInd
1080 Fans
07:38 AM on 11/04/2012
Clearly, as this story indicates, mandated reporting is lax, or non-existent.

The US lacks a national Childline that empowers children to anonymously seek help if abuse or
concerned.

There are two.  Both are pretty big.

adventuregnome
26 Fans
07:50 AM on 11/04/2012
Here's one example: corporal punishment. In the United States, you can spank or paddle a public
school child in 19 states. Forty-eight states allow corporal punishment in private school. The UK
banned corporal punishment in public schools in 1999, and in private schools a few years later.
The more you know!

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
08:29 AM on 11/04/2012
While I don't support corporal punishment in schools, I consider the matter an open debate in
terms of appropriateness. So I think it's a mistake to equate it with child abuse or mistreatment,
categorically.

715

Most cities in the US, even down south where they don't have state laws, have banned all forms of corporal punishment.

There are federal laws in the US which protect kids in terms of being unfairly punished (in any manner) for behavior that is rooted in their disability of any sort. There are federal laws in the US which protect minorities from being discriminated against, as well.

Angelina Grimke
9 Fans
09:02 AM on 11/04/2012
Perhaps, but not in practice. Many states still allow for physical restraint and confinement in isolation cells- especially for students that are segregated due to disabilities

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
09:13 AM on 11/04/2012
That's not corporal punishment.

You're talking about extreme, emergency cases of severe emotional disturbance as documented over many years and under very strict Federal guidelines. We're talking about children who regularly bite and spit, for whom very special supports (and protections) are required.

As for legal reality vs practice, I agree that we could easily find inappropriate treatment of children that is basically against the law. But what matters is that it's against the law (i.e. at least we have laws that delineate protections in process and explicit treatment).

adventuregnome
26 Fans
10:41 AM on 11/04/2012
The point is, as a parent in the US, you have to do your due diligence when it comes to whether or not your child can be legally struck by a school administrator.  In the UK, you don't have to worry about this, because it is ALWAYS illegal.  There's no question as to whether or not the punishment was appropriate, or if the administrator hit too many times, or too hard, or if the posture and placement of the child during the punishment was inappropriate.  What nonsense, right?
Personally, I can't imagine any responsible parent being comfortable with a non-family member deciding whether or not their child should be physically struck by an authority figure, but that's just me.

throwcautiontothewind
Dilettante
572 Fans
11:44 AM on 11/04/2012
Sorry, but I'm a research psychologist who has looked into the consequences of spanking in schools, and it most definitely can be characterized as child abuse/mistreatment. The kids most likely to get hit are the ones coming from poor family backgrounds (where they are often hit) and

716

thus have NO safe haven around adults anywhere. Routine practice of corporal punishment in schools can have long term effects psychologically and in terms of the child's likelihood of graduating high school.

Furthermore, you are wrong about the laws. SOME cities have banned it, but almost all southern states have state laws permitting corporal punishment. In some schools, parents are asked to sign a permission slip at the beginning of the school year permitting their child to be paddled if necessary.

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
05:56 PM on 11/05/2012
I'm wrong that most big cities have banned it, even in the south? ...

As for spanking, I don't support it whatsoever. However, I can be honest (and if you are a serious research, you should be honest that there's a debate)... enough to say that it's a values question with data and arguments on both sides.
Permalink | Share it

throwcautiontothewind
Dilettante
572 Fans
06:33 PM on 11/05/2012
The evidence and arguments are *heavily* weighted against spanking in schools (and by the way, in the house, too). Saying that there are two sides to an issue doesn't mean that both sides are equally good.

KenInd
1080 Fans
06:20 AM on 11/04/2012
That any school administrator would not inform 1) police 2) child welfare authorities BEFORE interviewing the employee beggars belief. That interview must be part of the investigation by those mandated to investigate the alleged abuse - not a principal. The principal places herself in legal jeopardy by assuming the role of detective and D.A. This should be in the first chapter of 'How to Run a School for Dummies'.

What is wrong with America?

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
07:36 AM on 11/04/2012
You honestly think every accusation at a school should immediately go to the police?

Do you have any idea how much time/money would be wasted by a DA at schools? Do you have any idea how many accusations get thrown at teachers by parents and kids?

717

Of course the principal throws herself in legal jeopardy. That job is 24/7 legal jeopardy.

Welletsee
Trying hard to understand
208 Fans
08:00 AM on 11/04/2012
Personally I'm getting tired of you making this into a small event. Yes every single accusation should go to the police. Every one. There is no excuse to let a child fall through the cracks because it might inconvenience someone. Money is never an issue when it come to the safety of our children. If you are so worried about false accusations .... Prosecute the people who made them. Ya don't put other children in danger......

Why do you take a stand against the children and for the perps? ....
Makes you smell fishy.... Just sayin.

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
08:18 AM on 11/04/2012
Where did I take a stand against the children and for the perps?

Slander much?

See, this is exactly the point. People get emotional very quickly and start throwing around accusations in schools. It's the nature of the situation. You have suspicious parents. You have sometimes immature children. And yes, you also have unethical teachers (who will not only abuse children but also abuse other teachers with fake accusations). Schools have CONSTANT accusations flying around and it's ridiculous to think every accusation requires police involvement. However, principals need to respect the law and take every accusation seriously. If it's an accusation of child abuse and there's even the SLIGHTEST suspicion, then it is the LAW to report it.

I 100% support that requirement. But there must be some basis for reporting.

In this case, I believe this story immediately deserved a call to authorities. The principal betrayed the trust of the parents and broke the law.

Welletsee
Trying hard to understand
208 Fans
08:57 AM on 11/04/2012
It is not ridiculous . It is essential. That is why the police and children services are there. Again , if someone knowingly falsifies a report of abuse they need to be prosecuted.
I think you are talking tort reform any way, and that is a different issue.
No compromise in defense of the children!
For the most part I think we see eye to eye on this issue....I apologize for coming on so hard , this is an issue that hits close to home.



718

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
09:14 AM on 11/04/2012
You said she should have called the police before even talking to the teacher.

We disagree.

You can attack, flame, slander all you want but my point has nothing to do with undermining child protections. I am a VERY strong advocate of going after child abusers and have made reports to that effect myself.

Good bye.

HUFFPOST SUPER USER
CabCurious
let's be honest
1612 Fans
09:27 AM on 11/04/2012
And no, you can't take back your nasty allegations.

That's the whole point.

Welletsee
Trying hard to understand
208 Fans
12:14 PM on 11/04/2012
I never said or implied that the principal should have contacted the authorities before talking to the teacher. Never. I was referring to your allegations that reporting all cases is a waste of resources ... And I was saying there is no compromise in the defense of children. If their are false claims that is an entirely different matter. They need to be delt with severely by our courts... You can't risk letting one child slip through the cracks for expediency's sake. I wish I could put that chip back on your shoulder so we could talk like adults ..but hey. Peace

HUFFPOST SUPER USER
forestlady
393 Fans
11:14 AM on 11/04/2012
I think I understand where you're coming from. My husband taught in CA and we've talked about this alot. Yes, there are people who will lie and accuse a teacher of molesting a child and it happens constantly. I'm guessing most of these things probably aren't true, they are false charges by another teacher or a parent. My husband had a father who threatened to murder the teachers unless his child was passed. He was serious and was involved in some group that would have carried out the threat, no doubt in the teacher's mind. It was really scary. Most people have no idea how public schools really work and they dont know how horrible parents, children or even other teachers can be. I don't think there's a requirement to talk to the accused teacher, but there is a requirement to report ALL such charges within 36 hours.

719

grasyknol
Senator Sherrod Brown - My Senator!
583 Fans
10:30 AM on 11/04/2012
I agree with you. You're a rational person - rare these days. F/F

HUFFPOST SUPER USER
forestlady
393 Fans
11:10 AM on 11/04/2012
"You honestly think every accusation at a school should immediately go to the police?"

Yes, because that is the law. Counselors and teachers are required to report any and all
suspicious sexual abuse and to report it directly to the police within 36 hours.
http://criminallaw.uslegal.com/mandatory-child-abuse-reporting-california/

pattymcnutt
1 Fans
11:21 AM on 11/04/2012
Actually, yes. Legally, these things MUST be reported to either the police or child protective
services, which is precisely why the principal is facing criminal charges. It is also against the law
for the principal (or any other school employee) to conduct their own investigation. You ask only
enough questions to get the information you need to make the report and then you allow the
professionals (who are actually trained in interviewing abuse victims) to do their job and
investigate. The only job of the principal is to immediately remove the teacher from the
classroom until the investigation is complete.

And the DA has nothing to do with it- it doesn't even GO to the DA unless the police decide they
have enough information to pursue criminal charges.

KenInd
1080 Fans
12:18 PM on 11/04/2012
'You honestly think every accusation at a school should immediately go to the police?'

Yes, Absolutely.  100%.

The police can sort through the bogus accusations. They will soon be up to speed on that issue.
Until an arrest is made, however, the process should be confidential.

novabird
Lover of Life, Radical Centrist
645 Fans
08:41 AM on 11/04/2012
Actually there are established laws in most places that thoroughly cover legal matters that occur
in schools.

720

When someone takes and administration position such as principal or vice principal they have often received formal training or taken a course that covers the legal ramifications of what they are, and are not allowed to do, and when it is appropriate to call in the police.

The principal was well within her legal rights to interview the teacher. Where she failed horribly was believing the persuasive psychopathic teacher.

KenInd
1080 Fans
12:20 PM on 11/04/2012
What she did wrong was not pass her findings on to the relevant authorities.  She assumed the role of judge and jury.

Even if she had proof that the accusations were probably false, she should have passed the case up the chain.  You can assume that every teacher will soon have a 'file'.

HUFFPOST SUPER USER
UCBAlum
Mind-forged manacles and man-made tyrannies
1211 Fans
06:04 AM on 11/04/2012
Semen on a classroom chair....

lovely.

Welletsee
Trying hard to understand
208 Fans
08:07 AM on 11/04/2012
But.you are correct. If teachers earned what they deserve.... Teaching is the foundation of our future.

HUFFPOST SUPER USER
Sharelle Milo
132 Fans
08:44 AM on 11/04/2012
Teachers are not community college rejects. Most teachers graduate from rigorous programs of study in their subject area.

novabird
Lover of Life, Radical Centrist
645 Fans
09:00 AM on 11/04/2012
Not all teacher training programs at universities are rigorous. Many of the programs I am aware of give out "A"s to everyone due to grade inflation, which is all too common in universities these days.

HUFFPOST SUPER USER
Crispaccio

721

The real trouble with reality: no background music
49 Fans
09:54 AM on 11/04/2012
and this is the same reason k-12 kids who can't read are pushed to the next grade level until they
graduate .... there is pressure from the admins, the school board, the state, and fed. all of it is
money, so teachers either inflate grades or get fired. very little has to do with actual teaching or
the quality of the teacher.


independentcynic1228
36 Fans
11:39 AM on 11/04/2012
Don't forget the parents either. I have several friends who have become teachers and each one of
them has their own story about a parent threatening them. Pass my kid or else.
It's not a surprise that many of them are now starting to look at other types of jobs because it's a
no win situation when you have the influence from the groups you mentioned on one side,
parents on the other and depending on where they teach, even the teachers union. I feel sorry for
teachers these days

HUFFPOST SUPER USER
Crispaccio
The real trouble with reality: no background music
49 Fans
02:08 PM on 11/04/2012
i feel sorry, too, for the kids and all of us who will invariably depend on them for basic and
advanced services. smh.

HUFFPOST SUPER USER
Barbara Lilly
Think in color-not black and white
398 Fans
10:09 AM on 11/04/2012
While I am sure there are "degree mills" out there for teachers, as the wife of a high school
physics teacher I resent you branding teachers as community college rejects. My husband left a
high paying job to become a teacher because he wanted to do work that meant something. He
worked very hard to get into a good program, and rightfully earned his Masters Degree in
Teaching. Yes teachers deserve better pay, and yes there are some horrible teachers and
administrators out there, but by perpetuating the myth that all teachers are somehow sub par, you
just make the problem worse.


novabird
Lover of Life, Radical Centrist
645 Fans
10:12 AM on 11/04/2012
Reading comprehension.
It's a good thing.

HUFFPOST COMMUNITY MODERATOR
jessicadevyn
1606 Fans

722

05:36 AM on 11/04/2012
Can we not call this a "sex" scandal? This is abuse.

HUFFPOST SUPER USER
battlescar2012
Just trying to keep it real.
297 Fans
05:17 AM on 11/04/2012
Okay, the blindfolding part makes sense if you're teaching about Helen Keller.

But THIS: "Chandler said he used a bath sponge on the student's foot and legs and put a bottle containing salty water in her mouth.".

Makes NO sense at all. If this didn't raise a red flag in the principle's mind then she's too daft to be running a school.

HUFFPOST SUPER USER
UCBAlum
Mind-forged manacles and man-made tyrannies
1211 Fans
06:05 AM on 11/04/2012
yep.

GraniteSkyline
I wish you happiness!
4370 Fans
06:37 AM on 11/04/2012
Agreed. That was WAY over the line.

The principal seems very weak and passive.

kazarule
101 Fans
06:46 AM on 11/04/2012
I think the salty water would be a red flag.

Craig 212
Tide goes in, tide goes out.
1122 Fans
08:04 AM on 11/04/2012
It sounds to me like he was trying to demonstrate to the kids how you rely more on your other senses when one sense is lost. In which case, there would be a practical reason for having the kid experience the stimulation of other senses while blindfolded.

And if that is the case, I don't think any lines were crossed. I could just as easily see a female teacher trying to demonstrate the same lesson, and featuring no blowback whatsoever.

It's only "over the line" if you're the kind of person who believes a teacher should never have any

723

physical contact with a student whatsoever. Is it inappropriate for a teacher to, for example, apply a bandage to a small cut?

HUFFPOST SUPER USER
Sharelle Milo
132 Fans
08:46 AM on 11/04/2012
His semen is on a chair in the classroom...how to do you explain that? Sounds to me that the salty drink was his semen.

Craig 212
Tide goes in, tide goes out.
1122 Fans
08:54 AM on 11/04/2012
I wasn't defending him personally. I don't know this man, I don't know his motives or his intentions.

I was defending the lesson plan, because it's not as ludicrous as people are making it out to be.

HUFFPOST SUPER USER
Barbara Lilly
Think in color-not black and white
398 Fans
10:16 AM on 11/04/2012
I heartily disagree- any lesson plan that involves restraining a child in any way without prior approval from parents approval from administration, and without other teachers present, is simply ludicrous, and in many states, illegal.

Craig 212
Tide goes in, tide goes out.
1122 Fans
10:25 AM on 11/04/2012
A blindfold isn't a restraint.

HUFFPOST SUPER USER
Sharelle Milo
132 Fans
01:49 PM on 11/04/2012
No the lesson plan isn't weird per say...but there are other unsettling things surrounding the situation.  Also the Principal didn't follow protocol.

novabird
Lover of Life, Radical Centrist
645 Fans
09:03 AM on 11/04/2012
This might possibly make sense if the lesson was conducted in full view of the rest of the children, not with only one child in a classroom with the door closed. And do you have a handy explanation of why he asked the child to spread their legs?

724

Craig 212
Tide goes in, tide goes out.
1122 Fans
09:24 AM on 11/04/2012
Nope, you're right on both points. I didn't realize it was a "solo" lesson.

independentcynic1228
36 Fans
11:44 AM on 11/04/2012
This article doesn't say whether he was alone with her or not. Which was my question. if this
occured with other students present, then I could understand the principal being skeptical of the
student's story. But if he was alone with her, why the hell would he be teaching her about "Helen
Keller" anyway? That would be a redflag. And I have no idea what the spreading the legs would
have.
Not defending the teacher in the least because he is obviously a pervert, but if it happened with
other students present, then I could see the principal having some skeptism of this story. If he
was alone with that girl, then she should have been on the phone with the cops that minute.

HUFFPOST SUPER USER
Barbara Lilly
Think in color-not black and white
398 Fans
10:14 AM on 11/04/2012
Any teacher with any common sense would never restrain a student-ever. Maybe for a
specialized lesson they would send home permission slips to get parent permission for learning
about the experience of the disabled. And yes it is innapropriate for a teacher to apply a bandage
to a cut- that is what the school nurse is for. If a female teacher did anything like this to my child
I would have their job in a heart beat. And my husband and sister are teachers, so believe me I
know what kind of training and expectations teachers are given.

HUFFPOST SUPER USER
battlescar2012
Just trying to keep it real.
297 Fans
02:25 PM on 11/04/2012
Applying a bandage is nothing like using a bath sponge and inserting an unknown object into a
blindfolded kid's mouth.

Craig 212
Tide goes in, tide goes out.
1122 Fans
03:38 PM on 11/04/2012
Using a bath sponge and inserting an unknown object into a blindfold's kids mouth are both
actions that have a sexual component only because you are assigning one to them.

There is every possibility that either or both could occur during such a lesson plan, with no
sexualization whatsoever.

HUFFPOST SUPER USER

725

battlescar2012
Just trying to keep it real.
297 Fans
03:31 AM on 11/05/2012
No. It makes makes no sense to do those things within the context of a lesson about Helen Keller.

Blindfolding, yes. Blindfolded while having something unknown put into your mouth, no. Blindfolded while someone is rubbing your feet and legs, no.

Craig 212
Tide goes in, tide goes out.
1122 Fans
06:26 AM on 11/05/2012
It makes perfect sense if you are attempting to demonstrate how a person's other senses intensify when one sense is lost.

HUFFPOST SUPER USER
battlescar2012
Just trying to keep it real.
297 Fans
04:55 PM on 11/05/2012
It doesn't make sense to overlook such things when one of your teachers has been accused of sexual abuse. In fact it's against the law.

If a child complained to you that they've been abused, and you accepted the teacher's lame excuse that rubbing their legs and inserting something in their mouth was part of the lesson, then you're not fit to be a principal either.

HUFFPOST SUPER USER
HellBank
Curve: The loveliest distance between two points.
1171 Fans

04:59 AM on 11/04/2012
She never heard any Helen Keller jokes I take it.

HUFFPOST SUPER USER
JJR60616
The Plan is...there is no plan!
1995 Fans
08:44 AM on 11/04/2012
Did you know that Helen Keller had a dollhouse in the backyard? Neither did she

How did Helen Keller meet her husband? On a blind date!

What do you call a tennis match between Helen Keller and Stevie Wonder? Endless Love

374662

726

399 Fans
04:18 AM on 11/04/2012
If the principal gave that story one nanosecond of consideration, then you have a principal unfit for the job.

And the bank robber was just testing the security of the bank. The murderer was just checking out the force of the weapon. Etc. Those excuses always work in court!

HUFFPOST COMMUNITY MODERATOR
CR46
spay/neuter and adopt
2025 Fans
03:12 AM on 11/04/2012
This is where the death penalty should be used, in any crime against a child.

HUFFPOST SUPER USER
UCBAlum
Mind-forged manacles and man-made tyrannies .
1211 Fans
06:07 AM on 11/04/2012
yeah, sorry, that's not going to fly.

Vengeance is not justice, and justice is not vengeance. That's not going to change...no matter how upset you are.

HUFFPOST SUPER USER
topkatnc
Give a stray cat or dog a chance .
1261 Fans
08:19 AM on 11/04/2012
It flies with me .

lessthanorly
117 Fans
05:10 PM on 11/05/2012
so, what do you suggest we do with all of these degenerates? REHABILITATE them? HAHAHAHA .

death to all pedophiles and enablers. grow a backbone.

HUFFPOST SUPER USER
UCBAlum
Mind-forged manacles and man-made tyrannies
1211 Fans
09:26 PM on 11/05/2012
Backbone is the courage to move beyond vengeance and toward justice. My answer is life in prison. Why is that not good enough for you?

kazarule

727

101 Fans
06:47 AM on 11/04/2012
Unfortunately, the supreme court disagrees with you.

Welletsee
Trying hard to understand
208 Fans
08:12 AM on 11/04/2012
No, revenge is not an excuse to kill. Put this man on death row and he will cost the tax payers 10 times the amt. of just locking him away. The death penalty is very expensive and doesn't deter crime.

kazarule
101 Fans
09:02 AM on 11/04/2012
The death penalty shouldn't be used to deter crime; it should be used to remove serial offenders from society.

Welletsee
Trying hard to understand
208 Fans
12:29 PM on 11/04/2012
That is why we have prisons. For that very removal. No need to kill other than revenge .

kazarule
101 Fans
12:35 PM on 11/04/2012
I like revenge.

Jesse McGowen
19 Fans
10:59 AM on 11/04/2012
The way we use the death penalty hidden and tucked away from society doesnt deter crime no in that aspect you are correct, also in having to be the most humane way possible to execute the offenders makes it less effective. If the punishment is hidden from the masses then it has no effect as a form of punishment. Prisons and current versions of the death penalty hide from public view the consiquences of commiting a crime.

independentcynic1228
36 Fans
11:49 AM on 11/04/2012
That's why in the middle east they tend to have lower levels of crime because the response is pretty quick and public. Since we hide it here, it has no use as a deterrant. Now, on the other hand, if we instituted George Carlin's ideas of capital punishment (televised burning on the stake, frying someone in a big bowl of crisco, ect) I am sure our crime rate would go down real quick. But that would never happen and that is why I don't see why the states waste their time (and our money) trying these people for capital murder. You just end up spending more money because of all the appeals. Just go with first degree murder, lock them up for life and throw away the key. No appeals and less money wasted

728

Welletsee
Trying hard to understand
208 Fans
12:35 PM on 11/04/2012
So ... You not giving much to go on here... forgive me if I am wrong , but are you implying we
bring back public executions to deter crime? Maybe a stockade in front of the court house?
.......?

Jesse McGowen
19 Fans
01:46 PM on 11/04/2012
Perhapse, perhapse not, but it is obvious that the current method of revolving door prisons and
early release for hard core criminals due to over crowding isn't working.  Maybe a complete
overhaul of the system to include true rehabilitation programs that work to show first and second
time and non-violent offenders there are non-criminal ways to live their lives.  And if need be
public executions that you still have the option of attending or not if it offends you.  There are
some people that are not "fits" for society and should be removed and not simply just locked
away in the corner.  The entire system is broken from the courts to the punishments, public
humiliation(stockades) is not cruel or inhumane and has shown to be quiet effective throughout
history. the evidence for a death penalty being effective is there as long as the american justice
system isnt counted because of our methodology involved. Ihate going from one extreme to the
other as this seems to have gone and sadly it is easier to effect change in our country to go from
an extreme to another and not to do the intelegent thing and rebuild the system.

Anneripp
555 Fans
02:06 AM on 11/04/2012
CA law didn't give the principal a choice. She must make a report to child protective services if a
report has been made that raises the suggestion of abuse. It's the law.

fratricide08
Proud "Firebagger"
578 Fans
02:34 AM on 11/04/2012
After reading her notes on the incident I don't see how she can claim she didn't have reasonable
suspicion. The lawsuit being filed against the abuser, her, the vice-principal and 50 others
including the school district makes a lot of claims that if true are pretty awful. Even if she didn't
have suspicion on this one, she HAD to have reasonable suspicion at some point. The suit also
claims that school district's policy was intentionally not written down and that they told their
teacher's and principals to investigate not report.

Anneripp
555 Fans
11:11 AM on 11/04/2012
It is state law. Everyone who works at a school knows it is state law.

HUFFPOST SUPER USER
CabCurious

729

let's be honest
1612 Fans
07:45 AM on 11/04/2012
According to this article, the parent seems to be the source of the initial flag. The principal took it seriously enough to meet with the parent and the student. If she came out of that meeting with even the SLIGHTEST sense of there being a potential incident, she absolutely had to report it.

Welletsee
Trying hard to understand
208 Fans
08:13 AM on 11/04/2012
This comment makes more sense than others of yours I have read.

Anneripp
555 Fans
11:10 AM on 11/04/2012
It didn't matter whether she had suspicions or not. Once the report of questionable behavior was made, she was legally bound to report it. End of story.
I've been in that position myself. It's never easy to do. Who wants to believe something like that about a teacher you work with? And if can have terrible repercussions if it isn't true. Nobody wants to put a fellow teacher through that.
In my case, it wasn't true of the teacher, and child protective services did a really discreet job of investigating.

YakittyGirl
Pro deo et patria
1165 Fans
01:58 AM on 11/04/2012
"...she determined through her own investigation that no crime had been committed..."

I don't believe that she acted correctly. I think she had the duty to report the possible abuse and let the police do the investigating.

SolarPowerGuy
Ph.D., Immunology; Solar power @ home; Green Party
953 Fans
01:23 AM on 11/04/2012
The article agrees with you, that's the law.

fratricide08
Proud "Firebagger"
578 Fans
01:40 AM on 11/04/2012
The law is that you're to report if you have reasonable suspicion of abuse. She claims that neither the girl nor the girl's mother indicated abuse but told her that it was odd behavior. Abusers are very, very, good at convincing and manipulating people and it's said he had a whole explanation of how it coincided with the lesson plan and explained his behavior. I don't know whether or not the mother's or girl's testimony backs her up or not on whether or not anything abusive was

730

indicated to her but if it does then I think it's more than possible that she got snowed by an abuser.

HUFFPOST SUPER USER
Marcin A Mazurek
You live and learn. At any rate, you live. - D.A
209 Fans
01:44 AM on 11/04/2012
At the same time, people tend to think that internal investigation is the most effective - we found that to be horrendously wrong with the case of Penn State.

fratricide08
Proud "Firebagger"
578 Fans
01:59 AM on 11/04/2012
Just saw her notes on what happened and the principal's own notes look pretty damaging for her either way. At BEST she's a complete fool who doesn't know the signs when she sees them and thus should not be in charge of overseeing teachers and students. Regardless, no way should she be a principal.

HUFFPOST SUPER USER
realitytrumpsbull
two 'alves of coconut!
1831 Fans
02:53 PM on 11/03/2012
Boning and fondling the students...nothing new in education-land, but they do need to work on school policy for instructors. If it ever gets to where the parents can directly sue the offending teacher/school system, some schools could end up closing and being turned into homeless shelters etc.

ron2win
Gop-blood donor,I give till i bleed.
744 Fans
07:13 AM on 11/04/2012
As well as they should be !

HUFFPOST SUPER USER
Stickman125
70 Fans
07:41 AM on 11/04/2012
You can sue offending teacher/school systems, it happens all the time. But people like to run to the media first.

Welletsee
Trying hard to understand
208 Fans
08:16 AM on 11/04/2012
Well , no compromise in defense of our children. You are talking about tort reform... Another issue entirely.

731

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[ ] SEARCH ⊙ Site ○ Web Search by YAHOO!                Walnut Creek, C

**In The News:**   Zuckerberg privacy problem  |  Russia to bar U.S. adoptions  |  Marvell patent ruling  |  Gun owners' addresses put

0

Recommend | Send    Sign Up to see what your friends recommend.        Share    Tweet 0

# Calif principal testifies at teacher's abuse trial

The Associated Press
Posted: 11/02/2012 01:19:30 PM PDT
Updated:  11/02/2012 01:19:30 PM PDT

SAN JOSE, Calif.—A former California principal accused of failing to report the suspected sexual abuse of a young student at her school tearfully told jurors that she believed a teacher when he told her the reason he had blindfolded the girl and put something in her mouth was to teach her about Helen Keller.

Lyn Vijayendran, onetime principal of San Jose's O.B. Whaley Elementary School, testified Thursday that the second-grade teacher appeared forthright and "looked me right in the eye" when he explained that what had happened was part of a classroom lesson.

Santa Clara County prosecutors have charged Vijayendran, 36, with failure to report child abuse, a misdemeanor. The law requires principals, teachers and others who come into contact with children to report suspected child abuse.

The charge came after Vijayendran was told last fall of a possible molestation and she determined through her own investigation that no crime had been committed, authorities said. Police later found four more girls at the school that were believed to have been molested.

Vijayendran has since been reassigned. She could serve up to six months in jail if convicted, the San Jose Mercury News reported (http://bit.ly/Pq42P5).

The teacher, 35-year-old Craig Chandler, was arrested in January and has been charged with five counts of lewd and lascivious acts on a child under the age of 14, involving five children. Authorities say a crime lab found his semen on a classroom chair.

Advertisement

NEXT ARTICLE IN NEWS                          ✕

Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation

» Continue to article...

SUNNYVALE VW  Signthendrive event        GotDailyDeals

732

1 of 3                                                12/27/2012 4:33 PM

0

Like

0

water in her mouth.

Chandler also said his classroom door was open, though the student said it was closed, Vijayendran said.

"He said students learned better by doing," she said. "He was very convincing."

Vijayendran also testified she was convinced the student's demeanor was completely out of character for someone who had been molested.

"She had a big smile on her face," Vijayendran said. "She was her normal self, very talkative, the same as if she was talking about what she'd perform at the talent show."

Vijayendran also said that during an interview, the girl and her mother didn't contend that the incident was sexual in nature—only that it was strange. The mother is a legal immigrant.

Vijayendran added she did what she thought was right at the time. "Now, looking back, I have a different lens," she said.

During her cross-examination, Vijayendran admitted she was worried before speaking to Chandler about the sexually suggestive aspects of his behavior toward the girl.

Among other concerns, the child reported the teacher told her to "open her two legs."

"If someone said that to you in a grocery store line, you'd slap him, wouldn't you?" prosecutor Alison Filo asked.

Vijayendran agreed, saying: "You'd have to be crazy not to think that (his behavior could be sexual)."

The jury could get the case as early as Friday.

---

Information from: San Jose (Calif.) Mercury News, http://www.mercurynews.com

Reprint BOOKMARK Print Email A A A Font Resize Return to Top

## Recommended for You

- Roadshow: Barricades for I-680 toll lanes not...
- Police: Pittsburg resident charged with...
- Oakland brings in William J. Bratton to help...
- UC Berkeley law students charged in beheading...
- Marvell slammed with $1.2 billion patent...

NEXT ARTICLE IN NEWS

Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation

» Continue to article...

SUNNYVALE VW Signthendrive

GotDailyDeals

733

# Deliberations Begin In Trial Of SJ Principal Accused Of Not Reporting Sex Abuse

November 2, 2012 12:29 PM

Like 9 3 1 View Comments

O.B. Whaley Elementary School in San Jose. (CBS)

SAN JOSE (CBS/AP) — Jurors began deliberating Friday morning in the trial of a San Jose elementary school principal accused of failing to report the suspected sexual abuse of a child by a teacher.

Lyn Vijayendran, the former principal of San Jose's O.B. Whaley Elementary School, said she believed the teacher's explanation about what was allegedly going on in his classroom.

Vijayendran testified at her trial on Thursday that teacher Craig Chandler appeared forthright when he told her an incident during which he allegedly blindfolded a second-grade girl and put something in her mouth was part of a lesson plan about Helen Keller.

35-year-old Craig Chandler, a teacher at O.B. Whaley Elementary School in San Jose, is accused of aggravated sexual assault of a child. (San Jose Police Department)

Chandler is facing charges of committing lewd and lascivious acts on five children. A crime lab allegedly found his semen on a classroom chair.

A tearful Vijayendran said she did what she thought was right at the time, but had a "different lens" on it looking back.

(Copyright 2012 by CBS San Francisco. All Rights Reserved. This material may not be published, broadcast, rewritten, or redistributed.)

Filed Under
Local, News

Related Tags
Craig Chandler, Crime, Lyn Vijayendran, O.B. Whaley Elementary School, Sex abuse, Sexual abuse, Whaley Elementary

MORE FRO

SF Health Offic To...

5 Arrested In M And Gagged...

Fremont Cyclis Rock

FROM ARO

Deborah Norvil Arthritis (Lifes

Nurse Jacintha by Her... (E! O

Halle Berry Los

VIDEO NE

Wednesday

734

Calif. principal takes stand in sex abuse case - ContraCostaTimes.com    http://www.contracostatimes.com/ci_21914237/calif-principal-takes-...

Sign In | Register | Newsletters                                                                                                    Part of the Bay Area News Group

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help          Jobs   Cars   Homes   Classifieds   Shop

BROWSE   ○ Site   ○ Web Search by YAHOO!          Walnut Creek, CA   Now:54°F   High:54°F   Low:37°F   city or zip

In The News:   Zuckerberg privacy problem | Russia to bar U.S. adoptions | Marvell patent ruling | Gun owners' addresses published | Pro Bowl rosters | Candy cigarette warning

Advertisement

0
Recommend    Send    Sign Up to see what your friends          Share   Tweet   0
recommend.

# Calif. principal takes stand in sex abuse case

The Associated Press
Posted:   11/02/2012 10:28:38 AM PDT
Updated:   11/02/2012 10:28:38 AM PDT

SAN JOSE, Calif.—The California principal accused of failing to report the suspected
sexual abuse of a child by a teacher says she believed the teacher's explanation about what was allegedly going on in his
classroom.

Lyn Vijayendran, the former principal of San Jose's O.B. Whaley Elementary School, testified at her trial on Thursday that
teacher Craig Chandler appeared forthright when he told her an incident during which he allegedly blindfolded a
second-grade girl and put something in her mouth was part of a lesson plan about Helen Keller.

Chandler is facing charges of committing lewd and lascivious acts on five children. A crime lab allegedly found his semen
on a classroom chair.

According to the San Jose Mercury News (http://bit.ly/Pq42P5), a tearful Vijayendran said she did what she thought was
right at the time, but had a "different lens" on it looking back.

———

Information from: San Jose (Calif.) Mercury News, http://www.mercurynews.com

Advertisement

## fyibayarea

Find:
In:  East Bay   Go

Buy One 2nd 1/2 off from Strictly To Go
Pizza at Concord

Great Specials! from Doors on Demand at
Fremont

Dining | Ads/ecoupons | Claim Your Listing

0
Tweet

0
Like

0

Most Viewed   Most E-Mailed

[From the last 12 hours]                    RSS

1. Marvell slammed with $1.2 billion patent-
   infringement judgment,...
2. Walnut Creek police investigate fatal officer-
   involved shooting
3. Richmond woman killed in crash on San
   Pablo Dam Road
4. Three Brentwood homes evacuated due to
   natural gas leak
5. Bay Area's tech-led boom is broadening
6. Oakland Raiders shut out in Pro Bowl
   selections

Reprint   BOOKMARK   Email   A | A | A   Font Resize   Return to Top

NEXT ARTICLE IN NEWS                          ✕
Biz Break: Wall Street whipsaws with
'fiscal cliff' discussions, Apple reveals
executives' compensation
» Continue to article...

SUNNYVALE
VW        Signthendrive event                    GetDailyDeals   25,000 lights to turn Bay Bridge span into giant nig...

735

1 of 2                                                              12/27/2012 4:30 PM



San Jose Mercury News » Thursday, November 1, 2012



CHILD SEX ABUSE CASE

# Principal's trial begins in compelling fashion

**Educator accused of not reporting teacher**

→ PRINCIPAL, Page 6



# Principal

*Continued from Page 1*

...citor. Alison Filo told the jury of five women and seven men that the O.B. Whaley Elementary School principal broke the law by failing to report to police, "what anyone with common sense would reasonably suspect" from the girl's account. The principal should have realized that teacher Craig Chandler may have sexually molested the child, Filo said.

...charges of committing lewd and lascivious acts on a five-year-old remains for a trial pending trial.

...It is only the second time in two decades that an educator in the county has faced charges for allegedly shirking their legal obligation. A score of these mandatory reporters — who range from certain school employees to coaches. Vijayendran, 36, has pleaded not guilty.

...Wednesday, not to demonize the principal, contrasting her with administrators at Penn State, who covered up football coach Jerry Sandusky's pedophilia. But without being explicit, Filo said the failure to report had "extremely serious" consequences. Chandler is suspected of molesting another little girl after the first child and her mother met with Vijayendran. Tests by the Santa Clara County crime lab found Chandler's semen on a blue chair in his classroom.

"Ms. V. was not trying to save the football team," Filo said. "There is no evidence she's a villain. She's a well-meaning woman who made a terrible, terrible mistake in judgment that a reasonable person would not make."

## Detailed account

But in an equally compelling opening statement, Vijayendran's attorney, Eric Geffon, said no one involved but the principal's nasty girl, a mother or the head of human resources with whom Vijayendran consulted — suspected anything sexual at the time.

If the principal is convicted, she faces up to six months in jail, though experts say, it is more likely she'd be put on probation.

On Wednesday, Filo presented her case first, and the strongest evidence she offered against Vijayendran was contained in the handwritten notes the educator took in October 2011 during her conversation with the girl and her mother. Vijayendran gave the notes to police, who may not have discovered them otherwise.

The notes include the following account: The girl was told during recess that Chandler needed her. When she went to the classroom alone, she took out a blue blindfold, and told her to cover her eyes and lie down on the floor. Before she complied, she saw him take out a blue blanket which he put over her head. He removed her silver shoes. She felt something goofy on her feet, which she thought may have been his tongue.

He shifted the blanket up to her nose and put something goofy in her mouth.

...mouth. He moved her head around. She felt salty water in her mouth and the dampness on her jacket. He opened the door and put a piece of Wonka candy in her mouth.

...Filo contends he duped the child into performing a sex act.

But defense attorney Geffon suggested it was anything but obvious at the time.

The case cannot be judged in hindsight, he argued, comparing it to "someone claiming they knew the San Francisco Giants would make it to the World Series and emerge victorious. Look: not to what we know now but at what she knew then."

Geffon drove home that the young principal was provided with "zero" training by the Evergreen Elementary School District during the nine years she worked there, on how to gauge reports from students and parents. She has been reassigned to the district office as a coordinator of teacher support programs.

Geffon also said that child didn't act like any other child abuse victim Vijayendran had ever encountered. She wasn't tearful, emotional or evasive.

And in a key defense argument that may persuade jurors that Vijayendran was merely naive, Geffon pointed out that Chandler explained the incident to the principal calmly and even offered to meet with the child's parents to explain. The teacher told the principal he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years, and that the "instructional goal" was to deprive participating students of sight. He said he used a bath sponge on her foot and legs, and put a bottle containing salty water into her mouth. All the while, his classroom door was open, he told Vijayendran.

...It was a detailed, devious, well thought out, well prepared story, he concluded. It explained everything, Geffon said. He was ready.

## Another incident

Before Vijayendran became principal, Chandler had been reprimanded for sexually harassing a teacher in the mid-2000s, according to police reports in this case. The female teacher asked for a transfer, as a result, which the district granted.

The teacher said Chandler acted inappropriately on several occasions, including one incident when he came up behind her and put his hands on her hips, according to the reports. Another time, she said, he came into her classroom, closed the door and asked her if he could take pictures of her toes for a massage therapy class he was taking and if he could massage her feet, then again walked up behind her and put his hands on her hips.

The teacher also said Chandler complained to her about his sex life and, on a different occasion, told her he'd heard her breasts were getting enhanced. When she denied it, she said he told her he was glad because she didn't need one.

Filo concluded her case this afternoon. The defense will begin its case Thursday, when witnesses are expected to include the head of human resources, Carole Schmitt, whom Geffon said directed, not advised, the principal what to do.

737

At times tearful, San Jose principal testifies in her own defense - Con...      http://www.contracostatimes.com/ci_21909243/at-times-tearful-san-j...

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[ ] [SEARCH] ⊙ Site ○ Web Search by YAHOO!                          Walnut Creek, C

**In The News:**   Zuckerberg privacy problem  |  Russia to bar U.S. adoptions  |  Marvell patent ruling  |  Gun owners' addresses put

0                                                                        Share    Tweet  0

Recommend    Send         Sign Up to see what your friends
                          recommend.

## At times tearful, San Jose principal testifies in her own defense

By Tracey Kaplan tkaplan@mercurynews.com
Posted: 11/01/2012 06:37:07 PM PDT
Updated:   11/01/2012 06:51:07 PM PDT

At times tearing up, the former San Jose elementary school principal on trial for
failing to report suspected child sexual abuse tried to explain Thursday what in hindsight seems unimaginable -- why she didn't call police to report that a teacher had blindfolded an 8-year-old student with no one else there, made her lie down on the classroom floor, touched her feet with something that felt like a tongue, inserted something gooey in her mouth and then wiggled her head around til she tasted a salty liquid.

"It was my job to keep those kids safe," Lyn Vijayendran testified in a choked voice. "But on that day, I did what I thought was right.

"Now, looking back, I have a different lens."

For more than two hours Thursday, the former 36-year-old principal of O.B. Whaley Elementary struggled to convey why she accepted teacher Craig Chandler's explanation for his disturbing behavior -- that it was part of a lesson plan about Helen Keller.

"He was very forthright," she said, once again tearing up. "He looked me right in the eye."

For only the second time in two decades, Santa Clara County prosecutors have charged a local educator with shirking their legal obligation to call the authorities when they have a reasonable suspicion that a child has been abused.

Prosecutors have taken the rare step of making an example out of Vijayendran primarily because her alleged lack of judgment in October 2011 had devastating consequences. Another

child reported being molested in a similar fashion by the same teacher about three months later.

Advertisement

Chandler was subsequently arrested in January and
ly charged with committing lewd and lascivious

SUNNYVALE   Sign and drive Event                                    GotDailyDeals

738

At times tearful, San Jose principal testifies in her own defense - Con...     http://www.contracostatimes.com/ci_21909243/at-times-tearful-san-j...

35-year-old teacher, in jail pending his trial, faces a maximum sentence of 75 years to life if he is convicted.

If Vijayendran is convicted of her misdemeanor charge, she could serve up to six months in jail, though it is more likely she'd be put on probation. She has been reassigned to the district office as coordinator of teacher support programs.

0
Like
0

On Thursday, under gentle questioning by her attorney Eric Geffon, the former principal said she was lulled by several factors into believing the teacher had merely done something dumb.

One reason Vijayendran was convinced was the child's demeanor was completely out of character for someone who had been molested.

"She had a big smile on her face," she told the jury of five women and seven men. "She was her normal self, very talkative, the same as if she was talking about what she'd perform at the talent show."

The girl and her mother, who were both interviewed by the principal, didn't contend the incident had been sexual in nature, she said, merely that it had been strange. The mother is a legal immigrant.

Vijayendran also hadn't gotten any training from Evergreen Elementary School District on how to interview suspected victims and other aspects of her responsibilities as a mandated reporter.

She also said she interviewed the teacher because she was told to do so by the district's human resources director, Carole Schmitt. In hindsight, that decision gave Chandler the opportunity to try to get rid of any incriminating evidence.

Her interview with Chandler was very persuasive, Vijayendran said. He told her that he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years. He said the "instructional goal" was to deprive participating students of sight. He said he used a bath sponge on her foot and legs, and put a bottle containing salty water into her mouth. All the while, his classroom door was open, he told Vijayendran, though the child said the door was closed.

"He said students learned better by doing," she said. "He was very convincing."

But under cross-examination by prosecutor Alison Filo, the former principal admitted she was worried before she spoke to Chandler about the sexually suggestive aspects of his behavior toward the girl.

Among other concerns, the child reported the teacher told her to "open her two legs."

"If someone said that to you in a grocery store line, you'd slap him, wouldn't you?" Filo commented.

"You'd have to be crazy not to think that (his behavior could be sexual)," Vijayendran agreed.

That admission contradicts Geffon's insistence that it never occurred to anyone -- the principal, mother or human resources director -- that the strange encounter was sexual.

Vijayendran also apparently didn't ask Chandler what wiggling the child's head while something was in her mouth had to do with Helen Keller. And she didn't query other administrators if it was true they knew all about the lesson plan and were fine with it, as Chandler claimed.

Schmitt, the district's director of human resources, also didn't help Vijayendran's case much, though the jury may wind up sympathizing with the former principal. The administrator testified she told Vijayendran to interview Chandler, but all she knew at the time were a few scant details. Vijayendran merely told her that Chandler put something "salty, warm and hard" in the child's mouth. Schmitt said she hadn't received any training on reporting child sexual abuse for 17 years.

But Schmitt said it was Vijayendran, not her, who decided how to handle the incident. After the interviews, Vijayendran called Schmitt and without sharing many details said she'd de_____nt the mother's request and transfer the child to a

SUNNYVALE        Signthendrive Event                    GotDailyDeals

739

At times tearful, San Jose principal testifies in her own defense - Con...     http://www.contracostatimes.com/ci_21909243/at-times-tearful-san-j...

"The only direction I gave her," Schmitt said, "was talk to the teacher and talk to the child."

The case could go to the jury as soon as Friday afternoon after the judge instructs the jury and the lawyers make their closing arguments.

Follow Tracey Kaplan at 408-278-3482. Follow her at Twitter.com/tkaplanreport.

📧 Reprint  🔖 BOOKMARK 📑 💱 📧  🖨 Print  ✉ Email  A A A Font Resize 🔼 Return to Top



### New Rule for California Drivers

(Dec 2012) San Jose - If you drive in California you better read this... Learn More ▶

Insurance.Comparisons.org

## Recommended for You

- ▶ Oakland Tribune editorial: Troubling new...
- ▶ Stanford could lose stars' to NFL draft
- ▶ Piedmont: Woman discovers burglar inside home
- ▶ Housing project on Buena Vista Avenue before...
- ▶ Exploratorium closes Jan. 2, begins move to...
- ▶ UC Berkeley law students charged in beheading...
  – SPONSORED LINK –

Two US Drone Strikes in Yemen for Christmas! - Global Voices
(From DailyMe.com)

Powered by newstogram

· FAQ: Article commenting how-tos and tips

 Recommend     Sign Up to see what your friends recommend.

| Add a comment... |
| --- |
| Comment using... |

Facebook social plugin

Related Results

**Vote Yes on Measure J** to repair and modernize local schools in Alum Rock

**Are You A Single Mom?** Access to Low Income Services Get Financial Resources, Help, Aid

**affordable housing** Find a Rental for Your Next Home. Browse Listings in all 50 states.



SUNNYVALE VW   Sign then drive event   GotDailyDeals   740



• **Paul Sprague** · Top Commenter
In this case, the principal as a mandated reporter, was obligated to report the incident to either Child Protective Services (CPS) or local police under California Penal Code Sections 11165 through 11174.3. Additionally, the principal should have been prepared for such an incident through policies that are already in place by the district and mandated laws by the State of California. If Vijayendren was confused or unclear as to what to do in this instance, she knew that all it would take is one phone call to CPS or San Jose P.D. If you would like to find out what the laws are, go to www.cdss.ca.gov/cdssweb/.
That's all Ms. Vijayendren had to do and she could have saved herself much grief and guilt.
Reply · 8 · Like · Follow Post · November 2 at 7:59am



• **Miles Coatsee** · Top Commenter · Owner at Law Offices of Miles J. Coatsee, Esq.

According to the article, Ms. Vijayendren didn't receive any training on her obligations as a mandated reporter.

Reply · Like · November 9 at 1:02am



• **Jennifer Torres Purifoy** · Top Commenter
What an idiot you are suppose to report it and let cps take it from there.
Reply · 8 · Like · Follow Post · November 2 at 1:55am



• **Rudy Porras** · San Jose, California

True true

Reply · Like · November 3 at 4:21pm



741

Priscilla Wenceslao · Subscribe

That teacher is gross! I hope he serves time for his nasty crime. And why would a Principal authorize such a lesson plan...... DISGUSTING!!!!!

Reply · Like · November 5 at 8:08am



Miles Coatsee · Top Commenter · Owner at Law Offices of Miles J. Coatsee, Esq.

She DIDN'T authorize the lesson plan. To the contrary, she told Chandler never to use that "lesson plan" again.

Reply · Like · November 9 at 12:59am



Irene Chan · UC Davis
I feel very sad for this little girl. you send your children to school with the thought that they'll be safe and in trusted hands. it's appalling that this principal fails even the 'reasonable person' test for suspecting abuse.
i'm not sympathetic in the least to Vijayendren.
i work in a preschool and as soon as any type of abuse is suspected, you report it. PERIOD. you don't worry about not being sure or anything. you report it and let the authorities figure it out.
it's APPALLING that she still has a job as a "coordinator of teacher support programs". she is a pock on Evergreen Elementary School District. she's failed the children in a very big way. and her excuse is sickening... just because this little girl isn't completely distraught means nothing. she's a child and lacks the ability to express herself as an adult would. not every child is going to fit into the stereotype.
Reply · 7 · Like · Follow Post · November 2 at 10:07am



Dennis Nichols · Subscribe · Top Commenter
She deserves jail time for this. A basic tenant of working with children is that even if you have a slight suspicion you need to report it to the authorities. Tell them what you know, and let them decide whether or not further action is needed.

I suspect that the sicko teacher who did this is good looking and the principal was batting her eyelashes and not seeing the truth.
Reply · 5 · Like · Follow Post · November 2 at 5:42am

742



Dana Lee Depew II · Top Commenter · San Jose State University

"Basic tenant of working" please refer me to which law specifically you must be referring to. Also please refer me to the contractual obligation she signed that specifically states she must contact law authorities on even the slightest of suspicions.

The truth is this is legal reaching at its worst. Even the parent didn't think anything sexual happened. Should we go after the mother too?

Reply · 2 · Like · November 2 at 7:20am



Paul Sprague · Top Commenter

Try looking at California Penal Code Sections 11165-11174.3 Sir.

Reply · 6 · Like · November 2 at 7:47am



Cliff Geneson · Top Commenter

Paul Sprague, you and the DA need to read it. It is specific on "suspect" or "know" of abuse. She didn't suspect it, therefore no crime was committed by her. This isn't like the Penn State case, where the abuse was known, much less suspected. Were I on the jury, it's Not Guilty. Were I the judge, it would be sanctions against the idiot who brought the charges.

Reply · 1 · Like · November 2 at 7:58am



Paul Sprague · Top Commenter

743

"Reasonable Suspicion" as defined by the California Penal code occurs when "it is objectively reasonable for a person to entertain such a suspicion based on the facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse". (PC 11166(a)(1).

Reply · 5 · Like · November 2 at 8:14am



Janice Ohlson Husak · Subscribe · Top Commenter · San Jose, California

Cliff Geneson - The village idiot would need to report this to CPS, read the description of what the child said happened. This is some sick stuff that went on the teacher is one horrible person.

Reply · 4 · Like · November 2 at 8:19am



Paul Sprague · Top Commenter

Janice Ohlson Husak Well, you get it Janice, but I wonder if Mr Geneson will? There is a thing called "Standards of Conduct" which all positions of authority have and will be judged by. It is clear, that the defense is trying to argue against the "Reasonable Suspicion" doctrine saying that she did not have the proper education and training or experience to deal with the situation. It is clear, that witnesses in the case, such as Schmitt are also using the same defense.

Reply · 2 · Like · November 2 at 8:28am



Angelina Tellier · Half Moon Bay, California

The principal was obviously wrong.....way wrong! The even more disturbing fact is that she went to hr for help and they gave her nothing more that direction to investigate. Then they threw her under the bus. They knew what happened and did nothing. They should all be held responsible. Anyone who would defend the principal or district is out right WRONG!

Reply · 3 · Like · November 2 at 8:57am

744



Sampson Mallory · Subscribe · Top Commenter · 103 subscribers

Dana Lee Depew II www.cdss.ca.gov/cdssweb/.

Reply · Like · November 2 at 9:28am



Amy Maggi Terao · Santa Teresa High

Are you nay sayers child molesters/criminals? If you think that there is not something wrong with what happened here then you are sick. I have been a mandated reporter and I don't need any special training to recognize that I would need to call the authorities. And Dana - do you not know that some parents are not that great at protecting their children/neglectful, etc? (Not saying neccesarily the case here, don't know the whole story on what the mother felt, etc.) Sometimes it is necessary for other people to stick up for children - for instance school officials = That is what mandated reporter laws are for!

Reply · 4 · Like · November 2 at 10:01am



Amy Maggi Terao · Santa Teresa High

Yes Janice, not only the village idiot but even my 5 year old would no to tell the police!

Reply · 1 · Like · November 2 at 10:24am



Steve Williams · Top Commenter · San Jose, California
Ms. Vijayendran obviously made the wrong decision. Why did she not step up and take responsibility for her decision instead of dragging this through the court?
Reply · 4 · Like · Follow Post · November 1 at 7:22pm

745



Dana Lee Depew II · Top Commenter · San Jose State University

She's not the one dragging it through the court, she is BEING dragged through the court.

Reply · 2 · Like · November 2 at 7:18am



Smita Philip · San Jose, California

remember her background...shes from india and out there "people dont do things like this" and if they do they turn a blind eye to it...i lived there i saw it with my own eyes...they have a hard time accepting that they are imperfect and therefore cant see their "brothers and sisters" being that way and will take any "excuse or reason" to believe otherwise...i think she should spend some time in jail expand her mind and let her see how the stupidest of crimes to the most serious crimes are justified by jail time and why...

Reply · 2 · Like · November 2 at 8:46am



Amy Maggi Terao · Santa Teresa High

as she should be dragged through the court! I don't mean a lynch mob but come on lady, you had to know this was wrong and should be prosecuted

Reply · 1 · Like · November 2 at 10:19am



Sonny Dosanjh · Top Commenter · American High

@Smita where does it say that she is from India? She is a Caucasian lady who married an Indian man, hence her last name. So, I am not understanding your point here in regards to her background unless you are implying that her husband

746

was in some way complicit in covering it up. I do agree with you, that these horrific things take place everywhere in the world, especially in controlled environments such as schools and churches/temples, etc.

Reply · 2 · Like · November 2 at 12:38pm



Suzanne Dunham Galanda Vicari · Top Commenter
This makes me SICK! Sounds like the principle was Helen Keller! What is she a Dumb AZZ?
Reply · 4 · Like · Follow Post · November 1 at 8:03pm



Jesse Shatner · Top Commenter
I don't understand how someone so stupid and criminally incompetent gets to be the principal of a school. I hope she goes to prison for a long time.
Reply · 3 · Like · Follow Post · November 2 at 9:09am



Amy Maggi Terao · Santa Teresa High

unfortunately will not go to prison for a long time, I do feel bad for how stupid she acted, but definately was criminal and epecially when it comes to children - there is no excuse

Reply · 1 · Like · November 2 at 10:20am



Paul Rogers · Top Commenter · Santa Clara University School of Law
Difficult to believe that in this day and age, a district hasn't given principals and HR directors updated training re sexual abuse by teachers. Also a little disturbed that there is zero mention of district hiring policies, background checks and what the district knew about this teacher's background prior to hiring him. Hopefully, he'll be someone's Hellen Keller in prison.
Reply · 2 · Like · Follow Post · November 2 at 9:00am



747

Amy Maggi Terao · Santa Teresa High

I have been a mandated reporter and don't know what kind of training she needed in order to realize she needed to report this. But I do agree - should be more training for such an important issue

Reply · 2 · Like · November 2 at 10:22am



Frank Nilsen · Top Commenter
These are all weak, pathetic excuses. If she had a shred of decency she would have plead guilty to avoid having this dragged into the public eye, but the fact that she took this to trial is proof of the same kind of severe personality defect that stopped her from doing the right and obvious thing in the first place.
Reply · 2 · Like · Follow Post · November 2 at 2:34pm



Richard Shirley · Top Commenter · San Francisco, California
She believed him. She does not belong in that job if she could not connect the dots. What planet is she living on?
Reply · 2 · Like · Follow Post · November 2 at 3:37pm



Anne Caploe · El Cerrito High School
Paul Sprague has listed the code and sections, those for mandated reporters. (I believe the noun is tenet, not tenant.)
Reply · 1 · Like · Follow Post · November 2 at 12:01pm



Angelina Tellier · Half Moon Bay, California
http://angelinamom.wordpress.com/2012/11/02/school-district-secrets-why-i-am-homeschooling/
Reply · Like · Follow Post · November 1 at 10:45pm



Carl Finch
Tracey Kaplan writes, "[Lyn Vijayendran] tried to explain Thursday what in hindsight seems unimaginable -- why she didn't call police to report..."

I'm afraid it IS imaginable! Women who have, themselves, been molested as children are sometimes vulnerable to the sort of "blindness" that Ms. Vijayendran exhibited in her

748

inaction---not that that in ANY way would make her behavior at all acceptable. It's imaginable, but still inexcusable.
Reply · Like · Follow Post · November 2 at 4:13pm

Joyce Wilson · Subscribe
stupid B*&$#H
Reply · Like · Follow Post · November 2 at 8:55am

749

San Jose Mercury News » Wednesday, October 31, 2012

## O.B. WHALEY SCHOOL

# Former principal goes on trial

### Vijayendran charged with failing to report teacher accused of molestation

By Sharon Noguchi
snoguchi@mercurynews.com

SAN JOSE — California has the longest list in the nation of people required to report suspected child abuse — from teachers to foster parents. But absent from that list are school district administrators, who often are those not consulted by principals trying to discern between unusual, inappropriate and abusive behavior.

Exactly who must report, when to authorities will be the subject of a misdemeanor trial set to open Wednesday of a former principal of O.B. Whaley School in San Jose charged with failing to report a teacher now charged with molesting five second-graders.

In a rare prosecution under California's mandated reporter law, prosecutors will allege that Lyn Vijayendran violated the law in October 2011 when she failed to report to law enforcement a par-

[...]'s concern. If convicted, Vijayendran faces up to six months in jail. Teacher Craig Chandler, the parent reported, had blindfolded her daughter alone in his room and put something in her mouth. Three months later, after the parent of another student brought a similar complaint and then called police, Chandler was arrested. In both instances, Vijayendran and Assistant Principal Lea Peery first contacted Carole Schmitt, human resources director for the Evergreen School District, for guidance.

But prosecutors are not charging Schmitt with failure to report. Papers obtained by the Mercury News in response to a Public Records Act request indicate that Schmitt heard via emails and

See ABUSE, Page 6

750

# Abuse

Continued from Page 1

phone calls about the parents' complaints against Chandler.

In January, Peery was filling in as principal while Villaveldran was on maternity leave. When the mother of the second student brought a similar complaint, Peery consulted with Schmitt at least five times. Later that morning, the parent reported she had called police and Peery then filed out a report to Child Protective Services. The mother, who was crying, said that while Chandler was alone with her daughter in the classroom, he had blindfolded her, put something in her mouth and moved her head with his hands. The student told Peery she was scared to be in class. Crime lab tests showed Chandler's semen was found on chairs in his classroom.

Even after being told that police had been notified, Schmitt wrote in an email to Peery: "Please remind Mr. Candler (sic) he is not to pursue or make contact with this child or parent. He needs to leave her alone."

A month later, as the Evergreen district interviewed students who had been in Chandler's class, Peery asked Schmitt if she could record them. Schmitt suggested in an email not recording them, because the recordings would be admissible in a lawsuit. "While notes amend not be. She wrote: "When you write up your notes, the words from the students and teachers do not need to be verbatim, but just specific quotes that help your investigation."

Evergreen Kristen D. Schmitt and Superintendent Kathy Gomez declined to comment on the district's policies, citing the pending trials.

California lists 40 job categories as mandated reporters, the most in the nation, according to attorney Bill Grimm of the National Center for Youth Law in Oakland. But he thinks California's exhaustive list of people has effectively excluded some logical mandated reporters by its specificity. For example, the list doesn't list district offices administrators like human resources directors such as Schmitt. Nor does it name principals, although presumably they're covered under "administrative officer or supervisor of child welfare and attendance."

Despite the law's vagueness, the Evergreen district maintains that all its teachers and administrators are mandated reporters.

Before 2000, the law was more general, covering school district employees as "child care custodians."

"I think anybody involved in public education of our children should be a mandated reporter," Grimm said. The list specifies "doctors, counselors,

film processors and animal control officers."

Another weakness in the law, Grimm said, is that it doesn't require training for mandated reporters. Districts that don't conduct training simply must write a letter explaining why they didn't. Last year, the Evergreen district did not train its administrators, Gomez has said. But over the summer she said training would be done for the current school year.

Chandler was arrested in January and eventually charged with five felony counts of lewd and lascivious acts on a child under the age of 14 involving five students. He remains in Santa Clara County Jail without bail. Villaveldran was transferred to an administrative position in the district office.

*Staff writer Tracey Kaplan contributed to this report. Contact Sharon Noguchi at 408-271-3776. Follow her at Twitter.com/NoguchiOnK12.*

751

Sign In | Register | Newsletters

Holiday Fun For Everyone ONLINE S
Please Visit Global Winter Wonderland

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[SEARCH]  ⊙ Site  ○ Web Search by YAHOO!                                    Walnut Creek, C

**In The News:**   Zuckerberg privacy problem   |   Russia to bar U.S. adoptions   |   Marvell patent ruling   |   Gun owners' addresses put

0                                                                    Share    Tweet  0

Recommend    Send       Sign Up to see what your friends
                                            recommend.

# Trial begins for San Jose principal accused of failing to report suspected child molestation by teacher

By Tracey Kaplan tkaplan@mercurynews.com
Posted:   10/31/2012 05:55:54 PM PDT
Updated:   11/01/2012 08:43:37 AM PDT

SAN JOSE -- An 8-year-old San Jose girl and her mother show up at the principal's
office to report a disturbing incident.

The principal calls human resources and is told to interview the teacher. So she
questions him later, in particular about some "white stuff" on the girl's jacket. He
glibly explains it was all part of an unorthodox lesson plan.

What the principal, Lyn Vijayendran, did next -- which was transfer the girl to a different class -- landed her in court
Wednesday in a trial closely watched by parents and educators.

In a powerful opening statement, Santa Clara County prosecutor Alison Filo told the jury of five women and seven men that
the O.B. Whaley Elementary School principal broke the law by failing to report to police what anyone with common sense
would reasonably suspect from the girl's account. The principal should have realized that teacher Craig Chandler may
have sexually molested the child, Filo contended. Chandler was arrested about three months later on charges of
committing lewd and lascivious acts on five children and remains in jail pending trial.

It is only the second time in two decades that an educator in the county has faced charges for allegedly shirking her legal
obligation as one of 41 "mandatory reporters," who range from certain school employees to coaches. Vijayendran, 36, has
pleaded not guilty.

Filo was careful Wednesday not to demonize the principal, contrasting her with administrators

Related

Document: Notes by O.B. Whaley
Elementary School's then-Principal
Lyn Vijayendran on 10/14/11

at Penn State who covered up football coach Jerry
Sandusky's pedophilia. But without being explicit, Filo
said the failure to report had extremely serious
consequences. Chandler is suspected of molesting
another little girl after the first child, and her mother met
...yendran. Tests by the Santa Clara County crime

Advertisement

SUNNYVALE
VW   Signthendrive Event

GotDailyDeals
752

Trial begins for San Jose principal accused of failing to report suspec...   http://www.contracostatimes.com/ci_21899769/trial-begins-san-jose-...

"Ms. V was not trying to save the football team," Filo said. "There is no evidence she's a villain. She's a well-meaning woman who made a terrible, terrible mistake in judgment that a reasonable person would not make."

0

Like

0

## Detailed account

But in an equally compelling opening statement, Vijayendran's attorney Eric Geffon said no one involved -- not the principal, the girl's mother nor the head of human resources with whom Vijayendran consulted -- suspected anything sexual at the time.

If the principal is convicted, she faces up to six months in jail, though experts say it is more likely she'd be put on probation.

On Wednesday, Filo presented her case first, and the strongest evidence she offered against the principal was contained in the handwritten notes the educator took in October 2011 during her conversation with the girl and her mother. Vijayendran gave the notes to police, who may not have discovered them otherwise.

The notes include the following account: The girl was told during recess that Chandler needed her. When she went to the classroom alone, he took out a blue blindfold and told her to cover her eyes and lie down on the floor. Before she complied, she saw him take out a blue blanket, which he put over her head. He removed her silver shoes. She felt something gooey on her feet, which she thought may have been his tongue.

He lifted the blanket up to her nose and put something gooey in her mouth. He moved her head around. She felt salty water in her mouth and it dripped onto her jacket. He opened the door and put a piece of Wonka candy in her mouth.

Filo contends he duped the child into performing a sex act.

But defense attorney Geffon suggested it was anything but obvious at the time.

"The case cannot be judged in hindsight," he argued, comparing it to someone claiming they knew the San Francisco Giants would make it to the World Series and emerge victorious. "Look not at what we know now, but at what she knew then."

Geffon drove home that the young principal was provided with "zero" training by the Evergreen Elementary School District during the 13 years she's worked there on how to judge reports from students and parents. She has been reassigned to the district office as coordinator of teacher support programs.

Geffon also said the child didn't act like any other child abuse victim Vijayendran had ever encountered; she wasn't tearful, emotional or evasive.

And in a key defense argument that may persuade jurors that Vijayendran was merely naïve, Geffon pointed out that Chandler explained the incident to the principal calmly and even offered to meet with the child's parents to explain. The teacher told the principal he called the girl into the classroom to prepare a lesson on Helen Keller, which he had been using for years, and that the "instructional goal" was to deprive participating students of sight. He said he used a bath sponge on her foot and legs, and put a bottle containing salty water into her mouth. All the while, his classroom door was open, he told Vijayendran.

It was "a detailed, devious, well-thought out, well-prepared story he concocted that explained everything," Geffon said. "He was ready."

## Another incident

Before Vijayendran became principal, Chandler had been reprimanded for sexually harassing a teacher in the mid-2000s, according to police reports in this case. The female teacher a_____ ____ ___ __ansfer as a result, which the district granted.

SUNNYVALE VW   Sign then drive Event   GotDailyDeals

753

Trial begins for San Jose principal accused of failing to report suspec...   http://www.contracostatimes.com/ci_21899769/trial-begins-san-jose-...

her and put his hands on her hips, according to the reports. Another time, she said, he came into her classroom, closed the door and asked her if he could take pictures of her toes for a massage therapy class he was taking and if he could massage her feet, then again walked up behind her and put his hands on her hips.

The teacher also said Chandler complained to her about his sex life and on a different occasion told her he'd heard she was getting her breasts enhanced. When she denied it, she said he told her he was glad because she didn't need one.

Filo concluded her case by mid-afternoon. The defense begins its case Thursday when witnesses are expected to include the head of human resources, Carole Schmitt, whom Geffon said "directed, not advised" the principal what to do.

Contact Tracey Kaplan at 408-278-3482. Follow her at Twitter.com/tkaplanreport.

Reprint    BOOKMARK    Print    Email    A A A Font Resize    Return to Top



New $40 iPads for Christmas? -- Yep! If You Know Where to Look



How Cruise Lines Fill All Those Unsold Cruise Cabins



What Happens When You Take a Testosterone Supplement

## Recommended for You

- Housing project on Buena Vista Avenue before...
- Piedmont: Woman discovers burglar inside home
- Stanford could lose stars to NFL draft
- Hicks: Leonardo DiCaprio reportedly walked Kate...
- Hicks: 'Twilight' actor charged with being...
- Oakland Raiders shut out in Pro Bowl selections

– SPONSORED LINK –

Rove: Obama Needs a New Second-Term Approach
(From DailyMe.com)

Powered by newstogram

- FAQ: Article commenting how-tos and tips

Recommend    Sign Up to see what your friends recommend.



Add a comment...

Comment using...

Facebook social plugin

## Related Results
Alum Rock Vote Yes on Measure J
Found: contra costa times See anyone's past criminal history. Unlimited searches. Peace of mind.
Richmond Jobs Millions of Jobs at indeed.com. A Better Way to Search for Jobs.

http://yesonalurr

SUNNYVALE    Sign and drive Event    GotDailyDeals

754

6 comments

Vincent Rodriguez · Top Commenter · Evergreen Valley College
Mr. Chandler will have plenty of gooey stuff put in his mouth where he's going...only it will be
from a black man named Tyrone or homeboy named Puppet. He may not have the luxury of a
blanket covering his face either...and the wonka candy will be replaced by a brown meat flute.
Vijayendran should get the same treatment for letting this prick prey on another child....IMHO.
Reply · 3 · Like · Follow Post · November 1 at 1:10pm

AL Rodriguez · Andrew P. Hill
This is revolting and I think the principal should go to prison her self she was responsible for the
safety of the children and she let 5 so far that we know now be damaged for the rest of there life.
She should suffer the same and be sent to prison. I have reported to a few different schools here
in San Jose school district for certain verbal abuse behavioral situations by teachers with my
child and nothing was done. They always just look it over. I think the school system is extreamly
flawed and the school staff only look out for there retirements. Disgusting!
Reply · 1 · Like · Follow Post · November 1 at 8:44pm

Marsha Raczniak
San Jose sounds like a very unsafe, dangerous town to live in. Mental note....Don't ever go to San
Jose for any reason, ever!
Reply · 1 · Like · Follow Post · November 1 at 7:53am

Eloise Imagos · Top Commenter
Marsha, I'm pretty sure we can live with that.
Reply · 2 · Like · November 1 at 8:48am

Adrian Silva · San Jose State University
San Jose is not a town, it is a city with about a million people, so of course bad things are going
to happen. You are totally ignorant if you think these things aren't happening in your "town". Get
real.
Reply · 4 · Like · November 1 at 9:13am

Marsha Raczniak
ELOISE, YOUR FUNNY. LOL, LOL, LOL.
Reply · Like · November 1 at 9:21am

Marsha Raczniak
Adrian Silva , YOU ARE EVEN FUNNIER, LOL, LOL,
Reply · Like · November 1 at 9:22am

Jan Yawnjan · Top Commenter
Eloise Imagos: You are senile.
Reply · Like · November 1 at 11:35am

Adrian Silva · San Jose State University
Marsha Raczniak : *you're
Reply · Like · November 1 at 1:48pm

755

Jan Yawnian · Top Commenter
I hope this sick puppy rots in hell. I hope they fire this stupid principal to teach her a "lesson".
Reply · 1 · Like · Follow Post · November 1 at 1:19am

Paul Sprague · Top Commenter
He will, but you have to wonder about those like Vijayendran who are supposed to be educators
commisioned to ensuring the safety of our children when in their custody.
Reply · 1 · Like · November 1 at 7:07am

Suzanne Dunham Galanda Vicari · Top Commenter
PPl from other countries have different ideas. They need to be educated when they are working
w/ our children. I worked in education for 30 years. I once had a director that turned a blind eye
to abuse, she did not want to give HER school a bad reputation. I reported to CPS!
Reply · Like · Follow Post · November 2 at 9:20am

Caroline Redbrook · Top Commenter
This underscores the need to get accused pedophiles like Sylvain Kustyan off our streets.
Kustyan has been formally charged with two counts of 1st Degree Sodomy of a ten-year-old
little boy. This French native and middle school teacher is currently on the lam.
Reply · Like · Follow Post · November 1 at 6:08am

Eloise Imagos · Top Commenter
Caroline Redbrook - In general, getting pedophiles off the streets is the right thing to do. I am not
seeing how getting Sylvain Kustyan off the streets would change the Whaley Elementary School
situation in the slightest. Would you please help me understand your logic? Thanks.
Reply · Like · November 1 at 10:40am

Jan Yawnian · Top Commenter
Imagos: "In general" ?!?!?!? Of course it's the right thing to do, moron!!!! What a stupid
comment! Getting pedophiles off the street would at least prevent them from claiming more
victims. As far as the Whalen situation, firing the principal and implementing Title IX better is
some hope of dealing with this unfortunate situation. Give me a break.
Reply · Like · November 1 at 11:32am

Eloise Imagos · Top Commenter
Jan - We are both saying the same thing, Pedophiles should be off the streets. What I'm hoping
Caroline can clarify is how the one particular pedophile she cited is related to this case.

Oh, and I asked questions when I didn't understand instead of immediately jumping to name
calling. I recommend you try it sometime.
Reply · Like · November 1 at 6:32pm

756

Trial starts for San Jose principal accused of failing to report suspect...      http://www.contracostatimes.com/ci_21891519/trial-starts-wednesda...

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[ ] SEARCH  ⦿ Site ○ Web Search by YAHOO!                     Walnut Creek, C

**In The News:**   Zuckerberg privacy problem  |  Russia to bar U.S. adoptions  |  Marvell patent ruling  |  Gun owners' addresses put

0
Recommend   Send      Sign Up to see what your friends recommend.

Share    Tweet 0

# Trial starts for San Jose principal accused of failing to report suspected child abuse

**By Sharon Noguchi snoguchi@mercurynews.com**
Posted:  10/31/2012 10:10:12 AM PDT
Updated:  10/31/2012 10:11:28 AM PDT

California has the longest list in the nation of people required to report suspected child abuse — from teachers to dog catchers. But absent from that list are school district administrators, who often are those first consulted by principals trying to discern between unusual, inappropriate and abusive behavior.

Exactly who must report what to authorities will be the subject of a misdemeanor trial set to open Wednesday of a former principal of O.B. Whaley School in San Jose charged with failing to report a teacher now charged with molesting five second-graders.

In a rare prosecution under California's mandated reporter law, prosecutors will allege that Lyn Vijayendran violated the law in October 2011 when she failed to report to law enforcement a parent's concern. If convicted, Vijayendran faces up to six months in jail. Teacher Craig Chandler, the parent reported, had blindfolded her daughter alone in his room and put something in her mouth.

Three months later, after the parent of another student brought a similar complaint and then called police, Chandler was arrested.

In both instances, Vijayendran and Assistant Principal Lea Peery first contacted Carole Schmitt, human resources director for the Evergreen School District, for guidance.

But prosecutors are not charging Schmitt with failure to report. Papers obtained by the Mercury News in response to a Public Records Act request indicate that Schmitt heard via emails and phone                 calls about the parents' complaints against Chandler.



Click photo to enlarge

Teacher Craig Richard Chandler, arrested on suspicion of... ( San Jose Police Department )

Advertisement                                                          ...ary, Peery was filling in as principal while ...

SUNNYVALE   Signthendrive.Event                    | GotDailyDeals |   757

1 of 4                                                                   12/27/2012 4:39 PM

consulted with Schmitt at least five times. Later that morning the parent reported she had called police, and Peery then filled out a report to Child Protective Services. The mother, who was crying, said that while Chandler was alone with her daughter in the classroom he had blindfolded her, put something in her mouth and moved her head with his hands. The student told Peery she was scared to be in class. Crime lab tests showed Chandler's semen was found on chairs in his classroom.

0

Like

0

Even after being told that police had been notified, Schmitt wrote in an email to Peery, "Please remind Mr. Candler (sic) he is not to pursue or make contact with this child or parent. He needs to leave her alone."

A month later, as the Evergreen district interviewed students who had been in Chandler's class, Peery asked Schmitt if she could record them. Schmitt suggested in an email not recording them, because the recordings would be admissible in a lawsuit, while notes might not be. She wrote, "When you write up your notes, the words from the students and teachers do not need to be verbatim, but just specific quotes that help your investigation."

Evergreen School District Superintendent Kathy Gomez declined to comment on the district's policies, citing the pending criminal trials.

California lists 40 job categories as mandated reporters, the most in the nation, according to attorney Bill Grimm of the National Center for Youth Law in Oakland. But he thinks California's exhaustive list of people has effectively excluded some logical mandated reporters by its specificity. For example, the list doesn't list district office administrators, like human resources directors such as Schmitt. Nor does it name principals, although presumably they're covered under "administrative officer or supervisor of child welfare and attendance."

Despite the law's vagueness, the Evergreen district maintains that all its teachers and administrators are mandated reporters.

Before 2000, the law was more general, covering school district employees as "child care custodians."

"I think anybody involved in public education of our children should be a mandated reporter," Grimm said. The list specifies doctors, counselors, film processors and animal control officers.

Another weakness in the law, Grimm said, is that it doesn't require training for mandated reporters. Districts that don't conduct training simply must write a letter explaining why they didn't. Last year, the Evergreen School District did not train its administrators, Gomez has said. But over the summer she said training would be done for the current school year.

Chandler was arrested in January and eventually charged with five felony counts of lewd and lascivious acts on a child under the age of 14, involving five students. ¿He remains in Santa Clara County Jail without bail. Vijayendran was transferred to an administrative position in the district office.

Staff writer Tracey Kaplan contributed to this report. Contact Sharon Noguchi at 408-271-3775. Follow her at Twitter.com/NoguchiOnK12.

Reprint   BOOKMARK   Print   Email   A|A|A   Font Resize   Return to Top

San Jose: Trial starts Wednesday for principal accused of failing to r...        http://www.contracostatimes.com/ci_21891514/san-jose-trial-starts...

Sign In | Register | Newsletters                                         Part of the Bay Area News Group

I CHOSE SAINT MARY'S FOR MY MBA
BECAUSE WE BOTH VALUE   Global Thinking    RSVP    Jan 10 San Ramon
                                                          Jan 16 Santa Clara
                                                          Jan 23 Online

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Opinion   Help        Jobs   Cars   Homes   Classifieds   Shop

[search]   ○ Site ○ Web Search by YAHOO!          ● Walnut Creek, CA   Now:54°F   High:54°F   Low:37°F   city or zip ►

In The News:   Zuckerberg privacy problem | Russia to bar U.S. adoptions | Marvell patent ruling | Gun owners' addresses published | Pro Bowl rosters | Candy cigarette warning

Advertisement

Recommend | Send     Sign Up to see what your friends recommend.          Share    Tweet [0]

# San Jose: Trial starts Wednesday for principal accused of failing to report suspected child abuse

By Sharon Noguchi
snoguchi@mercurynews.com
Posted: 10/31/2012 07:26:00 AM PDT
Updated: 10/31/2012 02:36:03 PM PDT

California has the longest list in the nation of people required to report suspected child abuse — from teachers to dog catchers. But absent from that list are school district administrators, who often are those first consulted by principals trying to discern between unusual, inappropriate and abusive behavior.

Exactly who must report what to authorities will be the subject of a misdemeanor trial set to open Wednesday of a former principal of O.B. Whaley School in San Jose charged with failing to report a teacher now charged with molesting five second-graders.

In a rare prosecution under California's mandated reporter law, prosecutors will allege that Lyn Vijayendran violated the law in October 2011 when she failed to report to law enforcement a parent's concern. If convicted, Vijayendran faces up to six months in jail. Teacher Craig Chandler, the parent reported, had blindfolded her daughter alone in his room and put something in her mouth.

Three months later, after the parent of another student brought a similar complaint and then called police, Chandler was arrested.

In both instances, Vijayendran and Assistant Principal Lea Peery first contacted Carole Schmitt, human resources director for the Evergreen School District, for guidance.

But prosecutors are not charging Schmitt with failure to report. Papers obtained by the Mercury News in response to a Public Records Act request indicate that Schmitt heard via emails and phone calls about the parents' complaints against Chandler.




Click photo to enlarge

Teacher Craig Richard Chandler, arrested on suspicion of... ( San Jose Police Department )

fyibayarea

Find:
In:  East Bay        Go

• Buy One And 1/2 off from Strictly To Go Pizza of Concord
• Great Specials! from Doors on Demand of Fremont

Dining | Ads/coupons | Claim Your Listing

Advertisement

In January, Peery was filling in as principal while Vijayendran was on maternity leave. When the mother of the second student brought a similar complaint, Peery consulted with Schmitt at least five times. Later that morning the parent reported she had called police, and Peery then filed out a report to Child Protective Services. The mother, who was crying, said that while Chandler was alone with her daughter in the classroom he had blindfolded her, put something in her mouth and moved her head with his hands. The student told Peery she was scared to be in class. Crime lab tests showed Chandler's semen was found on chairs in his classroom.

Even after being told that police had been notified, Schmitt wrote in an email to Peery, "Please remind Mr. Candler (sic) he is not to pursue or make contact with this child or parent. He needs to leave her alone."

A month later, as the Evergreen district interviewed students who had been in Chandler's class, Peery asked Schmitt if she could record them. Schmitt suggested in an email not recording them, because the recordings would be admissible in a lawsuit, while notes might not be. She wrote, "When you write up your notes, the words from the students and teachers do not need to be verbatim, but just specific quotes that help your investigation."

Evergreen School District Superintendent Kathy Gomez declined to comment on the district's policies, citing the pending criminal trials.

California lists 40 job categories as mandated reporters, the most in the nation, according to attorney Bill Grimm of the National Center for Youth Law in Oakland. But he thinks California's exhaustive list of people are relay excluded

Most Viewed    Most E-Mailed

(From the last 12 hours)

1. Marvell slammed with $1.2 billion patent-infringement judgment...
2. Walnut Creek police investigate fatal officer-involved shooting
3. Richmond woman killed in crash on San Pablo Dam Road
4. Three Brentwood homes evacuated due to natural gas leak
5. Bay Area's tech-led boom is broadening
6. Oakland Raiders shut out in Pro Bowl selections

NEXT ARTICLE IN NEWS                    ✕

Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation

» Continue to article...

SUNNYVALE   Sigmhendrive Event     GetDailyDeals   Belmont couple find success with jerky-and-pickle

759

Share

Options

Font Size

- Smaller
- Normal
- Largest

Viewer Comments

on

Sounds

Flick

Translate posts and comments.

 ScribbleLive is powering generation now with its live CMS. Learn more

- Share
- Options

"administrative officer or supervisor of child welfare and attendance."

Despite the law's vagueness, the Evergreen district maintains that all its teachers and administrators are mandated reporters.

Before 2000, the law was more general, covering school district employees as "child care custodians."

"I think anybody involved in public education of our children should be a mandated reporter," Grimm said. The list specifies doctors, counselors, film processors and animal control officers.

Another weakness in the law, Grimm said, is that it doesn't require training for mandated reporters. Districts that don't conduct training simply must write a letter explaining why they didn't. Last year, the Evergreen School District did not train its administrators, Gomez has said. But over the summer she said training would be done for the current school year.

Chandler was arrested in January and eventually charged with five felony counts of lewd and lascivious acts on a child under the age of 14, involving five students. She remains in Santa Clara County Jail without bail. Vijayendran was transferred to an administrative position in the district office.

Staff writer Tracey Kaplan contributed to this report. Contact Sharon Noguchi at 408-271-3775. Follow her at Twitter.com/NoguchiOnK12.

Recommendations

Sign Up   Create an account or log in to see what your friends are recommending.

Police: 1 dead, 3 wounded in Sac home invasion.
45 people recommended this.

Walnut Creek police investigate fatal officer-involved shooting
9 people recommended this.

Antioch: Two teens arrested on suspicion of burning down park playground
251 people recommended this.

Facebook social plugin

Reprint  Bookmark  Print  Email  Font Resize  Return to Top

## Recommended for You

- Roadshow: Barricades for I-680 toll lanes not...
- Suspect arrested in shooting death of Martinez...
- Hicks: 'Twilight' actor charged with being...
- Alameda woman faces charges over Christmas Day...
- Police report: Alamo/Danville/San Ramon
- Marquee NBA matchup: Warriors' Curry vs. 76ers...

— SPONSORED LINK —
Rove: Obama Needs a New Second-Term Approach
(From Dailykis.com)

Powered by newstogram

FAQ: Article commenting how-tos and tips

Recommend   Sign Up to see what your friends recommend.

Add a comment...

Comment using...

Facebook social plugin

Related Results                                    Ads by Yahoo
Vote Yes on Measure J! Help Improve Alum Rock schools
                                                   http://yesonalumrockschools.com
Public Arrest Records 1) Enter Name and State. 2) Access Full Background Checks Instantly

Richmond Jobs One Search. All Jobs. Find your new job today. Indeed]

NEXT ARTICLE IN NEWS   ✕
Biz Break: Wall Street whipsaws with 'fiscal cliff' discussions, Apple reveals executives' compensation
» Continue to article...

SUNNYVALE   Signthendrive Event          GotDailyDeals   Belmont couple find success with jerky-and-pickle

760

San Jose Mercury News » Friday, October 5, 2012

# O.B. WHALEY ELEMENTARY

# Notes in child sex abuse case released

## Principal accused of failing to report possible molestation involving teacher

By Mark Gomez
and Sharon Noguchi
*Staff writers*

SAN JOSE — Under court order, the Evergreen School District on Thursday released notes taken by a principal who stands accused of failing to report suspected child sexual abuse by a teacher.

The notes by O.B. Whaley Elementary Principal Lyn Vijayendran detail how a second-grade student told her that teacher Craig Chandler put something in her mouth while she was blindfolded and alone with him in a classroom. Chandler wiggled her body and head "back and forth" and earlier asked her to "open her legs," according to the principal's handwritten and typed notes of the interview with the girl. This newspaper sought the notes, which had been sealed as part of the court record.

Prosecutors say the girl's account should have been enough for Vijayendran to contact police or Child Protective Services and report a potential child abuse — as the law requires principals, teachers and others who come into contact with children to do. Instead, the principal consulted with Evergreen School District Human

## Abuse

*Continued from Page 1*

Resources Director Carole Schmitt and then warned Chandler not to play what she called a "Helen Keller lesson" with students alone.

Three months later, Chandler was accused of molesting another student, whose parent reported him to police.

The court had sealed Vijayendran's handwritten and typed notes, but a judge released them Thursday, 2½ months after this newspaper filed a California Public Records Act request with the Evergreen School District.

Chandler, who was arrested Jan. 10, remains jailed and awaits trial on five counts of lewd and lascivious acts on a child under age 14.

Vijayendran faces one misdemeanor charge, only the second time in two decades that an educator in Santa Clara County is being charged with failing to report suspected abuse.

In an interview with Vijayendran, Chandler said he called the girl into the classroom to prepare a lesson on Helen Keller, and that the "instructional goal" was to deprive the students of their sight. He said he used a bath sponge on her foot and legs and put a bottle of salty water into her mouth. All the while, his classroom door was open, he told Vijayendran.

"I told Mr. Chandler that his actions were made with very poor judgment," Vijayendran said in her notes. When she described what the girl told her, Chandler replied, "Oh, when you put it that way, it does sound really bad."

Prosecutors allege that a "reasonable person" would have suspected abuse occurred based on the girl's statements, which then obligates a report to authorities.

See ABUSE, Page 5

761

"Eric" Geffon, a Vijayen-
dran's attorney, disagreed.
"Nobody involved in this
situation, not the district,
the parent nor Lyn thought
this was an act of physical
abuse," he said.

But Margaret Petros,
who advocates on behalf
of victims in Santa Clara
County, was incensed.
"There is no excuse for any-
one involved in this case
not to have reported it," she
said. "All these profession-
als who are paid to protect
our children should not just
be criminally charged but
civilly sued as individuals."

"The law doesn't "specifi-
cally list" district-level ad-
ministrators like Schmitt
as mandated reporters.

In the typed notes, Vi-
jayendran wrote that the
second-grader's mother
was concerned about an
incident involving her
daughter. While the mother
was present, Vijayendran in-
terviewed the girl, who
described Chandler as in-
structing her to take off her
shoes and lie down on the
floor while blindfolded. The
girl described how Chan-
dler touched her foot with
something "damp" and "put
something to drink in her
mouth."

After hearing the alle-
gation, Vijayendran called
the school district's human
resources department and
asked what to do next, ac-
cording to the typed notes.
Vijayendran said she was
directed to keep interview-
ing the girl and get as de-
tailed an account as possi-
ble. The principal complied,

and then at the district's
instruction called in Chan-
dler.

Vijayendran's notes
were also attached to an
affidavit of probable cause
in the criminal case against
her filed by the Santa Clara
County District Attorney's
Office but were ordered
sealed on Aug. 14 by Santa
Clara County Superior
Court Judge Kenneth L.
Shapero at the request of
the principal's attorney.

Shapero then ordered
them unsealed, and re-
buffed a move by attorneys
representing Vijayendran
and Chandler to block the
school district from releas-
ing the notes.

Even though the principal
for handling Vijayendran's
case, was out of the office
Thursday but previously
told this newspaper that

**Vijayendran faces
one misdemeanor
charge, only the
second time in two
decades that an
educator in Santa
Clara County is
being charged with
failing to report
suspected abuse.**

because the principal did
not alert police to the first
reported incident, another
child was molested and
potential forensic evidence
was lost. Vijayendran has
been reassigned to the dis-
trict office as coordinator of
teacher support programs.

Tests by the Santa Clara
County crime lab found se-
men on chairs in Chandler's
classroom, according to
court files.

Chandler continued
teaching until January,
when he was arrested by
San Jose police. Police say
that second reason of suspected
abuse, the assistant princi-
pal reported the complaint
to district administrators,
spoke to Chandler and no-
tified Child Protective Ser-
vices the same day. Sepa-
rately, the parent called
police.

Contact Mark Gomez at
408-920-5869 or mgomez@
mercurynews.com.
Follow him at twitter.
com/MarkGomez. Contact
Sharon Noguchi at 408-
271-3775 or snoguchi@
mercurynews.com.

# **Mail**Online

## Teacher 'blindfolded girl, put something in her mouth and made her spread her legs in bizarre Helen Keller lesson'

By Daily Mail Reporter

PUBLISHED: 12:14 EST, 5 October 2012 | UPDATED: 15:37 EST, 5 October 2012



Suspect: Teacher Craig Chandler has been charged with five counts of child sex abuse for allegedly molesting elementary school children

Newly released notes of a California elementary school principal have revealed that a teacher charged with molesting kids in class blindfolded a second-grader and put something in her mouth.

Tests by the Santa Clara County crime lab found semen on chairs in the San Jose classroom of 35-year-old teacher Craig Chandler, who was charged earlier this year with assaulting five children at O.B. Whaley Elementary School.

The San Jose Mercury News has obtained the previously-sealed notes of principal Lyn Vijayendran showing she was aware of allegations of unusual classroom behavior but failed to notify police or Child

763

Protective Services.

The law requires principals, teachers and others who come into contact with children to report suspected child abuse.

Vijayendran, 36, was charged in July with a misdemeanor in the case for failing to alert police about the incident. If convicted, she could face up to six months in county jail.

According to Vijayendran's handwritten and typed notes, the second-grade student told her that Chandler blindfolded her and gave her something to drink while the two were alone in a classroom.



**Suspicious actions:** A second-grader at O.B. Whaley Elementary School in San Jose informed the principal that Chandler had blindfolded her and put something in her mouth

The 35-year-old man wiggled her body and head 'back and forth' and asked the child to 'open her legs,' the notes state.

Prosecutors said that rather than report the potential child abuse right away, the principal contacted an official at the school district's human resources department, who subsequently warned Chandler not to conduct what he called a 'Helen Keller lesson' with students alone.

Three months later, the 35-year-old teacher was accused of molesting another student, whose parent alerted police.

Chandler continued teaching until January, when he was arrested and charged with five counts of lewd and lascivious acts performed on a child under age 14.

764

Girl told principal that teacher 'blindfolded her, put something in her ...    http://www.dailymail.co.uk/news/article-2213467/Girl-told-principal...



© LinkedIn

Allegations: Principal Lyn Vijayendran is accused of failing to report a possible case of abuse even though her notes reflect that she was aware of the allegations

When Vijayendran asked Chandler about the second-grader's allegations, the teacher told her that called the girl into the classroom to go over a lesson on Helen Keller, the famous deaf-blind early 20th century educator and activist.

According to Chandler, the 'instructional goal' was to deprive students of their sight. He told the principal that he had touched the girl's leg with a bath sponge and put a bottle of salty water in her mouth while she was blindfolded.

Throughout the lesson, the classroom door stayed open, the man said.

765

Girl told principal that teacher 'blindfolded her, put something in her ...    http://www.dailymail.co.uk/news/article-2213467/Girl-told-principal...



Explanation: Chandler told the principal that he had blindfolded the girl as part of a lesson on the blind-deaf educator Helen Keller (pictured)

'I told Mr. Chandler that his actions were made with very poor judgment,' Vijayendran wrote in her notes.

When she described what the girl told her, Chandler replied, 'Oh, when you put it that way, it does sound really bad.'

The principal later interviewed the second-grader in her mother's presence. During the meeting, the child told Vijayendran that Chandler instructed her to remove her shoes and lie down on the floor with a blindfold covering her eyes.

She then described how the teacher touched her foot with a damp object and gave her something to drink.

Following the interview, Vijayendran contacted human resources and was instructed to continue interviewing the girl in order to get as detailed an account of the incident as possible.

Chandler was arrested on January 10 after police received a report from the parents of a child at the school who complained about being molested by the teacher.

In late August, new allegations came to light that Chandler may have been sexually assaulting a 10-year-old girl for two years.

An attorney for the alleged victim has claimed that the child was molested when she was in Chandler's class from August 2010 through May 2011.

Prosecutor Alison Filo told the paper that Vijayendran has been reassigned to the district office as coordinator of teacher support programs.

766

12/27/2012 1:06 PM

Girl told principal that teacher 'blindfolded her, put something in her ...    http://www.dailymail.co.uk/news/article-2213467/Girl-told-principal...



Now that's what you call REAL plane spotting! Enthusiasts...



White House petition against 'hate group' church that...



Musical theater student, 21, wins a stalking order against...



Mother-of-two records heartbreaking video telling her health...



Mark Zuckerberg's sister Randi complains of privacy breach...



Indian gang rape victim in horror bus attack given fresh...

## Comments (3)

- Newest
- Oldest
- Best rated
- Worst rated

View all

What a sicko! We all know what that "bottle of salty water in her mouth" really was! I don't understand some people at all!

- Jazzv , Des Moines, 05/10/2012 19:36

767

Girl told principal that teacher 'blindfolded her, put something in her ...   http://www.dailymail.co.uk/news/article-2213467/Girl-told-principal...

Click to rate _ _ Rating  79

Report abuse

this is absolutely revolting. I can't imagine if someone did this to my child.

- hologram87 , Rochester, 05/10/2012 19:32

Click to rate _ _ Rating  68

Report abuse

Would have fired him on the spot!! Or at the very least put the cretin on suspension!

- alsgal87 , St Pauls, United States, 05/10/2012 19:10

Click to rate _ _ Rating  59

Report abuse

The views expressed in the contents above are those of our users and do not necessarily reflect the views of MailOnline.

768

# San Jose Principal's Notes Detail Teacher's Bizarre Alleged Sexual Assaults

October 5, 2012 6:30 AM



SAN JOSE (CBS/AP) — A principal's notes show a San Jose teacher charged with molesting kids in class blindfolded a second-grade girl and put something in her mouth.



(CBS)

**Filed Under**
Local, News

**Related Tags**
Classroom, Craig Chandler, Crime, Crime Lab, O.B. Whaley Elementary, Principal's Notes, San Jose, Semen, Sex abuse, Teacher, Teacher Sex

Tests by the Santa Clara County crime lab found semen on chairs in the classroom of 35-year-old teacher Craig Chandler, who was charged earlier this year with assaulting five children at O.B. Whaley Elementary School.

The San Jose Mercury News obtained the previously-sealed notes of principal Lyn Vijayendran showing she was aware of allegations of unusual classroom behavior but she failed to notify police or Child Protective Services.

The law requires principals, teachers and others who come into contact with children to report suspected child abuse.

Vijayendran has been charged with a misdemeanor.




(Copyright 2012 by CBS San Francisco. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.)

769

3 comments

JaneQPublic • 2 months ago

Charged with a MISDEMEANOR?? That's all??????
I hope she has been FIRED and is never allowed to be in an administrative capacity
around children EVER again!

Moondog • 2 months ago

Tests by the Santa Clara County crime lab found semen on chairs in the classroom of
35-year-old teacher Craig Chandler
Please don't tell me this degenerate, perverted POS is out on bail, and the principal
should be in jail as well, It's always not that bad when it happens to other children and not
your own.

Robert O'Connor • 2 months ago

In a better world headline would be: Santa Clara County Hiring New School Principal
After Former Principal Sentenced to 30 years...

770

Principal's notes say teacher blindfolded girl - ContraCostaTimes.com       http://www.contracostatimes.com/ci_21705965/principals-notes-say-...

Sign In | Register | Newsletters

Mobile | Mobile Alerts | RSS

News   Publications   My Town   Sports   Business   Entertainment   Living   Columns   Opinion   Help

[ search ]  ⊙ Site  ○ Web Search by YAHOO!                                   Walnut Creek, C

In The News:   Zuckerberg privacy problem | Russia to bar U.S. adoptions | Marvell patent ruling | Gun owners' addresses put

0
Recommend    Send    Sign Up to see what your friends
                      recommend.

Share    Tweet  0

# Principal's notes say [ 0 ] r blindfolded girl

**The Associated Press**
Posted:   10/05/2012 06:10:58 AM PDT
Updated:   10/05/2012 03:11:38 PM PDT

Tweet

0

Like

0

SAN JOSE, Calif.—Notes taken by a former         sed of failing to report
suspected sexual abuse at her California ele       l reveal that a teacher who was later charged with molesting
children in class blindfolded a second-grade       mething in her mouth, a newspaper reported.

The notes of onetime O.B. Whaley Element           cipal Lyn Vijayendran indicate she was aware of allegations of
unusual classroom behavior by teacher Cra         ndler but failed to notify police or Child Protective Services, the
San Jose Mercury News reported Thursday            D5lc6).

The notes were previously sealed but were          Santa Clara County judge after the newspaper filed a state
Public Records Act request with the Evergre        rict.

Other documents showed that tests by the c        found semen on chairs in Chandler's classroom.

The case is similar to that of another onetime California educator accused of inappropriate behavior with his students
dating back to 2005.

Former Los Angeles elementary school teacher Mark Berndt, 61, was arrested in January and remains jailed after pleading
not guilty to committing lewd acts with nearly two-dozen children as young as 6.

Prosecutors claim Berndt, a teacher for more than 30 years at Miramonte Elementary School, made students play a bizarre
tasting game, blindfolding and feeding them his semen smeared on
                                                     cookies and spoons.
_____
Advertisement                                        Hundreds of photographs were found of children with
                                                     blindfolds and tape over their mouths.

                                                     Chandler, 35, also was arrested in January and remains
                                                     jailed as he awaits trial this month on five counts of lewd
                                                     and lascivious acts on a child under age 14. He has
                                                     ◄    last guilty.

SUNNYVALE VW   Sightlhendrive Event                                GotDailyDeals

771

Principal's notes say teacher blindfolded girl - ContraCostaTimes.com          http://www.contracostatimes.com/ci_21705965/principals-notes-say-...

His lawyer, Brian Madden, told The Associated Press on Friday that his client is a married father of three children, all under 5, who has been a teacher for nine years, mostly in San Jose.

"Mr. Chandler is looking forward to his jury trial and he expects to be exonerated," said Madden, who would not comment on the notes taken by Vijayendran.

The law requires principals, teachers and others who come into contact with children to report suspected child abuse. Vijayendran has been charged with a misdemeanor and reassigned to the district office as a coordinator of teacher support programs.

Her handwritten and typed notes say the second-grader told the principal in front of her mother that Chandler put something in her mouth while she was blindfolded and alone with him in a classroom. The notes said Chandler wiggled her body and head back and forth and asked her earlier to open her legs.

Vijayendran's attorney, Eric Geffon, told the AP that neither his client, the child's parent nor the district thought the episode was abuse.

"Nobody saw this as an act of abuse," Geffo                 d be inaccurate to say that there was a claim of abuse reported."

Prosecutors, however, say the girl's accoun                  een enough for Vijayendran to contact police or Child Protective Services. Instead, the principal consulted wi                istrict's human resources director and then warned Chandler not to conduct what he called a "Helen Keller le                  ents alone, the notes state.

In an interview with Vijayendran, Chandler s                  e girl into the classroom to prepare a lesson on Keller, and the instructional goal was to deprive the studen                  ndler said he used a bath sponge on her foot and legs, and put a bottle of salty water into her mouth.

Chandler told Vijayendran his classroom do                  e entire time.

"I told Mr. Chandler that his actions were ma                  oor judgment," Vijayendran said in her notes. When she described to Chandler what the girl said, Ch                  "Oh, when you put it that way, it does sound really bad," according to the notes.

Information from: San Jose (Calif.) Mercury News, http://www.mercurynews.com

🖳 Reprint   🔖 BOOKMARK  🔲 🔁 🖷 ...   🖨 Print  ✉ Email   A̲ A̲ A̲  Font Resize  ⬆ Return to Top

San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth – San Jose Mercury News                    10/12/12 10:43 AM

SIGN IN | REGISTER | NEWSLETTERS

Part of the Bay Area News Group

MercuryNews.com



Like 32k   eEdition / Subscriber Services
            Mobile | Mobile Alerts | RSS

NEWS  PHOTOS  BUSINESS  TECH  SPORTS  ENTERTAINMENT  LIVING  OPINION  PUBLICATIONS  MY TOWN  HELP        JOBS  CARS  REAL ESTATE  CLASSIFIED  SHOPPING

Site  Web Search by YAHOO!                    San Jose, CA  Now:55°F  High:66°F  Low:50°F    city or zip

today's DEALS   Raley's

Recommend    Send    98 people recommend this.        3  Share    Tweet  7

Advertisement

Get free 1:1
investment help.
Right here in San Jose.

Find Us


Guidance provided by Fidelity's educational advisors, is not individualized, and is not intended to serve as the primary or sole basis for your investment or tax-planning decisions.
Fidelity Brokerage Services, Member NYSE, SIPC.
© 2012 FMR LLC. All rights reserved 691733_15.0

Search now


## San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth

By Mark Gomez and Sharon Noguchi
Mercury News
Posted: 10/04/2012 06:02:33 PM PDT
Updated: 10/05/2012 05:54:17 AM PDT

SAN JOSE — Under court order, the Evergreen School District on Thursday released notes taken by a principal who stands accused of failing to report suspected child sexual abuse by a teacher.

The notes by O.B. Whaley Elementary Principal Lyn Vijayendran detail how a second-grade student told her that teacher Craig Chandler put something in her mouth while she was blindfolded and alone with him in a classroom. Chandler wiggled her body and head "back and forth" and earlier asked her to "open her legs," according to the principal's handwritten and typed notes of the interview with the girl.

This newspaper had sought the notes, which had been sealed as part of the court record.

Prosecutors say the girl's account should have been enough for Vijayendran to contact police or Child Protective Services and report potential child abuse — as the law requires principals, teachers and others who come into contact with children to do. Instead, the principal consulted with Evergreen School District Human Resources Director Carole Schmitt and then warned Chandler not to play what he called a "Helen Keller lesson" with students alone.

Three months later, Chandler purportedly molested another student, whose parent reported him to police.

The court had sealed Vijayendran's handwritten and typed notes, but a judge released them Thursday, 2½ months after this newspaper filed a California Public Records Act request with the Evergreen School District.

Click photo to enlarge



Craig Richard Chandler (San Jose Police Department)

Chandler, who was arrested Jan. 10, remains jailed and awaits trial on five counts of lewd and lascivious acts on a child under age 14.

Vijayendran faces one misdemeanor charge, only the second time in two decades that an educator in Santa Clara County is being charged with failing to report suspected abuse.

In an interview with Vijayendran, Chandler said he called the girl into the classroom to prepare a lesson on Helen Keller, and that the "instructional goal" was to deprive the students of their sight. He said he used a bath sponge on her foot and legs and put a bottle of salty water into her mouth. All the while, his classroom door was open, he told Vijayendran.

"I told Mr. Chandler that his actions were made with very poor judgment," Vijayendran said in her notes. When she described what the girl told her, Chandler replied, "Oh, when you put it that way, it does sound really bad."

Prosecutors allege that a "reasonable person" would have suspected abuse occurred based on the girl's statements, which then obligates a report to authorities.

Eric Geffon, Vijayendran's attorney, disagreed. "Nobody involved in this situation, not the district, the parent nor Lyn thought this was an act of physical abuse," he said.

But Margaret Petros, who advocates on behalf of victims in Santa Clara County, was incensed. "There is no excuse for any person involved in this case not to have reported it," she said. "All these professionals who are paid to protect our children should not just be criminally charged but civilly sued as individuals."

The law doesn't specifically list district-level administrators like Schmitt as mandated reporters.

Advertisement

"What separates us from other
law firms is not what we do,
but how we do it."

SheppardMullin

Education news

Latest headlines
South Bay schools top California's Academic Performance Index
In California schools' test scores, state sees success while feds' No Child Left Behind act sees growing failure
Stanford professor one of two U.S. scientists to win Nobel chemistry prize
Map: 2012 API California school scores

Related content
Database: API | STAR | Exit exams
Search: Data on all California K-12 schools
Database: School, university employee salaries
My Town: Community coverage of schools

Most Viewed  Most E-Mailed
(From the last 12 hours)

1. The vice presidential debate in five memes
2. iPhone 5 vs. Galaxy S3: Who wins the battle between the two hottest...
3. Hicks: Justin Bieber naked photo on Internet?
4. Calif. House race with veteran Dems turns physical
5. Editors' Picks: Top stories on MercuryNews.com
6. Kawakami: Buster Posey's next step to Cooperstown

News Videos »

  



773

San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth – San Jose Mercury News

10/12/12 10:43 AM



In the typed notes, Vijayendran wrote that the second-grader's mother was concerned about an incident involving her daughter. With the mother present, Vijayendran interviewed the girl, who described Chandler instructing her to take off her shoes and lie down on the floor while blindfolded. The girl described how Chandler touched her foot with something damp and put something to drink in her mouth.

After hearing the allegation, Vijayendran called the school district's human resources department and asked what to do next, according to the typed notes. Vijayendran said she was directed to keep interviewing the girl and get as detailed an account as possible. The principal complied, and then at the district's instruction called in Chandler.

Vijayendran's notes were also attached to an affidavit of probable cause in the criminal case against her filed by the Santa Clara County District Attorney's Office but were ordered sealed on Aug. 14 by Santa Clara County Superior Court Judge Kenneth L. Shapero at the request of the principal's attorney.

Shapero then ordered them unsealed, and rebuffed a move by attorneys representing Vijayendran and Chandler to block the school district from releasing the notes.

Alison Filo, the prosecutor handling Vijayendran's case, was out of the office Thursday but previously told this newspaper that because the principal did not alert police to the first reported incident another child was molested and potential forensic evidence was lost. Vijayendran has been reassigned to the district office as coordinator of teacher support programs.

Tests by the Santa Clara County crime lab found semen on chairs in Chandler's classroom, according to court files.

Chandler continued teaching until January, when he was arrested by San Jose police. In that second case of suspected abuse, the assistant principal reported the complaint to district administrators, spoke to Chandler and notified Child Protective Services the same day. Separately, the parent called police.

Contact Mark Gomez at 408-920-5869 or mgomez@mercurynews.com. Follow him at Twitter.com/MarkMgomez.
Contact Sharon Noguchi at 408-271-3775 or snoguchi@mercurynews.com.

↻ Reprint  □ BOOKMARK  ■ ☆ ⚏ ...  ⊞ Print  ✉ Email  ⊟⊞⊞ Font Resize  ↑ Return to Top

**Recommendations**

You need to be logged into Facebook to see your friends&#039; recommendations.

LIVE 2012 vice presidential debate transcript
86 people recommended this.

Altarena's 'Fantasticks' delightful, well-acted show in Alameda – San Jose Mercury News
9 people recommended this.

Facebook social plugin

**Top Classifieds**

RENTALS  JOBS  REAL ESTATE  AUTOS

BIT-TEX 17 ft. Car Hauler Trailer
AUTO SWAP MEET
DODGE 2002 Ram
FORD 1999 3/4 TON EXTRA CAB
FORD 1999 3/4 TON EXTRA CAB
Consignments Wanted
FORD 2004...
WILDWOOD 2000 Travel Trailer.
ALL LISTINGS





• FAQ: Article commenting how-tos and tips

RECOMMENDED FOR YOU



San Jose Residents - If you're trying to avoid foreclosure you better read this!



47yr old man discovers "weird" trick to slash electricity bill by 75%. See video before its banned



( California): You won't believe this 1 weird "loophole" to get car insurance as low as $7

► Husband, wife escape fire that destroys San...
► Workday shares debut stunningly higher than IPO...
► Workday shares debut stunningly higher than IPO...
► Calif. House race with veteran Dems turns...
► Hicks: Justin Bieber naked photo on internet?
► San Francisco Giants complete historic comeback

— SPONSORED LINK —
Man cooking squirrel for lunch sparks fire that destroys eight...
(From DailyMe.com)

[powered by] newstegram

19 comments                                    Add a comment



Cali Styl Tattooz - Broadway High School
I really hope he gets the emlwood special treatment
Reply •  26 - October 5 at 12:17am



Cali Styl Tattooz - Broadway High School
Lol I went there to for a bit
Reply • Like • October 5 at 1:45pm



Sampson Mallory •    Top Commenter
What is funny is you think it is funny. Keeping it ...
Reply • Like • October 5 at 10:44pm



Pat Oconnell - San Jose, California
Why does she still have a job?
Reply •  11 - Like - October 4 at 10:27pm



Chris Kuebrich
not your school, is it?
Reply • Like • October 5 at 7:21am



Janet Wright
Thanks for the precious b-day message. Would love to see you.
Reply • Like • October 7 at 6:47pm

774

San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth – San Jose Mercury News

10/12/12 10:43 AM

 **Matt Pellerin** · Top Commenter
why is the first kid still with her mother? Her mother didn't report it either
Reply · Like · Tuesday at 1:50pm

**Sheri Long** · Top Commenter
REALLY? What a dirty, sick, disgusting perverted pig! A second grade little girl? If I was the judge in his case, I would hang him upside down from his private parts until he rotted away.God says an eye for an eye! This pig deserves just that!
Reply · 10 · Like · October 4 at 8:52pm

 **Cindy Miller** · Dothan, Alabama
God says? I thought that was written in a book by someone taking peyote for most of their life. And, even if an "eye for an eye" is what you wish for that sick pervert, then he should get a blind fold and something put in his mouth. Did he hang that little girl upside down by her private parts until she rotted away? What a nice good clean Christian thing to suggest and I would expect nothing less from a sick misguided "believer" like you religious nut! You need some serious help, try scientology! At least we know who invented THAT religion....... L. Ron Howard, and all to win a bet he made with a friend.
What a load of crap you people will believe. You gonna go away on the next spaceship too? I'll have your Kool-aid ready for you Sheri.
What else does that book you quote say........ Oh yeah, "Judge not lest ye be judged" and "Thou shalt not kill" etc......... You are a HYPOCRITE and probably a Republican too.
Reply · 4 · Like · October 4 at 11:27pm

 **Brad R Dezirt** · Top Commenter · Works at USMC
Cindy Miller "Judge not lest ye be judged" Practice what you preach. YOU are a HYPOCRITE.
Reply · 5 · Like · October 5 at 12:16am

 **R Gregory Rowley** · Top Commenter · Fukuoka-shi, Fukuoka, Japan
Desirt, just a note here for being judgmental, so perhaps C. Miller was. However, the final expression that I read in your Reply is worded in a judgemental way. I would suggest saying as strongly and more cogently, "I read....." as opposed to how expressed in your reply, "You are..." To make good change in this world, as I read you may wish, it's best to begin a Reply with "I" language as opposed to "you" language. Perhaps something we all can learn. Cindy Miller is more gravely in need of a learning lesson for the illogical post made by her exhibits areas needful.
Reply · Like · October 5 at 1:50am

View 7 more

 **Bill Belcher** · Top Commenter
Hangings are the only answer to these villains. St. James Park. Once a month. Bring a picnic lunch please.
Reply · 10 · Like · October 4 at 9:07pm

  **Terry Dailey** · Top Commenter
One word CASTRATION enough said.
Reply · 10 · Like · October 4 at 11:03pm

 **Marilyn Dalton** · Olmsted Falls High School
Its a good thing that it was not my Granddaughter, that sick pervert would get something in his mouth MY FIST.
Reply · 9 · Like · October 4 at 8:21pm

 **Jim More** · Works at Full time Dad
I hope they throw the book at the principle.
Reply · 8 · Like · October 4 at 11:03pm

 **Marleen Patrice**
That principle is just as guilty for looking the other way! She can't possibly be that stupid, can she?! WHAT IS WRONG WITH PEOPLE!?
Reply · 6 · Like · October 5 at 12:26am

 **Nancy Eigsti** · Menlo Park, California
I agree with your comment, Marleen. If this had happened to my daughter, I would have raised so much hell until the teacher was fired and had his teaching credentials taken away from him forever. We have to protect our children, as you well know.
Reply · 1 · Like · October 7 at 6:54pm

 **Matt Pellerin** · Top Commenter
I agree, but you also must condemn the first parent who agreed with the principle....

775





San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth – San Jose Mercury News    10/12/12 10:43 AM

Reply · 1 · Like · Tuesday at 1:49pm

 **Robin Dimock-Kuborssy · Mountain View High School**
Fricken FREAK. And the school principal is JUST as bad, the dummie. God, this story makes me want to puke.
Reply · 5 · Like · October 5 at 8:20am

 **Berta Maria Linhares**
Makes me want to puke too! WOW!!!
Reply · 3 · Like · October 5 at 12:44pm

 **Matt Pellerin ·   Top Commenter**
And the first parent is the worse for not reporting it...
Reply · Like · Tuesday at 1:51pm

 **Jim Wissick ·   Top Commenter**
This principal needs the be locked up for the MAX.
Reply · 4 · Like · October 4 at 11:45pm

 **Aberdeen Campbell ·   Top Commenter · Baker at Eddie's Bakery**
Well, he looks guilty just from the photograph here. That must mean HE IS GUILTY! Why have a trail? Why not just cut his nuts off and make potato salad from his flesh? I mean he's OBLIVIOUSLY DRUNK in this picture. I know he's drunk 1000% just like everyone else here does. Because I read we're all at least 80% clairvoyant on the internet! I can just see him pulling a salty Helen Keller on my little granddaughter(!) with my shotgun to his temple! BAM! Sorry sweaty, those are just pervert pieces. He might as well have a nude child dancing the salsa in the background! Seriously, why spend the money? Everyone here KNOWS he's GUILTY!
Reply · 3 · Like · October 5 at 7:49am

 **Brenda Haro Lozano · Gavilan College Community Education**
Is the CA school system so desperate that they wouldn't do everything possible to get rid of pieces of SH!.... like this teacher, and dummys like this principal? C'MON! This is disgusting! Also...someone does this to MY child/ren, I'm going STRAIGHT TO THE COPS! We've had enough proof/evidence that the public schools are worthless, it's not like we can count on them to help!
Reply · 3 · Like · October 4 at 11:32pm

 **Lawrence Cargnoni ·   Top Commenter · R&D Section Manager at Hewlett-Packard**
Outragous...Lyn Vijayendran needs to be fired immediately...there's absolutely no tolerance for this behaviour.....she failed as a leader and a steward of our children and especially for these students. Where are the parents of this school? They should be spitting mad and marching on Vijayendran and the district office...
Reply · 2 · Like · October 5 at 8:26am

 **Avery Horzewski · Cal State Hayward**
Outrageous doesn't even begin to describe how bad this is.
Reply · Like · October 5 at 6:10pm

 **Brad G Mcd ·   Top Commenter**
If that is true that he stuck something in her mouth...something should be stuck in his mouth....it is something red, smokey hot and cowboys use it to brand their cattle........piece of garbage.
Reply · 2 · Like · October 5 at 3:11pm

 **Tibor Fuyer ·   Top Commenter · SFS College**
This is when the greedy lawyer-dictatorship (called: USA) goes to far.
Reply · 1 · Like · October 4 at 8:34pm

 **Eloise Imagos ·    Top Commenter**
Tibor Fuyer Your statement is vague. How do you think things went too far?
Reply · Like · October 4 at 8:46pm

 **Lawrence D. Wood ·    Top Commenter · President at Terra Resources LTD.**
What do you all think the liberal agenda is all about?
Abortion?
The whole point is to take the kids out of the purview of the parent, to weaken the ties with family, to make the child less, compromise our rights under the Constitution, to make the State paramount and the arbiter of all things, and then, the liberal freaks can have their way with the kids.
This is the liberal agenda.
Remember, Ruth Bader Ginsberg: a 12 year old girl is old enough to be used for a sex toy by adults.
Quit voting for feel good and guilt and vote for your rights and your kids.
Reply · Like · October 6 at 12:02pm





776

San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth -- San Jose Mercury News                    10/12/12 10:43 AM

 **Matt Pellerin** ·    Top Commenter
And the conservatives want to take the food right out of childrens mouths and let them starve, not give them medical, throw them out onto the street....yea, that's what getting rid of welfare will do
Reply · Like · Tuesday at 1:54pm

 **Matt Pellerin** ·    Top Commenter
Everyone is saying fry the principle...what about the first parent who agreed with the principle? That parent also failed to report it...
Reply · Like · Tuesday at 1:50pm

 **Joe Rios** ·    Top Commenter · James Lick High School
@Cindy, you suck you loser!!!!
Reply · Like · October 8 at 1:00pm

 **MaryJane Perryman**
That principal must have thought her career wouldn't survive this type of scandal. She was right, I hope.
Reply ·    8 · Like · October 4 at 8:55pm

Facebook social plugin

**Education**

Map: 2012 API California school scores🔒
Stanford professor one of two U.S. scientists to win Nobel chemistry prize
Wealthy schools backer Molly Munger launches attack ad against Gov. Jerry Brown's tax-hike measure🔒
High court looks at race in college admissions
Health, well-being of California's children varies widely based on where they live, a new study reveals
San Mateo swim coach pleads not guilty to sex charges
East Bay mom gains thousands of supporters in effort to help gay son become an Eagle Scout🔒
San Jose principal's notes: Girl said teacher blindfolded her, put something into her mouth

Searching for craig chandler san jose teacher?                                                          Ads by Yahoo
2013 Teachers Academy Learn New Ways To Make Math & Science Fun For Your Students.    www.sendmyteacher.com/

San Jose Jobs One Search, All Jobs, Find your new job today. Indeed!                          indeed.com/San-Jose

Video Courses 4 Teachers Earn graduate credit at an affordable price. $330 for 3 credits.   www.VideoCourses4Teachers.com

Copyright © 2012 - San Jose Mercury News

Place an Ad | About Our Ads | Help/Contact | Site Map | Advertise | Home Delivery | Copyright | Privacy Policy and Terms of Use | About MediaNews Group | RSS | Find San Jose Jobs | Ethics Policy |
About Bay Area News Group

NEXT ARTICLE IN NEWS                                    ×
Florida man accused of returning used enemas
▸ Continue to article...

You Might Like    GotDailyDeals    Another small drop in gas prices at Bay Area pumps

San Jose Mercury News » Friday, August 31, 2012

## O.B. WHALEY ELEMENTARY

# Sex abuse case widens

**Incidents may have begun a year earlier than previously thought, documents show**

By Sharon Noguchi and Mark Gomez
*Staff writers*

The alleged abuse of children at O.B. Whaley elementary school in San Jose by a teacher could date back at least two years — a year earlier than previously revealed — according to new legal documents filed in the case.

Craig Richard Chandler, 35, has been charged with five counts of lewd and lascivious acts on a child under age 14 at the K-6 school. Chandler was arrested Jan. 10, initially on suspicion of molesting two girls. After his arrest, prosecutors added charges related to three more children.

In a petition filed Monday, the attorney for one of the accusers sought permission to file a claim for compensation from the Evergreen School District. The petition claims the 10-year-old, who is not named, was molested when she was in Chandler's class from August

2010 through May 2011. That would extend the alleged abuse by more than a year over what had been previously revealed; the initial charges stemmed from incidents last winter and fall.

San Jose attorney B. Robert Allard also claims the district failed to adequately inform parents about suspected molestation, and is seeking permission to file the claim, which would otherwise be late. California law allows up to 12 months from an injury or claim for violation.

*See TEACHER, Page 7*



**Chandler**
Former teacher was arrested in January.

778

# Teacher

Continued from Page 1

time to file for redress. Allard said the mother, who does not speak English well, did not know until she heard her daughter testify at Chandler's preliminary hearing last May that her daughter allegedly had been molested.

Before that, she only knew that her daughter was being questioned by police, Allard said. "It devastated her to find out about this situation."

He said, "It appears we have a concerted effort to fail to disclose pertinent information to allow parents to take care of their children."

Neither school district nor law enforcement officials would comment on allegations that the parent was not informed.

However, Evergreen Superintendent Kathy Gomez said the district sent home letters with students Jan. 11, referring to alleged unprofessional behavior by a teacher. "Due to the sensitive nature of this ongoing investigation, we are not at liberty to discuss any details," the letter read. Gomez declined to say whether the district was working with parents of the alleged victims, however the district's January letter said it was making psychologists available to students and staff.

In a rare move, the Santa Clara County Dis-

trict Attorney's Office has charged then Principal Lyn Vijayendran with failing to report a suspicion of child abuse, a misdemeanor. According to a police report, the parent of another alleged victim complained to Vijayendran last fall about Chandler blindfolding her child alone in his classroom and putting things in her mouth.

Vijayendran told Chandler to stop the activity, which he described as a "Helen Keller" lesson so children could understand what it was to be blind, according to a report by San Jose police Detective Sean Pierce.

The principal has said that she related the parent's statement to Carole Schmitt, director of human resources. Vijayendran since has been reassigned as coordinator of teacher support programs in the district office.

"It was Ms. Vijayendran's responsibility to report" suspected abuse to law enforcement, said deputy district attorney Alison Filo. "Passing up the chain at any level does not discharge your duty." She said that it was not clear that anyone other than the principal had the kind of specific information that would trigger a reporting requirement.

Chandler told police that he had been conducting the activity once or twice a year for nine years, ever since he had been at Whaley.

Children reported that Chandler called them into

his room individually at recess. Sometimes, she had them to the floor, she described, then typically described him blindfolding them and putting various things into their mouths. One victim said she felt like she was going to "choke." Chandler told police that in choosing volunteers for the lesson, "you have to pick a student you can trust."

A couple of years ago, he said, the principal walked in when he was alone with a boy doing the test, and the principal told him to keep his door open.

At least one child said that Chandler told her not to tell anyone what happened in the room, police reported. Another said she was afraid to tell any one what happened with her teacher because she thought she would be arrested. A criminalist from the Santa Clara County crime lab said tests showed semen was found on chairs in Chandler's classroom, according to court files. The criminalist's conclusion is the semen was from Chandler.

Chandler is next scheduled to appear in court Sept. 10 to set a trial date, and is being held without bail in Santa Clara County Jail.

Contact Sharon Noguchi at 408-271-3775 or snoguchi@ mercurynews.com. Contact Mark Gomez at 408- 920-5869 or mgomez@ mercurynews.com. Follow him at Twitter.com/ MarkMgomez.

Follow us on



Wednesday, Aug. 29, 2012 | 11:10 a.m.

Hi, (not you?) | Member Center | Sign Out

Sign In or Register

**KTVU.COM**

San Jose  67°
SFO Airport  64°
Oakland  64°
Alert
Severe Weather »

Radar | Ext Forecast

Posted: 6:25 p.m. Tuesday, Aug. 28, 2012

## Lawsuit filed in connection with alleged molestation at SJ elementary



Related

KTVU.com

**SAN JOSE, Calif.** — As students returned for the first full week of classes at O.B. Whaley Elementary in San Jose, school officials Tuesday were dealing with a new lawsuit while the molestation trial against a former teacher approaches.

The former principal at the school has also been under fire, charged with failing to report the allegations that the accused teacher molested several students to authorities.

Students at O.B. Whaley were hoping for a fresh start as the new school year begins.

780

But the past is hard to forget after 3rd grade teacher Craig Chandler was arrested in January and charged with sexually abusing five students.

Tuesday, KTVU learned a lawsuit has been filed on behalf of one of the alleged victims against Chandler, the former principal Lyn Vijayendran and the Evergreen Elementary School District.

Attorney Robert Allard told KTVU Chandler had yard supervisors or other children bring students into his classroom one or two at a time for a lesson on Helen Keller.

"She was told to act like Helen Keller and not be able to see things and be able to feel things with either her mouth or her feet," said Allard. "So she did not understand at the time that in hindsight she was being sexually assaulted on a repeated basis."

Last month, the District Attorney's office charged Vijayendran, the principal at the time of the alleged molestation, with a misdemeanor charge for failing to report the incident after a child came forward last October.

The attorney for Vijayendran told KTVU Tuesday that "no one, not the parents, not the district nor my client, who knew the details of the complaint, believed it was an act of sexual abuse."

The Evergreen School District released this statement late Tuesday that read in part: "We want to assure the community we take very seriously any allegations of employee misconduct, especially involving students."

KTVU learned Tuesday that Vijayendran has been reassigned to the district offices and a new principal is in charge at O.B. Whaley.

"You need to supervise. And if you don't supervise, you're going to be held criminally responsible," said Allard. "Or in this case, civilly responsible for your actions, because in the end its the child who pays."

KTVU also found out all employees district wide from custodial staff to administrators have undergone new training on mandatory reporting.

But Allard maintains that for the five alleged victims, it is too late.

## More News

### We Recommend

- Father-daughter trip to Yosemite ends in tragedy (ktvu.com)
- Cellphone robbery ends with police shooting outside SF church (ktvu.com)
- SJ schools locked down as police search for armed robbery suspect (ktvu.com)
- Ex-LA teacher pleads no contest to molesting 13 (ktvu.com)
- Richmond police search for suspect in teen's murder (ktvu.com)

### From Around the Web

- Billionaire Has Choice Words for Obama (Moneynews)
- Ryan Seacrest considers Joel McHale's Offer (Random Acts Of Fusion)
- It's Murrrddddaaaaall! America's Top 10 Most Dangerous Cities 2012 (Bossip)
- Teen Girl Allegedly Gang Raped on Cruise Vacation Knew Just How to Punish Her Abusers (CafeMom)
- What Your Flight Attendant Won't Tell You (Reader's Digest)

[?]

## Comments

If you would like to post a comment please Sign in or Register

781

San Jose Mercury News

FRIDAY, JULY 13, 2012

## FAILURE TO REPORT

### It's the law to divulge suspicions, but many in Bay Area don't do it

By Julia Prodis Sulek
and Sharon Noguchi
Staff writers

How could it happen? To many people it's nothing short of bewildering that a string of Penn State officials failed to report suspicions that football coach Jerry Sandusky was molesting boys — or that a San Jose elementary school principal did not alert police that a second-grader might have been sexually abused by her teacher.

Yet several disturbing cases around the Bay Area show that when it came time to point a finger at a colleague, teachers and administrators failed to do the right thing.

From Moraga to Palo Alto to San Jose, child sex abuse cases in schools and day care centers have surfaced, alleging that school employees entrusted with the safety of students failed to do what their oaths and the law required: report to police or child protective services when they have a reasonable suspicion that a child has been abused.

Child advocates blame a lack of courage and a lack of training.

"It's not so much about protecting people, but not having the

See ABUSE, Page 6

782

# Abuse

*Continued from Page*

## MANDATED REPORTERS

San Jose Mercury News

**WEDNESDAY, JULY 11, 2012**

SEX ABUSE COMPLAINT NOT REPORTED

# In rare move, DA charges school principal

Prosecutor says delay in reporting allegation likely cost evidence

By Mark Gomez and Sharon Noguchi
*Staff writers*

In an extraordinary move, prosecutors have charged a San Jose principal with failing to report to police an allegation that a teacher was sexually abusing a second-grader in a classroom.

The Santa Clara County District Attorney's Office on Tuesday filed a misdemeanor charge against Lyn Vijayendran, the principal at O.B. Whaley Elementary School in San Jose. It is only the second time in two decades that an educator faces charges in the county for not reporting suspected abuse.

Prosecutors say a Whaley parent approached Vijayendran in October about concerns teacher Craig Chandler was behaving inappropriately

*See PRINCIPAL, Page 7*

"It's baffling that a principal could not conclude that this is child abuse."

— Margaret Petros,
Child Abuse Council
of Santa Clara County

## Principal

Continued from Page 1

with a student. Instead of contacting police, Vijayendran conducted her own investigation and even told Chandler that the child's parent had complained, prosecutor Alison Filo said.

Vijayendran's attorney, Eric Geffon, challenged prosecutors' characterization and said there were no suspicions that Chandler's behavior constituted abuse.

"We are confident when all of the evidence is examined, Ms. Vijayendran will be cleared of any wrongdoing," he said.

Three months after the parent's complaint, another parent reported suspected abuse by Chandler to a Whaley assistant principal and police. Chandler covered a student's eyes with a blindfold and "put things in her mouth," according to court documents.

Chandler was arrested in January and eventually was charged with five felony counts of lewd and lascivious acts on a child under the age of 14 involving five alleged victims. A criminalist from the Santa Clara County crime lab said tests showed semen was found on items in Chandler's classroom, according to court files. The criminalist's conclusion is the semen was from Chandler.

Chandler's case is headed to court Aug. 6. He maintains his innocence, his attorneys have said.

### Lost time

Because Vijayendran did not alert police to the first alleged incident, "Not only was another child molested, but potential forensic evidence was lost," Filo said. "The defendant was given four months to create a defense."

Evergreen administrators were not available to comment on the charges. The district issued a statement that it was cooperating with law enforcement.

Victims' advocates lauded prosecutors. "I am so thrilled that the DA filed charges," said Margaret Petros of the Child Abuse Council of Santa Clara County. In decades of working for children, she said, "I have not heard that happening."

The council offers training for educators on child-abuse reporting requirements. "They should know," Petros said. "It's baffling that a principal could not conclude that this is child abuse."

California requires an array of professionals — doctors, teachers, counselors — to report suspicions of child abuse. But determining so-called mandated reporters' responsibilities is difficult. At schools, for instance, teachers must filter out rumors from facts. In other cases, the statute of limitations may run out.

In 2009, police investigated Wilcox High Princi-

784

pal Tab Taber, in connection with special-education teacher Edward Slate's illicit affair with an underage student. Slate pleaded guilty to six felonies. But although people, including Slate, reported they had informed administrators at the Santa Clara school, prosecutors did not file charges against Taber.

In October, a parent reported information to Vijayendran "that we believe is specific conduct that would lead a reasonable person to believe that an act of child abuse had occurred," prosecutor Filo said. The girl's mother showed Vijayendran the jacket that the child was wearing at the time, which had a suspicious stain on it, Filo said, but Vijayendran reportedly decided it was not important.

The mother washed the jacket.

"In doing so, it might have lost the best forensic evidence we might have had in this case," Filo said. "Maybe it would have exonerated the defendant. We'll never know."

Mrs. Vijayendran has been cooperative and we do

not believe that she intentionally turned her back on a child she knew was being abused," Filo said. But, she added, "It's our position a reasonable person would have known this abuse had occurred."

## Arrest warrant issued

An arrest warrant has been issued for Vijayendran, and Filo expects the principal's defense attorney to arrange for her to surrender.

In a statement, the principal's attorney said, "We are disappointed the District Attorney's Office

has chosen to file a misdemeanor charge in this case. Ms. Vijayendran, the child's parents, and the school district who were all aware of the teacher's conduct, had no way of knowing that the conduct was sexual in nature."

When the second parent complained to the school, she said Assistant Principal Lara Peery's initial response was "Oh my God. Not again," according to the parent's testimony at a preliminary hearing for Chandler.

Peery testified that she never used "those words."

She reported the complaint to district administrators, spoke to Chandler and notified Child Protective Services the same day. Separately, the parent called police.

Chandler spent the remainder of the day in the classroom, according to court documents. He was arrested Jan 10.

*Staff writer Robert Salonga contributed to this report. Contact Mark Gomez at mgomez@mercurynews.com or 408-920-5869. Follow him on Twitter @MarkMgomez*

785

Principal Charged With Failing to Report Alleged Molestation - Los ...     http://losgatos.patch.com/articles/principal-charged-with-failing-to-r...



Editor Shelle Sanchez shelle.sanchez@patch.com              Like 1k  Patch Newsletter  Nearby  Join  Sign In

# LosGatosPatch ☼ 51°

Home | News | Events | Directory | Pics & Clips | Holidays | Real Estate | More Stuff

Police & Fire

## Principal Charged With Failing to Report Alleged Molestation

Prosecutors say San Jose principal failed to notify authorities that teacher Craig Chandler was allegedly sexually abusing an elementary school student in a classroom.

July 11, 2012

Recommend 1   Tweet 3    Email      Print      12 Comments



Related Topics: Craig Chandler, Lyn Vijayendran, and Santa Clara County District Attorney's Office

What do you think of the charges brought against this school principal for allegedly failing to report abuse suspicions to authorities? Tell us in the comments.

An area principal is facing charges of failing to report evidence that a teacher molested a student despite learning of the allegations in October of last year.

The Santa Clara County District Attorney's Office said its investigation revealed that principal Lyn Vijayendran, 36, was given clear evidence that teacher Craig Chandler had sexually assaulted a second grade student at O.B. Whaley Elementary School in San Jose but failed to carry out her legal obligation to report it to police.

Vijayendran was charged Tuesday with a misdemeanor for failure to report child abuse and could face up to six months in jail if convicted, according to the district attorney's office.

Prosecutors said that after learning of allegations that Chandler had molested the student, Vijayendran interviewed the teacher and the girl and told the student's parent that a suspicious stain on the girl's jacket was unimportant, leading the mother to wash the jacket and destroy potential DNA evidence.

"The clear legal responsibility for professionals who hear these terrible allegations is not to call meetings, it is to call 911," Deputy District Attorney Alison Filo said.

The district attorney's office said authorities learned of the allegations in January while Vijayendran was on maternity leave.

At that time, another parent came forward with molestation allegations that were reported to police, who launched an investigation.

The police investigation found a total of five students at the elementary school that reported evidence of being molested by Chandler, according to the district attorney's office.

Chandler was charged in January with five felony counts of lewd and lascivious acts on a child under 14.

—Bay City News Service

Email me updates about this story.    [ Enter your email address ]   Keep me posted

Recommend 1   Tweet 3    Email      Print

786

Principal Charged With Failing to Report Alleged Molestation - Los ...        http://losgatos.patch.com/articles/principal-charged-with-failing-to-r...

Follow comments        Submit tip        12 Comments

---

**Alison**                                                                                    Flag as inappropriate
6:49 am on Wednesday, July 11, 2012
Unbelievable. It seems that no matter how strict mandated reporting laws are, people invariably will fail to report abusers.

Reply

**Mckenna Smith**                                                                             Flag as inappropriate
7:28 am on Wednesday, July 11, 2012
All teachers and principals are mandated child abuse reporters and need to carry out their responsibilities properly.
http://www.mandatedreporterca.com/
California law states that a mandated reporter must make a report to police "whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect."

Reply

**Alison**                                                                                    Flag as inappropriate
7:44 am on Wednesday, July 11, 2012
Ah, but many mandated reporters refuse to speak out against one of their own. Case in point: in the Dr. William Ayres child molestation case in San Mateo, after the doctor was arrested, it turned out that a number of doctors knew he had been molesting boys but didn't report him because as one psychiatrist told a victim's advocate "we didn't want to get involved."

After Ayres was arrested, one of his victims was at a cocktail party where he was introduced to a psychiatrist. The doctor, who did not know that he was speaking to an Ayres victim, said he knew Ayres had been molesting boys because he'd had a patient who'd confided he'd been a victim. The doctor said he didn't report him to the police because the victim was outside the statute of limitations.

Reply

**LoyolaAlum**                                                                                Flag as inappropriate
8:34 am on Wednesday, July 11, 2012
Perhaps Dr. Susan Englander-Greenberg of Los Gatos has an expert opinion on this topic. Dr. Englander-Greenberg said that at one time 10% of her practice involved Jesuit Center, Los Gatos, where Fr. Jerold Lindner now lives. The number of credibly charged sex abusing Jesuits living at Jesuit Center, Los Gatos at one time or another may be about 10.

Reply

**Joey Piscitelli**                                                                           Flag as inappropriate
9:09 am on Wednesday, July 11, 2012
In contrast to mandatory reporting laws for teachers, the pedophile friendly laws of California enable clergy/priests in "confession" to escape mandatory reporting freely:

Cal. Penal Code § 11166(d)(1)-(2) (LexisNexis through 2010 Reg. Sess :
" A clergy member who acquires knowledge or reasonable suspicion of child abuse during a penitential communication is not required to make a report. For the purposes of this subdivision, 'penitential communication' means a communication intended to be in confidence, including, but not limited to, a sacramental confession, made to a clergy member who, in the course of the discipline or practice of his or her church, denomination, or organization, is authorized or accustomed to hear those communications, and under the discipline, tenets, customs, or practices of his or her church, denomination, or organization, has a duty to keep those communications secret.
Countless clergy rapists have taken advantage of this ludicrous law.

Reply

**LoyolaAlum**                                                                                Flag as inappropriate
9:14 am on Wednesday, July 11, 2012
A Jesuit said 60 cases of Jesuit sexual misconduct were investigated during a 6-year period by a Los Gatos team that included Dr. Susan Englander-Greenberg of Los Gatos at least part of this time.

Reply

**Jane Darwin**                                                                               Flag as inappropriate

787

Principal Charged With Failing to Report Alleged Molestation - Los ...        http://losgatos.patch.com/articles/principal-charged-with-failing-to-r...

12:18 pm on Wednesday, July 11, 2012
As a former principal I did have time when I had to report allegations and did so. I also will say that teachers and administrators are in the business because we want children to succeed and be safe. Yes there are a few bad apples. But they are luckily few and far between. There are caring professionals out there who are diligent about this.

Reply

**Jesse Ducker**                                                                                     Flag as inappropriate
5:07 pm on Wednesday, July 11, 2012
What a horribly sad story. It's unconscionable that people continue to look the other way on things like this.

Reply

**Joey Piscitelli**                                                                                  Flag as inappropriate
8:43 pm on Wednesday, July 11, 2012
Take note: The Santa Clara DA is more than eager to prosecute a school principle, which is very commendable; but the DA is invisible in court to prosecute Jesuit serial rapists who live in luxury at the Sacred Heart Center.

Reply

**Irene Alda Garza-Ortiz**                                                                           Flag as inappropriate
10:17 pm on Wednesday, July 11, 2012
That's grounds for being FIRED!

Reply

**Julian Groft**                                                                                     Flag as inappropriate
10:25 pm on Wednesday, July 11, 2012
im kinda scared to have kids because i dont want them to run into people like this...so sick

Reply

**Paul J. Wallin**                                                                                   Flag as inappropriate
12:55 pm on Tuesday, July 17, 2012
When you are a person who is a "mandated reporter" in California you have a legal obligation to report suspected child abuse to the child abuse registry. So long as you "suspect" that child abuse might have taken place you must report. It is not your job to make a decision on the validity of the allegations. It is your job to allow the police and social workers to make the decision as to whether the allegations should result in further investigation. Mandated reporters in California include all occupations that deal with children, all medical professionals, social workers, therapists, doctors, and many other professions that come in contact with minors. If you are a mandated reporter and you fail to report the suspected child abuse you are making a major mistake that can cost you your freedom and your job. No matter what your personal feelings are about the possible consequences to the alleged perpetrator it is not your job to make that "call". It is your legal obligation to immediately make a report and let the authorities decide what to do with it. IF you fail to do that you could be in the same situation as this principal who stands to potentially go to jail and lose his job.

Paul Wallin
Wallin and Klarich
Senior Partner
wklaw.com

Reply

Leave a comment

Submit ›

788

Examiner.com

# San Jose principal charged for not reporting alleged child molestations

SCHOOL PRINCIPAL | JULY 10, 2012 | BY: SUSIE FOWKES |



Teacher Craig Chandler is facing five felony counts of child molestation. His principal is now also facing charges for failing to report the incidents to police.
**Credits:** San Jose Police Department

RELATED TOPICS

- school principal (http://www.examiner.com /topic/school-principal /articles)
- prosecution (http://www.examiner.com /topic/prosecution)
- san jose crime (http://www.examiner.com /topic/san-jose-
- failure to report (http://www.examiner.com /topic/failure-to-report /articles)
- Santa Clara County District Attorney (http://www.examiner.com /topic/santa-clara-county- district-attorney/articles)

A San Jose school principal (http://www.examiner.com /topic/school-principal/articles) faces criminal charges for allegedly failing to report that a second-grade girl may have been sexually assaulted by her teacher in the classroom.

O.B. Whaley Elementary School Principal Lyn Vijayendran determined, through her own investigation that no crime had occurred, the Santa Clara County District Attorney (http://www.examiner.com/topic/santa-clara-county- district-attorney/articles) 's Office reported today. But San Jose police investigators learned that four other girls are believed to have been molested by teacher Craig Chandler. One of the victims was

789

crime/articles)                                                          allegedly molested weeks after Vijayendran learned
of the first incident.

Vijayendran, 36, faces a misdemeanor charge for failing to report child abuse
(http://www.dominican.edu/about/forfaculty/file/childabuselaw.pdf). If convicted, she faces up to six
months in jail.

"The clear legal responsibility for professionals who hear these terrible allegations is not to call meetings,
it is to call 911," prosecutor Alison Filo said. "Mandatory reporting laws are on the books to protect our
kids."

According to the district attorney's office, the law requires that school administrators, teachers, doctors,
nurses, therapists, social workers, and other professionals contact authorities if they know or
reasonably suspect that a child has been the victim of abuse.

District attorney investigators believe Vijayendran first learned of the allegations in October 2011 after
being given "clear evidence" that Chandler had sexually assaulted a student. Rather than calling police,
Vijayendran reportedly opted to interview the victim, asking the victim's mother to bring in the girl's
jacket, which had a mysterious stain. The principal then reportedly told the girl's mother the jacket was
not important. The mother took it home and washed it, destroying what might have been valuable
evidence against Chandler. Vijayendran also reportedly interviewed Chandler herself, potentially
undermining a police investigation.

In January 2012, while Vijayendran was on maternity leave, another parent came forward to complain
that her child had been molested by Chandler sometime around the Christmas break. Police were notified
at that time and learned there were a total of five children who reported evidence of molestations by
Chandler.

Chandler is charged with five felony counts of lewd and lascivious acts on a child under the age of 14.
He is next scheduled to appear in court for a hearing on August 6.

---



**Susie Fowkes, San Jose Crime Examiner**
Susie Dryden Fowkes was born and raised in the Central Coast city of Santa Cruz and
studied journalism at San Francisco State University. She has covered Monterey Bay
and San Francisco Bay Area news for both radio and print media for more than 10 years.
She lives with her traffic reporter husband...

790

# San Jose Principal Accused Of Not Reporting Alleged Teacher Sex Abuse

July 10, 2012 11:45 PM



Like 6      Share 10      View Comments



O.B. Whaley Elementary School in San Jose, (CBS)

**Filed Under**
Local, News

**Related Tags**
Child molestation, Craig Chandler, Crime, Education, Lyn Vijayendran, Molestation, O.B. Whaley Elementary School, San Jose, Sex abuse, Teacher Sex

SAN JOSE (CBS SF) — A San Jose principal is facing charges of failing to report evidence that a teacher molested a student despite learning of the allegations in October of last year.

The Santa Clara County District Attorney's Office said its investigation revealed that principal Lyn Vijayendran, 36, was given clear evidence that teacher Craig Chandler had sexually assaulted a second grade student at O.B. Whaley Elementary School but failed to carry out her legal obligation to report it to police.

Vijayendran was charged Tuesday with a misdemeanor for failure to report child abuse and could face up to six months in jail if convicted, according to the district attorney's office.

Prosecutors said that after learning of allegations that Chandler had molested the student, Vijayendran interviewed the teacher and the girl and told the student's parent that a suspicious stain on the girl's jacket was unimportant, leading the mother to wash the jacket and destroy potential DNA evidence.

KCBS' Mike Colgan Reports:

 Click here to play audio



Principal Lyn Vijayendran of O.B. Whaley

"The clear legal responsibility for professionals who hear these terrible allegations is not to call meetings, it is to call 911," Deputy District Attorney Alison Filo said.

The district attorney's office said authorities learned of the



**Featured Local Circulars**

 Buy Fresh, Tasteful Produce
Save Mart

Get The Best Deals on Holiday Fare
Lucky Supermarkets

 Great Gifts for Pets
PetSmart USA

VIDEO NEWS



Raw Video: President Obama Remarks On...

More Videos

**MUST SEE PHOTO GALLERIES**



Connecticut Elementary School...

Huge 3-Alarm Fremont Fire



Celebrities With Prostate...

Rock & Roll Hall of Fame...

● ● ● ●

**FOLLOW CBS SAN FRANCISCO**

Follow @CBSSF   12K followers

791

n Jose Principal Accused Of Not Reporting Alleged Teacher Sex A...        http://sanfrancisco.cbslocal.com/2012/07/10/san-jose-principal-accu...



Join Liam & Jan's Red Kettle Team

Get The Latest Ski & Snow Conditions

Watch Raiders vs Chiefs On CBS 5 & Live

Fight Hunger Now — Help Feed Hungry Families

school that reported evidence of being molested by Chandler, according to the district attorney's office.

Chandler was charged with five felony counts of lewd and lascivious acts on a child under 14.

(Copyright 2012 by CBS San Francisco. All Rights Reserved. This material may not be published, broadcast, rewritten, or redistributed.)

424 comments - 5 hours ago

KCBS Cover Story: Teaching Parents, Children About Teen Dating Violence
51 comments - 19 hours ago

BART Police Bumping Up Presence, Offering Escorts For Holiday Shoppers In SF, Oakland

South Bay attorney fights for rights of molestation victims | www.ktvu.com         http://www.ktvu.com/news/news/crime-law/molestation/nPLw7/

Follow us on

- 
- 

Thursday, Dec. 27, 2012 | 12:56 p.m.

Sign In | Register

Hi, (not you?) | Member Center | Sign Out

Sign In | Register



San Jose  52°
SFO Airport  52°
Oakland  54°

- StormTracker 2
- 5-Day Forecast
- Weather Webcast

Posted: 5:50 p.m. Monday, June 4, 2012

# South Bay attorney fights for rights of molestation victims



Related

KTVU.com and wires

SAN JOSE, Calif. — A San Jose elementary school teacher pleaded not guilty to five felony sex abuse charges Monday, but the district attorney's office said police should have been notified of the case much earlier.

35-year-old Craig Chandler is accused of lewd and lascivious acts with five children during school hours at OB Whaley Elementary in San Jose. He appeared at the Santa Clara County Hall of Justice to enter his plea.

"All I can tell you is he has pleaded not guilty. And has indicated he is innocent of these charges," said Chandler's defense attorney Brian Madden.

Testimony at Chandler's preliminary hearing revealed a child did come forward in October and made a claim about Chandler

793

to a school worker, but police were not notified until January.

This lack of response from schools, sports leagues and other organizations has fueled San Jose attorney Robert Allard to fight for sexual abuse victims.

Allard is pushing lawmakers to enhance background checks, have schools and organizations keep a close eye on their workers and ban secret settlements.

"It's not hush, hush, brushed under the table, but rather its brought out to the open so parents like me for example can find out who's coaching my children," said Allard.

Allard is currently representing the family of a 17-year-old student at Aragon High School in San Mateo.

Police arrested 25-year-old Joshua Tatro on Friday. Authorities said he was a water polo coach at the school and started an inappropriate relationship with the girl.

"And like drug addicts go to drugs, pedophiles go to where the kids are," said Allard.

Jancy Thompson was a promising swimmer growing up in the South Bay. She told KTVU her coach molested her starting at the age of 13. The abuse lasted for several years.

Jancy said she didn't realize until later there were abuse claims and a sealed civil settlement prior to her joining his team.

"Who knows what he did prior?" asked Thompson. "People are too afraid to come out and say anything and they think that they are too old."

Jancy and her attorney are hoping for federal charges against the coach and a jury trial for a civil case by the end of the year.

More News

We Recommend

- Postal worker arrested for stealing thousands of pieces of mail (ktvu.com)
- Police say murder of 17-year-old was out of revenge (ktvu.com)
- Student charged with attempting to rape teacher to appear in court (ktvu.com)
- Private picture of Mark Zuckerberg's family leaked (ktvu.com)
- Three passengers killed in I-280 crash IDed (ktvu.com)
- Mom recovering after being shot during Christmas Eve church service (ktvu.com)

From Around the Web

- 6 Markets that Will Rule the Next Decade (Business Without Borders)
- Avoid Getting Sick: Top 8 Germiest Public Places Exposed (Lifescript.com)
- 7 Surprising Signs of an Unhealthy Heart (Caring.com)
- The Simple Truth About Gun Control (The New Yorker)
- America's 10 Best Pizza Restaurants (Relish)
- Passengers and Planes Are Still at JFK, But No One Else Is (Condé Nast Traveler)

[?]

San Jose Teacher Faces 3 Additional Charges of Molesting Students ...    http://sanfrancisco.cbslocal.com/2012/03/03/san-jose-teacher-faces-...

# San Jose Teacher Faces 3 Additional Charges of Molesting Students

March 3, 2012 10:48 AM

▶ Listen LIVE

👍 Like  6   Tweet  8      3      ♡ View Comments



35-year-old Craig Chandler, a teacher at O.B. Whaley Elementary School in San Jose, is accused of aggravated sexual assault of a child. (San Jose Police Department)

SAN JOSE (KCBS) — A San Jose elementary school teacher being held without bail on charges of sexually abusing two students now faces three additional counts against three additional alleged victims.

Craig Chandler, 35, taught at O.B Whaley Elementary School for nine years, was arrested in January, originally charged with two counts of lewd and lascivious conduct on children under 14.

Three more girls have come forward with allegations that they were molested by Chandler.

Deputy District Attorney Allison Filo said all five victims were from his second and third-grade class and that on Friday morning an amended complaint with the additional counts was filed.

KCBS' Mike Colgan Reports:

 Click here to play audio.

"It's inconceivable for something like that to happen on school grounds," Filo said. "I think every parent has a right to send their child to school with the expectation that they'll not only receive an education, but that they'll be safe," she added.

Filo commented that he violated his position of trust and that what he did is every parent's worst nightmare.

Chandler has been held without bail for the last two months and faces life in prison.

He's scheduled to enter a plea on March 16th. His attorney Steven Clark, said his client continues to maintain his innocence.

(Copyright 2012 by CBS San Francisco. All Rights Reserved. This material may not be published, broadcast, rewritten, or redistributed.)



Reporting Mike Colgan

**Filed Under**
Local, Syndicated Local

**Related Tags**
Allison Filo, Child molestation, Craig Chandler, Mike Colgan, O.B. Whaley Elementary School, San Jose Deputy District Attorney, Sex Charge, Teacher

Sponsored Links

 **Power Companies Hate This**
Power companies are scared people will get free power with this device
HendershotGenerator.com

**Official Raiders Card**
Apply Now to Earn 10,000 Bonus Points After First Use w/ The NFL Extra Points Credit Card.
http://www.nflextrapoints.com

Buy a link here

**MORE FROM CBS**

NorCal Murder Suspect Lived With Girlfriend's Rotting Corpse

Sierra LaMar Kidnapping Suspect Charged In 3 More Attacks

Teen Stabbed At San Jose Christmas In The Park Event

**FROM AROUND THE WEB**

Hotels' Strangest Forgotten Items (Travel + Leisure)

'That '70s Show' Star Lisa Robin Kelly Arrested... (MamasLatinas)

Johnny Manziel Girlfriend: Sarah Savage Pictures (Zimbio)

**VIDEO NEWS**



Raw Video: CT Gov. Malloy Remarks On...

More Videos

**MUST SEE PHOTO GALLERIES**








Connecticut Elementary School...     Huge 3-Alarm Fremont Fire



795

Three more girls say San Jose teacher molested them – San Jose Mercury News                                      3/8/12 11:57 AM

SIGN IN | REGISTER | NEWSLETTERS                                                                   Part of the Bay Area News Group

MercuryNews.com

Like 23k    eEdition / Subscriber Services
            Mobile | Mobile Alerts | RSS

MAKE·A·WISH    Share the Power of a Wish    (7 days a week)
GREATER BAY AREA CHAPTER                        1.855.623.WISH
                                                www.WheelsForWishes.org

NEWS  BUSINESS  TECH  SPORTS  ENTERTAINMENT  LIVING  OPINION  PUBLICATIONS  MY TOWN  HELP     JOBS  CARS  REAL ESTATE  CLASSIFIED  SHOPPING

Site  Web Search by YAHOO!    San Jose, CA  Now 61°F    zip    Apartments
                                                                 Commercial Properties
                                                                 Mortgage Rates
                                                                 List A Home

today's DEALS  Walmart    sears

Recommend   Send   Be the first of your friends    0   Share   Tweet 0
                   to recommend this.

# Three more girls say San Jose teacher molested them

By Tracey Kaplan
tkaplan@mercurynews.com
Posted: 03/02/2012 03:01:24 PM PST
Updated: 03/02/2012 10:26:48 PM PST

Three more elementary school girls have told police that a San Jose teacher
sexually abused them, prompting prosecutors to file new charges against the man
Friday.

Craig Richard Chandler now faces five felony counts of lewd and lascivious
conduct in connection with five alleged female victims at O.B. Whaley Elementary
School.

All the children are younger than 10 years old, prosecutor Alison Filo said.

Chandler, 35, has been in jail without bail since he was arrested Jan. 10 after the
first girls reported being molested. The children described being blindfolded during
the assault, a source said.

Chandler's attorney, Steven Clark, said his client will plead not guilty at his next
court hearing March 16. He is on paid administrative leave, per Evergreen School
District policy.

"Mr. Chandler has maintained his innocence throughout this case and nothing
about the amended complaint has changed that," Clark said.

Filo said the three additional girls came forward almost immediately after police began questioning all the students at the
school, but prosecutors waited until the investigation was completed to file the new charges. Chandler taught a combined
second- and third-grade class.

Filo said the short time between the first set of reports and the second bolstered prosecutors' confidence that the new
information was not tainted by what the first children had said.

A judge has sealed a police report that provides                    more details about the allegations.

Advertisement                                                       If Chandler is convicted, he could face 30 years to life in
                                                                    prison because prosecutors have alleged there were
                                                                    multiple victims.

                                                                    The additional felony counts could increase his sentence
                                                                    to 75 years to life.

                                                                    Contact Tracey Kaplan at 408-278-3482.

Click photo to enlarge

San Jose police arrest teacher, Craig
Richard Chandler, on... ( San Jose Police
Department )

MAKE·A·WISH
Donate Your Car
to benefit the Make-A-Wish
Foundation
• We accept all vehicles
  running or not
• We also accept boats and RVs
• Free vehicle pick-up
• Tax deductible
                    (7 days a week)
1.855.623.WISH
www.WheelsForWishes.org

cars.com    ONE FREE DRAWER
            REPLACEMENT WITH MINIMUM
            PURCHASE OF 4 ROLL-OUTS
            WE WELCOME
            ALL JOBS-SMALL OR BIG

 Crime and courts

Latest headlines

San Jose: Teens accused killing dog during
beating won't be charged as adults
Dante's restaurateur accused of criminal
negligence toward Tahoe-bound travelers
Pacifica preps kill another pit bull, this time for
attacking corgi
Sunnyvale police: Mother killed 22-year-old autistic
son, then herself

Daily police blotter

Police Blotter
Follow @svcrime    354 followers

Related features

Interactive map: South Bay crime reports
Map: San Jose homicides

Most Viewed

(From the last 12 hours)

1. California suddenly matters after Super
   Tuesday fails to decide GOP...
2. Tech Ticker: Facebook boosts mobile
   audience, suit against Apple...
3. New Santa Clara County schools chief's
   salary: $299,500
4. 'Hunger Games' update: Kravitz sees present
   day in apocalyptic story
5. Sunnyvale police: Mother killed 22-year-old
   autistic son, then herself
6. From the Archives: Sharks rout Avalanche,
   take 3-2 series lead

Reprint  © 2005-2012    Email    Print    Resize    Return to Top

RECOMMENDED FOR YOU

Recommendations

796

Three more girls say San Jose teacher molested them – San Jose Mercury News                                          3/8/12 11:57 AM

RECOMMENDED FOR YOU

▸ Firefighters battle apartment fire near UC...
▸ Tech Ticker: Facebook boosts mobile audience...
▸ Cops: Pennsylvania man used transmitter to...
▸ Tim Kawakami: Buster Posey looks ready – but...
▸ Gov. Jerry Brown visits downtown Fairfax
▸ Apple, five book publishers face Justice...

~ SPONSORED LINK ~
Anjelica Huston to Sing on SMASH
(From Oxicle.com)

Powered by newstogram

You need to be logged into Facebook to
see your friends' recommendations.

Public safety employees among highest
paid in Palo Alto – San Jose Mercury
News
13 people recommend this.

Wickedly irreverent fortune cookies a
popular treat – San Jose Mercury News
6 people recommend this.

Facebook social plugin

Top Classifieds

RENTALS  JOBS  REAL ESTATE  AUTOS

JEEP 2009 Custom Sierra
Consignments Wanted
2000 Bayliner...
VW 2000 Jetta GLX $4900
Chevrolet
CHEVROLET 1993 CAMARO QUICK SALE
FORD 2006 Mustang GT
CHRYSLER 2002...

ALL LISTINGS

• FAQ: Article commenting how-tos and tips

Recommend     Be the first of your friends to recommend this.


Sarah Culbertson · Top Commenter · Grace M.Davis High
I'm blown away with these teachers, police...etc. that commit crimes and are put on "paid administrative leave"....they continue to get paid for committing crimes???smh
Reply ·   5 · Like · March 2 at 4:27pm


Tara Yael Samuels · Finger
Just so, so disgusting.
Reply ·   3 · Like · March 2 at 5:09pm


Brad R Dezirt · Top Commenter · Works at USMC
His stay in prison is going to be hell. Too bad.
Reply ·   2 · Like · March 2 at 5:56pm


Robert Cortese · San Jose, California
This guy should not be on paid administrative leave. I'm not OK with that.
Reply · Like · March 3 at 11:58am


Anne Poche · National university
disgusting.....
Reply · Like · March 3 at 1:23pm


Kevin Riley O'Keeffe · Top Commenter · Sioux Falls, South Dakota
He should be paid, because he's innocent until proven guilty. Which he doubtless will be, at which point his life will be effectively over. So a few extra bucks floated his way in the meantime, in order to uphold one of our sacred Constitutional principles, is money very well spent.
Reply ·   1 · Like · March 3 at 1:34pm


Juan Timer · Top Commenter
looks like he got beat up in jail already lol
Reply · Like · March 2 at 3:30pm

Facebook social plugin

Crime and Courts »

San Jose: Teens accused killing dog during beating won't be charged as adults
Dante's restaurateur accused of criminal belligerence toward Tahoe-bound travelers
Pacifica cops kill another pit bull, this time for attacking corgi
Extra time to apply for Santa Clara County civil grand jury
Bike-riding Sunnyvale burglar picked the wrong house
D.A.: San Mateo man on trial for rape of orphan relative



797

http://www.mercurynews.com/crime-courts/ci_20089495

Three more girls say San Jose teacher molested them -- San Jose Mercury News

3/8/12 11:57 AM

Santa Cruz judge agrees to dismiss two counts for escaped felon accused of holding up teacher, keeping couple hostage

FBI chief says agency deactivating many GPS trackers following court ruling

**Related Results**

OMVS On Verge of Breakout  Safety & Protection Industry Good Move For Your Porfolio, Buy Today!

police blotter  View Anyone's Criminal History! Police Arrest Reports In Seconds.

Find Any Court Records  1) Search Court Records Instantly 2) Find Anyone's Court Records!

Ads by Yahoo
www.TopMicroCapStock.com
www.InstantCheckMate.com
Court-Records.CheckGround

Copyright © 2012 - San Jose Mercury News

Place an Ad | About Our Ads | Help/Contact | Site Map | Advertise | Home Delivery | Copyright | Privacy Policy and Terms of Use | About MediaNews Group | RSS | Find San Jose Jobs | Ethics Policy | About Bay Area News Group | MY YAHOO!

A MediaNews Group WEBSITE
MediaNews Group - Bay Area News Group

:e  23k        11K      0 Shares    0 Tweets   Email   Mobile Apps   Pi

798

- ○ Live Doppler 7 HD Video
- ○ Street-Level Weather
- ○ MORE TOPICS +

- **Video & Photos**

  - ○ Video on Demand
  - ○ Live Video
  - ○ Photo Galleries
  - ○ Most Popular Video
  - ○ Raw Video
  - ○ MORE TOPICS +

- **ABC7 Extras**

  - ○ About ABC7 & News Team
  - ○ Prepare NorCal
  - ○ Bay Area Traffic
  - ○ Contests & Promotions
  - ○ Community
  - ○ Jobs
  - ○ TV Listings
  - ○ ABC Shows
  - ○ Live Well Network

- **Marketplace**

  - ○ San Francisco Area Jobs
  - ○ Classifieds
  - ○ Get Coupons

Enter search phrase

SEARCH

SEE IT ON TV? CHECK HERE

South Bay News

# More victims come forward in teacher molestation case

Friday, March 02, 2012
Tags:

799

More victims come forward in San Jose teacher molestation case | ab...    http://abclocal.go.com/kgo/story?section=news/local/south_bay&id=...

san jose, crime, children, south bay news, karina rusk

- Comment Now
- Email
- Print
- Report a typo
- ⬚



Karina Rusk
More: Bio, E-mail, Facebook, Twitter, News Team

SAN JOSE, Calif. (KGO) -- More young children have come forward to accuse a San Jose elementary school teacher of molesting them. Friday, the district attorney's office filed new charges against Craig Chandler.

Police and prosecutors always believed there were more victims and Friday's complaint confirms that.

Earlier this year, two young students accused Chandler of molestation. Now parents at O.B. Whaley Elementary School in San Jose are stunned again as police say they found three more victims.

**Related Content**

Story: More victims suspected in teacher molestation case
Story: School teacher's arrest shocks parents
Story: San Jose teacher arrested for child molestation
more: CRIME MAPS: Track crime in your neighborhood
"I don't even know what to say about that; I'm thankful my daughter is not in his class, I just hope he gets what he deserves," parent Melissa Duran said.

The district attorney's office filed the three additional sexual assault charges in court Friday morning. All five counts involve girls between the ages of seven and nine. From the dates, it appears, three were current students and two former students.

Chanlder had taught at Whaley for nine years, most recently to second and three graders.

"These crimes are always horrible, but they are particularly heinous when they occur in an environment of trust where parents expect tha their children will be, at the very least, safe," deputy district attorney Alison Filo said.

The complaint says the five acts took place between September 2010 and January of this year.

Chandler's defense attorney says he will seek to question the children in open court.

"To determine what is the allegations here and what really happened and we believe when that's done, that Mr. Chandler will be able to show he never molested a child, ever," Steven Clark said.

Some parents say they have used the disturbing allegations to talk to their own kids about a difficult subject.



799A

"I told her, 'Nobody can touch you, that if somebody touches you, you tell mommy,'" parent Blanca Rodriguez said.

The details of the alleged crimes have been sealed. Prosecutors say they are confident with their case.

"Kids are amazing, they do a great job, they're incredibly resilient we believe we have legitimate victims in this case," Filo said.

The next court date is March 16, at which time Chandler is scheduled to enter a plea. If convicted of even just two of the five counts, Chandler could face a possible life sentence.

(Copyright ©2012 KGO-TV/DT. All Rights Reserved.)

Get more South Bay News »

Tags:
san jose, crime, children, south bay news, karina rusk

- Comment Now
- Email
- Print
- Report a typo
- 

**Sorry, something went wrong.**

More From ABC7 News

- Christmas baby delivered early by San Jose dad
- Police investigate multiple threats against teacher
- 4 firefighters shot, 2 dead in western NY
- Homeless man finds hope, opportunity in bottle
- Tim Lincecum cuts off his long locks
- Brazen thieves steal from stores during holiday season

From Around the Web

- Kate Middleton's Ring - Close Up Photos (StyleBistro)
- Passengers and Planes Are Still at JFK, But No One Else Is (Condé Nast Traveler)
- Why Are People Hoarding Coins? (Investopedia)
- What You May Not Know About Buffet Food (Lifescript.com)
- What Does Your Car Color Say About You? (iVillage)
- 10-Year-Old Girl Goes Missing After Flying Alone on United Airlines (Everyday Family)

0 comments
Post A Comment

800

- ○ Live Doppler 7 HD Video
- ○ Street-Level Weather
- ○ MORE TOPICS +

- Video & Photos

  - ○ Video on Demand
  - ○ Live Video
  - ○ Photo Galleries
  - ○ Most Popular Video
  - ○ Raw Video
  - ○ MORE TOPICS +

- ABC7 Extras

  - ○ About ABC7 & News Team
  - ○ Prepare NorCal
  - ○ Bay Area Traffic
  - ○ Contests & Promotions
  - ○ Community
  - ○ Jobs
  - ○ TV Listings
  - ○ ABC Shows
  - ○ Live Well Network

- Marketplace

  - ○ San Francisco Area Jobs
  - ○ Classifieds
  - ○ Get Coupons

Enter search phrase
SEARCH

SEE IT ON TV? CHECK HERE

South Bay News

# More victims suspected in teacher molestation case

Friday, January 13, 2012
Tags:

801

<u>san jose</u>, <u>crime</u>, <u>children</u>, <u>south bay news</u>, <u>david louie</u>

- <u>Comment Now</u>
- <u>Email</u>
- <u>Print</u>
- <u>Report a typo</u>
- ⊠



<u>David Louie</u>
More: <u>Bio</u>, <u>E-mail</u>, <u>Facebook</u>, <u>Twitter</u>, <u>News Team</u>

SAN JOSE, Calif. (KGO) -- A San Jose elementary school teacher appeared in court Friday to face child sex charges. Craig Chandler has been teaching at Whaley Elementary for nine years. In San Jose there is word that there may be more victims.

When police first arrested Chandler on Tuesday, they said they knew of one victim. Now, the deputy district attorney says there may be others.

Chandler appeared subdued when he appeared in Santa Clara County Superior Court Friday afternoon. He's accused of sexual assault against a child between August and October of last year. It's not known if the victim was a student in his combined class of 2nd and 3rd graders.

**Related Content**

<u>Story: School teacher's arrest shocks parents</u>
<u>Story: San Jose teacher arrested for child molestation</u>
<u>more: CRIME MAPS: Track crime in your neighborhood</u>
His defense attorney asked that a three-page police report be sealed. Judge Alden Danner granted that request. As San Jose police worked on the case, it appears that other suspected victims have surfaced. That has not been publicly announced earlier, but it was revealed when the charges levied against Chandler were filed in court. Deputy District Attorney Alison Filo provided confirmation after the short court appearance.

Alison Filo: There's a special allegation under penal code section 667.61 which alleges multiple victims, such that he is eligible for life in prison.
Louie: You're alleging that there are multiple victims out there?
Filo: We are alleging that there are multiple victims.

"Just this morning I was given a number of police reports. We're just reviewing those reports now. I will say that Mr. Chandler is very devastated by these allegations. We are going to be vigorously defending him," said

Chandler did not enter a plea. His arraignment has been rescheduled for Jan. 31st -- 18 days from now. He's being held without bail.

The court also approved a protective order that bars any contact between Chandler and the victims or their families. We're told that is a routine step taken in this kind of case.

802

More victims suspected in San Jose teacher molestation case | abc7ne...    http://abclocal.go.com/kgo/story?section=news/local/south_bay&id=...

(Copyright ©2012 KGO-TV/DT. All Rights Reserved.)

Get more South Bay News »

Tags:

san jose, crime, children, south bay news, david louie

- Comment Now
- Email
- Print
- Report a typo
- ⬚

Recommend   Send   5 people recommend this. Be the first of your friends.

### More From ABC7 News

- 4 firefighters shot, 2 dead in western NY
- Mom shot shielding kids at church on Christmas Eve
- Storm whips into Northeast bringing snow, rain
- Driver to be arrested in triple-fatal crash on NB I-280
- Tim Lincecum cuts off his long locks
- UPS driver caught stealing iPad delivered by FedEx

### From Around the Web

- What You May Not Know About Buffet Food (Lifescript.com)
- Kate Middleton's Ring - Close Up Photos (StyleBistro)
- What Does Your Car Color Say About You? (iVillage)
- UPS delivery man steals iPad Mini after FedEx delivered it (Digital Trends)
- Lost Pet Parakeet Returned After Telling Cops its Address (Petside.com)
- 7 Surprising Signs of an Unhealthy Heart (Caring.com)

1 comments

Post A Comment

1  erellamas  2/3/12 9:33 AM PST

What's going on with this case? There was a hearing on 1/31 and there haven't been any updates.

Mark As Violation

(Max. 500 Characters)

abc7news.com and its parent and affiliated companies are not responsible for the content of comments posted above or for anything arising out of use of the above comments or other interaction among the users. While we may delete comments and block or take other action against users who we determine have violated our rules, we cannot always do so. Please see our Terms of Use for additional policies applicable to these comments.

Post

803

Prosecutor Says SJ Teacher Had Multiple Sex Abuse Victims « CBS ...      http://sanfrancisco.cbslocal.com/2012/01/13/prosecutor-says-sj-teach...

CBS San Francisco     Your Home   Buy Tickets   More ▼   FOLLOW US  f  ▼    LOGIN REGISTER   🔍

▶ Listen LIVE

# Prosecutor Says SJ Teacher Had Multiple Sex Abuse Victims

January 13, 2012 3:07 PM

👍 Like 0 | Tweet 1 | +1 Share 8        👁 View Comments



35-year-old Craig Chandler, a teacher at O.B. Whaley Elementary School in San Jose, is accused of aggravated sexual assault of a child. (San Jose Police Department)

**Filed Under**
Local, News

**Related Tags**
Charges, Child molestation, Craig Chandler, Crime, Molestation, O.B. Whaley Elementary School, San Jose, Sex abuse, Sexual assault, Teacher

SAN JOSE (CBS SF) – A San Jose elementary school teacher charged with lewd acts on a child is being accused of having multiple victims, prosecutors said Friday.

Craig Chandler, 35, appeared in court in a brown jumpsuit Friday afternoon to be arraigned on two felony charges of lewd acts on a child.

Chandler was arrested on Tuesday night at his home in San Jose on suspicion of several counts of aggravated sexual assault involving a child in the 7- to 9-year-old age range.

Prosecutor Alison Philo Friday said multiple victims have been identified.

"We have probable cause to believe that more than one victim was involved," Philo said.

She said Chandler could face a maximum sentence of life in prison if convicted on the charges. She would not comment on the children's gender and age, but said they are all younger than 14.

Chandler's attorney, Steven Clark, said that Chandler would "deny the allegations vehemently."

"Mr. Chandler's very devastated by these allegations," he said. "We asked that the police reports remain under seal until we have an opportunity to review the case and the judge has agreed to do that."

Chandler is suspected of committing at least one of the crimes against an O.B. Whaley Elementary School student at the campus at 2655 Alvin Ave. between August and October, police said.

Investigators have not released the child's age or gender.

According to police, Chandler teaches a second and third grade combination class at O.B. Whaley and has been teaching at the school for the past nine years.

**Top Sponsored Articles**

How Cruise Lines Fill All Those Unsold Cruise Cabins

How to Speed Up Your PC - Tricks Manufacturers Don't Want You to Know

How to Make the First Date a Lot More Fun and a Lot More Successful



VIDEO NEWS

Raw Video: CT Gov. Malloy Remarks On...

**MUST SEE PHOTO GALLERIES**

Connecticut Elementary School...    Huge 3-Alarm Fremont Fire

Celebrities With Prostate...    Rock & Roll Hall of Fame...

● ● ● ●

**Sponsored Links**

 **Power Companies Hate This**
Power companies are scared people will get free power with t...
HendershotGenerator.com

**Official Raiders Card**
Apply Now to Earn 10,000 Bonus Points After First Use w/...
http://www.nflextrapoints.com

 **Mom's Bed Bug Solution**
California:Find Out How to Prevent and Remove Bed Bugs Permanently.
BedBugAlerts.com

Buy a link here

**FOLLOW CBS SAN FRANCISCO**

 ▼ Follow @CBSSF   12K followers

804

Prosecutor Says SJ Teacher Had Multiple Sex Abuse Victims « CBS ...    http://sanfrancisco.cbslocal.com/2012/01/13/prosecutor-says-sj-teach...



Join Liam & Jan's Red Kettle Team      Get The Latest Ski & Snow Conditions      Watch Raiders vs Chiefs On CBS 5 & Live 105      Fight Hunger Now, Help Feed Hungry Families

He is being held in the Santa Clara County jail.

(Copyright 2012 by CBS San Francisco and Bay City News Service. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.)



# Arraignment Set For San Jose Teacher Accused Of Sexual Assault

January 11, 2012 9:07 PM

Like 0 Tweet 2 Share View Comments

35-year-old Craig Chandler, a teacher at O.B. Whaley Elementary School in San Jose, is accused of aggravated sexual assault of a child. (San Jose Police Department)

SAN JOSE (CBS SF) — A San Jose elementary school teacher who was arrested on Tuesday on suspicion of aggravated sexual assault of a child is expected to be arraigned on Friday.

Craig Chandler, 35, was arrested at his home in San Jose on Tuesday night on suspicion of several counts of sexual assault involving at least one child in the 7- to 8-year-old age range, according to police.

Filed Under
Local, News

Related Tags
Craig Chandler, Crime, San Jose, Sexual assault, Teachers

Prosecutors have not yet filed charges against Chandler, but he is set to be arraigned on Friday afternoon, said Santa Clara County District Attorney's Office spokeswoman Lisa McCrary.

He is being held without bail at Santa Clara County Main Jail.

Chandler is suspected of committing the crime against an O. B. Whaley Elementary School student at the campus between August 2011 and October 2011, police said.

Investigators have not released the child's age or gender.

According to police, Chandler teaches a second and third grade combination class at O.B. Whaley Elementary School, located at 2655 Alvin Ave., and has been teaching at the school for the past nine years.

San Jose police Sgt. Jason Dwyer said there may be additional victims.

The Evergreen School District posted a statement on its website Wednesday stating that Chandler has been placed on leave "in accordance with district protocol."

Listen LIVE

Top Sponsored Articles

How to Get Your Music Collection to Work For You

How to Make the First Date a Lot More Fun and a Lot More Successful

New Muscle Building Science Lets Smaller Guys Bulk Up Fast

VIDEO NEWS

Raw Video: CT Gov. Malloy Remarks On...

MUST SEE PHOTO GALLERIES

Connecticut Elementary School...

Huge 3-Alarm Fremont Fire

Celebrities With Prostate...

Rock & Roll Hall of Fame...

FOLLOW CBS SAN FRANCISCO

Follow @CBSSF 12K followers

806

Arraignment Set For San Jose Teacher Accused Of Sexual Assault «...          http://sanfrancisco.cbslocal.com/2012/01/11/arraignment-set-for-san-...

CLICK HERE TO DONATE

DOING THE MOST GOOD

FOOD Families

Join Liam & Jan's Red
Kettle Team

Get The Latest Ski &
Snow Conditions

Official/Raiders vs Chiefs
Apply Now to Earn 16,000
Bonus Points After First
Use w/...
http://www.nflextrapoints.com

Fight Hunger Now – Help
Feed Hungry Families

Anyone who may have
been victimized by
Chandler or has
information about the case
is asked to contact
Detective Sean Pierce at
(408) 277-4102. Those
who wish to remain

424 comments - 5 hours ago

KCBS Cover Story: Teaching Parents, Children
About Teen Dating Violence
61 comments - 19 hours ago

Mom's Bed Bug
Solution
California: Find Out How to

BART Police Bumping Up Presence, Offering
Escorts For Holiday Shoppers In SF, Oakland

CBS
SF Bay Area

CBS LOCAL

807



| HOME | NEWS | VIDEO | WEATHER | INVESTIGATIONS | SPORTS | ENTERTAINMENT | ON AIR |

LOCAL   U.S. & WORLD   SPONSORED: SPORTS   HEALTH   TECH   WEIRD   WEATHER   BLOGS:   PRESS HERI

HOME > NEWS > LOCAL

# Craig Chandler Arrested on Child Sex Assault

Man taught second and third grade in San Jose for the past several years.

Wednesday, Jan 11, 2012 | Updated 12:16 PM PST

View Comments (6)  |  Email  |  Print          0       Tweet ⟨3⟩     Recommend ⟨34⟩     Send



NBC Bay Area

San Jose investigators confirmed they believe the abuse happened on the ground of this school and the alleged victim is a student.

advertisement

Police arrested a San Jose elementary school teacher on suspicion of aggravated sexual assault of a child, police said in a press release issued late Tuesday.

Craig Chandler, 35, was arrested on suspicion of sexual assault, which allegedly occurred between August 2011 and October 2011.

Chandler teaches a second and third grade combination class at O.B. Whaley Elementary School, located at 2655 Alvin Ave. in San Jose. Police said he has worked at the school for the past nine years.

Investigators said the victim in the case was a student at the school and the abuse happened on school grounds. They did not not give an age or gender, so it was not known if it was one of Chandler's students or another student at the elementary school.

808

Parents and students arriving for school on Wednesday said they were shocked to hear the news. The district said it sent a note home Tuesday, but many parents on campus Wednesday said they had not received it.

He is being held without bail.

Anyone with information regarding this case is urged to call the Police Department's sexual assaults unit at (408) 537-1395 or the anonymous tip line at (408) 947-STOP (7867).

*Bay City News contributed to this report.*

Get the latest headlines sent to your inbox! EMAIL SIGN UP

Privacy Policy | More Newsletters

Posted Jan 11, 2012

0 Tweet 3 Recommend 34 Send

Leave Comments

809

Craig Chandler Arrested on Child Sex Assault | NBC Bay Area          http://www.nbcbayarea.com/news/local/Craig-Chandler-Arrested-on...



Add a comment...

☑ Post to Facebook                              Posting as Marty Bengford (Not you?)   [ Comment ]



**Michael Breinholt**
I happen to know some background on this that's not being reported and yes Caitlin, it is possible that he may be innocent. While your right that things like this happen alot, even once is too much, its also true that there are often false accusations and that many innocent people never fully shed the accusation to be able to move on with their lives. If he is in fact guilty, it will come out and you will have plenty of time to be disgusted with him afterwards. Until then, everyone deserves a little reservation about getting the linching rope.
Reply · 5 · Like · Follow Post · January 11 at 6:11pm



**Leslie Blair Gallagher** · Richard Stockton College of New Jersey
Wow, @Caitlan where did you read that this guy was being shielded? Talk about knee jerk reactions.
Reply · 3 · Like · Follow Post · January 11 at 4:17pm



**Roberta Mann** · Top Commenter
I worship the ground you walk on. LOL
Reply · 3 · Like · January 11 at 4:26pm



**Nancy Bowen Redding** · Fresno, California
People used to be innocent until proven guilty in this country, it is sad that it has turned into guilty until proven innocent. Reserve judgement until all the facts come out.
Reply · 1 · Like · Follow Post · January 12 at 8:37am



**Deborah Albright** · CCOC San Jose
Are our kids safe anymore OMG seemed like such a nice man too I have seen him daily at school he is my granddaughters freinds teacher.
Reply · Like · Follow Post · January 11 at 9:14am



**Roberta Mann** · Top Commenter
Don't jump to any conclusions, I've seen too many lives ruined by false accusations and we have no facts at all except that he's been accused ... of ... something...
Reply · 7 · Like · January 11 at 12:09pm



**Caitlin Maher** · Top Commenter
Roberta Mann Oh yeh?! men don't prey on women and children... it's all just a phony set up. 500,000 rapes per year.in USA, 50,000 women and children disappear in USA each year probably into sex trade, nearly every suburb has a brothel, main cause of death of pregnant women in USA is murder by the father of the child. Domestic abuse of partner or child is most prevalent crime in USA. It's all just a phony set up.

Your knee jerk reaction to shield this guy is one of the oldest boys' club rule but it is nowadays really transparent and so just shut up.
Reply · 1 · Like · January 11 at 12:55pm



**Spencer Miz Giuliodibari** ·    Subscribe · Silver creek
I knew this guy.What a total A.
Reply · Like · Follow Post · January 14 at 10:03pm

Facebook social plugin

810

# San Jose Elementary Teacher Accused Of Sexually Assaulting Child

January 10, 2012 11:55 PM

Like  21          3          25                    View Comments



35-year-old Craig Chandler, a teacher at O.B. Whaley Elementary School in San Jose, is accused of aggravated sexual assault of a child. (San Jose Police Department)

**Filed Under**
Local, News

**Related Tags**
Craig Chandler, Crime, San Jose, Sexual assault

SAN JOSE (CBS / AP) — Police arrested a San Jose elementary school teacher Tuesday on suspicion of aggravated sexual assault of a child, police said.

Craig Chandler, 35, was arrested on suspicion of sexual assault, which allegedly occurred between August 2011 and October 2011.

According to police, Chandler teaches a second and third grade combination class at O.B. Whaley Elementary School, located at 2655 Alvin Ave. Chandler taught at the school for the past nine years.



CBS San Francisco

 
47% off Honestech Film and Photo Package, Scan and Save

The victim's name, age and gender were not released, nor did police say whether the child attended the school. Officials also did not disclose how they learned of the alleged abuse.

KCBS' Mike Colgan Reports:

Dan Deguara, director of educational services at the Evergreen School District, said Chandler has been placed on leave.

"We're working closely with the San Jose Police Department [and] conducting our own investigation," he said regarding the allegations that came forward.

"Safety continues to be our number one priority," said Deguara.

Chandler is being held without bail.

Anyone with information regarding this case is urged to call the Police Department's sexual assaults unit at (408) 537-1395 or the anonymous tip line at (408) 947-STOP (7867)..

MUST SEE PHOTO GALLERIES

 
Rock & Roll Hall of Fame...     Cheerleader Roundup - Week 14

 
NFL Recap - Week 14     Celebrities Who Died In Air...

811

3 comments

Jerome • 11 months ago

And even if after the process plays out he did do it, by no means does that mean you are unsafe with other teachers. One individual does not reflect an entire profession.

T • 11 months ago

He is only being accused as of right now, that does not mean that he did it.

Chante • 11 months ago

I cant beileve Mr.Chandler would do that im a student there and no i dont feel safe what if ther's other teachers like this?

812

- ○ Live Doppler 7 HD Video
- ○ Street-Level Weather
- ○ MORE TOPICS +

- **Video & Photos**

  - ○ Video on Demand
  - ○ Live Video
  - ○ Photo Galleries
  - ○ Most Popular Video
  - ○ Raw Video
  - ○ MORE TOPICS +

- **ABC7 Extras** ⑦

  - ○ About ABC7 & News Team
  - ○ Prepare NorCal
  - ○ Bay Area Traffic
  - ○ Contests & Promotions
  - ○ Community
  - ○ Jobs
  - ○ TV Listings
  - ○ ABC Shows
  - ○ Live Well Network

- **Marketplace**

  - ○ San Francisco Area Jobs
  - ○ Classifieds
  - ○ Get Coupons

Enter search phrase
SEARCH

SEE IT ON TV? CHECK HERE

South Bay News

# San Jose teacher arrested for child molestation

Tuesday, January 10, 2012
Tags:
san jose, crime, south bay news, lisa amin gulezian

813

O.B. Whaley Elementary School teacher arrested for child molestation...    http://abclocal.go.com/kgo/story?section=news/local/south_bay&id=...

- Comment Now
- Email
- Print
- Report a typo
- ☒



Lisa Amin Gulezian
More: Bio, E-mail, Facebook, News Team

SAN JOSE, Calif. (KGO) -- A San Jose teacher is facing child molestation charges. Craig Chandler, 35, is accused of aggravated sexual assault on a child.

Chandler worked at O.B. Whaley Elementary School for nine years. He most recently taught a second/third grade combo class.

San Jose police believe Chandler sexually assaulted a child on campus between August and October 2011. But they will not say if it happened during school hours or if the child was even a student at the school. They do worry more victims may be out there because Chandler was a teacher for so long.

**Related Content**

link: CRIME MAPS: Track crime in your neighborhood
Tuesday night, the president of the West Evergreen Neighborhood Association, Robert Sandoval, spoke with ABC7 about the suspect. As a community member, he says he knows every teacher at this school, including Chandler.

"I was appalled to hear what he had done. I mean shocking. I never would have thought that he would be a person to take advantage of a child. Never would have thought that," said Sandoval.

Evergreen School District superintendant Katherine Gomez released a statement saying, "The District is cooperating fully with the San Jose Police Department and we want to assure the community that the safety and well-being of our children is our primary concern."

Chandler is being held without bail. He will make his first appearance in a San Jose courtroom Friday.

Detectives are urging any more victims to come forward and tell San Jose police. People with information can call the police department's sexual assaults unit at (408) 537-1395 or the anonymous tip line at (408) 947-STOP (7867).

(Copyright ©2012 KGO-TV/DT. All Rights Reserved.)

Get more South Bay News »

Tags:
san jose, crime, south bay news, lisa amin gulezian

814



{ search

Search Fugitive.com .. [ GO ]

FUGITIVE WATCH ™

- Home
- Television & Newspaper
- Give a Tip
- Advertise with Us
  - Fugitive Watch Sponsors
- About Us
  - Mission Statement
  - Terms of Use
- Press Releases
- Contact Us
  - Make a Donation
- FUGITIVE WATCH BUSINESS DIRECTORTY
- California Fugitive Recovery Academy-Learn How to Become a Fugitive Recovery Agent
- RSS ▢

# * Craig Chandler, O.B. Whaley Elementary School teacher arrested for alleged Sexual Assault of a Child

Published by Staff Writer on January 10, 2012



Click Here to join The Fugitive Watch fan page and get critical alerts



Follow Fugitive Watch for updated crime stories and wanted criminals

815

Craig Richard Chandler O.B. Whaley Elementary School teacher arrested for alleged Sexual Assault of a Child                    3/8/12 11:50 AM



**UPDATE Click Here Craig Chandler, a San Jose Elementary Teacher, Will Be Arraigned on Several Counts of Sexual Assault**

On January 10, 2012, San Jose police investigators arrested Craig Chandler, 35, of San Jose on suspicion of aggravated sexual assault of a child, a felony. Chandler is a teacher at O.B. Whaley Elementary School, 2655 Alvin Avenue, in San Jose, and has been employed at O.B. Whaley as a teacher the past 9 years. Chandler currently taught a 2nd/3rd grade combination class.

Chandler was booked into the Santa Clara County Jail on suspicion of violating section 269(a) of the California Penal Code - Aggravated Sexual Assault of a Child – where he is being held without bail. Chandler is suspected of committing the sexual assault between August 2011 and October 2011.

Anyone having been victimized by the suspect, or anyone with information about this case or about the suspect, is urged to contact Detective Sean Pierce of the San Jose Police Department, Sexual Assaults Unit, at (408) 537-1395.

## Auto Nav 2000

*Click on Ad Below to go to Auto Nav 2000*



NOTICE: All persons depicted are presumed to be innocent unless proven to be guilty in a court of law. The Fugitive.com and Fugitive Watch.com notations appearing on this site are TRADEMARKS and NOT an expression of fact or opinion

NOTICIA: Todas las personas representadas son presuntas de ser inocente a menos que resultara culpable en un tribunal de justicia. Fugitive.com y Fugitive Watch con anotaciones que aparecen en este sitio son MARCAS REGISTRADAS y NO una expresión de hecho o de opinión



Click Here to Watch More Fugitive Watch
Podcasts

816

omment Advisement We welcome your thoughts, but for the sake of all readers, please refrain from the use of obscenities, personal attacks or racial slurs. All comments are subject to our terms of service and may be removed. Repeat offenders may lose commenting privileges.

Install the ratings plugin

Popularity:
0 views
Comments:
None
Toolbar:

Tagged with: 2655 Alvin Avenue, Craig Chandler, Craig richard Chandler, O.B. Whaley Elementary School, san jose child molest, san jose most wanted, san jose sex offender

Tag Cloud

Business plan template  Child Support
Prior year tax returns

Name (required)
_____

Email Address (required)
_____

Website
_____

XHTML: You can use these tags: <a href="" title=""> <abbr title=""> <acronym title=""> <b> <blockquote cite=""> <cite> <code> <del datetime=""> <em> <i> <q cite=""> <strike> <strong>

Submit Comment

Criminal Record

Public Records Search

Free Public Records

Public Criminal Records

Criminal Background Checks

Online Public Records

ads by media.net

# RELATED NEWS

- \* Danny Klontz primary suspect in San Jose murder of Manuel Andrade
- \* Darren Yules arrested for alleged stabbing in San Jose on Sun Glory Lane
- \* Gunderson High School in San Jose locked down while alleged bank robbers taken into custody
- \* Raquel Menchaca reported victim of alleged Kidnapping by Leonel Vargas in San Jose from Oak Grove High School
- \* Craig Chandler, a San Jose Elementary Teacher, Will Be Arraigned on Several Counts of Sexual Assault

817

Craig Richard Chandler O.B. Whaley Elementary School teacher arrested for alleged Sexual Assault of a Child                    3/8/12 11:50 AM

- * San Jose police officers were injured when a carjacking suspect rammed four patrol cars near Alum Rock and McCreary
- * Steve Ruiz San Jose Fugitive wanted in shooting murder of Steve Tausan spotted in San Jose December 2011
- * Paul Ray Castillo murder suspect from San Jose arrested in West Sacramento
- * San Jose gang shooting Jeanne Avenue 3 injured
- * Fugitive Watch Podcast Locate Wanted Fugitives with Marc Hinch, Scott Castruita and Steve Ferdin
- * Silvestre Felix Burgara arrested and released for 2005 San Jose murder of Octavio Medina
- * San Jose Kidnapping and Robbery on Story Road Identification Needed
- * San Jose stabbing three injured near San Jose State University
- * San Jose stabbing on Crucero Drive May 25, 2011 non life-threatening
- * Mario Jesus Hernandez wanted for alleged San Jose murder near South Capitol Avenue
- * San Jose fatal shooting on Mount Prieta Drive two more murders 2011
- * Demetrius Eugene Campbell identified as San Jose murder on Flintcrest Drive
- * San Jose homicide Fatal shooting in a home on Capitol Avenue
- * Melanie Ashley Dunn identified as fatal stabbing victim in San Jose David Shackelford arrested in connection
- * San Jose Fatal Shooting at Story Road and East Capitol Expressway
- * Fugitive Watch Podcast includes crime videos and wanted fugitives
- * San Jose alleged gang killing on Poco Way San Jose's sixth homicide this year
- * Jose Everardo Luna and Steven Anthony Davis arrested for alleged Bank of America at 565 W. Capitol Expressway in San Jose
- * Chase Bank robbery at 5530 Monterey Road, San Jose
- * John Bruce Lynch a Milpitas resident, arrested for alleged San Jose Bank Of America robbery on N. First Street
- * ARRESTED-John Zeno Moore Wanted For Child Sexual Abuse at the 2700 Block of Kesey Lane in San Jose
- * Nawab Mirza Baig Wanted for Alleged Child Molest in San Jose California
- * Brian Bui Adrong wanted for alleged stabbing and kidnapping on Lucena Drive in San Jose
- * Robber wanted for two ATM robberies at Chase Bank, 1705 E. Capitol Expressway in San Jose
- * Robbery San Jose marijuana dispensary on Monterey Road
- * San Jose women shot to death on Morris Court
- * San Francisco sexual assault and kidnapping at the corner of Van Ness Avenue suspects possibly from San Jose
- * San Jose robbery at Check 'n Go store at 461 Blossom Hill Road
- * Phillip Dominguez and Racquel Martinez arrested in connection to San Jose child kidnapping and sexual assault
- * San Jose Police pursuit in the area of 3000 block of Rockport Avenue
- * Russell Edward Garcia A San Jose man was arrested last week for allegedly robbing several people
- * Ermec Antonio Avalos arrested for bank robbery Wells Fargo in the 100 block of S. Market St.
- * Lori Beth Anderson A Female Fugitive Recognized on Fugitive Watch Web Site Surrenders to San Jose Police at the Hawaiian Mobile Home Park
- * Fidel Duran Morales arrested after San Jose indecent exposure investigation near the Edenvale and Sylvandale
- * Jose Torres charged with murder in connection with the April 21 killing of Jose Vega Calderon in San Jose
- * Wanted Fugitive as a Serial Battery Suspect in the area of Saratoga Creek Trail, between Bollinger and Doyle roads
- * Police Need to Identify Man that Attacked and Robbed Victim at John Mize Park in San Jose
- * Thomas Anderson Pleads Guilty to Child Molest in San Jose
- * Murder at Willard Avenue and San Carlos Street in San Jose
- * Wanted fugitives on Fugitive Watch podcast 4/20/2010
- * San Jose State University sexual battery suspect sketch
- * Fugitive Watch Podcast for 3/22/10 is Now Available-Watch Here
- * District Attorney Dolores Carr Will Not File Charges Against San Jose Police Officers
- * Dat Nguyen Identified As Fatal Stabbing Victim At Restaurant On Berryessa Road
- * San Jose Police Investigate Fatal Stabbing on Berryessa Road
- * Teenage Boy Stabbed and Killed on Kollmar Drive in East San Jose
- * 63 Year Old Woman is Attacked in Her Home on Branham Lane in San Jose
- * San Jose Home Invasion Robbery On Morrill Avenue By two Masked men
- * San Jose Man Fatally Shot On Chopin Av.
- * San Jose Police Need Help to Identify Alleged Robber of La Victoria Restaurant
- * San Jose Police Arrest Jennifer Bautista for the Alleged Murder of Norma Leticia Martinez
- * San Jose Police Need to Identify Suspects in Home Invasion Robbery on Foothill Drive
- * Teen Stabbed in Area of McKee and Rancho Verde Drive in San Jose
- * San Jose Fatal Shooting Second And Santa Clara
- * Richard Werner Schweich In Custody For Child Sexual Exploitation Crimes Looking For More Victims
- * Eduardo Cristobal And 3 Juveniles To Be Charged As Adults For San Jose Shooting On Halloween
- * Eduardo Cristobal Arrested For San Jose Shooting Of 12-Year-Old Halloween Night Oct 31 On Story Road
- * Kim Luu Identified As Victim From San Jose Fatal Shooting Oct 31 At Southwest Expressway at Leigh Av
- * San Jose Halloween Shooting Of 12-Year-Old On Story Road 3 Suspects Arrested
- * Just Released-Show #180 PART #2-Watch Here
- * Joe Trujeque Identified As Man Killed In The 100 Block Of South King Road On Sept 26th
- * San Jose Shooting Near William And 11th Street Aug 28th 0315 Hrs

818

- * San Jose Police Release Sketch Of Suspect From May 2 Stabbing Outside Quick Stop Market On Stewart Av.
- * San Jose Suspects John Aguilar, 22,Chrisergs Endonela, 18, Jonryan Somera, 18 And Roger Seguritan, 17, Charged In Connection To Shooting At Happy Hollow
- * San Jose Police Release Name Of Victim, Nam Hoang Mai Who Was Fatally Shot Near Capitol Av.
- * Man Wounded has Died from Shooting on North Capitol Avenue San Jose
- * San Jose Police Investigating Fatal Stabbing Of Kenneth Loyola, 52, In Homeless Encampment
- * Standoff Continues In San Jose Near The Chateau La Salle Mobile Home Park With Gunman
- * Man Hospitalized After Shooting in Jack in the Box Parking Lot
- * San Jose Man Armendo Lorenzo Rios Was Arrested For Murder Of Paul Leyva
- * The San Jose Police Department Asking for Public's Help in Identifying a MeriWest Credit Union Robbery Suspect
- * San Jose Police Report Arrest of Eduardo Larios, Jose Portillo-Garcia and Edwin Portillo-Garcia for Alleged Sexual Assault
- * San Jose Man Edward Dees, 60, Will Stand Trial For The 1975 Rape And Murder Of Sandra Howard
- * San Jose Police Identify Andres Garza As The 20-Year-Old Killed, 5200 Block Of Dent Avenue
- * San Jose Shooting 1200 Block Of McLaughlin Avenue Possible Gang Related
- Jury Finds Cop Killer Deshawn Campbell Guilty of Murdering San Jose Police Officer Jeffrey Fontana
- San Jose Jury Deliberating on Deshawn Campbell Trial for Killing Officer Jeffrey Fontana
- *25-year old San Jose Man Shot at party on McKee Road in Grave Condition
- *San Jose Man Assaulted and Left with Life Threatening Injuries Near Mckee and White Roads
- * San Jose Police Officers Matthew Blackerby and Brian Jeffrey, Fatally Shoot Daniel Pham After He Stabbed A family Member Then Charged Them With A knife
- * San Jose Police Identify Juan Mendoza, 22, As The Victim Shot And Killed In The 3300 block of Rocky Mountain Drive
- * San Jose Police Fatally Shoot 27-Year-Old San Jose Resident Daniel Pham When He Charges Them With A Knife In The 900 Block Of Branbury Way
- * San Jose Police Arrest Alejandro Mendoza, Kristina Marie Contreras, Jose Nunez Ortiz, Javier Pimentel Olalde in Connection with the May 23, 2008 killing of Vahid Hosseini
- * San Jose Police Announce Murder Arrest Of Raymond John Garcia, 24, Ernesto Guadalupe Ruiz Esparza, 19, Ralph Anthony Garcia, 21, For April 17th Stabbing Of Enrique Flores
- * San Jose's 10th Homicide For 2009 Occurred 3300 block of Rocky Mountain Drive
- * Alejandro Mendoza, 27, Charged with Murdering Willow Market Owner 47-Year-Old Vahid Hosseini
- * San Jose Man Alejandro Mendoza Arrested On Suspicion Of Killing Vahid Hosseini On May 23, 2008,Bank of the West Branch at 1010 First St
- Update-San Jose Police Arrest Alejandro Mendoza for Alleged Murder of Vahid Hosseini
- * 49-Year-Old Gilroy Man Peter Klein 'No Face Bandit' Was Indicted By A Federal Grand Jury, 11 counts Armed Bank Robbery
- * San Jose Police Identify Fatal Stabbing Victim Found In A Car After It Crashed, As Michael James Hazard,22
- *San Jose Police Identify Fatal Stabbing Victim From Almaden Expressway and Foxworthy Avenue As 35-Year-Old Enrique Flores
- * San Jose 7-11 Store on Albany Drive Robbed by an Unknown Suspect at Gun Point
- *San Jose Women Damariz Michi Charged With Attempted Murder With A Minivan
- *San Jose Police Officer Jeffrey Fontana's Murderer DeShawn Campbell Says He Didn't Turn Himself In Fearing Retaliation
- *San Jose Fatal Shooting At 700 block of Cotton Tail Avenue Was Victim Eduardo Marquez, 19,
- *San Jose Fatal Shooting At 700 block of Cotton Tail Avenue
- Assault Unknown Suspect Stabbed Victim 1300 block of Crucero Drive
- *San Jose Gun Exchange At 2902 Almaden Expressway, 100 Guns Stolen
- *Former San Jose Fugitive Luong Hue Tieu Sentenced In Chip Warehouse Robbery
- *San Jose, Mark James Porter Accused Of Kidnapping 8-Year-Old Girl Appears In Court
- *San Jose High School P.E. Teacher Accused Of Molesting 17-Year-Old Student
- HIGH SCHOOL CUSTODIAN SUSPECTED OF MOLESTING YOUNG CHILD
- Robbery University Way And Garden Drive, San Jose
- Who Would Tie Up His Grandmother? – Robert Bolduc
- Fraud – Santa Clara County Asking For Help With ID
- Wanted On 4 Armed Robberies in San Jose
- Robbery, Santa Clara Snell Light Rail Station
- *Jan 22 San Jose Man Charged With Murder For Running Down Neighbor
- ***ARRESTED***Manslaughter-San Jose, Christina Robledo
- Parole Violation – Steve Badue
- Assault With A Deadly Weapon San Jose California, Ardalan Mendoza Farsheedi
- Robbery at San Jose Sav-Mart
- ARRESTED-Burglary/Theft San Jose California, Precious Elyse McCree Commercial Burglaries
- ARRESTED-Fraud San Jose California, Ariael Elizabeth Kittles, Victoria's Secret Oakridge Mall
- Fraud San Jose/San Mateo California, Stolen Purse From Atherton
- Child Molest Contra Costa, Elidio Bautista Gonzales 8 Counts of Child Molest
- Robbery San Jose California, Cesar's Flowers N. 13th St.
- Robbery San Jose California, Home Invasion on El Cajon Drive
- Robbery San Jose California, Craigslist Victim, Ipod Nano
- Child Molest San Jose California, Pedro Rivera Delrosarios

819

Craig Richard Chandler O.B. Whaley Elementary School teacher arrested for alleged Sexual Assault of a Child          3/8/12 11:50 AM

- Bank Robbery North 1st st San Jose California
- Indecent Exposure San Jose, McLaughlin Avenue
- Failure To Register As Sex Offender, San Jose California Alba Tovar
- Indecent Exposure San Jose California, Cadillac Drive
- Robbery San Jose California, Check n Go Stevens Creek Blvd.
- Indecent Exposure San Jose California, Arthur Avenue
- Indecent Exposure San Jose California, Willow/Kotenburg Avenue
- Sex Offender San Jose California, Jose Rojas
- Sex Offender San Jose California, Izolino Bento

# BREAKING HEADLINES

- * Man Sentenced to 51 Years for Shooting into Girlfriend's Apartment
- * Daniel Ibarra and Bryan Palacios East Palo Alto teenagers were arrested allegedly breaking into a home
- * Pacifica police shot and killed a pit bull attacking a smaller dog on Adobe Drive
- * Man Found Dead of Self Inflicted Gunshot in Shooting Range
- * Jerry Tran Vo arrested in Sunnyvale allegedly committed a string of home burglaries
- * Branko E. Romano Arrested on Suspicion of Stealing Honda in Santa Rosa
- * Fairfield double homicide near the Parkway Gardens condominium complex on El Toro Court
- * Andrew Vargas Pleaded Guilty to DUI Charges after Striking a Child with his Truck after a San Francisco Giants Game
- * Shahin Ahoorai arrested for shooting at Antioch Women's Club on 509 G St.
- * Sunnyvale murder suicide mother and her autistic son dead on Nectarine Ave.



SOCIALISE WITH US:   Fugitive Watch on YouTube  ·  Twitter  ·  Facebook  ·

COPYRIGHT © 1992- 2011 Fugitive Watch Productions, Inc. All rights reserved.
·signed by StyleWP  ·  Coded by InType Media  ·  Back to the Top

820

Craig Richard Chandler O.B. Whaley Elementary School teacher arrested for alleged Sexual Assault of a Child          3/8/12 11:50 AM

821

Search Results

3/8/12 11:53 AM

Part of the Bay Area News Group

Mobile | Mobile Alerts | RSS

Jobs  Cars  Homes  Classifieds  Shop

Walnut Creek, CA  Now58°F  High58°F  Low37°F  city or zip

craig richard chandler    News _____    Look through our news archives.
web search powered by YAHOO! SEARCH

| 9 matches Entire Site | 9 matches News | 0 matches Classifieds | 0 matches Autos | Web powered by YAHOO! SEARCH |

**REFINEMENTS**

**Category (13)**
News (13)
Local (6)
Breaking (5)
Crime (4)
High school sports (4)

more >>

**Location (12)**
San Jose (9)
Santa Clara (5)
California (4)
Noguchi (2)
Alden (2)

more >>

**People (9)**
Craig Richard Chandler (9)
Sean Pierce (5)
Sharon Noguchi (4)
Tracy Seipel (2)
Tracey Kaplan (2)

more >>

**Publication Date (13)**
Before 2012-01-12 (5)
2012-01-12 - 2012-01-23 (3)
2012-01-23 - 2012-02-12 (2)
2012-02-12 or after (3)

**RELATED SEARCHES**
sharon noguchi
craig richard chandler
lisa fernandez
tracey kaplan
mark gomez

more >>

Didn't find what you want?
Search Our Archives

YOUR SEARCH:  craig richard chandler
9 matches                                                    Search Tips

Three more girls say San Jose teacher molested them (58%)
03/02/2012 - Craig Richard Chandler now faces five felony counts of lewd and lascivious conduct in connection with
five alleged female victims at O.B. Whaley Elementary School.  similar results

By Tracey Kaplan tkaplan@mercurynews.com

San Jose teacher charged with sexually assaulting two 7-year-old students (56%)
01/13/2012 - A San Jose teacher was arraigned Friday on charges he sexually assaulted two 7-year-old girls at O.B.
Whaley Elementary School, accusations that his attorney plans to "vigorously defend," Craig  similar results

By Lisa Fernandez and Mark Gomez Mercury News

Parents shocked at arrest of San Jose teacher on sexual assault charges (56%)
01/12/2012 - One day after a popular teacher was arrested on suspicion of sexually assaulting a child, parents,
educators and students at O.B. Whaley School in San Jose reacted with shock and disbelief. Craig  similar results

By Sharon Noguchi snoguchi@mercurynews.com

San Jose Police arrest elementary school teacher for alleged assault on child (58%)
01/11/2012 - San Jose police on Tuesday arrested a 35-year-old male elementary schoolteacher on suspicion of sexually
assaulting a child late last year. Craig Richard Chandler, of San Jose, has been a teacher at  similar results

By Tracy Seipel tseipel@mercurynews.com

Calif. school teacher held on suspicion of assault (56%)
01/10/2012 - SAN JOSE, Calif.—A 35-year-old teacher at a San Jose elementary school has been arrested on suspicion
of sexually assaulting a child. The San Jose Mercury News reports ( httpbit.lyiAFmtxg ) that  similar results

The Associated Press

Wednesday's High School sports scores (51%)
02/08/2012 - Boys basketball Blossom Valley Mount Hamilton Division Piedmont Hills 58, Westmont 38 Westmont 8"16"
4"10–38 Piedmont Hills 10"16"11"19–56 Westmont (10-13, 5-8) – Lunell 1-0-2, M. Hearn  similar results

Compiled by the Mercury News

Results Pages:  1 | 2 >

*no longer available on website*

craig richard chandler    News _____

822

SUPERIOR COURT
190 W. HEDDING ST.
SAN JOSE, CA 95110

PEOPLE VS.
CRAIG RICHARD CHANDLER
SAN PEDRO ST
SAN JOSE, CA 95110
DEFENDANT M. DAVIS

HON. RISE J. PICHON
REPORTER M. DAVIS
DEF. ATTY. MADDEN, BRIAN (G)
D.A. MENDOZA

CASE NO. 12001535
DATE 05/13/2013  8:30 DEPT. 24
CEN
10/25/1976 CAB3721090  CDY BK:Y
EBK966 M
CLERK C. GUERRA
HEARING MASTER TRIAL CALENDAR
DV: AGENCY SJ-04313-  -UNKNOWN
CHILD: STATUS I-SET -NBA   TW  Y
APO
VIOLATION DATE 09/01/2010

CHARGES: F(001) PC288(A)  F(002) PC288(A)
F(003) PC288(A)  F(004) PC288(A)
F(005) PC288(A)

[form with numerous checkboxes — NEXT APPEARANCE, PLEA CONDITIONS, PROBATION, JAIL/PRISON, etc.]

REMANDED-BAIL $ ... REMAIN AS SET  NO BAIL  COMMITTED  RELEASED  OR  SORP  JAC PHONE ASSM'T  P36

SUPERIOR COURT
190 W HEDDING STREET
SAN JOSE CA 95110

PEOPLE vs.  CRAIG RICHARD CHANDLER
A.K.A.   1361 N SAN PEDRO
SAN JOSE, CA 95110

JUDGE   HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO
DEF. ATTY.   MADDEN, BRIAN  (G)
CHARGES   F (001) PC288(A)
F (003) PC288(A)
F (005) PC288(A)

CASE NO. C1223754
CEN   12001535
DATE   05/13/2013   9:00AM   DEPT.   37
CDY BK:
10/25/1976   EBK966   M
CLERK   STAFFORD
HEARING   DISPOSITION
AGENCY   SJ – 04313 – PIERCE
STATUS   I – SET – NBA   TW

D.A.   A. FILD   APO
F (002) PC288(A)
F (004) PC288(A)   VIOLATION DATE
09/01/2010

NEXT APPEARANCE   TRIAL MOTIONS 05-17-13 9am D37

AIR

**PEOPLE AND DEFENSE TRIAL BRIEFS ARE FILED**

CTS +   ACT +   4019   ☐ ½   ☐ ½   PC2933.1 _____ Total   Total term _____ CDCR / PC 1170h

624

☑ REMANDED-BAIL $ _____   ☐ REMAIN AS SET ☐ NO BAIL   ☐ COMMITTED   ☐ RELEASED   ☐ OR   ☐ SORP   ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED   ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

SUPERIOR COURT
190 W HEDDING STREET
SAN JOSE CA 95110

CEN 12001535
DATE 05/17/2013 9:00AM DEPT. 37
10/25/1976 CDY BK:
EBK966 M

PEOPLE VS. CRAIG RICHARD CHANDLER
A.K.A. 1361 N. SAN PEDRO
SAN JOSE, CA 95110
JUDGE HON. ARTHUR BOCANEGRA
REPORTER J. MIXCO
DEF. ATTY. MADDEN, BRIAN (G)
CHARGES F (001) PC288(A) F (002) PC288(A)
F (003) PC288(A) F (004) PC288(A)
F (005) PC288(A)

CLERK STAFFORD
HEARING JURY TRIAL MOTIONS
AGENCY SJ – 04313 – PIERCE
STATUS I – SET – NBA TW
D.A. A. FILO APO

VIOLATION DATE 09/01/2010

NEXT APPEARANCE JURY TRIAL MOTIONS 05-31-13 9am D37

☐ Defendant Present ☑ Not Present WVD. ☑ Atty Present A/R AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent ☐ Interpreter ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Bail Exonerated ☐ Forfeited Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Ref'd ☐ $ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ____ Relieved ____ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg ☐ BW Ordered $ ☐ Stayed ☐ To Issue
☐ Hrg on Motion ☐ Doubt Decl Pursuant PC 1368 ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Report ☐ Found ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed ☐ Max Term ☐ Committed ☐ Proof of
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed

**PLEA Conditions:** ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
☐ Jail / Prison Term of ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ☐ Subm time of Sent ☐ Harvey Stip
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ **GUILTY** ☐ **NOLO CONTENDERE** to charges & admits enhancements / allegations / priors ☐ **PC17** ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term Fee $ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued **Fines/Fees Pay to:** ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #
☐ Sent Suspended ☐ **PROBATION DENIED** COUNT ___ $ ___ + PA $ ___ ☐ Purs HS11350d

**PROBATION** ☐ Execution ☐ Imposition of sentence suspended for probation period COUNT ___ $ ___ + PA $ ___ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs AIDS / CPP $ + PA $ SORP
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release DPF $ + PA $ EMAT $
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail LAB $ + PA $
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer DRF /RF $ Add'l RF $ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos Enroll within ___ days AEF $ Original Fine $
☐ DL Susp/ Restr'd/ Rvk'd for ___ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs SECA/COPA $ **CTS PC2900.5** $
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05 ICMF $ **TOTAL DUE** $
☐ DVPO issued / mod /term'd Exp ☐ Victim Present ICIN $ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed AR $ $ ___ / Mo beginning
☐ Not own/possess deadly weapons ☐ Destroy/return weapon SHELTER $ FINE STAYED
☐ Stay away from DV $ Committed @ $ ___ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold ATTY $ Consec/Conc to
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm ASF$25/CPF$10 $ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education P/INVEST $ ☐ P/SUP $ ___ /Mo ☐ Waived
**VOP:** ☐ Wav ☐ Arr'd ___ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP CJAF $129.75/$259.50 $ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein ☐ Restit ☐ Gen $ to
☐ Co-terminous with ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other:

**JAIL/PRISON** ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | County Jail HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = ___ ACT + ___ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 ___ Total Total term ___ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP 825
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ☐ Adv/ORD ___ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process ___ AM/PM ☐ **Stay / Surrender / Transport to** ___ @ ___ AM/PM or Sooner

☑ REMANDED-BAIL $ ___ ☑ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION: ORIGINAL - FILE GREEN - DOC BLUE - CJIC / DOR PURPLE - PROBATION BROWN - DEFENDANT

1
JEFF ROSEN, DISTRICT ATTORNEY #163589
ALISON FILO, DEPUTY DISTRICT ATTORNEY # 1838
2
COUNTY GOVERNMENT CENTER, West Wing
70 W. Hedding St., 7th Floor
3
San Jose, CA 95110
4
Telephone: 408/792-2891

5
Attorneys for the People

**F I L E D**

MAY 3 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of the County of Santa Clara
BY _____ DEPUTY

6

7
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

8

9

10
PEOPLE OF THE STATE OF CALIFORNIA,      )      NO.  C1223754
                                        )
11
                         Plaintiff,     )      PEOPLE'S OPPOSITION
                                        )      TO DEFENDANT'S MOTIONS
12
                          vs.           )      *IN LIMINE*
                                        )
13
CRAIG CHANDLER,                         )
                                        )
14
                         Defendant.     )
                                        )
15
_____ )

16
I.

17
<u>DEFENDANT CAN BE IMPEACHED WITH HIS ATTEMPTED BURGLARY
18
CONVICTION</u>

19
    1.      The Defendant's Guilty Plea Constitutes a Felony Conviction

20
    On January 24, 1996, in Santa Cruz County Information No. SC 951388, the

21
Defendant entered guilty pleas on the Complaint as follows:  (1) Felony Attempted

22
Burglary: Residential on or about November 7, 1995; and, (2) Misdemeanor Attempted

23
Burglary: General, on or about November 7, 1995.  Count 1 specifies that the crime was an

24

25

26

1

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Oppositions to Defendant's Motions in Limine

826

⬛ 5441 REV 12/10 ⊛

attempt to "enter an inhabited dwelling house ... and inhabited portion of a building ... with the intent to commit larceny and any felony." The crime is identified as a serious Felony within the meaning of Penal Code Section 1192.7(c)(18) – making it a strike. Count 2 alleges a violation of "Attempted Burglary, in violation of Section 664/459 of the Penal Code, a Misdemeanor" ... for the defendant's "attempt to enter a House, located at 714 Timber Trail, Pacific Grove, with the intent to commit larceny and a Felony."

The charges arose from the defendant trespassing on to a neighbor's property and cutting her screen door with the intent to enter. He told the police officer that "the thought of doing something wrong or illegal was tempting, but he realized that it was wrong and did not go into the residence." When asked why he would want to go into the residence, Chandler replied "he went to the neighbor's house, to possibly get money to buy marijuana."

The plea agreement between the parties contemplated a dismissal of Count 1 if the defendant successfully completed probation on Count 2. The Court specifically asked the parties about the agreement since it was apparent to everyone that the parties had agreed to have the defendant plead guilty and be sentenced to a crime that does not exist – attempted first degree burglary. The defense attorney at the time acknowledged that the parties had created "somewhat of a legal fix ... So long as he completed the probation on the misdemeanor, the felony would be dismissed. If he violated probation on a misdemeanor, then the Court could sentence him on the felony." From that point forward, the defendant had a Strike Prior that could be alleged for all purposes.

2

827

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

$441 REV 12/10

People's  Oppositions to Defendant's Motions in Limine

The general rule is that a conviction occurs upon a plea of guilty, a court verdict, or a jury verdict and does not require sentencing. This basic law applies to strike priors whether they are wobblers or non-alternative felonies, subject only to reduction to a misdemeanor at *initial* sentencing. *People v. Queen* (2006) 141 Cal.App.4th 838. In *Queen*, the defendant's P.C. 422 wobblers constituted strike priors because they ultimately remained as felonies when the defendant was sentenced on them to state prison. The sentencing in the P.C. 422 case took place after the defendant committed new crimes by attacking the prosecutor as the jury verdict on the P.C. 422 offenses was being read. The P.C. 422 convictions constituted strike priors even though the defendant had yet to be sentenced on them when he committed the new crimes. The *Queen* court specifically disagreed with the *dicta* in *People v. Williams* (1996) 49 Cal.App.4th 1632, 1638-1639, which stated that when a strike prior is a wobbler, "conviction" includes the pronouncement of sentence because only then can it be determined whether the offense is a felony or misdemeanor for purposes of the strike law.

A serious felony reduced <u>after</u> initial sentencing does constitute a strike prior. For example, a felony P.C. 245(a)(1) involving a deadly weapon might have been reduced to a misdemeanor when the defendant successfully completed probation. This P.C. 245(a)(1) would continue to constitute a strike prior. Therefore, a crime that is currently listed on a defendant's criminal history as a misdemeanor may qualify as a strike prior because it remained a felony when the defendant was initially sentenced.

This case is precisely the same. The defendant was required to complete a term of probation in order to have the Felony charge dismissed. The defendant pled guilty to a non-

3

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's  Oppositions to Defendant's Motions in Limine

5441 REV 12/10

828

1    alternative felony that neither was, nor could it have been, reduced to a misdemeanor at any

2    time.  It is a legal absurdity to argue now that the defendant did not actually suffer a

3    "conviction" for a crime to which he pled guilty.  His plea was not withdrawn.  There was no

4    finding of factual innocence.  Had he violated the terms of his probation during the

5    probationary period, his guilty plea would have been the basis upon which he was sent to

6    prison without any argument from anyone that he had not actually suffered a conviction.

7    Having the charge dismissed at a later date, has no effect on its existence as a strike prior.

8

9        2.  **The People Can Use the Defendant's Misdemeanor Conviction for
        Attempted Burglary to Impeach Him Should He Choose to Testify**

10

11       The defense dedicates three full pages to the argument that the misdemeanor

12    conviction cannot be used to impeach the defendant.  First, the defense erroneously cites

13    Evidence Code section 788 for the proposition that it "limits impeachment by previous

14    crimes to felony convictions."  Evidence Code section 788 authorizes a party to impeach a

15    witness with a felony conviction.  It says *nothing* about misdemeanor convictions.  To read

16    the Section to mean that felony convictions are the *only* convictions that can be used for

17    impeachment creates a limitation that the statute does not actually impose.  Accordingly,

18    Evidence Code section 788 does not stand for the proposition that the defendant cannot be

19    impeached with his misdemeanor conviction.

20

21       The defense then argues that *People v. Wheeler* (1992) 4 Cal.4th 284, is controlling

22    authority for the proposition that "the fact of conviction of a misdemeanor remains

23    inadmissible for impeachment purposes."

24

25

26

4

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

8441 REV 12/16

The defense makes no mention of Evidence Code section 452.5 and *People v. Duran* (2002) 97 Cal.App.4[th] 1448, which have both abrogated *Wheeler*. Evidence Code section 452.5 was enacted in 1996 in direct response to *Wheeler* and created "a hearsay exception allowing admission of qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred." (*Duran* at 1460.)

Should the defendant choose to testify, the People can properly impeach him with his misdemeanor conviction for "Attempted Burglary: General" for attempting to enter a House with the intent to commit larceny and a Felony.

3. **The Conviction is More Probative than Prejudicial**

The only remaining issues are those of Evidence Code section 352. Should the defendant choose to testify, he would be the only adult with percipient knowledge of what actually happened in his classroom. Although the conduct is somewhat remote, the defendant's credibility will be of the highest relevance. Any conduct which reflects on his truthfulness is critical for the jury to hear. Attempted residential burglary is a classic crime of moral turpitude which has long been recognized as a crime of dishonesty. It is sufficiently dissimilar from the instant charges that it would not be used by the jury as "character evidence" – there is no argument that they would assume someone who would commit a crime of burglary would commit an act of child molestation. Instead, they would use it for precisely what it is intended to be used for – evaluating a witness's character for truthfulness. The probative value gained by giving the jury information relevant to the defendant's credibility is not substantially outweighed by the prejudice the defendant might

5

830

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

1    suffer for the jury learning about a crime of moral turpitude so dissimilar from the one at

2    bar.

3                                              II.

4    <u>MARY MONTGOMERY'S TESTIMONY IS RELEVANT AND ADMISSIBLE</u>

5           The defense suggests that the proposed testimony of Mary Montgomery is

6    inadmissible.  In short, Mary Montgomery is a teacher who had a classroom adjoining the

7    defendant's.  She recalled an occasion during which she heard pounding on the door of the

8    defendant's classroom.  She looked outside to see one of her former students knocking

9    hard on the door.  She asked the student what was happening and the student told her that

10   the door was locked.  Minutes later (probably more like seconds), the door opened and the

11   defendant stood in the doorway.

12          The defense claims that the proposed testimony is hearsay without exception.  The

13   statement however is well within the recognized exception stated in Evidence Code section

14   1241 which states: "Evidence of a statement is not made inadmissible by te hearsay rule if

15   the statement: (1) is offered to explain, qualify or make understand conduct of the

16   declarant; and (2) the statement was made while the declarant was engaged in such

17   conduct.  The People can think of no better example of an Evidence Code section 1241

18   statement – the student was engaged in the conduct of banging on the door and gave a

19   statement to Ms. Montgomery explaining why he was doing so.

20          The defense then argues that the conduct is irrelevant because there is no direct

21   evidence that the defendant was engaged in inappropriate conduct during this one occasion.

6

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

S441 REV 12/10

People's Oppositions to Defendant's Motions in Limine                                        831

1    The argument goes to weight not admissibility.  The defense is free to make those

2    suggestions in closing argument and is free to cross examine the witness on this subject.  It

3    is however, relevant to the issues in the case that the defendant would have the door to his

4    classroom locked during regular school hours while his students were supposed to be

5    engaged in P.E.

6                                              III.

7

8    EXPERT TESTIMONY ON THE TOPIC OF SELECTION AND
     GROMMING IS ADMISSIBLE

9

10        The defense argues that expert testimony on the process of selection and grooming

11   is improper because it is unnecessary.  Primarily, the defense suggests that expert testimony

12   is not needed in order to dispel jurors' jurors beliefs that child molesters are easily

13   identified as dirty old men in wrinkled rain coats who snatch children off the streets.

14   Agreed.

15

16        It is expected that the defense will argue that dozens of children engaged in the

17   sensory deprivation "exercise" during which the People allege that the victims identified in

18   Counts 1 through 5 were molested.  It is further expected that the defense will argue that if

19   the "non-victims" weren't molested in the course of this "lesson", then the alleged victims

20   are simply misunderstanding or exaggerating what the defendant did to them.  The People

21   are entitled to rebut that allegation.

22        Despite what's in the media, it is well beyond the knowledge of a juror to know

23   how or why these particular victims were selected and not others.  It is through the process

24

25

26                                         7

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's  Oppositions to Defendant's Motions in Limine

832

5441 REV 12/10

generally known as "grooming" – the gaining of trust, the selection of particularly

vulnerable victims, and the normalizing of the behavior – that this process occurs.

Unlike the facts of the case cited by the defense, *United States v. Raymona* (D. Me.

2010) 700 F. Supp.2d 142, this is not a case where the defendant used tactics that were

"hardly rocket science" (referring to the commonly used grooming technique of using

attention, affection, kindness, privileges, etc., to gain trust.)  It is the People's contention

that the defendant engaged in a selection and de-sensitization process in selecting his

victims.  Unless the jurors are child molesters themselves, or have interviewed dozens of

child molesters, the jury would have no way of understanding how child molesters seek

and choose their victims.

For these reasons, the evidence is admissible.

Dated: May 29, 2013

Respectfully submitted,

JEFFREY ROSEN
DISTRICT ATTORNEY

By _____
ALISON FILO
Deputy District Attorney

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

5441 REV 12/10

People's Oppositions to Defendant's Motions in Limine

833

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER



FILED

MAY 31 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of the County of Santa Clara
BY _____ DEPUTY

6

7

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,    )
                                          )
12          Plaintiff,                    )   Case No. C1223754
                                          )
13  v.                                    )   DEFENDANT'S REPLY TO THE
                                          )   PEOPLE'S OPPOSITION TO
14  CRAIG RICHARD CHANDLER,               )   DEFENDANT'S MOTION IN
                                          )   LIMINE
15          Defendant.                    )
                                          )
16

17                    INTRODUCTION

18          Mr. Chandler has filed five motions in limine. The People have filed an opposition as to

19  three of them: (1) the motion to exclude, for purposes of impeachment, evidence of Mr.

20  Chandler's prior convictions; (2) the motion to exclude the testimony of Mary Montgomery

21  about the door to Mr. Chandler's classroom being locked on one occasion; and (3) the motion

22  to exclude grooming evidence. The People's pleading contains no opposition to Mr. Chandler's

23  (1) motion to admit testimony from Dr. William O'Donohue, an expert in the interviewing of

24  victims of child sexual abuse; and (2) motion to exclude evidence related to an incident

25  involving Mr. Chandler and Hilda Keller.

26          Mr. Chandler submits that the People's opposition to the three above-described motions

27  lacks merit for the reasons which follow.

28
                                                                    834

No. C1223754              1    Reply to Opposition to Motions in Limine

ARGUMENT

I. THE COURT SHOULD EXCLUDE, FOR PURPOSES OF IMPEACHMENT, EVIDENCE OF MR. CHANDLER'S PRIOR CONVICTIONS

A. The Prior Conviction Was Not a Felony Conviction

Mr. Chandler's prior case involved an unusual situation. It stemmed from a single act of attempted burglary. One would think that this would have resulted in a single charge of attempted burglary and a conviction for a single crime of attempted burglary. But that is not what happened.

Instead, Mr. Chandler pleaded guilty to separate counts of felony attempted burglary and misdemeanor attempted burglary that were based on the single act. The offenses were disposed of in a plea agreement that involving probation being imposed for the misdemeanor (but not for the felony) and the felony being dismissed if he completed probation successfully. Mr. Chandler did, in fact, complete probation successfully and the felony was dismissed. This was an unusual procedure whose only apparent purpose was to avoid using the procedure set forth in Penal Code §1203.4. Under section 1203.4, Mr. Chandler would have been placed on probation for the felony, the felony would have been dismissed following successful completion of probation, but the conviction would be deemed a felony for purposes of impeachment in any later case involving a criminal charge.

The procedure in the prior case raises two legal concerns. One relates to whether the procedure resulted in a conviction for a felony despite the later dismissal of the felony. The other relates to whether the obvious intent of the parties, which was to avoid not only a felony conviction but also to avoid any collateral consequences that section 1203.4 would allow, should control. It is Mr. Chandler's position that there was no felony conviction. But even if the plea bargain in the prior case might be construed as a technical felony conviction, the intention of the parties to avoid all felony consequences controls.

Based on *People v. Queen* (2006) 141 Cal.App.4th 838, the People argue that the guilty plea to a felony in the prior case amounted to a conviction for a felony because a conviction occurs on the date of the guilty plea. (Opposition at p. 3.) The People overlook that *Queen* deals

835

1  with a different issue than the one Mr. Chandler raises, is based on statutory language that does
2  not apply here, and is premised on a different legal purpose than the one applicable here.  The
3  issue in *Queen* was when a prior conviction is deemed a strike for purposes of sentencing for a
4  later crime. (*People v. Queen, supra*, 141 Cal.App.4th at pp. 842-843.) The controlling statutory
5  language was Penal Code §667, subdivision (d)(1), which provides that a "'determination of
6  whether a prior conviction is a prior felony conviction for purposes of [the three strikes law]
7  shall be made upon the date of that prior conviction and is not affected by the sentence imposed
8  unless the sentence automatically, upon the initial sentencing, converts the felony to a
9  misdemeanor.'" (*Id.* at p. 842, quoting the relevant language of section 667, subdivision (d)(1);
10  brackets in original.)  The purpose of the rule in *Queen* is to deter and punish a defendant who
11  becomes a repeat offender before punishment is imposed in a prior case.  (*Id.* at p. 843.)  *Queen*
12  does not discuss when something becomes a conviction for purposes of impeachment with a
13  prior conviction.  Nor does it purport to apply to other settings that do not fall within the
14  language of the three strikes law. Nor do its purposes of deterrence and punishment apply to the
15  impeachment context. Also, it does not address whether the parties may enter a plea agreement
16  to avoid making a conviction a felony for all purposes.

17      The limited application of *Queen* is clear from a very recent California Supreme Court
18  case decided on May 13, 2013 – *People v. Park* (2013) 2013 Cal. LEXIS 4006. There, the Court
19  held that a prior conviction for a serious felony – which subjects a defendant to a five-year
20  enhancement under Penal Code §667, subdivision (a) – does not apply when the trial court later
21  reduces the crime to a misdemeanor and then dismisses it under section 1203.4. (*Id.* at *1-*2.)
22  The Court in *Park* mentioned the decision in *Queen* as being based on specific statutory
23  language that was not applicable to the case before the Supreme Court.  (*Id.* at *35.)  *Queen*
24  similarly is not applicable to Mr. Chandler's case.

25      The term conviction can mean (1) a verdict or plea of guilty, or (2) the judgment imposed
26  following the verdict.  (*People v. Rojas* (1988) 206 Cal.App.3d 795, 801.)  Even within a
27  specific statutory provision, the word conviction can be used to mean both rather than being used
28  consistently. (*People v. Overstreet* (1986) 42 Cal.3d 891, 900, fn. 7.)  Accordingly, "the term

836

No. C1223754                    3       Reply to Opposition to Motions in Limine

1    'conviction' has historically had, and continues to have, at least two accepted meanings: (1) the

2    jury verdict, and (2) the judgment following the verdict." (*Helena Rubenstein International v.*

3    *Younger* (1977) 71 Cal.App.3d 406, 413.)  Here, we are dealing with the use of a prior

4    conviction for impeachment purposes.  The People cite no case holding that a conviction for

5    impeachment purposes is based on what occurred at the time of the plea rather than at the time

6    of disposition.

7          In any event, the primary consideration here is not how the term conviction is used in

8    other contexts, but rather how it was used in the prior case.  If the People had wanted to have the

9    felony conviction available for later use for purposes of impeachment, they simply could have

10   charged the act as a felony.  If they had done so, Mr. Chandler would have been placed on felony

11   probation.  Upon successful completion of probation, he could have applied to withdraw the

12   plead under Penal Code §1203.4 and have the charge dismissed.  This would have allowed the

13   conviction to be used to impeach Mr. Chandler at trial, pursuant to Evidence Code §788,

14   subdivision (c).

15         Instead of doing this, the People pleaded the single act of attempted burglary as both a

16   misdemeanor and a felony and entered an agreement whereby Mr. Chandler would plead guilty

17   to both the misdemeanor and the felony, and the felony would be dismissed if he successfully

18   completed probation.  At the January 26, 1996, hearing at which Mr. Chandler entered his plea,

19   defense counsel explained why the parties had come up with this unusual procedure: "So long

20   as he completed probation on the misdemeanor, the felony would be dismissed. . . .  The idea

21   was to ensure if he completed misdemeanor probation he would not have a felony conviction."

22   (RT of 1/24/96, p. 2 – Exhibit D of Mr. Chandler's motion.)

23         The obvious intent in using this novel procedure here was to avoid completely the usual

24   1203.4 procedure and to use, instead, a procedure that would completely nullify all felony

25   aspects and effects of the conviction, including its use for impeachment.  What the People are

26   asking is that the Court nullify a part of the agreement that they themselves entered in the prior

27   case and remake the bargain so it gives them a benefit in the present case.  A party should be

28   bound by its agreement and should be afforded no legal right to have the agreement rewritten

837

No. C1223754                    4       Reply to Opposition to Motions in Limine

1   more favorably years later.  If the People wanted to use the conviction for impeachment, they

2   simply could have charged a single crime – a felony.

3         The prior conviction was not a felony conviction and cannot be used for impeachment.

4   **B. A Misdemeanor Conviction Cannot Be Used for Impeachment and Should Not**

5   **Be So Used Here**

6         The People argue that Evidence Code §452.5 and *People v. Duran* (2002) 97 Cal.App.4th

7   1448 abrogate the holding in *People v. Wheeler* (1992) 4 Cal.4th 284 and allow for impeachment

8   with a misdemeanor conviction.  (Opposition at pp. 4-5.)  It is not at all clear that the People are

9   correct.

10        In *Wheeler* the Court held that a misdemeanor conviction is inadmissible hearsay when

11   offered as evidence that a witness committed misconduct bearing on credibility.  (*People v.*

12   *Wheeler*, *supra*, 4 Cal.4th at pp. 297-300.)  The Court stated, however, that nothing precluded

13   the Legislature from creating a hearsay exception that would allow the use of a misdemeanor

14   conviction for impeachment in criminal cases.  (*Id.* at p. 300, fn. 14.)

15        Evidence Code §452.5 was enacted a few years after *Wheeler*.  It provides: "(a) The

16   official acts and records specified in subdivisions (c) and (d) of Section 452 include any

17   computer-generated official court records, as specified by the Judicial Council which relate to

18   criminal convictions, when the record is certified by a clerk of the superior court pursuant to

19   Section 69844.5 of the Government Code at the time of computer entry.  (b) An official record

20   of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant

21   to Section 1280 to prove the commission, attempted commission, or solicitation of a criminal

22   offense, prior conviction, service of a prison term, or other act, condition, or event recorded by

23   the record."  The section contains no language stating that a misdemeanor conviction can be used

24   for purposes of impeachment.

25        Nor was this the intent of the section.  Instead, the Legislature explained as follows the

26   intent of the section: "It is the intent of the Legislature to simplify recordkeeping and admission

27   in evidence of records of criminal convictions by establishing a central computer data base of

28   that data, and by authorizing admission in evidence of this computer data.  It is anticipated that

838

No. C1223754                    5      Reply to Opposition to Motions in Limine

1  this will result in considerable savings of time and money by state and county courts and

2  agencies while improving or maintaining the accuracy of the records." (Stats. 1996, ch. 642, §2.)

3      In *Duran*, however, the Court of Appeal held that section 452.5 provides a hearsay

4  exception of the sort *Wheeler* said the Legislature had the power to pass. (*People v. Duran*,

5  *supra*, 97 Cal.App.4th at pp. 1459-1461.) The Court in *Duran* concluded "that Evidence Code

6  section 452.5, subdivision (b) creates a hearsay exception allowing admission of qualifying court

7  records to prove not only the fact of conviction, but also that the offense reflected in the record

8  occurred." (*Id.* at p. 1460.) But *Duran* involved the proof of prior felony conviction for

9  purposes of showing a pattern of criminal gang activity – an element of a street gang

10  enhancement under Penal Code §186.22. (*Id.* at pp. 1457-1461.) The appellate courts have not

11  addressed whether section 452.5 permits the admission of a misdemeanor conviction. And in

12  a case decided 10 years after the Legislature enacted section 452.5, the Supreme Court stated,

13  citing *Wheeler* "Misdemeanor convictions themselves are not admissible for impeachment,

14  although evidence of the underlying *conduct* may be admissible subject to the court's exercise

15  of discretion." (*People v. Chatman* (2006) 38 Cal.4th 344, 373, italics in original.)

16      The law, in short, is far from clear. *Duran*, a Court of Appeal case, suggests that *Wheeler*

17  has been abrogated and that the fact of a misdemeanor conviction is admissible. But *Duran* did

18  not deal with the question of the admissibility of a misdemeanor conviction at all. *Chatman*, a

19  Supreme Court case, suggests that *Wheeler* continues to state the governing standard, although

20  it does not mention section 452.5. Yet *Chatman* deals with admission of a misdemeanor

21  conviction. The lack of clarity in the law puts trial courts in a bind. It is not at all clear if a

22  defendant can be impeached with a misdemeanor conviction.

23      There is, however, another important set of considerations that the Court must apply.

24  Even assuming for the sake of argument that the fact of a prior misdemeanor conviction is

25  admissible, a court still has broad discretion under Evidence Code §352 when determining

26  whether to admit or exclude the evidence. This discretion applies irrespective of whether the

27  offense is a felony or a misdemeanor. In his motion, Mr. Chandler explained at length that the

28  Court should exercise its discretion to exclude the prior burglary regardless of whether it was

839

1  a felony or a misdemeanor.  When doing so, Mr. Chandler identified and analyzed the factors
2  that are relevant to such a determination.  (Motion at pp. 8-10 [factors relevant to a felony] and
3  pp. 11-13 [factors relevant to a misdemeanor].)

4  The People argue that the evidence of the conviction is more probative than prejudicial
5  within the meaning of Evidence Code §352.  (Opposition at pp. 5-6.)  There are flaws in the
6  People's argument.

7  First, the People argue that because Mr. Chandler's credibility is highly relevant, any
8  conduct which reflects on his truthfulness is critical for the jury to hear.  (Opposition at p. 5.)
9  None of the cases discussing the 352 analysis support this statement.  The question is not
10  whether credibility is important, but rather whether the probative value of the evidence on the
11  issue of credibility is outweighed by its potential for prejudice and confusion.

12  The People say the conduct in the prior case is "somewhat remote."  (Opposition at p. 5.)
13  This understates the factor of timeliness.  The prior conviction is 17 years old and has been
14  followed by a legally blameless life.  The remoteness is great and this reduces the probative
15  value of the prior conviction.  As the California Supreme Court noted, when quoting from an
16  opinion by Chief Justice Burger before his elevation to the United States Supreme Court:  "The
17  nearness or remoteness of the prior conviction is also a factor of no small importance. *Even one*
18  *involving fraud or stealing, for example, if it occurred long before and has been followed by a*
19  *legally blameless life, should generally be excluded on the ground of remoteness*."  (*People v.*
20  *Beagle* (1972) 6 Cal.3d 441, 453, quoting *Gordon v. United States* (D.C. Cir. 1967) 383 F.2d
21  936, 940, italics added.)  The People offer no reason why this rule of general exclusion based
22  on remoteness should not apply here.

23  The People say that burglary is a crime of dishonesty.  This is true.  But it connotes
24  dishonesty in a monetary sense rather than dishonesty in the sense of untruthfulness and
25  therefore is not intimately connected to testimonial veracity.  (See, e.g., *People v. Rollo* 20
26  Cal.3d 109, 118 ["No one denies that different felonies have different degrees of probative value
27  on the issue of credibility.  Some, such as perjury, are intimately connected with that issue;
28  others, such as robbery and burglary, are somewhat less relevant. . . ."].)       840

1    The People say that the jury will use the evidence of the burglary only on the issue of

2  truthfulness and would not assume from the evidence that Mr. Chandler would commit child

3  molestation. (Opposition at p. 5.) The People overlook the danger that the jury might use the

4  evidence to view Mr. Chandler as a person with a criminal disposition who has committed a

5  serious crime in the past. As the Supreme Court has noted: "There is also the obvious danger

6  that the jury will decide that based on his prior convictions, the accused ought to be put away

7  without too much concern with present guilt. Further, the admission of prior convictions often

8  confuses the issues at trial and draws the jurors' minds away from the real issue of guilt or

9  innocence." (*People v. Fries* (1979) 24 Cal.3d 222, 228, citations, internal quotation marks and

10  brackets omitted.)

11    The People also do not discuss the factor related to the importance of assuring that the

12  jury hears the defendant's testimony and that the defendant does not decline to testify out of fear

13  of impeachment. (Motion at p. 9 and case there discussed.)

14    In addition, to the extent the offense is a misdemeanor, it is less probative of credibility

15  than is a felony. (Motion at p. 11.)

16    Mr. Chandler respectfully asks the Court to weigh all relevant considerations, not just

17  some of them, and to exercise its discretion to exclude the evidence of the prior conviction.

18  **II.  THE TESTIMONY OF MARY MONTGOMERY SHOULD BE EXCLUDED**

19    Mr. Chandler filed a motion asking the Court to exclude the testimony of Mary

20  Montgomery about the door to Mr. Chandler's class being locked. Mr. Chandler argued that

21  there were three separate bases for excluding the evidence – it is hearsay, irrelevant and

22  inadmissible under Evidence Code §352. The People argue that the evidence is admissible.

23  (Opposition at pp. 6-7.) The People's argument lacks merit.

24    The source for the evidence about the door being locked is not Ms. Montgomery's own

25  perceptions, but is rather a statement that a student made to her. The People argue that the

26  student's statement is admissible under the hearsay exception for contemporaneous statements

27  in Evidence Code §1241. (Opposition at p. 6.) The People are incorrect.

28    Section 1241 provides: "Evidence of a statement is not made inadmissible by the hearsay

841

No. C1223754                              8       Reply to Opposition to Motions in Limine

1    rule if the statement: (a) Is offered to explain, qualify, or make understandable conduct of the

2    declarant; and (b) Was made while the declarant was engaged in such conduct." The 1965 Law

3    Revision Comment to section 1241 explains the origin of section 1241 in terms of law existing

4    at the time of the adoption of the Evidence Code, stating: "Under existing law, where a person's

5    conduct or act is relevant but is equivocal or ambiguous, the statements accompanying it may

6    be admitted to explain and make the conduct or act understandable." In this case, the conduct

7    of the student who knocked on the door of Mr. Chandler's classroom was not equivocal or

8    ambiguous. There is nothing equivocal or ambiguous about the act of knocking on a door.

9    Everyone understands this sort of conduct.

10        In addition, section 1241 does not make a statement admissible if the conduct that is being

11   explained is conduct that is not in issue in the case. (*People v. Hines* (1997) 15 Cal.4th 997,

12   1034, fn. 4.) In *Hines*, the conduct consisted of a phone call between Jiy Williams and Donna

13   Roberts. (*Id.* at p. 1034.) The defendant was convicted, among other things, of killing Roberts.

14   (*Id.* at pp. 1015-1016.) Williams lived next door to Roberts. According to Williams, Roberts

15   sounded nervous and scared during their conversation. Williams heard two or three male voices

16   in the background and heard one of the voices tell Roberts to hurry up and get off the phone.

17   When Williams asked who was present, Roberts told him. (*Id.* at p. 1016.) The trial court ruled

18   that Roberts's statement to Williams that the defendant was present was inadmissible hearsay.

19   (*Id.* at p. 1034.) The Attorney General challenged this ruling, contending that the statement was

20   admissible as a spontaneous declaration under Evidence Code §1240 or as a contemporaneous

21   statement to explain Roberts's conduct under Evidence Code §1241. The Supreme Court held

22   that the Attorney General could not assert these bases for admission because the prosecutor had

23   not argued them at trial. The Supreme Court went on to discuss and reject both grounds for

24   admissibility. It concluded: "The statement was not admissible to explain the conduct of Donna

25   Roberts (Evid. Code, § 1241), as her conduct was not in issue." (*Id.* at p. 1034, fn. 4.)

26        *Hines* is fatal to the People's argument that section 1241 applies here. In *Hines*, the

27   conduct in question was the conduct of the victim of the homicide and the statement in question

28   was her statement shortly before she was murdered. Here, the conduct was that of a random

                                                                                          842

1   student knocking at the door of Mr. Chandler's classroom. If the conduct and statement in *Hines*

2   do not fall within the parameters of section 1241, a fortiori neither do the conduct and the

3   statement of the student in this case. The conduct of the student in Mr. Chandler's case was no

4   more in issue than was the conduct of the victim in *Hines* shortly before her death.

5       The student's statement is hearsay. As explained above, the statement does not fall within

6   the contemporaneous statement hearsay exception. The statement is therefore inadmissible on

7   hearsay grounds.

8       In his in limine motion, Mr. Chandler further contended that Ms. Montgomery's

9   testimony was inadmissible on two additional grounds – lack of relevance and Evidence Code

10  §352. With respect to relevance, the People say Mr. Chandler's argument is that there was no

11  direct evidence that he was engaged in inappropriate conduct on this occasion and that this goes

12  to weight rather than admissibility. (Opposition at 6-7.) It was not Mr. Chandler's argument that

13  there was no direct evidence of inappropriate conduct. Instead, it was his argument that a locked

14  classroom, without more, has no relevance. The People do not explain what the relevance of the

15  locked door is. That is, they do not identify the disputed issue it has a tendency in reason to

16  prove. Instead, the People simply state that having a locked classroom door during school hours

17  when students were supposed to be at P.E. is "relevant to the issues in this case." (Opposition

18  at p. 7.) But the People do not identify the issue to which this is relevant or explain how it is

19  relevant to that issue, whatever that issue might be.

20      The People, as the proponent of the evidence, have the burden of establishing by a

21  preponderance of the evidence foundational facts necessary for admission. (*People v. Herrera*

22  (2000) 83 Cal.App.4th 46, 60-61.) The failure to identify the issue to which the evidence is

23  relevant and to explain how the evidence tends in reason to prove that issue do not satisfy this

24  requirement and provide no principled basis for admitting the evidence.

25      Finally, the People offer no explanation of how the probative value of the evidence,

26  assuming for the sake of argument it has any, outweighs the prejudicial effect and danger of

27  confusion of the issues and confusion of the jury inherent in simply telling the jury the door to

28  the classroom was locked on one occasion. There is nothing indicating anyone was in the

843

1    classroom with Mr. Chandler. Being alone in a classroom had no apparent probative value, but

2    it does carry the prejudicial implication that Mr. Chandler was doing something unknown but

3    nefarious that he wanted to hide from view.

4    **III. EVIDENCE OF GROOMING SHOULD BE EXCLUDED**

5          In his in limine motion related to grooming, Mr. Chandler argued that the evidence of

6    grooming should be excluded for five separate reasons, any one of which is sufficient, in itself,

7    as a basis for exclusion.  The five bases for exclusion of the evidence are: (1) grooming is not

8    a proper subject for expert testimony because it is something within a juror's common

9    knowledge and there is therefore no need for an expert to testify about it; (2) grooming is not a

10   proper subject for expert testimony because it is overbroad and confusing in that it in essence

11   tells the jury that anyone who engages in social interaction with a child is acting in the way child

12   molesters act; (3) the witness the prosecution plans to use does not qualify as an expert witness

13   on the subject; (4) an actual expert explains in a declaration attached to Mr. Chandler's motion

14   that there is no way to determine if conduct is sexual grooming or simply innocent conduct and

15   there is therefore no way to prevent false conclusions that innocent conduct is sexual grooming

16   (a false positive) or false conclusions that sexual grooming conduct is innocent (a false

17   negative); and (5) the evidence is prejudicial because there is a substantial danger the jury will

18   not use the evidence for a limited purpose and instead will use it on the improper issue of guilt

19   or innocence.

20         Rather than address each of the grounds for exclusion which Mr. Chandler advanced, the

21   People simply say the defense argues the evidence is unnecessary. (Opposition at 7-8.)  This,

22   however, was only one of the five grounds for exclusion which Mr. Chandler argued.  Mr.

23   Chandler submits that the evidence should be excluded because the People offer no reason to

24   reject four of the reasons for exclusion which Mr. Chandler argued.

25         With respect to the one reason the People discuss, there is no need to have a purported

26   expert testify for the People.  The anticipated testimony of the victims will explain the conduct

27   that the People say constitutes grooming.  Any juror will understand that the conduct arguably

28   was aimed at conditioning the alleged victims and gaining their trust.  It requires no expert to

                                                                                             844

1   testify about something so obvious.  The real reason for the expert is to suggest to the jury that

2   Mr. Chandler acted in a manner consistent with the way a child molester acts.  The evidence

3   allows for a purported expert to testify, in effect, that Mr. Chandler is a child molester.  As Mr.

4   Chandler showed in his motion, this is actually not the case.  But there is a danger that the jury

5   will defer to the purported expert rather than deciding the much tougher question of whether the

6   testimony of the children themselves convinces them of guilt beyond a reasonable doubt.

7                                              **CONCLUSION**

8          For the reasons set forth in his in limine motions and in this reply, Mr. Chandler

9   respectfully asks the Court (1) to exclude, for purposes of impeachment, evidence of his prior

10  convictions; (2) to exclude the testimony of Mary Montgomery of Mr. Chandler's classroom

11  being locked on one occasion; and (3) to exclude evidence of grooming.

12  DATED:

13  5/31/13                           Respectfully submitted,

14

15

16                                  BRIAN MADDEN
                                    Attorney for Defendant
17                                  Craig Richard Chandler

18

19

20

21

22

23

24

25

26

27

28                                                                        845

---

No. C1223754                        12      Reply to Opposition to Motions in Limine

| | |
|---|---|
| SUPERIOR COURT<br>190  W. HEDDING STREET<br>SAN JOSE CA  95110 | CASE NO.        C1223754<br>CEN           12001535 |
| PEOPLE VS.  CRAIG RICHARD CHANDLER | DATE    05/31/2013    9:00 AM  DEPT.    37 |
| L.K.A.    1361 N SAN PEDRO ST<br>SAN JOSE, CA 95110 | 10/25/1976 |
| | CLERK    E. DE SANTIAGO            EBK966 M |
| JUDGE    HON. ARTHUR BOCANEGRA | HEARING    MOTIONS IN LIMINE |
| REPORTER  J. MIXCO  Not Prsnt – Waived | AGENCY    SJ– 04313–    -UNKNOWN |
| DEF. ATTY.  MADDEN, BRIAN  (G)    D.A.  A. FILO | STATUS    I-SET-NBA            TW    Y |
| | APO |
| CHARGES | |
| F(001) PC288(A)          F(002) PC288(A) | VIOLATION DATE |
| F(003) PC288(A)          F(004) PC288(A) | 09/01/2010 |
| F(005) PC288(A) | |

NEXT APPEARANCE ___Wd.___      6-7-13   9:00am   Dept 37

☑ Defendant Present ☑ Not Present        ☐ Atty Present    AR        ☐ AD / PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Inf☐ ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent    ☐ Interpreter _____      ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC    ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv     ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC    ☐ Bail Exonerated ☐ Forfeited    Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury    ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW/ VD ☐ TW Sentence    ☐ Ref'd  Motions in Limine        ☐ $_____ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F    ☐ APO / DADS/ Prop 36    ☐ P36 Re-Assm't    SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ____Relieved_____Appt'd    ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg    ☐ BW Ordered $_____          ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____    ☐ Doubt Decl Pursuant PC 1368        ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal    ☐ Sub on Report ☐ Found _____    ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____    ☐ Max Term _____ ☐ Committed    ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to    Counsels to be present at 9:30am.
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____        ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____        ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term   Fee $_____    ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued   Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
☐ Sent Suspended _____ ☐ PROBATION DENIED    COUNT___  $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period    COUNT___  $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs    AIDS / CPP   $_____ + PA $_____    SORP_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release    DPF      $_____ + PA $_____    EMAT $_____
☐ Perform____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail    LAB      $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer    DRF / RF   $_____    Add'l RF $_____  Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 6 mos    Enroll within _____ days    AEF      $_____    Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs    SECA/COPA  $_____    CTS PC2900.5  $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05    ICMF     $_____    TOTAL DUE    $_____
☐ DVPO issued / mod /term'd Exp _____            ☐ Victim Present    ICIN     $_____    Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed    AR       $_____    $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____    SHELTER  $_____    FINE STAYED
☐ Stay away from _____    DV       $_____    Committed @ $_____/day ☐ May Pay Out
☐ Submit Search/ Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold    ATTY     $_____    Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm    ASF$25/CPF$10$_____    Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education    P/INVEST   $_____ ☐ P/SUP $_____ _____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP    CJAF $129.75/$259.50 $_____    ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to_____    ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein    ☐ Restit ☐ Gen $_____ _____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews    ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ ☐ AM/PM or Sooner

JAIL/PRISON _____ ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence          County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____        846
☐ Bail CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
_____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ ☐ AM/PM or Sooner
☑ REMANDED-BAIL $_____    ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:   ORIGINAL - FILE    GREEN - DOC    BLUE - CJIC / DOR    PURPLE - PROBATION    BROWN - DEFENDANT

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

CASE NO.    C1223754
CEN         12001535

PEOPLE VS. CRAIG RICHARD CHANDLER

DATE  06/04/2013   9:00 AM   DEPT.  37

L.K.A.   1361 N SAN PEDRO ST
         SAN JOSE, CA 95110

10/25/1976

CLERK    E. DE SANTIAGO          EBK966 M
HEARING  MOTIONS IN LIMINE

JUDGE    HON. ARTHUR BOCANEGRA
REPORTER J. MIXCO  *NOT REPORTED*
DEF. ATTY. MADDEN, BRIAN (G)

AGENCY   SJ– 04313–   -UNKNOWN
STATUS   I-SET-NBA

D.A.  A. FILO          APO

CHARGES
F(001) PC288(A)
F(003) PC288(A)              F(002) PC288(A)
F(005) PC288(A)              F(004) PC288(A)

VIOLATION DATE
09/01/2010

NEXT APPEARANCE _____  6-10-13 @ 2PM D37  MTNS IN LIMINE

☐ Defendant Present ☑ Not Present    ☐ Atty Present    ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Atr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent    ☐ Interpreter                  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC    ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv    ☐ Bail Exonerated ☐ Forfeited    Bond #_____
☐ Denies Prior/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury    ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence ☐ Ref'd _____    ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / AD / IDO ☐ Conflict Decl    ☐ APO / DADS/ Prop 36    ☐ P36 Re-Assm't    SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd    ☐ Crim Proc Susp ☐ Rein    ☐ BW Ordered $ _____    ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____    ☐ Doubt Decl Pursuant PC 1368    ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal    ☐ Subm on Report ☐ Found _____    ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out
☐ Stip to Comm ☐ Drs. Appointed _____    ☐ Max Term _____ ☐ Committed _____    ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction    ☐ MDA / COM amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA  Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____    ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____    ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv ☐ Max Pen ☐ Parole/Prob ☐ Appeal ☐ Immig ☐ Reg PC290/HS11590/PC457.1/PC186.30 ☐ Future Serious Felony ☐ PC12021/PC12316(b)(1)/VC14607.8/PC669
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term   Fee $ _____    ☐ Guilty Plea Rendered
☐ Waives Referral ☐ Ref'd to APO Full Rpt    FINES/FEES: PAY TO ☐ Ref to DOR ☐ TRAFFIC ☐ COURT ☐ TODAY  Audit # _____
☐ Sent Suspended _____    ☐ PROBATION DENIED   COUNT ___ $ _____ + PA $ _____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT ___ $ _____ + PA $ _____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs   AIDS / CPP $ _____ + PA $ _____   SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release   DPF $ _____ + PA $ _____   EMAT $ _____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail   LAB $ _____ + PA $ _____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF $ _____ Add'l RF $ _____ ☐ Susp'd PC1202.44/
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos   Enroll within _____ days   AEF $ _____ Original Fine $ _____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs   SECA $ _____ CTS PC2900.5  $ _____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF $ _____ TOTAL DUE  $ _____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present   ICIN $ _____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR $ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____   SHELTER $ _____ ☐ FINE STAYED _____
☐ Stay away from _____   DV $ _____ ☐ Committed @ $ _____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY $ _____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF$25/CPF$10$ _____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P/INVEST $ _____ ☐ P/SUP $ _____ ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $ _____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____
☐ Original Terms & Conditions Except as Amended herein    ☐ Restitution ☐ General $ _____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews    ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg for Add'l Orders, Charges, PC1385 Reasons                    County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|-------|-----|-----------|-------------------|----------------------|--------------------|--------------------|
|       |     | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ** | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|

CTS = _____ ACT + _____ ☐ PC4019 ☐ ½ ☐ ½ ☐ PC2933.1 = _____   TOTAL DAYS   TOTAL TERM _____
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Served ☐ Rpt to Parole w/in _____ ☐ Adv _____ Yrs Parole/Appeal Rights ☐ Consec ☐ Conc to _____   847
☐ Bail CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Comp Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ ☐ AM/PM or Sooner
☑ REMANDED-BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED _____ ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:  ORIGINAL - FILE.  GREEN - DOC.  BLUE - CJIC / DOR  PURPLE - PROBATION.  BROWN - DEFENDANT

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA 95110

CASE NO.     C1223754
CEN          12001535

PEOPLE VS.   CRAIG RICHARD CHANDLER
L.K.A.       1361 N SAN PEDRO ST
             SAN JOSE, CA 95110

DATE   06/10/2013   2:00 PM   DEPT.   37
       10/25/1976

CLERK   E. DE SANTIAGO              EBK966  M
HEARING   MOTIONS IN LIMINE

JUDGE   HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO   *Not reported*
DEF. ATTY.   MADDEN, BRIAN (G)

AGENCY   SJ– 04313–   -UNKNOWN
STATUS   I-SET-NBA

D.A.   A. FILO  *Not present*   APO                TW  Y

CHARGES   F(001) PC288(A)      F(002) PC288(A)              VIOLATION DATE
          F(003) PC288(A)      F(004) PC288(A)              09/01/2010
          F(005) PC288(A)

NEXT APPEARANCE _____ *6-11-13  1:30pm  dept 37*

☐ Defendant Present ☑ Not Present   ☑ Atty Present   *AR  not present*   ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob ☐ Sent   ☐ Interpreter _____   ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ O/V SORP ☐ Rect Dr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Bail Exonerated ☐ Forfeited   Bond #_____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   ☐ Costs Within 30 Days to Court
☐ Ref./ Appt PD / ADO / IDO ☐ Con Ded ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved_____ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   ☐ BW Ordered ☐ _____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____ ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off-Cal ☐ Subm on Report ☐ Found _____ ☐ BW Set Aside ☐ Recalled ☐ Held ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____ ☐ Max Term _____ ☐ Committed _____   Proof of _____ *Counsel's notified by telephone*
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____                *of new court date.*
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____ ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term   Fee $_____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued _ Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____ ☐ PROBATION DENIED   COUNT ___ $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution- ☐ Imposition of sentence suspended for probation period   COUNT ___ $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs   AIDS / CPP $_____ + PA $_____ SORP _____
Report to APO within ____ Days ☐ Terminated ☐ Upon Release   DPF $_____ + PA $_____ EMAT $_____
☐ Perform____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail   LAB $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF $_____ Add'l RF $_____ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos ☐ 1 yr Prob within ____ days   AEF $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ____ Yrs   SECA/COPA $_____ CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF $_____ TOTAL DUE $_____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present   ICIN $_____ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR $_____ $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____   SHELTER $_____ FINE STAYED _____
☐ Stay away from _____   DV $_____ ☐ Committed @ $_____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Tmg/Empl ☐ No alcohol / drugs or where sold   ATTY $_____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF$25/CPF$10$_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P/INVEST $_____ ☐ P/SUP $_____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF.$129.75/$259.50 $_____ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   ☐ SECA, ICMF, ICIN, CJAF, P/INVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence                County Jail
Count   F/M   Violation   Prison Term / Yrs   Enhancement / Priors   Yrs / Styd / Strkn   HRS / DAYS / MOS

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Enhancement   Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Total

CTS = _____ ☐ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ☐ _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ ☐ Conc to _____
☐ Bal CJ Susp ☐ All but ____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process_____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED
DISTRIBUTION:   ORIGINAL - FILE,   GREEN - DOC   BLUE - CJIC / DOR   PURPLE - PROBATION   BROWN - DEFENDANT

1   JEFF ROSEN, DISTRICT ATTORNEY #163589
    ALISON FILO, DEPUTY DISTRICT ATTORNEY # 18389
2   COUNTY GOVERNMENT CENTER, West Wing
    70 W. Hedding St., 7th Floor
3   San Jose, CA 95110
    Telephone:  408/792-2891
4

5   Attorneys for the People

6

7

8               SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9

10  PEOPLE OF THE STATE OF CALIFORNIA,    )    NO.  C1223754
                                          )
11                  Plaintiff,            )    PEOPLE'S TRIAL BRIEF
                                          )
12           vs.                          )
                                          )
13  CRAIG CHANDLER,                       )
                                          )
14                  Defendant.            )
                                          )
15  _____  )

16                             I.

17                    FACTUAL HISTORY

18
        On Monday morning January 9, 2012, 7 year old second grader, Isabelle, told her
19
    mother, Luisana Villareal, that she didn't want to go to school.  Her mother was surprised
20
    by Isabelle's attitude because her daughter had always enjoyed school.  After her mother
21
    told Isabelle that she had to go to school, Isabelle said that she had something she had to
22
    tell her Mom.  Ms. Villareal was stunned to hear her crying and scared 7 year old daughter
23
    relay how her second grade teacher, Craig Chandler, required her to stay in at recess so that
24

25

26                                            1

FILED

JUN 1 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of the County of Santa Clara
BY _____ DEPUTY

1   he could blindfold her and put an object into her mouth.  Isabelle described the object as

2   long and round and said that Chandler would tell her to turn her tongue around it.  Isabelle

3   said the object was big enough to make her "gag."

4          Ms. Villareal immediately went to the school Principal's office where she explained

5   to the acting Principal, Lea Peery, what her daughter had described.  Ms. Peery's response

6   was "Oh no, not again."  Ms. Villareal then demanded to know what was happening in her

7

8   daughter's classroom.

9          While Ms. Peery notified Chandler, Ms. Villareal contacted the San Jose Police

10  Department.  Detective Sean Pierce of the San Jose Police Department was assigned to do

11  a full scale investigation.

12

13         The investigation was essentially conducted as follows ... all of Chandler's current

14  students were contacted.  A team of investigators assisted with the interviews.  If any of the

15  students disclosed anything which indicated that they had been made to engage in this

16  activity, they were immediately taken to the Child Interview Center where their interviews

17  could be audio and video taped.  Despite the defendant's arrest, even a redacted police

18  report was not filed with the court so that no real details of the allegations could be made

19

20  public.  Every effort was made to contain the possibility of contamination.

21         <u>Victim #1 – Isabelle</u>

22         Isabelle disclosed that Chandler had required her to stay back several times at

23  recess.  She recalled that some of these incidents occurred prior to the Winter Break and on

24  approximately 3 occasions after the break.  She said that Chandler would cover her eyes

25

26

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

2

850

with a scarf, a blindfold or a blanket and that he would then put something in her mouth. She described the object as "round and kind of hard." She said that his hand would be on the back of her head pushing her head forward and backward and that he would tell her to "move her tongue around." Isabelle said that occasionally when he is done with the "bigger object", he gives her a piece of candy and lets her guess what it is, but that he never asked her to guess about the bigger object.

Isabelle did tell Detective Pierce that they had played this "game" in front of the whole class one time.

### Victim #2 - Becky

In October of 2011, third grade student Becky came home and told her mother, Kim To, that Chandler would blindfold her and put items in her mouth. She remembered some of the food items used, but described one item that she could not identify. Becky remembered hearing something metal as the item was being put in her mouth – she actually thought she heard the jangling of keys. She described the object in her mouth as round and said that it consumed the size of her mouth. Becky said that Chandler told her not to bite. Becky also said that on one occasion, something salty came out of the item and that it dripped down onto her jacket, her pants and her shirt. She said the liquid was white or maybe yellow. She said it happened two or three times that something "came out."

Upon learning what was happening in Chandler's classroom, Becky's mother went to the school and met with the Principal, Lyn Vijayendran. Ms. Vijayendran met with Becky who gave her a statement of what had happened in the classroom. Ms. Vijayendran

3

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

851

took notes of that conversation.  Ms. Vijayendran also got information from Chandler.  He

told Vijayendran that he was teaching a lesson on "Helen Keller" and that he would pull

students in to practice the big activity that they would eventually do in front of the entire

class.  The biggest discrepancy between Becky and Chandler's statements was whether the

door was opened or closed. Becky described it as closed and Chandler insisted that it was

open.  Vijayendran told Chandler unequivocally that the activity had to stop and that he

was not to blindfold students in his classroom and put things in their mouths.  According to

Vijayendran, Chandler understood how his behavior could have been misinterpreted and

said he would not do the activity.

Vijayendran went on maternity leave approximately one month later.  Very shortly

thereafter, Chandler resumed his aberrant behavior by assaulting Victim #1 – Isabelle.

In November of 2012, Lyn Vijayendran was tried and convicted by a jury of

violating Penal Code section 11166 - failing to report a suspected act of child abuse to law

enforcement or Child Protective Services.

<u>Victim #3 – Laurie</u>

Laurie described having to stay behind at recess to play the game with Chandler.

Laurie remembered that it was before the Winter Break.  She said that she was required to

take her shoes off and put her feet up on the desk.  She described a marker, a pen and

"something else."  She described the "something else" as a glue stick – saying that it felt a

little bumpy on the bottom, but also "smooth and hard."  She said that she was in the

classroom with Chandler alone and that the door was closed.  She only remembers items

4

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

852

1   being rubbed on her feet.

2       As it turns out, Chandler has a history of fascination with feet.  In 2005, a fellow

3   teacher, Hilda Keller, lodged a sexual harassment complaint against Chandler.  She alleged

4   that Chandler came into her classroom, closed the door, and asked if he could take pictures

5   of her toes for a massage therapy class that he was taking.  He also asked if he could

6   massage her feet.  In combination with Chandler's inappropriate discussions about sexual

7   relations with his wife and whether or not Keller needed a "boob job", Keller filed a formal

8   complaint and asked to be transferred to another school.  Chandler was reprimanded with a

9   letter of discipline from the School District.

10

11  **Victim #4 – Wendy**

12

13      Wendy described a few different incidents with Chandler.  In the first, Wendy and

14  her friend Melissa were asked to stay behind during recess.  They were told to lie down on

15  the floor and bags were put over their heads.  The children were told to take off their shoes

16  and socks.  Wendy specifically stated that Chandler used a part of his body to rub her feet,

17  but did not know which part of his body it was.  She remembered feeling "grossed out"

18  while this was occurring.  Wendy said this happened several times.

19

20      Wendy said after a few weeks, Chandler had them sit up in a chair, blindfolded,

21  while he put something in her mouth.  When asked how big the object was, Wendy put her

22  index finger and thumb together in the shape of a circle and declared that to be the size of

23  the object that Chandler put in her mouth.  Wendy said that she was unable to close her

24  mouth around the object.  She also said that Chandler was an "inch" away from her and

25

26

5

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

853

1   that she knew his knees were directly in front of her.  Wendy said that Chandler would

2   repeatedly push the object into her mouth and that one of his hands was on the back of her

3   head.

4          Wendy was asked whether she heard any noise prior to the body part being rubbed

5   on her feet.  Wendy said she heard a "clicking noise" that she better described as a belt

6   being taken off when "the metal hits."  She heard the same sound when she was sitting in

7   the chair.

8   

9   Victim #5 – Arleth

10         A few days after news of Chandler's arrest broke, a former student of Chandler's,

11  Arleth, was talking to her cousin, Noemi.  Arleth asked her cousin if she could go to jail for

12  telling her about a teacher.  Noemi assured Arleth that she would not get in trouble for

13  telling her anything about a teacher.  At that point, Arleth disclosed to her cousin that

14  Chandler had kept her in during lunch, blindfolded her and put an object in her mouth.

15         The police were contacted and Arleth was interviewed at the Child Interview

16  Center.  Arleth was able to identify the place within the classroom in which she was told to

17  sit down in a chair.  Chandler gave her a blindfold and told her to put it over her eyes.

18  Chandler then put something in her mouth and told her to "lick it."  Arleth described the

19  object as "squishy" and "weird."  The object was in her mouth for 5-10 minutes.  Chandler

20  told her to continue licking it and she heard "sounds."  Arleth could feel Chandler's legs in

21  front of her.  She said the item felt like "skin."  Most notably, Arleth was able to peek

22  underneath the blindfold and she was able to both see and feel hair around the object that

6

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

854

1  was in her mouth.  Arleth also said that she could see Chandler's pants down and saw him

2  pull his pants up after the incident was over.  She said he was wearing white underwear.

3       While the object was still in her mouth she felt something "come out of the thing."

4  She described the "drink" as tasting bad and said that she had no choice but to "drink it"

5  because she couldn't talk while the "drink" was inside her mouth.

6

7       Arleth described the second incident as having occurred the day after the first

8  incident and at least two incidents following the first two.

9  <u>After the Disclosures</u>

10       At 6:45 a.m. on January 10, 2012, the day after the police were notified, Armando

11  Lara, the Acting Assistant Principal, saw Chandler exit his car carrying a white plastic

12  grocery type bag.  Lara immediately called the Acting Principal, Lea Peery, and was

13  informed that Chandler was not to be on campus and that he needed to be escorted off the

14  premises immediately.  Lara met with Dan Deguarra, the Director of Educational Services,

15  and they went to Chandler's classroom.  They found the door to the classroom closed and

16  locked so Mr. Deguarra used his key to gain entrance.

17       Chandler was found standing by his desk.  He was told that he was being placed on

18  Administrative Leave and that he would be escorted off the property.  Chandler asked if he

19  could take some personal things and picked up some paperwork on his desk.  He then

20  picked up a bottle of Lysol and a container of Clorox handy wipes and put them in his bag

21  before being escorted off campus.

22

23

24

25

26

<center>7</center>

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

855

S441 REV 12/10 ®

## II.

## WITNESS LIST

The Prosecution reserves the right to call the following witnesses:

1. Isabella (last name to be omitted from record)
2. Luisana Villareal
3. Becky Duong (last name to be omitted from record)
4. Kim To
5. Laurie (last name to be omitted from record)
6. Jonothan Ibanez
7. Wendy (last name to be omitted from record)
8. Arleth (last name to be omitted from record)
9. Noemi Gonzales
10. Ashlyn Danh
11. Melissa Valtierra
12. Lyn Vijayendran
13. Ann Dinh
14. Maria Leon
15. Sue Callahan
16. Dorothy Catangay
17. Marcus Armendariz
18. Mary Carpio
19. Carl Duya
20. Chris Gallardo Chipres
21. Ly Van Huynh
22. Veronica Lopez
23. Natalie Nguyen
24. Jayden Pham
25. Kevin Sam
26. Wilmer Samson
27. Vivian To
28. Jorge Romero
29. Meriessa Cruz
30. Vy Tu Tran
31. Alfredo Cabrera Cruz
32. Diego Gomez

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

33. Doi Pham
34. Lea Peery
35. Armando Lara
36. Hilda Keller
37. Pedro Armendariz
38. Sara Zuniga
39. Mary Montgomery
40. Lyn Vijayendran
41. SJPD Officer Sean Pierce;
42. Former SJPD Officer Russ Chubon;
43. SJPD Officer Lisa Tindall;
44. SJPD Officer Lauren Vidal;
45. SJPD Officer Mark Natividad;
46. SJPD Officer Emilio Perez;
47. SJPD Officer Chris Harden
48. SJPD Officer Robert Dillon
49. Santa Clara County Criminalist - Kristin Cardosa

## III.

## MOTIONS *IN LIMINE*

1.  ### Statements of the Children Describing the Acts are Independently Admissible Under Penal Code Section 1360

In physical abuse, neglect, or sexual abuse cases, Evidence Code section 1360 allows out-of-court statements of children to be presented in court as exceptions to the hearsay rule. Sufficiently in advance of this trial, the People provided the defense with police reports, recordings, etc., summarizing each child's description of what happened to her.

In pertinent part, the code section states:

(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing an act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

9

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

8441 REV 11/10

People's Trial Brief

857

(1) The statement is not otherwise admissible by statute or court rule.

(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

(3) The child either:

    (A)    Testifies at the proceedings.

    (B)    Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child;

(b) A statement may not admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

In the instant case, there are multiple 1360 statements that the People seek to admit:

1. Victim #1 – Isabelle:
   a. Unrecorded oral statement to her mother, witness Luisiana Villareal,
   b. Video taped statement to Detective Sean Pierce;
   c. Preliminary Hearing transcript;

2. Victim #2 – Becky:
   a. Unrecorded oral statement to her mother, Kim To;
   b. Memorialized statement to Principal Lyn Vijayendran;
   c. Video taped statement to Detective Sean Piece;
   d. Preliminary Hearing transcript;

3. Victim #3 – Laurie:
   a. Video taped statement to Detective Tindall;
   b. Preliminary Hearing Transcript;

4. Victim #4 – Wendy:
   a. Video-taped statement to Detective Vidal
   b. Preliminary Hearing Transcript

5. Victim #5 – Arleth
   a. Unrecorded statement to Noemi Gonzales
   b. Video-taped statement to Detective Emilio Perez;
   c. Preliminary Hearing transcript;

10

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

858

1    Each of the above-described statements are pursuant to Evidence Code

2  section 1360. Each is a statement describing an act of child abuse with content and

3  timing which sufficiently indicates reliability.  Accordingly, the People ask that

4  each statement be admitted.  If the defense demands a foundational hearing, the

5  People ask that any such hearing be conducted outside the presence of the jury and

6  prior to the witnesses' testimony.

7

8    2.  <u>Expert Testimony on the Topic of Grooming is Not Akin to Profile
       Evidence and is Therefore Permissible</u>

9

10    There is a settled line of authority that holds that evidence of the modus operandi of

11  a particular crime or a particular common method of committing a crime is a proper subject

12  matter for expert testimony If the subject matter meets the ordinary test of relevance and is

13  sufficiently beyond ordinary experience. 31 A.L.R. 4th section 2.

14    Improper use of profile evidence must be distinguished from admissible expert

15  testimony regarding established ways in which crimes are committed (*People v. Prince*

16  (2007) 40 Cal.4th 1179, 1223-1226.)  The California Supreme Court has stated that an

17  expert may testify regarding criminal modus operandi (*Id.*)

18    Defense counsel may try to argue that expert testimony regarding grooming cannot

19  be admitted because it is akin to profile evidence.  Detective Dillon, if permitted to testify,

20  will not testify regarding a profile nor will he opine that the defense or his conduct fits any

21  profile.  Just as experts in Child Sexual Abuse Accommodation Syndrome do not testify

11

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA, 95110

People's Trial Brief

859

regarding the specific facts of the case at bar, neither will Detective Dillon.

In *Jones v. United States* (2010) 990 A.2d 970, the court dealt directly with the topic of grooming. The expert in the *Jones* case did not know the facts nor did he express any opinion on the defendant's guilt of the credibility of his accusers. The expert, an FBI agent who had worked thousands of sexual assault cases, testified that grooming "is a process where the abuser identifies and tries to fill a child's needs … [A]fter forming a relationship of trust, the abuser undertakes to manipulate the child and overcome sexual inhibitions. Contrary to popular belief, child molesters do not force themselves on victims." (*Id.* At 976.)

The court admitted the testimony as helpful to a jury to explain not only "how child molesters accomplish their crimes without violence, but also why a child victim would acquiesce and be reluctant to turn against him. (*Id.*) The expert did not testify that Jones fit any profile or even that child molesters have a profile.

In *United States v. Long* (D.C. Cir. 2003) 328 F.3d 655, 665, an expert testified regarding the seduction process through which sex offenders use attention, kindness, gifts and money to lower the victims' inhibitions. The Defense argued that his was profile evidence and therefore inadmissibile. The trial court disagreed and the conviction was upheld on appeal. What the court indicated that the expert could not do was suggest some special knowledge of the Defendant's mental processes. The permissible purpose was to identify the behavior and actions of child molesters and explain their modus operandi. (*Id.* At 668.)

12

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

860

1    Detective Dillon will render no opinion on this defendant or his conduct.  He will

2  not compare the defendant to any actions or defendants in other cases.  He will not cite any

3  statistics.  Lastly, he will not opine regarding the veracity of the victims.  He will simply

4  educate the jury regarding a subject that is not common knowledge amongst jurors.

5                                           IV.

6                          JURY INSTRUCTIONS REQUESTED

7    The People respectfully request that the following jury instructions be given:

8

9    200
     201
10   202
     121
11   207
12   208
     220
13   222
     223
14   225
15   226
     252
16   300
17   301
     302
18   303
     318
19   330
     332
20   333
21   355
     357
22   358
     359
23   370
24   1110 (288(a) – lewd & lascivious conduct no force or fear)
     960 (simple battery)
25   915 (simple assault)

26                              13

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

861



1190
3516
3519
3530
3550
3577
3590

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

14

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

862

## TRIAL SCHEDULE

| 13 MONDAY | 14 TUESDAY | 15 WEDNESDAY | 16 THURSDAY | 17 FRIDAY |
|---|---|---|---|---|
| | | 11 am: MD | 9:30 start? | |
| | | | | |

| 20 MONDAY | 21 TUESDAY | 22 WEDNESDAY | 23 THURSDAY | 24 FRIDAY |
|---|---|---|---|---|
| | | | | |
| | | | | |

15

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

863

| 27 MONDAY | 28 TUESDAY | 29 WEDNESDAY | 30 THURSDAY | 31 FRIDAY |
|---|---|---|---|---|
| | | | | |
| | | | | |

| 3 MONDAY | 4 TUESDAY | 5 WEDNESDAY | 6 THURSDAY | 7 FRIDAY |
|---|---|---|---|---|
| | | | | |
| | | | | |

| 10 MONDAY | 11 TUESDAY | 12 WEDNESDAY | 13 THURSDAY | 7 FRIDAY |
|---|---|---|---|---|
| | | | | |
| | | | | |

16

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA 95110

People's Trial Brief

864

Dated: May 11, 2013

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

JEFFREY ROSEN
DISTRICT ATTORNEY

By _____

ALISON FILO
Deputy District Attorney

17

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Trial Brief

865

5441 REV 12/10

BRIAN MADDEN, SB# 55869
MADDEN & REDDING
1625 The Alameda, Suite 801
San Jose, California 95126
Telephone: (408) 275-8100
Facsimile: (408) 275-8199

F I L E D

JUN 1 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

Attorney for Defendant
CRAIG RICHARD CHANDLER

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,
          Plaintiff,

vs.

CRAIG RICHARD CHANDLER,
          Defendant.

Case No. C1223754

DEFENDANT'S
MOTIONS IN LIMINE

1. MOTION TO EXCLUDE, FOR PURPOSES OF IMPEACHMENT, EVIDENCE OF PRIOR CONVICTIONS

2. MOTION TO ADMIT TESTIMONY FROM DR. WILLIAM O'DONOHUE AN EXPERT IN THE INTERVIEWING OF VICTIMS OF CHILD SEXUAL ABUSE

3. MOTION TO EXCLUDE EVIDENCE RELATED TO AN INCIDENT INVOLVING MR. CHANDLER AND HILDA KELLER

4. MOTION TO EXCLUDE THE TESTIMONY OF MARY MONTGOMERY ABOUT THE DOOR TO MR. CHANDLER'S CLASSROOM BEING LOCKED ON ONE OCCASION

5. MOTION TO EXCLUDE "GROOMING" EVIDENCE

866

Page 1
DEFENDANT'S MOTIONS IN LIMINE

Madden & Redding
Attorneys at Law
1625 The Alameda, Suite 801
San Jose, CA 95126
(408) 275-8100