1  XAVIER BECERRA
   Attorney General of California
2  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
3  JILL M. THAYER
   Deputy Attorney General
4  State Bar No. 166428
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5954
6   Fax:  (415) 703-1234
    E-mail:  Jill.Thayer@doj.ca.gov
7  *Attorneys for Respondent*

8

                IN THE UNITED STATES DISTRICT COURT
9
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12

13  **CRAIG RICHARD CHANDLER,**              17-cv-00325-EMC

14                          Petitioner,      **EXHIBITS**

15        v.

16
    **SCOTT FRAUENHEIM, Warden,**
17
                           Respondent.
18

19

20        Exhibit 1        State Court Clerk's Transcript[1] (Vols. 5-7)

21

22

23  _____

24     [1] The prosecution and defense witness lists are omitted because they were filed under seal
    in state court.  The confidential probation report and supplements to the confidential probation
25  report are omitted, except as indicated below, pursuant to California Penal Code § 1203.05.  The
    sealed orders prohibiting contact between petitioner and the minor victims are omitted because
26  they were sealed in state court and disclose the minor victims' names.  Respondent has filed a
    motion to file under seal transcripts of the video CDs of the interviews of the minor victims and a
27  letter to the trial court from petitioner's mother which was attached to the confidential probation
    report because they were filed under seal in state court but referred to in the state court opinion
28  and/or the memorandum of points and authorities filed in support of the answer.

# EXHIBIT 1
# (Vol. 5)

COURT OF APPEAL, STATE OF CALIFORNIA,
IN AND FOR THE SIXTH APPELLATE DISTRICT

THE PEOPLE,

*PLAINTIFF AND RESPONDENT,*

V.

CRAIG RICHARD CHANDLER

*DEFENDANT AND APPELLANT.*

COURT OF APPEAL NO.:   **H040429**

VOL.   <u>5</u>   of   <u>7</u>

PAGES   <u>867</u>   thru   <u>1,156</u>

# CLERK'S TRANSCRIPT

CLERK'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SANTA CLARA.

SUPERIOR COURT NUMBER:   <u>C1223754</u>

HONORABLE   <u>ARTHUR BOCANEGRA</u>, JUDGE

APPEARANCES:

**ATTORNEY GENERAL**
**455 GOLDEN GATE AVENUE**
**ROOM 11000**
**SAN FRANCISCO, CA 94102**

COUNSEL FOR PLAINTIFF
AND RESPONDENT

SIXTH DISTRICT APPELLATE PROGRAM
100 NORTH WINCHESTER BLVD, SUITE 310
SANTA CLARA, CA 95050

COUNSEL FOR DEFENDANT
AND APPELLANT

NOTICE OF APPEAL FILED   <u>November 22, 2013</u>

NOTICE OF COMPLETION   <u>JAN 2 9 2014</u>

1   Brian Madden, SB# 55869
    MADDEN & REDDING
2   1625 The Alameda, Suite 801
    San Jose, California 95126
3   Telephone: (408) 275-8100
    Facsimile: (408) 275-8199
4
    Attorney for Defendant
5   CRAIG RICHARD CHANDLER



FILED

JUN 1 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,  )
12         Plaintiff,                   )  Case No. C1223754
13  v.                                  )  MOTION TO EXCLUDE, FOR
                                        )  PURPOSES OF IMPEACHMENT,
14  CRAIG RICHARD CHANDLER,             )  EVIDENCE OF PRIOR CONVICTIONS
                                        )
15         Defendant.                   )
                                        )
16

17                      INTRODUCTION

18       Mr. Chandler faces trial on five charges of non-forcible lewd conduct, in violation of

19  Penal Code §288, subdivision (a).  He plans to testify at trial, but whether he in fact will do so

20  will depend on the Court's ruling on the instant motion.  The prosecutor may seek to impeach

21  Mr. Chandler's credibility with evidence related to two prior convictions that Mr. Chandler

22  allegedly suffered.  They are (1) an alleged felony conviction in 1996 for attempted burglary and

23  (2) a misdemeanor conviction in 1996 for attempted burglary.  Both involve precisely the same

24  conduct.

25       As Mr. Chandler will show, he was never actually convicted of felony attempted burglary

26  because that charge was dismissed for all purposes pursuant to a plea agreement.  In light of this

27  fact, it would be improper to impeach him with a felony conviction.  A defendant cannot

28  properly be impeached with a nonexistent felony conviction.

                                                              867

No. C1223754                    1              Motion re: Impeachment

1      Mr. Chandler did, however, suffer a conviction for misdemeanor attempted burglary. As

2  he will show, Supreme Court case law prohibits a defendant from being impeached with a prior

3  misdemeanor conviction. Instead, impeachment can only be based on the conduct upon which

4  the misdemeanor conviction is based. However, the Court retains discretion to permit or exclude

5  the evidence pursuant to Evidence Code §352 based on the weighing of several relevant factors.

6  As Mr. Chandler will show, these factors weigh in favor of excluding the evidence and he

7  therefore asks the Court to exclude the evidence.

8                      ARGUMENT

9  A. Overview

10      The two alleged prior convictions stemmed from a single act that was charged as both a

11  felony and a misdemeanor. This, itself, is unusual because a single act of attempted burglary can

12  result in only a single conviction for attempted burglary. But there is a reason for the unusual

13  way in which the prior case was charged and the charges were resolved.

14      Mr. Chandler admitted both pursuant to an agreement that no judgment would imposed

15  on the felony and the felony charge would be dismissed if he successfully completed three years

16  of probation on the misdemeanor. The purpose of the agreement was to assure that Mr. Chandler

17  would be treated as if he had never suffered a felony conviction. Under the agreement, Mr.

18  Chandler would not be subject to any direct or collateral consequences of a felony conviction.

19  This would include impeachment with a prior felony conviction. This outcome was the obvious

20  intent of the parties and the court in the prior case, and requires the conclusion that Mr. Chandler

21  has no prior felony conviction.

22  B. Exhibits

23      This motion is based on the following exhibits related to the prior case, *People v.*

24  *Chandler*, Monterey County Superior Court No. SC951388:

25  Exhibit A – the Police Report;

26  Exhibit B – Reporter's Transcript of the Preliminary Hearing of January 11, 1996;

27  Exhibit C – Minute Order of Guilty Plea Proceedings of January 24, 1996;

28  Exhibit D – Reporter's Transcript of the Guilty Plea Proceedings of January 24, 1996;

868

1  Exhibit E – Minute Order of Sentencing Proceedings of February 27, 1996;

2  Exhibit F – Reporter's Transcript of the Sentencing Proceedings of February 27, 1996;

3  Exhibit G – Minute Order of Proceedings of February 1, 2002, on Mr. Chandler's Motion to

4  Dismiss;

5  Exhibit H – Mr. Chandler's Motion to Withdraw His Plea on the Felony Count, plus exhibits,

6  filed March 6, 2002;

7  Exhibit I – Minute Order of the Hearing of March 22, 2002, Granting Mr. Chandler's Motion;

8  Exhibit J – Declaration of Brian Madden;

9  Exhibit J.1 – Letter of Brian Madden to the Court Reporter Requesting a Transcript of the

10  Hearing of March 22, 2002;

11  Exhibit J.2 – Letter of Court Reporter, Tina Gorrell Deyerle, to Brian Madden stating all her

12  notes regarding the Hearing of March 22, 2002 were destroyed.

13  **C. Relevant Facts**

14      On November 7, 1995, officers were dispatched in response to a report of a male suspect

15  attempting to enter a residence. (Exhibit 1 at p. 3.) After being told that the suspect had left, an

16  officer investigated and noticed Mr. Chandler, who was then 19 years old, in the back yard

17  looking inside the residence. (*Id.* at pp. 1, 3.) The officer detained Mr. Chandler and found a

18  knife in his pocket. On the screen door of the residence was what appeared to be a new cut near

19  the door handle and lock. (*Id.* at pp. 3, 5.) Witnesses identified Mr. Chandler as the person they

20  saw at the residence. They said they saw him trying to do something to the screen door and

21  heard a scraping sound. (*Id.* at p. 5.) At first, Mr. Chandler said he saw a suspicious white male

22  in the area and was looking out for his neighbor. (*Id.* at pp. 4, 6.) When an officer said he

23  believed Mr. Chandler was not being honest, Mr. Chandler admitted he was lying, said he

24  intended to enter, and said he stopped and left after cutting the screen door because he realized

25  what he was doing was wrong. (*Id.* at pp. 6-7.) Mr. Chandler said he returned because he felt

26  badly about what he had done and thought about repairing the screen door. He said he had never

27  done anything wrong before. The officer learned that Mr. Chandler had a problem with

28  marijuana. Mr. Chandler admitted he had such a problem, saying he used marijuana on a daily

1   basis and had gone to the house possibly to get money so he could buy marijuana. (*Id.* at p. 7.)

2       The case was set for a preliminary hearing, which was to take place on January 11, 1996.

3   (Exhibit B, p. 1.)  At that time, the parties waived the preliminary hearing and entered an

4   agreement.  Under it, Mr. Chandler would plead guilty to both a felony and a misdemeanor on

5   the understanding that he would be sentenced on the misdemeanor, would not be sentenced on

6   the felony as long as he completed probation on the misdemeanor satisfactorily, and the felony

7   would then be dismissed. (*Id.* at pp. 2-4.)

8       On January 24, 1996, the court stated that Mr. Chandler had been charged with one count

9   of felony attempted burglary and one count of misdemeanor attempted burglary. (Exhibit D, at

10   p. 2.)  Defense counsel explained that both charges involved the same residence and that the

11   parties had worked out an agreement under which Mr. Chandler would plead guilty to both

12   charges on the understanding he would be sentenced on the misdemeanor, and the felony would

13   be dismissed if he completed probation on the misdemeanor successfully. (*Ibid.*)  As defense

14   counsel put it: "The idea was to ensure if he completed misdemeanor probation he would not

15   have a felony conviction." (*Ibid.*)  The court then advised Mr. Chandler that both counts "in

16   essence charge the same thing." (*Id.* at p. 3.)  The court explained that based on Mr. Chandler's

17   "records and other matters," the District Attorney believed it would be more appropriate to treat

18   the offense as a second degree burglary and a misdemeanor as long as Mr. Chandler completed

19   probation successfully. (*Ibid.*)  The court asked Mr. Chandler to describe the offense. (*Id.* at p.

20   4.)  Mr. Chandler said he cut the screen, realized he made a mistake and went home.  The court

21   asked Mr. Chandler if he started to enter.  Mr. Chandler said he cut the screen and left and got

22   caught when he returned. (*Ibid.*)  Mr. Chandler waived his right to be sentenced on the felony

23   and pleaded guilty to felony attempted burglary (count 1) and misdemeanor attempted burglary

24   (count 2). (*Id.* at pp. 5-6.)

25       Sentencing took place on February 27, 1996.  The court said its understanding was that

26   it would defer sentencing on count 1 (the felony) and that count would be dismissed if Mr.

27   Chandler successfully completed probation on the misdemeanor. (Exhibit F at p. 2.)  The court

28   put Mr. Chandler on three years' probation for the misdemeanor and deferred sentencing on

870

1   count 1 for the three years.  (*Id.* at pp. 5, 7.)

2         On March 6, 2002, Mr. Chandler filed a motion to withdraw the guilty plea on count 1,

3   pursuant to the plea agreement and Penal Code §1018. (Exhibit H, at p. 1.) In it, he argued that

4   the plea agreement reflected the intention of the parties that if he successfully completed the

5   term of misdemeanor probation, he would not stand convicted of a felony and would not face

6   any of the consequences of being a convicted felon.  (*Id.* at p. 2.)  Attached to the motion was

7   a declaration from Mr. Chandler stating that he understood that under the plea agreement he

8   would not have a felony conviction and that he would not have pleaded guilty if there was no

9   agreement that the felony charge would be dismissed if he successfully completed probation.

10  (*Id.* at pp. 8-9.)

11        A hearing on the motion took place on March 22, 2002.  (Exhibit I.)  Mr. Chandler has

12  tried to obtain a reporter's transcript of the hearing. (Exhibit J.)  The reporter who was present

13  at the hearing did not prepare such a transcript and has destroyed her notes of the hearing.

14  (Exhibit K.)  This means that the only available record of the hearing is the minute order of the

15  hearing.  (Exhibit I.)  That minute order states that the case was "regularly called for hearing

16  defendant's motion to reduce the matter to a misdemeanor and dismiss pursuant to 1203.4 P.C..

17  Argued and granted.  Motion to dismiss pursuant to PC 1203.4 granted." (Exhibit I.)

18  **D. Mr. Chandler Was Not Convicted of a Felony and Therefore Cannot Be Impeached**

19  **with a Prior Felony Conviction**

20        The issue of whether Mr. Chandler can be impeached with a felony conviction for

21  attempted burglary turns on whether that charge was dismissed pursuant to Penal Code §1203.4

22  or was dismissed and nullified completely pursuant to the plea agreement.  If it was dismissed

23  pursuant to Penal Code §1203.4, it would be available for impeachment purposes pursuant to

24  Evidence Code §788, which provides, in relevant part: "For the purpose of attacking the

25  credibility of a witness, it may be shown by the examination of the witness or by the record of

26  the judgment that he has been convicted of a felony unless: . . . . (c) The accusatory pleading

27  against the witness has been dismissed under the provisions of Penal Code Section 1203.4, but

28  this exception does not apply to any criminal trial where the witness is being prosecuted for a

871

No. C1223754                              5                    Motion re: Impeachment

1  subsequent offense." But if the felony was dismissed in a manner that made it completely null
2  and void, then Mr. Chandler has no prior felony conviction of any sort with which he can be
3  impeached.

4       The record on this point is not perfectly clear.  But it is clear enough to show that the
5  dismissal was not pursuant to Penal Code §1203.4 and instead was based on the understanding
6  that the felony conviction would become null and void once Mr. Chandler successfully
7  completed three years' probation for the misdemeanor.

8       We have no reporter's transcript of the hearing of March 22, 2002.  The minute order of
9  the hearing indicates that the felony conviction was dismissed pursuant to Penal Code §1203.4.
10  (Exhibit I.)  It also indicates that whatever took place did so on the basis of Mr. Chandler's
11  motion to reduce the matter to a misdemeanor and dismiss pursuant to section 1203.4.  But we
12  do have Mr. Chandler's written motion. (Exhibit H.)  And we see from it that he did not make
13  a motion to dismiss the felony pursuant to section 1203.4.  We further see from the motion that
14  Mr. Chandler was relying on the terms of the agreement as it stood when he entered his guilty
15  plea. Under that agreement, as expressed in the reporter's transcripts of the plea and sentencing
16  proceedings, Mr. Chandler was not placed on probation for the felony.  Instead, the agreement
17  was that he would be placed on probation for the misdemeanor and the felony conviction would
18  be dismissed unconditionally and fully as long as Mr. Chandler successfully completed probation
19  on the misdemeanor.

20       Indeed, the plea agreement is incompatible with the normal section 1203.4 procedure.
21  In the normal 1203.4 case, the defendant pleads guilty to a felony, *is placed on probation for that*
22  *felony*, and has the felony dismissed after successfully completing the term of probation imposed
23  for the felony.  Here, however, a single crime was charged as both a felony and a misdemeanor.
24  Mr. Chandler pleaded guilty to both.  The court did not place Mr. Chandler on probation for the
25  felony.  Instead, the court put Mr. Chandler on three years' probation for the misdemeanor and
26  deferred sentencing on the felony (count 1) for the three years.  (Exhibit F at pp. 5, 7.)  Mr.
27  Chandler did not successfully complete a term of probation for the felony.  Instead, he
28  successfully completed a term of probation for the misdemeanor.

872

No. C1223754                         6                    Motion re: Impeachment

1    Lending support to Mr. Chandler's position is the unusual pleading and resolution of the

2    charges. Because there was but a single act of attempted burglary, there ordinarily would have

3    been a single charge filed. That charge would have been a count of felony attempted burglary

4    and would have resulted in a guilty plea and felony probation followed by dismissal pursuant to

5    section 1203.4 and the later subjection of Mr. Chandler to the various collateral consequences

6    remain in effect following such dismissal. Those collateral consequences would include such

7    things as (1) "the obligation to disclose the conviction in response to any direct question

8    contained in any questionnaire or application for public office, for licensure by any state or local

9    agency, or for contracting with the California State Lottery Commission" (Penal Code §1203.4,

10   subd. (a)(1)); (2) the pleading and proof of the felony conviction in any subsequent prosecution

11   for another offense (*ibid.*); (3) a prohibition against Mr. Chandler owning or possessing a firearm

12   (§1203.4, subd. (a)(2)); and (4) impeachment with the prior conviction in any subsequent

13   criminal prosecution (Evidence Code §788, subd. (c)). Here, however, the single act of

14   attempted burglary resulted in two separate counts, one a felony, the other a misdemeanor. The

15   only reason for this unusual method of charging what was, in fact, a single crime was to nullify

16   the felony conviction entirely, including all its collateral consequences, if Mr. Chandler

17   successfully completed probation of the misdemeanor, which he had done.

18       One might wonder why the minute order of March 22, 2002, talks in terms of section

19   1203.4 when it is so clear that Mr. Chandler did not invoke it and so clear that it does not apply.

20   The most logical explanation for the plea agreement in this case is that the parties wanted to

21   ensure a dismissal that would *not* fall under the provisions of section 1203.4. That is, they

22   wanted the felony conviction to become completely void for all direct and collateral purposes

23   based on Mr. Chandler's clean prior record, the likelihood he would complete probation

24   successfully, and the lack of likelihood he would reoffend. There is no plain statutory procedure

25   that applies in such a situation. Certainly, section 1203.4 does not cover it. The most likely

26   explanation for the reference to section 1203.4 in the minute order is that the clerk who filled

27   out the minute order mistakenly used terms describing the situation that seemed to be the closest

28   to the one that occurred. It is not at all unusual to describe something novel using terms

873

No. C1223754                    ·7                    Motion re: Impeachment

1   applicable to a largely similar, but subtly different, thing.

2          The key to understanding what occurred is to focus on the intent and understanding of the

3   parties to the plea bargain in the prior case.  They carefully used a procedure that was not

4   consistent with a later section 1203.4 dismissal and instead resulted in a complete dismissal for

5   all purposes, both direct and collateral.  Indeed, there was no need to have Mr. Chandler plead

6   guilty to a misdemeanor attempted burglary unless the parties wished to avoid using section

7   1203.4.  If the parties wanted to use section 1203.4, they could have agreed not to charge the

8   count of misdemeanor attempted burglary, to have Mr. Chandler plead guilty to felony attempted

9   burglary, to have the court impose probation for the felony, and to have Mr. Chandler invoke

10  section 1203.4 when he successfully completed probation and then dismiss the felony.  Even

11  assuming, for the sake of argument, that the terms of the agreement are unclear or ambiguous,

12  which they are not, the agreement must be construed favorably to Mr. Chandler.  (*People v.*

13  *Daugherty* (1981) 123 Cal.App.3d 314, 319.)

14  **E.  Assuming, Arguendo, Mr. Chandler Was Convicted of a Felony, the Court Should**

15  **Exercise Its Discretion to Exclude It**

16          Finally, even if the Court concludes that the prior conviction for attempted burglary is a

17  felony, the Court retains discretion to exclude it for purposes of impeachment and should do so

18  for the reasons which follow.

19          "For the purpose of attacking the credibility of a witness, it may be shown by the

20  examination of the witness or by the record of the judgment that he has been convicted of a

21  felony. . . ." (Evidence Code §788.)  Not all felony convictions qualify, however.  To qualify,

22  the felony must involve what the Supreme Court has called a readiness to do evidence or moral

23  turpitude. (*People v. Castro* (1985) 38 Cal.3d 301, 313-314.)  To determine if a felony qualifies,

24  the court looks at the least adjudicated elements of the crime, not at the facts of the prior case.

25  (*Id.* at pp. 316-317.)  In addition, the admission of evidence of a prior conviction is subject to

26  the court's discretion under Evidence Code §352.  (*Id.* at p. 317.)  The Court of Appeal recently

27  described the application of section 352 in this context as follows: "Admissibility of

28  impeachment evidence under the Evidence Code section 352 balancing test may involve an

874

No. C1223754                          8                    Motion re: Impeachment

1    inquiry into (1) whether the prior conviction reflects on honesty, (2) whether it is remote in time,
2    (3) whether it is similar to the conduct for which the witness-accused is on trial, and (4) what
3    effect admission would have on the defendant's decision to testify.  These factors are not rigid
4    standards, but rather are suggested considerations." (*People v. Robinson* (2011) 199 Cal.App.4th
5    707, 716, citations omitted.)

6         Here, the prior conviction reflects on honesty since it involves attempted burglary
7    committed ostensibly for the purpose of theft.  The prior offense is not similar to the conduct for
8    which Mr. Chandler is on trial.  However, the prior conviction is remote in time, having occurred
9    more than 17 years ago.  Nor has Mr. Chandler engaged in criminal activity of any sort between
10   the time of that conviction and the alleged occurrence of the acts underlying the current
11   prosecution.  As the California Supreme Court noted, when quoting from an opinion by Chief
12   Justice Burger before his elevation to the United States Supreme Court:  "The nearness or
13   remoteness of the prior conviction is also a factor of no small importance.  *Even one involving*
14   *fraud or stealing, for example, if it occurred long before and has been followed by a legally*
15   *blameless life, should generally be excluded on the ground of remoteness.*"  (*People v. Beagle*
16   (1972) 6 Cal.3d 441, 453, quoting *Gordon v. United States* (D.C. Cir. 1967) 383 F.2d 936, 940,
17   italics added.)

18        Furthermore, admission of the evidence very likely will cause Mr. Chandler not to testify
19   in order to assure that the jury is not told about the prior conviction.  This would result in the jury
20   not hearing a percipient witness to the conduct underlying this case and not hearing Mr.
21   Chandler's explanation for the nature of his conduct and his intent.  As the California Supreme
22   Court noted in the *Beagle* case, again quoting the above-referenced decision by Chief Justice
23   Burger: "One important consideration is what the effect will be if the defendant does not testify
24   out of fear of being prejudiced because of impeachment by prior convictions. Even though a
25   judge might find that the prior convictions are relevant to credibility and the risk of prejudice
26   to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more
27   important that the jury have the benefit of the defendant's version of the case than to have the
28   defendant remain silent out of fear of impeachment." (*Ibid.*)

875

1    In addition, although the evidence of the prior conviction is limited to the issue of
2  credibility, there is a danger the jury might use it to view Mr. Chandler as a person with a
3  criminal disposition who has committed a serious crime in the past. As the Supreme Court has
4  noted: "There is also the obvious danger that the jury will decide that based on his prior
5  convictions, the accused ought to be put away without too much concern with present guilt.
6  Further, the admission of prior convictions often confuses the issues at trial and draws the jurors'
7  minds away from the real issue of guilt or innocence." (*People v. Fries* (1979) 24 Cal.3d 222,
8  228, citations, internal quotation marks and brackets omitted.)

9    Assuming the conviction is a felony, which in fact it is not, the Court should exercise its
10  discretion to exclude it based on the considerations and authorities discussed above.

11  **F. Mr. Chandler Should Not Be Impeached with the Conduct Underlying the Misdemeanor**
12  **Conviction**

13    As noted above, Mr. Chandler pleaded guilty to misdemeanor attempted burglary.
14  Evidence Code §788 limits impeachment by previous crimes to felony convictions and does not
15  authorize impeachment with a prior misdemeanor conviction. (*People v. Lent* (1975) 15 Cal.3d
16  481, 484-485; *Grudt v. City of Los Angeles* (1970) 2 Cal.3d 575, 591.) However, in *People v.*
17  *Wheeler* (1992) 4 Cal.4th 284, the California Supreme Court permitted limited impeachment in
18  the context of misdemeanor convictions.

19    The Court made clear in *Wheeler* that the fact of conviction of a misdemeanor remains
20  inadmissible for impeachment purposes. (*Id.* at p. 288.) However, courts have broad discretion
21  to admit or exclude acts of dishonesty or moral turpitude that are relevant to impeachment.
22  (*Ibid.*) "Misdemeanor conduct relevant to impeachment" is admissible, subject to Evidence
23  Code §352 and other exclusionary rules. (*Id.* at p. 293.)

24    Accordingly, "in proper cases, nonfelony conduct involving moral turpitude should be
25  admissible to impeach a criminal witness." (*Id.* at p. 295.) The Supreme Court stated, however,
26  that "the latitude section 352 allows for exclusion of impeachment evidence in individual cases
27  is broad. The statute empowers courts to prevent criminal trials from degenerating into
28  nitpicking wars of attrition over collateral credibility issues." (*Id.* at p. 296.)

876

No. C1223754                        10                    Motion re: Impeachment

1    The Supreme Court stated in *Wheeler* that when exercising its discretion under section

2    352, a court must take into account the traditional factors pertinent to a decision about

3    impeachment that are listed in the *Beagle* case, above. (*Ibid.*) Mr. Chandler discussed those

4    factors at the end of the previous section of this argument and showed that they weighed in favor

5    of exclusion. In the context of impeachment with evidence of misdemeanor conduct, additional

6    factors favoring exclusion of the evidence come into play. (*Ibid.*) Mr. Chandler listed some of

7    them in the previous paragraph. The Supreme Court explained the additional factors as follows:

8    "But additional considerations may apply when evidence other than felony convictions is offered

9    for impeachment. In general, a misdemeanor – or any other conduct not amounting to a felony

10    – is a less forceful indicator of immoral character or dishonesty than is a felony.  Moreover,

11    impeachment evidence other than felony convictions entails problems of proof, unfair surprise,

12    and moral turpitude evaluation which felony convictions do not present. Hence, courts may and

13    should consider with particular care whether the admission of such evidence might involve

14    undue time, confusion, or prejudice which outweighs its probative value." (*Id.* at pp. 296-297,

15    footnote omitted.)

16    Under *Wheeler*, it would be improper to impeach Mr. Chandler with evidence showing

17    the prior conviction for misdemeanor attempted burglary. *Wheeler* held that such evidence,

18    whether documentary or testimonial, constitutes inadmissible hearsay. (Id. at pp. 297-300.) As

19    noted above, if evidence related to the misdemeanor attempted burglary is going to be admitted,

20    that evidence must relate to the conduct surrounding the commission of the offense.

21    Focusing on that conduct, the Court should exercise its discretion to exclude the evidence.

22    As Mr. Chandler explained at the end of subsection E, above, the prior conduct reflects on

23    honesty since it involves attempted burglary committed ostensibly for the purpose of theft, and

24    that conduct is not similar to the conduct for which Mr. Chandler is on trial.

25    However, the prior conduct is remote in time, having occurred more than 17 years ago,

26    and Mr. Chandler has not engaged in criminal activity of any sort between then and the alleged

27    occurrence of the acts underlying the current prosecution. When such circumstances are present,

28    the evidence "should generally be excluded on the ground of remoteness." (*People v. Beagle*,

877

No. C1223754                                11                        Motion re: Impeachment

1  *supra*, 6 Cal.3d at p. 453, quoting *Gordon v. United States*, *supra*, 383 F.2d at p. 940.)

2     Furthermore, admission of the evidence very likely will cause Mr. Chandler not to testify

3  in order to assure that the jury is not told about the prior conviction. This would result in the jury

4  not hearing a percipient witness to the conduct underlying this case and not hearing Mr.

5  Chandler's explanation for the nature of his conduct and his intent. Even though the prior

6  conduct is relevant to credibility, and even if the risk of prejudice to Mr. Chandler would not

7  warrant exclusion, the Court should "conclude that it is more important that the jury have the

8  benefit of the defendant's version of the case than to have the defendant remain silent out of fear

9  of impeachment." (*Ibid.*)

10     In addition, although the evidence is limited to the issue of credibility, there is a danger

11  the jury might use it to view Mr. Chandler as a person with a criminal disposition who has

12  committed a serious crime in the past, and a danger that the evidence will confuse the issues at

13  trial and draw the jurors' minds away from the real issue of guilt or innocence. (*People v. Fries*,

14  *supra*, 24 Cal.3d at p. 228.)

15     There also are additional considerations that apply to the admission of conduct amounting

16  to a misdemeanor. They are (1) the conduct is a less forceful indicator of immoral character or

17  dishonesty than is a felony and thus has less probative value on the issue of impeachment; (2)

18  there are problems of proof, unfair surprise, and moral turpitude evaluation which felony

19  convictions do not present; and (3) courts should consider with particular care whether the

20  admission of such evidence might involve undue time, confusion, or prejudice which outweighs

21  its probative value. (*People v. Wheeler*, *supra*, 4 Cal.4th at pp. 296-297, footnote omitted.)

22     The problems of proof, undue time and confusion are significant here. There are, for

23  example, mitigating factors that would need to be litigated. They include that Mr. Chandler was

24  a teenager, that he changed his mind about entering the residence right after cutting the screen

25  door, that he did not in fact enter, that he admitted his guilt, that the prior case was disposed of

26  using a plea bargain that was favorable to Mr. Chandler, that he successfully completed

27  probation, that he has suffered no convictions since the guilty plea, and that he had no

28  convictions before the prior incident.

878

No. C1223754                        12                 Motion re: Impeachment

1  "Although *Wheeler, supra,* 4 Cal.4th 284, allows for impeaching a witness in a criminal

2  case with evidence of moral turpitude, it cautions that trial courts should consider with

3  'particular care' whether to allow such evidence.  (*Id.* at p. 296.)" (*People v. Sapp* (2003) 31

4  Cal.4th 240, 289-290.) Evidence Code §352 gives the Court broad discretion, including "broad

5  power to control the presentation of proposed impeachment evidence to prevent criminal trials

6  from degenerating into nitpicking wars of attrition over collateral credibility issues." (*People*

7  *v. Mills* (2010) 48 Cal.4th 158, 195, citation and internal quotation marks omitted.)  In view of

8  the lessened probative value inherent in the use of misdemeanor conduct, the remoteness of the

9  prior conduct, the absence of criminal conduct since then, the possible loss of Mr. Chandler's

10  testimony, the danger of prejudice, the possibility the jury will not limit the evidence to its proper

11  use, and the dangers of confusion and unwarranted expenditure of time, Mr. Chandler submits

12  the Court should exercise its discretion to exclude the evidence.

<center>CONCLUSION</center>

14  For the reasons explained above, (1) Mr. Chandler has no prior felony conviction and

15  therefore his credibility cannot be impeached with evidence of a prior felony conviction; (2)

16  assuming Mr. Chandler has a prior felony conviction, the Court should exercise its discretion to

17  exclude evidence concerning it; and (3) the Court should exercise its discretion to exclude

18  evidence about the conduct that led to Mr. Chandler's misdemeanor conviction.

20  DATED:  5/13/13

Respectfully submitted,

BRIAN MADDEN
Attorney for Defendant
Craig Richard Chandler

879

No. C1223754                             13                    Motion re: Impeachment

# EXHIBIT A

880

From:Pacific Grove Police Dept.      B31 648 3163       06/27/2012 21:47      #737 P.002/010

## PACIFIC GROVE POLICE DEPT.

580 PINE AVE
PACIFIC GROVE, CA 93950
PHONE (831) 648-3143
FAX (831) 648-3163

| PG9502800 |
| --- |
| Case Number |

### BURGLARY - CRIME/INCIDENT REPORT SUPPLEMENTAL PAGE

| 1st Code Section | 2nd Code Section | 3rd Code Section | 4th Code Section |
| --- | --- | --- | --- |
| BURGLARY-ATTEMPT | DCWHITE  11/13/95 | 503D | |
| 459/664 PC | | | |

| Date / Time / Day (To) | Date / Time / Day (To) | Date / Time Reported | Male | AABE | DV | Kidnating |
| --- | --- | --- | --- | --- | --- | --- |
| 11/07/95   11:48   TUE | 11/07/95   11:48   TUE | 11/07/95   11:49   DAY | | NO | NO |

| Street Address | | | Cross Street |
| --- | --- | --- | --- |
| 714     TIMBER TRAIL        AVENUE  , PACIFIC GROVE | | | FOREST LODGE RD |

| Reporting Officer | Reporting Officer | Reporting Officer | Reporting Officer | Shift | Area |
| --- | --- | --- | --- | --- | --- |
| HORVATH | WHITE | GONZALES | | 2 | P-4 |

### VICTIM
| NO. | Name (Last, First, Middle) | | |
| --- | --- | --- | --- |
| 01 | MORAIS, GARY | | ADULT |

### COMPLAINANT
| NO. | Name (Last, First, Middle) | | |
| --- | --- | --- | --- |
| 01 | HOWELL, ESPERANZA | | ADULT |
| 02 | IMENEZ, ESPERANZA | | ADULT |

### SUSPECT
| NO. | Name (Last, First, Middle) | | | | | | | Nickname | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 01 | CHANDLER, CRAIG RICHARD | | | | | | | | |
| | Address | | | | | | | | |
| | 710 TIMBER TRAIL        ROAD  , PACIFIC GROVE, CA 93950 | | | | | | (408) 373-4740 | DOB 10/25/1978 | Race W  Sex M |
| | DL Number | | Citation No | ID Number | Hair | Eyes | HT | WT | |
| | B3721090 | CA | | 18314 | BROWN | BROWN | 602 | 190 | |
| | Hair Length | Hair Style | Facial Hair | Build | Complexion | Appearance | Time Rights Given | Juvenile / Adult | |
| | SHORT | STRAIGH | CLEAN | NERVOUS | MEDIUM | CASUAL | 12:40 | ADULT | |
| | Identifier | Identifier | Identifier | Demeanor | | Weapon | | Approval | |
| | MOLE | | | NERVOUS | | | | APPROVED | |

### PROPERTY / EVIDENCE
| NO. | Involvement | Value | Taken | Evidence | Recover | Recover Date | Officer | Entered | BCS Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 01 | EVIDENCE | $ 5.00 | | | | // | | // | MISC |
| | Quantity | Name | | Make | Model | Primary Color | Trim Color | Year / Age | Size / WT / Cal |
| | | KNIFE | | CASE XX | 431-7 | BROWN | | | |
| | Officer Applied Number | Serial | | Lic. Owner Applied No | CLETS Number | | Owner | | Value Taken |
| | | | | | | | | | $ 0.00 |
| | Bike  Gears  Wheel Size  Seat Make  Fender | Check No | Bank Branch | Date Written | Gun Type | | Barrel Length | | Gun Stock |
| | Misc Information | | | | | | | | |
| | 7"BLADE | | | | | | | | APPROVED |

| NO. | Involvement | Value | Taken | Evidence | Recover | Recover Date | Officer | Entered | BCS Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 02 | EVIDENCE | $ 5.00 | | YES | | // | | // | MISC |
| | Quantity | Name | | Make | Model | Primary Color | Trim Color | Year / Age | Size / WT / Cal |
| | 1 | GLOVES | | | | WHITE | BLACK | | |
| | Officer Applied Number | Serial | | Lic. Owner Applied No | CLETS Number | | Owner | | Value Taken |
| | | | | | | | | | $ 0.00 |
| | Bike  Gears  Wheel Size  Seat Make  Fender | Check No | Bank Branch | Date Written | Gun Type | | Barrel Length | | Gun Stock |
| | | | | // | | | | | |
| | Misc Information | | | | | | | | APPROVED |

| NO. | Involvement | Value | Taken | Evidence | Recover | Recover Date | Officer | Entered | BCS Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 03 | EVIDENCE | $ 0.00 | | YES | | | | | TV RADIO |
| | Quantity | Name | | Make | Model | Primary Color | Trim Color | Year / Age | Size / WT / Cal |
| | 1 | VIDEO TAPE | | | | | | | |
| | Officer Applied Number | Serial | | Lic. Owner Applied No | CLETS Number | | Owner | | Value Taken |
| | | | | | | | | | $ 0.00 |
| | Bike  Gears  Wheel Size  Seat Make  Fender | Check No | Bank Branch | Date Written | Gun Type | | Barrel Length | | Gun Stock |
| | Misc Information | | | | | | | | |
| | #87 VHS VIDEO TAPE | | | | | | | | APPROVED |

6/27/2012  9:47:00PM
Print Date/Time

controlled document, duplication or re-issuance controlled by law.

Page No.  1

681   881

From:Pacific Grove Police Dept.     831 648 3163      06/27/2012 21:48    #737 P.003/010

# PACIFIC GROVE POLICE DEPT.

580 PINE AVE
PACIFIC GROVE, CA 93950
PHONE (831) 648-3143
FAX (831) 648-3163

| PG9502800 |
| --- |
| Case Number |

## AGENCY SPECIFIC / USED

| Structure Class | Structure Type | Target | Target | Target | Victim Activity |
|---|---|---|---|---|---|
| RESIDENCE | CONDO | PERPROPERTY | | | ATWORK |
| POE Method | POE Direction | POE Level | POE Way | | |
| OTHER | SIDE | GROUND | DOOR | | |
| Suspect Actions | Suspect Actions | Suspect Actions | Suspect Actions | Suspect Actions | Suspect Actions |
| OTHER | FAMILIAR | | | | |
| Security Used | Security Used | Security Used | Security Used | Security Used | Approval |
| LOCKED | | | | | APPROVED |

## INVESTIGATION                     DETERMINED                     SOLVABILITY

|   | | |   | | |   | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | = Dusted For Latents | | ☐ | = Finger Prints | | Y | = Was Suspect Arrested |
| ☐ | = Tool Marks Noted | | ☐ | = Other Prints | | Y | = Can Suspect Be Named |
| ☐ | = Vehicle / Shoe Tracks | | Y | = Weapon / Tools | | Y | = Can Suspect Be Located |
| ☐ | = Photo Impressions Taken | | ☐ | = Vehicle | | Y | = Can Suspect Be Ident. |
| ☐ | = Scene Photographed | | ☐ | = Photos | | Y | = Witness To Crime |
| ☐ | = Photo(s) Of Victim Taken | | ☐ | = Hair | | Y | = Significant M.O. Present |
| ☐ | = Diagram Of Scene | | ☐ | = Stains | | ☐ | = Property Traceable |
| ☐ | = Neighbors Contacted | | ☐ | = Blood / Semen | | Y | = Significant Evidence |
| ☐ | = Area Checked | | Y | = Other (See Narrative) | | Y | = All Elements Present |
| Y | = Witnesses Contacted | | ☐ | = Evidence Obtained | | ☐ | = Major Injury or Rape |
| ☐ | = Victim Contacted | | | | | Y | = Can Suspect be Described |
| Y | = Other (See Narrative) | | | | | ☐ | = Can Suspect Vehicle be ID |
| | | | | | | Y | = Is There Significant Reason to Believe Crime Can be Solved |

Copies To

Signature Verifying Original Copy of Case:                                    DCWHITE   Date:

Released By: _____     Received By: _____        Approved By        Date:

6/27/2012  9:47:00PM
Print Date/Time          controlled document, duplication or re-issuance controlled by law.          Page No.   2

882   882

From:Pacific Grove Police Dept.      831 648 3163      06/27/2012 21:48    #737 P.004/010

## PACIFIC GROVE POLICE DEPARTMENT

580 Pine Ave.
Pacific Grove, CA 93950

CA0270700

Phone (831) 648-3143
Fax    (831) 373-4060

| Case Number | Date | Officer |
|---|---|---|
| PG9502800 | 03/07/99 | |

This Document Converted From System 36 on above Date

### PERSONS CONTACTED:

**Suspect:** 76      CHANDLER, Craig Richard  WMA   Dob/10-25-
Ca. 93950                710  Timber  Trail    Pacific  Grove,
                         408-373-4740hm

**Victim:**             MORAIS, Gary  WMA  Dob/08-██-48
██████████             ████████             ,
                        ████████hm / ████████

**Witness:**            HOWELL, Esperanza  HFA  Dob/████████
██████████             ████████             ,
                        ████████hm

                        JIMENEZ, Esperanza  HFA  Dob/████████.
██████████             ████████hm

### NARRATIVE:

On 11-07-95, at approximately 1149hrs, myself, Sgt. D.C.
White and Officer C. Gonzales were dispatched to the area
of 712 Timber Trail on report of a male subject attempting
entry into a residence.

The reporting party told dispatch that the suspect was in
the neighbor's yard and attempting to gain entry into the
residence, possibly using a screwdriver.

From:Pacific Grove Police Dept.      831 648 3163          06/27/2012 21:48    #737 P.005/010

**PACIFIC GROVE POLICE DEPARTMENT**                              CA0270700
580 Pine Ave.                                          Phone (831) 648-3143
Pacific Grove, CA 93950                                Fax   (831) 373-4060

Prior to arrival, communications advised that the suspect had left the premises and provided a description of the subject as a White male adult wearing white T-shirt, grey shorts and black baseball cap.

The witness resides in ▓▓▓▓▓▓▓ and can observe the backyard of ▓▓▓▓▓▓▓▓▓▓, which is a condominium complex.

On arrival, I walked into the area. Timber Trail road accesses the rear of the residences via the garages and walkways.

I approached the walkway which is a common walkway for ▓▓ and ▓▓▓▓▓▓▓▓▓▓ and traverses between the respective garages.

From the top of the stairs, I could see the backyard of ▓▓ ▓▓▓▓▓▓▓▓▓.  I saw a male subject, who matched the description given by the witness, standing at the back door of the residence, looking inside the window. The suspect, later identified as CHANDLER, had his hands cupped around the sides of his eyes, while looking into the residence.

After approximately 30 seconds, CHANDLER turned around, looked at a screen door and then looked up and saw me.

He became nervous and said that he was a neighbor and was concerned that he had seen a suspicious subject in the neighborhood and was just looking out for the welfare of his neighbors.

CHANDLER walked through the yard and out an open gate, that encloses the backyard.

I saw that there was an object sticking out of his left shorts pocket.

I detained CHANDLER until Sgt. White and Off. Gonzales arrived on scene after I radioed for assistance. CHANDLER was handcuffed and a large knife was removed from his shorts pocket. He was placed into Off. Gonzales's patrol unit.

I went next door to ▓▓▓▓▓▓▓▓ and was contacted by

Print Date / Time          File Number          Page Number
6/27/2012 9:46:00 PM       G9502800.DOC         2 of 7

884

From:Pacific Grove Police Dept.      831 648 3163      06/27/2012 21:48      #737 P.006/010

**PACIFIC GROVE POLICE DEPARTMENT**                      CA0270700
580 Pine Ave.                                    Phone (831) 648-3143
Pacific Grove, CA 93950                          Fax   (831) 373-4060

Esperanza HOWELL. She told me that she had witnessed the detention of CHANDLER and that was the same subject that had attempted entry into the neighbors residence.

I asked HOWELL if she could show me where she had seen CHANDLER in the neighbors yard. I followed her into the yard and she said that she watched CHANDLER from the upstairs bedroom window, along with her mother, and saw CHANDLER using what she thought was maybe a screwdriver on the screen door, which accesses a sliding door.

I checked the screen door and found that there was what appeared to be a new cut on the screen door, just below and adjacent to the door handle and lock. The sliding door was standing ajar and open.

I could see no other damage to the doors or premises of this building.

HOWELL said that her mother, who is spanish speaking only, was sitting near the bedroom window, which is on the 2nd story of the condominium. She said that her mother heard a noise and looked out the window and saw CHANDLER opening the gate to the neighbors yard. She saw CHANDLER walk over to the screen door and attempt to make entry into the residence, through the screen door.

HOWELL said that her mother, JIMINEZ, called to her and she joined her mother in looking out the window and saw CHANDLER doing something with the screen door and heard a noise that sounded like metal scraping.

HOWELL said that she immediately dialed 911 to call for assistance and watched the suspect as he walked out of the yard, up the steps and turned left in the driveway.

HOWELL said that she described CHANDLER to communications and awaited our arrival.

HOWELL said that she replaced the phone in her room and returned to see an officer, myself, standing on the top of the stairwell and subsequently take CHANDLER into custody.

HOWELL and her mother positively identified CHANDLER as the person that had been in the yard attempting to gain entry into the residence.

885

Print Date / Time          File Number          Page Number
6/27/2012 9:46:00 PM        G9502800.DOC         3 of 7

865

PACIFIC GROVE POLICE DEPARTMENT                          CA0270700
580 Pine Ave.                                  Phone (831) 648-3143
Pacific Grove, CA 93950                        Fax   (831) 373-4060

CHANDLER had been transported to the police department by
Officer Gonzales, while I obtained statements from the
witnesses.

Sgt. White returned to the scene and photographed the
damage to the screen door.

I contacted Skee STANLEY, who is the maintenance manager of
the Forest Grove Home Owners Association. He provided me
with the name of the resident at ▓▓▓▓▓▓▓▓▓▓▓▓, Gary
MORAIS.

After obtaining this information, I cleared the scene and
went to the station.

I spoke to Officer Gonzales who had just completed the
booking process of CHANDLER.

She said that CHANDLER had talked about a suspicious
individual in the area and also that he had seen the screen
door torn.

I spoke to CHANDLER in the booking room.

I advised him of his constitutional rights per miranda and
he said that he understood his rights and would answer any
questions. He signed the PGPD miranda Waiver card and it is
attached with this report.

Prior to questioning, I activated the video tape unit in
the booking room and taped the interview.  I told CHANDLER
about the video tape and that the interview was being
recorded.

I asked CHANDLER what he was doing in the backyard of ▓▓▓▓
▓▓▓▓▓▓▓▓▓▓ and he said in essence that he had seen a
suspicious white, male adult, wearing a Harley Davidson T-
shirt, with long hair and possible facial hair, near the
garages.

CHANDLER was very nervous while talking to me.

I sat down next to him and told him that I felt that he was
not being honest with me and that there were two witnesses
to the incident.  He then admitted to telling me a lie

Print Date / Time              File Number              Page Number
6/27/2012 9:46:00 PM           G9502800.DOC             4 of 7

886

From:Pacific Grove Police Dept.      831 648 3163        06/27/2012 21:49     #737 P.008/010

**PACIFIC GROVE POLICE DEPARTMENT**                                    CA0270700
580 Pine Ave.                                          Phone (831) 648-3143
Pacific Grove, CA 93950                                Fax    (831) 373-4060

about the suspicious subject because he was afraid and very
nervous about what he had done.

CHANDLER said that he did go to the neighbors yard with the
intent to make entry and after cutting the screen door,
stopped and then left, because he realized that what he was
doing was wrong. He said that the sliding door was open and
felt that it would not be difficult to cut the screen door
and gain access.

CHANDLER said that he left and returned a few minutes later
as he felt bad about what happened and even thought of
closing the sliding door and possibly making repairs to the
screen door.

CHANDLER said that he has never done anything wrong before,
but has known several of his friends that have done
something like this in the past and the thought of doing
something wrong or illegal was tempting. He said that he
realized that this was wrong and did not go into the
residence.

I advised CHANDLER that he was going to be booked to
attempted burglary and that he would have to post bail.

During further investigation, I found that CHANDLER has a
substance abuse problem with marijuana, to which he
admitted. I asked him about this and he said that he uses
marijuana on a daily basis and that is why he went to the
neighbors house, to possibly get money to buy marijuana.

During the time of the arrest, CHANDLER was wearing a pair
of white, with black spotted gloves.

The gloves and the knife were taken as evidence and logged
into the police department evidence room, along with the
video tape of the interview.   I photographed CHANDLER
wearing the gloves and the clothes he was arrested in for
the report.

He was booked and held pending release on bail.  Bond was
posted through Stevenson Bail Bonds.

I attempted to contact MORAIS to obtain a statement from
him, but was unable to do so. I left messages on his

From:Pacific Grove Police Dept.          831 648 3163          06/27/2012 21:49      #737 P.009/010

**PACIFIC GROVE POLICE DEPARTMENT**                          CA0270700
580 Pine Ave.                                       Phone (831) 648-3143
Pacific Grove, CA 93950                             Fax   (831) 373-4060

answering machines at work and at home.

Refer a copy of this report to the district attorneys office for consideration of complaint for violation of 459/664 P.C., Attempted Burglary.

Reporting Officer:  A. Horvath #477  11-07-95

110895 - Copies to DA, CRT, and DEFT.kib

From: Pacific Grove Police Dept.          831 648 3163          06/27/2012 21:49     #737 P.010/010

**PACIFIC GROVE POLICE DEPARTMENT**

580 Pine Ave.                                                          CA0270700
Pacific Grove, CA 93950                          Phone (831) 648-3143
                                                 Fax   (831) 373-4060

SUPPLEMENTAL REPORT:

SUSPECT:

CHANDLER, Craig Richard, WMA, 102576, 710 Timber
Trail,        Pacific Grove, CA., 93955, CDL B3721090, FP
#18314.

CONTACTED:

V-1: GRIFFIN, Eldred Eugene, WMA, DOB ████████, ████████
████████, ████████████████, ████. (████) ████████
(H), ████████ (W).

On Tuesday, 110795, at 2040 hrs., at the request of Officer
Horvath, I went to ████████████████ to identify the current
resident(s), determine whether or not they knew the suspect
and whether or not the screen door was damaged prior to the
suspect attempting entry.
Eldred Eugene GRIFFIN is the current resident.  He said had
never met CHANDLER prior to this date.  CHANDLER did not
have permission to be on the premises or have permission to
attempt entry and the screen door was not damaged prior to
the attempted entry by CHANDLER.  GRIFFIN said he was
contacted by Suspect CHANDLER and his father approx. 1 hour
earlier in the evening.  Suspect CHANDLER had apologized
for his actions and for damaging the screen door.

Request a copy of the supplemental report be forwarded,
along with a copy of the original report, to the District
Attorney's office for review and disposition.

End of supplement.

Written/typed by:  Wishart #1169, 110895 / 2025 hrs.
110895-Citation filed by DDA Olvis.  ma
012296-CHANDLER plead guilty to 664/459.  Sentenced to 36
months Probation, 30 days jail, Comm Service 100 hrs, fien
$300.  ma

Print Date / Time                 File Number              Page Number
6/27/2012 9:46:00 PM              G9502800.DOC             7 of 7

889

889

# EXHIBIT B

890

FILED

COPY

⌐JAN 2 2 1996

SHERRI L. PEDERSEN
CLERK OF THE SUPERIOR COURT
⌐_____DEPUTY

1

2 MONTEREY COUNTY MUNICIPAL COURT

3 IN AND FOR THE COUNTY OF MONTEREY, STATE OF CALIFORNIA

4 MONTEREY DIVISION

5

6 HON. STEPHEN A. SILLMAN, JUDGE   DEPARTMENT 3

7

8

PEOPLE OF THE STATE OF CALIFORNIA )

9     )
    Plaintiff,  )

10     ) $SC\,951388$
VS.    ) NO. MMCR 951388

11     )
CRAIG CHANDLER,  . )

12    )
    Defendant. )

13

14 REPORTER'S TRANSCRIPT OF PROCEEDINGS
  WAIVER OF PRELIMINARY HEARING

15   JANUARY 11, 1996

16

17 APPEARANCES:

18 For the People:  DEAN D. FLIPPO, DISTRICT ATTORNEY
     COUNTY OF MONTEREY

19     BY:  BERKELEY BRANNON
     DEPUTY DISTRICT ATTORNEY

20

21

 For the Defendant: MEL GRIMES

22     ATTORNEY AT LAW

23

24 LISA R. MAKER, CSR 7631, Official Pro-Tem Reporter

25

          891

EXHIBIT A-1

```
 1   MONTEREY, CALIFORNIA                    JANUARY 11, 1996

 2

 3                         PROCEEDINGS

 4            THE COURT:  Call the case of Craig Richard

 5        Chandler.  Mr. Chandler is present with his

 6        attorney, Mr. Grimes.  Mr. Brannon is present,

 7        representing the People.

 8            This is the time set for preliminary

 9        hearing -- preliminary hearing in case number

10        951388.

11            Mr. Grimes?

12            MR. GRIMES:  We have a disposition, your

13        Honor.  There will be a waiver of preliminary

14        examination.  The conditions being in Superior

15        Court he would enter a plea of guilty to both a

16        felony and a misdemeanor, understanding that at

17        the outset he would be sentenced on the

18        misdemeanor.  He would not be sentenced on the

19        felony as long as he completed probation

20        satisfactorily on the misdemeanor.  The felony

21        would be dismissed.

22            MR. BRANNON:  That's correct.

23            THE COURT:  And the charges?

24            MR. BRANNON:  They both would be attempted

25        burglary.  We filed an attempted first degree as
```

EXHIBIT A-2

892

1

1   to the felony.  As to the misdemeanor -- as to

2   the misdemeanor, we just filed an attempted

3   burglary.

4        THE COURT:  Mr. Chandler, you understand

5   you have certain constitutional rights to a

6   preliminary hearing.  You have the right to a

7   public and speedy preliminary hearing.  You have

8   the right to see, hear and question the witnesses

9   against you.  You have the right to a lawyer; Mr.

10  Grimes represents you.  You have the right to

11  remain silent, and the right to bring in

12  witnesses on your own behalf.

13       The understanding is that you'll waive your

14  right to a preliminary hearing, enter a plea in

15  Superior Court to both a felony attempted

16  burglary charge and a misdemeanor attempted

17  burglary charge.  The understanding is if

18  agreeable with the Superior Court judge that

19  you'll be sentenced on the misdemeanor charge if

20  you successfully complete probation on that

21  charge.  The other charge will be dismissed.

22       Is that an accurate rendition of the

23  disposition?

24       MR. GRIMES:  Correct.

25       MR. BRANNON:  Yes, your Honor.

EXHIBIT A-3

893

2

1        THE COURT:  Understanding those rights and

2    the agreement, do you waive your right to a

3    preliminary hearing at this time?

4        THE DEFENDANT:  Yes, your Honor.

5        THE COURT:  Both attorneys join in the

6    waiver?

7        MR. GRIMES:  Yes.

8        MR. BRANNON:  Yes, your Honor.

9        THE COURT:  Court accepts the waiver.

10   Defendant will be bound over to Superior Court to

11   stand trial.

12       Arraignment date will be on January 23rd at

13   8:30.

14       MR. GRIMES:  That's fine.

15       THE COURT:  Copy of the transcript will be

16   provided to the Superior Court judge.

17       MR. GRIMES:  Thank you.

18       THE COURT:  Thank you.  Mr. Chandler, good

19   luck.

20       Court will he be in recess.

21       (Whereupon the proceedings were continued

22   to the Superior Court, State of California,

23   County of Monterey, January 23, 1996 at 8:30

24   a.m.)

25

EXHIBIT A-4                                    894

                        3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF CALIFORNIA)
                   ) ss.
COUNTY OF MONTEREY )


        I, LISA R. MAKER, Official Pro-Tem Reporter of the

        County of Monterey, State of California, do

        hereby certify that the foregoing pages, 1-3,

        comprise a full, true and correct transcription

        of my stenographic notes in the aforementioned

        case of the proceedings held on January 11, 1996.




Dated this 22nd day of January, 1996.




                        _____
                        LISA R. MAKER, CSR 7631

895

EXHIBIT A-5

COPY                    FILED

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA   FEB 2 6 2002

 2                   FOR THE COUNTY OF MONTEREY   SHERRI L. PEDERSEN
                                                 CLERK OF THE SUPERIOR COURT
 3    COURTROOM 13              HON. RICHARD M. SILVER, JUDGE   DEPUTY

 4

 5    THE PEOPLE OF THE STATE OF CALIFORNIA,)

 6                    Plaintiff,            )

 7         VS.                             )      SC 951388

 8    CRAIG RICHARD CHANDLER,              )

 9                    Defendant.           )
      _____

10

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS

12

13

14                   JANUARY 24, 1996

15

16

17    APPEARANCES:

18    For the People:          CHRIS HARTER
                               Deputy District Attorney
19                             Courthouse
                               1200 Aguajito Road
20                             Monterey, CA

21    For the Defendant:       MEL GRIMES
                               Attorney at Law
22

23

24

25

26

27

28                                                        896
```

EXHIBIT B-1    SARA GEORGE, CSR 2134

2

```
 1    MONTEREY, CALIFORNIA; JANUARY 24, 1996
 2                   P R O C E E D I N G S
 3         THE COURT:  Craig Chandler.
 4         MR. GRIMES:  He's present.  He was downstairs
 5    yesterday morning.
 6         THE COURT:  Mr. Chandler, this is a copy of the
 7    transcript of the information.  It accuses you of attempted
 8    first degree burglary and misdemeanor attempted burglary, so
 9    it's one count of a felony attempted burglary of a residence
10    and one count of a misdemeanor attempted burglary.
11         MR. GRIMES:  It's the same place.
12         THE COURT:  I'm not sure I understand the charge.
13         MR. GRIMES:  It may be somewhat of a legal fix.  It
14    was the disposition that we worked out downstairs, and that
15    is that he would plea to both charges with the understanding
16    that he would be sentenced on a misdemeanor.
17              So long as he completed probation on the
18    misdemeanor, the felony would be dismissed.  If he violated
19    probation on a misdemeanor, then the Court could sentence him
20    on the felony.
21              The idea was to ensure if he completed
22    misdemeanor probation he would not have a felony conviction.
23         THE COURT:  So I assume that the attempted burglary
24    then he'd enter a plea, but he would waive his rights to be
25    sentenced on that pending the completion on the --
26         MR. GRIMES:  On Count 1, yes.
27         MS. HARTER:  That was the agreement.
28         THE COURT:  I'll go over it with you, Mr. Chandler;
```

897

EXHIBIT B-2          SARA GEORGE, CSR 2134

3

1    because it's somewhat different than the normal agreement.

2         If you like, you will be admitting both

3    offenses.  They in essence charge the same thing.  One is

4    charged as a misdemeanor second degree burglary, which in

5    reality is probably an attempted first degree, but based upon

6    your record and other matters, the District Attorney

7    apparently believes in the interest of justice it would be

8    more appropriate to treat it as a second degree burglary and

9    a misdemeanor so long as you comply with probation.

10         You'll be admitting the attempted residential

11    burglary.  That's obviously the more serious matter.  That's

12    a felony offense.

13         You face, if you were to violate probation on

14    that offense, you know, if you violate the misdemeanor

15    probation and I sentence you on the attempted first degree

16    burglary, you face a potential three years in prison and up

17    to four years on parole, so it's a much more serious matter

18    that if that were to occur.

19         To avoid that, you obviously have to comply with

20    the conditions of probation on the misdemeanor offense.  That

21    carries with it a potential six months in county jail and a

22    minimum fine of 100 dollars and maximum fine of 1,500

23    dollars, depending upon your ability to pay and any other

24    conditions I feel are appropriate I can set, including any

25    restitution in the matter.

26         Do you have any questions at all about that?

27       THE DEFENDANT:  No, Your Honor.

28       THE COURT:  Who is Gary Morris, do you know?

898

EXHIBIT B-3    SARA GEORGE, CSR 2134

4

```
 1              MR. GRIMES:  He's the resident.

 2              THE COURT:  Did you know that person from before?

 3              THE DEFENDANT:  We've -- I've said hi.

 4              THE COURT:  Is it a neighbor where you live?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  And what did you do on this occasion?

 7              THE DEFENDANT:  I went to his house and cut the

 8      screen, and I realized I made a mistake and returned to my

 9      house.

10              THE COURT:  You cut the screen and started to enter?

11              THE DEFENDANT:  Cut it and left.

12              THE COURT:  Cut it and decided to go home?

13                  How eventually did you get caught?

14              THE DEFENDANT:  Well, I came back.  I was -- you

15      know, I figured out to see what I can do, and when I turned

16      around, that's when I encountered the police officer.  I

17      guess they were there watching when I came back to see what I

18      could do.

19              THE COURT:  Is that about what happened?

20              MS. HARTER:  Apparently, yes.

21              THE COURT:  Do you have any questions, Mr. Chandler?

22              THE DEFENDANT:  No, no, Your Honor.

23              THE COURT:  And as to both matters, do you in fact

24      give up your right to a jury trial?

25              THE DEFENDANT:  Yes.

26              THE COURT:  The right to subpoena and cross-examine

27      witnesses?

28              THE DEFENDANT:  Yes.
```

899

EXHIBIT B-4    SARA GEORGE, CSR 2134

5

```
 1          THE COURT:  And your right not to incriminate
 2   yourself?
 3          THE DEFENDANT:  Yes.
 4          THE COURT:  Anything you don't understand you want me
 5   to explain in more detail?
 6          THE DEFENDANT:  No, that's fine.
 7          THE COURT:  And under those agreements, what you'll
 8   be doing is waiving your right to be sentenced on Count 1.
 9               You normally would have a right to be sentenced
10   on that within a 30-day period of time, but it could delay
11   the sentencing on that as long as three years.  Your
12   misdemeanor probation can be up to three years, so actually
13   that could be delayed for that period of time.
14               Do you have any questions about that?
15          THE DEFENDANT:  No.
16          THE COURT:  Your plea to that offense under those
17   conditions then would be guilty or not guilty?
18          THE DEFENDANT:  Guilty.
19          THE COURT:  And your plea to the misdemeanor Count 2
20   would be guilty or not guilty?
21          THE DEFENDANT:  Guilty.
22          THE COURT:  I'll set it for February 27th at 8:30.
23   Make a finding that he's entered his plea and understands the
24   agreement and consequently there's an appropriate factual
25   basis.
26          MR. GRIMES:  Thank you.
27               (END OF PROCEEDINGS)
28                                                    900
```

EXHIBIT B-5

SARA GEORGE, CSR 2134

3

1          MR. GRIMES:  Correct.

2          THE COURT:  And 100 dollars fine.

3              Any other corrections?

4          MR. GRIMES:  Well, in terms of -- yes, at Page 4 and

5    5, in terms of what's described as his intent to break in or

6    to steal, and also again I believe -- well, it's on Page 5,

7    which reflects inaccurately his written statement.

8              And part of the reason the case dispoed as to

9    why it dispoed was there was a genuine question as to what

10   his intent was.

11             Not making excuses for him, but that was the

12   issue that left us in this current disposition was whether or

13   not he actually had an intent.

14             He clearly under the cases of Wise, and anybody

15   cutting the screen constitutes all of the conduct required

16   for residential burglary, and the question is whether or not

17   he had the intent to go ahead and steal something or commit

18   some of the other felonies:

19             So those I would submit as corrections.

20             On 1 and 8, it's not waiving sentencing.  It's

21   essentially waiving time, waiving time for sentencing on

22   Count 1.

23             And then on Page 8 it says house entered -- the

24   first full paragraph -- marijuana house, and that should

25   obviously be habit.

26         THE COURT:  That's all correct.

27             Anything else, Ms. Fisher?                901

28         MS. FISHER:  I did speak with the victim on Monday,

EXHIBIT C-3        SARA GEORGE, CSR 2134

4

1   and the defendant did indeed pay for the damage that he

2   created for the screen.

3           He had no desire to say what particular

4   punishment the defendant would receive from the Court.  He

5   left it up for the Court to decide.

6           THE COURT:  Ms. Harter?

7       MS. HARTER:  Well, Your Honor, obviously we have a

8   young man here who's had a good past record.  He's been a

9   hard worker.  He clearly made a serious mistake, and I think

10  he knows that.  And obviously his family and friends know

11  that.

12          It doesn't look like anything of this nature is

13  going to happen again.

14          I understand the reason for the recommendation.

15  I think it's a little less than normally what we would see in

16  a case like this because of his good past record.

17          But, on the other hand, we do need to treat

18  people similarly.  Other people who are convicted of similar

19  crimes get some time.

20          I think even though he has a very good record,

21  this young man should do some time because of the seriousness

22  of the crime, but I don't have any objection if it's served

23  on home confinement, because I really don't believe he's

24  going to be before the Court again.

25      THE COURT:  Actually what I intend to do is in

26  addition to community service work have him -- give him 30

27  days, and let him do it in the work alternative.

28      MR. GRIMES:  That's fine.  I'll submit it.

902

EXHIBIT C -4      SARA GEORGE, CSR 2134

5

```
 1          THE COURT:  Anything else?
 2      MR. GRIMES:  No.
 3          THE COURT:  Are you retained?
 4      MR. GRIMES:  Yes.
 5          THE COURT:  You know, much of what everybody says
 6  here is true.  It's difficult to see how you could get
 7  yourself into this difficulty, but that's really what
 8  probation means to me.
 9              If I didn't think a person was going to complete
10  probation realistically, I felt that they appeared to be a
11  danger to the community, I wouldn't put them on probation.
12              I don't expect you to do either of those.  I do
13  expect you to follow these conditions.
14              If you don't, then the consequences are not only
15  a substantial amount of time in county jail, but a felony
16  offense that could be found against you is a serious one, so
17  those are choices that you make.
18              You've had a number of people in the community
19  that have spoken highly for you.  You've done real well in
20  lots of things.  You made a stupid mistake.
21              So everything in life is a learning lesson, if
22  you let it be that way.  These are choices that you make.
23              I'll put you on probation in Count 2 for a
24  period of three years, obviously on the condition there are
25  no violations of the law, and you report to the probation
26  office as required, don't change where you're living without
27  permission.
28              I'll impose a 300 dollar fine to be paid through
```

903

EXHIBIT C-5    SARA GEORGE, CSR 2134

6

1    the probation department, the state restitution fund.

2              The actual restitution has been paid.

3              Obviously if your problem was use of drugs, then

4    you don't use them any more under any circumstances, so

5    they'll be able to test and search you on a regular routine

6    and random basis.

7              You need to consent to testing and you need to

8    consent to the search of your person, premises or anything

9    that belongs to you at any time night or day at the request

10   of a probation officer or peace officer.

11             The tests that we use these days are fairly

12   competent in detecting drugs.  Drugs remain in your system

13   for -- at least marijuana -- for a substantial period of

14   time.

15             And we don't ask.  They don't call you up and

16   tell you we're coming over to do these things.  So the

17   choices are yours from this point on.  They detect it in your

18   system if you continue to use illegal drugs.

19             You'll complete the hundred hours of community

20   service work before August 27th, serve 30 days in county

21   jail.

22             I'll give you a stay and recommend the sheriff's

23   work alternative program.

24             I'll give you to March 22nd, 29th to become

25   involved in that program.

26             You work through the sheriff's department with

27   other people around the community in lieu of going to jail.

28   You don't work, you end up in jail at that point in time.

904

EXHIBIT C-6

7

1          And pursuant to the agreement, I'll defer

2   sentencing on Count 1 and on violations of probation for a

3   period of three years.

4          Do you have any questions?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Okay.

7          MR. GRIMES:  Thank you.

8                    (END OF PROCEEDINGS)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                    905

SARA GEORGE, CSR 2134

EXHIBIT C-7

8

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
2                      FOR THE COUNTY OF MONTEREY
3    COURTROOM 15                 HON. RICHARD M. SILVER, JUDGE
4
5
6    THE PEOPLE OF THE STATE OF CALIFORNIA,)
7                    Plaintiff,            )
8              VS.                         )      SC 951388
9    CRAIG CHANDLER,                       )
10                   Defendant.            )
11   ───────────────────────────────────────)
12                     REPORTER'S CERTIFICATE
13   STATE OF CALIFORNIA    )
                            )  ss.
     COUNTY OF MONTEREY     )
14
15        I, SARA GEORGE, Official Reporter of the Superior
16   Court of the State of California for the County of Monterey,
17   do hereby certify that the foregoing pages, 1 through 8,
18   comprise a full, true and correct transcript of the
19   proceedings held in the above-entitled matter on February 27,
20   1996.
21        Dated this 21st day of February, 2002.
22
23
24                              SARA GEORGE, CSR #2134
25                              Official Reporter
26
27                                                  906
28
```

EXHIBIT C-8    SARA GEORGE, CSR 2134

PROOF OF SERVICE

I Mel Grimes, Jr. declare:

I am employed in the County of Monterey, California.  I am over the age of eighteen years and not a party to the within cause; my business address is 706 Forest Avenue, Pacific Grove, California 93950.

On Tuesday, March 5, 2002, I served a copy of the attached: NOTICE OF MOTION, MOITON AND POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT OF ORDER TO WITHDRAW PLEA AS TO COUNT ONE PURSUANT TO PENAL CODE § 1018 in the case of People v. Craig Richard Chandler, Case No. SC 951388 by personally delivering a copy of same to:

Office of the District Attorney
DDA Ann Hill
240 Church Street, Room 101
Salinas, CA 93901

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 5, 2002, in Pacific Grove, California.

Mel Grimes, Jr.

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA  93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066032

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

907

# EXHIBIT C

908

BAIL

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

PEOPLE OF THE STATE OF CALIFORNIA vs. CRAIG RICHARD CHANDLER    No. SC 951388    Date Jan. 24, 1996

Present:                              Present Before the Court:

HON. RICHARD M. SILVER    Judge    X  Defendant
TERESA A. URABE    Clerk    X  D.D.A.    C. HARTER
Sara Mayer, CSR# 2134
Box 1819, Salinas, CA    Reporter    X  DFN.    MEL GRIMES (Appearing generally)
DANIEL KARAMITIS    Bailiff

_____ Interpreter _____ sworn to interpret
_____ Oath of Interpreter on file, pursuant to E.C. §751(c)

☐ FAILURE TO APPEAR: Defendant having failed to appear, and good cause not shown for such absence, it is ordered
_____ Bench warrant issue _____ No bail. _____ Serve day or night.
_____ Service withheld to _____ at 8:30 a.m. for further hearing.
_____ Bail forfeited. _____ Release on own recognizance revoked.
_____ REINSTATEMENT OF BAIL: At _____ a.m. defendant appears, _____ bail is reinstated subject to:
_____ Bail agent agreeing _____ in open court _____ in writing. _____ Warrant is recalled.

☒ ADVISEMENT OF RIGHTS: Defendant is informed of Information filed, the charges against him, and all legal rights, including the right to be represented by counsel.

☐ APPOINTMENT OF COUNSEL: _____ Public Defender, _____ Deputy present in court, is appointed.
_____ Consortium, _____ present, is appointed, subject to the filing of affidavit of conflict by Public Defender.

☒ ARRAIGNMENT: X  Copy of Information is handed to defendant.
X  Reading waived by defendant and his counsel. _____ Clerk reads the Information.
X  Copy of Preliminary Transcript is also handed to defendant.
X  Defendant states his true name is: X  as shown on the Information.
_____ and Information is ordered amended accordingly.
_____ ARRAIGNMENT CONTINUED TO _____ at 8:30 a.m.
_____ ENTRY OF PLEA CONTINUED TO _____ at 8:30 a.m.

☒ ENTRY OF PLEA: Defendant enters a plea of guilty to count 1, §664/459 PC, a felony and §664/459 PC, count 2, a misdemeanor on condition that upon completion of probation, count 1 will be dismissed. Defendant waives sentencing on count 1.

_____ Court advises defendant of:
( ) rights against self-incrimination, to confront and examine witnesses, to trial by jury or court.
( ) effect of a guilty plea, and possible consequences.
( ) conditions of felony probation.

_____ Defendant waives legal rights as explained.
_____ Court finds there is a factual basis for such plea and finds defendant
( ) waives rights voluntarily, understands effect of waiver.
( ) enters plea freely, voluntarily, with knowledge of consequences.

_____ Plea is accepted by District Attorney, and approved by the Court after explaining provisions of Sec. 1192.5 PC to defendant.

☐ TRIAL SETTING: _____ trial set for _____ at 8:30 a.m., _____ days estimated.
_____ Statutory time for trial waived. _____ Waiver of personal presence signed and filed at this time.

☒ REFERRAL: Referred to Probation Officer for investigation and report. Consideration of report, arraignment for judgment, and passing of sentence set for  2/27/96  at 8:30 a.m.

☐ MOTIONS: _____ 995 PC _____ 1538.5 PC _____ Discovery _____ Bail _____ on grounds _____ at _____ m.

☐ PRE-TRIAL: _____ at _____
DEFENDANT: _____  X  on bail  X  this action _____ other action _____ released on own recognizance; Agreement signed
_____ remanded to custody _____ this action _____ other action _____ for delivery to authorities at CTF as noted.

Distribution: PO
Sheriff
Clerk 410 (Rev. 1/90)    MINUTE ORDER: ARRAIGNMENT

# EXHIBIT D

910

1

1     SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          FOR THE COUNTY OF MONTEREY

3  COURTROOM 13          HON. RICHARD M. SILVER, JUDGE

4

5  THE PEOPLE OF THE STATE OF CALIFORNIA,)
                                        )
6          Plaintiff,                   )
                                        )
7     VS.                               )     SC 951388
                                        )
8  CRAIG RICHARD CHANDLER,              )
                                        )
9          Defendant.                   )
   ─────────────────────────────────────)

10

11        REPORTER'S TRANSCRIPT OF PROCEEDINGS

12

13           JANUARY 24, 1996

14

15

16  APPEARANCES:

17  For the People:      CHRIS HARTER
                         Deputy District Attorney
18                       Courthouse
                         1200 Aguajito Road
19                       Monterey, CA

20  For the Defendant:   MEL GRIMES
                         Attorney at Law
21                       Monterey, CA

22

23

24

25

26

27

28

                                        911

2

1  MONTEREY, CALIFORNIA; JANUARY 24, 1996

2              P R O C E E D I N G S

3       THE COURT:  Fred Chandler.

4         MR. GRIMES: He's present.  He was

5  downstairs yesterday morning.

6       THE COURT:  Mr. Chandler, this is a copy of

7  the transcript of the information.  It accuses you of

8  attempted first degree burglary and misdemeanor

9  attempted burglary, so it's one count of a felony

10 attempted burglary of a residence and one count of a

11 misdemeanor attempted burglary.

12      MR. GRIMES:  It's the same place.

13      THE COURT:  I'm not sure I understand the

14 charge.

15      MR. GRIMES:  It may be somewhat of a legal

16 fix.  It was the disposition that we worked out

17 downstairs, and that is that he would plea to both

18 charges with the understanding that he would be

19 sentenced on a misdemeanor.  So long as he completed

20 probation on the misdemeanor, the felony would be

21 dismissed.

22          If he violated probation on a misdemeanor,

23 then the Court could sentence him on the felony.  The

24 idea was to ensure if he completed misdemeanor probation

25 he would not have a felony conviction.

26      THE COURT:  So I assume that the attempted

27 burglary then he'd enter a plea but he would waive his

28 rights to be sentenced on that pending the completion on

912

3

```
 1   the --
 2              MR. GRIMES:  On Count 1, yes.
 3               MS. HARTER:  That was the agreement.
 4              THE COURT:  I'll go over it with you,
 5   Mr. Chandler, because it's somewhat different than the
 6   normal agreement.
 7              If you like you will be admitting both
 8   offenses; they in essence charge the same thing.  One is
 9   charged as a misdemeanor second degree burglary, which
10   in reality is probably an attempted first degree, but
11   based upon your record and other matters, the District
12   Attorney apparently believes in the interest of justice
13   it would be more appropriate to treat it as a second
14   degree burglary and a misdemeanor so long as you comply
15   with probation.
16              You'll be admitting the attempted
17   residential burglary.  That's obviously the more serious
18   matter.  That's a felony offense.  You face -- if you
19   were to violate probation on that offense, you know, if
20   you violate the misdemeanor probation and I sentence you
21   on the attempted first degree burglary, you face a
22   potential three years in prison and up to four years on
23   parole, so it's a much more serious matter if that were
24   to occur.
25              To avoid that you obviously have to comply
26   with the conditions of probation on the misdemeanor
27   offense.  That carries with it a potential six months in
28   county jail and a minimum fine of 100 dollars and
```

913

4

1   maximum fine of 1,500 dollars depending upon your

2   ability to pay and any other conditions I feel are

3   appropriate I can set, including any restitution in the

4   matter.

5            Do you have any questions at all about that?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Who is Gary Moras (phonetic) do

8   you know?

9            MR. GRIMES:  He's the resident.

10            THE COURT:  Did you know that person from

11   before?

12            THE DEFENDANT:  We've -- I've said hi.

13            THE COURT:  Is it a neighbor where you live?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  And what did you do on this

16   occasion?

17            THE DEFENDANT:  I went to his house and cut

18   the screen, and I realized I made a mistake and returned

19   to my house.

20            THE COURT:  You cut the screen and started

21   to enter?

22            THE DEFENDANT:  Cut it and left.

23            THE COURT:  Cut it and decided to go home.

24   How eventually did you get caught?

25            THE DEFENDANT:  Well, I came back.  I was --

26   you know, I figured out to see what I can do and when I

27   turned around that's when I encountered the police

28   officer.  I guess they were there watching when I came

914

5

```
 1  back to see what I could do.
 2              THE COURT:  Is that about what happened?
 3              MS. HARTER:  Apparently, yes.
 4              THE COURT:  Do you have any questions,
 5  Mr. Chandler?
 6              THE DEFENDANT:  No, no, Your Honor.
 7              THE COURT:  And as to both matters do you in
 8  fact give up your right to a jury trial?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  The right to subpoena and
11  cross-examine witnesses?
12              THE DEFENDANT:  Yes.
13              THE COURT:  And your right not to
14  incriminate yourself?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Anything you don't understand
17  you want me to explain in more detail?
18              THE DEFENDANT:  No, that's fine.
19              THE COURT:  And under those agreements what
20  you'll be doing is waiving your right to be sentenced on
21  Count 1.  You normally would have a right to be
22  sentenced on that within a 30-day period of time, but it
23  could delay the sentencing on that as long as three
24  years.  Your misdemeanor probation can be up to three
25  years, so actually that could be delayed for that period
26  of time.  Do you have any questions about that?
27              THE DEFENDANT:  No.
28              THE COURT:  Your plea to that offense under
```

915

6

1   those conditions then would be guilty or not guilty?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  And your plea to the misdemeanor

4   Count 2 would be guilty or not guilty?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  I'll set it for February 27th at

7   8:30, make a finding that he's entered his plea and

8   understands the agreement and consequently there's an

9   appropriate factual basis.

10             (END OF PROCEEDINGS)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

916

7

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF MONTEREY

HON. RICHARD M. SILVER, JUDGE

COURTROOM 13

PEOPLE OF THE STATE OF CALIFORNIA, )
                                   )
            Plaintiff,             )
                                   )        SC 951388
     vs.                           )
                                   )
CRAIG RICHARD CHANDLER,            )
                                   )
            Defendant.             )
_____

REPORTER'S CERTIFICATE

STATE OF CALIFORNIA   )
                      )  ss.
COUNTY OF MONTEREY    )

     I, SARA GEORGE, Official Reporter of the Superior

Court of the State of California for the County of

Monterey, do hereby certify that the foregoing pages, 1

through 7, comprise a full, true and correct transcript

of the proceedings held in the above-entitled matter on

January 24, 1996.

     Dated this 15th day of January, 2013.


                    _____
                    SARA GEORGE, CSR #2134
                    Official Reporter

917

# EXHIBIT E

918

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

PEOPLE OF THE STATE OF CALIFORNIA vs. CRAIG RICHARD CHANDLER    No. SC 951388    Date 2/29/96

Present:                        Present Before the Court:

HON. RICHARD M. SILVER  Judge      X   Defendant

TERESA A. URABE          Clerk      X   D.D.A.  C. HARTER

Sara Mayer CSR# 4134

Box 1819, Salinas, CA    Reporter   X   DKDR.  MEL GRIMES

SUZANNE WITHEY          Bailiff    X   D.P.O.  K. FISHER

                  Interpreter, sworn to interpret _____ Oath on file, pursuant to E.C. 751(c)

Case regularly called for sentencing.  Court has read and considered report and recommendation of probation officer, and diagnostic report if any.  The Court finds that defendant has been convicted of §664/459 PC, count 1, a felony and §664/459 PC, count 2, a misdemeanor.

Court determines that Defendant (XX)is (XX)is not a suitable candidate for probation.
                          (XX)grants ( )denies probation, and states reasons.

SENTENCE CHOICE:  Count _____

[ ]  Court considers entire record and other competent evidence, and finds:

     circumstances in _____          no evidence presented or statements
                                        submitted in aggravation or mitigation
        ( )aggravation outweigh circumstances in mitigation
        ( )mitigation outweigh circumstances in aggravation
        ( )aggravation and mitigation are substantially equal

     and imposes  ( )middle  ( )upper    ( )lower  term of _____ years.
     pursuant to  ( )preceding finding  ( )stipulation  ( )negotiated plea  and states reasons.

[ ]  Court determines that the crime with the greatest principal term is Count _____

JUDGMENT: _____ Defendant waives formal arraignment for judgment, ( )shows no legal cause why judgment should not be pronounced.

Judgment is pronounced as follows: as to count 2, §664/459 PC

[X] IMPOSITION OF SENTENCE SUSPENDED FOR    3    YEARS, on terms of attached probation order.
    *Sentencing as to count 1 is deferred for 3 years.  Count 1 to be dismissed upon
    successful completion of probation.  Violation of probation will result in the
[ ] DEFENDANT IS SENTENCED TO  imposition of sentence as to count 1.

    Co. Jail for _____ at but _____     ( )State prison  ( )Youth Authority  for _____
    _____ days suspended.
    X  Credit for time served, found to be:              ( )Diagnostic report ordered per 1170(d) PC.
    Actual    1    + PC 4019(b)  0                        Sentence to run: ( )consecutive  ( )concurrent
    State Institution _____ Total    1                  ( )to one another  ( )to any prior incomplete sentence.
    EXECUTION OF SENTENCE SUSPENDED FOR _____ YEARS,    Defendant to be housed at CYA pursuant to 1731.5(c) WI.
    on terms of attached probation order.                A post sentence report is ordered.  Defendant shall not
                                                          be transported pending interview with the Probation
    Defendant to pay a restitution fine of $ _____ to  Office.  Probation Officer shall forward copy of
    the State Restitution Fund, 1202.4 PC.               report to California Department of Corrections.
    X Defendant accepts terms of probation.           X  Defendant is:
    Bail is ( )reinstated  ( )exonerated                 Advised he may be on parole up to _____
    ( )in no.   _____  15 days hereafter, per 1305 PC. after expiration of sentence.
    Bench Warrant dated _____ is recalled.            Advised of appeal rights.
    Count _____                                        To remain on bail/own recognizance.
    _____ dismissed ( )pursuant to plea bargain     X  Remanded to custody of Sheriff
    ( )on grounds of _____                            ( )for release.
    Defendant is found _____ able to pay costs of    ( )for delivery to _____
    court-appointed counsel.                          X  Stay granted to 3/29/96 _____ at 9:00 a.m.
    ( )ordered to pay $ _____
    through Monterey County Revenue and Recovery Department.                                    919
    Work furlough is _____ recommended.

                                                          _____
                                                          Judge of the Superior Court
    _____ (Rev. 9/91)                                   HONORABLE RICHARD M. SILVER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

PEOPLE OF THE STATE OF CALIFORNIA vs.   CRAIG RICHARD CHANDLER         No. SC 953388

Defendant having been convicted of violation of _____ count(s) _____ a misdemeanor/felony,
imposition/execution of sentence is suspended, and defendant is placed on probation for a period of _____ years, under
the following conditions of probation as checked:

**TERMS AND CONDITIONS OF PROBATION**

- X  Obey all laws.
- X  Report to Probation Officer when and as required.
- X  Not change place of residence from Monterey County or leave State of California without permission of Probation Officer.
- ___ Pay fine of $ _____ plus penalty assessment to ( ) Probation Officer  ( ) Revenue and Recovery.
   - ( ) on or before $ _____ ( ) forthwith
   - ( ) at rate of $ _____ per month commencing _____
- X  Pay restitution fine of $ 200.00 to State Restitution Fund through Probation Officer (P.C. 1202.4 Gov. 13967).
- ___ Pay fine/assessment of $ _____ pursuant to Section 1372.5 H&S Code to Probation Officer.
- ___ Pay fine/assessment of $ _____ pursuant to Section 1372.7 H&S Code to Probation Officer.
- ___ Pay $10.00 fine directly to _____ and show proof to Probation Officer,
   within 60 days of release from custody (P.C. 1202.5).
- ___ Pay victim restitution through Probation Officer. ( ) Amount _____ ( ) manner of payment to be determined by Probation Officer.
   - ( ) $ _____ payable $ _____ per month (P.C. 1203.04 & Gov. 13967).
- ___ Pay $ _____ restitution to the State Restitution Fund through the Probation Officer (P.C. 1203.04 & Gov. 13967).
- ___ Not consume alcohol.
- X  Not use narcotics, drugs, or other controlled substances without the prescription of a physician; not traffic in,
   or associate with persons who use or traffic in narcotics or other controlled substances.
- X  Submit to narcotics/alcohol tests when directed by Probation Officer or peace officer.
- X  Permit search of his person, car, personal effects, or place of residence, night or day, without the necessity
   of a search warrant, at the direction of Probation Officer or peace officer.
- ___ Register pursuant to ( ) 290 P.C.  ( ) 11590 H&S.
- X  Not possess, receive, or transport any firearm (P.C. 12021).
- ___ Maintain gainful employment.
- X  Complete _180_ hours of community service work on or before 8/27/1996 _____ ( ) as directed by Probation Officer.
- X  Participate in an counseling program (Probation Officer deems appropriate).
- ___ License suspended/revoked _____ years.
- ___ Weapon confiscated be declared a dangerous nuisance and disposed of according to statute.
- ___ Not possess sexually explicit materials or matter which depicts porn or any purpose of arousing prurient interest.
- ___ Not be in the presence of children 18 years of age or younger unless another responsible adult is present.
- ___ Not to be out of his/her home between 8:00 p.m. and 6:00 a.m. without prior approval of the Probation Officer when
   cooperate with the Probation Officer in a home curfew program which may include the use of electronic surveillance equipment.
- ___ Not be probation duty, have said within the area _____
- ___ Not associate with any individuals known to be gang members or on probation or parole.
- ___ Not remain in any vehicle either as a passenger or driver which is known or suspected to be stolen or to contain any
   firearm or illegal weapon.
- ___ Not use nor have in his/her possession any electronic paging device (pocket pagers) or cellular phone.
- X  Not possess, wear, use or display any item prohibited by the Probation Officer including, but not limited to, any
   insignia, emblem, button, badge, cap, hat, scarf, bandanna, or any article of clothing, hand sign or paraphernalia
   associated with membership or affiliation in a gang.

- X  Sentencing on count 1 is deferred for 3 years. Upon successful completion of probation
   count 1 will be dismissed. Violation of probation will result in the imposition of sentence
   on count 1.

- X  Serve _30_ days in County jail, credited for time served _____ actual _____
   _____ conduct/work credits total of 1 day.
- X  Stay granted to 3/29/96 at _____ at 9:00 a.m. when defendant shall report to Sheriff at the Monterey
   County Jail, Salinas, California. WORK ALTERNATIVE IS APPROVED
- ___ Defendant  ( ) is  ( ) is not eligible for county parole. Work furlough  ( ) is  ( ) is not recommended.
- ___ In the event the defendant is deported, probation revert to non-reporting; upon re-entry to the United States,
   defendant report to the Probation Officer within 72 hours.
- ___ Dismiss counts _____ bail exonerated _____

Custody:  X Sheriff  ___ CTF  ___ Bail  ___ O/R _____ Able pay costs
   For processing for release _____  For delivery to _____

If the defendant fulfills the conditions of probation for the period of probation, the defendant shall at any time after the termination
of the period of probation be permitted to withdraw his plea of guilty or to enter a plea of not guilty, or change said plea thereafter
has been convicted of any crime of which he/she has been convicted, and thereafter release defendant from all penalties and disabilities resulting from the offense or crime of which defendant has
been convicted.

After dismissal of the accusatory pleading, defendant may file a petition for certificate of rehabilitation and pardon provided the
petitioner has not been incarcerated in any penal institution since the dismissal of the accusatory pleading and is now on probation for the
conviction of any felony, and presents satisfactory evidence of 3 years residence in this state prior to the filing of the petition.

Dated: FEB. 27, 1996 _____                           _____
                                                          Judge of the Superior Court
                                            PROBATION ORDER HONORABLE RICHARD M. SILVER
Clerk #27      (Rev. 9/91)

920

# EXHIBIT F

921

1

1             SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                FOR THE COUNTY OF MONTEREY

3  COURTROOM 13           HON. RICHARD M. SILVER, JUDGE

4

5  THE PEOPLE OF THE STATE OF CALIFORNIA,)

6         Plaintiff,      )

7    VS.                 )     SC 951388

8  CRAIG RICHARD CHANDLER,    )

9         Defendant.    )

10

11         REPORTER'S TRANSCRIPT OF PROCEEDINGS

12

13           FEBRUARY 27, 1996

14

15

16  APPEARANCES:

17  For the People:    CHRIS HARTER
                     Deputy District Attorney

18                  Courthouse
                     1200 Aguajito Road

19                  Monterey, CA

20  For the Defendant:  MEL GRIMES
                     Attorney at Law

21                  Monterey, CA

22

23

24

25

26

27

28                               922

2

1   MONTEREY, CALIFORNIA; FEBRUARY 27, 1996

2                    P R O C E E D I N G S

3            MR. GRIMES:  I have the Chandler matter.

4   It's on for sentencing.

5            THE COURT:  I assume you've read the report,

6   Mr. Chandler?

7            THE DEFENDANT: (Nods head).

8            THE COURT:  Any corrections?

9            MR. GRIMES:  Yes.

10           THE COURT:  I understand what was to happen

11  actually is that we would simply defer sentencing on

12  Count 1, which was the attempted residential burglary,

13  we would sentence him on --

14           MR. FISHER:  The misdemeanor.

15           THE COURT:  Attempted burglary, which is a

16  misdemeanor, and if he successfully completes that

17  probation, then Count 1, the felony, would be dismissed.

18           If he doesn't or is found in violation of

19  probation, Count 2, then we would proceed or could

20  proceed with sentencing on Count 1.

21           MR. GRIMES:  That's correct.

22           THE COURT:  That was the agreement I think

23  that came up at the time of arraignment.

24           MR. GRIMES:  That's right; that's correct.

25           THE COURT:  So we need to amend Page 10 to

26  reflect the present sentencing base for a misdemeanor

27  attempted burglary, which I believe is maximum of six

28  months in county jail.                        923

3

```
 1            MR. GRIMES:  Correct.
 2            THE COURT:  And 100 dollar fine.
 3            Any other corrections?
 4            MR. GRIMES:  Well, in terms of -- yes, at
 5    Page 4 and 5, in terms of what's described as his intent
 6    to break in or to steal, and also again I believe --
 7    well, it's on Page 5, which reflects inaccurately his
 8    written statement.
 9            And part of the reason the case dispoed as
10    to what it dispoed was there was a genuine question as
11    to what his intent was.
12            Not making excuses for him, but that was the
13    issue that left us in this current disposition was
14    whether or not he actually had an intent.
15            He clearly under the cases of Wise
16    (phonetic) and anybody cutting the screen constitutes
17    all of the conduct required for residential burglary,
18    and the question is whether or not he had the intent to
19    go ahead and steal something or commit some of the other
20    felonies.  So those I would submit as corrections.
21            On one and eight, it's not waiving
22    sentencing, it's essentially waiving time, waiving time
23    for sentencing on Count 1.
24            And then on Page 8 it says house entered --
25    the first full paragraph -- marijuana house, and that
26    should obviously be habit.
27            THE COURT:  That's all correct.  Anything
28    else, Ms. Fisher?
```

924

4

1          MR. FISHER:  I did speak with the victim on

2    Monday, and the defendant did indeed pay for the damage

3    that he created for the screen.  He had no desire to say

4    whether or not he agreed with the punishment the

5    defendant would receive from the Court.  He left it up

6    for the Court to decide.

7          THE COURT:  Ms. Harter?

8          MS. HARTER:  Well, Your Honor, obviously we

9    have a young man here who's had a good past record.

10   He's been a hard worker.  He clearly made a serious

11   mistake and I think he knows that.  And obviously his

12   family and friends know that.  It doesn't look like

13   anything of this nature is going to happen again.

14          I understand the reason for the

15   recommendation.  I think it's a little less than

16   normally we would see in a case like this because of his

17   good past record, but on the other hand, we do need to

18   treat people similarly.  Other people who are convicted

19   of similar crimes get some time.

20          I think even though he has a very good

21   record, this young man should do some time because of

22   the seriousness of the crime, but I don't have any

23   objection if it's served on home confinement, because I

24   really don't believe he's going to be before the Court

25   again.

26          THE COURT:  Actually what I intend to do is

27   in addition to community service work, have him -- give

28   him 30 days and let him do it in the work alternative.

925

5

```
 1              MR. GRIMES:  That's fine.  I'll submit it.
 2         THE COURT:  Anything else?
 3         MR. GRIMES:  No.
 4         THE COURT:  Are you retained?
 5         MR. GRIMES:  Yes.
 6         THE COURT:  You know, much of what everybody
 7    says here is true.  It's difficult to see how you could
 8    get yourself into this difficulty, but that's really
 9    what probation means to me.  If I didn't think a person
10    was going to complete probation, realistically I felt
11    that they appeared to be a danger to the community, I
12    wouldn't put them on probation.
13              I don't expect you to do either of those.  I
14    do expect you to follow these conditions.  If you don't,
15    then the consequences are not only a substantial amount
16    of time in county jail but a felony offense that could
17    be found against you is a serious one, so those are
18    choices that you make.
19              You've had a number of people in the
20    community that have spoken highly for you.  You've done
21    real well in lots of things.  You made a stupid mistake,
22    so everything in life is a learning lesson if you let it
23    be that way.  These are choices that you make.
24              I'll put you on probation for in Count 2 for
25    a period of three years, obviously on the condition
26    there are no violations of the law and you report to the
27    probation office as required.  Don't change where you're
28    living without permission.
```

926

6

1        I'll impose a 300 dollar fine to be paid
2 through the probation department, the state restitution
3 fund.   The actual restitution has been paid.
4        Obviously if your problem was use of drugs,
5 then you don't use them any more under any
6 circumstances, so they'll be able to test and search you
7 on a regular routine and random basis.   You need to
8 consent to testing and you need to consent to the search
9 of your person, premises or anything that belongs to you
10 at any time night or day with the request of a probation
11 officer or peace officer.
12        The tests that we use these days are fairly
13 confident in detecting drugs.   Drugs remain in your
14 system for at least marijuana for a substantial period
15 of time, and we don't ask -- they don't call you up and
16 tell you we're coming over to do these things.   So the
17 choices are yours from this point on.   They detect it in
18 your system if you continue to use illegal drugs.
19        You'll complete the hundred hours of
20 community service work before August 27th, serve 30 days
21 in county jail.
22        I'll give you a stay and recommend the
23 sheriff's work alternative program.   I'll give you to
24 March 22nd, 29th to become involved in that program.
25 You work through the sheriff's department with other
26 people around the community in lieu of going to jail.
27 You don't work, you end up in jail at that point in
28 time.

927

7

1            And pursuant to the agreement, I'll defer

2    sentencing on Count 1 and violations of probation for a

3    period of three years.

4            Do you have any questions?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  Okay.

7            MR. GRIMES:  Thank you.

8               (END OF PROCEEDINGS)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

928

8

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2               FOR THE COUNTY OF MONTEREY
 3   COURTROOM 13          HON. RICHARD M. SILVER, JUDGE
 4
 5
 6   PEOPLE OF THE STATE OF CALIFORNIA,)
 7                                     )
          Plaintiff,                   )
 8                                     )
      VS.                              )     SC 951388
 9                                     )
     CRAIG RICHARD CHANDLER,           )
10                                     )
          Defendant.                   )
11   _____)
12                    REPORTER'S CERTIFICATE
13   STATE OF CALIFORNIA    )
                            )  ss.
14   COUNTY OF MONTEREY     )
15      I, SARA GEORGE, Official Reporter of the Superior
16   Court of the State of California for the County of
17   Monterey, do hereby certify that the foregoing pages, 1
18   through 8, comprise a full, true and correct transcript
19   of the proceedings held in the above-entitled matter on
20   February 27, 1996.
21      Dated this ____day of January, 2013.
22
23
24                          _____
                            SARA GEORGE, CSR #2134
25                          Official Reporter
26
27
28                                              929
```

# EXHIBIT G

930

```
J2411H1                    SUPERIOR COURT - SALINAS              02/01/2002
MONTEREY CJIS          IN AND FOR THE COUNTY OF MONTEREY           13:45
ORGANIZATION: SC
```

CASE NO. SC951388 A     DATE: 02/01/2002     TIME: 08:30 AM     DEPT.: 2

PEOPLE VS. CHANDLER, CRAIG RICHARD

JUDGE:   WENDY C DUFFY, JUDGE          CLERK:   LITA MESSINA
REPORTER: TINA GORRELL, CSR# 4286

NATURE OF PROCEEDINGS: MOTION TO DISMISS (PC 1203.4)

---

CHARGES, PLEAS AND DISPOSITIONS:
COUNT                                  LATEST
NO.  CODE/SECTION                 TYPE  PLEA   DISPOSITION
001. PC 664/459                    F
        ATTEMPTED BURGLARY: RESIDENTIAL
002. PC 664/459                    M
        ATTEMPTED BURGLARY:RESIDENTIAL

---

DEPUTY DISTRICT ATTORNEY ANN HILL APPEARED.

DEFENDANT APPEARED WITH COUNSEL MEL GRIMES.

CASE REGULARLY CALLED FOR HEARING ON DEFENDANT'S MOTION
    TO DISMISS.

ARGUED.

CASE CONTINUED REPORTER IS INSTRUCTED TO PREPARE A
    TRANSCRIPT OF 1/24/96, COPIES TO BE PROVIDED TO COUNSEL.

DEFENSE TO FILE POINTS & AUTHORITIES BY 2/15/02 WITH
    RESPONSE TO BE FILED BY THE PEOPLE BY 2/28/02.

CASE IS SET FOR MOTION TO DISMISS (PC 1203.4) ON
    03/06/2002 AT 8:30 A.M. IN SUPERIOR COURT - SALINAS,
    COURTROOM 2.

DEFENDANT TO REMAIN ON OWN RECOGNIZANCE.

---

931

MINUTE ORDER  M6                              PAGE    1

```
J2411H1                    SUPERIOR COURT - SALINAS              02/01/2002
MONTEREY CJIS         IN AND FOR THE COUNTY OF MONTEREY            13:49
ORGANIZATION: SC

   CASE NO. SC951388 A      DATE: 02/01/2002    TIME: 13:45 PM    DEPT.: XX

   PEOPLE VS. CHANDLER, CRAIG RICHARD

   JUDGE:                                 CLERK:
   REPORTER:

   OUT OF COURT ENTRIES BY CLERK; LITA MESSINA AT 1:45 P.M.
```

```
CHARGES, PLEAS AND DISPOSITIONS:
COUNT                             LATEST
NO.  CODE/SECTION           TYPE   PLEA   DISPOSITION
001. PC 664/459               F
        ATTEMPTED BURGLARY: RESIDENTIAL
002. PC 664/459               M
        ATTEMPTED BURGLARY:RESIDENTIAL
```

```
NOTIFIED SARA MAYER GEORGE, REPORT PRESENT ON 1/24/96,
    AND ORDERED ORIGIANL TRANSCRIPT AND TWO COPIES, THIS
    DATE.
```

932

MINUTE ORDER  M6                         PAGE     1

# EXHIBIT H

933

FILED IN COURT

ON 3-6-02

SHERRI L. PEDERSEN, CLERK OF THE COURT

BY _____ DEPUTY

1   MEL GRIMES, JR.
    ATTORNEY AT LAW
    706 FOREST AVENUE
2   P.O.BOX 37
    PACIFIC GROVE, CALIFORNIA 93950
    TELEPHONE (408) 373-4338
3   STATE BAR NO. 066032

4

5   ATTORNEY FOR: Defendant/Petitioner, Craig Richard Chandler

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF MONTEREY - SALINAS DIVISION

10
    THE PEOPLE OF THE STATE OF )   CASE NO. SC 951388
11  CALIFORNIA,                )
                               )   NOTICE OF MOTION, MOTION AND
12            Plaintiff,       )   POINTS AND AUTHORITIES AND
                               )   DECLARATIONS IN SUPPORT OF ORDER
13  v.                         )   TO WITHDRAW PLEA AS TO COUNT ONE
                               )   PURSUANT TO PENAL CODE § 1018.
14  CRAIG RICHARD CHANDLER,    )
                               )   Date:   March 6, 2002
15            Defendant.       )   Time:   8:15 A.M.
                               )   Judge:  Wendy Duffy
16  _____  )   Dept:   Two

17  TO:  DEAN D. FLIPPO, DISTRICT ATTORNEY FOR THE COUNTY OF MONTEREY,
18       ANN HILL, DEPUTY DISTRICT ATTORNEY AND THEIR AGENTS:

19       PLEASE TAKE NOTICE that on the 6th of March at 8:15 A.M., or

20  as soon thereafter as the matter may be heard, and pursuant to this

21  notice, defendant/petitioner will move for an order allowing the

22  defendant to withdraw his plea as to Count One of the above-

23  identified case pursuant to the plea agreement and Penal Code §

24  1018.

25       This motion/petition shall be based upon these pleadings,

26

27                              1

28                                                      934

including the declarations attached to the moving papers and the

transcripts from the earlier court proceedings, the Points and

Authorities attached hereto and any evidence that may be received

at the hearing on March 6, 2002.

STATEMENT OF FACTS

On January 22nd, 1996, when Mr. Chandler was 19 years old, he

was charged by Information with two counts of violation of Penal

Code § 664/459, more commonly known as attempted burglary.  The

charging was as a result of a disposition reached prior to the

Preliminary Examination.  That disposition is memorialized and a

transcript of that proceeding dated January 11, 1996, a true and

accurate copy of which is attached hereto and marked Exhibit A.  As

a plain reading of that document will indicate, it was everyone's

intention that should Mr. Chandler successfully complete a grant of

misdemeanor probation he would not ever be convicted of a felony

arising out of the conduct in question and similarly, would not

face any of the consequences of being a convicted felon.

That plea agreement, and those representations, both explicit

and implicit, having been made to Mr. Chandler are further

memorialized in Exhibit B which is attached hereto and represents

a transcript of the proceedings at the time of his plea on January

24th, 1996.  As that transcript indicates, the disposition involved

a plea to Count 1 as a felony and Count 2 as a misdemeanor with the

understanding that successful completion of probation as to Count

2 would result in the dismissal of Count 1.  As indicated in the

2

935

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 17
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066021

transcript the very heart of the plea agreement was ". . . to ensure if he completed misdemeanor probation he would not have a felony conviction." (Exhibit A, page 2 at line 21.) Finally, Exhibit C which is attached hereto and marked as such further confirms the intent of all parties that successful completion of misdemeanor probation would result in the felony allegation being dismissed without Mr. Chandler ever suffering a conviction therefore. See particularly at page 5, line 14 where the sentencing court indicates that should Mr. Chandler fail on his grant of misdemeanor probation ". . . if you don't, then the consequences are not only a substantial amount of time in County Jail, but a felony offense that could be found against you is a serious one so those are the choices that you make."

Additionally, attached are declarations from Mr. Chandler's counsel, his mother and father who were intimately involved in the decisionmaking about the disposition in this case and Mr. Chandler himself, all relative to the nature of the disposition and the representations made thereto by all parties concerned.

<u>POINTS AND AUTHORITIES</u>

At the last appearance in Court, Deputy District Attorney Ann Hill indicated to the Court and counsel that she had authority for the proposition that even with the dismissal of Count 1, Mr. Chandler would face the consequences of being a convicted felon. So far no such authority has been provided to counsel. However, should she do so and should the Court find such authority

3

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 97
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066602

936

persuasive, then Mr. Chandler is being denied the very heart of the bargain that he made and ought to be entitled to withdraw his plea.

Penal Code Section 1018, by its own terms, mandates liberal construction, i.e., it is not a matter of judicial interpretation requiring such construction but rather the Legislature itself wrote into the statute the mandate for such construction. See also People v. Superior Court (Giron) (1974) 11 Cal.3d 793, 797; People v. Brotherton (1966) 239 Cal.App.2d 195.

When in doubt, a court should grant a pre-judgment motion to withdraw a plea. People v. Spears (1984) 153 Cal.App.3d 79, 88. The withdrawal of a plea of guilty should not be denied in a case where the ends of justice would not be subserved by permitting the defendant to withdraw a plea and plead anew, particularly in those cases in which surprise, ignorance or mistakes of fact, affected the judgment and may serve to invalidate a guilty plea.

It is respectfully submitted that the Court ought to grant the motion based upon the timely application and the overwhelming evidence of Mr. Chandler's reliance on representations about his status following successful completion of his misdemeanor probation.

Dated: March 4, 2002                    Respectfully submitted;



Mel Grimes, Jr.

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066932

4

937

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O.BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (408) 373-4338
STATE BAR NO. 066032

ATTORNEY FOR: Defendant/Petitioner, Craig Richard Chandler

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY - SALINAS DIVISION

THE PEOPLE OF THE STATE OF ) CASE NO. SC 951388
CALIFORNIA,                 )
                            )    DECLARATION OF
           Plaintiff,       )    TERRY CHANDLER
                            )
vs.                         )
                            )
CRAIG RICHARD CHANDLER,     )
                            )
           Defendant.       )
_____)

I, Terry Chandler, declare:

That I am a Sergeant with the Carmel Police Department and have been involved in law enforcement for 28 years; 1974 through 1985 with the Pacific Grove Police Department and 1985 through the present with Carmel-By-The-Sea.

That I was, and remain, intimately familiar with the facts of my son's case.

That I was not simply an interested party, but was also intimately involved in the decision making about how to proceed with Craig's case. Although I did not attend each and every

938

court proceedings, I attended the majority of the proceedings.

That had I had the slightest inkling that under the plea bargain negotiated Craig would face some felony consequences, I would have strenuously recommended to Craig that he proceed to trial on the matter.

That based upon my career in law enforcement and knowledge of the facts this case was indeed triable from a defense standpoint.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 25, 2002 in Pacific Grove, California.

Terry Chandler

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066032

939

1   MEL GRIMES, JR.
    ATTORNEY AT LAW
    706 FOREST AVENUE
2   P.O.BOX 37
    PACIFIC GROVE, CALIFORNIA 93950
3   TELEPHONE (408) 373-4338
    STATE BAR NO. 066032

4

5   ATTORNEY FOR: Defendant/Petitioner, Craig Richard Chandler

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF MONTEREY - SALINAS DIVISION

10  THE PEOPLE OF THE STATE OF  )  CASE NO. SC 951388
    CALIFORNIA,                 )
11                              )  DECLARATION OF
                                )  PETERANNE USHAKOFF
12              Plaintiff,     ·)
                                )
13  vs.                         )
                                )
14  CRAIG RICHARD CHANDLER,     )
                                )
15              Defendant.      )
                                )
16  _____)

17       I, Peteranne Ushakoff, declare:

18       That I am intimately familiar with my son's case.

19       That Craig was 19-years old and living with me in Pacific

20  Grove at the time of the underlying incident.

21       That I was not only an interested party, but also, like his

22  father, intimately involved in the decisionmaking process.

23       That I would have strongly counseled Craig not to accept the

24  plea bargain if he was going to be facing felony consequences at

25  the conclusion of the matter, provided he satisfactorily completed

26  his misdemeanor probation.

27

28

                                                        940

1    That no one ever told him or me that there would be felony

2   consequences proved he successfully completed probation and in fact

3   representations made to him, both explicitly and implicitly, was

4   that absent a pronouncement of judgment at sentencing as to the

5   sentencing, Craig would indeed not face any felony consequences.

6    I declare under penalty of perjury that the foregoing is true

7   and correct and that this declaration was executed on February 25,

8   2002 in Pacific Grove, California.

9

10

11   Peteranne Ushakoff

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 57
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4318
STATE BAR NO. 66603

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

941

1   MEL GRIMES, JR.
    ATTORNEY AT LAW
    706 FOREST AVENUE
2   P.O.BOX 37
    PACIFIC GROVE, CALIFORNIA 93950
    TELEPHONE (408) 373-4338
3   STATE BAR NO. 066032

4

5   ATTORNEY FOR: Defendant/Petitioner, Craig Richard Chandler

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF MONTEREY – SALINAS DIVISION

10  THE PEOPLE OF THE STATE OF )  CASE NO. SC 951388
    CALIFORNIA,                )
11                             )  DECLARATION OF
12              Plaintiff,     )  CRAIG RICHARD CHANDLER
                               )
13  vs.                        )
                               )
14  CRAIG RICHARD CHANDLER,    )
                               )
15              Defendant.     )
                               )
16  _____)

17      I, Crag Richard Chandler, declare:

18      That I am the defendant/petitioner in this matter.

19      That I was 19-years old and living at home with my mother at

20  this time that this underlying matter arose.

21      That I consulted with my mother and father and Mr. Grimes

22  relative to the matter and I completely relied upon the

23  representation that I would not have a felony conviction under the

24  plea agreed to.

25      That had there been any question about the plea agreement, I

26  am sure that either my mother or my father, both of whom intimately

27

28

                                                            942

1   involved in the decisionmaking, would have counseled me to not

2   enter into any plea unless we all understood the terms and

3   conditions of the plea.

4       That under no circumstances would I have pled guilty or no

5   contest to the charges but for the representation that the felony

6   would be dismissed if I successfully completed my probation on the

7   misdemeanor.

8       That until the last court appearance on February 1st, 2002, I

9   firmly believed that the plea agreement would be abided by.

10       I declare under penalty of perjury that the foregoing is true

11   and correct and that this declaration was executed on February 20,

12   2002 in Pacific Grove, California.

13

14   *Craig Chandler*

15   Craig Richard Chandler

16

17

18

19

20

21

22

23

24

25

26

27

28

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 066002

943

MEL GRIMES, JR.
ATTORNEY AT LAW
705 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (408) 373-4338
STATE BAR NO. 066032

ATTORNEY FOR: Defendant/Petitioner, Craig Richard Chandler

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY – SALINAS DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                    Plaintiff,<br><br>vs.<br><br>CRAIG RICHARD CHANDLER,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. SC 951388<br><br>DECLARATION OF<br>MEL GRIMES, JR. |

 I, Mel Grimes, Jr., declare:

 That I am licensed to practice law in the State of California and have been practicing since 1975.

 That for the majority of that time I have practiced nearly exclusively in the field of criminal defense.

 That I represented Mr. Chandler in the underlying matter.

 That the plea negotiations in Mr. Chandler's case involved his plea to both a misdemeanor and a felony with the understanding that so long as he completed the misdemeanor probation satisfactorily, the felony would be dismissed without there ever being a

944

1    2002 in Pacific Grove, California.

2



3            Mel Grimes, Jr.

4            Attorney for Defendant/Petitioner
             Craig Richard Chandler

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEL GRIMES, JR.
ATTORNEY AT LAW
706 FOREST AVENUE
P.O. BOX 37
PACIFIC GROVE, CALIFORNIA 93950
TELEPHONE (831) 373-4338
STATE BAR NO. 66002

945

# EXHIBIT I

946

```
J2411H1                    SUPERIOR COURT - SALINAS              03/25/2002
MONTEREY CJIS         IN AND FOR THE COUNTY OF MONTEREY              16:50
ORGANIZATION: SC
```

CASE NO. SC951388 A     DATE: 03/22/2002    TIME: 08:30 AM    DEPT.: 2

PEOPLE VS. CHANDLER, CRAIG RICHARD

JUDGE:   WENDY C DUFFY, JUDGE        CLERK:  LITA MESSINA
REPORTER: TINA GORRELL, CSR# 4286

NATURE OF PROCEEDINGS: MOTION TO DISMISS (PC 1203.4)

CHARGES, PLEAS AND DISPOSITIONS:

| COUNT NO. | CODE/SECTION | TYPE | LATEST PLEA | DISPOSITION |
|-----------|--------------|------|-------------|-------------|
| 001. | PC 664/459 | M | | DISM - PC 1203.4 |
| | ATTEMPTED BURGLARY:RESIDENTIAL | | | |
| 002. | PC 664/459 | M | | DISM - PC 1203.4 |
| | ATTEMPTED BURGLARY:RESIDENTIAL | | | |

DEPUTY DISTRICT ATTORNEY ROBERT BURLISON APPEARED.

PROBATION OFFICER JOEL BAXTER APPEARED.

DEFENDANT APPEARED WITH COUNSEL MEL GRIMES.

CASE REGULARLY CALLED FOR HEARING DEFENDANT'S MOTION TO
    REDUCE MATTER TO MISDEMEANOR AND DISMISS PURSUANT TO
    1203.4 P.C..

ARGUED AND GRANTED.

MOTION TO DISMISS PURSUANT TO PC 1203.4 IS GRANTED.

947

# EXHIBIT J

948

1  BRIAN MADDEN, SB# 55869
2  MADDEN & REDDING
   1625 The Alameda, Suite 801
3  San Jose, California 95126
   Telephone: (408) 275-8100 .
4  Facsimile: (408) 275-8199

5  Attorney for Defendant
6  CRAIG RICHARD CHANDLER

7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10

11 THE PEOPLE OF THE STATE OF CALIFORNIA,      Case No.  C1223754
              Plaintiff,
12                                             **DECLARATION OF**
      vs.                                      **BRIAN MADDEN**
13 CRAIG RICHARD CHANDLER,
              Defendant.
14

15      I, BRIAN MADDEN, declare:

16      1.      I am an attorney at law licensed to practice law in all courts of the State of

17 California and I represent Defendant, CRAIG RICH00ARD CHANDLER, in this matter.

18      2.      On December 28, 2012, I mailed a letter to Tina Gorrell, the court reporter who

19 reported the March 22, 2002 proceedings before Judge Wendy C. Duffy in Monterey County

20 Superior Court Case No. SC 951388 A.  My letter is attached as Exhibit J.1.

21      3.      On or about January 22, ·2013, I received a letter from Tina Gorrell Deyerle

22 advising me she no longer has her notes for the March 22, 2002 proceedings as more than 10

23 years have elapsed and the notes have been destroyed. Ms. Deyerle's January 18, 2013 letter is

24 attached as Exhibit J.2.

25      I declare under penalty of perjury that the foregoing is true and correct and that this

26 declaration was signed in San Jose, California on February 26, 2013.

27

28                              BRIAN MADDEN

                                                        949

LAW OFFICES

MADDEN & REDDING

SUITE 801

1625 THE ALAMEDA

SAN JOSE, CALIFORNIA 95126

BRIAN MADDEN
ROBERT C. REDDING

TELEPHONE
(408) 275-8100

FAX
(408) 275-8199

December 28, 2012

Tina Gorrell, CSR# 4286
P.O. Box 1819
Salinas, CA  93902-1819

Re:  People v. Craig Richard Chandler
     Monterey County Superior Court Case No. SC 951388 A
     Motion to Dismiss (PC 1203.4)
     Heard before Judge Wendy C. Duffy on March 22, 2002

Dear Ms. Gorrell:

      I am writing you to request a transcript of the March 22,
2002 proceedings in the above-captioned case concerning the
defendant's Motion to Dismiss.  I am enclosing the clerk's minute
order from the March 22, 2002 proceedings to help you locate your
notes.  As I am somewhat pressed for time to obtain a transcript
of the proceeding, I am willing to pay an additional fee to
expedite the process.  Please call me after you have received this
letter to advise me of the cost of expediting the transcript and
whether you will require payment in advance or are willing to bill
me with the transcript.

      Thank you for your courtesy and cooperation.

                              Very truly yours,

                              BRIAN MADDEN

BM:mb
Enclosure

950

EXHIBIT J.1.

Tina Gorrell Deyerle
Certified Shorthand Reporter, CSR 4286
240 Church Street
Salinas, CA 93901

January 18, 2013

RE: Chandler, Craig Richard
NO. SC951388

To Whom it may Concern:

 I received a request for a transcript for March, 22, 2002.  My notes have been destroyed, as per the code, after ten years.

 Sincerely,
Tina Gorrell Deyerle

951

EXHIBIT J.2.

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER



FILED

JUN 11 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court A-CR County of Santa Clara
BY_____ DEPUTY

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,

12          Plaintiff,                          Case No. C1223754

13  v.                                          MOTION TO ADMIT TESTIMONY
                                                FROM DR. WILLIAM O'DONOHUE
14  CRAIG RICHARD CHANDLER,                     AN EXPERT IN THE INTERVIEWING
                                                OF VICTIMS OF CHILD SEXUAL
15          Defendant.                          ABUSE

16

17                            INTRODUCTION

18          Defense counsel has retained Dr. William O'Donohue, an expert in the area of the sexual

19  abuse of children.  Dr. O'Donohue is a professor of Psychology at the University of Nevada,

20  Reno.  Since 1996 he has been the Director of the Victim of Crimes Treatment Center at the

21  University of Nevada, Reno.  He received a B.S. in psychology from the University of Illinois

22  at Urbana-Champaign and an M.S. and Ph.D. in clinical psychology from State University of

23  New York at Stony Brook.  From 1996 to 2008, he was the Director of Sexual Assault

24  Prevention and Counseling Services at the University of Nevada, Reno.  He is an advisor the

25  DSM-V Work Group on Sexual Gender Identity Disorders of the American Psychiatric

26  Association, focusing on the diagnosis of Pedophilia.  He is a member of the Nevada Attorney

27  General's Victims of Crimes Subcommittee.  He is on the Editorial Board of the Journal of the

28  Academy of Medical Psychology.  He has received several grants and awards related to the study

                                                                              952

1    and treatment of sexually abused children.  He is the co-editor of a two-volume book dealing

2    with theory, research, and clinical issues involving sexually abused children and the author or

3    co-author of numerous articles dealing with sexually abused children.

4        Among the areas in which Dr. O'Donohue is an expert is the interviewing of victims of

5    child sexual abuse, particularly the distinction between proper interviewing techniques designed

6    solely to elicit information the victim actually remembers and suggestive interviewing

7    techniques that implant information and result in children claiming things occurred when in fact

8    they did not.  It is Dr. O'Donohue's expertise in this area that is the subject of this motion.

9                                APPLICABLE LAW

10       Evidence Code §720 describes the requirements for showing that a witness is qualified

11   to testify as an expert witness on a given subject.  It provides, in relevant part: "(a) A person is

12   qualified to testify as an expert if he has special knowledge, skill, experience, training, or

13   education sufficient to qualify him as an expert on the subject to which his testimony relates.

14   Against the objection of a party, such special knowledge, skill, experience, training, or education

15   must be shown before the witness may testify as an expert."  Evidence Code §801 describes the

16   testimony an expert witness may give.  It provides: "If a witness is testifying as an expert, his

17   testimony in the form of an opinion is limited to such an opinion as is: (a) Related to a subject

18   that is sufficiently beyond common experience that the opinion of an expert would assist the trier

19   of fact; and  (b) Based on matter (including his special knowledge, skill, experience, training,

20   and education) perceived by or personally known to the witness or made known to him at or

21   before the hearing, whether or not admissible, that is of a type that reasonably may be relied

22   upon by an expert in forming an opinion upon the subject to which his testimony relates, unless

23   an expert is precluded by law from using such matter as a basis for his opinion."  "[T]he purpose

24   of expert testimony, to provide an opinion beyond the common experience, dictates that the

25   witness possess uncommon, specialized knowledge."  (*People v. Chapple* (2006) 138

26   Cal.App.4th 540, 547.)

27       California case law discusses the sort of testimony an expert witness in psychology may

28   give in order to assist a jury in understanding foundational factual matters related to testimony

                                                                              953

1   that has been presented.

2        The most instructive Supreme Court case on point is *People v. McDonald* (1984) 37

3   Cal.3d 351.  There, the Court held that a qualified expert witness may testify on psychological

4   factors shown by the evidence that may affect the accuracy of an eyewitness identification of the

5   defendant.  (*Id.* at p. 355.)  The expert in that case, Dr. Robert Shomer, was a professor of

6   psychology and a practicing psychologist who taught courses on the psychology of perception,

7   memory and recall.  He was conversant with the scientific literature on the psychology of

8   eyewitness identification, and did research and published articles dealing with the subject.  He

9   proposed to inform the jury of various psychological factors that may affect the reliability of

10  eyewitness identification and to help counter some common misconceptions about the process.

11  (*Id.* at p. 361.)  He did not propose to offer an opinion that any particular witness at trial was or

12  was not mistaken in his identification of the defendant.  But he did intend to point out various

13  psychological factors that could have affected the identifications in the case.  (*Id.* at p. 362.)

14       The Supreme Court held in *McDonald* that although jurors would know from personal

15  experience and intuition that an eyewitness identification can be mistaken, and also would know

16  the more obvious factors that affect its accuracy, other relevant factors may be known only to

17  some jurors, may be imperfectly understood by many jurors, or may be contrary to the intuitive

18  beliefs of most jurors.  (*Id.* at pp. 367-368.)  The Court concluded that although jurors may not

19  be totally unaware of psychological factors bearing on eyewitness identification, the body of

20  information available on these matters is sufficiently beyond common experience that in

21  appropriate cases expert opinion on the subject could assist the trier of fact.  (*Id.* at p. 369.)  The

22  Court noted that expert testimony on the subject would not usurp or invade the function of the

23  jury because the testimony does not tell the jury that a particular witness is not truthful or

24  accurate in his identification of the defendant, and the jury is free to reject the expert's

25  testimony.  (*Id.* at pp. 370-371.)  The Court further observed: "Evidence that is relevant to the

26  prime theory of the defense cannot be excluded in wholesale fashion merely because the trial

27  would be simpler without it. Rather, it should be accompanied by instructions clearly explaining

28  to the jury the purpose for which it is introduced. As noted above (fn. 11, *ante*), any excess in

954

No. C1223754                                3    Motion re Expert Testimony from Dr. Donohue

1    the quantity or complexity of such testimony can be controlled by the court's power to limit the

2    presentation of evidence." (*Id.* at p. 372.)

3       *People v. Page* (1991) 2 Cal.App.4th 161 also is instructive.  There, Elliot Aronson, a

4    professor of psychology, testified for the defense concerning factors which can lead a person to

5    give an inaccurate statement in an interrogation setting and gave examples of experiments in

6    social psychology illustrating how various factors could influence a person to give inaccurate

7    information and make him more vulnerable to suggestion.  (*Id.* at p. 179.)  On appeal, the

8    defendant argued that the trial court erred when it restricted Professor Aronson's testimony by

9    precluding him from (1) testifying about the particular elements of the defendant's taped

10    statements which indicated the confession was unreliable and (2) giving his opinion about the

11    overall reliability of the confession. (*Id.* at pp. 180, 183.)  The Court of Appeal held that trial

12    courts have wide discretion to admit or exclude expert testimony, and the trial court did not

13    abuse its discretion when it limited Professor Aronson's testimony. (*Id.* at pp. 187-188.)  The

14    trial court thus was not required to permit Professor Aronson to discuss the particular evidence

15    in the case or to give his opinion regarding the overall reliability of the confession. (*Id.* at p.

16    188.)

17       Although in *Page* the trial court admitted only general evidence related to psychological

18    factors that can lead to inaccurate statements, and excluded evidence about particular aspects of

19    the confession which indicated it was unreliable, and also precluded the expert from giving his

20    opinion about the overall reliability of the confession, the Court of Appeal made clear that a trial

21    court has broad discretion when it comes to the admission or exclusion of expert testimony and

22    the appellate court will find error only if the trial court abused its broad discretion.  This means

23    that although the trial court, in its discretion, excluded the evidence in *Page*, another trial court

24    remains free, in its discretion, to admit precisely the same evidence and the appellate court would

25    uphold that ruling unless the trial court abused its broad discretion.  As the Supreme Court has

26    put it: "When expert opinion is offered, much must be left to the trial court's discretion.  The

27    trial court has broad discretion in deciding whether to admit or exclude expert testimony..."

28    (*People v. McDowell* (2012) 54 Cal.4th 395, 426, internal quotation marks and citations

<div align="right">955</div>

No. C1223754               4    Motion re Expert Testimony from Dr. Donohue

1  omitted.)  The trial court thus has a great deal of leeway in admitting a broad range of expert

2  testimony, and the appellate court will rarely second guess the trial court's ruling.

3       *McDonald* supports this characterization about the breadth of the trial court's discretion.

4  Also, as noted above, *McDonald* contemplates that in situations in which there are concerns

5  about the admission of expert testimony, the trial court can mitigate those concerns by using

6  instructions explaining the limited use of the evidence and by limiting the amount of evidence

7  admitted when there are concerns about the quantity and complexity of that evidence.

8       Although a trial court has broad discretion in admitting the testimony of a expert on

9  subjects that may bear on the credibility of evidence, the Evidence Code itself favors the

10  admission of such evidence.  Evidence Code §780 provides, in pertinent part: "Except as

11  otherwise provided by statute, the court or jury may consider in determining the credibility of

12  a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his

13  testimony at the hearing...."  Evidence Code §351 provides: "Except as otherwise provided by

14  statute, all relevant evidence is admissible." And Evidence Code §210 defines relevant evidence

15  as follows: "'Relevant evidence' means evidence, *including evidence relevant to the credibility*

16  *of a witness or hearsay declarant*, having any tendency in reason to prove or disprove any

17  disputed fact that is of consequence to the determination of the action." (Italics added.)

18       One of the things that has a tendency in reason to disprove the truthfulness and credibility

19  of a minor child is the suggestiveness of the techniques used by law enforcement and others who

20  interviewed the minor.  But it is not only testimony about the techniques discussed in general

21  terms that is relevant.  It is helpful to the trier of fact to have an expert witness show where and

22  how in the minor's statements the suggestive techniques have been used. Mr. Chandler does not,

23  however, seek to have Dr. O'Donohue testify about whether the statements of the minors are

24  reliable, as that is something the jury is able to do on its own after it hears testimony about

25  suggestive interrogation techniques in general and how that suggestive interrogation techniques

26  have been used in the interviews of the minors in this case.

27      THE EVIDENCE MR. CHANDLER ASKS THE COURT TO ADMIT

28       Mr. Chandler asks the Court to exercise its broad discretion to allow Dr. O'Donohue to

No. C1223754                 5   Motion re Expert Testimony from Dr. Donohue

1   give testimony about (1) the interviewing techniques that experts agree should be used to prevent

2   the implanting of false "memory" and guarantee that testimony is based on the actual memories

3   of the children and (2) the interviewing techniques that experts agree should not be used because

4   they are suggestive and implant false memory.  Among the specific things Mr. Chandler wishes

5   to have Dr. O'Donohue testify about are:

6   1. Descriptions of the general nature of proper and improper techniques for interviewing children

7   about allegations of sexual abuse:

8   2. Descriptions of the sorts of improper interview techniques employed during the interviews of

9   the children in this case.

10   3. Identification of some specific instances in the interviews showing the use of improper

11   interviewing techniques employed in this case.

12   4. Identification of other potentially suggestive influences to which the children were exposed

13   outside of the interview setting, such as questioning by school officials and family members.

14   5. Identification of potential areas of bias in the allegations of the complaining children.

15          Mr. Chandler is attaching to this motion a 70-page report Dr. O'Donohue prepared on

16   October 1, 2012, summarizing the contents of the interviews of the alleged minor victims and

17   discussing matters in the interviews constituting suggestive questioning techniques that can lead

18   to false memories. Mr. Chandler has already provided the prosecutor with a copy of this report.

19   The report contains, among other things, a detailed description of the sorts of things about which

20   Dr. O'Donohue is prepared to testify.

21                                              CONCLUSION

22          In this case, the prosecution case primarily is based on the testimony of the alleged minor

23   victims.  In view of this, the credibility of the alleged minor victims is perhaps the most

24   important issue the jury must resolve. Jurors will have a natural sympathy for the children and

25   a natural tendency to take their testimony at face value and find no reason for them not to be

26   truthful. There are, however, subtle factors such as suggestive interviewing techniques which

27   can implant false memories in the children and have these false memories replace the true

28   memories.  It is important that the jury know about the nature of suggestive interviewing

                                                                                              957

1    techniques, both in general terms and the specific instances present in this case.  This is the only

2    way to assure that the jury will make a fully informed determination on the crucial issue of the

3    credibility of the testimony of the alleged victims.

4          Dr. O'Donohue's testimony does not merely relate to a simple evidentiary issue.  It also

5    is the heart of his defense.  That defense is not that the children who accuse him are lying.  It is,

6    instead, that they honestly believe they are the victim of criminal activity because flawed and

7    suggestive interviewing techniques have replaced true memories with false, implanted ones.  Dr.

8    O'Donohue's testimony thus is central to the defense and flows not only from principles of

9    California law, but also from the Sixth Amendment right to present a defense.

10          For these reasons, Mr. Chandler asks the Court to exercise its broad discretion and to

11   allow Dr. O'Donohue testify as an expert witness on the topics listed above.

12   DATED:

13

14            5/13/13                               Respectfully submitted,

15

16                                                  BRIAN MADDEN
                                                    Attorney for Defendant
17                                                  Craig Richard Chandler

18

19

20

21

22

23

24

25

26

27

28

                                                                                    958

No. C1223754                          7   Motion re Expert Testimony from Dr. Donohue

WILLIAM O'DONOHUE, PH.D., LLC
Licensed Psychologist
*4490 Mountaingate Drive*
*Reno, NV 89519*
775.750.6082

CHILD SEXUAL ABUSE INVESTIGATION REPORT

Case: The People of the State of California v. Craig Richard Chandler

Date: October 1, 2012

Accused: Craig Richard Chandler

Attorney: Mr. Brian Madden, J.D.

Referral Question: Are there any factors such as suggestibility that may be indicative of a false memory or a false allegation, or do these appear to be bias free?

*Reader's Caveat*
    Evaluations of child forensic interviews are not evaluations of the veracity of the information provided within interviews. There is no way to scientifically determine the veracity of such information without hard data of the event, such as an actual recording of the event (e.g., videotape, audiotape, photograph, etc.). Therefore, this evaluation will make no statements about whether alleged events did or did not occur. Instead, the purpose of this evaluation is to inform those making judicial decisions about the potential for bias on the child's allegations. Specifically, the question addressed in this report is: Were there events that could potentially and reasonably bias the child's report, or were those events controlled and/or assessed by the interviewer? In addition, interviews should explore all reasonable hypotheses that pertain to the child's report and not just focus on a narrow subset. This evaluation will explore these reasonable hypotheses. Finally, it is important to note that the mere presence of potentially biasing behaviors or child experiences never means that the child's report was definitely biased; only that such bias is possible. Some children can experience multiple biasing influences and continue to provide very accurate reports, while other children can be misled by very subtle and unintentional changes in the wording of a question. Further, the presence of bias in one question does not mean that the entire interview was contaminated. For example, a leading question about the time of an alleged event should not be expected to contaminate non-leading questions about other details of the event. Therefore, when using the results of the evaluation, please consider the following points.
    1. When all factors are ruled out, the interview should be considered free from basic bias, but that does not mean that the child's report is accurate or inaccurate.
    2. When some or all of the biasing influences are identified in an interview, the interview cannot be considered free from potential bias. Once again, the child's testimony can still be accurate or inaccurate regardless of the presence of bias.

959

**Case Synopsis:** The goal of this report is to examine the allegations made by Isabelle (DOB:11/11/2004), Becky Duong (DOB: 3/4/2003), Laurie Ibanez (DOB:11//2003), Wendy (DOB:2//2002), and Arleth Leon (DOB:6//2002) against Craig Chandler (DOB: 10/25/1976).

**Materials Reviewed:**
- The People of the State of California v. Craig Richard Chandler Information Summary 5/30/12
- Interview of Isabelle by Officer and Sargeant 1/9/2012
- Interview of Isabelle by Detective Pierce
- Interview of Isabelle 2 by Detective Pierce
- Interview of Isabelle's Mother by Detective Pierce
- Interview of Becky by Detective Pierce 1/10/12
- Interview of Becky
- Interview of Kim Tu
- Interview of Laurie at School by Lisa and Dave
- Interview of Laurie by Lisa and Dave
- Interview of Wendy
- Interview of Maria Leon
- Interview of Arlet (sic)
- Interview of Naomi G.
- Interview of Ashlyn at School
- Interview of Ashlyn
- Melissa's Questionnaire
- Isabelle's Preliminary Examination Testimony
- Becky's Preliminary Examination Testimony
- Laurie's Preliminary Examination Testimony
- Wendy's Preliminary Examination Testimony
- Arleth's Preliminary Examination Testimony
- San Jose Police Department Narrative/ Supplemental Report

<u>Summary of Materials Reviewed</u>

**The People of the State of California v. Craig Richard Chandler Information Summary 5/30/12**
According to the document reviewed, Chandler was charged with five counts of a lewd or lascivious act with a child under fourteen.

**Interview of Isabelle by Officer and Sergeant 1/9/2012**
According to the audio recording reviewed, the officer asked Isabelle what she told her mother that morning. Isabelle replied that sometimes during recess Chandler asks her to stay in. She said asks her to sit down, puts a blindfold over her eyes, and puts something round in her mouth. When asked if she smelled or tasted anything, Isabelle indicated that she didn't. She reported that Chandler usually stands in front of her and puts his hands on her head and pushes her head "kind of a lot." She said that he started doing that to her 5 days prior to the interview, and she couldn't

960

indicate how many times it had happened. She reported that he would only do it for part of the recess, and that she still had time to go play with her friends. She was asked if Chandler did that with anyone else, and she replied, "no." The officer asked her if her friend Aleah had ever stayed behind with her at recess, to which she responded, "no." When asked if Chandler said anything while the alleged incident was happening, Isabelle replied that he told her to move her tongue. She said the object felt "kind of hard." When asked about her friend Becky, Isabelle said that her friend did not move like her mother had thought she had. Isabelle was asked when the last time the incident happened, and she said it took place the previous Friday. She indicated that it only happened one time the previous week, but then said it happened more times. Upon further questioning, Isabelle agreed that it had happened only once the previous week but that it happened more times before Christmas break. When Isabelle was asked what Chandler told her after taking the object out of her mouth, she answered that he told her, "you may go out now." She was then asked if the object was out of her mouth by the time he uncovered her eyes and affirmed, "ah hum." The sergeant said, "so you never saw what he put in there" to which she responded, "no."

### Interview of Isabelle by Detective Pierce

According to the video recording reviewed, Detective Pierce asked Isabelle's name and if she liked coloring. Pierce told Isabelle that his job was to talk to "little kids" about "stuff that has happened to them." Pierce then asked how old Isabelle was, when her birthday was, what she received for her birthday, and where she went to school. Pierce then said, "I'm going to ask you some questions today, okay? And if you don't know the answer, just tell me you don't know the answer. Okay?" Isabelle agreed. Pierce told her that he would try to clarify a question if there was something that she did not understand. Pierce said, "Today it's really important that you tell me the truth of anything that I ask you. Okay?" Isabelle nodded and agreed to tell the truth. Pierce then asked what Isabelle liked to do, who her friends were, about the park that she played at. He then asked Isabelle about things that she did not like to do. Pierce also asked her to describe her birthday. He then asked Isabelle, "Do you have any idea why we're here today?" and Isabelle said, "To help kids." When asked if she knew what they were there to talk about, Isabelle said no. Isabelle said her Mom did not tell her anything other than to not lie and to say "everything." Pierce asked Isabelle if she had talked to a police officer that day and Isabelle nodded her head. When asked, Isabelle said that she told the officer that her teacher "always" told her to stay inside the classroom for 20 minutes. Isabelle said, "And then he put something over my eyes. Sometimes it's my scarf or a blanket or a black…" Isabelle reported that he teacher made her sit in a chair in the classroom and that no one else was in the classroom. When asked what happened next, Isabelle said, "He puts something in my mouth. I can't really see because he puts the scarf or the blindfold or the blanket over my eyes." Isabelle reported that she did not know what was allegedly put in her mouth and when asked to describe the shape, Isabelle said, "round." When asked what it felt like Isabelle said that it felt "kind of hard." She stated that it did not taste like anything. Pieced asked, "How big is it?" and Isabelle said, "I'm not sure." Pierce asked, "When he puts it in your mouth, does it hurt your mouth because it's so big or is it smaller than that?" and Isabelle replied, "It kind of hurts my mouth." Isabelle reported that she told her to "move [her] tongue around" when it was in her mouth. Isabelle stated that her hands were on the chair and that one of his hands was on the back of her head. When asked how long it lasted, Isabelle stated, "Fifteen or ten minutes. Fifteen." Pieced asked how it ended and Isabelle said she that did not know. Pierce asked, "Does he just take it out?" and Isabelle said, "He takes

it out." When asked if she heard anything before he put it in her mouth, Isabelle said no. Pierce asked, "When he takes it out, do you still have the blindfold on?" and Isabelle reported, "No, I take it off." She stated that he was doing "nothing" when she took the blindfold off and that he was standing on the other side of his desk. Pierce then said, "So he takes it off and walks away and then some time you take the blindfold off?" When asked, Isabelle reported that he then said to her "You may go to recess now." Pierce asked Isabelle if she thought the thing in her mouth was a lollipop and Isabelle said no. She stated that the last time it happened was "last Friday." When asked when it happened before Friday, Isabelle said, "When I barely got to his class and five days ago, like he... he started. And then, like, he did it on Monday, Thursday, Tuesday, and... yeah." Pierce asked Isabelle if she had been on a break from school for Christmas and she said she had been but that she returned to school "last Friday." When asked when he became her teacher, Isabelle said that she was not sure. Isabelle reported that she had not told anyone else but her Mom. She said that he Mom told her Aunt. Pierce asked Isabelle is she had told her Mom about something that happened with her and a friend named Aleah. Isabelle said that she had not and Pierce asked, "You don't remember telling your Mom anything about that?" Isabelle again said no and Pierce asked, "What about chocolate." Isabelle then replied, "Oh, yeah." Isabelle then reported that when he "first started doing that game, like, if you get the taste right then... if they're winners, and then they get... they have to sit back down in their seats. And then... and then... I don't remember that much." Isabelle stated that this was a game that she played in the classroom with everyone. Pierced asked Isabelle to report how the game "went" and Isabelle said that two people were picked. She said that if you "feel stuff" correctly that you would get to "taste stuff." Isabelle stated that they were blindfolded. When asked what happened when someone won the game, Isabelle said, "He gives you... then you have to sit down." Isabelle also described an aspect of the game that involved "plastic bags." Isabelle said that she only played the game with the "whole classroom" and when asked said she only played the game one time. Isabelle reported that he did not play the game when she was not there and stated again that it only happened one time. Pierce then asked, "Just one time?" and Isabelle said, "Yeah." Pierce asked, "But it was... the whole classroom was there, correct?" and Isabelle nodded. Isabelle reported that there were more boys than girls in her class. Pierce asked if the item in her mouth was bigger than a finger and Isabelle said that it was. Peirce asked, "Does it have any smell?" and Isabelle shook her head no. When asked what it felt like in her mouth, Isabelle stated that she did not know. She reported that she felt like she was "going to choke." When asked, Isabelle said that it was smaller than a banana. Isabelle reported that she did not know what he was wearing on Friday. Pierce asked if the item in her mouth was "hard like plastic" and Isabelle said no. Pierce asked her if it was "kind of hard" but "also kind of soft" and Isabelle nodded. She reported that the alleged incidents occurred "sometimes after school or at... after lunch recess." Pierce then said, "And you told your Mom something about chocolate. Did someone put chocolate in your mouth before?" Isabelle said that Mr. Chandler had and that he put some in Aleah's mouth. She reported that this occurred during class and that everybody was in the classroom. When asked, Isabelle reported that he was moving her head "back and forth" with his hand during the alleged incidents. Pierce asked, "When he's done and takes it out, does he say anything to you?" and Isabelle shook her head no. Isabelle reported that she took the blindfold off "one second" after he was done and that he was already at his desk. Isabelle said that this occurred "a lot," more than five times, but that she was "not really sure" how many times. Isabelle said that she did not remember the first time that it occurred but that it always happened in the same way. Pierce asked if he ever told her anything afterwards and Isabelle said that when

962

he was done he, "just put some candy and like [she] had to guess what it is." Isabelle said that he
did not do this the past Friday and that it was Sweet Tarts when he had in the past. She reported
that when he put the bigger object in her mouth that he did not ask her to guess what it was.

**Interview of Isabelle 2 by Detective Pierce**
According to the audio recording reviewed, Detective Pierce asked Isabelle if she remembered
talking to him the previous day and said that he was going to ask a couple of other questions
about what they had talked about. Pierce told Isabelle that the "same rules" applied as the
previous interview and that she should tell him if she did not understand something. Pierce also
told Isabelle that if she did not know the answer, that she should tell him. Isabelle said, "Okay."
Pierce asked, "And you're going to tell the truth, right?" and Isabelle said "Okay." Pierce asked
Isabelle if she remembered telling him that when "this happened" that she was sitting in Mr.
Chandler's swivel chair. Pierce asked her, "Does it look like that?" and Isabelle replied, "Yeah."
When asked, Isabelle reported that she knew Becky but did not know her last name. She stated
that she did not know why Becky was moved out of the classroom. Isabelle reported that she did
not ask Becky why she moved and that Becky did not tell her either. When asked if she
remembered anything else about the object that was put in her mouth Isabelle said that she did
not. Pierce asked if she remembered anything "ever getting on [her] clothes or on [her] mouth"
and Isabelle said no. When asked, Isabelle reported that she did not remember anything coming
out of the object that was allegedly placed in her mouth. Isabelle reported that the
"demonstration" was always with just her and Mr. Chandler. Isabelle stated that she also
remembered playing the "taste game" in front of the whole class. Pierce asked Isabelle if there
were other times aside from the incident that she reported had occurred the week prior. Isabelle
replied, "No." Pierce asked if she remembered that she said that he put something in her mouth
that tasted like "beef jerky," and Isabelle said no. When asked if she remember him putting
something in her mouth that tasted like strawberry, Isabelle said, "Yeah." Piece then said, "Do
you remember him putting something in your mouth, then you said you didn't like? It was like a
cracker or a cheese cracker." Isabelle replied, "Oh, yeah." Isabelle said that she did not tell
anyone else about the alleged incident other than her Mom.

**Interview of Isabelle's Mother by Detective Pierce**
According to the video recording reviewed, that day Isabelle told her Mother, "I have something
to tell you," while walking to school in the morning. Her Mother reported that Isabelle started
"getting teary." Isabelle reportedly said, "I have to tell you something that Mr. Chandler does to
me," and "Well, because he makes me do something and I don't like it." When her Mother
reportedly asked what he did, Isabelle told her that he put "something" in her mouth. Isabelle
reportedly stated that she did not know what he put in her mouth. This conversation happened
outside and at that point Isabelle's Mother reported that she told her to go back inside. She stated
that Isabelle's brother Anthony heard what she had said and that they go to the same school.
Isabelle then reportedly stated that he blindfolded her and said, "Sometimes he uses a blindfold
and sometimes he uses a blanket and last time he used a scarf." Her Mother stated that Isabelle
said that it only occurred when she was by herself and that "the other day" that he told her and
Aleah to wait. Isabelle allegedly reported that he put a chocolate in her mouth and in Aleah's
mouth. Isabelle's Mother said that she reported that he "never" let her go play at recess and that
when they were in line he told her "you have to wait inside because we have to play the
snowman." Isabelle's Mother stated that Isabelle also said "we have to wrap up some presents."

963

She said that she asked Isabelle if the object in her mouth was hard and Isabelle said, "Kind of." Isabelle reportedly said that he tied a scarf on her head "the last time." She also reported that Isabelle reported that he told her to sit in his chair. Isabelle's Mother stated that she personally then "just started crying." Isabelle reportedly said that the last time it happened was Friday. Isabelle's Mother said she asked Isabelle, "Was it wet? Was it dry?" and that Isabelle said that it was "kind of wet." Her Mother then reportedly asked Isabelle, "Did you kind of choke or something?" and Isabelle replied "no." Isabelle reportedly stated that he told her to "move" her tongue and that he put his hand on her head. Isabelle's Mother reported that Isabelle told her it had also occurred before the winter break but that Isabelle could not report how many times. She stated that this was Isabelle's first year in Mr. Chandler's class. Isabelle's Mother reported that Isabelle gets along with Alelah at school but said they were not "buddy buddy." She stated that Isabelle was usually excited to go to school but that recently Isabelle reported that she did not want to go to school and that her stomach hurt. Isabelle's Mother reported that she had kept her home from school either on Wednesday or Thursday due to stomach pain. She stated that Isabelle was not acting different when she came home from school on Friday.

**Interview of Becky by Detective Pierce 1/10/12**
According to the audio recording reviewed, Pierce interviewed Becky in a classroom at Whaley Elementary School. Pierce asked Becky what he last name was, when her birthday was, and who her teacher was. Becky reported that her teacher was Mrs. Yeager but that Mr. Chandler had been her teacher previously. When asked if she liked Mr. Chandler Becky said, "Kind of." Pierce asked if there was anything that she did not like about Mr. Chandler and Becky replied, "I forgot." Pierced then asked, "Do you remember something happening in Mr. Chandler's class where you... where your Mom was involved? Where your Mom had to come down to the school?" Becky said that she did and that it was "two months." When asked, Becky said that she played a game in Mr. Chandler's class in which she tasted "candy and chocolate." Becky said that the game happened at recess in the classroom and that only Mr. Chandler was in the room. Becky reported that she was lying on the floor but then said that they sat in a chair and that he blindfolded them. Becky stated that she only remembered on thing that she tasted and it was a "butter thingy." She said that Mr. Chandler told her to "taste it." Becky reported that it happened four times but then she that she did not remember. When asked, Becky said that she believed that it happened more than four times on "all different days." She stated that she "never" did the taste test in front of the class with the entire class watching. Becky reported that there was time in which she did not know what the object put in her mouth tasted like and that it was round. Becky stated that she thought it was bigger than her finger and it was the size of her mouth. Pierce asked, "Do you remember if it was hard? If it was soft? Was it gooey?" and Becky replied, "Gooey." She said that Mr. Chandler told her to "chew, chew" and then said, "Don't bite it." Becky then stated, "I chew and then later when—about one minute, two minute, water drop off." She reported that the "water" tasted "sugary, salty." Becky said that the water "landed" on her shirt and pants. She reported that the "water" was either white, yellow, or green. Becky stated that she took the blindfold off and that she saw the water. She said that it was on her jacket and pants. Becky reported that Mr. Chandler washed it off with water. When asked, Becky reported that something "came out" two times.

**Interview of Becky**

According to the video recording reviewed, the interviewer told Becky that if she did not know the answer to a question that she should say that she did not know. The interviewer also told Becky that if she did not understand a question that she should say that she did not understand. Becky said, "Okay." Becky said that she had "heard that something happened at school," and that her Mom had told her that. The interviewer told Becky that it was "really important" to tell the truth and asked Becky to promise to tell the truth. Becky said that she would and said that she would not tell any lies. The interviewer asked Becky what she liked to do, what kind of music she liked, what things she did not like, what her last name was, and when her birthday was. The interviewer also asked Becky about her last birthday. The interviewer then asked Becky if she why there were there and Becky said, "To ask me questions." Becky said that she did talk to her Mom about coming to the interviewer and that her Mom told her that it was about the school in October and her "old teacher." Becky reported that her Mom also said, "that something happened... a lot of people happened to in my classroom." Becky said the teacher's name was Mr. Chandler. She reported that she was moved out of Mr. Chandler's classroom because her Mom told her that she had to move.  Becky reported that this was because he "put gums and the stuff and he do something but my Mom didn't... my Mom don't like him doing that to me." The interviewer asked what he did that her Mom did not like and Becky stated, "Like putting something in my pants." Becky said that she did not know what he put in her pants and that he had her lay "in the floor next to his desk." She said that she was in between his desk and a closet. Becky reported that he covered her face with a blanket and used a blue blindfold. She stated that he put something in her pants but that she did not know what it was.  Becky said that she asked him what it was but that he said, "I can't tell you." She reported that it occurred during recess and that she was alone with Mr. Chandler. Becky stated that Mr. Chandler told her that Mrs. Vi (the principal) was coming but that she never did. Becky reported that he also put something in her mouth and said, "these three fingers all the way in my mouth." She said that it happened on the same day. Becky stated that it "happened again" and that he only put something in her pants one time but that he put something in her mouth three times. She stated that all of incidents happened at recess and that in one instance that her classmate Mikeala told her that Mr. Chandler was calling her and that she had to go back in. Becky said that all of the alleged incidents occurred "next to the desk." She reported that every time he put something in her mouth that she heard what she thought was keys. Becky reported that he put something in her mouth first and then she heard something. She said that each time he put something in her mouth that she was blindfold and that he only put something in her mouth that was unfamiliar one time. Becky reported that she thought it was blue and white. She stated that the object in her mouth was "round and gooey." When asked how big it was Becky reported that she felt like it was "all the way to [her] mouth." Becky said that "one minute later the water come out." Becky reported that it tasted, "salty." She then said, "I know why you're doing this again." The interviewer asked why and Becky said, "Because maybe I'm lying again. Like I taste different stuff?" The interviewer asked, "Oh, did you?" and Becky said no. Becky stated that the water dripped in her mouth, on her leg, and on her jacket. Becky reported that the stuff that got on her pants was "crystal clear," or white or yellow. Becky said that she did not remember. She stated that he wiped off her off with napkins and water. Becky said that he also put candy in her mouth and that it happened "almost the first day of school." She stated that the candy happened first and that she had to sit in a chair. Becky reported that the candy was Mentos and that it was "minty." When asked, Becky said that she did not remember if he said anything when the water came out. She stated that when the object was in her mouth that he told her, "Don't bite it." Becky reported

965

that he told her that he could not tell her what that object was while he was cleaning her off. She stated that she told her Mom, Dad, and sister about the alleged incidents. Becky said that she was not sure if her sister had heard everything. She stated that her Mom called her friend and that her friend told her to talk to the principal. Becky stated that Mr. Chandler's hand was holding the object that he put in her mouth and that she knew this because she could feel his hand. She reported that she felt his hand "at the end" and that he put "everything" in her mouth but that her mouth "wasn't big enough." Becky said that after the alleged incident that Mr. Chandler gave her a candy and said that she could go back to recess. She then reported that she was not sure if he had given her the candy after the time in which "water" got on her clothes. Becky stated that she was not in Mr. Chandler's chair during the alleged incidents but that she was in a blue school chair.

### Interview of Kim Tu

According to the audio recording reviewed, Tu stated that she had Becky moved from Mr. Chandler's class because he "mistreated" Becky. She reported that this happened sometime before Halloween. Tu said that Becky was called into the classroom alone with Mr. Chandler during recess. She reported that he covered her eyes with a "towel or something" and that Mr. Chandler sat her down on the floor. Tu stated that Mr. Chandler then touched Becky's legs of feet. Tu said that she talked to the principal and that Becky was switched to another class. She reported that she did not talk to Mr. Chandler but that the principal said it was "learning." Tu reported that the principal had asked Tu to bring in the clothes that Becky was wearing the day of the alleged incident. Tu stated that she brought the jacket to the principal and that the principal said it was "nothing." Tu said that Becky told her that Mr. Chandler had called her back to the classroom during recess and that two other friends went with her. Mr. Chandler allegedly told the other two friends that they had to say outside the classroom. Tu stated that Becky told her that Mr. Chandler put something in her mouth and that Becky told her this in October. Tu said that the principal talked to Becky and that Becky told the principal that her eyes were covered.

### Interview of Laurie at School by Lisa and Dave

According to the video recording reviewed, Lisa introduced her Partner, Dave. She then asked Laurie's last name, when her birthday was, what she did for her birthday, and about her family. When asked, Laurie reported that she knew the difference between a truth and a lie. Lisa asked, "If I said my pants are black, is that true or is that a lie?" Laurie said that it was true because Lisa was wearing black pants. Lisa asked if it would be a lie if she said Laurie's pants were purple. Laurie said she would be telling a lie because she was not wearing purple pants. Lisa told Laurie that it was important to tell the truth and Laurie agreed to do so. Lisa also told Laurie that if she did not know the answer to a question that she should say that she did not know. Lisa said that Laurie should tell her if she did not understand a question. Laurie reported that Mr. Chandler had been her teacher since the end of August. When asked, Laurie said that she had participated and watched a game in which a student was blindfolded and tried to guess an object they were holding. Laurie said she played this game with both boys and girls. She reported that she had seen it once and did not know how many times she had played it but said that she played it more than once. When asked when she played the game, Laurie said that she did not remember. Laurie reported that they sometimes played the game after they finished their work in class. She stated that she did not remember when the last time was that she played the game but said it was before Christmas break. Laurie reported that when playing the game, the student tied bags on

themselves to cover their eyes. She said that the student was sitting down on a chair. Laurie reported that she thought it was a student's chair. Laurie said, "Sometimes we're laying down. We took off our shoes." She reported that the students were by their desks and that Mr. Chandler stood next to them, on the side. When asked what objects Mr. Chandler used Laurie said the erase, glue stick, and paper clip. She stated that he never used food and that he sometimes used four objects. Laurie reported that he sometimes let them feel the objects with their hands and that they were supposed to guess the object. Lisa asked if there were any objects that he put in students' mouths and Laurie said, "Candy." She reported that the student puts the candy in their mouth. Laurie reported that Carl played the game more than other students. When asked if she had ever played the game at recess or after school Laurie said, "I don't know." Lisa asked the question again and Laurie said no. Laurie stated, "Sometimes when kids get in trouble... some kids get in trouble and the other kids leave to recess and one stays there and then puts the blindfold..." Laurie said this happened to her once and that it also happened to her friend Becky. She reported that Becky got in trouble "a long time ago." Laurie stated that when she "got it trouble" that she was alone in the classroom with Mr. Chandler and that the door was closed. Laurie said that this was during recess and that Mr. Chandler put a cloth blindfold on her. She stated that he got "some stuff" and that she had to feel it to guess what it was. Lisa said, "So he had you take off your shoes?" and Laurie replied, "Yeah." Lisa then asked, "And you said he had you put your feet on the desk?" Laurie said that after he feet were on the desk that he told her 'to feel" and that it was a marker. Lisa asked, "What else?" and Laurie said, "I don't know." Lisa then asked, "Were there three things?" and Laurie said, "I have no idea." Laurie then reported that she felt a pen and glue stick. When asked why he had her take her shoes off Laurie said that he sometimes let her feel with her feet. Laurie said that she did not think she saw the glue stick afterwards and Lisa asked, "Do you really think it was a glue stick?" and Laurie replied "Yeah." Lisa asked, "Why do you think that?" and Laurie stated, "Because it felt like a glue stick." Laurie reported that she did not remember if he told her what to do with the items. She stated that Mr. Chandler never made her put anything in her mouth and that she did not know how long she was in the classroom during the alleged incident. Laurie reported that she told her Mom and that her Mom said that she should have "nicer behavior" next time. Laurie said that Becky told her that Mr. Chandler blindfolded her in the classroom. Lisa asked if Laurie was in trouble once or more than once. Laurie said that it was one time and Lisa asked the same question again. Laurie replied, "only once." When asked, Laurie reported that Mr. Chandler had told her not to tell her friends what happened. She also reported that Mr. Chandler did not talk to her Mom about what happened the day that she got in trouble.

**Interview of Laurie by Lisa and Dave**

According to the video recording reviewed, Lisa told Laurie that it was still important to tell the truth. When asked, Laurie said that she did not remember why she got in trouble the day that Mr. Chandler made her stay behind at recess. Lisa asked what happened after the door was closed and Laurie said that she sat down on her chair. She reported that Mr. Chandler then blindfolded her with a blue blindfold. Laurie stated that she could not see anything and that Mr. Chandler told her to take off her shoes but that he did not say why. Laurie reported that she took her shoes off and felt items with her feet. She said that she still had socks on and felt a glue stick and the top of scissors. Laurie said she did not know how she knew what the items were but that Mr. Chandler told her what they were. She stated that he rubbed the items on the top of her foot but that she never held the items in her hand. Laurie stated that he was standing next to her feet.

967

When asked, she said that she did not hear "any zippers" or "any belt." She reported that when she took the blindfold off that he told her the items that she "got wrong." Laurie stated that Mr. Chandler never told her why they played the game. When asked if she studied Helen Keller in school Laurie said that they had a "book about that story." Lisa asked if he had ever told Laurie that they were playing the games to "try and feel how she [Helen Keller] felt?" but Laurie's response is inaudible. When asked if Mr. Chandler told her not to tell anyone, Laurie said, "I think he did." She reported that Mr. Chandler said that she could tell her friends. When asked, Laurie reported that she told her Mom. Laurie stated that she knew Becky and that "almost the same thing" happened to Becky. Laurie reported that Becky told her that she got in trouble and had to be with Mr. Chandler during recess to do the "blindfolded" thing. Laurie said that Becky got in trouble first but the Becky did not tell her the details of what happened during the blindfolded game. Dave asked Laurie what would happen if someone talked too much in Mr. Chandler's class and Laurie reported that he would make the student repeat the rules "all over again." Lisa asked if children had to stay in during recess if they got in trouble and Laurie said, "Sometimes I know, but sometimes no." When asked, Laurie stated that she was unable to peek under the mask and see what was going on.

## Interview of Wendy

According to the video recording reviewed, the interviewer informed Wendy that she should tell her if she did not know the answer to a question or did not understand a question. The interviewer said, "If I said to you, Wendy, what's my dog's name, what would you say?" Wendy replied, "I don't know," and the interviewer told her that she did not want her to guess and that Wendy should not feel like she had to answer her. The interviewer asked, "How many phalanges do you have?" and Wendy said that she did not know. The interviewer then said, "Yes, exactly." The interviewer then told Wendy that she should tell her if she said something wrong. The interviewer asked, "So if I said to you, Wendy, so you said that you are 16 years old?" Wendy replied, "No," and said that she was nine years old. The interviewer asked Wendy if she would tell the truth and she promised that she would. Wendy reported that she knew that a lie was "bad." The interviewer then asked, "That phone right there, that phone is a black phone. Is that a truth or a lie?" Wendy said that it was a lie because the phone was not black. The interviewer asked if it would be a truth or a lie to say that the tree was green and Wendy it would be the truth. When asked why she was in the interview, Wendy said to "talk about Mr. Chandler," and "game." Wendy reported that Mr. Chandler blindfolded students, made them sit, stood in front of them, and put something in their mouth. She also reported that "sometimes" he put "P.E. bags" over their head and then made them take their socks off and "gets something" on their feet. Wendy said that she did not know how many times she played that game. She stated that she played the game more than once and sometimes they would play it "every day." Wendy said at times they would not play it for two days. She stated that she he sometimes kept "you" in to play during recess. When asked to describe the very first time that she played the game, Wendy said that he made herself and her friend Melissa take off their socks and shoes. Wendy stated that they then put the "sack" over their heads and that he rubbed "it on one of our feet." She said that he then washed something and then came back to "do the other one." Wendy said that the incident occurred "last year," and that it was in the middle of the school year. When asked to describe what type of bag it was, Wendy said "like a potato bag in P.E." She stated that the alleged incident occurred during lunch recess and that the other children were "outside playing." Wendy reported that Mr. Chandler had told her and Melissa before lunch to come back in once

968

they were outside. She said that they came back to the classroom after eating lunch. Wendy stated that Mr. Chandler told them to put the sack on over their heads and to lie down when they got back to the classroom. Wendy reported that she did so and lay down on the floor by the bookshelf. She stated that he then rubbed something between their legs and feet. Wendy said that she and Melissa were lying on the bellies, side by side. She stated that Mr. Chandler then rubbed her feet but did not tell her why he was doing so. Wendy reported that it felt like part of his body was touching her feet but that she did not know which part of his body. She said that it made her feel "kind of grossed out," and that she did not like being in the classroom without her socks and shoes. Wendy reported that he rubbed her feet for three minutes or less. She stated that Mr. Chandler let them put their socks and shoes back on and go outside. Wendy reported that he said to go out and play or if they "used the whole recess" that he would tell them to go get the other kids to come back to class. When asked, Wendy reported that she was not able to see with the potato sack over her head. She stated that he did the "sack thing" for a couple of weeks but that he then made them sit blindfolded and put something in their mouth. Wendy reported that the first time this happened was at recess. She stated that she stayed in the classroom with Melissa because Melissa thought they were going to help him clean. Wendy reported that Mr. Chandler then pulled up students' chairs and told them sit in the chairs. She said that he gave them blindfolds and that they tied them on their eyes. Wendy described the blindfolds as things that women wear when they go to sleep with ties in the back. She reported that Mr. Chandler then put something in their mouth. Wendy said that while they were putting their blindfolds on that Mr. Chandler was at this desk "doing something of the storage." She stated that she did not know what he put in her mouth and that it did not have a taste. Wendy reported that it felt like a gummy bear but that it was not because she did not feel the "hands" that they have. She said that it was bigger than a gummy bear. Wendy reported that Mr. Chandler did not say anything to her when he put it in her mouth. She stated that he "pushed it in" and that he kept on pushing it in. Wendy stated that this made her feel uncomfortable. When asked why it made her feel uncomfortable Wendy said, "Because you're supposed to learn and help instead of putting something in our mouth." She stated that it last two minutes and that he would then go the sink and "clean something." Wendy reported that after he turned off the sink that he would "walk over to the next person and do the same thing." She said that when he was done he would give them lollipops and allow them to go back to recess. When asked, Wendy reported that they played the game where she laid on her belly and the game in which she sat in the chair more than one time. Wendy reported that she thought that one of his hands were on the back of her head when Mr. Chandler put something in her mouth. She stated that afterwards Mr. Chandler gave a gift that "you were supposed to get on another day," and that this gift was a book that they did crafts in. Wendy said that Mr. Chandler told her not to tell anyone about the gift and to put it in her backpack. Wendy reported that she told her friends about playing the game with Mr. Chandler and that then they played it. She said that she told Christina and Arleth. Wendy reported that Christina played the game and that she knew this because she "went in and didn't come back." She also said that Christina told her that she played the game but did not remember what Christina said about the game. When asked what shape the object was that Mr. Chandler allegedly put in her mouth Wendy said that it "was like an oval," and "like round." She reported that she could not close her mouth because the object was "long." When asked, Wendy stated that she did not feel his hands near her mouth. She said that he was standing in front of her while playing the blindfold sitting down game and that she knew this because she could feel his knees touching her. Wendy reported that they never played the game in class with all the students. She

said that Arleth was with her when this happened one time. Wendy stated that "the other time" she was with a guy and that he told her that he was eating candy but that Arleth was "doing something else." Wendy said that she sat blindfolded in the chair one time when she was alone with Mr. Chandler. When asked, Wendy reported that that they played the laying down game and sitting game more than ten times each. She said it occurred more than once a week. Wendy stated the last time it occurred was a week before her last day of third grade. She said that when she played the game laying down that she her the storage door close and "something clicking" that sounded "like a belt…. Take it off." She reported that she also heard the sound when she played the sitting game but that she did not hear it every time she played the game. Wendy reported that she heard the clicking sound about five times.

### Interview of Maria Leon
According to the audio recording reviewed, Leon reported that she learned of the allegations against Michelle's teacher on the news approximately a week before the interview. Leon stated, "And I asked my daughter, I asked her all the time but she didn't tell me anything." She reported that she believed her daughter had "changed a lot" in the past year. Leon reported that her daughter said, "No, mommy, he didn't do anything. He's a good person. He gives me lollipops." Leon said that she told her daughter that she needed to tell her the truth and "there are things that older bad people do and it's not okay." Leon reported that her daughter then told her "he would turn off the lights and sometimes… his parts." Her daughter then reportedly said, "No, mommy it's not truth. It's a lie." Leon again asked her daughter to tell her what happened and her daughter maintained that nothing happened. Leon reported that she asked her daughter for three days if anything happened and that her daughter said no. Leon stated that her niece knew that she was "interrogating" and that her niece "wanted to find out." She said that her niece called her yesterday and told her it was true. Leon reported that Naomi told her that her daughter would "suck him and she would suck him." She said that her daughter said he would turn off the lights but that she believed that she did see because she reported that he had "hairs." Leon said that her daughter told her that everything that Naomi told her was true and he would "put her on all fours and he would be behind her." Leon stated that her daughter had bad vision and needed to be close to things to see them properly. She then reported that her daughter said that he would ask her to bite him and then he would give her a lollipop.

### Interview of Arlet (sic) by Emilio
According to the video recording reviewed, Emilio informed Arleth that she should say, "I don't know," if she did not know the answer to a question. He then asked, "So if I ask you a question like what's my dog's name, what would you say?" Arleth replied, "I don't know." Emilio explained that Arleth did not know his dogs name but that she could answer the question whether she had a dog or not. He also told her that she should let him know if she did not understand a question. Emilio said that he might make mistakes and that Arleth should tell him when he is wrong. He asked Arleth what she would say if he asked, "Arleth, are you 30 years old?" and she responded with no. Emilio stated that it was important to tell the true and asked Arleth if she would promise to tell the truth. Arleth agreed to and said that she would not tell any lies. Emilio asked Arleth what she would say if he said her sweater was pink and she said that was the truth. He then asked, "If I say, Arleth that plant right there is red in color, is that a truth or a lie?" Arleth said it was a lie because the plant was green. When Emilio asked if she knew why she came to talk to him that day, Arleth said, "Yes. To know all the [inaudible]." Emilio then asked

if she had talked to a cousin recently about something that might have happened to her and Arleth said "No." When asked, she said that she had talked to her Mom. Arleth said that she "told her what happened and what he did." She reported that when she said "he" that she meant Mr. Chandler who was her third grade teacher. Arleth said that she told her Mom that Mr. Chandler "did bad stuff." She reported that Mr. Chandler put something in her mouth but that she did not know what it was. She stated that he covered their eyes and sometimes had the lights on but other times had the lights off. Arleth said that she did not know what the "thing" was that he covered their eyes with but said it was black. She stated that Mr. Chandler told her to put it on, but that she put it on herself. When asked what happened after that Arleth said that Mr. Chandler put something in her mouth but that she did not know how to describe it. When asked when the incident occurred Arleth reported it that happened "last year." She then stated that it happened "one time." Emilio asked if it happened one time or more than one time and "it was yesterday and then yesterday." When asked about the first time that it happened, Arleth reported that Mr. Chandler told her to come in at lunchtime and she knocked on the door when she got to the classroom. Mr. Chandler allegedly said to go in and she went into the classroom. Arleth stated that he then put something in her mouth and told her that he was going to give her a drink. She said that "it" tasted "weird." When asked, Arleth reported that Mr. Chandler told her to come in during lunch at recess. She stated that during the alleged incident that she was alone in the classroom with Mr. Chandler. Arleth reported that after she entered the classroom that Mr. Chandler told her to get a chair, which she allegedly did. Arleth then said that she sat down. She reported that when she came to the classroom that she went through the front door and that it was unlocked. She stated that after she sat in the chair that Mr. Chandler went to his storage and "did a lot of stuff." Arleth said that she then sat down, put the "thing" over her eyes, and that Mr. Chandler put "something" in her mouth. She stated that he told them that it was a "test" and that he said he could not tell them what the object was. Arleth reported that when she came into the classroom that Mr. Chandler had a glass of juice on his desk. She stated that when he put the object in her mouth that he told her to "lick on it or something." Arleth said that she did not know how to describe the object but that it was "squishy." She reported that there was no other taste to it and that Mr. Chandler told her to "bite it." Arleth said that it was "not a type of food." She stated that it "felt" bad when it was in her mouth and that it lasted five or ten minutes. Arleth reported that Mr. Chandler said to "keep on licking it," and "keep on doing it." She stated that he "took something out of his pants" and that he gave her a lollipop when it was done. When asked, Arleth reported that she did not know where Mr. Chandler's hands were when she had the blindfold on. She said that she could feel his leg. Emilio then asked, "Could you feel, like, his legs and knees on you?" and Arleth said, "No, I couldn't feel it." She reported that Mr. Chandler said, "keep on doing it." Arleth reported that she did not feel Mr. Chandler's fingers but that object "felt like skin" and that "there was hair around it." She stated that she "tried to look" and that she tried to look underneath the blindfold. She reported that she saw black hair, skin, and pants when she looked through the blindfold. Arleth stated that Mr. Chandler's pants were down but that she did not see his underwear. She said that he told her to "suck it" two or three times. Arleth stated that Mr. Chandler pulled his pants up, gave her a lollipop, and told her to go to recess. She reported that there was a "drink" in her mouth at the same time that the object was in her mouth. Arleth said that it tasted bad and that she did not want it but could not talk. She stated that she drank the drink and that it occurred one time. Arleth reported that after she drank the drink that Mr. Chandler told her to take the blindfold off. She said that the first thing that she saw when she took the blindfold off was Mr. Chandler "pulling up his pants or something." Arleth

971

reported that when this occurred that he was sometimes facing her and sometimes "looked in the closet." When asked what part of his body she saw when he was pulling his pants up, Arleth said, "I don't remember. I don't know.". She reported that she saw his underwear when he was pulling his pants up. Arleth said his underwear were "white," and that Mr. Chandler would put up his zipper. When asked what happened right after he allegedly pulled up his zipper Arleth stated that she did not know. She reported that he went to the storage, got a basket, "just tried to get a lollipop," and "said good job." Emilio asked Arleth if she "got any of the drink on her clothes or anywhere," and Arleth replied, "Well, sometimes... one time I... like it felt awful, and then I spit a little because I didn't want it and then I had to... I drank it." When asked, Arleth stated that this happened a different time than the alleged incident that she had previously been describing. She stated that Mr. Chandler did not tell her to not tell anybody the first time that it allegedly occurred. When asked if she told anyone about the alleged incident, Arleth said that "one time 20 or 30 days... I told my cousin." She reported that Mr. Chandler never told her it was a game. Arleth then reported that when they "played the game" that he would get a rope and hula-hoop. She said he would get the kids, the "ugly girls", and that he would then close the door and that they tried to open it. Arleth stated, "And they screamed and... when it was locked." She said that this was played with other children in the class and that they were outside. When asked, she said that she did not taste any type of food during the first alleged incident. Arleth then said, "It tastes like... like my cousin knows... it tasted like something." She reported that the drink was a "little juice something." Arleth stated that she did not tell anyone what happened when she went back to recess but that she was friends with Melissa and did not know if he did it to her. She then reported that Mr. Chandler told her not to tell. Arleth reported that it occurred again the "next day" after the first alleged incident. She said that it occurred at lunch but that Mr. Chandler told her in the afternoon to come to the classroom. Arleth reported that at lunch time she sometimes knocked on the door and sometimes did not because the door was open. She said that when she came to the classroom that she "knew" that she needed to get a chair. Arleth reported that the door was open when she arrived at the classroom and so she went it. She stated that Mr. Chandler locked the door and that nobody looked in. Arleth reported that she sat in the chair and that no one else was in the classroom. When asked, she said that Mr. Chandler got the blindfold but that she did not remember what happened after that. Arleth stated that she put the blindfold on and that he then put something in her mouth. She said that it tasted like skin and that it made her feel "bad" when it was in her mouth. Arleth reported that the object was the same object as it had been during the first alleged incident and that it last for five minutes. She stated that Mr. Chandler told her to "lick it and suck it." Arleth said that he also "did weird sounds." When asked, Arleth said that she did not feel his hands on her body. Emilio asked, "Did anything come out of the object that was in your mouth?" and Arleth said no. She stated that she felt the drink in her mouth again but that he would not "take the thing out" that she had. When asked to tell Emilio more about having the object and drink in her mouth at the same time Arleth said, "I don't know." She stated that she "needed to drink" the drink that she "spit it" because she could not drink it. Arleth then reported that she "drank it" and that she did not remember what happened next. She stated that Mr. Chandler told her to take the blindfold off so she did so. Arleth reported that Mr. Chandler was "pulling his pants up." She stated that she only saw his underwear and that it was white. When asked, Arleth reported that she saw what she spit out of her mouth and that it was "like yellow or something." She stated that there were "dots" and that her pants were black. Arleth said that the dots got smaller but that neither she nor Mr. Chandler cleaned them off. She stated that Mr. Chandler then gave her a lollipop and told her "good job."

972

She that "sometimes" he told her to tell the "kids to come," so she went and told all her classroom to come. Emilio asked, "Did he ever tell you not to tell anybody this second time?" and Arleth replied, "He never told me that." Arleth stated that the alleged incident occurred "like four times." When asked, Arleth said that the third time was "the same thing," that it occurred during lunch, and that there was on one else in the classroom at the time. Arleth reported that the third time was on a separate day and that it last about ten minutes. When asked to describe the third time Arleth said, "I don't know. I don't remember." When asked if she ever heard about something or a book called Helen Keller Arleth replied, "I don't remember but I think I did." When asked how the drink got into her mouth Arleth stated that she did not know but that it tasted and smelled bad. She stated that it smelled like "smoke or something like," and "awful." When asked if the drink was hot or warm Arleth reported that it was "a little hot, a little cold." Arleth said that she thought the liquid was in her mouth four times. She stated that he never did the blindfold in front of the class. Emilio asked Arleth if she knew what she saw when she looked underneath the blindfold and she stated, "I know what it was but I think that it was... it was his... um, my cousin knows. She knows." Arleth then said that she thought it was something "nasty." Arleth stated that the alleged incident occurred before Halloween when she was in third grade. She reported that she told her cousin Naomi about the incident the day prior to the interview. Arleth said that Naomi told her that she needed to tell her the things that she knew and said that Arleth could trust her. She stated that she had not told anyone else about the alleged incidents prior to telling Naomi but that Naomi's friend Gali was listening when she made her allegations. Emilio asked if she had ever talked to her Mom about what happened and Arleth reported, "No. I just told her that... the first time but it wasn't like all that he did." She stated that her Mom was asking her questions about what happened with Mr. Chandler before she told Naomi. When asked how her Mom "found out about Mr. Chandler" Arleth said, "She in the T.V., like, he took meetings, so she... I told her, Mom, that's the one that's in jail. And then the next day I told her." When asked who she told first, Naomi or her Mom, she stated that she told her Mom about the alleged incidents first but that she just told her "a little." Arleth stated that she told Naomi "everything." She stated that she told her Mom what happened a couple of days before the interview. When asked, Arleth stated that she told her Mom that Mr. Chandler closed the door, that she felt something bad happened, and that he would turn off the lights. She then reported that he did not always turn off the lights but that he turned off the lights "two days." When asked what she told Naomi, Arleth said that she told her that he pushed her. She also said that she did not tell Naomi about the four times but that she told her "everything that he did." Emilio asked Arleth to describe the incident in which Mr. Chandler pushed her and she said that she was on the ground. Arleth reported that he pushed her back and that he was behind her. She then said that he "would throw like a yellow drink." Arleth stated that she was alone in the classroom during lunch with Mr. Chandler. She reported that when Mr. Chandler pushed her she was on the ground "like a dog." Arleth said that he told her to put her feet back and her hands in front so she did so. She reported that Mr. Chandler then told her to not move. Arleth reported that he was pushing her with his head "at the back." Arleth said that he was touching her ankles with his hands but that no other part of his body was touching her. She said that it last for three minutes and that his head was pushing her "butt." Arleth reported that it made her feel "nasty." Arleth stated that she looked between her legs and saw that something yellow was falling "like water." She said that she did not see Mr. Chandler's body parts and that she did not know where the "water" came from. Arleth stated that the "water" was "going up from down." She said that Mr. Chandler's pants were up and the "water" dissolved on the ground.

973

### Interview of Naomi

According to the audio recording reviewed the interviewer asked Naomi if she knew why she was there, and she replied, "because of my cousin" and identified Arleth as her cousin. The interviewer then asked Naomi her date of birth, address, and phone number. When asked when Arleth told her something, Naomi responded "yesterday" and she indicated that Arleth had told her mother that her teacher had covered her eyes, but that Arleth hadn't said she was the only one to whom the teacher had done that. Naomi reported that the day before the interview, Arleth had asked her if she would get arrested if she told her something, "like something from a teacher," and proceeded to tell her everything the teacher had done to her. Arleth informed Naomi that the teacher would ask her to go to his classroom at lunch and that he would cover her eyes and stick something in her mouth and ask her to bite it. Arleth reported to Naomi that while the incident was happening the teacher was moaning and was telling her to "keep on doing it." This would continue for five to ten minutes, after which the teacher would give Arleth a lollipop and instruct her to leave. When Arleth indicated to Naomi that she saw a "part of a guy's thing" when she tried to peak from under the blindfold, Naomi asked Arleth to draw her a picture and she drew a guy's "thing". The interviewer asked what specifically Arleth had said she had seen, and Naomi replied, "a guy's thing." The interviewer then asked if Arleth had provided any more details. Naomi answered that Arleth had said she was sitting down and the teacher was behind her humping her. Arleth also said the teacher told her he couldn't show her what it was and that "when she was done, it tasted like pee, when she was biting the thing he would put in her mouth." The interviewer asked if Arleth was just telling Naomi what had happened, or if Naomi was asking Arleth questions. Naomi replied that Arleth was primarily telling her what happened but that at the end she did ask Arleth some questions. Additionally, it was Arleth who brought up that the object the teacher placed in her mouth had tasted like pee "and that it had hair and everything" and the reasons she hadn't told anyone was because she was afraid of being arrested. Naomi had asked Arleth if the teacher had told her not to tell anyone, and Arleth said, "no." Arleth had also told Naomi that the incident with the teacher did not happen every day, and that there would be several days between occurrences. Naomi reported that the incidents happened the previous year and that Arleth had "kept it" since last year.

### Interview of Ashlyn at School

According to the written report reviewed, Detective Martinez and a school staff member were present during this interview. The detective confirmed that Ashlyn understood the difference between the truth and a lie with the color of his clothing as an example. When asked who her teacher was now, Ashlyn responded that Ms. Kettmann was her teacher and that she was in the 4th grade. She affirmed that Mr. Chandler had been her teacher for the 3rd grade. When asked if she ever played a game with a blindfold in Mr. Chandler's class, Ashlyn reported that she hadn't, but that she understood what a blindfold was, "It's like that, that black thing, and then you tie it right here in your eye" and that it didn't have to be black.  She affirmed that she had put the blindfold on as part of a test in which there was smelling and touching. When asked what kinds of things she smelled and touched, she answered that the objects were an eraser, lollipop "and stuff" and when asked to clarify what "and stuff" was, she indicated that it was a balloon, key "and that's all." She reported that she had to both taste and smell the objects, and to guess what they were. Upon further questioning, Ashlyn reported that she didn't have to taste the key and balloon. When asked if she had to taste anything, she replied, "just lollipops, erasers and stuff in

a bottle." Ashlyn also reported that she didn't know the eraser was an eraser until Mr. Chandler told her. She first described it as soft and tasting bad, and later as soft and fluffy. When asked to describe the game, she reported that the child is blindfolded, that Mr. Chandler puts "it" in the child's mouth, takes it out really slow, and has the child guess. She first indicated that if the item was guessed correctly, it would be shown to the child later in the game. She later stated that she took off her blindfold after every item and that she didn't get to see it if she made a correct guess. When asked if she could close her mouth when the eraser was in it, she responded that she couldn't and that the eraser was not all the way in her mouth. She described it as a big eraser and drew a picture of it, a 1x2 inch rectangle. When asked if she had ever watched the game she indicated that she had only played it, but later reported that she watched other children in her class play. She also stated that the game was never played in the classroom when all of the children were there, and that she had played the game lots of times, "almost everyday" for an entire year. She then clarified that she had meant they played games in PE every day, and that the blindfold game was only played about 10 times. She also reported tasting a soda can, which she described as hard and which she reported that she didn't see (contradictory to her statement in which she said she did), a bottle with orange juice which she described as tasting "kind of soft and hard" and which she got to see, and Snapple lemon ice tea, which she also got to see. Ashlyn was asked when the game was played and she responded that it was played at recess and after school in the classroom when she was alone with Mr. Chandler. When asked if she was standing or seated she reported that she was sitting in a blue chair, the teacher's chair. She reported that Mr. Chandler was standing in front of her. When asked what the teacher does with the objects, she reported that he puts them in her mouth and that he didn't tell her to do anything with the object.

Interview of Ashlyn
According to the written report reviewed Detective Martinez reminded Ashlyn that she had to tell the truth. He asked her if she remembered talking about the game with the blindfold and she confirmed that. When asked to describe the blindfold, she said the front was a sleeping mask with a string that wrapped around the back of her head. She reported that Mr. Chandler got the blindfold from a closet. She indicated that her teacher put the mask on her in order to play a "secret game" in which, if she guessed correct, she would win a prize. She reported that she had to smell, touch or taste an item. When asked about the first time she'd played the game, she reported that she only had to touch items. She indicated that Mr. Chandler touched her lower leg with a key, a balloon, and a soda can. She only knew that those were the objects with which Mr. Chandler had touched her because he had told her so. When asked to talk about the second time, Ashlyn reported that she did the tasting game in which she tasted a lollipop and an eraser, and that she was alone with Mr. Chandler when the game was taking place. She did not see the lollipop, but was informed by Mr. Chandler that that was the object placed in her mouth. When asked about the eraser, Ashlyn indicated that she knew it was an eraser because she chews on the top of her pencil and knows what an eraser tastes like. When asked if she ever peaked through the blindfold, Ashlyn said that she had and that she saw the secret prize- lollipops. She also reported that Mr. Chandler had put a key and a balloon in her mouth. When asked if there was any other time when she played the game with her teacher, Ashlyn replied "no." When she was reminded of her previous answer of "ten times", she said she had forgotten and that it only happened twice. Detective Martinez asked Ashlyn if she had ever seen anyone else play the blindfold game, and she replied that Melissa, Christian and Suzanne had, and that she had seen

975

Mr. Chandler use the key and balloon with them. She indicated that the game was played during class time, not recess. When asked if Mr. Chandler ever touched her when he was putting those items in her mouth, she replied "no."

**Melissa's Questionnaire**
According to the written questionnaire reviewed Detectives Fregger and Lynch were present during the interview. When asked who her current teacher was, Melissa responded that it was Mrs. Brown and Mrs. Gioni and that she was in the 4th grade. She affirmed that Mr. Chandler had been her teacher for two years, and reported that she liked being in his class and that they used to play games such as head up seven up. When asked if she had played the blindfolded game she said, "Ahh..No." She indicated that she understood what a blindfold was. When asked if she ever played a game like that, she said that "he" would take her and two of her friends, Arleth and Wendy, inside the classroom at lunch or recess and would put a blindfold over them and they would take off her shoes. He would then put clay on their feet but never explained why he did that. She reported that she had played this game one time, and that at times the game consisted of sitting on a student's chair, blindfolded, and tasting things. She also said that Mr. Chandler had told them not to bite on the item he put in their mouth and that sometimes that item was a lollipop and they had to guess what flavor it was. At times it was an item she could not identify but that she described as bigger than a finger, about the size of a banana, and as not having a taste. She reported that Wendy was the only other person there. When she was laying down, Melissa reported that she put a blindfold on and had Mr. Chandler put clay on her feet, but that he never put anything in her mouth while laying down. When asked when the incidents happened, Melissa reported that it was in the 3rd grade. She also reported that she, Arleth and Wendy were the only ones who stayed behind during recess and after school to play the game, and that she didn't talk to Wendy about the game outside of class. When asked how long they were in the classroom, she replied, "like five minutes." She also indicated that the game was never played in front of the entire class. She said there were no other games where Mr. Chandler blindfolded them or touched them, and that there was nothing else about her teacher that she felt was unusual or different. When asked if Mr. Chandler had a favorite in the class, Melissa indicated that she and seven other students were his favorites and that he was really kind to them in class.

**Isabelle's Preliminary Examination Testimony**
According to the written testimony reviewed, Isabelle reported that she was seven years old, was in second grade, had attended O.B. Whaeley School and had had Mr. Chandler as a teacher. She reported that she was no longer in Mr. Chandler's class because he had done bad things to her. She stated that he made her sit in his chair, put a blindfold over her and then put something in her mouth. Isabelle indicated she had been in the class for a month before the incident happened, and then she stated that she didn't know how long she'd been in the class. Isabelle was shown Defense Exhibit A, an illustration of Mr. Chandler's room. Isabelle identified the chair in which she had sat during the incident. She also reported that she put the blindfold on herself and that it was a dark color, blue or black with an elastic behind but that she didn't know where it had come from. She reported that she was in the classroom by herself as the rest of the class was at recess and that Mr. Chandler put the blindfold on her and put something in her mouth. The object did not taste like anything, was shaped "like a curve", and was a little bit hard. Isabelle indicated that the object hurt her mouth because it was all the way back in her throat and she felt like she was

going to choke. She reported that Mr. Chandler told her to move her tongue around. She stated that Mr. Chandler was in front of her with his hands on the back of her head, bending her head back and forth. Isabelle said the event lasted a long time, and that she didn't like it and felt scared while it was happening. She reported that the incident happened more than ten times and that the "thing with the blindfold" was once played in front of the whole class but that she never had the blindfold on at that time. She also said that she didn't remember the first time she had come to the classroom and sat in the chair and put the blindfold on, and that the last time this occurred was "a week ago". She then reported that the first time she played the game the entire classroom was there, and that she was given candy and asked to guess what it was. Isabelle indicated that when she came in the room by herself, sat in the chair, and put the blindfold on, the object in her mouth was not candy, and nothing came out of the candy. She reported that she didn't talk to anyone else about what happened, but that her mother was the first person she told. She also reported that she talked to police officers and that she did her best to tell the truth. Isabelle said that she was instructed to only tell the truth in court, and that no one had told her what to say or had asked the questions beforehand. Isabelle was asked again about the object that Mr. Chandler had put in her mouth. She reported that she didn't know how big it was but that it seemed big, and that it was curved, but not curved like a pen. During the cross examination Isabelle indicated that Exhibit A was indeed her old classroom, but that she was attending a different school now. She reported that she had sat before in Mr. Chandler's chair. She stated that she did not remember the story about Helen Keller, but that she did remember the game that the entire class played once. She described Mr. Chandler picking out two students, herself and her friend, then having to sit on a chair with something covering her eyes. She was given candy and sometimes chocolate and was asked to chew it. She reported that the game began with a feeling test in which the students first felt the object with their hands, then their feet, and that a bag was placed over their heads. Isabelle reported that she never talked to her friends about guessing wrong to get more candy and that she never saw her teacher give food to other kids. She said that she had never talked to Ms. Peery and Mr. Lara about what was happening in the room, but then she reported that she did sit down with them and tell them everything she had just told the court. She also reported that she had told her mother that Mr. Chandler had put something in her mouth that made her choke. She said that when she went to her teacher's classroom she was always sitting in his chair and he was in front of her, standing. She also said that she was usually given three pieces of candy, and that she never felt his fingers touch her lips when he was giving her the candy. She first reported that she only received candy, but then she indicated that sometimes she was given cheese and crackers. Isabelle also said that the curved thing as well as the candy were not food, but that the crackers were food. She reported that her teacher put the curved thing in her mouth only half of the time when she was alone with him, and that the rest of the time she would receive candy or crackers. She indicated that the curved the was usually the first thing he would put in her mouth. She said that she never saw Mr. Chandler take thing out of the closet before the game started. Isabelle reported that none of her friends ever played this game at recess with Mr. Chandler, and that she didn't talk to another student, Becky, about it either. When asked if she ever heard any noise while playing the game, Isabelle reported that she heard keys. When asked why she didn't tell Detective Pearce that she had heard noises, she replied, "It's because I forgot, that's why" and she said no one reminded her or discussed with her the detail about the keys. When asked when the incident occurred Isabelle reported that it was just the first recess but upon further questioning she also reported that it happened after school as well, and that she was given candy on that occasion, which took place before

977

Christmas. She stated that the incident had made her feel bad but also that her mother had told her what happened was bad. When asked if she thought the game was fun, Isabelle replied, "no." She then reported that when the demonstration included the curved thing, she did not have to guess what was in her mouth but was rather just supposed to do it. She indicated that she finally told her mom because she was scared. Upon recross examination Isabelle reported that she didn't remember when she last played the game alone with her teacher, or when she told her mother. She said she didn't want to go to school that day because she was scared, not for another reason, like a test.

**Becky's Preliminary Examination Testimony.**
According to the written testimony reviewed, Becky indicated that she was in the third grade, which began in August. She said Mr. Chandler was her teacher at the time at O.B. Whaeley School. Becky was instructed to only talk about things that really happened. When asked if she had done something really fun in Mr. Chandler's class, Becky said she didn't. She reported that she never played a game with Mr. Chandler at recess. Upon further questioning, she said she did play a game with Mr. Chandler at recess. She described the game as taking place in the classroom. She said she was by herself, and that Mr. Chandler used a blue, green blindfold that had a "regular tie". She reported that she was called to the classroom by a fellow classmate. When shown People's Exhibit 1, an illustration of Mr. Chandler's classroom, Isabelle indicated that she played the game in the area in the right hand corner of the photograph. When asked if she remembered talking to police officers, she reported that she did talk to him in a children's room, and that she was coloring. She reported she didn't remember telling the officer that the first time she played the game with Mr. Chandler he covered her face with a blindfold and a blanket. When asked what she remembered about the game, Becky said that once the blindfold was on, Mr. Chandler put candy in her mouth. She guessed that this happened three times and said that the candy tasted like caramel. She reported that she was seated in a chair, one that didn't swivel, and that besides candy she was also given chocolate. When asked if she remembered telling the officer that Mr. Chandler put something round in her mouth, Becky replied that she didn't remember. She stated that the object was not all the way back in her mouth, and that she didn't know whether it was round or not or how big it was because she was blindfolded. She also reported that she didn't remember showing the officer that it was as big as the circle formed by her thumb and forefinger. When asked if anything came out of the object, Becky answered that she thought something gooey salty came out and that it got on her hands and clothes. She also reported that she thought she heard keys. She said that she and Mr. Chandler cleaned up the "gooey salty stuff", which was of a clear color, and that her blindfold was off at that time. When asked if she liked the game she played with Mr. Chandler, she replied "no" because she was using a blindfold. She reported that she didn't tell anyone about the game, but that she told her mom at some point. She said she didn't talk to anyone else about the game besides her mom and policeman. She reported that she told her mother about the game because she felt it was inappropriate and it made her feel bad when she played the game. She then said she didn't talk to anyone at school, but later reported that she did talk to the principal. When asked about the gooey salty stuff Becky said that she was given candy first, then chocolate, then the gooey stuff. She reported that she didn't know what Mr. Chandler was putting in her mouth, but that it felt like candy and other gooey stuff, which she described as "green stuff". She said that it felt like water when the gooey stuff came out, and that the watery stuff came out of "a man thing", the round thing. She also said the stuff tasted salty and that it spilled out of her mouth. She reported

978

that the round thing was big and almost took up her whole mouth and felt like it was going to make her choke. When asked when the three incidents took place, Becky replied that they happened at recess but never at lunch. When asked about coming to court, she indicated that her mom didn't want her to come to court until the lawyer talked to her family and gave them the paper. She reported that her mom told her to tell the truth. During cross examination, Becky was asked if she had practiced the questions beforehand, and she replied that she didn't. She also reported that she hadn't talked to anyone else about coming to court. When asked about the candy Mr. Chandler gave her, Becky reported that she was never given the same candy twice. She also reported that she didn't remember a story about a little deaf and blind girl. She agreed that the game consisted of being blindfolded and having something placed in her mouth then trying to guess what it was. When asked what things she was able to guess, Becky replied "candy and chocolate." She said she couldn't remember what kind of chocolate it was, but that the candy was minty. When asked if Mr. Chandler put water, sugary or salty, in her mouth, Becky replied, "no." She also stated that she had never eaten something that caused her mouth to water. When asked if the gooey thing was gooey right away or after a while of being in her mouth, she replied that it got gooey after a while. She also reported that she thought Mr. Chandler held the gooey thing in his hands. She said the game happened three times and that it wasn't fun because she doesn't like candy because she doesn't want to get cavities. Becky was then presented with Exhibit A, an enlarged version of Exhibit 1, Mr. Chandler's classroom. She reported that when she played the game she sat in another student's chair. When asked if she had seen the watery liquid fall out, she replied that she hadn't but that she had felt it. She also said that she took the blindfold off after she was done playing the game. When asked if Mr. Chandler had ever given her a drink and ask her to guess what it was, she said , "I did it all the time." She also reported that she didn't know if the liquid came out all three she played the game. Upon redirect examination Becky reported that she never played the game in a chair that had wheels.

**Laurie's Preliminary Examination Testimony**
According to the written testimony reviewed, Laurie reported that she was eight years old, she's in the third grade, and that when she started the third grade Mr. Chandler was her teacher at O.B. Whaeley School. Laurie couldn't remember her last Christmas break or whether Mr. Chandler was still her teacher after the break. When asked if she ever had to stay in the classroom at recess before, Laurie said that she did because she got in trouble, but she couldn't remember why she was in trouble. She reported that she had to wear something on her eyes, but she couldn't tell what that was. Laurie was shown Defense Exhibit A, Mr. Chandler's classroom. She identified her teacher's desk in the photograph but stated that when she stayed in at recess, she was seated in a student's desk. When asked what happened after she sat down in the chair, Laurie replied that she had to take off her shoes and keep her socks on in order to be able to feel things with her feet. She then reported that her eyes were covered by a blue blindfold that stayed on with an elastic and that she didn't know where the blindfold had come from. She said that after sitting down and taking off her shoes Mr. Chandler rubbed objects taken from the cabinet on her feet and that she had to guess what those objects were. Laurie was not able to guess correctly and was not able to describe the objects, but knew that it was more than one thing. When asked what the objects felt like she replied that one felt smooth and one felt bumpy. She said that this had only happened once, and that she couldn't remember whether it was before or after Christmas break. When asked if she remembered talking to a police officer, Laurie replied that she did and that the officer was a woman. When asked if she remembered her telling the officer that the object felt

979

like a glue stick, Laurie answered that she did. She also reported that she never peaked through the blindfold. She said that when the even was over she took of the blindfold and waited in the classroom for the other kids. When asked if she saw anything in the room that looked weird, Laurie replied, "no." She did say that she saw one of the things that she thought Mr. Chandler had rubbed on her feet, the glue stick, on a student's desk. She reported that Mr. Chandler had told her what objects he'd rubbed on her feet, but that she didn't remember what those were. She also couldn't remember if she had fun when she had the blindfold on. When asked if she told anyone about putting the blindfold on, Laurie replied that she told her friend Veronica and the police officers. She couldn't remember whether she had told her mom. When asked if she remembered seeing other children put the blindfold on she stated that she hadn't. Laurie did not know who Helen Keller was and didn't remember reading the book. During cross examination Laurie was asked if she had seen the guessing game played in the classroom with all the other kids. Laurie answered that she had, and that Mr. Chandler had volunteers demonstrate. She couldn't remember if the feeling game was performed first and what happened when the volunteers guessed second. She reported that she saw Mr. Chandler put food in the children's mouths using his fingers, and that he would ask them to taste it. The candy was described as Sweet Tarts and chocolate. When asked who brought her into the room when the game was done with her alone, Laurie replied that Amanda, the yard duty supervisor had. She reported that once in the room she sat down with her feet up on the desk. When asked if she remembered telling the officer that Mr. Chandler had touched her foot with a pen, Laurie said, "yes" and agreed that the pen was an object that she guessed right. She also reported remembering that she said the glue stick followed the pen.

## Wendy's Preliminary Examination Testimony

According to the written testimony reviewed, Wendy reported that she was ten years old, was in the forth grade, and attended O.B. Whaeley School. She indicated that Mr. Chandler was her third grade teacher. when asked if she ever stayed behind at recess, Wendy replied that she had because Mr. Chandler would play a game with her and her friends. The game consisted of Mr. Chandler putting something between their feet and rubbing it together or putting something in their mouth. When asked if she remembered the first time she played the game, Wendy replied that she did. She reported that she had gone to the classroom with her friend Melissa, and that Mr. Chandler covered their heads with potato bags. She reported that she and Melissa laid down on the floor and took of their shoes and socks. When shown Defense Exhibit A, Wendy identified her teacher's desk and the location where the game took place. When asked what happened after the shoes and socks were removed, Wendy replied that Mr. Chandler put something between their feet and rub them together. She reported that Mr. Chandler showed them part of the object, a purple piece for her and a red one for Melissa. She reported that Mr. Chandler told them the object was cloth, but that it felt like skin. Wendy said that she remembered talking to the police officers and telling them that she felt grossed out because she didn't know what was between her feet and felt that it was weird to be barefooted inside the classroom. She reported that this game happened more than ten times and that it was always the same thing being rubbed between her feet. When asked if she had always played the game with another friend and Mr. Chandler, Wendy responded that the first or second time she played the game she went back to the classroom alone with her teacher, that she sat down in a chair without wheels and that he put something in her mouth. She reported that Mr. Chandler put a black blindfold on her, then put something in her mouth that felt round, like skin, with a faint strawberry taste. She said the

980

object was bigger than a pen and covered most of her mouth. When asked if Mr. Chandler said anything to her when the object was in her mouth, Wendy replied that he said it was candy, but that it didn't taste like candy because when she bit into it Mr. Chandler told her not to bite it. She reported that she couldn't close her mouth when the thing was in it. She also said that Mr. Chandler was in front of her, pushing the thing into her mouth or taking her head and moving it closer to it. She demonstrated, using a pen, how Mr. Chandler was pushing the thing in and out of her mouth and reported that sometimes he would take her head and move it towards the object. When asked how long the thing that Mr. Chandler had put in her mouth was, Wendy replied that "sometimes he would go and do it to me and then do it to Melissa once or maybe twice." She indicated that it had only happened once when she was by herself, but that it happened more than once with Melissa. When asked to estimate, Wendy said, "10." She reported that the incidents when she laid on the floor were separate from those when she sat on the chair, and that it was the same object that was placed in her mouth. She also said that nothing ever came out of the thing that was in her mouth, that the object was wet when it touched her mouth. She indicated that after he put the round thing in her mouth he would sometimes give her lollipops or powdered candy and have her guess what flavor it was, and that the round thing always came first. When asked if she heard any noises while the round thing was in her mouth, Wendy replied that she heard shoe squeaks and the sound of metal hitting wood. She reported that she was uncomfortable when Mr. Chandler was putting things in her mouth because he had said it was candy and it didn't taste like it, and because when she bit he asked her not to bite and she didn't know how he knew she was biting it. When asked if she shared the incidents with anyone else Wendy replied, "no". She did, however, report that Melissa sometimes made the observation that Mr. Chandler's belt was on his desk. She said she and Melissa did not discuss the game, and that she didn't tell any grownups about what happened either. She then reported that the police officer was the first grownup she had talked to, and that no one else was ever in the room with her and Mr. Chandler except for Melissa. When asked if the thing in her mouth always tasted like strawberry or just at the beginning  she said, "at the beginning" and that while it was in her mouth, the strawberry flavor stayed. During cross examination Wendy was asked if she ever saw other kids play the game and she replied that she saw them walking to the class, but that she never played the game with the whole class in the classroom. When asked if she remember telling the police officer she learned about Helen Keller, she replied, "no." She reported that she was a boy and a girl go to Mr. Chandler's classroom, and that the boy had told her he'd tasted powdered candy and lollipops. She reported that she, Melissa, Arlet (sic) and other people who played the game wondered what it was, and that everyone thought it was candy. She also reported that she believed Mr. Chandler when he told them that what he had put between their feet was cloth.  When asked if Mr. Chandler's knees touched hers when he was putting the object in and out of her mouth, Wendy replied, "yes." When asked if she had seen the belt on Mr. Chandler's desk, Wendy responded that she hadn't and that she only knew about it because her friend had told her. She was then asked if the object stopped moving when she bit down on it and she said that it did, but that the motion then continued. She described the object as soft like jelly and reported that it didn't break when she bit it. When asked if two other girls did it too, Wendy replied that one of them did. She reported that while this was going on she couldn't feel any part of his body next to her or his hand on the object. She then admitted that her memory about what happened had faded a little. When asked if she talked to anyone else other than the police about what happened, she responded that she hadn't. Upon further questioning she remembered that she talked to Ms. Filo, the lawyer. When asked about the school librarian, Wendy wasn't able to



remember much. During redirection, Wendy was asked if she had ever sat in a chair other than the student's chair, to which she answered, "no."

**Arleth's Preliminary Examination Testimony.**
According to the written testimony reviewed, Arleth reported that she was nine years old, that her birthday was June 20th, and that she was in the fourth grade at O.B. Whaeley School. She indicated that Mr. Chandler was her third grade teachers. When asked if she had talked to some police officers earlier in the year, she replied that she had talked about what happened in the third grade, what Mr. Chandler did. She reported that she was in the classroom and she sat down in a student's chair and that Mr. Chandler gave her a blindfold that she didn't have to tie (it was already closed in the back. Arleth couldn't describe what happened after the blindfold was put on but said that Mr. Chandler told her to "lick it". She reported that he put something shaped like an ice cream cone in her mouth, that it was soft and didn't taste like anything, like any food she'd ever had before. Arleth also said that she remembered telling the police that it felt like skin. When asked at what time during the incident happened, Arleth replied that it happened during recess and that Mr. Chandler had asked her to come back to the classroom, but that she didn't know why. She reported that the door was closed. When asked how many times the incident happened, Arleth reported that it happened "almost like four times," and then a "little bit more." She also said the first time she went back to the classroom at recess he only put "the thing" in her mouth and that he gave her a lollipop when they were done. She reported that Mr. Chandler asked her to suck what was in her mouth, and that a liquid that did not taste like water came out of the thing. She said the liquid tasted bad, and that it spilled a little. When asked if all four occurrences were the same, Arleth replied that one time it was different. She reported that Mr. Chandler put her down on the floor "like a dog" on her hand and knees, and that Mr. Chandler was sitting on the floor behind her, pushing a bouncy ball on her butt. She was not wearing a blindfold on this occasion. She reported feeling uncomfortable. When asked if she had ever peaked under the blindfold when she was sitting on the chair, Arleth responded that she had and that she saw black hair. She reported that she remembered telling the police officers that she has seen skin. She wasn't able to tell whether Mr. Chandler had his pants up or down, but she did state that she thought she saw him pulling his zipper. When asked to draw what she saw, Arleth drew an oval shape and identified it as the object that was in her mouth. She also drew lines around the oval which she identified as hair. When asked if she received any instructions from Mr. Chandler other than to suck it, Arleth replied, "no." Arleth stated that she didn't remember whether the incidents had occurred before or after Christmas. When asked if she looked between her legs the time she was on her hands and knees, Arleth said that she did and she saw Mr. Chandler behind her, and on one occasion she saw a yellow liquid coming. She reported that Mr. Chandler was touching her ankles with his hands. When asked if she had told anyone about what had happened, Arleth said she had told her cousin Noemi (sic). She reported that she was drinking something pink and that she smelled it. She also stated that she had though she'd go to jail if she told anyone what was happening. During cross examination Arleth was asked if she remembered learning about Helen Keller in Mr. Chandler's classroom and she said that she didn't, and didn't remember telling the officer about that either. Arleth reported that she had seen other children play the game where the teacher put candy and chocolate in their mouth. She also reported that the entire classroom had played the feeling game with the feet. When asked if she had played the game by herself with Mr. Chandler, she responded that she had but was confused about whether it happened before or after the entire classroom played it, finally settling on before.

982

Arleth reported that the game with the entire class was played once while the one alone with the teacher four times. She indicated that she had played the game with the candy and that Mr. Chandler had tried grape, strawberry, and coconut flavors with her, but didn't use chocolate. Arleth couldn't tell whether there was candy all four times. When asked if she had talked about the incident with anyone else, for example Wendy, Arleth responded that she hadn't. When asked how often the incidents had happened, Arleth answered that it wasn't four days in a row, but was unable to specify how many days passed between each occurrence. She was then asked if Mr. Chandler had asked her to help demonstrate the game to the class, and she responded, "no." Arleth reported that she was the one who put the blindfold on and who took it off. She also reported that sometimes the thing was the first thing he'd put in her mouth, and sometimes it was the last. She also said that her hands were on the lap or pinching each other the entire time and that, on the occasion when she saw below the blindfold, she was able to do so by moving it with her eyes. When asked if she has glasses, Arleth replied that she does now but that she didn't in the third grade. She later admitted that she did have glasses in the third grade. When probed further about seeing from under the blindfold, she maintained that she was able to see until her eyes got dizzy. Arleth was asked when she first told someone about what happened, and she replied that she had told her cousin who told her mother. She then reported that she was interviewed by a police officer at the police department. When asked about her initial disclosure, she reported that was at a babysitter's house and was sitting with her cousin and babysitter talking about what had happened. Arleth reported that she didn't talk to her mother about her teacher prior to talking to her cousin, but that she later told her mom that he was a good man. When asked about the disclosure to her cousin, Arleth said that she told her cousin what happened with the teacher, and that afterwards her cousin asked her questions. She also stated that she didn't tell her cousin everything because she feared that she would tell her mother. When asked why she chose to disclose the events to her cousin, Arleth replied that she was the only one there and that what the teacher did was bad. She reported that she only told her mother what happened when she brought home a paper from school. She also said that she showed her cousin the paper and that's what prompted the disclosure. She reported that she did not draw a picture for her cousin. Arleth agreed that she had told her cousin that Mr. Chandler gave her something that tasted like pee, and said she received that three or more times and that the blindfold was on and she had the "thing" in her mouth. When asked if Mr. Chandler ever put her head up to give her some liquid to try, Arleth first responded "no," then changed her answer to "just one time." She reported that it tasted sweet, but she couldn't remember if she guessed what it was correctly. She also reported that she saw a bottle on her teacher's desk, and that the blindfold was on when he gave her the liquid. She indicated that she only felt liquid coming into her mouth, rather than the edge of a bottle. When asked about the occurrence when she was on the ground and Mr. Chandler pushed the ball, Arleth stated that she had also done the taste test with the candy or the thing that day. She later said that the taste test happened on a different day with the entire class, and that on the day when she was on the ground she did not taste anything. She also reported that the particular occurrence happened during the "little recess", not lunch recess. The cross examination resumed the following day. Arleth was informed of her statement made during the interview with the police officer in which she had stated that she did not talk to her cousin about her teacher. She indicated that she said that because she was afraid of going to "more places." When asked if she Mr. Chandler had said anything to her other than to "suck it" she replied that he hadn't, but agreed that she had told the police officers that her teacher had asked her to "bite it." She reported that she was asked that on one occasion. She also reported

983

that she had seen Mr. Chandler zip up his pants when he was facing closet and she was sitting in her chair. The distance was estimated to be about eight feet, and Arleth indicated that she didn't have her glasses and wasn't sure that she had actually seen her teacher zip up her pants. When asked about the order of events that day, Arleth agreed that she had come into the room, that Mr. Chandler told her to get on the floor, and that he had done the pushing with the ball. She also identified the location of where the yellow water fell, and said that no one cleaned it up. When asked about Mr. Chandler holding her ankles while on the ground, Arleth reported that he didn't have his hands on her ankles the entire time. Arleth was then asked if she remembered telling the police officer that the liquid tasted like juice, and she replied, "no." During redirect examination, Arleth was asked if there was food when the game was played with the whole class and she said there was, and when asked if food was present during the one on one game with Mr. Chandler she responded that there wasn't. Upon further questioning, Arleth indicated that she wasn't really sure whether Mr. Chandler had used food or not. When asked about who put the blindfold on, Arleth replied that she had done that every single time. When asked about the glasses, Arleth confessed that she did not remember when she got them and if she was in Mr. Chandler's class at the time. When asked about telling the police that she hadn't told her cousin about what had happened, she agreed that she wasn't trying to lie or be dishonest, that she had just answered wrong. Arleth could not remember if she got down on her hands and knees before or after her teacher got the ball. She reported that felt the ball but that she didn't actually see her teacher get it, and that she had assumed he had gotten it from the red bucket because all of the balls are held in there. When asked if Mr. Chandler had his hands on her ankles for a long or short time, Arleth replied, "a long time", "a short time." She also reported that she didn't see where the yellow liquid came from. During redirect examination Arleth was asked if she ever saw the ball in her teacher's hands. She answered "no." The court then asked her if she had indeed seen another boy playing the guessing game with Mr. Chandler. Arleth replied that she had, and that the boy, who was sitting, was alone with Mr. Chandler, who was standing. She reported that she saw Mr. Chandler give the boy candy and ask him to guess what it was. During redirect examination Arleth was asked if the boy played the game with her when the game was played in front of the class. Arleth replied, "no." During cross examination Arleth was asked if she was able to look underneath the blindfold when the thing was in her mouth. Arleth indicated that she was, and that she didn't know how long she was able to look out of the bottom of the blindfold.

**San Jose Police Department Narrative/ Supplemental Report**
According to the supplemental report reviewed, in addition to the alleged victims over 60 children were interviewed at the school. Some reported that they had played games in which their eyes were covered by one of several objects (blindfold, blanket, bag) and they had to guess what different items were, and some did not disclose any such games. Of the children who remembered playing the games, none reported inappropriate behavior on behalf of Mr. Chandler during the games. Additionally, none of the children indicated that they had stayed behind during recess or after school to play the games, and none indicated that they had seen other students stay behind to play the game.

<u>Inconsistencies</u>

984

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Primary Inconsistency (PI) = explicitly inconsistent (i.e., provided response to specific question that is inconsistent with response to same question asked at a different time)

Secondary Inconsistency (SI) = not explicitly inconsistent (i.e., not mentioned in one context, but mentioned in another, or implied that something did or did not happen when stated that something did or did not happen at another time)

N/A = not applicable (i.e., the question was not asked in specific interview)

Not mentioned = the alleged victim didn't mention the detail in the specific interview

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Isabelle

| Source | Allegation: shape of object put in Isabelle's mouth by Mr. Chandler | PI/SI |
|---|---|---|
| Interview 1 | N/A | N/A |
| Interview 2 | Round | PI |
| Interview 3 | Round | PI |
| Preliminary Testimony | Curved | PI |
| Source | Allegation: how many times the incident occurred | |
| Interview 1 | First says it happened one time, on Friday; then says it happened multiple times; then says it happened once the previous week but multiple times before Christmas break | PI |
| Interview 2 | Monday, Tuesday, Thursday and Friday | PI |
| Interview 3 | Friday, multiple times before Christmas break | PI |
| Preliminary Testimony | More than 10 times | PI. |
| Source | Allegation: whether the object made her choke | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | N/A | N/A |
| Interview 3 | Says object made her choke | PI |
| Mother's interview | Told mother object didn't make her choke | PI |
| Preliminary Testimony | Says object made her choke, says she told mother that the object made her choke | PI |
| Source | Allegation: taste of object Mr. Chandler put in Isabelle's mouth | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | Says it tasted like strawberry | PI |

985

| Interview 3 | Says it did not taste like strawberry | PI |
| Preliminary Testimony | N/A | N/A |
| Source | Allegation: other details about object put in mouth by Mr. Chandler | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | Says object was wet | SI |
| Interview 3 | Not mentioned | SI |
| Preliminary Testimony | Not mentioned | SI |
| Source | Allegation: sounds heard while Mr. Chandler had the object in her mouth | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | N/A | N/A |
| Interview 3 | When asked, says she didn't hear anything | PI |
| Preliminary Testimony | Says she heard "keys", when asked why she didn't tell the detective that she says she forgot | PI |

**************************************************************

## Becky

| Source | Allegation: Mr. Chandler put something in Becky's pants | PI/SI |
| Interview 1 | Not mentioned | SI |
| Interview 2 | Said Mr. Chandler put something in her pants while laying down | SI |
| Preliminary Testimony | Not mentioned | SI |
| Source | Allegation: color of gooey stuff | PI/SI |
| Interview 1 | Said it was white/ yellow/ green | PI |
| Interview 2 | Said it was crystal clear/ white/ yellow/ doesn't remember | PI |
| Preliminary Testimony | Said it was crystal clear | PI |
| Source | Allegation: how it felt when Mr. Candler put the object in her mouth | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | N/A | N/A |
| Preliminary Testimony | Said it made her feel like she was going to choke | SI |
| Source | Allegation: | PI/SI |
| Interview 1 | Said it went all the way in her mouth | PI |
| Interview 2 | N/A | N/A |
| Preliminary | Said it didn't go all the way in her mouth, near | PI |

10/8/12 29 of 70

| Testimony | | |
|---|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Laurie

| Source | Allegation: objects Laurie felt with her feet when alone with Mr. Chandler | PI/SI |
|---|---|---|
| Interview 1 | Marker, pen, glue stick | PI |
| Interview 2 | Top of scissors, glue stick | PI |
| Preliminary Testimony | Glue stick, pen | PI |
| Source | Allegation: whether she remembered who Helen Keller was/ if she had read about Helen Keller | PI/SI |
| Interview 1 | N/A | N/A |
| Interview 2 | Said she did remember | PI |
| Preliminary Testimony | Said she didn't remember | PI |
| Source | Allegation: whether she told mom about staying behind at recess and feeling objects with her feet | PI/SI |
| Interview 1 | Said she told mom | PI |
| Interview 2 | Said she told mom | |
| Preliminary Testimony | Said she doesn't remember telling mom | PI |
| Source | Allegation: how she ended up in the classroom | PI/SI |
| Interview 1 | Said she was held back in the classroom while the other kids went to recess | PI |
| Interview 2 | Said she was held back in the classroom while the other kids went to recess | PI |
| Preliminary Testimony | Said yard supervisor brought her to the classroom | PI |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Wendy

| Source | Allegation: shape of object Mr. Chandler put in her mouth | PI/SI |
|---|---|---|
| Interview 1 | Oval | PI |
| Preliminary Testimony | Round | PI |
| Source | Allegation: what the object Mr. Chandler put in her mouth felt like | PI/SI |
| Interview 1 | Like a gummy bear | PI |

987

| | | |
|---|---|---|
| Preliminary Testimony | Like skin | PI |
| Source | Allegation: details surrounding when the incidents took place | PI/SI |
| Interview 1 | Not mentioned | SI |
| Preliminary Testimony | Said one time she was brought to classroom from the library | SI |
| Source | Allegation: taste of object Mr. Chandler put in her mouth | PI/SI |
| Interview 1 | Not mentioned | SI |
| Preliminary Testimony | Faint strawberry taste | SI |
| Source | Allegation: what the object Mr. Chandler put in her mouth felt like | PI/SI |
| Interview 1 | Not mentioned | SI |
| Preliminary Testimony | Wet | SI |
| Source | Allegation: whether Mr. Chandler held the object inside her mouth | PI/SI |
| Interview 1 | Said he held it and moved it inside her mouth | PI |
| Preliminary Testimony | Said she never felt his hand on the object inside her mouth | PI |
| Source | Allegation: whether Mr. Chandler told her anything when the object was inside her mouth | PI/SI |
| Interview 1 | Not mentioned | SI |
| Preliminary Testimony | Said that she bit it and he told her "don't bite it" | SI |

**************************************************************

## Arleth

| | | |
|---|---|---|
| Source | Allegation: to whom she disclosed the incidents | PI/SI |
| Interview 1 | Said she didn't tell her cousin, then said she told her cousin, later said she told her mother first | PI |
| Preliminary Testimony | Said she told her cousin first, that she was wrong when she told detective that she didn't tell her cousin | PI |
| Source | Allegation: whether she saw Mr. Chandler's penis when she was down on the ground | PI/SI |
| Interview 1 | Said she didn't see his "weenie", Next she said "I think it was this" and pointed to the penis on the anatomical drawing | PI |
| Preliminary Testimony | N/A | N/A |

988

| Source | Allegation: | PI/SI |
|---|---|---|
| Interview 1 | Told detective it happened 5 times (4 sitting on the chair and 1 on the ground) | PI |
| Preliminary Testimony | Told the court it happened 4 times (3 sitting on the chair, 1 on the ground | PI |
| Source | Allegation: object used by Mr. Chandler to push Arleth from behind when on the ground | PI/SI |
| Interview 1 | Mr. Chandler's head | PI |
| Preliminary Testimony | Bouncy ball | PI |
| Source | Allegation: whether Arleth said her teacher was a good person | PI/SI |
| Interview 1 | N/A | N/A |
| Interview with Mother | Mother said Arleth told her the teacher was a good person | PI |
| Preliminary Testimony | Arleth said she never told mom the teacher was a good person | PI |
| Source | Allegation: whether Arleth drew a picture for her cousin Naomi | PI/SI |
| Interview 1 | N/A | N/A |
| Interview with Naomi | Naomi said Arleth drew her a picture of a shape and hair | PI |
| Preliminary Testimony | Arleth said she didn't draw Naomi a picture | PI |
| Source | Allegation: whether Arleth was wearing glasses when the incidents with Mr. Chandler happened | PI/SI |
| Interview 1 | Said he asked her to take off her glasses before putting on blindfold | |
| Preliminary Testimony | Said she wasn't even wearing glasses at the time, then she said she had glasses, and she had forgotten | |
| Source | Allegation: what the "water" in Arleth's mouth tasted like | PI/SI |
| Interview 1 | Said it didn't taste like anything, then said it tasted bad | PI |
| Interview with Naomi | Naomi reported that Arleth had told her it tasted like pee | PI |
| Preliminary Testimony | Said it tasted like pee | Pi |
| Source | Allegation: whether the lights were on/ off during the incidents | PI/SI |
| Interview 1 | Said Mr. Chandler possibly turned off the lights on 2 occasions | PI |
| Preliminary Testimony | Said the lights were on for all 4 occasions | PI |

*********************************************************************

989

## Other Inconsistencies

| Source | Allegation: whether Becky discussed with Laurie having to stay back and play the game | PI/SI |
|---|---|---|
| Laurie Interview 2 | Laurie said Becky told her that she had gotten in trouble with Mr. Chandler and had to stay back and play the blindfold game | PI |
| Becky Interview 2 | Becky doesn't mention that she ever told Laurie about the blindfold game, only reported that she told her mom, dad and sister | PI |

## Evaluation of the Interviews

Eighteen specific factors have been identified in the empirical research[1] related to potential bias in forensic interviews of children.  The following report details the presence of these factors in available materials in the above-named proceedings.  This review and report is limited insofar as it is limited to the materials available for review.  The presence of additional information not available for review (e.g., video recordings of additional interviews) limits the ability to provide a comprehensive assessment. Should additional information become available at a later point that would meaningfully alter the content of this report or the conclusions therein, the undersigned may offer an amendment to this report.

1) The child, due to rapport problems, may not have been comfortable and therefore may not have answered in a complete and accurate manner.
2) The child did not know that she could say, "I don't know" when she did not know the truth.
3) The child did not understand what it means to tell the truth.
4) The child did not know the importance of telling the truth.
5) The child did not understand her role in the interview or the purpose of the interview and therefore her answers may have been distorted.
6) The child might have felt uncomfortable discussing certain topics with the interviewer, therefore may not have answered in a complete and accurate manner.
7) The child had experienced some sort of externally derived threatening experience, which may have served to distort answers (e.g., fear of threats to self, loved-ones, or property).
8) The child did not feel as though she had a choice in the type of responses she provided.
9) The child answered in a certain way in an attempt to please an authority figure.
10) There were leading questions.
11) The child's verbalizations at times were disconfirmed.
12) The interviewer inappropriately reinforced certain types of answers.
13) There were repetitive and perhaps coercive questions.
14) There were aspects of the child's total response (e.g., body posture, facial expressions, etc.) that gave a different interpretation to the child's answer.

---

[1] Fanetti, M. & Boles, R. (2004).  Forensic interviewing and assessment issues with children.  In W. O'Donohue and E. Levensky, *Handbook of Forensic Psychology: Resource for Mental Health and Legal Professionals.*  Elsevier Academic Press: New York.

990



15) The interviewer encouraged the child to speculate about important details, after the child has indicated that she was not sure about an answer or did not have the information.
16) The interviewer referenced the fact that other individuals (e.g., peers) had been interviewed regarding the interview topic and/or indicated what the other individuals' responses were.
17) The interviewer focused or redirected the child toward information about a specific detail or individual.
18) The child's report has been contaminated by some outside source, such as experience with another professional (e.g., retroactive interference from some other interviews)

**Interview of Isabelle by Officer and Sergeant 1/9/2012**

*FACTOR 1) Establishing Rapport (NOT RULED OUT)*

A good interview will begin by building rapport with the child. This should be an experience for the child where interaction with the interviewer is perceived a pleasant. This is very important due to the potential impact rapport can have later, particularly on the child's willingness to provide answers to difficult or uncomfortable questions without being directly cued. Moreover, good rapport is important so that the child can feel as comfortable as possible to resist leading questions, or to tell the interviewer about outside contaminating influences. It should be noted that while a child may smile and seem comfortable at the beginning of an interview, limitations in trust often emerge when the child reports the details of a sexual abuse event. At this point, if rapport is lower than expected, the child may find it extraordinarily difficult to report honestly and accurately, particularly about sensitive topics. The child may feel responsible for some of the event, and may not want to talk about things that may make him/her seem 'bad' or 'dirty'. Therefore, it is better to spend sufficient time building rapport at the beginning of the interview as well as intermittently throughout the interview.

The rapport section of a forensic interview with a child serves several purposes; first, rapport is hypothesized to promote truthful and detailed disclosures. It is recommended that interviewers "build rapport with children by asking open-ended questions about neutral, everyday events before questioning them about sensitive topics"(p. 58)[2]. This leads to a second benefit in that it allows for the opportunity to assess the quality of rapport early in the interview (e.g., is the child providing curt responses, expansive answers, is the child able to participate in a question/answer interchange). It is recommended that the interview be suspended until a later date before questioning about sensitive topics, if the child is showing poor responsiveness during rapport building.[3]

There was no time spent building rapport with Isabelle prior to questioning about the alleged incidents. Therefore, rapport problems cannot be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (NOT RULED OUT)*

---

[2] Lamb, M. E., Hershkowitz, I., Orbach, Y. & Esplin, P. W. (2008). *Tell me what happened: Structured Investigative Interviews of Child Victims and Witnesses.* Wiley: West Sussex England.
[3] Lamb et. al. (2008).

991

Children may not understand that they are allowed to state, "I don't know." They may feel that they have a responsibility to provide details, even when they are unsure.

Isabelle was never told that she could answer, "I don't know" to a question whose answer she didn't know. Therefore, this potential source of bias cannot be ruled out.

## FACTOR 3) Truth Meaning (NOT RULED OUT)

It is important to determine the child's knowledge of this concept, and it is beneficial to do this prior to any detail collection. Children may have skewed or unusual ideas about what it means to tell the truth. Without information related to this, it is impossible to determine whether the child's belief about the truth is correct. Extended truth-lie discussions (TLD) have been shown to lead to more accurate reporting in children.[4]  The American Professional Society on the Abuse of Children (APSC[5]) note that clarifying the child's ability to differentiate truth and lie prior to beginning abuse-specific questions can indicate aspects of the child's competence and credibility.

Isabelle was not asked if she knew the difference between a truth and lie. Therefore this potential source of bias cannot be ruled out.

## FACTOR 4) Truth Importance  (NOT RULED OUT)

Stating the actual truth has different importance in varying situations and children may confuse the relative importance in the interview setting. For example, stating the truth (related to reality) is not valued while playing games (e.g., cops and robbers, etc.). Moreover, there are other situations where truth can have easily confused importance. When a loved-one asks for an opinion regarding a recent hair cut even adults may have difficulty determining where to place truth in terms of importance. Children are exposed to this type of determination being made by others and being increasingly asked of them as they mature. Therefore, it is vital to assess where children have placed the importance of truth in the interview setting.

A discussion about the value of telling the truth in the interview was not conducted. Therefore, truth importance was not addressed and cannot be ruled out as a potential source of bias.

## FACTOR 5) Role/Purpose (NOT RULED OUT)

Children may have a skewed or inaccurate idea about their role in the interview, or the purpose of the interview itself. They may believe that their role is to convict someone or to protect someone. Likewise, they may believe that the purpose of the interview is to convict or protect someone. These beliefs may affect the child's willingness or ability to provide accurate information. Lamb et al. (2008) state "interviewers must be sensitive to children's perceptions of their knowledge and status. To facilitate comprehensive and accurate reporting by children, for

---

[4] Huffman, M. L., Warren, A. R., & Larson, S. M., (1999).  Discussing truth and lies in interviews with children: Whether, why, and how?  Applied Developmental Science, 3, 6-15.
[5] American Professional Society on the Abuse of Children (APSAC) (2002).  Practice Guidelines: Investigative Interviewing in cases of alleged child abuse.

992

example, interviewers should emphasize that they do not know what the children experienced, and that it is thus important for the children to tell as much as they know[6] (p. 23).

Isabelle was never asked if she knew why the interview was being conducted and what she thought her role was in the interview. Therefore, this potential source of bias cannot be ruled out.

## FACTOR 6) Disclosure Inhibition (NOT RULED OUT)

Disclosure inhibition concerns willingness to discuss certain subject manner. Sometimes, children might feel afraid to discuss particular topics, such as parts of her body. Therefore, this might interfere with children's abilities to openly disclose certain information.

Whether or not Isabelle felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

## FACTOR 7) Threats/Bribes (NOT RULED OUT)

Children may have been exposed to experiences that can affect their willingness to provide some details or their willingness to tell the truth. A child may be threatened with harm to self, to loved-ones, to pets, or to personal property, if they provide a specific detail or class of details. Also, the same pressures may be experiences because the child was promised special things (i.e. bribes) to provide or not provide specific details or classes of details. The interviewer has a responsibility to assess for these possible influences. This may be done through simple, non-leading questions.

Whether or not Isabelle had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

## FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)

The form of some questions can make it seem as though only specific responses are wanted, even if the direction of the responses is not hinted. For example, yes/no questions often seem to require yes/no responses, even when accurate responses do not clearly fall in either category. For example, if a child is asked, "Did your step father touch you in a bad way?" and that this sentence structure implies to the child that a yes or no answer is required they may not ask for clarification when they are confused whether placing certain lotions on parts of their body is acceptable. In addition, research has shown that free narratives and open-ended prompts are the best way to gain accurate information from a child (e.g., Dent & Stephenson, 1979; Goodman et al., 1991), and that close-ended questions result in significantly more inaccurate answers than open-ended questions. It is important that the interviewer structure the questioning so this mode of questioning is most frequent. In an interview setting, children should feel free to answer in a way as they feel most comfortable. The best way to determine how free they feel in providing their answers is to ask them about this, and provide examples.

---

[6] Sternberg, K. J., Lamb, M. E., Esplin, P. M., Orbach, Y., & Hershkowitz, I. (2002). Using a structured protocol to improve the quality of investigative interviews. In M. Eisen, G. S. Goodman, & J. Quus (Eds.), *Memory and suggestibility in the forensic interview* (pp. 409-436). Mahwah, NJ: Erlbaum.

APSAC recommends asking open invitation questions (i.e. "tell me everything about..." (p. 7)) rather than closed questions such as who, what, where, when, and why questions.[7] Lamb et al. (2007) recommend a "funnel approach" to interviewing in which open ended questions are asked first to elicit free narratives from the child and in which close-ended questions are used sparingly to clarify content. Closed questions limit the option of responses available to the child, and the child may feel that she can only answer from options provided.

No open ended prompts were used in this interview. Therefore this potential source of bias cannot be ruled out.

### FACTOR 9) Authority Pleasing (NOT RULED OUT)

Children, especially young children, sometimes seek to please adults who appear to them as authority figures. This is often reinforced by parents and teachers and is often not a problem of any sort. However, it can be a problem in forensic interviews of children, or in the testimony of children. The task for the child in such a setting should be to relate the remembered details of a potential event, without regard to what others wish to hear. However, in pure form, this is not always 100% likely with adults, and perhaps less so with children. The job of the interviewer is to assess for this influence. The interviewer should ask about it and provide corrective information and assurances when called for.

The officer and the sergeant did not assess whether Isabelle would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

### FACTOR 10) Leading Questions (NOT RULED OUT)

The term 'leading questions" requires some clarify in definition. Questions that require the endorsement of some antecedent information in order to be answered are the clearest example. For instance, the question, "While he was in your room, what was he wearing?" can be a perfectly acceptable question, or a leading question. If the child previously stated that the man was "in the room," the question is not leading. However, if the first piece of information was not provided, the question is problematic. To answer the question, "What was he wearing?" the child implicitly endorses the statement, "While he was in your room." This can happen even if the child states, "I don't remember." In fact, it not only implies that the man was there, but the child may incorporate the detail in future reports. Such leading questions should be avoided.

Isabelle was asked one leading question, "so you never saw what he put in there," after she had said that Chandler had taken the object out of her mouth prior to taking the blindfold off. Therefore, this potential source of bias cannot be ruled out.

### FACTOR 11) Disconfirmation (RULED OUT)

---

[7] American Professional Society on the Abuse of Children (APSAC) (2002). Practice Guidelines: Investigative interviewing in cases of alleged child abuse. Self published.

994

Children sometimes respond to being told that they are incorrect. If a child disagrees, this is usually apparent in the child's verbalizations. However, if the child accepts the assertion that she has actually made a mistake, they may re-evaluate their recall and make alterations to match the authority's assertion. If it is believed that a child is being incorrect in her recall a direct disconfirmation does not clarify the issue of fact, because it is simply more likely to establish a correlation with the disconfirmer's belief.

Isabelle's responses were not disconfirmed during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Basic and well-established principles of behavior theory indicate that the behavior following reinforcement will increase and those that are punished or not reinforced will decrease. This applies to child interviews as well. It is important to consider very carefully how to respond to specific types of responses that a child may provide. For example, if an interviewer never looks interested in details, which can be used to show guilt, but pays particular attention to the details, which can be used to acquit, the child may begin to provide only exculpatory information, and vice-versa. In essence, the interviewer may shape not only the information the child provides, but also the way the child recollects additional information. The goal for an interviewer should be to respond very neutrally to different types of information, but reinforce talking and participating in general.

Isabelle's answers were not inappropriately reinforced therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (NOT RULED OUT)*

Repetitive questions are problematic with children. They can alter a child's response rather than to increase the accuracy of the response. The child should be asked questions only one time. Repeated statements that are false can contribute to a non-veridical memory in a child. Moreover, asking a question several times when no responses are given may indicate to the child that non-responses are not sufficient and that something must be said. However, the child may be non-responding simply because of uncertainty and the non-response is then functionally accurate. If they later provide a detail, there is as much reason to be suspicious of the detail as there is to believe it. In the case of non-responses, it is imperative to assess why the child is not responding.

Isabelle was not asked repeatedly whether anyone else was in the classroom while the alleged incident was taking place. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 14) 'Total Response' Confusion (NOT RULED OUT)*

Humans respond to queries and generate communication in three forms: verbal, para-verbal, and non-verbal. Verbal communication refers to the words chosen. Para-verbal communication refers to the tone of voice, pitch, and volume of the delivery. Non-verbal communication refers

995

to the body posturing and body language surrounding the communication. All three forms of communication are important. In fact, some tests indicate that in normal interpersonal face-to-face exchanges, non-verbal is the most important, followed by para-verbal, and verbal is the least important. Additionally, these modes can transmit different messages simultaneously. Saying, "I love you" in a disdainful tone of voice is an excellent example. Another example is stating, "I did that," in a questioning tone of voice. Lack of information about possible confusion is problematic. Also, a lack of follow-up inquiry when such potential confusions are identified is also problematic. This is one of the more powerful rationales for videotaping interviews.

Because the document reviewed was in audio form, this potential source of bias cannot be ruled out.

### FACTOR 15) *Encouraging Speculation (RULED OUT)*

The purpose of the forensic interview should be to generate as much information about reliable memory of experienced events as possible. The concept of guessing or speculating is contrary to that goal. In addition, children may be more likely to incorporate details that they speculate about into their actual event recall or reported memory. Therefore, not only should speculation not be encouraged, it should actively be discouraged.

Isabelle was not encouraged to speculate. Therefore, this potential source of bias can be ruled out.

### FACTOR 16) *Conformity Press (RULED OUT)*

People are likely to desire to be consistent with each other or with their previous positions, even when they are unsure of the accuracy of those people or positions. Therefore, if the best independently remembered recall is sought, then children should not be made aware of the reports of others and should not be reminded of their previous statements.

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

### FACTOR 17) *Response Class Focus (RULED OUT)*

Occasionally, interviewers can respond differently to details provided about one individual or about one type of event. For example, if Mr. X is thought to have committed a crime, but the child says something about Mrs. X., interviewers sometimes make statements like, "But I want to know about Mr. X." In this case, the child has just received information that other information is not sought. Other people who may be guilty may now not be implicated, and other information that may be exculpatory may be overlooked. Similarly, a lack of follow-up questions about Mrs. X., and a multitude of follow-up questions about Mr. X. can function to communicate to the child that the interviewer is only interested in Mr. X.

Practice guidelines for professional conducting forensic interviews of children recommended that interviewers "should approach the interview with an open mind about what may have happened. An interviewer's determination to confirm a particular hypothesis, without consideration of

996

plausible, alternative explanations, may impair the capacity to receive and objectively interpret information form the child and may lead to substantial interviewer error[8] (p. 5).[9]

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Rarely is a child interviewed only once about an alleged illegal event that happened to them, or that they witnessed. Parents and teachers may wish to thoroughly interview the child to determine if they should call the authorities; likewise, therapists working with children with alleged histories of abuse may prompt for details as part of the therapeutic process. However, this questioning has as much potential to influence the child's reported memory, as do subsequent professional interviews. Furthermore, bias in early interactions or interviews may later a child's memory to the degree that it becomes ingrained and, in subsequent interviews, the incorrect information seems like truthful recollection to the child. Without knowledge of previous interviews' contents, even a perfect previous contact others have had with the child, and to determine (as well as possible) the contents of those contacts. If previous bias can be ruled out, the current interview is considerably stronger.

Isabelle had discussed her allegations with her Mother prior to the interview. Therefore, this potential source of bias cannot be ruled out.

Interview of Isabelle by Detective Pierce

*FACTOR 1) Establishing Rapport (RULED OUT)*

Detective Pierce asked Isabelle's name and if she liked coloring. Pierce told Isabelle that his job was to talk to "little kids" about "stuff that has happened to them." Pierce then asked how old Isabelle was, when her birthday was, what she received for her birthday, and where she went to school. In addition, Isabelle did not seem inhibited with Pierce (i.e., provided details, etc.). Therefore, rapport problems can be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (RULED OUT)*

Pierce said, "I'm going to ask you some questions today, okay? And if you don't know the answer, just tell me you don't know the answer. Okay?" Isabelle agreed. Therefore, this potential source of bias can be ruled out.

*FACTOR 3) Truth Meaning (NOT RULED OUT)*

---

[8] Sorensen, E., Bottoms, B. & Perona A. (1997).  Handbook on intake and forensic interviewing in the child advocacy center setting.  Washington DC: National Network of Children's Advocacy Centers.
[9] American Professional Society on the Abuse of Children (APSAC) (2002).  Practice Guidelines: Investigative interviewing in cases of alleged child abuse.  Self published.

Pierce did not ask Isabelle if she knew the difference between a truth and lie. Therefore this potential source of bias cannot be ruled out.

*FACTOR 4) Truth Importance (RULED OUT)*

Pierce did tell Isabelle specifically that it was important to tell the truth during the interview. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

*FACTOR 5) Role/Purpose ( RULED OUT)*

Pierce asked Isabelle, "Do you have any idea why we're here today?" and Isabelle said, "To help kids." When asked if she knew what they were there to talk about, Isabelle said no. Due to the fact that Isabelle reported that she believed the interview was to help kids (i.e., protect someone) this potential source of bias can be ruled out.

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

Whether or not Isabelle felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

Whether or not Isabelle had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)*

Pierce relied on close-ended questions to elicit answers from Isabelle, for example when asking her what Mr. Chandler did with the item he put in her mouth, "Does he just take it out" and "When he takes it out, do you still have the blindfold on?". He asked significantly fewer open-ended questions. Therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

Pierce did not assess whether Isabelle would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (NOT RULED OUT)*

Pierce did ask Isabelle one leading question as evidenced by that fact that he asked her if the object in her mouth was "kind of hard" but "also kind of soft" and Isabelle nodded. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

998

Pierce did not disconfirm Isabelle's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Pierce did not inappropriately reinforce Isabelle's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (RULED OUT)*

Isabelle was not asked repeated questions during this interview. Therefore, this potential source of bias can be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Isabelle did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

Pierce did not encourage Isabelle to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (NOT RULED OUT)*

Conformity press was used during this interview. For example, Pierce asked Isabelle is she had told her Mom about something that happened with her and a friend named Aleah. Isabelle said that she had not and Pierce asked, "You don't remember telling your Mom anything about that?" Isabelle again said no and Pierce asked, "What about chocolate." Isabelle then replied, "Oh, yeah." Pierce then said, "And you told your Mom something about chocolate. Did someone put chocolate in your mouth before?" Isabelle said that Mr. Chandler had and that he put some in Aleah's mouth. Therefore this potential source of bias cannot be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Isabelle had discussed her allegations with her Mother, an officer, and a sergeant prior to the interview. Therefore, this potential source of bias cannot be ruled out.

**Interview of Isabelle 2 by Detective Pierce**

999

**FACTOR 1) Establishing Rapport (RULED OUT)**

Pierce made no attempt to develop rapport during this interview with Isabelle. However, he had developed reasonable rapport with her during the previous interview which had occurred the day before. Therefore, rapport problems can be ruled out as a potential source of bias.

**FACTOR 2) "I don't know" Responses (RULED OUT)**

Pierce told Isabelle that if she did not know the answer, that she should tell him. Isabelle said, "Okay." Therefore, this potential source of bias can be ruled out.

**FACTOR 3) Truth Meaning (NOT RULED OUT)**

Pierce did not assess Isabelle's understanding of a truth and a lie. Therefore this potential source of bias cannot be ruled out.

**FACTOR 4) Truth Importance  (RULED OUT)**

Pierce did tell Isabelle specifically that it was important to tell the truth during the interview. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

**FACTOR 5) Role/Purpose (NOT RULED OUT)**

Pierce did not asked Isabelle if she understood why she was being interviewed a second time or what she understood her role to be. Therefore this potential source of bias cannot be ruled out.

**FACTOR 6) Disclosure Inhibition (NOT RULED OUT)**

Whether or not Isabelle felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

**FACTOR 7) Threats/Bribes (NOT RULED OUT)**

Whether or not Isabelle had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

**FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)**

Most of the questions Pierce asked were close-ended questions. In fact, the entire discussion of whether anything got on Isabelle clothes or mouth as well as the flavor of the item that Mr. Chandler had put in her mouth consisted of close-ended questions. Therefore this potential source of bias cannot be ruled out.

**FACTOR 9) Authority Pleasing (NOT RULED OUT)**

1000

Pierce did not assess whether Isabelle would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

Pierce did not ask Isabelle leading questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

Pierce did not disconfirm Isabelle's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Pierce did not inappropriately reinforce Isabelle's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (NOT RULED OUT)*

Due to the fact that this was Pierce's second interview of Isabelle there were repetitive questions asked during this interview. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 14) 'Total Response' Confusion (NOT RULED OUT)*

A video recording of this interview was not provided; therefore, this potential source of bias cannot be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

Pierce did not encourage Isabelle to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (NOT RULED OUT)*

Conformity press was used during this interview as evidenced by the fact that Pierce asked if she remembered that she said that he put something in her mouth that tasted like "beef jerky," and Isabelle said no. When asked if she remember him putting something in her mouth that tasted like strawberry, Isabelle said, "Yeah." Piece then said, "Do you remember him putting something in your mouth, then you said you didn't like? It was like a cracker or a cheese cracker." Isabelle replied, "Oh, yeah." Therefore this potential source of bias cannot be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

1001

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Isabelle had discussed her allegations with her Mother, an officer and a sergeant prior to the interview. In addition, Isabelle had already talked to Pierce regarding her allegations. Therefore, this potential source of bias cannot be ruled out.

**Interview of Becky by Detective Pierce 1/10/12**

*FACTOR 1) Establishing Rapport (RULED OUT)*

Pierce asked Becky what he last name was, when her birthday was, and who her teacher was. In addition, Becky did not seem particularly inhibited during the interview (i.e., provided details, etc.). Therefore, rapport problems can be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (NOT RULED OUT)*

Pierce did not inform Becky that she should say, "I don't know," if she did not know an answer to a question. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 3) Truth Meaning (NOT RULED OUT)*

Pierce did not assess Becky's understanding of a truth and a lie. Therefore this potential source of bias cannot be ruled out.

*FACTOR 4) Truth Importance (NOT RULED OUT)*

Pierce did not tell Becky specifically that it was important to tell the truth during the interview. Therefore, truth importance was addressed and cannot be ruled out as a potential source of bias.

*FACTOR 5) Role/Purpose (NOT RULED OUT)*

Pierce did not asked Becky if she understood why she was being interviewed a second time or what she understood her role to be. Therefore this potential source of bias cannot be ruled out.

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

Whether or not Becky felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

Whether or not Becky had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)*

1002

Pierce asked more close-ended questions that open-ended ones, contrary to what research recommends in interviews with children. Therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

Pierce did not assess whether Becky would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

Pierce did not ask Becky leading questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

Pierce did not disconfirm Becky's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Pierce did not inappropriately reinforce Becky's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (RULED OUT)*

Pierce did not ask Becky repetitive questions during the interview. Therefore, this potential source of bias can be ruled out.

*FACTOR 14) 'Total Response' Confusion (NOT RULED OUT)*

A video recording of this interview was not provided; therefore, this potential source of bias cannot be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

Pierce did not encourage Becky to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (RULED OUT)*

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

1003

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Becky had discussed her allegations with Mother prior to the interview. Therefore, this potential source of bias cannot be ruled out.

**Interview of Becky**

*FACTOR 1) Establishing Rapport (RULED OUT)*

The interviewer asked Becky what she liked to do, what kind of music she liked, what things she did not like, what her last name was, and when her birthday was. The interviewer also asked Becky about her last birthday. In addition, Becky did not seem particularly inhibited during the interview (i.e., provided details, etc.). Therefore, rapport problems can be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (RULED OUT)*

The interviewer did inform Becky that she should say, "I don't know," if she did not know an answer to a question. Therefore, this potential source of bias can be ruled out.

*FACTOR 3) Truth Meaning (NOT RULED OUT)*

The interviewer did not assess Becky's understanding of a truth and a lie. Therefore this potential source of bias cannot be ruled out.

*FACTOR 4) Truth Importance (RULED OUT)*

The interviewer told Becky that it was "really important" to tell the truth and asked Becky to promise to tell the truth. Becky said that she would and said that she would not tell any lies. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

*FACTOR 5) Role/Purpose (RULED OUT)*

The interviewer then asked Becky if she why there were there and Becky said, "To ask me questions." Therefore this potential source of bias can be ruled out.

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

Whether or not Becky felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

1004

Whether or not Becky had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)*

The interviewer asked predominantly close-ended questions and therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

The interviewer did not assess whether Becky would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

The interviewer did not ask Becky leading questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

The interviewer did not disconfirm Becky's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

The interviewer did not inappropriately reinforce Becky's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (NOT RULED OUT)*

Due to the fact that this was the second time that Becky was interviewed the questions are considered to be repetitive. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Becky did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

The interviewer did not encourage Becky to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (RULED OUT)*

1005

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Becky had discussed her allegations with Mother, Father, Sister, and Detective Pierce prior to the interview. Therefore, this potential source of bias cannot be ruled out.

**Interview of Laurie at School by Lisa and Dave**

*FACTOR 1) Establishing Rapport (RULED OUT)*

Lisa introduced her Partner, Dave. She then asked Laurie's last name, when her birthday was, what she did for her birthday, and about her family. In addition, Laurie did not seem particularly inhibited during the interview (i.e., provided details, etc.). Therefore, rapport problems can be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (RULED OUT)*

Lisa also told Laurie that if she did not know the answer to a question that she should say that she did not know. Therefore, this potential source of bias can be ruled out.

*FACTOR 3) Truth Meaning (RULED OUT)*

When asked, Laurie reported that she knew the difference between a truth and a lie. When Lisa asked, "If I said my pants are black, is that true or is that a lie?" Laurie said that it was true because Lisa was wearing black pants. Lisa asked if it would be a lie if she said Laurie's pants were purple. Laurie said she would be telling a lie because she was not wearing purple pants. Therefore this potential source of bias can be ruled out.

*FACTOR 4) Truth Importance (RULED OUT)*

Lisa told Laurie that it was important to tell the truth and Laurie agreed to do so. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

*FACTOR 5) Role/Purpose (NOT RULED OUT)*

Lisa did not assess Laurie's understanding of the purpose of the interview or her role in the process. Therefore this potential source of bias cannot be ruled out.

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

1006

Whether or not Laurie felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

Whether or not Laurie had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-Ended Questions (NOT RULED OUT)*

Rather than beginning the interview with open-ended questions to elicit as much free narrative from the Laurie, Lisa began the interview with close-ended questions and continued to rely on those throughout the interview. Therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

Lisa did not assess whether Laurie would acquiesce to a press of Lisa. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

Lisa did not ask Laurie leading questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

Lisa did not disconfirm Laurie's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Lisa did not inappropriately reinforce Laurie's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (RULED OUT)*

Repetitive questioning was not used during the interview. Therefore, this potential source of bias can be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Laurie did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

Lisa did not encourage Laurie to speculate. Therefore, this potential source of bias can be ruled out.

### FACTOR 16) *Conformity Press (RULED OUT)*

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

### FACTOR 17) *Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

### FACTOR 18) *Outside Contamination (NOT RULED OUT)*

Laurie had discussed her allegations with Mother prior to the interview. Therefore, this potential source of bias cannot be ruled out.

**Interview of Laurie by Lisa and Dave**

### FACTOR 1) *Establishing Rapport (RULED OUT)*

Lisa made no attempt to develop rapport during this interview with Laurie. However, she had developed reasonable rapport with her during the previous interview which had occurred the day before. Therefore, rapport problems can be ruled out as a potential source of bias.

### FACTOR 2) *"I don't know" Responses (NOT RULED OUT)*

Lisa did not address "I don't know" responses during this interview with Laurie. Therefore, this potential source of bias cannot be ruled out.

### FACTOR 3) *Truth Meaning (NOT RULED OUT)*

Lisa did not assess Laurie's understanding of a truth and a lie. Therefore this potential source of bias cannot be ruled out.

### FACTOR 4) *Truth Importance (RULED OUT)*

Lisa told Laurie that it was still important to tell the truth during this second interview. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

### FACTOR 5) *Role/Purpose (NOT RULED OUT)*

Lisa did not asked Laurie if she understood why she was being interviewed a second time or what she understood her role to be. Therefore this potential source of bias cannot be ruled out.

1008

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

Whether or not Laurie felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

Whether or not Laurie had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)*

Although some open-ended questions were included, Lisa asked primarily close-ended questions about the therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

Lisa did not assess whether Laurie would acquiesce to a press of Lisa. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

Lisa did not ask Laurie leading questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 11) Disconfirmation (RULED OUT)*

Lisa did not disconfirm Laurie's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Lisa did not inappropriately reinforce Laurie's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (RULED OUT)*

Repetitive questioning was not used during the interview. Therefore, this potential source of bias can be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Laurie did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

1009

*FACTOR 15) Encouraging Speculation (RULED OUT).*

Lisa did not encourage Laurie to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (RULED OUT)*

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Laurie had discussed her allegations with Mother prior to the interview. Therefore, this potential source of bias cannot be ruled out.

**Interview of Wendy**

*FACTOR 1) Establishing Rapport (NOT RULED OUT)*

The interviewer did not attempt to establish rapport prior to providing Wendy with instructions about answering questions. Therefore, rapport problems cannot be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (RULED OUT)*

The interviewer told Wendy that if she did not know the answer to a question or she didn't understand the question that she should say that she did not know. She also asked Wendy, "If I said to you, Wendy, what's my dog's name, what would you say?" and "How many phalanges do you have" and Wendy replied, "I don't know" to both questions. Therefore, this potential source of bias can be ruled out.

*FACTOR 3) Truth Meaning (RULED OUT)*

The interviewer asked, "That phone right there, that phone is a black phone. Is that a truth or a lie?" Wendy said that it was a lie because the phone was not black. The interviewer asked if it would be a truth or a lie to say that the tree was green and Wendy said it would be the truth. Therefore this potential source of bias can be ruled out.

*FACTOR 4) Truth Importance (RULED OUT)*

The interviewer told Wendy that it was important to tell the truth and Wendy promised that she would and reported that she knew that a lie was "bad." Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

### FACTOR 5) Role/Purpose (RULED OUT)

When asked why she was in the interview, Wendy said to "talk about Mr. Chandler," and "game." Therefore this potential source of bias can be ruled out.

### FACTOR 6) Disclosure Inhibition (NOT RULED OUT)

Whether or not Wendy felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

### FACTOR 7) Threats/Bribes (NOT RULED OUT)

When Wendy reported that the alleged perpetrator gave them candy after the game, the interviewer asked if the gifts were given for playing the game and Wendy responded, "No". However, the interviewer never questioned Wendy whether anyone had threatened her to withhold certain information. Therefore this potential source of bias cannot be ruled out.

### FACTOR 8) Use of Open-Ended Questions (NOT RULED OUT)

The interviewer asked Wendy both closed-ended and open-ended questions. However, the ratio favored close-ended questions and therefore this potential source of bias cannot be ruled out.

### FACTOR 9) Authority Pleasing (NOT RULED OUT)

The interviewer did not assess whether Wendy would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

### FACTOR 10) Leading Questions (RULED OUT)

The interviewer did not ask Wendy leading questions. Therefore, this potential source of bias can be ruled out.

### FACTOR 11) Disconfirmation (RULED OUT)

The interviewer did not disconfirm Wendy's report during the interview therefore this potential source of bias can be ruled out.

### FACTOR 12) Inappropriate Reinforcement (RULED OUT)

The interviewer did not inappropriately reinforce Laurie's responses therefore this potential source of bias can be ruled out.

1011

*FACTOR 13) Repetitive Questions (NOT RULED OUT)*

The interviewer asked Wendy multiple times whether it was a body part or something else that the alleged perpetrator used to touch her feet. Therefore, this potential source of bias cannot be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Wendy did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

*FACTOR 15) Encouraging Speculation (NOT RULED OUT)*

When Wendy reported that it felt like alleged perpetrator was touching her feet with a body part, the interviewer asked, "what part of his body did you – do you think it felt like?". Therefore, this potential source of bias cannot be ruled out.

*FACTOR 16) Conformity Press (RULED OUT)*

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Mother reported that she hadn't discussed the allegations with Wendy. However, Wendy reported that she discussed the allegations with her classmates, Christina and Arleth. Therefore, this potential source of bias cannot be ruled out.

**Interview of Arlet (sic)**

*FACTOR 1) Establishing Rapport (NOT RULED OUT)*

Emilio did not attempt to establish rapport prior to providing Wendy with instructions about answering questions. Therefore, rapport problems cannot be ruled out as a potential source of bias.

*FACTOR 2) "I don't know" Responses (RULED OUT)*

Emilio informed Arleth that she should say, "I don't know," if she did not know the answer to a question. He then asked, "So if I ask you a question like what's my dog's name, what would you say?" Arleth replied, "I don't know." Therefore, this potential source of bias can be ruled out.

1012

*FACTOR 3) Truth Meaning (RULED OUT)*

Emilio asked Arleth what she would say if he said her sweater was pink and she said that was the truth. He then asked, "If I say, Arleth that plant right there is red in color, is that a truth or a lie?" Arleth said it was a lie because the plant was green. Therefore this potential source of bias can be ruled out.

*FACTOR 4) Truth Importance (RULED OUT)*

Emilio stated that it was important to tell the true and asked Arleth if she would promise to tell the truth. Arleth agreed to do so and said that she would not tell any lies. Therefore, truth importance was addressed and can be ruled out as a potential source of bias.

*FACTOR 5) Role/Purpose (NOT RULED OUT)*

When Emilio asked if she knew why she came to talk to him that day, Arleth said, "Yes. To know all the [inaudible]." Because we have no access to Arleth's response, this potential source of bias cannot be ruled out.

*FACTOR 6) Disclosure Inhibition (NOT RULED OUT)*

Whether or not Arleth felt inhibited about discussing certain subject matter was not specifically assessed. Therefore this potential source of bias cannot be ruled out.

*FACTOR 7) Threats/Bribes (NOT RULED OUT)*

Whether or not Arleth had been threatened or bribed was not assessed therefore this potential source of bias cannot be ruled out.

*FACTOR 8) Use of Open-ended Questions (NOT RULED OUT)*

Emilio asked Arleth more close-ended questions than open-ended questions, for example, "Could you feel, like, his legs and knees on you?". Therefore this potential source of bias cannot be ruled out.

*FACTOR 9) Authority Pleasing (NOT RULED OUT)*

Emilio did not assess whether Arleth would acquiesce to a press of the interviewer. Therefore this potential source of bias cannot be ruled out.

*FACTOR 10) Leading Questions (RULED OUT)*

Emilio did not ask Arleth leading questions. Therefore, this potential source of bias can be ruled out.

1013

*FACTOR 11) Disconfirmation (RULED OUT)*

Emilio did not disconfirm Arleth's report during the interview therefore this potential source of bias can be ruled out.

*FACTOR 12) Inappropriate Reinforcement (RULED OUT)*

Emilio did not inappropriately reinforce Arleth's responses therefore this potential source of bias can be ruled out.

*FACTOR 13) Repetitive Questions (RULED OUT)*

Repetitive questioning was not used during the interview. Therefore, this potential source of bias can be ruled out.

*FACTOR 14) 'Total Response' Confusion (RULED OUT)*

Arleth did not display discrepancy between her verbal, para-verbal, and non-verbal communication; therefore, this potential source of bias can be ruled out.

*FACTOR 15) Encouraging Speculation (RULED OUT)*

Emilio did not encourage Arleth to speculate. Therefore, this potential source of bias can be ruled out.

*FACTOR 16) Conformity Press (RULED OUT)*

Conformity press was not used during this interview. Therefore this potential source of bias can be ruled out.

*FACTOR 17) Response Class Focus (RULED OUT)*

Response class focus was not a problem in this interview therefore this potential source of bias can be ruled out.

*FACTOR 18) Outside Contamination (NOT RULED OUT)*

Arleth had discussed her allegations with Mother and cousin Naomi prior to the interview. Therefore, this potential source of bias cannot be ruled out.

### Analysis of the Allegation

**Outcry Analysis: In the case of Arleth**, she made her outcry after showing her cousin a letter about her teacher from the school. She reported that she had chosen to disclose the alleged abuse to her cousin because the cousin was there and the teacher was bad. She also made the outcry to

her mother after repeated questioning by the mother over the course of three days. Per mom's report, **Isabelle's** initial outcry was spontaneous. She told her mother that the teacher was doing bad things to her and that she didn't want to go to school. In the case of **Becky**, she reported making her initial outcry to because she felt the game was inappropriate and it made her feel bad. This outcry also appears to be spontaneous. **Laurie** first reported the incidents to her mother, who responded that she should behave better next time. This outcry is spontaneous as well. In the case of **Wendy**, she first disclosed the incidents to her friends Christina and Arleth. She never discussed what happened with an adult until she was interviewed by the detective.

**Stake Analysis:** According to the documents reviewed, it does not appear that anyone had a stake in the allegations being made.

**Outside Contamination:** The potential for outside contamination to have occurred is extremely high. Isabelle, Laurie, Becky and Arleth had allegedly discussed the allegations with their mothers. Arleth was interrogated by her mother for three days in which she denied being abused by Mr. Chandler before she finally disclosed that some abuse had occurred. Additionally, Isabelle discussed the allegations with her father and sister, and Wendy had conversation with two of her classmates, Christina and Arleth, about playing the game with their teacher.

**Inconsistencies:** According to documents reviewed, there are substantial inconsistencies between and within the statements all of the girls provided. Please see the inconsistency tables for details.

**Amount of Details Provided:** According to the documents reviewed, the narratives provided by all girls were often impoverished. For example, during her preliminary testimony in court Arleth could not tell how much time had passed between the four instances of alleged abuse or when the alleged abuse occurred.

**Logistical Details:** According to the documents reviewed the abuse occurred in the classroom during recess and after school. It is somewhat improbable that no one would enter the classroom during those times, for example other teachers and parents, and discover the alleged abuse.

**Interview problems (PEFIC):** There were multiple problems in the interviews that were conducted with all girls. Please see the evaluation of the interviews for specifics.

**Memory: Encoding, Storage, & Retrieval:** Because disclosure of sexual abuse involves a past event and because children are questioned about the past event, the child's memory and how the child processes information is very important. The girls had allegedly discussed the allegations with a number of other people which included their mothers, siblings, and others. We do not know how/if the above impacted their memory. Furthermore, all girls displayed difficulty recalling details of the alleged abuse when question during the preliminary testimony. Of all the girls, Arleth had an especially hard time recalling the events. For example, she could not recall when she had gotten glasses and if she was wearing those when the alleged abuse took place.

**Fantastical Details:** Fantastical details were present in one of the allegations. Specifically Arleth reported that on the occasion when she was not blindfolded, she looked saw something yellow

1015

falling "like water", going up from down. She couldn't tell where the "water" came from, and she said it dissolved on the ground.

## Literature Review

### Vulnerability to Suggestion

According to the documents reviewed, biased interviewing techniques were practiced (e.g., failure to establish rapport, repeated questions, etc.). Several studies have been conducted that are relevant to the consideration of children's event recall. For example, Ceci et al. (1990) found that children were significantly more likely to make recall errors when incorrect, biased information was used in the questioning procedure. In addition, these children were also more likely to make recall errors when the person presenting the incorrect information was an adult, rather than a child. The experimenter concluded that when information (even incorrect information) was presented by an adult, who is viewed as a credible source of information, the child is more likely to incorporate new information in their verbal report. In general, research suggests that preschool children are more susceptible to misleading or incorrect post-event information including that which is included in biased interviewing techniques than older children and adults (Ceci & Bruck, 1993; McAuliff, Kovera, & Viswesvaren, 1998) although biased interviewing techniques are problematic with older children as well. In fact, some argue that younger children are not more susceptible to bias when the act in question is significant, when the child is a participant (as opposed to a bystander), or when the report is a free narrative as opposed to prompted (e.g., Fivush, 1993; Goodman, Rudy, Bottoms, & Aman, 1990). Ceci and Bruck (1995) agree that children are less prone to suggestions about actions to their own bodies, however they review numerous studies that demonstrate that bodily acts are not impervious to distortion (e.g., Bruck, Ceci, Francoeur, & Barr, 1995; Lepore & Sesco, 1994; Ornstein, Gordon, & Larus, 1992; Poole & Lindsay, 1996).

### Parental/ Caregiver Suggestion

Parents can subtly suggest false information to their children who end up believing and making false allegations. According to the documents reviewed, Isabelle, Becky, Laurie and Arleth all talked to their mothers about what had happened with their teacher. Arleth's mother admitted that after she saw the news report about Mr. Chandler's arrest, she had questioned her daughter repeatedly for three days and that Arleth denied abuse on all those occasions, telling her that Mr. Chandler was a good man. She also talked to her cousin in considerable detail, and she reported that her cousin asked her a number of questions. Poole & Lindsay (1995) had preschool-aged children witness four science demonstrations in a university laboratory. Four months later parents were mailed stories that contained descriptions of their children's visit to the lab. Two of the stories were true and two were false (i.e., described experiments that the children had not seen). Each story finished with a fabricated account of what happened when it was time to leave the lab: "Mr. Science wiped (child's name) hands and face with a wet-wipe. The cloth got close to (child's name) mouth and tasted really yucky." Parents read the story to their children three times. Later, children told the experimenters that they had participated in demonstrations that they had not (i.e., the false stories read by their parents). More than half of the participants said that Mr. Science had wiped their mouths and many elaborated on their "yes" answers. When asked if Mr. Science had actually wiped their mouths or did their mother just read the story 71% of the children maintained that it really happened. This study was replicated (Poole & Lindsay, 1996) using children from a wider

1016

age range (3-8 year olds). Findings were similar except they found that when asked if Mr. Science wiped their mouths or if their mother just read the story the older children tended to recant their claims and said that their mother told them. Research findings demonstrate that children are significantly more prone to memory errors created by false, misleading information, than are adolescents or adults. Children can be divided into three groups (young childhood, middle childhood, and adolescence), with the younger children most susceptible to bias, following by middle-aged children, followed by adolescents and parents have the ability to bias their children's memory.

Children's Credibility

Children and adolescents do not always tell the truth. It is not the case that there are special topics—such as their own abuse—in which adolescents are incapable of lying. As a field we know little about the variables that cause children or adolescents to lie or tell the truth. Researchers have suggested that personality variables, habit (Lowenstein, 1994), a developing central nervous system, a congenitally acquired defect in the central nervous system (CNS), the presence of an emotional disturbance, the desire to please others (i.e., parents, therapists, lawyers) (Kaplan, 1990), and behavioral disorders (such as conduct disorder and oppositional defiant disorder; Webster-Stratton & Dahl, 1995) may contribute to a child lying and thus result in an invalid statement. Although lying is not a frequent pathway; lying about child sexual abuse does occur. Children at times recant (see Bradley & Wood, 1996). Thus, children sometimes claim that they have previously lied or at least were mistaken. In this case, it is not clear if Arleth, was always forthright in the statements she provided as there were many inconsistencies in her statements. Furthermore, she admitted in court that she had given a wrong answer when the police officer had asked her if she had told anyone about the alleged abuse and she had replied that she hadn't.

Inconsistencies within and/or between Statements

When children are suggestively interviewed their subsequent false reports are consistent with the suggestions (Bruck et al., 1995, 1997). Subsequent ratings by trained professionals reveal that these children are credible and these professionals cannot discriminate accurate from inaccurate reports as a result of suggestive interviewing (Leichtman & Ceci, 1995; Ceci et al., 1994a; Ceci, Loftus, Leichtman, & Bruck, 1994b). Also, linguistic markers do not consistently distinguish true from false reports that emerge from problematic interviews (Bruck et al., 1997). In the Bruck et al. (1997) study children were more likely to repeat the same details across interviews when their narratives were true as compared to when they were false. Two measures did differentiate true from false narratives. False stories tended to expand or sometimes change with each retelling as the children included new details. The number of aggressive, exaggerated, or fantastical details increased for false narratives as compared to true narratives for some children subjected to repeated suggestive interviews. According to the documents reviewed, there were substantial inconsistencies between the statements that all five girls provided and the cause of these inconsistencies was almost never explored explored. Additionally, there were inconsistencies within Becky's preliminary testimony, and these were not addressed.

Memory Recall: Including Memory Errors due to False, Misleading Information

1017

Even though experimental methodologies are varied (i.e., testing many types of memories, witnessed events, and cuing strategies), the results generally agree that children are significantly more prone to memory errors created by false, misleading information, than are adolescents, than are adolescents, who are more prone than adults. However, it should be noted that older children and adults are also susceptible to bias (see Ceci & Bruck, 1995, for a review). Notwithstanding these conclusions, children, even preschoolers, are capable of accurately reporting events *in the absence of suggestive techniques* (e.g., Fivush, 1993; Goodmand, Batterman, Faunce, & Kenney, 1992, for reviews).

The effects of the above patterns of children's information processing and event recall have been studied in ways that are directly relevant to the issue of children's testimony subsequent to interviews with professionals. The following section will investigate some of these highly relevant studies.

A study that highlights the problems of child witnesses who are interviewed for testimony is the "Sam Stone" study conducted by Ceci and Liechtman (1992). Young children were told that a visitor, Sam Stone, was clumsy and always broke thing that were not his. When "Sam" cam to visit he did not touch or break anything. The next day the children saw a soiled stuffed bear and a torn book. Even though no child had seen Sam do anything, when asked, 25% hinted that he might have had a part in the problem. Over the next ten weeks they were asked misleading questions/statements by the first interviewer such as, "I wonder if Sam Stone got the teddy bear dirty on purpose or by accident?" On the tenth week, a second (seemingly independent) interviewer asked what had happened to the toys. 72% of the children overtly accused Sam of having ruined the toys, and 45% reported remembering having seen Sam do it.

Another study conducted by Clark-Stewart et al. (1989) sought to determine whether or not a reported memory for observed events could be changed by suggestions made by an authoritative adult. Three groups on children observed a janitor, Chester. One group saw a working janitor, the second group saw a playing janitor, and the third group saw a janitor who was playing mildly suggestively with a doll. The 'playing' Chester bribed the children with candy not to tell his boss that had been plying instead of working. Shortly thereafter, the children were questioned by Chester's boss. The children were asked what Chester had been doing. Initially, gentle suggestions were made opposite to the child's actual observations. If the child observed a working Chester the boss suggested he might have been playing, and vice-versa. 25% of the children changed their story after the initial suggestions. After stronger suggestions were made, every child changed stories to be inconsistent with their observations and consistent with the suggestion. In fact, they did not revert their stories when later asked about the incident by their parents, who were unaware of the child's actual observations or the direction of the suggestions made. This indicates that not only did the children respond to the suggestion, but also they have seemed to have incorporated the details into their report on a longer-term basis.

In a similar study, Bruck and colleagues (1997) examined the impact of repeatedly interviewing children with a combination of suggestive procedures. Preschool children were asked to tell about two true events (a recent punishment and helping a visitor who had hurt her ankle) and about two false events (helping a lady find her monkey in the park and witnessing a thief steal food from the day-care facility). Children were interviewed on five different occasions about the four events. In the first interview, the children were asked if the event had occurred and if so to provide as many details as possible about the event. The next three interviews included suggestive interviewing techniques (i.e., the use of peer pressure, guided imagery techniques, repeating misinformation, and providing selective reinforcement) and during the fifth interview,

1018

a new interviewer questioned each child about each event in a non-suggestive manner. While across the five interviews all the children consistently assented to the true- helping event, children were at first reluctant to talk about the true-punishment event, many denying that it had occurred. With repeated suggestive interviews, however, the children agreed that the punishment had occurred. With regard to false events, children initially denied the false events, but with repeated suggestive interviews they began to assent to these events. In fact, by the third interview, almost all the children had assented to all true and false events. The results from this study clearly demonstrate that the combination of suggestive techniques produced high assent and research has demonstrated that while older children (i.e., seven-year-olds) are more accurate younger children (i.e., four-year-olds) this age difference is not relevant when misleading questions are used (Rudy & Goodman, 1991). In fact, Rudy and Goodman (1991) examined the accuracy of children's reports after they had been participants in an event that was reminiscent of some types of sexual abuse. Pairs of four-year-old and seven-year-old children were left in a trailer with a stranger and one child played a game with the stranger, who dressed the child in a clown's costume and lifted and photographed him/her and the other child was instructed to observe this event as a bystander. Afterwards (10 days later) children were interviewed, first with open-ended questions, and then with 58 questions that were either direct or misleading. Results from this study indicated that seven-year-olds were more accurate than four-year-olds for all types of questions except misleading questions that implied abuse (e.g. "He took off your clothes, didn't he?"). Thus while there may be age differences in suggestibility for non-central features of an event, there are no age differences when children are asked misleading questions about central salient events.

Gulottaa and Ercolina (2000) interviewed 53 children (ages 6-8) about an event that had taken place in their classrooms. Children were initially asked 6 open-ended, non-suggestive questions and subsequently 20 suggestive, close-ended questions. Results from this study indicated that generally, children interviewed with non-suggestive open-ended questions accurately recounted the classroom event. However, when asked close-ended and suggestive questions children authenticated events that had never actually occurred. Results also demonstrated that when children are asked certain questions twice (repeated questions), they altered their previous answers. This study illustrates that children can be mislead by adults such that they sanction untrue information that is suggested to.

The above studies are important because they may illuminate the effects of post-event suggestion made by adults to children. The Sam Stone study incorporated less authoritative questioning styles, while the Chester study used more authoritative styles. However, both studies included misleading questioning that in turn altered the reported memories of the children. As previously mentioned, research findings demonstrate that children are significantly more prone to memory errors created by false, misleading information, than are adolescents. **Given that some of the girls were repetitively interviewed it is important to consider the above scientific literature.** A discussion of memory processes follows.

## Memory Encoding, Storage, & Retrieval

Because disclosure of sexual abuse involves a past event and because children are questioned about the past event, the child's memory and how the child processes information is very important. O'Donohue and Fanetti (1996) discuss the information processing of children as it applies to childhood sexual abuse. They summarize the five steps of information processing: sensation, perception, encoding, storage, and retrieval.

1019

### Sensation

In the sensation step, the individual's sense organs receive input from the environment about changes that have occurred. Sensation occurs in all five senses and does require that one attend to or understand the input. This information is then transferred to other areas of the body to be used. Sensation does not involve the integration of present experiences with other experiences, or the interpretation of the experience in any manner.

### Perception

In the perception step, the stimuli that have been sensed are brought into attentional awareness and interpreted. Meaning, past experience, or memory and judgment are involved in allowing the individual to better understand what they are sensing. *Schemas* (perceptual mechanisms that organize social sensory information) become useful in this step. Prior experience, knowledge, or expectation come into play at this stage. In fact, research has demonstrated that children and adults use event-related schemata, or scripts, to interpret new experiences. Scripts may impact which aspects of a given event call attention from the observer. New or unexpected stimuli often draw greater attention than do typical or expected stimuli (Crockett, 1988). Scripts may also be useful when information is ambiguous or difficult to understand (Bargh, 1988; Crockett, 1988). Because the amount of information that is available for interpretation is always too much for the receiver to take in, scripts can be used to direct attention to stimuli that are relevant for the given interaction. This decreases the amount of processing needed for understanding and results in selective attention. Details that are interpreted as irrelevant are not processed further and may be unavailable for encoding and storage. The script that is used may also facilitate the explanation of the ambiguous stimuli in arbitrary terms dictated by the script itself. O'Donohue and Fanetti (1996) site the following example,

"Bobby was told that nobody should ever be allowed to touch his 'private parts,' and if they do, it is sexual abuse. During a routine medical examination, the doctor does just that. The conclusion by Bobby that the doctor is a sexual abuser may be more likely. If Bobby had been told about medical examinations beforehand, other conclusions by Bobby might have been more likely."

### Encoding and Storage

Encoding and storage follow sensation and perception. The encoding and storage process are greatly dependent on the way in which the information was perceived. These processes may be thought of as a filing process for our memories. In the example provided above, the examination conducted by the physician may be perceived and then encoded differently depending on the script that was used. The encoding process influences how information is stored in long-term memory.

### Retrieval

The last stage in processing information is retrieval and involves accessing information that is stored in long-term memory. Information might be sought by using cues (other details that were encoded and stored at the same time). O'Donohue and Fanetti (1996) provide the following example:

"People sometimes report that after losing their 'train of thought,' they can sometimes remember their point by retracing the prior discussion. The other details of the discussion may serve as temporal cues for the target information. However, due to the notion that scripts contain information about the way events usually occur, as well as information about the way a specific event occurred, cues may contaminate the recall of details for a specific event."

1020

In fact, this may impact the accuracy of memories and will be elaborated in a later section on suggestibility.

O'Donohue and Fanetti (1996) go on to emphasize that if information is never sensed, perceived, encoded or stored, it cannot be recalled. They stress that every stage of information processing must be considered in any memory investigation.

Retrieval failures can result in an inability to recall or recognize details of an event (failure of omission) and can be caused by 1) a failure in any stage of information processing whereby the information never reaches storage, 2) faulty retrieval, and 3) degenerative mechanisms such as memory decay. An additional way in which information processing can go awry is when an individual recognizes or recalls details that never occurred (failures of commission). These errors may be caused by proactive interference (when details of prior experiences are intermingled with the details of the target experience) or retroactive interference (when details experienced after the target event are intermingled with the details of the target event). In reference to proactive interference the experiences that served to create schemata may also add interfering information to memories of the target experience. In fact, children's use of scripts may have an impact on memory as the more experience an individual has with a certain type of event, the more difficult it is to recall specific details about one target event. Postevent suggestion can actually create retroactive interference (Cohen & Harnick, 1980; Cole & Loftus, 1987; Dale, Loftus, & Rathburn, 1987; Davies, 1989; King & Yuille, 1987; Peters, 1987). **In this case, all girls had discussed the allegations with a number of people, including their mothers, other siblings, school officials and others.** While the above emphasizes the child's sensing, perceiving, encoding, storing, and retrieving of any possible abusive experience it is also important to note that any event, question, or test item presented to the child in the assessment process also is processed by the child. Thus, errors or biases that enter into the assessment-as-an-information-processing-event also are very relevant and must be considered. A literature review on problematic interviewing techniques follows.

## Problematic Interview Techniques

- *Interviewer bias.* Interviewer bias occurs when interviewers hold antecedent beliefs about the occurrence of certain events and therefore conduct the interview in such a way to maximize disclosures from the interviewee that are consistent with the interviewer's beliefs (Bruck & Ceci, 1999). Interviews do not explore alternative explanations for allegations (e.g., suggestion of their parents versus actually witnessing the event), do not assess events that may be inconsistent with their hypotheses (e.g., if anyone else touched the child), do not question the authenticity of the child's report (e.g., establishing the importance of telling the truth), and ignore inconsistent or bizarre evidence or interpret within the framework of the original hypotheses (Bruck & Ceci, 1999) are considered problematic. **In this case, biased interviewing techniques (e.g. repetitive questions, conformity press, outside contamination) were used in the interviews with the girls.**

- *Emotional tone of the interview.* Interviewers of children place particular importance on building rapport with their young clients so they feel relaxed and unthreatened. They may spend time talking or playing with the child before beginning the actual interview and may spend time talking about school or after-school activities. Interview statements with the intention of building rapport and providing support can become problematic. Specifically, statements such as "we know something bad happened," "it isn't good to let people touch you," "you'll feel better once you tell," or "don't be afraid to tell" can be

1021

reliability risks as they can create an accusatory tone. In interviews where statements such as these were used, children were more likely to fabricate reports of past events, even in cases when they had no memory of an event occurring (Ceci & Bruck, 1995). **In several of the interviews rapport problems could not be ruled out as a source of bias.**

• *Leading Questions.* To obtain confirmation of their suspicions, interviewers may not ask children "open ended" questions, but resort to very specific questions which may be repeated or leading. Ceci, Ross and Toglia (1987) grouped 3-12 year olds in groups of 10-20 to listen to a story about a girl's first day of school. Pictures were used to illustrate the story (which lasted approximately 2.5 minutes). The day following, children were interviewed individually using either biased or unbiased questions. Two days after that, children were given a forced-choice recognition test by an adult involving four total pictures and were told to pick the two pictures that accompanied the story. Results indicated that all children had high percentages or correct responses to unbiased questions (84% for children aged 3-4, 87% correct for children ages 5-6 and 95% correct for children ages 7-12), however, percentage of correct responses to biased questions was much lower, with only 37% correct for 3-4 year olds, **58% correct for 5-6 year olds, 67% correct for 7-9 year olds** and finally 84% correct for 10-12 year olds. Roberts (2002) sought to determine how well memory recall and the confidence of that recall are correlated as well as how this can be affected by question format (unbiased vs. misleading) and age. The study included total of 183 participants from 3 age groups, 65 children in the 8-year-old group, 61 children in the 10-year-old group and 57 adults. The children were shown a video in small groups and were individually questioned 6 weeks later. The children were questioned in either an unbiased or misleading condition. After answering each question, participants rated their confidence level on a pictorial scale of 1-5. Results indicate that under suggestive questioning, there was no differentiation in confidence ratings between correct and incorrect answers showing that children's metacognitive monitoring abilities are impaired. Results indicate that children age 3 and 4 assent to misleading abuse-analogue questions as much as 20% of the time in related studies, whereas older children do so much less often (Goodman, Bottoms, et al., 1991; Goodman, Rudy, Bottoms & Aman, 1990). **Isabelle was asked leading questions.**

• *Repeated Questioning.* Repetitive questions are problematic with children. They can alter a child's response rather than to increase the accuracy of the response. The child should be asked questions only one time. Repeated statements that are false can contribute to a non-veridical memory in a child. Moreover, asking a question several times when no responses are given may indicate to the child that non-responses are not sufficient and that something must be said. However, the child may be non-responding simply because of uncertainty and the non-response is then functionally accurate. If they later provide a detail, there is as much reason to be suspicious of the detail as there is to believe it. In the case of non-responses, it is imperative to assess why the child is not responding. There are a plethora of scientific research studies that have demonstrated that repetitive questioning can be extraordinarily problematic. For example, Poole and White (1991) included 4-, 6-, and 8-year olds as well as adults (N = 133) in their study who had individually witnessed an ambiguous incident (a man bursts into the experiment room in need of a pen where a woman was guiding the subject through a questionnaire – the man takes the pen from the subject, engages in a playful argument with the woman, kisses her on the cheek and then leaves). Half were interviewed immediately after and then again 1

1022

week later, and the other half were only interviewed a week later. Inconsistencies in open-ended questions were relatively similar between *all age groups*, with the number of inconsistencies decreasing as age increased. Two years after the 1991 study, the same subjects were interviewed again about the same ambiguous event. Children were less consistent than adults across sessions on yes-no questions, less accurate in response to open-ended questions, and more likely to fabricate answers to a question (e.g., inaccurate responses included: 10-year old reported that the man came to return the pen he borrowed, another 10-year old reported that the man found the pen in the drawer, and finally an 8-year old and 1 adult reported that the man wrote with the pen during the session). Most subjects did not mention that the man grabbed the pen from them. Repeated questioning also increased the number of subjects who speculated inappropriately – some children credited action to the wrong individual (Poole & White, 1993). **Repetitive questioning occurred in the form of multiple interviews for Isabelle, Becky and Wendy. Additionally, Arleth was questioned repeatedly by her mother.**

**Videotaped Interviews**
**Videos of the interviews were not available for review for two of the interviews (Interview of Isabelle 2 by Detective Pierce and Interview of Becky by Detective Pierce 1/10/12).** Experts recommend interviews with children be recorded, preferably by videotape. Finally, while written summaries of the police questioning were provided, research has shown that written summaries of interviews are often inaccurate. Below please find a review of relevant scientific literature.
*Expert Recommendations Concerning Videotaping*
    Several organizations and child sexual abuse researchers recommend that interviews with children be recorded, preferably by videotape.

| Recommendation | Source |
|---|---|
| "Videotaping, when possible, can serve several useful purposes…" | American Academy of Child & Adolescent Psychiatry (1990). Guidelines for the Clinical Evaluation of Child and Adolescent Sexual Abuse. |
| "If possible, audiotape or videotape the interview." | American Academy of Child & Adolescent Psychiatry (1997). Practice Parameters for the forensic evaluation of children and adolescents who may have been sexually abused. |
| "Videotape, or at least audiotape, all contacts with the child from introduction to farewell." | Annon, J. (1994). Recommended guidelines for interviewing children in cases of alleged sexual abuse. *Issues in Child Abuse Accusations, 6,* |
| "Live and/or videotaped supervision and viewing of one's own videotapes are a useful safeguard against biased behavior." "Audiotaping is an excellent choice for field interviewing situations and when video is unavailable or not workable for a particular child." | Bourg, W., Broderick , R. Etc. (1999). *A Child Interviewer's Guidebook.* Thousand Oaks London New Delhi : SAGE publications |

1023

| | |
|---|---|
| "Although one would excuse such missing data [no interview] when the allegation was first made to parents, one would hope that it would be normal procedure for the police, social workers, and therapists to have recorded all interview s with the children, if the purpose of the interview could—even remotely—be considered "forensic." If videotaping is mandated, all interviews should be recorded. | Ceci, S., & Bruck, M. (1995). *Jeopardy in the Courtroom.* Washington, DC: American Psychological Associations. |
| In many cases it is a good idea to make audio/video tapes of the interviews. | Gardner, R. (1995). *Protocols for the Sex-Abuse Evaluations.* New Jersey : Creative Therapeutics |
| In many cases it is a good idea to make audio/video tapes of the interviews. | Gardner, R. (1992). *True and False Accusations of Child Sex Abuse.* New Jersey: Creative Therapeutics |
| "It is proposed that video recorded interviews should take place …1) children giving evidence in sexual offence cases, and 2) children giving evidence in cases involving an offence of violence, abduction, or neglect, child witness cases, unless the child objects, and/or there are insurmountable difficulties which prevent video recording taking place (this may include that the child has been involved in abuse involving video-recording or photography). | UK Home Office Communication Directorate (2000). Achieving best evidence in criminal proceedings: Guidance for vulnerable or intimidated witnesses, including children. |
| Videotaping is one of the seven reforms considered "best practice" for child sexual abuse investigations: "Many professionals consider it best practice to videotape child forensic interviews, and hundreds of jurisdictions routinely videotape interviews." | Jones, M., Cross, T. P., Walsh, W. A., & Simone, M. (2005). Criminal investigations of child abuse: The research behind "best practices". *Trauma, Violence, and Abuse, 6, 3,* 254-268. |
| Experts from Europe, North America, & the Middle East met at a conference in 1993 and co-signed this statement: "…It is desirable to tape record—preferably in video format—all primary investigative interviews." | Lamb, M. E. (1994). The investigation of child sexual abuse: An international, interdisciplinary consensus statement. *Family Law Quarterly, 28, 1,* 151-162. |
| "Eyewitness researchers generally favor videotaping all interviews (e.g., Ceci & Bruck, 1995; Lamb, 1994), a policy that has been in practice for some locations for years." | Poole, D., & Lamb, M. (1998). *Investigative Interviews of Children: A Guide for Helping Professionals.* Washington, DC: American Psychological Association. |
| Forensic assessment requires interviews designed to complete information from a child in the form of a tape-recorded statement. An interview must be recorded in it's entirely, preferably on | Rakin, D., & Esplin, P. (1991). Statement validity assessment: interview procedures and content analysis of children's statements of sexual abuse. *Behavioral* |

1024

| | |
|---|---|
| videotape with equipment located unobtrusively. | *Assessment*, 13, 266-291. |
| "Our goal should not be to hide poor interviews, for it is important that the adequacy of the methods used to obtain children's evidence be assessed…It is in the best interest of the child reduce the number of interviews and only recordings can accomplish this goal." | Yuille, J . , Hunter, R., Joffe, R., & Zaparniuk, J. (1993). Interviewing Children in Sexual Abuse Cases. In Goodman G., & Bottoms, B. (Eds.), *Child Victims, Child Witness* (pp. 95-101). New York : The Guilford Press. |

*Research Concerning Written Summaries of Interviews*

Another reason that interviews should be recorded is that research has shown that written summaries of interviews are often inaccurate. According to Ceci and Bruck (1994), "Written summaries of unrecorded interviews are subject to a number of distortions, especially if the interviewer is questioning a number of children and parents. If the interviewer has bias that the child was sexually abused, this can color his interpretation of what the child said or did; it is this interpretation that can appear in the summary in lieu of a factual account of what transpired" (p. 242). Several studies have demonstrated the limitations of written summaries of interviews:

- There is substantial literature to document that verbatim memory for conversations fades within seconds (Ceci & Bruck, 1994). Therefore, it is not possible to remember the forms of all questions asked and answers provided, their contexts and antecedents, and the emotional tone of participants (Ceci & Bruck, 1994).
- Bruck, Ceci, and Francoeur (1999) had mothers interview their children (ages 3-5) about a structured play activity that had occurred earlier when their mothers were absent. Three to fours days later mothers reported on the conversation. Mothers accurately represented the meaning of information disclosed by their children but misrepresented conversational structure by failing to mention their own prompts and misquoted a number of statements.
- Bruck, Ceci, and Melnyk (1999) had mental health trainees interview four children about experienced events. Interviewers had difficulties remembering which children made certain statements and could not remember which details were produced spontaneously and which were prompted using leading questions.
- Warren and Woodall (1999) conducted an analogue study with experienced interviewers, who claimed to have asked few if any leading questions of five-year-old children. However, 80% of the questions they asked were specific or leading. Also, interviewers made notes after the interview and these notes included only 20% of the questions the interviewers actually asked.
- Lamb and colleagues (Lamb, Orbach, Sternberg, Hershkowitz, & Horowitz, 2003) compared audio recordings of 20 forensic interviews of alleged CSA victims to the notes made by youth investigators in Israel. They found that 25% of forensically relevant details were omitted from notes. Only .004% of the details noted by investigators were contraindicated by the audio recordings, suggesting that errors or commission were rare but errors of omission were frequent. All types of interviewer utterances (e.g., invitation, directive, option-posing, and suggestive) were under reported in interviewers' notes. Only 44% of the informative details in the audio recordings were attributed to the correct eliciting utterance. More specifically, interviewers had a tendency to misattribute details to more open-ended than focused prompts.

## Summary & Conclusions

**Considerations:**

- **Outcry:** Arleth made her outcry after showing her cousin a letter about her teacher from the school.
  - *Regarding Arleth's outcry it is my opinion that the fact that her outcry 1) was possibly not completely spontaneous; 2) only occurred after a letter had been sent home with her from the school; 3) occurred when her cousin questioned her; and 4) most importantly, occurred after her mother questioned her repeatedly and for three days Arleth denied that anything had happened with her teacher before finally disclosing the alleged abuse. More questions should have been asked of the Arleth about her memories of her cousin's "investigation" to see if repeated or leading questions were used.*
  - *It is my opinion that the Mother's repeated questioning and possible disconfirmation introduced significant bias into the allegation.*
  - *It is my opinion that a precise clear nexus between letters sent from school, other publicity, and external questioning of the children (e.g., by parents) was not achieved in the interviews with the other children. Children should be asked about what they read, who talked to them about this matter, what that questioning was like, etc in order to determine if these kind of external events were benign or had the capacity for bias. There is no evidence that this was done in this case and thus it leaves this possibility for bias open. There is significant peer reviewed literature to suggest that children of this age group are very suggestible and can form false memories and make false allegations.*
- **Stake Analysis:** According to the documents reviewed, it does not appear that anyone would have benefitted from the allegations being made. *It is my opinion that stake analysis was not a factor in the allegations made.*
- **Logistical Details:** According to the documents reviewed the abuse occurred in the classroom during recess and after school when other children, teachers and school officials were present. *It is my opinion that it is unusual that the alleged abuse occurred during school time as child molesters typically isolate their victims. In addition, often the children's level of logistical detail was impoverished for their age. Some gave details that were inconsistent and unclear, e.g., who was present and the colors of certain things. There is no material presented to me whether, for example teachers and or school officials, walked into the classroom or observed anything unusual (through a window or kids being absent from recess) and suspected the abuse. In addition, it is my opinion that some of the details given are not consistent with abuse (e.g., shape of objects given or tastes or textures reported and these need to be considered along with details that are consistent with abuse (observing hair or pants down).*
  - **Inconsistencies:** Scientific research has demonstrated that children are more likely to repeat the same details across interviews when their narratives were true as compared to when they were false (e.g., Bruck et al., 1997). A significant number of inconsistencies in the statements that the girls provided were noted. All of the contradicted themselves across and sometimes within interviews. Inconsistencies included details about how the alleged abuse occurred (in the case of Arleth, with a ball or with the teacher's head), noises heard during the alleged abuse, shape of the object placed in the girls mouths, color and taste of the

1026

substance in the mouth, who was told about the alleged abuse, how many times it happened and whether the lights were on or off during the abuse.

- o *It is my opinion that the inconsistencies are substantial and unusual. Furthermore, because some of inconsistent statements made were not revealed until the preliminary testimony in court, some were not adequately explored or addressed at all*
- o *It is my opinion that these inconsistencies and inaccuracies make the validity of the children's memories and reports questionable. By definition and logically inconsistent allegations cannot all be true. Thus, these inconsistencies in core details raise serious questions about what among multiple contradictions are true.*

- **Suggestive Interviewing Techniques:** Suggestive interviewing techniques (including leading and repetitive questions) were used. *It is my opinion that the scientific literature shows that suggestive interviewing techniques [including leading (Ceci, Ross & Toglia, 1987; Davies & Flinn, 1988) and repeated questions (Poole & White, 1991)] and failure to establish rapport (Roberts, Lamb and Sternberg (2004) can have a distorting effect of children's memory of these ages such that they can form false memories. Importantly most of the interviews did not elicit narratives from the children through the use of open ended questions but rather relied on closed ended questions, which have been shown in the empirical peer reviewed scientific literature as having a much higher rates of eliciting inaccurate information. In addition, the interviews were problematic as they did not attempt to clear up or explain inconsistencies or unclear information.*

- Children are significantly more prone to memory errors created by false, misleading information and that parents can subtly suggest false information to their children who end up believing and making false allegations (e.g., Poole & Lindsay, 1995).
  - o *It is my opinion that when examining Arleth's allegations it is important to keep in mind that her cousin Naomi admitted questioning Arleth about the situation in a manner that may have elicited false information*
  - o *It is my opinion that Arleth's mother's interview indicates that she questioned her daughter repeatedly before the Arleth disclosed the alleged abuse to her*
  - o *It is my opinion that it is possible that once the parents saw the news report about the teachers, they may have suggested to their children that something bad had happened, for example in the case of Becky who, before coming to the interview, was told by her mother that it had to do with her teacher and something that happened to a lot of people in her classroom*
  - o *It is my opinion that the nexus of children talking to each other, being questioned by parents, and hearing information from other external sources was not inquired about in the interview and this leaves pathways for suggestibility as open possibilities.*

- **Detailed Descriptions of the Allegations:** According to the documents reviewed, the narrative that the girls provided during the interviews and preliminary testimony is often impoverished.

- **Outside Contamination:** The potential for outside contamination to have occurred is extremely high. In fact, a very problematic aspect of this case is the fact that all five girls allegedly discussed the allegations with various other people, including mothers, fathers, other siblings, school officials, and others. The nature of most these interactions are unknown and not documented by video or audiotape, therefore potential biasing factors

that may have occurred during these conversations cannot be assessed. The children were also repeatedly interviewed by police officers (Isabelle, Laurie, and Becky twice), which is known to potentially bias children's memories and reports of events. It is problematic that over time the number of allegations increased as the children spoke with additional people. *It is my opinion that outside contamination has the potential to impact children's statements and in this case, there appears to be a high potential for outside contamination to have occurred.*

- **Memory: Encoding, Storage, & Retrieval:** Because disclosure of sexual abuse involves a past event and because children are questioned about the past event, the child's memory and how the child processes information is very important. *It is my opinion that memory functions should be considered when examining the five girls' allegations considering that:*
  - o All girls had trouble recalling when the incident occurred and if it happened before or after Christmas
  - o All girls had allegedly discussed their allegations with mothers, fathers, siblings, school officials and others
  - o Some of the girls had trouble recalling information they had given the police officers

- **Video-Recorded Interviews:** Video of the interviews conducted by Officer Pierce of Becky and Isabelle were not available for review. Furthermore it appears that the girls spoke with school officials and the context and content of these interactions was also not recorded. *It is my opinion that un-recorded interviews are problematic as we cannot assess if the child exhibited a match between verbal and nonverbal communication as well as a parallel between para-verbal and verbal communication. Furthermore, research has shown that written summaries of interviews are often inaccurate.*

- **Fantastical Details.** *One child's allegations include a fantastical detail and this is an element that casts serious doubts on the validity of the children's statements. Fantastical details in the literature are taken to indicate false memories or invalid reports. The fantastical detail in this case involved Arleth witnessing "yellow water" going up from down and dissolving into the carpet.*

William O'Donohue, Ph.D.
Licensed Psychologist

1028

1   Brian Madden, SB# 55869
    MADDEN & REDDING
2   1625 The Alameda, Suite 801
    San Jose, California 95126
3   Telephone: (408) 275-8100
    Facsimile: (408) 275-8199
4
    Attorney for Defendant
5   CRAIG RICHARD CHANDLER

F I L E D

JUN 1 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SANTA CLARA

10

11   PEOPLE OF THE STATE OF CALIFORNIA,     )
                                            )
12          Plaintiff,                      )   Case No. C1223754
                                            )
13   v.                                     )   **MOTION TO EXCLUDE**
                                            )   **EVIDENCE RELATED TO AN**
14   CRAIG RICHARD CHANDLER,                )   **INCIDENT INVOLVING MR.**
                                            )   **CHANDLER AND HILDA KELLER**
15          Defendant.                      )
                                            )
16   _____

17                        INTRODUCTION

18          Mr. Chandler believes the People may seek to introduce evidence related to an incident

19   involving him and Hilda Chandler.  The incident appears to have occurred in 2005, when Mr.

20   Chandler and Ms. Keller both taught at O. B. Whaeley Elementary School in San Jose.  During

21   the incident, Mr. Chandler discussed matters of a sexual nature with Ms. Keller.  Mr. Chandler

22   believes the prosecutor will seek to introduce evidence concerning the incident under Evidence

23   Code §1101 on the issue of intent, and under Evidence Code §1108 on the issue of propensity.

24   In this motion, Mr. Chandler shows that the evidence is not admissible on either basis.

25   Condensed to its essentials, his argument is as follows.

26          The charged offenses in this case involve lewd acts with minors.  The intent required for

27   conviction for this offense is "the intent of arousing, appealing to, or gratifying the lust, passions,

28   or sexual desires of [the defendant] or the child...." (Penal Code §288, subd. (a).)  Ms. Keller

1029

No. C1223754                        1                   Motion re: Hilda Keller

1   is an adult.  The intent to engage in consensual sexual activity with an adult has no probative

2   value on the intent to appeal to a sexual desire involving children.  Mr. Chandler's position is

3   supported not only by common sense, but also by the attached declaration of Dr. William

4   O'Donohue, a professor of psychology who has worked for years in the area of child sexual

5   abuse and has edited a text book on the subject and has authored numerous articles dealing with

6   sexually abused children.  Also, the evidence is prejudicial because it would suggest to the jury

7   that Mr. Chandler, who is married, tried to engage in conduct that would make him unfaithful

8   to his wife and therefore an untrustworthy person, and also is someone who sexually harassed

9   a coworker.  The evidence is inadmissible to show sexual propensity under section 1108 because

10  the conduct in question does not consist of a sexual offense within the meaning of that section.

11                                    FACTS

12      At the preliminary hearing, San Jose Police Detective Sean Pierce testified about the

13  incident involving Mr. Chandler and Ms. Keller.  Detective Pierce was assigned to the child

14  exploitation detail in the sexual assault unit.  (Preliminary Hearing Transcript [PHT] 465.)  In

15  this capacity, he was assigned to interview Ms. Keller.  Defense counsel asked for an offer of

16  proof regarding Detective Pierce's testimony.  (PHT 465.)  The prosecutor said that Ms. Keller

17  told Detective Pierce that she was a former teacher at O. B. Whaeley, that Mr. Chandler came

18  to her classroom when she was alone, talked about the inadequacies of his sex life with his wife,

19  and asked if he could take pictures or her toes and massage her feet.  The prosecutor said there

20  was testimony about Mr. Chandler's "behavior with children's feet."  (PHT 466.)  The

21  prosecutor said she was offering the evidence under Evidence Code §1108 and on the issue of

22  sexual intent.  (PHT 466.)

23      Mr. Chandler objected to the evidence, arguing that the evidence did not fall under

24  section 1108 and that evidence of an interaction with an adult female is not relevant to the

25  specific intent involved in lewd conduct with an eight-year-old child.  (PHT 466.)

26      The Court observed that section 1108 is limited to evidence of other sexual offenses.  It

27  concluded that the evidence in question did not amount to a sexual offense listed in section 1108.

28  (PHT 467.)

1030

No. C1223754                          2                    Motion re: Hilda Keller

1  Upon hearing this, the prosecutor said she "really" was not offering the evidence under

2  section 1108 to show propensity. Instead, she was offering it to show sexual intent. (PHT 467.)

3  The Court asked the prosecutor which of the things listed in section 1101, subdivision (b)

4  the prosecutor sought to prove with the evidence. (PHT 467-468.) The prosecutor said intent.

5  (PHT 468.) Defense counsel argued that the evidence of taking photos of the feet of an adult

6  or giving her a foot massage was not probative of the intent required for child molestation.

7  (PHT 468.) The Court said: "without similarity in at least the age of the people involved [in the

8  charged and uncharged incidents], I don't see that it's, there's a connection." (PHT 469.)

9  The prosecutor argued that the similarity should be viewed from the perspective of the

10 perpetrator rather than the ages of the other parties. According to the prosecutor, the acts

11 showed an unnatural sexual interest in feet. (PHT 469.) The Court said only victim A testified

12 about Mr. Chandler grabbing her ankles, and this occurred on only one occasion. (PHT 469.)

13 The prosecutor said that victims L and W also testified about conduct involving their feet. (PHT

14 469.) The Court reviewed the testimony of L, who said she took off her shoes and Mr. Chandler

15 started rubbing things on her feet. One was smooth, the other was bumpy. (PHT 470.) The

16 Court said W said Mr. Chandler put something between her feet and rubbed them together. The

17 object felt like skin. (PHT 470.)

18 Detective Pierce's conversation with Ms. Keller occurred around January 16, 2012. She

19 taught at O. B. Whaeley from 2000 to 2005. (PHT 470.) Ms. Keller's conversation with Mr.

20 Chandler took place right before she stopped teaching at Whaeley. (PHT 471.)

21 The prosecutor said she believed Mr. Chandler has an unnatural sexual interest in feet,

22 that this sexual interest appears in his conversation with Ms. Keller, and that some conduct with

23 the children victims involved their feet. (PHT 471.) The Court ruled that the evidence would

24 be admissible for the limited purpose of showing intent and would consist only of Mr.

25 Chandler's comments about feet. The Court stated that it was not admitting evidence of Mr.

26 Chandler's romantic relationship with any adult women. (PHT 471-472.)

27 Detective Pierce testified that Ms. Keller said that when she was in her classroom, Mr.

28 Chandler came in, shut the door, asked if he could take pictures of her toes for a massage therapy

1031

No. C1223754                              3                    Motion re: Hilda Keller

1  class and asked if he could massage her feet.  (PHT 472.)

2                              ARGUMENT

3                                  I

4        EVIDENCE CONCERNING THE INCIDENT INVOLVING HILDA

5            KELLER IS INADMISSIBLE UNDER EVIDENCE CODE §1108

6        Evidence Code §1108, subdivision (a) provides: "In a criminal action in which the

7  defendant is accused of a sexual offense, evidence of the defendant's commission of another

8  sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not

9  inadmissible pursuant to Section 352." This language limits section 1108 to evidence of sexual

10  offenses and does not include evidence of non-criminal sexual conduct.  Subdivision (d) of

11  section 1108 lists the sexual offenses that qualify for admission under the section.  Subdivision

12  (d) provides: "'Sexual offense' means *a crime* under the law of a state or of the United States

13  that involved any of the following:  (A) Any conduct proscribed by Section 243.4, 261, 261.5,

14  262, 264.1, 266c, 269, 286, 288, 288a, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of

15  Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6, of the Penal Code.  (B)

16  Any conduct proscribed by Section 220 of the Penal Code, except assault with intent to commit

17  mayhem.  (C) Contact, without consent, between any part of the defendant's body or an object

18  and the genitals or anus of another person.  (D) Contact, without consent, between the genitals

19  or anus of the defendant and any part of another person's body.  (E) Deriving sexual pleasure

20  or gratification from the infliction of death, bodily injury, or physical pain on another person.

21  (F) An attempt or conspiracy to engage in conduct described in this paragraph."  Italics added.

22        The incident involving Hilda Keller does constitute a crime or sexual offense under the

23  language of section 1108, subdivision (d).  It instead amounts to a request to engage in lawful

24  and consensual conduct—the taking of photographs of Ms. Keller's toes and massaging her feet.

25  Evidence of the incident involving Ms. Keller therefore is not admissible under section 1108.

26        Even if the evidence involved a crime or a sexual offense – which it does not – it would

27  be inadmissable under section 1108, subdivision (a) because it is inadmissible under Evidence

28  Code §352.  Mr. Chandler will discuss this basis for exclusion in argument II, below, when he

                                                                              1032

No. C1223754                              4                    Motion re: Hilda Keller

1    shows the evidence is inadmissible under section 1101.

2                                              II

3              EVIDENCE CONCERNING THE INCIDENT INVOLVING HILDA

4                KELLER IS INADMISSIBLE UNDER EVIDENCE CODE §1101

5    A. Applicable Legal Principles

6              As noted above, at the preliminary hearing the prosecutor offered the evidence of the

7    incident involving Ms. Keller on the issue of intent, arguing that it showed an unnatural sexual

8    interest in feet and that some of the charged offenses involved the child's feet. (PHT 471.) The

9    Court ruled that the evidence would be admissible for the limited purpose of showing intent and

10   would consist only of Mr. Chandler's comments about feet and would not be admissible as

11   evidence of Mr. Chandler's romantic relationship with any adult women. (PHT 471-472.) The

12   prosecutor's argument and the Court's ruling were based on an erroneous interpretation of intent

13   in the context of section 1101. Under a correct analysis, the evidence lacked probative value on

14   the issue of intent. In addition, even assuming for the sake of argument that the evidence had

15   some minimal probative value, which it did not, that probative value was substantially

16   outweighed by the probability that admission of the evidence will create a substantial danger of

17   undue prejudice, of confusing the issues and of misleading the jury.

18             Evidence Code §1101, subdivision (a) provides: "Except as provided in this section and

19   in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her

20   character (whether in the form of an opinion, evidence of reputation, or evidence of specific

21   instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a

22   specified occasion." This rule of exclusion of evidence of criminal character or propensity is

23   more than three centuries old and stems from English common law. (*People v. Alcala* (1984) 36

24   Cal.3d 604, 630; see, e.g., *People v. White* (N.Y. Sup.Ct. 1835) 14 Wend. 111, 113-114; *United

25   States v. Burr* (C.C.Va. 1807) 25 Fed.Cas. 187, 198 (Marshall, C.J.); *King v. Doakes*

26   (Mass.Sup.Ct. 1763) Quincy's Mass. Reports 90; *Hampden's Trial* (Eng.K.B. 1684) 9

27   How.St.Tr. 1053, 1103.) It "represents a revolution in the theory of criminal trials and is one of

28   the peculiar features, of vast moment, that distinguishes the Anglo-American from the

                                                                                          1033

No. C1223754                                    5                        Motion re: Hilda Keller

1  Continental system of evidence." (1A *Wigmore on Evidence* (Tillers rev. 1983) §58.2, p. 1213.)

2       Section 1101, subdivision (b) creates an exception to the rule of exclusion in subdivision

3  (a). Subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that

4  a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as

5  motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or

6  accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted

7  unlawful sexual act did not reasonably and in good faith believe that the victim consented) other

8  than his or her disposition to commit such an act." There are a number of cases that explain how

9  a trial court should apply subdivision (b).

10       The Supreme Court has "set out three requirements which must be met before evidence

11  of other crimes is admitted: the evidence must be relevant to some material fact at issue; it must

12  have a tendency to prove that fact; and admissibility must not contravene policies limiting its

13  admission." (*People v. Bigelow* (1984) 37 Cal.3d 731, 747.)

14       In order to satisfy the requirement of materiality, the fact sought to be proved may be

15  either an ultimate fact in the proceeding or an intermediate fact from which an ultimate fact may

16  be presumed or inferred. (*People v. Thompson* (1980) 27 Cal.3d 303, 315.) Ultimate facts

17  include the elements of the charged crime, such as intent. (*Id.* at 315, fn. 13.)

18       In ascertaining whether evidence of other crimes has a tendency to prove the material

19  fact, the court must first determine whether or not the uncharged offense serves logically,

20  naturally, and by reasonable inference to establish that fact. (*People v. Thompson, supra,* 27

21  Cal.3d at 316.) When making this determination, the court must look behind the label describing

22  the kind of similarity or relation between the prior acts and the charged offense and must

23  examine the precise elements of similarity between the offenses with respect to the issue for

24  which the evidence is proffered and satisfy itself that each link of the chain of inference between

25  the two is reasonably strong. (*Ibid.*) If the connection between the prior act and the ultimate fact

26  in dispute is not clear, the evidence should be excluded. (*Ibid.*)

27       In light of these rules, evidence of uncharged acts cannot be justified merely by asserting

28  an admissible purpose. Instead, such evidence may only be admitted if it tends logically,

1034

1   naturally and by reasonable inference to prove the issue upon which it is offered. (*People v.*

2   *Guerrero* (1976) 16 Cal.3d 719, 724.)

3       The policies limiting admission of other-crimes evidence include "policies barring

4   evidence which tends to prove guilt by proving disposition to commit crime, those barring the

5   use of prejudicial cumulative evidence, and the statutory provision (Evid. Code, §352) permitting

6   exclusion of evidence when its probative value is outweighed by its prejudicial effect." (*People*

7   *v. Bigelow, supra,* 37 Cal.3d at 747.)

8       Even when evidence of uncharged crimes is relevant, it contains within itself a substantial

9   degree of prejudice and should be examined with care and received with extreme caution, with

10  doubts as to admissibility resolved in favor of the accused. (*People v. Holt* (1984) 37 Cal.3d

11  436, 451.) The prejudicial effect of the evidence stems from the fact that it produces an over-

12  strong tendency to believe the defendant is guilty of the charge merely because he is a likely

13  person to do such acts. (*Id.* at 450-451.) In addition, admission of evidence of uncharged acts

14  can result in the jury drawing unfavorable inferences about the defendant's character. When

15  such evidence is admitted "'the jury might be unable to identify with a defendant of offensive

16  character, and hence tend to disbelieve the evidence in his favor.' (Note (1964) 78 Harv.L.Rev.

17  426, 436.)" (*People v. Thompson, supra,* 27 Cal.3d at p. 317, footnote omitted.) The Supreme

18  Court therefore has cautioned that because substantial prejudicial effect is inherent in such

19  evidence, uncharged offenses are admissible only if they have *substantial* probative value.

20  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.) Also, evidence is inadmissible if it is merely

21  cumulative with respect to other evidence the People may use to prove the same issue. (*People*

22  *v. Alcala, supra,* 36 Cal.3d at pp. 631-632; *People v. Thompson, supra,* 27 Cal.3d at p. 318;

23  *People v. Guerrero, supra,* 16 Cal.3d at p. 724; *People v. Schader* (1969) 71 Cal.2d 761, 775;

24  *People v. Stanley* (1967) 67 Cal.2d 812, 819; *People v. Kronemyer* (1987) 189 Cal.App.3d 314,

25  346.)

26      Here, the prosecutor sought to admit the incident involving Ms. Keller on the issue of

27  intent. There is case law explaining how to analyze a request to admit uncharged acts evidence

28  to prove intent.

1035

No. C1223754            7            Motion re: Hilda Keller

1    Ordinarily, evidence of uncharged acts is not admissible unless the uncharged acts and

2    the charged offenses are similar.  The Supreme Court has explained that there are three tiers of

3    similarity depending on the issue on which the evidence of the uncharged acts had been

4    admitted.  The greatest degree of similarity is required for evidence admitted to establish

5    identity.  Here, the uncharged act and the charged offense must share common features that are

6    sufficiently distinctive to support the inference that same person committed both acts. (*People*

7    *v. Ewoldt, supra,* 7 Cal.4th at p. 403.)  A lesser degree of similarity is required to prove the

8    existence of a common design or plan. Here, there must be such a concurrence of common

9    features between the charged and uncharged acts that they can be explained by a general plan

10    embracing both.  (*Id.* at pp. 402-403.)  The least degree of similarity applies to intent.  "In order

11    to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to

12    support the inference that the defendant probably harbored the same intent in each instance."

13    (*Id.* at p. 402, citations, internal quotation marks and brackets omitted.)

14    The use of prior acts to prove intent is based on the doctrine of chances: "the instinctive

15    recognition of that logical process which eliminates the element of innocent intent by

16    multiplying instances of the same result until it is perceived that this element cannot explain

17    them all." (*People v. Robbins* (1988) 45.Cal.3d 867, 879, citation and internal quotation marks

18    omitted.)  Under this doctrine, the recurrence of a similar result (i.e., an unlawful act) tends

19    increasingly with each instance to negate innocent mental states such as self-defense and

20    establish a criminal intent.  (*Id.* at pp. 879-880.)  There is a debate about whether a single

21    incident of uncharged misconduct is sufficient to justify admission of proof of intent as to the

22    charged crime under the chances theory. (*Id.* at p. 880, fn. 5.)  The California Supreme Court

23    has ruled that no categorical statement can be made one way or the other and that the decision

24    must be made on a case-by-case basis. (*Ibid.*)  However, the Supreme Court has observed that

25    "[a] simple, unremarkable single instance of prior conduct probably will not qualify, but a

26    complex act requiring several steps, particularly premeditated, may well qualify."  (*Ibid.,*

27    citations and internal quotation marks omitted.)

28    The intent for which evidence of uncharged acts is admissible is "the intent that

1036

No. C1223754                                      8                        Motion re: Hilda Keller

1   comprises an element of the charged offense." (*People v. Ewoldt, supra*, 7 Cal.4th at p. 394, fn.

2   2; accord *People v. Thomas* (2011) 52 Cal.4th 336, 355.)   A ruling admitting or denying

3   evidence of an uncharged act is a matter within the trial court's discretion.   (*People v. Hayes*

4   (1990) 52 Cal.3d 577, 617.)

5   **B. Analysis of the Evidence in this Case**

6         **1. Absence of Probative Value**

7         As noted above, the relevant intent for purposes of admissibility of the evidence is the

8   criminal intent that comprises an element of the charged offenses.   Here, the charged offenses

9   are violations of Penal Code §288, subdivision (a).   The requisite intent for this offense is "the

10   intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the

11   defendant] or the child...."   The "gist" of the offense is the defendant's intent to sexually exploit

12   a child.   (*People v. Martinez* (1995) 11 Cal.4th 434, 444.)   This intent necessarily is based on a

13   sexual interest in children.   It is different than a sexual interest in an adult woman like Ms.

14   Keller.   Thus, for example, the fact that a man engages in sexual intercourse with an adult

15   woman does not show he is interested in engaging in sexual intercourse with children.   If

16   anything, it shows the opposite – a sexual interest in adult women rather than a sexual interest

17   in children.

18         The prosecutor argued at the preliminary hearing that the incident involving Ms. Keller

19   showed an unnatural sexual interest in feet and some of the charged offenses involved feet.

20   (PHT 471.)   But the intent element for a violation of Penal Code §288 is a sexual interest in

21   children, not a sexual interest in feet.   If a man is sexually interested in the shoulders of adult

22   women, this has no tendency in reason to show he is sexually interested in the shoulders of

23   children.   Moreover, there is no evidence that Mr. Chandler engaged in foot-related conduct of

24   the sort he proposed to Ms. Keller, namely taking photographs of the children's toes or

25   massaging their feet.

26         Mr. Chandler's position finds support in scientific literature related to the charged and

27   uncharged conduct in this case.   Attached to this motion is a declaration by Dr. William

28   O'Donohue, a Professor of Psychology at the University of Nevada, Reno.   Dr. O'Donohue has

1037

---

No. C1223754                    9                    Motion re: Hilda Keller

1   worked, studied, edited and written extensively in the area of sexual disorders and child sexual

2   abuse.  He explains in his declaration that wanting to touch or take photographs of a woman's

3   feet is not sufficient to make a diagnosis of a sexual interest in feet.  Also, he states that there

4   is no scientific information indicating that there is a link between a sexual interest in feet and

5   pedophilia or the commission of sexual offenses against children.   In addition, and most

6   importantly, he states that a sexual interest in the feet of a woman does not translate into a sexual

7   interest in the feet of children.  This is because sexual interest depends on the characteristics of

8   the second party rather than on the nature of the sexual activity in issue.  For example the desire

9   to have intercourse with an adult woman does not translate into a sexual interest in having

10  intercourse with children.  It is clear from Dr. O'Donohue's declaration that the foot-related

11  statements Ms. Keller says Mr. Chandler made have absolutely no probative value on the intent

12  element of section 288.  They show, at most, a sexual interest in an adult woman, not a sexual

13  interest in children.

14       In addition, the conduct with Ms. Keller lacks probative value because it is cumulative

15  within the meaning of the cases cited above holding that evidence of uncharged acts should be

16  excluded if it is cumulative.  As noted above, three of the children – A, L and W – testified about

17  conduct on Mr. Chandler's part involving their feet.  In view of the fact that three alleged victims

18  will testify about conduct by Mr. Chandler related to feet, testimony from Ms. Keller cannot add

19  anything of meaningful probative value.

20       **2. Danger of Prejudice, Confusion and Misleading the Jury**

21       Even if we assume for the sake of argument that Ms. Keller's testimony has some

22  probative value, which it does not, it should be excluded under Evidence Code §352, which the

23  *Bigelow* case says is a basis for exclusion of evidence of uncharged acts.  Section 352 provides:

24  "The court in its discretion may exclude evidence if its probative value is substantially

25  outweighed by the probability that its admission will (a) necessitate undue consumption of time

26  or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the

27  jury."  Here, evidence concerning the incident with Mr. Chandler and Ms. Keller will not

28  necessitate undue consumption of time.  However, the other three bases for exclusion listed in

1038

No. C1223754                        10                   Motion re: Hilda Keller

1  section 352 apply.

2       As shown above, the evidence has no probative value with respect to the intent element

3  of lewd conduct.  But assuming for the sake of argument that the evidence has some probative

4  value, that probative value is substantially outweighed by the probability that its admission will

5  create a danger of undue prejudice.

6       As used in section 352, the term probative value "goes to the *weight* of the evidence...."

7  (*People v. Thompson, supra*, 27 Cal.3d at p. 318, fn. 20, italics in original.)  The amount of

8  probative value the evidence has "depends upon the extent to which it tends to prove an issue

9  by logic and reasonable inference (degree of relevancy), the importance of the issue to the case

10  (degree or materiality), and the necessity of proving the issue by means of this particular piece

11  of evidence (degree of necessity)." (*People v. Benson* (1982) 130 Cal.App.3d 1000, 1006,

12  internal quotation marks and citation omitted.)  Evidence lacks probative value when it is

13  unnecessary to introduce the evidence because the issue on which it was offered is undisputed

14  or is amply established by other evidence. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193-

15  194.)  Evidence that is cumulative lacks probative value. (*People v. Cardenas* (1982) 31 Cal.3d

16  897, 904.)  Here, the evidence involving the incident with Ms. Keller is cumulative to the

17  evidence three of the alleged victims will offer regarding conduct related to their feet.  There is

18  thus no need to use the testimony of Ms. Keller.  Also, as shown above, the evidence regarding

19  Ms. Keller has little or no probative value because it involves conduct with a grown woman and

20  does not speak to the intent to arouse or gratify sexual desires related to a child.

21       As used in section 352, the term undue prejudice refers to evidence which tends to evoke

22  an emotional bias against the defendant as an individual and has very little effect on the issues.

23  (*People v. Padilla* (1995) 11 Cal.4th 891, 925.)  Evidence thus is unduly prejudicial if it is likely

24  to arouse the emotions of jurors or to be used in some manner unrelated to the issue on which

25  it was admissible.  (*People v. Cudjo* (1993) 6 Cal.4th 585, 610.)  "'[E]vidence is unduly

26  prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.'"

27  (*People v. Doolin* (2009) 45 Cal.4th 390, 439, quoting *Vorse v. Sarasy* (1997) 53 Cal.App.4th

28  998, 1009.)

1039

No. C1223754                 11               Motion re: Hilda Keller

1    The incident involving Ms. Keller is prejudicial under these standards. It tends to evoke

2  an emotional bias because Mr. Chandler was married at the time of the incident and the incident

3  shows him being unfaithful to his wife and engaging in the sexual harassment of Ms. Keller.

4  Also the incident about interest in toes and feet has what most jurors would perceive to be a

5  creepy and abnormal sexual element to it that would cause the jury to view Mr. Chandler as an

6  odd person who is not worthy of belief and who might be capable of harboring other abnormal

7  sexual interests such as a sexual interest in children.

8    For these reasons the evidence also creates a danger of confusing the issues and

9  misleading the jury. The "creep," "extramarital" and "harassment" factors inherent in the

10  incident with Ms. Keller might well cause the jury to lose focus of the intent element involving

11  a sexual interest in children and to want to convict Mr. Chandler because of these factors

12  unrelated to the relevant question of intent.

13    The examination of Detective Pierce at the preliminary examination shows how hard it

14  is to limit the use of the incident involving Ms. Keller to its ostensible purpose. When admitting

15  the evidence, the court made clear that the only thing admissible was activities involving feet,

16  and not other matters such as Mr. Chandler's marital history. (PHT 471-472.) After the Court

17  gave this explanation of the limited nature of what would be admissible, the prosecutor's very

18  first question was whether Ms. Keller told Detective Pierce that she believed Mr. Chandler had

19  a sexual interest in her. Defense counsel objected on the ground that this question violated the

20  Court's ruling, and the Court sustained the objection. (PHT 472.) Rather than move onto a

21  proper question, the prosecutor explained that she had asked the question in order to provide

22  context for the admissible evidence. The Court restated that it was not interested in Mr.

23  Chandler's romantic relationships with adult women and was only interested in activity

24  involving feet. (PHT 472.) After eliciting testimony about Ms. Keller's statement involving

25  feet, the prosecutor asked if this conduct made her uncomfortable. (PHT 472-473.) Defense

26  counsel objected and the Court sustained the objection. (PHT 473.) The prosecutor then moved

27  on to questions about a different person whom Detective Pierce interviewed. (PHT 473.)

28    The above interchange is important because it shows that even the prosecutor -- an

1040

No. C1223754                    12              Motion re: Hilda Keller

1  attorney with sufficient experience to be assigned to try delicate and complicated cases involving

2  charges of sex offenses against minors – had trouble limiting her questions to the topic the Court

3  identified as being relevant.  We can safely assume from this that the jurors -- who are laymen

4  and not experienced attorneys – will similarly find it difficult to use the evidence solely for its

5  narrow admissible purpose and will not be tempted to use it for other improper and possibly

6  prejudicial purposes.  The dangers of prejudice, confusion and being misled are great and

7  outweigh whatever limited probative value the evidence might arguably possess.

8                          CONCLUSION

9        The California Supreme Court has cautioned: "Evidence of uncharged offenses is so

10  prejudicial that its admission requires extremely careful analysis.  Since substantial prejudicial

11  effect is inherent in such evidence, uncharged offenses are admissible only if they have

12  substantial probative value." (*People v. Ewoldt, supra,* 7 Cal.4th at p. 404, citations, brackets

13  and internal quotation marks omitted.)  For the reasons explained above the evidence of the

14  incident involving Ms. Keller is inadmissible under Evidence Code § 1108 and § 1101 and should

15  be excluded.

16  DATED:

17        5/13/13

18                                          Respectfully submitted,

19

20                                          BRIAN MADDEN
                                            Attorney for Defendant
21                                          Craig Richard Chandler

22

23

24

25

26

27

28

                                                         1041

No. C1223754                    .        13              Motion re: Hilda Keller

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,       )

12        Plaintiff,                          )   Case No. C1223754

13  v.                                        )   **DECLARATION OF**
                                              )   **WILLIAM O'DONOHUE, PH.D.**
14  CRAIG RICHARD CHANDLER,                   )

15        Defendant.                          )

16

17        I, William O'Donohue, Ph.D., declare:

18        I am a professor of Psychology at the University of Nevada, Reno. Since 1996 I also have

19  been the Director of the Victim of Crimes Treatment Center at the University of Nevada, Reno.

20  I received a B.S. in psychology from the University of Illinois at Urbana-Champaign and an

21  M.S. and Ph.D. in clinical psychology from State University of New York at Stony Brook. From

22  1996 to 2008, I was the Director of Sexual Assault Prevention and Counseling Services at the

23  University of Nevada, Reno. I am an advisor the DSM-V Work Group on Sexual Gender

24  Identity Disorders of the American Psychiatric Association, focusing on the diagnosis of

25  Pedophilia. I am a member of the Nevada Attorney General's Victims of Crimes Subcommittee.

26  I am on the Editorial Board of the Journal of the Academy of Medical Psychology. I have

27  received several grants and awards related to the study and treatment of sexually abused

28  children. I am the co-editor of a two-volume book dealing with theory, research, and clinical

1042

No. C1223754                          1   Declaration of William O'Donohue, Ph.D

1   issues involving sexually abused children and the author or co-author of numerous articles

2   dealing with sexually abused children.

3        In common parlance, a sexual interest in feet is called a foot fetish.  This is a misnomer.

4   Under DSM-IVTR diagnostic criteria, fetishism applies to intense sexually arousing fantasies,

5   sexual urges, or behaviors involving the use of *nonliving* objects such a female undergarments.

6   Feet are considered living objects and a sexual interest in them is no longer considered a fetish

7   but may be diagnosed under the catchall category, "Paraphilia Not Otherwise Specified."  The

8   subtype of problem in this general diagnosis is called partialism  — an arousal to what is

9   considered a typically nonsexual part of the human body.

10        Mr. Chandler to my knowledge has not been diagnosed by any health professional with

11   either Fetishism or Paraphilia NOS.  Therefore it would be inappropriate to judge him as having

12   either problem.

13        Wanting to touch or take photographs of a woman's foot is not in itself sufficient to make

14   these diagnoses.   It would be inappropriate to make this judgment from the report of one

15   individual.  It would be necessary to conduct a clinical interview in order to obtain information

16   from Mr. Chandler as well as from his wife about his sexual functioning and sexual interests.

17   Additional psychological testing would also be useful such as plethysmography, the Multiphasic

18   Sex Inventory II, the Abel Assessment for Sexual Interest, and the Sexual Outlet Inventory

19   (Darcangelo, Hollings, Paladino, 2008).  In this assessment one would want to consider if Mr.

20   Chandler does indeed have a sexual interest in feet, if he has sexual fantasies regarding feet, if

21   he has sexual urges regarding feet, and if feet cause significant distress or impairment in

22   functioning.  Currently, I have no information indicating that these essential diagnostic criteria

23   are met.

24        However, even if we were to assume that Mr. Chandler has what is commonly known as

25   a "foot fetish," there is no scientific information indicating that there is a link between this and

26   either pedophilia or sexual offending against children.  For example in a recent review of the

27   literature for the DSMV committee charged with revising the DSMIVTR diagnostic criteria for

28   fetishism, leading authority Martin P. Kafka (2009) stated,

1043

No. C1223754                          2   Declaration of William O'Donohue, Ph.D

1   "Fetishes can co-occur with other paraphilic behaviors, especially 'sadomasochism''

2   (Brown, 1983; Buhrich, 1983; Gosselin & Wilson, 1980; Spengler, 1977; Weinberg et al., 1994)

3   and transvestic fetishism (Blanchard, Racansky, & Steiner, 1986; Freund, Seto, & Kuban, 1996;

4   Wilson & Gosselin, 1980) but are uncommon amongst sexual offender paraphiliacs (Abel &

5   Osborn, 1992; Gebhard et al., 1965)."

6        Furthermore, a sexual attraction to the feet of a woman does not generalize to a sexual

7   attraction to children's feet, any more than sexual interest in having intercourse with an adult

8   woman translates into a sexual interest in having intercourse with children.  In this context,

9   sexual interest depends on characteristics of the second party, not on an interest in a particular

10  type of sexual activity.

11       In fact, individuals with sexual attraction to particular body parts that are nonsexual (often

12  called "partialism") usually have very discerning requirements for this interest.  They are usually

13  very particular about minute characteristics of the body part.  For example, they wish that the

14  toenails be trimmed carefully, that the foot be shapely, that it be of a certain size, that there be

15  no calluses or other problems with the foot.  This sort of interest in such particulars is contrary

16  to a generalization that they have a sexual interest in any and all feet.

17       In addition, there is no scientific information to suggest that known pedophiles or child

18  molesters have a higher than average interest in feet.  Also, individuals with sexual interest in

19  feet do not have any higher likelihood of committing sexual crimes against children than found

20  in the normal population.  It is simply not the case that to have one paraphilia it is likely that one

21  has another paraphilia. I have reviewed information on PubMed and Psychlit literature searches

22  as an additional check to these claims as well as authoritative books published on sexual

23  deviance.

24       Finally, there is an epidemiological argument against the association.  Both pedophilia

25  and partialism are each very rare.   The joint probability of having both thus is extremely rare.

26  It is similar to saying being 7' 2" is rare and being suffering from hemophilia is rare.  It would

27  then be very rare to be a 7' 2" hemophiliac.  This is consistent with my clinical practice.  I have

28  directed a free clinic at the University of Nevada Reno for over 17 years and treated over 2000

1044

No. C1223754                              3    Declaration of William O'Donohue, Ph.D

child sexual abuse victims I have never encountered child sexual abuse victim who reported that their abuser engaged in sexual activity with their feet.

## References

Kafka, M.P. (2009).  The DSM diagnostic criteria for fetishism.  Archives of Sexual Behavior, available on line. http://www.dsm5.org/Documents/Sex%20and%20GID%20Lit%20Reviews/Paraphilias/KAFKADSM2.pdf

Darcangelo, S., Hollings, A, & Paladina, G. (2008).  Fetishism: assessment and treatment. In D.R. Laws and W. O'Donohue (Eds.).  Sexual Deviance.  New York: Guilford.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was signed in Reno, Nevada on March 26 2013.

William O'Donohue, Ph.D.

1045

No. C1223754                                    4    Declaration of William O'Donohue, Ph.D

1 | Brian Madden, SB# 55869
2 | MADDEN & REDDING
  | 1625 The Alameda, Suite 801
3 | San Jose, California 95126
  | Telephone: (408) 275-8100
4 | Facsimile: (408) 275-8199

5 | Attorney for Defendant
  | CRAIG RICHARD CHANDLER



F I L E D

JUN 11 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____DEPUTY

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | PEOPLE OF THE STATE OF CALIFORNIA, )

12 |     Plaintiff, ) Case No. C1223754

13 | v. ) MOTION TO EXCLUDE
  | ) THE TESTIMONY OF MARY
14 | CRAIG RICHARD CHANDLER, ) MONTGOMERY ABOUT THE
  | ) DOOR TO MR. CHANDLER'S
15 |     Defendant. ) CLASSROOM BEING LOCKED ON
  | ) ONE OCCASION

16

17 |                            FACTS

18 |       The prosecutor has included Mary Montgomery on her witness list.  According to the

19 | police reports, Ms. Montgomery taught in a class room that was next door to Mr. Chandler's

20 | class room.  She said that sometime between August and December 2001, during P.E., Mr.

21 | Chandler let his students play ball just outside his classroom rather than on the play ground, and

22 | he was not with his students at the time even though teachers are supposed to be with students

23 | during P.E.  On this occasion, Ms. Montgomery heard knocking that came from the door of Mr.

24 | Chandler's classroom.  She looked out and saw one of her former students pounding on the door

25 | to Mr. Chandler's classroom.  She asked the student where Mr. Chandler was.  The student said

26 | Mr. Chandler was in his classroom and the door was locked.  A few minutes later, the door

27 | opened and Mr. Chandler was in the door way.

28 |       Ms. Montgomery did not say that she herself checked to see whether or not the door was

1046

---

No. C1223754                         1                 Motion re: Mary Montgomery

1  locked. Nor did she say that she saw a student in or leaving Mr. Chandler's classroom.

2  ARGUMENT

3  Mr. Chandler contends that the anticipated testimony of Ms. Montgomery about Mr.

4  Chandler's classroom being locked during a P.E. period, with him inside the classroom, is

5  inadmissible for three reasons. First, it is hearsay. Second, it is irrelevant. Third, assuming for

6  the sake of argument that it contains probative value, which it does not, that probative value is

7  substantially outweighed by the probability that its admission will create substantial danger of

8  undue prejudice, of confusing the issues, and of misleading the jury.

9  **A. The Evidence is Hearsay**

10  Evidence Code §1200, provides, in relevant part: "(a) 'Hearsay evidence' is evidence of

11  a statement that was made other than by a witness while testifying at the hearing and that is

12  offered to prove the truth of the matter stated. (b) Except as provided by law, hearsay evidence

13  is inadmissible."

14  Ms. Montgomery herself saw a former student knocking on the door of Mr. Chandler's

15  classroom. A few minute later, she saw Mr. Chandler in the doorway. These two observations

16  are not hearsay because they describe the perceptions of Ms. Montgomery herself. But the

17  statements of the former student that Mr. Chandler was in the classroom and the door was locked

18  are paradigm hearsay statements. Someone other than Ms. Montgomery made the statements.

19  And if the prosecution seeks to admit those statement, they will be introduced for the truth of

20  the matters asserted, i.e., (1) that Mr. Chandler was in the classroom and (2) that the door to the

21  classroom was locked.

22  Mr. Chandler is aware of no hearsay exception that might apply to the student's

23  statements to Ms. Montgomery. Therefore, the only way to get this information before the jury

24  is to call the student as a witness and have him testify about what *he* perceived. Under the

25  hearsay rule, the evidence cannot come in by asking Ms. Montgomery what he told her.

26  **B. The Evidence Is Irrelevant**

27  Not only are the statements the student made to Ms. Montgomery inadmissible hearsay,

28  those statements *and* Ms. Montgomery's own perceptions are inadmissible because they are

1047

No. C1223754                    2              Motion re: Mary Montgomery

1   irrelevant. For the same reason, the testimony of the student would be inadmissible if he were

2   called as a witness.

3        Evidence Code §351 provides: "Except as otherwise provided by statute, all relevant

4   evidence is admissible." Evidence Code §210 defines relevant evidence as follows: "'Relevant

5   evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay

6   declarant, having any tendency in reason to prove or disprove any disputed fact that is of

7   consequence to the determination of the action." Under this definition, relevant evidence has

8   two dimensions: (1) probative value, i.e., tendency of the evidence in reason to prove or disprove

9   the proposition for which it is offered, and (2) relationship to a matter which is provable in the

10   action, i.e., the tendency of the evidence in reason to prove or disprove any disputed fact that is

11   of consequence to the determination of the action. (*People v. Hill* (1992) 3 Cal.App.4th 16, 29,

12   overruled on another point in *People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5.) Evidence is

13   irrelevant when the inference drawn from it is too remote or speculative. (*People v. Warner*

14   (1969) 270 Cal.App.2d 900, 908; *People v. Simms* (1970) 10 Cal.App.3d 299, 311.)

15        A trial court has broad discretion in determining the relevance of evidence but lacks

16   discretion to admit irrelevant evidence. (*People v. Crittenden* (1994) 9 Cal.4th 83, 132.) In

17   exercising this discretion, and in determining the weight of the evidence, the trial court should

18   give the defendant the benefit of any reasonable doubt. (*People v. Wright* (1985) 39 Cal.3d 576,

19   584-585; *People v. Honig* (1996) 48 Cal.App.4th 289, 342.)

20        Evidence about Mr. Chandler's door being locked on a single occasion is not relevant to

21   prove or disprove any disputed fact that is of consequence to this action. This testimony might

22   have relevance if someone saw that Mr. Chandler was with a student in his classroom with the

23   door locked. But all that the student saw and told Ms. Montgomery was that the door was locked

24   with Mr. Chandler being inside his classroom. This proves nothing other than that Mr. Chandler

25   was alone in his locked classroom. There is no indication of there being any nefarious or

26   unlawful reason for this. Any testimony on this subject is irrelevant and therefore the Court

27   lacks discretion to admit it.

28   /

1048

No. C1223754         3         Motion re: Mary Montgomery

## C. Evidence Code §352

Even if we assume for the sake of argument that testimony about Mr. Chandler's classroom door being locked has some probative value, which it does not, it should be excluded under Evidence Code §352.  Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Here, evidence concerning the incident will not necessitate undue consumption of time.  However, the other three bases for exclusion listed in section 352 apply.

As shown above, the evidence has no probative value of any sort.  But assuming for the sake of argument that the evidence has some probative value, that probative value is substantially outweighed by the probability that its admission will create a danger of undue prejudice.

As used in section 352, the term probative value "goes to the *weight* of the evidence...." (*People v. Thompson* (1980) 27 Cal.3d 303, 318, fn. 20, italics in original.)  The amount of probative value the evidence has "depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree or materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity)."  (*People v. Benson* (1982) 130 Cal.App.3d 1000, 1006, internal quotation marks and citation omitted.)  Testimony indicating that Mr. Chandler on one occasion had the door to his classroom locked, with no evidence indicating a child was with him in the locked classroom, does not prove any issue in this case.  Mr. Chandler could have been in his locked classroom for any one of a large number of innocent reasons – to read a book without being interrupted, to savor an apple in solitude, to grade assignments in silence, to balance his checkbook.  Without evidence indicating something nefarious was going on, the evidence lacked even minimal probative value.

As used in section 352, the term undue prejudice refers to evidence which tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues. (*People v. Padilla* (1995) 11 Cal.4th 891, 925.)  Evidence thus is unduly prejudicial if it is likely

1049

1  to arouse the emotions of jurors or to be used in some manner unrelated to the issue on which
2  it was admissible. (*People v. Cudjo* (1993) 6 Cal.4th 585, 610.) "'[E]vidence is unduly
3  prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.'"
4  (*People v. Doolin* (2009) 45 Cal.4th 390, 439, quoting *Vorse v. Sarasy* (1997) 53 Cal.App.4th
5  998, 1009.)

6      The anticipated testimony of Ms. Montgomery is prejudicial under these standards.  It
7  tends to evoke an emotional bias by suggesting, without any factual basis, that Mr. Chandler was
8  in his classroom for a nefarious and secretive reason that he wished to hide from the world.  This
9  would be an illegitimate purpose for the evidence.  The evidence is long on innuendo and
10 lacking in substance.

11     The evidence also creates a danger of confusing the issues and misleading the jury.  The
12 evidence allows the jury to speculate that Mr. Chandler must have been up to no good, that he
13 was trying to hide something, and that he is the sort of person whose character is consistent with
14 the commission of a secretive offense like child molestation.

15     Assuming the evidence has some minimal probative value, the Court should exercise its
16 discretion to exclude it under section 352.

## CONCLUSION

17
18     For the reasons explained above the anticipated testimony of Ms. Montgomery
19 inadmissible as hearsay and irrelevant and under Evidence Code §352.

20 DATED:
21       5/13/13

                              Respectfully submitted,
22
23
24                            BRIAN MADDEN
                              Attorney for Defendant
25                            Craig Richard Chandler
26
27
28
                                                          1050

No. C1223754                  5          Motion re: Mary Montgomery

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER



**F I L E D**

JUN 1 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,

12          Plaintiff,                    Case No. C1223754

13  v.                                    **MOTION TO EXCLUDE**
                                          **"GROOMING" EVIDENCE**
14  CRAIG RICHARD CHANDLER,

15          Defendant.

16

17                        **INTRODUCTION**

18          The prosecutor has included on her witness list Robert Dillon, a police officer, to testify

19  as an expert witness on the topic of grooming.  Grooming relates to a child molester ingratiating

20  himself with the purported victim over the course of time.  The evidence is analogous to conduct

21  among adults, commonly called seduction, through which they get to know each other over time

22  before establishing a sexual relationship.

23          It is the position of the defense that the evidence of grooming in this case should be

24  excluded for several reasons.  First, it is not a proper subject for expert testimony because it is

25  something within a juror's common knowledge and there is therefore no need for an expert to

26  testify about it.  Second, it is not a proper subject for expert testimony because it is overbroad

27  and confusing in that it in essence tells the jury that anyone who engages in social interaction

28  with a child is acting in the way child molesters act.  Third, the witness the prosecution plans to

                                                                    1051

No. C1223754                    1            Motion re: "Grooming" Evidence

1  use does not qualify as an expert witness on the subject.  Fourth, an actual expert explains in a

2  declaration attached to this motion that there no way to determine if conduct is sexual grooming

3  or simply innocent conduct.  There is therefore no way to prevent false conclusions that innocent

4  conduct is sexual grooming (a false positive) or false conclusions that sexual grooming conduct

5  is innocent (a false negative).  Fifth, the evidence is prejudicial because there is a substantial

6  danger the jury will not use the evidence for a limited purpose and instead will use it on the

7  improper issue of guilt or innocence.

8  <center>ARGUMENT</center>

9  A. Principles of Law Related to Expert Testimony

10      Evidence Code §720 describes the requirements for showing that a witness is qualified

11  to testify as an expert witness on a given subject.  It provides, in relevant part: "(a) A person is

12  qualified to testify as an expert if he has special knowledge, skill, experience, training, or

13  education sufficient to qualify him as an expert on the subject to which his testimony relates.

14  Against the objection of a party, such special knowledge, skill, experience, training, or education

15  must be shown before the witness may testify as an expert." Evidence Code §801 describes the

16  testimony an expert witness may give.  It provides: "If a witness is testifying as an expert, his

17  testimony in the form of an opinion is limited to such an opinion as is: (a) Related to a subject

18  that is sufficiently beyond common experience that the opinion of an expert would assist the trier

19  of fact; and  (b) Based on matter (including his special knowledge, skill, experience, training,

20  and education) perceived by or personally known to the witness or made known to him at or

21  before the hearing, whether or not admissible, that is of a type that reasonably may be relied

22  upon by an expert in forming an opinion upon the subject to which his testimony relates, unless

23  an expert is precluded by law from using such matter as a basis for his opinion." "[T]he purpose

24  of expert testimony, to provide an opinion beyond the common experience, dictates that the

25  witness possess uncommon, specialized knowledge." (*People v. Chapple* (2006) 138

26  Cal.App.4th 540, 547.)

27      Whether a person qualifies as an expert in a particular case depends upon the facts of that

28  case and the witness's qualifications. (*People v. Kelly* (1976) 17 Cal.3d 24, 39.) If a person is

<center>1052</center>

No. C1223754                          2              Motion re: "Grooming" Evidence

1   shown to be an expert in a certain area, this does not in itself make him an expert in a different

2   though related area. (*People v. Hogan* (1982) 31 Cal.3d 815, 851-852.) For example, the fact

3   that an officer is an expert in administering a nystagmus test does not in itself qualify him to give

4   testimony that the nystagmus he detected was caused by alcohol consumption. (*People v.*

5   *Williams* (1992) 3 Cal.App.4th 1326, 1333-1334.) The law requires that "any material that

6   forms the basis of an expert's opinion must be reliable." (*People v. Carpenter* (1997) 15 Cal.4th

7   312, 404 [internal quotation marks omitted].) "For the law does not accord to the expert's

8   opinion the same degree of credence or integrity as it does the data underlying the opinion. Like

9   a house built on sand, the expert's opinion is no better than the facts on which it is based."

10   (*People v. Gardeley* (1996) 14 Cal.4th 605, 618 [internal quotation marks and citation omitted].)

11        Even if the witness is an expert in a certain field, it is impermissible to use the

12   questioning of the witness as a vehicle for getting otherwise inadmissible and prejudicial

13   evidence before the jury. (*People v. Coleman* (1985) 38 Cal.3d 69, 81-86.) An expert witness

14   cannot, under the guise of giving reasons for his opinion, bring inadmissible hearsay before the

15   jury. (*People v. Montiel* (1993) 5 Cal.4th 877, 918-919.)

16        "'The expert witness is the only kind of witness who is permitted to reflect, opine, and

17   pontificate in language as conclusory as he may wish. . . . [¶]Once we recognize the expert

18   witness for what he is, an unusually privileged interloper, it becomes apparent why we must limit

19   just how far the interloping may go. A witness cut loose from time-tested rules of evidence to

20   engage in purely personal, idiosyncratic speculation offends legal tradition quite as much as the

21   tradition of science. Unleashing such an expert in court is not just unfair, it is inimical to the

22   pursuit of truth.'" (*People v. Johnson* (1993) 19 Cal.App.4th 778, 789-790, quoting Huber,

23   *Galileo's Revenge: Junk Science in the Courtroom* (2d ed. 1993) at p. 204.) An expert opinion

24   may carry crucial and often determinative weight. (*People v. Bowker* (1988) 203 Cal.App.3d

25   385, 390.)

26   **B. Case Law Discussing Evidence of Grooming**

27        As far as Mr. Chandler can determine, there is no California case law discussing the

28   admissibility of evidence of grooming of the sort the People seek to present. There is, however,

<div align="right">1053</div>

1   case law from other jurisdictions discussing the point.  Some of those cases approve of the

2   admission of grooming evidence.  Other cases hold such evidence inadmissible.

3       Typical of the cases holding the evidence admissible is *Jones v. United States* (D.C. App.

4   2010) 990 A.2d 970.  In that case, the expert witness who testified about grooming was Kenneth

5   Lanning, a former special agent in the Behavioral Science Unit of the FBI.  (*Id.* at p. 973.)  The

6   defendant objected to the testimony, arguing (1) the testimony was not beyond the ken of the

7   average juror; (2) Lanning was not qualified to testify on the topic; (3) Lanning's method of

8   classifying sex offenders was not generally accepted; and (4) his testimony would be

9   substantially more prejudicial than probative.  (*Id.* at p. 974.)

10      Lanning's qualifications rested on two decades of experience with the FBI's Behavioral

11  Science Unit, where his main focus was on sexual offenses against children.  He studied the

12  behaviors of perpetrators and victims from thousands of case files.  (*Id.* at p. 975.)  He had

13  published the fruits of his research in numerous articles and a widely disseminated monograph.

14  He had consulted on thousands of child sex cases and had participated in hundreds of training

15  courses all over the world dealing with the sexual victimization of children.  (*Ibid.*)  According

16  to the court, grooming employs "age-old techniques of seduction" whose key feature is that the

17  abuser identifies and tries to fill a child's needs by, for example, listening sympathetically to the

18  child, complimenting the child, hugging the child and buying the child things the child needs.

19  (*Id.* at pp. 975-976.)

20      The court noted that a trial judge has wide latitude in the admission or exclusion of expert

21  testimony and the trial judge's ruling will be sustained unless manifestly erroneous.  (*Id.* at p.

22  977.)  The court stated that even though the continuing vitality of stereotypes of molesters as

23  dirty old men in wrinkled raincoats may be debatable, Lanning's testimony dispelled this

24  stereotype and the trial court did not abuse its discretion in concluding the evidence was beyond

25  the ken of a juror and helpful to the jury.  (*Id.* at p. 978.)  The court further ruled that the trial

26  court was not manifestly erroneous and did not abuse its discretion in finding that Lanning's

27  extensive experience qualified him to give the expert testimony.  (*Id.* at pp. 979-980.)  The court

28  found, however, that Lanning's methodology was not adequate and there was no evidence he

1054

No. C1223754                          4                    Motion re: "Grooming" Evidence

1   employed scientific methods in forming his opinions about victim psychology, but noted that the

2   defendant did not object to Lanning's testimony on this ground. (*Id.* at pp. 980-981.) The court

3   found there was no danger of undue prejudice because although Lanning referred to certain

4   repugnant tactics used by some offenders, there was no evidence the defendant engaged in such

5   behavior. (*Id.* at p. 982.)

6       Typical of the cases holding grooming evidence inadmissible is *United States v. Raymond*

7   (D. Me. 2010) 700 F.Supp.2d 142, another case involving Lanning as the prosecution expert

8   witness. The court found that Lanning's opinions lacked reliability because the facts and data

9   Lanning used are not identified and he did not demonstrate that the principles and methods he

10  used in arriving at his opinions are reliable. (*Id.* at p. 147.) In this regard, the court was troubled

11  by the fact that Lanning said that his information and opinions were based on his acquired

12  knowledge and expertise. The court found this insufficient to support a fair assessment of the

13  data used or the reliability of Lanning's opinions. (*Ibid.*, fn. 5.) The court also was troubled

14  by the lack of any benchmarks regarding the frequency of the specific grooming behaviors, by

15  the absence of any discussion of false positives, by the absence of any discussion of cases in

16  which grooming behavior is present but there is no crime, and by the lack of any objective way

17  to test or challenge Lanning's opinions. (*Id.* at p. 148.) The court concluded that "for courtroom

18  evidentiary purposes, as far as this record shows, Lanning's categorization of behavioral

19  characteristics of child molesters and child victims is the 'subjective, conclusory approach' that

20  cannot be 'reasonably assessed for reliability'...." (*Id.* at p. 149.)

21      The court further concluded that the government had not shown that Lanning's testimony

22  "would reliably assist a jury in understanding the evidence or determining a fact in issue."

23  (*Ibid.*) In addition, the court concluded that Lanning's testimony carried a severe risk of unfair

24  prejudice because the jury could make a quick and justified jump from Lanning's expert

25  testimony about behavioral patterns to guilt in a case that shows similar patterns. (*Id.* at p. 150.)

26      Furthermore, the court concluded "that many of Lanning's opinions are actually common

27  sense observations that the government can simply argue in closing." (*Ibid.*) The court noted

28  that it was "hardly rocket science" for a jury to understand that a child can be groomed by a

---

1  reasonably nice adult with interpersonal skills. (*Id.* at p. 151.) Also, in the court's view, a jury

2  in 2010 does not need expert testimony to help it understand that not every child abuser is a dirty

3  old man in a wrinkled rain coat who snatches children off the street as they wait for a school bus.

4  The court pointed out: "Today's news unfortunately is replete with stories of child sexual abuse

5  involving priests and pastors, teachers and doctors, family members, and, in fact, almost every

6  kind of trusted and seemingly trustworthy person." (*Ibid.*)  The court observed that grooming

7  as described by Lanning is simply the use of attention, affection, kindness, privileges, etc., to

8  lower another person's inhibitions.  "I conclude that even an 'untrained layman,' the ordinary

9  jury member, is qualified to 'determine intelligently and to the best possible degree' whether a

10 person has seduced a child, without enlightenment from Lanning." (*Ibid.*)

11     The decision in *Raymond* is particularly instructive for purposes of Mr. Chandler's

12 motion to exclude grooming testimony.  This is because, as the court noted in *Raymond*, that

13 case involved a trial court exercising its discretion in making a de novo decision to exclude the

14 evidence, unlike *Jones*, which involved an appellate court reviewing whether a trial court abused

15 its discretion in deciding to admit the evidence. (*Id.* at p. 153.) This Court is in the same

16 position as the court that authored the *Raymond* decision.  It will make a de novo decision, not

17 review the decision of a lower court deferentially for abuse of discretion. Mr. Chandler asks the

18 Court to exclude the evidence based on the reasoning and conclusions of the court in *Raymond*.

19 That reasoning and those conclusions find support in California law, as Mr. Chandler now will

20 show.

21 **C. Grooming Is Something Within a Juror's Common Knowledge and There Is Therefore**

22 **No Need for an Expert to Testify about It**

23     To qualify as expert testimony, the testimony must relate "to a subject that is sufficiently

24 beyond common experience that the opinion of an expert would assist the trier of fact."

25 (Evidence Code §801, subd. (a).)  "Where an expert in a given field is not better equipped than

26 a lay person to make that particular inference or if neither an expert nor a lay person is allowed

27 to make that inference then the trier of fact is not 'assisted' by hearing the expert's opinion and

28 such testimony is inadmissible." (*In re Cherly H.* (1984) 153 Cal.App.3d 1098, 1118.) "Expert

1056

1    opinion is not admissible if it consists of inferences and conclusions which can be drawn as

2    easily and intelligently by the trier of fact as by the witness." *(People v. Torres* (1995) 33

3    Cal.App.4th 37, 45.)

4         The print and electronic press in recent years has been saturated with information about

5    child molestation.  Those accused of child molestation include people occupying respected

6    professions, such as priests, ministers and teachers.  The stereotype of the molester as a dirty old

7    man in a wrinkled raincoat may have existed at one time.  But that stereotype no longer persists.

8         As the court pointed out in *Raymond*, jurors would be aware that people who molest

9    children rarely are people who violently and forcibly attack them or of people who immediately

10   pounce on them.  Instead, jurors know that molesters include people in trusted positions, such

11   as teachers, relatives, priests and child care givers, who establish a relationship with a child over

12   time in order to gain trust and seduce the child.  No reasonable juror would come to the trial with

13   the view that child molesters cannot possibly or do not include teachers like Mr. Chandler.  The

14   subject of grooming now constitutes mainstream information.  The inferences and conclusions

15   concerning it can be drawn as easily and intelligently by the jurors as by Officer Dillon.

16   **D.  Evidence on Grooming in Essence Tells the Jury That Anyone Who Engages in Social**

17   **Interaction with a Child Is Acting in the Way Child Molesters Act**

18        Testimony about grooming does not relate to the guilt or innocence of the defendant in

19   any given case.  Instead, it is limited to behaviors which child molesters commonly employ in

20   order to ease the victim into participating in acts of molestation.  There is, however, a danger that

21   the jury will conclude that because the defendant engaged in conduct in which molesters engage,

22   he is guilty of the acts of molestation with which he has been charged.  The reasoning underlying

23   this is that if the defendant acts in a way that child molesters act, he most likely is a child

24   molester.

25        Courts try to prevent jurors from reasoning in this fashion by instructing them not to use

26   the evidence when determining whether the defendant is guilty of the charged offenses.  But the

27   grooming evidence is before the jury.  The prosecution has elicited it.  And the prosecution is

28   seeking a conviction.  And the evidence supports a conviction, albeit not directly.  Moreover,

<div align="center">1057</div>

---

No. C1223754               7             Motion re: "Grooming" Evidence

1    the jury is not supposed to ignore the evidence but must take it into consideration.

2         There is a danger that the jury will use the evidence for an improper purpose because such

3    a purpose seems inherent in the evidence.  The only sure way to avoid this danger is to keep the

4    evidence out.  Given the Court's broad discretion under Evidence Code §352 to exclude

5    evidence carrying a substantial danger of undue prejudice, of confusing the issues and of

6    misleading the jury, this is an appropriate ruling.  As Justice Cardozo once noted, the rules of

7    evidence are for ordinary minds, and where the risk of confusion is so great that evidence might

8    be used for an improper purpose, it should be excluded.  (*Shepard v. United States* (1931) 290

9    U.S. 96, 104.)

10   **E. Officer Dillon Does Not Qualify As an Expert**

11        The witness the prosecutor plans to call as an expert on grooming is Officer Robert Dillon

12   of the San Jose Police Department.  Officer Dillon worked on the sexual assault unit from March

13   2003 to October 2006.  He received 20 to 25 hours of training on grooming.  There is, however,

14   an extensive body of literature on the subject of grooming.  (See attached declaration of Dr.

15   William O'Donohue.)  As far as Mr. Chandler can tell, Officer Dillon is not familiar with this

16   vast literature.  Nor has he conducted any research into the topic of grooming.

17        The decision regarding the qualifications of a witness to be an expert is within the

18   discretion of the trial court.  (*People v. Hogan* (1982) 31 Cal.3d 815, 852.)  It is error, however,

19   to find a witness to be an expert if the evidence shows that the witness clearly lacks qualification

20   as an expert.  (*Ibid.*)  It is within the discretion of a trial court to find that a witness is an expert

21   where the witness has (1) attended lectures and seminars on the subject, (2) read the relevant

22   literature, and (3) conducted relevant experiments.  (*People v. Clark* (1993) 5 Cal.4th 950, 1018-

23   1019.)  But it is highly problematic for a police officer to be considered an expert on matters

24   related to human behavior.

25        In *People v. Viera* (2005) 35 Cal.4th 264, for example, the defendant sought to qualify

26   as an expert a former sheriff's detective who specialized in the study of cults.  The defense

27   sought to have the witness testify about whether the defendant, under the mind control

28   techniques of another, was unable to form the mental states required for first degree murder.

1058

1   The trial court excluded the testimony because the witness was not a qualified expert on whether

2   the defendant had a mental defect, disorder or disease at the time he committed the murders.

3   The Supreme Court upheld the ruling. (*Id.* at p. 291.) The Supreme Court noted that the witness

4   was not a psychologist or psychiatrist and was not qualified to render an opinion about whether

5   the defendant suffered from a mental illness. (*Id.* at p. 292.) In addition, the Supreme Court

6   found that the witness was not qualified to testify generally about the relationship between

7   mental illness and certain types of behavior. (*Ibid.*)

8        In *People v. Williams* (1989) 48 Cal.3d 1112, 1136, the Supreme Court held that the trial

9   court erred when it permitted a police officer to testify that a rape victim's emotional makeup

10  is a factor which may affect whether the rapist will leave any marks on her body. The Court

11  found there was no evidence adduced at trial showing that the officer had the requisite

12  psychiatric training or experience to testify on such matters.

13       Attached to this motion is a declaration signed by Dr. William O'Donohue, a Professor

14  of Psychology who has studied the area of child sexual abuse extensively. He explains that the

15  literature on the subject of grooming is vast, there is no consensus on what constitutes grooming,

16  ordinary interactions between an adult and a child can incorrectly be viewed as grooming, and

17  there is a need for criteria that differentiate between conduct that involves grooming and conduct

18  that does not. As far as Mr. Chandler can tell, because Office Dillon has not studied the

19  extensive literature on grooming, he is aware of none of these things. He knows only that

20  grooming exists and it involves ingratiating conduct. This superficial awareness of grooming

21  and that failure to systematically study the vast literature about grooming renders Officer Dillon

22  unqualified as an expert.

23  **F. There No Way to Determine If Conduct Is Sexual Grooming or Simply Innocent**

24  **Conduct**

25       Mr. Chandler anticipates that Officer Dillon will testify that grooming is a process by

26  which a would-be molester builds up trust with the would-be victim. He will give examples of

27  how this might be done, such as spending time with the child or giving the child gifts. But as

28  Dr. O'Donohue notes in his declaration, many behaviors used by perpetrators appear quite

1059

No. CI223754                    9              Motion re: "Grooming" Evidence

1   similar to behaviors seen in normal adult-child relationships.  There is therefore a need to have

2   criteria that avoid false negatives (conclusions that conduct is not geared toward sexual activity

3   when in fact it is) and false positives (conclusions that conduct is geared toward sexual activity

4   when in fact it is not).

5        According to Dr. O'Donohue, there are two individual criteria that must be met to

6   consider a behavior to be grooming: (1) the behavior being evaluated must in and of itself be

7   inappropriate and a case for this inappropriateness must be made, and (2) a sound argument must

8   be presented that the behavior or behaviors increases the likelihood of future sexual abuse.

9   Without such criteria, every interaction between a child might be viewed as grooming.

10        Because there is no way to determine if conduct is sexual grooming, the testimony on

11   grooming is likely to be unhelpful and confusing.

12  **G. The Evidence Is Prejudicial Because There Is a Substantial Danger the Jury Will Not**

13  **Use the Evidence for a Limited Purpose and Instead Will Use it on the Improper Issue of**

14  **Guilt or Innocence**

15        Officer Dillon will testify that grooming consists of conduct in which the would-be

16   molester ingratiates himself with his would-be victim over a lengthy period, rather than conduct

17   involving an immediate attack using force.  The conduct consists of such things as talking to the

18   child, listening to the child, encouraging the child, and praising the child.  Mr. Chandler was the

19   teacher of the children in this case.  Engaging in conduct of the sort consistent with grooming

20   is the very essence of being a teacher.  There is a danger the jury will conclude from this that Mr.

21   Chandler molested the children.  As noted previously, there is no sure way to prevent a jury from

22   coming to such a conclusion.

23        The true purpose of evidence of grooming is to make the jury aware that certain

24   stereotypes about those who molest children are not true.  But as the court pointed out in

25   *Raymond*, people no longer view molesters in terms of these stereotypes. Jurors are well aware

26   that most molesters do not act violently or precipitously.  Instead, they establish a relationship

27   of trust with their victims over time.  And molesters include people who are viewed with respect

28   – teachers, care givers, priests, relatives of the victims.

1060

No. C1223754                    10              Motion re: "Grooming" Evidence

1        When ignorance about the true nature of child molesters is great, the law might tolerate

2  the risk of misuse of grooming evidence. Cast in terms of section 352, under such circumstances

3  the probative value is high and a court might conclude that it outweighs the risks of misuse and

4  prejudice.   But now that such ignorance is rare, there is little, if any, need to adduce evidence

5  of grooming.  Cast in terms of section 352, the probative value of evidence of grooming is small

6  and is greatly outweighed by the risk of prejudice, misleading the jury, and confusion of the

7  issues.

8                          CONCLUSION

9        As one court has noted: "There is a very fine line between an opinion that is helpful to

10  a jury and an opinion that merely conveys a conclusion concerning the defendant's guilt." (*State*

11  *v. Stribley* (Iowa Ct.App. 1995) 532 N.W.2d 170, 174.)  Here expert testimony about grooming

12  will not be helpful to the jury because it covers a subject about which jurors already are aware.

13  There is, however, a substantial danger that the grooming testimony will convey a conclusion

14  that Mr. Chandler is guilty of the charges.   None of the witnesses will testify that he used

15  violence or force or that he acted precipitously.   Instead, they will testify that he acted

16  solicitously and patiently.  Officer Dillon will testify that child molester act in this way when

17  they are grooming a child for later acts of molestation.  This will convey that Mr. Chandler acts

18  as child molesters act.  Officer Dillon's testimony will place undue weight on the prosecution

19  side with respect to the issue of guilty or innocence.  For this reason and those explained above

20  Mr. Chandler asks the Court to exercise its discretion to exclude evidence of grooming.

21  DATED:

22       5/13/13

23                                     Respectfully submitted,

24

25                                    BRIAN MADDEN
                                  Attorney for Defendant
                                  Craig Richard Chandler

26

27

28

                                                  1061

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,        )
12        Plaintiff,                          )  Case No. C1223754
                                              )
13  v.                                        )  DECLARATION OF
                                              )  WILLIAM O'DONOHUE, PH.D.
14  CRAIG RICHARD CHANDLER,                   )
                                              )
15        Defendant.                          )

16

17        I, William O'Donohue, Ph.D., declare:

18        I am a professor of Psychology at the University of Nevada, Reno. Since 1996 I also have

19  been the Director of the Victim of Crimes Treatment Center at the University of Nevada, Reno.

20  I received a B.S. in psychology from the University of Illinois at Urbana-Champaign and an

21  M.S. and Ph.D. in clinical psychology from State University of New York at Stony Brook. From

22  1996 to 2008, I was the Director of Sexual Assault Prevention and Counseling Services at the

23  University of Nevada, Reno.  I am an advisor the DSM-V Work Group on Sexual Gender

24  Identity Disorders of the American Psychiatric Association, focusing on the diagnosis of

25  Pedophilia. I am a member of the Nevada Attorney General's Victims of Crimes Subcommittee.

26  I am on the Editorial Board of the Journal of the Academy of Medical Psychology.  I have

27  received several grants and awards related to the study and treatment of sexually abused

28  children.  I am the co-editor of a two-volume book dealing with theory, research, and clinical

                                                                1062

1  issues involving sexually abused children and the author or co-author of numerous articles

2  dealing with sexually abused children.

3      There is a vast amount of scholarly literature on the subject of grooming of victims in the

4  context of sexual abuse of minors.  Grooming as used in this context is similar to seduction in

5  the context of adults.  There is, however, a lack of consensus as to what grooming entails and

6  how it can be distinguished from normal adult-child interactions.  The differences in defining

7  grooming presents serious challenges for forensic and clinical work.

8      Part of the difficulty in identifying and clarifying a useful definition of grooming is the

9  fact that many behaviors used by perpetrators appear quite similar to behaviors seen in normal

10  adult-child relationships.  These include listening to a child, spending time with a child, offering

11  encouragement, buying gifts, and praising the child's efforts and achievements.  There is a need

12  to have criteria that avoid false negatives (conclusions that conduct is not geared toward sexual

13  activity when in fact it is) and false positives (conclusions that conduct is geared toward sexual

14  activity when in fact it is not).

15      There are two individual criteria that must be met to consider a behavior to be grooming:

16  (1) the behavior being evaluated must in and of itself be inappropriate and a case for this

17  inappropriateness must be made, and (2) a sound argument must be presented that the behavior

18  or behaviors increases the likelihood of future sexual abuse.  Without such criteria, every

19  interaction between a child might be viewed as grooming.

20      I declare under penalty of perjury that the foregoing is true and correct and that this

21  declaration was signed in Reno, Nevada on April 15, 2013.

22

23                  William O'Donohue, Ph.D.

24

25

26

27

28

1063

No. CT223754            2     Declaration of William O'Donohue, Ph.D

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

PEOPLE VS.  CRAIG RICHARD CHANDLER
A.K.A.   1361 N SAN PEDRO ST
         SAN JOSE, CA 95110

JUDGE   HON. ARTHUR BOCANEGRA
REPORTER  J. MIXCO
DEF. ATTY.  MADDEN, BRIAN (G)

CASE NO.  C1223754
CEN   12001535
DATE   06/11/2013   1:30 PM   DEPT.   37
10/25/1976
CLERK   E. DE SANTIAGO   EBK966 M
HEARING   MOTIONS IN LIMINE
AGENCY   SJ-- 04313--   -UNKNOWN
STATUS   I-SET-NBA   TW   Y
D.A.   A. FILO   APO

CHARGES
F(001) PC288(A)
F(003) PC288(A)
F(005) PC288(A)
F(002) PC288(A)
F(004) PC288(A)

VIOLATION DATE   09/01/2010

NEXT APPEARANCE   _AR_   6-28-13  9:00 am Dept 37

☑Defendant Present  ☐ Not Present    ☑Atty Present    _AR_    ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter _____   ☐ Sworn
☐ PC977 ☐ Filed  ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply  ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐NGBRI / Adv   ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC.   ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury   ☐ Reassumption filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   ☐ Ref'd _Motions in Limine_   ☐   Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F   ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't   SORP / OR  ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐     Relieved_____ Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   BW Ordered $_____   ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____   ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report ☐ Issued   ☐ BW Set'Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____   ☐ Max Term _____ ☐ Committed _____   ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____   _Court hears and rules on_
☐ Amended to __ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed ___   _motions in limine_
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____   ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____   _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Fee / Absentia filed
☐ COP ☐ GUILTY ☐NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____   ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
☐ Sent Suspended _____ ☐ PROBATION DENIED   COUNT ___ $_____ + PA $_____ ☐ Purs HS11350d
PROBATION  ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT ___ $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs   AIDS / CPP $_____ + PA $_____  SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release   DPF     $_____ + PA $_____  EMAT $_____
☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB     $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF   $_____  Add'l RF $_____ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days   AEF     $_____  Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs   SECA/COPA $_____  CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF    $_____  TOTAL DUE   $_____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present   ICIN    $_____  Payments Granted /:Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR      $_____ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____   SHELTER  $_____  FINE STAYED _____
☐ Stay away from _____   DV      $_____  Committed @ $_____ /Day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY    $_____  Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASP&S/CPF$10$_____  Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   PINVEST $_____  P/SUP $_____   ☐ No Waived
VOP: ☐ Wav ☐ Arr'd ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $_____ ☐ Add't'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence   County Jail
Count   F/M   Violation   Prison Term / Yrs   Enhancement / Priors   Yrs / Styd / Strkn   HRS / DAYS / MOS

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ½ ☐ PC2933.1 _____ Total  Total term _____   CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec____All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NSF   1004
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ ☐ Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process_____ AM/PM   ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 06-11-13                        CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO            DEPUTY: PETE GARCIA
REPORTER: JAMIE MIXCO

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                      ATTY: BRIAN MADDEN

| Proceedings: | Motions In Limine | DAY 1 | page 1 of 2 |
| --- | --- | --- | --- |

1:45 pm    Court is in session with all parties present.  Court states that it will proceed ruling on motions in limine, beginning with the Defense's motions as follows:

Motion to exclude, for purposes of impeachment, evidence of prior convictions - granted and denied, in part.  Court states it will allow the People to impeach regarding prior misdemeanor attempted burglary conviction, as stated.

Motion to admit testimony from Dr. William O'Donohue an expert in the interviewing of victims of child sexual abuse - granted, as stated.

Motion to exclude evidence related to an incident involving Mr. Chandler and Hilda Keller - Court takes the matter under submission, and states that the People will file a response to this motion.

Motion to exclude the testimony of Mary Montgomery about the door to Mr. Chandler's classroom being locked on one occasion - denied, as stated.

Motion to exclude "grooming" evidence - Court takes the matter under submission, and states that the People will file a response to this motion.

2:49 pm    Court states that it will now proceed ruling on the People's motions in limine, as follows:

Statements of the children describing the acts are independently admissible under PC 1360 - granted, as stated.

2:59 pm    Court addresses the issue of re-filing the Defense's and People's motions in limine, as the original copies have

1065

People vs. Chandler                                    6/11/13
C1223754                                            page 2 of 2

_____

                accidentally been written upon, as stated.  Court states
                that counsels have agreed to a substitution of motions, and
                they will provide blank copies of their motions to the
                Court.  Court orders that clean copies of the motions in
                limine be substituted as originals, as stated.
3:04 pm      Court is in recess.
                (not reported) Court and counsels meet in chambers to
                discuss further issues relating to this case.
                (not reported) Court advises the clerk that this case is
                continued to June 28, 2013 at 9:00 am in department 37 for
                further motions in limine.


NOTE:       Per Court order, by stipulation of counsels several motions
                which were filed by the People and the Defense on May 13,
                2013 were replaced by duplicate motions and filed on June
                11, 2013.  The motions filed on May 13, 2013 were
                destroyed, per Court and counsel discussion.

1066

1   Brian Madden, SB# 55869
    MADDEN & REDDING
2   1625 The Alameda, Suite 801
    San Jose, California 95126
3   Telephone: (408) 275-8100
    Facsimile: (408) 275-8199
4
    Attorney for Defendant
5   CRAIG RICHARD CHANDLER



F I L E D

JUN 21 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
J. Hernandez

6

7

8               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA,  )  Case No. C1223754
                                        )
12          Plaintiff,                  )  REPLY TO PEOPLE'S
                                        )  OPPOSITION TO THE DEFENSE'S
13  v.                                  )  MOTION TO EXCLUDE
                                        )  EVIDENCE RELATED TO AN
14  CRAIG RICHARD CHANDLER,             )  INCIDENT INVOLVING MR.
                                        )  CHANDLER AND HILDA KELLER
15          Defendant.                  )

16

17          Mr. Chandler has filed a motion to exclude evidence related to an incident involving him

18  and Hilda Keller.  As Mr. Chandler showed in the motion, the evidence was not admissible to

19  show propensity under Evidence Code §1108 or to show intent under Evidence Code §1101,

20  subdivision (b). The People have filed an opposition to Mr. Chandler's motion. In it, the People

21  do not argue that the evidence is admissible under section 1108.  Instead they argue it is

22  admissible under section 1101, subdivision (b), on the issue of intent. Mr. Chandler submits that

23  the People's position lacks merit for the following reasons and that the evidence therefore should

24  be excluded.

25          The People describe three conversations Mr. Chandler had with Ms. Keller. One related

26  to her feet, one related to his sex life with his wife, and one related to whether she was getting

27  a "boob" job. (Opposition at p. 2.) It appears from the text of the opposition that the only

28  statement that the People feel is relevant is the conversation related to Ms. Keller's feet.

                                                                            1067

No. C1223754                          1   Reply to Opposition to Motion re: Hilda Keller

1    The People argue that the conversations are admissible "to prove Chandler's intent as it

2  relates to a sexual interest in feet." (Opposition at p. 4.)  The People say they "are necessarily

3  alleging that [victim #3's] feet and face were touched by Chandler for the specific purpose of

4  sexual gratification." (Opposition at p. 5.)

5    Before addressing the merits of the People's opposition, it is important to clarify the facts

6  that relate to the admission of the evidence.  First, Mr. Chandler has been charged with five

7  counts of lewd acts committed against five separate victims.  As the People make clear from

8  their opposition, they plan to use the evidence about Ms. Keller's feet with respect to only one

9  of those counts.  With respect to the other counts, the People will introduce other evidence that

10  amply supports the conclusion that Mr. Chandler had a sexual interest in children.  This includes

11  evidence suggesting that Mr. Chandler ejaculated in the mouths of two of the children.  It also

12  includes evidence suggesting Mr. Chandler touched parts of the bodies of the children with his

13  penis.  The evidence about the conversation with Ms. Keller insofar as it relates to her feet is

14  thus cumulative to other evidence that tends to show a sexual interest that permeates all the

15  touchings that underlie the charges.  As Mr. Chandler explained in his motion, evidence which

16  is cumulative to other evidence that establishes the same disputed point – here the issue of intent

17  – is inadmissible.  (Motion at p. 7, lines 20-25.)

18    It also is important to emphasize an overriding point of law which the People do not

19  discuss in their opposition.  This point is that the Supreme Court has mandated that the probative

20  value of the evidence of the uncharged be "substantial."  (*People v. Ewoldt* (1994) 7 Cal.4th

21  380, 404; accord *People v. Lindberg* (2008) 45 Cal.4th 1, 23.)  Here, the evidence of the

22  conversation with Ms. Keller does not have substantial probative value on the issue of intent

23  because there is other evidence, described in the previous paragraph, that clearly relates to intent.

24    There is a third point which the People do not discuss.  This is the issue of similarity.

25  With respect to this issue, the People simply state, correctly, that the least degree of similarity

26  is needed.  (Opposition at p. 7.)  This, however, is a statement of a general legal principle, not

27  an analysis of similarity.

28    When we focus on the similarity requirement, it is clear is not met here.  Mr. Chandler

1068

No. C1223754                              2  Reply to Opposition to Motion re: Hilda Keller

1  discussed the requirement in his original motion. (Motion at p. 8.) For the convenience of the
2  Court he repeats the governing principles here. The use of prior acts to prove intent is based on
3  the doctrine of chances: "the instinctive recognition of that logical process which eliminates the
4  element of innocent intent by multiplying instances of the same result until it is perceived that
5  this element cannot explain them all." (*People v. Robbins* (1988) 45 Cal.3d 867, 879, citation
6  and internal quotation marks omitted.) Under this doctrine, the recurrence of a similar result
7  (i.e., an unlawful act) tends increasingly with each instance to negate innocent mental states such
8  as self-defense and establish a criminal intent. (*Id.* at pp. 879-880.) There is a debate about
9  whether a single incident of uncharged misconduct is sufficient to justify admission of proof of
10  intent as to the charged crime under the chances theory. (*Id.* at p. 880, fn. 5.) The California
11  Supreme Court has ruled that no categorical statement can be made one way or the other and that
12  the decision must be made on a case-by-case basis. (*Ibid.*) However, the Supreme Court has
13  observed that "[a] simple, unremarkable single instance of prior conduct probably will not
14  qualify, but a complex act requiring several steps, particularly premeditated, may well qualify."
15  (*Ibid.*, citations and internal quotation marks omitted.)

16      Here, we have a single prior incident – the conversation with Ms. Keller, without the
17  commission of any act related to her feet. There has thus been no recurrence of prior conduct
18  sufficient to justify admission of the evidence. Instead, there is a simple, unremarkable single
19  instance of prior conduct which the Supreme Court has stated "probably will not qualify" for
20  admission.

21      More importantly, the charged and uncharged conduct is not similar. The statement to
22  Ms. Keller involved an offer to massage her feet. The act with victim number three was not an
23  offer to massage her feet. Nor was it the act of massaging her feet. Nor was it even the act Mr.
24  Chandler touching her feet with his hands. Instead, it was the act of touching an object to her
25  feet. The uncharged act and the charged act share a superficial similarity in that they involve
26  feet rather than hands or shoulders. But they are very different with respect to the specific acts
27  themselves. They also are different with respect to the nature of the other party. Ms. Keller is
28  a grown woman. Victim number 3 is a child. They also are different with respect to the nature

1069

No. C1223754                    3   Reply to Opposition to Motion re: Hilda Keller

1    of the ultimate act.  Offering to massage the feet of a grown woman is commonly understood to

2    be an act that the massager hopes will eventually leads to intercourse.  The touching of the foot

3    of victim 3 with an object had no other ostensible purpose.

4            The People argue that because intent will be the only element of the offense genuinely

5    in issue, the "*evidence* is highly material." (Opposition at p. 5, italics added.)  This analysis is

6    flawed.  Materiality relates to *the fact in issue*, not to the *evidence* the People want to admit to

7    prove that fact.  Here, the fact of intent is indeed material because it constitutes an element of

8    the crime.  It is therefore an "ultimate fact" in the proceedings and is, by definition, material.

9    (*People v. Thompson* (1980) 27 Cal.3d 303, 315.)  Mr. Chandler did not argue to the contrary

10   in his motion.  But it is incorrect to say that the *evidence* is material, as that statement is contrary

11   to the definition of materiality in *Thompson*.

12           Although the People do not correctly analyze the materiality aspect of the test for

13   admission of evidence of uncharged acts, they correctly note that there is a dispute about whether

14   the evidence has a tendency to prove of disprove the material fact of the element of intent for

15   the charged offenses.  To establish this prong of the test for admissibility, the People would need

16   to focus closely on the intent element of the offense and explain how the evidence tends to

17   establish that element.  But instead of doing this, the People discuss at length why it is hard for

18   them to prove intent in this case.  (Opposition at pp. 5-6.)  They say that because Mr. Chandler

19   did not touch an intimate part of the bodies of the children, it is difficult to show that the

20   touching was done with the requisite intent.  Respondent cites no case holding that difficulty in

21   establishing an element like intent means the evidence offered has a greater tendency to prove

22   that element.  Nor is such a conclusion logical.  A tendency to prove a fact is based on the

23   relationship between the evidence that is offered and the fact it purports to prove.  Difficulty of

24   proof, in the abstract, is important to the party who is required to prove a fact.  But it is not a

25   relevant consideration when determining whether the evidence offered has a tendency to prove

26   that fact.

27           The People argue that the intent element of section 288 does not relate to a sexual interest

28   in children, but instead concerns the touching of a child with a sexual intent.  (Opposition at p.

1070

No. C1223754                          4   Reply to Opposition to Motion re: Hilda Keller

1    6.) But unless there is a sexual interest in the child, the act cannot be done with a sexual intent.

2    Suppose, for example, the lewd act consists of kissing a child on the cheek.  This is an act that

3    might, or might not, be done with a lewd intent.  Under the People's theory, the prosecution

4    would be allowed to bring in evidence of situations in which the defendant kissed grown women

5    during a course of conduct that demonstrated a sexual in the women, e.g., as a prelude to sexual

6    intercourse.  But it is clear that the acts with the grown women do not have a tendency to prove

7    the material fact of lewd intent with respect to the charged offense of a lewd act with a child

8    because they do not serve logically, naturally, and by reasonable inference to establish that fact.

9    (*People v. Thompson, supra,* 27 Cal.3d at 316.)  Unless there is a sexual interest in a child, an

10   act with the child cannot be done with the requisite intent.  One cannot infer a lewd intent toward

11   children from an act done with an adult.

12           For all these reason, the evidence of the prior conversation with Ms. Keller does not meet

13   the test for admission.  In addition, as explained in the original motion, even if the evidence

14   meets the test for admission, it should be excluded because of the danger of prejudice, confusion

15   and misleading the jury.  (Motion at pp. 10-13.)

16           The People argue that the evidence is not prejudicial because it is less serious than the

17   charged offenses and the jury is unlikely to convict Mr. Chandler because he sexually harassed

18   a co-worker.  (Opposition at pp. 7-8.)  Mr. Chandler disagrees.

19           As with most sex offenses cases, this will be a close case with few percipient witnesses.

20   It would, of course, be extremely prejudicial to the defense, if the jury were to hear that Mr.

21   Chandler engaged in conduct that was much more serious than the charged offenses or conduct

22   that involved violence.  But this does not mean that hearing about sexual harassment, creepy

23   sexual requests, and attempted acts of adultery are somehow not prejudicial.  They are simply

24   less prejudicial than much more serious or violent acts of misconduct would be.   In this close

25   case the evidence may well cause the jury to view Mr. Chandler as someone who is not worthy

26   of belief based on the implications about his character flowing from the conversations with Ms.

27   Keller.

28           Also, the People fail to take into account that the prejudice analysis does not look at

                                                                                          1071

No. C1223754                          5   Reply to Opposition to Motion re: Hilda Keller

1   prejudice on its own, but instead weighs prejudice against probative value. Here, assuming the

2   minimal threshold for "probative tendency" has been met – which it has not been – the probative

3   value is, at best, minimal because: (1) the evidence relates to a conversation, not an actual act;

4   (2) there is only one prior conversation, meaning similarity is, at best, minimal under the

5   language in *Robbins* quoted above, (3) the conversation was with a grown woman and the

6   charges involve children; and (4) the evidence is cumulative to other much more probative

7   evidence the People have at their disposal, which Mr. Chandler described earlier and which

8   suggests a sexual interest in children.

9          The People argue that the defense argument seems disingenuous because the defense

10  intends to offer evidence of an adulterous relationship between Annie Doi Pham and Mr.

11  Chandler. (Opposition at p. 8.) Mr. Chandler would not call Ms. Pham were it not for the fact

12  that the People plan to introduce evidence of Mr. Chandler's semen being found in the

13  classroom. The prosecution's position will be that the semen got in the classroom during one

14  of the charged offenses. To rebut this, the defense will take the position that the semen is from

15  the sexual encounter with Ms. Pham which she said took place in Mr. Chandler's classroom.

16         The defense is not calling Ms. Pham as a witness because it wants to, but rather because

17  it has to in light of the semen evidence the People plan to introduce. If Mr. Chandler had control

18  over this issue, he would prefer to have the People not introduce evidence of the semen so he

19  would not have to call Ms. Pham to rebut the People's position. If any party is making an

20  argument that seems disingenuous, it is the People when they suggest that Mr. Chandler wants

21  the jury to know about the sex act with Ms. Pham and pretend not to understand that Mr.

22  Chandler is introducing this evidence only because he must rebut the People's evidence by using

23  evidence he wishes he did not have to use. Mr. Chandler is simply trying to make the best out

24  of something that is, for him, a bad situation.

25         There is one final observation that Mr. Chandler wishes to make. As the People note, Mr.

26  Chandler made three statements to Ms. Keller. One related to taking pictures of her toes for a

27  massage class and contained an offer to massage her feet. The second involved Mr. Chandler's

28  lack of a sex life with his wife. The third involved asking Ms. Keller if she was getting a "boob"

No. C1223754                          6  Reply to Opposition to Motion re: Hilda Keller

1   job. (Opposition, at p.2.) It is clear all three of these statements are odd and creepy. But they

2   reflect a single overall desire of engaging in sexual activity with Ms. Keller. They show that Mr.

3   Chandler was sexually interested in her and was trying, in various awkward ways, to get her

4   sexually interested in him. If, for example, Mr. Chandler had offered to rub or massage Ms.

5   Keller's back, we would not assume he had a sexual interest in backs, but that he was using the

6   offer of a back massage in the hopes of getting Mr. Keller to agree to intercourse. There is

7   nothing in the statements of the children which indicates that Mr. Chandler touched their feet

8   as a way of getting them to agree to intercourse.

9          This confirms that the evidence related to Ms. Keller is fundamentally dissimilar from the

10  evidence of the charged offenses with respect to the issue of intent. The obvious intent with

11  respect to Ms. Keller was to engage in intercourse, with the statements about the feet being

12  preliminary steps to achieve that goal. The ostensible intent with respect to the children was to

13  engage in simple acts of touching as an end in and of themselves.

14                                  **CONCLUSION**

15         The statements to Ms. Keller have no tendency in reason to support the requisite intent.

16  The acts and intent described in those statements are not similar to those of the charged offense.

17  The evidence is prejudicial and confusing and there is a danger the jury will use the evidence for

18  an improper purpose. This latter point is demonstrated by the fact that at the preliminary

19  examination, the prosecutor was not able to ask questions about the evidence that limited the

20  evidence to its ostensibly relevant purpose. (See Motion at pp. 12-13.) For all these reasons,

21  the evidence should be excluded.

22  DATED: June 21, 2013

23                                  Respectfully submitted,

24

25

26                                  BRIAN MADDEN
                                    Attorney for Defendant
                                    Craig Richard Chandler
27

28                                                          1073

No. C1223754                      7   Reply to Opposition to Motion re: Hilda Keller

```
1 │ Brian Madden, SB# 55869
  │ MADDEN & REDDING
2 │ 1625 The Alameda, Suite 801
  │ San Jose, California 95126
3 │ Telephone: (408) 275-8100
  │ Facsimile: (408) 275-8199
4 │
  │ Attorney for Defendant
5 │ CRAIG RICHARD CHANDLER
6 │
7 │
```



F I L E D

JUN 24 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____DEPUTY

8 │ IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 │ IN AND FOR THE COUNTY OF SANTA CLARA

10 │

11 │ PEOPLE OF THE STATE OF CALIFORNIA, )

12 │     Plaintiff, ) Case No. C1223754

13 │ v. ) **DEFENDANT'S REPLY TO THE PEOPLE'S SUPPLEMENTAL**

14 │ CRAIG RICHARD CHANDLER, ) **BRIEF REGARDING TESTIMONY ABOUT GROOMING**

15 │     Defendant. )

16 │

17 │     Mr. Chandler has filed a motion to exclude grooming evidence – evidence from a police

18 │ officer about how child molesters ordinarily do not attack their victims on first viewing, but

19 │ instead develop a relationship with them first. In the motion, Mr. Chandler argued that the

20 │ evidence should be excluded for five separate reasons, any one of which was sufficient in itself

21 │ to warrant exclusion. Those reasons were: (1) this is not a proper subject for expert testimony

22 │ because it is something within a juror's common knowledge and there is therefore no need for

23 │ an expert to testify about it; (2) this is not a proper subject for expert testimony because it is

24 │ overbroad and confusing in that it in essence tells the jury that anyone who engages in social

25 │ interaction with a child is acting in the way child molesters act; (3) the witness the prosecution

26 │ plans to use does not qualify as an expert witness on the subject; (4) an actual expert explains

27 │ in a declaration attached to the motion that there no way to determine if conduct is sexual

28 │ grooming or simply innocent conduct, and there is therefore no way to prevent false conclusions

1074

No. C1223754        1      Reply to Supplemental Brief re: Grooming

1  that innocent conduct is sexual grooming (a false positive) or false conclusions that sexual

2  grooming conduct is innocent (a false negative); and (5) the evidence is prejudicial because there

3  is a substantial danger the jury will not use the evidence for a limited purpose and instead will

4  use it on the improper issue of guilt or innocence.  Mr. Chandler also relied on the thoughtful

5  analysis in *United States v. Raymond* (D. Me. 2010) 700 F.Supp.2d 142, a case in which another

6  trial court, that was faced, as is this Court, with deciding whether to admit such evidence from

7  an officer, ruled it was inadmissible.

8      In their previously-filed written opposition to Mr. Chandler's motions in limine, the

9  People opposed exclusion of the evidence, arguing only that the evidence was necessary because

10  grooming was beyond the knowledge of jurors.  (Opposition at pp. 7-8.)  In his reply to the

11  People's opposition to the motion, Mr. Chandler showed why the People's "necessity"

12  contention lacked merit.  In addition, Mr. Chandler noted that the People had failed to address

13  four of the five grounds for exclusion Mr. Chandler argued in his motion. (Reply at pp. 11-12.)

14      The People now have filed a supplemental brief on the admissibility of grooming

15  evidence.  In it the People repeat their contention that the evidence is necessary.  In addition,

16  they argue that their witness, Detective Dillon, is a qualified expert. But they still fail to address

17  three of the bases for exclusion which Mr. Chandler advanced, namely points (2), (4) and (5)

18  listed above. Mr. Chandler submits that the failure to address these grounds for exclusion should

19  be viewed as a concession that they have merit. Mr. Chandler understands that the People want

20  the evidence admitted. However, the People, as the proponent of the evidence, have the burden

21  of establishing by a preponderance of the evidence foundational facts necessary for admission.

22  (*People v. Herrera* (2000) 83 Cal.App.4th 46, 60-61.)  This includes the burden of establishing

23  why a facially viable ground Mr. Chandler advances for exclusion lacks merit.  In our adversary

24  system of jurisprudence, it is not appropriate for a party to fail to explain why a facially

25  meritorious objection to evidence actually lacks merit or to leave it to the Court to do its work.

26  The Court's proper role is to arbitrate, not advocate.

27      Turning to the merits of the People's contention that Detective Dillon is an expert on the

28  topic of grooming the People interpret Mr. Chandler's discussion of *People v. Clark* (1993) 5

1075

No. C1223754                    2      Reply to Supplemental Brief re: Grooming

1  Cal.4th 950, 1018-1019, as constituting a contention that attending lectures, reading literature

2  and conducting experiments are an absolute requirement for expertise. (Brief at p. 2; see Motion

3  at p. 8.)[1]  That was not Mr. Chandler's contention.  Instead, his contention was that the subject

4  of grooming relates to matters involving human behavior associated with molestation.  This is

5  an area of expertise for someone who is a psychologist or professor of psychology like Dr.

6  O'Donohue, someone who spends most of his professional time studying sexual abuse of

7  children.  Rather than call an expert who studies behaviors related to child molestation, the

8  People plan to call someone whose real expertise is law enforcement.  The People make no

9  showing that Detective Dillon has studied the phenomenon of grooming, has read the literature

10 in this field, or has become aware of any problems or shortcomings with connecting grooming

11 and molestation. Dr. O'Donohue has.  (See Motion at pp. 9-10 and Dr. Donohue's declaration.)

12      The People say that because Detective Dillon has interviewed numerous perpetrators of

13 sexual assault, he can testify as to the selection and de-sensitization of victims.  (Brief at p. 2.)

14 Actually, the interviewing of perpetrators does not inform or familiarize Detective Dillon with

15 the extensive literature on grooming or the shortcomings in the facile conclusion that grooming

16 correlates with molestation.  Mr. Chandler already explained some of these matters in his

17 original motion.  (Motion at pp. 9-10.)  If the People are allowed to call Detective Dillon as an

18 expert, he will be exposed to probing cross-examination showing his lack of knowledge about

19 the specifics of the vast grooming literature.  One might argue that all this means is that

20 Detective Dillon is simply a poorly-informed expert.  But when a purported expert has no

21 knowledge of the literature and studies related to the field in question, he is not an expert.  He

22 is instead a layman who is aware of a few relevant things and ignorant of the vast amount of

23 other relevant information.

24      The People argue that Detective Dillon's expertise is sound because his testimony will

25 meet the criteria Dr. Donohue stated of behavior being inappropriate and increasing the

26

27  [1]The People also state that *Clark* was overruled in *People v. Doolin* (2009) 45 Cal.4th
    390.  This statement is misleading because it implies that *Doolin* overruled the discussion in

28 *Clark* about expert witnesses.  Actually, *Doolin* overruled *Clark* on a different point that relates
    to the test for conflict of counsel.  (*People v. Doolin, supra*, 45 Cal.4th at p. 421.)   1076

1   likelihood of future sexual abuse.  This is so, argues the People, because no one would find it
2   to be appropriate conduct to isolate children, blindfold them, and put things in their mouth.
3   (Brief at p. 3.)  The People's point shows why expert testimony is unnecessary.  As the People
4   note, there is no parent (or indeed no person) who would find this behavior appropriate.  Every
5   juror would understand without the testimony of Detective Dillon that this behavior was geared
6   toward later molestation.  This is something so obvious, no reasonable person can fail to see it
7   on his or her own.

8        The People finally argue that Detective Dillon's testimony is needed in order to explain
9   the jury how a perpetrator chooses a victim from a classroom of potential victims.  (Brief at pp.
10  3-4.)  Grooming does not explain the phenomenon of choice.  Instead, it relates to behavior
11  occurring after a choice has been made about whom to groom.

12                                    CONCLUSION
13       In the wake of the scandals involving molestation by trusted authority figures such as
14  priests and teachers, it would be hard to find a juror who is not aware of the fact that the vast
15  majority of molesters do not attack their victims on first sight and instead establish trust over a
16  period of time.  Evidence of grooming thus does not tell the ordinary juror anything he or she
17  does not already know.  This is particularly true when the evidence comes from a police officer
18  rather than from someone with an academic background in behavioral sciences who had read
19  the extensive literature on the subject and is aware of its specific reach and shortcomings.  Also,
20  there is a danger that the jury might use the evidence to conclude that Mr. Chandler is guilty of
21  molestation because he did not attack the children at first sight and instead, like all teachers,
22  established a relationship with them over time.  The probative value of the evidence is minimal
23  at best, Detective Dillon is not a qualified expert, and the introduction of the evidence carries
24  a high risk of prejudice.  The evidence of grooming should be excluded.

25  DATED: June 24, 2013                Respectfully submitted,

26

27                                      BRIAN MADDEN
                                        Attorney for Defendant
                                        Craig Richard Chandler

28                                                          1077

No. C1223754                    4      Reply to Supplemental Brief re: Grooming

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA 95110

PEOPLE VS. CRAIG RICHARD CHANDLER
K.A.      1361 N SAN PEDRO ST
          SAN JOSE, CA 95110
JUDGE     HON. ARTHUR BOCANEGRA
REPORTER  J. MIXCO
DEF. ATTY. MADDEN, BRIAN (G)

| | |
|---|---|
| CASE NO. | C1223754 |
| CEN | 12001535 |
| DATE 06/28/2013   9:00 AM | DEPT. 37 |
| 10/25/1976 | |
| CLERK  E. DE SANTIAGO | EBK966 M |
| HEARING  MOTIONS IN LIMINE | |
| AGENCY  SJ– 04313–   -UNKNOWN | |
| STATUS  I-SET-NBA | TW  Y |
| APO | |

D.A.  A. FILO

CHARGES
F(001) PC288(A)        F(002) PC288(A)
F(003) PC288(A)        F(004) PC288(A)
F(005) PC288(A)

VIOLATION DATE
09/01/2010

7-1-13  9:00 am  Dept 37

NEXT APPEARANCE

☑Defendant Present ☐ Not Present          ☑ Atty Present          AR                    ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr.Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv      ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☑ Jury ☐ CT ☐ Req ( Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   Jury Selection   ☐ ___ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F   ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ___ Relieved_____ Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____   ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report _____   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____   ☐ Max Term _____ ☐ Committed _____   ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to   Court Reason Motions in limine
☐ Amended to ☐ (M) VC12500(a)/ VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____   ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____   ☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ___ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 Issued   Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
☐ Sent Suspended _____   ☐ PROBATION DENIED   COUNT $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs   AIDS / CPP $_____ + PA $_____ ☐ SORP_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release   DPF $_____ + PA $_____ ☐ EMAT $_____
☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF $_____ ☐ Add'l RF $_____ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 6 mos  Enroll within _____ days   AEF $_____ ☐ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs   SECA/COPA $_____ ☐ CTS PC2900.5  $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF $_____ ☐ TOTAL DUE  $_____
☐ DVPO Issued / mod /term'd Exp _____ ☐ Victim Present   ICIN $_____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR $_____ ☐ $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____   SHELTER $_____ ☐ FINE STAYED
☐ Stay away from _____   DV $_____ ☐ Committed @ $_____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY $_____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF&25/CPF$10$_____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   PINVEST $_____ ☐ PSUP $_____ ☐ _____ ☐ Walved
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $_____ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence          County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL ** | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ ☐ ACT + _____ ☐ 4019 ☐ ½ ☐ PC2933.1 _____ Total  Total term _____          CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Walved ☐ Court Rec_____All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NB   1,078
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process_____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☑ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SANTA CLARA
HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 06-28-13                            CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO                  DEPUTY: MARK HARPER
REPORTER: JAMIE MIXCO

---

PEOPLE OF THE STATE OF CALIFORNIA        D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                           ATTY: BRIAN MADDEN

---

| Proceedings: | Motions In Limine | DAY 2 | page 1 of 1 |
| --- | --- | --- | --- |

| 9:30 am | Court is in session with all parties present.  Court states that it will proceed hearing motions in limine regarding grooming and witness Hilda Keller. |
| --- | --- |
| | Defense attorney Madden is heard on the issues regarding grooming and witness Hilda Keller, as stated. |
| 9:46 am | Deputy District Attorney Filo is heard regarding the issues of grooming and witness Hilda Keller, as stated. |
| 9:54 am | Court is heard on these matters. |
| | Court rules that it will not allow witnesses to testify regarding grooming, a stated. |
| | Court rules that it will allow the testimony of witness Hilda Keller, but will not allow testimony regarding items 2 and 3 and the sexual harassment claim, as stated.  The Court states it will schedule an EC 402 hearing regarding the testimony of witness Keller at a later time. |
| 10:05 am | Court and counsels address and discuss the issue of the testimony of Hilda Keller, as stated. |
| 10:20 am | Court goes off the record momentarily. |
| | (not reported) Court and counsels meet in chambers to discuss scheduling. |
| 11:13 am | Court is in session with all parties present.  Court states that it and counsels met in chambers today to discuss issues relating to jury selection.  Court continues the matter to Monday, July 1, 2013 at 9:00 am for jury selection.  Court orders counsels present at that time. |
| 11:14 am | Court is in recess. |

1079

| | |
|---|---|
| SUPERIOR COURT | CASE NO.   C1223754 |
| 190  W. HEDDING STREET | CEN   12001535 |
| SAN JOSE CA 95110 | DATE   07/01/2013   9:00 AM   DEPT.   37 |

PEOPLE VS.  CRAIG RICHARD CHANDLER          10/25/1976

A.K.A.   1361 N SAN PEDRO ST          CLERK   E. DE SANTIAGO   EBK966 M

SAN JOSE, CA 95110          HEARING   ~~MOTIONS IN LIMINE~~ Jury Selection

JUDGE   HON. ARTHUR BOCANEGRA          AGENCY   SJ– 04313–   –UNKNOWN

REPORTER   J. MIXCO          STATUS   I-SET-NBA          TW   Y

DEF. ATTY.   MADDEN, BRIAN (G)          APO

          D.A.  A. FILO

CHARGES   F(001) PC288(A)          F(002) PC288(A)          VIOLATION DATE

F(003) PC288(A)          F(004) PC288(A)          09/01/2010

F(005) PC288(A)          7-2-13   9:00am  Dept. 37

NEXT APPEARANCE

☑ Defendant Present  ☐ Not Present          ☐ Atty Present          AR          ☐ AD / PD / IDO / Special App

☐ Ar'd  ☐ Adv  ☐ Arr Wav  ☐ Amend Comp/Info  ☐ Arr  ☐ Plea  ☐ IDC  ☐ PTC  ☐ Prob / Sent          ☐ Interpreter          ☐ Sworn

☐ PC877  ☐ Filed  ☐ On File  ☐ Reptr. Adv / Wav  ☐ Bail/ OR/ SORP  ☐ Rect Dr Rpt  ☐ FAR/ ERC          ☐ Bail Apply  ☐ Balance Exonerated

☐ NG  ☐ Entered by CRT  ☐ NGBRI / Adv          ☐ PSet  ☐ Prelim  ☐ Readiness  ☐ S / B MTC          ☐ Bail Exonerated  ☐ Forfeited          Bond #

☐ Denies Priors/ Allegations/ Enhancements/Refusal ☑ Further  ☐ Jury  ☐ CT  ☐ Peo/ Def Wav Jury          ☐ Reassumption Filed  ☐ Forfeiture Set Aside  ☐ Bail Rein

☐ TW  ☐ TNW  ☐ TW / WD  ☐ TW Sentence          Ref'd     Jury Selection          ☐          Costs Within 30 Days to Court.

☐ Ref / Appt PD / ADO / IDO  ☐ Con Decl  ☐ Adm A / F          ☐ APO / DADS/ PDp 36  ☐ P36 Re-Assm't          ☐ SORP / OR  ☐ Revoked  ☐ Reinstated  ☐ May Post & Forfeit

☐ _____ Relieved _____ Appt'd          ☐ Crim Proc Susp  ☐ Rein  ☐ Status Hrg          ☐ BW Ordered $_____          ☐ Stayed  ☐ To Issue

☐ Hrg on Motion _____          ☐ Doubt Decl Pursuant PC 1368          ☐ No Cite Release/SCIT  ☐ No Request  ☐ Cash Only

☐ Granted  ☐ Denied  ☐ Submitted  ☐ Off Cal          ☐ Subm on Report  ☐ Found _____          ☐ BW Set Aside  ☐ Recalled  ☐ Filed  ☐ Remain Out  ☐ NWF

☐ Stip to Comm  ☐ Drs. Appointed _____          ☐ Max Term _____  ☐ Committed _____          ☐ Proof of _____

☐ Prelim Wav  ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____

☐ Amended to  ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5  ☐ DA Stmt Filed _____

PLEA Conditions:  ☐ None  ☐ No State Prison  ☐ PC17 after 1 Yr Prob  ☐ Includes VOP _____          ☐ Add to Cal  ☐ Vacate pending date

☐ Jail / Prison Term of _____          ☐ Subm time of Sent  ☐ Harvey Stip _____

☐ Dismissal / Striking _____          ☐ Fines/Fees  ☐ PC28000/29605/30305/666/VC14607.8

☐ Adv Max Pen / Parole / Prob / Immig / Appeal  ☐ Reg HS11590/PC290/PC457.1/PC186.30  ☐ FSF  ☐ Fines/Fees

☐ Wav Right to  ☐ Counsel  ☐ Court / Jury Trial  ☐ Subpoena / Confront / Examine Witnesses  ☐ Self-incrimination  ☐ Written Waiver filed  ☐ Plea / Absentia filed

☐ COP  ☐ GUILTY  ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors  ☐ PC17  ☐ Arbuckle  ☐ Factual Basis found  ☐ Findings stated

☐ Prop 36 Granted / Unamenable / Refused / Term  ☐ DEJ Eligibility Filed  ☐ DEJ Granted / Rein / Term   Fee $_____          ☐ Guilty Plea Rendered

☐ Waives Referral  ☐ APO Full Rpt  ☐ CR110 issued   Fines/Fees  Pay to:  ☐ DOR  ☐ Traffic  ☐ Court  ☐ Today  ☐ Audit # _____

☐ Sent Suspended          ☐ PROBATION DENIED          COUNT _____ $_____ + PA $_____  ☐ Purs HS11350d

PROBATION  ☐ Execution  ☐ Imposition of sentence suspended for probation period          COUNT _____ $_____ + PA $_____  ☐ PC290.3

☐ COURT  ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs          AIDS / CPP $_____ + PA $_____  ☐ SORP _____

☐ Report to APO within _____ Days  ☐ Terminated  ☐ Upon Release          DPF _____ $_____ + PA $_____  ☐ EMAT $_____

☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail          DRF / RF $_____ + PA $_____

☐ Not drive w/o valid DL & Ins  ☐ Re-refer          AEF $_____  ☐ Add'l RF $_____  ☐ Susp'd PC1202.44/45

☐ MOP  ☐ FOP  ☐ 12 hrs  ☐ 3 mos  ☐ Enroll within _____ days          AEF $_____  ☐ Original Fine $_____

☐ DL Susp/ Restr'd/ Rvk'd for _____  ☐ IID Not/Ordered/ Rmv'd Term _____  Yrs          SECA/COPA _____ $_____  CTS PC2900.5  $_____

☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05          ICMF $_____  ☐ TOTAL DUE _____ $_____

☐ DVPO Issued / mod /term'd Exp _____  ☐ Victim Present          ICIN $_____  ☐ Payments Granted / Modified

☐ No Contact  ☐ Peaceful Contact  ☐ DSA thru APO / DOR / CRT  ☐ Filed          AR $_____  ☐ $_____ / Mo beginning _____

☐ Not own/possess deadly weapons  ☐ Destroy/return weapon _____          SHELTER $_____  ☐ FINE STAYED

☐ Stay away from _____          DV $_____  ☐ Committed @ $_____ /day  ☐ May Pay Out

☐ Submit Search/Testing  ☐ Educ/Voc Trng/Empl  ☐ No alcohol / drugs or where sold          ATTY $_____  ☐ Consec/Conc to _____

☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm          ASF&S/CPF$10 $_____  ☐ Fine / Fees  ☐ Deemed Satisfied  ☐ Commuted

☐ PC296 (DNA)  ☐ PC1202.1 HIV Test / Education          P/INVEST $_____  ☐ PISUP $_____ _____ /Mo  ☐ Waived

VOP:  ☐ Wav  ☐ Arr'd _____  ☐ Admits/Denies Viol  ☐ Court Finds VOP / No VOP          CJAF $129.75/$259.50  $_____  ☐ Add'l Fees Waived

Prob Rein / Mod / Term'd / Revoked / Remains, Revoked / Ext to _____          ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB

☐ Original Terms & Conditions Except as Amended herein          ☐ Restit ☐ Gen $_____ to _____

☐ Co-terminous with _____  ☐ No Further Penalties / Reviews          ☐ As determined by APO/Court  ☐ Referred to VWAC  ☐ Collect Civilly

Other:_____          ☐ Collect Civilly

JAIL/PRISON  ☐ See Attachm't Pg  ☐ CDCR/Parole collect restit from Def's earnings  ☐ Blended Sentence          County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL ** | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____  ☐ ACT + _____  ☐ 4019  ☐ ½  ☐ ⅓  ☐ PC2933.1 _____  Total  Total term _____  CDCR / PC 1170h

☐ Straight time  ☐ In Camp  ☐ WWP  ☐ PC1209 Fees  ☐ Waived  ☐ Court Rec_____ All / Except  ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____

☐ Sent Deemed Srv'd  ☐ Rpt to Parole/Prob w/in _____  ☐ Adv/ORD _____  Yrs/Mos Parole/MS/PRCS/Appeal  ☐ Consec  ☐ Conc to _____   1080

☐ Bal CJ Susp  ☐ All but _____Hrs/Days/Mos  ☐ On Cond Complete Residential Treatment Prgm  ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____

☐ Pre-process_____          ☐ Stay / Surrender / Transport to _____          @ _____ AM/PM or Sooner

☑ REMANDED-BAIL $_____          ☑ REMAIN AS SET  ☐ NO BAIL  ☐ COMMITTED  ☐ RELEASED  ☐ OR  ☐ SORP  ☐ JAC PHONE ASSM'T  ☐ P36

☐ AS COND OF SORP  ☐ BAIL INCREASED / REDUCED  ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-01-13                          CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO                DEPUTY: JOSE ZUNIGA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                             ATTY: BRIAN MADDEN

| Proceedings: | Jury Selection | DAY 3 | page 1 of 2 |
| --- | --- | --- | --- |

| | |
| --- | --- |
| 9:35 am | Outside the presence of the prospective jurors, Court is in session with all parties present. Court states that it met briefly this morning with counsels to address new information regarding one of the victims in this case, as stated. |
| 9:36 am | Court goes off the record to await the arrival of the panel of prospective jurors. |
| 9:47 am | The panel of 85 prospective jurors enters the courtroom. (not reported) The clerk takes roll call. |
| 9:54 am | (not reported) The panel of 85 prospective jurors is sworn in by the clerk. |
| 9:56 am | Court is in session with all above parties present, including the panel of prospective jurors. The Court reads the Information, as stated. The Court addresses the panel of prospective jurors and introduces counsels and the defendant. The Court pre-instructs the panel. The Court reviews scheduling for the jury trial and explains the process of hardships, as stated. The Court explains to the panel that it will hear hardships on an individual basis after a short recess. The Court reads the panel the admonition and orders them to return on Monday, July 8, 2013 at 9:00 am to report to the jury assembly room. Those prospective jurors with hardships are ordered to wait outside the courtroom until called. |
| 10:17 am | Court takes a short recess. |
| 10:21 am | Court is back on the record with all parties present. The Court begins hearing hardships. The Court excuses the following jurors for hardship: 6, 45, 60, 32, 13, 7, 11, 59, 46, 2, 3, 55, 53, 43, 19, 72, 74, 25, 41, 49, 40, 62, 82, 58, 69, and 54. The Court defers the following jurors to a later date: 27, 81, 30, 56, 79, and 12. The Court orders the following juror to return to the jury assembly room today at 1:30 pm to be assigned to a different case: 28. |

1081

People vs. Chandler                                    7/01/13
C1223754                                              page 2 of 2

|  | The Court excuses the following jurors for cause: 52, 48, 85, 47, 10, 70, 37, 71, 39, 83, 63, 5, 34, 4, 8, 73, 36, and 21. |
|---|---|
| 11:47 am | Court is in recess. |
| 1:46 pm | The second panel of 85 prospective jurors enters the courtroom. |
|  | (not reported) The clerk takes roll call. |
| 1:53 pm | (not reported) The panel of 84 prospective jurors is sworn in by the clerk. |
| 1:54 pm | (not reported) Prospective juror #4 is sworn in by the clerk. |
| 1:55 pm | Court is in session with all above parties present, including the second panel of prospective jurors.  The Court reads the Information, as stated.  The Court addresses the panel of prospective jurors and introduces counsels and the defendant.  The Court pre-instructs the panel.  The Court reviews scheduling for the jury trial and explains the process of hardships, as stated.  The Court explains to the panel that it will hear hardships on an individual basis after a short recess.  The Court reads the panel the admonition and orders them to return on Monday, July 8, 2013 at 9:00 am to report to the jury assembly room.  Those prospective jurors with hardships are ordered to wait outside the courtroom until called. |
| 2:18 pm | Court takes a short recess. |
| 2:23 pm | Court is back on the record with all parties present. The Court begins hearing hardships. |
|  | The Court excuses the following jurors for hardship: 30, 52, 64, 8, 85, 65, 3, 14, 62, 76, 81, 56, 82, 58, 31, 24, 75, 67, 6, 38, 32, and 83. |
|  | The Court defers the following jurors to a later date: 21 and 71. |
|  | The Court excuses the following jurors for cause: 66, 78, 29, 37, 18, 54, 41, 42, 48, 59, 23, 5, 74, 22, 72, and 79. |
| 3:22 pm | Court takes the afternoon recess. |
| 3:38 pm | Court is back on the record with all parties present. The Court continues hearing hardships. |
|  | The Court excuses the following jurors for hardship: 36, 68, and 27. |
|  | The Court defers the following jurors to a later date: 40. |
|  | The Court excuses the following jurors for cause: 45, 63, 9, 50, 1, 7, 73, 47, 35, 12, 39, 33, 16, 46, and 20. |
| 4:09 pm | Court orders counsels to return tomorrow at 9:00 am. |
|  | Court is in recess. |

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

CASE NO.   C1223754
CEN          12001535

PEOPLE VS. CRAIG RICHARD CHANDLER

DATE        07/02/2013        9:00 AM   DEPT.     37
10/25/1976

K.A.          1361 N SAN PEDRO ST
               SAN JOSE, CA, 95110

CLERK      E. DE SANTIAGO                     EBK966 M
HEARING   JURY TRIAL / _Jury Selection_

JUDGE      HON. ARTHUR BOCANEGRA
REPORTER  J. MIXCO
DEF. ATTY.  MADDEN, BRIAN  (G)

AGENCY    SJ– 04313–   –UNKNOWN
STATUS    I-SET-NBA                           TW   Y
              APO

D.A.   A. FILO

CHARGES

F(001)  PC288(A)          F(002)  PC288(A)
F(003)  PC288(A)          F(004)  PC288(A)
F(005)  PC288(A)

VIOLATION DATE
09/01/2010

NEXT APPEARANCE _____  AD / PD / IDO / Special App

7-3-13  1:30pm  Dept 37

☑ Defendant Present   ☐ Not Present          ☑ Atty Present _AR_____  AR
☐ Arr'd  ☐ Adv  ☐ Arr Wav  ☐ Amend Comp/Info  ☐ Arr  ☐ Plea  ☐ IDC  ☐ PTC  ☐ Prob / Sent  ☐ Interpreter _____  ☐ Sworn
☐ PC977  ☐ Filed  ☐ On File  ☐ Reptr. Adv / Wav  ☐ Bail/ OR/ SORP  ☐ Reptr Dr Rpt  ☐ FAR/ ERC  ☐ Bail Apply  ☐ Balance Exonerated
☐ NG  ☐ Entered by CRT  ☐ NGBRI / Adv  ☐ PSet  ☐ Prelim  ☐ Readiness  ☐ S / B MTC  ☐ Bail Exonerated  ☐ Forfeiture _____  Bond #_____
☐ Denies Prior/ Allegations/ Enhancements/Refusal  ☐ Further  ☑ Jury Trial  ☐ CT  ☐ Peo / Def Wav Jury  ☐ Reassumption Filed  ☐ Forfeiture Set Aside  ☐ Bail Rein
☐ TW  ☐ TNW  ☐ TW / IWD  ☐ TW Sentence  ☐ _Further Hearing_____  $_____  ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO  ☐ Con Decl  ☐ Adm A / F  ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't  ☐ SORP / OR  ☐ Revoked  ☐ Reinstated  ☐ May Post & Forfeit
☐ _____ Relieved _____  Appt'd  ☐ Crim Proc Susp  ☐ Rein  ☐ Status Hrg  ☐ BW Ordered  _____  ☐ Stayed  ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT  ☐ No Request  ☐ Cash Only
☐ Granted  ☐ Denied  ☐ Submitted  ☐ Off Cal  ☐ Subm on Report  ☐ Found _____  ☐ BW Set Aside  ☐ Recalled _____  ☐ Filed  ☐ Remain Out  ☐ NWF
☐ Stip to Comm  ☐ Drs. Appointed _____  ☐ Max Term _____  ☐ Committed _____  ☐ Proof of _Jury Selection continues_
☐ Prelim Wav  ☐ Certified to General Jurisdiction  ☐ MDA / COM amenable to
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5  ☐ DA Stmt Filed _parts of prospective jurors to remain on_
PLEA Conditions:  ☐ None  ☐ No State Prison  ☐ PC17 after 1 Yr Prob  ☐ Includes VOP _7-3-13 at 9:00am_
                                                                                        ☐ Add to Cal  ☐ Vacate pending date
☐ Jail / Prison Term of _____                                                      ☐ Subm re of Sent  ☐ Harvey Stip
☐ Dismissal / Striking _Counts to be reset on 7-3-13 at 2:00 A.M._
☐ Adv Max Pen / Parole / Prob / Immig / Appeal  ☐ Reg HS11590/PC290/PC457.1/PC186.30  ☐ FSF  ☐ Fines/Fees  ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to  ☐ Counsel  ☐ Court / Jury Trial  ☐ Subpoena / Confront / Examine Witnesses  ☐ Self-incrimination  ☐ Written Waiver filed  ☐ Plea / Absentia filed
☐ COP  ☐ GUILTY  ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors  ☐ PC17  ☐ Arbuckle  ☐ Factual Basis found  ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term  ☐ DEJ Eligibility Filed  ☐ DEJ Granted / Rein / Term  Fee $_____  ☐ Guilty Plea Rendered
☐ Waives Referral  ☐ APO Full Rpt  ☐ CR110 issued  Plea/Fees Paid?  ☐ DOR  ☐ Traffic  ☐ Court  ☐ Today _____  ☐ Audit # _____
☐ Sent Suspended _____  ☐ PROBATION DENIED          COUNT ___  $_____  + PA $_____  ☐ Purs HS11350d
PROBATION  ☐ Execution  ☐ Imposition of sentence suspended for probation period   COUNT ___  $_____  + PA $_____  ☐ PC290.3
☐ COURT  ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs   AIDS / CPP   $_____  + PA $_____  ☐ SORP
☐ Report to APO within _____ Days  ☐ Terminated  ☐ Upon Release          DPF         $_____  + PA $_____  ☐ EMAT $_____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP  ☐ In lieu of fine/Jail   LAB         $_____  + PA $_____
☐ Not drive w/o valid DL & Ins  ☐ Adv VC23600  ☐ HTO  ☐ Re-refer        DRF /RF    $_____  ☐ Add'l RF $_____  ☐ Susp'd PC1202.44/45
☐ MOP  ☐ FOP  ☐ 12 hrs  ☐ 3 mos. ☐ 9 mos  Enroll within _____ days      AEF         $_____  ☐ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____  ☐ IID Not/Ordered/ Rmv'd Term    SECA/COPA  $_____  CTS PC2900.5   $_____
☐ No contact with victim or family / co-defts unless appr by APO  ☐ PC1202.05   ICMF       $_____  TOTAL DUE    $_____
☐ DVPO issued / mod /term'd Exp _____  ☐ Victim Present                ICIN        $_____  Payments Granted / Modified
☐ No Contact  ☐ Peaceful Contact  ☐ DSA thru APO / DOR / CRT  ☐ Filed   AR          $_____ / Mo beginning _____
☐ Not own/possess deadly weapons  ☐ Destroy/return weapon _____      SHELTER    $_____  FINE STAYED
☐ Stay away from _____                                       DV          $_____  ☐ Committed @ $_____/day  ☐ May Pay Out
☐ Submit Search/Testing  ☐ Educ/Voc Trng/Empl  ☐ No alcohol / drugs or where sold  ATTY        $_____  ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF825/CPF$10$_____  Fine / Fees  ☐ Deemed Satisfied  ☐ Commuted
☐ PC296 (DNA)  ☐ PC1202.1 HIV Test / Education                        P/INVEST    $_____  ☐ P/SUP $_____ _____ /Mo  ☐ Waived
VOP: ☐ Wav  ☐ Arr'd _____  ☐ Admits/Denies Viol  ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $_____  ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein                  ☐ Restit ☐ Gen $_____  @ _____
☐ Co-terminous with _____                               ☐ As determined by APO/Court  ☐ Referred to VWAC  ☐ Collect Civilly
Other: _____

JAIL/PRISON  ☐ See Attachm't Pg  ☐ CDCR/Parole collect restit from Def's earnings  ☐ Blended Sentence       County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|-------|-----|-----------|-------------------|----------------------|--------------------|-------------------|
|       |     | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ** | | | | |
|       |     |           |                   |                      |                    |                   |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------------|-------|-------|

CTS = _____  ☐ ACT +_____  ☐ 4019  ☐ ½  ☐ ⅓  ☐ PC2933.1 _____  Total  Total term _____  ☐ CDCR / PC 1170h
☐ Straight time  ☐ In Camp  ☐ WWP  ☐ PC1209 Fees  ☐ Waived  ☐ Court Rec _____  All / Except  ☐ EMP/PSP/ERP/DRP/Co Parole/NP
☐ Sent Deemed Srv'd  ☐ Rpt to Parole/Prob w/in _____  ☐ Adv/ORD _____  Yrs/Mos Parole/MS/PRCS/Appeal  ☐ Consec  ☐ Conc to _____  **1083**
☐ Bal CJ Susp  ☐ All but _____ Hrs/Days/Mos  ☐ On Cond Complete Residential Treatment Prgm  ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process _____  AM/PM  ☐ Stay / Surrender / Transport to _____  @ _____  AM/PM or Sooner
☑ REMANDED-BAIL $_____  ☐ REMAIN AS SET  ☐ NO BAIL  ☐ COMMITTED  ☐ RELEASED  ☐ OR  ☐ SORP  ☐ JAC PHONE ASSM'T  ☐ P36
☐ AS COND OF SORP  ☐ BAIL INCREASED / REDUCED  ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-02-13                          CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO            DEPUTY: JOSE ZUNIGA
REPORTER: JAMIE MIXCO

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                          ATTY: BRIAN MADDEN

| Proceedings: | Jury Selection | DAY 4 | page 1 of 2 |
|---|---|---|---|

| | |
|---|---|
| 9:29 am | The third panel of 85 prospective jurors enters the courtroom. |
| | (not reported) The clerk takes roll call. |
| 9:37 am | (not reported) The panel of 85 prospective jurors is sworn in by the clerk. |
| 9:38 am | Court is in session with all above parties present, including the panel of prospective jurors.  The Court reads the Information, as stated.  The Court addresses the panel of prospective jurors and introduces counsels and the defendant.  The Court pre-instructs the panel.  The Court reviews scheduling for the jury trial and explains the process of hardships, as stated.  The Court explains to the panel that it will hear hardships on an individual basis after a short recess.  The Court reads the panel the admonition and orders them to return on Monday, July 8, 2013 at 9:00 am to report to the jury assembly room.  Those prospective jurors with hardships are ordered to wait outside the courtroom until called. |
| 9:59 am | Court takes a short recess. |
| 10:05 am | Court is back on the record with all parties present.  The Court begins hearing hardships. |
| | The Court excuses the following jurors for hardship: 13, 33, 47, 7, 56, 68, 36, 72, 3, 29, 69, 82, 71, 12, 25, 24, 23, 6, 63, 20, 62, 18, 38, 26, 76, 59, 66, 83, 57, 45, 78, and 37. |
| | The Court excuses the following jurors for cause: 64, 30, 19, 41, 40, 48, 5, 16, 75, 51, 50, 39, 60, 46, 32, 67, 21, 44, 73, 28, 84, 2, 58, 79, 22, 31, 11, 8, 74, 10, and 52. |
| 10:48 am | Court is in recess. |
| 1:49 pm | The fourth panel of 60 prospective jurors enters the courtroom. |
| | (not reported) The clerk takes roll call. |
| 1:54 pm | (not reported) The panel of 59 prospective jurors is sworn in by the clerk. |
| 1:55 pm | Court is in session with all above parties present, including the panel of prospective jurors.  The Court reads |

1084

People vs. Chandler                                    7/02/13
C1223754                                            page 2 of 2

the Information, as stated.  The Court addresses the panel
of prospective jurors and introduces counsels and the
defendant.  The Court pre-instructs the panel.  The Court
reviews scheduling for the jury trial and explains the
process of hardships, as stated.  The Court explains to the
panel that it will hear hardships on an individual basis
after a short recess.  The Court reads the panel the
admonition and orders them to return on Monday, July 8,
2013 at 9:00 am to report to the jury assembly room.  Those
prospective jurors with hardships are ordered to wait
outside the courtroom until called.

2:15 pm        Court takes a short recess.
2:20 pm        Court is back on the record with all parties present. The
               Court begins hearing hardships.
               The Court excuses the following jurors for hardship: 29,
               51, 49, 24, 4, 22, 33, 25, 2, 59, 7, 37, 11, 13, 8, 42, 28,
               3, 5, 38, 44, 19, 1, 58, 18, 20, and 56.
               The Court excuses the following jurors for cause: 47, 60,
               6, 40, 23, 17, 43, 41, 48, 16, 10, 15, 57, 9, 32, 54, and
               34.
2:39 pm        Court goes off the record momentarily.
2:41 pm        Back on the record, Court is in session with all parties
               present.  All prospective jurors have exited the courtroom.
               Court addresses the issue of the number of prospective
               jurors returning on Monday morning, as stated.  Court
               addresses the issue of why prospective jurors were
               dismissed this afternoon with only limited questioning, as
               stated.  Court continues the matter to tomorrow, July 3,
               2013 at 1:30 pm for further hearing.  Court orders counsels
               to return to court tomorrow at 2:00 pm.
2:44 pm        Court is in recess.

1   JEFF ROSEN, DISTRICT ATTORNEY #163589
    ALISON FILO, DEPUTY DISTRICT ATTORNEY # 183894
2   COUNTY GOVERNMENT CENTER, West Wing
    70 W. Hedding St., 7ᵗʰ Floor
3   San Jose, CA 95110
    Telephone:  408/792-2891
4

5   Attorneys for the People

6

7                SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

8

9   PEOPLE OF THE STATE OF CALIFORNIA,        )   NO.  C1223754
                                              )
10                                            )   STIPULATION & ORDER
                         Plaintiff,           )   REGARDING USE OF
11                                            )   PRIVILEGED MATERIAL
                                              )
12               vs.                          )
                                              )
13  CRAIG CHANDLER,                           )
                                              )
14                       Defendant.           )
                                              )
15  _____      )

16         Paul Matiasic, Esq., represents alleged victim #3 Laurie Doe in connection with a

17  civil lawsuit filed against Evergreen School District.  In connection with that

18  representation, Mr. Matiasic had his client evaluated by a child and adolescent psychiatrist.

19  The identity of the psychiatrist has been claimed to be privileged pursuant to Code of Civil

20  Procedure Sections 2034.210, 2034.220 and 2034.270.  The information obtained by the

21  psychiatrist, and provided to Mr. Matiasic, is claimed to be privileged pursuant to the

22  attorney-client privilege and work product doctrine.

23

24

25

26                                    1

Jeffrey F. Rosen
District Attorney       Stipulation & Order
County of Santa Clara
San Jose, CA. 95110

**FILED**

JUL 03 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

1086

1        By and through her legal representative in the civil proceedings, Paul Matiasic,

2    Esq., Laurie Doe has agreed to a conditional waiver of these rights and privileges because

3    the information obtained by the psychiatrist is materially relevant to the criminal

4    proceedings reflected in Santa Clara County Superior Court Case Number C1223754.  Mr.

5    Matiasic will reveal the identity of the psychiatrist and execute a written waiver making

6    available all notes and reports related to Laurie's session(s) with the psychiatrist to the

7    Honorable Arthur Bocanegra.  Mr. Matiasic executes the waiver with the understanding

8    that an *in camera* review will be conducted by Judge Bocanegra.  It is anticipated Judge

9    Bocanegra will release to the attorneys in the criminal action any documents containing

10   materially relevant statements regarding the scope and nature of the alleged abuse suffered

11   by Laurie.

12        The attorneys for both the prosecution and the defense in the criminal case hereby

13   acknowledge that the documents and records released by Judge Bocanegra may only be

14   used in the criminal case and cannot be disseminated to anyone not working directly on

15   behalf of one of the attorneys.

16        Therefore, IT IS HEREBY ORDERED THAT any documents or records provided

17   to the Court by the psychiatrist retained by Mr. Matiasic for the examination of Laurie Doe

18   be marked "confidential" and deemed confidential. These confidential records shall be

19   retained by the attorneys in the criminal case and used only in and for the benefit of the

20   criminal case.  The documents may not be furnished to anyone other than those within the

2

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

Stipulation & Order

1087

employ of the District Attorney, the Law Offices of Madden & Redding, or experts and

consultants retained by either of those offices to assist in the criminal action.

All confidential material shall be kept in the Office of the District Attorney or the Law

Offices of Madden & Redding and no copy of the material shall leave those offices,

including via electronic transmission of any sort, for any purpose except for transmissions

between counsel and experts, or for use in court in connection with the criminal

proceedings in this matter. All confidential materials shall be used solely for the purpose of

conducting pre-trial, trial and appellate proceedings in this case and for no other purpose

whatsoever and shall not be viewed or used in connection with any other proceeding other

than this criminal action.

**IT IS SO ORDERED.**

Dated: _____          7/3/13

  Honorable Arthur Bocanegra
  Judge, Santa Clara County Superior Court


**ACKNOWLEDGEMENT OF RECEIPT OF PROTECTIVE ORDER**

The undersigned hereby acknowledges receipt, understanding, and agreement to the terms

of this Protective Order.

DATED: _____          DATED: _____

_____          _____
Alison Filo                                    Brian Madden
Deputy District Attorney              Attorney for Craig Chandler

Stipulation & Order

1088

# CONFIDENTIAL

## MAY NOT BE EXAMINED WITHOUT COURT ORDER

## THE PEOPLE

### V.

## CRAIG RICHARD CHANDLER

COURT OF APPEAL NUMBER:   H040429

CASE NUMBER:   C1223754

**PSYCHIATRIC EVALUATION OF LAURIE DOE (SEALED)**
**PEOPLE'S WITNESS LIST**
**DEFENSE WITNESS LIST**

| SEALED PAGES | 1089 | THRU | 1093 |
|---|---|---|---|
| | 1094 | | 1095 |
| | 1096 | | 1097 |
| | | | |

| | |
|---|---|
| SUPERIOR COURT<br>190  W. HEDDING STREET<br>SAN JOSE CA  95110 | CASE NO.   C1223754<br>CEN        12001535 |
| PEOPLE vs. CRAIG RICHARD CHANDLER<br>L.K.A.        1361 N SAN PEDRO ST<br>                   SAN JOSE, CA 95110 | DATE        07/03/2013   1:30 PM  DEPT.   37<br>                   10/25/1976<br>CLERK       E. DE SANTIAGO            EBK966  M |
| JUDGE       HON. ARTHUR BOCANEGRA<br>REPORTER    J. MIXCO<br>DEF. ATTY.   MADDEN, BRIAN  (G) | HEARING    JURY TRIAL /Further Hearing<br>AGENCY      SJ- 04313-    -UNKNOWN<br>STATUS      I-SET-NBA                        TW  Y |
| CHARGES | D.A.  A. FILO       APO |

| | | |
|---|---|---|
| F(001) PC288(A) | F(002) PC288(A) | VIOLATION DATE |
| F(003) PC288(A) | F(004) PC288(A) | 09/01/2010 |
| F(005) PC288(A) | | |

NEXT APPEARANCE        7-8-13       9:00am  Dept. 37

☑ Defendant Present ☐ Not Present       ☑ Atty Present   AR                                AD / PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info   ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter _____   ☐ Sworn

[Form checkbox fields continue]

PLEA Conditions:

PROBATION DENIED

PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. **

CTS =                        ACT +                     1098

☑ REMANDED-BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-03-13                                    CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO                          DEPUTY: JOSE ZUNIGA
REPORTER: JAMIE MIXCO

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                             ATTY: BRIAN MADDEN

| Proceedings: | Further Hearing | DAY 5 | page 1 of 1 |
|---|---|---|---|

| | |
|---|---|
| 2:16 pm | Outside the presence of the prospective jurors, Court is in session with all above parties present. Attorney Paul Matiasic is also present on behalf of victim Laurie Doe. Deputy District Attorney Filo addresses the issue of a protective order regarding psychiatric records on Laurie Doe, as stated. Counsels and attorney Matiasic are heard on the matter. |
| 2:28 pm | Defense attorney Madden addresses the issue of fees, as stated. Counsels are heard on the matter. Court and counsels sign 'Stipulation and Order Regarding Use of Privileged Material' and the Court orders that it be filed. |
| 2:32 pm | Court goes off the record momentarily. (not reported) Court reviews the psychiatric records in chambers. |
| 3:20 pm | Court holds an in-camera hearing. |
| 3:26 pm | Court concludes in-camera hearing. |
| 3:28 pm | Court is in session. Counsels and attorney Paul Matiasic are no longer present in the courtroom. Court states that it held an in-camera hearing this afternoon to review psychiatric records regarding Laurie Doe, as stated. Court states that it has made a redacted copy of the documents and will have the clerk fax these over to counsels and attorney Matiasic today. Court orders the original document and the redacted copy to be sealed and to remain in the file. |
| 3:30 pm | Court is in recess. |

1099

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

CASE NO.        C1223754
CEN             12001535

PEOPLE VS.  CRAIG RICHARD CHANDLER
L.K.A.       1361 N SAN PEDRO ST
             SAN JOSE, CA 95110

DATE        07/08/2013    9:00 AM    DEPT.    37
            10/25/1976
CLERK       E. DE SANTIAGO            EBK966  M
HEARING     JURY TRIAL / Jury Selection

JUDGE       HON. ARTHUR BOCANEGRA
REPORTER    J. MIXCO
DEF. ATTY.  MADDEN, BRIAN  (G)

AGENCY      SJ– 04313–  -UNKNOWN
STATUS      I-SET-NBA

D.A.  A. FILO        APO                                    TW    Y

CHARGES
F(001) PC288(A)        F(002) PC288(A)
F(003) PC288(A)        F(004) PC288(A)            VIOLATION DATE
F(005) PC288(A)                                   09/01/2010

NEXT APPEARANCE                          7-9-13   9:00am   dept 37

☑ Defendant Present ☐ Not Present      ☑ Atty Present  AR                    AD / PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter ___  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv   ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited   Bond #___
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☑ Further ☑ Jury ☐ Ref'd / Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TW / WD ☐ TW Sentence    ☐ Ref'd ___ Jury Selection   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F   ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't   SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ___ Relieved ___ Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   ☐ BW Ordered ___ ☐ Stayed ☐ To Issue
☐ Hrg on Motion ___   ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report ☐ Found ___   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed ___   ☐ Max Term ___ ☐ Committed ___
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to ___       Jury Selection continues
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed ___

PLEA Conditions: ☐ None  ☐ No State Prison  ☐ PC17 after 1 Yr Prob  ☐ Includes VOP
☐ Jail / Prison Term of ___                                              ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ___                                               ☐ Subm time of Sent ☐ Harvey Stip
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $___   ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # ___
☐ Sent Suspended ___         ☐ PROBATION DENIED      COUNT __ $___ + PA $___  ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT __ $___ + PA $___  ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs   AIDS / CPP  $___ + PA $___  ☐ SORP ___
☐ Report to APO within ___ Days  ☐ Terminated  ☐ Upon Release   LAB  $___ + PA $___  ☐ EMAT $___
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB  $___ + PA $___
☐ Not drive w/o valid DL & Ins  ☐ Adv VC23800 ☐ HTO ☐ Re-refer   DRF /RF  $___  ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ___ days   AEF  $___  ☐ Original Fine $___
☐ DL Susp/ Restr'd/ Rvk'd for ___  ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs   SECA/COPA  $___  CTS PC2900.5  $___
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF  $___  TOTAL DUE  $___
☐ DVPO issued / mod /term'd Exp ___  ☐ Victim Present   ICIN  $___  ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR  $___ $___ / Mo beginning ___
☐ Not own/possess deadly weapons ☐ Destroy/return weapon ___   DV  $___  FINE STAYED ___
☐ Stay away from ___   DV  $___  ☐ Committed @ $___ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY  $___  ☐ Consec/Conc to ___
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF$25/CPF$10S___  ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P/INVEST  $___  ☐ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ___ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50  $___  ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ___   ☐ SECA, ICMF, ICIN, CJAF, P/NVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $___ to ___
☐ Co-terminous with ___  ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: ___

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence       County Jail
Count  F/M     Violation     Prison Term / Yrs     Enhancement / Priors     Yrs / Styd / Strkn     HRS / DAYS / MOS

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL **

Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Total

CTS = ___ ACT + ___ ☐ 4019 ☐ ½ ☐ ⅓  PC2933.1 ___ Total  Total term ___       CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP ___
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ___ ☐ Adv/ORD ___ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to ___
☐ Bail CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU    1100
☐ Pre-process ___ ☐ AM/PM ☐ Stay / Surrender / Transport to ___ @ ___ AM/PM or Sooner
☐ REMANDED-BAIL $___  ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-08-13

CLERK: EDGAR DE SANTIAGO

REPORTER: JAMIE MIXCO

CASE NUMBER: C1223754

DEPUTY: ED ARMENTA

---

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**          ATTY: BRIAN MADDEN

---

| Proceedings: | Jury Selection | DAY 6 | page 1 of 3 |
|---|---|---|---|

| | |
|---|---|
| 9:44 am | Outside the presence of the panel of prospective jurors, Court is in session with all parties present.  Prospective jurors #4, 65, 54, 63, 43, and 49 are present in the courtroom.  Court addresses the prospective jurors and excuses prospective jurors #4, 65, 54, 63, and 43 for cause, by stipulation of counsels.  Court addresses prospective juror #49 and excuses him for hardship. |
| 9:48 am | Outside the presence of any prospective juror, Court addresses the issue of excusing these prospective jurors by stipulation of counsels, as stated. |
| 9:50 am | Court goes off the record to await arrival of the panle of prospective jurors. |
| 10:06 am | (not reported) The panel of prospective jurors enters the courtroom.  The remaining prospective jurors from the four panels have been consolidated into one combined juror list. (not reported) The clerk calls 18 prospective jurors' names and they are seated in the jury box. |
| 10:16 am | Court is in session with all above parties present, including the panel of prospective jurors. The Court addresses the prospective jurors and explains reasonable doubt, burden of proof, and the voir dire and jury trial processes, as stated. |
| 10:38 am | (not reported) A sidebar conference is held. |
| 10:40 am | Court continues explaining reasonable doubt, burden of proof, and the voir dire and jury trial processes, as stated. |
| 10:49 am | The Court conducts voir dire. |
| 11:28 am | Court admonishes and excuses the panel of prospective jurors for the lunch break. |
| 11:30 am | Outside the presence of the panel of prospective jurors, Court is in session with all parties present.  Prospective jurors #66, 30, and 89 are present in the courtroom. Court addresses prospective juror #89 regarding his tardiness today, and orders him to return today at 1:30 pm. Court addresses prospective juror #30, and excuses him for |

1101

|  | |
|---|---|
|  | cause.  Court addresses prospective juror #66 regarding his daughters speaking with police officers, as stated. Court excuses prospective juror #66 for cause. |
| 11:37 am | Court is in recess. |
| 1:44 pm | Court is in session with all above parties present, including the panel of prospective jurors. The clerk calls 2 prospective juror names and they are seated in the box. |
| 1:45 pm | The Court conducts voir dire. |
| 1:57 pm | (not reported) A sidebar conference is held with prospective juror #72. |
| 2:01 pm | The Court continues voir dire. |
| 2:06 pm | (not reported) A sidebar conference is held with prospective juror #17. |
| 2:14 pm | Court excuses prospective juror #17 for cause. The clerk calls 1 prospective juror names and she is seated in the box.  The Court continues voir dire. |
| 2:21 pm | Defense attorney Madden conducts voir dire. |
| 3:07 pm | (not reported) A sidebar conference is held. |
| 3:09 pm | Defense attorney Madden continues voir dire. |
| 3:13 pm | Court admonishes and excuses the panel of prospective jurors for the afternoon break. |
| 3:15 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present, including prospective juror #1. |
| 3:16 pm | Court orders prospective juror #1 to wait outside the courtroom. |
| 3:17 pm | Prospective juror #1 re-enters the courtroom.  Court excuses prospective juror #1 for cause.  Court places on the record previous sidebar conference discussions, as stated. |
| 3:22 pm | Court is in recess. |
| 3:42 pm | Court is in session with all above parties present, including the panel of prospective jurors. Deputy District Attorney (D.A.) Filo conducts voir dire. |
| 4:07 pm | (not reported) A sidebar conference is held. |
| 4:08 pm | Back on the record, Court excuses prospective juror #50 for cause. The Court explains that it will now proceed with the peremptory challenge process, as stated.  Peremptory challenges are exercised as follows: The People excuse prospective jurors #53, 90, and 14. The Defense excuses prospective jurors #13 and 77. |
| 4:14 pm | The clerk calls 7 prospective juror names and they are seated in the box. |
| 4:18 pm | The Court conducts voir dire. |
| 4:38 pm | Court admonishes and excuses the panel of prospective jurors and orders them to return to the jury assembly room tomorrow, July 9, 2013 at 9:00 am. |
| 4:42 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #11.  Court addresses prospective juror #11 and excuses him for cause. |

1102

People vs. Chandler                                          7/8/13
C1223754                                                page 3 of 3
_____

4:44 pm       Outside the presence of the panel of prospective jurors,
              Court is in session with all parties present including
              prospective juror #20.  Court addresses prospective juror
              #20 and excuses him for cause.
4:48 pm       Outside the presence of the panel of prospective jurors,
              Court is in session with all parties present including
              prospective juror #22.  Court addresses prospective juror
              #22 and excuses him for hardship.
4:50 pm       Court is in recess.

1103

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

PEOPLE VS. CRAIG RICHARD CHANDLER
L.K.A.      1361 N SAN PEDRO ST
            SAN JOSE, CA 95110

JUDGE       HON. ARTHUR BOCANEGRA
REPORTER    J. MIXCO
DEF. ATTY.  MADDEN, BRIAN (G)

CHARGES

CASE NO.    C1223754
CEN         12001535
DATE        07/09/2013    9:00 AM   DEPT.   37
            10/25/1976
CLERK       E. DE SANTIAGO              EBK966  M
HEARING     JURY TRIAL/ Jury Selection
AGENCY      SJ– 04313–  -UNKNOWN
STATUS      I-SET-NBA                        TW  Y
APO

D.A.  A. FILO

F(001) PC288(A)          F(002) PC288(A)
F(003) PC288(A)          F(004) PC288(A)          VIOLATION DATE
F(005) PC288(A)                                   09/01/2010

NEXT APPEARANCE    7-10-13  9:00am  Dept 37

☑ Defendant Present ☐ Not Present  ☑ Atty Present  BR                          ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ DC ☐ PTC ☐ Prob / Sent     ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav  ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv        ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC    ☐ Bail Exonerated ☐ Forfeited    Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☑ Jury ☐ CT ☐ Ppo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence     Ref'd _Jury Selection_       ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F  ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't     SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd       ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg        ☐ BW Ordered _____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____   ☐ Doubt Decl Pursuant PC 1368                ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found _____          ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____   ☐ Max Term _____ ☐ Committed _____     ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5 ☐ DA Stmt Filed        _Jury Selection continues._
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
☐ Jail / Prison Term of _____                                                     ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _2 Jurors Sworn in._                                          ☐ Subm time at Sent ☐ Harvey Stip
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC2980.00/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term   Fee $ _____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____        ☐ PROBATION DENIED        COUNT ___ $ _____ + PA $ _____  ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ___ $ _____ + PA $ _____  ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  AIDS / CPP $ _____ + PA $ _____  ☐ SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF $ _____ + PA $ _____  ☐ EMAT $ _____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB $ _____ + PA $ _____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF / RF $ _____ Add'l RF $ _____ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF $ _____ ☐ Original Fine $ _____
☐ DL Susp/ Restr'd/ Rvk'd for _____  ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA $ _____  CTS PC2900.5 $ _____
☐ No contact with victim or family / co-defts unless appr by APO  ☐ PC1202.05  ICMF $ _____  TOTAL DUE $ _____
☐ DVPO issued / mod /term'd Exp _____  ☐ Victim Present  ICIN $ _____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR $ _____ $ _____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $ _____  FINE STAYED
☐ Stay away from _____  DV $ _____ ☐ Committed @ $ _____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $ _____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$ _____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $ _____ ☐ P/SUP $ _____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $ _____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $ _____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON   ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence                County Jail
Count   F/M      Violation          Prison Term / Yrs      Enhancement / Priors       Yrs / Styd / Strkn      HRS / DAYS / MOS

| | | | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ** | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ ☐ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____   CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ ☐ All / Except ☐ Court Rec'd _____ ☐ Consec ☐ Conc to 1104
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ ☐ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ ☐ AM/PM or Sooner
☑ REMANDED–BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DDC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-09-13

CLERK: EDGAR DE SANTIAGO

REPORTER: JAMIE MIXCO

CASE NUMBER: C1223754

DEPUTY: ED ARMENTA

## PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

### Vs.

## CRAIG CHANDLER                              ATTY: BRIAN MADDEN

| Proceedings: | Jury Selection | DAY 7 | page 1 of 3 |
|---|---|---|---|

| | |
|---|---|
| 9:55 am | Court is in session with all above parties present, including the panel of prospective jurors. The clerk calls 1 prospective juror name and he is seated in the box. |
| 9:56 am | The Court conducts voir dire. |
| 10:01 am | (not reported) A sidebar conference is held with prospective juror #37. |
| 10:03 am | Court excuses prospective juror #37 for cause.  The clerk calls 1 prospective juror name and he is seated in the box. |
| 10:04 am | The Court continues voir dire. |
| 10:13 am | (not reported) A sidebar conference is held with prospective juror #86. |
| 10:20 am | Defense attorney Madden conducts voir dire. |
| 10:38 am | (not reported) A sidebar conference is held with prospective juror #10. |
| 10:46 am | Defense attorney Madden continues voir dire. |
| 10:51 am | Deputy District Attorney Filo conducts voir dire. |
| 10:57 am | Court admonishes and excuses the panel of prospective jurors for the morning break. |
| 10:58 am | Outside the presence of the panel of prospective jurors, Court is in session with all parties present, including prospective juror #86.  Court orders prospective juror #86 to return to court at 11:15 am.  Court places on the record previous sidebar conference discussions, as stated. Counsels are heard on the matter, as stated. |
| 11:08 am | Court is in recess. |
| 11:28 am | Outside the presence of the panel of prospective jurors, Court is in session with all parties present, including prospective juror #86.  The Court and counsels question prospective juror #86, as stated.  Court excuses prospective juror #86 for hardship. |
| 11:37 am | Outside the presence of the panel of prospective jurors, Court is in session with all parties present.  Court addresses an issue regarding prospective juror #10, as stated.  Counsels are heard on the matter. |

1105

People vs. Chandler                                              7/9/13
C1223754                                                    page 2 of 3

| | |
|---|---|
| 11:45 am | Court is in session with all above parties present, including the panel of prospective jurors.  Court addresses prospective juror #10 regarding his ability to be fair in this case, as stated.<br>Peremptory challenges are exercised as follows:<br>The Defense excuses prospective jurors #8, 46, and 72.<br>The People excuse prospective jurors #71, 61, and 34. |
| 11:51 am | The clerk calls 7 prospective juror names and they are seated in the box. |
| 11:54 am | Court admonishes and excuses the panel of prospective jurors for the lunch break. |
| 1:56 pm | Court is in session with all above parties present, including the panel of prospective jurors.<br>The Court conducts voir dire. |
| 2:07 pm | (not reported) A sidebar conference is held with prospective juror #78. |
| 2:11 pm | (not reported) A sidebar conference is held with prospective juror #92. |
| 2:14 pm | Court excuses prospective jurors #78 and #92 for cause. |
| 2:15 pm | The clerk calls 2 prospective juror names and they are seated in the box.<br>The Court conducts voir dire. |
| 2:22 pm | (not reported) A sidebar conference is held with prospective juror #45. |
| 2:26 pm | (not reported) A sidebar conference is held with prospective juror #60. |
| 2:29 pm | Court excuses prospective jurors #60, due to his ineligibility to serve. |
| 2:30 pm | Defense attorney Madden conducts voir dire. |
| 2:45 pm | Deputy District Attorney Filo conducts voir dire. |
| 2:48 pm | (not reported) A sidebar conference is held. |
| 2:49 pm | Peremptory challenges are exercised as follows:<br>The Defense excuses prospective jurors #62, 38, and 10.<br>The People excuse prospective jurors #15, 55, and 25. |
| 2:54 pm | The clerk calls 7 prospective juror names and they are seated in the box. |
| 2:57 pm | Court admonishes and excuses the panel of prospective jurors for the afternoon break. |
| 3:22 pm | Court is in session with all above parties present, including the panel of prospective jurors.<br>The Court conducts voir dire. |
| 3:31 pm | (not reported) A sidebar conference is held with prospective juror #84. |
| 3:33 pm | Court excuses prospective juror #84 for cause.<br>The clerk calls 1 prospective juror name and he is seated in the box.  The Court conducts voir dire. |
| 3:43 pm | Defense attorney Madden conducts voir dire. |
| 4:04 pm | Deputy District Attorney Filo conducts voir dire. |
| 4:05 pm | Peremptory challenges are exercised as follows:<br>The Defense excuses prospective jurors #88, 45, 32, and 74.<br>The People excuse prospective juror #48. |
| 4:10 pm | The clerk swears in twelve jurors to try the cause. |
| 4:11 pm | (not reported) A sidebar conference is held. |

1106

People vs. Chandler                                              7/9/13
C1223754                                                  page 3 of 3

| | |
|---|---|
| 4:12 pm | The clerk calls 7 prospective juror names and they are seated in the box. |
| 4:15 pm | The Court conducts voir dire. |
| 4:20 pm | Court admonishes and excuses the panel of prospective jurors and orders them to return to the jury assembly room tomorrow, July 10, 2013 at 9:00 am. |
| 4:22 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #82.  Court addresses prospective juror #82 and excuses him for cause. |
| 4:23 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #85.  Court addresses prospective juror #85 and orders him to return tomorrow at 9:00 am. |
| 4:24 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #73.  Court addresses prospective juror #73 and excuses her as she is not eligible to serve. |
| 4:26 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #56.  Court addresses prospective juror #56 and excuses her for hardship. |
| 4:28 pm | Outside the presence of the panel of prospective jurors, Court is in session with all parties present including prospective juror #83.  Court addresses prospective juror #83 and excuses him for cause. |
| 4:29 pm | Outside the presence of any prospective juror, Court places on the record previous sidebar conference discussions, as stated. |
| 4:32 pm | Court is in recess. |

1107

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

CASE NO.   C1223754
CEN        12001535

PEOPLE VS. CRAIG RICHARD CHANDLER
L.K.A.     1361 N SAN PEDRO ST
           SAN JOSE, CA 95110
JUDGE      HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO
DEF. ATTY. MADDEN, BRIAN (G)

DATE       07/10/2013     9:00 AM  DEPT.  37
           10/25/1976
CLERK      E. DE SANTIAGO
HEARING    JURY TRIAL                EBK966  M
AGENCY     SJ– 04313–  -UNKNOWN
STATUS     I-SET-NBA
           APO                        TW  Y

D.A.  A. FILO

CHARGES
F(001) PC288(A)          F(002) PC288(A)
F(003) PC288(A)          F(004) PC288(A)       VIOLATION DATE
F(005) PC288(A)                                09/01/2010

NEXT APPEARANCE                                7-11-13  9:00am  Dept 37

☑ Defendant Present ☐ Not Present        ☐ Atty Present    AR

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info     ☐ Atty ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent  ☐ Interpreter                          ☐ AD / PD / IDO / Special App
☐ PC977 ☐ Filed ☐ On File ☐ Reprtr. Adv / Wav  ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated                        ☐ Sworn
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv            ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited    Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def War Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence            ☐ Ref'd_____  ☐ $_____   Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F  ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐_____Relieved_____Appt'd                      ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg  ☐ BW Ordered ☐_____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion                                ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal      ☐ Subm on Report ☐ Found_____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed_____           ☐ Max Term_____ ☐ Committed_____  Bond $_____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to_____ ☐ DA Stmt Filed  Four alternate jurors Swan
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____                                                      ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking  Jury ordered to return on 7-15-13 at 9:00am   ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees  ☐ PC29800/29805/30305/666/VC14807.8
☐ Wav Right to _____ ☐ Counsel ☐ Court ☐ Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____  ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
☐ Sent Suspended                         ☐ PROBATION DENIED     COUNT_____ $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT_____ $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  AIDS / CPP $_____ + PA $_____ SORP_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF $_____ + PA $_____ EMAT $_____
☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF / RF $_____ Add'l RF $_____ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA $_____ CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $_____ TOTAL DUE $_____
☐ DVPO issued / mod /term'd Exp _____             ☐ Victim Present  ICIN $_____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact _____ ☐ DSA thru APO / DOR / CRT ☐ Filed  AR $_____ $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $_____ FINE STAYED
☐ Stay away from _____                              DV $_____ ☐ Committed @ $_____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $_____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF825/CPF510S_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education    PF/INVEST $_____ ☐ PSUP $_____/Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____            ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence
Count  F/M      Violation      Prison Term / Yrs  Enhancement / Priors    Yrs / Styd / Strkn   County Jail
                                                                                               HRS / DAYS / MOS

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL **

Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Total

CTS = _____ ☐ ACT + _____ ☐ 4019 ☐ ½ ☐ ¼ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____ All / Except ☐ Consec / Conc to NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____ 1108
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process_____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-10-13                                CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO                       DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                             ATTY: BRIAN MADDEN

| Proceedings: | Jury Selection | DAY 8 | page 1 of 1 |
|---|---|---|---|

9:18 am    Court is in session with all above parties present, including the panel of prospective jurors. The Court conducts voir dire.

9:34 am    Defense attorney Madden conducts voir dire.

10:00 am   (not reported) A sidebar conference is held.

10:02 am   Court orders the panel of prospective jurors to exit the courtroom momentarily. Court goes off the record.

10:10 am   Outside the presence of the panel of prospective jurors, Court is in session with all parties present. Court states that counsels have stipulated to four alternate jurors, as stated. The four alternate jurors are prospective jurors #9, 76, 64, and 91.

10:11 am   Court goes off the record momentarily in order to retrieve the panel of prospective jurors.

10:13 am   Court is in session with all above parties present, including the panel of prospective jurors.
           The clerk swears in four alternate jurors to try the cause.
           The Court thanks and excuses the remainder of the panel of prospective jurors. The panel exits the courtroom.
           The Court pre-instructs the Jury.

10:27 am   Court goes off the record momentarily.
           (not reported) Court addresses the Jury and reviews with them the jury trial process and scheduling.

10:48 am   Back on the record, Court admonishes and excuses the Jury until Monday, July 15, 2013 at 9:00 am, ordered to return to the Jury assembly room.

10:54 am   Outside the presence of the Jury, Court is in session with all parties present. Court orders counsels to return tomorrow at 9:00 am for further motions in limine.

10:56 am   Court is in recess.

1109

| | |
|---|---|
| SUPERIOR COURT | CASE NO. C1223754 |
| 190 W. HEDDING STREET | CEN 12001535 |
| SAN JOSE CA 95110 | DATE 07/11/2013 9:00 AM DEPT. 37 |
| PEOPLE VS. CRAIG RICHARD CHANDLER | 10/25/1976 |
| L.K.A. 1361 N SAN PEDRO ST | CLERK E. DE SANTIAGO EBK966 M |
| SAN JOSE, CA 95110 | HEARING JURY TRIAL / Further Hearing |
| JUDGE HON. ARTHUR BOCANEGRA | AGENCY SJ- 04313- -UNKNOWN |
| REPORTER J. MIXCO | STATUS I-SET-NBA TW Y |
| DEF. ATTY. MADDEN, BRIAN (G) | |
| CHARGES D.A. A. FILO | APO |

CHARGES
F(001) PC288(A)    F(002) PC288(A)    VIOLATION DATE
F(003) PC288(A)    F(004) PC288(A)    09/01/2010
F(005) PC288(A)

NEXT APPEARANCE  7-15-13  9:00 am  Dept 37

☑ Defendant Present ☐ Not Present    ☑ Atty Present  AR                    AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent    ☐ Interpreter _____    ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rept ☐ FAR/ ERC    ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv    ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC    ☐ Bail Exonerated ☐ Forfeited    Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury    ☐ Reassumption filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence    ☐ Ref'd _____    $ _____    Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F    ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't    SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd    ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg    ☐ BW Ordered $ _____    ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____    ☐ Doubt Decl Pursuant PC 1368    ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal    ☐ Subm on Report ☐ Found _____    ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____    ☐ Max Term _____ ☐ Committed _____    Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction    ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed    EC 402 hearing held.

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
    ☐ Add to Cal ☐ Vacate pending date
☐ Jail / Prison Term of _____    ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Dismissal / Striking _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term'd ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term Fee $ _____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____    ☐ PROBATION DENIED    COUNT ____ $ ____ + PA $ ____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period    COUNT ____ $ ____ + PA $ ____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs    AIDS / CPP $ ____ + PA $ ____ SORP _____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release    DPF $ ____ + PA $ ____ EMAT $ ____
☐ Perform ____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail    LAB $ ____ + PA $ ____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer    DRF / RF $ ____ Add'l HF $ ____ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ____ days    AEF $ ____ Original Fine $ ____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ____ Yrs    SECA/COPA $ ____ CTS PC2900.5 $ ____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05    ICMF $ ____ TOTAL DUE $ ____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present    ICIN $ ____ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact _____ ☐ DSA thru APO / DOR / CRT ☐ Filed    AR $ ____ $ ____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____    SHELTER $ ____ FINE STAYED _____
☐ Stay away from _____    DV $ ____ ☐ Committed @ $ ____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold    ATTY $ ____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm    ASF $25/CPF $10 $ ____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education    PF/INVEST $ ____ P/SUP $ ____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP    CJAF $129.75/$259.50 $ ____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____    ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein    Restit ☐ Gen $ ____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews    ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____
JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence

| Count | F/M | Violation | Prison Term / Fine | Enhancement / Priors | Yrs / Styd / Strkn | County Jail HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL ** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = _____ ☐ ACT + ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____  1110
☐ Bail CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process _____  AM/PM  Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION: ORIGINAL-FILE GREEN-DOR BLUE-SHERIFF PURPLE-DA

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-11-13
CLERK: EDGAR DE SANTIAGO
REPORTER: JAMIE MIXCO

CASE NUMBER: C1223754
DEPUTY: ED ARMENTA

## PEOPLE OF THE STATE OF CALIFORNIA

Vs.

D.D.A: ALISON FILO

### CRAIG CHANDLER

ATTY: BRIAN MADDEN

Proceedings:  Further Hearing

DAY 9

page 1 of 2

| Time | Proceedings |
|---|---|
| 9:17 am | Outside the presence of the Jury, Court is in session with all parties present.  Court states that it will proceed with an EC 402 hearing. Hilda Keller is sworn and takes the stand on behalf of the People. |
| 9:30 am | Deputy District Attorney (D.A.) Filo conducts direct examination. Court asks witness Keller to exit the courtroom momentarily.  Court addresses counsels and gives them the opportunity to make statements or arguments before cross examination, as stated. |
| 9:33 am | Witness Keller is brought back into the courtroom. |
| 9:46 am | Hilda Keller resumes the stand, still under oath. Defense attorney Madden conducts cross examination. |
| 9:50 am | Deputy D.A. Filo conducts redirect examination. Court asks witness Keller to exit the courtroom momentarily. |
| 9:53 am | Defense attorney Madden presents argument, as stated. |
| 9:55 am | Deputy D.A. Filo presents argument, as stated. |
| 10:01 am | Defense attorney Madden presents argument, as stated. |
| 10:04 am | Deputy D.A. Filo presents argument, as stated. Court rules as follows:  It will allow witness Keller to testify regarding the incident in the classroom.  It will not allow reference to sexual harassment or the other four incidents, as stated. Court and counsels address and discuss issues relating to testimony from witness Keller, as stated. |
| 10:13 am | Witness Keller is brought back into the courtroom. Deputy D.A. Filo addresses witness Keller and explains to her what she will be allowed to testify about, as stated. Court is heard on the matter, as stated. Defense attorney Madden is heard on the matter, as stated. |
| 10:17 am | Court excuses witness Keller. Court takes the morning recess. |
| 10:37 am | Outside the presence of the Jury, Court is in session with all parties present. |

1111

People vs. Chandler                                    7/11/13
C1223754                                               page 2 of 2

                    Deputy District Attorney (D.A.) Filo addresses the issue of
                    statements made by Lyn Vijayendran, as stated.
10:43 am            Defense attorney Madder is heard on the matter, as stated.
10:48 am            Court and counsels discuss the matter, as stated.
11:01 am            Court states its ruling on the record, as stated.
11:05 am            Court orders counsels to return on Monday, July 15, 2013 at
                    9:00 am.
                    Court is in recess.

# CONFIDENTIAL

## MAY NOT BE EXAMINED WITHOUT COURT ORDER

## THE PEOPLE

V.

## CRAIG RICHARD CHANDLER

COURT OF APPEAL NUMBER:    H040429

CASE NUMBER:    C1223754

**TRANSCRIPT OF VIDEO CD OF ISABELLE DOE**
**TRANSCRIPT OF VIDEO CD OF LAURIE DOE**
**TRANSCRIPT OF VIDEO CD OF BECKY DOE**
**TRANSCRIPT OF VIDEO CD OF ARLET DOE**
**TRANSCRIPT OF VIDEO CD OF WENDY DOE**

| SEALED PAGES | 1113 | THRU | 1146 |
|---|---|---|---|
| | 1157 | | 1179 |
| | 1180 | | 1214 |
| | 1224 | | 1305 |
| | 1310 | | 1354 |

No. C1223754     Exh # 1A

[X] Identification     [X] Admitted

PEOPLE     vs CHANDLER

Date JUL 15 2013     Clerk STAFFORD

3863-A REV 2/86

1113

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA  95110

PEOPLE vs. CRAIG RICHARD CHANDLER

L.K.A.     1361 N SAN PEDRO ST
SAN JOSE, CA 95110

JUDGE    HON. ARTHUR BOCANEGRA

REPORTER  J. MIXCO

DEF. ATTY.  MADDEN, BRIAN  (G)

CHARGES

CASE NO.    C1223754
CEN          12001535

DATE    07/15/2013    9:00 AM    DEPT.    37
10/25/1976
CLERK    STAFFORD                EBK966  M
HEARING   JURY TRIAL
AGENCY    SJ- 04313-   -UNKNOWN
STATUS    I-SET-NBA                TW  Y

D.A.  A. FILO
APO

F(001) PC288(A)        F(002) PC288(A)
F(003) PC288(A)        F(004) PC288(A)          VIOLATION DATE
F(005) PC288(A)                                   09/01/2010

NEXT APPEARANCE     07-16-13   9am   D37

☑ Defendant Present ☐ Not Present    ☑ Atty Present    A/R                    AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info    ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent    ☐ Interpreter _____    ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprt. Adv / Wav  ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv    ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited      Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal  ☐ Further ☑ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence    ☐ Ref'd _____    $_____ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F  ☐ DADS/ Prop 36 ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd    ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg    ☐ BW Ordered $_____    ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____    ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Held ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____    ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____    ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____    ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $_____  ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____    ☐ PROBATION DENIED  COUNT ___ $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT ___ $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs  AIDS / CPP  $_____ + PA $_____ SORP_____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release  DPF  $_____ + PA $_____ ☐ EMAT $_____
☐ Perform_____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB  $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23800 ☐ HTO ☐ Re-refer  DRF /RF  $_____ Add'l RF $_____ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF  $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA  $_____ CTS PC2900.5  $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF  $_____ TOTAL DUE  $_____
☐ DVPO issued / mod /term'd Exp _____    ☐ Victim Present  ICIN  $_____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR  $_____ $_____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER  $_____ FINE STAYED _____
☐ Stay away from _____    DV  $_____ Committed @ $_____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY  $_____ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10$_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST  $_____ P/SUP $_____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attach'm't Pg ☐ CDCR/Parole credit restit from Def's earnings ☐ Blended Sentence      County Jail
Count  F/M       Violation       Prison Term / Yrs       Enhancement / Priors       Yrs / Styd / Strkn    HRS / DAYS / MOS

| | | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ** | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Enhancement  Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Enhancement   Yrs/S   Total

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ½ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____ 1147
☐ Pre-process _____ _____ AM/PM ☐ Stay / Surrender / Transport to _____ ☐ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☑ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:   ORIGINAL - FILE    GREEN - DOC    BLUE - CJIC /DOC    PURPLE - PROBATION    YELLOW - DEFENDANT

## SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SANTA CLARA
#### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-15-13                          CASE NUMBER: C1223754
CLERK: C. STAFFORD                      DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

---

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

           Vs.

**CRAIG CHANDLER**                              ATTY: BRIAN MADDEN

---

| Proceedings: | Openings/Evidence | DAY 10 | page 1 of 4 |

| | |
|---|---|
| 9:39 am | Court convenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present. |
| 9:42 am | Ms. Filo makes an opening statement on behalf of the People. |
| 10:09 am | Mr. Madden makes an opening statement on behalf of the Defense. |
| 10:24 am | Bench conference (not reported) |
| 10:25 am | Mr. Madden resumes his opening statement. |
| 10:31 am | The Court excuses the jury for the morning recess. |
| 10:32 am | Outside the presence of the jury, the Court admonishes the observers in the gallery about cellular phones in the courtroom. |
| | Recess |
| 10:49 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present. |
| | Luisana Doe is called, sworn and examined, by Ms. Filo, on behalf of the People. |
| 11:17 am | Mr. Madden conducts cross examination. |
| 11:47 am | Ms. Filo conducts re-direct examination. |

1148

People vs. Chandler                                          7/15/13
C1223754                                                page 2 of 4

11:53 am    The Court admonishes and excuses the jury for the midday
            recess.

            Recess

1:37 pm     Court reconvenes on the record, with all above listed
            parties, twelve sworn jurors and four alternate jurors
            present. Investigating Officer, Det. Sean Pierce, is also
            present.

            Luisana Doe resumes the stand and remains under oath.

            Mr. Madden conducts re-cross examination.

            The following item is marked for identification:
            Defense Exhibit B - 1pg. Document - Attendance Record of
                        Isabell Doe

1:45 pm     Ms. Filo conducts further re-direct examination.

1:48 pm     The Court thanks and excuses Luisana Doe; subject to
            recall.

1:49 pm     Isabell Doe is called, sworn and examined, by Ms. Filo, on
            behalf of the People.

2:18 pm     Mr. Madden moves the Court to have Defense Exhibits A1-A13
            marked for identification. Defense's motion is granted.

2:19 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

            The following items are referred to during cross
            examination:
            Exhibit A1 - Enlarged, color photo of a classroom (rear)
            Exhibit A2 - Enlarged, color photo of teacher's desk
            Exhibit A3 - Enlarged, color photo of a teacher's desk
                        (close-up, side view)
            Exhibit A4 - Enlarged, color photo of an open classroom
                        door
            Exhibit A5 - Enlarged, color photo of a wooden cabinet
            Exhibit A6 - Enlarged, color photo of the contents of an
                        open, wooden cabinet
            Exhibit A7 - Enlarged, color photo of the contents along
                        the wall of a classroom
            Exhibit A8 - Enlarged, color photo of a classroom
                        (alternate view)
            Exhibit A9 - Enlarged, color photo of six adjoining,
                        student desks
            Exhibit A10 - Enlarged, color photo of a classroom
                        (left corner)
            Exhibit A11 - Enlarged, color photo of a corner in a
                        classroom

1149

|  |  |
|---|---|
| | Exhibit A12 - Enlarged, color photo of classroom whiteboards |
| | Exhibit A13 - Enlarged, color photo of a classroom (view from center) |
| 2:49 pm | The Court thanks and excuses the jury for the afternoon recess. |
| | Recess |
| 3:14 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present. |
| | Isabell Doe resumes the stand and remains under oath. |
| | Mr. Madden resumes cross examination of the witness. |
| 3:36 pm | Bench conference (not reported) |
| 3:37 pm | Mr. Madden resumes cross examination. |
| 3:42 pm | Ms. Filo conducts re-direct examination. |
| 3:44 pm | The Court thanks and excuses Isabell Doe. |
| | Brief recess |
| 3:47 pm | The following items are marked for identification: People's Exhibit #1 - Audio & video disc of police interview with Isabell Doe  People's Exhibit #1A - Written transcript of Exhibit #1 |
| | Copies of People's Exhibit #1A are published to the jury. |
| 3:49 pm | People's Exhibit #1 is played for the jury. |
| 4:23 pm | Viewing is completed and transcripts are collected. |
| | The Court admonishes and excuses the jury panel for the evening. Similarly, the jury panel is ordered to return on Tuesday, July 16, 2013, at 9:00 am, to the Jury Assembly Room. |
| 4:25 pm | Outside the presence of the jury, the Court memorializes discussion held during a previously conducted bench conference. |
| | Mr. Madden addresses the Court, as stated on the record. |

1150

People vs. Chandler                                    7/15/13
C1223754                                            page 4 of 4

This matter is continued to Tuesday, July 16, 2013, at
9:00 am, in Department 37. With no additional issues
pending before the Court, the parties are excused.

The defendant's custodial status remains unchanged.

Court stands adjourned.

1151

| | | | | CASE NO. | C1223754 |
|---|---|---|---|---|---|
| SUPERIOR COURT | | | | CEN | 12001535 |
| 190  W. HEDDING STREET | | DATE | 07/16/2013     9:00 AM | DEPT. | 37 |
| SAN JOSE CA 95110 | | | 10/25/1976 | | |
| PEOPLE VS.   CRAIG RICHARD CHANDLER | | CLERK | STAFFORD | | EBK966 M |
| L.K.A.     1361 N SAN PEDRO ST | | HEARING | JURY TRIAL | | |
| SAN JOSE, CA 95110 | | AGENCY | SJ- 04313–  -UNKNOWN | | |
| JUDGE     HON. ARTHUR BOCANEGRA | | STATUS | I-SET-NBA | | TW    Y |
| REPORTER    J. MIXCO | | | | | |
| DEF. ATTY.   MADDEN, BRIAN (G) | D.A.   A. FILO | | APO | | |
| CHARGES   F(001) PC288(A) | F(002) PC288(A) | | | | VIOLATION DATE |
| F(003) PC288(A) | F(004) PC288(A) | | | | 09/01/2010 |
| F(005) PC288(A) | | | | | |

NEXT APPEARANCE ___07-17-13   9am   D37___

☑ Defendant Present ☐ Not Present          ☑ Atty Present   A/R _____ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info   ☐ Arr ☐ Plea. ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter _____ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav  ☐ Ball/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☑ Further ☑ Jury ☐ CT ☐ Peo / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Ref'd _____  _____ Costs Within 30 Days to Court
☐ Ref / Appt PD / IDO / IDO ☐ Con Ded ☐ Adm A / F  ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____Relieved_____ Appt'd  ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg  ☐ BW Ordered $_____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____ to _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐DA Stmt Filed _____

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP _____
☐ Jail / Prison Term of _____  ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking _____  ☐ Subm time of Sent ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term'd ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term   Fee $_____ ☐ Guilty Plea Rendered
☐ Walves Referral ☐ APO Full Rpt ☐ CR110 Issued  ☐ Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____        ☐ PROBATION DENIED   COUNT___ $_____ + PA $_____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT___ $_____ + PA $_____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs  AIDS / CPP $_____ + PA $_____ SORP_____
☐ Report to APO within _____ Days . ☐ Terminated ☐ Upon Release  DPF $_____ + PA $_____ EMAT $_____
☐ Perform_____Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB $_____ + PA $_____
☐ Not drive w/o valid DL & Ins ☐ DRF AV23600 ☐ HTO ☐ Re-refer  DRF /RF $_____ Add'l RF $_____ Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos· Enroll within _____ days  AEF $_____ Original Fine $_____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs  SECA/COPA $_____ CTS PC2900.5 $_____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $_____ TOTAL DUE $_____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present  ICIN $_____ ☐ Payments Granted / Modified
☐ No Contact· ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR $_____ $_____ / Mo beginning_____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $_____ FINE STAYED_____
☐ Stay away from _____  DV $_____ Committed @ $_____/day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY· $_____ Consec/Conc to_____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10 $_____ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $_____ P/SUP $_____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $_____ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $_____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence       County Jail

| Count | F/M | Violation | Prison Term / M | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|

**** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ****

DOC: * COURT ORDERS THAT DEFT. BE ALLOWED A DAILY SHOWER
AND SHAVE, UNTIL TRIAL END.

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____ CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/RP____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to ___
☐ Bal CJ Susp ☐ All but _____Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process_____ AM/PM ☐ Stay / Surrender / Transport to_____ @_____ AM/PM or Sooner
☑ REMANDED-BAIL $_____ ☑ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-16-13
CLERK: C. STAFFORD
REPORTER: JAMIE MIXCO

CASE NUMBER: C1223754
DEPUTY: ED ARMENTA

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                    ATTY: BRIAN MADDEN

| Proceedings: | Evidence | DAY 11 | page 1 of 4 |
| --- | --- | --- | --- |

| | |
| --- | --- |
| 9:15 am | Court convenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce is also present. |
| | Kim To is called, sworn and examined, by Ms. Filo, on behalf of the People. Ms. To is assisted by Cantonese Language Interpreter, Ken Quan. |
| 9:29 am | The following item is published to the jury and will be subsequently marked as People's Exhibit #2: Exhibit #2 - Color photo of a child's, hooded jacket |
| 9:49 am | Mr. Madden conducts cross examination on behalf of the Defense. |
| 9:55 am | Ms. Filo conducts re-direct examination. |
| 9:56 am | The Court thanks and excuses Ms. To. |
| | Bench conference (not reported) |
| 9:57 am | Becky Doe is called, sworn and examined, by Ms. Filo, on behalf of the People. |
| 10:15 am | Mr. Madden conducts cross examination on behalf of the Defense. |
| 10:27 am | The Court admonishes and excuses the jury for the morning recess. |
| | Recess |
| 10:52 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors |

1153

People vs. Chandler                                      7/16/13
C1223754                                            page 2 of 4

                    present. Investigating Officer, Det. Sean Pierce is also
                    present.

                    Becky Doe resumes the stand and remains under oath.

                    Ms. Filo conducts re-direct examination.

10:56 am            The Court thanks and excuses Becky Doe; subject to recall.

10:57 am            Detective Sean Pierce, San Jose Police Department, is
                    called, sworn and examined, by Ms. Filo, on behalf of the
                    People.

11:14 am            Bench conference (not reported)

11:16 am            The Court addresses witness testimony and scheduling for
                    the remainder of today's proceedings. Similarly, the Court
                    admonishes and excuses the jury for the midday recess.

                    Outside the presence of the jury, the Court informally
                    discusses, with Counsel, scheduling and trial housekeeping
                    issues.

                    The parties are excused until 1:30pm.

                    Recess

1:37 pm             Court reconvenes on the record, with all above listed
                    parties, twelve sworn jurors and four alternate jurors
                    present. Investigating Officer, Det. Sean Pierce is also
                    present.

1:38 pm             Lyn Vijayendran is called, sworn and examined, by Ms. Filo,
                    on behalf of the People.

                    The following item is marked for identification:
                    People's Exhibit #3 - 3pg. Document - Handwritten notes

1:55 pm             Mr. Madden conducts cross examination on behalf of the
                    Defense.

1:57 pm             The following item is marked for identification:
                    Defense Exhibit C - 4pg. Document - Typewritten notes

1:59 pm             Bench conference (not reported)

2:00 pm             Cross examination of the witness resumes.

2:11 pm             Bench conference (not reported)

2:14 pm             Cross examination of the witness resumes.

2:26 pm             Bench conference (not reported)

                                                          1154

People vs. Chandler                                          7/16/13
C1223754                                                page 3 of 4

2:29 pm     Cross examination of the witness resumes.

2:31 pm     Bench conference (not reported)

2:32 pm     Cross examination of the witness resumes.

2:35 pm     The Court admonishes and excuses the jury for the afternoon
            recess.

2:38 pm     Outside the presence of the jury and Ms. Vijayendran and
            with all above listed parties, still, present, the Court
            memorializes  discussion  held  during  a  previous  bench
            conference.

2:39 pm     The Court hears arguments by the People and Defense, as
            stated on the record.

2:54 pm     Eric Geffon, Attorney at Law, addresses the Court, as
            stated on the record.

2:55 pm     The Court makes its ruling, over the objection of Defense
            Counsel, as stated on the record.

            Recess

3:14 pm     Court reconvenes on the record, with all above listed
            parties, twelve sworn jurors and four alternate jurors,
            again, present. Investigating Officer, Det. Sean Pierce is
            also present.

            Lyn Vijayendran resumes the stand and remains under oath.

            Ms. Filo conducts re-direct examination.

3:21 pm     Mr. Madden conducts re-cross examination.

3:22 pm     Bench conference (not reported)

3:26 pm     Re-cross examination of the witness resumes.

3:29 pm     The Court thanks and excuses Lyn Vijayendran; subject to
            recall.

3:30 pm     Lea Perry is called, sworn and examined, by Ms. Filo, on
            behalf of the People.

3:43 pm     Bench conference (not reported)

            Both Counsel stipulate that the People's copy of Isabell
            Doe's Attendance Record may be substituted for Defense
            Exhibit B.

3:44 pm     Direct examination of the witness resumes.

1155

People vs. Chandler                                          7/16/13
C1223754                                                 page 4 of 4

3:48 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

3:57 pm     Ms. Filo conducts re-direct examination.

3:59 pm     The Court thanks and excuses Ms. Perry.

4:01 pm     Both Counsel stipulate to submit a reading of Becky Doe's
            Preliminary Examination testimony.

            Bench conference (not reported)

            The Court orders that Becky Doe's Preliminary Examination
            testimony, pages 7-56, be marked for identification as
            People's Exhibit #4.

            Both Counsel stipulate that reading of Becky Doe's
            testimony need not be reported.

4:06 pm     Soula Ellenikiotis, Reader, takes the witness stand and
            commences reading of Becky Doe's testimony.

4:28 pm     The Court interrupts the reading of testimony and
            admonishes and excuses the jury panel for the evening.
            They are ordered to return on Wednesday, July 17, 2013,
            at 9:00am, to the Jury Assembly Room.

4:29 pm     Both Counsel stipulate that Defense's copy of Exhibit B be
            released to Mr. Madden.

            This matter is continued to Wednesday, July 17,
            2013, at 9:00 am, in Department 37. With no additional
            issues impending before the Court, the parties are excused.

            The defendant's custodial status remains unchanged.

            Court stands adjourned.

# EXHIBIT 1
# (Vol. 6)

COURT OF APPEAL, STATE OF CALIFORNIA,
IN AND FOR THE SIXTH APPELLATE DISTRICT

THE PEOPLE,

          *PLAINTIFF AND
          RESPONDENT,*

V.

          COURT OF APPEAL NO.: **H040429**

**CRAIG RICHARD CHANDLER**

          **VOL.**   <u>6</u>   of   <u>7</u>

          **PAGES**  <u>1,157</u>  thru  <u>1,455</u>

          *DEFENDANT AND
          APPELLANT.*

# <u>CLERK'S TRANSCRIPT</u>

CLERK'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SANTA CLARA.

SUPERIOR COURT NUMBER:  <u>**C1223754**</u>

HONORABLE    <u>**ARTHUR BOCANEGRA**</u>   , JUDGE

**APPEARANCES:**

**ATTORNEY GENERAL**                    COUNSEL FOR PLAINTIFF
**455 GOLDEN GATE AVENUE**             AND RESPONDENT
**ROOM 11000**
**SAN FRANCISCO, CA 94102**

SIXTH DISTRICT APPELLATE PROGRAM      COUNSEL FOR DEFENDANT
100 NORTH WINCHESTER BLVD, SUITE 310   AND APPELLANT
SANTA CLARA, CA 95050

NOTICE OF APPEAL FILED     <u>November 22, 2013</u>

NOTICE OF COMPLETION     <s>JAN 2 9 2014</s>

# CONFIDENTIAL

## MAY NOT BE EXAMINED WITHOUT COURT ORDER

## THE PEOPLE

### V.

## CRAIG RICHARD CHANDLER

COURT OF APPEAL NUMBER:     H040429

CASE NUMBER:          C1223754

**TRANSCRIPT OF VIDEO CD OF ISABELLE DOE**
**TRANSCRIPT OF VIDEO CD OF LAURIE DOE**
**TRANSCRIPT OF VIDEO CD OF BECKY DOE**
**TRANSCRIPT OF VIDEO CD OF ARLET DOE**
**TRANSCRIPT OF VIDEO CD OF WENDY DOE**

| SEALED PAGES | 1113 | THRU | 1146 |
|---|---|---|---|
| | 1157 | | 1179 |
| | 1180 | | 1214 |
| | 1224 | | 1305 |
| | 1310 | | 1354 |

No. C1223754   Exh # 5A

[X] Identification   [X] Admitted

PEOPLE   vs CHANDLER

Date JUL 1 7 2013   Clerk STAFFORD

3863-A REV 2/86

1157

No. C1223754    Exh # 6A

☒ Identification    ☒ Admitted

PEOPLE    vs CHANDLER

Date JUL 17 2013    Clerk STAFFORD

3863-A REV 2/86

1180

| | | | | CASE NO. | C1223754 |
|---|---|---|---|---|---|
| SUPERIOR COURT | | | | CEN | 12001535 |
| 190  W. HEDDING STREET | | DATE | 07/17/2013   9:00 AM | DEPT. | 37 |
| SAN JOSE CA  95110 | | | | | |
| PEOPLE VS. | CRAIG RICHARD CHANDLER | | 10/25/1976 | | |
| L.K.A. | 1361 N SAN PEDRO ST | CLERK | STAFFORD | | EBK966 M |
| | SAN JOSE, CA 95110 | HEARING | JURY TRIAL | | |
| JUDGE | HON. ARTHUR BOCANEGRA | AGENCY | SJ– 04313–   -UNKNOWN | | |
| REPORTER | J. MIXCO | STATUS | I-SET-NBA | | TW   Y |
| DEF. ATTY. | MADDEN, BRIAN (G) | D.A. A. FILO | APO | | |
| CHARGES | F(001) PC288(A) | F(002) PC288(A) | | | VIOLATION DATE |
| | F(003) PC288(A) | F(004) PC288(A) | | | 09/01/2010 |
| | F(005) PC288(A) | | | | |

NEXT APPEARANCE: 07-18-13   9am   D37

☑ Defendant Present  ☐ Not Present  ☐ Atty Present   A/R _____ ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Compl/Info  ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent  ☐ Interpreter _____  ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprt. Adv / Wav  ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC  ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv  ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC  ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☑ Further ☐ Jury ☐ CT ☐ Pea / Def Wav Jury  ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence  ☐ Ref'd _____  ☐ $ _____ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F  ☐ APO / DADS/ Prop 36  ☐ P36 Re-Assm't  SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd  ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg. _____  ☐ BW Ordered _____ ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____  ☐ Doubt Decl Pursuant PC 1368  ☐ No Cite, Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal  ☐ Subm on Report ☐ Found _____  ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____  ☐ Max Term _____ ☐ Committed _____  ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction  ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5 ☐ DA Stmt Filed _____

PLEA CONDITIONS: ☐ None  ☐ No State Prison  ☐ PC17 after 1 Yr Prob  ☐ Includes VOP _____
☐ Jail / Prison Term of _____  ☐ Add to Cal  ☐ Vacate pending date
☐ Dismissal / Striking _____  ☐ Subm time of Sent  ☐ Harvey Stip _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term ☐ PG ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 Issued  Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #_____
☐ Sent Suspended _____ ☐ PROBATION DENIED  COUNT _____ $ _____ + PA $ _____ ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period  COUNT _____ $ _____ + PA $ _____ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs  AIDS / CPP $ _____ + PA $ _____  SORP _____
☐ Report to APO within _____ Days  ☐ Terminated ☐ Upon Release  DRF $ _____ + PA $ _____ EMAT $ _____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail  LAB $ _____ + PA $ _____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer  DRF/ RF $ _____ Add'l RF $ _____ Susp'd PC1202.44/
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days  AEF $ _____ Original Fine $ _____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term _____ Yrs  SECA/COPA $ _____ CTS PC2900.5 $ _____
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05  ICMF $ _____ TOTAL DUE $ _____
☐ DVPO Issued / mod /term'd Exp _____ ☐ Victim Present  ICIN $ _____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed  AR $ _____ Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____  SHELTER $ _____ ☐ FINE STAYED
☐ Stay away from _____  DV $ _____ ☐ Committed @ $ _____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY $ _____ ☐ Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASF$25/CPF$10 $ _____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $ _____ ☐ P/SUP $ _____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $ _____ ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____  ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  ☐ Restit ☐ Gen $ ____ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews  ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence   County Jail

| Count | F/M | Violation | Prison Term / Mos | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. **

DOC:  * THE COURT ORDERS THAT DEFT. BE ALLOWED A DAILY SHOWER
AND SHAVE, UNTIL TRIAL END.

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|

CTS = _____ ACT + _____ ☐ 4019 ☐ PC2933.1 _____ Total  Total term _____  CDCR /PG 1170h 215
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec_____ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $ _____ ☑ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION:   ORIGINAL - FILE    GREEN - DOC    BLUE - CIJC / DOR    PURPLE - PROBATION    BROWN - DEFENDANT

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-17-13                    CASE NUMBER: C1223754
CLERK: C. STAFFORD               DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

### PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

### Vs.

### CRAIG CHANDLER                    ATTY: BRIAN MADDEN

| Proceedings: | Evidence | DAY 12 | page 1 of 4 |

| | |
|---|---|
| 9:21 am | Court convenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce is also present. |
| | Ms. Filo addresses the Court, as stated on the record. |
| 9:23 am | Soula Ellenikiotis, Reader, resumes the stand and reading of Becky Doe's testimony. |
| 9:43 am | Reading is completed. |
| 9:44 am | Laurie Doe is called, sworn and examined, by Ms. Filo, on behalf of the People. |
| 10:14 am | The Court admonishes and excuses the jury for the morning recess. |
| | Recess |
| 10:35 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce is also present. |
| | Laurie Doe resumes the stand and remains under oath. |
| 10:36 am | Mr. Madden conducts cross examination on behalf of the Defense. |
| 10:58 am | Ms. Filo conducts re-direct examination. |
| 11:00 am | The Court thanks and excuses Laurie Doe. |
| | Brief recess |

1216

People vs. Chandler                                    7/17/13
C1223754                                          page 2 of 4

11:01 am     The following items are marked for identification:
             People's Exhibit #5 - CD containing audio and video of
                              police interview with Laurie Doe

             People's Exhibit #5A - Written transcript of Exhibit #5

             Copies of People's Exhibit #5A are published to the jury.

11:05 am     CD is played for the jury.

11:25 am     Playing of the CD is completed and transcripts are
             collected.

             The following items are marked for identification:
             Exhibit #6 - CD containing audio and video of police
                          interview with Becky Doe.
             Exhibit #6A - Written transcript of Exhibit #6

             Copies of People's Exhibit #6A are published to the jury.

11:28 am     CD is played for the jury.

11:55 am     Playing of the CD is completed and transcripts are
             collected.

             The Court admonishes and excuses the jury for the midday
             recess.

             Recess

1:24 pm      Outside the presence of the jury and with all above listed
             parties and Investigating Officer, Det. Sean Pierce
             present, court reconvenes on the record.

             Ms. Filo addresses the Court, as stated on the record.

             Mr. Paul Matiasic, Attorney at Law, addresses the Court, as
             stated on the record.

             The Court hears arguments by the People and the Defense.

1:50 pm      The clerk is directed to summon the jury to the courtroom.

             Brief recess

1:53 pm      With the above listed parties and Investigating Officer,
             Det. Sean Pierce, still, present and twelve sworn jurors
             and four alternate jurors, now, present, court reconvenes
             on the record.

             Dr. Lynn is called, sworn and examined, by Ms. Filo, on
             behalf of the People.

People vs. Chandler                                    7/17/13
C1223754                                          page 3 of 4

2:05 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

2:25 pm     Ms. Filo conducts re-direct examination.

2:29 pm     The Court thanks and excuses Dr. Lynn.

2:30 pm     Mary Montgomery is called, sworn and examined, by Ms. Filo,
            on behalf of the People.

2:38 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

2:53 pm     Ms. Filo conducts re-direct examination.

            Mr. Madden conducts re-cross examination.

2:55 pm     The Court thanks and excuses Mary Montgomery.

2:56 pm     Bench conference (not reported)

2:57 pm     The Court discusses scheduling for the remainder of the
            day and subsequently admonishes and excuses the jury for
            afternoon recess.

            Recess

3:19 pm     Court reconvenes on the record, with all above listed
            parties, twelve sworn jurors and four alternate jurors
            present. Investigating Officer, Det. Sean Pierce is also
            present.

3:20 pm     Armando Lara is called, sworn and examined, by Ms. Filo, on
            behalf of the People.

3:33 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

4:00 pm     Ms. Filo conducts re-direct examination.

4:01 pm     The Court thanks and excuses Armando Lara.

            Similarly, the Court admonishes and excuses the jury for
            the evening. They are ordered to return on Thursday, July
            18, 2013, at 9:00am, in Department 37.

4:02 pm     Outside the presence of the jury and with all above listed
            parties and Investigating Officer, Det. Sean Pierce, still,
            present, Ms. Filo addresses the Court, as stated on the
            record.

4:04 pm     The Court hears arguments.

1218

People vs. Chandler                                    7/17/13
C1223754                                             page 4 of 4
_____

4:26 pm      The Court makes its ruling, as stated on the record.

             Ms. Filo addresses the court regarding an additional
             matter, as stated on the record.

             The Court hears additional arguments.

             The Court reserves its ruling to a later time. Both Counsel
             are ordered to return on Thursday, July 17, 2013, at
             9:00am.

             Similarly, this matter is continued to Thursday, July 17,
             2013, at 9:00 am, in Department 37.

             The defendant's custodial status remains unchanged.

             Court stands adjourned.

1219

| | |
|---|---|
| SUPERIOR COURT | CASE NO. C1223754 |
| 190  W. HEDDING STREET | CEN   12001535 |
| SAN JOSE CA 95110 | |

| | | |
|---|---|---|
| PEOPLE VS. CRAIG RICHARD CHANDLER | DATE | 07/18/2013   9:00 AM DEPT.  37 |
| L.K.A.   1361 N SAN PEDRO ST | 10/25/1976 | |
| SAN JOSE, CA 95110 | CLERK STAFFERD | EBK966 M |
| JUDGE   HON. ARTHUR BOCANEGRA | HEARING JURY TRIAL | |
| REPORTER J. MIXCO | AGENCY SJ– 04313– -UNKNOWN | |
| DEF. ATTY. MADDEN, BRIAN (G) | STATUS I-SET-NBA | TW   Y |
| | D.A.  A. FILO     APO | |
| CHARGES F(001) PC288(A) | F(002) PC288(A) | VIOLATION DATE |
| F(003) PC288(A); | F(004) PC288(A) | 09/01/2010 |
| F(005) PC288(A); | | |

NEXT APPEARANCE:  07-22-'3  9am  D37

☑ Defendant Present ☐ Not Present     ☐ Atty Present   A/R ............................................ AD / PD / IDO / Special Appr
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info   ☐ Atty ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter ................................ ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reprr. Adv / Wav   ☐ Bail/ OR/ SORP ☐ Rec'd Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv   ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited   Bond #
☐ Denies Priors/ Allegations/ Enhancements/Refusal   ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   ☐ Ref'd .................................................   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F   ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved      Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   ☐ BW Ordered $                           ☐ Stayed ☐ To Issue
☐ Hrg on Motion .........................................   ☐ Dublan Decl Pursuant PC 1368   ☐ BW Recalled/SOIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Submit on Report ☐ Found .........   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Dis ☐ Appointed   ☐ Max Term ............... ☐ Committed   ☐ Proof of ............................................
☐ Prelim Wav ☐ Certified to General Jurisdiction   ☐ MDA / COM Amended to
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)   ☐ Pur VC23103.5 ☐ DA Stmt Filed ....

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP .................   ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking .................................................   ☐ Subm time of Sent ☐ Harvey Stip .....
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSP ☐ Fines/Fees. ☐ PC29800/29805/30305/656/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses, ☐ Self-Incrimination, ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop.36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed, ☐ DEJ Granted / Rein / Term ☐ Fee $ ......... ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued   Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #
☐ Sent Suspended ....................... PROBATION DENIED   COUNT ............ + PA $ ........... Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT ............ + PA $ ........... ☐ PC2903.3
☐ COURT / ☐ FORMAL PROBATION GRANTED for ......... Days / Mos / Yrs   AIDS / CPP $ ........... + PA $ ........... SORP
☐ Report to APO within ......... Days ☐ Terminated ☐ Upon Release   DPF $ ........... + PA $ ........... EMAT $
☐ Perform ..... Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB $ ........... + PA $ ...........
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF $ ........... Add'l RF $ ......... Susp'd PC1202.44/4
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos   Enroll within ......... days   AEF $ ........... Original Fine $
☐ DL Susp/ Restr'd/ Rvk'd for ......... ☐ IID Not Ordered/ Rmv'd Term   SECA/COPA $ ........... CTS PC2900.5 $
☐ No contact with victim or family / co-defts unless appr by APO ☐ PC1202.05   ICMF $ ........... TOTAL DUE  $
☐ DVPO issued / mod /term'd Exp ...................... ☐ Victim Present   ICIN $ ........... Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR $ ........... $ / Mo beginning
☐ Not own/possess deadly weapons ☐ Destroy/return Weapon   SHELTER $ ........... FINE STAYED ................
☐ Stay away from ................................................   DV $ ........... Committed @ $ ....... /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY $ ........... Consec/Conc to ...........
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm.   ASF $25/CPF$10$ ..... Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P.INVEST $ ........... ☐ P/SUP $ ........... /Mo ☐ Waived
VOP: ☐ Adv ☐ Arr'd .......... ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $ 129.75/$259.50 $ ......... ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ........   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Sen $ ........... to ...........
☐ Co-terminous with ........................ ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: ................................................................

JAIL/PRISON ☐ See Attach'n Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence   County Jail
| Count - F/M | Violation | Prison Term / ☐ Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|
| | | | | |

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. **
DOC # THE COURT ORDERS THAT THE DEPT. BE ALLOWED A DAILY
SHOWER & SHAVE. UNTIL TRIAL END.

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = ........  ACT = ☐ 4019 ☐ ½ ☐ ⅓ ☐ ½   PC2933.1 ........ Total  Total term ..........   CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec .... All / Except ☐ PERP/ PSP/ ERP/ DRP/ Co Parole/ NP
☐ Sent Deemed Srv'd ☐ J Rpt to Parole/Prob w/in .......... ☐ Adv/ORD .......... Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to ..........
☐ Bal CJ Susp ☐ All but ......... Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU ........ 1228
☐ Pre-process ............................ AM/PM ☐ Stay / Surrender / Transport to ........ @ ........ AM/PM or Sooner
☑ REMANDED-BAIL $ .......... ☐ REMAIN AS SET ☑ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

DISTRIBUTION - ORIGINAL - FILE   GREEN - DOC   BLUE - CJIC / DOR   PURPLE - PROBATION   BROWN - DEFENDANT

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-18-13                          CASE NUMBER: C1223754
CLERK: C. STAFFORD                      DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                          ATTY: BRIAN MADDEN

| Proceedings: | Evidence | DAY 13 | page 1 of 3 |
|---|---|---|---|

| | |
|---|---|
| 9:24 am | Court convenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| 9:25 am | Noemi Gonzalez is called, sworn and examined, by Ms. Filo, on behalf of the People. |
| 9:42 am | Mr. Madden conducts cross examination on behalf of the Defense. |
| 9:50 am | Bench conference (not reported) |
| 9:52 am | Cross examination of the witness resumes. |
| 10:05 am | Bench conference (not reported) |
| 10:08 am | Cross examination of the witness resumes. |
| 10:21 am | Bench conference (not reported) |
| 10:23 am | Cross examination of the witness resumes. |
| 10:35 am | Ms. Filo conducts re-direct examination. |
| 10:46 am | The Court thanks and excuses Noemi Gonzalez. The Court admonishes and excuses the jury for the morning recess. |
| | Recess |
| 11:07 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| 11:08 am | Arleth Doe is called, sworn and examined, by Ms. Filo, on behalf of the People. |

1221

People vs. Chandler                                          7/18/13
C1223754                                                 page 2 of 3

| | |
|---|---|
| 11:40 am | The following item is referred to during examination and will be subsequently marked as People's Exhibit #7: Exhibit #7 - Hand-drawn picture |
| 11:52 am | The Court admonishes and excuses the jury for the midday recess. |
| | Recess |
| 1:43 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| | Arleth Doe resumes the stand and remains under oath. |
| | Direct examination of the witness resumes. |
| 1:50 pm | Mr. Madden conducts cross examination on behalf of the Defense. |
| 2:06 pm | Bench conference (not reported) |
| 2:08 pm | Cross examination of the witness resumes. |
| 2:39 pm | Bench conference (not reported) |
| 2:40 pm | Cross examination of the witness resumes. |
| 2:51 pm | Ms. Filo conducts re-direct examination. |
| 2:58 pm | Mr. Madden conducts re-cross examination. |
| 2:59 pm | The Court thanks and excuses Arleth Doe. The jury is admonished and excused for the afternoon recess. |
| | Recess |
| 3:20 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| | Hilda Keller is called, sworn and examined, by Ms. Filo, on behalf of the People. |
| 3:27 pm | The Court thanks and excuses Hilda Keller. |
| | The jury is asked, by the Court, to exit the courtroom and remain outside, until summoned. |
| 3:28 pm | Outside the presence of the jury, the Court addresses both Counsel, as stated for the record. |
| | The Court hears arguments. |

1222

People vs. Chandler                                      7/18/13
C1223754                                             page 3 of 3

3:37 pm     The jury is summoned to the courtroom.
            The Court discusses scheduling and other trial housekeeping
            matters.

3:40 pm     Similarly, the Court admonishes and excuses the jury for
            the evening. They are ordered to return on Monday, July 22,
            2013, at 9:00am, in Department 37.

            With no additional matters before the Court, the parties
            are excused. This matter is continued to Monday, July 22,
            2013, at 9:00am, in Department 37.

            The defendant's custodial status remains unchanged.

            Court stands adjourned.

1223

# <u>CONFIDENTIAL</u>

## MAY NOT BE EXAMINED WITHOUT COURT ORDER

### THE PEOPLE

### V.

### CRAIG RICHARD CHANDLER

COURT OF APPEAL NUMBER:     H040429

CASE NUMBER:     C1223754

TRANSCRIPT OF VIDEO CD OF ISABELLE DOE
TRANSCRIPT OF VIDEO CD OF LAURIE DOE
TRANSCRIPT OF VIDEO CD OF BECKY DOE
TRANSCRIPT OF VIDEO CD OF ARLET DOE
TRANSCRIPT OF VIDEO CD OF WENDY DOE

| SEALED PAGES | 1113 | THRU | 1146 |
|---|---|---|---|
| | 1157 | | 1179 |
| | 1180 | | 1214 |
| | 1224 | | 1305 |
| | 1310 | | 1354 |

No. C1223754      Exh # 8A

☒ Identification     ☒ Admitted

PEOPLE            vs CHANDLER

Date  JUL 2 2 2013    Clerk STAFFORD

3863-A REV 2/86

1224

| | |
|---|---|
| **SUPERIOR COURT**<br>190  W. HEDDING STREET<br>SAN JOSE CA 95110 | CASE NO.    C1223754<br>CEN          12001535 |
| PEOPLE VS.   CRAIG RICHARD CHANDLER | DATE        07/22/2013    9:00 AM  DEPT.    37 |
| L.K.A.       1361 N SAN PEDRO ST<br>SAN JOSE, CA 95110 | 10/25/1976<br>CLERK       STAFFORD              EBK966  M |
| JUDGE        HON. ARTHUR BOCANEGRA | HEARING     JURY TRIAL<br>AGENCY      SJ– 04313– UNKNOWN |
| REPORTER     J. MIXCO | STATUS      I-SET-NBA                        TW   Y |
| DEF. ATTY.   MADDEN, BRIAN (G) | D.A.   A. FILO         APO |
| CHARGES      F(001) PC288(A)   F(002) PC288(A) | VIOLATION DATE |
|              F(003) PC288(A)   F(004) PC288(A) | 09/01/2010 |
|              F(005) PC288(A) | |

NEXT APPEARANCE   07 – 23 – 13   9am   D37

AIR

**\*\*DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL.\*\***

DOC THE COURT ORDERS THAT THE DEPT. BE ALLOWED A
DAILY SHOWER + SHAVE, UNTIL TRIAL END.

1306

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-22-13                                    CASE NUMBER: C1223754
CLERK: C. STAFFORD                                DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                             ATTY: BRIAN MADDEN

| Proceedings: | Evidence | DAY 14 | page 1 of 3 |
|---|---|---|---|

9:28 am       Court convenes on the record, with all above listed
              parties, twelve sworn jurors and four alternate jurors
              present. Investigating Officer, Det. Sean Pierce, is also
              present.

9:29 am       Wendy Doe is called, sworn and examined, by Ms. Filo, on
              behalf of the People.

10:00 am      Mr. Madden conducts cross examination on behalf of the
              Defense.

10:31 am      The Court excuses the jury for the morning recess.

              Recess

11:05 am      Court reconvenes on the record, with all above listed
              parties, twelve sworn jurors and four alternate jurors
              present. Investigating Officer, Det. Sean Pierce, is also
              present.

              Wendy Doe resumes the stand and remains under oath.

11:31 am      Bench conference (not reported)

11:33 am      Cross examination concludes.
              Ms. Filo conducts re-direct examination.

11:39 am      Mr. Madden conducts re-cross examination.

11:40 am      The Court thanks and excuses Wendy Doe.

11:41 am      The Court excuses the jury for the midday recess.

11:42 am      Outside the presence of the jury and with all above listed
              parties and Investigating Officer, Det. Sean Pierce, still

1307

People vs. Chandler                                    . 7/22/13
C1223754                                            page 2 of 3

|           | present, the Court allows both Counsel to make arguments, before making its formal ruling on a previously reserved issue, as stated on the record. |

11:53 am   The Court makes its ruling, as stated on the record.

11:57 am   The parties are excused.

           Recess

1:45 pm    Court reconvenes with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present.

           The following items are marked for identification:
           People's Exhibit #8 - CD containing audio and video of the
                                police interview with Arleth Doe
           People's Exhibit #8A - Written transcript of Exhibit #8

1:49 pm    Copies of People's Exhibit #8A are published to the jury and the CD is subsequently played.

3:15 pm    Playing of the CD is completed and transcripts are collected.
           The Court excuses the jury for the afternoon recess.

           Recess

3:35 pm    Court reconvenes with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present.

           Kristin Cardosa is called, sworn and examined, by Ms. Filo, on behalf of the People.

3:39 pm    Ms. Filo qualifies Ms. Cardosa as an expert in the areas of Detection and Identification of Biological Samples. The Court grants the request of the People and deems Ms. Cardosa as an expert in the aforementioned areas.

           The following item is marked for identification:
           People's Exhibit #9 - 64pg. Santa Clara County Crime Lab
                                Report

4:00 pm    Bench conference (not reported)

4:03 pm    Back on the record, the following items are marked for identification:
           People's Exhibit #10 - Blue chair base (labeled SY01)
           People's Exhibit #11 - Blue chair base (labeled SY02)

           Direct examination of the witness resumes.

1308

People vs. Chandler                                              7/22/13
C1223754                                                       page 3 of 3

4:10 pm      Bench conference (not reported)

4:12 pm      Back on the record, the Court excuses the jury for the
             evening. Similarly, Ms. Cardosa is excused from the witness
             stand. The jury and Ms. Cardosa are ordered to return on
             Tuesday, July 23, 2013, at 9:00am.

4:14 pm      Outside the presence of the jury and with all above listed
             parties and Investigating Officer, Det. Sean Pierce, still
             present, the Court discusses witness scheduling for
             tomorrow's proceedings.

             With no additional matters before the Court, the parties
             are excused. This matter is continued to Tuesday, July 23,
             2013, at 9:00am, in Department 37.

             The defendant's custodial status remains unchanged.

             Court stands adjourned.

1309

# CONFIDENTIAL

### MAY NOT BE EXAMINED WITHOUT COURT ORDER

## THE PEOPLE

### V.

## CRAIG RICHARD CHANDLER

**COURT OF APPEAL NUMBER:**      H040429

**CASE NUMBER:**      C1223754

### TRANSCRIPT OF VIDEO CD OF ISABELLE DOE
### TRANSCRIPT OF VIDEO CD OF LAURIE DOE
### TRANSCRIPT OF VIDEO CD OF BECKY DOE
### TRANSCRIPT OF VIDEO CD OF ARLET DOE
### TRANSCRIPT OF VIDEO CD OF WENDY DOE

| SEALED PAGES | 1113 | THRU | 1146 |
|---|---|---|---|
| | 1157 | | 1179 |
| | 1180 | | 1214 |
| | 1224 | | 1305 |
| | 1310 | | 1354 |

No. C1223754    Exh # 15A

[X] Identification    [X] Admitted

PEOPLE    vs CHANDLER

Date  JUL 2 3 2013    Clerk STAFFORD

3863-A REV 2/86

1310

SUPERIOR COURT
190 W. HEDDING STREET
SAN JOSE CA 95110

PEOPLE VS. CRAIG RICHARD CHANDLER
K.A. 1361 N SAN PEDRO ST
SAN JOSE CA 95110

JUDGE  HON. ARTHUR BOCANEGRA

REPORTER  J. MIXCO

DEF. ATTY.  MADDEN, BRIAN (G)

CHARGES  F(001) PC288(A)
F(003) PC288(A)
F(005) PC288(A)

| CASE NO. | C1223754 |
|---|---|
| CEN | 12001535 |

DATE  07/23/2013  9:00 AM  DEPT. 37
10/25/1976

CLERK  STAFFORD  EBK966 M

HEARING  JURY TRIAL

AGENCY  SJ– 04313–  -UNKNOWN

STATUS  I-SET-NBA  TW  Y

D.A.  A. FILO  APO

F(002) PC288(A)
F(004) PC288(A)

VIOLATION DATE
09/01/2010

NEXT APPEARANCE  07 24 13  9am  D37  A/R

**DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL.**

DOC: COURT ORDERS THAT THE DEFENDANT BE ALLOWED A DAILY SHOWER & SHAVE, UNTIL TRIAL END.

CDCR / PC 1170h  1555

REMANDED-BAIL $ [✓] REMAIN AS SET [✓] NO BAIL

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-23-13                    CASE NUMBER: C1223754
CLERK: C. STAFFORD               DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

---

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

### Vs.

**CRAIG CHANDLER**                    ATTY: BRIAN MADDEN

---

| Proceedings: | Evidence | DAY 15 | page 1 of 5 |
|---|---|---|---|

9:16 am     Court convenes on the record, with all above listed
            parties, twelve sworn jurors and four alternate jurors
            present. Investigating Officer, Det. Sean Pierce, is also
            present.

            Kristin Cardosa resumes the stand and remains under oath.
            Mr. Madden conducts cross examination on behalf of the
            Defense.

9:30 am     Ms. Filo conducts re-direct examination.
            A series of seven photographs is published to the jury and
            will be later marked as the People's Exhibits, next
            in order.

9:36 am     The Court thanks and excuses Ms. Cardosa.

9:37 am     Russell Chubon is called, sworn and examined, by Ms. Filo,
            on behalf of the People.

            The following items are marked for identification:
            People's Exhibit #12 - Sketched diagram
            People's Exhibit #13 - Color, aerial map of scene

9:54 am     The following item is published to the jury and will be
            subsequently marked for identification:
            People's Exhibit #14 - Color photo of a man standing inside
                          a classroom

9:56 am     Mr. Madden conducts cross examination on behalf of the
            Defense.

            The following item is marked for identification:
            Defense Exhibit D - 3.5" x 5" color photo of a classroom

1356

People vs. Chandler                                    7/23/13
C1223754                                           page 2 of 5

| | |
|---|---|
| 10:30 am | The following items are marked for identification:<br>Defense Exhibit E1 – Color photo of contents in an open<br>desk drawer<br>Defense Exhibit E2 – Color photo of contents in an open<br>desk drawer (close-up view)<br>Defense Exhibit E3 – Color photo of contents in an open<br>desk drawer<br>Defense Exhibit E4 – Color photo of contents in an open<br>desk drawer (close-up view) |
| | The Court excuses the jury for the morning recess. |
| | Recess |
| 10:48 am | Court reconvenes on the record, with all above listed<br>parties, twelve sworn jurors and four alternate jurors<br>present. Investigating Officer, Det. Sean Pierce, is also<br>present. |
| | Russell Chubon resumes the stand and remains under oath. |
| | Cross examination of the witness resumes. |
| 10:51 am | Ms. Filo conducts re-direct examination. |
| 10:52 am | The Court thanks and excuses Mr. Chubon. |
| 10:53 am | The following items are marked for identification:<br>People's Exhibit #15 – CD containing audio and video of<br>police interview with Wendy Doe<br>People's Exhibit #15A – Written transcript of Exhibit #15 |
| 10:54 am | Copies of People's Exhibit #15A are published to the jury<br>and the CD is subsequently played. |
| 11:40 am | Playing of the CD is completed and transcripts are<br>collected. |
| | Bench conference (not reported) |
| 11:42 am | The Court excuses the jury for the midday recess. |
| 11:46 am | Off the record, both Counsel retire to Judge's Chambers for<br>discussion. |
| | Recess |
| 1:44 pm | Court reconvenes on the record, with all above listed<br>parties, twelve sworn jurors and four alternate jurors<br>present. Investigating Officer, Det. Sean Pierce, is also<br>present. |

1357

People vs. Chandler                                      7/23/13
C1223754                                              page 3 of 5

| | |
|---|---|
| 1:45 pm | Both Counsel enter into a stipulation, as recited by Ms. Filo, on the record. |
| 1:46 pm | The following item is marked for identification and is subsequently played for the jury:<br>People's Exhibit #16 – DVD containing audio and video from the defendant's iPhone |
| 1:48 pm | Playing of the CD is completed.<br>Subject to the remaining testimony of Investigating Officer, Det. Sean Pierce, the People rest. |
| 1:50 pm | Dorothy Catangay is called, sworn and examined, by Mr. Madden, on behalf of the Defense.<br><br>The following items are marked for identification:<br>Defense Exhibit F1 – Color photo of an open classroom door<br>Defense Exhibit F2 – Color photo of a closed classroom door |
| 2:13 pm | Ms. Filo conducts cross examination on behalf of the People. |
| 2:16 pm | The Court thanks and excuses Ms. Catangay. |
| 2:17 pm | The Court excuses the jury for a brief recess.<br><br>Recess |
| 2:38 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present. |
| 2:39 pm | Verronica Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 2:52 pm | Ms. Filo conducts cross examination on behalf of the People. |
| 2:54 pm | The Court thanks and excuses Verronica Doe. |
| 2:55 pm | Ly Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 3:10 pm | Ms. Filo conducts cross examination on behalf of the People. |
| 3:14 pm | The Court thanks and excuses Ly Doe.<br><br>Bench conference (not reported) |
| 3:16 pm | Back on the record, Kevin Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |

1358

People vs. Chandler                                          7/23/13
C1223754                                                 page 4 of 5

3:28 pm     Ms. Filo conducts cross examination on behalf of the
            People.

3:29 pm     Mr. Madden conducts re-direct examination.

3:31 pm     The Court thanks and excuses Kevin Doe.

            Detective Sean Pierce retakes the stand and remains under
            oath.

3:32 pm     Bench conference (not reported)

3:34 pm     Back on the record, Ms. Filo resumes direct examination on
            behalf of the People.

3:36 pm     Mr. Madden conducts cross examination on behalf of the
            Defense.

            The following item is marked for identification:
            Defense Exhibit G - 2pg. Document

4:04 pm     Ms. Filo conducts re-direct examination.

4:08 pm     Mr. Madden conducts re-cross examination.

4:10 pm     Ms. Filo conducts further re-direct examination.

4:11 pm     The Court excuses Det. Sean Pierce from the stand.
            Similarly, the Court excuses the jury for the evening. They
            are ordered to return on Wednesday, July 24, 2013, at
            9:00am.

4:13 pm     Outside the presence of the jury and with all above listed
            parties, still, present, the Court addresses exhibits, of
            the People, previously published during Kristin Cardosa's
            testimony and orders that they be marked for
            identification.

            People's Exhibit #17 - Color photo of a blue, plastic and
                                   fabric chair base, with a ruler to
                                   the left (labeled SY01)

            People's Exhibit #18 - Color photo of the backside of
                                   chair, with a ruler to the left

            People's Exhibit #19 - Color photo of a portion of a chair,
                                   with three black circles surrounding
                                   stains and a ruler at bottom

            People's Exhibit #20 - Color photo of a blue, plastic and
                                   fabric chair base, with a ruler to
                                   the left (labeled SY02)

                                                            1359

People vs. Chandler                                          7/23/13
C1223754                                                page 5 of 5

People's Exhibit #21 – Color photo of the back of a chair,
                      with two black circles surrounding
                      stains and a metal ruler between
                      (close-up view)

People's Exhibit #22 – Color photo of the back of a chair,
                      with two black circles surrounding
                      stains and a ruler to the left

People's Exhibit #23 – Color photo of the side panel of a
                      blue chair, with three black circles
                      surrounding stains and a metal ruler
                      at bottom

With no additional matters before the Court, the parties
are excused. This matter is continued to Tuesday, July 23,
2013, at 9:00am, in Department 37.

The defendant's custodial status remains unchanged.

Court stands adjourned.

1360

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA 95110

EOPLE VS.   CRAIG RICHARD CHANDLER
K.A.        1361 N SAN PEDRO ST
            SAN JOSE, CA 95110

JDGE        HON. ARTHUR BOCANEGRA
EPORTER     J. MIXCO
EF. ATTY.   MADDEN, BRIAN (G)
HARGES      F(001) PC288(A)
            F(003) PC288(A)
            F(005) PC288(A)

| | |
|---|---|
| CASE NO. | C1223754 |
| CEN | 12001535 |
| DATE | 07/24/2013   9:00 AM  DEPT.  37 |
| | 10/25/1976 |
| CLERK | STAFFORD |
| HEARING | JURY TRIAL          EBK966 M |
| AGENCY | SJ– 04313– -UNKNOWN |
| STATUS | I-SET-NBA                TW  Y |

D.A.  A. FILO          APO
F(002) PC288(A)                    VIOLATION DATE
F(004) PC288(A)                    09/01/2010

07 - 25 - 13    9am    D37

NEXT APPEARANCE

☑ Defendant Present ☐ Not Present    ☑ Atty Present      A/R          AD / PD / IDO / Special App

**DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL.**

DA. + COURT ORDERS THAT THE DEFT. BE ALLOWED A DAILY
SHOWER + SHAVE, UNTIL TRIAL END.

1361

☑ REMANDED-BAIL $ _____  ☑ REMAIN AS SET ☑ NO BAIL  ☐ COMMITTED  ☐ RELEASED  ☐ OR  ☐ SORP  ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP  ☐ BAIL INCREASED / REDUCED  ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-24-13                          CASE NUMBER: C1223754
CLERK: C. STAFFORD                      DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

---

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

### Vs.

**CRAIG CHANDLER**                             ATTY: BRIAN MADDEN

---

| Proceedings: | Evidence | DAY 16 | page 1 of 4 |
|---|---|---|---|

| | |
|---|---|
| 9:01 am | Outside the presence of the jury, court convenes on the record, with all above listed parties and Investigating Officer, Det. Sean Pierce, present. |
| | The Court addresses both Counsel regarding People's Exhibit #3 and Defense Exhibit C, respectively, as stated on the record. |
| 9:08 am | The Court hears arguments. |
| 9:35 am | The following item is marked for identification: Defense Exhibit C1 – 1pg. Document – Typewritten notes, dated October 14, 2011 |
| 9:38 am | The Court makes its ruling, as stated on the record. |
| | Mr. Madden moves the Court to recall Ms. Vijayendran. The Court denies the Defense's motion. |
| | Brief recess |
| 9:51 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. Investigating Officer, Det. Sean Pierce, is, still, present. |
| | Diego Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 10:00 am | Ms. Filo conducts cross examination on behalf of the People. |
| 10:01 am | The Court thanks and excuses Diego Doe. |
| | Brief recess |

1362

People vs. Chandler                                    7/24/13
C1223754                                             page 2 of 4

| | |
|---|---|
| 10:02 am | Chris Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 10:14 am | Ms. Filo conducts cross examination on behalf of the People. |
| 10:15 am | The Court thanks and excuses Chris Doe. |
| 10:16 am | Bench conference (not reported) |
| 10:21 am | Back on the record, the Court addresses the jury regarding witness scheduling for today's proceedings and scheduling for the remainder of trial proceedings. |
| | The Court excuses the jury, until 1:30pm. |
| 10:24 am | Outside the presence of the jury and with all above listed parties and Investigating Officer, Det. Sean Pierce, still, present, the Court orders both Counsel to return at 1:30pm. |
| | Recess |
| 1:41 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors, four alternate jurors present. Investigating Officer, Det. Sean Pierce, is also present. |
| | Mary Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 1:56 pm | Ms. Filo conducts cross examination on behalf of the People. |
| | The Court thanks and excuses Mary Doe. |
| | Jorge Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |
| 2:10 pm | Bench conference (not reported) |
| 2:13 pm | Direct examination of the witness resumes. |
| 2:14 pm | Ms. Filo conducts cross examination on behalf of the People. |
| 2:15 pm | The Court thanks and excuses Jorge Doe. |
| 2:16 pm | Carl Doe is called, sworn and examined, by Mr. Madden, on behalf of the Defense. |

1363

People vs. Chandler                                    7/24/13
C1223754                                            page 3 of 4

2:29 pm      Ms. Filo conducts cross examination on behalf of the
             People.

2:30 pm      The Court thanks and excuses Carl Doe.

2:31 pm      Marcus Doe is called, sworn and examined, by Mr. Madden, on
             behalf of the Defense.

2:45 pm      Ms. Filo conducts cross examination on behalf of the
             People.

2:46 pm      The Court thanks and excuses Marcus Doe.
             The Court excuses the jury for the afternoon recess.

             Recess

3:10 pm      Court reconvenes on the record, with all above listed
             parties, twelve sworn jurors, four alternate jurors
             present. Investigating Officer, Det. Sean Pierce, is also
             present.

             Annie Doe is called, sworn and examined, by Mr. Madden, on
             behalf of the Defense.

3:36 pm      Bench conference (not reported)

3:37 pm      Direct examination of the witness resumes.

3:43 pm      Ms. Filo conducts cross examination on behalf of the
             People.

4:05 pm      Mr. Madden conducts re-direct examination.

4:14 pm      The Court thanks and excuses Annie Doe.
             With all witness testimony concluded for the day, the Court
             excuses the jury for the evening.

             Off the record, Mr. Madden summons potential witness, Maria
             Leon, to the courtroom. Ms. Leon is accompanied and
             assisted by Monica Ornelas, Spanish Speaking Advocate.

             Back on the record and outside the presence of the jury,
             and with all above listed parties and Investigating
             Officer, Det. Sean Pierce, still, present, the Court orders
             Maria Leon to return on Thursday, July 25, 2013, at 9:00am.

             Similarly, the Court directs the clerk to request a
             Certified Spanish Language Interpreter for tomorrow's
             witness testimony.

1364

People vs. Chandler                                      7/24/13
C1223754                                             page 4 of 4

With no additional matters before the Court, the parties
are excused. This matter is continued to Thursday, July 25,
2013, at 9:00am, in Department 37.

The defendant's custodial status remains unchanged.

Court stands adjourned.

1365

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA 95110

PEOPLE VS.   CRAIG RICHARD CHANDLER
A.K.A.       1361 N SAN PEDRO ST
             SAN JOSE, CA 95110
JUDGE   HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO
DEF. ATTY.   MADDEN, BRIAN (G)
CHARGES   F(001) PC288(A)   F(002) PC288(A)
          F(003) PC288(A)   F(004) PC288(A)
          F(005) PC288(A)

CASE NO.   C1223754
CEN   12001535
DATE   07/25/2013   9:00 AM   DEPT.   37
       10/25/1976   Late p.m.
CLERK   STAFFORD / Jane Linn   EBK966 M
HEARING   JURY TRIAL
AGENCY   SJ- 04313-   -UNKNOWN
STATUS   I-SET-NBA   TW   Y
D.A.   A. FILO   APO

VIOLATION DATE   09/01/2010

NEXT APPEARANCE   07-29-13   9am   D37

☑ Defendant Present   ☐ Not Present   ☑ Atty Present   A/R

*** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ***
DOC. *** COURT ORDERS THAT THE DEFT. BE ALLOWED A DAILY
SHOWER + SHAVE, UNTIL TRIAL END.

☑ REMANDED-BAIL $ _____   ☑ REMAIN AS SET   ☑ NO BAIL   ☐ CONTINUED   ☐ RELEASED   ☐ OR   ☐ SORP   ☐ JAC PHONE ASSMT   ☐ P36
☐ AS COND OF SORP   ☐ BAIL INCREASED / REDUCED   ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

Conc to   1366

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-25-13                          CASE NUMBER: C1223754
CLERK: C. STAFFORD/JANE LINN            DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                             ATTY: BRIAN MADDEN

| Proceedings: | Evidence | DAY 17 | page 1 of 3 |
| --- | --- | --- | --- |

9:28 am    Court convenes on the record, with all above listed
           parties, twelve sworn jurors and four alternate jurors
           present.

           Maria Leon, assisted by Certified Spanish Language
           Interpreter, Ramiro Rivas, is called, sworn and examined,
           by Mr. Madden, on behalf of the Defense.

9:36 am    Bench conference (not reported)

9:37 am    Direct examination of the witness resumes.

9:49 am    Ms. Filo conducts cross examination on behalf of the
           People.

9:58 am    Bench conference (not reported)

9:59 am    Cross examination of the witness resumes.

10:01 am   The Court thanks and excuses Maria Leon.

10:03 am   Dr. William O'Donohue is called, sworn and examined, by Mr.
           Madden, on behalf of the Defense.

10:10 am   Mr. Madden qualifies Dr. O'Donohue as an expert in the
           areas of Child Sex Abuse and Forensic Interviewing of
           Children Concerning Sexual Abuse.

           The Court grants the request of the Defense and deems Dr.
           O'Donohue as an expert in the aforementioned areas.

10:23 am   Bench conference (not reported)

10:25 am   Direct examination of the witness resumes.

1367

People vs. Chandler                                          7/25/13
C1223754                                                page 2 of 3

| | |
|---|---|
| 10:40 am | Bench conference (not reported) |
| 10:41 am | The Court excuses the jury for the morning recess. |
| | Outside the presence of the jury and with all above listed parties and Dr. O'Donohue, still, present, the Court addresses issues raised during previous bench conferences. |
| | The Court hears arguments. |
| 10:49 am | Recess |
| 11:09 am | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| | Dr. O'Donohue resumes the stand and remains under oath. |
| 11:38 am | Bench conference (not reported) |
| | Back on the record, the Court excuses the jury for the midday recess. |
| | Recess |
| 1:37 pm | Court reconvenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present. |
| | Dr. O'Donohue resumes the stand and remains under oath. |
| | Ms. Filo conducts cross examination on behalf of the People. |
| 2:07 pm | The following item is marked for identification: People's Exhibit #24 – Hand-drawn picture on ruled, binder paper |
| 2:33 pm | Bench conference (not reported) |
| 2:37 pm | Cross examination of the witness resumes. |
| 2:43 pm | The Court thanks and excuses Dr. O'Donohue. |
| 2:45 pm | The Court excuses the jury for the afternoon recess. |
| 2:46 pm | Remaining on the record and outside the presence of the jury and with all above listed parties, still, present, the Court memorializes discussion conducted during a previous bench conference. |
| | The Court hears arguments, as stated on the record. |

1368

People vs. Chandler                                    7/25/13
C1223754                                            page 3 of 3

Recess

3:10 pm     OFF THE RECORD - OUTSIDE THE PRESENCE OF THE JURY &
            ALTERNATES: Court and Counsel meet informally in chambers
            to discuss the trial schedule and final anticipated
            witnesses.

3:20 pm     Court reconvenes on the record, with all above listed
            parties, twelve sworn jurors and four alternate jurors
            present.

            The Court briefly updates the jurors and alternate jurors
            on the trial schedule.

3:24 pm     A bench conference is held, (not reported).

3:25 pm     (ON THE RECORD) - The Court admonishes the jurors and
            alternate jurors and excuses them for the day, ordering
            that they return to the Jury Assembly Room on 07/29/2013 at
            9:00 a.m.   The parties are ordered back at that time as
            well.

            Court stands in recess.

            OFF THE RECORD - OUTSIDE THE PRESENCE OF THE JURORS -
            Defendant Chandler is remanded into the custody of Deputy
            Armenta, his custodial status remaining the same: IN-SET @
            No Bail Allowed.

1369

| SUPERIOR COURT | | CASE NO. | C1223754 |
|---|---|---|---|
| 190  W. HEDDING STREET | | CEN | 12001535 |
| SAN JOSE CA 95110 | DATE 07/29/2013  9:00 AM | DEPT. | 37 |

PEOPLE VS.  CRAIG RICHARD CHANDLER        10/25/1976

K.A.   1361 N SAN PEDRO ST          CLERK   E.ReSantiago          EBK966 M
       SAN JOSE, CA 95110           HEARING  JURY TRIAL

JDGE   HON. ARTHUR BOCANEGRA        AGENCY   SJ– 04313–  -UNKNOWN

EPORTER   J. MIXCO                  STATUS   I-SET-NBA                    TW  Y

EF. ATTY.   MADDEN, BRIAN (G)       D.A.  A. FILO      APO

HARGES   F(001) PC288(A)      F(002) PC288(A)                VIOLATION DATE
         F(003) PC288(A)      F(004) PC288(A)                09/01/2010
         F(005) PC288(A)

NEXT APPEARANCE _____  **7-30-13   9:00am  Rept. 37**

☑ Defendant Present ☐ Not Present      ☑ Atty Present                      ☐ AD / PD / IDO ☐ Special App

☑ Arr'd ☐ Adv ☐ Arr.Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDO ☐ PTC ☐ Prob / Sent ☐ Interpreter                      ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail OR/ SORP ☐ Rect Pr Rpt ☐ FAR/ ERC ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC ☐ Bail Exonerated ☐ Forfeited ☐ Bond #
☐ Denies Prior/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WO ☐ TW Sentence ☐ Ref'd                    ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved ☐ Appt'd ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg ☐ BW Ordered ☐ Stayed, ☐ To Issue
☐ Hrg on Motion ☐ Doubt Decl Pursuant PC 1368 ☐ BW Set Aside ☐ No Cite Release/SCJT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal ☐ Subm on Search ☐ Found ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm'r ☐ Drs. Appointed ☐ Max Term ☐ Committed ☐ Proof of
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to _____
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Strmt Filed
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
☐ Jail / Prison Term of _____                           ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal/Striking of _____                           Subm time of Sent ☐ Harvey Stip
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term ☐ Fee $ _____ ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #
☐ Sent Suspended                    ☐ PROBATION DENIED ☐ COUNT ___ $ ____ + PA $ ___ ☐ Pdrs HS11350d
PROBATION ☐ Execution/ ☑ Imposition of sentence suspended for probation period ☐ COUNT ___ $ ____ + PA $ ___ ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs  AIDS / CPP $ ____ + PA $ ___ SORP
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release ☐ DPF ___ $ ____ + PA $ ___ EMAT $
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail  LAB ___ $ ____ + PA $
☐ Not drive w/o valid DL & Ins ☐ Adv VC23690 ☐ HTO ☐ Re-refer  DRF / RF ___ $ ____  Add'l RF $ ___ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within ___ days. ___ AEF ___ $ ____  Original Fine $
☐ DL Susp/ Restr'd/ Rvk'd for ___ Yrs ☐ IID Not/Ordered/ Am'd Term ___ Yrs  SECA/COPA $ ____ CTS PC2900.5 $
☐ No contact w/ victim or family / co-defts unless appr by ABO  PC1202.05  ICMF ___ $ ____  TOTAL DUE $
☐ DVPO issued / mod /term'd Exp ___ ☐ Victim Present  ICIN ___ $ ____ ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Paid  AR ___ $ ____ ___ / Mo beginning
☐ Not own/possess deadly weapons ☐ Destroy/return weapon  SHELTER ___ $ ____ ☐ FINE STAYED
☐ Stay away from _____  DV ___ $ ____ ☐ Committed @ $ ___ /day ☐ May-Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold  ATTY. ___ $ ____ ☐ Consec/Conc to
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm  ASP25/CRF510 $ ____ ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education  P/INVEST $ ____ ☐ P/SUP $ ___ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP  CJAF $129.75/$259.50 $ ___ ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ___ ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein  Restit ☐ Gen $ ___ to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attach't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence               ☐ County Jail
Count   F/M        Violation:        Prison Term / Yrs       Enhancement / Priors        Yrs / Stpd / Strkn    HRS / DAYS / MOS

**** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ****

Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S  Enhancement  Yrs/S   Total

CTS = ____  ACT + ____ ☐ 4019 ☐ ½ ☐ ⅓  PC2933.1 ____ Total  Total term ____                      CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ____ ☐ EMP/PSP/ERP/DRP/Co Parole $70
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ___ ☐ Adv/ORD ___ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ ____ AM/PM or Sooner
☑ REMANDED-BAIL $ ____ ☐ REMAIN AS SET ☐ NO BAIL ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-29-13                          CASE NUMBER: C1223754
CLERK: J. PENA / E. DESANTIAGO          DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                             ATTY: BRIAN MADDEN

| Proceedings: | Testimony/Jury Instructions | DAY 18 | page 1 of 2 |
|---|---|---|---|

9:33 am      Court convenes on the record, all above parties are
             present.  The jury is not present. The defendant waives his
             right to testify.
             Court stands in recess.

9:38 am      Court convenes on the record, with all above listed
             parties, twelve sworn jurors and four alternate jurors
             present.
             The People and Defense enter into stipulation that the
             families of Laurie Doe, Wendy Doe and Arleth Doe have filed
             civil lawsuits against the defendant after criminal charges
             were filed.

9:40 am      The Defense rests.
             The People rest.

9:43 am      The Court discusses the schedule with the jurors. Jurors
             are ordered to report tomorrow, July 30, 2013 at 9 a.m.
             All jurors are excused with the exception of Juror No. 8.
             Juror No. 8 is examined regarding attentiveness during
             select testimony, and then asked to exit the courtroom.

9:48 am      Juror No. 8 is returned to the courtroom to be excused for
             the remainder of the day.

9:50 am      Court convenes on the record, all above parties are
             present.  The jury is not present. The Defense asks the
             Court to discharge Juror No. 8 for cause.  The People
             respond.  The Court denies the Defense's request.

10:01 am     The defendant waives his appearance during jury instruction
             discussions and is ordered to return Tuesday, July 30,
             2013.
             The court stands in recess.

10:02 am     The Court conducts in chamber discussions with counsel.

1371

| Proceedings: | Testimony/Jury instructions | DAY 18 | page 2 of 2 |
|---|---|---|---|

10:42 am    Court convenes on the record, counsel and the defendant are
            present. The jury is not present.  The defendant waives his
            right to the statute of limitations as to each count to
            allow a misdemeanor to be included as a lesser included
            charge.
            The defendant is excused.

            Off the record - outside the presence of the jurors -
            defendant Chandler is remanded into the custody of Deputy
            Armenta, his custodial status remaining the same: IN-SET @
            No Bail Allowed.

10:44 am    The Court and counsel discuss the trial exhibits.
            The Court orders the following:
            -People's exhibit No. 25, large diagram of classroom, is
             marked for identification.
            -People's exhibits Nos. 1-25 ordered admitted.
            -Defense exhibits C and C1 admission denied, over
             Defense's objection.
            -Remaining Defense exhibits A-G ordered admitted.

10:50 am    Off the record, informal jury instruction discussions held.

11:56 am    Court convenes on the record, all counsel is present.  The
            defendant and the jury are not present. The Court places
            the stipulated jury instruction selections on the record.

12:05 pm    With no additional matters before the Court, the parties
            are excused. This matter is continued to Tuesday, July 30,
            2013, at 9:00am, in Department 37.

            The defendant's custodial status remains unchanged.

            Court stands adjourned.

1372

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff, | July 29, 2013 |
| | DA NO 120100927<br>CEN<br>12001535   CRC  HELD  7/30/2013 |
| vs. | |
| CRAIG RICHARD CHANDLER (10/25/1976), 1K<br>1361 NORTH SAN PEDRO STREET, SAN JOSE, CA 95110<br>Defendant(s). | **FIRST AMENDED**<br>INFORMATION NO.  C1223754 |

FILED

JUL 30 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

### INFORMATION SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 2 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 3 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 4 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 5 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |

1373

The District Attorney of the County of Santa Clara, by this Information alleges that:

## COUNT 1

On or about and between September 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Isabell Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## COUNT 2

On or about and between September 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Becky Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

1374

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Laurie Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

1375

## COUNT 4

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Wendy Doe, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## COUNT 5

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Arleth Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

1376

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

### REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

1377

Pursuant to Penal Code Section 1054 through 1054.7, inclusive, the People request that, within 15 days, the defendant and/or his/her attorney disclose: (A) The names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of any physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer as evidence at the trial. (B) Any real evidence which the defendant intends to offer in evidence at the trial. This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.


Jeffrey F. Rosen
District Attorney

By _____
    Alison M. Filo
    Deputy District Attorney


1378

circumstantial
evidence
instruction

**RECEIVED**

JUL 3 0 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

In Chandler, circumstantial evidence is being used to prove two different things.  One is that the object placed in the mouths of the alleged victims was the defendant's penis rather than being some other object.  The second is that various touchings were done with the specific intent that is an element of the crime.  When circumstantial evidence is used to establish some facts that relate to the nature of the act and some facts that relate to the presence of intent, the proper instruction is CALCRIM 224.  When circumstantial evidence is used **only** to establish facts that relate to the nature of the intent, the proper instruction is CALCRIM 225.

The case directly on point is *People v. Marshall* (1996) 13 Cal.4th 799, 849.  *Marshall* was decided before CALCRIM and talks in terms of CALJIC 2.01, which is the equivalent of CALCRIM 224 (i.e., the general circumstantial evidence instruction) and CALJIC 2.02, which is the equivalent of CALCRIM 225 (i.e., the circumstantial evidence instruction related to intent).

Here is the holding on the point at page 849 of *Marshall*:

"Defendant contends the trial court erred in failing to instruct the jury, sua sponte, in the language of  CALJIC No. 2.02, pertaining to the sufficiency of circumstantial evidence to prove the requisite mental state for premeditated and deliberate murder. As defendant acknowledges, however, the trial court instructed the jury with  CALJIC No. 2.01, the more inclusive instruction on sufficiency of circumstantial evidence. Use of  CALJIC No. 2.01, rather than 2.02, is proper unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state. (Citation.) Here, mental state was not the only element of the case resting on circumstantial evidence; consequently, the trial court did not err in reading the more inclusive instruction. (Citation.)"

1379

SUPERIOR COURT
190  W. HEDDING STREET
SAN JOSE CA 95110

PEOPLE VS.   CRAIG RICHARD CHANDLER
K.A.  1361 N SAN PEDRO ST
      SAN JOSE, CA 95110
JUDGE   HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO
DEF. ATTY.   MADDEN, BRIAN  (G)
CHARGES   F(001) PC288(A)
          F(003) PC288(A)
          F(005) PC288(A)

CASE NO.   C1223754
CEN        12001535
DATE       07/30/2013   9:00 AM   DEPT.   37
           10/25/1976
CLERK      F. DeSantiago   EBK966  M
HEARING    JURY TRIAL
AGENCY     SJ– 04313–  -UNKNOWN
STATUS.    I-SET-NBA   TW   Y
D.A.  A. FILO   APO

F(002) PC288(A)                    VIOLATION DATE
F(004) PC288(A)                    09/01/2010

NEXT APPEARANCE   AR   7-31-13  9:00am  dept 37

[x] Defendant Present [ ] Not Present        [ ] Atty Present                          AD / PD / IDO / Special App
[ ] Arr'd [ ] Adv [ ] Arr Wav'd [ ] Amend Comp/Info [ ] Arr [ ] Plea [ ] IDC [ ] PTC [ ] Prob / Sent   [ ] Interpreter                              [ ] Sworn
[ ] PC977 [ ] Filed [ ] On File [ ] Reptr. Adv / Wav [ ] Bail OR/ SORP [ ] Rec'd Of Rpt [ ] FAR/ ERC   [ ] Bail Apply [ ] Balance Exonerated
[x] NG [ ] Entered by CRT [ ] NGBRI / Adv [ ] Psel [ ] Prelim [ ] Readiness [ ] S / B MTC   [ ] Bail Exonerated [ ] Forfeited   Bond #
[ ] Grants Prior Allegation/ Enhancements/Refusal [ ] Further [ ] Jury [ ] Ct [ ] Peo / Def Wav Jury   [ ] Reassumption Filed [ ] Forfeiture Set Aside [ ] Bail Rein
[ ] TW [ ] TNW [ ] TW / WO [ ] TW Sentence [ ] Ref'd                                      [ ] $_____ Costs Within 30 Days to Court
[ ] Ref / Appt PD / ADO / IDO [ ] Con Decl [ ] Adm A / F [ ] APO / DADS/ Prop 36 [ ] P36 Re-Assm't   SORP / OR [ ] Revoked [ ] Reinstated [ ] May Post & Forfeit
[ ] Relieved [ ] _____ Appt'd [ ] Crim Proc Susp [ ] Rein. [ ] Status Inq [ ] BW Ordered $_____ [ ] Stayed [ ] To Issue
[ ] Hrg on Motion [ ] [ ] Declt Bail Pursuant PC 1368                            [ ] No Cite Release/ SCIT [ ] No Request [ ] Cash Only
[ ] Granted [ ] Denied [ ] Submitted [ ] Off Cal [ ] Subm on Report [ ] Found   [ ] BW Set Aside [ ] Recalled [ ] Filed [ ] Remain Out [ ] NWF
[ ] Stip to Comm'd [ ] Drs Appointed : [ ] Max Term [ ] Credit   DA Filo files First Amended Information
[ ] Prelim. Wav. [ ] Certified to General Jurisdiction [ ] MDA / COM Amended to: _____
[ ] Amended to [ ] (M) VC12500(a) / VC23103(a) [ ] Pur VC23103.5 [ ] DA Stmt Filed: _____
PLEA Conditions: [ ] None [ ] No State Prison [ ] PC17 after 1 Yr Prob [ ] Includes VOP   [ ] Add'l to Cal [ ] Vacate pending date
[ ] Jail / Prison Term of _____                                               [ ] Submit time of Sent [ ] Harvey Stip
[ ] Dismissal / Striking                                                          [ ] Submit time of Sent [ ] Harvey Stip
[ ] Adv Max Pen [ ] Parole [ ] Prob./ Immig / Appeal [ ] Reg HS11590/PC290/PC457.1/PC186.30 [ ] FSF [ ] Fines/Fees [ ] PC29800/29805/30305/666/VC14607.8
[ ] Wav Right to [ ] Counsel [ ] Court / Jury Trial [ ] Subpoena / Confront / Examine Witnesses [ ] Self-incrimination [ ] Written Waiver filed [ ] Plea / Absentia filed
[ ] COP [ ] GUILTY [ ] NOLO CONTENDERE to charges & admits enhancements / allegations / priors [ ] PC17 [ ] Arbuckle [ ] Factual Basis found [ ] Findings stated
[ ] Prop 36 Granted / Unamenable / Refused / Term [ ] DEJ Eligibility Filed [ ] DEJ Granted / Rein / Term [ ] Plea / Guilty Plea Rendered
[ ] Waives Referral [ ] APO Full Rpt [ ] CR110 issued   Fines/Fees   Pay to: [ ] DOR [ ] Traffic [ ] Court [ ] Today [ ] Audit #
[ ] Sent Suspended                                        COUNT _____ $_____ + PA $_____ [ ] Purs HS11350d
PROBATION [ ] Execution [ ] Imposition of sentence suspended for probation period   COUNT _____ $_____ + PA $_____ [ ] PC2900.3
[ ] COURT [ ] FORMAL PROBATION GRANTED for _____ Days / Mos / Yrs   COUNT _____ $_____ + PA $_____   SORP _____
[ ] Report to APO within _____ Days [ ] Terminated [ ] Upon Release   DPF _____ $_____ + PA $_____   EMAT $_____
[ ] Perform _____ Hrs Volunteer Work as directed PO / SAP [ ] In lieu of fine/Jail   LAB _____ $_____ + PA $_____
[ ] Not drive w/o valid DL & Ins [ ] Adv VC23600 [ ] HTO [ ] Re-refer   DRF /RF _____ $_____   Add'l RF $_____ [ ] Susp'd PC1202.44/45
[ ] MOP [ ] FOP [ ] 12 hrs. [ ] 3 mos [ ] 9 mos   Enroll within _____ days   AEF _____ $_____   Original Fine $_____
[ ] DL Susp/ Restr'd/ Evk'd for _____ [ ] ID Not/Ordered/ Rmv'd Term _____ Yrs   SECA/COPA _____ $_____   CTS PC2900.5 $_____
[ ] No contact with victim/ or family / co-defts unless appr by APO [ ] PC1202.05   ICMF _____ $_____   TOTAL DUE $_____
[ ] DVPO issued / mod /term'd Exp _____                                ICIN _____ $_____   Payments Granted / Modified _____
[ ] No Contact [ ] Peaceful Contact [ ] DSA thru APO / DOR / CRT [ ] Filed   AR _____ $_____ _____ / Mo beginning _____
[ ] Not own/possess deadly weapons [ ] Destroy/return weapon ea's   SHELTER _____ $_____   FINE STAYED _____
[ ] Stay away from _____                                               DV _____ $_____   Committed $_____ / day [ ] May Pay Out
[ ] Submit Search/Testing [ ] Educ/Voc Trng/Empl [ ] No alcohol / drugs or where sold   ATTY _____ $_____   Consent/Conc to _____
[ ] Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF$25/CPF$10$ _____   Fine / Fees [ ] Deemed Satisfied [ ] Commuted
[ ] PC296 (DNA) [ ] PG1202.1 HIV Test / Egmt                              PINVEST _____ $_____ [ ] P/SUP $_____ _____ /Mo [ ] Waived
VOP: [ ] Wav [ ] Arr'd _____ [ ] Admits/Denies Viol [ ] Court Finds VOP / NO VOP   CJAF-$129.75/$259.50 _____ [ ] Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   [ ] SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
[ ] Original Terms & Conditions Except as Amended herein   Restit [ ] Gen $_____ to _____
[ ] Co-terminous with _____ [ ] No Further Penalties / Reviews   [ ] As determined by APO/Court [ ] Referred to VWAC [ ] Collect Civilly
Other: _____

JAIL/PRISON [ ] See Attach'h Pg [ ] CDCR/Parole collect restit from Def's earnings [ ] Blended Sentence _____ County Jail
Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS

** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. **

Enhancement | Yrs/S. | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total

CTS _____ ACT # _____ [ ] 4019 [ ] ½ [ ] ⅓ [ ] PC2933.1 _____ Total Term _____ CDCR / PC 1170h
[ ] Straight time [ ] In Camp [ ] VWP [ ] PC1209 Fees [ ] Waived [ ] Court Rec _____ [ ] All / Except [ ] EMP/PSP/ERP/DRP/Co Parole/NP _____
[ ] Sent Deemed Srv'd [ ] Rpt to Parole/Prob w/in _____ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal [ ] Consec [ ] Conc to 1380
[ ] Bal CJ Susp [ ] All but _____ Yrs/Days/Mos [ ] On Cond Complete Residential Treatment Prgm [ ] Serve Consec MO/TU/WE/TH/FR/SA/SU
[ ] Pre-process _____                              [ ] AM/PM or _____ [ ] Stay / Surrender / Transport to _____ [ ] AM/PM or Sooner
[x] REMANDED-BAIL $_____ [ ] REMAIN AS SET [ ] NO BAIL [ ] COMMITTED [ ] RELEASED [ ] OR [ ] SORP [ ] JAC PHONE ASSM'T [ ] P3S
[ ] AS COND OF SORP [ ] BAIL INCREASED / REDUCED [ ] TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-30-13                                    CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO / JENNIFER PENA          DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

---

PEOPLE OF THE STATE OF CALIFORNIA          D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                              ATTY: BRIAN MADDEN

---

| Proceedings: | Jury Selection | DAY 19 | page 1 of 1 |
|---|---|---|---|

9:13 am    Outside the presence of the Jury, Court is in session with
           all parties present.  Court addresses the issue of jury
           instructions and substitutes CALCRIM 225 with CALCRIM 224,
           as stated.  Deputy District Attorney Filo files a First
           Amended Information in court.  The defendant enters pleas
           of not guilty and denies all allegations, as stated.

9:20 am    Court goes off the record momentarily to await arrival of
           the Jury.

9:27 am    Court is in session with all above parties present,
           including the Jury and four alternate jurors.
           The Court reads the jury instructions, as stated.

10:00 am   Court finishes the reading of the jury instructions.
           Court admonishes and excuses the Jury and orders them to
           return to the jury assembly room tomorrow, July 31, 2013 at
           9:00 am.

10:01 am   Court orders counsels to return tomorrow at 9:00 am.
           Court is in recess.

1381

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

CRAIG RICHARD CHANDLER (10/25/1976), 1K
1361 NORTH SAN PEDRO STREET, SAN JOSE, CA 95110

Defendant(s).

July 30, 2013

DA NO 120100927
CEN
12001535  CRC  HELD  7/31/2013

SECOND AMENDED
INFORMATION NO. C1223754



JUL 3 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA-County of Santa Clara
BY _____ DEPUTY

INFORMATION
SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|-------|--------|--------------|-----------|------------|---------------|
| 1 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 2 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 3 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 4 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |
| 5 | PC288(a) | 3-6-8 | Craig Richard Chandler | PC667.61(b)/(e) | 15-life |
| | | | | PC1203.066(a)(7) | probation limitation |

1382

The District Attorney of the County of Santa Clara, by this Information alleges that:

## COUNT 1

On or about and between September 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Isabell Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## COUNT 2

On or about and between September 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Becky Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

1383

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Laurie Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

1384

**COUNT 4**

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Wendy Doe, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

**COUNT 5**

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Arleth Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

1385

(CJIC-1KSX) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

(CJIC-NOPR) It is further alleged that the defendant, CRAIG RICHARD CHANDLER, committed violations of 288(a) against more than one victim, within the meaning of Penal Code section 1203.066(a)(7).

## REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

1386

Pursuant to Penal Code Section 1054 through 1054.7, inclusive, the People request that, within 15 days, the defendant and/or his/her attorney disclose: (A) The names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of any physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer as evidence at the trial. (B) Any real evidence which the defendant intends to offer in evidence at the trial. This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

Jeffrey F. Rosen
District Attorney

By _Anna Filo_

Alison M. Filo
Deputy District Attorney

1387

| | | |
|---|---|---|
| SUPERIOR COURT | | CASE NO. C1223754 |
| 190  W. HEDDING STREET | | CEN 12001535 |
| SAN JOSE CA  95110 | DATE 07/31/2013  9:00 AM  DEPT. 37 | |
| EOPLE VS.  CRAIG RICHARD CHANDLER | 10/25/1976 | |
| A.  1361 N SAN PEDRO ST | CLERK | EBK966 M |
| SAN JOSE, CA 95110 | HEARING  JURY TRIAL | |
| DGE  HON. ARTHUR BOCANEGRA | AGENCY  SJ– 04313–  -UNKNOWN | |
| EPORTER  J. MIXCO | STATUS  I-SET-NBA | TW  Y |
| EF. ATTY.  MADDEN, BRIAN  (G) | D.A.  A. FILO  APO | |
| HARGES  F(001) PC288(A) | F(002) PC288(A) | VIOLATION DATE |
| F(003) PC288(A) | F(004) PC288(A) | 09/01/2010 |
| F(005) PC288(A) | | |

NEXT APPEARANCE

8-1-13  9:00am Dept-37

☑Defendant Present ☐ Not Present          ☑Atty Present                    ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☑ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent   ☐ Interpreter                   ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Rr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv         ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited    Bond #
☑ Denies Priors/ Allegations/ Enhancements/ Refusal ☐ Further ☑ Jury ☐ CT ☐ Peo ☑ Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TH / WD ☐ TW Sentence         ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ Relieved         Appt'd         ☐ Crim Prc Susp ☐ Rein ☐ Status ☐ Hrg   ☐ BW Ordered $                  ☐ Stayed ☐ To Issue
☐ Hrg on Motion                              ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report ☐ Found   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm'l ☐ Drs. Appointed            ☐ Max Term           ☐ Committed   ☐ Proof of                     $
☐ Prelim Wav ☐ Certified to General Jurisdiction ☐ MDA / COM Amended to   DA Plus  Second  Amended  Information
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP   ☐ Set Aside ☐ Vacate pending date
☐ Jail / Prison/Term of                       ☐ Subm time of Sent ☐ Harvey Stip
☐ Dismissal / Striking                        ☐                              ☐
☐ Adv Max Pen'l / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☐ PC2800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-Incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements/ allegations/ priors ☐ PC17 ☐ Articuble ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term, Fee $         ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued ☐ Fines/Fees Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit #
☐ Sent Suspended              ☐ PROBATION DENIED.   COUNT __ $ ____ + PA $ ____   ☐ Purs HS11350d
PROBATION ☐ Execution. ☐ Imposition of sentence suspended for probation period   COUNT __ $ ____ + PA $ ____   ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs   AIDS / CPP $ ____ + PA $ ____   ☐ SORP
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release   DPF __ $ ____ + PA $ ____   ☐ EMAT $
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ in lieu of fine/Jail   LAB __ $ ____ + PA $ ____
☐ Not drive w/o valid DL & ins. ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF /RF __ $ ____   ☐ Add'l RF $ ____ ☐ Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs. ☐ 3 mos ☐ 9 mos   Enroll within ___ days   AEF __ $ ____   ☐ Original Fine $
☐ DL Susp/ Restr'd Rvk'd for ___ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs   SECA/COPA $ ____   ☐ CTS PC2900.5 $
☐ No contact with victim / family / co-defts unless appr by APO ☐ PC1202.05   ICMF __ $ ____   ☐ TOTAL DUE __ $
☐ DVPO issued / mod /term'd Exp                ☐ Victim Present   ICIN __ $ ____   ☐ Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR __ $ ____   ☐ / Mo beginning
☐ Not own/possess deadly weapons ☐ Destroy/return weapon   SHELTER __ $ ____   ☐ FINE STAYED
☐ Stay away from                              DV __ $ ____   ☐ Committed $ ____ /day ☐ May Pay Out
☐ Submit Search/ Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY __ $ ____   ☐ Consec/Conc to
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF625/DPF$10 $ ____   ☐ Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   PINVEST __ $ ____   ☐ P/SUP $ ____ / Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129/75/$259.50 $ ____   ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $ ____ to
☐ Co-terminous with                  ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other:

JAIL/PRISON ☐ See Attach'm Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence          ☐ County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| | | | ** DEFENDANT TO BE DRESSED OUT FOR JURY TRIAL. ** | | | |
| | | | | | | |
| | | | | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

CTS = ____ ACT + ____ 4019 ☐ ½ ☐ ½  PC2933.1 ____ Total  Total term ____                  CDCR / PC 1170h
☐ Straight time ☐ in Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec ___ All / Except ☐ EMP/ PSP/ ERP/ DRP/ Co Parole/ NP
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ____ ☐ Adv/ORD ____ Yrs/Mos Parole/MS/ PRCS/Appeal ☐ Consec ☐ Conc to
☐ Bal CJ Susp ☐ All but ____ Yrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU   1388
☐ Pre-process ____ ☐ AM/PM ☐ Stay / Surrender / Transport to ____ @ ____ AM/PM or Sooner
☑ REMANDED-BAIL $ ____          ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ To PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 07-31-13                                CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO/JENNIFER PENA        DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

PEOPLE OF THE STATE OF CALIFORNIA            D.D.A: ALISON FILO

Vs.

CRAIG CHANDLER                               ATTY: BRIAN MADDEN

| Proceedings: | Closing Arguments | DAY 20 | page 1 of 2 |
|---|---|---|---|

8:48 am      Outside the presence of the jury, Court is in session with
             all parties present.   Deputy District Attorney Filo
             requests that the Court grant a change to the verbiage of
             the information. The request is granted.  The Court directs
             pages 1, 2 & 10 of the jury instructions to be replaced
             with pages 1, 2, 2a & 10 respectively.

8:55 am      The Court stands in recess.

8:59 am      Court convenes on the record, all above parties are
             present.  The jury is not present. Deputy District Attorney
             Filo files a Second Amended Information with the Court.
             The defendant enters pleas of not guilty and denies all
             allegations, as stated.

9:01 am      Court goes off the record momentarily to await arrival of
             the jury.

9:05 am      Court convenes on the record, with all above listed
             parties, twelve sworn jurors and four alternate jurors
             present. The Court directs the jurors to substitute pages
             1, 2 & 10 of the jury instructions with the new pages 1, 2,
             2a & 10 respectively.

9:09 am      The People begin closing arguments.

9:55 am      The Court takes its morning break.  The jury is admonished
             and court stands in recess.

10:16 am     Court convenes on the record, with all above listed
             parties, twelve sworn jurors and four alternate jurors
             present.

             The Defense begins closing arguments.

11:48 am     The Court takes the noon/lunch recess.   The jury is
             admonished and ordered to return at 1:30 pm.

1389

| Proceedings: | Closing Arguments/Deliberations    DAY 20 | page 2 of 2 |

Outside the presence of the jury, the Court places sidebar conferences on the record.  The Court stands in recess.

1:37 pm    Court convenes on the record, with all above listed parties, twelve sworn jurors and four alternate jurors present.

The Defense resumes closing arguments.

1:40 pm    The People begin rebuttal arguments.

2:07 pm    The Court instructs the jury.

2:14 pm    The Clerk swears in the Deputy to take charge of the jury and escorts the jury to the jury deliberation room.

Deliberations begin.

2:18 pm    The Court instructs the alternate jurors.  The alternates are excused for the day and are placed on telephone standby.

2:20 pm    Court convenes on the record, with all above listed parties present, the Court submits the proposed verdict forms to each counsel.  The verdict forms are approved and given to the deputy for submission to the jury.

The Court stands in recess.

4:30 pm    Off the record- The jury takes its evening recess.  The jury will return tomorrow at 9:00am to resume deliberations.

The defendant's custodial status remains unchanged.

Court stands adjourned.

1390

JURY QUESTION # 1

Date: _8-1-2013_
Time: _9:49 am_

**F I L E D**

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                    Plaintiff,

vs.

CRAIG RICHARD CHANDLER,
                                    Defendant.

Case No.  C1223754

WE THE JURY, in the above-entitled cause, request the following:

Copies of Penal Code sections
667.61(b) and 667.61(e)

Purpose Need clarification on "multiple
victims" on multiple accounts on
one victim.

The Court Responded to Jury's
Question orally in court per
attorneys agreement    8/1/13
                        10:50 a.

Dated: _8-1-2013_

Redacted
Jury Foreperson

1391

*Superior Court Of California County of Santa Clara*
*Hall of Justice*
*Department 37*

F I L E D

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of the County of Santa Clara
DEPUTY

The People Of the State Of California,     )  Case No.: C1223754Y
                                           )
              Plaintiff,                    )  **VERDICT OF THE JURY**
                                           )
       vs.                                  )
                                           )
Craig Richard Chandler,                    )
                                           )
              Defendant.                    )
                                           )
                                           )
                                           )

### COUNT ONE

We the Jury in the above-entitled cause, find the defendant, CRAIG RICHARD

CHANDLER, _____Guilty_____ of LEWD OR LASCIVIOUS ACT ON A
                 GUILTY / NOT GUILTY

CHILD UNDER FOURTEEN, in violation of Penal Code section 288(a), a Felony, as charged in

the Information.

Dated: 8-1-2013

FOREPERSON

1392

1
2   *Superior Court Of California County of Santa Clara*
3   *Hall of Justice*
    *Department 37*
4

5   The People Of the State Of California,      )   Case No.: C1223754
6                    Plaintiff,                  )
                                                 )   **VERDICT OF THE JURY**
7            vs.                                 )
                                                 )
8   Craig Richard Chandler,                      )   **FILED**
9                    Defendant.                  )
10                                               )   AUG 01 2013
                                                 )
11                                               )   DAVID H. YAMASAKI
                                                     Chief Executive Officer/Clerk
                                                     Superior Court of CA County of Santa Clara
                                                     BY _____ DEPUTY

12                   <u>**ALLEGATION TO COUNT ONE**</u>

13        We the Jury having found the defendant, CRAIG RICHARD CHANDLER, Guilty of the

14  crime of Lewd or Lascivious Act on a Child Under Fourteen as charged in count one, further find

15  the allegation that the defendant has been convicted in the present case or cases of committing an

16  offense specified in subdivision (c) against more than one victim, within the meaning of Penal

17  Code sections 667.61(b) and 667.61(e) to be _____*True*_____.

18                                          TRUE / NOT TRUE

19

20

21  Dated:  8-1-2013

22                                          FOREPERSON

23

24

25                                                              1393

# Superior Court Of California County of Santa Clara
## Hall of Justice
### Department 37

The People Of the State Of California,

      Plaintiff,

      vs.

Craig Richard Chandler,

      Defendant.

Case No.: C1223754

**VERDICT OF THE JURY**

FILED

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of the County of Santa Clara
BY _____ DEPUTY

## COUNT TWO

We the Jury in the above-entitled cause, find the defendant, CRAIG RICHARD
CHANDLER, _____ Guilty _____ of LEWD OR LASCIVIOUS ACT ON A
       GUILTY / NOT GUILTY
CHILD UNDER FOURTEEN, in violation of Penal Code section 288(a), a Felony, as charged in
the Information.

Dated: 8-1-2013

                    FOREPERSON

1394

1  **Superior Court Of California County of Santa Clara**

2              **Hall of Justice**
                 *Department 37*
3

4

5  The People Of the State Of California,     )   Case No.: C1223754
                                              )
6              Plaintiff,                      )   **VERDICT OF THE JURY**
                                              )
7        vs.                                   )
                                              )   **F I L E D**
8  Craig Richard Chandler,                    )
                                              )   AUG 0 1 2013
9              Defendant.                      )
                                              )   DAVID H. YAMASAKI
10                                             )   Chief Executive Officer/Clerk
                                                  Superior Court of CA County of Santa Clara
11                                             BY_____DEPUTY

12                **ALLEGATION TO COUNT TWO**

13        We the Jury having found the defendant, CRAIG RICHARD CHANDLER, Guilty of the

14  crime of Lewd or Lascivious Act on a Child Under Fourteen as charged in count two, further

15  find the allegation that the defendant has been convicted in the present case or cases of

16  committing an offense specified in subdivision (c) against more than one victim, within the

17  meaning of Penal Code sections 667.61(b) and 667.61(e) to be _____True_____

18                                              **TRUE / NOT TRUE**

19

20

21  Dated: 8-1-2013

22                                              FOREPERSON

23

24

25

                                              1395

# Superior Court Of California County of Santa Clara
## Hall of Justice
### Department 37

The People Of the State Of California,  )  Case No.: C1223754
       Plaintiff,  )
       )  **VERDICT OF THE JURY**
     vs.  )
     )  
Craig Richard Chandler,  )
       Defendant.  )

**F I L E D**

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of Ca County of Santa Clara
BY _____ DEPUTY

## COUNT THREE

We the Jury in the above-entitled cause, find the defendant, CRAIG RICHARD

CHANDLER, _____*Guilty*_____ of LEWD OR LASCIVIOUS ACT ON A
       GUILTY / NOT GUILTY

CHILD UNDER FOURTEEN, in violation of Penal Code section 288(a), a Felony, as charged in

the Information.

Dated: 8-1-2013

FOREPERSON

1396

# Superior Court Of California County of Santa Clara
## Hall of Justice
*Department 37*

The People Of the State Of California,

    Plaintiff,

  vs.

Craig Richard Chandler,

    Defendant.

Case No.: C1223754

**VERDICT OF THE JURY**

F I L E D

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of County of Santa Clara
BY _____ DEPUTY

## ALLEGATION TO COUNT THREE

  We the Jury having found the defendant, CRAIG RICHARD CHANDLER, Guilty of the crime of Lewd or Lascivious Act on a Child Under Fourteen as charged in count three, further find the allegation that the defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim, within the meaning of Penal Code sections 667.61(b) and 667.61(e) to be _____ *True*____

               TRUE / NOT TRUE

Dated: *8-1-2013*

            FOREPERSON

1397

*Superior Court Of California County of Santa Clara*
*Hall of Justice*
*Department 37*

| | |
|---|---|
| The People Of the State Of California, | ) Case No.: C1223754 |
| Plaintiff, | ) **VERDICT OF THE JURY** |
| vs. | ) |
| Craig Richard Chandler, | ) |
| Defendant. | ) |

**F I L E D**

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

## COUNT FOUR

We the Jury in the above-entitled cause, find the defendant, CRAIG RICHARD

CHANDLER, ___Guilty___ of LEWD OR LASCIVIOUS ACT ON A
          GUILTY / NOT GUILTY

CHILD UNDER FOURTEEN, in violation of Penal Code section 288(a), a Felony, as charged in

the Information.

Dated: _8-1-2013_

FOREPERSON

1398

*Superior Court Of California County of Santa Clara*
*Hall of Justice*
*Department 37*

FILED

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

The People Of the State Of California,          )   Case No.: C1223754
                                                )
            Plaintiff,                          )   **VERDICT OF THE JURY**
                                                )
      vs.                                       )
                                                )
Craig Richard Chandler,                         )
                                                )
            Defendant.                          )
                                                )
                                                )

## ALLEGATION TO COUNT FOUR

We the Jury having found the defendant, CRAIG RICHARD CHANDLER, Guilty of the

crime of Lewd or Lascivious Act on a Child Under Fourteen as charged in count four, further

find the allegation that the defendant has been convicted in the present case or cases of

committing an offense specified in subdivision (c) against more than one victim, within the

meaning of Penal Code sections 667.61(b) and 667.61(e) to be ___*True*___

TRUE / NOT TRUE

Dated: 8-1-2013

FOREPERSON

1399

*Superior Court Of California County of Santa Clara*
*Hall of Justice*
*Department 37*

FILED

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

| | |
|---|---|
| The People Of the State Of California, | ) Case No.: C1223754 |
| Plaintiff, | ) |
| | ) **VERDICT OF THE JURY** |
| vs. | ) |
| Craig Richard Chandler, | ) |
| Defendant. | ) |
| | ) |

**COUNT FIVE**

We the Jury in the above-entitled cause, find the defendant, CRAIG RICHARD

CHANDLER, _____Guilty_____ of LEWD OR LASCIVIOUS ACT ON A
           GUILTY / NOT GUILTY

CHILD UNDER FOURTEEN, in violation of Penal Code section 288(a), a Felony, as charged in

the Information.

Dated: 8-1-2013

FOREPERSON

1400

# Superior Court Of California County of Santa Clara
## Hall of Justice
### Department 37

**FILED**

AUG 0 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

The People Of the State Of California,

Plaintiff,

vs.

Craig Richard Chandler,

Defendant.

Case No.: C1223754

**VERDICT OF THE JURY**

## ALLEGATION TO COUNT FIVE

We the Jury having found the defendant, CRAIG RICHARD CHANDLER, Guilty of the

crime of Lewd or Lascivious Act on a Child Under Fourteen as charged in count five, further

find the allegation that the defendant has been convicted in the present case or cases of

committing an offense specified in subdivision (c) against more than one victim, within the

meaning of Penal Code sections 667.61(b) and 667.61(e) to be _____ True _____

TRUE / NOT TRUE

Dated: 8-1-2013

FOREPERSON

1401

SUPERIOR COURT
190 W. HEDDING STREET
SAN JOSE CA 95110

CASE NO.   C1223754
CEN        12001535

PEOPLE VS. CRAIG RICHARD CHANDLER
A.K.A.     1361 N SAN PEDRO ST
           SAN JOSE CA 95110
JUDGE      HON. ARTHUR BOCANEGRA
REPORTER   J. MIXCO
DEF. ATTY. MADDEN, BRIAN  (G)
CHARGES    F(001) PC288(A)        F(002) PC288(A)
           F(003) PC288(A)        F(004) PC288(A)
           F(005) PC288(A)

DATE       08/01/2013    9:00 AM   DEPT.   37
           10/25/1976
CLERK      Pena                    EBK966 M
HEARING    JURY TRIAL
AGENCY     SJ– 04313–   -UNKNOWN
STATUS     I-SET-NBA                TW  Y

D.A. A FILO
APO

VIOLATION DATE   09/01/2010

9-27-13    A/R    9:00    D37

NEXT APPEARANCE

☑ Defendant Present  ☐ Not Present    ☑ Atty Present                    ☐ AD / PD / IDO / Special App
☐ Arr'd  ☐ Adv  ☐ Arr-Wav  ☐ Amend Comp/Info    ☑ Arr  ☐ Plea  ☐ IDC  ☐ PTC  ☐ Prob / Sent    ☐ Interpreter                    ☐ Sworn
☐ PC977  ☐ Filed  ☐ On File  ☐ Rptr. Adv / Wav    ☐ Bail/ OR/ SORP  ☐ Rect Of Rpt  ☐ FAF/ ERC    ☐ Bail Apply  ☐ Balance Exonerated
☐ NG  ☐ Entered by CRT  ☐ NGBRI / Adv    ☐ Prel  ☐ Prelim  ☐ Readiness  ☐ S / B MTC    ☐ Bail Exonerated  ☐ Forfeited  ☐ Bond ₱
☐ Denies Prior/ Allegations/ Enhancements/ Refusal    ☐ Further  ☐ Jury  ☐ CT  ☐ Plea / Def Wav Jury    ☐ Reassumption Filed  ☐ Forfeiture Set Aside  ☐ Bail Rein
☐ TW  ☐ TNW  ☐ TW / WD  ☐ TW Sentence    ☐ Ref'd    ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO  ☐ Con Decl  ☐ Adm A / F    ☐ APO / DASH/ PRO P36  ☐ P36 Re-Assm't    ☐ SORP / OR  ☑ Revoked  ☐ Reinstated  ☐ May Post & Forfeit
☐ Relieved  ☐ Appt'd    ☐ Crim Proc Susp  ☐ Rein  ☐ Status Hrg    ☐ BW Ordered    ☐ Stayed  ☐ To Issue
☐ Hrg on Motion    ☐ Doubt Decl Pursuant PC 1368    ☐ Hrg on Date Release/SCIT  ☐ No Request  ☐ Cash Only
☐ Granted  ☐ Denied  ☐ Submitted  ☐ Off Cal    ☐ Subm on Report  ☐ Found    ☐ BW Set Aside  ☐ Recalled  ☐ Filed  ☐ Remain Out  ☐ NWF
☐ Stip to Comm'r  ☐ Drs. Appointed    ☐ Max Term    ☐ Committed    ☐ Proof of Serv
☐ Prelim Wav.  ☐ Certified to General Jurisdiction    ☐ MDA / COM Amended to    Counsel ordered present
☐ Amended to  ☐ (M) VC12500(a) / VC23103(a)  ☐ Pur VC23103.5  ☐ DA Stmt Filed  ☐ Harvey Stip
PLEA CONDITIONS: ☐ None  ☐ No State Prison  ☐ PC17 after 1 Yr Prob  ☐ Includes VOP    ☐ Add to Cal  ☐ Vacate pending date
☐ Jail / Prison, Term of    ☐ Subm time of Sent
☐ Dismissal / Striking    ☐ Adv Max Pen / Parole / Prob / Immig / Appeal  ☐ Reg HS11590/PC290/PC457.1/PC186.30  ☐ FSF  ☐ Fines/Fees  ☐ PC29800/29805/30305/666/VC14607.6
☐ Wav Right to  ☐ Counsel  ☐ Court / Jury Trial  ☐ Subpoena / Confront / Examine Witnesses  ☐ Self-incrimination  ☐ Written Waiver filed  ☐ Plea / Absentia filed
☐ COP  ☐ GUILTY  ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors  ☐ PC17  ☐ Arbuckle  ☐ Factual Basis found  ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term  ☐ DEJ Eligibility Filed  ☐ DEJ Granted / Rein / Term / Fees $_____  ☐ Guilty Plea Rendered
☐ Waives Referral  ☑ APO Full Rpt  ☐ CR110 issued    Fines/Fees  Pay to: ☐ DOR  ☐ Traffic  ☐ Court  ☐ Today  ☐ Audit #
☐ Sent Suspended    ☐ PROBATION DENIED    ☐ COUNT ___ $_____  ☐ PA $_____  ☐ Purs HS11350d.
PROBATION  ☐ Execution  ☐ Imposition of sentence suspended for probation period    COUNT ___ $_____  ☐ PA $_____  ☐ PC290.3
☐ COURT  ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs    ☐ AIDS / CPP $_____  ☐ PA $_____    SORP
☐ Report to APO within ___ Days  ☐ Terminated  ☐ Upon Release    ☐ DPF $_____  ☐ PA $_____    EMAT $
☐ Perform ___ ☐ Hrs Volunteer Work as directed PO / SAP  ☐ In lieu of fine/jail    ☐ LAB $_____  ☐ PA $_____
☐ Not drive w/o valid DL & Ins  ☐ Adv VC23600  ☐ HTO  ☐ Re-refer    DRF / RF $_____  ☐ Add'l Fees $_____  ☐ Susp'd PC1202.44/45
☐ MOP  ☐ FOP  ☐ 12 hrs  ☐ 3 mos  ☐ 9 mos  Enroll within ___ days    AEF $_____    Original Fine $_____
☐ DL Susp/ Restr'd / Rvk'd for ___    ☐ IID Not/Ordered/ Rmv'd Term    ☐ SECA/COPA $_____    CTS PC2900.5  $_____
☐ No contact with victim / family / co-defts unless appr by APO.  PC1202.05    ☐ ICMF $_____    TOTAL DUE  $_____
☐ DVPO issued / mod /term'd Exp ___    ☐ Victim Present    ☐ ICIN $_____    ☐ Payments Granted / Modified
☐ No Contact  ☐ Peaceful Contact    ☐ DSA thru APO / DOR / CRT    ☐ AR $_____    $_____ / Mo beginning
☐ Not own/possess deadly weapons    ☐ Destroy/return weapon    ☐ SHELTER $_____    FINE STAYED
☐ Stay away from ___    ☐ DV $_____    ☐ Committed @ $___ / day  ☐ May Pay Out
☐ Submit Search/Testing  ☐ Educ/Voc Trng/Empl  ☐ No alcohol / drugs or where sold    ☐ ATTY $_____    ☐ Consec/Conc to
☐ Substance Abuse: Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm    ☐ ASSESS/CPP $_____    Fine / Fees ☐ Deemed Satisfied  ☐ Commuted
☐ PC296 (DNA)  ☐ PC1202.1 HIV Test / Education    ☐ P/INVEST $_____    ☐ P/SUP $_____  ___ Mo  ☐ Waived
VOP: ☐ Wav  ☐ Arr'd  ☐ Admits/Denies Viol  ☐ Court Finds VOP / No VOP    CJAF $129.75/$259.50    ☐ Add'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ___    ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein    ☐ Restit ☐ Gen $_____    to _____
☐ Co-terminous with ___  ☐ No Further Penalties / Reviews    ☐ As determined by APO/Court  ☐ Referred to VWAC  ☐ Collect Civilly
Other:  verdict rendered
JAIL/ PRISON  ☑ See Attach'n Pg  ☐ CDCR/ Parole collect restit from Def's earnings  ☐ Blended Sentence                County Jail
Violation
Count  F/M ___ Prison Term / Yrs  Enhancement / Priors  Yrs / Styd / Strkn  HRS / DAYS / MOS

| Count | F/M | | | |
|---|---|---|---|---|
| 1 | F | PC288(a) – guilty | PC667.61(b)(e) – true | |
| 2 | F | PC288(a) – guilty | PC667.61(b)(e) – true | |
| 3 | F | PC288(a) – guilty | PC667.61(b)(e) – true | |
| 4 | F | PC288(a) – guilty | PC667.61(b)(e) – true | |

Enhancement  Yrs/S.    Enhancement  Yrs/S    Enhancement  Yrs/S    Enhancement  Yrs/S    Enhancement  Yrs/S    Total

CTS ___    ACT + ___  ☐ 4019  ☐ ½  ☐ ⅓  ☐ PC2933.1    Total  Total term ___    CDCR / PC 1170h
☐ Straight time  ☐ In Camp  ☐ WWP  ☐ PC1209 Fees  ☐ Waived  ☐ Court Rec ___  ☐ Consec'd  ☐ EMP/PSP/ERP/DRP/Co Parole/PRCS    M02
☐ Sent Deemed Srv'd  ☐ Rpt to Parole/Prob w/in ___  ☐ Adv/ORD ___  ☐ Yrs/Mos Parole/MS/PRCS/Appeal  ☐ Consec  ☐ Conc to
☐ Bail CJ Susp  ☐ All-but ___ Hrs/Days/Mos  ☐ On Cond Complete Residential Treatment Prgm  ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-Process    ☐ AM/PM  ☐ Stay / Surrender / Transport to ___    ☐ AM/PM or Sooner
☑ REMANDED–BAIL $ ___  ☐ REMAIN AS SET  ☐ NO BAIL  ☐ COMMITTED  ☐ RELEASED  ☐ OR  ☐ SORP  ☐ JAC PHONE ASSM'T  ☐ P36
☐ AS COND OF SORP  ☐ BAIL INCREASED / REDUCED  ☐ TO PRGM AS REQ BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA CLARA**
**ATTACHMENT PAGE**

PEOPLE vs. _Craig Richard Chandler_          CASE # _C1223754_

DATE: _____

| Count | F/M | Violation | Prison Term /Yrs | Enhancements / Priors | Yrs/Styd/Strkn | County Jail |
|-------|-----|-----------|------------------|-----------------------|----------------|-------------|
| 5 | F | PC288(a) | | PC1del.61(b)/(E) -True | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Strike Prior(s) stricken pursuant to PC1385 based on the following reasons: |
|---|
| 1. |
| 2. |
| 3. |
| 4. |
| 5. |

### ADDITIONAL PROBATION CONDITIONS:

[ ] Participate in San Jose Alternatives to Violence Men's Drop-In Group until enrolled in Domestic Violence Program
[ ] Participate in Alcohol/Child Abusers or other therapeutic program/counseling as directed by APO/Court

[ ] Participate in Delete [ ]Reinstate [ ] 1st Offender [ ] 3 mos [ ] 6 mos [ ] MOP [ ] Report within _____days
[ ] DL suspended/revoked/restricted for _____days/mos/yrs to, from, during [ ] Work/Alc Prog/School/Appts._____ [ ] Pur VC____
[ ] IID advised / ordered / removed. Term_____yrs. [ ] Vehicle impounded / not impounded  [ ] Standard conditions Pursuant VC23600

[ ] Pay all certified batterer's program participation fees
[ ] Do not annoy, molest, strike, attack, threaten, harass, batter, sexually assault or disturb the peace of the victim
[ ] No contact with victim or family / co-defendants unless approved by APO / Court
[ ] No contact by mail / pager / portable communication device
[ ] Stay away from victim's residence and place of employment
[ ] Stay_____ feet / yards from victim
[ ] May have contact with victim under conditions approved by APO
[ ] Obey all Family Court orders
[ ] Shall not use corporal punishment in the disciplining of children

[ ] No illegal drugs / medications without a prescription
[ ] Take all medications as prescribed

[ ] GANG ORDERS: no insignia, tattoos, emblem, button, badge, cap, hat, scarf, bandanna, jacket, or other article of clothing which is evidence of affiliations with/or membership in a gang, no association with gang members, not frequent any areas of gang related activity. Shall not be adjacent to any school campus during school hours unless enrolled or with prior administrative permission. Shall not appear at any court proceeding unless a party, or defendant in a criminal action or subpoenaed as a witness. Register as required by law due to gang association.
[ ] Other: _____

1403

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### HONORABLE ARTHUR BOCANEGRA – DEPT 37

DATE: 08-1-13                              CASE NUMBER: C1223754
CLERK: EDGAR DE SANTIAGO/JENNIFER PENA        DEPUTY: ED ARMENTA
REPORTER: JAMIE MIXCO

---

**PEOPLE OF THE STATE OF CALIFORNIA**          D.D.A: ALISON FILO

Vs.

**CRAIG CHANDLER**                          ATTY: BRIAN MADDEN

---

| Proceedings: | Deliberations | DAY 21 | page 1 of 3 |
| --- | --- | --- | --- |

| | |
| --- | --- |
| 9:39 am | Off the record, the jury returns to the jury room to continue deliberations. |
| 9:51 am | Jury question No. 1 is handed to the deputy by the foreperson, Juror No. 3. Court and counsels are notified. |
| 10:32 am | Off the record, Court and counsel meet in chambers to discuss jury question No. 1. |
| 10:45 am | On the record with all 12 jurors present. Counsel and alternate jurors are not present. The defendant's presence has been waived. The Court provides the jurors with the answer to jury question No. 1. |
| 10:50 am | The jury returns to the jury room to continue deliberations. |
| 10:54 am | Outside the presence of the jury, Court is in session with all parties present. The defendant is not present. The Court instructs the court reporter to read back what was reported as the Judge was speaking to the jury in reference to jury question No. 1. |
| 10:55 am | Court stands in recess. |
| 11:40 am | Off the record, the jury takes its lunch recess. |
| 1:00 pm | Off the record, the jury returns to the jury room to continue deliberations. |
| 2:35 pm | Off the record, Deputy Ed Armenta is advised by the jury that they have reached a verdict. The clerk contacts counsel and the alternate jurors by telephone and they are instructed to return to the courtroom as directed by the Court. |

1404

| Proceedings: | Deliberations | DAY 21 | page 2 of 3 |
|---|---|---|---|

3:40 pm     Court is in session with all above parties present, including the jury. At their request, alternate juror Nos. 1, 2, 3 and 4 are present in court. Court addresses the jury foreperson, Juror No. 3, and confirms the jury has arrived at verdicts. The deputy hands the verdicts to the Court, who then reviews the verdict forms.

Court instructs the clerk to record the verdict. The clerk records the verdict:

Count One,           PC 288(a), a Felony: Guilty
Allegation:          PC 667.61(b)/(e): Found True

Count Two,           PC 288(a), a Felony: Guilty
Allegation:          PC 667.61(b)/(e): Found True

Count Three,         PC 288(a), a Felony: Guilty
Allegation:          PC 667.61(b)/(e): Found True

Count Four,          PC 288(a), a Felony: Guilty
Allegation:          PC 667.61(b)/(e): Found True

Count Five,          PC 288(a), a Felony: Guilty
Allegation:          PC 667.61(b)/(e): Found True

A redacted copy is incorporated herein and attached hereto, with the original verdict sealed.

3:48 pm     The Court polls the jury.

3:50 pm     The Court reads the jury the final jury instructions, as stated. Court lifts the admonition and excuses the jury. The Court orders the jury information be sealed until further order of court. The Defense waives time for sentencing. Court orders a full Probation report be prepared and continues the matter to September 27, 2013 at 9:00am in department 37 for probation/sentencing. Court orders the defendant is to remain in custody with no bail allowed.

3:52 pm     Off the record, the deputy escorts the jury into the jury room momentarily. The courtroom is cleared with the exception of counsels and court staff.

4:04 pm     Off the record, the deputy escorts the jury back into the courtroom. Joe Maculuso, Court Public Information Officer addresses the jury regarding the media. Court addresses the jury regarding any questions they have.

4:10 pm     Court stands in recess.

| Proceedings: | Deliberations | DAY 21 | page 3 of 3 |
|---|---|---|---|

4:34 pm      Court is in session. SJPD Officer Pierce and Deputy District Attorney, Allison Filo are present. Defense counsel, the defendant and the jury are not present. The Court orders People's exhibits 10 and 11 be supplemented with photos and that SJPD Officer Pierce pick up the actual exhibits on Monday, August 5, 2013.

                Court is adjourned.

1406

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
## SAN JOSE FACILITY

FILED

AUG 02 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | } |
| Plaintiff, | } CASE NO. C1223754 |
| | } |
| VS | } |
| | } |
| CRAIG RICHARD CHANDLER, | } |
| Defendant, | } |

# JURY INSTRUCTIONS
# GIVEN

1407

This Information alleges that:

9/27/1   9:00

count copy

## COUNT 1

On or about and between  September 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Isabell Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 2

On or about and between September 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Becky Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

1408

## COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Laurie Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 4

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Wendy Doe, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 5

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Arleth Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

1409

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, has been convicted in the present case or cases of committing an offense specified in the subdivision (c) against multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

1410

2 A

**CALCRIM No. 200**

Members of the jury, I will now instruct you on the law that applies to this case. Each of you has a copy of these instructions to use in the jury room. The instructions that you receive may be printed, typed, or written by hand. Certain sections may have been crossed-out or added. Disregard any deleted sections and do not try to guess what they might have been. Only consider the final version of the instructions in your deliberations.

You must decide what the facts are. It is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial.

Do not let bias, sympathy, prejudice, or public opinion influence your decision. Bias includes, but is not limited to, bias for or against the witnesses, attorneys, defendant or alleged victims, based on disability, gender, nationality, national origin, race or ethnicity, religion, gender identity, sexual orientation, age, or socioeconomic status.

You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions.

Pay careful attention to all of these instructions and consider them together. If I repeat any instruction or idea, do not conclude that it is more important than any other instruction or idea just because I repeated it.

Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.

Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.

1411

Page 1 of 1

CALCRIM No. 201

Do not use the Internet, or any other electronic source, such as Facebook or Twitter, a dictionary, or any other source of information or means of communication in any way in connection with this case, either on your own or as a group. Do not investigate the facts or the law or do any research regarding this case, either on your own, or as a group. Do not conduct any tests or experiments, or visit the scene of any event involved in this case. If you happen to pass by the scene, do not stop or investigate.

1412

CALCRIM No. 202

You have been given notebooks and may have taken notes during the trial. You may use your notes during deliberations. Your notes are for your own individual use to help you remember what happened during the trial. Please keep in mind that your notes may be inaccurate or incomplete.

If there is a disagreement about the testimony and stipulations at trial, you may ask that the court reporter's record be read to you. It is the record that must guide your deliberations, not your notes. You must accept the court reporter's record as accurate.

Please do not remove your notes from the jury room.

At the end of the trial, your notes will be collected and destroyed.

1413



Page 1 of 1

CALCRIM No. 207

It is alleged that the crime charged in Count One occurred on or about and between September 1, 2011, and January 6, 2012; the crime charged in Count Two occurred on or about and between September 1, 2011 and November 1, 2011; the crime charged in Count Three occurred on or about and between September 1, 2011, and January 10, 2012; and the crimes charged in Counts Four and Five occurred on or about and between September 1, 2010, and June 1, 2011.

The People are not required to prove that the crime took place on any particular day only that it occurred during the time period alleged for each count.

1414

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CALCRIM No. 208**

In this case, persons were called by their first names, and occasionally, the last name (Doe) was used. The last name (Doe) was used only to protect their privacy. The fact that a person was identified in this way is not evidence. Do not consider this fact for any purpose.

1415

⑦

CALCRIM No. 121

Some testimony was given in Cantonese and Spanish. An interpreter provided a translation for you at the time that the testimony was given. You must rely on the translation provided by the interpreter, even if you understood the language spoken by the witness. Do not retranslate any testimony for other jurors.

1416

CALCRIM No. 220

The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime and special allegation  beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

1417



CALCRIM No. 222

"Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.

Evidence also means writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.

Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true.

During the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses. I ruled on the objections according to the law. If I sustained an objection, you must ignore the question. If the witness was not permitted to answer, do not guess what the answer might have been or why I ruled as I did. If I ordered testimony stricken from the record you must disregard it and must not consider that testimony for any purpose.

You must disregard anything you saw or heard when the court was not in session, even if it was done or said by one of the parties or witnesses.

During the trial, you were told that the People and the defense agreed, or stipulated, to certain facts. This means that they both accept those facts as true. Because there is no dispute about those facts you must also accept them as true.

The court reporter has made a record of everything that was said during the trial. If you decide that it is necessary, you may ask that the court reporter's record be read to you. You must accept the court reporter's record as accurate.

1418

Page 1 of 1



CALCRIM No. 223

Facts may be proved by direct or circumstantial evidence or by a combination of both. Direct evidence can prove a fact by itself. For example, if a witness testifies he saw it raining outside before he came into the courthouse, that testimony is direct evidence that it was raining. Circumstantial evidence also may be called indirect evidence. Circumstantial evidence does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which you may logically and reasonably conclude the truth of the fact in question. For example, if a witness testifies that he saw someone come inside wearing a raincoat covered with drops of water, that testimony is circumstantial evidence because it may support a conclusion that it was raining outside.

Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all the evidence.

1419



**CALCRIM No. 224**

Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

1420

12

Page 1 of 1

CALCRIM No. 226

You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.

You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe.

In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are:

How well could the witness see, hear, or otherwise perceive the things about which the witness testified?

How well was the witness able to remember and describe what happened?

What was the witness's behavior while testifying?

Did the witness understand the questions and answer them directly?

Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided?

What was the witness's attitude about the case or about testifying?

Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?

How reasonable is the testimony when you consider all the other evidence in the case?

Did other evidence prove or disprove any fact about which the witness testified?

Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it

1421

(13)

1   differently.

2        If you do not believe a witness's testimony that he or she no longer remembers something,

3   that testimony is inconsistent with the witness's earlier statement on that subject.

4        If you decide that a witness deliberately lied about something significant in this case, you

5   should consider not believing anything that witness says. Or, if you think the witness lied about some

6   things, but told the truth about others, you may simply accept the part that you think is true and ignore

7   the rest.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1422

(14)

CALCRIM No. 300

Neither side is required to call all witnesses who may have information about the case or to produce all physical evidence that might be relevant.

Page 1 of 1

1423



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALCRIM No. 301

The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence.

1424

(16)

Page 1 of 1

CALCRIM No. 302

If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. Do not simply count the number of witnesses who agree or disagree on a point and accept the testimony of the greater number of witnesses. On the other hand, do not disregard the testimony of any witness without a reason or because of prejudice or a desire to favor one side or the other. What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point.

Page 1 of 1

1425

17

CALCRIM No. 318

You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways:

    1. To evaluate whether the witness's testimony in court is believable;

    AND

    2. As evidence that the information in those earlier statements is true.

1426



CALCRIM No. 330

You have heard testimony from a child who is age 10 or younger. As with any other witness, you must decide whether the child gave truthful and accurate testimony.

In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development.

When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate.

While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child.

1427

Page 1 of 1

19

CALCRIM No. 332

   Witnesses were allowed to testify as experts and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

   An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion.

1428



Page 1 of 1

**CALCRIM No. 333**

Witnesses, who were not testifying as experts, gave their opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

1429



Page 1 of 1

**CALCRIM No. 355**

A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way.

1430

CALCRIM No. 370

The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive.

Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty.

1431

Page 1 of 1

CALCRIM No. 1190

Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone.

1432

24

CALCRIM No. 252

The crimes charged in Counts 1, 2, 3, 4, and 5, and the Lesser Included crime require proof of the union, or joint operation, of act and wrongful intent.

The following crime requires general criminal intent: Battery. For you to find a person guilty of this crime, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime.

The crime Lewd or Lascivious Act on a child under 14 years requires a specific intent. For you to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime.

1433

CALCRIM No. 1110

The defendant is charged in Counts One, Two, Three, Four, and Five with committing a Lewd or Lascivious act on a Child under the age of 14 years in violation of Penal Code section 288(a).

To prove that the defendant is guilty of this crime, the People must prove that:

1.A)  The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;;

OR

1.B)  The defendant willfully caused a child to touch the defendant's body, either on the bare skin or through the clothing;

2.  The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;

AND

3.  The child was under the age of 14 years at the time of the act.


The touching need not be done in a lewd or sexual manner.

Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required.

It is not a defense that the child may have consented to the act.

1434

Page 1 of 1

CALCRIM No. 3181

1
2
3        If you find the defendant guilty of two or more sex offenses, as charged in Counts 1, 2, 3,
4 4 and 5, you must then decide whether the People have proved the additional allegation that those
5 crimes were committed against more than one victim.
6        The People have the burden of proving this allegation beyond a reasonable doubt. If the
7 People have not met this burden, you must find that this allegation has not been proved.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1435


27

CALCRIM No. 960

The crime of Battery, a violation of Penal Code section 243(a), a Misdemeanor, is a Lesser Included Offense of Lewd or Lascivious Act of a Child Under 14 years in violation of Penal Code section 288(a), a Felony, as charged in Counts 1, 2, 3, 4, and 5.

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant willfully and unlawfully touched Isabell, Becky, Laurie, Wendy, or Arleth Doe in a harmful or offensive manner.

Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

The slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.

The touching can be done indirectly by causing an object to touch the other person.

1436

CALCRIM No. 3501

For all the offenses alleged, Counts 1 through 5, the People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless:

    1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense;

    OR

    2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.

1437

Page 1 of 1

CALCRIM No. 3515

Each of the counts charged in this case is a separate crime . You must consider each count separately and return a separate verdict for each one .

1438

30

CALCRIM No. 3517

If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct.

I will explain to you which charges are affected by this instruction:

Misdemeanor Battery, a violation of Penal Code section 243(a) is a lesser crime of Felony Lewd or Lascivious Act on a Child Under 14 years, a violation of Penal Coide section 288(a) as charged in Counts 1, 2, 3, 4, and 5

It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime.

You will receive verdict forms of guilty and not guilty for the greater crime and also verdict forms of guilty and not guilty for the lesser crime. Follow these directions before you give me any completed and signed, final verdict form. Return any unused verdict forms to me, unsigned.

1. If all of you agree the People have proved that the defendant is guilty of the greater crime, complete and sign the verdict form for guilty of that crime. Do not complete or sign any other verdict form for that count.

2. If all of you cannot agree whether the People have proved that the defendant is guilty of the greater crime, inform me only that you cannot reach an agreement and do not complete or sign any verdict form for that count.

3. If all of you agree that the People have not proved that the defendant is guilty of the greater crime and you also agree that the People have proved that he is guilty of the lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for guilty of the lesser crime.

4. If all of you agree the People have not proved that the defendant is guilty of   1439

Page 1 of 2

the greater or lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for not guilty of the lesser crime.

     5. If all of you agree the People have not proved that the defendant is guilty of the greater crime, but all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime.

    Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.

1440

CALCRIM No. 3550

When you go to the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard.

It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict if you can. Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong. But do not change your mind just because other jurors disagree with you.

Keep an open mind and openly exchange your thoughts and ideas about this case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. Please treat each other with consideration. Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other.

As I told you at the beginning of the trial, do not talk about the case or about any of the people or any subject involved in it with anyone, including, but not limited to, your spouse or other family, or friends, spiritual leaders or advisors, or therapists. You must discuss the case only in the jury room and only when all jurors are present. Do not discuss your deliberations with anyone. Do not communicate using: any electronic device during your deliberations.

It is very important that you not use the Internet or any other source in any way in connection with this case during your deliberations.

During the trial, several items were received into evidence as exhibits. You may examine whatever exhibits you think will help you in your deliberations. These exhibits will be sent into the jury room with you when you begin to deliberate.

If you need to communicate with me while you are deliberating, send a note through the bailiff, signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you not communicate with me except by a written note. If you have questions, I will talk with the attorneys before I answer so it may take some time. You should continue

1441

1 | your deliberations while you wait for my answer. I will answer any questions in writing or orally here in
2 | open court.
3 |     Do not reveal to me or anyone else how the vote stands on the (question of guilt orother
4 | issues in this case) unless I ask you to do so.
5 |     Your verdict on each count and any special findings must be unanimous. This means that,
6 | to return a verdict, all of you must agree to it. Do not reach a decision by the flip of a coin or by any
7 | similar act.
8 |     It is not my role to tell you what your verdict should be. Do not take anything I said or did
9 | during the trial as an indication of what I think about the facts, the witnesses, or what your verdict
10 | should be.
11 |     You must reach your verdict without any consideration of punishment.
12 |     You will be given  verdict forms. As soon as all jurors have agreed on a verdict, the
13 | foreperson must date and sign the appropriate verdict forms and notify the bailiff. If you are able to
14 | reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only,
15 | and notify the bailiff. Return any unsigned verdict form.

16
17
18
19
20
21
22
23
24
25
26
27
28

1442



**CALCRIM No. 3577**

     To the alternate jurors: The jury is now deliberating, but you are still  alternate jurors and are bound by my earlier instructions about your conduct.

     Do not talk about the case or about any of the people or any subject involved in it with anyone, not even your family or friends, and not even with each other. Do not have any contact with the deliberating jurors. Do not decide how you would vote if you were deliberating. Do not form or express an opinion about the issues in this case, unless you are substituted for one of the deliberating jurors.

1443

36

CALCRIM No. 3590

You have now completed your jury service in this case. On behalf of all the judges of the court, please accept my thanks for your time and effort.

Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone.

Let me tell you about some rules the law puts in place for your convenience and protection.

The lawyers in this case, the defendant, or their representatives may now talk to you about the case, including your deliberations or verdict. Those discussions must occur at a reasonable time and place and with your consent.

Please tell me immediately if anyone unreasonably contacts you without your consent.

Anyone who violates these rules is violating a court order and may be fined.

I order that the court's record of personal juror identifying information, including names, addresses, and telephone numbers, be sealed until further order of this court.

Again, thank you for your service. You are now excused.

1444



Page 1 of 1

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
SAN JOSE FACILITY

F I L E D

AUG 0 2 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

THE PEOPLE OF THE STATE OF CALIFORNIA,       }
                                    Plaintiff,   } CASE NO.  C1223754
                                                 }
                                                 }
                    VS                           }
                                                 }
                                                 }
CRAIG RICHARD CHANDLER,                          }
                                    Defendant,   }

# JURY INSTRUCTIONS
# SUBSTITUTED OUT

1445

This Information alleges that: 

court's copy
Following 3 pages Removed

## COUNT 1

On or about and between  September 1, 2011 and January 6, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Isabell Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 2

On or about and between September 1, 2011 and November 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Becky Doe, a child under the age of fourteen years, namely, 7, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

1446



## COUNT 3

On or about and between September 1, 2011 and January 10, 2012, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Laurie Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 4

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Wendy Doe, a child under the age of fourteen years, namely, 9, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

## COUNT 5

On or about and between September 1, 2010 and June 1, 2011, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CRAIG RICHARD CHANDLER who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Arleth Doe, a child under the age of fourteen years, namely, 8, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant(s) and of the child.

1447

It is further alleged that the defendant, CRAIG RICHARD CHANDLER, multiple victims, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

CALCRIM No. 222

"Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.

Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true.

During the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses. I ruled on the objections according to the law. If I sustained an objection, you must ignore the question. If the witness was not permitted to answer, do not guess what the answer might have been or why I ruled as I did. If I ordered testimony stricken from the record you must disregard it and must not consider that testimony for any purpose.

You must disregard anything you saw or heard when the court was not in session, even if it was done or said by one of the parties or witnesses.

During the trial, you were told that the People and the defense agreed, or stipulated, to certain facts. This means that they both accept those facts as true. Because there is no dispute about those facts you must also accept them as true.

Page 1 of 1

1448



## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA, )

                         )

             Plaintiff,    )

                         )

VS.                          )

                         )

CRAIG RICHARD CHANDLER,     )

              Defendant.   )

Information No: C1223754

ORDER
RETURNING
EXHIBITS

**FILED**

AUG 0 5 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
DEPUTY

### ORDER PERMITTING RETURN OF EXHIBITS

Permission is hereby granted to San Jose Police Department Officer:   Sean Pierce
to return the following "original" exhibits in the above entitled action, pursuant to Penal
Code Section 1417.3 , and a photo is to replace stated exhibits.

EXHIBITS:

| 10 | Blue, plastic and fabric chair base (labeled SY01) |
|----|----------------------------------------------------|
| 11 | Blue, plastic and fabric chair base (labeled SY02) |

Said exhibits are to be returned to the San Jose Police Department's Evidence Locker,
and to be retained by said department pending the determination of all appellate remedies
to this case.

Dated:  8/5/13

                                     Hon. Arthur Bocanegra
                                     Judge of the Superior Court

Receipt of the above-mentioned exhibits is hereby acknowledged.

Dated:  8-5-13

                                     Officer Sean Pierce, S.J.P.D.

1449

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                        )   Information No: C1223754
                           Plaintiff,   )
                                        )        ORDER
                                        )      RETURNING
VS.                                     )      EXHIBITS
                                        )
                                        )
CRAIG RICHARD CHANDLER,                 )
                           Defendant.   )

**F I L E D**

AUG 06 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

## ORDER PERMITTING RETURN OF EXHIBITS

Permission is hereby granted to Defense Attorney: Brian Madden
to return the following "original" exhibits in the above entitled action, pursuant to Penal
Code Section 1417.3 , and a photo is to replace stated exhibits.

EXHIBITS:

| A1  | Enlarged, color photo of a classroom (rear) |
|-----|---------------------------------------------|
| A2  | Enlarged, color photo of teacher's desk |
| A3  | Enlarged, color photo of a teacher's desk (close-up, side view) |
| A4  | Enlarged, color photo of an open classroom door |
| A5  | Enlarged, color photo of a wooden cabinet |
| A6  | Enlarged, color photo of the contents of an open wooden cabinet |
| A7  | Enlarged, color photo of the contents along the wall of a classroom |
| A8  | Enlarged, color photo of a classroom (alternate view) |
| A9  | Enlarged, color photo of six adjoining, student desks |
| A10 | Enlarged, color photo of a classroom (left corner) |
| A11 | Enlarged, color photo of a corner in a classroom |
| A12 | Enlarged, color photo of classroom whiteboards |
| A13 | Enlarged, color photo of a classroom (view from center) |

1450

Said exhibits are to be returned to Defense Attorney, Brian Madden and to be retained by said person pending the determination of all appellate remedies to this case.

Dated: 8/5/13

Hon. Arthur Bocanegra
Judge of the Superior Court

Receipt of the above-mentioned exhibits is hereby acknowledged.

Dated: 8/06/13

Atty. Brian Madden

1451

## IN THE SUPERIOR COURT CALIFORNIA
### County Of Santa Clara

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | **F I L E D** |
| Plaintiff | AUG 0 8 2013 |
| Craig Richard Chandler | DAVID H. YAMASAKI |
| Defendant (s) | Chief Executive Officer/Clerk Superior Court of Ca/County of Santa Clara BY_____ DEPUTY |

**PEOPLE'S EXHIBIT LIST**

Honorable Arthur Bocanegra                          Dept 37
Clerk: C. Stafford

Case No. **C1223754**

| Exhibit # | DESCRIPTION | Identification | Admitted |
|---|---|---|---|
| 1 | Disc containing audio and video of police interview with Isabell Doe | 07/15/13 | 7/29/13 |
| 1A | Written transcript of People's Exhibit #1 | 07/15/13 | 7/29/13 |
| 2 | Color photo of a child's, hooded jacket | 07/16/13 | 7/29/13 |
| 3 | 3pg. Document – Handwritten notes | 07/16/13 | 7/29/13 |
| 4 | Becky Doe's Preliminary Examination testimony (Transcript pgs. 7 – 56) | 07/16/13 | 7/29/13 |
| 5 | Disc containing audio and video of police interview with Laurie Doe | 07/17/13 | 7/29/13 |
| 5A | Written transcript of People's Exhibit #5 | 07/17/13 | 7/29/13 |
| 6 | Disc containing audio and video of police interview with Becky Doe | 07/17/13 | 7/29/13 |
| 6A | Written transcript of People's Exhibit #6 | 07/17/13 | 7/29/13 |
| 7 | Hand-drawn picture | 07/18/13 | 7/29/13 |
| 8 | Disc containing audio and video of police interview with Arleth Doe | 07/22/13 | 7/29/13 |
| 8A | Written transcript of People's Exhibit #8 | 07/22/13 | 7/29/13 |
| 9 | 64pg. Santa Clara County Crime Lab Report | 07/22/13 | 7/29/13 |
| * 10 | Blue, plastic and fabric chair base (labeled SY01) | 07/22/13 | 7/29/13 |
| * 11 | Blue, plastic and fabric chair base (labeled SY02) | 07/22/13 | 7/29/13 |
| 12 | Sketched diagram | 07/23/13 | 7/29/13 |
| 13 | Color, aerial map of scene | 07/23/13 | 7/29/13 |
| 14 | Color photo of a man standing inside a classroom | 07/23/13 | 7/29/13 |
| 15 | CD containing audio and video of police interview with Wendy Doe | 07/23/13 | 7/29/13 |
| 15A | Written transcript of People's Exhibit #15 | 07/23/13 | 7/29/13 |
| 16 | DVD containing audio and video from the defendant's iPhone | 07/23/13 | 7/29/13 |

1452

| 17 | Color photo of blue, plastic and fabric chair base with a ruler to the left (labeled SY01) | 07/23/13 | 7/29/13 |
|----|---|---|---|
| 18 | Color photo of the backside of a chair, with a ruler to the left | 07/23/13 | 7/29/13 |
| 19 | Color photo of a portion of a chair, with three black circles surrounding stains and a ruler at bottom | 07/23/13 | 7/29/13 |
| 20 | Color photo of a blue, plastic and fabric chair base, with a ruler to the left (labeled SY02) | 07/23/13 | 7/29/13 |
| 21 | Color photo of the back of a chair, with two black circles surrounding stains and a metal ruler between (close-up view) | 07/23/13 | 7/29/13 |
| 22 | Color photo of the back of a chair, with two black circles surrounding stains and a ruler to the left | 07/23/13 | 7/29/13 |
| 23 | Color photo of the side panel of a blue chair, with three black circles surrounding stains and a metal ruler at bottom | 07/23/13 | 7/29/13 |
| 24 | Hand-drawn picture on a sheet of ruled, binder paper | 07/25/13 | 7/29/13 |
| 25 | Large diagram of classroom | 7/29/13 | 7/29/13 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

* Photo substituted in place of original exhibit per order of the Court

Above exhibits received by Exhibit Control as correct.

DATE: _____AUG 0 8 2013_____   Deputy Clerk _____   1453

IN THE SUPERIOR COURT CALIFORNIA

## County Of Santa Clara

THE PEOPLE OF THE STATE OF CALIFORNIA

Plaintiff

Craig Richard Chandler

Defendant (s)

FILED

AUG 0 8 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

Defense EXHIBIT LIST

Honorable Arthur Bocanegra          Dept 37
Clerk: C. Stafford

Case No.
C1223754

| Exhibit # | DESCRIPTION | Identification | Admitted |
|-----------|-------------|----------------|----------|
| *   A1 | Enlarged, color photo of a classroom (rear) | 07/15/13 | 7/29/13 |
| *   A2 | Enlarged, color photo of teacher's desk | 07/15/13 | 7/29/13 |
| *   A3 | Enlarged, color photo of a teacher's desk (close-up, side view) | 07/15/13 | 7/29/13 |
| *   A4 | Enlarged, color photo of an open classroom door | 07/15/13 | 7/29/13 |
| *   A5 | Enlarged, color photo of a wooden cabinet | 07/15/13 | 7/29/13 |
| *   A6 | Enlarged, color photo of the contents of an open wooden cabinet | 07/15/13 | 7/29/13 |
| *   A7 | Enlarged, color photo of the contents along the wall of a classroom | 07/15/13 | 7/29/13 |
| *   A8 | Enlarged, color photo of a classroom (alternate view) | 07/15/13 | 7/29/13 |
| *   A9 | Enlarged, color photo of six adjoining, student desks | 07/15/13 | 7/29/13 |
| *   A10 | Enlarged, color photo of a classroom (left corner) | 07/15/13 | 7/29/13 |
| *   A11 | Enlarged, color photo of a corner in a classroom | 07/15/13 | 7/29/13 |
| *   A12 | Enlarged, color photo of classroom whiteboards | 07/15/13 | 7/29/13 |
| *   A13 | Enlarged, color photo of a classroom (view from center) | 07/15/13 | 7/29/13 |
| B | 1 pg. Document – Attendance Record of Isabell Doe | 07/15/13 | 7/29/13 |
| C | 4pg. Document – Typewritten notes | 07/16/13 | not adm. |
| C1 | 1pg. Document – Typewritten notes, dated October 14, 2011 | 07/24/13 | not adm. |
| D | 3.5" x 5" color photo of a classroom | 07/23/13 | 7/29/13 |
| E1 | Color photo of the contents in an open desk drawer | 07/23/13 | 7/29/13 |
| E2 | Color photo of the contents in an open desk drawer (close-up view) | 07/23/13 | 7/29/13 |
| E3 | Color photo of the contents in an open desk drawer | 07/23/13 | 7/29/13 |
| E4 | Color photo of the contents in an open desk drawer | 07/23/13 | 7/29/13 |

1454

| | | (close-up view) | | |
|---|---|---|---|---|
| F1 | Color photo of an open door classroom door | | 07/23/13 | 7/29/13 |
| F2 | Color photo of a closed door classroom door | | 07/23/13 | 7/29/13 |
| G | 2pg. Document – Ten Step Investigative Interview | | 07/23/13 | 7/29/13 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

* Photo substituted in place of original exhibit per order of the Court

Above exhibits received by Exhibit Control as correct.

DATE: ___AUG 0 8 2013___     Deputy Clerk ___Ruby Pallid___

1455

# EXHIBIT 1
# (Vol. 7)

COURT OF APPEAL, STATE OF CALIFORNIA,
IN AND FOR THE SIXTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE PEOPLE,<br><br>*PLAINTIFF AND RESPONDENT,*<br><br>V.<br><br>**CRAIG RICHARD CHANDLER**<br><br>*DEFENDANT AND APPELLANT.* | COURT OF APPEAL NO.: **H040429**<br><br>VOL. <u>7</u> of <u>7</u><br><br>PAGES <u>1,456</u> thru <u>1,584</u> | |

# CLERK'S TRANSCRIPT

CLERK'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SANTA CLARA.

SUPERIOR COURT NUMBER:   <u>C1223754</u>

HONORABLE _____**ARTHUR BOCANEGRA**_____, JUDGE

APPEARANCES:

**ATTORNEY GENERAL**
**455 GOLDEN GATE AVENUE**
**ROOM 11000**
**SAN FRANCISCO, CA 94102**

COUNSEL FOR PLAINTIFF
AND RESPONDENT

SIXTH DISTRICT APPELLATE PROGRAM
100 NORTH WINCHESTER BLVD, SUITE 310
SANTA CLARA, CA 95050

COUNSEL FOR DEFENDANT
AND APPELLANT

NOTICE OF APPEAL FILED _____November 22, 2013_____

NOTICE OF COMPLETION _____JAN 2 9 2014_____

```
└─1   SUPERIOR COURT                              CASE NO.    C1223754
      190 W. HEDDING STREET              TC:   CEN          12001535
      SAN JOSE, CA 95110          DATE   09/27/2013  9:00 A DEPT. 37
EOPLE VS.                                10/25/1976 CAB3721090  CDY BK:Y
.K.A.  CRAIG RICHARD CHANDLER      CLERK   J.PENA            EBK966 M
       1361 N SAN PEDRO ST       HEARING  PROBATION AND SENTENCING
       SAN JOSE, CA 95110        DV:  AGENCY   SJ-04313-   -UNKNOWN
JDGE   HON. ARTHUR BOCANEGRA     CHILD:  STATUS.  I-SET -NBA       TW   Y
EPORTER J.MIXCO                  D.A. A.FILO        APO
EF. ATTY. MADDEN, BRIAN  (G)
HARGES   F(001)PC288(A)           F(002)PC288(A)        VIOLATION DATE
         F(003)PC288(A)           F(004)PC288(A)        09/01/2010
         F(005)PC288(A)          11-22-13   9:00  D37
```

NEXT APPEARANCE

☐ Defendant Present ☑ Not Present WVd ☑ Atty Present A/R                    ☐ AD / PD / IDO / Special App

☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☑ Prob / Sent   ☐ Interpreter _____   ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☑ Rptr. Adv / Wav ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC   ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv   ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC   ☐ Bail Exonerated ☐ Forfeited   Bond # _____
☐ Denies Priors/ Allegations/ Enhancements/Refusal ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury   ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence   ☐ Ref'd _____   ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADO / IDO ☐ Con Decl ☐ Adm A / F   ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't   ☐ SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ _____ Relieved _____ Appt'd   ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg   ☐ BW Ordered $ _____   ☐ Stayed ☐ To Issue
☐ Hrg on Motion _____   ☐ Doubt Decl Pursuant PC 1368   ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal   ☐ Subm on Report ☐ Found _____   ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed _____   ☐ Max Term _____ ☐ Committed _____   ☐ Proof of _____
☐ Prelim Wav ☐ Certified to General Jurisdiction   ☐ MDA / COM Amended to   (A atty will not be
☐ Amended to ☐ (M) VC12500(a) / VC23103(a) ☐ Pur VC23103.5 ☐ DA Stmt Filed   present until 10:30
PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP   ☐ Add to list ☐ Vacate pending date
☐ Jail / Prison Term of _____   ☐ Submr time of Sent ☐ Harvey Stip
☐ Dismissal / Striking _____   ☐ _____
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☐ Reg HS11590/PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees   ☐ PC29800/29805/30305/666/VC14607.8
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements/ allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $ _____   ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued   Fines/Fees  Pay to: ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # _____
☐ Sent Suspended _____                ☐ PROBATION DENIED      COUNT ____ $ ____ + PA $ ____   ☐ Purs HS11350d
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period   COUNT ____ $ ____ + PA $ ____   ☐ PC290.3
☐ COURT ☐ FORMAL PROBATION GRANTED for ____ Days / Mos / Yrs   AIDS / CPP $ ____ + PA $ ____  SORP ____
☐ Report to APO within _____ Days ☐ Terminated ☐ Upon Release   DPF       $ ____ + PA $ ____  EMAT $ ____
☐ Perform _____ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail   LAB       $ ____ + PA $ ____
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer   DRF/RF    $ ____  Add'l RF $ ____  Susp'd PC1202.44/45
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos  Enroll within _____ days   AEF       $ ____  Original Fine $ ____
☐ DL Susp/ Restr'd/ Rvk'd for _____ ☐ IID Not/Ordered/ Rmv'd Term ____ Yrs   SECA/COPA $ ____  CTS PC2900.5  $ ____
☐ No contact with victim/ or family / co-defts unless appr by APO ☐ PC1202.05   ICMF      $ ____  TOTAL DUE  $ ____
☐ DVPO issued / mod /term'd Exp _____ ☐ Victim Present   ICIN      $ ____  Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed   AR        $ ____ / Mo beginning _____
☐ Not own/possess deadly weapons ☐ Destroy/return weapon _____   SHELTER   $ ____  FINE STAYED _____
☐ Stay away from _____   DV        $ ____  Committed @ $ ____ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold   ATTY      $ ____  Consec/Conc to _____
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm   ASF325/CPF610 $ ____  Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☐ PC296 (DNA) ☐ PC1202.1 HIV Test / Education   P/INVEST    $ ____  P/SUP $ ____ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd _____ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP   CJAF $129.75/$259.50 $ ____  ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to _____   ☐ SECA, ICMF, ICIN, CJAF, PINVEST, PSUP FEES NOT COND. OF PROB
☐ Original Terms & Conditions Except as Amended herein   ☐ Restit ☐ Gen $ ____  to _____
☐ Co-terminous with _____ ☐ No Further Penalties / Reviews   ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly
Other: _____

JAIL/PRISON ☐ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence             County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|-------|-----|-----------|-------------------|----------------------|---------------------|-------------------|
| 1 | F | PC288(A) | PC1007.61(b)/(E) | | | |
| 2 | F | PC288(A) | PC1007.61(b)/(E) | | | |
| 3 | F | PC288(A) | PC1007.61(b)/(E) | | | |
| 4 | F | PC288(A) | PC1007.161(b)/(E) | | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|

CTS = _____ ACT + _____ ☐ 4019 ☐ ½ ☐ ⅓ ☐ PC2933.1 _____ Total  Total term _____   CDCR / PC 1170h
☐ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court Rec _____ ☐ EMP/PSP/ERP/DRP/Co Parole/NB _____
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in _____ ☐ Adv/ORD _____ Yrs/Mos Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to _____ 1456
☐ Bal CJ Susp ☐ All but _____ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU _____
☐ Pre-process _____ AM/PM ☐ Stay / Surrender / Transport to _____ @ _____ AM/PM or Sooner
☑ REMANDED-BAIL $ _____ ☐ REMAIN AS SET ☐ NO BAIL ☐ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

1 | Brian Madden, SB# 55869
2 | MADDEN & REDDING
  | 1625 The Alameda, Suite 801
3 | San Jose, California 95126
  | Telephone: (408) 275-8100
4 | Facsimile: (408) 275-8199



5 | Attorney for Defendant
  | CRAIG RICHARD CHANDLER

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | PEOPLE OF THE STATE OF CALIFORNIA,

12 |     Plaintiff,               Case No. C1223754

13 |     v.                   SENTENCING MEMORANDUM

14 | CRAIG RICHARD CHANDLER,

15 |     Defendant.

16

17 | **INTRODUCTION AND APPLICABLE LEGAL PRINCIPLES**

18 |     Mr. Chandler has been convicted of five counts of lewd conduct in violation of Penal

19 | Code §288, subdivision (a). In addition, the jury found with respect to each count that Mr.

20 | Chandler has been convicted of committing an offense against more than one victim within the

21 | meaning of section 667.61, subdivision (e)(4). Under section 667.61 subdivision (b), these

22 | findings make the offenses punishable by imprisonment for 15 years to life. Under section

23 | 667.61, subdivision (h), probation cannot be granted to a defendant who is subject to punishment

24 | under section 667.61. In addition, the finding that there was more than one victim makes Mr.

25 | Chandler ineligible for probation under section 1203.066, subdivision (a)(7). Furthermore,

26 | section 667.61, subdivision (g) precludes the striking under section 1385 or any other provision

27 | of law of the findings of any circumstances in subdivision (e).

28 |     Section 667.61 contains a provision mandating consecutive terms in some situations. It

1457

No. C1223754                   1               Sentencing Memorandum

1   is subdivision (i), which states: "For any offense specified in paragraphs (1) to (7), inclusive, of
2   subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), the court shall impose
3   a consecutive sentence for each offense that results in a conviction under this section if the
4   crimes involve separate victims or involve the same victim on separate occasions as defined in
5   subdivision (d) of Section 667.6." Violations of section 288, subdivision (a) are listed in
6   subdivision (c), paragraph (8), not in paragraphs (1) to (7) of subdivision (c). Violations of
7   section 288, subdivision (a) also are not listed in subdivision (n). This means that violations of
8   section 288, subdivision (a) are not subject to mandatory consecutive terms. Case law confirms
9   that a trial court has discretion to impose concurrent terms for multiple violations of section 288,
10   subdivision (a) in which the defendant is charged with having committed the offenses against
11   multiple victims. (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524; *People v. Rodriguez*
12   (2005) 130 Cal.App.4th 1257, 1262.) Thus even though Mr. Chandler has been convicted on
13   all five counts, his sentence can be 15, 30, 45 or 60 years to life, rather than 75 years to life.

14      When exercising its discretion whether to impose consecutive or concurrent terms under
15   section 667.61, a trial court should consider the factors set forth in California Rules of Court,
16   rule 4.425. (*People v. Rodriguez, supra*, 130 Cal.App.4th at p. 1262.) Rule 4.425(b) authorizes
17   a court to consider circumstances in aggravation and mitigation when deciding whether to
18   impost consecutive or concurrent terms. Circumstances in aggravation appear in rule 4.421.
19   Circumstances in mitigation appear in rule 4.423.

20      Mr. Chandler asks the Court to run four counts concurrently and to impose an aggregate
21   sentence of 15 years to life.

22                    ANALYSIS OF RELEVANT SENTENCING FACTORS

23      The Report of the Probation Officer (RPO) recommends that the Court impose
24   consecutive terms on all counts for an aggregate term of 75 years to life. (RPO 13.) The RPO
25   lists three factors in aggravation: (1) the victims were particularly vulnerable within the meaning
26   of rule 4.421(a)(3) because they were blindfolded and the defendant told them he was teaching
27   them a lesson plan about blind people; (2) the defendant took advantage of a position of trust or
28   confidence to commit the offenses within the meaning of rule 4.421(a)(11) because he was the

1458

No. C1223754                        2                 Sentencing Memorandum

victims' teacher; and (3) the defendant has engaged in violent conduct which indicates a serious danger to society within the meaning of rule 4.421(b)(1).  (RPO 18, which is not numbered.) The RPO lists one factor in mitigation – the defendant has no prior convictions within the meaning of rule 4.423(b)(1).  (RPO 21, which is not numbered.)  The list is incorrect in several respects and also fails to list all relevant mitigating factors, as Mr. Chandler will explain below. Mr. Chandler respectfully objects to the Court considering the incorrect factors and to any failure to consider the unlisted but relevant mitigating factors.

**A. Dual Use of the Same Fact**

As noted, the RPO relies on the victim vulnerability factor based in part on Mr. Chandler teaching a lesson plan about blind people.  It also relies on the factor related to taking advantage of a position of trust or confidence based on Mr. Chandler being the victims' teacher.  This amounts to dual use of the same fact to make two aggravating factors out of the same fact, namely that Mr. Chandler was the victims' teacher.

It is not uncommon for a single fact to fall within two aggravating factors.  The use of a weapon falls within rule 4.421(a)(2) – armed with or use of a weapon – and within rule 4.421(a)(3) – vulnerability.  But it is the fact that aggravates, not the fortuity of the fact falling under more than one aggravating factor.  A single fact cannot constitute two aggravating factors.

It is true that the RPO bases the vulnerability factor on the use of a blindfold as well as the offenses occurring during a lesson plan about blind people.  But the fact remains that a single fact is the entire basis for the factor in rule 4.421(a)(11) and a partial factual basis for the vulnerability factor.  A single fact is a single basis for aggravation, not two.

In addition, as recognized by the Supreme Court and numerous Court of Appeal cases: "An aggravating circumstance is a fact that makes the offense distinctively worse than the ordinary." (*People v. Black* (2007) 41 Cal.4th 799, 817, italics omitted; accord *People v. Young* (1983) 146 Cal.App.3d 729, 734 ["Factors may be used to aggravate when they have the effect of 'making the offense distinctively worse than ordinary.'"]; *People v. Moreno* (1982) 128 Cal.App.3d 103, 110; *In re Handa* (1985) 166 Cal.App.3d 966, 972 ["An aggravated crime is one that is worse than most."] *People v. Leung* (1992) 5 Cal.App.4th 482, 504; *People v. Lincoln*

No. C1223754                           3                    Sentencing Memorandum

(2007) 157 Cal.App.4th 196, 204.)  The use of the blindfold did not make the crime worse than most with respect to the question of vulnerability.  Ordinarily, vulnerability refers to factors that makes the crime easier to commit, such as the use of a firearm or threats or isolation.  The offenses in this case are almost always committed in isolation, not in public.  The blindfolding did not add to this or constitute force.  It simply hid from the victims the true nature of the acts being committed.  It made the acts easier to commit, but it did not add to the victims' vulnerability.

**B. Rule 4.421(b)(1) Does Not Apply**

As noted above, the third aggravating factor in the RPO is that the defendant has engaged in violent conduct which indicates a serious danger to society within the meaning of rule 4.421(b)(1), which provides: "The defendant has engaged in violent conduct that indicates a serious danger to society." Mr. Chandler assumes that the RPO refers to the commission of the offenses of which Mr. Chandler has been convicted in this case – the five violations of section 288, subdivision (a) – for the RPO lists no other crimes of any sort.  For two separate reasons, it is error to rely on rule 4.421(b)(1).

First the conduct in this case is not violent. The jury convicted Mr. Chandler of violating section 288, subdivision (a). Violence is not an element of this crime. Nor is there any indiction that Mr. Chandler used violence against the victims.

Section 288, subdivision (b)(1) is a violent crime. It applies to a person "who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person...." But Mr. Chandler was not convicted of this offense. Mr. Chandler submits it is improper to view as violent the non-violent type of lewd acts.

Second, and separately, case law interpreting rule 4.421(b)(1) indicates that it does not apply when the only violent crimes are the current ones. These cases say that the current offense may be considered only in conjunction with earlier crimes of violence, thereby showing a pattern of violent conduct extending over time. (*People v. Thompson* (1990) 222 Cal.App.3d 1647, 1651-1652; [considering two prior sex crimes and three charged assaults and concluding that

1460

No. C1223754                         4                    Sentencing Memorandum

they establish a pattern of violence]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 736-739 [concluding that the defendant had a pattern of violence based on a prior conviction for assault with a deadly weapon with use of a firearm, and current convictions for two rapes by force and/or violence and one violent and forcible oral copulation]; *People v. Lutz* (1980) 109 Cal.App.3d 489, 495-496 [defendant had a pattern of violence based on a prior armed robbery and a present assault by means of force likely to produce great bodily injury with intentional infliction of great bodily injury].) Here, there is no pattern of violence as there are no prior violent offenses.

### C. Mr. Chandler Had a Prior Misdemeanor Conviction in 1996

The RPO states that Mr. Chandler has no prior convictions and that this is a factor in mitigation under rule 4.423(b)(1). Actually, as came out at trial, Mr. Chandler had a prior misdemeanor conviction in 1996. Nevertheless, the factor in rule 4.423(b)(1) remains applicable. That factor applies when: "The defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes." The single prior misdemeanor conviction in 1996 constitutes a insignificant record of criminal conduct considering the recency and frequency of the prior crime.

### D. Satisfactory Performance on Probation

As came out at trial, Mr. Chandler was placed on probation for three years for the 1996 misdemeanor conviction and successfully completed probation. This noteworthy conduct over such an extended period is a mitigating factor within the meaning of rule 4.423(b)(5), which applies when: "The defendant's prior performance on probation or parole was satisfactory."

### E. Additional Mitigating Factors

Rules 4.408(a) states, in relevant part: "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made." There are such additional unenumerated criteria here.

First, Mr. Chandler has been a productive member of society. Second, he has a family, including three young children who will suffer severely if the minimal sentence is imposed and

1461

1  will suffer much more greatly if any additional sentence is imposed.  Third, Mr. Chandler's risk

2  assessment score on the Static-99R reveals a total score of 1, which places him in the low risk

3  category for being charged or convicted of another sex offense.  (RPO 9-10.)

### CONCLUSION

5      The RPO lists three factors in aggravation and one in mitigation.  As shown above: (1)

6  the aggravating factor under rule 4.421(b)(1) is inapplicable; (2) and the other two aggravating

7  factors make use of the same underlying fact; (3) there are four additional mitigating factors

8  which the RPO does not mention.  On balance, the mitigating factors far outweigh the

9  aggravating factors.  For this reason, it is appropriate to impose one term of 15 years to life and

10  to run the other four terms concurrently.

11  DATED:

12  *10-1-13*

                                        Respectfully submitted,

14
15                                      BRIAN MADDEN
                                        Attorney for Defendant
                                        Craig Richard Chandler

16
17
18
19
20
21
22
23
24
25
26
27
28
                                                              1462

No. C1223754                    6              Sentencing Memorandum

1   **BRIAN MADDEN, SB# 55869**
2   MADDEN & REDDING
    1625 The Alameda, Suite 801
3   San Jose, California  95126
    Telephone: (408) 275-8100
4   Facsimile: (408) 275-8199
5
    Attorney for Defendant
6   CRAIG RICHARD CHANDLER

**F I L E D**

OCT 03 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY _____ DEPUTY
J. Pena

7

8                  SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF CALIFORNIA,          Case No.  C1223754

10          Plaintiff                            **PROOF OF SERVICE**

11      v.

12   CRAIG RICHARD CHANDLER,

13          Defendant.

14   I, the undersigned, declare:

15   I am over the age of 18 years and not a party to the within action.  My business address is 1625 The
16   Alameda, Suite 801, San Jose, California, 95126.

17   On **October 2, 2013,** I served:

18   **SENTENCING MEMORANDUM**

19   on the interested party/parties by sending a true copy thereof to the following addressee(s):

20   Allison Filo, Deputy District Attorney        Karamjot Grewal, Deputy Probation Officer
     Santa Clara County District                   Santa Clara County Probation Department
21   Attorney's Office                             Adult Services Division
     70 W. Hedding Street                          2314 North First Street
22   San Jose, CA  95110                           San Jose, CA 95131

23    X    **BY MAIL** by placing a true copy thereof in a sealed envelope addressed to the addressee(s)
24          shown above, with postage thereon fully prepaid, in the United States mail at San Jose, CA.

25   I declare under penalty of perjury under the laws of the State of California that the foregoing is true
     and correct.  Executed on October 2, 2013, at San Jose, California.
26

27                                            _____
                                              MARTIN E. BENGFORD
28

Page 1
PROOF OF SERVICE                                          1463

Madden & Redding
Attorneys at Law
1625 The Alameda, Suite 801
San Jose, CA 95126
(408) 275-8100

FILED

2013 OCT 30  P 4: 04

David H. Yamasaki, Chief Executive Officer/Clerk
County of Santa Clara, California
By_____
DIANA GUTIERREZ

JEFF ROSEN, DISTRICT ATTORNEY  #163589
ALISON FILO, DEPUTY DISTRICT ATTORNEY # 183894
COUNTY GOVERNMENT CENTER, West Wing
70 W. Hedding St., 7th Floor
San Jose, CA 95110
Telephone:  408/792-2891

Attorneys for the People

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,   ) | NO.  C1223754 |
| ) | |
| Plaintiff,   ) | PEOPLE'S RESPONSE TO |
| ) | DEFENDANT'S SENTENCING |
| vs.   ) | MEMORANDUM |
| ) | |
| CRAIG CHANDLER,   ) | Date:   Nov. 22, 2013 |
| ) | Time:  10:00 a.m. |
| Defendant.   ) | Dept.: 37 |
| ) | Judge: Bocanegra |

I.

PROCEDURAL HISTORY

On August 1, 2013, a jury of the defendant's peers found him guilty of five counts

of lewd and lascivious conduct in violation of Penal Code section 288(a).  Because each

count reflected conduct with a separate and distinct victim, the jury found the Penal Code

section 667.61(e)(4) "multiple victim" allegation true.

Section 667.61(b) mandates that the defendant be sentenced to 15 years to Life for

each violation of Penal Code section 288(a).  Although it is within this Court's discretion

1

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

1464

1  to run those sentences concurrently, justice demands that the sentences be imposed

2  consecutively.  The defendant deserves to be sentenced to serve 75 years to Life.

3  <div align="center">II.</div>

4

<div align="center">THE STATUTORY SCHEME OF PENAL CODE SECTION 667.61</div>

5

6  Penal Code section 667.61 is entitled, "Sex Offenders – Circumstances Affecting

7  Sentence."  Subdivision (b) of that code section states, "any person who is convicted of an

8  offense in subdivision (c) under one of the circumstances listed in subdivision (e), shall be

9  punished by imprisonment in the state prison for 15 years to life."

10  The defendant cites *People v. Valdez* (2011) 103 Cal.App.4th 1515, 1524 for the

11  proposition that this Court has the discretion to sentence the defendant either consecutively

12  or concurrently for his crimes.  Although the People concede that is the law, the real

13  importance of *Valdez* is its guidance to this Court in exercising that discretion.  In

14  analyzing Penal Code section 667.61, the *Valdez* court noted, that "[n]othing in that

15  provision even hints at an intent to limit imposition of the subdivision (b) one strike life

16  term, based on the multiple victim circumstance. Rather, it evinces the intent to ensure the

17  greatest possible punishment under that sentencing scheme." (*Id.* at 1024.)  The *Valdez*

18  court went on to quote *People v. Murphy* (1998) 65 Cal.App.4th 35, 41-42: "In making

19

20  multiple convictions for violent sex offenses punishable by multiple life sentences, the

21  Legislature was expressing the view that multiple violent sex offenses deserve more severe

22  punishment than a single violent sex offense because of the predatory nature of the

23  perpetrator."

24

25

26

<div align="center">2</div>

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

1465

It is undeniable that the Legislature intends to impose the most significant of penalties on offenders exactly like Craig Chandler.  It is with that intention in mind, that this Court must evaluate the criteria set forth in California Rule of Court 4.425 in deciding whether to run the defendant's Life sentences consecutive or concurrent.

<div align="center">II.</div>

<div align="center">CALIFORNIA RULE OF COURT 4.425</div>

A.    Dual Use of the Same Facts

In exercising its discretion whether to impose concurrent or consecutive terms, a trial court should consider the factors set forth in California Rules of Court 4.425 which provides:

(a) Facts relating to the crimes, including whether or not:

(1) The crimes and their objectives were predominantly independent of each other.

(2) The crimes involved separate acts of violence or threats of violence.

(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

(b) Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except (i) a fact used to impose the upper term, (ii) a fact used to otherwise enhance the defendant's

<div align="center">3</div>

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

1466

prison sentence, and (iii) a fact that is an element of the crime shall not be used to impose consecutive sentences.

The defendant's motion makes no mention whatsoever of the first three prongs of Rule 4.425. In the instant case, the crimes were entirely independent of each other. Each victim was held back at recess or lunch, groomed and de-sensitized in a custom manner, and subjected to differing types of abuse. Although the crimes did not involve a typical pattern of physical violence, they did involve a high degree of duplicity and deception. In addition, the crimes were committed over at least two school years and can hardly be said to indicate a single period of aberrant behavior.

Instead, the defense cites one single fact - the "vulnerability" of the victim(s) – and suggests it is being improperly dually imposed to make two aggravating factors out of the same fact. The defendant fundamentally misunderstands Rule 4.425. Courts have routinely held that a "dual fact" is one that has been used both to enhance a defendant's prison sentence and then used again to run that sentence consecutively. For instance, in People v. Price (1984) 151 Cal.App.3d 803, the trial court noted that the defendant committed "a violent, vicious attack upon a totally defenseless young woman. There was a threat of great bodily injury. Reprehensible things were perpetrated upon her personally by the defendant, and she was required to participate in totally repugnant acts to her person." The trial court went on to find, "And weighing all of these factors, it is the Court's determination that pursuant to 667.6c [sic], the Court is going to impose the aggravated terms as to Counts One through Four in this matter and is going to impose them

4

People's Response to Defendant's Sentencing Memorandum

1467

consecutively." The Appellate Court found error in the trial court's use of the same facts to support both the aggravated term and then to run those terms consecutively.

Here, this Court has no discretion to choose from a mitigated, mid-term, or aggravated sentencing triad. The sentence is prescribed by Penal Code section 667.61. The term *is* 15 to Life. There are no discretionary facts relied upon by the Court to choose that sentence. It is mandated by statute after a jury finding. The only question remaining is whether or not the multiple victims allegation "enhances" a defendant's prison sentence such that the existence of multiple victims can no longer be cited by this Court as a reason for running each mandated 15 to Life sentence consecutive.1 The question is largely irrelevant, because there are so many other reasons to run the defendant's sentence consecutively.

**B.    Aggravators Warranting Consecutive Sentences**

    **1.    Factors Relating to the Crime**

Here, there is no way in which the "vulnerability" of the victims has been used, or even could be used, to enhance the defendant's underlying sentence. The defendant's sentence is prescribed by Penal Code section 667.61(b)(e)(4) because he committed violations of Penal Code section 288(a) against more than one victim. The vulnerability of the victims had nothing to do with the dictated sentences. It does however, have everything to do with whether or not those sentences should be run consecutively.

The defendant was the second/third grade teacher of the victims who ranged in age

---

1 The People could find no case law answering this question.

5

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

1468

from 7 to 9 at the time of the assaults. Although minority cannot be used as a factor in imposing consecutive sentences when minority is an element of the crime, courts have acknowledged that extremely young ages can be viewed as making a victim 'particularly vulnerable' in relation to others within the age range when dependency or fear is also involved. (See *People v. Ginese* (1981) 121 Cal.App.3d 468, and *People v. Quinones* (1988) 202 Cal.App.3d 1154.) Here, we know that at least one victim, Isabelle, literally broke down in front of her mother because she was terrified to go to school. We know that the mother of victim #2, Becky, brought her fears directly to the Principal. Although Becky did not know exactly what Chandler had done, she was so uncomfortable with Chandler as her teacher that she moved classrooms. Percipient witness Dr. Lynn talked about victim #3's unwillingness to discuss what had happened to her because she was worried about the perception on the school ground that she was a "slut." Victim #4, Wendy, has testified that she felt "bad" while Chandler was putting things in her mouth and that she did not like it. Victim #5 failed to disclose her abuse because she believed she would go to jail for telling anyone what Chandler had done to her. Although the minority of the victims cannot be used to run the sentences concurrent when minority is an element of the crime, the fact that these victims were so very young and so very afraid of what was happening to them, is a citable reason in aggravation.

The probation department did not cite as a factor in aggravation that the crime involved planning, sophistication or professionalism (CRC 4.421(a)(8)), but Chandler had clearly contemplated his crimes for a very long time and was significantly invested in

6

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

1469

suppressing their detection.  Chandler created an elaborate ruse of a lesson plan designed to

de-sensitize the victims whom he specifically chose, held back at recess alone, and

performed the unthinkable upon.  He blindfolded them so that they would not be able to

visually describe what he had done to them.  He chose his victims carefully.  Each and

every one of them was a small, relatively meek, young girl.  Four of them had parents who

speak very little English.  The fact that Chandler planned, deceived and covered up his

crimes for a significant period of time can and should be cited as an aggravating factor by

this Court in choosing to run his sentences consecutively.

Lastly, but most importantly, Chandler used his unique position of trust and

confidence in order to commit the offenses (CRC 4.421(a)(11).)  As this Court well knows,

Chandler was a second/third grade school teacher who was entrusted with the safety of

these children by their parents for months at a time.  This was not a man unknown to the

children in a situation or environment which they will never again have to experience.

They will go to school for the rest of their lives with the nightmare of Craig Chandler's

classroom.  We train our children on an almost daily basis to find a "safe adult" when

something goes wrong on the school ground.  We tell them that teachers are in charge

whenever they are at school.  We require them to respect their teachers and follow their

instructions without hesitation.  Each and every one of these victims allowed Chandler to

put a blindfold on them because they trusted that their teacher would do nothing to harm

them.  He violated their trust in the most unimaginable of ways.

7

Jeffrey F. Rosen
District Attorney
County of Santa Clara
San Jose, CA. 95110

## 2.     Factors Relating to the Defendant

The Probation Department cites only one factor in this category – that Chandler engaged in conduct which indicates a serious danger to society.  That factor almost goes without saying.  His crimes are horrific.

There are however, other factors that can and should be considered by this Court in sentencing Craig Chandler.  First, he has absolutely NO remorse for his crimes.  The letter that he submitted to this Court does not mention the impact he's had on a SINGLE victim. He talks about the obstacles that *he's* had to overcome, *his* successes as a teacher, and *his* devastation at the possibility of being permanently separated from his family.  He shows not an iota of sympathy for the devastation he's wreaked on his victims, their families, his own family and the community at large.  He talks about the fact that he and his wife have lost their home and that his wife is now raising their children alone; yet, he had no reservation or shame in putting on a witness at trial to testify about his extra-marital affair. His regrets apparently do not include leading her on, disappearing from her life, and then taking advantage of her during a parent-teacher conference – all while his wife was apparently home alone raising their children.  Ironically, the family members who attended virtually every day of his trial and have written letters to this Court asking for the Court's leniency, were conspicuously absent on the day Annie Doe testified.  He asks this Court to feel sympathy for his wife and children when he had no such thoughts while he was having an affair and sexually assaulting children.  He takes no responsibility at all for his conduct, only for the consequences he now faces as a result of his horrific actions.

8

Jeffrey F. Rosen
District Attorney
ounty of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

III.

## CONCLUSION

There are almost no crimes more heinous than those committed by the defendant.

He violated a position of trust, put the victims in a uniquely vulnerable position,

elaborately planned his crimes and their cover-up, and has taken no responsibility for the

lives he has ruined.  Craig Chandler deserves every minute of the 75 years to Life in

California State Prison that justice demands this Court impose.

Dated:  October 30, 2013                    Respectfully submitted,

JEFFREY ROSEN
DISTRICT ATTORNEY

By:      _____
ALISON FILO
Deputy District Attorney

Jeffrey F. Rosen
District Attorney
county of Santa Clara
San Jose, CA. 95110

People's Response to Defendant's Sentencing Memorandum

1472

FILED

**PROOF OF SERVICE**          2013 OCT 30  P 4: 05

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara
Deputy Clerk

STATE OF CALIFORNIA          )  People v. CRAIG RICHARD CHANDLER GUTIERREZ
                             )  ss.
COUNTY OF SANTA CLARA        )  Docket No. C1223754

I am employed in the County of Santa Clara, State of California. I am over the age of eighteen years, and not a party to the above-entitled action. My business address is: Office of the District Attorney, 70 West Hedding Street, West Wing, San Jose, CA 95110

On October 30, 2013, I served the following documents upon the interested parties in this action by the method(s) indicated below:

**People's Response to Defendant's Sentencing Memorandum**

[  ] BY FIRST CLASS MAIL: by placing a true copy thereof, enclosed in a sealed envelope, for postage and deposit with the U.S. Postal Service on the same date it is submitted for mailing, and addressed as follows:

[  ] BY PERSONAL DELIVERY: by causing a true copy thereof to be hand-carried to the recipient at the address indicated:

[X] BY FACSIMILE TRANSMISSION: by faxing a true copy thereof to the recipient at the facsimile number indicated:

Brian Madden
Attorney at Law
(408) 275-8199

[  ] BY COUNTY PONY MAIL: by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on October 30, 2013, at San Jose, California.

_Elma Gallego_
Elma Gallego

1473

Jeffrey F. Rosen
District Attorney
county of Santa Clara
San Jose, CA. 95110

1  Brian Madden, SB# 55869
   MADDEN & REDDING
2  1625 The Alameda, Suite 801
   San Jose, California 95126
3  Telephone: (408) 275-8100
   Facsimile: (408) 275-8199
4
   Attorney for Defendant
5  CRAIG RICHARD CHANDLER

FILED

2013 NOV 19  A 11: 38

David H Yamasaki
Stefanie Aguilar

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11  PEOPLE OF THE STATE OF CALIFORNIA, )

12       Plaintiff,                    ) Case No. C1223754

13  v.                                 ) **REPLY TO THE PEOPLE'S**
                                       ) **RESPONSE TO DEFENDANT'S**
14  CRAIG RICHARD CHANDLER,            ) **SENTENCING MEMORANDUM**

15       Defendant.                    )

16

17                      **INTRODUCTION**

18        Mr. Chandler has filed a sentencing memorandum in which he discussed errors related

19  to several of the sentencing factors appearing in the Report of the Probation Officer (RPO).  He

20  also invited the Court's attention to factors in mitigation that the RPO failed to include.  Mr.

21  Chandler argued that the Court should impose concurrent terms, for an aggregate sentence of 15

22  years to life.

23        After Mr. Chandler filed his sentencing memorandum, the People filed a response in

24  which they argue that Mr. Chandler should be sentenced to five consecutive 15-year-to-life

25  terms, for an aggregate sentence of 75 years to life.

26        Mr. Chandler files this reply to discuss errors in the People's response, and to discuss

27  relevant case law which the People failed to cite.

28                                                          1474

No. C1223754              1              Reply Memorandum re Senten

1                                 **ARGUMENT**

2    **A. The Court's Discretion to Impose Consecutive or Concurrent Terms**

3          The People concede that the Court has discretion to impose consecutive or concurrent

4    terms, but argue that language in *People v. Valdez* (2011) 193 Cal.App.4th 1515[1] and *People v.*

5    *Murphy* (1998) 65 Cal.App.4th 35 guides the Court's exercise of its discretion in a manner that

6    weighs in favor of consecutive terms. (People's Response, hereafter also referred to by the

7    abbreviation PR, at p. 2.) There is no language in either case saying that the Court of Appeal

8    was providing guidance on how a trial court should exercise its discretion. The language from

9    the cases that the People quote does not constitute such guidance. And there is nothing in the

10    two cases indicating that the appellate courts were suggesting that trial courts should view

11    consecutive terms more favorably than concurrent ones.

12          In *Valdez*, the defendant argued that Penal Code §667.61 should be interpreted so as to

13    apply only once for each crime victim, even if the defendant committed additional sex offenses

14    against that victim on separate occasions. (*People v. Valdez, supra,* 193 Cal.App.4th at p. 1522.)

15    The Court of Appeal rejected the contention because it was contrary to the plain language of the

16    statute which said that the section applied to the listed offenses when there are multiple victims.

17    (*Id.* at pp. 1522-1524.) Also, the statute did not say that it was inapplicable to some counts if

18    there were multiple victims. (*Id.* at p. 1523.)

19          This holding in *Valdez* puts into context the language from that case that the People quote

20    and which states: "Nothing in that provision even hints at an intent to limit imposition of the

21    subdivision (b) one strike life term, based on the multiple-victim circumstance. Rather, it

22    evinces the intent to ensure the greatest possible punishment under that sentencing scheme." (*Id.*

23    at p. 1523.)[2] This language is in response to a contention that some counts that clearly qualify

24    for a term of 15 years to life under section 667.61 should not be punished pursuant to that

25

26          [1]The People incorrectly cite *Valdez* as appearing in 103 Cal.App.4th. The correct volume
is 193 Cal.App.4th.

27

28          [2]The People incorrectly cite the language as appearing at page 1024 of the *Valdez* opinion
in the official reports. *Valdez* starts at page 1515, and the quoted language is at page 1523.

No. C1223754                2               Reply Memorandum re Sentencing

1   section.  The language was not in response to a contention related to whether a court should

2   impose consecutive terms falling under section 667.61.  Indeed, when discussing consecutive

3   terms, the Court was clear that this is a matter within a court's discretion.  (*Id.* at p. 1524.)  The

4   Court did not say that section 667.61 favors the imposition of consecutive terms.

5        In *Murphy*, the defendant was convicted of one sex offense against one victim and six sex

6   offenses against a second victim.  The crimes against the two victims occurred on separate

7   occasions.  (*People v. Murphy*, *supra*, 65 Cal.App.4th at p. 38.)  At sentencing, the People

8   argued that the trial court should impose two terms of 15 years to life because the defendant

9   committed violent sex offenses against two victims on separate occasions.  The trial court,

10  however, found that section 667.61 failed to specify the sentence to be imposed when a

11  defendant is convicted of offenses against different victims on different occasions.  It ruled it

12  could impose only one life sentence.  It stayed sentence on one count against the second victim

13  and imposed consecutive midterms on the remaining counts.  (*Id.* at pp. 38-39.)  The People

14  appealed, contending that section 667.61 allowed the trial court to impose two life terms, not just

15  one.  The Court of Appeal agreed and remanded to the trial court with directions to impose a

16  term of 15 years to life for the second victim and to exercise its discretion on whether the

17  sentence on other counts should run consecutively or concurrently.  (*Id.* at p. 39.)

18       The primary issue in *Murphy* was whether section 667.61 provides for one life term per

19  victim per occasion.  (*Id.* at p. 40-42.)  This question relates to when a count qualifies for a life

20  term under 667.61 or a determinate term.  It was in discussing this question that the Court made

21  the statement which the People quote at PR at page 2: "Similarly, in making multiple convictions

22  for violent sex offenses punishable by multiple life sentences, the Legislature was expressing

23  the view that multiple violent sex offenses deserve more severe punishment than a single violent

24  sex offense because of the predatory nature of the perpetrator."  (Id. at p. 41.)[3]  This language

25  ends the section of the opinion related to whether a life sentence under section 667.61 or a

26  determinate term applied.  It was not addressing the question of whether a court should impose

27

28       [3]The People cite this language as appearing at page 41-42 of *Murphy*.  Actually, it appears
    at page 41.

1476

No. C1223754                      3                Reply Memorandum re Sentencing

1    consecutive or concurrent life terms.  Moreover, during the part of the case discussing the

2    disposition, the Court of Appeal simply instructed the court to exercise its discretion on whether

3    to run the two life terms consecutively or concurrently.  (*Id.* at p. 43.)  The Court did not state

4    or suggest that section 667.61 preferred consecutive terms.

5            In short, the People misstate the intention of the Legislature when they say it was "to

6    impose the most significant penalties of offenders exactly like Craig Chandler." (PR at 3.)  What

7    *Valdez* and *Murphy* actually stand for is the proposition that the life terms under section 667.61,

8    rather than determinate terms, should apply to crimes that fall within the language of section

9    667.61 and that the trial courts, as in all other cases, have discretion to decide whether to run the

10   terms consecutively or concurrently.  That discretion is case-specific and depends on the number

11   and weight of the relevant factors.  But there is nothing in the language of section 667.61, *Valdez*

12   or *Murphy* that indicates the Legislature intended that courts impose consecutive terms other

13   than where consecutive terms are mandatory.  Where, as here, a court has discretion to impose

14   concurrent or consecutive terms, there is nothing in the law that favors one over the other.

15   **B. Factors in Rule 4.425(a)**

16           The People correctly point out that in his sentencing memorandum Mr. Chandler did not

17   mention the three factors listed in rule 4.425(a).  This is true.  Here is why.

18           When he filed his sentencing memorandum, the People had not filed any pleading

19   regarding sentencing.  The only document in the file discussing sentencing was the RPO.

20   Accordingly, Mr. Chandler analyzed the factors in aggravation and mitigation that the RPO

21   discussed or failed to include.  Because the RPO did not discuss the factors listed in rule

22   4.425(a), Mr. Chandler did not analyze them.

23           In their response, the People rely on factors in rule 4.425(a) as supporting imposition of

24   consecutive terms.  (PR at 3-4.)  There are flaws in the People's analysis of these factors.

25           Rule 4.425(a) lists three criteria affecting the decision to impose consecutive rather than

26   concurrent terms: "(1) The crimes and their objectives were predominantly independent of each

27   other; (2) The crimes involved separate acts of violence or threats of violence; or (3) The crimes

28   were committed at different times or separate places, rather than being committed so closely in

1477

No. C1223754                          4                  Reply Memorandum re Sentencing

time and place as to indicate a single period of aberrant behavior." The People appear to believe that all three criteria apply. Actually, the second criterion does not apply. Mr. Chandler was convicted of non-forcible lewd acts in violation of Penal Code §288, subdivision (a). He was not convicted of violent or forcible lewd acts in violation of section 288, subdivision (b).

With respect to the first criterion, although the crimes themselves were predominantly independent of each other, it is not so clear that their objectives were. If we view the objective as a desire to engage in essentially similar acts of lewd conduct, that objective is common to all five counts. If we view the objective from the perspective of each victim, the objective is independent.

The third criterion applies – the offenses were committed at different times. But this overlaps the first criterion. That is, if the crimes are committed at different times (criterion 3), the crimes and their objectives will be predominantly independent of each other (criterion 1). It appears that criterion 1 applies when crimes occur at the same time but those crimes and their objectives are independent of each other.

It thus appears that there is one applicable factor in aggravation under rule 4.425(a), not three.

## C. The People's Dual Use Argument

In his initial memorandum, Mr. Chandler argued that the RPO used a single fact – that Mr. Chandler was the victims' teacher – as two factors in aggravation – vulnerability of the victims and a position of trust. (Sentencing Memorandum [SM] 3.) The People argue that the prohibition against dual use of facts does not apply here because the same factor is not being used to enhance the sentence and to run sentences consecutively. (PR 4-5.)

It is true that a single fact has not been used to enhance the sentence and to run sentences consecutively. The fact that "enhanced" the sentences by changing them from determinate terms to terms of 15 years to life is multiple victims, not vulnerability. But this does not detract from the fact that the RPO uses a single objective fact – Mr. Chandler being the victims' teacher – as two aggravating factors, thereby giving it double weight on the question of whether to impose consecutive terms. A single fact remains a single fact. The People cite no case holding that a

1478

No. C1223754                    5          Reply Memorandum re Sentencing

1   single objective fact can be metastasized into two aggravating factors.

2       Indeed, the case law is to the contrary – *People v. Fernandez* (1990) 226 Cal.App.3d 669

3   supports Mr. Chandler's position. There, the Court stated that although the defendant's paternal

4   relationship to the victim rendered her vulnerable, "this aspect of vulnerability is merely another

5   way of saying defendant 'took advantage of a position of trust or confidence to commit the

6   offense[,]' which the probation report separately noted as another aggravating factor. (Rule

7   421(a)(12).) Abuse of the parental relationship, however, represents only one aggravating factor,

8   not two." (*Id.* at p. 680.) Here, the RPO uses a single fact to support the same two aggravating

9   factors the Court of Appeal discussed in *Fernandez*. *Fernandez* found this to be error. It

10  therefore is error here as well.

11  **D. Vulnerability**

12      The People say that the victims were vulnerable because they were seven to nine years

13  old and therefore "extremely young" within the meaning of *People v. Ginese* (1981) 121

14  Cal.App.3d 468 and *People v. Quinones* (1988) 202 Cal.App.3d 1154. When arguing

15  vulnerability, the People rely not just on age but on various reactions of the victims. (PR at 5-6.)

16      The People cite no cases holding that vulnerability includes the later reactions of the

17  victims to the offense. Nor is this relevant to the issue of vulnerability. Vulnerability relates the

18  susceptibility of the victim to the successful completion of the crime. This relates to the

19  circumstances of the crime. If, for example, the defendant uses a gun, this makes his victim

20  vulnerable. Or if the defendant chooses an elderly or disabled victim, the victim is vulnerable.

21  But the reaction of the victim to the crime does not relate to vulnerability. A victim who shrugs

22  off a crime and moves easily on can be vulnerable depending on the circumstances of the crime.

23  And a victim who manifests an extreme reaction to the crime is not necessarily vulnerable.

24      The real issue the People raise relates to age. *Ginese* says: "Extreme youth within the

25  given age range might also be viewed as making a victim 'particularly vulnerable' in relation to

26  others within the age range." (*People v. Ginese, supra,* 121 Cal.App.3d at p. 477.) In *Quinones,*

27  the defendant argued the trial court improperly relied on the age of the victim as a factor in

28  aggravation since age (that the victim be under the age of 14) is an element of the offense. The

1479

No. C1223754                           6              Reply Memorandum re Sentencing

1  People submitted "that molestation of a 9- or 10-year-old child, by reason of the victim's relative

2  youth, should be viewed as more aggravated than the molestation of a 12- or 13-year-old, they

3  concede that case law holds otherwise and that the matter should accordingly be remanded for

4  resentencing." The Court of Appeal agreed with the defendant's contention. (*People v.*

5  *Quinones, supra*, 202 Cal.App.3d at p. 1159.) *Quinones* does not support a finding of

6  vulnerability based on age in the instant case. Here, the victims were roughly the same age as

7  the ones in *Quinones* and the court in *Quinones* found merit in the defendant's argument that it

8  was improper to rely on age of the victim as an aggravating factor.

9         The cases in which a court found vulnerability to be present based on extreme youth

10  involved victims who were 2½ years old (*People v. Garcia* (1985) 166 Cal.App.3d 1056, 1070)

11  and somewhere between four and five years old (*People v. Dancer* (1996) 45 Cal.App.4th 1677,

12  1694). The victims in this case were older. The vulnerability factor based on extreme youth

13  does not apply.

14  **E. Planning, Sophistication, Professionalism**

15         The People argue that the aggravating factor in rule 4.421(a)(8) applies because the

16  "manner in which the crime was carried out indicates planning, sophistication, or

17  professionalism." (PR at 6-7.) Mr. Chandler disagrees.

18         Planning is inherent in almost every violation of section 288. The offense requires

19  isolation and, most often, the cooperation of the victim. Grooming behavior is common. Most

20  violators know the victim. This is rarely a crime of serendipitous opportunity such as a sexual

21  predator seeing a child and impulsively committing a molestation on the spot.

22         *People v. Fernandez, supra*, 226 Cal.App.3d 669 is instructive. There, the defendant was

23  convicted of 156 counts of child molesting and sentenced to state prison for 330 years. (*Id.* at

24  p. 674.) The probation report found the aggravating factor of planning, sophistication and

25  professionalism to be present. The Court of Appeal stated concerning this factor: "We express

26  no opinion about the applicability of this factor. However, if applicable here, it would also

27  probably apply in every resident child molester case. For this reason further elaboration would

28  be particularly helpful in understanding how and why the facts showing premeditation in this

1480

1  case made the offenses worse than they ordinarily would have been. (See *People v. Young* (1983)
2  146 Cal.App.3d 729, 734 [194 Cal.Rptr. 338] [aggravating factor must make offense
3  distinctively worse than it would ordinarily have been].)" (*Id.* at p. 680.)

4      The facts the People mention do not make the offenses in this case distinctively worse
5  than the ordinary lewd conduct case. The planning involved a teacher. Within that universe, the
6  planning was not distinctively worse than the planning of other teachers who commit lewd acts
7  on their students.

8  **F. Position of Trust**

9      The People argue that Mr. Chandler violated a position of trust and confidence within the
10  meaning of rule 4.421(a)(11) because he was the victims' teacher. Mr. Chandler does not
11  dispute that this factor is present. His only caveat is that since it is based on his role as a teacher,
12  this fact supports only one aggravating factor. (See SM 3-4.)

13  **G. Remorse**

14      Without citing a case supporting the proposition, the People argue that the fact that Mr.
15  Chandler has not expressed remorse constitutes a factor in aggravation. (PR 8.) This argument
16  fails to appreciate that, under established case law, although remorse is a factor in mitigation,
17  failure to express remorse is not a factor in aggravation in this case.

18      As *People v. Key* (1984) 153 Cal.App.3d 888, 900-901, explained, "lack of remorse is
19  not a valid reason to aggravate a sentence because Key denies committing the crimes. Lack of
20  remorse is not specifically designated as a relevant aggravating factor in California Rules of
21  Court, rule 421, but is listed as a criterion affecting probation in rule 414(d)(9). Where a
22  defendant acknowledges guilt, but shows no remorse, he may be expected to repeat the criminal
23  conduct under similar circumstances. (Citation.) In such a case, lack of remorse may be applied
24  to aggravate as an additional relevant factor pursuant to rule 408. However, here the evidence
25  of nonconsensual intercourse consists primarily of the sharply conflicting testimony of Key and
26  the prosecuting witness. The evidence of guilt is not overwhelming and Key steadfastly denies
27  the rapes. Under these circumstances, Key's lack of sorrow does not indicate he is likely to
28  engage in future sexual attacks."

1481

1  Here, Mr. Chandler did not acknowledge guilt. Instead, he steadfastly denies having

2  committed the offenses of which he has been convicted. Under *Key*, it would be improper to

3  impose a harsher sentence because Mr. Chandler has failed to show remorse for crimes he denies

4  he committed.

5  **H. Mitigating Factors**

6  As Mr. Chandler explained in his sentencing memorandum, there are five factors in

7  mitigation. (SM at 5-6.) The People do not dispute the presence of these factors.

8  CONCLUSION

9  Under established case law, most of the factors in favor of consecutive sentences which

10  the People discuss in their memorandum do not apply. There are more factors weighing in favor

11  of concurrent sentences than factors weighing in favor of consecutive sentences. It is therefore

12  appropriate to impose one term of 15 years to life and to run the other four terms concurrently.

13  DATED:  11/19/13

14                                    Respectfully submitted,

15

16                                    BRIAN MADDEN
                                      Attorney for Defendant
17                                    Craig Richard Chandler

18

19

20

21

22

23

24

25

26

27

28

1482

No. C1223754                          9          Reply Memorandum re Sentencing

1   **BRIAN MADDEN, SB# 55869**
2   MADDEN & REDDING
    1625 The Alameda, Suite 801
3   San Jose, California  95126
    Telephone: (408) 275-8100
4   Facsimile: (408) 275-8199

FILED

2013 NOV 19 A 11: 3º

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara
By: _____ Deputy Clerk

Stefanie Aguilar

5
6   Attorney for Defendant
    CRAIG RICHARD CHANDLER

7

8           SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF CALIFORNIA,        Case No.  C1223754
10           Plaintiff                        **PROOF OF SERVICE**
11   v.
12   CRAIG RICHARD CHANDLER,
13           Defendant.
14

I, the undersigned, declare:

15
16  I am over the age of 18 years and not a party to the within action.  My business address is 1625 The
    Alameda, Suite 801, San Jose, California, 95126.

17
18  On November 19, 2013, I served the following document:

    **REPLY TO THE PEOPLE'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**
19
    on the interested party/parties by personally serving a true copy thereof to the following person   at
20  the address stated:

21  Allison Filo, Deputy District Attorney (via the first floor lobby window at)
    Santa Clara County District Attorney's Office
22  70 W. Hedding Street
    San Jose, CA  95110.

23  I declare under penalty of perjury under the laws of the State of California that the foregoing is true
24  and correct.  Executed on November 19, 2013, at San Jose, California.

25
26                                          BRIAN MADDEN
27
28

1483

*(left margin, vertical):* Madden & Redding
Attorneys at Law
1625 The Alameda, Suite 801
San Jose, CA 95126
(408) 275-8100

# CONFIDENTIAL

## MAY NOT BE EXAMINED WITHOUT COURT ORDER

## THE PEOPLE

### V.

## CRAIG RICHARD CHANDLER

**COURT OF APPEAL NUMBER:**    H040429

**CASE NUMBER:**    C1223754

REPORT OF PROBATION OFFICER(CONFIDENTIAL)
SUPPLEMENTAL-CHARACTER REFERENCE LETTERS(CONFIDENTIAL)
SUPPLEMENTAL TO REPORT OF PROBATION OFFICER(CONFIDENTIAL)

| SEALED PAGES | 1484 | | 1510 |
|---|---|---|---|
| | 1511 | THRU | 1541 |
| | 1542 | | 1542 |



C A L I F O R N I A
# VCGCB
Victim Compensation & Government Claims Board

## Restitution Request

**Date:** August 2, 2013

**Court Case No:** C1223754

**Defendant(s):** Craig Richard Chandler

**To The Honorable: Bocanegra**

**Hearing Date:** September 27, 2013

**Time:** 9:00 AM     Department 37
Probation-Sentencing

### Restitution Order

The following victim(s) have filed claims with the Victim Compensation and Government Claims Board.
Pursuant to Penal Code sections 1202.4 and Welfare and Institutions Code sections 730.6, the following
restitution should be ordered and made payable to the Victim Compensation and Government Claims Board.

| Name | Claim Number | Amount of Benefits Paid | Type of Benefit |
|------|-------------|------------------------|-----------------|
| L.Doe | A12-3806999 | 1575.00 | Mental Health |
| B.Doe | A12-3796315 | 2625.00 | Mental Health |
| W.Doe | A12-3796083 | 2737.50 | Mental Health |
| A.Doe | A12-3535069 | 3096.00 | Mental Health |
| M Doe | A12-3535077 | 891.00 | Mental Health |
| R.Doe | A12-3535085 | 324.00 | Mental Health |
| A.Doe | A12-3796174 | 2949.00 | Mental Health |

**Total:** **$14,197.50**

> **We are requesting the court to order restitution in the amount of $14,197.50
> payable to the Victim Compensation and Government Claims Board.**

**Please note:** The above amounts reflect benefits in which the Victim Compensation and
Government Claims Board has paid on behalf of the above-mentioned victim(s) to date. These
amounts may not reflect the full amount of all the victim(s)' losses.

### Conditions of Probation—Restitution Orders

If the defendant is sentenced to probation **please request that payment of restitution is a condition of
probation,** as set forth in Penal Code section 1202.4(m) and Welfare and Institutions Code section 730.6(l)

cc: District Attorney's Office   DA Case No: 120100927

**Prepared by:** Irene Kilmer, Restitution Unit, , IKilmer@da.sccgov.org

1558

FILED
NOV 2 2 2013
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
J. Pena

SUPERIOR COURT
190 W. HEDDING ST., T
SAN JOSE, CA 95110

CASE NO.    C1223754
TC:   CEN    12001535
DATE    11/22/2013  9:00 ABEPT.  37

PEOPLE VS.    CRAIG RICHARD CHANDLER
L.K.A.    1361 N SAN PEDRO ST
SAN JOSE, CA 95110

10/25/1976 CAB3721090    CDY BK:Y
CLERK    J. PENA    EBK966 M
HEARING    PROBATION AND SENTENCING
DV:  AGENCY    SJ-04313-  -UNKNOWN

JUDGE    HON. ARTHUR BOCANEGRA
REPORTER J.MIXCO
DEF. ATTY. MADDEN, BRIAN    (G)
CHARGES    F(001) PC288(A)
F(003) PC288(A)
F(005) PC288(A)

CHILD:  STATUS    I-SET -NBA    TW    Y
D.A. A. Filo    APO K. Shannon
F(002) PC288(A)
F(004) PC288(A)    VIOLATION DATE
09/01/2010

NEXT APPEARANCE
☑ Defendant Present  ☐ Not Present    ☑ Atty Present    A/K    ☐ AD / PD / IDO / Special App
☐ Arr'd ☐ Adv ☐ Arr Wav ☐ Amend Comp/Info    ☐ Arr ☐ Plea ☐ IDC ☐ PTC ☐ Prob / Sent    ☐ Interpreter ___    ☐ Sworn
☐ PC977 ☐ Filed ☐ On File ☐ Reptr. Adv / Wav    ☐ Bail/ OR/ SORP ☐ Rect Dr Rpt ☐ FAR/ ERC    ☐ Bail Apply ☐ Balance Exonerated
☐ NG ☐ Entered by CRT ☐ NGBRI / Adv    ☐ PSet ☐ Prelim ☐ Readiness ☐ S / B MTC    ☐ Bail Exonerated ☐ Forfeited    Bond # ___
☐ Denies Priors/ Allegations/ Enhancements/Refusal    ☐ Further ☐ Jury ☐ CT ☐ Peo / Def Wav Jury    ☐ Reassumption Filed ☐ Forfeiture Set Aside ☐ Bail Rein
☐ TW ☐ TNW ☐ TW / WD ☐ TW Sentence    ☐ Ref'd ___    ☐ Costs Within 30 Days to Court
☐ Ref / Appt PD / ADV / IDO ☐ Con Ded ☐ Adm A / F    ☐ APO / DADS/ Prop 36 ☐ P36 Re-Assm't    SORP / OR ☐ Revoked ☐ Reinstated ☐ May Post & Forfeit
☐ ___ Relieved ___ Appt'd    ☐ Crim Proc Susp ☐ Rein ☐ Status Hrg    ☐ BW Ordered $ ___    ☐ Stayed ☐ To Issue
☐ Hrg on Motion ___    ☐ Doubt Decl Pursuant PC 1368    ☐ No Cite Release/SCIT ☐ No Request ☐ Cash Only
☐ Granted ☐ Denied ☐ Submitted ☐ Off Cal    ☐ Subm on Report ☐ Found ___    ☐ BW Set Aside ☐ Recalled ☐ Filed ☐ Remain Out ☐ NWF
☐ Stip to Comm ☐ Drs. Appointed ___    ☐ Max Term ___ ☐ Committed ___    ☐ Proof of ___
☐ Prelim Wav ☐ Certified to General Jurisdiction    ☐ MDA / COM Amended to ___
☐ Amended to ☐ (M) VC12500(a) / VC23103(a)    ☐ Pur VC23103.5 ☐ DA Stmt Filed ___

PLEA Conditions: ☐ None ☐ No State Prison ☐ PC17 after 1 Yr Prob ☐ Includes VOP
☐ Jail / Prison Term of ___    ☑ Comply with PC290.85    ☐ Add to Cal ☐ Vacate pending date
☐ Dismissal / Striking ___    ☐ Submit time of Sent ☐ Harvey Stip
☐ Adv Max Pen / Parole / Prob / Immig / Appeal ☑ Reg HS11590 PC290/PC457.1/PC186.30 ☐ FSF ☐ Fines/Fees ☑ PC29806/29865/30305/666/VC14607.6 ___
☐ Wav Right to ☐ Counsel ☐ Court / Jury Trial ☐ Subpoena / Confront / Examine Witnesses ☐ Self-incrimination ☐ Written Waiver filed ☐ Plea / Absentia filed
☐ COP ☐ GUILTY ☐ NOLO CONTENDERE to charges & admits enhancements / allegations / priors ☐ PC17 ☐ Arbuckle ☐ Factual Basis found ☐ Findings stated
☐ Prop 36 Granted / Unamenable / Refused / Term ☐ DEJ Eligibility Filed ☐ DEJ Granted / Rein / Term  Fee $ ___    ☐ Guilty Plea Rendered
☐ Waives Referral ☐ APO Full Rpt ☐ CR110 issued  Fines/Fees  Pay to:    ☐ DOR ☐ Traffic ☐ Court ☐ Today ☐ Audit # ___
☐ Sent Suspended ___    ☑ PROBATION DENIED    PA $ ___ + PA $ ___    ☐ Purs HS11350dd ___
PROBATION ☐ Execution ☐ Imposition of sentence suspended for probation period    COUNT ___ $ ___ + PA $ ___    ☑ PC290.3 WVd
☐ COURT ☐ FORMAL PROBATION GRANTED for ___ Days / Mos / Yrs    AIDS / CPP $ ___ + PA $ ___    SORP ___
☐ Report to APO within ___ Days ☐ Terminated ☐ Upon Release    DPF ___ $ ___ + PA $ ___    EMAT $ ___
☐ Perform ___ Hrs Volunteer Work as directed PO / SAP ☐ In lieu of fine/Jail    LAB ___ $ ___ + PA $ ___
☐ Not drive w/o valid DL & Ins ☐ Adv VC23600 ☐ HTO ☐ Re-refer    DRF /RF $10,000 Add'l RF $ 10.00 Susp'd PC1202.44(45)
☐ MOP ☐ FOP ☐ 12 hrs ☐ 3 mos ☐ 9 mos ☐ Enroll within ___ days    AEF ___ $ ___    Original Fine $ ___
☐ DL Susp/ Restr'd/ Rvk'd for ___ ☐ IID Not/Ordered/ Rmv'd Term ___ Yrs    SECA/COPA $ 200  CTS PC2900.5 $ ___
☑ No contact with victim or family / co-defts unless appr by APO ☑ PC1202.05    ICMF $ 150  TOTAL DUE $ ___
☐ DVPO issued / mod /term'd Exp ___    ☐ Victim Present    ICIN $ ___    Payments Granted / Modified
☐ No Contact ☐ Peaceful Contact ☐ DSA thru APO / DOR / CRT ☐ Filed    LAR $ ___    $ ___ / Mo beginning ___
☐ Not own/possess deadly weapons ☐ Destroy/return weapon ___    SHELTER $ ___    FINE STAYED ___
☐ Stay away from ___    DV $ ___    Committed @ $ ___ /day ☐ May Pay Out
☐ Submit Search/Testing ☐ Educ/Voc Trng/Empl ☐ No alcohol / drugs or where sold    ATTY $ ___    Consec/Conc to ___
☐ Substance Abuse, Psych, Theft, Anger Mgmt, DV, Parenting cnsl / prgm    ASF$25/CPF$10 $ ___    Fine / Fees ☐ Deemed Satisfied ☐ Commuted
☑ PC296 (DNA) ☑ PC1202.1 HIV Test / Education    SP/INVEST $ ___ ☐ P/SUP $ ___ /Mo ☐ Waived
VOP: ☐ Wav ☐ Arr'd ___ ☐ Admits/Denies Viol ☐ Court Finds VOP / No VOP    P/SUP $ ___    ☐ Addt'l Fees Waived
Prob Rein / Mod / Term'd / Revoked / Remains Revoked / Ext to ___    ☐ SECA, ICMF, ICIN, CJAF, P/INVEST, PSUP FEES NOT COND OF PROB
☐ Original Terms & Conditions Except as Amended herein    ☑ Restit ☑ Gen $ 14,19,50 to Victim Compensation
☐ Co-terminous with ___ ☐ No Further Penalties / Reviews    CJAF $129.75/$259.60 $ ___ to Govt Claims Board
Other: ___    ☐ As determined by APO/Court ☐ Referred to VWAC ☐ Collect Civilly

JAIL/PRISON ☑ See Attachm't Pg ☐ CDCR/Parole collect restit from Def's earnings ☐ Blended Sentence    County Jail

| Count | F/M | Violation | Prison Term / Yrs | Enhancement / Priors | Yrs / Styd / Strkn | HRS / DAYS / MOS |
|---|---|---|---|---|---|---|
| 1 | F | PC288(A) | PC1067.61(b)/(e) | 15 yrs to life | | |
| 2 | F | PC288(A) | PC1067.61(b)/(e) | 15 yrs to life c/s ct1 | | |
| 3 | F | PC288(A) | PC1067.61(b)/(e) | 15 yrs to life c/s ct2 | | |
| 4 | F | PC288(A) | PC1067.61(b)/(e) | 15 yrs to life c/s ct3 | | |

| Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Enhancement | Yrs/S | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | to life |

CTS 1083 ACT + 102 ☑ 4019 ☐ ½ ☐ ½  ☑ PC2933.1  785 days  Total term ___    CDCR / PC 1170h ___
☑ Straight time ☐ In Camp ☐ WWP ☐ PC1209 Fees ☐ Waived ☐ Court fee ___ All / Except ☐ EMP/PSP/ERP/DRP/Co Parole/NP
☐ Sent Deemed Srv'd ☐ Rpt to Parole/Prob w/in ___ ☑ Adv/ERD 10  Yrs/Mes Parole/MS/PRCS/Appeal ☐ Consec ☐ Conc to 1359
☐ Bal CJ Susp ☐ All but ___ Hrs/Days/Mos ☐ On Cond Complete Residential Treatment Prgm ☐ Serve Consec MO/TU/WE/TH/FR/SA/SU
☐ Pre-process ___ AM/PM ☐ Stay / Surrender / Transport to ___ @ ___ AM/PM or Sooner
☐ REMANDED-BAIL $ ___    ☐ REMAIN AS SET ☐ NO BAIL ☑ COMMITTED ☐ RELEASED ☐ OR ☐ SORP ☐ JAC PHONE ASSM'T ☐ P36
☐ AS COND OF SORP ☐ BAIL INCREASED / REDUCED ☐ TO PRGM AS REC BY JAC DOC TO ARRANGE TRANSPORT UPON AVAIL BED

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA CLARA**
**ATTACHMENT PAGE**

PEOPLE vs. CRAIG RICHARD CHANDLER   CASE # C1223754
   DATE: 11-25-13

| Count | F/M | Violation | Prison Term /Yrs | Enhancements / Priors | Yrs/Styd/Strkn | County Jail |
|-------|-----|-----------|------------------|----------------------|----------------|-------------|
| 5 | F | PC288(A) | | PC(667.61(b)/(e)-15 yrs to life, dsd4 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Strike Prior(s) stricken pursuant to PC1385 based on the following reasons:**

1.
2.
3.
4.
5.

## ADDITIONAL PROBATION CONDITIONS:

[ ] Participate in **San Jose Alternatives to Violence Men's Drop-In Group** until enrolled in Domestic Violence Program
[ ] Participate in **Alcohol/Child Abusers** or other therapeutic program/counseling as directed by APO/Court

[ ] Participate in [ ] Delete [ ]Reinstate [ ] 1st Offender [ ] 3 mos [ ] 6 mos [ ] MOP [ ] Report within _____days
[ ] DL suspended/revoked/restricted for _____days/mos/yrs to, from, during [ ] Work/Alc Prog/School/Appts_____ [ ] Pur VC_____
[ ] IID advised / ordered / removed. Term_____yrs. [ ] Vehicle impounded / not impounded   [ ] Standard conditions Pursuant VC23600

[ ] Pay all **certified batterer's program** participation fees
[ ] Do not annoy, molest, strike, attack, threaten, harass, batter, sexually assault or disturb the peace of the victim
[ ] **No contact with victim or family / co-defendants unless approved by APO / Court**
[ ] **No contact by mail / pager / portable communication device**
[ ] Stay away from victim's residence and place of employment
[ ] Stay_____ feet / yards from victim
[ ] May have contact with victim under conditions approved by APO
[ ] Obey all Family Court orders
[ ] Shall not use corporal punishment in the disciplining of children

[ ] No illegal drugs / medications without a prescription
[ ] Take all medications as prescribed

[ ] **GANG ORDERS:** no insignia, tattoos, emblem, button, badge, cap, hat, scarf, bandanna, jacket, or other article of clothing which is evidence of affiliations with/or membership in a gang, no association with gang members, not frequent any areas of gang related activity. Shall not be adjacent to any school campus during school hours unless enrolled or with prior administrative permission. Shall not appear at any court proceeding unless a party, or defendant in a criminal action or subpoenaed as a witness. Register as required by law due to gang association.
[ ] Other: _____

1560

DISTRIBUTION: BLACK-FILE COPY, GREEN-DOC, BLUE-CJIC, PURPLE-DOR/PROBATION, BROWN-DEFENDANT

**ABSTRACT OF JUDGMENT—PRISON COMMITMENT—INDETERMINATE**
*(NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED)*

CR-292

SUPERIOR COURT OF CALIFORNIA, COUNTY OF:
**SANTA CLARA - HALL OF JUSTICE**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA vs. DEFENDANT: **Craig Richard Chandler** | DOB: 10/25/76   C1223754   -A |
| AKA: | -B |
| CII NO.: **A11301511** | |
| BOOKING NO.: **12001535**     ☐ NOT PRESENT | -C |
| COMMITMENT TO STATE PRISON ABSTRACT OF JUDGMENT     ☐ AMENDED ABSTRACT | -D |

| | | |
|---|---|---|
| DATE OF HEARING **11/22/13** | DEPT. NO. **37** | JUDGE **Arthur Bocanegra** |
| CLERK **J. Pena** | REPORTER **J. Mixco** | PROBATION NO. OR PROBATION OFFICER **K. Shannon**   ☐ IMMEDIATE SENTENCING |
| COUNSEL FOR PEOPLE **A. Filo** | | COUNSEL FOR DEFENDANT **B. Madden**   ☐ APPT'D. |

1. Defendant was convicted of the commission of the following felonies:

   ☑ Additional counts are listed on attachment

   —One— (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY JURY | COURT | PLEA | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 288(a) | Lewd or lascivious act on a child under 14 | 11-12 | 08 /01 / 13 | X | | | | | |
| 2 | PC | 288(a) | Lewd or lascivious act on a child under 14 | 2011 | 08 /01 / 13 | X | | | | X | |
| 3 | PC | 288(a) | Lewd or lascivious act on a child under 14 | 11-12 | 08 /01 / 13 | X | | | | X | |
| 4 | PC | 288(a) | Lewd or lascivious act on a child under 14 | 10-11 | 08 /01 / 13 | X | | | | X | |
| 5 | PC | 288(a) | Lewd or lascivious act on a child under 14 | 10-11 | 08 /01 / 13 | X | | | | X | |
| | | | | | / / | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed or "S" stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | PC667.61(b)/(e) | | | | | | |
| 2 | PC667.61(b)/(e) | | | | | | |
| 3 | PC667.61(b)/(e) | | | | | | |
| 4 | PC677.61(b)/(e) | | | | | | |
| 5 | PC667.61(b)/(e) | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Defendant was sentenced to State Prison for an INDETERMINATE TERM as follows:

4. ☐ LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____

5. ☐ LIFE WITH THE POSSIBILITY OF PAROLE on counts _____

6. a. ☑ 15 years to Life on counts all    c. ☐ _____ years to Life on counts_____

   b. ☐ 25 years to Life on counts _____    d. ☐ _____ years to Life on counts_____

   PLUS enhancement time shown above

7. ☐ Additional determinate term (see CR-290).

8. ☐ Defendant was sentenced pursuant to ☐ PC 667(b)-(i) or PC 1170.12 ☐ PC 667.61 ☐ PC 667.7 ☐ other *(specify):*

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CR-292 [Rev. January 1, 2012]

**ABSTRACT OF JUDGMENT—PRISON COMMITMENT—INDETERMINATE**

Pen. Code,
§§ 1213, 1213.5

1561

Case Name:  Craig Richard Chandler
Case Number:  C1223754
Attachment Page Number:  One

12.  Other orders (specify):

Comply with PC290.85. PC290.3 fines/fees waived. No contact with victim.
PC1202.05 ordered. CJAF $129.75. *$14,197.50 Victim Compensation & Govt
Claims Board. CDCR/Parole collect restitution from defendant's earnings. Advised
10 year parole/appeal.

TOTAL TERM:  75 YEARS TO LIFE

1562

CR-292

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: Craig Richard Chandler

| C1223754 | -A | -B | -C | -D |
|---|---|---|---|---|

9. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):

a. Restitution Fines:

Case A: $ 10,000 per PC 1202.4(b) forthwith per PC 2085.5; $ 10,000 per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case B: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case C: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case D: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

b. Restitution per PC 1202.4(f):

Case A: $ GEN ☐ Amount to be determined to ☑ victim(s)* ☐ Restitution Fund
Case B: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case C: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case D: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
☑ *Victim name(s), if known, and amount breakdown in item 12, below. ☐ *Victim name(s) in probation officer's report.

c. Fines:

Case A: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case B: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case C: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case D: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

d. Court Security Fee: $⁰⁰ per PC 1465.8.   e. Criminal Conviction Assessment: $50 per GC 70373.

10. TESTING: a. ☑ Compliance with PC 296 verified b. ☑ AIDS per PC 1202.1 c. ☐ other (specify):

11. REGISTRATION REQUIREMENT: ☑ per (specify code section): PC290

12. Other orders (specify):
SEE ATTACHMENT PAGE

13. IMMEDIATE SENTENCING:
☐ Probation to prepare and submit post-sentence report to CDCR per PC 1203c.
Defendant's race/national origin: _____

14. EXECUTION OF SENTENCING IMPOSED
a. ☑ at initial sentencing hearing
b. ☐ at resentencing per decision on appeal
c. ☐ after revocation of probation
d. ☐ at resentencing per recall of commitment (PC 1170(d).)
e. ☐ other (specify):

15. CREDIT FOR TIME SERVED

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| A | 785 | 683 | 102 | ☑ 2933 / 2933.1 / 4019 |
| B | | | | 2933 / 2933.1 / 4019 |
| C | | | | 2933 / 2933.1 / 4019 |
| D | | | | 2933 / 2933.1 / 4019 |

Date Sentence Pronounced
11  22  13

Time Served in State Institution
DMH [ ] CDC [ ] CRC [ ]

16. The defendant is remanded to the custody of the sheriff ☑ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☑ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ other (specify):

CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

1563

DEPUTY'S SIGNATURE
Maggie

DATE 11/25/13

CR-290 [Rev. January 1, 2012]   ABSTRACT OF JUDGMENT—PRISON COMMITMENT—INDETERMINATE   Page 2 of 2

43/00

CR-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

CRAIG RICHARD CHANDLER
CEN#: 12001535; PFN#: EBK966
Santa Clara County Jail - Elmwood Facility
701 S. Abel St., Milpitas, CA 95035
TELEPHONE NO.: N/A        FAX NO.: N/A
ATTORNEY FOR *(Name):* In Propria Persona

FILED

2013 NOV 22 A 11: 2L

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____ N. Nguyen
                        Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara

PEOPLE OF THE STATE OF CALIFORNIA
vs.
DEFENDANT: CRAIG RICHARD CHANDLER
Date of birth: 10/25/76 Cal. Dept. of Corrections and Rehabilitation No. (if any): To Be Assigned

| NOTICE OF APPEAL - FELONY (DEFENDANT)<br>(Pen. Code, §§ 1237, 1237.5, 1538.5(m); Cal. Rules of Court, rule 8.304) | CASE NUMBER(S):<br>C1223754 |
|---|---|

**NOTICE**

- You must file this form in the SUPERIOR COURT WITHIN 60 DAYS after the court rendered the judgment or made the order you are appealing.
- **IMPORTANT:** If your appeal challenges the validity of a guilty plea, a no-contest plea, or an admission of a probation violation, you must also complete the Request for Certificate of Probable Cause on page 2 of this form. (Pen. Code, § 1237.5.)

1. Defendant appeals from a judgment rendered or an order made by the superior court.

   NAME of defendant: CRAIG RICHARD CHANDLER

   DATE of the order or judgment: November 22, 2013

2. *Complete either item a. or item b. Do not complete both.*

   a. *If this appeal is after entry of a plea of guilty or no contest or an admission of a probation violation, check all that apply:*
      (1) ☐ This appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea. (Cal. Rules of Court, rule 8.304(b).)
      (2) ☐ This appeal is based on the denial of a motion to suppress evidence under Penal Code section 1538.5.
      (3) ☐ This appeal challenges the validity of the plea or admission. *(You must complete the Request for Certificate of Probable Cause on page 2 of this form and submit it to the court for its signature.)*
      (4) ☐ Other basis for this appeal *(you must complete the Request for Certificate of Probable Cause on page 2 of this form and submit it to the court for its signature) (specify):*

   b. *For all other appeals, check one:*
      (1) ☑ This appeal is after a jury or court trial. (Pen. Code, § 1237(a).)
      (2) ☐ This appeal is after a contested violation of probation. (Pen. Code, § 1237(b).)
      (3) ☐ Other *(specify):*

3. ☑ Defendant requests that the court appoint an attorney for this appeal. Defendant ☐ was   ☑ was not represented by an appointed attorney in the superior court.

4. Defendant's address is ☑ same as in attorney box above.
   ☐ as follows:

Date: November 22, 2013

CRAIG RICHARD CHANDLER                         ▶ _Craig Chandler_              1564
(TYPE OR PRINT NAME) CEN#: 12001535; PFN#: EBK966    (SIGNATURE OF DEFENDANT OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
CR-120 [Rev. January 1, 2010]
Martin Dean's
ESSENTIAL FORMS™

**NOTICE OF APPEAL - FELONY (DEFENDANT)**
**(Criminal)**

Penal Code, §§1237, 1538.5(m);
Cal. Rules of Court, rule 8.304
www.courtinfo.ca.gov

Chandler

**CR-110 SCCDA REVISED**

FOR RECORDER'S USE (TO BE FILLED IN BY JUDGMENT
CREDITOR OR REPRESENTATIVE ONLY)
ATTORNEY OR PERSON WITHOUT ATTORNEY
(Name, State Bar number and address):
Recording by County Recorder requested by and return to:
Name:
State Bar # for Attorneys:
Address:
Dept/Unit:
City:
Zip Code:                                State:
Phone #:                                 Fax (Optional):
E-Mail Address (Optional):
☐ ATTORNEY FOR ☒ JUDGMENT CREDITOR ☐ ASSIGNEE OF RECORD

Insert name of court, branch court, if any, and post office, and street address
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
☒ Hall of Justice, 190-200 West Hedding St., San Jose, CA 95110
☐ Palo Alto Courthouse, 270 Grant Ave., Palo Alto, CA 94306
☐ Downtown Superior Court, 191 North First St., San Jose, CA 95113
☐ South County Courthouse, 301 Diana Avenue, Morgan Hill, CA 95037
☐ Terraine Courthouse, 115 Terraine St., San Jose, CA 95110

FOR RECORDER'S USE ONLY

CASE NAME: People v. Craig Richard Chandler

ORDER FOR RESTITUTION AND ABSTRACT OF JUDGMENT
(Penal Code, §§ 1202.4(f), 1214)

CASE NUMBER: C1223754

**FILED**

NOV 2 5 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

ORDER FOR RESTITUTION

1. a. ☒ On (date): 08/01/2013
   defendant (name): Craig Richard Chandler
   was convicted of a crime that entitles the victim to restitution.

   b. ☐ Co-defendant(s) found jointly and severally liable (name each):

2. Evidence was presented that the victim named below suffered losses as a result of defendant's conduct.
   Defendant was informed of his or her right to a judicial determination of the amount of restitution and
   a. ☐ a hearing occurred.  b. ☒ stipulated to the amount of restitution/waived hearing.  c. ☐ was given notice/failed to appear.

3. THE COURT ENTERS JUDGMENT ON (date): 11-22-13   AND ORDERS defendant to pay restitution to:
   a. ☒ the victim (name): Victim Compensation and Government  in the amount of: $ 14197.50
   Claims Board
   b. ☐ the California Victim Compensation & Government Claims Board, to reimburse payments to the victim(s) from the Restitution Fund,
      in the amount of: $
   c. ☐ plus interest at 10 percent per year from the date of ☐ loss  or ☐ sentencing
   d. ☐ plus an administrative fee at 10 percent of the restitution owed (Pen. Code, §1203.1(/))

4. The amount of restitution includes:
   a. ☐ value of property stolen or damaged
   b. ☐ medical expenses
   c. ☐ lost wages or profits
      (1) ☐ incurred by victim due to injury
      (2) ☐ of victim's parent(s) or guardian(s) (if victim is a child) incurred while caring for the injured child
      (3) ☐ incurred by victim due to time spent as a witness or in assisting police or prosecution
      (4) ☐ of victims parent(s) or guardian(s) (if victim is a child) due to time spent as a witness or in assisting the police or prosecution

   d. ☐ noneconomic losses (felony violations of Penal Code section 288 only)
   e. ☐ attorney fees
   f. ☒ other (specify): Mental Health Services

5. This order was prepared and submitted to the court by: ☐ Judgment Creditor  ☐ Prosecutor  ☒ Probation Officer  ☐ Attorney  ☐ Other
                                                                                                              (Specify):

_____
Karamjot Grewal
(TYPE OR PRINT NAME)
Title: Deputy Probation Officer                    Date: 11/22/13

ARTHUR BOCANEGRA

VICTIM TO RECEIVE CERTIFIED COPY FOR FILING WITH COUNTY RECORDER

Form Approved for Optional Use
Judicial Council of California
CR-110/JV-780 [Rev. January 1, 2005]
[Rev. SCCDA June 3, 2008]

ORDER FOR RESTITUTION
AND ABSTRACT OF JUDGMENT

Penal Code, §§ 1202.4(f), 1203.1(l), 1214;
Welfare and Institutions Code, § 730.6(h), (i), (q)
Civil Code, § 17.14.1
Code of Civil Procedure, 674(a)(7)
www.santaclara-da.org
Page 1 of 2

1565

| CASE NAME: Craig Richard Chandler | CASE NUMBER: C122 |
|---|---|

**NOTICE**

PENAL CODE SECTION 1214 PROVIDES THAT ONCE A DOLLAR AMOUNT OF RESTITUTION HAS BEEN ORDERED, THIS ORDER IS THEN ENFORCEABLE AS IF IT WERE A CIVIL JUDGMENT. ALTHOUGH THE CLERK OF THE COURT IS NOT ALLOWED TO GIVE LEGAL ADVICE, YOU ARE ENTITLED TO ALL RESOURCES AVAILABLE UNDER THE LAW TO OBTAIN OTHER INFORMATION TO ASSIST IN ENFORCING THE ORDER.

THIS ORDER DOES NOT EXPIRE UNDER PENAL CODE SECTION 1214(d).

THE VICTIM SHALL FILE A SATISFACTION OF JUDGMENT WITH THE COURT WHENEVER AN ORDER TO PAY RESTITUTION IS SATISFIED, PURSUANT TO PENAL CODE SECTION 1214(d).

**APPLICATION FOR ABSTRACT OF JUDGMENT**

6. The ☐ judgment creditor ☐ assignee of record ☐ other (specify)
   applied for an abstract of judgment and represents the following:
   a. Judgments debtor's

|  | Name and last known address |
|---|---|
| Name: | Craig Richard Chandler |
| Address: | 1361 N SAN PEDRO |
| Dept/Unit: |  |
| City: | SAN JOSE     State:CA |
| Zip Code: | 95110 |

b. ☐ Driver's license No. and State: (last four digits only)                    ☒ Unknown
c. ☐ Social Security No.: (last four digits only) 3116                           ☒ Unknown
d. ☐ Date of Birth: 10/25/1976                                                 ☐ Unknown
Date: ___/___/___

_____            ▶ _____
(TYPE OR PRINT NAME)                   (SIGNATURE OF APPLICANT, OR ATTORNEY)
                                       ☐ ON INFORMATION AND BELIEF

**ABSTRACT OF JUDGMENT**

7. I certify that the following is a true and correct judgment entered in this action.                    [SEAL]

8. Judgment creditor (name): <u>Victim Compensation and Government Claims Board</u>
   ☐ whose address or whose attorney's address appears on this form above the
     court's name.

9. Judgment debtor (full name as it appears in judgment): Craig Richard Chandler

10. Judgment entered on (date): 11-22-13

11. Total amount of judgment as entered or last renewed: $ 14197-50

12. ☐ A stay of enforcement was ordered on ___/___/___     and is effective until ___/___/___
    ☐ A stay of enforcement was not ordered.

                                       David H. Yamasaki
This abstract of judgment issued on (date): NOV 25 2013   Clerk, by _Ruby Pallil_ , Deputy
                                                                      RUBY PALLIB

**NOTICE TO COUNTY RECORDER**
THIS ORDER IS ENFORCEABLE AS IF IT WERE A CIVIL JUDGMENT PURSUANT TO PENAL CODE SECTION 1202.4(i) & (m), AND PENAL CODE SECTION 1214, AND IT FUNCTIONS AS AN ABSTRACT OF JUDGMENT

| Form Approved for Optional Use | ORDER FOR RESTITUTION | Penal Code, §§ 1202.4[f], 1203.1(j), 1214; |
|---|---|---|
| Judicial Council of California | AND ABSTRACT OF JUDGMENT | Welfare and Institutions Code, § 730.6(h), (i), (s) |
| CR-110/JV-790 [Rev. January 1, 2005] | | Civil Code, § 17.14.1 |
| [Rev. SCCDA June 3, 2008] | | Code of Civil Procedure, 674(a)(7) |
| | | www.santaclara-da.org |
| | | Page 2 of 2 |

1566

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

PLAINTIFF:   THE PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT:   CRAIG RICHARD CHANDLER

**NOTICE OF FILING NOTICE OF APPEAL**

**F I L E D**

NOV 2 7 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ K. MILLER DEPUTY

CASE NUMBER:   C1223754

PLEASE TAKE NOTICE THAT A NOTICE OF APPEAL FROM THE ___JUDGMENT ENTERED  11/22/2013___ .

IN THE ABOVE-ENTITLED ACTION WAS FILED IN THIS OFFICE ON ___NOVEMBER 22, 2013___ .

**CLERK'S CERTIFICATE OF MAILING**

I CERTIFY THAT I AM NOT A PARTY TO THIS CAUSE AND THAT A TRUE COPY
OF THIS DOCUMENT WAS MAILED FIRST CLASS POSTAGE FULLY PREPAID
IN A SEALED ENVELOPE ADDRESSED AS SHOWN BELOW AND THE DOCUMENT
WAS MAILED AT

SAN JOSE, CALIFORNIA ON ___NOVEMBER 27, 2013___ .

**DAVID H. YAMASAKI, COURT CLERK**

BY: _____
        K. MILLER          DEPUTY CLERK

COURT OF APPEAL
SIXTH APPELLATE DISTRICT
333 W. SANTA CLARA ST. STE. 1060
SAN JOSE, CA 95113

ATTORNEY GENERAL
455 GOLDEN GATE AVENUE
ROOM 11000
SAN FRANCISCO, CA 94102

DISTRICT ATTORNEY
70 WEST HEDDING STREET, WEST WING
SAN JOSE, CA 95110

SIXTH DISTRICT APPELLATE PROGRAM
100 NORTH WINCHESTER BLVD, SUITE 310
SANTA CLARA, CA 95050

1567

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,
PLAINTIFF(S),

V.

CRAIG RICHARD CHANDLER

CASE NUMBER(S): C1223754

DEFENDANT(S).

**NOTICE TO COURT REPORTER RE: REPORTER'S TRANSCRIPT ON APPEAL**

A Notice of Appeal was filed in this office on:   November 22, 2013   (copy attached).
A Certificate of Probable Cause was filed in this office on: _____ (copy attached).

The following proceedings are to be transcribed:

| DATE | PROCEEDING | REPORTER | JUDGE | Page Allotment |
|---|---|---|---|---|
| 06/13/2012 | HEARING ON MOTIONS | A. PARROTT # 13157 | ROBERT M. FOLEY | |
| 09/28/2012 | " " | B. MACHADO # 9355 | KENNETH SHAPERO | |
| 06/11/2013 | MOTIONS IN LIMINE | J. MIXCO # 12708 | A. BOCANEGRA | |
| 06/28/2013 | " " | " " | " " | |
| 07/03/2013 | JURY TRIAL | " " | " " | |
| 07/11/2013 | " " | " " | " " | |
| 07/15/2013 | " " | " " | " " | |
| 07/16/2013 | " " | " " | " " | |
| 07/17/2013 | " " | " " | " " | |
| 07/18/2013 | " " | " " | " " | |
| 07/22/2013 | " " | " " | " " | |
| 07/23/2013 | " " | " " | " " | |
| 07/24/2013 | " " | " " | " " | |
| 07/25/2013 | " " | " " | " " | |
| 07/29/2013 | " " | " " | " " | |
| 07/30/2013 | " " | " " | " " | |
| 07/31/2013 | " " | " " | " " | |
| 08/01/2013 | " " | " " | " " | |
| 11/22/2013 | SENTENCING | " " | | |
| | | | FILED | |
| | | | NOV 2 7 2013 | |
| | | | DAVID H. YAMASAKI | |
| | | | Superior Court of CA County of Santa Clara | |
| | | | BY _____ DEPUTY | |

*Indicates Lead Reporter

You are to transcribe the proceedings, opinions or arguments as listed in CRC 8.320/8.865 excluding the voir dire examination and opening statement unless otherwise specified. You are directed to prepare and file with the Appeals Division an **Original** and **TWO** copies of the transcript on appeal within 20 days from the filing of the Notice of Appeal or as ordered, unless the time is extended as provided by CRC 8.616/8.866. If you have already prepared O and 2 for one defendant, only make one more copy for each additional defendant.

Copy of this Notice is mailed or delivered to the above-named Reporter(s) on this date:  November 27, 2013
(The Notice of Appeal was received by the Appeal's Desk on: November 26, 2013 )

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

1568

BY: _____
K. Miller, DEPUTY CLERK

Page 1 of 1

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,
· PLAINTIFF(S),

V.

CRAIG RICHARD CHANDLER

CASE NUMBER(S): C1223754

*AMENDED*                    DEFENDANT(S).

## NOTICE TO COURT REPORTER RE: REPORTER'S TRANSCRIPT ON APPEAL

A Notice of Appeal was filed in this office on: November 22, 2013     (copy attached).
A Certificate of Probable Cause was filed in this office on: _____ (copy attached).
The following proceedings are to be transcribed:

| DATE | PROCEEDING | REPORTER | JUDGE | Page Allotment |
|------|------------|----------|-------|----------------|
| 06/13/2012 | HEARING ON MOTIONS | A. PARROTT # 13157 | ROBERT M. FOLEY | |
| 09/28/2012 | " " | B. MACHADO # 9355 | KENNETH SHAPERO | |
| 06/11/2013 | MOTIONS IN LIMINE | J. MIXCO # 12708 | A. BOCANEGRA | |
| 06/28/2013 | " " | " " | " " | |
| 07/03/2013 | JURY TRIAL | " " | " " | |
| 07/11/2013 | " " | " " | " " | |
| 07/15/2013 | " " | " " | " " | |
| 07/16/2013 | " " | " " | " " | |
| 07/17/2013 | " " | " " | " " | |
| 07/18/2013 | " " | " " | " " | |
| 07/22/2013 | " " | " " | " " | |
| 07/23/2013 | " " | " " | " " | |
| 07/24/2013 | " " | " " | " " | |
| 07/25/2013 | " " | " " | " " | |
| 07/29/2013 | " " | " " | " " | |
| 07/30/2013 | " " | " " | " " | |
| 07/31/2013 | " " | " " | " " | |
| 08/01/2013 | " " | " " | " " | |
| 11/22/2013 | SENTENCING | " " | " " | |
| | | | | |
| | **AMENDED BECAUSE MACHADO'S & MIXCO'S NOTICES WERE NOT DELIVERED ON 11/27/13** | | DEC 03 2013 DAVID H. YAMASAKI Chief Executive Officer/Clerk Superior Court of CA, County of Santa Clara BY _____ DEPUTY | |

*Indicates Lead Reporter

You are to transcribe the proceedings, opinions or arguments as listed in CRC 8.320/8.865 excluding the voir dire examination and opening statement unless otherwise specified. You are directed to prepare and file with the Appeals Division an Original and TWO copies of the transcript on appeal within 20 days from the filing of the Notice of Appeal or as ordered, unless the time is extended as provided by CRC 8.616/8.866. If you have already prepared O and 2 for one defendant, only make one more copy for each additional defendant.

Copy of this Notice is mailed or delivered to the above-named Reporter(s) on this date: DEC 03 2013
(The Notice of Appeal was received by the Appeal's Desk on: November 26, 2013 )

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

1569

BY: _____
K. Miller, DEPUTY CLERK

Page 1 of 1

CC: DVA

RECEIVED

DEC 05 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ J. Pena
DEPUTY

1  Craig Richard Chandler, EBK966
2  885 San Pedro Street
3  San Jose, CA 95110
4  Defendant Pro Se
5
6  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
7  FOR THE COUNTY OF SANTA CLARA
8  PEOPLE OF THE STATE OF CALIFORNIA ) CASE No C 1223754
9          Plaintiffs,         ) EX PARTE MOTION DISCHARGING
10          VS                 ) DEFENSE COUNSEL; AND
11  CRAIG RICHARD CHANDLER     ) COMPEL PRODUCTION OF
12          Defendant          ) DEFENSE FILE; AND PETITION
13                             ) TO PROCEED PRO PER;
14                             ) AND STAY TRANSFER TO
15                             ) PRISON; AND NOTICE OF
16                             ) MOTION AND MOTION FOR
                                ) NEW TRIAL

16  TO: JEFF ROSEN, DISTRICT ATTORNEY, SANTA CLARA COUNTY; AND
17  ALLISON FILD, DEPUTY DISTRICT ATTORNEY, SANTA CLARA COUNTY
18  COMES NOW, the defendant, ex parte, in propria persona, to
19  move this court, having exercised right to discharge retained defense
20  counsel Brian Madden, by rule in People v. Ortiz, 51 Cal.
21  3d 975 (1990), to move this court to, 1) Order discharge
22  of Brian Madden, 2) Compel production of the defense trial court
23  file, 3) Order defendant permission to proceed pro per by waiver
24  of rights under Faretta v. California 422 U.S. 806 (1975), 4) Order
25  the defendant's file and prepare a transfer of defendant to prison to receive
26  new evidence and information, and 5) Notice of Motion and Motion
27  for New trial. Defendant has attached memoranda of points and
28  authority and sworn declaration supporting this motion.
   WHEREFORE the Defendant seeks an Order, ex parte on 12/2/13,
   having given 24 hour notice on 12/1/13, for an order to:

Page 1 of 2 / DEFENDANT'S EX PARTE MOTION        1570

1  1) Discharge Brian Madden, retained defense counsel; 2) Order
2  Brian Madden to provide trial court file to defendant by 12/2/13;
3  3) Order the defendant to Proceed Pro Per; 4) Order an immediate
4  stay to transfer to prison to prepare defense and be heard on
5  Motion for New Trial; and. 5) Notice of Motion, and Motion for
6  New Trial to be scheduled and allowing deffendant, proper to be
7  heard.

8  Date: _11_/_27_/13
9

10
11                              Craig Richard Chandler
12                              Craig Richard Chandler
13                              Defendant Pro Per
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  Page 2 of 2 / DEFENDANT'S EX PARTE MOTIONS

1571

1  Craig Richard Chandler, EBK966
2  885 North San Pedro Street
3  San Jose, CA 95110
4  Defendant Pro Per
5          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
6             FOR THE COUNTY OF SANTA CLARA
7  PEOPLE OF THE STATE OF CALIFORNIA) Case No. C_____
8          vs                Plaintiffs ) MEMORANDA OF POINTS AND
9  CRAIG RICHARD CHANDLER              ) AUTHORITIES SUPPORTING
10                         Defendant  ) DEFENDANTS EX PARTE
                                      ) MOTIONS
11  Defendant, pro per, submits the following points of authorities
12  supporting his ex parte motions, as follows:
13      I, Ex Parte Motion to Discharge Retained Defense Counsel
14  Defendant, pro per, makes a timely motion while in the jurisdiction
15  of Santa Clara County, to discharge his retained defense counsel,
16  having discharged Brian Madden on "Turkey Day" 11/27/13 DEF
17  DEC at P.___. Defendant has right to discharge his retained
18  defense counsel. People v. Ortiz 51 CAL. 3d 975 (1990),
19  Defendant argues his retained defense counsel violated the
20  Defendants rights secured by the 6 with and Fourteenth Amendments
21  to the United States Constitution, and by clearly established
22  rule in Strickland v. Washington 466 U.S. 668 (1984) Also,
23  violating the California Constitution, Article I §15, and rule
24  In Re Cordero 46 Cal. 3d 161 (1988). Defendant has a right
25  to counsel to file a motion for new trial and for the court
26  to allow the Defendant to be heard, Gideon v. Wainwright
27  372 U.S. 335 (1963);
28

Page 1 of 5 / MEMORANDA OF LAW SUPPORTING EX PARTE
MOTION
                                              1572

1  Drumgo v. Superior Court 8 Cal. 3d 970 (1970)

2      II. Petition to Proceed In Propria Persona

3      Defendant waves right to counsel and moves under clearly

4  established rule in Faretta v. California 422 U.S. 806 (1975),

5  to proceed in propria persona, and Defendant has attached a

6  sworn statement acknowledging that right and need for immediate

7  action to expedite this matter to protect due process rights

8  under Sixth and Fourteenth Amendment to the United States

9  Constitution to file a timely Motion for a New Trial

10     III  Motion to Compel Brian Madden to Produce Defense File

11  Defendant has a right to a meaningful defense, California

12  v. Trombetta 467 US 479 (1984), Defendant has discharged

13  his defense counsel, exercised right to proceed proper, and now

14  argues he has a right to a meaningful defense and to prepare

15  his defense he must have access to his defense file refused

16  by Brian Madden, and that this Court has authority and a duty

17  to order the defense file, be produced in a timely manner after

18  discharge and by Defendant having proof of service of this

19  ex parte motion on Brian Madden on 12/1/13, to copy and

20  provide the file by 9 am on 12/2/13 to the Defendant, and

21  the due process clause requires access to the Defendants

22  file under Fourteenth Amendment to the United States Constitution

23     IV  Motion Ex Parte for Stay of Transfer to Prison

24     Defendant requires an immediate order to stay his scheduled

25  transfer to prison, as the Defendant, pro per, must receive the

26  defense file, and prepare his defense and to be heard before

27  this

28  Page 2 of 5 / MEMORANDA OF LAW SUPPORTING EX PARTE
           MOTIONS

                                          1573

1   Court on his timely motion for a new trial, and argues he
2   has a right to be heard in person McKaskle v Wiggins 465
3   US 168 (1984); Fourtenth Amendment, Six Amendment,
4   United States Constitution.
5                    V. Motion for a New Trial
6      Defendant argues grounds for a new trial based on his
7   defense counsel, Brian Madden, having been incompetent
8   and ineffective, inadequate, assistance of counsel, in violation
9   of rights secured by the Sixth and Fourtenth Amendments, under
10  the clearly established rule in Strickland v Washington 466, U.S
11  668 (1984), with cause and prejudice as follows:
12     First, defense counsel violated the clearly established
13  rule in Griffin v California 380 U.S 609 (1963), by advising the
14  Defendant that he (Brian Madden) could order him to testify
15  or not testify testify because he was the lawyer in charge
16  of that decision. Def Dec at p.—. Defendant argues Hon.
17  Judge Bocanegra admonished his defense counsel on this
18  issue before the jury causing prejudice and grounds for mistrial
19  which was not requested by incompetent defense counsel. Defendant
20  argues that defense counsel violated the clearly established rule
21  in Rock v Arkansas 483 U.S 44 (1987) when advising Defendant
22  he had no right to decide whether he would testify or not
23  testify in this matter. Def Dec. at p.—. Secondly, the
24  defense counsel's advise continued to advise that the Defendant
25  could not testify unless defense counsel called him as a witness
26  Violated his right to testify that was made in a request to his
27  defense counsel in a recess after Hon. Judge Bocanegra
28  admonished the defense counsel, Brian Madden; thus causing
    prejudice.

    Page 3 of 5 / MEMORANDA OF LAW SUPPORTING EX PARTE MOTION

1  Lastly, the prosecution's remarks in closing statements
2  referring to the Defendant not testifying clearly violated
3  the rule in Griffin v. California, supra, and that defense
4  counsel failed to object, and the Defendant now objects for
5  the record, and alleges this is a fundamental right violated
6  by cause and prejudice created by incompetent defense counsel.
7     Defendant has a great character background, no evidence of
8  sex offending profile, no criminal background, and in a credibility
9  case based solely on circumstantial evidence, little evidence
10 would tilt the playing field, and the jury, having not heard the
11 Defendant's side of the story was a critical and incompetent
12 blunder by unconstitutional act of the defense counsel clearly
13 violated Griffin, Rock, and the Courts instruction by continued
14 refusal to allow the Defendant to testify after being instructed
   that was not the law by this court
15    Further, this is a fundamental violation of rights and is
16 not subject to harmless error, by the clearly established rule
17 in Chapman v California 386 U.S. 18 (1966), as this is grounds
18 for a new trial. People v Ryner 164 CAL App. 3d 1075 (1973)
19 People v. Rios 140 Cal. App. 3d 616 (1983); Fourteenth and
20 Sixth Amendments, United States Constitution. Defendant argues
21 for a right to be heard in person. McKaskle v. Wiggins, Id,
22 pro per, at a scheduled hearing on this motion for new trial.
23    Defendant argues new evidence and other grounds for a
24 new trial exist; however, the Defendant is deprived of access
25 to his trial court defense file, meaning ful access to the courts
26 by no
27 Page 4 of 5/MEMORANDA OF LAW SUPPORTING EX PARTE
28                    MOTIONS

1575

1   pro per legal materials, and is denied meaningful access
2   to the courts and to defense in violation of rights secured by
3   the Fourteenth Amendment to the United States Constitution,
4   and Defendant seeks leave to amend his motion for new trial
5   after receipt of his defense file, and for new evidence to
6   prepare and present to this court proving his innocence.
7   Date 11/27/13

9                        *Craig Richard Chandler*
10                       Craig Richard Chandler
11                       Defendant, Pro Per

Page 5 of 5 / MEMORANA OF LAW SUPPORTING EX PARTE
        MOTION
                                        1576

1  Craig Richard Chandler, E8K944
2  885 North San Pedro Street
3  San Jose, CA 95110

4  Defendant Pro Se

5       IN THE SUPERIOR COURT OF THE STATE CALIFORNIA
6            FOR THE SANTA CLARA

7  PEOPLE OF THE STATE OF CALIFORNIA )  Case No C _____
8                                    )  DECLARATION OF THE
9                 Plaintiffs         )  DEFENDANT SUPPORTING
                   vs.               )  EX PARTE MOTIONS
10   CRAIG RICHARD CHANDLER          )
11               Defendant           )

12  1. Craig Richard Chandler, declare and say, under penalty
13  or perjury, as true and correct, the following:
14
15  2. I allege Craig Richard Chandler, the above and entitled
16  defendant, proceeding proper

17  3. I allege 11/27/13("Turkey Day"), having discharged Brian
18  Madden, and waiving my right to a defense counsel and
19  waiver of my rights of defense counsel under Foretta vs.
20  California 422 U.S. 806 (1975), in a knowing and intelligent
21  waiver of my rights, with my eyes wide open.

22  4. I allege requiring the defense trial record be compelled
23  for production by Brian Madden, having proof of service on
24  12/1/13 noticing Ex Parte to be heard 12/2/13 at 9a.m.
25  for delievery of the complete defense file to defendant.

26  5. I allege that I was denied effective and adequate
27  legal defense counsel. Violation of my sixth and
28  fourteenth amendment to the United State Constitution

Page 1 of 3 / DECLARATION OF DEFENDANT SUPPORTING
EX PARTE MOTIONS
                                              1577

1  and violation of clearly and established rule by the
2  Supreme Court in Strickland v Washington
3  6. I allege that I was denied effective and adequate
4  legal defense counsel violation of Article 1 §15 and
5  rule in In Re Cordero 46 CAL 3rd 161 (1988)
6
7  7. I allege that I have a right to file a motion for
8  new trial under equal protection and Due Process clauses
9  from the fourteenth amendment of the U.S. Constitution
10  8. I allege I have a right to file a motion for a
11  new trial to defend myself under the six and fourteenth
12  amendment to the United States Constitution
13  9. I allege that in order to make motion for a new trial
14  I need my defense trial files and it's critical to my defense.
15  10 I allege I need an immediate order to stay so I can
16  appear at a hearing for a new trial
17  11. I allege ground exist for a new trial.
18  12 I allege Brian Madden told the jury that it was his
19  decision if I would take the stand.
20  13 I allege I have great character background and should
21  of been allowed to take the stand.
22
23  14. I allege I have new evidence and other grounds for
24  a new trial
25  15. I allege the prosecution and judge admonished
26  my attorney in front of the jury and that the jury
27  panel should have been removed
28

Page 2 of 3 / DECLARATION OF DEFENDANT SUPPORTING
EX PARTE MOTION

1578

16. I allege on numerous occasions throughout the trial I requested to testify and he continued to tell me I had no right to decide that it was Brian Maddens decision, and he told me he would not call me as a witness, and continued throughout the trial and later I discovered that was not law

17. I allege in closing arguments prosecutor raised the issue that I did not testify before the jury to cause me prejudice blaming me not my lawyer unfairly. And my lawyer having being informed by the rule explained by judge was incompetent by failing to object.

18. I allege being denied fundamental rights not to be prejudice regarding my testimony in trial

19 I allege this is a case in which there is a crediability contest and my crediablity and background as a teacher, not person lacking moral turpitude and adult disputing the testimony of children and it was imparitive to my defense to allow me to explain my innocense by my testimony.

20. I allege my attorney repeatly harassed me before and during trial that I would not take the stand

21. I allege my attorney did not call for psychtrist to check students before trial

Page 3 of 3 / DECLARATION OF DEFENDANT
SUPPORTING EX PARTE MOTION   1579
Date 12/2/13   CRC
Craig Richard Chandle

F I L E D

DEC 06 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY
J. Pena

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

In re                           )
                                )
                                )    No. C1223754
                                )
CRAIG RICHARD CHANDLER,         )    O R D E R
                                )
Ex Parte                        )
_____)

    Mr. CHANDLER has submitted to the Superior Court a motion to

"Discharge defense counsel and compel production of defense file and

petition to proceed Pro Per and stay transfer to prison and notice of

motion and motion for new trial."

    The submission is untimely given that Defendant has already been

sentenced by this Court and has filed a notice of appeal.

        The filing of a valid notice of appeal vests jurisdiction
        of the cause in the appellate court until determination
        of the appeal and issuance of the Remittitur.  [A]n
        appeal from an order in a criminal case removes the
        subject matter of that order from the jurisdiction of the
        trial court.  [A]n appeal stays all further proceedings
        in the trial court upon the order or judgment appealed
        from and matters embraced therein.  The purpose of the
        rule depriving the trial court of jurisdiction pending
        appeal is to protect the appellate court's jurisdiction
        by preserving the status quo until the appeal is decided.
        The rule prevents the trial court from rendering an

1580

1

1    appeal futile by altering the appealed judgment by
     conducting other proceedings that may affect it. Because
2    an appeal divests the trial court of subject matter
     jurisdiction, the court lacks jurisdiction to vacate the
3    judgment or make any order affecting it. (*People v.*
     *Alanis* (2008) 158 Cal.App.4th 1467, 1472. [Cites and
4    quotes omitted.] See also *People v. Nelms* (2008) 165
     Cal.App.4th 1465, 1472, *People v. Saunoa* (2006) 139
5    Cal.App.4th 870, 872, and *People v. Superior Court*
     *(Gregory)* (2005) 129 Cal.App.4th 324, 329.)

6

7         Petitioner may communicate with his appellate attorney so that

8    his issues may be promptly and appropriately presented and addressed.

9    To the extent Petitioner desires a copy of any documents or Superior

10   Court transcripts, this is a matter that must also be pursued through

11   his appellate attorney.  All the transcripts that Petitioner is

12   entitled to are being prepared and delivered to his appellate

13   attorney.  Petitioner should be sure to obtain these from his

14   appellate attorney after the appeal because another copy will not be

15   provided free of charge.

16

17        For the above reasons, no action will be taken on the submission

18   and all requests for relief contained therein, and related to it, are

19   DENIED.

20

21

22   DATED: 12/6/13 , 2013

23                              HON. ARTHUR BOCANEGRA
                                JUDGE OF THE SUPERIOR COURT

24

25   cc:  Petitioner
          District Attorney (Motions Unit)
26        Research(12-5A)
          CJIC

27

28
                                                        1581

                              2

**IN THE SUPERIOR COURT OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA CLARA**

F I L E D

DEC 0 6 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY _____ DEPUTY

| | |
|---|---|
| Plaintiff/Petitioner:<br>THE PEOPLE OF THE STATE OF CALIFORNIA | |
| Defendant/Respondent:<br>CRAIG RICHARD CHANDLER | |
| PROOF OF SERVICE OF:  ORDER | Case Numbers: C1223754 |

CLERK'S CERTIFICATE OF SERVICE:     *THE UNDERSIGNED STATES:*

*"I AM A CITIZEN OF THE UNITED STATES, OVER 18 YEARS OF AGE, EMPLOYED IN SANTA CLARA COUNTY AND NOT A PARTY TO THIS WITHIN ACTION; THAT MY BUSINESS ADDRESS IS THE HALL OF JUSTICE, SAN JOSE, CALIFORNIA; THAT I SERVED THE WITHIN NOTICE, BY CAUSING TO BE PLACED A TRUE COPY THEREOF IN ENVELOPES ADDRESSED TO THE PARTIES AND APPLICABLE AGENCIES INDICATED BELOW, WHICH ENVELOPES WERE THEN SEALED AND POSTAGE FULLY PREPAID THEREON AND THEREAFTER DEPOSITED IN THE UNITED STATES MAIL AT SAN JOSE, CALIFORNIA, (OR PERSONALLY DEPOSITED INTO THE APPROPRIATE INTER-DEPARTMENTAL COURIER RECEPTACLE(S) FOR DELIVERY OR PERSONALLY DEPOSITED INTO THE APPROPRIATE INTER-OFFICE PICK-UP BOX WHERE APPLICABLE) ON DATE SHOW BELOW; THAT THERE IS REGULAR DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO ADDRESSED OR THAT THERE IS REGULAR DELIVERY SERVICE BETWEEN THE COURTHOUSE AND BELOW-LISTED AGENCIES, OFFICES OR DEPARTMENTS."*

*I declare under penalty of perjury that the foregoing is true and correct.*

**DATED:    December 6, 2013**

David H. Yamasaki, Executive Officer/Clerk

BY _____ , Deputy
Jennifer Pena

X  CRAIG RICHARD CHANDLER
    PFN # EBK966
    SANTA CLARA COUNTY MAIN JAIL
    *VIA INTER-OFFICE MAIL*

X  OFFICE OF THE DISTRICT ATTORNEY
    MOTIONS UNIT
    70 WEST HEDDING ST.
    SAN JOSE, CA 95113
    *VIA INTER-OFFICE MAIL*

X  SANTA CLARA COUNTY SUPERIOR COURT
    HALL OF JUSTICE – CRIMINAL DIVISION
    RESEARCH DIVISION (12-5A)
    191 N. FIRST STREET
    SAN JOSE, CA 95110
    *VIA INTER-OFFICE MAIL*

X  SANTA CLARA COUNTY SUPERIOR COURT
    HALL OF JUSTICE – CRIMINAL DIVISION
    CJIC DIVISION
    191 N. FIRST STREET
    SAN JOSE, CA 95110
    *VIA INTER-OFFICE MAIL*

1582

Proof of service
Clerk's Certificate of Service

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA CLARA

PLAINTIFF: **THE PEOPLE OF THE STATE OF CALIFORNIA**

DEFENDANT: **CRAIG RICHARD CHANDLER**

## NOTICE OF COMPLETION OF:

CASE NUMBER: **C1223754**

☒ CLERK'S TRANSCRIPT     ☒ REPORTER'S TRANSCRIPT
☐ CORRECTIONS/ADDITIONS     ☐ AUGMENTATION

YOU ARE HEREBY NOTIFIED THAT THE TRANSCRIPT(S) ON APPEAL IN THE ABOVE-ENTITLED ACTION HAVE BEEN COMPLETED.

---

### CLERK'S CERTIFICATE OF MAILING

I CERTIFY THAT I AM NOT A PARTY TO THIS CAUSE AND THAT A TRUE COPY OF THIS DOCUMENT WAS MAILED FIRST CLASS POSTAGE FULLY PREPAID IN A SEALED ENVELOPE ADDRESSED AS SHOWN BELOW AND THE DOCUMENT WAS MAILED AT

JAN 2 9 2014

SAN JOSE, CALIFORNIA ON _____

DAVID H. YAMASAKI, COURT CLERK

BY: _____
K. MILLER      DEPUTY CLERK

COURT OF APPEAL
SIXTH APPELLATE DISTRICT
333 W. SANTA CLARA ST. STE. 1060
SAN JOSE, CA 95113

ATTORNEY GENERAL
455 GOLDEN GATE AVENUE
ROOM 11000
SAN FRANCISCO, CA 94102

SIXTH DISTRICT APPELLATE PROGRAM
100 NORTH WINCHESTER BLVD, SUITE 310
SANTA CLARA, CA 95050

1583

I, _____K. MILLER_____, Deputy Clerk of the Superior Court of the State of California, County of Santa

Clara, do hereby certify the foregoing to be a full, true, and correct copy of documents requested and/or

specifically identified on the index pages of the Clerk's Transcript on Appeal, as the same now appear on

file in this office.

I further certify that I have complied with CCP 237 (a) (2) in that all personal juror identifying information

has been redacted, if applicable.

In witness, I have hereunto set my hand and the seal of said Superior Court, this:  January 6, 2014

DAVID H. YAMASAKI
CHIEF EXECUTIVE OFFICER/CLERK

BY: _____
        K. MILLER            DEPUTY CLERK

**THE PEOPLE V.   CRAIG RICHARD CHANDLER            CASE NUMBER:            C1223754**

1584