1  XAVIER BECERRA
   Attorney General of California
2  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
3  JILL M. THAYER
   Deputy Attorney General
4  State Bar No. 166428
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5954
6   Fax:  (415) 703-1234
    E-mail:  Jill.Thayer@doj.ca.gov
7  *Attorneys for Respondent*

8

           IN THE UNITED STATES DISTRICT COURT
9
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                  SAN FRANCISCO DIVISION
11

12

13  **CRAIG RICHARD CHANDLER,**          17-cv-00325-EMC

14                        Petitioner,    **EXHIBITS**

15         **v.**

16  **SCOTT FRAUENHEIM, Warden,**

17                        Respondent.

18

19

20     Exhibit 2      Augmentation to State Court Clerk's Transcript

21     Exhibit 3      State Court Reporter's Transcript (Vols. 1-6)

22

23

24

25

26

27

28

# EXHIBIT 2

## COURT OF APPEAL, STATE OF CALIFORNIA,
### IN AND FOR THE SIXTH APPELLATE DISTRICT

**THE PEOPLE**               *PLAINTIFF*
                             *AND RESPONDENT*

**V.**

**CRAIG RICHARD CHANDLER**        *DEFENDANT*
                                  *AND*
                                  *APPELLANT*

COURT OF APPEAL NO.:   **H040429**

SUPERIOR COURT CASE #:   **C1223754**

☒ AUGMENTATION TO THE CLERK'S TRANSCRIPT ON APPEAL

☐ AUGMENTATION TO THE CLERK'S TRANSCRIPT ON APPEAL PURSUANT TO CRC 8.340

☐ SUPPLEMENTAL CLERK'S TRANSCRIPT

**NOTICE OF COMPLETION OF AUGMENTATION:  APRIL 30, 2014**

|   | INDEX TO CLERK'S TRANSCRIPT | PAGE | VOL. |
|---|---|---|---|
|   | SANTA CLARA COUNTY CASE NO. C1223754 |   |   |
| 1 | PEOPLE'S EXHIBIT # 7 | 1 | 1 |
| 2 | PEOPLE'S EXHIBIT # 24 | 3 | 1 |
| 3 | CLERK'S CERTIFICATE | 5 | 1 |
| 4 | NOTICE OF COMPLETION | 6 | 1 |
| 5 | CLERK'S CERTIFICATION | 7 | 1 |

| | INDEX TO CLERK'S TRANSCRIPT | PAGE | VOL. |
|---|---|---|---|
| | SANTA CLARA COUNTY CASE NO. C1223754 | | |
| 1 | CLERK'S CERTIFICATE | 5 | 1 |
| 2 | CLERK'S CERTIFICATION | 7 | 1 |
| 3 | NOTICE OF COMPLETION | 6 | 1 |
| 4 | PEOPLE'S EXHIBIT # 24 | 3 | 1 |
| 5 | PEOPLE'S EXHIBIT # 7 | 1 | 1 |

No. _C1223754_     Exh # _7_

[X] Identification    [X] Admitted

_PEOPLE_    vs _CHANDLER_

Date_ JUL 1 8 2013    Clerk_STAFFORD_

3863-A REV 2/86

1

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CAMBRIDGE
Limited

7/7

2

No. C1223754   Exh # 24

[X] Identification   [X] Admitted

PEOPLE   vs CHANDLER

Date JUL 2 5 2013   Clerk STAFFORD

3863-A REV 2/86

3

IN THE SUPERIOR COURT OF THE STATE OF
CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| **THE PEOPLE** | **COURT OF APPEAL NO. H040429** |
| | **SANTA CLARA COUNTY NO. C1223754** |
| **V.** | |
| **CRAIG RICHARD CHANDLER** | **CLERK'S CERTIFICATE** |

I, _____ K. MILLER _____ , DEPUTY COUNTY CLERK OF THE COUNTY OF SANTA

CLARA, STATE OF CALIFORNIA, DO CERTIFY THE FOLLOWING:

In response to the Augmentation order filed 04/08/14, I am transmitting item C to the Sixth District Court of
Appeal:

"Copy of People's Exhibit No. 16 (DVD containing audio & video from the defendant's iPhone), admitted
into evidence on July 29, 2013."

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND THE SEAL OF SAID
SUPERIOR COURT, THIS _____ 04/30/2014 _____

DATE

**DAVID H. YAMASAKI**
CHIEF EXECUTIVE OFFICER/CLERK

K. MILLER

DEPUTY CLERK

5

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
IN AND FOR THE COUNTY OF SANTA CLARA

PLAINTIFF:    THE PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT:    CRAIG RICHARD CHANDLER

## NOTICE OF COMPLETION OF:

CASE NUMBER:   C1223754

☒ CLERK'S TRANSCRIPT          ☒ REPORTER'S TRANSCRIPT
☐ CORRECTIONS/ADDITIONS    ☒ AUGMENTATION

YOU ARE HEREBY NOTIFIED THAT THE TRANSCRIPT(S) ON APPEAL IN THE ABOVE-ENTITLED ACTION HAVE BEEN COMPLETED.

**CLERK'S CERTIFICATE OF MAILING**

I CERTIFY THAT I AM NOT A PARTY TO THIS CAUSE AND THAT A TRUE COPY OF THIS DOCUMENT WAS MAILED FIRST CLASS POSTAGE FULLY PREPAID IN A SEALED ENVELOPE ADDRESSED AS SHOWN BELOW AND THE DOCUMENT WAS MAILED AT

SAN JOSE, CALIFORNIA ON _____ APRIL 30, 2014 _____.

**DAVID H. YAMASAKI, COURT CLERK**

BY: _____
K. MILLER            DEPUTY CLERK

COURT OF APPEAL
SIXTH APPELLATE DISTRICT
333 W. SANTA CLARA ST. STE. 1060
SAN JOSE, CA 95113

ATTORNEY GENERAL
455 GOLDEN GATE AVENUE
ROOM 11000
SAN FRANCISCO, CA 94102

JEFFREY S. KROSS
P O BOX 2252
SEBASTOPOL, CA 95473-2252

6

I, _____K. MILLER_____, Deputy Clerk of the Superior Court of the State of California, County of Santa Clara, do hereby certify the foregoing to be a full, true, and correct copy of documents requested and/or specifically identified on the index pages of the Clerk's Transcript on Appeal, as the same now appear on file in this office.

I further certify that I have complied with CCP 237 (a) (2) in that all personal juror identifying information has been redacted, if applicable.

In witness, I have hereunto set my hand and the seal of said Superior Court, this:   April 30, 2014

DAVID H. YAMASAKI
CHIEF EXECUTIVE OFFICER/CLERK

BY: _____
    K. MILLER          DEPUTY CLERK

**THE PEOPLE V.   CRAIG RICHARD CHANDLER        CASE NUMBER:      C1223754**

7

# EXHIBIT 3
# (Vol. 1)

1

1     COURT OF APPEAL OF THE STATE OF CALIFORNIA

2             SIXTH APPELLATE DISTRICT

3

4   THE PEOPLE OF THE STATE OF          )    COURT OF APPEAL
    CALIFORNIA,                         )    NO.
5                                       )
                    PLAINTIFF AND       )    SUPERIOR COURT
6                   RESPONDENT,         )    NO. C1223754
                                        )
7          vs.                          )    VOL. 1
                                        )
8   CRAIG RICHARD CHANDLER,             )    PAGES 1~19
                                        )
9                   DEFENDANT AND       )
                    APPELLANT.          )    **FILE COPY**
10                                      )

11

12      FROM THE SUPERIOR COURT OF SANTA CLARA COUNTY

13        HONORABLE ROBERT M. FOLEY, JUDGE

14          REPORTER'S TRANSCRIPT ON APPEAL

15                JUNE 13, 2012

16

17

18

19   A P P E A R A N C E S:

20   FOR THE PLAINTIFF       OFFICE OF THE ATTORNEY GENERAL
     AND RESPONDENT:         455 GOLDEN GATE AVENUE, SUITE 11000
21                           SAN FRANCISCO, CA 94102

22

23   FOR THE DEFENDANT       SIXTH DISTRICT APPELLATE PROGRAM
     AND APPELLANT:          100 N. WINCHESTER BLVD., SUITE 310
24                           SANTA CLARA, CA 95050

25

26

27
                  ASHLEY PARROTT, CSR 13157
28                OFFICIAL COURT REPORTER

2

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

BEFORE THE HONORABLE ROBERT M. FOLEY, JUDGE

DEPARTMENT 52

THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                          )
                          Plaintiff,      )
                                          )
            vs.                           )    NO. C1223754
                                          )
CRAIG RICHARD CHANDLER,                   )
                                          )
                          Defendant.      )
                                          )

REPORTER'S TRANSCRIPT

MOTION TO SET BAIL

JUNE 13, 2012

A P P E A R A N C E S:

FOR THE PEOPLE:              ALISON FILO, ESQ.
                            DEPUTY DISTRICT ATTORNEY

FOR THE DEFENDANT:          BRIAN MADDEN, ESQ.
                            ATTORNEY AT LAW

ASHLEY PARROTT, CSR NO. 13157
OFFICIAL COURT REPORTER

1        WEDNESDAY, JUNE 13, 2012; SAN JOSE, CALIFORNIA

2               P R O C E E D I N G S

3                    -o0o-

4     THE COURT:  The People versus Craig Richard Chandler,

5   who is present in court.  Would counsel identify themselves

6   please?

7     MR. MADDEN:  Brian Madden appearing for the defendant.

8   He is personally present.

9     THE COURT:  You desire me to set bail in this case?

10    MR. MADDEN:  That's the request by this motion.  Yes.

11    THE COURT:  I've read and considered your moving papers

12  and the report from the office of pretrials services.

13    MR. MADDEN:  I have one other document I wanted to give

14  to the Court.  I've given a copy of it to the People

15  previously.  That is the June 12th letter from LCA that I

16  refer to in my moving papers.

17    THE COURT:  Any objection to my reviewing this?

18    MS. FILO:  No, Your Honor.

19    THE COURT:  Thank you very much.

20    MS. FILO:  I guess I should state, Your Honor, first of

21  all, Alison Filo appearing for the People.  Good afternoon.

22  I do have an objection to Court considering the motion at

23  all.

24    THE COURT:  Basis?

25    MS. FILO:  Your Honor, this issue was raised in front

26  of Judge McKay McCoy less than a month ago, at the

27  conclusion of the preliminary hearing, three-day-long long

28  cause hearing which was commenced on May 21st.  The motion

4

1    for setting of bail was brought by counsel at that time.

2    Not this counsel but another attorney.  All of the same

3    issues were raised in front of her.  I brought a copy of

4    that transcript for the Court on the off-chance you had not

5    seen it.

6         THE COURT:  I haven't seen it.

7         MS. FILO:  Because this issue has been litigated and

8    the defendant's motion was denied, no change of

9    circumstances has been shown.  And the People would object

10   to it being heard at all.  I think the remedy here is a writ

11   or motion for reconsideration.

12        THE COURT:  If I can see that transcript please.

13        MR. MADDEN:  Your Honor, let the record reflect that I

14   have not seen this transcript.

15        THE COURT:  Show it to Mr. Madden please.

16        MS. FILO:  I'm sorry.

17        MR. MADDEN:  Before I get to that, in the interest of

18   time, I have not represented Mr. Chandler until the

19   arraignment after the preliminary examination.  I have read

20   all of the police reports up to date; however, I've not been

21   able to obtain a copy of the preliminary hearing transcript.

22        THE COURT:  But I take it this is --

23        MR. MADDEN:  I have no doubt that that's the case.  But

24   I just want to address:  First of all, there is no -- I'm

25   not exactly sure what Ms. Filo's point is as if there was

26   some statutory or caselaw telling you how many times you can

27   have a bail motion.  There's no authority for limiting it to

28   one, just as a matter of law.

1          But, most importantly, it's my understanding --

2     and I was not at the prelim and haven't read the transcript

3     but -- it's my understanding that the bail motion was not a

4     noticed motion.  There were no papers filed.  I believe it

5     was something of a summary nature presented orally after

6     there was a holding order that -- I'm guessing here -- took

7     just a few pages.

8          And it's my understanding that -- I'm informed and

9     I believe -- that Judge McKay McKoy indicated that she was,

10    at that point, obviously, denying the motion for bail, but

11    it was my understanding that she indicated she was doing so

12    without prejudice, realizing that the defendant would be

13    bringing that motion again in front of another court after

14    the arraignment.

15        THE COURT:  Let him see the preliminary examination

16    transcript.

17        MS. FILO:  Sure, Your Honor.  I think I got the full

18    transcript yesterday or, maybe, the day before.

19        MR. MADDEN:  Thank you.

20            (Pause in the proceedings.)

21        MR. MADDEN:  I'm finished, Your Honor.  I have no

22    difficulty with the Court reading it.  But I would call the

23    Court's attention to Page 514 lines 27 to 28.  Let me read

24    it:  The motion to reduce bail is denied without prejudice.

25    Some other judge may feel differently or analyze the case

26    differently from the way I do.

27        THE COURT:  You have affirmative evidence that was

28    never presented to Judge McKay McCoy?

1        MR. MADDEN:  There was, virtually, no evidence

2   presented to her.  It was argument of Mr. Clark the sum

3   total of which takes approximately five pages.  And that's

4   including everything that the district attorney and

5   Mr. Clark and the Court said.  I'm not faulting him.  He

6   just made an off-the-cuff, informal motion.  As the court

7   can see from my papers, that's not what I've done.

8        THE COURT:  I would not expect you to do something like

9   that, Mr. Madden.  Judge McKay McCoy denied the request for

10  bail without prejudice.  I think he is entitled to bring his

11  motion.

12       MS. FILO:  Your Honor, I think the problem is every

13  bail motion has to be denied without prejudice because, if

14  there is a change in circumstance, the defendant is

15  absolutely entitled to bring that before a new magistrate or

16  new judge and have that issue reexamined.  It always has

17  been without prejudice.

18            But Judge McKay McCoy -- I think the argument here

19  is that you cannot present the same set of circumstances to

20  a judge every three weeks, hoping that the decision will be

21  different.  There's no different information presented to

22  this Court.  The information about Mr. Chandler's criminal

23  history was presented to Judge McKay McCoy.  The information

24  about his ties to the community was presented to her.  The

25  information that the crimes occurred in a classroom and he

26  would not be returning to that setting was presented to her.

27  The argument that he had no other history was presented to

28  her.  The offer that he be placed on electronic monitoring

1   was presented to her.

2         These exact same arguments were presented to Judge

3   McKay McKoy.  She heard three days worth of testimony from

4   live victims.  This was not a Prop 115 hearing.  I can tell

5   you what her comments were at the end of that hearing.  She

6   was -- I think fair to say -- beyond appalled by the

7   defendant's conduct, and what she believed was sufficient

8   evidence to hold him to answer as charged.  So I think it

9   is -- I think bringing this motion again within three weeks

10  with no change of circumstance is really judge shopping.

11        THE COURT:  May I see the transcript?

12        MS. FILO:  Absolutely.  If I can approach, Your Honor.

13              (Ms. Filo approached the bench.)

14              (Pause in the proceedings.)

15        THE COURT:  Any reply, Mr. Madden?  I've read the

16  transcript.

17        MR. MADDEN:  I believe the transcript --

18              In terms of the representations I made earlier

19  concerning the issue of the motion being made without

20  prejudice, it was, obviously, not a noticed motion.  What

21  I'm proposing here is far different than -- I disagree with

22  the People -- I'm presenting information to the Court that

23  was not in front of this Court.

24              I'd also point out that Ms. Filo was given my

25  moving papers two days ago, and I don't have any moving

26  papers supporting her position, and I've not heard a statute

27  or case mentioned supporting her position.  So I believe

28  that we are entitled to this hearing as a matter of right,

1    as I've indicated in my moving papers, and I wish to
2    proceed.
3            THE COURT:  Might I have an offer of proof?
4            MR. MADDEN:  Yes.  What I want to do is address the
5    Court concerning the pivotal issues which I think are the
6    present dangerousness of the defendant; that is, danger to
7    the public, danger to other children in the community which,
8    I think, is, obviously, one of the critical inquiries.  And
9    I want to address the issues of the defendant's flight risk
10   which, also, is absolutely a pivotal issue.
11           I don't intend to have live witnesses testify;
12   however, there are approximately 12 family members and close
13   friends who have come from within 75 miles of this
14   courthouse who are here today that I'd like to identify.
15           And I also have presented the document from LCA, a
16   letter from Lee Smith, which I think is very important
17   because I'm asking the Court not just to set bail but to, in
18   addition to that -- I have absolutely no difficulty with him
19   being released conditionally.  For example, released and
20   monitored on EMP, GPS, you know, areas where he cannot go or
21   areas he is to go, being subjected to a curfew.
22           What I want to do is present evidence to the Court
23   to convince the Court that there is absolutely no danger --
24   no realistic danger -- of my client fleeing and certainly no
25   substantial likelihood or probability of him endangering any
26   other children in the community at this point.
27           THE COURT:  You may proceed.
28           MR. MADDEN:  Thank you.

1      THE COURT:  I've read and considered this letter dated
2  June 12, 2012, from LCA monitoring.
3      MR. MADDEN:  Thank you very much.  I should point out
4  Mr. Smith is also present and standing.  Thank you.
5      THE COURT:  We've met.
6      MR. MADDEN:  Should the Court, at any time, have
7  questions concerning --
8      THE COURT:  I'm pretty familiar with the program.
9      MR. MADDEN:  I am not going to have any of the
10  aforementioned family and friends testify, but I would like
11  to have them identified and have each of them stand so the
12  Court will know who they are.
13      THE COURT:  Please do so.
14      MR. MADDEN:  Thank you.
15      Maria Chandler.  This is the defendant's wife.
16      THE COURT:  Good afternoon, ma'am.
17      MR. MADDEN:  Peterann Yousecoff and her husband Walt
18  Yousecoff.  These are -- Ms. Yousecoff is the defendant's
19  mother.  She lives with Mr. Yousecoff in Monterey.
20      THE COURT:  Good afternoon.  Welcome to Department 52.
21      MR. MADDEN:  Fran and Tom Denton.
22      THE COURT:  Good afternoon, folks.
23      MR. MADDEN:  Mr. and Mrs. Denton are the defendant's
24  wife's parents.  They live in Vallejo.  Thank you.
25      Katherine.  Katherine Denton is the defendant's
26  aunt.  She's an appellate attorney and lives in San
27  Francisco.
28      THE COURT:  Good afternoon, ma'am.

1    MR. MADDEN:  Sue Lewman.  Ms. Lewman is the defendant's

2    aunt, and she lives in Castroville.  Thank you.

3    THE COURT:  Good afternoon.

4    MR. MADDEN:  Julia Silvestri.  Julia Silvestri is a

5    cousin of the defendant.  She lives in Danville.

6    THE COURT:  Good afternoon.

7    MR. MADDEN:  And Mr. Castillo.  Mr. Castillo is a

8    family friend.  He lives in Salinas.  Thank you, sir.

9    THE COURT:  Good afternoon, sir.

10   MR. MADDEN:  Barbara Lucino and Joe Lucino.  Mr. and

11   Mrs. Lucino are close family friends.  They live in

12   Monterey.

13        And, finally, we have Rachel.

14   THE COURT:  Good afternoon, folks.  Thank you for

15   coming.

16   MR. MADDEN:  She is the defendant's sister-in-law.

17   THE COURT:  Good afternoon.

18   MR. MADDEN:  Your Honor, basically, should I call these

19   witnesses to testify, they would all testify, essentially,

20   as his character witnesses, giving their opinion that they

21   do not believe that the defendant is present danger to the

22   children, and, secondly, they do not feel he would be at

23   flight risk.  And I'm prepared, if the Court will accept the

24   representation as to what they would testify to, to proceed

25   to argument without calling these witnesses.

26   THE COURT:  I will assume that that evidence would be

27   before the Court.

28   MR. MADDEN:  Thank you, Your Honor.

1    THE COURT:  So you may comment.

2    MR. MADDEN:  All right.

3    THE COURT:  No arguments in my court.  You may comment,

4    express your views, make observations.  No arguments.

5    Arguments are confined to six-year-old children.

6    MR. MADDEN:  I tend to agree with that, Your Honor.

7    Unfortunately, many times in my adult life I've argued.

8    THE COURT:  Not in my court.

9    MR. MADDEN:  That's true.  All right.  So I think

10   this --

11        Does the Court mind if I sit?

12   THE COURT:  No, I don't mind at all.

13   MR. MADDEN:  I think that the starting place is:

14   Obviously, with these charges, the schedule is no bail.

15   That's our starting place.  On the other hand, as I've

16   stated in my points and authorities, notwithstanding the

17   fact that this is a violent felony, the defendant, even

18   though it's a violent felony, is entitled to a bail hearing

19   which is what we are having.  And, in that hearing, the

20   issues that the Court has to address -- I've addressed in my

21   moving papers -- they are found in section 1271.  Also, 1275

22   of the Penal Code is also relevant in terms of finding

23   dangerousness.  I think I would like to turn my attention to

24   that right now.

25        Penal Code Section 1275 states or the heading is:

26   Matters considered in fixing amount of bail, reduction of

27   bail below approved schedule.  In setting, reducing, or

28   denying bail, the judge or magistrate shall take into

1    consideration the protection of the public, the seriousness

2    of the offense charged, the previous criminal record of the

3    defendant, and the probability of his or her appearing at

4    trial or hearing in this case.

5        It goes on, and subparagraph (b) will state:   In

6    considering the seriousness of the offense charged, the

7    judge or magistrate shall include consideration of the

8    alleged injury to the victim and the alleged threats to the

9    victim or a witness of the crime charged, the alleged use of

10   a firearm or other deadly weapon in the commission of the

11   crime charged, and the alleged use or possession of

12   controlled substances by the defendant.

13       I think that last paragraph is particularly

14   important because, when you analyze those things, none of

15   those items that I just read are present in this case.

16   There is -- although I haven't read the preliminary

17   examination transcript as I previously indicated, I have

18   read the police report.  And, obviously, since these cases

19   are charged as Penal Code Section 288 (a), notwithstanding

20   multiple victim allegations, they aren't 288 (b) counts.

21   These are non-forceable sex counts.

22       Furthermore, I'm not aware, from reading the

23   police reports, that there were any threats to any of the

24   complaining witnesses in this case.  From reading the police

25   report, it's clear to me that there were no physical

26   injuries to the children.  I'm not going to address the

27   issue of emotional injuries since that would be

28   inappropriate at this point and speculative.  However, there

1   appears to have been no medical injuries.  There, certainly,

2   was no use of a firearm or any use of controlled substances.

3        These are statutory things in terms of the

4   seriousness of the offense the Court has to concern itself

5   with.  So, if we take a look at Mr. Chandler, with the

6   exception of what I would refer to a minor criminal record

7   that I've indicated in my moving papers, he has worked, for

8   ten years, as a school teacher.  He is married.  He is a

9   homeowner.  He has a house in San Jose.  It's within a mile

10   of this courthouse.

11        The children involved in this case all were

12   students of his at a school on the other side of town,

13   certainly more than five miles from here, not near his

14   house.  I assume, since it was a public school, these

15   children live within reasonable proximity to that school.

16   Mr. Chandler has a young family himself.  His wife is a

17   teacher.  His children are very young.  Four, 18 months, and

18   three months.

19        As the Court can tell from his family and friends

20   being here, he has close family.  All of the people that

21   I've identified all live within 75 miles of this courthouse.

22   These are people who can and will take him in, depending on

23   what terms or terms and conditions the Court would order.

24   There's no reason to believe that he would flee.  As I've

25   indicated in my moving papers, I'm in possession of his

26   passport.  I would, certainly, be more than willing to

27   surrender that to the Court-designated person.

28        I realize, if bail is to be set, it would have to

1     be substantial bail.  And I think substantial bail is, quite

2     frankly, in the area of $250,000 which I consider to be very

3     substantial bail.  But, in addition to that, I would expect

4     that the Court want more than that.  The Court would

5     probably want electronic monitoring as outlined in

6     Mr. Smith's letter.  And I think that would provide any

7     concern that we would have concerning dangerousness of other

8     children.

9           As the Court knows, I've handled hundreds of these

10    cases during my career, and I honestly cannot think of one

11    case I've had where the client re-offended during the

12    pendency of a criminal proceedings.  And I've had many.

13    Now, that doesn't guarantee anything, but what I'm saying

14    is, in my experience, people without criminal records,

15    people who come from good families, people who have deep

16    ties to the community tend to answer these charges.  They

17    are not a danger.  They stay around.  They follow the

18    court's orders.  They appear at court appearances.  And I

19    believe that Mr. Chandler is just that kind of person.

20          Certainly, running a defense in this case is going

21    to -- this is not relevant but I want to put it on the

22    record anyway -- running a defense in this case, in terms of

23    what's going to be needed, in terms of experts and testing

24    and stuff, it's very, very difficult to do when a client is

25    in custody.  I'm not going to say it's a denial of due

26    process because that's wrong.  It's not true.  But I'm not

27    asking that Mr. Chandler be released so that he can abscond

28    or he could misbehave again and be charged with another

1  criminal offense.  I have no issue that that's not going to

2  happen.

3           And I think he has enough of a background and

4  analysis of this case.  And, as I've indicated in my moving

5  papers, not only section 1271 but also section 1275 would

6  certainly justify a finding of unusual circumstances that

7  would allow the Court to depart from the no bail schedule

8  and impose substantial bail under appropriate terms and

9  conditions.  Thank you.

10       THE COURT:  Thank you.

11           People's response please?

12       MS. FILO:  Thank you, Your Honor.  I think that, in

13  order for the Court to understand what this case really is,

14  the Court needs to hear the facts.  And I apologize for

15  stating them this way, but this is what they are.

16  Mr. Chandler --

17       THE COURT:  They are what they are.

18       MS. FILO:  They are what they are.

19       THE COURT:  You can't change them.

20       MS. FILO:  Mr. Chandler was a second grade school

21  teacher who had his female students -- seven- and

22  eight-year-old little girls -- stay behind during their

23  recess.  He locked the door.  He put a blindfold on them.

24  And he put his penis in their mouth.  There was sperm found

25  on the chairs which the girls described.

26           Certainly, those can't be described as acts of

27  force because these little girls didn't know what was

28  happening to them.  But I can assure you that it is not

1    conduct that they wanted or that they were willingly engaged

2    in.  So this is some of the most horrific conduct that, I

3    think, any parent of a child can imagine.

4           He violated his position of trust.  He violated

5    his position of authority.  And the conduct that's involved

6    here is, like I say, some of the worst I have ever seen.

7    And I've been doing sex cases for a very long time as well.

8           So I acknowledge that Mr. Chandler has a wonderful

9    support system, but I find that to be all the more offensive

10   that he would commit this conduct with a loving family and

11   with people who, also, put their trust in him; I find it

12   more reprehensible.

13          I think that Mr. Chandler represents the most

14   extreme risk not only to re-offend but also to flee.  The

15   idea that he would violate the social contract, the

16   employment contract, and morality contract that every single

17   person is charged with following, and that he would adhere

18   to a court date when he faces 75 years to life in prison, I

19   think, is almost laughable.

20          He has shown his disdain for his society.  The

21   Court has to accept that the charges in this case are true.

22   I would invite the Court to flip back just five pages

23   earlier in the preliminary hearing transcript and read Judge

24   McKay McCoy's comments about the testimony that she heard,

25   the descriptions of the conduct that were given by these

26   very little children.

27          And I would ask the Court to do that before it

28   makes any determination that this defendant does not pose an

1    undeniable risk to our society and to this Court in failing

2    to appear.

3         THE COURT:  Any response, Mr. Madden?

4         MR. MADDEN:  No, Your Honor.

5         THE COURT:  Okay.

6         MR. MADDEN:  I'm sorry, Your Honor.  There is something

7    I wanted to point out to the Court.  I know you have a

8    document from pretrial services, which I'm sure you've read.

9    There was, as they stated, when they did their report, there

10   was concern of:  Should the Court grant a bail motion, where

11   would he go?

12        A typical place would be to his home with his wife

13   and children.  However, pretrial services expressed a

14   concern about the wisdom of that and asked him for a

15   secondary address.  It was his mother who lives in Monterey.

16   And, whether it's his mother or any other family members or

17   friends, Mr. Chandler is more than willing to abide by an

18   order that he reside in any place that's reasonable, should

19   the Court be concerned about that.  And I did address that

20   earlier.  Thank you.

21        THE COURT:  Thank you.

22        Well, I'm certainly satisfied that Mr. Chandler

23   has an excellent support system.  But the inquiry does not

24   end there.  I have considered the comments of Judge McKay

25   McCoy.  And I don't find sufficient unusual circumstances to

26   depart from the bail schedule.

27        I also have in mind that I'm allowed to consider

28   the issue of public safety and victim impact.  I am greatly

1   concerned that, if bail were set in this matter and

2   Mr. Chandler were released, it would have a grave emotional

3   impact upon the victims in this case.  At that age, I could

4   conceive they would have nightmares with the thought that

5   he's out and about.

6          So, Mr. Madden, your motion to set bail is

7   respectfully refused.  I will return the preliminary

8   examination transcript to the district attorney.  And I take

9   it this matter has been set for further proceedings?

10          MR. MADDEN:  Yes, Your Honor.  Thank you.

11          THE COURT:  It shall remain as set.

12          MS. FILO:  Thank you, Your Honor.

13          THE COURT:  Mr. Madden, always a pleasure to have you

14   in my courtroom.

15          MR. MADDEN:  Thank you, Your Honor.

16                         -o0o-

17

18

19

20

21

22

23

24

25

26

27

28

1    STATE OF CALIFORNIA        )
                               )   ss
2    COUNTY OF SANTA CLARA      )

3

4

5

6

7            I, ASHLEY PARROTT, do hereby certify that

8    foregoing is a full, true and correct transcript of the

9    proceedings had in the within-entitled action on JUNE 13,

10   2012.

11           That, I reported the same in stenotype being the

12   qualified and acting official court reporter of the Superior

13   Court of the State of California, in and for the County of

14   Santa Clara, appointed to said court, and thereafter had the

15   same transcribed into typewriting as herein appears.

16           I further certify that I have complied with CCP

17   Section 237(a)(2), in that all personal juror identifying

18   information has been redacted, if applicable.

19

20

21                              _____
22                              Ashley Parrott, CSR No. 13157

23

24

25

26

27

28

# EXHIBIT 3
# (Vol. 2)

1

2               COURT OF APPEAL OF THE STATE OF CALIFORNIA

3                       SIXTH APPELLATE DISTRICT

4

5

6    PEOPLE OF THE STATE OF          )
     CALIFORNIA,                     )
7                                    )
               Plaintiff-Respondent, )
8    vs.                             )   COURT OF APPEAL
                                     )   CASE NO.
9    CRAIG RICHARD CHANDLER,         )
                                     )
10                                   )   SANTA CLARA COUNTY
               Defendant-Appellant.  )   CASE NO. C1223754
11   _____)

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS ON APPEAL
                      FROM THE SUPERIOR COURT
14              IN AND FOR THE COUNTY OF SANTA CLARA
                        STATE OF CALIFORNIA
15

16                     SEPTEMBER 28, 2012

17                        VOLUME 2

18                  Pages 251-291/400
                        20/

19

20   APPEARANCES:

21   For the Plaintiff-      OFFICE OF THE ATTORNEY GENERAL
     Respondent:             455 Golden Gate Avenue, Room 11000
22                           San Francisco, California 94102

23

24   For the Defendant-      SIXTH DISTRICT APPELLATE PROGRAM
     Appellant:              100 North Winchester Blvd., Ste.310
25                           Santa Clara, California

26

27

28   BARBEE MACHADO, CSR 9355, Official Reporter



COPY                          20/251

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                IN AND FOR THE COUNTY OF SANTA CLARA

3

4

5          BEFORE THE HONORABLE KENNETH SHAPERO, JUDGE

6

CRAIG CHANDLER                              )

7                                           )
                     Petitioner,            )
8     vs.                                   )
                                            )
9     EVERGREEN SCHOOL DISTRICT,            )NO.  1-12-cv-231067
                                            )
10                   Respondent.            )
                                            )
11    _____)

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                     HEARING ON MOTIONS

15                     SEPTEMBER 29, 2012

16

17    APPEARANCES:

18

19    For the Petitioner:     CHRISTOPHER E. SCHUMB, ESQ.
                                       and
20                            BRIAN MADDEN, ESQ.

21    For the  Respondent
      Evergreen School
22    District:               ADAM FISS, ESQ.

23

24    For San Jose Mercury
      News:                   T. ANDREW HUNTINGTON, ESQ.
25

26    For Lyn Vijayendren:    ERIC GEFFON, ESQ.

27

28    BARBEE MACHADO, CSR 9355, Official Reporter

1    SAN JOSE, CALIFORNIA                    SEPTEMBER 28, 2012

2                        PROCEEDINGS

3            THE COURT:  On the record in C1236212, People of

4    the State of California versus Lyn Vijayendren.

5            MR. GEFFON:  Good afternoon, Eric Geffon appearing

6    for Ms. Vijayendren.  She is not present this afternoon.

7            THE COURT:  And the People are not a party to this

8    motion at this time.

9            MR. HUNTINGTON:  Good afternoon, Your Honor.

10   Andrew Huntington on behalf of San Jose Mercury News.

11           THE COURT:  In addition we have for purposes of

12   these proceedings a related criminal matter C1223754, People

13   of the State of California versus Chandler.

14           MR. MADDEN:  Brian Madden appearing for

15   Mr. Chandler.  He is not present.  I will waive his

16   appearance.  Mr. Schumb is not co-counsel in the criminal

17   case; however, he is co-counsel -- I'm co-counsel with him

18   in this matter.

19           MR. SCHUMB:  The writ matter, Your Honor.

20           THE COURT:  We are technically not on the writ

21   matter at this point, but we will get there.

22           First of all on the Vijayendren.  Procedurally to

23   remind us this Court conducted the arraignment of the

24   defendant.  At that time upon application of the defense and

25   the People taking no position, the Court ordered sealed

26   three pages of the affidavit of probable cause that was part

27   of the filing in this matter.  Thereafter, a motion for

28   unsealing was filed, and has been fully briefed.  We can

                                                            253

1   discuss semantically whether it's a motion to unseal or a
2   motion to reconsider the Court's order to seal.  In either
3   event, as the Court has explained to counsel, it's the
4   Court's intention to rule on the merits of the propriety of
5   sealing those documents, and with that in mind, Mr. Geffon,
6   if you would like to proceed, you may.
7                MR. GEFFON:  Thank you, Judge.  Judge, just by way
8   of procedural history with regard to the facts of the case
9   my client is charged, as you know, with one count of failing
10  to report an act of abuse as a mandatory reporter.  The
11  facts are that in October of 2011 my client, who was the
12  principal at O.B. Whaley Elementary School, received a
13  complaint from a parent about a particular teacher.  My
14  client after getting in contact with the district, conducted
15  an interview at the district's request of that child and
16  took notes during that interview.  It was in that interview
17  that the information came forward that is now alleged she
18  should have realized was an act of abuse.
19                This is a very unique case in that the entirety of
20  the People's case are those three pages of notes.  I can
21  explain to the Court and as an officer of the Court tell you
22  in speaking with Ms. Filo, the deputy district attorney
23  prosecuting this case, she's explained to me that
24  presentation of evidence and her case in evidence for this
25  case will take approximately two hours, and it will consist
26  of simply putting these three pages of notes in evidence and
27  explaining the context of how they were taken.  This makes
28  up the entirety of the People's case.  That puts us in a

```
 1    very unique position I think with regard to the other cases
 2    where a certain piece of evidence is being sought or a
 3    certain report is being sought, but there's an entire case
 4    otherwise that is not being sought to put in the public
 5    record.  If this motion to seal, as we are calling it, is
 6    not granted, the entire case that the district attorney has
 7    with regard to Ms. Vijayendren will appear in the newspaper
 8    in the very not too distant future.  That will undoubtedly
 9    destroy my client's rights to a fair and impartial jury
10    because everyone will have read not just a piece of it, but
11    the entirety of the case against my client.  That is the
12    overriding interest that the Court has to weigh in this
13    case.
14            As I've laid out in my original papers and having
15    mentioned in the motion to unseal as well, there are five
16    criteria to look at.  There is no question there is a
17    overriding interest as my client's right to due process and
18    a fair and impartial jury.  The overriding interest
19    certainly supports sealing of those records.  A substantial
20    probability exists that her interest will be prejudiced if
21    these records are revealed, and that is because they are the
22    entirety of the case against her.
23            The next item, Judge, I think is important is
24    whether there are alternatives to these records, and I think
25    that's really where this case gets decided in my opinion.
26    And that is because the Mercury News does have and they have
27    attached it to their motion to unseal Exhibit B the entire
28    remainder of the police report, which this Court
```

1    specifically did not order sealed after looking at it.  And
2    the reason why that is relevant is that report contains a
3    summary of what is contained in the notes.  It contains the
4    information necessary to understand what happened in this
5    case, and the public's right to know certainly is taken care
6    of by seeing those reports and understanding the history of
7    what happened.  There's no benefit to knowing the specific
8    words that were used during the interview when that makes up
9    the entire basis of the prosecution against my client.  I
10   think because there are alternatives to these three pages of
11   notes being released and that a police report that is
12   significantly longer than three pages, to be honest I didn't
13   count it, but it's certainly 10 to 15 pages from my quick
14   count, and because all the information contained to
15   understand the notes is contained in the report, there's no
16   reason my client's right to a fair trial should be trampled
17   by allowing the only piece of evidence against her, and the
18   district attorney's entire case in chief should be placed in
19   the newspaper for every potential juror to read prior to the
20   case appearing in court.  And for that reason I think the
21   Court should make an amendment order, which would seal only
22   the pages of handwritten notes, and it would not seal
23   anything else, and allow access to the information necessary
24   for the public to understand this case, at the same time
25   protecting my client's right to a fair trial and to due
26   process.
27            THE COURT:  Thank you.  Mr. Madden do you want to
28   be heard insofar as this issue insofar as what may or may

256

1    not impact Mr. Chandler?

2          MR. MADDEN:  I'm going to defer to Mr. Schumb on

3    this point.

4          MR. SCHUMB:  Your Honor, if you are looking just

5    from the Vijayendren case, I think the only point that we

6    would make is that these notes were actually obtained in the

7    Chandler matter.  They are part of the discovery in the

8    Chandler matter.  They have not been used in court yet.

9    They were taken from that case by the DA used in this case,

10   and so they still exist in the Chandler case.  They are

11   still discovery in the Chandler case, and if you grant this

12   motion and allow these notes to be seen, it would violate --

13   it would allow the Mercury News to discovery in the Chandler

14   case.  I would submit, Your Honor, that's exactly what

15   happened here.

16          In this case the Mercury News didn't get the notes

17   on the Chandler case because they were not used in the

18   preliminary hearing.  The district attorney made a decision

19   not to use them in the preliminary hearing.  I know that

20   because I was there.  The notes could not have been obtained

21   -- cannot be obtained in that case.  The Mercury News wanted

22   them and so did a public records request to the district.

23   As part of that they then became aware as part of our

24   litigation that the notes had been sealed in this case, and

25   now they come and they've brought this motion after the

26   fact.  So what we have here is they can't get the notes as

27   part of the Chandler discovery.  They then try to get them

28   directly from the district, and now they have come here to

1    you.  This is a back-handed way to get that discovery.  So

2    for you to grant this motion then opens up the discovery in

3    the Chandler matter, and I would submit, Your Honor, that's

4    not the right of -- the Mercury News has no right to do

5    that, and the court's own rules do not allow, and, in fact,

6    mandate the sealing of a file when there are documents and

7    they are a part of the discovery.  And so I believe I

8    asserted that in my initial brief in support of the writ.

9              THE COURT:  Thank you.

10             MR. MADDEN:  One moment, please, Your Honor.

11             MR. SCHUMB:  Just to reiterate very quickly, Your

12   Honor, the bottom line is if you grant the motion in this

13   case, it's essentially granting a discovery motion for the

14   Mercury News' access to discovery in Chandler, and we don't

15   think the law allows for that.  So that's a back-handed

16   attack literally on this motion and the reason why the Court

17   should seal.

18             THE COURT:  If I didn't make it clear at the

19   beginning, the People through Ms. Filo are not present, and

20   have made clear they have no position or interest before the

21   Court.

22             MR. MADDEN:  That's my understanding.

23             THE COURT:  You may proceed.

24             MR. HUNTINGTON:  Thank you, Your Honor.  Let me

25   start off by saying that the public is entitled to

26   information regarding the investigation of a public

27   employee, and Mr. Geffon explained the exceptions to that or

28   the four steps outlined in the NBC case.  However, I have to

1   strongly disagree with his analysis.  With regard to the
2   prejudice probability, he has not provided any findings of
3   fact, and the case law is pretty clear, pretrial publicity
4   is not equal an unfair trial.  He's got to provide specific
5   evidence, which he has not; he's simply providing
6   conclusionary statements saying if this information is
7   published, it's going to result in an unfair trial.  And the
8   case law is clear that simply does not meet the standards of
9   sealing.

10          As we have shown in our papers the jury pool in
11  Santa Clara County, the sixth largest county in the State of
12  California, is substantial.  There's no evidence that a
13  handful of articles in the Mercury News or other
14  publications is going to contaminate that entire jury pool.
15  Cases with far greater publicity, the Stainer case, the
16  Richard Allen Davis case were held and tried in Santa Clara
17  County, and if those cases don't meet the standard for
18  contamination, there's no reason that the Chandler case can.

19          With respect to other alternatives, I don't
20  believe there's any case law supporting that just because
21  we're relying on representation, we don't know for sure,
22  because we don't have the document, that the police report
23  provides an accurate summary.  We don't know if that's true
24  or not, but I have no reason to doubt it either.  That is
25  not an alternative that is set out in the case law.  The
26  alternatives would be in jury voir dire, peremptory
27  challenges, assembling a larger than normal jury pool,
28  specific instructions or admonitions, postpone the trial, or

1    even a venue change, but saying that there's an alternative
2    document that provides a summary is not an alternative.
3            Finally with respect to Mr. Schumb's comments, you
4    know I disagree that we have attempted to get these notes on
5    Chandler.  That's simply not true.  With respect to that we
6    made some back-handed end around to get these notes is
7    simply not true, and there's no basis of fact.  We were
8    reporting independently on the Vijayendren case.  Our
9    reporters made a public records act in that case
10   specifically with regard to that case.  To make it look --
11   to say this was a back-handed attempt to get something that
12   we attempted and failed to get in Chandler is absolutely not
13   true, and there's no basis for that.
14           THE COURT:  Thank you.  Want a last word?
15           MR. GEFFON:  Just briefly, Judge.
16           THE COURT:  Go ahead.
17           MR. GEFFON:  I don't think it's necessary to have
18   finding of facts or studies to determine if someone would be
19   prejudice -- not just pretrial publicity -- we're not asking
20   the Mercury News that they can't write a story about this
21   case.  We're talking about taking the entirety of the
22   district attorney's case and putting it in the newspaper.
23   That didn't happen on Cary Stainer; that didn't happen on
24   Richard Allen Davis.  The entire case is contained in three
25   pages of handwritten notes and the amount of prejudice is
26   directly related to the percentage of the case that will
27   appear in the paper, and the percentage of the case that
28   will appear in the paper if this motion is not granted is

1    one hundred percent, and for that reason it's common sense

2    that the prejudice would exist.

3              I would submit to the Court there are obviously

4    reliable alternatives to these three pages of notes.  There

5    is no basis to indicate or reason to believe the police

6    report is not accurate.  This Court has the ability to

7    compare the three pages of notes with the report in case

8    there is any question about that.  And I would point out

9    that part of the police report that the Mercury News does

10   have included in Exhibit B includes a statement, a summary

11   of the statement of my client.  Basically, her side of the

12   story including the conversation she had with the student

13   are right there in the police report, and they have that

14   information.  If there's any question about that accuracy,

15   this Court obviously can settle that.

16             So I think given there are reasonable

17   alternatives, given the amount of prejudice that would come

18   from these three pages of notes, the Court's order to seal

19   only those notes leaving everything else accessible to the

20   public and allow the Mercury News to write all the stories

21   that they feel are appropriate is an appropriate way to

22   balance the First Amendment and my client's Sixth Amendment

23   rights to due process and a fair trial.

24             THE COURT:  Thank you.  Mr. Schumb.

25             MR. SCHUMB:  I'm not asserting that the Mercury

26   News was trying to get the documents in the Chandler

27   criminal case.  It's just that you didn't try to get them

28   from the district because you couldn't get them in the

1   criminal case, there's no basis for it.  So when you tried

2   to do the public records request and met a roadblock, now

3   you came over here.  So that's the back-handed nature of it.

4            The other thing I will say, Your Honor, is the

5   consolidated matter you have here in our writ case has all

6   the statistics about the Mercury's circulation and the jury

7   pool.  I think there's quite good evidence on the record

8   that writing six or seven articles or even one article could

9   affect a good part of the jury pool.

10           And the final thing is that in this case the notes

11  will be made public.  There is not an issue of if; it's

12  when.  All we're talking about is a scoop.  They are just

13  going to have them before everybody else will.  Everybody

14  will get them at the trial, and I think the only reason we

15  are here is they want them just before everybody else can

16  get them.  Because they are coming out; it's a matter of

17  when.

18           THE COURT:  You want to respond?

19           MR. HUNTINGTON:  I'm just confused by Mr. Schumb's

20  statement.  We're not here because of the writ petition;

21  we're here because there is a motion to seal.  That's the

22  only reason we are here.  The fact that this is a key piece

23  of evidence or the only key piece of evidence is really

24  irrelevant.  There's no case law that simply says because

25  the document pertains to key evidence it should somehow be

26  sealed.

27           Finally, what Mr. Geffon is saying is that the

28  police report contains an accurate summary, then I don't see

1   what the prejudice is in unsealing the document.

2   That is all.  Thank you.

3   THE COURT:  And I have a of couple questions.  Let

4   me start with you, Mr. Geffon.  Let's start with the last

5   one and work backwards because counsel raises a point that I

6   have been juggling, which is the current affidavit of

7   probable cause has got all this.  It's already out there.

8   We are not -- the Court is not sanctioning the release of

9   information that is apparently not already out in the packet

10  of available materials.  How does releasing the notes above

11  and beyond an accurate summary thereof prejudice the

12  defendant's right to a fair trial?

13  MR. GEFFON:  Because, Judge, as the Court knows

14  from looking at both the report and the notes while the

15  report summarizes that there was an interview and the fact

16  there was interview taken of the child, this case rises and

17  falls on the very specific facts that were told to

18  Ms. Vijayendren during that interview, and whether those

19  very specific facts would lead a reasonable person to

20  believe that there was an act of abuse being reported.

21  I will tell the Court, I think the Court knows

22  from reviewing both, that while the report is, I believe, an

23  accurate summary of the interview, there are more details in

24  those three pages of handwritten notes than exist in the

25  police report.  The context is there, but the very specific

26  words that were used, the very specific actions that were

27  reported, those are contained in the three page handwritten

28  notes, and those are the words or the evidence against my

1  client.

2  THE COURT: Well, let me ask you this also,

3  because I have not read the preliminary examination

4  transcript in the Chandler case, and I'm certainly no Mr.

5  Schumb and Mr. Madden and I don't know what you have as part

6  of your case, but the minor testified at the prelim;

7  correct?

8  MR. GEFFON: She did testify at the prelim.

9  THE COURT: Is the information not contained

10 within that transcript? I don't mean the notes. I mean the

11 contents, the sum and substance of what we're talking about?

12 MR. SCHUMB: If I may address that, Your Honor. I

13 believe that's in my declaration. No, she didn't, and there

14 are, in fact, some very, very material omissions. The

15 district attorney did not try to refresh her recollection

16 with it or use the notes in any other way or exam in a

17 formal fashion and that's why there's one reason there's

18 going to be a prejudice that is going to attend to

19 Mr. Chandler. These are allegations that have not been used

20 in the preliminary hearing. They could serve as a basis for

21 criminal charges. They may never be used. The DA may not

22 try to elicit, did not try to use the notes to refresh her

23 recollection, and therefore, they are uncharged allegations

24 at this point to the extent that they haven't been a basis

25 for the holding that is currently against him. So that's

26 our great concern, obviously, in the criminal case is that

27 these allegations are going to be made public, and are not

28 currently a basis for the charges, and they may never be,

1   and that could truly taint the jury pool against him.  And I

2   think Your Honor knows how subtle something such as news

3   article can be.  I also think the fact that the notes are

4   purported to be handwritten notes give greater credibility

5   to a news story to the folks who are reading it, and we

6   think this is so.  And they may not be true.  The

7   allegations made by the alleged victim, you know, may be

8   untrue.  So, again, we expect Mr.  Chandler to be concerned

9   about the fact that that would happen. Thank you.

10              Any more questions?

11              THE COURT:  Yes.  You may be seated.  I want to

12  check something for a moment.  I want to clarify because

13  maybe I misheard or misread or misunderstood.  Is not the

14  minor, the student, who was the subject of the notes,

15  testified at the prelim, and is a charged complaining

16  witness in your case?

17              MR. MADDEN:  Yes.

18              THE COURT:  I thought I heard you say were

19  uncharged.

20              MR. SCHUMB:  What I said was the allegations that

21  she omitted.

22              MR. MADDEN:  Let me respond.  The child we are

23  talking about is the complaining witness in Count 2 of the

24  then Complaint and Information.  I have reviewed the

25  preliminary examination at length, and although I don't have

26  it with me, I can tell you that I agree with Mr. Schumb that

27  the direct substance of the contents of those notes were

28  never presented to her in the form of questions, never

1   presented to her in the form of asking her to refresh her

2   recollection.  They were not used for any purpose by the

3   prosecution, and Mr. Schumb certainly did not ask about

4   them.

5         THE COURT:  No, I understand that.  I was just

6   trying to clarify that the complaining witness was examined

7   and testified as to the sum and substance of the conduct

8   alleged against Mr. Chandler vis-a-vis her, and that was the

9   discussion between her and Mr. Geffon's client contained

10  within those notes.  That is, the interaction with

11  Mr. Chandler she testified to at the prelim.  She was not

12  questioned about her statement to Mr. Geffon's client as

13  shown in the notes.

14        MR. MADDEN:  It's more than that.  I think to put

15  it in perspective, I think I would be accurate in stating

16  that her testimony at the preliminary examination was not in

17  anyway near as inclusive as it was on earlier occasions.

18        THE COURT:  Again, I'm sorry.  I'm not suggesting

19  that her testimony at the prelim mirrored the statement made

20  to the principal.  May not.  All I was saying is just I

21  wanted to be clear that this 40 pages refers to an interview

22  given by a student to Mr. Geffon's client relative to the

23  alleged conduct of Mr. Chandler as reflected in the counts

24  in the Information that is charged against him vis-a-vis

25  her, and she was examined regarding the sum and substance of

26  that allegation or those allegations at the prelim.

27        MR. MADDEN:  I'm comfortable with your emphasis on

28  the allegation.

1          THE COURT:  I mean, that's true.  She's the

2     alleged victim.

3          MR. MADDEN:  Yes, that is true.

4          THE COURT:  I just wanted to be clear if it wasn't

5     an uncharged incident -- he's charged with it --

6          MR. MADDEN:  That's correct.

7          THE COURT:  She can testify at the prelim.  She

8     was questioned about the sum and substance of the

9     allegations on direct and cross?

10         MR. MADDEN:  She was questioned about the

11    allegations.

12         THE COURT:  And the notes were not used.  She

13    wasn't impeached with her statements or otherwise, but her

14    allegations were a matter of public record.

15         MR. MADDEN:  Yes, but I might further add that she

16    was never questioned about her conversation with Ms.

17    Vijayendren.

18         THE COURT:  I think all the prelim suggests is

19    that she acknowledged that she had a conversation that is in

20    the record.  I just wanted to be clear because I was hearing

21    that that was not a currently charged allegation against

22    Mr. Chandler, hence, I misspoke.

23         MR. SCHUMB:  I just misspoke, Your Honor.

24         THE COURT:  No problem.  Mr. Geffon, putting you

25    back on the hot seat.

26         MR. GEFFON:  Yes, Judge.

27         THE COURT:  The idea that the three pages as it

28    were is, quote, the sum and substance of the case or the

1  entirety of the case, it is not unusual that, particularly

2  in the case of a misdemeanor and in a number of felonies,

3  that the entirety of the People's case is going to be in the

4  affidavit of probable cause.  A residential burglary is

5  going to have the police report affidavit, is going to have

6  the reporting of a theft, the items that were stolen, if it

7  was a case that was solved by fingerprints, the fact that

8  fingerprints were taken and identified, and that's the case.

9  So the fact that the entirety of the case is contained in

10  your mind in the three pages, how other than your darn good

11  faith belief based on your experience, how does that lead me

12  to the conclusion that her rights to fair trial are going to

13  be substantially impaired.

14         MR. GEFFON:  Because it's a difference between a

15  summary of an entire case as you described, the affidavit of

16  probable cause would be the report about fingerprints, a

17  statement that there was a certain address burglarized, and

18  the fact that in this case the handwritten notes are a

19  physical piece of evidence.  They will be marked and

20  admitted as constituted and that is different than a

21  affidavit of probable cause.  This is Exhibit Number 1 for

22  the People.  It is the only exhibit they will mark in the

23  case, and they will rest once that exhibit is admitted.  And

24  that's different than a summary of the evidence, which is

25  what we normally see in an affidavit of probable cause, and

26  I would submit that it is even in a misdemeanor case unusual

27  that a single piece of evidence makes the entire case, and

28  what makes this case unique and what makes the prejudice so

1  great for Ms. Vijayendren is this isn't just a question of

2  what house was burglarized and what's the address, and what

3  was taken, but the ultimate question for the jury in this

4  case will be how did a reasonable person and how did

5  Ms. Vijayendren interpret the information that was given to

6  her.  If these notes are put out to the public, then that

7  decision is made by people before they come to court.  It is

8  the crux of the case, and it is basically tried in the court

9  of public opinion rather than the court of law, and the

10  reason that it is being tried there is that everything the

11  jury needs to make that decision will be printed in the

12  newspaper.  Not part of it, not a summary of it, not a list

13  of things that they found, but the actual piece of evidence

14  that will be used to make a decision will be in the

15  newspaper.  And that's what makes a difference from a case

16  that has a summary or indication of evidence and what the

17  evidence may show.  That's the overriding difference.  It's

18  a piece of evidence and it's the only evidence in the case.

19          I want to confer with Mr. Madden apparently.

20          THE COURT:  No, no, fine.  Anymore you want to add

21  on that point?

22          MR. GEFFON:  No.  I think we are okay on that

23  point, Your Honor.

24          THE COURT:  Counsel, do you want to add anything

25  on the point I was discussing with them?  You don't have to

26  repeat everything we've already said.  If there's anything

27  you want to weigh in on, feel free.

28          MR. HUNTINGTON:  I don't hold myself out to be a

1     criminal attorney, but I have to think there has got to be

2     other evidence used at trial other than a simple document.

3              THE COURT:   Interestingly enough, it may not be in

4     this case, but that's not necessarily the ultimate

5     controlling point.

6              Matter submitted?

7              MR. GEFFON:   Submitted.

8              MR. MADDEN:   Submitted, Your Honor.

9              MR. HUNTINGTON:   Submitted, yes.

10             THE COURT:   The Court is very mindful in its 33

11    years of experience in the criminal justice system in Santa

12    Clara County of the significant constitutional rights that

13    are at issue here.   And when I say first, it doesn't mean

14    it's paramount, it's just that it's first in order, is the

15    First Amendment right of access, as well as the Sixth

16    Amendment right of the defendant to get a fair trial.   And

17    it is not the least bit surprising that in many a case these

18    rights come in conflict.   And it becomes the duty of the

19    Court to give value to both of those rights within the

20    framework and parameters set forth in the law to secure the

21    fair exercise of those rights.   There are certain factors

22    here in making a full and complete record that are of value

23    or importance to the Court.

24             Number one, the information contained within the

25    three pages of notes, the sum and substance of it, is

26    currently in the public record.   It is in the public record

27    in the balance of the affidavit of probable cause that has

28    been filed in the Vijayendren case.   It is before the

1    Court -- strike that.  It is in the public record through
2    the testimony at the preliminary examination of Mr. Chandler
3    by the minor who was the subject of the interview contained
4    within the notes.  To be clear what is in the public record
5    is not a verbatim outline of the interview.  As has been
6    accurately portrayed, those three pages of the notes played
7    no role in the preliminary examination.  The document was
8    neither used to refresh the witness's recollection nor was
9    it used to impeach the witness.  It played no role in the
10   preliminary examination, and as counsel has noted it is part
11   of, apparently, the discovery provided in that case.
12           The fact that the affidavit of probable cause in
13   the misdemeanor case contains a summary as opposed to
14   verbatim is not a distinction of tremendous importance or
15   value to the Court.  The fact that the three pages of notes
16   reference details that are not necessarily contained within
17   the summary or are not consistent with the testimony at the
18   preliminary examination, doesn't change the Court's
19   conclusion that the sum and substance of the notes are in,
20   fact, currently in the public record, and the Court thinks
21   that is an important factor.
22           As to the idea that these notes somehow constitute
23   the entire evidentiary basis for the prosecution in the
24   misdemeanor case, the Court does not challenge or question
25   counsel's interpretation or argument of that, or the
26   representation of what the People's intentions are as to how
27   they intend to prosecute the case.  I will accept that's
28   true because to make a prima facie showing I suppose isn't

1   going to require much more than laying a foundation for
2   those notes and admitting them, because the truth or
3   falseness of the allegations is undoubtedly not an issue for
4   the misdemeanor trial; that has nothing to do with it.  The
5   allegations could be totally fabricated.  The issues
6   vis-a-vis Ms. Vijayendren are going to be, having received
7   that information as Mr. Geffon stated, how should she have
8   responded or did she respond in an appropriate or not in an
9   appropriate way.  So you are right, it's a very
10  straightforward case.
11          With the totality of the record that we have, is
12  there a possibility that the defendant's right to a fair
13  trial could be prejudiced if that information, meaning those
14  notes, came into the public record?  And I suppose the
15  answer is yes.  That's not the standard, and that's what I'm
16  going to have to get to.  Is the defendant's right to a fair
17  trial an overriding interest that may overcome the right of
18  public access?  By law, absolutely, and the Court has no
19  quarrel with it.  Has it been shown that there is a
20  substantial probability that the defendant's right to a fair
21  trial will be prejudiced if the record is not sealed?  I
22  accept counsel's good faith belief that that's true.  I'm
23  not convinced that evidentially and factually I would make
24  that finding.  I think there is a possibility.  I don't
25  think it rises to the level of a substantial probability
26  when we take it in the context of all that is already in the
27  record and remains out of the record at this point.
28          Additionally, I think I'm challenged to say that

1  there aren't less restrictive means to protect the
2  defendant's right to a fair trial short of sealing those
3  three pages.  Jury selection may be significantly more
4  difficult.  Voir dire may go on for a longer time.  It may
5  take a larger panel of jurors than normal.  I seriously
6  doubt, at least on my experience, that ultimately -- I won't
7  put a double negative.  I am confident that with appropriate
8  work by the Court and appropriate work by counsel that a
9  fair jury will be able to be impaneled for the fair trial
10  rights of both defendant and the People.  And I will expect
11  that a learned trial judge will give all appropriate
12  deference to counsel in conducting appropriate voir dire,
13  recognizing that to the extent there is more publicity in
14  this case than there is in the typical misdemeanor, that
15  more extensive voir dire may be necessary.  I think it
16  should be allowed, and I think ultimately you will be able
17  to find 12 jurors that have not prejudged the issues in this
18  case.  To the extent there are jurors or potential jurors
19  who may do so, undoubtedly, have already started that
20  process with the matters in the public record that have
21  already been published, and there's been nothing that has
22  been published so far that would in the Court's view
23  challenge the conclusion that fair jurors could not be
24  found.  I am also confident that to the extent the Court
25  unseals these notes that those in the media who have
26  interest, including and beyond those before the Court here,
27  that they are going to report the matter and handle those in
28  a responsible manner, because certainly it is in their

1   interests to see that all parties before the Court have
2   their fair trial rights protected, and that in their
3   reporting the news, which is their right and responsibility,
4   they do so in an appropriate way.  So that courts down the
5   road, including this Court, won't rue the day they did what
6   they did.  And I have confidence within the parameters of
7   this case that that is going to happen.  I have a good
8   relationship, as I say to the lawyers, with the jail.  I
9   never tell the them how to run the jail, and they don't tell
10  me how to run the court.  And I just assume that the media
11  handles the matter responsibly as they should, and I have
12  every confidence that they will to do.  To the extent that
13  it's a motion to seal it is denied.  Therefore, madam clerk,
14  we need to unseal the sealed portion and return to the
15  affidavit of probable cause.  Any issue?

16          MR. SCHUMB:  Your Honor, are you going to address
17  the impact on Mr. Chandler?

18          THE COURT:  By implication I think I did, but I
19  will again.  To the extent, again, all matters in the
20  Court's view that have been in the public record from the
21  extent of the affidavit of probable cause and the
22  misdemeanor case and the transcript of the preliminary
23  examination, I'm not satisfied that there are sufficient
24  factual or legal bases to find that there is a substantial
25  probability that his ability to get a fair trial is
26  impaired.  And I am satisfied in the context, again, that
27  less restrictive means short of sealing would be
28  appropriate, with appropriate voir dire, appropriate work by

1  the trial judge, and whatever other legal steps are
2  necessary to protect his rights to a fair trial.  In that
3  regard the findings in this Court's view are similar to
4  Mr. Chandler as to Ms. Vijayendren.
5          MR. SCHUMB:  Is there a finding under the writ
6  action?
7          THE COURT:  No, I haven't gotten to the writ yet.
8  That's a whole different keg of worms, as it were.  That's
9  why I was trying to move along sequentially.
10          To the extent the only issue was those three pages
11  then this probably would have mooted out the writ.  The
12  issue I suppose now is, and I guess we will jump right into
13  it, the issue becomes the remaining matters that the Court
14  has been made aware of that the school district is prepared
15  to release, and how you all are asking me to address that in
16  the writ.  This ruling is to the extent the analysis will
17  apply in part to the writ.  The analysis I made and the
18  ruling I've made has been particularly as to those three
19  pages.  I have not ruled on the balance of matters, and I'm
20  happy to address that and I'll rule all the parties can
21  present it.  You want a few minutes to figure out where you
22  are?
23          MR. SCHUMB:  The only issue is there are separate
24  statutory grounds under the writ with respect to the
25  Vijayendren notes; one of which was raised the fact that is
26  currently the subject of pending litigation between the
27  district and these parties, and, you know, on the grounds of
28  K, 6254 K being alleged has to do with the Sixth Amendment

1    rights.  There's a couple other grounds.  Do you want to

2    stay releasing the notes for five days while you look at

3    those as well?  Could we maybe get some briefs on file, say,

4    Tuesday and come back next Friday?  I don't want to --

5    obviously, I see where you are going, but I would like to at

6    least have an opportunity to be sure that you've looked at

7    the statutory bases that we are operating under, and give us

8    an opportunity to look at any other remedies we might seek.

9             MR. HUNTINGTON:  I mean, I don't want to open up

10   for further delay.  It would be pending grounds for a ruling

11   on the motion to unseal and give an opportunity for all

12   sides if there is an expectation we will receive further

13   briefing on this issue, I don't see it as the basis for

14   further delay for the release of the three pages.

15            MR. SCHUMB:  It's my understanding, Judge, in

16   ruling on this issue you also are ruling on the issue as to

17   all the arguments raised in the writ, and I just want to

18   make sure that kind --

19            THE COURT:  Let me have a minute.

20            MR. MADDEN:  Your Honor, may we be excused for a

21   few minutes?

22            THE COURT:  We will consider ourselves in a brief

23   recess, and I'll just be right here.

24            (Recess.)

25            THE COURT:  Let's go back on the record briefly.

26   Insofar as the three pages of notes, let it be noted that

27   the Court has reflected on those insofar as the writ

28   application, and the points and authorities filed and

1    additional statutory protection sought.  And for all the
2    reasons noted in the prior ruling, the application for the
3    writ is denied as to the three pages of notes only.
4             MR. SCHUMB:  Might I address those grounds
5    briefly?
6             THE COURT:  Sure.
7             MR. SCHUMB:  The new one, Judge, is B because we
8    didn't amend the writ.
9             THE COURT:  It's all in your pleadings, but go
10   ahead.
11            MR. SCHUMB:  It's not in the writ because we
12   didn't know about some of these things.
13            THE COURT:  I thought B was in there?
14            MR. SCHUMB:  I don't think B is.  K is in the
15   writ.  So K is basically if there was a statute or ruling K
16   was Sixth Amendment.  I think you addressed that.  However,
17   B, is whether there is a law suit pending, and since the
18   filing of the writ two civil lawsuits have been filed
19   against the District naming, we believe, my client and
20   Ms. Vijayendren.  So there's now a separate civil lawsuit
21   pending, and obviously these notes are very relevant in that
22   litigation.  So there is a ground under B, which is pretty
23   unconditional, the record pertaining to the pending
24   litigation to which a public entity is a party.  So we got a
25   claim filed; litigation is pending in my opinion.
26            THE COURT:  So what's been filed is a claim for
27   damages with a public entity?
28            MR. SCHUMB:  Correct.  And we have a copy of that.

1    And the other one is F, and this kind of gets to the heart

2    of Mr. Chandler's position here.  Mr. Chandler is the

3    unintended victim of the way the DA put documents in the

4    Vijayendren case.  These are investigatory records in a

5    pending criminal action.  This could go the other way.  One

6    of these days, the Mercury could send a public request to

7    the coroner or some other public entity and say, hey, we

8    want to see some of these reports, or some other public

9    entity involved in some other kind of criminal case.  And

10   even though those are records that are relevant in the

11   criminal case, who knows might be pre-charging.  It might be

12   during the pendency of the verdict or during the pendency of

13   the case, and say, hey, we want to get these records, or the

14   DA or the defendant could have an issue with it.  And that's

15   what's happened here.  So these are records in

16   Mr. Chandler's case.  They haven't been used yet.  They may

17   never be used.  They contain allegations which have never

18   been made public.  That's an important issue.  There's a big

19   difference between what's in the preliminary hearing

20   transcript, what's in the notes, and what's in

21   Ms. Vijayendren's notes.  Very significant differences.  And

22   who knows, this could dissuade a witness from wanting to

23   testify.  I mean if the notes and the testimony of the

24   alleged victim were compared, one newspaper, I'm not sure

25   the Mercury could say, gee whiz, this point towards

26   innocence.  And it could dissuade the witness from

27   testifying.  Who knows?  I don't know how they are going to

28   be used.  So what we really have is and the position I took

1   is that once these records are part of the investigative
2   file under F, it seems like they get a special place.  All
3   we're asking for, and this is using the balancing test under
4   6455, was, hey, it's a much simpler balancing test than NBC.
5   It's, hey, what's the balancing of the rights and is there
6   an alternative?  Well, the public is going to get these
7   notes.  This is not an issue that somehow there's some
8   information or allegations that the public will never know
9   of.  It's just a matter of when.  And if you allow, Your
10  Honor, the Mercury News to circumvent the discovery statutes
11  that prohibit anyone from the public from getting these
12  documents, well, you know, a defendant is going to file a
13  public records request.  Well, who knows how this could be
14  used or abused.  So it seems to me that F in the reply brief
15  from the Mercury they dismissed it saying, hey, you know,
16  the school district is not an investigative agency, but the
17  point that we are making is these are in possession of the
18  DA's office in the Chandler case, so I really think this
19  particular ground deserves some close scrutiny by the Court,
20  if it's had a chance to look at it.  I just think that once
21  this door gets open, it could work in many ways, and,
22  obviously, we have the Mercury News here, but standing in no
23  special position than anyone else; just another person.  So
24  the defendant could do the exact same thing, right, and get
25  confidential stuff that's part of an investigative report
26  that may not have been provided to them.  A victim, a third
27  party, could be a gang case, and when you start to think
28  about the implications of that, Your Honor, what if the City

1  of San Jose has stuff that it's got from a gang prosecution,

2  and they do a public record request of that?  I think this

3  has much broader implications, and I guess my point is that

4  I don't think you can -- and the reason it's all here

5  together, I don't think you can pull apart what's happening

6  in this case, Chandler's case, or the writ case; it's all

7  one thing.  And if you do that and you start to allow people

8  to go and pluck documents they become aware of in the

9  investigative files of the DA, police department, or anybody

10  else, that could work as severe injustice.  I think it's a

11  bad precedent, and it's not justified in this case because

12  they are going to get the information.  I think the

13  arguments that you make about, well, this stuff is already

14  in the public record; well, some of it is.  We are worried

15  about the part that is not.  We don't care about what's in

16  the record; we've already said that.  We're worried about

17  the part that is not.  That is significant.  I wish I could

18  go through the transcript.

19        THE COURT:  I appreciate there is obviously some

20  difference what's in the three pages of notes versus what's

21  in the police report, and what's in the preliminary

22  examination transcript.  I understand that.  And I guess,

23  you are right, it all should be heard together, but I guess

24  the question is does the statutory remedy in the government

25  code override the constitutional rights?

26        MR. SCHUMB:  Well, but, remember, they are not

27  constitutional rights.  This is the government code and

28  that's made very clear in the case law we cited, and that's

1    why this isn't a prior restraint; they don't have them yet.

2            THE COURT:  You never heard that phrase coming

3    from me.  It's not a prior restraint case.

4            I guess my question is this.  If they have

5    lawfully, and I guess that's a matter of interpretation,

6    sought information in different ways, and in one way

7    constitutionally they are entitled to it, and arguably in

8    another way they are statutorily not, it's your position

9    that the statute overrides?

10           MR. SCHUMB:  I think I got them, and I will tell

11   you why.  Here's why I got them.  If they are not allowed to

12   get these documents because they are part of the DA's file

13   and they are part of an investigative record in a pending

14   case.  Then that precedent comes through K, 6455K, that

15   says, "Another important right or action pending."  The

16   government code built in a protection that you couldn't

17   circumvent what another agency or entity is doing by using

18   the public record request, and that's why it exempts the

19   litigation in B.

20           THE COURT:  Now, you are comparing two statutes,

21   but what about through the Vijayendren file and the weighing

22   and the balancing on the constitutional right I did?

23           MR. SCHUMB:  Because I catch them with K.  I catch

24   them with 6455 K, because what you can find, Your Honor, is

25   that Vijayendren, I believe the disclosure in that case

26   works to violate the constitutional rights of another, as I

27   think it does with Mr. Chandler and/or the DA's files, then

28   I think you have good cause under the Vijayendren balancing

1  because it's not just about her anymore, it's about
2  Chandler, which is why we are here, and the DA's files, and
3  that's what creates, I think, a weighing in favor of the
4  defendant, and, more importantly, the constitutional rights,
5  the Sixth Amendment right.  So that's why we are all here is
6  that you are supposed to put all this in the mixer.  When
7  you are looking at Vijayendren, my expectation is you are
8  going to look at Chandler and that's what the writ does.  I
9  pull you back into my problem here.  You can see under F
10 this could have some real serious implications.  We're not a
11 party in Vijayendren.  So that creates a huge problem, and
12 that's why F, which is their basis under the CPRA to get
13 these documents, and it works an injustice.
14              THE COURT:  Here your record is as complete as it
15 can be, hopefully, in this.  I am juggling those statutory
16 rules in 6254 with the constitutional rights.  Now, in a
17 vacuum, which I know we are not, but let's just say that in
18 the misdemeanor case those three pages weren't in the
19 affidavit, and the only thing I had in front of me was their
20 filing the action with the district to get them, and we have
21 your writ.  Now, I'm looking at a straight -- I'm looking at
22 the statutes, and I'm ruling based on the statutes.  But now
23 I've got this other thing, and they have made a --
24 reasonable minds will differ -- reasonable request that the
25 matters in the -- that they have access to the affidavit of
26 probable cause, and his counsel with your able assistance or
27 her counsel with your able assistance has sought to have
28 that sealed, and I get into that constitutional balance, and

1   I ruled on the constitutional balance.  And no matter what I
2   think as to the government code is that going to override
3   the constitutional determination I already made?
4           MR. SCHUMB:  The point I'm trying to make is you
5   got two people both who have constitutional rights.  It
6   seems to me like if your action violates one of their
7   constitution rights, you can't allow it to happen on behalf
8   of the other person.  That's the balancing.  And maybe
9   that's where we disagree.
10          THE COURT:  I think I found against Mr. Geffon's
11  client on the constitutional issue, and I found against your
12  client on the constitutional issue.  You are raising the
13  statutory issue in your writ.
14          MR. SCHUMB:  Right.
15          THE COURT:  And my question is, accepting the
16  merits of the argument by statute, is that going to override
17  the constitutional rulings I've already made?
18          MR. SCHUMB:  The statutory findings are there to
19  protect the government processes, such as the operation of
20  the district attorney's office.  It seems to me as though
21  that is exactly the overriding governmental interest that
22  does justify not turning over the notes in the Vijayendren
23  case.
24          THE COURT:  Except in this case the DA filed the
25  notes as part of their affidavit of probable cause.
26          MR. SCHUMB:  But that's random.  The point is, see
27  -- what my point is in my papers is that once the notes are
28  protected, because they protect an important governmental

1    interest, which is constitutional, right?  The DA's

2    operation and public safety is part of the government

3    interest.  Once that right is created in that document, you

4    can't then go over and have it -- ignore it when you are

5    dealing with another situation such as Vijayendren.  So it

6    qualifies or colors the documents such that when you get to

7    the Vijayendren decision, you say to yourself, okay, I've

8    got other important constitutional and statutory rights over

9    here that outweigh the disclosure of the documents that will

10   be frustrated if I disclose in Vijayendren, and, therefore,

11   the balancing I make is not now.

12           THE COURT:  Except, of course, they are not here

13   screaming for that.  They are not claiming any challenge

14   rights.  It is understandably coming from you and Mr.

15   Geffon.  In other words, the investigating agency has no

16   problem with this information getting out.

17           MR. SCHUMB:  Why do you think that is?  Why do you

18   think those notes happen to just be in this other file?

19   They couldn't be in the Chandler file because they never put

20   allegations of child abuse in a felony file.  Those are

21   always sealed in a little protective envelope, but here we

22   find them just flopping around attached to this misdemeanor

23   file, and that's what really worries me, Judge, is that the

24   DA can selectively just sprinkle this stuff out here, all to

25   the detriment of another criminal defendant.  That's really

26   the problem, really, was their decision to attach those

27   notes, which was very unmindful of what's happening in the

28   Chandler case.  They couldn't and wouldn't do it in the

1    Chandler case.  Why they did it in that case, I don't know.
2    We had the same problem in the Chandler case.  If you look
3    at the file, they attached the file in the Chandler case and
4    we had to do a motion in front of Judge Pennypacker to get
5    that sealed, but if I'm arguing against the wind, I will
6    hush up.
7            THE COURT:  I don't want you to feel that way,
8    because I've tried, if nothing else, to convey my sincere
9    belief and understanding of the issues and the concerns.
10   I'm not unmindful of them.  I appreciate the significant
11   interest to the defendant in a criminal case.  I am not
12   unmindful of those at all, and I tried to balance them as
13   best I can.
14           What I'm going to do at this point is this.  The
15   writ insofar as it applies to the three pages is denied, and
16   I'm not overly civilly worldly.  There was a peremptory
17   order made by Judge Pierce, and I don't know if that by its
18   own terms expires.  It's technically expiring based on my
19   ruling, so I'm denying the writ as to that.
20           I will do the following.  Number one, I will give
21   the opportunity to further brief, if you want, the issue as
22   to the remaining matters in the first and second
23   supplemental statements from the district.
24           MR. SCHUMB:  Thank you, Your Honor.
25           THE COURT:  Number two, I'm going to invite,
26   unless there is an objection and unless I hear it, I'm going
27   to invite them to leave all those documents with me or
28   copies of them so I can review them in camera before our

1  next meeting.  You've more than made your record.  I'm going

2  to stay the order I've made today until Wednesday, October

3  3rd at 5:00 p.m.  Actually, that's not fair because nothing

4  can happen at 5:00 p.m.  It will be Thursday, October 4th at

5  8:00 a.m.  Unless there has been some stay granted, then

6  those three pages will be back in the affidavit of probable

7  cause Thursday morning at 8:00.

8          Now, I don't know what you guys have discussed

9  scheduling-wise.  If we are going to continue this it's

10  going to be on a very short schedule.  My schedule is

11  impacted also, which we haven't discussed.  I'm going to be

12  right here all next week.  It's a short week.  The week

13  thereafter I'm going to be in Morgan Hill, where I'm happy

14  to have you all join me.  Then I'm going to be away for the

15  rest of the month of October.  So I'm on a short schedule.

16  I'm happy to keep this on a short schedule.  I'd be thrilled

17  to have something on file, at least with a copy to the Court

18  and to counsel by Monday afternoon late.

19          MR. SCHUMB:  How about Monday, October 1st?

20          THE COURT:  Yes, and then have you all back here

21  next Friday afternoon -- actually, I'm going to say in the

22  morning late because I have calendars.

23          MR. MADDEN:  I have conflicts both in the morning

24  and afternoon next Friday.  The Friday after I'm totally

25  available.

26          MR. SCHUMB:  I've a Goodwill Board retreat that

27  day.

28          THE COURT:  Next Friday.

1    MR. SCHUMB:  The 5th.  I'd like a little more
2    time.

3    MR. HUNTINGTON:  Your Honor, before you begin the
4    scheduling, I'm really confused.

5    THE COURT:  Good.  I've accomplished something.

6    MR. HUNTINGTON:  I'm unclear as to what the basis
7    is for staying your order till next week if the writ has
8    been denied.

9    THE COURT:  The writ has been denied.  I'm giving
10   them, because, obviously, once the matters are back in the
11   file, they are a matter of open record.  I am satisfied that
12   I have tried to address appropriately significant
13   constitutional issues on both sides.  I am allowing them a
14   very small window of opportunity if they wish to seek higher
15   review, and if they do, so be it, and if they don't, so be
16   it.  If the Court of Appeal determines that my orders should
17   be stayed while they review it, that's fine, and if they
18   choose not to, then Thursday morning you are going to come,
19   the representatives are going to be at the front desk, and
20   it will be in the court file.

21   MR. HUNTINGTON:  If they appeal as opposed to
22   additional briefing?

23   THE COURT:  No.  My ruling is final.  It was just
24   to give them a chance if they want to seek a higher ruling.

25   MR. SCHUMB:  Under the rest of the documents the
26   writ is stayed, left in effect until the next hearing date?

27   THE COURT:  I have not ruled on the writ.  Only
28   the three pages, that's all I've ruled on today.

1          MR. SCHUMB:  So the stay is lifted only for the
2  three pages and we will continue on for hearing for the
3  other.  Your Honor, can we pick that date?
4          THE COURT:  Yes.  You bet.
5          MR. FISS:  The stay of the order till October 4th,
6  is that with respect to only the three pages being place
7  back into the file or does that also relate to the district
8  producing the documents in response?
9          THE COURT:  That also relates to the latter, to
10  the district producing those three pages next Thursday,
11  October 4th 8:00 a.m.
12          MR. FISS:  And then my second question there are
13  three pages of typed notes and three pages of handwritten
14  notes.  Does this order apply to both the typed and
15  handwritten notes?
16          THE COURT:  You are just going to help me.  Is the
17  typed version just a typed version of the handwritten?
18          MR. FISS:  They are subsequently the same.
19          MR. GEFFON:  Judge, I can tell the Court what
20  happened.  The handwritten notes were made
21  contemporaneously.  In October, three months later when
22  Mr. Chandler was arrested, my client was asked to type up
23  her memory of the October incident, which includes details
24  of the interview, but she did that without the handwritten
25  notes and from her memory.  So they are covering the same
26  subject, and I don't think there are any inconsistencies but
27  they are not just a typed version of the interview notes.
28          THE COURT:  Yes, they are included in the Court's

1   ruling.

2           MR. FISS:  So both will be produced?

3           MR. GEFFON:  The Court is ordering on October 4th

4   both the handwritten notes and the typed summary of events

5   made three months later is also being released?

6           THE COURT:  Yes.  Let's look at when we are going

7   to come back, and then we will figure out when I need to see

8   whatever I'm going to see.  The morning of Wednesday,

9   October 10th.

10          MR. SCHUMB:  What time.

11          THE COURT:  9:00 in the rarefied air of Morgan

12  Hill, Department 105.

13          MR. MADDEN:  That's fine.

14          MR. SCHUMB:  Can I get any supplemental papers

15  filed on October 4th?

16          THE COURT:  Yes.

17          MR. SCHUMB:  I will serve those by e-mail.

18          THE COURT:  I will give you an e-mail too.

19  October 10, 9:00, Department 105 in the morning, Morgan Hill

20  Mr. Huntington will prepare the order.  The original should

21  be filed with the Court, but I will be happy to accept the

22  e-mail.  If you want 72 hours to file a response, you may.

23          MR. HUNTINGTON:  Thank you, Your Honor.

24          THE COURT:  You're welcome.

25          (Recess.)

26

27          THE COURT:  Note on the record.  The records were

28  submitted to the Court regarding the writs for in camera

1    review regarding the writ.

2            (Recess.)

1

2  STATE OF CALIFORNIA   )
                           ) ss.

3  COUNTY OF SANTA CLARA )

4

5      I, BARBEE MACHADO, Official Reporter of the County of

6  Santa Clara, State of California, do hereby certify that the

7  foregoing pages, 251-291, comprise a full, true and correct

8  transcription of my stenographic notes in the aforementioned

9  case of the proceedings held on September 28, 2012.

10

11     I further certify that I have complied with CCP

12  237(A)(2) in that all personal identifying information has

13  been redacted, if applicable.

14

15

16

17  Dated this 22nd day of January, 2014

18

19

20                           _____

21                          BARBEE MACHADO, CSR 9355

22

23

24

25

26

27

28

# EXHIBIT 3
# (Vol. 3)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   401

TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


---o0o---



THE PEOPLE OF THE STATE OF       )
CALIFORNIA,                      )
                                 )
        Plaintiff - Respondent,  )
                                 )
        v.                       )        No. C1223754
                                 )
CRAIG RICHARD CHANDLER,          )
                                 )
        Defendant - Appellant.   )
_____/

COPY



VOLUME 3

PAGES 401 - 441

JUNE 11, 2013


---o0o---


REPORTER'S TRANSCRIPT ON APPEAL
FROM THE JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY


---o0o---


APPEARANCES:

FOR PLAINTIFF-RESPONDENT:        OFFICE OF THE ATTORNEY GENERAL
                                 BY:  KAMALA D. HARRIS,
                                 Attorney General of the State
                                 of California

FOR DEFENDANT-APPELLANT:         In Propria Persona

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   402

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    IN AND FOR THE COUNTY OF SANTA CLARA

3    BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

4    DEPARTMENT NO. 37

5

6    ---o0o---

7    THE PEOPLE OF THE
     STATE OF CALIFORNIA,                    )
8                                            )
                   PLAINTIFF,                )
9                                            )    CASE NO.  C1223754
          v.                                 )
10                                           )
                                             )
11    CRAIG RICHARD CHANDLER,                )
                                             )
12                                           )
                   DEFENDANT.                )
13    _____/

14

15    ---o0o---

16

17    REPORTER'S TRANSCRIPT OF PROCEEDINGS

18
                      JUNE 11, 2013
19

20    ---o0o---

21

22

23

24    APPEARANCES:

25    FOR THE PEOPLE:              ALISON FILO
                                   Deputy District Attorney

26

27    FOR THE DEFENDANT:           BRIAN MADDEN
                                   Attorney at Law

28    OFFICIAL COURT REPORTER:     JAMIE L. MIXCO
                                   C.S.R. No. 12708

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   403

1   San Jose, California            June 11, 2013

2                 PROCEEDINGS

3        THE COURT:  Thank you.  We'll call the matter of

4   the People v. Craig Chandler.  Counsel, state your

5   appearances for the record.

6        MR. MADDEN:  Thank you, Your Honor.  Brian Madden

7   appearing for Mr. Chandler.  He's personally present in

8   custody.

9        MS. FILO:  Good afternoon, Your Honor.  Alison Filo

10   appearing for the People.

11        THE COURT:  Thank you.  We're here for the in

12   limine motions, and I have had an opportunity to read and

13   consider all of the points and authorities that have been

14   filed relating to the various issues.  What I was inclined to

15   do is first go through Mr. Madden's in limines.  And you did

16   give me a sort of, like, a title sheet that said one through

17   five, and I'm simply going to go through that order because

18   that's the order I have them.

19        And the first one is dealing with the defense

20   request to exclude the prior attempted burglary conviction

21   for the purposes of impeachment in the event Mr. Chandler

22   testified.  Again, I read and considered the moving papers

23   filed by the parties, and if either Ms. Filo or Mr. Madden

24   wish to make additional comments at this time, you may do so.

25        MR. MADDEN:  Your Honor, let me just simply state

26   this.  I believe that we have extensively and accurately

27   stated our position, both in the motion itself, the initial

28   motion, and in our reply to the People's opposition.  I'm

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   404

1    satisfied with the content of my moving papers.

2              On the other hand, should the Court have any

3    question about any of it, I will be happy to answer any of

4    those questions.

5              THE COURT:  I will note, and I think it's obvious,

6    that everything that has been written and placed into the

7    moving papers by both sides, I've considered it and should be

8    incorporated in my ruling.  In the event that I don't make

9    any specific comment on a particular fact, it doesn't

10   necessarily mean that I haven't considered that.  And I

11   agree, they were extensive and thorough.

12             Ms. Filo, you wish to make any comments?

13             MS. FILO:  Your Honor, the only thing I would add

14   to my papers, it would actually apply to any of my opposition

15   or any of my submissions to the Court, as a general rule, I

16   do not address and did not address 352 concerns just because

17   it's not something where the law is really at issue.  It's

18   something that I know Your Honor will consider it in making

19   its decision.  So unless there is some specific legal issue

20   that I wanted to address with the Court, I did not address

21   352 concerns.  And if the Court wanted to engage in that

22   discussion, I'm happy to do it, but it didn't seem necessary

23   to do that, the context of the submissions to the Court.

24             THE COURT:  Okay.  Thank you.  I am going to just

25   state some of the background, because it was a lot.

26             Concerning the prior attempted residential

27   burglaries, Mr. Chandler pled to the charges, and by his

28   conviction, he essentially had a felony/misdemeanor attempted

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   405

1   burglary conviction.  He entered the pleas with the

2   understanding he would be sentenced on the misdemeanor

3   664/459.  And if he successfully completed probation on the

4   misdemeanor, the felony attempted burglary would be

5   dismissed.

6          Court believes, based on everything presented to me

7   this was a negotiated disposition, although somewhat unusual.

8   After completing probation, the felony charge, which he had

9   pled to, was dismissed pursuant to 1203.4 rather than being

10  dismissed pursuant to the negotiated disposition.

11  Nevertheless, I believe the intent of the parties was clear.

12         The issue before the Court, I believe, is whether

13  the Court should allow the People to impeach Mr. Chandler if

14  he chooses to testify with a misdemeanor attempted burglary.

15  I will note that even though there is technically no crime

16  with misdemeanor attempted burglary, the District Attorney in

17  Santa Cruz on behalf of the People agreed to this conviction.

18  I believe Ms. Filo is bound by that agreement or disposition

19  entered by that particular county.

20         The Court believes it has broad discretion in

21  deciding whether to allow a defendant to be impeached with

22  the prior conviction.  Based on the cases cited by both

23  counsel and Evidence Code Section 552.5, if the Court decides

24  to allow the People to impeach Mr. Chandler, they may do so

25  with the records of the conviction.

26         I have conducted and engaged in a 352 analysis,

27  taking into consideration all of the information provided,

28  including the fact that the attempted burglary incident is a

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    406

1  crime of moral turpitude, including dishonesty.  I considered

2  the remoteness of the conviction, the dissimilarities between

3  the offending charge and the prior conviction.  The Court

4  believes the probative value outweighs the prejudicial impact

5  and will allow the People to impeach Mr. Chandler with his

6  prior attempted burglary conviction as a misdemeanor if he

7  chooses to testify.

8          So on this particular in limine motion, that's the

9  Court's ruling.  And on this particular in limine motion, Mr.

10  Madden, that will be a continuing objection by the defense.

11  If Mr. Chandler testifies, you will not have to object in

12  front of the jury, unless you wish to do so, obviously.  As

13  far as the Court is concerned, your objection on this

14  particular issue is standing.

15          MR. MADDEN:  May I be heard, Your Honor?

16          THE COURT:  Yes, of course.

17          MR. MADDEN:  A couple of points.  I know the Court

18  didn't mean to, but this was a Monterey County case, not a

19  Santa Cruz case.

20          THE COURT:  Thank you.

21          MR. MADDEN:  Number 2, the Court indicated there

22  was a clearance pursuant to Section 1203.4.  I believe that

23  is clearly in error, even though the clerk noted it.

24  Unfortunately -- well, all we have is the clerk's minute

25  order, but you can't get 1203.4 relief for an offense that

26  you were not placed on probation for.  So that was clearly a

27  clerical error, and I suppose it's not particularly relevant

28  since the Court is not allowing the felony conviction to be

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   407

1  used, but it is used in the misdemeanor, allowing a

2  misdemeanor conviction.

3       The question that I would have would be, will the

4  People be -- the People then will not be allowed to discuss

5  the misdemeanor conviction, for example, in opening

6  statement?

7       THE COURT:  That's correct.

8       MR. MADDEN:  All right.  And then if Mr. Chandler

9  chooses to testify, should I decide to lessen the blow of the

10  impeaching misdemeanor conviction, would I be using simply

11  the conviction itself?  For example:  Mr. Chandler, were you

12  convicted of a misdemeanor attempted burglary when you were

13  19 years old?  Is that -- am I hearing that correctly?

14       THE COURT:  You are correct.  You are correct.  I

15  don't think you necessarily need to use the actual document.

16  I mean, asking him the question and him responding in the

17  affirmative is fine.

18       MR. MADDEN:  All right.  What would then the People

19  be allowed to discuss, if anything, on that subject?

20       THE COURT:  They would be allowed to obviously ask

21  the same questions they wanted to.  Probably a little

22  differently to clarify it.  And the only other thing they

23  will be allowed to do is the actual record of conviction.

24  Because there is a record, I'm assuming that the People would

25  get and have, which is the document.  I don't think it offers

26  much, but I think in fairness to them, I would allow them to

27  do that because I'm not allowing any witnesses to be called

28  in order to prove up the conduct.  And that's pursuant to 352

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   408

1    because you have that.

2              MR. MADDEN:  That was my question.  I wanted to

3    make sure we're not going to have a discussion concerning the

4    factual matter surrounding the arrest or the circumstances.

5              THE COURT:  Right.  And just so we're trying to get

6    a real clear clarification of the parameters of where we're

7    at, just so it's clear, he would be allowed to be impeached

8    with:  He suffered a prior misdemeanor attempted burglary for

9    attempting to enter a house with the intent to rob someone.

10   That's the entire --

11             MR. MADDEN:  Misdemeanor attempted burglary?

12             THE COURT:  Intent -- yeah.  Misdemeanor attempted

13   burglary, correct.  To enter a house with the intent to

14   commit larceny.

15             Again, as I mentioned earlier, Ms. Filo, even

16   though this is not such a crime, you are bound by this

17   agreement.

18             Mr. Madden, you are right about whether or not it

19   was a clerical error.  I'm not trying to make any future

20   rulings on the Monterey case.  All I'm simply saying is that

21   the intent, based on everything you presented to me, is

22   clear.  That's why I'm not -- I don't think in fairness the

23   People should be allowed to impeach him with a felony as

24   opposed to a misdemeanor.

25             MR. MADDEN:  So in summary, you are granting my

26   motion and denying it in part?

27             THE COURT:  Correct.

28             MS. FILO:  Your Honor, the only clarification I

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   409

1   guess I would make to -- that I understand the Court's ruling

2   perfectly.  I understand that that was the intent of the

3   parties.  I actually don't think it was a clerical error that

4   the count was dismissed pursuant to 1203.4, because as it

5   turns out, there would be no other legal mechanism by which

6   it could be dismissed.  Once he had pled, there was no other

7   way to dismiss it.  I think that was the mechanism by which

8   the court had to because there was no -- you couldn't Section

9   17; it's a non-alternative felony.  Doesn't matter for

10  purposes of this.

11          THE COURT:  My understanding was in that unique

12  situation out of Monterey, I was assuming what was going to

13  happen was the judge -- sentencing judge wasn't going to

14  allow him to withdraw his plea of guilty, enter a plea of not

15  guilty, and dismiss it.  I would think procedurally that

16  would probably been the cleanest way to do it after he

17  successfully completed probation.

18          MR. MADDEN:  That would have been one way.  But of

19  course he was completing probation on a misdemeanor matter,

20  placed on misdemeanor probation.  I think the case is almost

21  more tend to amount to a deferred entry of judgment or Prop

22  36, where we do this and you're not going to have any record

23  for purposes for this.  The 1203.4 certainly would apply to

24  the misdemeanor.

25          THE COURT:  Right.  No, I agree.  And at least for

26  my purposes, for all of these reasons, that's my ruling.

27          MR. MADDEN:  All right.

28          THE COURT:  Thank you.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   410

1          The next one is motion to admit testimony from Dr.

2    William O'Donohue, an expert in the interviewing of victims

3    of child sexual abuse.  Again, I read and considered the

4    points and authorities, and any additional comments?  I will

5    start with, Ms. Filo.

6          MS. FILO:  Thank you, Your Honor.  So this was

7    actually one that I didn't necessarily oppose, because I

8    think the defense is entitled to present an expert on the

9    issue of forensic interviews, for lack of a better word.  The

10   only thing I do object to, and will object to, is in that

11   motion, Dr. O'Donohue talks about primary inconsistencies,

12   secondary inconsistencies.  He uses -- he wants to point to

13   examples of the children's responses that are inconsistent

14   with each other.  That, I think, is well within the purview

15   of the jury, whether those statements are in fact

16   inconsistent, whether they are -- that is something that's

17   well within the scope of the jury.

18          I think to point out or to question or criticize

19   the interrogation methods or the time and place or how many

20   people had access to the child, I think those are all

21   appropriate issues for the defense.

22          But I think the expert cannot be used to tell the

23   jury what is or is not a consistent or inconsistent statement

24   that's well within their purview.

25          So with that exception, I would submit the motion.

26          THE COURT:  Mr. Madden.

27          MR. MADDEN:  Well, I will make two comments, Your

28   Honor.  The People did not provide any opposition to this

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   411

1    motion.  It was my understanding, until Ms. Filo stood up,

2    she wasn't opposing this motion, and I suppose that I'm

3    prepared to submit it.  But pointing out these

4    inconsistencies, for example, is not tantamount to making a

5    finding of who they are believing, who the expert's believing

6    or not.  That's what she's driving at.  Maybe I'm

7    misunderstanding.  He's just using that to explain the

8    significance of inconsistencies itself.  But to talk about

9    the inconsistencies, you have to get into what they are.

10          THE COURT:  My take from Ms. Filo is that the

11   nature of the question, the nature of the interrogation, and

12   just all the problems this particular expert will identify

13   generally, and in this case, it would seem like his

14   testimony -- that this could result in inconsistencies within

15   a particular child's testimony.  And I think her objection

16   was to go through all the inconsistencies that he identifies

17   and point them out.  I think it might be reasonable, and I'm

18   not saying this is what I'm saying, but it might be

19   reasonable when he's talking about that area, for example,

20   that this type of questioning or interrogation techniques

21   will result in inconsistencies within the interview.  An

22   example of one might be appropriate, but to go through the

23   whole interview, I think would be time-consuming, but it does

24   illustrate his testimony and the point he's trying to make.

25          MR. MADDEN:  I understand.  And I think in his

26   report, even though it's obviously a lengthy report, I

27   haven't totaled them up, but I don't think there are more

28   than several things referring to each of the kids.  It's not

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   412

1  like pages and pages and pages of inconsistencies.  I think

2  he took several examples for each of the kids.  He was

3  limited and will be limiting his testimony.

4         THE COURT:  Right.  That was my expectation.  I

5  think the amount of information that was presented is to

6  thoroughly demonstrate the points you were trying to make.

7  My feeling was that not everything that was attached was

8  going to try to be presented to the jury.

9         MR. MADDEN:  Correct.

10         THE COURT:  But it was basically trying to

11  demonstrate to the Court why this was relevant and allowable.

12         MR. MADDEN:  Right.

13         THE COURT:  So is that clear enough what I'm

14  thinking?  Because I think it would be fair for you to make a

15  point and then use an example to illustrate that point.  But

16  I don't think it should be numerous, and I don't think it

17  should be excessive, because I think illustrating the point

18  in one particular area of the interview will be sufficient.

19         MS. FILO:  I guess my problem -- and again, when

20  I'm looking through -- when I'm looking through the motion, I

21  guess the motion -- I guess his report isn't -- it is -- I'm

22  sorry.  It's pages 27 through 31 or -- sorry -- 32 of Dr.

23  O'Donohue's report.  And what it says is things are primary

24  inconsistencies, secondary inconsistencies, things like that.

25  None of those things are ever tied to an inappropriate

26  question.  So he's not in any of these examples saying this

27  inconsistency was the result of this kind of questioning.

28  That's my concern.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   413

1          So I just don't want the expert to be used to say

2   that these statements are in fact inconsistent when it

3   doesn't have any connection to a specific question or the

4   impropriety of the question in the way it was asked.  And

5   again, to say something is round or something is curved, I

6   think that's well within the jury's decision-making abilities

7   to say, is that inconsistent?  Or, is that a child just using

8   different words to describe the same thing?

9          So that was my concern, is that this -- in those

10  particular instances where he's talking about these

11  inconsistencies, there is no connection between what he's

12  identified and a specific impropriety within the context of

13  the interview.

14          If it is done in the way that Your Honor suggests,

15  which is:  Did you find instances of misconduct or

16  interrogation misconduct?  Yes.  For instance, when the

17  officer asked this and she said it this time.  Ms. Filo asked

18  it at the preliminary hearing, she said this.  Those improper

19  questions or inaccurate questions can lead to confusing

20  results.  I think that's fine.  I just want to make sure that

21  this isn't flashed up as a chart somewhere to say the kids

22  are inconsistent when that's not tied to any forensic

23  interviewing technique, and it's not part of his general

24  presentation to the jury of forensic interviews.

25          THE COURT:  I think I understand your concerns, and

26  I think we're on the same page.  I'm identifying where I

27  believe the parameters are.  For example, let's say he points

28  out something and he says, for example:  Inconsistencies

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   414

1    right here.  And he goes:  First says round and then says

2    curve, okay.  Let's say he's using that as an example.  Well,

3    if that's the example, the jury is going to say, you know, it

4    goes to his weight.

5            But my concern is repeated examples:  Here and here

6    and here, and just over and over.  I think that's excessive.

7    And I'm hoping, Mr. Madden, you're following what I think is

8    appropriate and I think you understand Ms. Filo's concerns.

9            MR. MADDEN:  I do, and I think I understand the

10   Court's concern and I think things will work out.  Obviously,

11   if you think that it's becoming excessive or consuming an

12   undue amount of time, I'm sure Ms. Filo will object and you

13   make a ruling, so --

14           THE COURT:  Absolutely.  Absolutely.  And off the

15   record briefly.

16           (Whereupon, there was a discussion off the record.)

17           THE COURT:  We'll go back on the record.  The next

18   in limine is No. 3, motion to exclude evidence related to an

19   incident involving Mr. Chandler and Hilda Keller.

20           MR. MADDEN:  Yes, Your Honor.

21           THE COURT:  Okay.  Ms. Filo.

22           MS. FILO:  Judge, I had a beautiful motion written

23   in opposition to this, and I had my girlfriend walk over what

24   I thought I had filed with the court, which I did, and it's

25   not in here.  So I don't know if I wrote it separately or

26   what I did.  But if the Court will permit it, I would like to

27   make my oral response to the defense's motion.

28           THE COURT:  Sure.  And not file it?

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   415

1          MS. FILO:  She didn't even bring it.  I thought

2    this was it.  I thought it had been filed with the court.  I

3    thought it was here.  It's not, and it's not in here either.

4          THE COURT:  I could tell you I have never seen any

5    response or opposition.

6          MS. FILO:  Entirely my responsibility, Your Honor.

7          So -- but I do have very strong feelings about this

8    particular motion, and it is based on this.  The People have

9    the burden of proving beyond a reasonable doubt that a 288(a)

10   touching is lewd and lascivious; that it's done with lewd

11   intent.  And when we're talking about sexual organs or a body

12   part that everyone -- all of us would accept or understand is

13   designed for sexual pleasure, then I think that obstacle is

14   relatively easy for the People to overcome.  Certainly, when

15   you are touching, you know, intimate body parts, unless

16   you're a member of a specified medical profession, you are

17   doing it for sexual pleasure.  That's the only reason that

18   body part is being touched.

19         Here, we have a unique situation, where Victim No.

20   3 really is only touched on her feet.  That's the body part

21   that's at issue.  And to be honest, the People would not have

22   even filed that as a 288(a) count had we not had this

23   background information of Mr. Chandler's interaction with

24   Ms. Keller.  I don't know that we could have proven that that

25   conduct was in any way lewd or suspicious or sexually

26   motivated absent this other piece of information, which

27   becomes so highly relevant and highly probative.

28         And in the context of Ms. Keller, what we find is

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   416

1  that she was -- so she was so clear that Mr. Chandler's

2  behavior towards her was sexually motivated, and a part of

3  that was this specific interest in feet.  And questions to

4  her about feet and wanted to take pictures of feet, that made

5  her so uncomfortable that she asked to transfer from one

6  school to another school.  So it is the combination and the

7  intersection of those ideas that a otherwise non-sexual body

8  part now has specific sexual meaning to this defendant.  And

9  then when this inexplicable conduct with Victim No. 3 occurs,

10  it now has an explanation.  It's no longer inexplicable now.

11  It's understood now and it makes sense.

12          So it is because the People have that high burden

13  of proving that conduct is motivated by a sexual interest,

14  that the conduct with Ms. Keller becomes so highly relevant

15  and highly probative.

16          THE COURT:  Thank you.

17          Mr. Madden.

18          MR. MADDEN:  Do you have any questions about my

19  position as stated in my moving papers?

20          THE COURT:  No.  It's fairly clear to me.

21          MR. MADDEN:  I hope it was better than fairly

22  clear.

23          THE COURT:  Okay.  No, it was.

24          MR. MADDEN:  Your Honor, in short, without going

25  back over it, the incident with Ms. Keller has nothing to do

26  with sexual interest in children.  It was a sexual

27  interest -- it was a sexual interest in Ms. Keller.  It's not

28  a crime that would mean -- if this is allowed to come in,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   417

1  then any man who has any interest in any body part of an

2  adult female necessarily has that same interest in children.

3  It just doesn't follow, that's why it's not relevant.

4            THE COURT:  Okay.  Let me ask a couple of questions

5  to both of you because there was some information that was

6  lacking for me.  I mean, there is some information that when

7  we're dealing with 352 and prejudicial versus probative, the

8  first thing that comes to mind when I was reading the in

9  limine motions is that this incident did not appear to be

10  1101 or 1108.  It looks to me, because let's say there is

11  lewd conduct towards a woman, an adult, that's not 288(a).

12            The thing that comes to my mind when I read these

13  is basically, for lack of a better word, some sort of foot

14  fetish.  I don't know the date of the incident, when this

15  incident occurred as it relates to the time frame in the

16  pending charges.  Wasn't clear to me at all.

17            So, Ms. Filo, do you have an approximate date when

18  this incident occurred?

19            MS. FILO:  I do, Your Honor.  It was in 2005.

20            MR. MADDEN:  I think that's correct.  That's

21  consistent with my recollection.  So that was a minimum of 6

22  years -- am I doing my math correctly?  This was a 2011

23  arrest.  Minimum 5 years prior to that; at least 5 years

24  prior.

25            THE COURT:  And it appears that the incidents

26  involved in our case occurred in 2012.

27            MS. FILO:  No, Your Honor.  It was 2010/2011 school

28  year and then the 2011/2012 school year.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   418

1        MR. MADDEN:  Counts 1 through 3 involve the

2   2011/2012 school year; Counts 4 and 5 involve the 2010/2011

3   school year.

4        THE COURT:  Okay.  That's one question I had.  The

5   other question I have, and Mr. Madden is correct, we're

6   dealing with an adult female, but I have no information about

7   the adult.  I think it makes a difference if we're talking

8   about -- factually, are we talking about someone who, for

9   example, is petite with, let's say, petite feet?  Because the

10  way I see it, there is some sort of foot interest and

11  because -- if we're just looking at children and adults, I

12  think it's important to get more information so I get a

13  better sense of, is there a close or connection between this

14  adult and possibly a child?

15       Do you hear what I'm saying as far as the issue of

16  relevancy goes?  I don't know if either of you are going to

17  tell me:  Well, it doesn't matter.  I'm not sure if that's

18  the case either.

19       MR. MADDEN:  Well, I wasn't -- I didn't represent

20  Mr. Chandler at the prelim.  I never met Ms. Keller.  I can't

21  address that issue.  That information is not in the

22  information that I have in discovery.

23       THE COURT:  Okay.

24       MR. MADDEN:  However, the key problem here, as it

25  was the prosecutor's problem at the prelim, and in my opinion

26  a problem, the court didn't see at the prelim, that the issue

27  here is not a sexual interest in feet; it's a sexual interest

28  in children.  And establishing a foot fetish, if there is

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   419

1    such a thing, in an adult, that it does not follow that you

2    have a sexual interest in children at all.

3            THE COURT:  Well, if there is a foot interest in an

4    adult and that interest in this particular incident is,

5    basically, go away.  No interest, then --

6            MR. MADDEN:  I didn't understand that.

7            THE COURT:  The adult was not interested,

8    Ms. Keller.

9            MR. MADDEN:  Okay.

10           THE COURT:  You know, like you used the term

11   "creepy".  Just stay away from me.  She's basically -- the

12   offer of massage, or whatever, with the feet was rejected.

13   Okay.  And if there is a foot fetish, then is it reasonable

14   to assume that, well, maybe I could satisfy that fetish with

15   a child who won't reject me, who trusts me, and allows me to

16   do it?

17           MR. MADDEN:  Well, then you have to extend that

18   logic to include, if a man has then a sexual interest in a

19   woman's mouth and her breasts, her buttocks, her vagina, does

20   that mean he has a sexual interest on those body parts of the

21   child?  I think the answer is clearly no.

22           THE COURT:  Well, Ms. Filo, go ahead.

23           MS. FILO:  Thank you.  I think if an adult male has

24   a sexual interaction with an adult female and they have

25   sexual intercourse, and he says, I'm interested in an adult

26   female's vagina, fine.  But if an adult male has -- if he has

27   sexual intercourse with a child, then we could also say he's

28   interested in a child's vagina.  They are not mutually --

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   420

1    they don't have to be mutually exclusive; they certainly

2    don't have to be mutually inclusive.  But the problem I have

3    is that the object itself in this -- with this particular

4    victim is not a sexual organ.

5          So, Mr. Madden is focusing on the age of the

6    participants; that somehow the conduct is less sexual because

7    of the age of the participants.  What I'm saying is that it's

8    not the age that's the primary focus; it's the body part that

9    ends up being the primary focus.  So it is in that connection

10   that the -- I mean, again, the People have the burden of

11   proving beyond a reasonable doubt that that touching is

12   sexual, and it's not an overtly sexual body part, so how do

13   we prove that?  How would we ever prove that absent a

14   statement from Mr. Chandler:  I have this crazy thing about

15   feet, you know.  We would never be able to prove that.

16         So it's not 1108 that the People are offering the

17   evidence.  It is 1101(b).  This is classic 1101(b):  motive,

18   opportunity, lack of mistake, intent.  What is his intent

19   when he sees a foot?  And that's where the People believe

20   that this evidence is critical.  I mean, I don't know how

21   we -- I think being able to prove that a sexual -- that a

22   touching of a foot in absence of any other information is

23   sexual would be highly difficult without knowing that there

24   has been a prior instance of a sexual interest in feet.  The

25   age is not the issue; the body part is the issue.

26         MR. MADDEN:  I disagree with counsel's analysis,

27   and I stated it in writing.  I might add that my motions in

28   limine were submitted in a timely fashion.  They were given

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   421

1    to the People.  The People filed a response.  The People

2    indicated verbally that they were going to address three

3    issues.  They did it as three issues.  They didn't address

4    two of the issues.  I'm -- if the People want to file a reply

5    or an opposition, that's fine.  I'll file a reply.  But I

6    mean, I'm in total agreement with the Court's initial

7    comments.  This is neither admissible under 1108 or 1101

8    for -- mainly for probative value because of the conduct.

9             THE COURT:  Well --

10            MR. MADDEN:  It's not probative because it involves

11   an adult and it's not illegal conduct.  It's not sexual

12   conduct.

13            MS. FILO:  It is sexually -- it may be sexually in

14   her eyes.

15            MR. MADDEN:  I misstated that.  I didn't mean to

16   say it couldn't be interpreted that way.  I apologize.

17            THE COURT:  I could tell you, I'm not prepared to

18   rule on it this afternoon because I've looked at this and I

19   was trying to work it through my mind.  There was a lot of

20   things happening here.  And I was aware of what happened at

21   the preliminary examination and some of the problems that

22   arose, so I think that I have a pretty clear idea of the very

23   narrow area the People are looking at.  And you're requesting

24   this information specifically under 1101(b) and intent?

25            MS. FILO:  Absolutely, Your Honor.  And again, I

26   have a thorough motion in limine; that the only thing I could

27   think of is that I misfiled it in my own computer system.  I

28   don't know how it didn't get included in my motions to the

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   422

1   Court, so I apologize to both Court and counsel.  And I will

2   go back and find it.  It's in my computer somewhere because I

3   wrote it, but I will get it to the Court.  And we certainly

4   have plenty of time prior to the trial, and I'm happy to

5   defer the ruling on the motion until Your Honor returns.

6         THE COURT:  Because we have so much time, I mean,

7   it sort of benefits you, Ms. Filo.  And I think the word Mr.

8   Madden was looking for when he was speaking was -- I think

9   the sense I got, what he wanted to say, is somewhat

10  frustrated.

11        MR. MADDEN:  Yes.

12        THE COURT:  But I know that these rulings are

13  important to both of you, and I know, Mr. Madden, you don't

14  want to get a preliminary ruling and then I change it.  You

15  want to know where you stand going in, as you do, Ms. Filo.

16  And I think I owe it to both sides to look at this carefully,

17  because, quite frankly, I didn't look at it as carefully as I

18  thought.  I had some concerns based on the same issues Mr.

19  Madden's raised already.

20        MR. MADDEN:  Your Honor, I have no objection to the

21  People having a reasonable amount of time to file an

22  opposition to this, provided I have sufficient time too, and

23  I guarantee you I will file a reply to it.  So we have time

24  to do those things, and I'm happy to do it informally.

25        THE COURT:  Okay.

26        MR. MADDEN:  Without specific dates and times

27  because I know you are going on vacation very soon.

28        THE COURT:  Right.  It sounds --

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   423

1          MR. MADDEN:  We all have lives.

2          THE COURT:  It sounds like Ms. Filo could file it

3    relatively quickly.

4          MR. MADDEN:  It sounds like it's been done.

5          MS. FILO:  It's somewhere.

6          THE COURT:  Soon as you file it, if you could file

7    it with the court in some manner, they will put it in my box.

8    I will have it when I come back.

9          MS. FILO: Certainly.

10          MR. MADDEN:  Ms. Filo -- I'm satisfied with Ms.

11    Filo e-mailing to me when she finds it.  I assume that will

12    be before the end of the week.

13          THE COURT:  Okay.

14          MR. MADDEN:  I will be gone the rest of the week,

15    but I will be back next week.  I could address it.

16          THE COURT:  Then we'll do that and we'll address it

17    when we come back.  We'll be talking about our scheduling

18    when we are done here.

19          The next motion is -- before we move on, I could

20    tell you, I was looking at it as a foot fetish issue.  Quite

21    frankly, I didn't know this involved one particular child and

22    that was the only conduct involved with that particular

23    child.  That, I didn't know.

24          MR. MADDEN:  Well, that's not exactly right, Your

25    Honor.  I mean, there will be testimony of other children --

26    at least two of the three named victims that will indicate

27    that Mr. Chandler put things on their feet that they were to

28    identify right, objects.  So it's not just the child in Count

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   424

1    3.  And I might add, I share -- I mean, although I have been

2    mystified as to why the complaining witness in Count 3 is

3    even there, but that's the People's decision.

4         THE COURT:  Okay.  Anyway, I identified that

5    struggling with the 1101/1108(b) and the issue adult/child

6    are issues there, and I would make every effort to address it

7    as soon as I come back.

8         The next one is motion to exclude evidence related

9    to an incident involving -- excuse me -- this is No. 4,

10   motion to exclude the testimony of Mariam Montgomery about

11   the doors to Mr. Chandler's classroom being locked on one

12   occasion, and I will take any additional comments from either

13   side.  This is the locked door incident, Mr. Madden.

14        MR. MADDEN:  Your Honor, I'm a little bit lost

15   here.  Did Ms. Filo respond to this?

16        THE COURT:  I believe she did.

17        MR. MADDEN:  Your Honor, again, I'm satisfied with

18   my motion itself and with my reply, and I don't want to

19   regurgitate that.  I think my position was clearly stated in

20   both documents.  The second one, taking into account the

21   People's position, I disagree with their position for the

22   reasons stated.  Unless you have a question, I will --. you

23   could address -- Ms. Filo could address you.

24        THE COURT:  Okay.

25        Yes, Ms. Filo.

26        MS. FILO:  Thank you, Your Honor.  The only thing I

27   wanted to point out, the defense has cited *People v. Hines* in

28   its opposition to the People's assertion that this -- well,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   425

1    let me state for the record that the conduct involved is a

2    child who comes to Mr. Chandler's classroom door and is

3    apparently pounding on the door.  The next door school

4    teacher, Mary Montgomery, comes out to hear what the raucous

5    is and asks the child, "What on earth are you doing?"  He

6    says, "Well, the door is locked," then seconds later the door

7    is opened and Mr. Chandler's standing in the doorway.

8          So the question is:  Does the child, him or

9    herself, have to be called in order to explain that, or could

10   Ms. Montgomery's testimony suffice?  And Evidence Code §1241

11   talks about a statement which is explaining conduct.  That's

12   what it is designed to do.  And the defense has cited *People*

13   *v. Hines*.  And in that case the declarant wanted or was

14   trying to testify about a phone conversation, and the

15   specific question was, "Who's there with you?"  And she says,

16   "Williams is here with me."  It's not conduct.  There is no

17   conduct to explain.

18          It's not like he said, Hey, who is making that

19   terrible racket in the background?  Why is your phone all

20   fuzzy, or why do you keep hanging up on me, and she's giving

21   the explanation to explain the conduct.  She's simply

22   answering a question:  Who is there with you?  Williams is

23   here.  So there is no conduct to explain, so the court says

24   no.  That is classic hearsay.  When you just ask somebody a

25   question, they answer it, it's hearsay.

26          This is a very different situation.  This is

27   exactly what 1241 was designed to address, conduct that would

28   otherwise be unexplainable:  Why on earth are you banging on

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   426

1   that door, child?  And he says, "Well, because it's locked."

2   "Oh, okay."  And then the door opens.  So that is exactly the

3   kind of conduct 1241 is designed to address, and I think the

4   case that has been cited for something contrary to that

5   position is inapplicable.

6           THE COURT:  Thank you.

7           Any additional comments, Mr. Madden?

8           MR. MADDEN:  I would indicate that the conduct has

9   been explained and is not an issue in this case.  I've

10  indicated that in both my motion and my reply.  I do believe

11  that *Hines* is fable to the People's position as the reasons I

12  stated.  I will submit it on that.

13          THE COURT:  If I understand the facts and the

14  issues, is that Ms. Montgomery was a teacher who had a

15  classroom next to Mr. Chandler's.  All of the facts are in

16  the moving papers.  It was my understanding that the reason

17  for asking for this particular evidence and the theory by the

18  People was that Mr. Chandler would have his classroom door

19  locked during regular school hours, which is during the

20  period of times that the alleged misconduct with the children

21  occurred.  It would seem that that would be relevant.

22          Pursuant to Evidence Code 1241, primarily, and the

23  circumstances of this incident, the Court will allow

24  Ms. Montgomery to testify about this incident.  The Court

25  believes that the relevance in knocking on the classroom door

26  is to gain entrance into a locked classroom.  Simply knocking

27  on the door in the Court's opinion is ambiguous without the

28  contemporaneous by the student.  There could be a lot of

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   427

 1    reasons why he's knocking on the door:  Giving notice that

 2    he's going to come in.  Maybe not allowed to enter the

 3    classroom without first knocking.  So it's in my opinion

 4    ambiguous without the statement.

 5            So for those reasons, the evidence will be allowed

 6    over the defense objection.  And this is another in limine

 7    motion, Mr. Madden, will be continuous throughout the trial

 8    and you will not have to interject and object when the

 9    testimony occurs, unless you wish to do so.  And your

10    objection will be noted at that time, in any event.

11            MR. MADDEN:  Thank you, Your Honor.  I appreciate

12    that courtesy.

13            THE COURT:  You are welcome.

14            The next motion is the defense objection to the

15    People's expert relating to grooming.  This is an interesting

16    area for me, and I do have some questions.  Maybe if I just

17    state my comments and concerns and confusions, maybe Ms. Filo

18    or Mr. Madden, or probably Ms. Filo initially, you could

19    address them.  There is a lot going on here.

20            I did review the cases cited by Ms. Filo, and

21    generally grooming seems to suggest that it is the gaining of

22    trust, the selection of specific victims, and the normalizing

23    of the behavior.  At least some of the cases that I reviewed

24    mentioned by the People seem to involve individuals that were

25    generally desensitizing the child to inappropriate behavior,

26    targeting select or specific children, and eventually getting

27    the child to agree or consent to certain behaviors or sexual

28    acts, obviously with their knowledge, and then getting the

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   428

1   child to agree not to tell.  So it seemed like there was --

2   grooming seemed to address, you know, getting the trust,

3   picking a specific individual, gradually getting them to

4   agree to the sexual conduct.

5            Here, it was a little unclear to me because we have

6   a different situation that I didn't see, because we have Mr.

7   Chandler who is a teacher who is in a position of trust.

8   That's not to say that a fact-situation like that would not

9   involve that person in that position selecting certain

10  children and then gaining more trust to be involved in that

11  particular activity.

12           In a sense, I see this as, you know, children are

13  being blindfolded, are being tricked into certain behavior,

14  but at the same time, I think that you have to get the

15  children's trust to agree to this type of behavior.  I don't

16  know if they had a choice under the circumstances because

17  this is the teacher, and I'm not sure if there was any

18  situation going on, where after the tidbit occurred, Don't

19  tell anybody what's going on.

20           So I'm not sure what the People are requesting,

21  whether their expert will be talking about generally what

22  grooming is and the factors and how it applies in our

23  particular case.  I can say that some of the points Mr.

24  Madden brought up, and I think in his motion he actually

25  labeled them one through five --

26           MR. MADDEN:  That's correct, Your Honor.

27           THE COURT:  Let's see --

28           MR. MADDEN:  On page 11 on my reply.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   429

1    THE COURT:  I don't -- I had it here somewhere.

2  But general reference to some of the points you raised.  As

3  you both know, the jury doesn't need to be wholly ignorant of

4  the subject matter of opinion to justify its admission.  Even

5  though the jury has knowledge of the matter, the expert's

6  opinion may be admitted whenever it's to the jury.  And in

7  this type of area we're talking about expert opinion based on

8  special training and experience.

9    So those are the areas I'm a little concerned with.

10  Ms. Filo, I'm thinking what I'm going to need from you is a

11  detailed offer of proof and what you would present and how it

12  is relevant in our case because I don't have a lot of

13  information.  But since we have so much time before the

14  actual evidence, it gives me the luxury to ask for that.  I'm

15  not saying I'm excluding it, but I want to make sure I feel

16  comfortable, that if I do allow it, it's appropriate.  And so

17  those are the -- this isn't a classic grooming case, at least

18  from what I read in cases.  It's very different.

19    MS. FILO:  Your Honor, I guess what I should say is

20  this.  The proposed expert is Robert Dillon.  He's a

21  detective with the San Jose Police Department who specialized

22  in child exploits and has done hundreds and hundreds of child

23  sex assault cases.  And one of the things I have been very

24  careful to do, the case law instructs me, is not to give him

25  any real specifics about our particular fact-pattern because

26  I think that that's inappropriate and I don't think that Det.

27  Dillon is entitled to say the behavior that Mr. Chandler

28  engaged in on this occasion or that occasion constitutes

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   430

1    grooming.  I think that's what the case law really says he

2    cannot do.

3          I agree with the Court, that it is a little bit

4    unique in this situation, and I think I have to be able, and

5    the jury has to be able, to understand.  And I think it is

6    disabusing jurors of the notion that if you sexually assault

7    a child, or four children, or five children, that you are a

8    rampant pedophile that will assault every child in arm's

9    reach.  Particularly, when I see Mr. Madden's witness list

10   that has 35 children on it, I think there is going to be some

11   attempt to say, you know, all of these children engaged in

12   this behavior, why is it just these five?  Why would just

13   these five be singled out by Mr. Chandler?

14         And so I think that the process of grooming in the

15   traditional sense by the creepy old neighbor in the alleyway

16   to entice children, give them gifts to gain their trust, Mr.

17   Chandler was able to skip that step.  But there is a process

18   by which a selection occurs, which victims are going to be

19   safe:  How am I going to be able to escape detection?  Which

20   are the leaders in the classroom or not the leaders in the

21   classroom?  Who have parents that are non-English speakers?

22   Those kinds of issues that really occur in a selection

23   process.

24         How do we desensitize or how would someone

25   desensitize a child to behave such that it would become

26   normal, which is exactly what the Court talked about.  That,

27   I think, is what the People are intending to use Det. Dillon,

28   to discuss how someone who wants to commit this type of crime

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   431

1    would desensitize and select a victim from a world of

2    victims.  I mean, you have a county of them, a city of them,

3    you know, a neighborhood of them, a classroom of them.  No

4    matter how big or small that universe is, each offender has

5    to choose a victim.  How is that process done and why?  And

6    what do you do to accomplish that?  And that, I think, is

7    really the focus of Det. Dillon's proposed testimony.

8         THE COURT:  Okay.  And I think that's very helpful,

9    because the moving papers were rather just general about

10   grooming, and, quite frankly, it wasn't very helpful.  I

11   mean, at least identified the issues.  What I'm going to

12   request, Ms. Filo, because this again is important to both of

13   you, is to prepare something in written form to present to

14   the Court real narrowly what you are hoping to present, and

15   the fact that it's just general and how it factors into this

16   particular case.  And give Mr. Madden an opportunity to see

17   what your offer of proof is and responding.

18        MR. MADDEN:  If I could respond?  Thank you, Your

19   Honor.

20        THE COURT:  Yes.

21        MR. MADDEN:  First of all, as stated in my motion,

22   there really is no California law on this subject.

23        THE COURT:  Right.

24        MR. MADDEN:  This is really the latest evolution

25   and -- along the line of the prosecutor's attempt to bring,

26   in my opinion, especially in this county, non-expert

27   witnesses to talk about syndromes that are very questionable.

28   There is no California law.  There are two federal cases, and

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   432

1   they are interesting for a couple of reasons, as I pointed

2   out.  One allowed it, one does not.  One, however, was --

3   well, one allows it and one would not, but both allowed the

4   same witness, which is interesting.  The analysis was really

5   quite good.

6           One of my real concerns about expert testimony in

7   this area is that this man, Rob Dillon, is not an expert.

8   He's an experienced officer.  Not a sergeant.  Not a

9   lieutenant.  Not a captain.  I don't believe he works in

10  sexual assaults any longer.  I believe he's in patrol.  I

11  could be wrong about that, but I think that's where he is.

12  He's not familiar, I'm assuming, as I indicated in my motion,

13  with any of the scientific literature on grooming.  There is

14  a body of literature on it.  It's a body of literature that

15  is unformed.

16          There is scientific agreement about what it is and

17  what it isn't.  I addressed those points with respect to Dr.

18  O'Donohue's position, who is a scientist, who is a

19  psychologist, who is an expert, who has written.  It will be

20  one thing if they are bringing in someone who is qualified

21  from an academic standpoint who is familiar with the

22  scientific literature, but they aren't.  They are talking

23  about an officer who had 15 to 25 hours of whatever they get

24  in the academy, plus his experience during the three years.

25  And then they march somebody in, they talk about general

26  things.  They can't know the facts of the case.

27          I'm offended by it.  I always have been.  And for

28  the reasons that I stated, this is not helpful at all, and,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   433

1  in fact, isn't agreement in the scientific community about

2  what grooming conduct is.  You could have certain conduct

3  that's identical conduct, which is grooming for one man, not

4  for another.  Obviously, a school teacher who has access and

5  in the presence of children every day, who could have no

6  sexual interest in children will show all of these, quote,

7  grooming factors by virtue of the fact he's their teacher.

8           It's bootstrapping of the highest order and it's

9  very troubling to me and it doesn't really tell the jury

10  anything.  It could be argued by the People -- they are going

11  to argue it, they have a right to argue it, but to bring in a

12  non-qualified expert to talk about it is wrong and it

13  shouldn't be allowed.

14           THE COURT:  Thank you, Mr. Madden.

15           What is actually the case -- some of the cases I

16  read which concerned me, but apparently the courts allowed

17  it.  In those cases, they allowed the expert to go that next

18  step and hypotheticals and identify certain factors.  In this

19  particular case, if it's consistent with grooming, I think

20  that was occurring with those cases.  Again, I haven't made a

21  final decision on this, but I would like additional

22  information and I'll rule on that before or as soon as I can

23  when I return.

24           MR. MADDEN:  Will I be given an opportunity to

25  reply to that?

26           THE COURT: Absolutely.  Absolutely.  That's

27  another reason, Mr. Madden, that's why I'm asking Ms. Filo to

28  put in written form with the detailed offer of proof what you

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   434

1   are hoping to present through this particular expert witness.

2   And once I get the response, I will rule, you know, as soon

3   as possible.

4           MR. MADDEN:  Your Honor, with respect to this one,

5   since the People have not written their opposition, I want to

6   give the People a reasonable amount of time, could we get a

7   date?

8           THE COURT:  Ms. Filo.

9           MR. MADDEN:  That would be reasonable.

10          MS. FILO:  Judge, I should be able to have it

11  within a week or so.

12          THE COURT:  Let's say --

13          MS. FILO:  The 18th, maybe?

14          MR. MADDEN:  On or before the 18th.

15          THE COURT:  You comfortable with that, Mr. Madden?

16          MR. MADDEN:  Sure.

17          THE COURT:  You file your response on or before

18  June 26th.  I selected that date because I will be back that

19  day.

20          MR. MADDEN:  Okay.  That's a Wednesday?

21          THE COURT:  Yes, June 26th.

22          MR. MADDEN:  Should we -- okay.  Maybe that Friday

23  we should --

24          THE COURT:  Right.  We'll talk about a date when

25  we're done this afternoon.

26          MR. MADDEN:  Okay.

27          THE COURT:  But I'm going to want to meet with

28  counsel that week sometime to just finalize the jury

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   435

1  selection process and stuff.  And although I'll be back

2  Wednesday, I may or may not be ready to rule on Friday, but

3  we'll talk about it.

4          MR. MADDEN:  Okay.

5          THE COURT:  Okay.  I think those are all Mr.

6  Madden's motions.

7          MR. MADDEN:  I have some other things to talk

8  about, but I will be happy to discuss that in chambers.

9          THE COURT:  Okay.

10         MR. MADDEN:  Just to alert Ms. Filo and sort of a

11  laundry list of things that have to be resolved.

12         THE COURT:  Okay.

13         MR. MADDEN:  Quasi-motions in limine.

14         THE COURT:  Then I just want to touch on Ms.

15  Filo's.  She had some motions in limine in her initial brief

16  she filed after her witness list on page 9.  She has the

17  statement of the children describing acts pursuant to 1360,

18  and we already addressed grooming.  So that's the only

19  additional one, Ms. Filo, is the 1360 issue you put in your

20  in limine motions.

21         MS. FILO:  That was it, Your Honor.

22         THE COURT:  Okay.

23         Mr. Madden, do you have any response to that?

24         MR. MADDEN:  No, Your Honor.  I think that

25  statements are admissible under 1360.  I assume the People

26  are going to play the audio/videotapes and provide

27  transcripts to the jurors?

28         MS. FILO:  Your Honor, generally the way I do it

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   436

1    is -- yes, I have the transcripts available to the jurors.  I

2    have now done this, I don't know, more times than I could

3    recall, and my only frustration with doing that, and I

4    understand it's a local Rule of Court, but my experience has

5    been that they literally read through the transcript and pay

6    no attention to what's on the screen.

7          So certainly if the Court would permit it, I would

8    much rather play the video and simply make the transcript

9    available to them afterwards.  I don't know how the Court

10   wants to do it, but I just am -- I've just seen it time and

11   time and time again, where they insist on reading the

12   transcript and will not even look at the video and --

13         THE COURT:  The video is the interview?

14         MS. FILO:  Correct.

15         MR. MADDEN:  Well, I disagree with Ms. Filo.  I

16   think it's helpful having both simultaneously.  Not only that

17   it's in evidence, should they need to see it in

18   deliberations, that's theirs to see.  I don't see that as a

19   big problem.

20         THE COURT:  If there is any objection, I could

21   request the jurors that:  You have the transcript.  This is

22   going to be in evidence.  You will have it for you during

23   deliberations.  I'm going to ask all of you to -- as we do

24   with the witnesses -- to watch the interview and I could make

25   that suggestion, because I do think it's important.  The

26   video is in evidence as well.

27         MR. MADDEN:  Yeah, it will be.  Not only that, the

28   transcript itself is not evidence.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   437

1          MS. FILO:  So, I mean, this is what I find sort of

2    ironic about the whole thing, is that the video or the tape

3    itself, the recording, is supposed to be the evidence.  It

4    has always been the practice, and the jurors prefer, they

5    don't want to look back at the video.  They want to look at

6    the transcript in the deliberation room.  I'm always happy if

7    they get both.  That's fine with me.  If the Court would be

8    willing to give some sort of -- almost like a note-taking

9    admonition to the jury, which simply says that the transcript

10   is there to assist them as they review the video, but really

11   it is the video that they need to be watching, and that we

12   are presenting that testimony to them as if it were a live

13   witness.

14         THE COURT:  Well, I feel comfortable with that

15   because that is the evidence.  See, I wasn't aware of the

16   video.  I wasn't sure if it was just tape recorded, and in

17   that sense, the transcript is a very important aid.

18         MS. FILO:  Absolutely.

19         THE COURT:  Whereas, you are visually watching it,

20   it's just a little different.

21         MR. MADDEN:  Some are only audio recorded; some are

22   video recorded.

23         THE COURT:  Okay.  With the video recorded, I don't

24   have a problem with that because that is the evidence.  With

25   the audio, no, because there I'm not going to have them place

26   your thing down and listen, because the transcript with only

27   audio is very helpful because you could hear the inflection

28   in the voices and what have you.  But when you have a visual,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   438

1   it's important to see and hear both.

2          MS. FILO:  I completely agree with Your Honor.  And

3   so I just want to make sure I understand Mr. Madden's

4   position, are we stipulating to the admissibility?  Normally

5   we could have to conduct a hearing outside the presence of

6   the jury to determine a time, place, and content which

7   suggests reliability.  I want to make sure that --

8          MR. MADDEN:  I would like that to occur.  I would

9   like a foundation to be established, but I'm not anticipating

10  you have difficulty doing that.

11         MS. FILO:  Because what I would rather do, I don't

12  want to do that if the Court would permit me, I would hope

13  not do that during the trial.  I'm not sure how to --

14         THE COURT:  Well, there is a couple of ways of

15  doing it.  You know, it's probative for a foundation to be

16  laid, but if you could demonstrate to Mr. Madden that you

17  will lay the foundation and you have the evidence to support,

18  the easiest thing is that we're agreeing to a stipulation

19  because then that's simple and very quick.

20         MS. FILO:  Because I believe there were -- I think

21  there were four officers.  It may be only three.  There are

22  either three or four officers who are interviewed in the

23  different interviews.  I would need the better part of the

24  morning in order to bring one of them in and have them lay

25  that foundation.  I want to build that into our schedule, if

26  that's necessary.

27         THE COURT:  That's not a problem.  I'm thinking

28  that if you meet with Mr. Madden, and, you know, obviously

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   439

1    you have the witnesses to lay the foundation.  If he feels

2    comfortable with it, as long as there is a stipulation for

3    some sort of foundation so it has some meaning to the jurors,

4    the date so she -- with the date, the time, the place, and

5    all that.  My main concern is that the jurors have a

6    reference point to what they are about to hear.  And if we

7    could do it by way of stipulation, I think that's very

8    efficient.  I mean, it doesn't add or take away from the

9    trial, but it's something I'm hoping you and Mr. Madden could

10   work out.  And if not, we will set aside a morning for you to

11   do that.

12          MS. FILO:  Okay.

13          THE COURT:  I'm pretty flexible about that.  We're

14   going to go off the record for a minute.

15          (Whereupon, there was a discussion off the record.)

16          THE COURT:  We'll go back on the record.  I forgot

17   to mention that counsel and the Court discussed counsel

18   re-filing all of their motions and stipulating that the

19   re-filing of these we could make as originals.  And the

20   reason the Court is making this request is because on the

21   originals I inadvertently used them as my working copy and

22   wrote all over them.  And my understanding is counsel feels

23   comfortable with doing that and we will substitute.  The

24   newly filed motions are identical to everything that has been

25   filed as originals.  Correct, Mr. Madden?

26          MR. MADDEN:  Yes, Your Honor.  And so the record is

27   clear, what I did is that I got clean copies of my motions

28   without any of the attachments and the motions themselves,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   440

1  the five I've given you, and I'm satisfied with -- we'll

2  stipulate they could be substituted for the original.

3          THE COURT:  Thank you.  We have the original

4  attachments and we will attach it to the originals.  You

5  agree with that as well, Ms. Filo?

6          MS. FILO:  Absolutely.

7          THE COURT:  I didn't specifically rule that the

8  People's motion under 1360 is granted as well.

9          MS. FILO:  Thank you.

10          THE COURT:  We'll be in recess.  When you are

11  ready, Mr. Madden, we could go into chambers.

12          MR. MADDEN:  Thank you, Your Honor.

13          (Whereupon, the Court recessed.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   441

1  STATE OF CALIFORNIA      )
                            )
2  COUNTY OF SANTA CLARA    )

3

4          I, JAMIE L. MIXCO, HEREBY CERTIFY THAT:

5          The foregoing is a full, true, and correct

6  transcript of the testimony given and proceedings had in the

7  above-entitled action taken on the above-entitled date; that

8  it is a full, true, and correct transcript of the evidence

9  offered and received, acts and statements of the Court, also

10 all objections of counsel, and all matters to which the same

11 relate; that I reported the same in stenotype to the best of

12 my ability, being the duly appointed and official

13 stenographic reporter of said Court, and thereafter had the

14 same transcribed into typewriting as herein appears.

15         I further certify that I have complied with CCP

16 237(a)(2) in that all personal juror identifying information

17 has been redacted if applicable.

18

19         Dated:

20

21                         _____

22                         Jamie L. Mixco, C.S.R.
                           Certificate No. 12708
23

24 ATTENTION:
   CALIFORNIA GOVERNMENT CODE
25 SECTION 69954(D) STATES:

26 "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A TRANSCRIPT
   MAY, WITHOUT PAYING A FURTHER FEE TO THE REPORTER, REPRODUCE
27 A COPY OR PORTION THEREOF AS AN EXHIBIT PURSUANT TO COURT
   ORDER OR RULE, OR FOR INTERNAL USE, BUT SHALL NOT OTHERWISE
28 PROVIDE OR SELL A COPY OR COPIES TO ANY OTHER PARTY OR
   PERSON."

# EXHIBIT 3
# (Vol. 4)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   442

TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


---o0o---


THE PEOPLE OF THE STATE OF      )
CALIFORNIA,                     )
                                )
      Plaintiff - Respondent,   )
                                )
      v.                        )      No. C1223754
                                )
CRAIG RICHARD CHANDLER,         )
                                )
      Defendant - Appellant.    )
_____ /

COPY


VOLUME 4

PAGES 442 - 467

JUNE 28, 2013


---o0o---


REPORTER'S TRANSCRIPT ON APPEAL
FROM THE JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY


---o0o---


APPEARANCES:


FOR PLAINTIFF-RESPONDENT:      OFFICE OF THE ATTORNEY GENERAL
                               BY:  KAMALA D. HARRIS,
                               Attorney General of the State
                               of California

FOR DEFENDANT-APPELLANT:       In Propria Persona

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   443

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             IN AND FOR THE COUNTY OF SANTA CLARA

3       BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

4                     DEPARTMENT NO. 37

5
                         ---o0o---
6

7    THE PEOPLE OF THE
     STATE OF CALIFORNIA,              )
8                                      )
                     PLAINTIFF,        )
9                                      )     CASE NO.   C1223754
          v.                           )
10                                     )
                                       )
11   CRAIG RICHARD CHANDLER,           )
                                       )
12                                     )
                     DEFENDANT.        )
13   _____/

14

15
                         ---o0o---
16

17           REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                     JUNE 28, 2013
19

20
                         ---o0o---
21

22

23
     APPEARANCES:
24
     FOR THE PEOPLE:              ALISON FILO
25                                Deputy District Attorney

26
     FOR THE DEFENDANT:           BRIAN MADDEN
27                                Attorney at Law

28   OFFICIAL COURT REPORTER:     JAMIE L. MIXCO
                                  C.S.R. No. 12708

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   444

1   San Jose, California                        June 28, 2013

2                          PROCEEDINGS

3          THE COURT:  Thank you, ladies and gentlemen.

4   Welcome to Department 37.  Thank you for your patience.  I'll

5   call matter of the People v. Chandler, and I'll note that Mr.

6   Madden is present with his client, Mr. Chandler, and Ms. Filo

7   is present on behalf of the People.

8          We're here this morning to address some additional

9   in limine motions.  As I recall, the Court needs to rule on

10  two specific issues that remain:  The issue regarding

11  grooming and the issue regarding Ms. Keller.  I will note --

12  well, before I go forward, I'll let both counsel know that

13  I'm prepared to rule.  But if counsel has any additional

14  comments they wish to make, I will listen to anything else

15  you have to say.

16          Ms. Filo?  Mr. Madden?

17          MR. MADDEN:  Let me start with this, Your Honor.

18  I'm sure you have all of the documents.  Just so I'm

19  comfortable, if we address the issue of the grooming motion

20  in limine first, the Court of course has my motion in limine.

21  The People filed a supplemental brief, which I assume the

22  Court has seen and reviewed and the Court -- I filed on the

23  24th my reply to the People's supplemental brief.  I'm

24  assuming the Court has had an opportunity to see and review

25  that.

26          Additionally, with respect to the Helen Keller

27  motion -- Hilda Keller.  That won't be the last time I make

28  that mistake.  We have my motion, then we have the People's

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   445

1   opposition to the motion, and my reply to the People's

2   opposition.  So the Court has read and reviewed all of that?

3         THE COURT:  Yes.

4         MR. MADDEN:  All right.  I would like to say a

5   couple of things.  If I could impose on the Court, perhaps,

6   to take up the grooming testimony first.  I re-read all of

7   the papers yesterday afternoon, last night, and this morning.

8   And most importantly, I went down and re-read quite carefully

9   the *Raymond* case, the federal case that's extensively cited

10  in my motion in limine.  I submit to the Court that the

11  *Raymond* case is as thoughtful and as a complete and accurate

12  assessment of the issue of a police officer testifying about

13  the subject of grooming.  It could not be more specific.  It

14  was incredibly well-thought-out, well-researched, and

15  well-written.  I know the Court has read that case.

16        As far as I'm concerned, as the Court knows,

17  Officer Lanning, or Det. Lanning, whoever it is, the title,

18  was not allowed.  His testimony was found to be inadmissible

19  in the *Raymond* case.  And I submit to the Court that that

20  federal officer, although not a scientist, not a

21  psychologist, was sort of in the same -- not sort of, but in

22  the same position as the proposed expert, Officer Dillon.

23  Both are police officers.  Officer Dillon's police

24  experience, writing experience hails in comparison to Officer

25  or Det. Lanning.

26        To my knowledge, Officer Dillon has written

27  nothing.  He has never been published, no articles,

28  peer-review, or otherwise.  And he's not going to be like

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   446

1   Officer Lanning.  He's not going to be testifying about the

2   facts of this case, but just the general subject of, quote,

3   grooming.  So I think that the Lanning case is the beginning

4   and the end of the analysis, and that's the spine of my

5   position.  I'm not going to repeat any of the other arguments

6   that I made.

7          I will say one other thing about grooming, then I

8   will move on to the other.  I'll make this comment, and I

9   addressed it in the reply.  The Court, when we were last in

10  court, wanted a detailed offer of proof why it's relevant in

11  this case from the People.  I submit the Court did not get a

12  detailed offer of proof.  It got a few sentences of

13  generalities, of conclusions.  I don't think it's what the

14  Court was talking about, and I don't think the People gave

15  that to the Court because they forgot to, it's just they

16  couldn't.

17         For purposes of this case, Officer Dillon is not an

18  expert.  He may be an expert as Officer Lanning was in the

19  *Raymond* case, in terms of helping teach other police officers

20  and prosecutors how to detect or prosecute child molesters,

21  but he's not an expert in terms of being able to testify

22  about the subject of grooming for all of the reasons stated

23  in my brief, which I will not repeat here.

24         And I might add on this subject, I believe the

25  People failed to address three of the five reasons, any one

26  of the five will preclude this expert -- purported expert

27  from testifying, and the People did not address three of the

28  five.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   447

1          Concerning Ms. Keller, I'm prepared to submit the

2    matter on all of my moving papers, unless the Court has any

3    specifics.  But again, I went into great detail as to each

4    and every reason why Ms. Keller should not be allowed to

5    testify.

6          One point I would like clarified, it's not clear

7    from the papers, but the People referred to three statements

8    of Ms. Keller.  And I have indicated it appears to me from

9    the moving papers that what is at issue is the one statement

10   concerning the feet.  And I would like to hear -- get

11   confirmation from the People if that's their position,

12   because I only addressed that issue for the reasons I stated.

13         So as I stated in my conclusion, the statements to

14   Ms. Keller have no tendency and reason to support the

15   requisite intent.  The acts and intent described in those

16   statements are not similar to those of the charged offense.

17   The evidence is prejudicial and confusing and there is danger

18   the jury will use the evidence for an improper purpose.

19         I will submit the matter, Your Honor.

20         THE COURT:  Thank you, Mr. Madden.

21         Ms. Filo, any comments?

22         MS. FILO:  Just briefly, Your Honor.  I didn't -- I

23   did receive Mr. Madden's reply to our supplemental briefing,

24   and I do have a few comments, including those that he's made

25   today.

26         With respect to the grooming, what Mr. Madden has

27   referred to almost throughout his paperwork, and again in his

28   discussion today, is that Det. Dillon is not an academic.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   448

1  I'm going to concede that.  That's not necessary to make one

2  an expert.  We call law enforcement officers as experts in

3  drug recognition or symptoms.  They are not peer reviewed.

4  They don't write literature about it, but they are experts

5  because they are out there on the street.

6       And what he's talked about in his motion is that

7  that's an area of expertise for someone who is a psychologist

8  or professor of psychology, someone like Dr. O'Donohue.

9  Someone who spends most of his professional time studying the

10  sexual abuse of children.  I can't think of anybody who fits

11  that definition better than Det. Dillon.  After that, it's

12  all about what has he read, what studies has he read, what

13  literature has he read.  I don't think the answer to that --

14  I think the appropriate way to address it is to voir dire it

15  through qualification of him or through a 402 hearing.  We're

16  happy to indulge either of those hearings, if that's at

17  issue.

18       If it's just Mr. Madden who disagrees with the idea

19  that law enforcement could be an expert on human behavior,

20  particularly this kind of human behavior, what he's saying

21  is:  I have a real expert on that topic.  Then put him up.

22  He's already retained.  We disclosed the existence of this

23  expert well in advance of the trial.  He has a competing

24  expert, we have this situation all of the time.  You think

25  your expert is better than our expert, they are both entitled

26  to testify.  So I guess I would just say that there is

27  nothing about Det. Dillon's experience or expertise that's

28  insufficient other than he's not an academician.  And in my

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   449

1  humble opinion, I will take that expertise every time.

2         Lastly, with respect to Hilda Keller, I guess I

3  wasn't quite sure again what Mr. Madden was suggesting.  The

4  three conversations that I listed in my papers were the three

5  conversations that she specifically referenced in the police

6  report.  I cannot imagine that that is the sum total of what

7  made her feel so uncomfortable, why she would have put in for

8  a transfer, why she felt like Mr. Chandler's behavior towards

9  her was so offensive and was so sexually motivated, that she

10 ultimately sought relief from her employer.

11        So again, I think the appropriate way to address

12 that is through a 402 hearing so that we could figure out

13 what the sum total is of that testimony, and if necessary,

14 limit it or tailor it.  But I want to be clear that I don't

15 think it's appropriate to limit the scope of that testimony

16 to one comment about feet.  That doesn't address the concern

17 that we have.  The concern we have is, what is Mr. Chandler's

18 intent when he talks about those things?  And that is the

19 subject of the motion.

20        THE COURT:  Okay.  Did you have a response or

21 comment, Mr. Madden?

22        MR. MADDEN:  Your Honor, I'm perplexed.  Is

23 Ms. Filo suggesting that admissible -- the testimony of the

24 alleged sexual harassment of Ms. Keller is admissible in this

25 trial?  She can't be suggesting that.  It clearly is not.

26 But I'm having a hard time understanding.  Sounded like she's

27 reserving the right to see how things unfold.  Let's see how

28 it works out.  Plain and simple, an allegation of sexual

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    450

1    harassment, even a finding of sexual harassment in 2005 of

2    another adult woman has no relevance or bearing in a child

3    molestation prosecution.  The only snidbit that the People

4    should be talking about, and I think that's all they are

5    talking about, but they don't seem to have the ability to

6    admit it, is that specific comment about the feet.  And

7    that's what I addressed in my comments too.

8              Just so the record is clear, and I know that it is

9    and I'm being redundant.  If the Court will indulge me, I

10   would appreciate it.  The problem with Officer Dillon as an

11   expert is that the People have chosen not to use a qualified

12   expert, but to use an officer who is not qualified to testify

13   about these things.

14             From *People v. Raymond*, this is from page 5 of my

15   initial motion to exclude the grooming evidence, starting on

16   page 10 of my brief, starting with the words "in this

17   regard."

18             The court was troubled by the fact that Lanning

19   said that his information and opinions were based on his

20   acquired knowledge and expertise.  The court found this

21   insufficient to support a fair assessment of the data used or

22   the reliability of Lanning's opinions.  The court was also

23   troubled by any lack of benchmark regarding the frequency of

24   the specific grooming behaviors by the absence of any

25   discussion of false positives, by the absence of any

26   discussion of cases in which grooming behavior is present,

27   but there is no crime, and by the lack of any objective way

28   to test or challenge Lanning's opinion.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   451

1    The court concluded that, quote, for courtroom

2    evidentiary purposes, as far as the record shows, Lanning's

3    categorization of behavioral characteristic of child

4    molesters and child victims is the subjective conclusionary

5    approach that cannot -- reasonably cannot be reasonably

6    assessed for reliability.

7    The court further concluded that the government had

8    not shown that Lanning's testimony would reliability assist a

9    jury in understanding the evidence or determining a fact in

10   issue.

11   In addition, the court concluded that Lanning's

12   testimony carried a severe risk of unfair prejudice because

13   the jury could make a quick and justified jump from Lanning's

14   expert testimony about behavioral patterns to guilt in a case

15   that shows similar patterns.

16   Furthermore, the court concluded that many of

17   Lanning's opinions are actually common sense observations

18   that the government can simply argue in closing.

19   Your Honor, that case is on all fours with this

20   case, and Lanning was a far more qualified witness than

21   Officer Dillon.  Thank you.

22   THE COURT:  Thank you, Mr. Madden.  I'll just note

23   that at least on these two particular issues, I did review

24   all of the moving papers from the initial moving papers that

25   were filed that addressed this issue, and then all of the

26   subsequent specific points and authorities that were filed

27   relating to these particular issues.

28   One thing that you raised, Mr. Madden, that I don't

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   452

1    think had specifically been discussed or raised before, at

2    least from the cases I recall, the witnesses that -- the

3    proposed witnesses and the experts concerning grooming also

4    testified about or were requesting to testify about the

5    particular facts of the case.

6            MR. MADDEN:  I'm sorry.

7            THE COURT:  It seemed like they were being asked

8    questions about the specific facts of the case that they were

9    being called as a witness, giving hypotheticals and what have

10   you.

11           MR. MADDEN:  Not in *US v Raymond* was just like

12   this.  They were going to basically be testifying to

13   something that has come to be called profile evidence and

14   used in various ways by the People throughout the decades.

15           THE COURT:  Right.

16           MR. MADDEN:  But in *Raymond*, the subject matter of

17   the testimony was exactly as it is proposed in this case, not

18   to talk about the specifics of this case.  In the same way

19   that in Raymond, Lanning was not proposing to talk about the

20   specifics of that case.

21           THE COURT:  Right.  One of the concerns was

22   profiling; correct?

23           MR. MADDEN:  Yes.

24           THE COURT:  In any event, let me rule on these two

25   issues.

26           Concerning grooming, I have read, as I said, and

27   considered all of the points and authorities that have been

28   filed, as well as taken into consideration all comments that

1  counsel has made this morning and on prior occasions.  I have

2  spent a substantial amount of time considering this motion.

3  The issue of grooming as it relates to this specific case is

4  a concern for the Court because of the limited information

5  provided concerning this area, the lack of cases addressing

6  this area, the apparent lack of any published cases in

7  California addressing this area, and the unique facts in this

8  case.

9        I will make some preliminary comments concerning

10  some of the issues raised before I rule.  First, the jury

11  need not be wholly ignorant of the subject matter of the

12  opinion to justify its admission.  Even if the jury has

13  knowledge of the matter, expert opinion may be admitted

14  whenever it will assist the jury.

15        The expert testimony proposed by Det. Dillon in the

16  area of grooming will be based on his special training and

17  experience.  It appears to this court a sufficient foundation

18  could be laid based on information provided.

19        Returning to the limited cases in this area, they

20  generally involve an individual getting the trust of a child

21  and then slowly desensitizing the child to inappropriate

22  behavior, targeting or selecting specific children, and

23  eventually getting the child to agree or consent to certain

24  sexual conduct with their knowledge and then getting the

25  child to agree not to tell.

26        Our fact situation does not fall into the classic

27  grooming cases as described in the cases.  As the People

28  state in their motion, although grooming is generally

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   454

1  described as a process of gaining a child's trust, the

2  situation in the instant cases is slightly more sophisticated

3  because the victims' abuser was a teacher, as such, he did

4  not necessarily have to gain their trust because he was in a

5  position of trust.  He was able to direct them to submit to

6  misconduct without the necessity of gaining trust.  He also

7  did not have to seduce or manipulate the victims in

8  cooperating or consenting.  He essentially directed them as a

9  teacher in a position of authority to engage in the conduct

10  or exercises occurring.  He deceived or tricked the children

11  into participating in the inappropriate conduct.

12          It seems the children may have complied because the

13  defendant was in a position of authority, although it would

14  seem that some level of trust had to be established, so that

15  if the conduct became uncomfortable, a child did not pull off

16  the blindfold or item that prevented them from seeing.

17          It appears this evidence would be to some degree

18  relevant.  This case or fact situation does not fall into

19  your classic grooming scenario.  Assuming it is relevant in

20  this case, conducting a 352 analysis, balancing the probative

21  value and the prejudicial impact, confusing or misleading the

22  jury in an undue consumption of time, the Court at this time

23  is not going to allow Det. Dillon to testify in the area of

24  grooming.

25          As with many pretrial rulings, once the People have

26  presented a substantial portion of their case in chief, based

27  on the evidence presented through both direct and

28  cross-examination, Ms. Filo, if you believe the Court should

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   455

1   reconsider and allow Det. Dillon to testify based on the

2   state of the evidence, bring it to my attention.  Or, at the

3   conclusion of the defense's case, if you believe you should

4   be allowed to call Det. Dillon as a rebuttal witness, you

5   obviously may make that request at that time.

6          I wish in this particular matter I could make a

7   firm ruling, but as the evidence is presented and I get more

8   information about the case, both through direct and cross, I

9   may reconsider it.  I'm not saying I will change my ruling,

10  but as Ms. Filo suggested in her points and authorities, at

11  one point she argued that based on the case she expects the

12  defense to present, then she should be allowed to rebut it

13  with Det. Dillon.  That may be the case.  I don't know, but

14  at this point, this is the Court's ruling.  So obviously,

15  neither counsel will make any reference to it unless they

16  approach the Court and I make a ruling.

17         This reminds me, I should say this also, I would

18  anticipate that if we reach this point, I would set a time to

19  have a 402 hearing before Det. Dillon will be allowed to

20  testify.  So that's the ruling on that particular area.

21         Concerning Ms. Keller, I have read and considered

22  the motions filed by both parties relating to the testimony

23  of Ms. Keller, as mentioned earlier.  As with the grooming

24  issue, I have spent a substantial amount of time considering

25  whether to allow or exclude Ms. Keller's testimony and have

26  conducted a 352 analysis.  You both raised valid points why

27  or why not her testimony should be allowed.  I find that

28  Ms. Keller's testimony is relevant concerning the defendant

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   456

1   coming around and contacting her at various points and how

2   she felt about those contexts; specifically, item number one

3   in the People's motion is relevant.  Item one states:

4   　　　　　Chandler came to Ms. Keller's classroom while she

5   was alone.  He shut the door behind him.  He asked if he

6   could take pictures of her toes for a massage class that he

7   was taking.  He asked about massaging her feet.

8   　　　　　Based on all of the information that has been

9   provided to the Court, Court finds Ms. Keller's testimony

10  would be relevant as it applies to the defendant's intent

11  relating to Victim No. 3.

12  　　　　　As I mentioned above, I conducted a 352 analysis on

13  this evidence, balancing the probative value with the

14  prejudicial impact, Court finds the probative value outweighs

15  the prejudicial impact.  Ms. Keller's testimony will not take

16  an undue consumption of time based on the information

17  provided.  Does the Court find her testimony will confuse or

18  mislead the jury?  I don't think it is necessary to address

19  every single point raised by each party.  For example, the

20  fact Ms. Keller is an adult, Victim No. 3 is a child, I took

21  that into consideration, balanced that fact with a specific

22  body part of interest, the feet, or the People's suggestion

23  that they would have a difficult time proving the offense

24  involving Victim 3 without this evidence.

25  　　　　　This is not a concern of the Court.  My focus is

26  whether the testimony is relevant and should be allowed

27  pursuant to 352.  In this instance, the evidence should be

28  presented to the jury and they may give it whatever weight

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   457

1   they decide and deserves.

2          Based on the moving papers only, I don't believe

3   that Ms. Keller should be allowed to testify about Items 2 or

4   3 or the workers -- excuse me -- or the sexual harassment

5   claim.  However, based on what occurred at the preliminary

6   examination, and I think the potential problems that may be

7   raised by Ms. Keller, before she testifies, we will schedule

8   a 402 hearing so I could listen to her testimony.

9          At this point, it would be my intent to allow her

10  to testify about that one conversation.  I expect that based

11  on what I heard at this point, she may be allowed to have --

12  you know, having other conversations with him that may have

13  played a part in her discomfort.

14         So that's the tentative ruling with Ms. Keller.  I

15  think that I just wanted to give counsel an idea of how I am

16  leaning towards this particular evidence.  It will be

17  probably expanded maybe a little more narrow, depending on

18  the 402 hearing.  So we'll have to schedule that.

19         Yes, Mr. Madden.

20         MR. MADDEN:  Your Honor, I think I understand the

21  Court's ruling.  I think I have an additional comment.

22         THE COURT:  Of course.

23         MR. MADDEN:  May I ask the Court a question?  If

24  Laurie was making an allegation -- Laurie is complaining

25  witness No. 3.

26         THE COURT:  Okay.

27         MR. MADDEN:  The one ostensibly different than the

28  other four.  With the other four, each of the other four have

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   458

1    given statements, and the People have argued, and the People

2    will argue, that Mr. Chandler put his penis in the mouths of

3    those four other children.  Their argument concerning

4    Ms. Keller seems to be -- the foundation for their position

5    seems to be their difficulty in establishing the intent with

6    respect to the touching of Laurie, because up until this

7    point, the People have no evidence that would support a

8    conclusion that Mr. Chandler put his penis in Laurie's mouth.

9    However, the People have indirectly argued and suggested, and

10   you could tell from the tone of the interrogation by the

11   police, that they -- I believe that the People will argue

12   that it is more probable than not that Mr. Chandler put his

13   penis on Laurie's leg.  All right.  Stay with me here.

14          THE COURT:  Okay.

15          MR. MADDEN:  Three of the five complaining

16   witnesses have filed civil lawsuits.  It's my understanding

17   that certain allegations have expanded and/or changed.  And

18   with respect to Laurie, it's my understanding that the

19   allegation has bloomed to the defendant forcibly putting his

20   penis into her mouth.  She never told that to the police in

21   two different interviews.  She never said anything about that

22   at the preliminary examination, and although I wasn't the

23   attorney, I have seen the transcript, as the Court has, and

24   there were very specific questions about that.  Up until this

25   lawsuit, the allegations were touching with the foot only.

26          What I'm suggesting to the Court is that the Court

27   consider withholding its ruling that you just gave concerning

28   evidence of the defendant's interest in Ms. Keller's feet to

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   459

1    see if that's what Laurie does claim at trial.  Because if

2    she does, then the foundation or the necessity for

3    Ms. Keller's testimony evaporates because now Laurie is in

4    the same position as the remaining four complaining

5    witnesses.

6             THE COURT:  Arguably so, but -- well, I don't want

7    to speak for you, Ms. Filo, but I'm comfortable with the

8    ruling, although it's tentative in the sense that I do want a

9    402 hearing.  So is your concern about opening statements?

10            MR. MADDEN:  That's what I was just getting to.  My

11   immediate concern is I have no difficulty with a subsequent

12   402, the statements.  That's what we do in trial.  However, I

13   am concerned about an opening statement, and I want to

14   represent that to the Court.  And I think that the People at

15   this point should be precluded from mentioning Ms. Keller,

16   identifying her as a witness, or identifying or referring to

17   her in opening statements.

18            MS. FILO:  Judge, if I might?  Whether he engaged

19   in additional conduct isn't really the point.  We haven't

20   charged the defendant with oral copulation because it will be

21   the People's theory throughout this case that we don't

22   actually know exactly what happened in that classroom.  What

23   we believe -- what we believe we could prove beyond a

24   reasonable doubt it was sexual.  I mean, there are all kinds

25   of kind of crazy elements to Mr. Chandler's behavior, and I

26   don't -- just because there happens to be additional conduct,

27   doesn't mean that the conduct with the feet is any more or

28   less sexual.  That can be the basis of a 288 touching and

1    that's why we charged it that way, was to keep our burden --

2    I mean, to keep what we had to prove kind of to that

3    standard, just that any touching was a sexual touching.

4          So whether she -- you know, I don't know.  I

5    haven't seen what Mr. Madden is referring to.  But whether

6    there is additional conduct or not, the evidence isn't being

7    offered out of necessity; it's offered on theory of intent,

8    which is, you know, specifically permitted under 1101(b).  So

9    whether there is additional stuff, I just don't think is the

10   analysis.

11         THE COURT:  Yes, Mr. Madden.

12         MR. MADDEN:  Your Honor, in all respect to Ms.

13   Filo, I don't have a transcript of the case of People v. Lyn

14   Vijayendran, the vice -- the former principal who was

15   prosecuted for failing to report.  However, I have read that

16   on a number of occasions, and that is not the way that Ms.

17   Filo argued what happened in this case with respect to

18   complaining witness No. 2 and Count 2 Becky.  It was very

19   clear and she was very emphatic with that jury that this was

20   Mr. Chandler putting his tongue on Becky's foot and putting a

21   penis in her mouth and ejaculating in her mouth.  So their

22   position as just stated by Ms. Filo is inconsistent with what

23   she has already argued in the Vijayendran case.

24         THE COURT:  You said Becky.

25         MR. MADDEN:  I did say Becky, yes.

26         THE COURT:  Okay.

27         MR. MADDEN:  Lyn Vijayendran was the defendant in

28   that case.  Becky is the child in Count 2.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   461

1      THE COURT:  Okay.

2      MR. MADDEN:  All right.  And so I'm troubled by Ms.

3  Filo's representation, that we don't know what happened.  I'm

4  not sure what I'm going to argue.  She didn't say that.  I

5  might have misstated what she just said.  That's all I'm

6  reading and my stomach is a pretty good guide for me.  I

7  can't just sit here and let that be represented by the People

8  because that's not what the People have argued and that's not

9  what they're going to argue in this case.  They are going to

10  argue that it was oral copulation and that he ejaculated in

11  children's mouth's.  Period.

12      THE COURT:  Okay.  At least returning to your

13  points, what you are saying about the civil lawsuit and how

14  it expanded, but at this point, that's the evidence Ms. Filo

15  has; that it's the touching of the feet.  And as I understand

16  the fact situation, there was also touching of the face, and

17  the child said it felt like a glue stick; it was sticky.  And

18  so I took into consideration the argument or the inference

19  that glue stick, what was sticky on the face, wasn't

20  necessarily a glue stick, but, you know, you could argue a

21  penis.  Okay.  So I took into consideration it was not just

22  the feet.

23      There is other conduct going on, and you're asking

24  me to limit them as far as what they should be allowed to

25  present after having found that it is relevant.  I think

26  that's going to be presented and you're going to be taking

27  the -- or at least questioning the child with credibility.

28      MR. MADDEN:  My point is the evidence even of

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   462

1  Laurie or concerning Laurie will be clearly, if the act

2  occurred, it was sexual.  It's not ambivalent conduct.  They

3  are going to argue that it was his penis.  I believe what

4  that child when she testifies is going to either testify that

5  he not only did everything that she said before, but he did

6  more as stated in her civil lawsuit; that he forced his penis

7  into her mouth.

8          MS. FILO:  If the defendant --

9          MR. MADDEN:  Obviously, it's a sexual act,

10  therefore, no need.  The only justification for using the

11  testimony about Mr. Chandler's sexual interest in the feet of

12  Ms. Keller is to establish the intent issue on that count.

13  What I'm saying is that that's not necessary, therefore, it's

14  not probative and it's highly prejudicial.

15          THE COURT:  Okay.  Again, I am comfortable with the

16  ruling, which, Ms. Filo, is very narrow.  It may be expanded

17  after a 402 hearing.  You could comment about that in opening

18  statements if you choose to do so, in that narrow situation.

19  And this is over Mr. Madden's objection.  If that occurs

20  during opening statement, and if there is an objection, your

21  objection is noted, but for my ruling you objected.

22          MR. MADDEN:  I won't object during opening

23  statement.

24          THE COURT:  I understand.

25          MR. MADDEN:  But I do wish to be comfortable

26  knowing exactly what it is Ms. Filo will be allowed to say in

27  her opening statement, what she won't be allowed to say.  The

28  reason that I'm uncomfortable about it is that Ms. Filo had

1  difficulty at the preliminary examination, as did the

2  officer, limiting questions and responses consistent with the

3  court's ruling at that time.

4          THE COURT:  I understand.  And, Mr. Madden, when I

5  say she would be narrow in her opening statements is

6  consistent with my ruling as to item number one, and what she

7  says in that conversation, that he came around, that it made

8  her feel very uncomfortable, which is consistent with what I

9  ruled.  I mean, how she felt about that -- those context and

10  what he said I think is relevant.

11          MR. MADDEN:  How is it relevant?  That she felt

12  sexually harassed?

13          THE COURT:  No, I didn't say sexually harassed.

14          MR. MADDEN:  Clearly, she was sexually harassed.

15          THE COURT:  Well, she felt uncomfortable about what

16  was occurring.

17          MR. MADDEN:  That is what sexual harassment is.

18          THE COURT:  We could call it whatever we want, but

19  you're telling me she thinks it's only fair to make these

20  comments and not to testify how it made her feel if she

21  wasn't uncomfortable.

22          MR. MADDEN:  Yes, I totally mean that.  She

23  could -- I believe that the Court's -- I believe the Court's

24  ruling is incorrect.  But not withstanding that, it's more

25  incorrect if she's allowed to express her feelings about how

26  she felt about that.  It's not necessary.

27          MS. FILO:  Judge --

28          THE COURT:  You want to respond?

1    MS. FILO:  Yes, Your Honor.  I mean, it is not -- I

2   mean, if the evidence were:  Mr. Chandler came into a room

3   and said, Hey, you got a nice pedicure, that was the end of

4   it, that's not relevant.  But when he does it with a sexual

5   intent, with a -- as the defense has even described it, kind

6   of this creepy interest in an abnormal body part, that's what

7   makes it relevant.  So unless there is some -- unless there

8   is something to give the comment context, then it's not --

9   then it's not relevant.  I mean, it's only relevant if that

10   is accompanied by her very clear sense and feeling that this

11   was part of a larger sexual interest in her.  I mean, that's

12   the only way that it's relevant.  Otherwise, it's:  Hey,

13   could I take a picture of your feet?  I mean, kind of weird,

14   but it's not -- it's the sexual component of it that makes it

15   relevant.

16    THE COURT:  I think her feeling of discomfort is

17   relevant.  Obviously, she can't testify to Mr. Chandler's

18   intent and what his motives were.  But, Ms. Filo, I think

19   it's important that you keep your comments narrow with

20   Ms. Keller, you know, obviously until we have a 402 hearing,

21   but I'm not going to know specifically what she's going to

22   testify to or how comfortable I feel about the parameters of

23   her testimony.

24    MS. FILO:  Your Honor, would it be possible to

25   schedule that hearing?  I know we're not usually in session

26   on Fridays, but we may run a little short the week of July

27   the 8th.  Maybe we could do July 12th, that way we could have

28   that hearing done prior to opening statements?

1    THE COURT:  We can't do it July -- well, right now

2  I don't think we could do it July 12th because I don't expect

3  to be here.

4    MS. FILO:  Okay.  That will be a problem.

5    THE COURT:  But I have to confirm whether I will be

6  here or not that particular day.  If I'm here, yes.

7    MS. FILO:  All right.  I would be happy to see if

8  Ms. Keller will be available maybe for an hour or so on the

9  11th.  But I guess my point is, or my thought is, that I'm

10  more than happy to do the 402 hearing prior to opening

11  statements, if that could be accommodated within the Court's

12  schedule.

13    THE COURT:  Okay.  Which we'll address --

14    MS. FILO:  As it goes.

15    THE COURT:  -- in chambers when we talk about

16  scheduling this morning.

17    MS. FILO:  Okay.

18    THE COURT:  Yes, Mr. Madden.

19    MR. MADDEN:  Are we done with that, Your Honor?

20    THE COURT:  Yes, we are.

21    MR. MADDEN:  Okay.  We could go off the record if

22  you want.

23    THE COURT:  Yes.

24    (Whereupon, there was a discussion off the record.)

25    THE COURT:  We'll go on the record on the matter of

26  the People v. Chandler.  Mr. Chandler is present, Mr. Madden

27  is present, Ms. Filo is present.  We had informal discussions

28  in chambers concerning jury selection that is going to begin

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   466

1  Monday, and we have addressed these issues.

2          At this time, we're going to recess for the rest of

3  the day.  I'll order Mr. Chandler and both counsel here at

4  9:00 o'clock Monday, July 1st, and we'll begin jury selection

5  at that time.

6          MR. MADDEN:  Thank you, Your Honor.

7          (Whereupon, the Court recessed.)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   467

```
 1   STATE OF CALIFORNIA      )
                              )
 2   COUNTY OF SANTA CLARA    )

 3

 4           I, JAMIE L. MIXCO, HEREBY CERTIFY THAT:

 5           The foregoing is a full, true, and correct

 6   transcript of the testimony given and proceedings had in the

 7   above-entitled action taken on the above-entitled date; that

 8   it is a full, true, and correct transcript of the evidence

 9   offered and received, acts and statements of the Court, also

10   all objections of counsel, and all matters to which the same

11   relate; that I reported the same in stenotype to the best of

12   my ability, being the duly appointed and official

13   stenographic reporter of said Court, and thereafter had the

14   same transcribed into typewriting as herein appears.

15           I further certify that I have complied with CCP

16   237(a)(2) in that all personal juror identifying information

17   has been redacted if applicable.

18

19           Dated:

20

21                           _____

22                           Jamie L. Mixco, C.S.R.
                             Certificate No. 12708
23

24   ATTENTION:
     CALIFORNIA GOVERNMENT CODE
25   SECTION 69954(D) STATES:

26   "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A TRANSCRIPT
     MAY, WITHOUT PAYING A FURTHER FEE TO THE REPORTER, REPRODUCE
27   A COPY OR PORTION THEREOF AS AN EXHIBIT PURSUANT TO COURT
     ORDER OR RULE, OR FOR INTERNAL USE, BUT SHALL NOT OTHERWISE
28   PROVIDE OR SELL A COPY OR COPIES TO ANY OTHER PARTY OR
     PERSON."
```

# EXHIBIT 3
# (Vol. 5)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    468

TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

---o0o---

THE PEOPLE OF THE STATE OF )
CALIFORNIA, )
                              )
    Plaintiff - Respondent, )
                              )
    v.                   )    No. C1223754
                              )
CRAIG RICHARD CHANDLER,
                              )
    Defendant - Appellant. )
_____/

COPY

VOLUME 5

PAGES 468 - 486

JULY 3, 2013

---o0o---

REPORTER'S TRANSCRIPT ON APPEAL
FROM THE JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

---o0o---

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:    OFFICE OF THE ATTORNEY GENERAL
                                    BY:  KAMALA D. HARRIS,
                                    Attorney General of the State
                                    of California

FOR DEFENDANT-APPELLANT:    In Propria Persona

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   469

1       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2         IN AND FOR THE COUNTY OF SANTA CLARA

3    BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

4             DEPARTMENT NO. 37

5

6               ---o0o---

7  THE PEOPLE OF THE
     STATE OF CALIFORNIA,       )

8                      )

9           PLAINTIFF,    )
                     )     CASE NO.  C1223754

10      v.               )
                     )

11  CRAIG RICHARD CHANDLER,   )
                     )

12                     )

13          DEFENDANT.    )
     _____/

14

15               ---o0o---

16

17       REPORTER'S TRANSCRIPT OF PROCEEDINGS

18

19             JULY 3, 2013

20               ---o0o---

21

22

23

24  APPEARANCES:

25  FOR THE PEOPLE:          ALISON FILO
                        Deputy District Attorney

26

27  FOR THE DEFENDANT:       BRIAN MADDEN
                        Attorney at Law

28  OFFICIAL COURT REPORTER:    JAMIE L. MIXCO
                        C.S.R. No. 12708

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   470

1   San Jose, California                              July 3, 2013

2                              PROCEEDINGS

3           THE COURT:  Thank you, ladies and gentlemen.  I'll

4   call the matter of the People v. Chandler.

5           Counsel, state your appearances for the record.

6           MR. MADDEN:  Brian Madden appearing for Mr.

7   Chandler, Your Honor.  He's personally present in custody.

8           MS. FILO:  Good afternoon, Your Honor.  Alison Filo

9   for the People.  Present in court this afternoon, I'll let

10  him make his own appearance, the attorney for Laurie Doe.

11          THE COURT:  Thank you.

12          MR. MATIASIC:  Good afternoon, Your Honor.  Paul

13  Matiasic on behalf of the victim, Laurie Doe.

14          THE COURT:  Okay.  Thank you.  What is the status?

15          MS. FILO:  Your Honor, if I may?  Mr. Matiasic and

16  I had a conversation.  We've had some continuing

17  conversations over the last few days.  When Mr. Madden made

18  some arguments with respect to one of our motions in limine,

19  he made reference to the idea that the allegations with

20  respect to Laurie Doe had greatly expanded and were greater

21  than those disclosed to the San Jose Police Department and/or

22  disclosed at the preliminary hearing in May of last year.

23          In an attempt to follow up on those

24  representations, I contacted Mr. Matiasic and was informed

25  that, yes, in fact those allegations had expanded and that

26  they had come in the context of a attorney/client privilege

27  or work-product privileged situation.  I let Mr. Matiasic

28  know that I would be discussing it with the Court, and did so

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   471

1    the following morning.

2              It was my understanding from the conversation with

3    the Court and with counsel that sort of the difficult way to

4    do this would be to have Laurie come in pursuant to a

5    subpoena or a court order, that she would be compelled to

6    testify; that she would be required to disclose the name of

7    the expert or consultant with whom she gave statements that

8    were either consistent or inconsistent with previously given

9    statements.  Armed with that information, I contacted Mr.

10   Matiasic again, let him know what the Court's intended ruling

11   was, and suggested to him that the easier way to do this

12   might be through stipulation and order with a waiver of the

13   privilege.

14             Mr. Matiasic had some concerns about the impact

15   that might have on the civil case, and we discussed the

16   possibility of preparing a protective order, which would

17   address his concerns in the civil case, but still give us the

18   information we believe we need, and I believe ultimately will

19   be compelled by the Court in the criminal case.

20             I have prepared a proposed stipulation and order.

21   I e-mailed that to both the Court and counsel this morning.

22   I -- and to Mr. Matiasic.  I brought hard copies today.  I

23   think Mr. Matiasic has a few concerns he would like to

24   address with the Court.  But otherwise, I believe that with

25   that -- with the execution of that protective order, the name

26   of the psychiatrist with whom Laurie met and will be

27   disclosed and a waiver will be entered with respect to

28   that -- with respect to any statements made to her and all

1  subject to the protective order that we would execute as

2  proposed.

3       THE COURT:  Okay.  Ms. Filo, thank you for putting

4  that on the record.  I will note that, as you mentioned, we

5  did have informal discussions about this particular issue,

6  and everything that you said essentially was discussed

7  informally.

8       Mr. Madden, do you wish to supplement anything that

9  Ms. Filo had said, at least at this point?

10       MR. MADDEN:  No.  I agree with her summary, and

11  although I did not look at my computer, I came over here, I'm

12  sure it's in there and I have a hard copy.  I read the

13  proposed stipulation and order.  It looks appropriate to me,

14  as does the proposed waiver of privilege for which Mr.

15  Matiasic signed.

16       THE COURT:  Okay.

17       Counsel, you had some concerns that you wanted to

18  raise at this point?

19       MR. MATIASIC:  I did.  Thank you very much, Your

20  Honor.  I appreciate the opportunity to be heard.  Basically,

21  the reason why we came down here was, as Ms. Filo indicated,

22  she was kind enough to let us know the direction the Court

23  appeared to be headed, but we certainly had some concerns

24  with respect to the contours of and the parameters in which

25  this particular information would, number one, be

26  disseminated; and number two, be used to provide the

27  backdrop.

28       Perhaps it is kind of echoing some of what counsel

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   473

1    has already told you, but this wasn't any type of treating

2    therapist with whom the victim sought out treatment and went

3    to treatment and disclosed certain materials.  This was

4    someone selected by me.  This is basically my consultant, and

5    I consider it to be protected under the ambit of both the

6    attorney/client privilege and the word-product as described

7    in CC 2018.

8              So, you know, frankly, I'm just having difficulty

9    seeing how, you know, my consultant's identity, you know,

10   should be disclosed in the context of this criminal

11   proceeding without having a benefit of any type of

12   additional, you know, protection in terms of how it will be

13   utilized in the civil proceedings.

14             I guess my first question is:  If we turn over this

15   type of information, has the Court made any type of

16   definitive ruling?  I'm ignorant to what the nature of the

17   motion in limine was in the criminal matter.  I request how

18   it will be utilized in the context of the criminal case.

19             THE COURT:  Essentially, what I perceive that is

20   going to occur is whatever information this psychiatrist had

21   important to the interview with Laurie will be provided to

22   court.  I will view that information in-camera.  Once I

23   review the information, if I believe that certain

24   information, certain statements that Laurie made to the

25   psychiatrist are relevant to those proceedings, then those

26   particular statements will be disclosed to counsel.

27             As I perceive what's going to happen is I have the

28   documents.  What I think is relevant will be unredacted.  So

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   474

1    I will redact everything that I believe isn't relevant to

2    being disclosed.  Okay.  The actual information I have will

3    be put in a confidential, sealed envelope as well as the

4    redacted copy.  So I have the original and what I'm

5    disclosing to counsel.

6          I'm assuming that, as you may appreciate, the name

7    of the psychiatrist will have to be disclosed in the event

8    that Laurie testifies, and then there is some inconsistencies

9    or consistencies -- as I foresee what will happen is there

10   are other Evidence Codes exceptions that will allow the

11   People to call her as well.

12         I'm not sure if this is all the things you already

13   know or I'm just repeating what -- or basically this is the

14   way I foresee this happening.  Do you have any concerns or

15   comments based on that?

16         MR. MATIASIC:  Well, Your Honor, I think in terms

17   of procedurally, how we go about disclosing the information

18   to the Court and language of the protective order seems to be

19   appropriate.  I guess what I have concerns about later too,

20   and my consultant has already raised to me is, you know,

21   someone was desirous of trying to call her as a witness in a

22   criminal proceeding, you know, this consultant doesn't appear

23   without having her fee paid.  And because I got her involved

24   in this case, you know, we certainly are not going to be

25   footing the bill to have her come in and testify, you know,

26   unless it's for us in the civil proceeding.

27         So I know she's concerned about the effect it has

28   on her ability to relate with Laurie going forward, but I

1    could see that the Court is headed in that direction and so,

2    you know, I think that alleviates my concern for now.  But we

3    want to reserve the right to be heard once that information

4    is disseminated to counsel in terms of, you know, what type

5    of use it may have in the criminal proceedings, if that's

6    okay with the Court.

7              THE COURT:  Absolutely.  Absolutely.

8              MR. MATIASIC:  The other issue that I've raised,

9    which I think it's important, that this information not be

10   disseminated.  Ultimately may come out in the criminal

11   context, I understand that.  But at least until that point in

12   time, you know, we don't want it released to any of the

13   attorneys of record or any of their experts, consultants, et

14   cetera, in the civil action as well.  So if we could make

15   that part of that order, we certainly would appreciate it.

16             THE COURT:  Is that contained in the stipulated

17   order that you prepared, Ms. Filo?

18             MR. MADDEN:  I believe it is.

19             THE COURT:  I thought it was.  If not directly

20   addressed, it was indirectly addressed because I could

21   control that until Laurie testifies.  And then as you know,

22   it's a public record.  It's going to be part of the

23   testimony.

24             Ms. Filo, is that addressed in --

25             MS. FILO:  Judge, what I think I put in here was

26   that it's --

27             THE COURT:  I thought it was pretty clear to me

28   that any information I release to you is only going to be

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    476

1   used by you folks, maybe investigators, other experts that

2   you will be consulting with.  It will not be disseminated

3   anyway.

4           MS. FILO:  What I said is the confidential records

5   should be retained by the attorneys in the criminal case and

6   used only in and for the benefit of the criminal case.  The

7   documents may not be furnished to anyone other than those

8   within the employee of the District Attorney, the Law Offices

9   of Madden and Redding, or experts and consultants retained by

10  either of those offices to assist in the criminal action.

11          All confidential material shall be kept in the

12  office of the District Attorney or the Law Offices of Madden

13  and Redding.  No copy of the materials should leave those

14  offices, including via electronic transmission of any sort

15  for any purpose except for transmissions between counsel and

16  experts or for use in connection with the criminal

17  proceedings in this matter.

18          MR. MATIASIC:  Your Honor, I certainly think it

19  addresses it indirectly.  I think the million-dollar question

20  for us, you know, whether or not the attorney who represents

21  Mr. Chandler in the civil action falls under the purview of

22  experts, consultant, et cetera.

23          MR. MADDEN:  No.

24          THE COURT:  Okay.  So Mr. Madden is making it very

25  clear that the civil attorney is not going to be provided

26  this information.  Am I correct, Mr. Madden?

27          MR. MADDEN:  I expect to be ordered not to provide

28  it.

1    THE COURT:  Okay.  Thank you.  Then I will

2  definitely do that.

3    MR. MADDEN:  I do want to address something else

4  that counsel had mentioned and concerning fees.  I don't know

5  necessarily which party will be subpoenaing the doctor.

6  However, if she's testifying, it's my expectation and my

7  understanding she'll be testifying as a percipient witness as

8  to a statement.  She was not asked to give an expert opinion,

9  won't be called as an expert, and I don't think her

10  professional fee, I don't think she's entitled really to

11  anything other than a witness fee.

12    THE COURT:  Ms. Filo.

13    MR. MADDEN:  That's just my observations.

14    MS. FILO:  So, Your Honor, I think we have reserved

15  the right.  When we talked about this informally, we had

16  talked about whether or not we would need to use the

17  psychiatrist in a dual capacity.  It is clearly my

18  expectation that the defense will make noise about the idea

19  that Laurie has given fundamentally inconsistent statements.

20  To the extent that they do that, I think the People then have

21  both the right and the obligation as an effective advocacy to

22  provide the jury with some explanation as to how or why that

23  might have happened.  It may very well be that the

24  psychiatrist who took that statement as a percipient witness

25  may be the best person to provide that information.  I don't

26  know that because I haven't really spoken to her, and I don't

27  know what she would say in that regard.

28    So what I wanted to be clear about was that I think

1    she qualifies as both a Evidence Code §1360 witness, person

2    to whom an act of child abuse was described, and the hearsay

3    exception that applies thereto, but may also be needed for

4    purposes of explaining to the jury why this inconsistency

5    might exist in the context of the case like this.

6         So whether it's this particular psychiatrist or

7    another expert, I do think the People at this point with this

8    knowledge now have some obligation and right to explain to

9    the jury how this inconsistency arose.  If we are going to

10   use her as an expert, I expect we would have to pay her as

11   well.

12        MR. MADDEN:  I have no objection to the People

13   paying anyone, Your Honor.  I want to make it clear we were

14   not going to be doing that.  Secondly, I will represent to

15   the Court that I will vigorously oppose the People using this

16   witness as an expert to explain any inconsistencies for

17   reasons that will be clear in the moving papers I expect to

18   file.

19        THE COURT:  Okay.  I will note that we did discuss

20   this informally.

21        MR. MADDEN:  Yes.

22        THE COURT:  Mr. Madden clearly objected to the

23   unknown psychiatrist being called in a dual role.  You

24   indicated that it's something that you want to reserve the

25   right to raise once you get the information.

26        Based on the little information I have, we don't

27   know whether it's inconsistent statements or simply an

28   expansion of what occurred.  In any event, it's my intent to

1  sign the protective order, and does counsel know when I will

2  be provided information about what was said, the documents,

3  what have you?

4        MR. MADDEN:  My understanding, counsel has them

5  now.

6        MR. MATIASIC:  Your Honor, I'm prepared to furnish

7  it to the Court today.

8        THE COURT:  Okay.  Thank you.  That was my

9  understanding that's what was going to occur.  So I'm going

10  to -- the protective order that you e-mailed me, Ms. Filo, is

11  that the same one you have or different?

12        MS. FILO:  It's a little bit different.  I found

13  one sentence in there that was incomplete.

14        THE COURT:  If you would provide me that?

15        MS. FILO:  Maybe we should just circulate this as

16  one document.  If I could approach?

17        THE COURT:  Yes.  We're off the record while we

18  sign this.

19        (Whereupon, there was a discussion off the record.)

20        MS. FILO:  Your Honor, at this time, the People and

21  the defense have signed the stipulation and order.  Pursuant

22  to that order, a copy of the curriculum vitae of the

23  psychiatrist with whom Laurie met is being provided to the

24  defense.  I'm handing it to him now in court.

25        THE COURT:  What is being provided?

26        MS. FILO:  It's the curriculum vitae, the CV of the

27  psychiatrist, and I assume Mr. Matiasic will give the

28  documents to the Court that will be reviewed in-camera.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   480

1          THE COURT:  We'll have the order filed.  And just

2    so the record is clear, I will specifically order Mr. Madden

3    not to provide any information that the Court releases to Mr.

4    Chandler's civil lawyer, or any other lawyer involved in that

5    civil action.  I think the protective order is clear, but

6    just for clarity purposes, I will make that order as well.

7          I will conduct an in-camera hearing of the records

8    I review and try to make a ruling as soon as possible.  I'm

9    not sure if there is a lot or very little or how much time it

10   will take me.  If I'm able to, I will provide it to counsel

11   by Monday, a ruling at least, but definitely sometime next

12   week.  Are you all comfortable with that?  I know you want it

13   as soon as possible, and I know looking at Mr. Madden, is it

14   possible to do it this afternoon?

15         MR. MADDEN:  Judge, you don't know me that long,

16   but you have figured me out.

17         THE COURT:  Okay.  We could -- I could take a look

18   at it this afternoon and --

19         MR. MADDEN:  Your Honor, just do your best.

20         THE COURT:  If you want to stick around.

21         MR. MADDEN:  Let me stick around for a while, see

22   how you are doing.  If you are telling me that it will take a

23   month, I will go home.

24         THE COURT:  Let's go off the record briefly.

25         (Whereupon, there was a discussion off the record.)

26         (Whereupon, an in-camera hearing was held, and the

27   transcript of the proceedings, Volume 5, pages 482 through

28   484, is sealed by order of the Court and is under separate,

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   481

1    sealed cover.)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)  485

1          (Whereupon, an in-camera hearing was concluded, and

2     the transcript of the proceedings, Volume 5, pages 482

3     through 484, is sealed by order of the Court and is under

4     separate, sealed cover.)

5          THE COURT:  We'll go on the record on the matter of

6     the People v. Chandler.  Record will reflect that all counsel

7     have left the courtroom.  They left just a few minutes ago.

8     The Court has reviewed the documents.  Counsel's informed of

9     that, and the redacted copies will be faxed to each attorney

10    pursuant to their agreement and stipulation, and I am

11    ordering that the original and the Court's redacted copy be

12    sealed in a confidential envelope and not be open without

13    further order of this court.  That will give any reviewing

14    court an opportunity to see the original and what the Court

15    redacted.

16          That concludes the matter.  We'll be in recess.

17          (Whereupon, the Court recessed.)

18

19

20

21

22

23

24

25

26

27

28

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)  486

STATE OF CALIFORNIA        )
                           )
COUNTY OF SANTA CLARA      )


        I, JAMIE L. MIXCO, HEREBY CERTIFY THAT:

        The foregoing is a full, true, and correct

transcript of the testimony given and proceedings had in the

above-entitled action taken on the above-entitled date; that

it is a full, true, and correct transcript of the evidence

offered and received, acts and statements of the Court, also

all objections of counsel, and all matters to which the same

relate; that I reported the same in stenotype to the best of

my ability, being the duly appointed and official

stenographic reporter of said Court, and thereafter had the

same transcribed into typewriting as herein appears.

        I further certify that I have complied with CCP

237(a)(2) in that all personal juror identifying information

has been redacted if applicable.


        Dated:




                          _____

                          Jamie L. Mixco, C.S.R.
                          Certificate No. 12708


ATTENTION:
CALIFORNIA GOVERNMENT CODE
SECTION 69954(D) STATES:

"ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A TRANSCRIPT
MAY, WITHOUT PAYING A FURTHER FEE TO THE REPORTER, REPRODUCE
A COPY OR PORTION THEREOF AS AN EXHIBIT PURSUANT TO COURT
ORDER OR RULE, OR FOR INTERNAL USE, BUT SHALL NOT OTHERWISE
PROVIDE OR SELL A COPY OR COPIES TO ANY OTHER PARTY OR
PERSON."

# EXHIBIT 3
# (Vol. 6)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    487

TO THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

---o0o---

THE PEOPLE OF THE STATE OF         )
CALIFORNIA,                        )
                                   )
        Plaintiff - Respondent,    )
                                   )
        v.                         )        No. C1223754
                                   )
CRAIG RICHARD CHANDLER,            )
                                   )
        Defendant - Appellant.     )
_____/

COPY

VOLUME 6

PAGES 487 - 498

JULY 10, 2013

---o0o---

REPORTER'S TRANSCRIPT ON APPEAL
FROM THE JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

---o0o---

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:      OFFICE OF THE ATTORNEY GENERAL
                               BY:  KAMALA D. HARRIS,
                               Attorney General of the State
                               of California

FOR DEFENDANT-APPELLANT:       In Propria Persona

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   488

1              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                  IN AND FOR THE COUNTY OF SANTA CLARA

3         BEFORE THE HONORABLE ARTHUR BOCANEGRA, JUDGE, AND JURY

4                          DEPARTMENT NO. 37

5
                               ---o0o---
6

7    THE PEOPLE OF THE
     STATE OF CALIFORNIA,              )
8                                      )
                    PLAINTIFF,         )
9                                      )      CASE NO.  C1223754
          v.                           )
10                                     )
                                       )
11   CRAIG RICHARD CHANDLER,           )
                                       )
12                                     )
                    DEFENDANT.         )
13   _____/

14

15
                               ---o0o---
16

17              REPORTER'S TRANSCRIPT OF PROCEEDINGS

18
                            JULY 10, 2013
19

20
                               ---o0o---
21

22

23
     APPEARANCES:
24
     FOR THE PEOPLE:                 ALISON FILO
25                                   Deputy District Attorney

26
     FOR THE DEFENDANT:              BRIAN MADDEN
27                                   Attorney at Law

28   OFFICIAL COURT REPORTER:        JAMIE L. MIXCO
                                     C.S.R. No. 12708

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   489

1    San Jose, California                              July 10, 2013

2                             PROCEEDINGS

3              THE COURT:  Before we take our recess, I'm going to

4    read just a few instructions that aren't going to take me

5    very long, and then once I finish reading the instructions,

6    I'm going to go over informally some scheduling issues and

7    some other things related to this trial before we take our

8    recess.

9              Our system of justice requires that trials be

10   conducted in open court, with the parties presenting

11   evidence, and the judge deciding the law that applies to the

12   case.  It is unfair to the parties if you receive additional

13   information from any other source, because that information

14   may be unreliable or not relevant, and the parties will not

15   have had the opportunity to examine and respond to it.

16             Your verdict must be based only on the evidence

17   presented during the trial in this court and the law as I

18   provide it to you.

19             During the trial, do not talk about the case or

20   about any of the people or any subject involved in the case

21   with anyone, not even your family, friends, spiritual

22   advisors, or therapists.

23             Do not share information about the case in writing,

24   by e-mail, by telephone, on the Internet, or by any other

25   means of communication.  You must not talk about these things

26   with other jurors either until you begin deliberating.

27             As jurors, you may discuss the case together only

28   after all of the evidence has been presented, the attorneys

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)    490

1    have completed their arguments, and I have instructed you on

2    the law.  After I tell you to begin your deliberations, you

3    may discuss the case only in the jury room and only when all

4    jurors are present.

5            You must not allow anything that happens outside of

6    the courtroom to affect your decision.

7            During the trial, do not read, listen to, or watch

8    any news report or commentary about the case from any source.

9    Do not use the Internet or any other electronic source or

10   device in any way in connection with this case, either on

11   your own or as a group.

12           Do not investigate the facts or the law or do any

13   research regarding this case.  Do not conduct any tests or

14   experiments or visit the scene of any events involved in this

15   case.  If you happen to pass by the scene, do not stop or

16   investigate.

17           If you have a cell phone or other electronic

18   device, keep it turned off while you're in the courtroom and

19   during deliberations.  Electronic device includes any data

20   storage device.  If someone needs to contact you in an

21   emergency, the court could receive messages that will be

22   delivered to you without delay.

23           During the trial, do not speak to a defendant,

24   witness, lawyer, or anyone associated with them.  Do not

25   listen to anyone who tries to talk to you about the case or

26   about the people or subjects involved in it.  If someone asks

27   you about the case, tell him or her that you cannot discuss

28   it.  If that person keeps talking to you about the case, you

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   491

1   must end the conversation.

2          If you receive any information about this case from

3   any source outside of the trial, even unintentionally, do not

4   share that information with any other juror.  If you do

5   receive such information, or if anyone tries to influence you

6   or any juror, you must immediately tell the courtroom deputy.

7          Keep an open mind throughout the trial.  Do not

8   make up your mind about the verdict or any issue until after

9   you have discussed the case with the other jurors during

10  deliberations.

11         Do not take anything I say or do during the trial

12  as an indication of what I think about the facts, the

13  witnesses, or what your verdict should be.

14         Do not let bias, sympathy, prejudice, or public

15  opinion influence your decision.

16         You must reach your verdict without any

17  consideration of punishment.  I want to emphasize that you

18  may not use any form of research or communication, including

19  electronic or wireless research or communication to research,

20  share, communicate, or allow someone else to communicate with

21  you regarding any subject of the trial.

22         When the trial has ended and you have been released

23  as jurors, you may discuss the case with anyone, but under

24  California law, you must wait at least 90 days before

25  negotiating or agreeing to accept any payment for information

26  about the case.

27         You will be given notebooks and you may take notes

28  during the trial.  Do not remove them from the courtroom.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   492

1   You may take your notes into the jury room during

2   deliberations.

3          I do not mean to discourage you from taking notes,

4   but here are some points to consider if you take notes:

5          One, note-taking may tend to distract you.  It may

6   affect your ability to listen carefully to all of the

7   testimony and to watch the witnesses as they testify;

8          And two, the notes are for your own individual use

9   to help you remember what happened during the trial.  Please

10  keep in mind that your notes may be inaccurate or incomplete.

11         At the end of the trial, your notes will be

12  collected and destroyed.

13         You must decide what the facts are in this case.

14  You must use only the evidence that is presented in the

15  courtroom.  Evidence is the sworn testimony of witnesses, the

16  exhibits admitted into evidence, and anything else I tell you

17  to consider as evidence.

18         The fact that the defendant was arrested, charged

19  with a crime, or brought to trial is not evidence of guilt.

20  Nothing that the attorneys say is evidence.  In their opening

21  statements and closing arguments, the attorneys will discuss

22  the case, but their remarks are not evidence.  Their

23  questions are not evidence.  Only the witness's answers are

24  evidence.  The attorneys' questions are significant only if

25  they help you understand the witness's answers.

26         Do not assume that something is true just because

27  one of the attorneys asked a question that suggests it is

28  true.

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   493

1    During the trial, the attorneys may object to

2    questions asked of a witness.  I will rule on the objections

3    according to the law.  If I sustain an objection, the witness

4    will not be permitted to answer, and you must ignore the

5    question.  If the witness does not answer, do not guess what

6    the answer might have been or why I ruled as I did.

7    If I order testimony stricken from the record, you

8    must disregard it and you must not consider that testimony

9    for any purpose.

10   You must disregard anything you see or hear when

11   the court is not in session, even if it is done or said by

12   one of the parties or witnesses.

13   You alone must judge the credibility or

14   believability of the witnesses.  In deciding whether

15   testimony is true and accurate, use your common sense and

16   experience.  You must judge the testimony of each witness by

17   the same standards, setting aside any bias or prejudice you

18   may have.  You may believe all, part, or none of any

19   witness's testimony.  Consider the testimony of each witness

20   and decide how much of it you believe.

21   In evaluating a witness's testimony, you may

22   consider anything that reasonably tends to prove or disprove

23   the truth or accuracy of that testimony.

24   Among the factors you may consider are:

25   How well could the witness see, hear, or otherwise

26   perceive the things about which the witness testified?

27   How well was the witness able to remember and

28   describe what happened?

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   494

1        What was the witness's behavior while testifying?

2        Did the witness understand the questions and answer

3   them directly?

4        Was the witness's testimony influenced by a factor

5   such as bias or prejudice, a personal relationship with

6   someone involved in the case, or a personal interest in how

7   the case is decided?

8        What was the witness's attitude about the case or

9   about testifying?

10        Did the witness make a statement in the past that

11   is consistent or inconsistent with his or her testimony?

12        How reasonable is the testimony when you consider

13   all of the other evidence in the case?

14        Did other evidence prove or disprove any fact about

15   which the witness testified?

16        Did the witness admit to being untruthful?

17        Do not automatically reject testimony just because

18   of inconsistencies or conflicts.  Consider whether the

19   differences are important or not.  People sometimes honestly

20   forget things or make mistakes about what they remember.

21   Also, two people may witness the same event, yet see or hear

22   it differently.

23        If you do not believe a witness's testimony, that

24   he or she no longer remembers something, that testimony is

25   inconsistent with the witness's earlier statements on that

26   subject.

27        If you decide that a witness deliberately lied

28   about something significant in this case, you should consider

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   495

1    not believing anything that witness said.  Or, if you think

2    the witness lied about some things, but told the truth about

3    others, you may simply accept the part that you think is true

4    and ignore the rest.

5              The trial will proceed in the following manner:

6              The attorneys will be permitted to make opening

7    statements if they choose to do so.  An opening statement is

8    not evidence, neither is it an argument.  The attorneys are

9    not permitted to argue the case at this point in the

10   proceedings.  An opening statement is simply an outline or

11   road map by counsel of what he or she believes or expects the

12   evidence will show in this trial.  Its sole purpose is to

13   assist you in understanding the case as it is presented to

14   you.

15             The People will then present evidence which they

16   believe supports the charges and allegations contained in the

17   Information.  The defendant may present evidence, but

18   remember, the defendant does not have to do so.  The burden

19   is on the People to prove every charge and allegation beyond

20   a reasonable doubt.

21             Thereafter, I will instruct you on the applicable

22   law, then each attorney will have an opportunity to present

23   oral arguments in support of their side of the case.  This is

24   their opportunity to tell you why they believe the evidence

25   supports their view of the case.

26             You will then retire to consider your verdicts.

27   Your verdicts must be unanimous.

28             In closing, I would also like to note that during

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   496

1    the trial, I may allow conferences with the lawyers at

2    sidebar.  If this is allowed, it usually involves a question

3    of law or issue that may not be appropriate to discuss in

4    front of the jury.  You are not to speculate about these

5    sidebar conferences or try to listen to what is being said,

6    nor are you to form any prejudicial opinion against a lawyer

7    or the side the lawyer represents because that lawyer

8    requests such a sidebar conference.  I ask you to be patient

9    about these conferences if they occur.  For more often than

10   not, such conferences make the proceedings move faster.

11        Finally, I would like to emphasize the importance

12   of being on time.  We could not proceed with the trial if

13   anyone is not present.

14        At this time, we'll briefly go off the record so

15   that the Court could go over issues such as scheduling.

16        (Whereupon, there was a discussion off the record.)

17        THE COURT:  We'll go back on the record.  Record

18   will reflect that the Court had informal discussions with the

19   jury about scheduling and other issues that may come up

20   during the course of the trial.  We're going to recess at

21   this time.

22        All members of the jury, you are ordered to report

23   to the jury assembly room on the second floor Monday, July

24   15th, at 9:00 a.m.  And when you come to the courtroom, we

25   will begin the trial with opening remarks and witnesses will

26   be called to testify.  Please do not leave the courtroom

27   without your jury badge and a little piece of paper with the

28   identifying information with my name, court, and phone

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   497

1   number.  Have a safe weekend and see you all on Monday.

2          Let's go back on the record.  Record will reflect

3   the jury has been excused until Monday morning.  Both Mr.

4   Chandler and counsel are here.  I will order both Mr.

5   Chandler and counsel here tomorrow morning at 9:00 a.m. for

6   further in limine motions.  So we'll be in recess until

7   tomorrow morning.

8          MS. FILO:  Thank you, Your Honor.

9          MR. MADDEN:  Thank you, Your Honor.

10          THE COURT:  Welcome.

11          (Whereupon, the Court recessed.)

THIS TRANSCRIPT IS PROTECTED UNDER GOVERNMENT CODE SECTION 69954 (d)   498

```
 1   STATE OF CALIFORNIA      )
                              )
 2   COUNTY OF SANTA CLARA    )

 3

 4            I, JAMIE L. MIXCO, HEREBY CERTIFY THAT:

 5            The foregoing is a full, true, and correct

 6   transcript of the testimony given and proceedings had in the

 7   above-entitled action taken on the above-entitled date; that

 8   it is a full, true, and correct transcript of the evidence

 9   offered and received, acts and statements of the Court, also

10   all objections of counsel, and all matters to which the same

11   relate; that I reported the same in stenotype to the best of

12   my ability, being the duly appointed and official

13   stenographic reporter of said Court, and thereafter had the

14   same transcribed into typewriting as herein appears.

15            I further certify that I have complied with CCP

16   237(a)(2) in that all personal juror identifying information

17   has been redacted if applicable.

18

19            Dated:

20

21                          _____

22                             Jamie L. Mixco, C.S.R.
                               Certificate No. 12708
23

24   ATTENTION:
     CALIFORNIA GOVERNMENT CODE
25   SECTION 69954(D) STATES:

26   "ANY COURT, PARTY, OR PERSON WHO HAS PURCHASED A TRANSCRIPT
     MAY, WITHOUT PAYING A FURTHER FEE TO THE REPORTER, REPRODUCE
27   A COPY OR PORTION THEREOF AS AN EXHIBIT PURSUANT TO COURT
     ORDER OR RULE, OR FOR INTERNAL USE, BUT SHALL NOT OTHERWISE
28   PROVIDE OR SELL A COPY OR COPIES TO ANY OTHER PARTY OR
     PERSON."
```